

# THE AMMONS LAW FIRM

A LIMITED LIABILITY PARTNERSHIP

ROBERT E. AMMONS

*A Member of Texas, Arizona, Florida and New York State Bar*

BOARD CERTIFIED - PERSONAL INJURY TRIAL LAW     BOARD CERTIFIED - CIVIL TRIAL ADVOCATE

*Texas Board of Legal Specialization*             *National Board of Trial Advocacy*

November 27, 2017

Lt. General Christopher F. Burne, Esq.
Through the Chief of the Claims and Tort Litigation Division
United States Air Force
Claims and Tort Litigation Division
1500 West Perimeter Road
Suite 1700
Joint Base
Andrews, Maryland 20762

RE: Federal Tort Claims Act SF-95 on Behalf of Joe Holcombe

Dear General Burne:

My firm represents Mr. Joe Holcombe for the death of his son, as detailed in the enclosed material. We are serving these documents, including the SF-95 and attachments, upon you pursuant to 14 CFR 842.79(b).

We look forward to further conversations with you and your staff in the near future, and remain available to speak with the Claims and Tort Division personnel if they have any questions regarding the Claim Packet or our representation. I may be reached at by telephone at (713) 523-1606 or by email at r.ammons@ammonslaw.com.

Please provide copies noting receipt as provided in the self-addressed pre-paid envelope included. We look forward to working with you on these claims.

Very Respectfully,

Robert E. Ammons

**EXHIBIT**

tables'

**A**

| CLAIM FOR DAMAGE, INJURY, OR DEATH | **INSTRUCTIONS:** Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROVED OMB NO. 1105-0008 |
|---|---|---|

| 1. Submit to Appropriate Federal Agency: | 2. Name, address of claimant, and claimant's personal representative if any. (See instructions on reverse). Number, Street, City, State and Zip code. |
|---|---|
| Secretary of the Air Force<br>Dr. Heather Wilson<br>1670 Air Force Pentagon<br>Washington, DC 20330-1670 | Joe Holcombe (individually)<br>1387 County Road 304<br>Floresville, Texas 78114 |

| 3. TYPE OF EMPLOYMENT | 4. DATE OF BIRTH | 5. MARITAL STATUS | 6. DATE AND DAY OF ACCIDENT | | 7. TIME (A.M. OR P.M.) |
|---|---|---|---|---|---|
| ☐ MILITARY  ☒ CIVILIAN | 09/12/1931 | married | 11/05/2017 | Sunday | 11:25 A.M. |

8. BASIS OF CLAIM (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof. Use additional pages if necessary).

See Attached Page

| 9. | PROPERTY DAMAGE |
|---|---|

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, Street, City, State, and Zip Code)

N/A

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF THE DAMAGE AND THE LOCATION OF WHERE THE PROPERTY MAY BE INSPECTED. (See instructions on reverse side)

N/A

| 10. | PERSONAL INJURY/WRONGFUL DEATH |
|---|---|

STATE THE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE THE NAME OF THE INJURED PERSON OR DECEDENT

Claimant Joe Holcombe's son was Bryan Holcombe. Bryan was a member of the First Baptist Church of Sutherland Springs, Texas. Bryan Holcombe, son of Joe Holcombe, was shot in the back while walking to the church pulpit to lead the congregation in worship. He died on the floor of the church. Joe Holcombe has suffered grievous mental anguish from the death of his son and the loss of his society, companionship and affection.

| 11. | WITNESSES |
|---|---|
| NAME | ADDRESS (Number, Street, City, State and Zip Code) |
| Stephen Willeford | |
| Johnnie Langendorff | |
| Please see additional list attached | |

| 12. (See instructions on reverse). | | AMOUNT OF CLAIM (in dollars) | | |
|---|---|---|---|---|
| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights). |
| 0.00 | | 25,000,000 | 25,000,000 |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE INCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM.

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side). | 13b. PHONE NUMBER OF PERSON SIGNING FORM | 14. DATE OF SIGNATURE |
|---|---|---|
| *[signature]* | (830) 393-6791 | 11/25/2017 |

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the Government. (See 31 U.S.C. 3729). | Fine, imprisonment, or both. (See 18 U.S.C. 287, 1001.) |

Authorized for Local Reproduction
Previous Edition is not Usable
95-109

NSN 7540-00-634-4046

STANDARD FORM 95 (REV. 2/2007)
PRESCRIBED BY DEPT. OF JUSTICE
28 CFR 14.2

## INSURANCE COVERAGE

In order that subrogation claims may be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of the vehicle or property.

**15. Do you carry accident insurance?** ☐ Yes   If yes, give name and address of insurance company (Number, Street, City, State, and Zip Code) and policy number. ☒ No

**16. Have you filed a claim with your insurance carrier in this instance, and if so, is it full coverage or deductible?** ☐ Yes  ☒ No   **17. If deductible, state amount.**

0.00

**18. If a claim has been filed with your carrier, what action has your insurer taken or proposed to take with reference to your claim? (It is necessary that you ascertain these facts.)**

N/A

**19. Do you carry public liability and property damage insurance?** ☐ Yes   If yes, give name and address of insurance carrier (Number, Street, City, State, and Zip Code). ☒ No

## INSTRUCTIONS

**Claims presented under the Federal Tort Claims Act should be submitted directly to the "appropriate Federal agency" whose employee(s) was involved in the incident. If the incident involves more than one claimant, each claimant should submit a separate claim form.**

**Complete all items - Insert the word NONE where applicable.**

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE, AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY DAMAGES IN A SUM CERTAIN FOR INJURY TO OR LOSS OF PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT. THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN TWO YEARS AFTER THE CLAIM ACCRUES.

**Failure to completely execute this form or to supply the requested material within two years from the date the claim accrued may render your claim invalid. A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.**

If instruction is needed in completing this form, the agency listed in item #1 on the reverse side may be contacted. Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14. Many agencies have published supplementing regulations. If more than one agency is involved, please state each agency.

The claim may be filed by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with the claim establishing express authority to act for the claimant. A claim presented by an agent or legal representative must be presented in the name of the claimant. If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

If claimant intends to file for both personal injury and property damage, the amount for each must be shown in item number 12 of this form.

The amount claimed should be substantiated by competent evidence as follows:

*(a)* In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of the injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

*(b)* In support of claims for damage to property, which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

*(c)* In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident. Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

*(d)* Failure to specify a sum certain will render your claim invalid and may result in forfeiture of your rights.

## PRIVACY ACT NOTICE

This Notice is provided in accordance with the Privacy Act, 5 U.S.C. 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.
   A. *Authority:* The requested information is solicited pursuant to one or more of the following: 5 U.S.C. 301, 28 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R. Part 14.

B. *Principal Purpose:* The information requested is to be used in evaluating claims.
C. *Routine Use:* See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.
D. *Effect of Failure to Respond:* Disclosure is voluntary. However, failure to supply the requested information or to execute your claim may render your claim "invalid."

## PAPERWORK REDUCTION ACT NOTICE

This notice is solely for the purpose of the Paperwork Reduction Act, 44 U.S.C. 3501. Public reporting burden for this collection of information is estimated to average 6 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Director, Torts Branch, Attention: Paperwork Reduction Staff, Civil Division, U.S. Department of Justice, Washington, DC 20530 or to the Office of Management and Budget. Do not mail completed form(s) to these addresses.

**STANDARD FORM 95** REV. (2/2007) BACK

## RIDER TO FORM 95

8.     The basis of this claim is under the Federal Tort Claims Act, 28 U.S.C. § 1346 and 28 U.S.C. § 2671, *et seq.*

This notice of claim is filed on behalf of claimant, Joe Holcombe, who is the natural parent of John Bryan Holcombe, deceased (referred to as "JB Holcombe"). This Claim arises from the tragic shooting death of JB Holcombe on Sunday, November 5, 2017, on or about 11:30 A.M. in the First Baptist Church of Sutherland Springs located in Sutherland Springs, Texas. Twenty-six individuals were killed in the shooting, including decedent JB Holcombe, and twenty others were seriously injured.

Simply put, JB Holcombe's death was caused, in whole or in part, by the institutional failures of the United States Department of Defense, including, but not limited to, the United States Air Force ("US Air Force"), in that these entities negligently, recklessly, carelessly and/or egregiously failed to report pertinent criminal arrest, conviction and military discharge information of the shooter into a federal database, as was required, which would have prevented and barred the shooter from purchasing, owning, and/or possessing the firearms, ammunition and body armor that he used in the shooting. Incredibly, and quite frankly tragically, the Department of Defense, the US Air Force, and others, were aware as far back as 1997, and more specifically in at least 2015, that the US Air Force (as well as other branches of the United States military) routinely failed to report such required criminal arrest and conviction information. As a result of an internal review conducted by the Inspector General of the Department of Defense which uncovered these repeated failures, the US Air Force agreed that it would take "prompt action to ensure" that convicted offenders are properly reported to appropriate federal databases to prevent them from legally purchasing, owning, and/or possessing firearms, ammunition and/or body armor. Despite this

notice and call to action, the Department of Defense, specifically including, but not limited to, the US Air Force, utterly failed in their reporting obligations which was the proximate cause of the decedent JB Holcombe's death.

It is undisputed that the perpetrator and sole shooter in this action was former US Air Force member Airman Devin Patrick Kelley ("the shooter"). Upon information and belief, and as the result of a domestic dispute with his in-laws, the shooter entered the First Baptist Church on the morning of November 5, 2017 dressed in all black, clad in body armor and armed with a Ruger Semi-Automatic AR-556 rifle that he purchased from a legal and authorized vendor sometime in April 2016. The shooter killed 26 parishioners and injured 20 others, some critically. Upon leaving the church the shooter was confronted by a good Samaritan who shot the shooter twice – once in the leg and once in the chest. The shooter fled the scene and was involved in a high-speed car chase. He then took his own life after his car veered off the road.

Although the shooter undoubtedly "pulled the trigger" that resulted in the injuries and death of JB Holcombe and others, the failures of the US Air Force, and others, allowed the shooter to purchase, own and/or possess the semiautomatic rifle, ammunition and body armor he used, and it is these failures that were a proximate cause, in whole or in part, of the injuries and death of the decedent. The US military, specifically including the US Air Force, designed and implemented policies, procedures, regulations and/or guidelines that were specifically designed to prevent individuals such as the shooter from purchasing, owning and/or possessing firearms, ammunition and body armor. It is the failure by the US Air Force to abide by these policies, procedures, regulations and/or guidelines that directly caused this horrific tragedy.

It is undisputed that Airman Kelley was a member of the US Air Force, having been on active duty from 2009 until 2014 and stationed at Holloman Air Force Base located in Otero

County, New Mexico. In April 2011 Airman Kelley married Tessa K. Loge, who had an infant son from a previous marriage. It is not disputed that after his marriage, then-Airman Kelley was arrested for assault upon his wife and her son, wherein he inflicted serious injuries upon the two, including, but not limited to, fracturing the skull of the infant boy. He was also charged with pointing a loaded gun at his wife, and two counts of threatening his spouse with an unloaded firearm.

Upon information and belief, because of these criminal charges a general Court Martial was convened and Airman Kelley was convicted of assault on his wife and her son on November 7, 2012. Due to these convictions Airman Kelley was sentenced to a year in military jail. At that time, he admitted striking the infant boy "with a force likely to produce death or grievous bodily harm". With respect to the assault against his spouse, Kelley admitted that he "hit, kicked, choked and pulled the hair" of his wife. The couple were divorced while Kelley served his jail sentence in a naval brig located in San Diego, California.

Airman Kelley was also known to have made threats against his superiors in the Air Force as well as to have attempted to smuggle guns onto the base in violation of Air Force regulations and base standard operating procedures. In addition, given the nature of the criminal charges pending against him, in the Spring of 2012, the Air Force involuntarily committed Airman Kelley to the Peak Behavioral Health Services, a mental facility located in Santa Teresa, New Mexico which has a dedicated unit for US military personnel. On June 7, 2012 Airman Kelley jumped a fence and escaped from the mental facility. He was apprehended by local law enforcement later that same day and was returned to the facility to await his court martial. At the time of his apprehension, it was noted by local law enforcement authorities that Kelley was suffering from mental health issues and that he was a "danger to himself and others".

After capture, Kelley was detained at the mental health facility and ordered into pre-trial confinement while awaiting his court martial.  Upon information and belief, during this time Kelley used computers at the facility to attempt to purchase weapons and tactical gear via the internet and have those items shipped to a post office box located in San Antonio, Texas.  Upon information and belief, the US Air Force was specifically aware that Kelley attempted to make these firearm purchases while detained at the mental health facility.

Eventually, in May 2014, after serving his military prison sentence, the Air Force discharged Kelley with a "bad conduct discharge" rather than a dishonorable discharge, simply reducing him in Rank to that of E-1 rather than stripping him of his service.  Like his prior criminal convictions, the US Air Force utterly failed to enter his "bad conduct discharge" into federal databases. A "bad conduct discharge" following court-martial was yet another event that should have disqualified Kelley from purchasing, owning or possessing firearms and ammunition.

Due to the foregoing, and most notably his assault arrest and convictions, bad conduct discharge post court-martial and involuntary commitment to a mental facility, the US Air Force, specifically including, but not limited to, the Office of Special Investigations at Holloman Air Force Base ("AFOSI"), and/or the HQ Air Force Security Forces ("HAF/A4S") were required to enter his November 2012 criminal arrest and conviction information into certain computerized databases, specifically including, the FBI's Criminal Justice Information Systems ("CJIS"). The CJIS comprises various computer databases, specifically including the National Crime Information Center ("NCIC") database, Uniform Crime Reporting, Fingerprint Identification and the IAFIS Program which includes both fingerprint and final criminal disposition data. These databases are computerized databases for ready access by an authorized entity making an inquiry into the background of an individual and for prompt disclosure of information in the system from

other criminal justice agencies about crimes and criminals. Specifically, the NCIC database is accessed for a number of purposes, and is one such database that is required to be accessed whenever a person seeks to legally purchase certain firearms. Certain criminal convictions, specifically including those of which Airman Kelley was convicted, are required to be entered into the NCIC and other CJIS-related databases. Had Airman Kelley's criminal arrest, conviction and/or bad conduct discharge information been entered, as was required by US Air Force policies, procedures, regulations and/or guidelines, Airman Kelley would have been prevented and prohibited from purchasing, owning and/or possessing firearms, ammunition and body armor, specifically including the firearm and body armor that he used in the shooting.

Significantly, the Department of Defense has promulgated regulations that impose upon the various branches of the military, specifically including the US Air Force, certain reporting requirements when a serviceman is convicted of a crime. *See Department of Defense INSTRUCTION,* Number 5505.11 and subsequent revisions/changes. It is undisputed, and has been readily admitted by the US Air Force in the days following this horrific tragedy, that Airman Kelley's convictions and criminal history were required to be entered into the NCIC database and/or CJIS system but for reasons not presently known the Air Force utterly failed in their reporting obligations. It is also undisputed that had the information been entered into these databases by the Air Force at the time of his convictions in and around November 2012, as was required, Airman Kelley would have been prevented, prohibited and barred from purchasing, owning and/or possessing the firearms, ammunition and body armor used in this massacre and this tragedy would not have occurred.

The failures of the Department of Defense, specifically including the US Air Force, are not limited to their failure to timely and accurately enter and/or report Airman Kelley's criminal arrest

and conviction information into the appropriate computer database in November 2012. In February 2015 the Inspector General for the U.S. Department of Defense conducted a comprehensive review of the failures of the branches of the US military to promptly and accurately input criminal conviction information into the appropriate computer database, specifically including the NCIC database. *See Evaluation of Department of Defense Compliance with Criminal History Data Reporting Requirements, Report Number DODIG-2015-081,* dated February 12, 2015 (referred to as the "IG's Report").

The IG's Report examined the continuing failures of conviction reporting by the US Navy, US Air Force and US Marines. In his Report, the Inspector General recognized that as far back as 1997 the branches of the US military had not consistently submitted the required criminal arrest and conviction information to appropriate federal law enforcement agencies, including criminal information databases. *See IG Report,* at p. 12.

With respect to the US Air Force, the 2015 study took a sample of convicted individuals from June 2010 through and including October 31, 2012 (as mentioned above, Airman Kelley was convicted in November 2012 just days after the sample period). During this time frame, the Inspector General found that there were 358 criminal convictions of US Air Force personnel that mandated reporting obligations. However, only 248 fingerprint cards were entered into the appropriate database, representing a failure rate of approximately 31%. With respect to final criminal disposition information regarding these 358 convictions, only 245 final dispositions were reported, representing a failure rate of approximately 32%.

Due to these alarming failure rates (more than 3 out of 10 failures by the US Air Force to report required criminal arrest and conviction information) the Inspector General made certain recommendations to the branches of the US military, specifically including the US Air Force. The

first recommendation was for the US Air Force to submit and enter the missing fingerprint and final criminal disposition information for the missing individuals identified in the sample period into the appropriate computer databases. Upon review of the Inspector General's Report the US Air Force "agreed" with this recommendation. Unfortunately, Airman Kelley's conviction occurred in November 2012, a mere one month outside the sample examined by the Inspector General.

The Inspector General also recommended that due to the high failure rate the US Air Force "take prompt action" to ensure that **all** arrestee information is properly reported and entered in the various criminal history databases. The US Air Force also specifically "agreed" with the Inspector General's recommendation. *See IG Report,* at p. 10.

Notwithstanding that the US Air Force was specifically aware in 2015 (and likely well before) that on average more than 3 out of 10 criminal arrest and conviction information was not reported, and despite their acknowledgement that they would "promptly ensure" that such systemic failures were corrected, the US Air Force utterly failed the general public, and more specifically the decedent JB Holcombe and his family, by failing to ensure that Airman Kelley's criminal arrest and convictions were properly reported. Despite their specific prior knowledge, the US Air Force utterly and carelessly failed in their reporting obligations which allowed this tragedy to occur and cost the decedent JB Holcombe his life. Had the US Air Force done as required, the shooter would not have been able to purchase, own and/or possess the automatic rifle and body armor that he used to slaughter and injure more than 46 individuals.

Claimant's allegations of negligence are not limited to the fact that the US Air Force's failures allowed Kelley to purchase, own and/or possess firearms. The utterly careless and reckless failures of the US Air Force to satisfy their reporting obligations with respect to Airman Kelley's

criminal arrest and convictions resulted in numerous missed opportunities for various local law enforcement agencies to prevent further violence by Kelley. Upon information and belief, after his bad conduct discharge from the military local law enforcement personnel made more than 17 visits to Kelley's home on allegations ranging from animal cruelty to domestic violence and sexual assault. For example, on or about June 7, 2013, Comal County, Texas deputies responded to Kelley's home to investigate a report of "rape by force" allegedly perpetrated by Kelley. Without information as to Kelley's prior convictions, deputies investigated the report for months following the report, but no charges were brought once investigators believed Kelley moved to Colorado. Had the information regarding Kelley's criminal arrest and conviction for domestic violence been entered, as was required, Comal County law enforcement would have been aware of that information and perhaps been able to bring felony charges under the Texas Penal Code against Kelley in 2013.

In early 2014, local police in Texas responded to Kelley's home to investigate reports of domestic abuse of his then girlfriend Danielle Shields, but charges were not pursued after Shields told responding officers the report was the result of a misunderstanding. Had the US Air Force reported Airman Kelley's criminal arrest and convictions for domestic violence, local law enforcement would have had reason to further investigate any claim of misunderstanding and perhaps pursued felony charges under the Texas Penal Code against Kelley in 2014. In August 2014, Colorado law enforcement responded to Kelley's home to investigate claims of animal cruelty allegedly perpetrated by Kelley, resulting in a standoff with police once Kelley refused to come out of the home. Without information as to Kelley's prior convictions, law enforcement issued Kelley a citation rather arresting him. Had Colorado local law enforcement had information

regarding Kelley's violent criminal past, perhaps Kelley would have been arrested and incarcerated in August of 2014.

Had the information regarding Kelley's criminal arrest and conviction been entered, as was required, local law enforcement personnel would have been aware of that information when they conducted various welfare checks at the shooter's home in Texas in the months leading up to the shooting. Upon information and belief, local law enforcement also visited the shooter's home due to domestic assault allegations. Had they known that he was convicted of a prior domestic assault, they may have properly entered the home and seized any weapons that were visible, or pursued felony charges under the Texas Penal Code against Kelley at that time. As with his military convictions, any conviction for domestic violence after he was discharged from the military would have likewise barred, prohibited and/or prevented from purchasing, owning and/or possessing firearms, ammunition and body armor, including the semiautomatic rifle and body armor used in the massacre.

Based upon the foregoing, the injuries and death of decedent JB Holcombe was caused, in whole or in part, by the negligence, recklessness, and/or carelessness of the United States of America, through the US Air Force, including, but not limited to, in that the US Air Force failed to adhere to the regulations, policies, procedures, and/or guidelines issued by the Department of Defense in failing to report the shooter's criminal arrest and convictions to appropriate federal law enforcement agencies and databases, as was required, thereby allowing the shooter to purchase the semiautomatic rifle, ammunition and body armor used in the massacre; had the US Air Force complied with their necessary and mandatory reporting requirements, the shooter would have been barred, prohibited and/or prevented from purchasing, owning and/or possessing firearms, ammunition and body armor, including the semiautomatic rifle and body armor used in the

massacre and thus, the shooting would not have taken place; in that the US Air Force failed to comply with Department of Defense regulations, policies, procedures, and/or guidelines, specifically including, but not limited to, *Department of Defense INSTRUCTION,* Number 5505.11 and subsequent revisions/changes, thereby allowing the shooter to purchase the firearm, ammunition and body armor used in the shooting; in that the US Air Force failed to correct known deficiencies in its criminal arrest and conviction reporting obligations; in that despite its public statements to the contrary the US Air Force failed to adhere or heed the recommendations promulgated by the Inspector General of the Department of Defense concerning its systemic failures to properly report arrest and criminal conviction information; in that the US Air Force failed to comply with its obligations and duties regarding criminal arrest and conviction reporting; in that the US Air Force was specifically aware for years prior to the shooting that it had consistently failed to report required arrest and criminal conviction information and failed to correct these deficiencies; in that the US Air Force failed to appropriately abide by and follow its own internal procedures regarding criminal arrest and conviction information; created a dangerous condition to the public, and specifically to the decedent JB Holcombe, by failing to adhere, comply and/or follow required criminal arrest and conviction information reporting obligations; in that the US Air Force breached the duty of care owed to the public generally, and to the decedent JB Holcombe specifically, in that it failed to report required criminal arrest and conviction information; in that the US Air Force failed to discuss their deficiencies with other branches of the US military and/or other governmental agencies in an attempt to correct these known deficiencies; in that the US Air Force unleashed on the public a dangerous individual who had the ability to purchase firearms, ammunition and body armor when he should have been prevented from doing so; and was otherwise careless, reckless and/or negligent all of which individually and/or jointly,

proximately caused, in whole or in part, the subject shooting and the injuries and death of the decedent JB Holcombe.

The instant notice of claim is filed by and on behalf of claimant, Joe Holcombe, the parent of the decedent JB Holcombe, and on behalf of the decedent's estate, its heirs, and/or any individual entitled to recover under the applicable damages law, including, but not limited to, $25,000,000 for wrongful death damages suffered as a result of the death of the decedent as set forth above.

Joe Holcombe seeks all wrongful death damages for his losses only under the applicable law, including, but not limited to, all economic and non-economic damages, including the loss of past and future income, support, society, love, grief, consortium, services, guidance, care, comfort, companionship and inheritance of the decedent, loss of life's pleasures, loss of enjoyment of life, damages for mental anguish and mental pain and suffering, as well as any other damages recoverable under the applicable law.

Section 11

WITNESS:

1)   Stephen Willeford, 55, wounded
2)   Farida Brown, 73, wounded
3)   Rosanna Solis, adult, wounded
4)   Joaquin Ramirez, adult, wounded
6)   Rihanna Garza (Garcia), 9, daughter of Joann Ward, wounded
7)   David Colbath, wounded
8)   Kris Workman, wounded
9)   Zachary Poston, wounded
10)  Johnnie Langendorff, 27, drove Stephen Willeford to catch perpetrator
11)  Ms. Terri Smith, 54,
12)  Mr. Lorenzo Flores, 56,
13)  Kevin Jordan, 30,
14)  David Brown, wounded
15)  Sue Soto,
16)  Ted Montgomery, Sunday school director

17)     David Casillas, 55, lives nearby
18)     David Flores, 26, son of Lorenzo Flores, witness
19)     Inspector General of the United States Air Force in 2014
20)     Various yet identified members of perpetrator's Chain of Command while on Active Duty in the Air Force.

| CLAIM FOR DAMAGE, INJURY, OR DEATH | INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROVED OMB NO. 1105-00 |
|---|---|---|

| 1. Submit to Appropriate Federal Agency: | 2. Name, address of claimant, and claimant's personal representative if any. (See instructions on reverse). Number, Street, City, State and Zip code. |
|---|---|
| Secretary of the Air Force<br>Dr. Heather Wilson<br>1670 Air Force Pentagon<br>Washington, DC 20330-1670 | Joe Holcombe (individually)<br>1387 County Road 304<br>Floresville, Texas 78114 |

| 3. TYPE OF EMPLOYMENT | 4. DATE OF BIRTH | 5. MARITAL STATUS | 6. DATE AND DAY OF ACCIDENT | | 7. TIME (A.M. OR P.M.) |
|---|---|---|---|---|---|
| ☐ MILITARY ☒ CIVILIAN | 09/12/1931 | married | 11/05/2017 | Sunday | 11:25 A.M. |

8. BASIS OF CLAIM (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof. Use additional pages if necessary)

See Attached Page

| 9. | PROPERTY DAMAGE |
|---|---|

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, Street, City, State, and Zip Code).

N/A

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF THE DAMAGE AND THE LOCATION OF WHERE THE PROPERTY MAY BE INSPECTED. (See instructions on reverse side)

N/A

| 10. | PERSONAL INJURY/WRONGFUL DEATH |
|---|---|

STATE THE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE THE NAME OF THE INJURED PERSON OR DECEDENT.

Claimant Joe Holcombe's son was Bryan Holcombe. Bryan was a member of the First Baptist Church of Sutherland Springs, Texas. Bryan Holcombe, son of Joe Holcombe, was shot in the back while walking to the church pulpit to lead the congregation in worship. He died on the floor of the church. Joe Holcombe has suffered grievous mental anguish from the death of his son and the loss of his society, companionship and affection.

| 11. | WITNESSES |
|---|---|

| NAME | ADDRESS (Number, Street, City, State, and Zip Code) |
|---|---|
| Stephen Willeford | |
| Johnnie Langendorff | |
| Please see additional list attached | |

| 12. (See instructions on reverse). | AMOUNT OF CLAIM (in dollars) | | |
|---|---|---|---|
| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights) |
| 0.00 | | 25,000,000 | 25,000,000 |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE INCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM.

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side). | 13b. PHONE NUMBER OF PERSON SIGNING FORM | 14. DATE OF SIGNATURE |
|---|---|---|
| Joe M. Holcombe | (830) 393-1091 | 11/25/2017 |

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the Government. (See 31 U.S.C. 3729). | Fine, imprisonment, or both. (See 18 U.S.C. 287, 1001.) |

Authorized for Local Reproduction
Previous Edition is not Usable

95-109

NSN 7540-00-634-4046

STANDARD FORM 95 (REV. 2/2007)
PRESCRIBED BY DEPT. OF JUSTICE
28 CFR 14.2

## INSURANCE COVERAGE

In order that subrogation claims may be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of the vehicle or property.

15. Do you carry accident insurance?  ☐ Yes   If yes, give name and address of insurance company (Number, Street, City, State, and Zip Code) and policy number.  ☒ No

16. Have you filed a claim with your insurance carrier in this instance, and if so, is it full coverage or deductible?  ☐ Yes  ☒ No

17. If deductible, state amount.

0.00

18. If a claim has been filed with your carrier, what action has your insurer taken or proposed to take with reference to your claim? (It is necessary that you ascertain these facts).

N/A

19. Do you carry public liability and property damage insurance?  ☐ Yes   If yes, give name and address of insurance carrier (Number, Street, City, State, and Zip Code).  ☒ No

## INSTRUCTIONS

**Claims presented under the Federal Tort Claims Act should be submitted directly to the "appropriate Federal agency" whose employee(s) was involved in the incident.  If the incident involves more than one claimant, each claimant should submit a separate claim form.**

### Complete all items - insert the word NONE where applicable.

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE, AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY

DAMAGES IN A SUM CERTAIN FOR INJURY TO OR LOSS OF PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT. THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN TWO YEARS AFTER THE CLAIM ACCRUES.

Failure to completely execute this form or to supply the requested material within two years from the date the claim accrued may render your claim invalid.  A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.

The amount claimed should be substantiated by competent evidence as follows:

(a)  In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of the injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

If instruction is needed in completing this form, the agency listed in item #1 on the reverse side may be contacted.  Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14. Many agencies have published supplementing regulations.  If more than one agency is involved, please state each agency.

(b)  In support of claims for damage to property, which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

The claim may be filed by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with the claim establishing express authority to act for the claimant.  A claim presented by an agent or legal representative must be presented in the name of the claimant.  If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

(c)  In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident.  Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

If claimant intends to file for both personal injury and property damage, the amount for each must be shown in item number 12 of this form.

(d)  Failure to specify a sum certain will render your claim invalid and may result in forfeiture of your rights.

## PRIVACY ACT NOTICE

This Notice is provided in accordance with the Privacy Act, 5 U.S.C. 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.
  A.  *Authority*:  The requested information is solicited pursuant to one or more of the following: 5 U.S.C. 301, 28 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R. Part 14.

B.  *Principal Purpose*:  The information requested is to be used in evaluating claims.
C.  *Routine Use*:  See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.
D.  *Effect of Failure to Respond*:  Disclosure is voluntary.  However, failure to supply the requested information or to execute the form may render your claim "invalid".

## PAPERWORK REDUCTION ACT NOTICE

This notice is solely for the purpose of the Paperwork Reduction Act, 44 U.S.C. 3501.  Public reporting burden for this collection of information is estimated to average 6 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.  Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Director, Torts Branch, Attention: Paperwork Reduction Staff, Civil Division, U.S. Department of Justice, Washington, DC  20530 or to the Office of Management and Budget.  Do not mail completed form(s) to these addresses.

## RIDER TO FORM 95

8.      The basis of this claim is under the Federal Tort Claims Act, 28 U.S.C. § 1346 and 28 U.S.C. § 2671, *et seq.*

This notice of claim is filed on behalf of claimant, Joe Holcombe, who is the natural parent of John Bryan Holcombe, deceased (referred to as "JB Holcombe"). This Claim arises from the tragic shooting death of JB Holcombe on Sunday, November 5, 2017, on or about 11:30 A.M. in the First Baptist Church of Sutherland Springs located in Sutherland Springs, Texas. Twenty-six individuals were killed in the shooting, including decedent JB Holcombe, and twenty others were seriously injured.

Simply put, JB Holcombe's death was caused, in whole or in part, by the institutional failures of the United States Department of Defense, including, but not limited to, the United States Air Force ("US Air Force"), in that these entities negligently, recklessly, carelessly and/or egregiously failed to report pertinent criminal arrest, conviction and military discharge information of the shooter into a federal database, as was required, which would have prevented and barred the shooter from purchasing, owning, and/or possessing the firearms, ammunition and body armor that he used in the shooting. Incredibly, and quite frankly tragically, the Department of Defense, the US Air Force, and others, were aware as far back as 1997, and more specifically in at least 2015, that the US Air Force (as well as other branches of the United States military) routinely failed to report such required criminal arrest and conviction information. As a result of an internal review conducted by the Inspector General of the Department of Defense which uncovered these repeated failures, the US Air Force agreed that it would take "prompt action to ensure" that convicted offenders are properly reported to appropriate federal databases to prevent them from legally purchasing, owning, and/or possessing firearms, ammunition and/or body armor. Despite this

notice and call to action, the Department of Defense, specifically including, but not limited to, the US Air Force, utterly failed in their reporting obligations which was the proximate cause of the decedent JB Holcombe's death.

It is undisputed that the perpetrator and sole shooter in this action was former US Air Force member Airman Devin Patrick Kelley ("the shooter"). Upon information and belief, and as the result of a domestic dispute with his in-laws, the shooter entered the First Baptist Church on the morning of November 5, 2017 dressed in all black, clad in body armor and armed with a Ruger Semi-Automatic AR-556 rifle that he purchased from a legal and authorized vendor sometime in April 2016. The shooter killed 26 parishioners and injured 20 others, some critically. Upon leaving the church the shooter was confronted by a good Samaritan who shot the shooter twice – once in the leg and once in the chest. The shooter fled the scene and was involved in a high-speed car chase. He then took his own life after his car veered off the road.

Although the shooter undoubtedly "pulled the trigger" that resulted in the injuries and death of JB Holcombe and others, the failures of the US Air Force, and others, allowed the shooter to purchase, own and/or possess the semiautomatic rifle, ammunition and body armor he used, and it is these failures that were a proximate cause, in whole or in part, of the injuries and death of the decedent. The US military, specifically including the US Air Force, designed and implemented policies, procedures, regulations and/or guidelines that were specifically designed to prevent individuals such as the shooter from purchasing, owning and/or possessing firearms, ammunition and body armor. It is the failure by the US Air Force to abide by these policies, procedures, regulations and/or guidelines that directly caused this horrific tragedy.

It is undisputed that Airman Kelley was a member of the US Air Force, having been on active duty from 2009 until 2014 and stationed at Holloman Air Force Base located in Otero

County, New Mexico. In April 2011 Airman Kelley married Tessa K. Loge, who had an infant son from a previous marriage. It is not disputed that after his marriage, then-Airman Kelley was arrested for assault upon his wife and her son, wherein he inflicted serious injuries upon the two, including, but not limited to, fracturing the skull of the infant boy. He was also charged with pointing a loaded gun at his wife, and two counts of threatening his spouse with an unloaded firearm.

Upon information and belief, because of these criminal charges a general Court Martial was convened and Airman Kelley was convicted of assault on his wife and her son on November 7, 2012. Due to these convictions Airman Kelley was sentenced to a year in military jail. At that time, he admitted striking the infant boy "with a force likely to produce death or grievous bodily harm". With respect to the assault against his spouse, Kelley admitted that he "hit, kicked, choked and pulled the hair" of his wife. The couple were divorced while Kelley served his jail sentence in a naval brig located in San Diego, California.

Airman Kelley was also known to have made threats against his superiors in the Air Force as well as to have attempted to smuggle guns onto the base in violation of Air Force regulations and base standard operating procedures. In addition, given the nature of the criminal charges pending against him, in the Spring of 2012, the Air Force involuntarily committed Airman Kelley to the Peak Behavioral Health Services, a mental facility located in Santa Teresa, New Mexico which has a dedicated unit for US military personnel. On June 7, 2012 Airman Kelley jumped a fence and escaped from the mental facility. He was apprehended by local law enforcement later that same day and was returned to the facility to await his court martial. At the time of his apprehension, it was noted by local law enforcement authorities that Kelley was suffering from mental health issues and that he was a "danger to himself and others".

After capture, Kelley was detained at the mental health facility and ordered into pre-trial confinement while awaiting his court martial.  Upon information and belief, during this time Kelley used computers at the facility to attempt to purchase weapons and tactical gear via the internet and have those items shipped to a post office box located in San Antonio, Texas.  Upon information and belief, the US Air Force was specifically aware that Kelley attempted to make these firearm purchases while detained at the mental health facility.

Eventually, in May 2014, after serving his military prison sentence, the Air Force discharged Kelley with a "bad conduct discharge" rather than a dishonorable discharge, simply reducing him in Rank to that of E-1 rather than stripping him of his service.  Like his prior criminal convictions, the US Air Force utterly failed to enter his "bad conduct discharge" into federal databases.  A "bad conduct discharge" following court-martial was yet another event that should have disqualified Kelley from purchasing, owning or possessing firearms and ammunition.

Due to the foregoing, and most notably his assault arrest and convictions, bad conduct discharge post court-martial and involuntary commitment to a mental facility, the US Air Force, specifically including, but not limited to, the Office of Special Investigations at Holloman Air Force Base ("AFOSI"), and/or the HQ Air Force Security Forces ("HAF/A4S") were required to enter his November 2012 criminal arrest and conviction information into certain computerized databases, specifically including, the FBI's Criminal Justice Information Systems ("CJIS").  The CJIS comprises various computer databases, specifically including the National Crime Information Center ("NCIC") database, Uniform Crime Reporting, Fingerprint Identification and the IAFIS Program which includes both fingerprint and final criminal disposition data.  These databases are computerized databases for ready access by an authorized entity making an inquiry into the background of an individual and for prompt disclosure of information in the system from

other criminal justice agencies about crimes and criminals. Specifically, the NCIC database is accessed for a number of purposes, and is one such database that is required to be accessed whenever a person seeks to legally purchase certain firearms.  Certain criminal convictions, specifically including those of which Airman Kelley was convicted, are required to be entered into the NCIC and other CJIS-related databases.  Had Airman Kelley's criminal arrest, conviction and/or bad conduct discharge information been entered, as was required by US Air Force policies, procedures, regulations and/or guidelines, Airman Kelley would have been prevented and prohibited from purchasing, owning and/or possessing firearms, ammunition and body armor, specifically including the firearm and body armor that he used in the shooting.

Significantly, the Department of Defense has promulgated regulations that impose upon the various branches of the military, specifically including the US Air Force, certain reporting requirements when a serviceman is convicted of a crime. *See Department of Defense INSTRUCTION,* Number 5505.11 and subsequent revisions/changes. It is undisputed, and has been readily admitted by the US Air Force in the days following this horrific tragedy, that Airman Kelley's convictions and criminal history were required to be entered into the NCIC database and/or CJIS system but for reasons not presently known the Air Force utterly failed in their reporting obligations.  It is also undisputed that had the information been entered into these databases by the Air Force at the time of his convictions in and around November 2012, as was required, Airman Kelley would have been prevented, prohibited and barred from purchasing, owning and/or possessing the firearms, ammunition and body armor used in this massacre and this tragedy would not have occurred.

The failures of the Department of Defense, specifically including the US Air Force, are not limited to their failure to timely and accurately enter and/or report Airman Kelley's criminal arrest

and conviction information into the appropriate computer database in November 2012. In February 2015 the Inspector General for the U.S. Department of Defense conducted a comprehensive review of the failures of the branches of the US military to promptly and accurately input criminal conviction information into the appropriate computer database, specifically including the NCIC database. *See Evaluation of Department of Defense Compliance with Criminal History Data Reporting Requirements, Report Number DODIG-2015-081,* dated February 12, 2015 (referred to as the "IG's Report").

The IG's Report examined the continuing failures of conviction reporting by the US Navy, US Air Force and US Marines. In his Report, the Inspector General recognized that as far back as 1997 the branches of the US military had not consistently submitted the required criminal arrest and conviction information to appropriate federal law enforcement agencies, including criminal information databases. *See IG Report,* at p. 12.

With respect to the US Air Force, the 2015 study took a sample of convicted individuals from June 2010 through and including October 31, 2012 (as mentioned above, Airman Kelley was convicted in November 2012 just days after the sample period). During this time frame, the Inspector General found that there were 358 criminal convictions of US Air Force personnel that mandated reporting obligations. However, only 248 fingerprint cards were entered into the appropriate database, representing a failure rate of approximately 31%. With respect to final criminal disposition information regarding these 358 convictions, only 245 final dispositions were reported, representing a failure rate of approximately 32%.

Due to these alarming failure rates (more than 3 out of 10 failures by the US Air Force to report required criminal arrest and conviction information) the Inspector General made certain recommendations to the branches of the US military, specifically including the US Air Force. The

first recommendation was for the US Air Force to submit and enter the missing fingerprint and final criminal disposition information for the missing individuals identified in the sample period into the appropriate computer databases. Upon review of the Inspector General's Report the US Air Force "agreed" with this recommendation. Unfortunately, Airman Kelley's conviction occurred in November 2012, a mere one month outside the sample examined by the Inspector General.

The Inspector General also recommended that due to the high failure rate the US Air Force "take prompt action" to ensure that all arrestee information is properly reported and entered in the various criminal history databases. The US Air Force also specifically "agreed" with the Inspector General's recommendation. *See IG Report,* at p. 10.

Notwithstanding that the US Air Force was specifically aware in 2015 (and likely well before) that on average more than 3 out of 10 criminal arrest and conviction information was not reported, and despite their acknowledgement that they would "promptly ensure" that such systemic failures were corrected, the US Air Force utterly failed the general public, and more specifically the decedent JB Holcombe and his family, by failing to ensure that Airman Kelley's criminal arrest and convictions were properly reported. Despite their specific prior knowledge, the US Air Force utterly and carelessly failed in their reporting obligations which allowed this tragedy to occur and cost the decedent JB Holcombe his life. Had the US Air Force done as required, the shooter would not have been able to purchase, own and/or possess the automatic rifle and body armor that he used to slaughter and injure more than 46 individuals.

Claimant's allegations of negligence are not limited to the fact that the US Air Force's failures allowed Kelley to purchase, own and/or possess firearms. The utterly careless and reckless failures of the US Air Force to satisfy their reporting obligations with respect to Airman Kelley's

criminal arrest and convictions resulted in numerous missed opportunities for various local law enforcement agencies to prevent further violence by Kelley. Upon information and belief, after his bad conduct discharge from the military local law enforcement personnel made more than 17 visits to Kelley's home on allegations ranging from animal cruelty to domestic violence and sexual assault. For example, on or about June 7, 2013, Comal County, Texas deputies responded to Kelley's home to investigate a report of "rape by force" allegedly perpetrated by Kelley. Without information as to Kelley's prior convictions, deputies investigated the report for months following the report, but no charges were brought once investigators believed Kelley moved to Colorado. Had the information regarding Kelley's criminal arrest and conviction for domestic violence been entered, as was required, Comal County law enforcement would have been aware of that information and perhaps been able to bring felony charges under the Texas Penal Code against Kelley in 2013.

In early 2014, local police in Texas responded to Kelley's home to investigate reports of domestic abuse of his then girlfriend Danielle Shields, but charges were not pursued after Shields told responding officers the report was the result of a misunderstanding. Had the US Air Force reported Airman Kelley's criminal arrest and convictions for domestic violence, local law enforcement would have had reason to further investigate any claim of misunderstanding and perhaps pursued felony charges under the Texas Penal Code against Kelley in 2014. In August 2014, Colorado law enforcement responded to Kelley's home to investigate claims of animal cruelty allegedly perpetrated by Kelley, resulting in a standoff with police once Kelley refused to come out of the home. Without information as to Kelley's prior convictions, law enforcement issued Kelley a citation rather arresting him. Had Colorado local law enforcement had information

regarding Kelley's violent criminal past, perhaps Kelley would have been arrested and incarcerated in August of 2014.

Had the information regarding Kelley's criminal arrest and conviction been entered, as was required, local law enforcement personnel would have been aware of that information when they conducted various welfare checks at the shooter's home in Texas in the months leading up to the shooting. Upon information and belief, local law enforcement also visited the shooter's home due to domestic assault allegations. Had they known that he was convicted of a prior domestic assault, they may have properly entered the home and seized any weapons that were visible, or pursued felony charges under the Texas Penal Code against Kelley at that time. As with his military convictions, any conviction for domestic violence after he was discharged from the military would have likewise barred, prohibited and/or prevented from purchasing, owning and/or possessing firearms, ammunition and body armor, including the semiautomatic rifle and body armor used in the massacre.

Based upon the foregoing, the injuries and death of decedent JB Holcombe was caused, in whole or in part, by the negligence, recklessness, and/or carelessness of the United States of America, through the US Air Force, including, but not limited to, in that the US Air Force failed to adhere to the regulations, policies, procedures, and/or guidelines issued by the Department of Defense in failing to report the shooter's criminal arrest and convictions to appropriate federal law enforcement agencies and databases, as was required, thereby allowing the shooter to purchase the semiautomatic rifle, ammunition and body armor used in the massacre; had the US Air Force complied with their necessary and mandatory reporting requirements, the shooter would have been barred, prohibited and/or prevented from purchasing, owning and/or possessing firearms, ammunition and body armor, including the semiautomatic rifle and body armor used in the

massacre and thus, the shooting would not have taken place; in that the US Air Force failed to comply with Department of Defense regulations, policies, procedures, and/or guidelines, specifically including, but not limited to, *Department of Defense INSTRUCTION,* Number 5505.11 and subsequent revisions/changes, thereby allowing the shooter to purchase the firearm, ammunition and body armor used in the shooting; in that the US Air Force failed to correct known deficiencies in its criminal arrest and conviction reporting obligations; in that despite its public statements to the contrary the US Air Force failed to adhere or heed the recommendations promulgated by the Inspector General of the Department of Defense concerning its systemic failures to properly report arrest and criminal conviction information; in that the US Air Force failed to comply with its obligations and duties regarding criminal arrest and conviction reporting; in that the US Air Force was specifically aware for years prior to the shooting that it had consistently failed to report required arrest and criminal conviction information and failed to correct these deficiencies; in that the US Air Force failed to appropriately abide by and follow its own internal procedures regarding criminal arrest and conviction information; created a dangerous condition to the public, and specifically to the decedent JB Holcombe, by failing to adhere, comply and/or follow required criminal arrest and conviction information reporting obligations; in that the US Air Force breached the duty of care owed to the public generally, and to the decedent JB Holcombe specifically, in that it failed to report required criminal arrest and conviction information; in that the US Air Force failed to discuss their deficiencies with other branches of the US military and/or other governmental agencies in an attempt to correct these known deficiencies; in that the US Air Force unleashed on the public a dangerous individual who had the ability to purchase firearms, ammunition and body armor when he should have been prevented from doing so; and was otherwise careless, reckless and/or negligent all of which individually and/or jointly,

proximately caused, in whole or in part, the subject shooting and the injuries and death of the decedent JB Holcombe.

The instant notice of claim is filed by and on behalf of claimant, Joe Holcombe, the parent of the decedent JB Holcombe, and on behalf of the decedent's estate, its heirs, and/or any individual entitled to recover under the applicable damages law, including, but not limited to, $25,000,000 for wrongful death damages suffered as a result of the death of the decedent as set forth above.

Joe Holcombe seeks all wrongful death damages for his losses only under the applicable law, including, but not limited to, all economic and non-economic damages, including the loss of past and future income, support, society, love, grief, consortium, services, guidance, care, comfort, companionship and inheritance of the decedent, loss of life's pleasures, loss of enjoyment of life, damages for mental anguish and mental pain and suffering, as well as any other damages recoverable under the applicable law.

## Section 11

WITNESS:

1)   Stephen Willeford, 55, wounded
2)   Farida Brown, 73, wounded
3)   Rosanna Solis, adult, wounded
4)   Joaquin Ramirez, adult, wounded
6)   Rihanna Garza (Garcia), 9, daughter of Joann Ward, wounded
7)   David Colbath, wounded
8)   Kris Workman, wounded
9)   Zachary Poston, wounded
10)  Johnnie Langendorff, 27, drove Stephen Willeford to catch perpetrator
11)  Ms. Terri Smith, 54,
12)  Mr. Lorenzo Flores, 56,
13)  Kevin Jordan, 30,
14)  David Brown, wounded
15)  Sue Soto,
16)  Ted Montgomery, Sunday school director

17)   David Casillas, 55, lives nearby
18)   David Flores, 26, son of Lorenzo Flores, witness
19)   Inspector General of the United States Air Force in 2014
20)   Various yet identified members of perpetrator's Chain of Command while on Active Duty in the Air Force.



9590 9402 3292 7196 3156 95

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

**United States
Postal Service**

• Sender: Please print your name, address, and ZIP+4® in this box•

**The Ammons Law Firm
ATTN: CRYSTAL COWART
3700 Montrose Blvd
Houston, TX 77006**

re: Halcombe-Clavyce

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

LT. General Christopher F. Burne, Esq.
Through the Chief of the Claims & Tort Litigation Division
United States Air Force
Claims & Tort Litigation Division
1500 West Perimeter Rd., Suite 1700
Joint Base Andrews, Maryland 20762



9590 9402 3292 7196 3156 95

2. Article Number (Transfer from service label)

EL 699 220 385 US

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _T. Freda_  ☐ Agent  ☐ Addressee

B. Received by (Printed Name)     C. Date of Delivery

J. Freda     12/5/17

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☒ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)

☒ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053     Domestic Return Receipt

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

A. Signature

X _____ Freda

☐ Agent
☐ Addressee

B. Received by (Printed Name)

J. Freda

C. Date of Delivery

12/5/17

1. Article Addressed to:

LT. General Christopher F. Burne, Esq
Through the Chief of the Claims & Tort Litigation Division
United States Air Force
Claims & Tort Litigation Division
1500 West Perimeter Rd., Suite 1700
Joint Base Andrews, Maryland 20762

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:       ☐ No



9590 9402 3292 7196 3156 88

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☑ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)

☑ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

2. Article Number (Transfer from service label)

EL 699220394 US

PS Form 3811, July 2015 PSN 7530-02-000-9053

Domestic Return Receipt



USPS TRACKING #

9590 9402 3292 7196 3156 88

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

**United States
Postal Service**

• Sender: Please print your name, address, and ZIP+4® in this box•

**The Ammons Law Firm
ATTN: CRYSTAL COWART
3700 Montrose Blvd
Houston, TX 77006**

re: Holcombe - Joe



## THE AMMONS LAW FIRM

A LIMITED LIABILITY PARTNERSHIP

**ROBERT E. AMMONS**

*A Member of Texas, Arizona, Florida and New York State Bar*

**BOARD CERTIFIED - PERSONAL INJURY TRIAL LAW**     **BOARD CERTIFIED - CIVIL TRIAL ADVOCATE**

*Texas Board of Legal Specialization*     *National Board of Trial Advocacy*

November 27, 2017

Lt. General Christopher F. Burne, Esq.
Through the Chief of the Claims and Tort Litigation Division
United States Air Force
Claims and Tort Litigation Division
1500 West Perimeter Road
Suite 1700
Joint Base
Andrews, Maryland 20762

      RE: Federal Tort Claims Act SF-95 on Behalf of Claryce Holcombe

Dear General Burne:

      My firm represents Claryce Holcombe for the death of her son, as detailed in the enclosed material. We are serving these documents, including the SF-95 and attachments, upon you pursuant to 14 CFR 842.79(b).

      We look forward to further conversations with you and your staff in the near future, and remain available to speak with the Claims and Tort Division personnel if they have any questions regarding the Claim Packet or our representation. I may be reached at by telephone at (713) 523-1606 or by email at r.ammons@ammonslaw.com.

      Please provide copies noting receipt as provided in the self-addressed pre-paid envelope included. We look forward to working with you on these claims.

                       Very Respectfully,

                       Robert E. Ammons

| CLAIM FOR DAMAGE, INJURY, OR DEATH | | **INSTRUCTIONS:** Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROVED OMB NO. 1105-0008 |
|---|---|---|---|
| 1. Submit to Appropriate Federal Agency: | | 2. Name, address of claimant, and claimant's personal representative if any. (See instructions on reverse). Number, Street, City, State and Zip code | |
| Secretary of the Air Force Dr. Heather Wilson 1670 Air Force Pentagon Washington, DC 20330-1670 | | Claryce S. Holcombe (individually) 1387 County Road 304 Floresville, Texas 78114 | |

| 3. TYPE OF EMPLOYMENT | 4. DATE OF BIRTH | 5. MARITAL STATUS | 6. DATE AND DAY OF ACCIDENT | | 7. TIME (A.M. OR P.M.) |
|---|---|---|---|---|---|
| ☐ MILITARY  ☒ CIVILIAN | 12/04/1932 | married | 11/05/2017 | Sunday | 11:25 A.M. |

8. BASIS OF CLAIM (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof. Use additional pages if necessary).

See Attached Page

| 9. | PROPERTY DAMAGE |
|---|---|

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, Street, City, State, and Zip Code)

N/A

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF THE DAMAGE AND THE LOCATION OF WHERE THE PROPERTY MAY BE INSPECTED. (See instructions on reverse side).

N/A

| 10. | PERSONAL INJURY/WRONGFUL DEATH |
|---|---|

STATE THE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE THE NAME OF THE INJURED PERSON OR DECEDENT.

Claimant Claryce Holcombe's son was Bryan Holcombe, a member of the First Baptist Church of Sutherland Springs, Texas. Bryan Holcombe was shot in the back while walking to the church pulpit to lead the congregation in worship. He died on the floor of the church. Claryce Holcombe has suffered grievous mental anguish from the death of her son and the loss of his society, companionship and affection.

| 11. | WITNESSES |
|---|---|

| NAME | ADDRESS (Number, Street, City, State, and Zip Code) |
|---|---|
| Stephen Willeford | |
| Johnnie Langendorff | |
| Please see additional list attached | |

| 12. (See instructions on reverse). | | AMOUNT OF CLAIM (in dollars). | | |
|---|---|---|---|---|
| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights). | |
| 0.00 | | 25,000,000 | 25,000,000 | |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE INCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM.

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side). | 13b. PHONE NUMBER OF PERSON SIGNING FORM | 14. DATE OF SIGNATURE |
|---|---|---|
| *Claryce S. Holcombe* | (650) 393-0791 | 11/25/2017 |

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the Government. (See 31 U.S.C. 3729). | Fine, imprisonment, or both. (See 18 U.S.C. 287, 1001.) |

Authorized for Local Reproduction
Previous Edition is not Usable
95-109

NSN 7540-00-634-4046

STANDARD FORM 95 (REV. 2/2007)
PRESCRIBED BY DEPT OF JUSTICE
28 CFR 14.2

**INSURANCE COVERAGE**

In order that subrogation claims may be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of the vehicle or property.

15. Do you carry accident Insurance?   ☐ Yes   If yes, give name and address of insurance company (Number, Street, City, State, and Zip Code) and policy number.   ☒ No

16. Have you filed a claim with your insurance carrier in this instance, and if so, is it full coverage or deductible?   ☐ Yes  ☒ No   | 17. If deductible, state amount.

0.00

18. If a claim has been filed with your carrier, what action has your insurer taken or proposed to take with reference to your claim? (It is necessary that you ascertain these facts).
N/A

19. Do you carry public liability and property damage insurance?   ☐ Yes   If yes, give name and address of insurance carrier (Number, Street, City, State, and Zip Code).   ☒ No

**INSTRUCTIONS**

**Claims presented under the Federal Tort Claims Act should be submitted directly to the "appropriate Federal agency" whose employee(s) was involved in the incident. If the incident involves more than one claimant, each claimant should submit a separate claim form.**

**Complete all items - Insert the word NONE where applicable.**

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE, AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY

**Failure to completely execute this form or to supply the requested material within two years from the date the claim accrued may render your claim invalid. A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.**

If instruction is needed in completing this form, the agency listed in item #1 on the reverse side may be contacted. Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14. Many agencies have published supplementing regulations. If more than one agency is involved, please state each agency.

The claim may be filed by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with the claim establishing express authority to act for the claimant. A claim presented by an agent or legal representative must be presented in the name of the claimant. If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

If claimant intends to file for both personal injury and property damage, the amount for each must be shown in item number 12 of this form.

DAMAGES IN A **SUM CERTAIN** FOR INJURY TO OR LOSS OF PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT. THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN **TWO YEARS** AFTER THE CLAIM ACCRUES.

The amount claimed should be substantiated by competent evidence as follows:

*(a)* In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of the injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

*(b)* In support of claims for damage to property, which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

*(c)* In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident. Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

*(d)* Failure to specify a sum certain will render your claim invalid and may result in forfeiture of your rights.

**PRIVACY ACT NOTICE**

This Notice is provided in accordance with the Privacy Act, 5 U.S.C. 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.
   A. *Authority:* The requested information is solicited pursuant to one or more of the following: 5 U.S.C. 301, 28 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R. Part 14.

B. *Principal Purpose:* The information requested is to be used in evaluating claims.
C. *Routine Use:* See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.
D. *Effect of Failure to Respond:* Disclosure is voluntary. However, failure to supply the requested information or to execute the form may render your claim "invalid."

**PAPERWORK REDUCTION ACT NOTICE**

This notice is solely for the purpose of the Paperwork Reduction Act, 44 U.S.C. 3501. Public reporting burden for this collection of information is estimated to average 6 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Director, Torts Branch, Attention: Paperwork Reduction Staff, Civil Division, U.S. Department of Justice, Washington, DC 20530 or to the Office of Management and Budget. Do not mail completed form(s) to these addresses.

STANDARD FORM 95 REV. (2/2007) BACK

**RIDER TO FORM 95**

8.      The basis of this claim is under the Federal Tort Claims Act, 28 U.S.C. § 1346 and

28 U.S.C. § 2671, *et seq.*

This notice of claim is filed on behalf of claimant, Claryce Holcombe, who is the natural

parent of John Bryan Holcombe, deceased (referred to as "JB Holcombe"). This Claim arises from

the tragic shooting death of JB Holcombe on Sunday, November 5, 2017, on or about 11:30 A.M.

in the First Baptist Church of Sutherland Springs located in Sutherland Springs, Texas. Twenty-

six individuals were killed in the shooting, including decedent JB Holcombe, and twenty others

were seriously injured.

Simply put, JB Holcombe's death was caused, in whole or in part, by the institutional

failures of the United States Department of Defense, including, but not limited to, the United States

Air Force ("US Air Force"), in that these entities negligently, recklessly, carelessly and/or

egregiously failed to report pertinent criminal arrest, conviction and military discharge information

of the shooter into a federal database, as was required, which would have prevented and barred the

shooter from purchasing, owning, and/or possessing the firearms, ammunition and body armor that

he used in the shooting. Incredibly, and quite frankly tragically, the Department of Defense, the

US Air Force, and others, were aware as far back as 1997, and more specifically in at least 2015,

that the US Air Force (as well as other branches of the United States military) routinely failed to

report such required criminal arrest and conviction information. As a result of an internal review

conducted by the Inspector General of the Department of Defense which uncovered these repeated

failures, the US Air Force agreed that it would take "prompt action to ensure" that convicted

offenders are properly reported to appropriate federal databases to prevent them from legally

purchasing, owning, and/or possessing firearms, ammunition and/or body armor. Despite this

notice and call to action, the Department of Defense, specifically including, but not limited to, the US Air Force, utterly failed in their reporting obligations which was the proximate cause of the decedent JB Holcombe's death.

It is undisputed that the perpetrator and sole shooter in this action was former US Air Force member Airman Devin Patrick Kelley ("the shooter"). Upon information and belief, and as the result of a domestic dispute with his in-laws, the shooter entered the First Baptist Church on the morning of November 5, 2017 dressed in all black, clad in body armor and armed with a Ruger Semi-Automatic AR-556 rifle that he purchased from a legal and authorized vendor sometime in April 2016. The shooter killed 26 parishioners and injured 20 others, some critically. Upon leaving the church the shooter was confronted by a good Samaritan who shot the shooter twice – once in the leg and once in the chest. The shooter fled the scene and was involved in a high-speed car chase. He then took his own life after his car veered off the road.

Although the shooter undoubtedly "pulled the trigger" that resulted in the injuries and death of JB Holcombe and others, the failures of the US Air Force, and others, allowed the shooter to purchase, own and/or possess the semiautomatic rifle, ammunition and body armor he used, and it is these failures that were a proximate cause, in whole or in part, of the injuries and death of the decedent. The US military, specifically including the US Air Force, designed and implemented policies, procedures, regulations and/or guidelines that were specifically designed to prevent individuals such as the shooter from purchasing, owning and/or possessing firearms, ammunition and body armor. It is the failure by the US Air Force to abide by these policies, procedures, regulations and/or guidelines that directly caused this horrific tragedy.

It is undisputed that Airman Kelley was a member of the US Air Force, having been on active duty from 2009 until 2014 and stationed at Holloman Air Force Base located in Otero

County, New Mexico.  In April 2011 Airman Kelley married Tessa K. Loge, who had an infant son from a previous marriage.  It is not disputed that after his marriage, then-Airman Kelley was arrested for assault upon his wife and her son, wherein he inflicted serious injuries upon the two, including, but not limited to, fracturing the skull of the infant boy.  He was also charged with pointing a loaded gun at his wife, and two counts of threatening his spouse with an unloaded firearm.

Upon information and belief, because of these criminal charges a general Court Martial was convened and Airman Kelley was convicted of assault on his wife and her son on November 7, 2012. Due to these convictions Airman Kelley was sentenced to a year in military jail.  At that time, he admitted striking the infant boy "with a force likely to produce death or grievous bodily harm".  With respect to the assault against his spouse, Kelley admitted that he "hit, kicked, choked and pulled the hair" of his wife.  The couple were divorced while Kelley served his jail sentence in a naval brig located in San Diego, California.

Airman Kelley was also known to have made threats against his superiors in the Air Force as well as to have attempted to smuggle guns onto the base in violation of Air Force regulations and base standard operating procedures.  In addition, given the nature of the criminal charges pending against him, in the Spring of 2012, the Air Force involuntarily committed Airman Kelley to the Peak Behavioral Health Services, a mental facility located in Santa Teresa, New Mexico which has a dedicated unit for US military personnel.  On June 7, 2012 Airman Kelley jumped a fence and escaped from the mental facility.  He was apprehended by local law enforcement later that same day and was returned to the facility to await his court martial.  At the time of his apprehension, it was noted by local law enforcement authorities that Kelley was suffering from mental health issues and that he was a "danger to himself and others".

After capture, Kelley was detained at the mental health facility and ordered into pre-trial confinement while awaiting his court martial.  Upon information and belief, during this time Kelley used computers at the facility to attempt to purchase weapons and tactical gear via the internet and have those items shipped to a post office box located in San Antonio, Texas.  Upon information and belief, the US Air Force was specifically aware that Kelley attempted to make these firearm purchases while detained at the mental health facility.

Eventually, in May 2014, after serving his military prison sentence, the Air Force discharged Kelley with a "bad conduct discharge" rather than a dishonorable discharge, simply reducing him in Rank to that of E-1 rather than stripping him of his service.  Like his prior criminal convictions, the US Air Force utterly failed to enter his "bad conduct discharge" into federal databases.  A "bad conduct discharge" following court-martial was yet another event that should have disqualified Kelley from purchasing, owning or possessing firearms and ammunition.

Due to the foregoing, and most notably his assault arrest and convictions, bad conduct discharge post court-martial and involuntary commitment to a mental facility, the US Air Force, specifically including, but not limited to, the Office of Special Investigations at Holloman Air Force Base ("AFOSI"), and/or the HQ Air Force Security Forces ("HAF/A4S") were required to enter his November 2012 criminal arrest and conviction information into certain computerized databases, specifically including, the FBI's Criminal Justice Information Systems ("CJIS").  The CJIS comprises various computer databases, specifically including the National Crime Information Center ("NCIC") database, Uniform Crime Reporting, Fingerprint Identification and the IAFIS Program which includes both fingerprint and final criminal disposition data.  These databases are computerized databases for ready access by an authorized entity making an inquiry into the background of an individual and for prompt disclosure of information in the system from

other criminal justice agencies about crimes and criminals. Specifically, the NCIC database is accessed for a number of purposes, and is one such database that is required to be accessed whenever a person seeks to legally purchase certain firearms. Certain criminal convictions, specifically including those of which Airman Kelley was convicted, are required to be entered into the NCIC and other CJIS-related databases. Had Airman Kelley's criminal arrest, conviction and/or bad conduct discharge information been entered, as was required by US Air Force policies, procedures, regulations and/or guidelines, Airman Kelley would have been prevented and prohibited from purchasing, owning and/or possessing firearms, ammunition and body armor, specifically including the firearm and body armor that he used in the shooting.

Significantly, the Department of Defense has promulgated regulations that impose upon the various branches of the military, specifically including the US Air Force, certain reporting requirements when a serviceman is convicted of a crime. *See Department of Defense INSTRUCTION,* Number 5505.11 and subsequent revisions/changes. It is undisputed, and has been readily admitted by the US Air Force in the days following this horrific tragedy, that Airman Kelley's convictions and criminal history were required to be entered into the NCIC database and/or CJIS system but for reasons not presently known the Air Force utterly failed in their reporting obligations. It is also undisputed that had the information been entered into these databases by the Air Force at the time of his convictions in and around November 2012, as was required, Airman Kelley would have been prevented, prohibited and barred from purchasing, owning and/or possessing the firearms, ammunition and body armor used in this massacre and this tragedy would not have occurred.

The failures of the Department of Defense, specifically including the US Air Force, are not limited to their failure to timely and accurately enter and/or report Airman Kelley's criminal arrest

and conviction information into the appropriate computer database in November 2012. In February 2015 the Inspector General for the U.S. Department of Defense conducted a comprehensive review of the failures of the branches of the US military to promptly and accurately input criminal conviction information into the appropriate computer database, specifically including the NCIC database. *See Evaluation of Department of Defense Compliance with Criminal History Data Reporting Requirements, Report Number DODIG-2015-081,* dated February 12, 2015 (referred to as the "IG's Report").

The IG's Report examined the continuing failures of conviction reporting by the US Navy, US Air Force and US Marines. In his Report, the Inspector General recognized that as far back as 1997 the branches of the US military had not consistently submitted the required criminal arrest and conviction information to appropriate federal law enforcement agencies, including criminal information databases. *See IG Report,* at p. 12.

With respect to the US Air Force, the 2015 study took a sample of convicted individuals from June 2010 through and including October 31, 2012 (as mentioned above, Airman Kelley was convicted in November 2012 just days after the sample period). During this time frame, the Inspector General found that there were 358 criminal convictions of US Air Force personnel that mandated reporting obligations. However, only 248 fingerprint cards were entered into the appropriate database, representing a failure rate of approximately 31%. With respect to final criminal disposition information regarding these 358 convictions, only 245 final dispositions were reported, representing a failure rate of approximately 32%.

Due to these alarming failure rates (more than 3 out of 10 failures by the US Air Force to report required criminal arrest and conviction information) the Inspector General made certain recommendations to the branches of the US military, specifically including the US Air Force. The

first recommendation was for the US Air Force to submit and enter the missing fingerprint and final criminal disposition information for the missing individuals identified in the sample period into the appropriate computer databases. Upon review of the Inspector General's Report the US Air Force "agreed" with this recommendation. Unfortunately, Airman Kelley's conviction occurred in November 2012, a mere one month outside the sample examined by the Inspector General.

The Inspector General also recommended that due to the high failure rate the US Air Force "take prompt action" to ensure that **all** arrestee information is properly reported and entered in the various criminal history databases. The US Air Force also specifically "agreed" with the Inspector General's recommendation. *See IG Report,* at p. 10.

Notwithstanding that the US Air Force was specifically aware in 2015 (and likely well before) that on average more than 3 out of 10 criminal arrest and conviction information was not reported, and despite their acknowledgement that they would "promptly ensure" that such systemic failures were corrected, the US Air Force utterly failed the general public, and more specifically the decedent JB Holcombe and his family, by failing to ensure that Airman Kelley's criminal arrest and convictions were properly reported. Despite their specific prior knowledge, the US Air Force utterly and carelessly failed in their reporting obligations which allowed this tragedy to occur and cost the decedent JB Holcombe his life. Had the US Air Force done as required, the shooter would not have been able to purchase, own and/or possess the automatic rifle and body armor that he used to slaughter and injure more than 46 individuals.

Claimant's allegations of negligence are not limited to the fact that the US Air Force's failures allowed Kelley to purchase, own and/or possess firearms. The utterly careless and reckless failures of the US Air Force to satisfy their reporting obligations with respect to Airman Kelley's

criminal arrest and convictions resulted in numerous missed opportunities for various local law enforcement agencies to prevent further violence by Kelley. Upon information and belief, after his bad conduct discharge from the military local law enforcement personnel made more than 17 visits to Kelley's home on allegations ranging from animal cruelty to domestic violence and sexual assault. For example, on or about June 7, 2013, Comal County, Texas deputies responded to Kelley's home to investigate a report of "rape by force" allegedly perpetrated by Kelley. Without information as to Kelley's prior convictions, deputies investigated the report for months following the report, but no charges were brought once investigators believed Kelley moved to Colorado. Had the information regarding Kelley's criminal arrest and conviction for domestic violence been entered, as was required, Comal County law enforcement would have been aware of that information and perhaps been able to bring felony charges under the Texas Penal Code against Kelley in 2013.

In early 2014, local police in Texas responded to Kelley's home to investigate reports of domestic abuse of his then girlfriend Danielle Shields, but charges were not pursued after Shields told responding officers the report was the result of a misunderstanding. Had the US Air Force reported Airman Kelley's criminal arrest and convictions for domestic violence, local law enforcement would have had reason to further investigate any claim of misunderstanding and perhaps pursued felony charges under the Texas Penal Code against Kelley in 2014. In August 2014, Colorado law enforcement responded to Kelley's home to investigate claims of animal cruelty allegedly perpetrated by Kelley, resulting in a standoff with police once Kelley refused to come out of the home. Without information as to Kelley's prior convictions, law enforcement issued Kelley a citation rather arresting him. Had Colorado local law enforcement had information

regarding Kelley's violent criminal past, perhaps Kelley would have been arrested and incarcerated in August of 2014.

Had the information regarding Kelley's criminal arrest and conviction been entered, as was required, local law enforcement personnel would have been aware of that information when they conducted various welfare checks at the shooter's home in Texas in the months leading up to the shooting. Upon information and belief, local law enforcement also visited the shooter's home due to domestic assault allegations. Had they known that he was convicted of a prior domestic assault, they may have properly entered the home and seized any weapons that were visible, or pursued felony charges under the Texas Penal Code against Kelley at that time. As with his military convictions, any conviction for domestic violence after he was discharged from the military would have likewise barred, prohibited and/or prevented from purchasing, owning and/or possessing firearms, ammunition and body armor, including the semiautomatic rifle and body armor used in the massacre.

Based upon the foregoing, the injuries and death of decedent JB Holcombe was caused, in whole or in part, by the negligence, recklessness, and/or carelessness of the United States of America, through the US Air Force, including, but not limited to, in that the US Air Force failed to adhere to the regulations, policies, procedures, and/or guidelines issued by the Department of Defense in failing to report the shooter's criminal arrest and convictions to appropriate federal law enforcement agencies and databases, as was required, thereby allowing the shooter to purchase the semiautomatic rifle, ammunition and body armor used in the massacre; had the US Air Force complied with their necessary and mandatory reporting requirements, the shooter would have been barred, prohibited and/or prevented from purchasing, owning and/or possessing firearms, ammunition and body armor, including the semiautomatic rifle and body armor used in the

massacre and thus, the shooting would not have taken place; in that the US Air Force failed to comply with Department of Defense regulations, policies, procedures, and/or guidelines, specifically including, but not limited to, *Department of Defense INSTRUCTION,* Number 5505.11 and subsequent revisions/changes, thereby allowing the shooter to purchase the firearm, ammunition and body armor used in the shooting; in that the US Air Force failed to correct known deficiencies in its criminal arrest and conviction reporting obligations; in that despite its public statements to the contrary the US Air Force failed to adhere or heed the recommendations promulgated by the Inspector General of the Department of Defense concerning its systemic failures to properly report arrest and criminal conviction information; in that the US Air Force failed to comply with its obligations and duties regarding criminal arrest and conviction reporting; in that the US Air Force was specifically aware for years prior to the shooting that it had consistently failed to report required arrest and criminal conviction information and failed to correct these deficiencies; in that the US Air Force failed to appropriately abide by and follow its own internal procedures regarding criminal arrest and conviction information; created a dangerous condition to the public, and specifically to the decedent JB Holcombe, by failing to adhere, comply and/or follow required criminal arrest and conviction information reporting obligations; in that the US Air Force breached the duty of care owed to the public generally, and to the decedent JB Holcombe specifically, in that it failed to report required criminal arrest and conviction information; in that the US Air Force failed to discuss their deficiencies with other branches of the US military and/or other governmental agencies in an attempt to correct these known deficiencies; in that the US Air Force unleashed on the public a dangerous individual who had the ability to purchase firearms, ammunition and body armor when he should have been prevented from doing so; and was otherwise careless, reckless and/or negligent all of which individually and/or jointly,

proximately caused, in whole or in part, the subject shooting and the injuries and death of the decedent JB Holcombe.

The instant notice of claim is filed by and on behalf of the claimant, Claryce Holcombe, the parent of the decedent JB Holcombe, and on behalf of the decedent's estate, its heirs, and/or any individual entitled to recover under the applicable damages law, including, but not limited to, $25,000,000 for wrongful death damages suffered as a result of the death of the decedent as set forth above.

Claryce Holcombe seeks all wrongful death damages for her losses only under the applicable law, including, but not limited to, all economic and non-economic damages, including the loss of past and future income, support, society, love, grief, consortium, services, guidance, care, comfort, companionship and inheritance of the decedent, loss of life's pleasures, loss of enjoyment of life, damages for mental anguish and mental pain and suffering, as well as any other damages recoverable under the applicable law.

## Section 11

WITNESS:

1)   Stephen Willeford, 55, wounded
2)   Farida Brown, 73, wounded
3)   Rosanna Solis, adult, wounded
4)   Joaquin Ramirez, adult, wounded
6)   Rihanna Garza (Garcia), 9, daughter of Joann Ward, wounded
7)   David Colbath, wounded
8)   Kris Workman, wounded
9)   Zachary Poston, wounded
10)  Johnnie Langendorff, 27, drove Stephen Willeford to catch perpetrator
11)  Ms. Terri Smith, 54,
12)  Mr. Lorenzo Flores, 56,
13)  Kevin Jordan, 30,
14)  David Brown, wounded
15)  Sue Soto,
16)  Ted Montgomery, Sunday school director

17) David Casillas, 55, lives nearby
18) David Flores, 26, son of Lorenzo Flores, witness
19) Inspector General of the United States Air Force in 2014
20) Various yet identified members of perpitrator's Chain of Command while on Active Duty in the Air Force.

| CLAIM FOR DAMAGE, INJURY, OR DEATH | INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROVED OMB NO. 1105 |
|---|---|---|

| 1. Submit to Appropriate Federal Agency: | 2. Name, address of claimant, and claimant's personal representative, if any. (See instructions on reverse). Number, Street, City, State and Zip code. |
|---|---|
| Secretary of the Air Force<br>Dr. Heather Wilson<br>1670 Air Force Pentagon<br>Washington, DC 20330-1670 | Claryce S. Holcombe (individually)<br>1387 County Road 304<br>Floresville, Texas 78114 |

| 3. TYPE OF EMPLOYMENT | 4. DATE OF BIRTH | 5. MARITAL STATUS | 6. DATE AND DAY OF ACCIDENT | | 7. TIME (A.M. OR P.M.) |
|---|---|---|---|---|---|
| ☐ MILITARY  ☒ CIVILIAN | 12/04/1932 | married | 11/05/2017 | Sunday | 11:25 A.M. |

8. BASIS OF CLAIM (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof. Use additional pages if necessary).

See Attached Page

**PROPERTY DAMAGE**

9.

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, Street, City, State, and Zip Code).

N/A

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF THE DAMAGE AND THE LOCATION OF WHERE THE PROPERTY MAY BE INSPECTED. (See instructions on reverse side).

N/A

**PERSONAL INJURY/WRONGFUL DEATH**

10.

STATE THE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE THE NAME OF THE INJURED PERSON OR DECEDENT.

Claryce Holcombe's son was Bryan Holcombe, a member of the First Baptist Church of Sutherland Springs, Texas. Bryan Holcombe was shot in the back while walking to the church pulpit to lead the congregation in worship. He died on the floor of the church. Claryce Holcombe has suffered grievous mental anguish from the death of her son and the loss of his society, companionship and affection.

| 11. | WITNESSES | |
|---|---|---|
| NAME | ADDRESS (Number, Street, City, State, and Zip Code) | |
| Stephen Willeford | | |
| Johnnie Langendorff | | |
| Please see additional list attached | | |

| 12. (See instructions on reverse). | | AMOUNT OF CLAIM (in dollars) | |
|---|---|---|---|
| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights). |
| 0.00 | | 25,000,000 | 25,000,000 |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE INCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM.

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side). | 13b. PHONE NUMBER OF PERSON SIGNING FORM | 14. DATE OF SIGNATURE |
|---|---|---|
| *Claryce S Holcombe* | (830) 393-0791 | 11/25/2017 |

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the Government. (See 31 U.S.C. 3729). | Fine, imprisonment, or both. (See 18 U.S.C. 287, 1001.) |

| Authorized for Local Reproduction | NSN 7540-00-634-4046 | STANDARD FORM 95 (REV. 2/2007) |
|---|---|---|
| Previous Edition is not Usable | | PRESCRIBED BY DEPT. OF JUSTICE |
| 95-109 | | 28 CFR 14.2 |

SIGN HERE

## INSURANCE COVERAGE

In order that subrogation claims may be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of the vehicle or property.

**15. Do you carry accident insurance?** ☐ Yes   If yes, give name and address of insurance company (Number, Street, City, State, and Zip Code) and policy number. ☒ No

**16. Have you filed a claim with your insurance carrier in this instance, and if so, is it full coverage or deductible?** ☐ Yes ☒ No

**17. If deductible, state amount.**
0.00

**18. If a claim has been filed with your carrier, what action has your insurer taken or proposed to take with reference to your claim? (It is necessary that you ascertain these facts.)**
N/A

**19. Do you carry public liability and property damage insurance?** ☐ Yes   If yes, give name and address of insurance carrier (Number, Street, City, State, and Zip Code). ☒ No

## INSTRUCTIONS

**Claims presented under the Federal Tort Claims Act should be submitted directly to the "appropriate Federal agency" whose employee(s) was involved in the incident. If the incident involves more than one claimant, each claimant should submit a separate claim form.**

**Complete all items - Insert the word NONE where applicable.**

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE, AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY

Failure to completely execute this form or to supply the requested material within two years from the date the claim accrued may render your claim invalid. A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.

If instruction is needed in completing this form, the agency listed in item #1 on the reverse side may be contacted. Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14. Many agencies have published supplementing regulations. If more than one agency is involved, please state each agency.

The claim may be filed by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with the claim establishing express authority to act for the claimant. A claim presented by an agent or legal representative must be presented in the name of the claimant. If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

If claimant intends to file for both personal injury and property damage, the amount for each must be shown in item number 12 of this form.

DAMAGES IN A SUM CERTAIN FOR INJURY TO OR LOSS OF PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT. THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN TWO YEARS AFTER THE CLAIM ACCRUES.

The amount claimed should be substantiated by competent evidence as follows:

(a) In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of the injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

(b) In support of claims for damage to property, which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

(c) In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident. Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

(d) Failure to specify a sum certain will render your claim invalid and may result in forfeiture of your rights.

## PRIVACY ACT NOTICE

This Notice is provided in accordance with the Privacy Act, 5 U.S.C. 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.
  A. Authority: The requested information is solicited pursuant to one or more of the following: 5 U.S.C. 301, 28 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R. Part 14.

B. Principal Purpose: The information requested is to be used in evaluating claims.
C. Routine Use: See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.
D. Effect of Failure to Respond: Disclosure is voluntary. However, failure to supply the requested information or to execute the form may render your claim "invalid."

## PAPERWORK REDUCTION ACT NOTICE

This notice is solely for the purpose of the Paperwork Reduction Act, 44 U.S.C. 3501. Public reporting burden for this collection of information is estimated to average 6 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Director, Torts Branch, Attention: Paperwork Reduction Staff, Civil Division, U.S. Department of Justice, Washington, DC 20530 or to the Office of Management and Budget. Do not mail completed form(s) to these addresses.

STANDARD FORM 95 REV. (2/2007) BACK

## RIDER TO FORM 95

8.      The basis of this claim is under the Federal Tort Claims Act, 28 U.S.C. § 1346 and 28 U.S.C. § 2671, *et seq.*

This notice of claim is filed on behalf of claimant, Claryce Holcombe, who is the natural parent of John Bryan Holcombe, deceased (referred to as "JB Holcombe"). This Claim arises from the tragic shooting death of JB Holcombe on Sunday, November 5, 2017, on or about 11:30 A.M. in the First Baptist Church of Sutherland Springs located in Sutherland Springs, Texas. Twenty-six individuals were killed in the shooting, including decedent JB Holcombe, and twenty others were seriously injured.

Simply put, JB Holcombe's death was caused, in whole or in part, by the institutional failures of the United States Department of Defense, including, but not limited to, the United States Air Force ("US Air Force"), in that these entities negligently, recklessly, carelessly and/or egregiously failed to report pertinent criminal arrest, conviction and military discharge information of the shooter into a federal database, as was required, which would have prevented and barred the shooter from purchasing, owning, and/or possessing the firearms, ammunition and body armor that he used in the shooting. Incredibly, and quite frankly tragically, the Department of Defense, the US Air Force, and others, were aware as far back as 1997, and more specifically in at least 2015, that the US Air Force (as well as other branches of the United States military) routinely failed to report such required criminal arrest and conviction information. As a result of an internal review conducted by the Inspector General of the Department of Defense which uncovered these repeated failures, the US Air Force agreed that it would take "prompt action to ensure" that convicted offenders are properly reported to appropriate federal databases to prevent them from legally purchasing, owning, and/or possessing firearms, ammunition and/or body armor. Despite this

notice and call to action, the Department of Defense, specifically including, but not limited to, the US Air Force, utterly failed in their reporting obligations which was the proximate cause of the decedent JB Holcombe's death.

It is undisputed that the perpetrator and sole shooter in this action was former US Air Force member Airman Devin Patrick Kelley ("the shooter"). Upon information and belief, and as the result of a domestic dispute with his in-laws, the shooter entered the First Baptist Church on the morning of November 5, 2017 dressed in all black, clad in body armor and armed with a Ruger Semi-Automatic AR-556 rifle that he purchased from a legal and authorized vendor sometime in April 2016. The shooter killed 26 parishioners and injured 20 others, some critically. Upon leaving the church the shooter was confronted by a good Samaritan who shot the shooter twice – once in the leg and once in the chest. The shooter fled the scene and was involved in a high-speed car chase. He then took his own life after his car veered off the road.

Although the shooter undoubtedly "pulled the trigger" that resulted in the injuries and death of JB Holcombe and others, the failures of the US Air Force, and others, allowed the shooter to purchase, own and/or possess the semiautomatic rifle, ammunition and body armor he used, and it is these failures that were a proximate cause, in whole or in part, of the injuries and death of the decedent. The US military, specifically including the US Air Force, designed and implemented policies, procedures, regulations and/or guidelines that were specifically designed to prevent individuals such as the shooter from purchasing, owning and/or possessing firearms, ammunition and body armor. It is the failure by the US Air Force to abide by these policies, procedures, regulations and/or guidelines that directly caused this horrific tragedy.

It is undisputed that Airman Kelley was a member of the US Air Force, having been on active duty from 2009 until 2014 and stationed at Holloman Air Force Base located in Otero

County, New Mexico.  In April 2011 Airman Kelley married Tessa K. Loge, who had an infant son from a previous marriage.  It is not disputed that after his marriage, then-Airman Kelley was arrested for assault upon his wife and her son, wherein he inflicted serious injuries upon the two, including, but not limited to, fracturing the skull of the infant boy.  He was also charged with pointing a loaded gun at his wife, and two counts of threatening his spouse with an unloaded firearm.

Upon information and belief, because of these criminal charges a general Court Martial was convened and Airman Kelley was convicted of assault on his wife and her son on November 7, 2012.  Due to these convictions Airman Kelley was sentenced to a year in military jail.  At that time, he admitted striking the infant boy "with a force likely to produce death or grievous bodily harm".  With respect to the assault against his spouse, Kelley admitted that he "hit, kicked, choked and pulled the hair" of his wife.  The couple were divorced while Kelley served his jail sentence in a naval brig located in San Diego, California.

Airman Kelley was also known to have made threats against his superiors in the Air Force as well as to have attempted to smuggle guns onto the base in violation of Air Force regulations and base standard operating procedures.  In addition, given the nature of the criminal charges pending against him, in the Spring of 2012, the Air Force involuntarily committed Airman Kelley to the Peak Behavioral Health Services, a mental facility located in Santa Teresa, New Mexico which has a dedicated unit for US military personnel.  On June 7, 2012 Airman Kelley jumped a fence and escaped from the mental facility.  He was apprehended by local law enforcement later that same day and was returned to the facility to await his court martial.  At the time of his apprehension, it was noted by local law enforcement authorities that Kelley was suffering from mental health issues and that he was a "danger to himself and others".

After capture, Kelley was detained at the mental health facility and ordered into pre-trial confinement while awaiting his court martial.  Upon information and belief, during this time Kelley used computers at the facility to attempt to purchase weapons and tactical gear via the internet and have those items shipped to a post office box located in San Antonio, Texas.  Upon information and belief, the US Air Force was specifically aware that Kelley attempted to make these firearm purchases while detained at the mental health facility.

Eventually, in May 2014, after serving his military prison sentence, the Air Force discharged Kelley with a "bad conduct discharge" rather than a dishonorable discharge, simply reducing him in Rank to that of E-1 rather than stripping him of his service.  Like his prior criminal convictions, the US Air Force utterly failed to enter his "bad conduct discharge" into federal databases.  A "bad conduct discharge" following court-martial was yet another event that should have disqualified Kelley from purchasing, owning or possessing firearms and ammunition.

Due to the foregoing, and most notably his assault arrest and convictions, bad conduct discharge post court-martial and involuntary commitment to a mental facility, the US Air Force, specifically including, but not limited to, the Office of Special Investigations at Holloman Air Force Base ("AFOSI"), and/or the HQ Air Force Security Forces ("HAF/A4S") were required to enter his November 2012 criminal arrest and conviction information into certain computerized databases, specifically including, the FBI's Criminal Justice Information Systems ("CJIS").  The CJIS comprises various computer databases, specifically including the National Crime Information Center ("NCIC") database, Uniform Crime Reporting, Fingerprint Identification and the IAFIS Program which includes both fingerprint and final criminal disposition data.  These databases are computerized databases for ready access by an authorized entity making an inquiry into the background of an individual and for prompt disclosure of information in the system from

other criminal justice agencies about crimes and criminals. Specifically, the NCIC database is accessed for a number of purposes, and is one such database that is required to be accessed whenever a person seeks to legally purchase certain firearms.  Certain criminal convictions, specifically including those of which Airman Kelley was convicted, are required to be entered into the NCIC and other CJIS-related databases.  Had Airman Kelley's criminal arrest, conviction and/or bad conduct discharge information been entered, as was required by US Air Force policies, procedures, regulations and/or guidelines, Airman Kelley would have been prevented and prohibited from purchasing, owning and/or possessing firearms, ammunition and body armor, specifically including the firearm and body armor that he used in the shooting.

Significantly, the Department of Defense has promulgated regulations that impose upon the various branches of the military, specifically including the US Air Force, certain reporting requirements when a serviceman is convicted of a crime. *See Department of Defense INSTRUCTION,* Number 5505.11 and subsequent revisions/changes. It is undisputed, and has been readily admitted by the US Air Force in the days following this horrific tragedy, that Airman Kelley's convictions and criminal history were required to be entered into the NCIC database and/or CJIS system but for reasons not presently known the Air Force utterly failed in their reporting obligations.  It is also undisputed that had the information been entered into these databases by the Air Force at the time of his convictions in and around November 2012, as was required, Airman Kelley would have been prevented, prohibited and barred from purchasing, owning and/or possessing the firearms, ammunition and body armor used in this massacre and this tragedy would not have occurred.

The failures of the Department of Defense, specifically including the US Air Force, are not limited to their failure to timely and accurately enter and/or report Airman Kelley's criminal arrest

and conviction information into the appropriate computer database in November 2012. In February 2015 the Inspector General for the U.S. Department of Defense conducted a comprehensive review of the failures of the branches of the US military to promptly and accurately input criminal conviction information into the appropriate computer database, specifically including the NCIC database. *See Evaluation of Department of Defense Compliance with Criminal History Data Reporting Requirements, Report Number DODIG-2015-081*, dated February 12, 2015 (referred to as the "IG's Report").

The IG's Report examined the continuing failures of conviction reporting by the US Navy, US Air Force and US Marines. In his Report, the Inspector General recognized that as far back as 1997 the branches of the US military had not consistently submitted the required criminal arrest and conviction information to appropriate federal law enforcement agencies, including criminal information databases. *See IG Report,* at p. 12.

With respect to the US Air Force, the 2015 study took a sample of convicted individuals from June 2010 through and including October 31, 2012 (as mentioned above, Airman Kelley was convicted in November 2012 just days after the sample period). During this time frame, the Inspector General found that there were 358 criminal convictions of US Air Force personnel that mandated reporting obligations. However, only 248 fingerprint cards were entered into the appropriate database, representing a failure rate of approximately 31%. With respect to final criminal disposition information regarding these 358 convictions, only 245 final dispositions were reported, representing a failure rate of approximately 32%.

Due to these alarming failure rates (more than 3 out of 10 failures by the US Air Force to report required criminal arrest and conviction information) the Inspector General made certain recommendations to the branches of the US military, specifically including the US Air Force. The

first recommendation was for the US Air Force to submit and enter the missing fingerprint and final criminal disposition information for the missing individuals identified in the sample period into the appropriate computer databases. Upon review of the Inspector General's Report the US Air Force "agreed" with this recommendation. Unfortunately, Airman Kelley's conviction occurred in November 2012, a mere one month outside the sample examined by the Inspector General.

The Inspector General also recommended that due to the high failure rate the US Air Force "take prompt action" to ensure that all arrestee information is properly reported and entered in the various criminal history databases. The US Air Force also specifically "agreed" with the Inspector General's recommendation. *See IG Report,* at p. 10.

Notwithstanding that the US Air Force was specifically aware in 2015 (and likely well before) that on average more than 3 out of 10 criminal arrest and conviction information was not reported, and despite their acknowledgement that they would "promptly ensure" that such systemic failures were corrected, the US Air Force utterly failed the general public, and more specifically the decedent JB Holcombe and his family, by failing to ensure that Airman Kelley's criminal arrest and convictions were properly reported. Despite their specific prior knowledge, the US Air Force utterly and carelessly failed in their reporting obligations which allowed this tragedy to occur and cost the decedent JB Holcombe his life. Had the US Air Force done as required, the shooter would not have been able to purchase, own and/or possess the automatic rifle and body armor that he used to slaughter and injure more than 46 individuals.

Claimant's allegations of negligence are not limited to the fact that the US Air Force's failures allowed Kelley to purchase, own and/or possess firearms. The utterly careless and reckless failures of the US Air Force to satisfy their reporting obligations with respect to Airman Kelley's

criminal arrest and convictions resulted in numerous missed opportunities for various local law enforcement agencies to prevent further violence by Kelley. Upon information and belief, after his bad conduct discharge from the military local law enforcement personnel made more than 17 visits to Kelley's home on allegations ranging from animal cruelty to domestic violence and sexual assault. For example, on or about June 7, 2013, Comal County, Texas deputies responded to Kelley's home to investigate a report of "rape by force" allegedly perpetrated by Kelley. Without information as to Kelley's prior convictions, deputies investigated the report for months following the report, but no charges were brought once investigators believed Kelley moved to Colorado. Had the information regarding Kelley's criminal arrest and conviction for domestic violence been entered, as was required, Comal County law enforcement would have been aware of that information and perhaps been able to bring felony charges under the Texas Penal Code against Kelley in 2013.

In early 2014, local police in Texas responded to Kelley's home to investigate reports of domestic abuse of his then girlfriend Danielle Shields, but charges were not pursued after Shields told responding officers the report was the result of a misunderstanding. Had the US Air Force reported Airman Kelley's criminal arrest and convictions for domestic violence, local law enforcement would have had reason to further investigate any claim of misunderstanding and perhaps pursued felony charges under the Texas Penal Code against Kelley in 2014. In August 2014, Colorado law enforcement responded to Kelley's home to investigate claims of animal cruelty allegedly perpetrated by Kelley, resulting in a standoff with police once Kelley refused to come out of the home. Without information as to Kelley's prior convictions, law enforcement issued Kelley a citation rather arresting him. Had Colorado local law enforcement had information

regarding Kelley's violent criminal past, perhaps Kelley would have been arrested and incarcerated in August of 2014.

Had the information regarding Kelley's criminal arrest and conviction been entered, as was required, local law enforcement personnel would have been aware of that information when they conducted various welfare checks at the shooter's home in Texas in the months leading up to the shooting. Upon information and belief, local law enforcement also visited the shooter's home due to domestic assault allegations. Had they known that he was convicted of a prior domestic assault, they may have properly entered the home and seized any weapons that were visible, or pursued felony charges under the Texas Penal Code against Kelley at that time. As with his military convictions, any conviction for domestic violence after he was discharged from the military would have likewise barred, prohibited and/or prevented from purchasing, owning and/or possessing firearms, ammunition and body armor, including the semiautomatic rifle and body armor used in the massacre.

Based upon the foregoing, the injuries and death of decedent JB Holcombe was caused, in whole or in part, by the negligence, recklessness, and/or carelessness of the United States of America, through the US Air Force, including, but not limited to, in that the US Air Force failed to adhere to the regulations, policies, procedures, and/or guidelines issued by the Department of Defense in failing to report the shooter's criminal arrest and convictions to appropriate federal law enforcement agencies and databases, as was required, thereby allowing the shooter to purchase the semiautomatic rifle, ammunition and body armor used in the massacre; had the US Air Force complied with their necessary and mandatory reporting requirements, the shooter would have been barred, prohibited and/or prevented from purchasing, owning and/or possessing firearms, ammunition and body armor, including the semiautomatic rifle and body armor used in the

massacre and thus, the shooting would not have taken place; in that the US Air Force failed to comply with Department of Defense regulations, policies, procedures, and/or guidelines, specifically including, but not limited to, *Department of Defense INSTRUCTION*, Number 5505.11 and subsequent revisions/changes, thereby allowing the shooter to purchase the firearm, ammunition and body armor used in the shooting; in that the US Air Force failed to correct known deficiencies in its criminal arrest and conviction reporting obligations; in that despite its public statements to the contrary the US Air Force failed to adhere or heed the recommendations promulgated by the Inspector General of the Department of Defense concerning its systemic failures to properly report arrest and criminal conviction information; in that the US Air Force failed to comply with its obligations and duties regarding criminal arrest and conviction reporting; in that the US Air Force was specifically aware for years prior to the shooting that it had consistently failed to report required arrest and criminal conviction information and failed to correct these deficiencies; in that the US Air Force failed to appropriately abide by and follow its own internal procedures regarding criminal arrest and conviction information; created a dangerous condition to the public, and specifically to the decedent JB Holcombe, by failing to adhere, comply and/or follow required criminal arrest and conviction information reporting obligations; in that the US Air Force breached the duty of care owed to the public generally, and to the decedent JB Holcombe specifically, in that it failed to report required criminal arrest and conviction information; in that the US Air Force failed to discuss their deficiencies with other branches of the US military and/or other governmental agencies in an attempt to correct these known deficiencies; in that the US Air Force unleashed on the public a dangerous individual who had the ability to purchase firearms, ammunition and body armor when he should have been prevented from doing so; and was otherwise careless, reckless and/or negligent all of which individually and/or jointly,

proximately caused, in whole or in part, the subject shooting and the injuries and death of the decedent JB Holcombe.

The instant notice of claim is filed by and on behalf of the claimant, Claryce Holcombe, the parent of the decedent JB Holcombe, and on behalf of the decedent's estate, its heirs, and/or any individual entitled to recover under the applicable damages law, including, but not limited to, $25,000,000 for wrongful death damages suffered as a result of the death of the decedent as set forth above.

Claryce Holcombe seeks all wrongful death damages for her losses only under the applicable law, including, but not limited to, all economic and non-economic damages, including the loss of past and future income, support, society, love, grief, consortium, services, guidance, care, comfort, companionship and inheritance of the decedent, loss of life's pleasures, loss of enjoyment of life, damages for mental anguish and mental pain and suffering, as well as any other damages recoverable under the applicable law.

## Section 11

WITNESS:

1) Stephen Willeford, 55, wounded
2) Farida Brown, 73, wounded
3) Rosanna Solis, adult, wounded
4) Joaquin Ramirez, adult, wounded
6) Rihanna Garza (Garcia), 9, daughter of Joann Ward, wounded
7) David Colbath, wounded
8) Kris Workman, wounded
9) Zachary Poston, wounded
10) Johnnie Langendorff, 27, drove Stephen Willeford to catch perpetrator
11) Ms. Terri Smith, 54,
12) Mr. Lorenzo Flores, 56,
13) Kevin Jordan, 30,
14) David Brown, wounded
15) Sue Soto,
16) Ted Montgomery, Sunday school director

17)    David Casillas, 55, lives nearby
18)    David Flores, 26, son of Lorenzo Flores, witness
19)    Inspector General of the United States Air Force in 2014
20)    Various yet identified members of perpitrator's Chain of Command while on Active Duty in the Air Force.



USPS TRACKING #

9590 9402 3292 7196 3156 95

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

**United States
Postal Service**

• Sender: Please print your name, address, and ZIP+4® in this box•

**The Ammons Law Firm
ATTN: CRYSTAL COWART
3700 Montrose Blvd
Houston, TX 77006**

re: Halcombe-Claryce

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

LT. General Christopher F. Burne, Esq.
Through the Chief of the Claims & Tort Litigation Division
United States Air Force
Claims & Tort Litigation Division
1500 West Perimeter Rd., Suite 1700
Joint Base Andrews, Maryland 20762



9590 9402 3292 7196 3156 95

2. Article Number (Transfer from service label)

EL699 220 385 US

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _J. Freda_    ☐ Agent
                ☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery

J. Freda    12/5/17

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:         ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☒ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)

☒ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053    Domestic Return Receipt

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

A. Signature

X _____ Freda _____  ☐ Agent
                                     ☐ Addressee

B. Received by (Printed Name)     C. Date of Delivery
J. Freda                          12/5/17

1. Article Addressed to:
LT. General Christopher F. Burne, Esq.
Through the Chief of the Claims & Tort Litigation
Division
United States Air Force
Claims & Tort Litigation Division
1500 West Perimeter Rd., Suite 1700
Joint Base Andrews, Maryland 20762

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No



9590 9402 3292 7196 3156 88

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☑ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery
   (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

2. Article Number (Transfer from service label)
EL 699220394 US

PS Form 3811, July 2015 PSN 7530-02-000-9053     Domestic Return Receipt



USPS TRACKING #

9590 9402 3292 7196 3156 88

**United States
Postal Service**

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4® in this box•

**The Ammons Law Firm
ATTN: CRYSTAL COWART
3700 Montrose Blvd
Houston, TX 77006**

re: Holcombe - Joe

**Crystal Cowart**

| | |
|---|---|
| **From:** | auto-reply@usps.com |
| **Sent:** | Monday, December 04, 2017 5:28 PM |
| **To:** | Crystal Cowart |
| **Subject:** | USPS® Item Delivered EL699220385US |



Hello **Crystal Cowart**,

Your item was delivered at 6:03 pm on December 4, 2017 in ANDREWS AIR FORCE BASE, MD 20762 to WING. The item was signed for by Y MENLINA.

Tracking Number: <u>**EL699220385US**</u>







Visit **USPS Tracking**® to check the most up-to-date status of your package. Sign up for **Informed Delivery**® to digitally preview the address side of your incoming letter-sized mail and manage your packages scheduled to arrive soon! To update how frequently you receive emails from USPS, log in to your **USPS.com** account.

Want regular updates on your package? **Set up text alerts**.



1

**Crystal Cowart**

| | |
|---|---|
| **From:** | auto-reply@usps.com |
| **Sent:** | Monday, December 04, 2017 5:29 PM |
| **To:** | Crystal Cowart |
| **Subject:** | USPS® Item Delivered EL699220394US |



Hello **Crystal Cowart**,

Your item was delivered at 6:03 pm on December 4, 2017 in ANDREWS AIR FORCE BASE, MD 20762 to WING. The item was signed for by Y MENLINA.

Tracking Number: **EL699220394US**

**Delivered**





Visit **USPS Tracking**® to check the most up-to-date status of your package. Sign up for **Informed Delivery**® to digitally preview the address side of your incoming letter-sized mail and manage your packages scheduled to arrive soon! To update how frequently you receive emails from USPS, log in to your **USPS.com** account.

Want regular updates on your package? **Set up text alerts**.

