IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

Joe Holcombe, *et al.*,
    Plaintiffs,

v.

United States of America,
    Defendant.

Civil Action No. 5:18-cv-555-XR

*Consolidated with*:
  Nos. 5:18-cv-712-XR; 5:18-cv-881-XR;
  5:18-cv-944-XR; 5:18-cv-949-XR;
  5:18-cv-951-XR; 5:18-cv-1151-XR

PLAINTIFFS' RESPONSE TO THE GOVERNMENT'S
MOTION TO DISMISS

Jamal K. Alsaffar
Tom Jacob
WHITEHURST, HARKNESS, BREES, CHENG,
ALSAFFAR & HIGGINBOTHAM & JACOB PLLC
7500 Rialto Blvd, Bldg Two, Ste 250
Austin, TX 78735
Phone: (512) 476-4346
Fax: (512) 476-4400
jalsaffar@nationaltriallaw.com
tjacob@nationaltriallaw.com
  Counsel for Vidal, McNulty, and Wall

Jason P. Steed
KILPATRICK TOWNSEND & STOCKTON LLP
2001 Ross Avenue, Suite 4400
Dallas, TX  75201
Phone: (214) 922-7112
Fax: (214) 853-5731
jsteed@kilpatricktownsend.com
  Counsel for Vidal, McNulty, and Wall

**ORAL ARGUMENT REQUESTED**

April A. Strahan
Robert E. Ammons
THE AMMONS LAW FIRM
3700 Montrose Blvd.
Houston, TX 77006
Phone: (713) 523-1606
Fax: (713) 523-4159
april@ammonslaw.com
rob@ammonslaw.com
  Counsel for Holcombe and Ramsey


Daniel D. Barks
SPEISER KRAUSE, P.C.
5555 Glenridge Connector, Suite 550
Atlanta, GA 30342
Phone: (404) 751-0632
Fax: (866) 936-6282
ddb@speiserkrause.com
  Counsel for Holcombe


Dennis Charles Peery
R. Craig Bettis
TYLER & PEERY
5822 West IH 10
San Antonio, TX 78201
Phone: (210) 340-0900
Fax: (210) 736-9197
d.peery@tylerpeery.com
cbettis@tylerpeery.com
  Counsel for Uhl


George LeGrand
Stanley Bernstein
LEGRAND & BERNSTEIN
2511 N. Saint Mary's St.
San Antonio, Texas 78212
Phone: (210) 733-9439
Fax: (210) 735-3542
tegrande@aol.com
tiburonel@aol.com
  Counsel for Wall

Daniel J.T. Sciano
TINSMAN & SCIANO
10107 McAllister Freeway
San Antonio, TX 78216
Phone: (210) 225-3121
Fax: (210) 225-6235
dsciano@tsslawyers.com
  Counsel for Amador


Mark W. Collmer
COLLMER LAW FIRM
3700 Montrose
Houston, TX 77006
Phone: (713) 337-4040
Fax: (713) 337-4044
ddb@speiserkrause.com
  Counsel for Holcombe


Tim Maloney
Paul E. Campolo
MALONEY & CAMPOLO, L.L.P.
926 S. Alamo
San Antonio, TX 78205
Phone: (210) 922-2200
Fax: (210) 923-1313
timmaloney@yahoo.com
pcampolo@maloneyandcampolo.com
  Counsel for Ramsey

# Table of Contents

Table of Contents ................................................................................ 3

Table of Authorities ............................................................................ 4

Factual Background ............................................................................. 9

Summary of Argument ...................................................................... 11

Standard of Review ........................................................................... 13

Argument & Authorities .................................................................... 13

1. The Government can be held liable under the FTCA because a private person in similar circumstances can be held liable under Texas law. ................................................................................. 13

    1.1. Private persons in Texas can be liable for negligence *per se* based on the breach of civil statutory duties. ............................ 15

    1.2. Private persons in Texas can be liable for negligence *per se* based on violations of the Brady Act. ........................................ 19

    1.3. Private persons in Texas can be liable for negligence based on a breach of other statutory duties to report or to inform. ............ 20

    1.4. Private persons in Texas can be liable for negligence *per se* based on the violation of a statute designed to prevent criminal conduct. .............................................................................. 21

    1.5. Private persons in Texas can be liable for negligence based on analogous common-law duties. .............................................. 23

    1.6. The Government's arguments are without merit. ..................... 25

2. The misrepresentation exception does not apply because this case does not involve misrepresentation claims. ..................................... 33

    2.1. The misrepresentation exception does not apply because Plaintiffs did not rely on any Government misstatement. ......... 34

    2.2. The misrepresentation exception does not apply because this case is about the Government's operational negligence. ............ 37

    2.3. The Government's arguments are without merit. ..................... 40

3. The Government's defense based on "the Brady Act itself" is precluded by the plain text of the Brady Act itself. ......................... 46

Conclusion ....................................................................................... 52

Certificate of Service ........................................................................ 54

TABLE OF AUTHORITIES

## CASES

*Alfonzo v. United States*, 752 F.3d 622 (5th Cir. 2014) ............................................... 48

*Allen v. Walmart Stores, L.L.C.*, 907 F.3d 170 (5th Cir. 2018) ................................... 23

*Block v. Neal*, 460 U.S. 289 (1983) ......................................................................... *passim*

*Bradford v. Vento*, 48 S.W.3d 749 (Tex. 2001) ............................................................ 34

*Bryant v. Winn-Dixie Stores, Inc.*, 786 S.W.2d 547 (Tex. App.—Fort Worth 1990) ............................................................................................. 19, 32

*Burnett v. Ft. Worth Light & Power Co.*, 112 S.W. 1040 (Tex. 1908) ................. 15, 18

*Casas v. Paradez*, 267 S.W.3d 170 (Tex. App.—San Antonio 2008) ......................... 20

*C.R. v. Am. Inst. for Foreign Study, Inc.*, No. SA-12-CA-1046-XR, 2013 WL 5157699 (W.D. Tex. Sept. 12, 2013) ................................................................. 24

*C.W. v. Zirus*, No. SA-10-CV-1044-XR, 2012 WL 3776978 (W.D. Tex. Aug. 29, 2012) ........................................................................................................ 24

*Camacho v. Tex. Workforce Comm'n*, 445 F.3d 407 (5th Cir. 2006) ......................... 48

*Chang-Williams v. United States*, 965 F. Supp. 2d 673 (D. Md. 2013) ..................... 45

*City of Lancaster v. Chambers*, 883 S.W.2d 650 (Tex. 1994) ............................... 16, 18

*Clay v. United States*, 537 U.S. 522 (2003) ................................................................ 47

*Commercial Union Ins. Co. v. United States*, 928 F.2d 176 (5th Cir. 1991) ................................................................................................. 36, 41, 42, 43

*Conn. Nat'l Bank v. Germain*, 503 U.S. 249 (1992) ................................................... 46

*Cuvillier v. Taylor*, 503 F.3d 397 (5th Cir. 2007) ..................................................... 13

*Del Lago Partners, Inc. v. Smith*, 206 S.W.3d 146 (Tex. App.—Waco 2006) ......................................................................................................................... 21

*Discovery Operating, Inc. v. BP Am. Prod. Co.*, 311 S.W.3d 140 (Tex. App.—Eastland 2010) ................................................................................... 31

*Dunn v. Clairmont Tyler, LP*, 271 S.W.3d 867 (Tex. App.—Tyler 2008) ................. 20

*East Tex. Motor Freight Lines v. Loftis*, 223 S.W.2d 613 (Tex. 1949) ...................... 17

*Ellsworth v. Bishop Jewelry and Loan Co.*, 742 S.W.2d 533 (Tex. App.—Dallas 1987) ...................................................................................... 19, 32

*Emeritus Corp. v. Highsmith*, 211 S.W.3d 321 (Tex. App.—San Antonio 2006) ......................................................................................................................... 20

*FDIC v. Meyer*, 510 U.S. 471 (1994) ...................................................................... *passim*

*Felton v. Lovett*, 388 S.W.3d 656 (Tex. 2012) ....................................................... 15, 29

*Gibbs v. Jackson*, 990 S.W.2d 745 (Tex. 1999) ........................................................... 30

*Golden Spread Council, Inc. No. 562 of Boy Scouts of America v. Akins*,
    926 S.W.2d 287 (Tex. 1996)............................................................................... 23, 24

*Grant Thornton LLP v. Prospect High Income Fund*, 314 S.W.3d 913
    (Tex. 2010) ............................................................................................................. 34

*Gutierrez de Martinez v. Lamagno*, 515 U.S. 417 (1995) ........................................... 50

*Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242 (2010) ................................. 47

*Hernandez v. Baylor University*, 274 F. Supp. 3d 602 (W.D. Tex. 2017)................... 24

*In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 668 F.3d 281
    (5th Cir. 2012)............................................................................................. 14, 31, 48

*In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 713 F.3d 807
    (5th Cir. 2013)................................................................................................... 36, 41

*Indian Towing Co. v. United States*, 350 U.S. 61 (1955)...................................... 13, 14

*Ingham v. Eastern Airlines*, 373 F.2d 227 (2d Cir. 1967)..................................... 33, 38

*International & G.N.R. Co. v. Kuehn*, 8 S.W. 484 (Tex. 1888).................................... 15

*Iselin v. United States*, 270 U.S. 245 (1926) ............................................................... 49

*Italian Cowboy Partners v. Prudential Ins.*, 341 S.W.3d 323 (Tex. 2011)................. 34

*Jackson v. Axelrad*, 221 S.W.3d 650 (Tex. 2007) ....................................................... 20

*J.S. v. Am. Inst. for Foreign Study, Inc.*, No. CIV.A. SA-12-CA-1036,
    2013 WL 5173128 (W.D. Tex. Sept. 12, 2013) .................................................... 24

*Johnson v. Sawyer*, 47 F.3d 716 (5th Cir. 1995).......................................................... 26

*Kelly v. Brown*, 260 S.W.3d 212 (Tex. App.—Dallas 2008) ........................................ 17

*Life Partners Inc. v. United States*, 650 F.3d 1026 (5th Cir. 2011)...................... 36, 41

*McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests*, 991
    S.W.2d 787 (Tex. 1999).......................................................................................... 34

*Medina v. United States*, 259 F.3d 220 (4th Cir. 2001)............................................... 48

*Metropolitan Life Ins. Co. v. Atkins*, 225 F.3d 511 (5th Cir. 2000)............................ 38

*Missouri Pac. R. Co. v. American Statesman*, 552 S.W.2d 99 (Tex. 1977) .......... 16, 18

*Morin v. Moore*, 309 F.3d 316 (5th Cir. 2002)............................................................. 24

*Mundy v. United States*, 983 F.2d 950 (9th Cir. 1993).................................... *passim*

*Murrey v. United States*, 73 F.3d 1448 (7th Cir. 1996) ............................................... 45

*Nall v. Plunkett*, 404 S.W.3d 552 (Tex. 2013)............................................................. 22

*Nixon v. Mr. Prop. Mgmt. Co., Inc.*, 690 S.W.2d 546 (Tex. 1985) ..................... *passim*

*Ordonez v. M.W. McCurdy & Co., Inc.*, 984 S.W.2d 264 (Tex. App.—
Houston [1st Dist.] 1998, no pet.) ............................................................ 31

*Palmer v. Flaggman*, 93 F.3d 196 (5th Cir. 1996) .................................... 48

*Parrott v. Garcia*, 436 S.W.2d 897 (Tex. 1969) ................................. *passim*

*Peek v. Oshman's Sporting Goods, Inc.*, 768 S.W.2d 841 (Tex. App.—
San Antonio 1989) ................................................................. 19, 32

*Perry v. S.N.*, 973 S.W.2d 301 (Tex. 1998) ....................................... *passim*

*Petteys v. Butler*, 367 F.2d 528 (8th Cir. 1966) ........................................ 49

*Porter v. Heritage Operating LP*, — S.W.3d —, 2018 WL 5641389 (Tex.
App.—El Paso Oct. 31, 2018) .................................................... 31

*Praesel v. Johnson*, 967 S.W.2d 391 (Tex. 1998) ............................... *passim*

*Ramirez v. United States*, 567 F.2d 854 (9th Cir. 1977).................. 38, 44, 45

*Rayonier, Inc. v. United States*, 352 U.S. 315 (1957) ......................... *passim*

*Reyna v. Academy Ltd.*, No. 01-15-00988-CV, 2017 WL 3483217 (Tex.
App.—Houston [1st] Aug. 15, 2017) ............................ 11, 18, 29, 32

*Ridgecrest Ret. & Healthcare v. Urban*, 135 S.W.3d 757 (Tex. App.—
Houston [1st Dist.] 2004) .............................................................. 26

*Rudes v. Gottschalk*, 324 S.W.2d 201 (Tex. 1959) .................................. 16

*Sanders v. United States*, 324 F. Supp. 3d 636 (D.S.C. June 18, 2018).... 48

*Saraw Partnership v. United States*, 67 F.3d 567 (5th Cir. 1995)........ *passim*

*Smith v. Merritt*, 940 S.W.2d 602 (Tex. 1997) ........................................ 26

*South Dakota v. Yankton Sioux Tribe*, 522 U.S. 329 (1998) ..................... 50

*Sowell v United States*, 835 F.2d 1133 (5th Cir. 1988)............................ 24

*Starnes v. United States*, 139 F.3d 540 (5th Cir. 1998)............................ 48

*Tex. Power & Light Co. v. Jacobs*, 323 S.W.2d 483 (Tex. Civ. App.—
Waco 1959).................................................................................... 15

*Timberwalk Apartments, Partners, Inc. v. Cain*, 972 S.W.2d 749 (Tex.
1998)............................................................................................... 21

*Torrington Co. v. Stutzman*, 46 S.W.3d 829 (Tex. 2000).......................... 23

*Traxler v. Entergy Gulf States, Inc.*, 376 S.W.3d 742 (Tex. 2012) ............ 15

*Trentadue v. United States*, 397 F.3d 840 (10th Cir. 2005) ...................... 45

*Trinity & S. Ry. Co. v. Meadows*, 11 S.W. 145 (Tex. 1889) ..................... 15

*Turner v. Pleasant*, 663 F.3d 770 (5th Cir. 2011) .................................... 13

*United States v. Bo*, 472 F.2d 720 (5th Cir. 1972) ................................... 47

*United States v. Giordano*, 416 U.S. 505 (1974) ........................................ 47

*United States v. Neustadt*, 366 U.S. 696 (1961) ........................ 33, 35, 36, 41

*Vidro v. United States*, 720 F.3d 148 (2d Cir. 2013) ................................... 48

*Wal-Mart v. Tamez*, 960 S.W.2d 125 (Tex. App.—Corpus Christi 1998) ...... 18, 23, 32

*Westfall v. Erwin*, 484 U.S. 292 (1988) ..................................................... 49

*Worldwide Asset Purchasing, LLC v. Rent-A-Center East, Inc.*, 290
    S.W.3d 554 (Tex. App.—Dallas 2009, no pet.) .................................... 34

STATUTES

10 U.S.C. § 1562 ......................................................................................... 14

18 U.S.C. § 922 ..................................................................................... *passim*

28 U.S.C. § 1346(b) .............................................................................. *passim*

28 U.S.C. § 2674 ......................................................................................... 49

28 U.S.C. § 2679(b)(1) ............................................................................... 50

28 U.S.C. § 2680(h) .................................................................................... 32

34 U.S.C. § 40901(e) .................................................................................. 14

43 U.S.C. § 1656(b) .................................................................................... 47

Pub. L. No. 100-694, 102 Stat. 4563 (1988) ............................................... 49

Pub. L. No. 103-159, 107 Stat 1536 (1993) ................................................ 50

OTHER AUTHORITIES

139 Cong. Rec. 3262 (1993) ....................................................................... 21

139 Cong. Rec. 3471 (1993) ....................................................................... 21

Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of
    Legal Texts* (2012)..................................................................... 47, 48, 49

Brady Handgun Violence Prevention Act: Hearing on H.R. 1025 Before
    the H. Subcomm. on Crime & Crim. Justice 103rd Cong. 85 (Sept.
    30, 1993)........................................................................................ 21, 51

H.R. Rep. 100-700, 1988 U.S.C.C.A.N. 5945, 1988 WL 169931 (1988) .................... 50

H.R. Rep. 100-750 (1988)........................................................................... 49

Inspector General, Report of the Investigation into the United States
    Air Force's Failure to Submit Devin Kelley's Criminal History
    Information to the Federal Bureau of Investigation (Dec. 6, 2018),
    available at https://bit.ly/2LqSYlc ............................................... *passim*

Jack Metzler, "Cleaning Up Quotations," 18 J. of App. Prac. & Process
    143 (2017), available at https://t.co/pTe38Whep7 ................................. 17

Presidential Statement on Signing the Brady Handgun Violence
    Protection Act, 29 Weekly Comp. Pres. Doc. 2477 (Nov. 30, 1993) ................... 21

Restatement (Second) of Torts § 323 (1965) ..................................... 22, 24

Restatement (Second) of Torts § 448 (1965) ......................................... 21

Restatement (Second) of Torts § 552(3) (1965) ...................................... 35

W. Prosser, Torts § 85 (1941) ................................................... 33, 35

**RULES**

Fed. R. Civ. P. 12(b)(6) .......................................................... 13

Plaintiffs request oral argument on the Government's motion.

## FACTUAL BACKGROUND

Plaintiffs have sued the United States because the Air Force failed to submit Devin Kelley's fingerprint cards and criminal-history report to the FBI's national background-check system, and that failure enabled Kelley to unlawfully obtain firearms that he then used to kill or injure Plaintiffs or their family members.[1]

The Inspector General for the Department of Defense (DOD) conducted an investigation and concluded that the Air Force's failure "allowed Kelley to pass the federally mandated background checks and to purchase four firearms." Inspector General, Report of the Investigation into the United States Air Force's Failure to Submit Devin Kelley's Criminal History Information to the Federal Bureau of Investigation ("IG Report") at 107 (Dec. 6, 2018), available at https://bit.ly/2LqSYlc. The IG Report states that Kelley used "three of those firearms on November 5, 2017, to kill 26 people and wound 22 others at the First Baptist Church of Sutherland Springs." *Ibid.* The IG Report also details the Air Force's failures to collect and submit Kelley's background information "as required." *Ibid.* These missed opportunities include:

- June 9, 2011, when Air Force police interviewed Kelley for assault of his stepson with probable cause;

---

[1] See Holcombe Compl. ¶ 27; Vidal Compl. ¶ 4.1; Uhl Compl. ¶¶ 31–32; Ramsey Compl. ¶ 27; McNulty Compl. ¶ 4.1; Wall-Johnson Compl. ¶ 4.1; Amador Compl. ¶ 4.1.

The United States alleges that service has not been affected in *Ramsey v. United States*, No. 5:18-cv-994, *Uhl v. United States*, No. 5:18-cv-881, and *Amador v. United States*, No. 5:18-cv-1151. Def.'s Mot. 11 n.31; Def.'s Advisory 1 n.1 (Dkt. No. 29). Summons have been executed in these cases and are filed with this Court. See Dkt. No. 33 (Nov. 16, 2018) (*Ramsey* service on U.S. Attorney Bash); Dkt. No. 40 (Dec. 20, 2018) (*Ramsey* service on the Attorney General); Dkt. No. 30 (Nov. 14, 2018) (*Uhl* service on U.S. Attorney Bash); Dkt. No. 39 (Nov. 21, 2018) (*Uhl* service on the Attorney General); Dkt. No. 31 (Nov. 15, 2018) (*Amador* service on U.S. Attorney Bash); Dkt. No. 37 (Nov. 21, 2018) (*Amador* service on the Attorney General).

- • February 17, 2012, when Air Force police interviewed Kelley for assault of his wife with probable cause;
- • June 8, 2012, when Air Force police interviewed Kelley for assaulting his wife and stepson with probable cause;
- • November 7, 2012, when the Air Force convicted Kelley for domestic abuse after a General Court-Martial; and
- • December 14, 2012, when the Air Force electronically—but falsely—certified that Kelley's fingerprints and final disposition report were sent to the FBI.

*Id.* at 107–108.

Some of these failures resulted from "special agents [who] did not understand the policies as to when fingerprints should be submitted." *Id.* at 108. Some resulted from the failure to follow DOD and Air Force policies. *Id.* at 109. And some resulted from lack of training and supervision. *Id.* at 111. "[L]eadership was unable to provide a reasonable explanation" as to why the Air Force falsely certified that Kelley's fingerprints and disposition reports had been submitted. *Id.* at 110.

Notably, the IG Report makes numerous references to the **operational** nature of the Government's failure to submit Kelley's fingerprint cards and criminal-history report to the FBI's national background-check system. See, *e.g.*, *id.* at 79 (referring to "standard operating procedure"), 83 (referring to "course of normal operations"), 94–95 & 99–100 (discussing problems with "high operations tempo"), 107–108 (referring to Government's "policies concerning requirements for the collection and submission of fingerprints to the FBI" and concluding Government "did not submit Kelley's fingerprints or final disposition report…as required by [Government] policy").

"In sum," the IG Report concludes "that there was no valid reason for the [Air Force's] failures to submit Kelley's fingerprints and final disposition report to the FBI." *Id.* at 112. The Air Force's failures were without excuse and Government personnel "had a duty to know, and should have known, the DoD and USAF fingerprint policies, and should have followed them." *Ibid.* The IG Report concluded

that the Government's failures "had drastic consequences and should not have occurred." *Ibid.*

Because the Government's operational negligence had such drastic and fatal consequences, Plaintiffs have sued to recover for the harm that was caused by that negligence. But the Government has moved to dismiss Plaintiffs' actions, seeking to escape all liability.

## SUMMARY OF ARGUMENT

The Government seeks dismissal based on three novel theories for expanding the Government's immunity against tort liability under the FTCA. All three of the Government's novel theories are without merit and should be rejected.

First, the Government asserts that there is no analogous state-law action that can support Plaintiffs' FTCA action because—according to the Government—the guidelines laid out in *Perry v. S.N.*, 973 S.W.2d 301 (Tex. 1998), weigh against imposing tort liability based on violations of the Brady Act. Def.'s Mot. 13–25. But *Perry* is about establishing a **new** tort action based on violations of a **criminal** statute. See *Perry*, 973 S.W.2d at 306 ("[W]e set out these considerations as guides to assist a court in answering…whether imposing tort liability for violations of a criminal statute is fair, workable, and wise."). The Brady Act is not a criminal statute. And more importantly, Texas courts have already held that, under Texas law, violations of the Brady Act will support an action for negligence *per se*. See, *e.g.*, *Reyna v. Academy Ltd.*, No. 01-15-00988-CV, 2017 WL 3483217, at *4–7 (Tex. App.—Houston [1st] Aug. 15, 2017). So *Perry* does not apply here. There is a preexisting, perfectly analogous state-law action for negligence that supports Plaintiffs' action under the FTCA, so the Government's leading theory for dismissal is without merit. See Section 1, *infra*.

Second, the Government asserts that Plaintiffs' action is based on Government misrepresentations and thus should be barred under the "misrepresentation exception" to the Government's liability under the FTCA. Def.'s Mot. 26–30. But the Government ignores the Supreme Court's decision in *Block v. Neal*, 460 U.S. 289 (1983), which emphasizes the centrality of the **reliance** element in determining whether the FTCA's misrepresentation exception applies. See *id.* at 296–297 ("[T]he essence of an action for misrepresentation, whether negligent or intentional, is the communication of misinformation **on which the recipient relies**." (emphasis added)). The Government ignores this reliance requirement and cannot cite any statement on which Plaintiffs relied, because Plaintiffs' claims are not based on any Government misrepresentation. Rather, they are based on the Government's operational negligence (*i.e.*, the Government's failure to properly process Kelley's background information into the national background-check system). So the Government's second theory for dismissal is without merit. See Section 2, *infra*.

Finally, the Government asserts that it has immunity against Plaintiffs' action because its employees have immunity under § 922(t)(6) of the Brady Act. Def.'s Mot. 30–31. But the Government's attempt to piggyback on its employees' immunity rests on inapposite case law and contradicts the very purpose of both the FTCA and the Brady Act, which is to subject the Government to tort liability. See *Rayonier, Inc. v. United States*, 352 U.S. 315, 319 (1957) ("[T]he very purpose of the Tort Claims Act was to waive the Government's traditional all-encompassing immunity from tort actions and to establish novel and unprecedented governmental liability."). The text of the Brady Act plainly **excludes** the Government from the list of those who have immunity. See 18 U.S.C. § 922(t)(6). So the Government's final theory for dismissal is without merit. See Section 3, *infra*.

For these reasons, expounded upon below, the Government's motion to dismiss should be denied in its entirety.

STANDARD OF REVIEW

The Court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). But a motion to dismiss under Rule 12(b)(6) is "viewed with disfavor and is rarely granted." *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011). A motion to dismiss must be denied if the complaint provides "grounds for entitlement to relief" by alleging facts that, when assumed to be true, "raise the right to relief above the speculative level." *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007). Here, the Government does not challenge the sufficiency of the allegations in Plaintiffs' complaint, but instead contends that Plaintiffs' claims are barred as a matter of law. See Def.'s Mot. 13–31. The Government's legal arguments are meritless for the reasons provided below.

ARGUMENT & AUTHORITIES

1. **The Government can be held liable under the FTCA because a private person in similar circumstances can be held liable under Texas law.**

The "broad and just purpose" of the FTCA is "to compensate the victims of negligence in the conduct of governmental activities in circumstances like unto those in which a private person would be liable." *Indian Towing Co. v. United States*, 350 U.S. 61, 68–69 (1955). Thus, to bring a claim under the FTCA, plaintiffs must allege that the United States would be liable as a private person in similar circumstances, under the law of the state where the act or omission occurred. 28 U.S.C. § 1346(b); *FDIC v. Meyer*, 510 U.S. 471, 477–478 (1994). Put another way: the test is "whether a private person would be responsible for **similar** negligence under the law of the State where the acts occurred." *Rayonier, Inc. v. United States*, 352 U.S. 315, 319 (1957) (emphasis added).

The analogous connection to state law does not have to be exact. See *Indian Towing*, 350 U.S. at 64 (stating "like circumstances" does not mean "same circumstances"). For example, the fact that private persons do not perform the

13

activity for which the Government is being sued does not mean that the Government cannot be held liable for performing that activity. *Ibid.* As the Fifth Circuit has put it: "[A] court's job in applying the standard is to find **the most reasonable analogy**." *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.* ("*FEMA Trailer I*"), 668 F.3d 281, 288 (5th Cir. 2012) (emphasis added).

Here, Plaintiffs allege negligence based on the Government's breach of its statutory duties to submit Kelley's criminal and mental-health background information into the national background-check system.[2] In Texas, private persons are not statutorily required to submit background information into the national background-check system. But that does not preclude the Government from being held liable for breaching its statutory duties. See *Indian Towing*, 350 U.S. at 64. The Court need only find a reasonable state-law analogy. See *FEMA Trailer I*, 668 F.3d at 288. And in Texas there are plenty of options.

In Texas, private persons may be held liable for negligence *per se* based on the breach of civil statutory duties (see Section 1.1, *infra*); more specifically, private persons may be held liable for negligence *per se* based on violations of the Gun Control Act and the Brady Act (see Section 1.2, *infra*); private persons may also be held liable for negligence based on breaches of other statutory duties to report or to inform (see Section 1.3, *infra*); private persons may also be held liable for negligence *per se* based on violations of a statute that was designed to prevent criminal conduct (see Section 1.4, *infra*); and private persons may be held liable for common-law negligence based on other analogous common-law duties (see Section 1.5, *infra*).

Because private persons in Texas may be held liable for similar negligence in similar circumstances, the United States may be held liable here under the FTCA.

---

[2]   Holcombe Compl. ¶ 27; Vidal Compl. ¶ 4.1; Uhl Compl. ¶¶ 31–32; Ramsey Compl. ¶ 27; McNulty Compl. ¶ 4.1; Wall-Johnson Compl. ¶ 4.1; Amador Compl. ¶ 4.1; see 10 U.S.C. § 1562; 18 U.S.C. § 922(d)(1), (4), (9); 18 U.S.C. § 922(g); 18 U.S.C. § 922(t); 34 U.S.C. § 40901(e)(1)(C).

See 28 U.S.C. § 1346(b); *Meyer*, 510 U.S. at 477–478; *Rayonier*, 352 U.S. at 319 (stating test is "whether a private person would be responsible for **similar** negligence under the law of the State where the acts occurred" (emphasis added)).

### 1.1. Private persons in Texas can be liable for negligence *per se* based on the breach of civil statutory duties.

In Texas it has long been established that the breach of a civil statutory duty constitutes negligence *per se*. See *Burnett v. Ft. Worth Light & Power Co.*, 112 S.W. 1040, 1041 (Tex. 1908) ("It is almost universally held that the violation of a statutory duty is negligence *per se*."); *e.g.*, *Trinity & S. Ry. Co. v. Meadows*, 11 S.W. 145, 146 (Tex. 1889) (recognizing failure of railroad company to "provide sufficient waterways" was "failure of statutory duty" and thus negligence *per se*); *International & G.N.R. Co. v. Kuehn*, 8 S.W. 484, 486 (Tex. 1888) (holding court "properly charged that the neglect of statutory duties was negligence as matter of law," based on violation of law requiring railroad company to prevent brush from obstructing view of approaching trains).[3]

Notably, Texas courts have questioned "the wisdom or desirability" of using the violation of a **criminal** statute as a basis for civil liability. *Parrott v. Garcia*, 436 S.W.2d 897, 900 (Tex. 1969). But no such concern has been expressed about using the violation of a **civil** statute as a basis for finding negligence *per se*. See, *e.g.*, *Traxler v. Entergy Gulf States, Inc.*, 376 S.W.3d 742, 743–749 (Tex. 2012) (holding violation of law requiring power line to be 22 feet above surface of traffic lane is negligence *per se*) (citing *Tex. Power & Light Co. v. Jacobs*, 323 S.W.2d 483 (Tex. Civ. App.—Waco 1959)); *Felton v. Lovett*, 388 S.W.3d 656, 661–662 (Tex. 2012) (recognizing breach of statutory duty to disclose risks inherent to chiropractic

---

[3]   See also *Southern Pac. Co. v. Castro*, 493 S.W.2d 491, 497 (Tex. 1973) ("The unexcused violation of a legislative enactment…is negligence in itself" (quoting Restatement (Second) of Torts § 288B (1965)).

treatment can be negligence *per se*); *City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex. 1994) (holding violation of statute requiring drivers of emergency vehicles to "drive with due regard for the safety of all persons" can be negligence *per se*); *Nixon v. Mr. Prop. Mgmt. Co., Inc.*, 690 S.W.2d 546, 549 (Tex. 1985) (holding violation of ordinance requiring owners to keep vacant buildings locked can be negligence *per se*); *Missouri Pac. R. Co. v. American Statesman*, 552 S.W.2d 99, 102–103 (Tex. 1977) (holding violation of law requiring structures built over railroad tracks to have 22 feet clearance can be negligence *per se*).[4]

In Texas, the threshold question in every negligence-*per-se* case is whether the statute was enacted "to protect the class of persons to which the injured party belongs against the hazard involved in the particular case." *Praesel v. Johnson*, 967 S.W.2d 391, 395 (Tex. 1998). In cases involving **civil** statutes, this is often the only question asked. See, *e.g.*, *Chambers*, 883 S.W.2d at 653 (asking only this question before finding violation of law requiring drivers of emergency vehicles to "drive with due regard for the safety of all persons" can be negligence *per se*); *Nixon*, 690 S.W.2d at 549 (asking only this question before finding violation of ordinance requiring owners to keep vacant buildings locked can be negligence *per se*); *American Statesman*, 552 S.W.2d at 102–103 (asking only this question before finding violation of law requiring structures built over railroad tracks to have 22 feet

---

[4]    As a policy matter it makes sense to have less concern about using the violation of a **civil** statute as a basis for negligence *per se*. There is already a civil common-law duty to act with ordinary care, or as a reasonably prudent person—so it may often be said that a civil statute merely defines more precisely the conduct that breaches the common-law duty. See *Rudes v. Gottschalk*, 324 S.W.2d 201, 204 (Tex. 1959) ("In the usual negligence *per se* case…[w]e adopt the statutory test [for negligence] rather than that of the ordinary prudent man as the more accurate one to determine negligence…."). It is a harder question, whether the violation of a **criminal** statute should be imported into the civil law as a basis for civil liability when the criminal statute says nothing about civil liability. See *Parrott*, 436 S.W.2d at 900. So it makes sense that Texas courts have been more cautious about creating civil liability based on the violation of a criminal statute. See, *e.g.*, *Perry v. S.N.*, 973 S.W.3d 301, 306–309 (Tex. 1998).

clearance can be negligence *per se*); *East Tex. Motor Freight Lines v. Loftis*, 223 S.W.2d 613, 615 (Tex. 1949) (asking only this question before finding violation of street ordinance was not negligence *per se* because ordinance was not intended to protect against harm that occurred); see also *Kelly v. Brown*, 260 S.W.3d 212, 217–219 (Tex. App.—Dallas 2008) (asking only this question before finding violation of traffic law can be negligence *per se*).

In 1998, the Texas Supreme Court noted an additional consideration in determining whether the violation of a **civil** statute constitutes negligence *per se*. See *Praesel*, 967 S.W.2d at 395–396. After first acknowledging the threshold consideration of whether the statute "was enacted to protect the class of persons to which the injured party belongs against the hazard involved in the particular case," the Court noted that in past cases it has also "generally required" consideration of whether "the alleged conduct would be considered substandard even in the absence of a statute." *Id.* at 395 (cleaned up).[5] But this is generally a low bar, given the existence of a common-law duty to act as a reasonably prudent person. Cf. *Parrott*, 436 S.W.2d at 899–900 (finding conduct of "racing on the highways" was "substandard even in the absence of legislation," and Legislature had "fixe[d] a standard of reasonable care for the community" so that violating statute was negligence *per se*).

Here, Plaintiffs allege that the Government is liable for breaching its civil statutory duty to submit Kelley's criminal and mental-health background information into the national background-check system.[6] Under well-established

---

[5]   "Cleaned up" is a citation parenthetical that indicates all internal alterations and citations have been omitted to make a quotation more readable. See Jack Metzler, "Cleaning Up Quotations," 18 J. of App. Prac. & Process 143 (2017), available at https://t.co/pTe38Whep7.

[6]   See Holcombe Compl. ¶ 27; Vidal Compl. ¶ 4.1; Uhl Compl. ¶¶ 31–32; Ramsey Compl. ¶ 27; McNulty Compl. ¶ 4.1; Wall-Johnson Compl. ¶ 4.1; Amador Compl. ¶ 4.1.

Texas law, the breach of a civil statutory duty constitutes negligence *per se*. See *Burnett*, 112 S.W. at 1041 ("It is almost universally held that the violation of a statutory duty is negligence *per se*."). The threshold question is whether the statute "was enacted to protect the class of persons to which the injured party belongs against the hazard involved in the particular case." *Praesel*, 967 S.W.2d at 395 (cleaned up). The "general public" can constitute the class of persons meant to be protected by the statute (*ibid.*)—and here Plaintiffs are members of the general public. And the "hazard involved" was Kelley's ability to acquire firearms and then use those firearms to kill Plaintiffs' family members—precisely the hazard that the federal reporting and background-check statutes were intended to prevent.[7] The failure of one government agency (the Air Force) to submit information to another government agency within the same branch of government (the FBI)—when it knows the information is necessary to make a government program work effectively—is certainly "substandard" even in the absence of legislation. So, under Texas's broad and longstanding negligence-*per-se* doctrine, a private person in similar circumstances could be held liable for negligence *per se*. Cf. *Chambers*, 883 S.W.2d at 653; *Nixon*, 690 S.W.2d at 549; *American Statesman*, 552 S.W.2d at 102–103; *Parrott*, 436 S.W.2d at 899–900.

For these reasons, the Government can be held liable under the FTCA for breaching its civil statutory duties. See 28 U.S.C. § 1346(b); *Meyer*, 510 U.S. at 477–478; *Rayonier*, 352 U.S. at 319 (stating test is "whether a private person would be responsible for **similar** negligence under the law of the State where the acts occurred" (emphasis added)).

---

[7]   See Section 1.4, *infra*; see also Holcombe Compl. ¶ 20; Vidal Compl. ¶¶ 2.2–2.9; Uhl Compl. ¶¶ 16, 31; Ramsey Compl. ¶ 19; McNulty Compl. ¶¶ 2.2–2.9; Wall-Johnson Compl. ¶¶ 2.2–2.9; Amador Compl. ¶¶ 2.2–2.9.

### 1.2. Private persons in Texas can be liable for negligence *per se* based on violations of the Brady Act.

If the general application of Texas's negligence-*per-se* doctrine is too broad (see Section 1.1, *supra*), then—more specifically—Texas courts have explicitly held that private persons may be liable for negligence *per se* based on their breach of statutory duties under the Gun Control Act of 1968, as amended by the Brady Act of 1993. See *Reyna v. Academy Ltd.*, No. 01-15-00988-CV, 2017 WL 3483217, at *4–7 (Tex. App.—Houston [1st] Aug. 15, 2017) (recognizing violation of § 922 may constitute negligence *per se*); *Wal-Mart v. Tamez*, 960 S.W.2d 125, 128 (Tex. App.—Corpus Christi 1998) (same); *Bryant v. Winn-Dixie Stores, Inc.*, 786 S.W.2d 547, 548–550 (Tex. App.—Fort Worth 1990) (same); *Peek v. Oshman's Sporting Goods, Inc.*, 768 S.W.2d 841, 844 (Tex. App.—San Antonio 1989) (same); *Ellsworth v. Bishop Jewelry and Loan Co.*, 742 S.W.2d 533 (Tex. App.—Dallas 1987) (same).

Here, Plaintiffs allege that the Government breached its statutory duties under the Gun Control Act, as amended by the Brady Act.[8] Because a private person in Texas can be held liable for negligence *per se*, based on the violation of these statutes, the Government can likewise be held liable for negligence *per se* based on its violation of these statutes. See 28 U.S.C. § 1346(b); *Meyer*, 510 U.S. at 477–478; *Rayonier*, 352 U.S. at 319 (stating test is "whether a private person would be responsible for **similar** negligence under the law of the State where the acts occurred" (emphasis added)). For this reason alone, the Government's leading theory for dismissal (see Def.'s Mot. 13–25) is entirely without merit and should be rejected out of hand (see Section 1.6, *infra*).

---

[8]   See Holcombe Compl. ¶ 21; Vidal Compl. ¶¶ 2.3–2.9; Uhl Compl. ¶ 16; Ramsey Compl. ¶ 20; McNulty Compl. ¶¶ 2.3–2.9; Wall-Johnson Compl. ¶¶ 2.3–2.9; Amador Compl. ¶¶ 2.3–2.9.

### 1.3.   Private persons in Texas can be liable for negligence based on a breach of other statutory duties to report or to inform.

In *Praesel*, the Texas Supreme Court considered whether the breach of a civil statutory duty to report could constitute negligence *per se*. See 967 S.W.2d at 395–396. Ultimately, the Court found there could be no negligence *per se* based on a failure to report to the Department of Public Safety that a patient had epilepsy, under Texas Health & Safety Code § 12.096(a), because the statute merely "permitted" such a report to be made without actually requiring it—so there was no clear duty being breached. See *id.* at 394, 396. But elsewhere Texas courts have recognized claims for negligence based on a defendant's failure to report.

In *Casas v. Paradez*, for example, a Texas appellate court upheld findings of negligence based on the defendants' failure to report another person's past acts of violence "as required by law." See 267 S.W.3d 170, 177, 184, 193 (Tex. App.—San Antonio 2008). In other cases, Texas appellate courts have indicated that a negligence claim can be based on a failure to report abuse or neglect to a state agency under Texas Health & Safety Code §§ 242.122(a) & 242.125(a). See, *e.g.*, *Dunn v. Clairmont Tyler, LP*, 271 S.W.3d 867, 872 (Tex. App.—Tyler 2008); *Emeritus Corp. v. Highsmith*, 211 S.W.3d 321, 328 (Tex. App.—San Antonio 2006).[9] And in *Jackson v. Axelrad*, the Texas Supreme Court recognized that a negligence claim can be based on a failure to report under the common-law person-of-ordinary-prudence standard, when the person's expertise or special knowledge gives rise to a duty to report. See 221 S.W.3d 650, 654–658 (Tex. 2007).

Here, Plaintiffs allege that the Government breached its civil statutory duty to report Kelley's criminal and mental-health history to the Attorney General for the

---

[9]   In *Dunn* and *Highsmith*, the negligence claims were dismissed because the plaintiff either failed to satisfy the statute of limitations (*Dunn*) or failed to timely serve an expert report (*Highsmith*).

national background-check system.[10] Because a private person in Texas can be liable for negligence based on the breach of a duty to report, the Government can likewise be liable for negligence based on its breach of a duty to report. See 28 U.S.C. § 1346(b); *Meyer*, 510 U.S. at 477–478; *Rayonier*, 352 U.S. at 319 (stating test is "whether a private person would be responsible for **similar** negligence under the law of the State where the acts occurred" (emphasis added)).

### 1.4.   Private persons in Texas can be liable for negligence *per se* based on the violation of a statute designed to prevent criminal conduct.

Under Texas law there is a legal duty to protect others from a third party's criminal acts if the criminal acts are foreseeable. See *Del Lago Partners, Inc. v. Smith*, 206 S.W.3d 146, 153–154, 159 (Tex. App.—Waco 2006) (citing *Timberwalk Apartments, Partners, Inc. v. Cain*, 972 S.W.2d 749, 753 (Tex. 1998)); see also *Nixon*, 690 S.W.2d at 550 (quoting Restatement (Second) of Torts § 448 (1965)). Here, there is ample evidence that a person with a history of domestic violence, criminal convictions, and mental-health issues (like Kelley) might try to purchase firearms and then use those firearms to commit violent criminal acts—that's why the federal criminal-background-check and reporting statutes were enacted in the first place: to prevent this foreseeable criminal conduct.[11] Thus, the Texas common-law duty to

---

[10]   See Holcombe Compl. ¶ 27; Vidal Compl. ¶ 4.1; Uhl Compl. ¶¶ 31–32; Ramsey Compl. ¶ 27; McNulty Compl. ¶ 4.1; Wall-Johnson Compl. ¶ 4.1; Amador Compl. ¶ 4.1.

[11]   See, *e.g.*, Brady Handgun Violence Prevention Act: Hearing on H.R. 1025 Before the H. Subcomm. on Crime & Crim. Justice 103rd Cong. 85 (Sept. 30, 1993) ("After Brady passes, a convicted felon will no longer be able to walk into a gun store, as thousands have done this year, and walk out 10 minutes later with a murder weapon."); 139 Cong. Rec. 3262 (1993) (stating past deaths "would have been prevented" if Brady Act had passed sooner); 139 Cong. Rec. 3471 (1993) ("I believe the Brady bill is the most effective anti-crime measure before the Congress."); Presidential Statement on Signing the Brady Handgun Violence Protection Act, 29 Weekly Comp. Pres. Doc. 2477, 2478 (Nov. 30, 1993) (stating "this bill will make a difference" in preventing violent crime).

protect others from a third party's foreseeable criminal acts provides another analogous state-law basis for holding the Government liable under the FTCA.

But more importantly, even if a third party's criminal acts were unforeseeable, a person in Texas may still be liable for negligence *per se* if that person violates a civil statute that was designed to protect the plaintiff from criminal conduct. In *Nixon*, after a man took a 10-year-old girl into a vacant apartment and raped her, the Texas Supreme Court held that—even though there was no common-law duty to protect trespassers from harm or to protect others from a third party's unforeseeable criminal acts—the property management company could still be liable for negligence *per se* based on its breach of a civil statutory duty to keep vacant buildings locked. See 690 S.W.2d at 547–549 (holding duty was "legislatively impose[d]" by statute). The Court noted that negligence *per se* exists when the threshold question is satisfied—*i.e.*, when the statute that was violated "was designed to prevent injury to the class of persons to which the injured party belongs." See *id.* at 549; accord *Praesel*, 967 S.W.2d at 395 (identifying this as the threshold question in negligence-*per-se* actions). After recognizing that the statute requiring vacant buildings to be locked was "designed to prevent injury to the general public" by "reducing the conspicuous opportunities for criminal conduct," the Court held that the violation of this statute constituted negligence *per se*. *Ibid.*[12]

Because a private person in Texas can be liable for negligence *per se* based on the violation of a civil statute that was designed to prevent criminal conduct, the Government can likewise be liable for negligence *per se* based on its violation of civil statutes that were designed to prevent criminal conduct. See 28 U.S.C. § 1346(b);

---

[12]  Strictly speaking, it is the unexcused breach of a statutory duty that constitutes negligence *per se*. See *Nixon*, 690 S.W.2d at 549. But the Government makes no attempt to assert the affirmative defense that its breaches of statutory duties should be excused, so the "unexcused" element is immaterial. See also IG Report 112 (concluding "there was no valid reason" for Government's failures).

*Meyer*, 510 U.S. at 477–478; *Rayonier*, 352 U.S. at 319 (stating test is "whether a private person would be responsible for **similar** negligence under the law of the State where the acts occurred" (emphasis added)).

### 1.5.  Private persons in Texas can be liable for negligence based on analogous common-law duties.

First, the Texas Supreme Court has made clear that "a duty to use reasonable care may arise when a person undertakes to provide services to another," whether for free or for compensation. *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 837 (Tex. 2000); see also *Allen v. Walmart Stores, L.L.C.*, 907 F.3d 170, 181 (5th Cir. 2018); *Nall v. Plunkett*, 404 S.W.3d 552, 555 (Tex. 2013). In doing so, the Court recognized the Restatement's view of "negligent undertaking." See *Torrington*, 46 S.W.3d at 838 (discussing Restatement (Second) of Torts § 323 (1965)).

Second, in *Golden Spread Council*, the Texas Supreme Court held that when a local Boy Scouts council failed to disclose the disturbing history of one of its scoutmasters to a church, a "legal duty under the theory of common-law negligence" arose between the council and the church. See *Golden Spread Council, Inc. No. 562 of Boy Scouts of America v. Akins*, 926 S.W.2d 287, 290–292 (Tex. 1996). The council had recommended the scoutmaster for hire. *Id.* at 290. And in evaluating the existence of a duty of care, the Supreme Court found that the council owed a duty because it had undertaken to recommend a scoutmaster for hire, and had recommended this particular scoutmaster for hire, even though it "knew of complaints that [this particular scoutmaster] was 'messing with' some boy scouts and was concerned that [the complaints] might be serious." See *ibid.*

Following *Golden Spread Council*, this Court has recognized a private university's liability for enabling foreseeable sexual assault,[13] and a recruiting company's liability for enabling foreseeable sexual abuse.[14]

Likewise, the Texas Supreme Court held that, separate from the duty already imposed by 18 U.S.C. § 922, Texas imposes a common-law duty to act reasonably to protect a third party who might be injured by an unreasonable risk. See *Tamez*, 960 S.W.2d at 130. And the Fifth Circuit agreed. In *Morin v. Moore*, the Fifth Circuit—citing *Tamez*—concluded that a Texas common-law claim for ordinary negligence could be brought against a police officer for a shooting committed by a third party. 309 F.3d 316, 326 (5th Cir. 2002). And in *Sowell v United States*, the Fifth Circuit found the government liable for negligent undertaking under the same theory that Texas courts have used to impose a duty, based on § 323 of the Restatement. See 835 F.2d 1133, 1134 (5th Cir. 1988).

Here, the Government has undertaken the creation of a national background-check system. It therefore has a common-law obligation to use reasonable care in operating that system, when it knows the failure to do so can foreseeably cause harm. As in *Golden Spread Council*, the risk and the likelihood of injury are high in this case. Cf. 926 S.W.2d at 291. Indeed, the Inspector General found that if Kelley's fingerprints and final disposition report had been submitted, "he would have been prohibited from purchasing a firearm," but because this information was not submitted, "Kelley was able to purchase firearms, which he used to kill 26 people."

---

[13]   *Hernandez v. Baylor University*, 274 F. Supp. 3d 602, 615 (W.D. Tex. 2017) (holding university could be liable for negligently admitting student who sexually assaulted another student when university knew he had pattern of sexual assault).

[14]   *C.W. v. Zirus*, No. SA-10-CV-1044-XR, 2012 WL 3776978, at *2 (W.D. Tex. Aug. 29, 2012) (holding corporation could be liable for negligently recommending camp counselor when counselor's molestation of boys at camp was foreseeable); *C.R. v. Am. Inst. for Foreign Study, Inc.*, No. SA-12-CA-1046-XR, 2013 WL 5157699 (W.D. Tex. Sept. 12, 2013) (same); *J.S. v. Am. Inst. for Foreign Study, Inc.*, No. CIV.A. SA-12-CA-1036, 2013 WL 5173128 (W.D. Tex. Sept. 12, 2013) (same).

IG Report at 2. As in *Golden Spread Council*, the magnitude of the consequences of imposing this duty on the Government is low because the duty does not require the Government to seek out or investigate all dangerous individuals—it merely requires the Government to follow its own policies for submitting or processing information when it knows of an "unreasonable risk" of harm. Cf. 926 S.W.2d at 291.

For these reasons, Texas common law presents additional analogous duties that provide a basis for holding the Government liable under the FTCA.

### 1.6.   The Government's arguments are without merit.

The Government's arguments reveal a fundamental misunderstanding of Texas tort law. The Government leads off, for example, by contending that its violation of statutory duties cannot provide a basis for Plaintiffs' FTCA action because "there is no legal duty under Texas law to protect another from the criminal acts of a third party." Def.'s Mot. 15–16. But the Government states only half of the legal proposition. Properly stated, there is no legal duty under Texas law to protect another from the criminal acts of a third party **unless the criminal acts are foreseeable**. See Section 1.4, *supra*. The Government elides this portion of the duty, thereby misstating the law and avoiding having to address the foreseeability of Kelley's criminal acts.[15]

The Government then contends that there is no applicable exception to the general rule that a person owes no duty to protect others from a third party's criminal acts. Def.'s Mot. 16. But again, the Government ignores the "foreseeability" exception. Instead of addressing foreseeability, the Government spends three pages arguing that the "special relationship" exception does not apply because the Government had no special employer-employee relationship with Kelley. Def.'s

---

[15]   See Vidal Compl. ¶ 2.20 (alleging Kelley's acts were foreseeable); McNulty Compl. ¶ 2.21 (same); Wall-Johnson Compl. ¶ 2.21 (same); Amador Compl. ¶ 2.21 (same).

Mot. 16–18. This is a red herring; Plaintiffs do not allege or rely on a special employer-employee relationship as the basis for the Government's duty and liability. In fact, Plaintiffs do not even have to rely on the "foreseeability" exception because in Texas—even if a third party's criminal acts were unforeseeable—a private person can still be liable for negligence *per se* if that person violated a civil statute that was designed to protect the plaintiff from criminal conduct. See *Nixon*, 690 S.W.2d at 547–549; Section 1.4, *supra*. So the Government's arguments at pages 15–18 of its motion are entirely beside the point.

The Government next asserts that its violation of federal statutes, alone, cannot provide a basis for this FTCA action because—under *Johnson v. Sawyer*, 47 F.3d 716 (5th Cir. 1995)—a plaintiff must show there is "some specific basis for concluding that similar conduct by private persons would be actionable under state law." Def.'s Mot. 18–19 (citing *Johnson*, 47 F.3d at 729). But the Government ignores the fact that Texas courts have repeatedly held that the violation of the same federal statutes that are at issue in this case can constitute negligence *per se* under Texas law. See Section 1.2, *supra*. Thus, *Johnson*'s edict is well satisfied.

The Government then claims that its breach of civil statutory duties cannot provide a basis for Plaintiffs' FTCA action because "**only** the violation of 'a penal statute' can give rise to negligence *per se*" in Texas. Def.'s Mot. 19 (emphasis added). This is where the Government's misapprehension of Texas law shines brightest. The Government cites three cases to support this claim. See *ibid.* (citing *Smith v. Merritt*, 940 S.W.2d 602, 607 (Tex. 1997); *Perry*, 973 S.W.2d at 304–307; *Ridgecrest Ret. & Healthcare v. Urban*, 135 S.W.3d 757, 762 (Tex. App.—Houston [1st Dist.] 2004)). But—while each of these cases addresses whether the violation of a particular "penal statute" constitutes negligence *per se*—none of them supports the Government's claim that "**only** the violation of 'a penal statute' can give rise to negligence *per se*." The numerous cases cited in Sections 1.1–1.4, *supra*,

demonstrate the falsity of the Government's overstatement. See especially Section 1.1, *supra* (detailing long history of Texas courts finding negligence *per se* based on breaches of civil statutory duties); see also, *e.g.*, *Praesel*, 967 S.W.2d at 395 (analyzing whether alleged violation of civil statute constitutes negligence *per se*).

The Government goes on to argue that its violation of the Brady Act cannot provide a basis for this FTCA action because the Texas Supreme Court has held that there can be no negligence *per se* based on a violation of Section 261.109(a) of the Texas Family Code. Def.'s Mot. 19. (citing *Perry*, 973 S.W.2d at 306–309). But of course the unavailability of tort liability under a single state statute does not eliminate the entire universe of analogous tort claims in Texas. Private persons can still be liable for breaching a variety of similar statutory duties. See Sections 1.1–1.4, *supra*. Specifically, private persons in Texas can be held liable for negligence *per se* based on violations of the same federal statutes that the Government has violated in this case—as well as for breaches of other similar statutory duties to report acts of violence or abuse. See Sections 1.2 & 1.3, *supra*. And there are also analogous common-law duties. See Section 1.5, *supra*. Thus, the Texas Supreme Court's ruling in *Perry* does nothing to foreclose the Government's liability under the FTCA.

Still stuck on *Perry*, the Government argues that its violations of the Brady Act cannot provide a basis for Plaintiffs' FTCA action because *Perry*'s guidelines for establishing a new action for negligence *per se* cannot be satisfied. Def.'s Mot. 20–25. But this misguided argument stems from the Government's misapprehension of Texas law. As the Texas Supreme Court made clear in *Perry*, its concern about importing **criminal** statutory duties into civil tort law is what underlies its development of five guidelines for determining whether violations of a criminal statute should constitute civil negligence *per se*. See *Perry*, 973 S.W.2d at 306–309 ("[W]e set out these considerations as guides to assist a court in

answering…whether imposing tort liability for violations of a **criminal** statute is fair, workable, and wise." (emphasis added)); accord *Parrott*, 436 S.W.2d 900 (questioning "wisdom or desirability" of using criminal statute as basis for civil liability); see also Section 1.1 & Note 4, *supra*. The Government itself admits that *Perry* is about establishing negligence *per se* based on the violation of a **criminal** statute. Def.'s Mot. 20. And the Government likewise admits that the federal statutes at issue here are **civil** statutes. *Id.* at 19. So the Government ought to know that *Perry*'s five guidelines do not apply here. Yet the Government spends five pages of its motion attempting to apply *Perry*'s guidelines.

To underscore the inapplicability of *Perry*, it must be noted that, just a couple months before *Perry* was decided, the Texas Supreme Court decided *Praesel*, which addressed the same question—*i.e.*, whether the breach of a statutory duty constitutes negligence *per se*. But in *Praesel* the Court did not invoke the same five guidelines that it invoked in *Perry*. Instead, the Court focused on the threshold question of whether the statute "was enacted to protect the class of persons to which the injured party belongs against the hazard involved in the particular case," and considered whether "the alleged conduct would be considered substandard even in the absence of a statute." See 967 S.W.2d at 395 (cleaned up). And that was all.[16] Notably, the Court heard argument in *Perry* on January 7, 1998—before it decided *Praesel* on April 14, 1998—so it could have decided both cases together or it could have invoked the same five guidelines in each case separately. But it didn't. The

---

[16] The Court also noted its consideration of "whether compliance with the statute would directly protect the class of persons to which the injured party belongs," and whether the injury "result[ed] from statutorily prescribed or proscribed conduct." *Praesel*, 967 S.W.2d at 395–396. But these are essentially reiterations of the threshold consideration of whether the statute "was enacted to protect the class of persons to which the injured party belongs against the hazard involved in the particular case." Alternatively, they are questions that go more to causation than to duty—and they are questions that seem to have arisen largely from the specific facts and statute that were at issue in *Praesel*. See *id.* at 394–396.

28

only rational explanation for the difference in treatment is that *Praesel* involved a nonpenal **civil** statute, whereas *Perry* involved a penal or **criminal** statute, and under Texas law the standard for establishing a new action for negligence *per se* is different depending on the nature of the statute that has been violated. See Section 1.1 & Note 4, *supra*. Thus, here—if the Court were tasked with deciding whether to establish a new action for negligence *per se* under Texas law—*Praesel* would apply, not *Perry*. So the Government's reliance on *Perry* is misguided.

Notably, in deciding whether to establish negligence-*per-se* liability where it has not yet been established, both *Praesel* and *Perry* invoke some consideration of whether there is a coexisting common-law duty that is congruent with the statutory duty at issue. See *Praesel*, 967 S.W.2d at 395; *Perry*, 973 S.W.2d at 309; cf. *Felton*, 388 S.W.3d at 661–662 (noting statutory duty forming basis for negligence *per se* was "congruent" with existing common-law duty). The Government, in its focus on this first guideline (as articulated in *Perry*), argues that its violation of the Brady Act cannot provide a basis for Plaintiffs' FTCA action because "the United States owed no common-law duty [in Texas] to protect others from Kelley's criminal acts, and…applying the negligence *per se* doctrine here would establish a new type of tort liability [in Texas],…[which] clearly militates against applying the negligence *per se* doctrine in these cases." See Def.'s Mot. 21–22.

This argument is wrong on at least two levels. First—and fundamentally—the Government is wrong because the Court is not being asked to recognize a new type of tort liability in Texas. As demonstrated, liability for negligence *per se*, based on violations of the Brady Act, already exists under Texas law. See Section 1.2, *supra*; *e.g.*, *Reyna*, 2017 WL 3483217, at *4–7. And because the Court is not being asked to recognize a new type of tort liability in Texas, neither *Perry*'s nor *Praesel*'s test for establishing a new negligence-*per-se* action applies here. Under the FTCA, the Court merely has to determine "whether a private person would be responsible for

**similar** negligence under the law of the State where the acts occurred." *Rayonier*, 352 U.S. at 319 (emphasis added). Holding a private person liable for negligence *per se* based on violations of the Brady Act (see Section 1.2, *supra*), is indisputably "similar" to holding the Government liable for negligence *per se* based on violations of the Brady Act.

Second—even if the case law cited in Section 1.2, *supra*, did not exist—the need for a "similar" or congruent common-law duty would be satisfied. See Sections 1.1 & 1.3–1.5, *supra*. And the Government would still be wrong to claim that the absence of a congruent common-law duty "militates" against applying Texas's broad negligence-*per-se* doctrine. In *Perry* the Texas Supreme Court said only that "the absence of a relevant common-law duty **should be considered** in deciding whether to apply negligence *per se*"—not that it "militates" against it. See 973 S.W.2d at 307 (emphasis added). The Court noted that a congruent common-law duty exists only in "most" negligence-*per-se* cases—*i.e.*, not in all of them. *Id.* at 306. And even after *Perry* was decided, the Court explicitly acknowledged that a congruent common-law duty is **not required**. See *Gibbs v. Jackson*, 990 S.W.2d 745, 747, 749–750 (Tex. 1999) (recognizing negligence *per se* can apply based on breach of statutory duty alone, even where no common-law duty exists). In *Gibbs*, the Texas Supreme Court noted that Texas is a "free range" state—meaning there is no common-law duty for livestock owners to ensure that their animals do not stray onto roadways—yet livestock owners can nevertheless be liable for negligence *per se* if they violate statutes (known as "stock laws") that require livestock to be kept off highways or other statutorily designated areas. See 990 S.W.2d at 747, 749 & nn.4–5 (citing cases). The Court called these statutory duties "legislatively established exceptions to the free-range rule." *Id.* at 749. Thus, even if the Government were right to claim that it owed no congruent common-law duty to report Kelley's background, or to otherwise protect against Plaintiffs' harm, the Government's violation of a

30

"legislatively established exception" to the no-duty rule could still constitute negligence *per se*, in accordance with *Gibbs*.

The Government's application of the rest of the *Perry* guidelines is irrelevant because the rest of the *Perry* guidelines simply do not apply to a case involving the breach of **civil** statutory duties. See *Perry*, 973 S.W.2d at 306 ("[W]e set out these considerations as guides to assist a court in answering…whether imposing tort liability for violations of a **criminal** statute is fair, workable, and wise." (emphasis added)); see also *Discovery Operating, Inc. v. BP Am. Prod. Co.*, 311 S.W.3d 140, 162–163 (Tex. App.—Eastland 2010) (recognizing *Perry* applies only to criminal or "penal" statutes).[17]

Again, the very premise of applying *Perry* in the first place is misguided because *Perry* is about what Texas courts must consider before establishing a new tort action for negligence *per se*, based on the violation of a criminal statute. Here, Plaintiffs are not asking this Court to establish a new tort action under Texas law, which is something this Court could never do. This FTCA action requires the Court merely to determine "whether a private person would be responsible for **similar negligence** under the law of the State where the acts occurred." *Rayonier*, 352 U.S. at 319 (emphasis added); see also *FEMA Trailer I*, 668 F.3d at 288 (stating court's job is merely "to find the **most reasonable analogy**" (emphasis added)). As demonstrated, there are plenty of similar or analogous grounds for liability under Texas law. See Sections 1.1–1.5, *supra*. Most notably, Texas already recognizes liability for negligence *per se* based on violations of the Brady Act. See Section 1.2, *supra*. It can't get more "similar" than that.

---

[17]   No Texas court has held that *Perry* governs whether the violation of a **civil** statute constitutes negligence *per se*. But see *Porter v. Heritage Operating LP*, — S.W.3d —, 2018 WL 5641389, at *32–33 (Tex. App.—El Paso Oct. 31, 2018) (assuming *Perry* applies without addressing whether *Perry* applies); *Ordonez v. M.W. McCurdy & Co., Inc.*, 984 S.W.2d 264, 268 (Tex. App.—Houston [1st Dist.] 1998, no pet.) (same).

And even if the rest of the *Perry* guidelines did apply here, they would weigh in favor of recognizing tort liability based on the Government's violations of the Brady Act. The rest of the *Perry* guidelines are:

> (2) whether the statute puts the [Government] on notice by clearly defining the required conduct; (3) whether the statute would impose liability without fault; (4) whether negligence *per se* would result in ruinous damages disproportionate to the seriousness of the statutory violation, particularly if the liability would fall on a broad and wide range of collateral wrongdoers; and (5) whether the plaintiff's injury is a direct or indirect result of the violation of the statute.

973 S.W.2d at 309. Here, there is no doubt that the Brady Act puts the Government on notice of what it is required to do. See IG Report at 112 (concluding Government knew or should have known what was required). And the statute does not "impose liability without fault"; rather, the fault lies in the Government's failure to do what was statutorily required. See *ibid.* Recognizing negligence-*per-se* liability would not result in "disproportionate" damages because the liability falls only on the Government itself—not on a "wide range of collateral wrongdoers." And Plaintiffs' injuries are a direct or indirect result of the Government's statutory violations. See *id.* at 107, 112. For these reasons, even if the *Perry* test applied in this case, a Texas court would likely recognize negligence-*per-se* liability based on the Government's violations of the Brady Act.

Perhaps this is why Texas courts have already done so! See Section 1.2, *supra* (citing *Reyna*, 2017 WL 3483217, at *4–7; *Tamez*, 960 S.W.2d at 128; *Bryant*, 786 S.W.2d at 548–550; *Peek*, 768 S.W.2d at 844; *Ellsworth*, 742 S.W.2d 533). The Government insists that *Perry* applies—but *Perry* cannot possibly be used to counsel against recognizing negligence-*per-se* liability where Texas courts have already been recognizing negligence-*per-se* liability for over 30 years.

For these reasons (see Section 1, *supra*), the United States can be held liable for negligence or negligence *per se* under the FTCA, so the Government's motion to dismiss should be denied.

**2.     The misrepresentation exception does not apply because this case does not involve misrepresentation claims.**

The United States cannot be held liable under the FTCA for any claim "arising out of…libel, slander, misrepresentation, [or] deceit." 28 U.S.C. § 2680(h). The "misrepresentation exception" to liability under the FTCA applies to claims arising out of both negligent and intentional misrepresentation. *United States v. Neustadt*, 366 U.S. 696, 703–706 (1961). But in its most recent decision about the misrepresentation exception, the Supreme Court explained that "the essence of an action for misrepresentation, whether negligent or intentional, is the communication of misinformation **on which the recipient relies**." *Block v. Neal*, 460 U.S. 289, 296 (1983) (emphasis added). And the Court further clarified that the misrepresentation exception "applies only when the action itself falls within the commonly understood definition of a misrepresentation claim, which…has been confined 'very largely to the invasion of interests of a financial or commercial character, in the course of business dealings.'" *Id.* at 296 n.5 (citing *Neustadt*, 366 U.S. at 711 n.26 (quoting W. Prosser, Torts § 85, at 702–703 (1941)). Thus, the misrepresentation exception relieves the Government of tort liability for (1) **commercial injuries** which are (2) "**wholly attributable to reliance** on the Government's negligent misstatements." *Id.* at 296–297 (emphasis added).

Tellingly—though *Block* is the Supreme Court's most recent, most on-point decision about the misrepresentation exception—the Government never mentions *Block* in its motion. And it's easy to see why. The Government claims that the misrepresentation exception is "broad," and that it bars Plaintiffs' action because it "covers any claim arising out of the communication of (or failure to communicate)

information." Def.'s Mot. 26. But the Supreme Court expressly rejected this overbroad application of the misrepresentation exception in *Block*—because allowing the Government to escape liability whenever its conduct involved or overlapped with some form of communication "would encourage the Government to shield itself completely from tort liability by adding misrepresentations to whatever otherwise actionable torts it commits." 460 U.S. at 298.[18] This is why *Block* emphasizes reliance as a necessary element of a misrepresentation claim. The Government doesn't mention *Block* because *Block* is fatal to the Government's pursuit of an overbroad application of the misrepresentation exception.

### 2.1. The misrepresentation exception does not apply because Plaintiffs did not rely on any Government misstatement.

In *Block*, the Supreme Court clarified that "the essence of an action for misrepresentation, whether negligent or intentional, is the communication of misinformation **on which the recipient relies**." 460 U.S. at 296 (emphasis added). *Block*'s emphasis on reliance as a key element of any misrepresentation claim jibes with Texas law. In Texas, an action based on intentional misrepresentation requires proof of the plaintiff's reliance on the misrepresentation. *Italian Cowboy Partners v. Prudential Ins.*, 341 S.W.3d 323, 337 (Tex. 2011). The same is true for negligent misrepresentations. *McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests*, 991 S.W.2d 787, 791 (Tex. 1999). And the same is true for misrepresentations by omission—sometimes characterized as fraudulent inducement or fraudulent nondisclosure. *Worldwide Asset Purchasing, LLC v. Rent-A-Center East, Inc.*, 290 S.W.3d 554, 566 (Tex. App.—Dallas 2009, no pet.); compare *Bradford v. Vento*, 48 S.W.3d 749, 754–755 (Tex. 2001) (stating action based on

---

[18]   See also *Ingham v. Eastern Airlines*, 373 F.2d 227 (2d Cir. 1967) (holding "[G]overnment's reading of the misrepresentation exception is much too broad, for it would exempt from tort liability any operational malfunction by the [G]overnment that involved communication in any form").

nondisclosure requires proof that nondisclosure induced plaintiff to act) with *Grant Thornton LLP v. Prospect High Income Fund*, 314 S.W.3d 913, 928 (Tex. 2010) (recognizing inducement "is the substance of reliance"). In short, in Texas there cannot be an action based on misrepresentation without the plaintiff's **reliance** on that misrepresentation.

And under the FTCA, when there has been **no reliance** to form the basis of a misrepresentation claim, the misrepresentation exception cannot apply. See *Block*, 460 U.S. at 298–299. In *Neustadt*, the exception applied because the plaintiff's claim was based entirely on a commercial injury that the plaintiff had suffered as a result of his reliance on the Government's misstatements. *Id.* at 295–296 (discussing *Neustadt*, 366 U.S. at 706–707). But in *Block*, the Supreme Court distinguished *Neustadt* and held that the exception does not apply when the plaintiff's claim is not based on any reliance on misstatements. *Id.* at 298–299.

Under *Block*, the misrepresentation exception relieves the Government of tort liability for (1) **commercial injuries** that are (2) "**wholly attributable to reliance** on the Government's negligent misstatements." *Id.* at 296–297 & nn.5–6 (emphasis added) (noting misrepresentation exception "applies only when the action itself falls within the commonly understood definition of a misrepresentation claim, which…has been confined very largely to the invasion of interests of a financial or commercial character, in the course of business dealings" (cleaned up)) (citing W. Prosser, Torts § 85 at 702–703 (1941); Restatement (Second) of Torts § 552(3) (1965)). Following *Block*, the Fifth Circuit has likewise held that the misrepresentation exception applies only when the plaintiff seeks to recover "for injuries resulting from **commercial decisions made in reliance on government misrepresentations**." *Saraw Partnership v. United States*, 67 F.3d 567, 571 (5th Cir. 1995) (citing *Block*, 460 U.S. at 296) (emphasis added). According to the Fifth Circuit: "Where there is no detrimental reliance on an alleged

miscommunication, no claim for misrepresentation is made." *Ibid.* And in *Saraw Partnership*, because the plaintiff "did not rely on the lack of communication by [the Government]," the misrepresentation exception did not apply. *Ibid.*

Here, as in *Block* and *Saraw Partnership*, the misrepresentation exception does not apply because Plaintiffs do not seek to recover for commercial injuries resulting from their reliance on Government misstatements. First, Plaintiffs do not allege any commercial injury, or "injuries resulting from commercial decisions." Cf. *ibid.* Instead, Plaintiffs allege they were harmed when the Government's breach of statutory duties enabled Kelley to wrongfully acquire firearms that he then used to murder Plaintiffs' family members.[19] These are not commercial injuries.

Second, this case does not involve Plaintiffs' reliance on any Government statement or nondisclosure. Contra *Neustadt*, 366 U.S. at 706–707 (involving plaintiff's reliance on statements made by Government to plaintiff); *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.* ("*FEMA Trailer II*"), 713 F.3d 807, 811–812 (5th Cir. 2013) (involving plaintiffs' reliance on Government's nondisclosure to plaintiffs); *Life Partners Inc. v. United States*, 650 F.3d 1026, 1032–1034 (5th Cir. 2011) (involving plaintiff's reliance on statement made by Government to plaintiff); *Commercial Union Ins. Co. v. United States*, 928 F.2d 176 (5th Cir. 1991) (involving plaintiff's reliance on Government's public statements). Here, there was no legal duty for the Government to make any statement to Plaintiffs, and there was no statement or nondisclosure that Plaintiffs could have possibly relied upon—or even known about—to form the basis of a misrepresentation claim.

"Where there is no detrimental reliance on an alleged miscommunication, no claim for misrepresentation is made." *Saraw Partnership*, 67 F.3d at 571 (citing

---

[19]   See Holcombe Compl. ¶ 20; Vidal Compl. ¶ 2.1; Uhl Compl. ¶ 24; Ramsey Compl. ¶ 19; McNulty Compl. ¶ 2.1; Wall-Johnson Compl. ¶ 2.1; Amador Compl. ¶ 2.1; see also IG Report at 2.

*Block*, 460 U.S. at 296). Because Plaintiffs do not seek to recover for a commercial injury that is "wholly attributable" to their reliance on a Government communication, there can be no claim for misrepresentation and the misrepresentation exception cannot apply to bar Plaintiffs' action under the FTCA. See *Block*, 460 U.S. at 296–299; *Saraw Partnership*, 67 F.3d at 570–571.

### 2.2.  The misrepresentation exception does not apply because this case is about the Government's operational negligence.

Rather than being about the Government's misstatements, this case is about the Government's operational negligence—*i.e.*, the Government's negligent failure to collect, submit, or process information into the national background-check system, as required by statute. See IG Report at 79, 83, 94–95, 99–100, 107–108 (recognizing operational nature of Government's failure to submit Kelley's fingerprint cards and criminal-history report into national background-check system).[20] In *Saraw Partnership*, the Fifth Circuit distinguished between "the communication of information" and "the performance of operational tasks," holding that, due to the misrepresentation exception, the United States cannot be liable "for injuries resulting from commercial decisions made in reliance on government misrepresentations"—but the Government **can** be liable for "injuries resulting from negligence in performance of operational tasks, even though misrepresentations are collaterally involved." 67 F.3d at 571 (citing *Mundy v. United States*, 983 F.2d 950, 952 (9th Cir. 1993)).

In *Saraw Partnership*, the Government mishandled the plaintiff's loan payments and then failed to tell the plaintiff that there were problems with his loan before trying to foreclose on it. 67 F.3d at 568–569. The Fifth Circuit held that the misrepresentation exception did not apply because it was not the Government's

---

20    See also Holcombe Compl. ¶ 52; Vidal Compl. ¶ 2.1; Uhl Compl. ¶ 46; Ramsey Compl.
      ¶ 52; McNulty Compl. ¶ 2.1; Wall-Johnson Compl. ¶ 2.1; Amador Compl. ¶ 2.1.

failure to communicate but rather the Government's mishandling of the loan payments—*i.e.*, its negligence in performing an operational task—that formed the "gist" of the case. *Id.* at 570–571. And to underscore that the case was not really about the Government's nondisclosure, the court pointed out that the plaintiff "did not rely on the lack of communication." *Id.* at 571; see Section 2.1, *supra*.

In reaching this conclusion in *Saraw Partnership*, the Fifth Circuit cited the Ninth Circuit's decision in *Mundy*. In *Mundy*, the Government failed to properly handle or process information related to the plaintiff's request for a security clearance; the Government then told the plaintiff that his clearance was denied, and the plaintiff consequently lost his job. 983 F.2d at 951. The Ninth Circuit held that the misrepresentation exception did not apply because the Government's "accurate" communication about the denial of clearance "was only collaterally involved"; it was the Government's failure to properly process information related to the security clearance—*i.e.*, the Government's operational negligence—that formed the basis of the plaintiff's claim. *Id.* at 952–953.

Both *Saraw Partnership* and *Mundy* demonstrate that the mere presence of Government communications (or nondisclosures) does not trigger the misrepresentation exception.[21] And other cases demonstrate that the Government can be held liable for operational negligence even when "the injured person has relied on a form of communication." See, *e.g.*, *Ramirez v. United States*, 567 F.2d 854, 857 (9th Cir. 1977) (holding Government can be liable for medical malpractice even when malpractice includes plaintiff's reliance on Government communication).

---

[21] See also *Metropolitan Life Ins. Co. v. Atkins*, 225 F.3d 511 (5th Cir. 2000) (holding Government's failure to properly file correct form was operational negligence, not misrepresentation, so exception did not apply); *Ingham*, 373 F.2d 227 (holding Government's failure to convey deteriorating weather conditions to crew of airliner was not barred by misrepresentation exception just because negligent conduct involved communications).

Indeed, in *Block* the Supreme Court explicitly noted that the Government can be held liable for other forms of negligence even when a viable, overlapping claim for misrepresentation exists. In *Block*, the Government falsely represented that the plaintiff's house had no defects and the plaintiff purchased the house in reliance on that misrepresentation. 460 U.S. at 292. The Court noted that the plaintiff would've had a claim for negligent misrepresentation, were it not for the misrepresentation exception. *Id.* at 298. But the Court also noted that the Government's duty to properly oversee construction was "distinct from any duty to use due care in communicating information to [the plaintiff]." *Id.* at 297. And because the misrepresentation exception barred only the plaintiff's misrepresentation claim, the Court held that the exception did **not** bar an action to recover for the Government's breach of other duties—even though the Government's negligence included or overlapped with misrepresentations. *Id.* at 297–298. "Any other interpretation [of the exception] would encourage the Government to shield itself completely from tort liability by adding misrepresentations to whatever otherwise actionable torts it commits." *Id.* at 298.

Here, the Government failed to properly collect Kelley's fingerprint cards and criminal records and submit them from one agency (the Air Force) to another (the DOJ), and thus failed to properly process that information into the national background-check system.[22] The IG Report emphasizes the operational nature of the Government's failures. See IG Report at 79, 83, 94–95, 99–100, 107–108. For example, the IG Report details the Government's failure to submit Kelley's fingerprint cards into the national background-check system on at least five separate occasions. See *id.* at 61–87. The IG Report also makes several

---

[22]   See Holcombe Compl. ¶¶ 52–53; Vidal Compl. ¶¶ 3.16–3.24; Uhl Compl. ¶¶ 40–41; Ramsey Compl. ¶¶ 52–53; McNulty Compl. ¶¶ 3.16–3.24; Wall-Johnson Compl. ¶¶ 3.16–3.24; Amador Compl. ¶¶ 3.16–3.24.

recommendations for how to address the Government's failures going forward—and none of those recommendations is about changing the way the Government communicates with third parties. See *id.* at 113–118.

Thus, like *Block*, *Saraw Partnership*, and *Mundy*, this case is about the Government's negligence in performing operational tasks—not about any Government misstatement. To the extent any Government communication was involved, the communication was merely collateral to the Government's operational negligence. Plaintiffs certainly never relied on any Government communication or nondisclosure. See Section 2.1, *supra.* And even if they had, the gist of this case is still about the Government's operational negligence—*i.e.*, the Government's failure to properly run the national background-check system. Cf. *Saraw Partnership*, 67 F.3d at 570–571. Therefore, the misrepresentation exception does not apply.

### 2.3.  The Government's arguments are without merit.

The Government contends that the misrepresentation exception is "broad" and should apply because the Government's "failure to communicate" was "a vital link between the alleged negligence…and the injury." See Def.'s Mot. 26, 28–30 (discussing cases). But in *Block* the Supreme Court expressly rejected such an overbroad application of the misrepresentation exception—and in *Saraw Partnership* the Fifth Circuit distinguished between misrepresentations and operational negligence. See Section 2.2, *supra.* The Government conspicuously fails to mention either of these two cases.

The Government relies most heavily on two other Fifth Circuit cases—*Life Partners* and *Commercial Union*—contending that the misrepresentation exception should apply here, as in those two cases, because this case involves "the transmission of misinformation" as "a necessary link in the causal chain." See Def.'s Mot. 26, 28–30. But the Government discusses these two cases and makes its "vital

link" argument without discussing the **reliance** element that is necessary for a misrepresentation claim.

In *Life Partners*, the Government misrepresented to the plaintiff that a life-insurance policy had not been assigned to another party, and the plaintiff sued because it had purchased the policy in reliance upon the Government's misrepresentation. 650 F.3d at 1028–1029. The Fifth Circuit discussed the reliance requirement for several pages before holding that the misrepresentation exception barred the plaintiff's action because the plaintiff's injury "arose from [the plaintiff's] action in **reliance** on the [Government's] misrepresentations." See *id.* at 1032–1034 (emphasis added).

Similarly, in *Commercial Union*, the Government failed to disclose health risks posed by respirators being used by shipyard workers, and the plaintiff—an insurance company seeking indemnity or contribution—sued because its insured had relied on the Government's nondisclosure in providing the respirators to its workers. 928 F.2d at 177–178. As in *Life Partners*, the Fifth Circuit discussed the reliance requirement before holding that the misrepresentation exception barred the plaintiff's action because the plaintiff's injury arose from its insured's **reliance** on "erroneous information" that had been "publicly disseminated" by the Government. *Id.* at 178–180.

In short, both *Life Partners* and *Commercial Union* involved **reliance** on a Government misstatement that had been made either directly to the plaintiff (*Life Partners*, 650 F.3d at 1028–1029) or "to the public at large" (*Commercial Union*, 928 F.2d at 180). In both cases, the Fifth Circuit discussed the reliance requirement before holding that the misrepresentation exception applied. And courts have done the same in other cases. See *Neustadt*, 366 U.S. at 706–707 (involving plaintiff's reliance on Government statement made directly to plaintiff); *FEMA Trailer II*,

713 F.3d at 811–812 (involving plaintiffs' reliance on Government's nondisclosure to plaintiffs).

Ignoring the reliance requirement, the Government argues that the misrepresentation exception should bar Plaintiffs' claims in this case, simply because the Government's conduct included a communication to the gun dealer. See Def.'s Mot. 26, 28–30. But that communication was never made to Plaintiffs, so Plaintiffs could never have relied on it. And with **no reliance**, Plaintiffs' claims cannot be based on misrepresentation. *Saraw Partnership*, 67 F.3d at 571 ("Where there is no detrimental reliance on an alleged miscommunication, no claim for misrepresentation is made."); see Section 2.1, *supra*. So the misrepresentation exception cannot apply.

The Government suggests that its failure to inform the gun dealer about Kelley's background was "relied upon by the dealer"—and that this is the "vital link" or "indispensable nexus" that makes this case about misrepresentation. See Def.'s Mot. 30. But this argument was implicitly rejected in *Commercial Union*. In *Commercial Union* (involving unsafe respirators for shipyard workers), the Fifth Circuit concluded that the plaintiff's claim was based on misrepresentation because the harm resulted from reliance on the Government's communication. But in a contrasting hypothetical, the court reasoned that, if the respirators "could not lawfully have been sold or used" without the Government's approval—so that purchasers were required to rely on the Government, and the respirators "never would have been available" for "purchase or use" if the Government had properly done its job—then the Government's negligence in failing to properly do its job would have been the cause of the harm, regardless of any "communication of misinformation." See 928 F.2d at 180 n.3. Because this contrasting hypothetical was not the case in *Commercial Union*, and the reliance on the Government's communication was discretionary, the harm flowed from the reliance itself and the

plaintiff's claim was based on misrepresentation—so the misrepresentation exception applied. See *id.* at 178–180.

This case is like the contrasting hypothetical in *Commercial Union*. Here, the gun dealer was required to ask for and rely on the Government's statements about Kelley's background. See 18 U.S.C. § 922(t). If the Government had properly done its job by processing Kelley's background information into the national background-check system, as required by statute, then the dealer could not have lawfully sold guns to Kelley. Cf. *Commercial Union*, 928 F.2d at 180 n.3. Thus, it was the Government's negligence in failing to properly do its job—*i.e.*, its negligence in performing an operational task—that caused Plaintiffs' harm. The Government's "misstatement" to the dealer was merely collateral to the Government's operational negligence. See Section 2.2, *supra*.

In fact, because the Government had failed to properly process Kelley's background information into the national background-check system, the Government's statement to the gun dealer—that there was no information in the background-check system that would prevent Kelley from lawfully purchasing a gun—was technically not a "misstatement" at all. In this way, this case is just like *Mundy*. In *Mundy*, the plaintiff had requested a security clearance, the Government had failed to properly process information related to that request and had consequently denied the clearance, and as a result the plaintiff lost his job. 983 F.2d at 951–952. In concluding that the misrepresentation exception did not bar the plaintiff's action under the FTCA, the court held that the Government's "communication—[*i.e.*,] the **accurate** conveyance of the results of the security clearance processing—was only collaterally involved; the negligence at the heart of [the plaintiff's] claim lie[d] in the [Government's] processing errors." *Id.* at 953 (emphasis added). Likewise, here, the "accurate conveyance" of the results of the background check was only collaterally involved; the negligence at the heart of

Plaintiffs' case lies in the Government's failure to process Kelley's background information into the background-check system. Cf. *Mundy*, 983 F.2d at 951–953.

Similarly, in *Saraw Partnership*, the Government had failed to properly process the plaintiff's loan payments, had failed to inform the plaintiff about problems with his loan, and then tried to foreclose on the plaintiff's property. See 67 F.3d at 568–569. In concluding that the misrepresentation exception did not apply, the Fifth Circuit relied on *Mundy* and held that the case was "not about [the plaintiff's] reliance on faulty information or on the lack of proper information [about his loan]; rather, the gist of this case [was] the [G]overnment's careless handling of [the plaintiff's] loan payments." *Id.* at 570–571. Likewise, here, Plaintiffs' case is not about their reliance on any Government misstatement or nondisclosure; rather, the gist of this case is the Government's careless handling of Kelley's background information. Cf. *Saraw Partnership*, 67 F.3d at 568–571.

In short, this case is about the Government's negligent performance of an operational task. See Section 2.2, *supra*. The Government's (technically accurate) communication to the gun dealer was only collaterally involved. Cf. *Mundy*, 983 F.2d at 953. Plaintiffs' claims are not—and cannot be—based on any Government misrepresentation because Plaintiffs **did not rely** on any Government communication. See Section 2.1, *supra*.

Ultimately, the Government's "vital link" argument (see Def.'s Mot. 26, 28–30) is an attempt to drastically expand the scope of the misrepresentation exception in a way that was expressly rejected by the Supreme Court in *Block*. See 460 U.S. at 298 (recognizing that allowing Government to escape liability whenever conduct involves or overlaps with communication "would encourage the Government to shield itself completely from tort liability by adding misrepresentations to whatever otherwise actionable torts it commits"). If the Government can characterize its failure to submit fingerprint cards and criminal records into the national

background-check system as a "misrepresentation," then the Government could also characterize the failure to transmit pathology specimens in a medical-malpractice case as a "misrepresentation."[23] Or it could characterize the failure to provide for informed consent as "misrepresentation."[24] In short, the Government hopes to avoid liability for all kinds of torts by simply characterizing everything it does as involving some form of miscommunication.[25] This is what the Government hopes to accomplish through its "vital link" argument—though the Supreme Court already rejected this overbroad application of the misrepresentation exception in *Block*.

The Fifth Circuit also effectively rejected the Government's "vital link" argument in *Saraw Partnership*. There, the district court had embraced the Government's argument that the misrepresentation exception should apply because a vital link in the "chain of events" was the Government's "fail[ure] to communicate" information. See 67 F.3d at 569–570. But the Fifth Circuit reversed the district court's decision and rejected the Government's "vital link" argument, citing *Block* and holding that the misrepresentation exception did not apply because it was clear that the plaintiff "did not rely" on the Government's communication or nondisclosure. *Id.* at 570–571 (citing *Block*, 460 U.S. at 296).

---

[23] Contra *Ramirez*, 567 F.2d at 857 (overruling prior case holding failure to diagnose was misrepresentation claim, noting such broad application of misrepresentation exception is inconsistent with Supreme Court precedent).

[24] Contra *Murrey v. United States*, 73 F.3d 1448, 1450–1451 (7th Cir. 1996) (holding medical malpractice for failure to provide informed consent is not misrepresentation claim); see also *Ramirez*, 567 F.2d at 855 (same).

[25] See, *e.g.*, *Trentadue v. United States*, 397 F.3d 840, 854 (10th Cir. 2005) (rejecting Government's attempt to avoid liability for emotional distress under misrepresentation exception); *Chang-Williams v. United States*, 965 F. Supp. 2d 673, 682 (D. Md. 2013) (rejecting Government's attempt to avoid liability for wrongful death under misrepresentation exception); *Ramirez*, 567 F.2d at 857 (rejecting application of the misrepresentation exception to wreck caused by another driver's "misleading turn signal").

*Block* and *Saraw Partnership* are fatal to the Government's overbroad "vital link" argument, which is presumably why the Government ignores those two cases. And all of the other cases that the Government cites—*Neustadt*, *Life Partners*, *Commercial Union*, and *FEMA Trailer II*—are distinguishable because they each discuss the reliance requirement and find that it has been satisfied, whereas here the Government fails to address or even to acknowledge the existence of this requirement.[26]

For these reasons (see Section 2, *supra*), the Government's invocation of the misrepresentation exception is without merit and the Government's motion to dismiss should be denied.

**3. The Government's defense based on "the Brady Act itself" is precluded by the plain text of the Brady Act itself.**

The text of the Brady Act plainly excludes the United States from the benefit of the statute's immunity provision. The law begins:

> Neither a local government nor an employee of the Federal Government or of any State or local government, responsible for providing information to the national instant criminal background check system shall be liable in an action at law for damages…

18 U.S.C. § 922(t)(6). Plaintiffs sued the United States ("the Government")—not any specific federal employee. That removes this suit from the ambit of the Brady Act's immunity provision because the provision protects only federal employees and not the Government itself.

---

[26] The Government contends that the misrepresentation exception can bar not only actions to recover for commercial injury, but also actions to recover for bodily harm. Def.'s Mot. 26–27. But even if this were true, it is irrelevant if the exception cannot apply in the first place. And here, the exception cannot apply in the first place. See Sections 2.1–2.2, *supra*.

Whether the Government is entitled to immunity under section 922(t)(6) is a question of statutory interpretation. And courts must start with the plain text of the statute. The Supreme Court has "stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–254 (1992). "When the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete." *Ibid.* (cleaned up). Moreover, it is well established as a canon of statutory interpretation that the expression of one thing implies the exclusion of others. See Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* (2012) at 107–111 (discussing Negative-Implication Canon and citing, *e.g.*, *United States v. Giordano*, 416 U.S. 505 (1974), as applying this canon).

Here, the text of the Act unambiguously states who receives immunity:

- "a local government";
- "an employee of the Federal Government"; or
- "an employee … of any State or local government."

18 U.S.C. § 922(t)(6). Plainly excluded from this list is the Federal Government. And under the negative-implication canon, "where Congress has carefully employed a term in one place and excluded it in another, it should not be implied where excluded." *United States v. Bo*, 472 F.2d 720, 722 (5th Cir. 1972); accord *Giordano*, 416 U.S. at 514 (discussed in Scalia & Garner at 111); *Clay v. United States*, 537 U.S. 522, 528 (2003) (recognizing that, when a term is excluded, "it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion" of that term).

Congress has shown throughout the U.S. Code that, when it wishes to immunize the Government, it does so in clear terms. See, *e.g.*, 43 U.S.C. § 1656(b) ("[T]he United States and several States, and political subdivisions thereof, shall not be liable under this section."). The contrast between other immunity provisions

and the immunity provision in the Brady Act "makes clear that Congress knows how to impose express limits" on the Government's liability when that is what Congress wants to do. *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 252 (2010). Here, Congress chose not to impose those limits. The Brady Act's grant of immunity to local governments and to employees of federal, state, and local governments plainly excludes the Federal Government from any grant of immunity.

Defying the plain text of the statute, the Government claims immunity under § 922(t)(6) based on the notion that it may raise any defense that its employees may raise. Def.'s Mot. 30–31 (citing *Alfonzo v. United States*, 752 F.3d 622, 627 (5th Cir. 2014), and *Medina v. United States*, 259 F.3d 220, 225 (4th Cir. 2001)). But the Government's reliance on *Alfonzo* and *Medina* is misplaced.

The Government has no basis for claiming a defense based on federal law. "As immunities and defenses are defined by the same body of law that creates the cause of action, the defenses available to the United States in FTCA suits are those that would be available to a private person under the relevant **state law**." *Vidro v. United States*, 720 F.3d 148, 151 (2d Cir. 2013) (emphasis added).[27] This doctrine flows directly from the FTCA's text, which states that the Government stands in the shoes of a private state-law defendant and is liable—or not—"in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). In *Alfonzo*, the Government claimed a defense available under the Louisiana Homeland Security Act—a **state law**. See 752 F.3d at 624–625. And likewise in *Medina*, the footnote that the Government relies on discusses the availability of a defense under **state law**. See 259 F.3d at 225 n.2. Thus, neither *Alfonzo* nor

---

[27] See, *e.g.*, *FEMA Trailer I*, 668 F.3d at 288–289; *Camacho v. Tex. Workforce Comm'n*, 445 F.3d 407, 410 (5th Cir. 2006); *Starnes v. United States*, 139 F.3d 540, 542 (5th Cir. 1998); *Palmer v. Flaggman*, 93 F.3d 196, 199 (5th Cir. 1996).

*Medina* supports the Government's attempt to piggyback on the immunity that is provided to its employees under **federal law**.[28]

To read § 922(t)(6) as granting immunity to the Government, where the Government is not listed, would be to violate well-established canons of statutory interpretation. See Scalia & Garner at 107–111 (discussing Negative-Implication Canon); see also *id.* at 93–100 (discussing Omitted-Case Canon and quoting Justice Brandeis: "To supply omissions transcends the judicial function."[29]). Nothing in the FTCA statutory scheme entitles the Government to claim immunity under a federal statutory provision that—by its plain terms—applies only to the Government's employees and not to the Government itself.[30] And to allow the Government to claim the immunity provided to its employees under federal law, by citing cases that recognize only the Government's ability to rely on defenses available under state law, would be to drastically expand the Government's ability to evade liability under the FTCA.

This would fly in the face of the text and history of the FTCA—and specifically the text and history of the Westfall Act. In 1988, the Supreme Court held that Government employees were not immune from state tort-law liability. *Westfall v.*

[28]   The only other case that the Government cites offers no analysis of this issue. See *Sanders v. United States*, 324 F. Supp. 3d 636, 649 (D.S.C. June 18, 2018). And in *Sanders* the Government abandoned its immunity claim. *Ibid.*

[29]   *Iselin v. United States*, 270 U.S. 245, 251 (1926) (Brandeis, J.). Like the negative-implication canon, the omitted-case canon states that courts cannot add or create unprovided-for exceptions to a text: "[I]f the Congress [had] intended to provide additional exceptions, it would have done so in clear language." Scalia & Garner at 93 (quoting *Petteys v. Butler*, 367 F.2d 528, 538 (8th Cir. 1966) (Blackmun, J., dissenting)).

[30]   The FTCA provides elsewhere that the Government may assert the "judicial or legislative immunity" that is available to individual defendants. 28 U.S.C. § 2674. But this is a reference to "the traditional immunities that have long protected the key functions of the legislative and judicial branches of the Government." H.R. Rep. No. 100-750, at 5 (1988), reprinted in 1988 U.S.C.C.A.N. 5945, 5948. Those immunities are inapplicable here. If anything, the FTCA's recognition of those immunities further underscores the exclusion of the Government from the immunity provided in § 922(t)(6).

*Erwin*, 484 U.S. 292, 299 (1988). In doing so, the Court invited Congress to intervene:

> Congress is in the best position to provide guidance for the complex and often highly empirical inquiry into whether absolute immunity is warranted in a particular context. Legislated standards governing the immunity of federal employees involved in state-law tort actions would be useful.

*Id.* at 300. Congress accepted this invitation and passed the Westfall Act. See Pub. L. No. 100-694, 102 Stat. 4563 (1988). The purpose of the Westfall Act was clear: when acting within the scope of employment, an employee enjoys immunity from suit. See *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 425–426 (1995). Thus, an action against the United States itself is the plaintiff's exclusive remedy under the FTCA. See 28 U.S.C. § 2679(b)(1).[31]

Notably, Congress wanted lawsuits under the FTCA to be brought exclusively against the Government itself—and not against its employees—for morale reasons and also "because FTCA defenses usually cost less than personal liability defenses, and FTCA cases are almost always easier to settle than personal liability cases." H.R. Rep. 100-700, 1988 U.S.C.C.A.N. 5945, 5955, 1988 WL 169931, *11 (1988).

Congress passed the Brady Act in 1993, just a few years after passing the Westfall Act. See Pub. L. No. 103-159, 107 Stat 1536 (1993). And Congress knew the statutory framework in place at the time. See *South Dakota v. Yankton Sioux Tribe*, 522 U.S. 329, 351 (1998). Mirroring the FTCA, the Brady Act immunizes state and federal employees but not the States or the Federal Government because—as with the Westfall Act—Congress wanted to steer potential plaintiffs into bringing actions

---

[31] *See also* H.R. Rep. 100-700, 1988 U.S.C.C.A.N. 5945, 5951, 1988 WL 169931, at *7 (1988) ("The 'exclusive remedy' provision of section 5 is intended to substitute the United States as the solely permissible defendant in all common law tort actions against Federal employees who acted in the scope of employment.").

against the Government itself, rather than against its employees. In the hearing on the Brady Bill, Representative Schumer stated as much:

> Mr. Schumer: … The bill immunizes law enforcement officers from personal liability for [their] role in the background check. So, for example, a police officer who mistakenly puts a hold on a sale or mistakenly permits a sale **couldn't be sued personally**.
>
> **I believe this provision is consistent with longstanding departmental provisions on governmental immunity.**

Hearing on H.R. 1025 Before the H. Subcomm. on Crime & Crim. Justice 103rd Cong. 85 (Sept. 30, 1993) (emphasis added). Thus, § 922(t)(6) of the Brady Act was intended to be—and is—consistent with the FTCA, as amended by the Westfall Act. And as with the FTCA and the Westfall Act, if Congress had intended to immunize the Government against liability for violations of the Brady Act, it could've easily done so. But it didn't.

The FTCA is designed to **waive** sovereign immunity and to subject the United States to certain kinds of tort liability. See *Rayonier*, 352 U.S. at 319 ("[T]he very purpose of the Tort Claims Act was to waive the Government's traditional all-encompassing immunity from tort actions and to establish novel and unprecedented governmental liability."). It would therefore be truly self-defeating and absurd to say that the United States remains nonetheless immune from suit under the FTCA because its employees are immune from suit under the FTCA. Yet the Government employs this logic when it asks this Court to judicially extend § 922(t)(6) to cloak not only the Government's employees but also the Government itself in immunity.

As demonstrated, the plain text of § 922(t)(6) excludes the Government from the immunity provided to its employees. And the cases the Government relies on are inapposite because they are about the availability of defenses under state law.

Therefore, the Court should apply § 922(t)(6) as it is written and reject the Government's effort to drastically expand its immunity.

**CONCLUSION**

For the reasons provided, the Court should reject the Government's effort to expand its immunity and deny the Government's motion in its entirety.


//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

Respectfully submitted,

/s/  Jason P. Steed
Jason P. Steed
KILPATRICK TOWNSEND & STOCKTON LLP
2001 Ross Avenue, Suite 4400
Dallas, TX  75201
   Counsel for Vidal, McNulty, and Wall

/s/  Jamal K. Alsaffar
Jamal K. Alsaffar
Tom Jacob
WHITEHURST, HARKNESS, BREES,
CHENG, ALSAFFAR & HIGGINBOTHAM &
JACOB PLLC
7500 Rialto Blvd, Bldg Two, Ste 250
Austin, TX 78735
   Counsel for Vidal, McNulty, and Wall

/s/  April A. Strahan
April A. Strahan
Robert E. Ammons
THE AMMONS LAW FIRM
3700 Montrose Blvd.
Houston, TX 77006
   Counsel for Holcombe and Ramsey

/s/  Daniel J.T. Sciano
Daniel J.T. Sciano
TINSMAN & SCIANO
10107 McAllister Freeway
San Antonio, TX 78216
   Counsel for Amador

/s/  Daniel D. Barks
Daniel D. Barks
SPEISER KRAUSE, P.C.
5555 Glenridge Connector, Suite 550
Atlanta, GA 30342
   Counsel for Holcombe

/s/  Mark W. Collmer
Mark W. Collmer
COLLMER LAW FIRM
3700 Montrose
Houston, TX 77006
   Counsel for Holcombe

/s/  Dennis Charles Peery
Dennis Charles Peery
R. Craig Bettis
TYLER & PEERY
5822 West IH 10
San Antonio, TX 78201
   Counsel for Uhl

/s/  Tim Maloney
Tim Maloney
Paul E. Campolo
MALONEY & CAMPOLO, L.L.P.
926 S. Alamo
San Antonio, TX 78205
   Counsel for Ramsey

/s/ George LeGrand
George LeGrand
Stanley Bernstein
LEGRAND & BERNSTEIN
2511 N. Saint Mary's St.
San Antonio, Texas 78212
   Counsel for Wall

CERTIFICATE OF SERVICE

I certify that the foregoing was filed through the Court's CM/ECF system on February 1, 2019, and the following counsel for the United States have received notice and been served through that system.

*/s/  Jason P. Steed*
Jason P. Steed

JOSEPH H. HUNT
Assistant Attorney General
United States Dept. of Justice
Civil Division

JOHN F. BASH
United States Attorney
Western District of Texas

KIRSTEN WILKERSON
Assistant Director, Torts Branch
United States Dept. of Justice
Civil Division

PAUL DAVID STERN
Trial Attorney, Torts Branch
United States Dept. of Justice
Civil Division

JOHN PANISZCZYN
Civil Chief
United States Attorney's Office
Western District of Texas

JAMES G. TOUHEY, JR.
Director, Torts Branch
United States Dept. of Justice
Civil Division

STEPHEN E. HANDLER
Senior Trial Counsel, Torts Branch
United States Dept. of Justice
Civil Division

STEPHEN TERRELL
Trial Attorney, Torts Branch
United States Dept. of Justice
Civil Division