**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| JOE HOLCOMBE and CLARYCE HOLCOMBE, Each Individually, as Heirs at Law and as Representatives of the Estate of JOHN BRYAN HOLCOMBE, Deceased, | ) ) ) ) ) ) | CIVIL ACTION No. 5:18-CV-555-XR (consolidated with Nos. 5:18-CV-712-XR; 5:18-CV-881-XR; 5:18-CV-944-XR; 5:18-CV-949-XR; 5:18-CV-951-XR; 5:18-CV-1151-XR; 5:19-CV-184-XR; 5:19-CV-289- |
| Plaintiffs, | ) ) | XR; 5:19-CV-506-XR; 5:19-CV-805-XR; 5:19-CV-678-XR; 5:19-CV-691-XR; 5:19- |
| v. | ) ) | CV-705-XR; 5:19-CV-715-XR; 5:19-CV-706-XR; 5:19-CV-805-XR; 5:19-CV-806- |
| UNITED STATES OF AMERICA, | ) ) | XR) |
| Defendant. | ) ) ) | |

**DEFENDANT UNITED STATES OF AMERICA'S
MOTION FOR CERTIFICATION OF THIS COURT'S ORDER
DATED MAY 23, 2019 (ECF No. 59) PURSUANT TO 28 U.S.C. § 1292(b)**

JOSEPH H. HUNT
Assistant Attorney General
Civil Division
JOHN F. BASH
United States Attorney
THOMAS G. WARD
Deputy Assistant Attorney General
Civil Division
JOHN F. PANISZCZYN
Assistant United States Attorney
State Bar No. 15443855
JAMES G. TOUHEY, JR.
Director, Torts Branch
Civil Division
KIRSTEN L. WILKERSON
Assistant Director, Torts Branch
Civil Division
PAUL DAVID STERN
Trial Attorney, Torts Branch
Civil Division
United States Department of Justice
Attorneys for Defendant
UNITED STATES OF AMERICA

Table of Contents

Table of Authorities ...................................................................................................... ii

INTRODUCTION ........................................................................................................ 1

RELEVANT STATUTES ............................................................................................ 3

PRIOR PROCEEDINGS ............................................................................................. 6

ARGUMENT ............................................................................................................... 8

    THIS COURT SHOULD CERTIFY ITS ORDER FOR INTERLOCUTORY APPEAL
    PURSUANT TO 28 U.S.C. § 1292(b)....................................................................... 8

    A.    The Order Involves Controlling Questions of Law ...................................... 9

    B.    There is Substantial Ground for Difference of Opinion ............................ 10

        1.    The Brady Act's Immunity Provision .................................................. 10

          a.  Prior Decisions Construing 18 U.S.C. § 922(t)(6) and the Brady Act's Interim
            Provision............................................................................................. 10

          b.  The Court's Textual Analysis of § 922(t)(6) ........................................ 11

          c.  The *Alfonso* and *Morrone* Decisions ................................................ 14

          d.  The Court's narrow reading of § 922(t)(6) ........................................... 16

        2.    Negligent Undertaking ........................................................................ 17

    C.    An Immediate Appeal Will Materially Advance the Ultimate Termination of
        Litigation.................................................................................................... 21

    CONCLUSION........................................................................................................ 23

# TABLE OF AUTHORITIES

Cases

*Affiliated Professional Home Health Care Agency v. Shalala,*
164 F.3d 282 (5th Cir. 1999) ........................................................................ 18

*Ahrenholz v. Bd. of Trs. of the Univ. of Ill.,*
219 F.3d 674 (7th Cir. 2000) .................................................................... 2, 11

*Alabama Labor Council, AFL-CIO, Public Emp. Union, Local No. 1279 v. State of Ala.,*
453 F.2d 922 (5th Cir. 1972) ........................................................................ 10

*Alfonso v. United States,*
752 F.3d 622 (5th Cir. 2014) ........................................................................ 19

*Ayala v. United States,*
49 F.3d 607 (10th Cir. 1995) ........................................................................ 26

*Caban v. United States,*
728 F.2d 68 (2d Cir. 1984) ............................................................................ 20

*Charles v. United States,*
15 F.3d 400 (5th Cir. 1994) .......................................................................... 20

*Coleman v. United States,*
912 F.3d 824 (5th Cir. 2019) ........................................................................ 23

*Colonial Sav. Ass'n v. Taylor,*
544 S.W.2d 116 (Tex. 1976) ......................................................................... 25

*Hines v. Alldredge,*
783 F.3d 197 (5th Cir. 2015) ........................................................................ 12

*In re Trump,*
874 F.3d 948 (6th Cir. 2017) .................................................................. 12, 13

*In re Trump,*
No. 18-2486, 2019 WL 2997909 (4th Cir. July 10, 2019) ............................ 2, 11, 13

*Jean M. Fratus v. William V. Devine,* No. Civ.A,
96-551-T, 1997 WL 33547361 (D.R.I. Aug. 25, 1997) ............................ 15, 17

*Johnson v. Sawyer,*
47 F.3d 716 (5th Cir. 1995) .................................................................... 18, 23

*Linton v. Shell Oil Co.,*
563 F.3d 556 (5th Cir. 2009) ...................................................................... 3, 5

*Lossberg v. Tyler Tech., Inc.,*
No. CV01-18-12607, 2018 WL 6709383 (Idaho Dist. Ct. Nov. 21, 2018) .......... 14, 16

*Machete Productions, L.L.C. v. Page,*
809 F.3d 281 (5th Cir. 2015) ........................................................................ 17

*Martin v. Halliburton,*
618 F.3d 476 (5th Cir. 2010) ........................................................................ 11

*Martinez v. Bohls Bearing Equip. Co.,*
361 F. Supp. 2d 608 (W.D. Tex. 2005) ...................................................... 3, 28

*Medina v. United States,*
259 F.3d 220 (4th Cir. 2001) ........................................................................ 19

*Mohawk Indus., Inc. v. Carpenter,*
  558 U.S. 100 (2009).................................................................................. 11
*Monell v. Dep't of Soc. Serv's of City of New York,*
  436 U.S. 658 (1978).................................................................................. 18
*Morrone v. Prestonwood Christian Academy,*
  215 S.W.3d 575.................................................................................. 20, 21
*Pate v. Oakwood Mobile Homes, Inc.,*
  374 F.3d 1081 (11th Cir. 2004) .................................................................. 25
*Reese v. BP Exploration (Alaska) Inc.,*
  643 F.3d 681 (9th Cir. 2011) ................................................................ 13, 27
*Rogers v. City of San Antonio, Tex.,*
  No. Civ.A SA-99-CA-1110, 2003 WL 1571550 (W.D. Tex. March 24, 2003) ...................... 29
*Sanders v. United States,*
  324 F. Supp. 3d 636 (D.S.C. 2018)........................................................... 14, 15
*Sheridan v. United States,*
  969 F.2d 72 (4th Cir. 1992) ...................................................................... 26
*Spong v. Fidelity Nat. Property and Cas. Ins. Co.,*
  787 F.3d 296 (5th Cir. 2015) ..................................................................... 12
*States,*
  17 F.3d 890 (6th Cir. 1994) ...................................................................... 26
*Tanglewood East Homeowners v. Charles-Thomas, Inc.,*
  849 F.2d 1568 (5th Cir. 1988) ................................................................... 12
*Torrington Co. v. Stutzman,*
  46 S.W.3d 829 (Tex. 2000)....................................................................... 24
*Turbe v. Gov't of Virgin Islands,*
  938 F.2d 427 (3d Cir. 1991)...................................................................... 26
*Vidro v. United States,*
  720 F.3d 148 (2d Cir. 2013)...................................................................... 20

Statutes

18 U.S.C. § 921 .................................................................................... 6
18 U.S.C. § 922 .................................................................................... 4
18 U.S.C. § 922(g) ............................................................................ passim
18 U.S.C. § 922(n) ................................................................................ 4
18 U.S.C. § 922(s)(7) ....................................................................... 5, 15, 16
18 U.S.C. § 922(t)(1) ............................................................................. 4
18 U.S.C. § 922(t)(6) ........................................................................ passim
18 U.S.C. § 925A .............................................................................. 5, 17
28 U.S.C. § 1292(b).......................................................................... 1, 2, 10, 30
28 U.S.C. § 2401(b)............................................................................... 8
28 U.S.C. § 2680(h)............................................................................... 8
28 U.S.C. §§ 1346(b)........................................................................... 1, 20
34 U.S.C. § 40901(b)............................................................................... 4
34 U.S.C. § 40901(e)(1)(B) .................................................................... 6, 22
34 U.S.C. § 40901(e)(1)(C) ....................................................................... 6
34 U.S.C. § 40901(e)(1)(E)........................................................................ 7

34 U.S.C. § 40901(e)(1)(F) ................................................................................. 7
34 U.S.C. § 40901(e)(1)(H) ................................................................................. 7
34 U.S.C. § 40901(e)(1)(I) .................................................................................. 7
42 U.S.C. § 1983 ................................................................................. 15, 17, 18
5 U.S.C. § 552a ................................................................................................. 6
Pub. L. No. 110-180 ......................................................................................... 6
Pub. L. No. 115-141 .......................................................................................... 7

Other Authorities

Charles Alan Wright et al., Federal Practice and Procedure § 3930 ...................... 12, 27
Federal Practice and Procedure § 3931 (3d ed. 2008) ................................... 11
Pub. L. No. 103-159 .................................................................................... 4, 5, 6

Defendant, United States of America, respectfully moves this Court to certify its Order dated May 23, 2019 (ECF No. 59), for interlocutory appeal.  The Order involves "controlling question[s] of law as to which there is substantial ground for difference of opinion," and resolving these questions on an immediate appeal "may materially advance the ultimate termination of the litigation."  U.S.C. § 1292(b).  Counsel for the United States has conferred with counsel for plaintiffs, who oppose this motion.

## INTRODUCTION

These consolidated actions arose out of the horrific mass shooting that occurred on November 5, 2017, at the First Baptist Church in Sutherland Springs, Texas.  The shooter, Devin Patrick Kelley, killed twenty-six people and injured at least twenty others during the rampage.  Thus far, forty-three plaintiffs have brought suit under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 *et seq.* (FTCA), alleging that the United States is liable for this tragedy because, but for failures by the U.S. Air Force to report disqualifying information about Kelley to the FBI's national instant background check system, Kelley would not have been able to purchase the firearms he used to carry out the massacre at the church.  Dozens of additional victims may yet file suit.

The United States moved to dismiss the consolidated cases, alleging a number of legal defenses.  In its Order of May 23, 2019, this Court granted that motion in limited part, but rejected several of the United States' threshold defenses.  Absent interlocutory appeal, this complex case will move to discovery, including individualized damages discovery for scores of plaintiffs.

This is a paradigmatic case in which certification under section 1292(b) is appropriate.  The United States asserted threshold defenses that raise pure questions of

1

law, suitable for resolution on interlocutory review.  As explained below, reasonable minds could differ regarding the proper resolution of these questions.  If one of the United States' defenses were accepted, it would bring a complete resolution to the litigation.

Moreover, this litigation remains at an early phase and there is thus substantial value that would come from interlocutory appeal.  The parties have not yet embarked on a discovery process which, if it goes forward, will exert a significant burden on all parties.  Trial remains more than a year away.

For these reasons, this is a clear case in which there are "controlling question[s] of law as to which there is substantial ground for difference of opinion," and resolving these questions on an immediate appeal "may materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b).  The Court, accordingly, should certify its order for interlocutory review.  *See Ahrenholz v. Bd. of Trs. of the Univ. of Ill.*, 219 F.3d 674, 677 (7th Cir. 2000) (recognizing that when the statutory criteria are met, a district court has a "duty" to certify its order under Section 1292(b); *In re Trump*, No. 18-2486, 2019 WL 2997909, at *6 (4th Cir. July 10, 2019) (same); *see also Martinez v. Bohls Bearing Equip. Co.*, 361 F. Supp. 2d 608, 633 (W.D. Tex. 2005) (order of this Court in a past case certifying one of its decisions for interlocutory review when statutory criteria were met).

The Fifth Circuit has explained that § 1292(b) "authorizes certification of orders for interlocutory appeal, not certification of questions."  *Linton v. Shell Oil Co.*, 563 F.3d 556, 557 (5th Cir. 2009).  However, it has indicated that district courts should nonetheless "frame[] the controlling question(s) that the judge believes [are] presented by the order being certified."  *Id.* We ask the Court to identify two such questions in its certification order:

2

(1) whether plaintiffs' claims are precluded by 18 U.S.C. § 922(t)(6), a provision of the Brady Handgun Violence Prevention Act that shields employees of the Federal government from liability in actions at law for damages for failing to prevent the sale or transfer of firearms to persons whose receipt or possession of them is unlawful; and

(2) whether plaintiffs have stated a viable claim under Texas law based on a negligent undertaking theory of liability.[1]

## RELEVANT STATUTES

1.  Federal law prohibits the receipt or possession of firearms by certain categories of individuals, including those with certain criminal histories.  *See generally* 18 U.S.C. § 922(g) & (n).  In 1993, Congress passed the Brady Handgun Violence Prevention Act, Pub. L. No. 103-159, 107 Stat. 1536 (Brady Act), which directed the Attorney General to establish a National Instant Criminal Background Check System (NICS) that any federally licensed firearm dealer may contact for information on whether receipt of a firearm by a prospective transferee would violate 18 U.S.C. § 922.  *See id.* § 103(b), 107 Stat. 1541, 34 U.S.C. § 40901(b).

Since November 30, 1998, the Brady Act has required that before completing the transfer of a firearm to a prospective transferee a firearms dealer must first contact NICS; the dealer then is permitted to complete the transfer: 1) if three business days elapse without NICS notifying the dealer that the prospective transferee's receipt of a firearm would violate 18 U.S.C. § 922(g) or (n), or State law, or 2) if NICS notifies the dealer that the information available to the system does not demonstrate that the prospective transferee's receipt of a firearm would violate the referenced provisions or State law.  *See id.* § 102(b), 107 Stat. 1539, 18 U.S.C. § 922(t)(1) & (4).

---

[1] The United States also argued in its motion to dismiss that the claims here are barred by the FTCA's misrepresentation exception.  While under *Linton*, certification of this Court's order would put that ruling before the Fifth Circuit, we do not intend to challenge that ruling on interlocutory review.

The Brady Act contains a provision that limits the tort liability stemming from the provision of information to the NCIS system.  *See* Pub. L. No. 103-159, § 102(b), 107 Stat. 1541, 18 U.S.C. § 922(t)(6).  Specifically, this provision states:

> Neither a local government nor an employee of the Federal Government or of any State or local government, responsible for providing information to the national instant criminal background check system shall be liable in an action at law for damages—
> (A) for failure to prevent the sale or transfer of a firearm to a person whose receipt or possession of the firearm is unlawful under this section;
> (B) for preventing such a sale or transfer to a person who may lawfully receive or possess a firearm.

*Id.*.[2]

The Brady Act also expressly creates a statutory remedy for persons claiming that they have been denied a firearm due to the provision of erroneous information by any State or political subdivision thereof or by NICS, or that their receipt of a firearm is not prohibited by 18 U.S.C. § 922(g) or (n).  *See* Pub. L. No. 103-159, § 104, 107 Stat. 1543, 18 U.S.C. § 925A.  This provision authorizes actions to be brought against the State or political subdivision, or against the United States itself, as the case may be, for an order directing that the erroneous information be corrected or that the transfer be approved.  *Id.*

Finally, the Brady Act further provides that it is not to be construed to alter or impair any right or remedy under 5 U.S.C. § 552a, popularly known as the Privacy Act.  *See* Pub. L. No. 103-159, § 105, 107 Stat. 1543, 18 U.S.C. § 921 note.

2.  Pursuant to amendments enacted in 2008 to facilitate operation of the NICS system,

---

[2] The Brady Act conferred similar protection from damages liability on CLEOs and other persons responsible for providing criminal history information under the statute's interim provision, which was in effect during the period before the NICS system was established.  *See* Pub. L. No. 103-159, § 102(a), 107 Stat. 1539, 18 U.S.C. § 922(s)(7).

the Brady Act now provides that on request of the Attorney General the heads of Federal departments and agencies shall furnish electronic versions of such information on persons for whom receipt of a firearm would violate 18 U.S.C. § 922(g) or (n) or State law as is necessary for the NICS system to operate in accordance with the law.  *See* NICS Improvement Amendments Act (NIAA), Pub. L. No. 110-180, Title I, § 101(a), 34 U.S.C. § 40901(e)(1)(B).  It further provides that if a Federal department or agency has any record of any person demonstrating that the person falls within one of the categories described in 18 U.S.C. § 922(g) or (n), the head of such department or agency shall provide the pertinent information contained in such record to the Attorney General no less frequently than on a quarterly basis.  *Id.* § 101(a)(4), 34 U.S.C. § 40901(e)(1)(C).  The Attorney General is required to provide an annual report to Congress on each agency's compliance with this statutory reporting obligation.  *Id.,* 34 U.S.C. § 40901(e)(1)(E)).

In the wake of the tragic events that gave rise to the instant litigation, Congress again amended the Brady Act by passing the Fix NICS Act of 2018, Pub. L. No. 115-141, Div. S, Title VI, 132 Stat. 1132 (2018).  The Fix NICS Act requires each Federal department or agency to submit semi-annual certification reports to the Attorney General indicating whether the department or agency is in compliance with the above-referenced statutory record submission requirements.  *Id.* § 602, 132 Stat. 1132, 34 U.S.C. § 40901(e)(1)(F).  The Fix NICS Act further requires the Attorney General to notify Congress of non-compliant departments and agencies, and to publish a list of those departments and agencies on the Department of Justice's website.  *Id.* § 602, 132 Stat. 1133, 34 U.S.C. § 40901(e)(1)(H).  In addition, the statute makes political appointees at non-compliant departments and agencies ineligible for bonus pay until the department or agency comes into compliance with these requirements.  *Id.* § 602, 132 Stat. 1134,

34 U.S.C. § 40901(e)(1)(I).

The Fix NICS Act, however, leaves in place the provision of the Brady Act that expressly shields employees of the Federal government from damages liability for failing to prevent sales or transfers of firearms to individuals whose receipt or possession of them is unlawful.

## PRIOR PROCEEDINGS

Numerous family members and personal representatives of deceased victims, and numerous survivors of the Sutherland Springs shooting have brought damages suits against the United States under the FTCA, alleging that the Air Force was negligent in failing to submit information about Kelley's criminal history to the Federal Bureau of Investigation (FBI) so that it could be searched by NICS.  Eighteen such suits, encompassing the claims of 43 plaintiffs, currently are pending.  All these actions have been consolidated by the Court, with *Joe Holcombe, et al. v. United States,* Civil Action No. SA-18-CV-555-XR, designated as the lead case.[3]

The individual complaints alleged somewhat varying theories, but collectively asserted claims under Texas law for negligence *per se*, negligent undertaking, and negligent training and supervision.  The United States moved to dismiss on three separate grounds, arguing that it was shielded from liability by 18 U.S.C. § 922(t)(6); that plaintiffs' claims were barred by the FTCA's misrepresentation exception, 28 U.S.C. § 2680(h); and that plaintiffs had not alleged viable State law causes of action.  The Court granted dismissal in limited part, but otherwise denied the motion.  The Court agreed with the United States that plaintiffs could not proceed on a negligence *per se* theory.  Order at 29-33.  The Court rejected all the other asserted grounds for

---

[3] The claims of 22 additional claimants remain pending before the Air Force.  Because two years have not yet elapsed since the date of the shooting, time remains for still other individuals to present claims to the Air Force.  *See* 28 U.S.C. § 2401(b).

dismissal.

The Court found the misrepresentation exception inapplicable both because plaintiffs did not rely on any representations made by the government (Order at 15-17), and because plaintiffs assert operational negligence by the government in the collection and reporting of information, and not merely that plaintiffs were injured by inaccurate communications from the government (Order at 17-20).

Turning to 18 U.S.C. § 922(t)(6), the Court held that this provision did not preempt plaintiffs' claims for three reasons. First, the Court concluded that because § 922(t)(6) references both local governments and employees of local governments, while referencing only employees of the Federal government and not the Federal government itself, the inference to be drawn is that the provision does not protect the United States. Order at 22-23. Second, the Court held that the United States is not protected by § 922(t)(6) because the United States can only invoke State law defenses of its employees. Order at 24-26. And third, the Court concluded that even if the United States could invoke § 922(t)(6), the provision would not provide a complete defense here because it covers only the reporting of information to NICS. The Court noted that some of plaintiffs' allegations of negligence related to the collection, rather than reporting, of information, and that some of their other allegations of negligence concerned training and supervision of agency personnel. Order at 26-27.

As for the viability of plaintiffs' claims under State law, the Court recognized that there is no general Texas common-law duty that corresponds with the Brady Act's reporting requirements, and thus, failure to comply with these reporting requirements cannot be a basis for proceeding against the United States on a negligence *per se* theory. Order at 31-32. The Court concluded, however, that plaintiffs could proceed on a negligent undertaking theory, reasoning

that when the government undertakes to render services, it may be held liable if it negligently performs these services.  Order at 34.  The Court concluded that the applicable Federal statutes showed that the government had voluntarily assumed responsibility for operating a background check system in a non-negligent fashion, and that a duty to the plaintiffs arose because it was foreseeable and likely that negligent operation of the NICS system would increase the risk of injuries like those suffered by plaintiffs.  Order at 36.  The Court further found that a duty should be imputed because the United States "has the resources to absorb the blow when, as here, it allegedly acts negligently."  Order at 37.

Finally, the Court concluded that because plaintiffs had alleged a viable negligent undertaking claim, they also could proceed on a claim for negligent training and supervision. Order at 39-40.

## ARGUMENT

## THIS COURT SHOULD CERTIFY ITS ORDER FOR INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(b).

A district court should certify an order for interlocutory appeal if it involves "[1] a controlling question of law [2] as to which there is a substantial ground for difference of opinion and [3] that an immediate appeal from the order may materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b).

While the Fifth Circuit has cautioned that § 1292(b) should be sparingly used, *Alabama Labor Council, AFL-CIO, Public Emp. Union, Local No. 1279 v. State of Ala.*, 453 F.2d 922, 924 (5th Cir. 1972), the Supreme Court has explained that "district courts should not hesitate to certify an interlocutory appeal" when a decision "involves a new legal question or is of special consequence."  *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 111 (2009).  And the Fifth Circuit itself has stated that the district court should "freely" consider granting certification under

§ 1292(b) in a case involving immunity and preemption defenses where the law was unsettled. *Martin v. Halliburton,* 618 F.3d 476, 488 (5th Cir. 2010).  Still other courts of appeals have "emphasize[d] the duty of the district court . . . to allow an immediate appeal to be taken when the statutory criteria are met."  *Ahrenholz*, 219 F.3d at 677; *accord In re Trump*, 2019 WL 2997909, at *6 (quoting *Ahrenholz*).

In determining whether to grant § 1292(b) certification, the court should weigh, among other things, "[t]he difficulty and general importance of the question presented" and "the significance of the gains from reversal."  16 Charles Alan Wright et al., Federal Practice and Procedure § 3931 (3d ed. 2008).  As explained below, this Court's Order meets all three elements required for § 1292(b) certification.

### A.      The Order Involves Controlling Questions of Law

Here, whether plaintiffs' claims against the United States are precluded by 18 U.S.C. § 922(t)(6), and whether plaintiffs have stated a viable claim under Texas law based on a negligent undertaking theory of liability are both controlling questions of law.  *See* 16 Charles Alan Wright et al., Federal Practice and Procedure § 3930 & n.20 ("There is no doubt that a question is 'controlling' if its incorrect disposition would require reversal of a final judgment, either for further proceedings or for dismissal that might have been ordered without the ensuing district-court proceedings.") (citing *Spong v. Fidelity Nat. Property and Cas. Ins. Co.,* 787 F.3d 296, 304 (5th Cir. 2015) (whether federal law preempted State-law claims was controlling question of law)); *see also Tanglewood East Homeowners v. Charles-Thomas, Inc.,* 849 F.2d 1568, 1571 (5th Cir. 1988) (entertaining defendant's interlocutory § 1292(b) appeal of district court's order denying motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) & (6)); *Hines v. Alldredge,* 783 F.3d 197, 203 (5th Cir. 2015) (entertaining defendant's interlocutory § 1292(b) appeal of district

court's order granting in part and denying in part motion to dismiss for failure to state claim

upon which relief could be granted); *In re Trump,* 874 F.3d 948, 951 (6th Cir. 2017) (sufficiency

of complaint is "question of law" that is "controlling").

### B.    There is Substantial Ground for Difference of Opinion

There is also substantial grounds for difference of opinion as to both of these controlling

questions of law.  "A substantial ground for difference of opinion exists *where reasonable jurists*

*might disagree* on an issue's resolution."  *In re Trump,* 2019 WL 2997909, at *8 (quoting *Reese*

*v. BP Exploration (Alaska) Inc.,* 643 F.3d 681, 688 (9th Cir. 2011) (emphasis added by court;

internal quotation marks omitted)); *In re Trump,* 874 F.3d at 952 (same).  "Stated another way,

when novel legal issues are presented, on which fair-minded jurists might reach contradictory

conclusions, a novel issue may be certified for interlocutory appeal without first awaiting

development of contradictory precedent."  *Reese,* 643 F.3d at 688.  Here, contradictory precedent

already exists.

### 1.  The Brady Act's Immunity Provision

Substantial ground for difference of opinion exists as to the question of whether 18

U.S.C. § 922(t)(6) shields the United States from liability for damages in these cases.

### a.    Prior Decisions Construing 18 U.S.C. § 922(t)(6)
####        and the Brady Act's Interim Provision

While the case-law construing § 922(t)(6) is sparse, what little of it exists supports the

position of the United States that it is entitled to invoke the immunity conferred by § 922(t)(6) in

these cases.  As this Court itself recognized in ruling that the statute did not protect the United

States, the only other court to have decided the precise question presented here held that the

United States could invoke § 922(t)(6) in an FTCA case alleging that a Federal employee had

negligently failed to prevent the sale of a firearm to an individual whose receipt of it was

unlawful under 18 U.S.C. § 922(g).  *See* Order at 21 (discussing *Sanders v. United States,* 324 F. Supp. 3d 636, 649 (D.S.C. 2018), *appeal pending,* No. 18-1931 (4th Cir.)).

In another decision that has not previously been cited by either the parties or this Court, an Idaho State court recently held that the State of Idaho, the Idaho State Police, and an Idaho county were entitled to invoke § 922(t)(6) to shield themselves from liability for damages in a wrongful death action brought by the estate of a decedent who committed suicide with a firearm he was able to purchase as a result of their negligent failure to report the decedent's prior commitment to a mental institution.  *See Lossberg v. Tyler Tech., Inc.,* No. CV01-18-12607, 2018 WL 6709383, at *5-6 (Idaho Dist. Ct. Nov. 21, 2018) (citing *Sanders*, 324 F. Supp. 3d 636).

Finally, in a third decision, *Jean M. Fratus v. William V. Devine,* No. Civ.A 96-551-T, 1997 WL 33547361, *4 (D.R.I. Aug. 25, 1997), another Federal district court ruled that the Brady Act's interim immunity provision, 18 U.S.C. § 922(s)(7), shielded a chief of police from liability for damages in a suit brought under 42 U.S.C. § 1983 by a plaintiff alleging that the police chief had wrongfully prevented her from purchasing a firearm.

**b.    The Court's Textual Analysis of § 922(t)(6)**

This Court explained its disagreement with Judge Gergel's decision in *Sanders* largely based on a textual analysis of the statute.  Specifically, the Court observed that § 922(t)(6) expressly references local governments, as well as employees of the Federal government and of State and local governments.  Order at 23.  The Court then reasoned that if, as the United States argued, it was unnecessary to specifically list the Federal government in order for it to be protected by the statute, it likewise would have been unnecessary to specifically list local governments since the statute already mentioned employees of local governments.  Because such

11

a reading would render the statute's specific reference to local governments superfluous, the Court rejected the argument that the statute's specific mention of employees of the Federal government rendered specific reference to the United States unnecessary.

Reasonable minds could nonetheless reach the opposite conclusion, in light of several key textual features of the statute, and the differing legal principles that govern local governments' liability, on the one hand, and the liability of the United States and State Governments on the other.

The first textual feature that went unremarked in the Court's analysis is that while § 922(t)(6) specifically refers to employees of State governments, it omits any reference to States themselves. In this regard, the statute's treatment of the United States and State governments is identical. Yet, as already noted, another court recently held that § 922(t)(6) protects both the State of Idaho and one of its agencies from liability for failing to prevent the sale or transfer of a firearm to a person whose receipt of it was unlawful. *See Lossberg*, 2018 WL 6709383, at *5-6.

Second, as the court further noted in *Lossberg*, § 922(t)(6) draws no distinction between State-law causes of action and Federal-law causes of action. *See id.* at 7 ("[The statute's plain language] does not differentiate between actions arising under state law or federal law; rather, it applies to any law under which damages may be sought."). Thus, the court in *Lossberg* rejected the plaintiff's argument that § 922(t)(6) did not preclude liability for damages based on State-law causes of action. Thus, the fact that plaintiffs' claims are grounded in Texas law is immaterial.

Third, § 922(t)(6) – like 18 U.S.C. § 922(s)(7) – precludes damages liability not only for failing to prevent the sale or transfer of a firearm to an individual whose receipt of it is unlawful, but also for preventing the sale or transfer of a firearm to an individual whose receipt of it would be lawful. Thus, in *Fratus*, § 922(s)(7) was held to shield a police chief from liability for

12

damages to the plaintiff claiming that she had been wrongfully prevented from acquiring a firearm. 1997 WL 33547361. Notably, the Brady Act provides a specific, limited, remedy for individuals, like the plaintiff in *Fratus*, who allege that they were wrongly *denied* a firearm. *See* 18 U.S.C. § 925A. Congress's attention to this issue suggests that when Congress intended to allow for private actions against the government stemming from the operations of the NICS system, it specifically authorized such litigation.

Lastly, and relatedly, as the court further held in *Fratus*, § 922(s)(7) – and, again, § 922(t)(6) by analogy – protects against damage awards in suits brought under 42 U.S.C. § 1983. This last point almost certainly explains why it was necessary to specifically mention local governmental entities in § 922(t)(6), but entirely unnecessary for the statute to specifically reference either the United States or the States.

Local governments (unlike both States and the United States[4]) are subject to suits for damages under 42 U.S.C. § 1983. *See Monell v. Dep't of Soc. Serv's of City of New York,* 436 U.S. 658, 690 (1978). Thus, both local governments and their employees needed protection from § 1983 actions for damages. But because the liability of local governments under § 1983 is not vicarious, *see id.,* at 691 (local governments are not subject to *respondeat superior* liability under § 1983), mentioning only the employees of local governments in § 922(t)(6), without also specifically mentioning local governments themselves, would not have been sufficient to protect these entities from damages liability under § 1983. This fully explains why § 922(t)(6) refers to both local governments and the employees of local governments.

---

[4] *See, e.g., Machete Productions, L.L.C. v. Page,* 809 F.3d 281, 288 (5th Cir. 2015) (claims for monetary relief under § 1983 do not lie against a State); *Affiliated Professional Home Health Care Agency v. Shalala,* 164 F.3d 282, 286 (5th Cir. 1999) (suits against United States under civil rights statutes, including § 1983, are barred by sovereign immunity).

Finally, insofar as the liability of the United States under the FTCA is concerned, no specific mention of the United States in § 922(t)(6) was necessary because the liability of the United States under the FTCA (unlike the liability of local governments under 42 U.S.C. § 1983) is based entirely on *respondeat superior* principles.  *See Johnson v. Sawyer,* 47 F.3d 716, 730 (5th Cir. 1995) (en banc) ("All FTCA liability is *respondeat superior* liability.").

> ### c.   The *Alfonso* and *Morrone* Decisions

Although the United States can only face liability under the FTCA under a *respondeat superior* theory—i.e., vicarious liability for the wrongful acts of its employees—and even though the Brady Act itself shields those employees from tort liability, this Court concluded that the United States derived no protection from the Brady Act.  The Fifth Circuit might reasonable conclude, however, that this ruling is contrary to a pair of cases, one from the Fifth Circuit and the other from Texas.

The Fifth Circuit itself has specifically recognized that the United States is entitled to assert a defense available to its employees.  *See Alfonso v. United States*, 752 F.3d 622, 625 (5th Cir. 2014); *see also Medina v. United States*, 259 F.3d 220, 225 n.2 (4th Cir. 2001) (recognizing that in an FTCA case, "the United States is entitled to avail itself of any defenses its agents could raise in their individual capacities").  In *Alfonso*, the United States was afforded the protection of a Louisiana statute that precluded the imposition of liability on certain "employees or representatives" of the State of Louisiana engaged in emergency preparedness activities. 752 F.3d at 625, 627.  The Brady Act's protection of federal employees involved in submitting information to the NICS system is analogous.

This Court, however, concluded that *Alfonso* was not controlling here because the immunity at issue in that case was one conferred by a State statute.  *See* Order at 24 ("But '[a]s

immunities and defenses are defined by the same body of law that creates the cause of action, the defenses available to the United States are those that would be available to a private person under the relevant *State law.*'") (quoting *Vidro v. United States,* 720 F.3d 148, 151 (2d Cir. 2013) (italics added by district court)).

But the immunity at issue in *Vidro* was a judicially-created one, namely, a grand jury witness's immunity from tort liability.  Where, as here, a *statutory* immunity is at issue, the FTCA's reference to "the law of the place," 28 U.S.C. § 1346(b), includes a Federal statute that preempts otherwise applicable State tort law.  *See Charles v. United States,* 15 F.3d 400, 402-03 & n.5 (5th Cir. 1994).  This is so because the statutory reference to "the law of the place" requires application of the State's *whole law*, meaning whatever law (including Federal law) a State court would apply in like circumstances involving a private defendant.  *See id.* at 403 (citing *Caban v. United States,* 728 F.2d 68, 72 (2d Cir. 1984)).  For that reason, the Brady Act's provision limiting liability is functionally part of Texas state law and is materially indistinguishable from the state law provision at issue in *Alfonso*.

Further, in holding that the United States is not entitled to invoke its employees' immunity under a Federal statute, this Court failed to address the import of *Morrone v. Prestonwood Christian Academy,* 215 S.W.3d 575 (Tex. App – Eastland 2007, pet. denied), a decision that had been briefed extensively by the parties.  *Morrone* concluded that an employer was not liable for derivative claims based on *respondeat superior* under Texas law in circumstances where its employee was protected by an immunity provision under a Federal statute (namely, the Coverdell Teacher Protection Act).  *Id.* at 584 (protecting private school from claims based on conduct of teacher where a Federal statute provided that "no teacher in a school shall be liable" under the relevant circumstances).

15

*Morrone* demonstrates that a similarly-situated private defendant (*i.e.,* one whose employee is protected by an immunity provision under a Federal statute) is entitled to invoke its employee's Federal statutory immunity to defeat a claim seeking to impose *respondeat superior* liability under Texas law.  The United States is entitled to like treatment under the FTCA.

### d.   The Court's narrow reading of § 922(t)(6)

Finally, reasonable judges could conclude that this Court read § 922(t)(6) too narrowly when it concluded that the provision protected only those Federal employees who themselves directly furnish data to the NICS system.  Nothing in the statute's language restricts the provision only to those who themselves directly send data to the FBI.  Individuals can be "responsible for providing information" to NICS, 18 U.S.C. § 922(t)(6), when they play roles in gathering (rather than transmitting) the relevant information, or when they develop policies and procedures for providing information to NICS.

Indeed, the relevant statutes impose on the head of each department and agency of the United States the responsibility to furnish NICS with any departmental or agency records demonstrating that a person falls within one of the categories described in 18 U.S.C. § 922(g) or (n). *See* 34 U.S.C. § 40901(e)(1)(B) & (C).  Quite obviously, the heads of Federal departments and agencies do not personally discharge this statutory responsibility, and must rely on subordinate departmental and agency officials to carry it out.  And just as obviously, carrying out this statutory responsibility does not merely encompass physically or electronically transmitting the required information or records to the FBI, but also entails collecting and collating this information, creating the necessary records, training and supervising the personnel whose duties include performing these tasks, and devising and overseeing the operation of the systems through which each of these functions is accomplished.

16

Given the foregoing, § 922(t)(6) should be construed broadly to cover the activities of all department or agency personnel through whom the head of the department or agency carries out the statutory responsibility imposed by federal law to provide information to NICS.

This Court's narrow construction threatens to substantially hollow out the provision and would often leave unprotected individuals that Congress surely intended to protect. Section 922(t)(6) would have little value if plaintiffs could always plead around it by alleging deficiencies in data collection rather than data transmission, or negligence in training or supervision of the personnel responsible for the collection or transmission of data.

For these reasons, the Court of Appeals may reasonably conclude that § 922(t)(6) bars all of plaintiffs' claims, not merely a subset, and, accordingly, the issue of the applicability of § 922(t)(6) has the potential to bring about the complete termination of the litigation.

### 2. Negligent Undertaking

There also is substantial grounds for difference of opinion as to the question of whether plaintiffs have stated a viable claim under Texas law based on a negligent undertaking theory of liability. In ruling on the motion to dismiss, the Court recognized that the mere fact that the Air Force is alleged to have violated federal statutes or policies in failing to report information about Kelley to the FBI for inclusion in the databases searched during NICS background checks is not a viable basis for an FTCA claim, and that plaintiffs could not proceed on a negligence *per se* theory. Order at 29-33; *see also Johnson,* 47 F.3d at 727 ("[T]he FTCA was not intended to redress breaches of federal statutory duties."); *Coleman v. United States,* 912 F.3d 824, 834-35 (5th Cir. 2019) (district court erred by analyzing plaintiff's privacy-related claims under framework that viewed federal Privacy Act claims as capable of being brought under FTCA; alleged violations of Federal statutes cannot be basis for FTCA claims).

The Court concluded, however, that these statutes and policies "provide evidence that the United States ha[s] voluntarily assumed a duty, as recognized by Texas common law" to provide a national background-check system and to do so in a non-negligent manner.  Order at 36.  The Court also found that when, in response to an Inspector General's report, the Air Force promised to fix its problems with data collection and reporting, "it re-affirmed this assumption of duty."  Order at 37.  On these bases, the Court concluded that plaintiffs could proceed under a negligent undertaking theory.

An extensive body of precedent holds, however, that negligent undertaking claims cannot go forward under analogous circumstances.  There is thus a reasonable possibility that the Fifth Circuit might disagree with this Court's conclusion.

A critical element of a negligent undertaking claim is establishing that the defendant owed any duty of care to the plaintiff.  Texas law is clear that in negligent undertaking cases, a duty can arise only if at least one of two specific requirements is met.  Drawing on Section 323 of the Restatement (Second) of Torts, Texas courts impose a duty in negligent undertaking cases only when either the defendant's failure to exercise care "increases the risk of . . . harm" to the plaintiff or when "the harm is suffered because of the [plaintiffs] reliance upon the undertaking." *Torrington Co. v. Stutzman,* 46 S.W.3d 829, 838 (Tex. 2000); *see also id* at 838 n.7.

Neither of these criteria is satisfied here.  It is undisputed that plaintiffs did not rely on the United States' voluntary undertaking to operate a federal background check system.  Order at 38.  Thus, there can be a duty under Texas law only if the United States' actions had the effect of increasing the risk of harm to the plaintiffs.  The Court found that there was such an increased risk of harm here because "systemic negligence on the Government's part led to a background check that was botched many times over, and the result was that Kelley bought guns he should

have been disqualified from buying."  Order at 38; *see also* Order at 36 ("[T]he negligent operation of the background check system foreseeably increased the risk and likelihood of injuries like those suffered by Plaintiffs.").  In other words, the Court found that there was an increased risk of harm – and thus a duty – because negligent operation of the background check system made it more likely that Kelley could acquire a firearm.

Respectfully, it is submitted that the Court misconceived the relevant inquiry.  The issue is not whether the risk of harm would have been decreased if the government agencies had operated the background check system in a non-negligent fashion.  Instead, the relevant inquiry is whether the risk to plaintiffs would have been lower if the government had not operated the background check system at all, whether negligently or not.  Using the relevant inquiry, there is no basis for concluding that the government's conduct increased plaintiffs' risk. The Court identified no reason to conclude that it would have been more difficult for Kelley to purchase a firearm if the background check system did not exist.  Absent an increased risk resulting from the government's negligence, there is no negligent undertaking under Texas law.

The Supreme Court of Texas has held that in a negligent undertaking case, in the absence of reliance by the plaintiff on the undertaking, there can be no duty when the plaintiff is in "no worse condition than if [the defendant] had never undertaken to provide [the service] in the first place."  *Colonial Sav. Ass'n v. Taylor,* 544 S.W.2d 116, 120 (Tex. 1976); *see also* Dan B. Dobbs et al., The Law of Torts § 410 (2d ed. 2011) (recognizing that plaintiff must show "the defendant's failure to exercise reasonable care increased the risk of harm so that it was more than it would have been *with no undertaking*") (emphasis added).

Other courts applying Restatement Section 323, and a closely related provision, Section 324A, have adopted this interpretation, including in FTCA cases.  *See, e.g., Pate v. Oakwood*

*Mobile Homes, Inc.,* 374 F.3d 1081, 1087 n.4 (11th Cir. 2004) (finding in FTCA case no increased risk of harm where the government failed to "ensure the abatement of a pre-existing hazard" but "did not increase the hazard"); *Sheridan v. United States,* 969 F.2d 72, 74-75 (4th Cir. 1992) (finding in FTCA case no duty under Restatement Section 323 where the "gratuitous promulgation of the regulations and their breach" exposed plaintiff to no greater risk of harm than "if the United States had never promulgated such regulations in the first instance"); *Myers v.United States,* 17 F.3d 890, 903 (6th Cir. 1994) (concluding in FTCA case that the "test is not whether the risk was increased over what it would have been if the defendant had not been negligent," but "[r]ather, a duty is imposed only if the risk is increased over what it would have been had the defendant not engaged in the undertaking at all"); *Ayala v. United States,* 49 F.3d 607, 614 n.5 (10th Cir. 1995) (finding in FTCA case that "increased risk of harm" argument would be futile where "plaintiffs could not show that [the federal employee's conduct] increased the risk of injury to the miners over what it would have been had [the employee] done nothing at all"); *Turbe v. Gov't of Virgin Islands,* 938 F.2d 427, 432 (3d Cir. 1991) (concluding that Section 323 requires that "the defendant's actions increased the risk of harm to the plaintiff relative to the risk that would have existed had the defendant never provided the services initially").

Given this body of case-law and the decision of the Texas Supreme Court in *Colonial Savings Association v. Taylor*, substantial ground for difference of opinion clearly exists concerning whether plaintiffs have stated a viable negligent undertaking claim under Texas law. Indeed, concluding that plaintiffs have stated a viable claim here risks exploding the scope of liability under the negligent undertaking theory because the duty element would cease to provide a meaningful limitation on liability, as in almost every negligence case, it can be said that the

defendant's conduct increased the risk of injury to the plaintiff as compared to a world in which the defendant exercised reasonable care.

> ### C. An Immediate Appeal Will Materially Advance the Ultimate Termination of Litigation

"The requirement that an appeal may materially advance the ultimate termination of the litigation is closely tied to the requirement that the order involve a controlling question of law." 16 Charles Alan Wright et al., Federal Practice and Procedure § 3930. "[N]either § 1292(b)'s literal text nor controlling precedent requires that the interlocutory appeal have a final, dispositive effect on the litigation, only that it 'may materially advance' the litigation." *Reese,* 643 F.3d at 688. Here, however, a reversal by the Court of Appeals on either of the two controlling questions of law identified above would have a final, dispositive effect on the litigation by bringing it to an end.

Further, the benefits of allowing an immediate appeal to quickly and definitively resolve these questions cannot be gainsaid. This litigation currently involves 43 plaintiffs, with more than 20 additional claimants likely to file suit. The Court has set an April 1, 2020 deadline for the completion of all discovery, which includes liability, damages, and expert discovery. Plaintiffs seek not only to establish negligence specific to Kelley, but also the systematic negligence of the Air Force in failing to submit disqualifying information under the Brady Act to the FBI. They have identified at least 37 government witnesses or categories of witnesses who they believe have information relevant to their claims, including the Secretary of the Air Force and other high-ranking officials.

In addition, plaintiffs have stated their intent to review data entries into five or six federal-agency databases, in order to prove these "systematic failures." Damages discovery will necessitate depositions of plaintiffs and the persons supporting their damages claims, subpoenas

of medical records, written discovery on plaintiffs, and review of all of those materials.  Expert

discovery will be costly and time-consuming for all parties due to the nature and extent of the

various and severe physical and mental injuries suffered by plaintiffs, and the likely need for

multiple liability experts.

This Court has not hesitated to issue § 1292(b) certifications in cases when doing so

might allow the parties to avoid the expense and burdens of continued litigation: the need for

which might well be obviated if a controlling question of law were to be resolved on an

immediate appeal.  *See, e.g., Martinez*, 361 F. Supp. 2d at 633 (certifying that immediate appeal

might materially advance ultimate termination of litigation where related claims involving same

parties were scheduled for trial); *Rogers v. City of San Antonio, Tex.,* No. Civ.A SA-99-CA-

1110, 2003 WL 1571550, at *2-3 (W.D. Tex. March 24, 2003) (court stated that it could "hardly

imagine a better case for certification" where its order decided a question of first impression, and

immediate appeal would allow parties to avoid expending additional resources preparing for

bench trial on damages involving 15 separate plaintiffs).

## CONCLUSION

For the reasons stated and upon the authorities cited, the United States respectfully requests this Court to certify its Order dated May 23, 2019 (ECF No. 59), for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General
Civil Division
JOHN F. BASH
United States Attorney
THOMAS G. WARD
Deputy Assistant Attorney General
Civil Division
JOHN F. PANISZCZYN
Assistant United States Attorney
State Bar No. 15443855
JAMES G. TOUHEY, JR.
Director, Torts Branch
Civil Division
KIRSTEN L. WILKERSON
Assistant Director, Torts Branch
Civil Division

_____/s/_____
PAUL DAVID STERN
Trial Attorney, Torts Branch
Civil Division
United States Department of Justice
Attorneys for Defendant
UNITED STATES OF AMERICA