IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JOE HOLCOMBE, et. al, | § | NO. 5:18-CV-00555-XR |
| | § | |
| Plaintiffs | § | Consolidated with: |
| | § | 5:18-cv-00712-XR (*Vidal*) |
| | § | 5:18-cv-00881-XR (*Uhl*) |
| vs. | § | 5:18-cv-00944-XR (*Ramsey*) |
| | § | 5:18-cv-00949-XR (*McNulty*) |
| UNITED STATES OF | § | 5:18-cv-00951-XR (*Wall*) |
| AMERICA, | § | 5:18-cv-01151-XR (*Amador*) |
| | § | 5:19-cv-00184-XR (*Brown*) |
| Defendant | § | 5:19-cv-00289-XR (*Ward*) |
| | § | 5:19-cv-00506-XR (*Workman*) |
| | § | 5:19-cv-00678-XR (*Colbath*) |
| | § | 5:19-cv-00691-XR (*Braden*) |
| | § | 5:19-cv-00706-XR (*Lookingbill*) |
| | § | 5:19-cv-00714-XR (*Solis*) |
| | § | 5:19-cv-00715-XR (*McKenzie*) |
| | § | 5:19-cv-00805-XR (*Curnow*) |
| | § | 5:19-cv-00705-XR (*Workman*) |
| | § | 5:19-cv-00806-XR (*Macias*) |

## **DEFENDANT UNITED STATES' MOTION FOR A PROTECTIVE ORDER**

Defendant United States of America, pursuant to Federal Rule of Civil Procedure 26(c), moves for a protective order quashing in its entirety *Plaintiffs' First Request for Production and Plaintiffs' Amended First Request for Admissions & Interrogatories*, which were propounded by Plaintiffs in only four of the eighteen consolidated cases. (Exs. 1 and 2; hereinafter "Partial Plaintiffs' Discovery Demands"). The Partial Plaintiffs' Discovery Demands, which number in the thousands, not only violate the limitations imposed by the Federal and Local rules on serving discovery, they are improper, unduly burdensome, oppressive, and disproportional to the needs of the case, particularly since the majority of these demands seek documents and information irrelevant to the remaining issues in this litigation.

The fact that the Partial Plaintiffs are seeking discovery far beyond the purview of the issues remaining in this litigation is evident from the discovery requests that they have propounded.  In Interrogatory no. 1 for instance, the United States is asked to "Identify any statement within the Department of Defense Inspector General Report, dated December 6, 2018, and numbered DODIG-2019-030, that you contend is not factually true and the basis for such a contention."  (Ex. 1, Pls.' Interrogatories.)  This 131-page report, titled "Report of Investigation into the United States Air Force's Failure to Submit Devin Kelley's Criminal History Information to the Federal Bureau of Investigation," contains thousands of statements, many of which are irrelevant to this litigation.  The Partial Plaintiffs' Discovery Demands also contain ninety-five requests for production – 161 requests, including subparts – the bulk of which seek the underlying material that support eleven different Department of Defense Office of Inspector General Reports (DODIG Reports).  (Ex. 2, Pls.' RFP Nos. 33-95.)  Only one of those reports, the December 6, 2018 report, concerns the Air Force's alleged failure to provide disqualifying information about Devin Patrick Kelley for inclusion in the FBI's national instant criminal background check system (NICS).  Other instances in which the Air Force did not timely submit fingerprint cards or disposition reports of other service members are immaterial to whether the Air Force was negligent in failing to submit Kelley's information.

Because these requests, and the other requests discussed below, fail to comply with the Federal Rules of Civil Procedure and the Local Rules, and because permitting discovery requests from Plaintiffs in only four of the eighteen consolidated cases on issues of liability (rather than from all Plaintiffs) will negate the benefits of consolidating these cases, Partial Plaintiffs' Discovery Demands must be quashed in its entirety.  Mechanisms for streamlining discovery moving forward are addressed separately in the United States' Motion for a Rule 16 Conference, filed contemporaneously with this motion.

The parties met and conferred on several occasions regarding the issues addressed in this motion, including telephonic conferences on August 7 and 14, 2019, but were unable to reach an agreement.  Defendant requests oral argument, and the parties agree that this motion and the United States' motion for a Rule 16 conference should be joined for purposes of oral argument. The United States respectfully requests that the Court issue a protective order (1) relieving the United States from having to respond to the pending discovery requests until the scope of discovery is clarified at the separately requested Rule 16 Conference and (2) directing Plaintiffs to propound liability discovery requests through a lead counsel on behalf of all Plaintiffs.[1]

## BACKGROUND

These consolidated actions arose out of the horrific mass shooting that occurred on November 5, 2017, at the First Baptist Church in Sutherland Springs, Texas.  Thus far, forty-three plaintiffs have brought suit under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 *et seq*. (FTCA), alleging that the United States is liable for this tragedy because, but for failures by the U.S. Air Force to report disqualifying information about Devin Patrick Kelley to the FBI's national instant background check system, Kelley would not have been able to purchase the firearms he used to carry out the massacre at the church.

The United States moved to dismiss the consolidated cases, asserting a number of legal defenses. (ECF No. 28).  In its Order of May 23, 2019, this Court granted that motion in part, but rejected several of the United States' threshold defenses.  (ECF No. 59).  On July 22, 2019, the United States moved the Court to certify its Order for interlocutory appeal and Plaintiffs responded on August 26, 2019.  (ECF Nos. 107, 121).  That motion is currently pending.

---

[1] The United States is not moving for a protective order on the basis that every discovery demand is objectionable.  It will provide responses to the non-objectionable demands, understanding that although it requests that all discovery be re-served by a lead Plaintiffs' counsel, it is unlikely that the Court will rule on this motion prior to the September 3 due-date for responses to the written discovery.

To date, there are eighteen consolidated cases under the lead case, *Holcombe v. United States*, 5:18-CV-00555-XR.  (*Holcombe* Docket.)  On August 1, 2019, four sets of Plaintiffs propounded their First Request for Production.  On August 2, 2019, these same Plaintiffs propounded an Amended First Request for Admissions & Interrogatories.[2]  The requests were made on behalf of the following Plaintiffs: *McNulty*, *et. al*, 5:18-cv-00949-XR; *Wall*, *et. al*., 5:18-cv-00951-XR; *Solis*, *et. al*, 5:19-cv-00714-XR, and *McKenzie*, 5:19-cv-00715-XR.[3]  No other Plaintiffs have yet served discovery on the United States.

## ARGUMENT

A protective order quashing Partial Plaintiffs' Discovery Demands is appropriate because (1) many of those demands are improper, and seek responses, information, and materials that are irrelevant, overly burdensome, and are not proportional to the needs of the litigation, and (2) the demands were propounded on behalf of Plaintiffs in only four of the eighteen cases in this consolidated litigation, inconsistent with the purpose of the Court's consolidation order.  Upon a showing of good cause, a court "may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  Fed. R. Civ. P. 26(c).  Among other relief, the court may issue an order "forbidding the disclosure or discovery" or "forbidding inquiry into certain matters, or limiting the scope of discovery or discovery to certain matters."  Fed. R. Civ. P. 26(c)(1)(A) & (D).  The United States respectfully

---

[2] The Partial *Plaintiffs' First Request for Admissions & Interrogatories* was sent to the United States via email and certified mail on July 25, 2019.  On August 2, Plaintiffs' counsel emailed an amended request to the United States and withdrew the initial request.

[3] *McKenzie* was not a Plaintiff at the time the United States filed its motion to dismiss for lack of jurisdiction, and Defendant's answer to that complaint was only filed on August 26.  The United States observes that Ms. McKenzie alleges in her complaint that she resides in New York. For that reason, and because the "act or omission" complained of in this litigation all occurred outside of this judicial district, venue under 28 U.S.C. § 1402(b) is improper as to Ms. McKenzie.  Nevertheless, because there is no venue concern with respect to the three other sets of Plaintiffs, Defendant is filing this motion for relief with respect to those Plaintiffs.

4

requests that the Court issue a protective order (1) relieving the United States from having to respond to the pending discovery requests until after the separately-requested Rule 16 Conference and (2) directing Plaintiffs to propound liability discovery requests through a lead counsel on behalf of all Plaintiffs.

1. **Because Many Of Partial Plaintiffs' Discovery Demands Are Improper, And Seek Information That Is Irrelevant, Unduly Burdensome, And Not Proportional To The Needs Of This Litigation, There is "Good Cause" To Quash Them.**

"Discovery in civil cases must be "relevant to any party's claim or defense" and "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).  If discovery fails to comply with the Rule 26(b)(1) standard, a protective order is appropriate.  *See* Fed. R. Civ. P. 26(b)(2)(C); *Zamora v. GC Servs. LP*, 2017 WL 1861843, at *2 (W.D. Tex. Feb. 17, 2017).

The restriction in Rule 26(b)(1) that discovery be limited to information that is relevant to a "claim or defense of any party" became effective in 2000.  The language of the Rule's prior version had authorized discovery more broadly into any matter relevant to the "subject matter" of the case.  The intended effect of the amendment was to narrow the permissible scope of discovery to "focus on the actual claims and defenses involved in the action." Fed. R. Civ. P. 26(b)(1) advisory committee's note; *Zamora*, 2017 WL 1861843, at *6 ("The rule change signals to the court that it has the authority to confine discovery to the claims and defenses in the pleadings, and signals to the parties that they have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings.").

The 2015 amendments to Rule 26(b)(1) instruct courts to impose "reasonable limits on discovery through increased reliance on the common-sense concept of proportionality." Fed. R. Civ. P. 26(b)(1) advisory committee's note. "[T]he proportionality analysis was adopted to make discovery more 'focused,' in a 'manner that benefits both plaintiffs and defendants by reducing the cost and duration of litigation.'" *Maes v. Lowe's Home Centers LLC*, 2018 WL 3603113,

at *6 (W.D. Tex. Feb. 9, 2018) (cleaned up) (citation omitted).  In examining proportionality, among the factors, a court takes into account is "whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1).

### a. Partial Plaintiffs' interrogatory and request for admission concerning the truth of every statement in a 131-page DoD IG report are improper.

In request for admission no. 5, Partial Plaintiffs request that the Defendant admit that "Every statement contained in the Department of Defense Inspector General Report, dated December 6, 2018, and numbered DODIG-2019-030, is factually true."  (Ex. 1.)  As indicated above, Interrogatory no. 1 asks the United States to identify all of the statements in that report that it contends are untrue and explain the reasoning behind each contention.  *Id.*  The DODIG report referenced is 131-pages long and consists of several thousand statements, many of which are compound and repetitive.  Moreover, as discussed below, many of those statements are also wholly irrelevant to this litigation.  Accordingly, these discovery demands run afoul of the Federal and Local Rules.

Because Interrogatory no. 1 requires the United States to literally review and determine the truth of thousands of statements, it violates the twenty-five interrogatory limit set out in Fed. R. Civ. P. 33(a)(1).  The interrogatory is also incredibly burdensome, particularly given that much of the information in the report is not germane to what Plaintiffs must ultimately prove in this litigation.  In circumstances where "answering the [interrogatory] would require the responding party to engage in burdensome or expensive research, the responding party may answer by specifying the records from which the answer may be obtained and making them available for inspection by the party seeking discovery."  *United States ex rel. Englund v. Los Angeles Cty.*, 235 F.R.D. 675, 680 (E.D. Cal. 2006) (citing Fed R. Civ. P. 33(d)).  Plaintiffs have requested various documents underlying the DODIG report.  (Ex. 1, Pls.' RFP nos. 33, 34.)  Upon proper requests for production from all Plaintiffs, the United States will provide relevant

and responsive non-privileged documents underlying DODIG-2019-030 following attorney

review and entry of a protective order concerning the marking of confidential documents.

Request for admission no. 5 is also improper.  "Requests for Admissions should be

drafted in such a way that a response can be rendered upon a mere examination of the request."

*Henry v. Champlain Enterprises, Inc.*, 212 F.R.D. 73, 77 (N.D.N.Y. 2003) (citation omitted).

Moreover, "incorporation by reference of another document in a request for admission has

generally been held improper."  *Sparton Corp. v. United States*, 77 Fed. Cl. 10, 18-19 (Fed. Cl.

2007)  (internal citations omitted).  A response to request for admission no. 5 requires extensive

research and review of a lengthy investigative report, and thus is improper.  In addition, the

DODIG report contains thousands of statements, and thus violates the Local Rules limit of thirty

requests for admissions in the absence of a showing of good cause.  *See* Local Rule CV-36.  The

requests for admission (Request no. 5 and the other six that were served), also fail to comport

with the requirements of Fed. Civ. R. P. 36(a), particularly Rule 36(a)(2) that "[e]ach matter

must be separately stated."  Each request addresses multiple matters, likely in an attempt by

Plaintiffs to avoid the Local Rule CV-36 limits.  If Plaintiffs desire more requests for admissions

or interrogatories than the rules permit, the burden is on them to file a motion and establish good

cause for their request.[4]

### b. **Partial Plaintiffs' discovery demands that seek information with no or minimal relevance to their remaining causes of action are unduly burdensome.**

Discovery in civil cases must be within the parameters of Rule 26(b)(1), and "may not be

used 'as a license to engage in an unwieldy, burdensome, and speculative fishing expedition.'"

---

[4] Plaintiffs have contended that even though the eighteen cases in this litigation were consolidated "for all purposes" and even though all Plaintiffs must prove the same facts concerning liability, they are entitled to 25 interrogatories and 30 requests for admission for each of the eighteen cases.  The United States disputes that the Plaintiffs should be entitled to 450 interrogatories and 540 requests for admission, and this is a proper topic for the Rule 16 conference that the United States is requesting through a separately-filed motion.

*Zamora*, 2017 WL 1861843, at *2 (quoting *Murphy v. Deloitte & Touche Grp. Ins. Plan*, 619 F.3d 1151, 1163 (5th Cir. 2010)).  In these eighteen consolidated cases, Plaintiffs have two remaining causes of action: (1) negligent undertaking, and (2) negligent training and supervision related to such undertaking.  (ECF No. 59, Order 33-40.)  In order to prevail on their negligent undertaking theory, Plaintiffs must prove that (1) the United States undertook to perform services that it knew or should have known were necessary for Plaintiffs' protection, (2) the United States failed to exercise reasonable care in performing those services, and either (3) Plaintiffs relied upon the United States' performance, or (4) the United States' performance increased Plaintiffs' risk of harm.  *See Allen v. Walmart Stores, L.L.C.*, 907 F.3d 170, 181 (5th Cir. 2018); *accord* Restatement (Second) of Torts § 323 (1965).  Like in all negligence cases, in order to prevail on a negligent-undertaking theory, Plaintiffs must also prove "that Defendant's failure to exercise reasonable care proximately caused Plaintiff's injury."  *Bruce Foods Corp. v. Texas Gas Serv.*, 2014 WL 652312, at *12 (W.D. Tex. Feb. 19, 2014) (citing *Doe v. Messina*, 349 S.W.3d 797, 800 (Tex. App. 2011)).

Consistent with these requirements, among other things, Plaintiffs must prove that the Air Force was negligent in performing its obligations with respect to Kelley under the Brady Act (*i.e.*, reporting disqualifying information to the FBI's NICS), or pursuant to some other voluntary undertaking, and that "but for" such negligence, Kelley's would not have perpetrated the horrific shooting that caused Plaintiffs' harm.  Plaintiffs may therefore seek discovery on those matters. Plaintiffs may also seek discovery concerning negligent training or supervision that may have directly led to the absence of Kelley's disqualifying information from NICS.  Plaintiffs, however, have already begun serving far-reaching discovery well beyond these matters.  By serving such impermissibly broad discovery, it appears that Plaintiffs are improperly trying to make this case

into a public referendum on the Air Force's and the DoD's compliance with the Brady Act.  This

Court should not countenance any such abuse of the discovery process.

> ### i.   A substantial portion, if not most, of the statements in the 131-page DODIG report about Kelley are irrelevant to Plaintiffs' remaining causes of action.

Even if Partial Plaintiffs' interrogatories and requests for admission concerning all of the

statements from the 131-page Kelley report were proper under Rules 33 and 36, the demands are

still improper because they are not consistent with Rule 26(b)(1).  As the Court discussed in its

May 23, 2019 Order, the voluntary undertakings at issue in this litigation are the establishment of

the NICS system and the Air Force's statements that it would correct its less-than-full

compliance with its obligation to provide disqualifying criminal history information to the FBI.

(ECF No. 59, Order 36.)  Relevant to whether the Air Force was negligent in carrying out that

undertaking is what the 2019 DODIG report terms "missed opportunities," or the circumstances

surrounding the Air Force's failure to submit Kelley's disqualifying information into NICS.  *See*

DODIG-2019-030.

The DODIG report also discusses events in Kelley's life that go well beyond the failure

of the Air Force to provide disqualifying information about Kelley to the FBI.  *See id.*  This

includes other bad acts by Kelley such as alleged sexual assaults prior to joining the Air Force,

reprimands while with the Air Force, and a threat made against a former Air Force supervisor

after he was discharged.  *See id.*  Any of Kelley's other incidents of bad conduct or violence that

did not give rise to a reporting obligation, however, are irrelevant to the claims of negligent

undertaking, and negligent training and supervision.

This Court has not held otherwise.  In its Order, the Court noted, "With Kelley

specifically, at every stage in his life – during and after his USAF tenure – the threat of violence

loomed.  People like Kelley cannot own guns and the negligent operation of the background

check system foreseeably increased the risk and likelihood of injuries like those suffered by Plaintiffs." (ECF No. 59, Order 36). The Court's statements were made in connection with the Court's discussion of the factors found in *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990), which the Court analyzed in determining whether the nature of the United States' undertakings were sufficient to create a legal duty. Those factors include foreseeability, and the Court found that failure to input disqualifying information into NICS for a disqualified person such as Kelley is sufficiently linked to future harm by that person, such that an allegation in that regard is sufficient to satisfy the foreseeability factor. After examining this and the other *Phillips* factors, the Court found that the Plaintiffs had pled sufficient allegations to support a legal duty of the Air Force with respect to NICS.

While the Court referenced Kelley's violent history to illustrate why it felt the Air Force had a duty, this is not a license to take discovery on all of Kelley's bad acts, regardless of whether the acts were disqualifying under the Brady Act. The Brady Act simply does not take into consideration that any particular individual should be prohibited from possessing a weapon because he had the propensity to commit a crime; the prohibition solely depends upon the existence of the disqualifying acts enumerated in the Act. In other words, a person would be prohibited from possessing a weapon if he committed one disqualifying act even though there was no evidence whatsoever that he had the propensity to commit a crime (*i.e.*, it was not foreseeable that such a person engage in any criminal activity). Accordingly, Plaintiffs' discovery is overly broad because these other bad acts (1) cannot form the basis for any duty of the United States to Plaintiffs, (2) are not relevant to whether the United States was negligent in carrying out its undertakings under NICS, and (3) do not bear on whether the absence of Kelley's information from NICS was the cause of Plaintiffs' harm. Firstly, even if the Air Force had knowledge about other wrongful or alarming conduct by Kelley prior to the shooting, that

knowledge cannot establish an additional duty upon which the United States could be held liable. Plaintiffs do not argue – nor could they argue – that the Air Force had any other duty pertaining to Devin Kelley, such as a duty to warn the church congregation or to confine Kelley beyond the terms of his general court-martial conviction.  If the only supposed duty is the duty to report, then the only relevant issue for purposes of the breach of that duty is when the Air Force obtained information that should have been reported into NICS.

Plaintiffs do allege that "the United States, through its agencies, knew of the specific increase of risk posed by Devin Kelley if the United States failed to exercise reasonable care in its undertaking because the United States knew of Devin Kelley's conduct between 2009 and 2013."  (ECF No. 60, *Holcombe* Am. Compl. ¶ 5.23.)  But Kelley's other bad acts are not relevant to whether "the United States undertook to perform services that it knew or should have known were necessary for Plaintiffs' protection."  *See Allen*, 907 F.3d at 181.  The question is whether the United States knew or should have known that the undertakings themselves, the creation of NICS and the Air Force's pledge to provide information missing in NICS, were necessary to protect Plaintiffs.  This is wholly distinct from the question of whether the Air Force knew that Kelley was a threat to commit future violent behavior, which, as just discussed above, does not give rise to a duty here.

Similarly, Kelley's other bad acts are not relevant to whether "the United States' performance increased Plaintiffs' risk of harm."  *See Allen*, 907 F.3d at 181.  Again, the relevant inquiry is whether the risk to Plaintiffs would have been lower if the government had not operated the background check system **at all**, whether negligently or not.  *See Colonial Sav. Ass'n v. Taylor*, 544 S.W.2d 116, 120 (Tex. 1976) ("Colonial's failure to obtain insurance on the house [*i.e.*, the alleged undertaking] did not increase the risk of fire to the house[.]"); *see also* Dan B. Dobbs et al., The Law of Torts § 410 (2d ed. 2011) (plaintiff must show "the defendant's

11

failure to exercise reasonable care increased the risk of harm so that it was more than it would have been *with no undertaking*") (emphasis added).

In alleging that Kelley's history of bad acts is relevant to their negligent-undertaking theory, Plaintiffs imply that the United States may be liable for a failure to report to NICS for some disqualified person but not others, based on individual histories of violence for such persons. Such individualized determinations would of course run contrary to the establishment of NICS, which is the very basis of the supposed voluntary undertaking. If the Air Force's assumed duty derived from the establishment of NICS and the Air Force's adoption of DODIG recommendations, then the breach of such a duty derives from the failure to exercise due care in satisfying its legal obligations under NICS, not from its ability to assess the violent propensities of individuals who should be barred from owning or possessing firearms. If Kelley's only bad acts ever were the ones for which he were convicted, that would not in any way relieve the Air Force of an obligation to report the conviction to NICS. Conversely, Kelley's bad acts that were not disqualifying under NICS are not pertinent to whether the Air Force had a duty to report the conviction to NICS or whether the Air Force exercised due care in its reporting.

Moreover, Kelley's bad acts have no relevance to whether negligence in carrying out the voluntary undertaking was the legal cause of Plaintiffs' harm. To be sure, Plaintiffs must prove foreseeability in order to establish proximate cause. *See Bruce Foods*, 2014 WL 652312, at *12 ("It was foreseeable to Defendant that its failure to perform its undertaking with due care could cause Plaintiff harm."). Plaintiffs must therefore prove that it was foreseeable that a failure to submit disqualifying information to NICS for a person who is prohibited from purchasing firearms, a class that Kelley is a part of, would potentially lead to the harm Plaintiffs claim. Kelley's other bad acts are not disqualifying information that could lead to a denial of a sale by a

12

federally-licensed firearms dealer, however, and thus do not pertain to the foreseeability of the effects of the absence of Kelley's information in NICS.

Plaintiffs must also prove that "but for" the absence of disqualifying information in NICS, the horrific mass shooting would not have occurred. *See Bruce Foods*, 2014 WL 652312, at *12. This analysis is informed by the likelihood Kelley would have carried out the horrific shooting even if his information had been properly been entered into NICS. This likelihood in turn depends on Kelley's ability to obtain firearms through means other than federally-licensed firearms dealers. It is not informed at all by Kelley's bad acts unless those bad acts directly relate to means by which Kelley did, or could have, perpetrate the horrific shooting (*e.g.*, modifying firearms).

In sum, any discovery requests concerning Kelley's bad conduct, other than the criminal acts for which the Air Force arrested, charged, convicted and sentenced him, have no relevance in this litigation. Accordingly, discovery should be limited to the Air Force's missed opportunities to submit Kelley's fingerprints and final disposition report to the FBI and the training and supervision of those who were responsible for submitting Kelley's disqualifying information.

> **ii.  Partial Plaintiffs' First Requests for Production seek myriad documents unrelated to the circumstances concerning the absence of Kelley's disqualifying information from NICS.**

In their *First Request for Production*, Plaintiffs seek "Unredacted Inspector General Reports concerning the **subject matter** made the basis of this lawsuit, including the Sutherland Springs Shooting." (Ex. 2, RFP No. 32.) (emphasis added). By focusing on reports "concerning the subject matter" rather than their "claim or defense," Plaintiffs' requests extend beyond the 2000 amendment to Federal Rule of Civil Procedure 26. *See Zamora*, 2017 WL 1861843, at *6 (granting motion for protective order quashing document requests because overly broad to

specific claims).  This request refers to ten DODIG Reports, and request for production no. 72 requests yet another report.  Only one of the eleven reports, the one specifically concerning Kelley, is relevant to this litigation.  *See* DODIG-2019-030.  The other ten reports are investigations into the compliance by the four branches of the military with certain obligations to report criminal-related matters during various time periods, including time periods that have no bearing on this litigation.  *See* DODIG-2018-035, DODIG-2015-081, DODIG-2015-011, DODIG-2017-054, DODIG-2015-094, DODIG-2015-055, DODIG-2014-105, DODIG-2013-091, DODIG-97-003, unnumbered 1997 report.

For example, in December 2017, the DODIG issued a report that determined "whether all Military Services Law Enforcement Organizations (LEOs) had submitted fingerprint cards and final disposition reports for Military Service members convicted by court-martial of qualifying offenses, as required by DoD instruction."  *See* DODIG-2018-035, p. 1.  That report focused on submissions for the period from January 1, 2015, to December 31, 2016.  Devin Patrick Kelley, however, was convicted by a general court-martial in November 2012, three years before the time period analyzed in the report.  (ECF No. 21, U.S. Status Report).  The report therefore has nothing to do with whether Kelley's information was entered into NICS.

The fact that Plaintiffs are seeking irrelevant information is illustrated by looking at the DODIG 2017 investigation's conclusion, that the Air Force Office of Special Investigations (AFOSI) had a 98% compliance rate for submitting fingerprints cards and final disposition reports during the relevant time period.  *See* DODIG-2018-035, p. i.  Plaintiffs would certainly object to the United States relying on that subsequent success rate as evidence of compliance with the standard of care because it has no bearing on whether the Air Force was negligent with respect to Devin Kelly.  Just as the United States gets no credit for any instances when it

submitted information to FBI, Plaintiffs do not get to extrapolate negligence regarding Kelley from any omissions detailed in these DODIG reports.

The Court in its May 23, 2019 Order observed that three of the DODIG Reports not specifically pertaining to Kelley were relevant insofar as the Air Force promised to adopt the DODIG report's recommendations.  (ECF No. 59, Order 37) ("And when USAF promised to adopt the IG report's recommendations and fix its systemic problems, it re-affirmed this assumption of duty.").  However, the Air Force's acceptance of the DODIG's findings and promise to adopt the DODIG recommendations is the only relevant information as it pertains to the non-Kelley reports.  Plaintiffs cannot base their negligent undertaking claims on the failure of the Air Force or DoD to report information about other disqualified individuals.  The veracity or substance of the ten other DODIG reports are not relevant to the claim of negligent undertaking or negligent training or supervision, as they pertain to the disqualification of other service members.  What is relevant to the issue of negligence in this litigation are the circumstances concerning the non-reporting of disqualifying information about Kelley into NICS.

To any extent Plaintiffs are seeking to prove that the Air Force's reporting obligations continued after Kelley's general court-martial conviction, these requests are unduly burdensome. The United States has already admitted that "[i]nformation pertaining to Devin Patrick Kelley's conviction was not reported into the FBI's National Instant Criminal Background Check System (NICS)."  (ECF No. 21, U.S. Status Report.)  That admission alone should significantly reduce the need for discovery concerning whether the Air Force reported disqualifying information about Kelley to FBI's NICS.  A simple request for admission concerning ongoing reporting obligations about the conviction would suffice to address the issue.

Importantly, Plaintiffs not only seek the unredacted versions of these reports, but also seek the underlying supportive material for several of the unrelated DODIG Reports.  Indeed,

requests for production nos. 38 through 67 seek documents underlying the 2017 investigation, DODIG-2018-035.  (Ex. 2.)  Plaintiffs go so far as to request all of the fingerprints and final disposition forms that were not submitted and the "list of convicted offenders who did not have fingerprint cards or final disposition reports on file in the FBI NGI database."  (Ex. 2, Pls. RFP No. 59.)  The requests are not even limited to information concerning Air Force personnel, but extend to all Military Service members, including all "[d]ocuments, files, and reports –electronic or otherwise – of the '2,502 military service members who were convicted by court-martial of qualifying offenses during [the] evaluation period.'"  (Ex. 2, Pls.' RFP Nos. 56, 59-60.)  The requests seek guidance, investigative case information, spreadsheets, training material, interview notes, and data concerning all Military Service components."  (Ex. 2, Pls.' RFP No. 61-65.)  Like the reports themselves, this material has no bearing on Plaintiffs' claims, and it would be burdensome to produce due to the voluminous nature of the documents and information.

The underlying materials requested with respect to the other reports is no more relevant than the material requested with respect to the 2018 report.  In February 2015, the DODIG issued a report that focused on "whether fingerprints and final disposition reports for 1,102 Navy, Air Force, and Marine Corps service members convicted of qualifying offenses between June 1, 2010, and October 31, 2012, were submitted to the FBI's CJIS Division in the [IAFIS] database."  *See* DODIG-2015-081 at 1.  Devin Patrick Kelley was convicted **after** the evaluation period.  Nonetheless, Plaintiffs seek all 358 qualifying convictions from the Air Force and "[t]he list of required convicted offender names that did not have fingerprints and/or final disposition updates in IAFIS."  (Ex. 2, Pls.' RFP Nos. 69-70.)  Even if Kelley were convicted within the relevant timeframe – which he was not – the request for all convictions supporting this report is clearly beyond the scope of this litigation.

Nor are the materials created in response to any of the DODIG recommendations relevant.  (Ex. 2, Pls.' RFP No. 71.)  Indeed, none of the underlying material, including the draft report Criminal History Data Reporting and the list of names, is relevant to this litigation.  (Ex. 2, Pls.' RFP No. 75.)  Plaintiffs go so far as to request an unredacted copy of a 1997 DODIG report referenced therein.  (Ex. 2, Pls.' RFP No. 72.)  Not only was Kelley convicted fifteen years later, but NICS was not even established until one year after the requested report was issued.  (ECF No. 28, Def.'s Mtn. to Dismiss 7) ("NICS was established in 1998 pursuant to the provisions of the Brady Act.").

In addition to the information concerning the three immaterial DODIG reports, Plaintiffs seek a substantial amount of underlying material from a DODIG report concerning the obligations of Defense Criminal Investigative Organizations' process for reporting criminal incident to Defense Incident-Based Reporting System (DIBRS) (DODIG-2015-011).  (Ex. 2, Pls.' RFP Nos. 76-94.)  DIBRS is a central repository of incident-based statistical data maintained and operated by the Defense Manpower Data Center (DMDC).  *See* DODIG-2015-011, p. 2.  Plaintiffs seek all documents or files concerning Devin Kelley in the possession of the DMDC.  (Ex. 2, Pls.' RFP No. 94.)

Although such a request may be proportional and relevant to this litigation, even though DIBRS is not mentioned in the DODIG Report pertaining to Kelley, Plaintiffs make sixteen additional requests for documents supporting the report, including "interview notes, recordings, transcripts, or other documentation related to communication" between the IG investigators and DoD personnel.  (Ex. 1, Pls.' RFP Nos. 73-92.)  The requests concern data entries that have no bearing on whether Kelly's disqualifying information was submitted into DIBRS, much less into NICS.  In any event, certain DoD components with assigned law enforcement agencies or activities, including the law enforcement components at issue here, comply with the Brady Act

through other methods, including reporting criminal conduct directly into certain federal databases, including the Interstate Identification Index (III). Although information about Kelley was entered into DIBRS, the information contained within DIBRS would not have been included in any of the databases searchable in NICS. Accordingly, any information concerning failures to report information into DIBRS is doubly irrelevant because Kelley's DIBRS information never would have made its way to III.

Because requests for production nos. 32, 38-93 seek documents and information irrelevant to the facts and circumstances concerning the absence of disqualifying information for Kelley in NICS, but instead appear to be a scattershot attempt to gather data concerning general military law enforcement compliance going back over twenty years, those requests, in addition to interrogatory no. 1 and request for admission no. 5, should be quashed.

**2.    The Partial Plaintiffs' Discovery Demands Should Be Quashed Because They Were Propounded On Behalf Of Only Four of the Eighteen Sets of Plaintiffs In This Litigation, A Practice That Is Wholly Inconsistent With The Purpose Of The Court's Consolidation Order.**

Plaintiffs' discovery requests should be quashed in its entirety because they were not propounded on behalf of all Plaintiffs in this eighteen consolidated cases. This Court consolidated these cases "for all purposes" under Fed. R. Civ. P. 42(a) in order "to avoid unnecessary cost or delay and promote the administration of justice." *See* Order, ECF No. 9; *see also Frazier v. Garrison Indep. Sch. Dist.*, 980 F.2d 1514, 1531 (5th Cir. 1993) (observing that purpose of consolidation is to "avoid unnecessary costs or delay"). If cases are consolidated "for all purposes" under Rule 42, those cases are then effectively treated as a single case. *See McDermott Int'l, Inc. v. Underwriters At Lloyds*, 981 F.2d 744, 747 (5th Cir. 1993) ("When the cases were consolidated pursuant to Fed. R. Civ. P. 42(a), they became a single judicial unit[.]"); *see also Hall v. Hall*, 138 S. Ct. 1118, 1129-31 (2018) (distinguishing consolidation "for all purposes" from other types of consolidation where cases retain their individual character).

Because the consolidated cases are effectively treated as a single case "for all purposes," including discovery, the litigation preferences of individual parties and their counsel must yield to discovery parameters that further the purposes of consolidation.  *See In re Air Crash Disaster at Fla. Everglades on Dec. 29, 1972*, 549 F.2d 1006, 1014 (5th Cir. 1977) (The need for consolidation "may take precedence over desire of counsel."); *Castaneda v. Swift Transportation Corp.*, 2009 WL 10669207, at *3 (W.D. Tex. July 16, 2009) (rejecting plaintiff's argument that consolidation was inappropriate because it would restrict the discovery limits of the parties to the limits applicable in a single case).

Despite these cases being consolidated "for all purposes," and despite no Plaintiff objecting to consolidation, Plaintiffs seek to effectively carry out discovery in these cases independently.  The pending discovery requests were filed on behalf of only four sets of Plaintiffs: *McNulty*, *et. al*, 5:18-cv-00949-XR; *Wall, et. al*, 5:18-cv-00951-XR; *Solis, et. al*, 5:19-cv-00714-XR, and *McKenzie*, 5:19-cv-00715-XR.  (Exs. 1, 2.)  The Partial Plaintiffs' Discovery Demands were served by Jamal Alsaffar's law firm, which represents plaintiffs in four of the consolidated cases.  Mr. Alsaffar has repeatedly represented to counsel for the United States that he is the lead counsel in these consolidated cases.  But he has also asserted that all of the Plaintiffs, regardless of being consolidated herein, have the individual right to conduct discovery as though they were separate parties.

Despite these cases being consolidated "for all purposes," and despite no Plaintiff objecting to consolidation, Plaintiffs seek to effectively carry out discovery in these cases independently.  There are currently forty-three plaintiffs in these consolidated cases.  If Plaintiffs are allowed to file discovery requests individually, discovery may quickly escalate to untenable levels.  Redundant, unnecessary, and cumulative discovery demands by different Plaintiffs will

create unnecessary costs and delays in this litigation.  Indeed, if discovery is to take place in a piecemeal fashion, any benefits of consolidation will erode quickly.

In litigation involving "a common issue of law or fact," a district court is authorized to "issue . . . orders to avoid unnecessary cost or delay."  Fed. R. Civ. P. 42(a)(3).  This includes the appointment of one attorney as a representative of all plaintiffs if that will further the purposes of consolidation, provided that the interests of all plaintiffs are aligned.  *See In re Air Crash Disaster at Fla. Everglades*, 549 F.2d at 1014; *see also Malden Transportation, Inc. v. Uber Technologies, Inc.*, 323 F.R.D. 118, 121 (D. Mass. 2017) (appointing "liaison counsel" in litigation involving "four law firms" and "seven original actions").  Although Plaintiffs will each need to prove separate damages, Plaintiffs must all prove the same facts to establish liability.  Consequently, Plaintiffs should be required to serve and receive written discovery through one attorney or law firm on behalf of all Plaintiffs for the purposes of liability discovery.

The coordination of written discovery through one Plaintiffs' attorney will not prejudice any Plaintiff.  For purpose of Fed. R. Civ. P. 42 consolidation, "prejudice refers to situations in which one party's "substantive legal interests differ from those of his co-party."  *Castaneda*, 2009 WL 10669207, at *3 (citing *In re Air Crash Disaster at Fla. Everglades*, 549 F.2d at 1013, n.10)).  That is not at issue here, and mere limitations on the amount of discovery Plaintiffs are jointly permitted do not amount to prejudice.  *See id.* (rejecting plaintiff's argument that consolidation was inappropriate because it would restrict the discovery limits to the limits applicable in a single case).

No Plaintiff has opposed consolidation of his or her case with the lead *Holcombe* case, and therefore any objections to the strictures of discovery in consolidated litigation are waived.  In any event, the burden on Plaintiffs to coordinate prior to serving written discovery is minimal.  Responding to multiple discovery demands, however, will negatively impact the United States in

that it will be required to respond to multiple requests that will likely be largely redundant and cumulative, but different enough to require scrutiny of those requests by the United States. Accordingly, Partial Plaintiffs' Discovery Demands should be quashed in its entirety, and all Plaintiffs should be required to serve written discovery through one attorney or law firm.  If Plaintiffs cannot agree as to whom this attorney will be, Plaintiffs can address that issue with the Court at a Rule 16 Conference.

The United States has filed a concurrent motion requesting a Rule 16 conference.  That motion fulsomely articulates the need for a Discovery Plain, and the United States does not wish to belabor the point.  However, absent a Discovery Plan, the United States is being asked to respond to discovery requests in an *ad hoc* fashion.  The United States therefore respectfully requests that the Court grant its motion for a protective order and require all Plaintiffs to jointly propound discovery requests concerning all liability issues upon the United States.

## CONCLUSION

For the reasons stated and upon the authorities cited, the United States respectfully requests this Court to grant its motion for a protective order.

Dated: August 29, 2019                    Respectfully submitted,

**JOSEPH H. HUNT**
Assistant Attorney General
Civil Division
**JOHN F. BASH**
United States Attorney
Western District of Texas
**JOHN F. PANISZCZYN**
Assistant United States Attorney
State Bar. No. 15443855
**JAMES G. TOUHEY, JR.**
Director, Torts Branch
Civil Division
**STEPHEN E. HANDLER**
Senior Trial Counsel, Torts Branch
Civil Division

*/s/ Paul David Stern*
**PAUL DAVID STERN**
Trial Attorney, Torts Branch
Civil Division
*Counsel for the United States of America*

## CERTIFICATE OF SERVICE

I certify that on August 29, 2019, I electronically filed the foregoing with the clerk of court by using the CM/ECF system, and that the following counsel of record have received notice and been served through that system.

Jamal K. Alsaffar
Tom Jacob
WHITEHURST, HARKNESS, BREES,
CHENG, ALSAFFAR & HIGGINBOTHAM
& JACOB PLLC
7500 Rialto Blvd, Bldg. Two, Ste 250
Austin, TX 78735

Jason P. Steed
KILPATRICK TOWNSEND & STOCKTON
LLP
2001 Ross Avenue, Suite 4400
Dallas, TX 75201

Robert E. Ammons
April A. Strahan
THE AMMONS LAW FIRM, L.L.P.
3700 Montrose Boulevard
Houston, TX  77006

Dennis Charles Peery
R. Craig Bettis
TYLER & PEERY
5822 West IH 10
San Antonio, TX 78201

Brett Reynolds
Brett Reynolds & Associates PC
1250 N.E. Loop 410, Suite 310
San Antonio, TX 78209

Mark W. Collmer
COLLMER LAW FIRM
3700 Montrose
Houston, TX 77006

Daniel J.T. Sciano
TINSMAN & SCIANO
10107 McAllister Freeway
San Antonio, TX 78216

Daniel D. Barks
SPEISER KRAUSE, P.C.
5555 Glenridge Connector, Suite 550
Atlanta, GA 30342

Tim Maloney
Paul E. Campolo
MALONEY & CAMPOLO, L.L.P.
926 S. Alamo
San Antonio, TX 78205

George LeGrand
Stanley Bernstein
LEGRAND & BERNSTEIN
2511 N. Saint Mary's St.
San Antonio, Texas 78212

*/s/ Paul David Stern*
**PAUL DAVID STERN**
Trial Attorney, Torts Branch