**Exhibit 2**

IN THE UNITED STATES DISTRICT FOR
THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JOE HOLCOMBE, et. al, | § | NO. 5:18-CV-00555-XR |
| | § | |
| Plaintiffs | § | Consolidated with: |
| | § | 5:18-cv-00712-XR (*Vidal*) |
| | § | 5:18-cv-00881-XR (*Uhl*) |
| vs. | § | 5:18-cv-00944-XR (*Ramsey*) |
| | § | 5:18-cv-00949-XR (*McNulty*) |
| UNITED STATES OF | § | 5:18-cv-00951-XR (*Wall*) |
| AMERICA, | § | 5:18-cv-01151-XR (*Amador*) |
| | § | 5:19-cv-00184-XR (*Brown*) |
| Defendant | § | 5:19-cv-00289-XR (*Ward*) |
| | § | 5:19-cv-00506-XR (*Workman*) |
| | § | 5:19-cv-00678-XR (*Colbath*) |
| | § | 5:19-cv-00691-XR (*Braden*) |
| | § | 5:19-cv-00706-XR (*Loodkngbill*) |
| | § | 5:19-cv-00714-XR (*Solis*) |
| | § | 5:19-cv-00715-XR (*McKenzie*) |
| | § | 5:19-cv-00805-XR (*Curnow*) |
| | § | 5:19-cv-00806-XR (*Macias*) |

## PLAINTIFFS' FIRST REQUEST FOR PRODUCTION

To:     Defendant, United States of America, by and through its

attorneys PAUL STERN, United States Department of Justice, Three

Constitution Square, 175 N Street, N.E., Washington, DC 20002.

From: Plaintiffs, McNulty, et. al, 5:18-cv-00949-XR; Wall, et. al, 5:18-

cv-00951-XR; Solis, et. al, 5:19-cv-00714-XR, and McKenzie, 5:19-cv-00715-

XR.

Pursuant to Rule 26 and Rule 34 of the Federal Rules of Civil Procedure, please produce true and correct copies of any evidence responsive to the attached Requests for Production. If you object to these requests, the objection must state whether any responsive materials are being withheld based on that objection. Fed. R. Civ. P. 34(b)(2)(C).

Place for Production: The items requested are to be produced at the law offices of Whitehurst, Harkness, Brees, Cheng, Alsaffar, Higginbotham, & Jacob PLLC, 7500 Rialto Blvd, Bldg. Two, Ste 250, Austin, Texas 78735.

## ANSWER DUE IN THIRTY DAYS

Pursuant to Rule 34(b)(2) of the Federal Rules of Civil Procedure, please answer the following Requests within thirty (30) days after service of this discovery requests.

## DEFINITIONS

Please see W.D. Tex. Local Rule CV-26(b):

(1) Communication. The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

(2) Document. The term "document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a). A draft of a nonidentical copy is a separate document within the meaning of this term.

(3) Identify (With Respect to Persons). When referring to a person, to "identify" means to give, to the extent known, the person's full name, present or last known address, e-mail address, and telephone number, and when referring to a natural person, additionally, the present or last known place of employment. Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

(4) Identify (With Respect to Documents). When referring to documents, "to identify" means to give, to the extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s), and recipient(s).

(5) Parties. The terms "plaintiff" and "defendant" as well as a party's full or abbreviated name or pronoun referring to a party mean the party and, where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries or affiliates. This definition is not intended to impose a discovery obligation on any person who is not a party to the litigation.

(6) Person. The term "person" is defined as any natural person or business, legal or governmental entity or association.

(7) Concerning. The term "concerning" means relating to, referring to, describing, evidencing or constituting.

(8) Plaintiffs. The term "Plaintiff" or "Plaintiffs" refers to any Plaintiff in the following causes of action: McNulty, et. al, 5:18-cv-00949-XR; Wall, et.

al, 5:18-cv-00951-XR; Solis, et. al, 5:19-cv-00714-XR, and McKenzie, 5:19-cv-00715-XR.

(9) Sutherland Springs shooting. The term "Sutherland Springs shooting" means the mass shooting at the First Baptist Church in Sutherland Springs, Texas perpetrated by Devin Kelley on November 5, 2017.


Respectfully Submitted,

| /s/  Jason P. Steed | /s/ Jamal K. Alsaffar |
|---|---|
| **Jason P. Steed** | **Jamal K. Alsaffar** |
| JSteed@kilpatricktownsend.com | JAlssaffar@nationaltriallaw.com |
| Texas Bar No. 24070671 | Texas Bar No. 24027193 |
| **Kilpatrick Townsend & Stockton LLP** | **Tom Jacob** |
| | TJacob@nationaltriallaw.com |
| 2001 Ross Avenue, Suite 4400 | Texas Bar No. 24069981 |
| Dallas, TX  75201 | **Whitehurst, Harkness, Brees, Cheng, Alsaffar & Higginbotham & Jacob PLLC** |
| Office 214-922-7112 | |
| Fax 214-853-5731 | 7500 Rialto Blvd, Bldg. Two, Ste 250 |
| Counsel for Vidal, McNulty, and Wall | Austin, TX 78735 |
| | Office 512-476-4346 |
| | Fax 512-476-4400 |
| | Counsel for Vidal, McNulty, and Wall |


## CERTIFICATE OF SERVICE

By our signatures above, we certify that a copy of this request for production has been sent to the following on August 1, 2019, via email and by USPS certified mail, return receipt requested.

JOSEPH H. HUNT
Assistant Attorney General
United States Dept. of Justice
Civil Division

JOHN F. BASH
United States Attorney
Western District of Texas

KIRSTEN WILKERSON
Assistant Director, Torts Branch
United States Dept. of Justice
Civil Division

PAUL DAVID STERN
Trial Attorney, Torts Branch
United States Dept. of Justice
Civil Division
CLAYTON R. DIEDRICHS
Assistant United States Attorney

JIM F. GILLIGAN
Assistant United States Attorney

JOHN PANISZCZYN
Civil Chief
United States Attorney's Office
Western District of Texas

JAMES G. TOUHEY, JR.
Director, Torts Branch
United States Dept. of Justice
Civil Division

STEPHEN E. HANDLER
Senior Trial Counsel, Torts Branch
United States Dept. of Justice
Civil Division

STEPHEN TERRELL
Trial Attorney, Torts Branch
United States Dept. of Justice
Civil Division
JAMES E. DINGIVAN
Assistant United States Attorney

# REQUESTS FOR PRODUCTION TO
# DEFENDANT, UNITED STATES OF AMERICA

Please produce true and correct copies of the following, including such data or information that exists in electronic form:

1. Any document referenced in your initial disclosure under Fed. R. Civ. P. 26(a)(1)(A)(i) to (iv) and not already produced in this case.

2. If you contend that Plaintiffs did not timely present their claims to the appropriate federal agency, produce evidence supporting your contention.

3. Evidence supporting your contention, if any, that Plaintiffs have not performed all conditions precedent to filing suit, or that all conditions precedent for Plaintiffs to file suit have not occurred.

4. Date-stamped claim forms that have been presented by any Plaintiff to any agency of the United States Government.

5. Social media posts, messages, photographs, or other evidence created by the Defendant, or a current or former employee, agent, or representative of the Defendant, concerning this case.

6. All incident or occurrence reports concerning the Sutherland Springs shooting.

7. Any photograph, video recording, or audio recording, including any such data or information that exists in electronic or magnetic form, concerning the Sutherland Springs shooting, or the Plaintiffs.

8. Documents originating from or obtained from any state or federal governmental unit or agency concerning any Plaintiff or the Sutherland Springs shooting.

9. Documents originating from or obtained from any employer or former employer concerning any Plaintiff.

10.     Documents originating from or obtained from any educational institution or teacher concerning any Plaintiff.

11.     Written statements, declarations, or admissions of any Plaintiff, including all documents in your possession written or signed by any Plaintiff.

12.     Depositions, affidavits, or statements—whether in written form, audio recording, or video recording—of any person you have disclosed as a possible witness or expert in this litigation, or any person you believe likely to have discoverable information.

13.     The title page(s) and the specific pages from each document, book, treatise, periodical, paper, abstract, journal, magazine, newspaper, newsletter and/or pamphlet, unpublished research (for unpublished research all papers, abstracts, posters concerning said unpublished research, and all documents containing methodology, data, and/or conclusions from such unpublished research) that any witness who you may call to testify at deposition, trial, or by affidavit may rely upon or use for any claim or defense of any party in this lawsuit.

14.     Documents, photographs, video, or other tangible things, including any such data or information that exists in electronic or magnetic form, that has been shown or provided by you to any person that has been identified as having knowledge of relevant facts, or has been shown or provided to you from any person that has been identified as having knowledge of relevant facts.

15.     A copy of each of your testifying experts' (both retained and non-retained) entire file concerning this lawsuit, including the most current version of the expert's curriculum vitae and/or resume, if not already provided in your Fed. R. Civ. P. Rule 26(a)(2)(B) disclosures.

16.     All working papers, notes, calculations, diagrams, photographs, models, exhibits, and other documents, including reports and factual observations, prepared or reviewed by any expert (retained or non-retained) who may testify at trial, deposition or by affidavit, if not already provided in your Fed. R. Civ. P. Rule 26(a)(2)(B) disclosures.

17.     All treatises, rules, regulations, guidelines, statutes, policies, procedures, and any other material considered in forming an opinion by any expert who may testify at trial, if not already provided in your Fed. R. Civ. P. Rule 26(a)(2)(B) disclosures.

18.     All invoices, bills, fee schedules, and other billing materials for each expert you have retained to testify at trial, if not already provided in your Fed. R. Civ. P. Rule 26(a)(2)(B) disclosures.

19.     All products, medical devices, illustrations, reconstructions, animations, and/or computer graphics you may refer to, rely upon, demonstrate, explain to the trier of fact, and/or offer into evidence at the trial of this cause.

20.     If you have a theory, belief, contention, opinion, or knowledge regarding cause(s) of the injuries sustained by Plaintiffs made the subject matter of this lawsuit, produce a true and correct copy of all evidence that supports such theory, belief, contention, opinion, or knowledge, including any such data or information that exists in electronic or magnetic form.

21.     If you have a theory, belief, contention, opinion, or knowledge regarding the type, extent and/or valuation of Plaintiffs' damages, produce a true and correct copy of all evidence that supports such theory, belief, contention, opinion, or knowledge, including any such data or information that exists in electronic or magnetic form.

22.     If you contend that any Plaintiff or any third person or entity was negligent, or caused, and/or contributed to the injury and/or damages claimed by Plaintiffs in this lawsuit, please provide the documents or evidence that supports such contention.

> Request for Production #22 includes evidence concerning the Fourth, Seventh, and Fourteenth Defenses raised in your Answer. *See* ECF Doc. #106, at 2, 4.

23.     If you contend that any Plaintiff failed to mitigate damages in this lawsuit, please provide a true and correct copy of all evidence that supports such contention.

24.     If you contend any non-human cause of Plaintiffs damages exists that caused or contributed to the injury or damages claimed by Plaintiffs in this lawsuit, please provide a true and correct copy of any evidence that supports such contention.

25.     If you contend that a superseding or intervening cause of Plaintiffs damages exists, please provide true and correct copies of any evidence that supports your contention.

26.     If you contend that the discretionary-function exception to the Federal Tort Claims Act, 28 U.S.C. § 2680(a) bars this lawsuit, please provide documents or evidence that supports such a contention.

> Request for Production #26 includes documents or evidence concerning the Thirteenth Defense raised in your Answer. *See* ECF Doc. #106, at 4.

27.     Documents or tangible things obtained from nonparties to this suit that are relevant to the claims and defenses of any party to this lawsuit, including but not limited to, films, reports, or other records obtained via Deposition on Written Questions, Subpoena, and/or any written authorization.

28.     Documents or evidence concerning any offset, subrogation, lien, and/or other reimbursement amounts claimed by the United States that may be asserted against any monetary amount recovered by Plaintiffs in this lawsuit.

29.     Fingerprint cards, fingerprint data, and final disposition reports— electronic form or otherwise—concerning Devin Kelley while he was enlisted in the Air Force.

30.     Documents which contain or reflect the policies, procedures, checklists, and rules in effect between June 9, 2011 and November 5, 2017 concerning the reporting requirements or other requirements of the Lautenberg Amendment to the Gun Control Act, Brady Handgun Violence Prevention Act, or any other law that concerns the prohibition of the transfer of a firearm.

Request for Production #30 includes a request for policies, procedures, or rules that were followed by the Armed Forces, the Air Force, the Air Force Security Forces, and Air Force Office of Special Investigations (AFOSI), between June 9, 2011 and November 5, 2017, which governed the reporting requirements by Law Enforcement Agencies to the Federal Bureau of Investigations (FBI), FBI Criminal Justice Information Services (CJIS), Defense Manpower Data Center (DMDC), National Crime Information Center (NCIC), Defense Incident-Based Reporting System (DIBRS), or any other database which could or should be used to meet the requirements of the Lautenberg Amendment to the Gun Control Act, Brady Handgun Violence Prevention Act, or any other law which directly concerns the prohibition of the transfer of a firearm due to disqualifying factors.

Request for Production #30 includes, but is not limited to, those referenced in DODIG-2019-030 such as:

a) Air Force Instruction 31-118 as referenced on page 51 and footnote 79;

b) Air Force Instruction 31-115 as referenced in footnotes 61 and 76;

c) Air Force Instruction 31-205 as referenced in footnotes 25, 35, 63, 80, 84, pages 40, 52, 77, and 78;

d) Air Force Instruction 31-206 as referenced on pages 51, 68, 71, footnotes 61, and 76;

e) Air Force Instruction 51-201 as referenced in footnote 40;

f) AFOSI Handbook 71-105 as referenced on pages 35, 41, 53, 63, 64 and 73;

g) AFOSI Manual 71-118 Volume 4 as referenced on pages 53, 63, and 73;

h) AFOSI Manual 71-121 as referenced on pages 35, 36, 37, 38, 40, 41, 42, 54, 63, 64, 65, 66, 73, 81, 82, 83, 85, 87, 88, footnotes 36, 41, 88 and 96;

i) DoD Instruction 6400.06 as referenced in footnote 18 of DODIG-2019-030;

Request for Production #30 further includes Air Force Instruction 51-202, DoD Instruction 7730.47, and DoD Instruction 5505.11.

31. In the event that any documents responsive to Request #30 are no longer in existence for the June 9, 2011 to November 5, 2017 period, please produce responsive documents for the next later date for which such documents exist.

32. Unredacted Inspector General Reports concerning the subject matter made the basis of this lawsuit, including the Sutherland Springs Shooting.

Request for Production #32 is intended to include, but is not limited to, unredacted Department of Defense Inspector General Report No. DODIG-2019-030 (Dec. 6, 2018), DODIG-2018-035 (Dec. 4, 2017), DODIG-2015-081 (Feb. 12, 2015), and DODIG-2015-011 (Oct. 29, 2014). This request is further intended to include, but not limited to, the unredacted reports referenced in the Inspector General's Report No. DODIG-2019-030 at pages 55 to 60.

33. Transcripts, recordings, notes, memorandum, or other documents reflecting the content or substance of witness statements, or statements by any person involved in the investigation of Devin Patrick Kelley, gathered in the preparation of the DoD Office of Inspector General's Report 2019-030.

Request for Production #33 is intended to include, but is not limited to, a request for recordings, notes, memorandum, and transcripts of:

a) interviews conducted by the Air Force Office of Special Investigations Investigator General (AFOSI IG) investigators, as noted in DODIG-2019-030 on page 2, footnote 3;

b) the subject interview of Kelley referenced on pages 9, 72, and 73;

c) the interviews of Tessa Kelley referenced on page 16 and footnote 23, as well as the documented discussion with Tessa Kelley that is referenced on page 10;

d) the interview of the redacted party referenced on page 17;

e) the interviews of friends and family of Kelley and Tessa Kelley as referenced on pages 19,103, and 107 paragraph 2;

f) the interviews listed as Witness Interview 1, 2, and 3 cited on page 20;

g) the interviews of ex-girlfriends of Kelley as listed in redacted form on pages 21 and 22;

h) the interview of the former superintendent referenced in footnote 72 on page 66;

Additionally, Request for Production #33 is intended to include, but is not limited to, a request for copies of recordings and transcripts of interviews conducted by the Office of Inspector General. This includes, but is not limited to:

a) the questioning of law enforcement agencies and other witnesses whose statements are referenced in footnote 13 on page 10, page 11, footnote 29 on page 21;

b) interviews of AFOSI personnel referenced on page 65, 66, 74, 75, 82, 83, 84, 85, 88, 89, footnote 98 on page 91, page 91 paragraph 2, page 92, page 93, 94, 95, 96, 97, and 98;

c) interviews of 49th Security Forces Squadron personnel referenced on pages 69, 70, 79, 80, 90, 98, 99;

d) the interview of the HAFB Staff Judge Advocate on page 71;

e) the interview of the Chief of Military Justice at the Holloman AFB Staff Judge Advocate office also on page 71;

f) the Air Force Security Forces Center Action Officer interview referenced on page 99;

g) the Curriculum Control Model Manager at the Naval Corrections Academy interview also referenced on page 99;

h) interviews performed by Comal County Sherriff's Office, as noted on page 29; and

i) the interviews conducted by 49th Security Forces Squadron investigators as noted on pages 12 and 37.

34. All transcripts, recordings, emails, notes, memorandum, or other documents reflecting the communication sent or received concerning Devin Kelley, the investigation of Devin Kelley, or the DoD Office of Inspector General's Report 2019-030.

Request for Production #34 is intended to include, but is not limited to, communication referenced in the DODIG-2019-030 Report, such as:

a) the communication by the Secretary of Defense requesting the DoD Inspector General to investigate as referenced on pages 2 and 45;

b) the communication with the Under Secretary of Defense for Personnel and Readiness and the USAF as referenced on page 4 footnote 4 and pages 117 and 118;

c) the notification by Children, Youth, and Families Department to AFOSI as referenced on page 9;

d) the contact made by Registered Nurse at Providence Hospital referenced on page 10;

e) the report of assault from the USAF Reserve leadership referenced on page 10;

f) communication by or to 49th Squadron Forces contacting AFOSI referenced on page 10;

g) the communication that contained to briefing of the Staff Judge Advocate by 49th Security Forces Squadron as referenced on page 13;

h) records of Tessa Kelley providing the recording of Kelley's confession to his First Sargent or other Government employees or agents, or the subsequent transmission to AFOSI Detachment 225 as referenced on page 16;

i) communication between Kelley's chain-of-command and Peak Behavioral Health Services, including those referenced on page 16;

j) emails to and from FBI CJIS Criminal History Information and Policy Unit Program analysts, including those referenced on page 18;

k) the report of the AFOSI investigation sent to the 49th Mission Support Group Commander and Staff Judge Advocate as referenced on page 24;

l) contacts made by or to the FBI, including those referenced on page 25;

m) the receipt of the Report of Result of Trial by AFOSI as referenced on page 27;

n) Facebook messages, including the Facebook message screenshot sent by Kelley's former supervisor referenced on pages 30 and 44, and any communication by the former supervisor about the Facebook messages referenced on those pages;

o) AFOSI notification to the 49th Logistics Readiness Squadron as referenced on page 35;

p) the May 15th email referenced on page 39;

q) communications with Peak Behavioral Hospital, including the record of the May 15th contact with Peak Hospital that is referenced on page 40;

r) the record of Holloman AFB Base Exchange notification to AFOSI Detachment 225 of the June 7th gun order as referenced on page 40;

s) communications with ATF, including the Consultation with ATF as referenced on page 103; and

t) the contact with the FBI's NCIC Federal Liaison as referenced on page 105.

35.   Transcripts, recordings, or other documents concerning, created, or collected in the investigation of Devin Patrick Kelley by the AFOSI.

   Request for Production #35 is intended to include a request for copies of investigative files under AFOSI Case

No. 225-C-128-G-32329111651413, or equivalent archived file or file held by the Air Force or AFOSI Headquarters, including recordings and transcripts of interviews conducted by AFOSI, all Investigation and Information Management System (I2MS) case management files, checklists, and files noting review as referenced in DOD-IG-2019-030 Report (Pages 9, 12, 16, 17, 19-22, 24, 27 35-42, 43; Footnotes 3, 11, 23, 41, 72).

36. Transcripts, recordings, other documents or evidence concerning, created or collected in the investigation of Devin Patrick Kelley by the 49th Security Forces Squadron.

> Request for Production #36 is intended to include a request for copies of investigative files held under SFMIS Case No. I20120200128, including but not limited to, recordings and transcripts of witness interviews conducted by the 49th Security Forces Squadron investigators as noted in DODIG-2019-030 (Page 12, Footnote 17).

37. Transcripts, recordings, or other documents concerning, gathered, or created by the DoD Office of Inspector General investigators in the preparation of the DoD Office of Inspector General's Report 2019-030.

> Request for Production #37 is intended to include, but is not limited to, a request for copies of:
>
> a) Kelley's criminal history, medical and mental health records, Kelley's admitting records at Peak Behavioral Health Services (PBHS), Kelley's student training report as referenced on page 7;
>
> b) Kelley's USAF Drug and Alcohol Abuse Certificate as referenced on page 5;
>
> c) Records of disciplinary action, including reports containing disciplinary actions taken by the USAF prior to Kelley's confinement and court-martial as referenced on pages 7, 8, 36, 37, and 38;

d) Kelley's No-Contact Order as referenced on pages 13, 37, 104, 105, and in footnote 21;

e) Kelley's Pretrial Confinement (PTC) package as referenced on pages 18 and 40;

f) PTC appeal package as referenced on page 15;

g) PTC Memorandum as referenced on page 23 and footnote 31;

h) all Article 32 Hearing documents as referenced on page 23;

i) Kelley's Military Protective Order (DD Form 2873) as referenced on pages 3, 41, and 104;

j) Kelley's Pretrial Agreement as referenced on pages 24 and 32;

k) confinement records as referenced on pages 25 and 106;

l) Memos concerning Kelley, including those referenced on pages 14, 18, and 40;

m) all ATF Forms 4473 submitted in connection to Devin Kelley as referenced on pages 30, 31, 32, and footnote 49;

n) the Report of Result of Trial as referenced on, pages 25, 27, 42, and 110;

o) the AFOSI closing checklist as referenced on page 81; and

p) the Interview Record as referenced on pages 72, 74, and 109.

38. Documents, files, policies, and procedures—electronic or otherwise—that show the Air Force and DoD complied with the following as stated in DODIG-2018-35 (page 5):

"Finally, the April 15, 2012, DoDI 5505.11 revision required the submission of all fingerprints to the FBI electronically. If no electronic submission capability existed at the LEO, the revision required the development of procedures to convert fingerprints from a hard copy FD-249 to an electronic format."

39.    Documents, files, policies, procedures—electronic or otherwise—that establish whether Holloman Air Force Base had digital fingerprint scanners in place and in use during the relevant time at issue in this case. If Holloman Air Force Base was not using digital scanners at the relevant time, then produce all documents, files, policies, procedures that show how fingerprints were collected and mailed to HQ AFOSI for submission to the FBI CJIS.

Request for Production #39 is intended to include, but is not limited to, a request for records establishing the use or digital scanners or processes in place in the event digital scanners were not available as reported in DODIG-2018-035 (Pages 25–26).

40.    Documents or files, policies or procedures—electronic or otherwise—that show, during the relevant time period of this case, "AFOSI's investigative database programming prevents closure of an investigation until an AFOSI supervisor certifies in the Investigative Information Management System (I2MS) database that the fingerprint cards and final disposition reports have been submitted to FBI CJIS." DODIG-2018-035 (page 26).

Request for Production #40 is intended to include, but is not limited to, documents that show this supervisory certification system was in place and followed (or not) when Devin Kelley's fingerprints should have been obtained and reported while he was enlisted in the Air Force.

41.    AFOSI manual 71-121, Processing and Reporting Investigative Matters," April 13, 2015, Incorporating Change 1, June 6, 2016, as referenced in DODIG-2018-035 (Page 26).

42.   The "training documents" from the U.S. Air Force Special
      Investigations Academy as referenced in DODIG-2018-035 (Page 26).

43.   Fingerprint card collection and submission procedures taught during
      several classes at the AFOSI Basic Special Investigators Course
      (BSIC) and Advanced General Crimes Investigation Course (AGCIC),
      including but not limited to, the 4-hour block of instruction for I2MS as
      referenced in DOGIG-2018-035 (Page 26).

44.   Fingerprint card submission policies, procedures, pamphlets,
      PowerPoints, and other documentation—electronic or otherwise—used
      during the 1-hour Subject Processing Procedures lecture and the Web
      I2MS Case Closure lesson, including but not limited to, the I2MS
      navigation and documenting guide as referenced in DODIG-2018-035
      (Page 26).

45.   The AFOSI Investigative Sufficiency Checklist and AFOSI Closed Case
      Review Checklist as referenced in DODIG-2018-035 (Page 26).

46.   The SMART-OSI (Strategic Management Analysis and Reporting Tool)
      report that field leaders use to identify files within I2MS with missing
      data, as referenced in DODIG-2018-035 (Pages 26–27).

47.   Documents, or files, electronic or otherwise, that reflect policies,
      procedures, and checklists created, implemented, or enforced by the
      AFOSI in response to the DoD IG report assessing the Air Force's
      failure to report fingerprints and final dispositions, including those
      referenced in DODIG-2018-035 (Pages 27–28).

48.   Documents, or files, electronic or otherwise, created by the AFOSI IG
      in connection with its inspections that began in October 2017 as noted
      in DODIG-2018-035 (Page 28).

          Request for Production #48 is intended to include, but is
          not limited to, a request for case files or records of
          inspections done on AFOSI criminal indexing data as a
          special interest item during region unit effectiveness
          inspections (Page 28).

49.    Air Force Instruction (AFI) 31-118 "Security Forces Standards and Procedures," as referenced in DODIG-2018-035 (Page 30).

50.    Air Force Instruction (AFI) 31-120 "Security Forces Systems and Administration," as referenced in DODIG-2018-035 (Page 30).

51.    AFSFC presentation slides, "Completing a Federal Document (FD) 249/Criminal Fingerprint Card," as referenced in DODIG-2018-035 (Page 30).

52.    The Management Internal Control Toolset (MICT) referenced in DODIG-2018-035 (Page 30).

53.    The Security Forces MICT checklist items as referenced in DODIG-2018-035 (Page 30).

54.    Documents, or files, electronic or otherwise, that reflect policies created, implemented, or enforced by the Air Force Security Forces in response to the DoD IG report assessing the Air Force's failure to report fingerprints and final dispositions as referenced in DODIG-2018-035 (page 31–32).

55.    Communication between the DoD IG office and Secretary of the Air Force, or her office, concerning the deficiencies found and reported in DODIG-2018-035 to include, but not limited to, regular updates on the progress of recommendation implementation. *See* DODIG-2018-035 at pages 28 and 32.

56.    The 93 Air Force Security Forces fingerprint cards and 93 Air Force Security Forces final disposition reports that were not on file in the FBI Next Generation Identification database as referenced in DODIG-2018-035 (Page 31).

     Request for Production #56 does not seek personal, private identifying information and includes a request to redact all but the first and last initial of any individual identified who is not Devin Kelley.

57.    The Air Force Security Forces audit and results of audit (if they are different documents) that is referenced in DODIG-2018-035 (Page 32).

58.    Documentation, notes from interviews, recordings from interviews—written or electronic—of interviews conducted with government personnel that were conducted as part of the DODIG-2018-035 report.

59.    The "list of convicted offenders who did not have fingerprint cards or final disposition reports on file in the FBI NGI database" as referenced in Appendix A of the DODIG-2018-035 (Page 43).

60.    Documents, files, reports—electronic or otherwise—of the "2,502 military service members who were convicted by court-martial of qualifying offenses during our evaluation period" as referenced in DODIG-2018-035 (Page 43).

    Request for Production #60 does not seek personal, private identifying information and includes a request to redact all but the first and last initial of any individual identified who is not Devin Kelley.

61.    Documents provided to the Inspector General by the LEO representatives, as referenced in DODIG-2018-035 (Page 44), including:

    a)  Guidance applicable to fingerprinting subjects and oversight of fingerprint card and final disposition report submission processes,

    b)  Investigative case information, such as case numbers, date initiated, investigating organization, FBI numbers, TCNs, and the rationale for non-submission of fingerprint cards and final disposition reports,

    c)  Training related to fingerprint card and final disposition report submissions, and

    d)  inspection procedures and results.

62.   Policy and guidance documents, inspections reports, and training
      materials reviewed by the Inspector General as referenced in DODIG-
      2018-035 (Page 44).

63.   Interview notes, recordings, emails, transcripts from the interviews of
      "Military Service LEO subject matter experts" as referenced in
      DODIG-2018-035 (Page 44).

64.   The "spreadsheet" populated by each of the Service JAGs as referenced
      in DODIG-2018-035 (Page 44).

65.   The data retrieved from the military LEOs reporting systems as
      referenced in DODIG-2018-035 (Page 44)

           Request for Production #65 only seeks the data and reports
           obtained from the Air Force Automated Military Justice
           Administration and Management System (AMJAMS) referenced
           in DODIG-2018-034 (Page 44)

66.   Unredacted copy of "Report No. PO 97-003, "Criminal Investigations
      Policy Memorandum Number 10, Criminal History Data Reporting
      Requirements," January 28, 1997 as referenced in DODIG-2018-035
      (Page 50).

67.   The AFOSI memorandum of December 9, 1996, that is referenced in
      DODIG-2018-035 (Page 51).

68.   DoD Instruction 5505.11 as referenced in DODIG-2015-081 (Page 1).

69.   The list of required convicted offender names that did not have
      fingerprints and/or final disposition updates in IAFIS, as referenced in
      DODIG-2015-081 (Page 3).

70.   The 358 Air Force qualifying convictions, 110 and 113 of which whose
      fingerprint data and final disposition reports, respectively, were not in
      the IAFIS, as referenced in DODIG-2015-081 (Pages 4–8).

Request for Production #70 does not seek personal, private identifying information and includes a request to redact all but the first and last initial of any individual identified who is not Devin Kelley.

71. Documents, or files, electronic or otherwise, that reflect policies, rules, or regulations, created, implemented, or enforced by the Air Force in response to Recommendation 2 of DODIG-2015-081. (Page 10)

72. The unredacted "1997 Department of Defense Office of Inspector General" report titled, "Evaluation of Department of Defense Compliance with Criminal History Data Reporting Requirements" as referenced in DODIG-2015-081 (Page 12).

73. Documents, or files, electronic or otherwise, that reflect policies, rules, or regulations, created, implemented, or enforced by AFOSI to ensure fingerprints and final disposition reports for future arrestees and convicted offenders comply with DODI 5505.11 as noted in DODIG-2015-081. (page 22).

74. Documents, or files, electronic or otherwise, that reflect policies, rules, or regulations, created, implemented, or enforced by the Air Force Security Forces to ensure fingerprints and final disposition reports for future arrestees and convicted offenders comply with DODI 5505.11 as noted in DODIG-2015-081. (page 22).

75. The three tabs (attachments) referenced in the December 9, 2014, letter the Deputy Director of Security Forces, USAF sent to the DoDIG, as referenced in DODIG-2015-081 (Page 24).

Request for Production #75 requests Tab 1-Draft report criminal history data reporting; Tab 2-(FOUO) Copy of Air Force Fingerprint Results 113 Names; and Tab 3-(FOUO) DoDIG List of Security Forces Names (Page 24)

76. DoD Manual (DoDM) 7730.47-M, Volume 1, "Defense Incident Based Reporting System (DIBRS): Data Segments and Elements," December 7, 2010, as referenced in DODIG-2015-011 (Page i).

77. Interview notes, recordings, transcripts, or other documentation related to communication with the DJIS NIBRS Coordinator referenced in DODIG-2015-011 (Page 5).

78. Interview notes, recordings, transcripts, or other documentation related to communication with the DMDC DIBRS Database Administrator referenced in DODIG-2015-011 (Pages 5-6).

79. Interview notes, recordings, transcripts, or other documentation related to communication with the DCIS Project Manager, Case Reporting Information Management System (CRIMS) as referenced in DODIG-2015-011 (Page 7).

80. Interview notes, recordings, transcripts, or other documentation related to communication with the HG Air Force Office of Special Investigation IT Enterprise Management Directorate (HQ AFOSI/XIW), Investigative Information Management System (I2MS) Program Manager, as referenced in DODIG-2015-011 (Page 8).

81. Interview notes, recordings, transcripts, or other documentation concerning communication with the DoD Director of Law Enforcement Policy and Support, as referenced in DODIG-2015-011 (Page 9).

82. The "error reports" maintained by the DMDC Database Administrator referenced in DODIG-2015-011 (Page 9).

83. Documents, or files, electronic or otherwise, that reflect policies, procedures, and checklists created, implemented, or enforced by the Air Force and DoD in response to the DoD IG report Recommendation 1 found in DODIG-2015-011 (Page 11).

84. Documents, or files, electronic or otherwise, that reflect policies, procedures, and checklists created, implemented, or enforced by the Air Force and DoD in response to the DoD IG report Recommendation 2a, 2b, found in DODIG-2015-011 (Page 12 and Page 14)).

85. Documents, files, electronic or otherwise, that establish the DCIS was able to deploy CRIMS v.2 so as to ensure DIBRS compliance as described in DODIG-2015-011 (Page 13).

86.     Documents, files, electronic or otherwise, that establish that "CRIMS v.2 is expected to be CJI sharing system compliant for the purposes of DIBRS criminal investigative data reporting" as described in DODIG-2015-011 (Page 14).

87.     Documents, files, data, reports, electronic or otherwise, that prove "AFOSI identified and corrected the internal process flaw which allowed this lapse to occur, and as of July 10, 2014, the DIBRS program managers completed corrective action" as stated in DODIG-2015-011 (Page 15).

88.     The "submitting agency's policies and procedures for collecting and reporting data regarding criminal incidents" referenced in DODIG-2015-011 (Page 16).

89.     The interview notes, recordings, transcripts—electronic or otherwise—of the DoD Director of Law Enforcement Policy and Support, the DMDC DIBRS System Administrator, and key DCIO staff, as referenced in DODIG-2015-011 (Page 16).

90.     The "criminal investigative database reports for a specified time period" referenced in DODIG-2015-011 (Page 16).

91.     The "policy guidance and documents to validate the submitting agencies processes concerning accurate reporting" referenced in DODIG-2015-011 (Page 17).

92.     The "DIBRS database administrator provided spreadsheets" referenced in DODIG-2015-011 (Page 17).

93.     Documents, or files, electronic or otherwise, that contain any records or findings from AFOSI Detachment 225 self-inspections or AFOSI IG Inspections of AFOSI Detachment 225, performed between June 2011 and November 2017.

94.     Documents or files, electronic or otherwise, concerning Devin Kelley, in the possession of the Defense Manpower Data Center.

Request for Production #94 is intended to include documents or evidence concerning Devin Kelley's base access privileges as well as any information collected in accordance with DOD Instruction 7730.47-M Volume 1.

95.   Reports, files, or documents submitted to any oversight institution or body, including Congress or the Attorney General, or their designee or agent, concerning compliance with the reporting requirements of the Brady Bill, the national instant background search system, or DOD Instruction 7730.47-M Volume 1.

Request for Production #95 includes a request for documents or evidence concerning reports to Congress pursuant to 34 U.S.C. § 40901(e)(1)(E) and (e)(1)(F).