IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JOE HOLCOMBE, et. al, | § | NO. 5:18-CV-00555-XR |
| | § | |
| Plaintiffs | § | Consolidated with: |
| | § | 5:18-cv-00712-XR (*Vidal*) |
| | § | 5:18-cv-00881-XR (*Uhl*) |
| vs. | § | 5:18-cv-00944-XR (*Ramsey*) |
| | § | 5:18-cv-00949-XR (*McNulty*) |
| UNITED STATES OF | § | 5:18-cv-00951-XR (*Wall*) |
| AMERICA, | § | 5:18-cv-01151-XR (*Amador*) |
| | § | 5:19-cv-00184-XR (*Brown*) |
| Defendant | § | 5:19-cv-00289-XR (*Ward*) |
| | § | 5:19-cv-00506-XR (*Workman*) |
| | § | 5:19-cv-00678-XR (*Colbath*) |
| | § | 5:19-cv-00691-XR (*Braden*) |
| | § | 5:19-cv-00706-XR (*Lookingbill*) |
| | § | 5:19-cv-00714-XR (*Solis*) |
| | § | 5:19-cv-00715-XR (*McKenzie*) |
| | § | 5:19-cv-00805-XR (*Curnow*) |
| | § | 5:19-cv-00705-XR (*Workman*) |
| | § | 5:19-cv-00806-XR (*Macias*) |

**UNITED STATES' MOTION FOR A RULE 16 CONFERENCE**

Defendant United States of America, in accordance with the invitation in the Court's Scheduling Order (ECF No. 98), moves the Court to schedule an in-person Rule 16 conference at its earliest convenience in order to discuss procedural orders that will avoid unnecessary and wasteful discovery, and minimize the potential for unnecessary motion practice and judicial intervention. Specifically, the United States proposes that the Conference agenda include discussion of (1) a ruling and order by the Court articulating the scope of discovery, as well as review and discussion of the United States' proposed (2) Discovery Plan, (3) Confidentiality and Protective Order, (4) Order Pursuant to Federal Rule of Evidence 502(d), and (5) Discovery Order,

all of which are attached to this motion. (Exs. 1-4.) The United States believes that entry of these orders is essential to a workable discovery process that avoids unnecessary costs and delays.

The United States worked with Plaintiffs in an effort to provide agreed orders to the Court, and to limit the scope of discovery. The parties met and conferred on those issues, including telephonic conferences on August 7 and 14, 2019. The parties also exchanged several redlined drafts of the orders, but all efforts to reach agreement were unsuccessful. Accordingly, these matters are ripe for judicial intervention.

Plaintiffs do not object to the holding of a Rule 16 Conference, and do not object to the United States' concurrently-filed motion for a protective order being heard at the Rule 16 Conference. Should Plaintiffs provide their own proposed orders as attachments to a response to this motion, to the extent feasible, the United States will endeavor to submit redlined documents showing the differences in the parties' positions with its reply brief.

## BACKGROUND

These cases all arose out of the horrific mass shooting that occurred on November 5, 2017, at the First Baptist Church in Sutherland Springs, Texas. The shooter, Devin Patrick Kelley, killed twenty-six people and injured at least twenty others during the rampage. Thus far, forty-three plaintiffs have brought suit under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 *et seq*. (FTCA), alleging that the United States is liable for this tragedy because, but for failures by the U.S. Air Force to report disqualifying information about Kelley to the FBI's national instant background check system, Kelley would not have been able to purchase the firearms he used to carry out the massacre at the church. This litigation is currently comprised of eighteen cases, all consolidated under the lead case, *Holcombe v. United States*, 5:18-CV-00555-XR.

The United States moved to dismiss the consolidated cases, alleging a number of legal defenses. (ECF No. 28.) In its Order of May 23, 2019, this Court granted that motion in part, but rejected several of the United States' threshold defenses. (ECF No. 59.) On July 22, 2019, the United States moved the Court to certify its Order for interlocutory appeal and Plaintiffs responded on August 26, 2019. (ECF Nos. 107, 121). That motion is currently pending.

The Court entered a Scheduling Order on June 24, 2019. (ECF No. 98.) In that Order, the Court invited "[e]ither party may file a motion seeking a Rule 16 status conference and discovery order[]" and indicated that "at that status conference, [it would] entertain argument as to bifurcation and scope of discovery." [1] *Id*. at 1. The United States respectfully accepts the Court's invitation to file a motion, and requests that the Court also address the parties' disputes concerning the discovery process and the scope of discovery, including the dispute explained in the concurrently-filed motion for a protective order. Addressing these matters is consistent with the purpose of Rule 16 and is likely to aid in the just, speedy, and inexpensive disposition of this consolidated action.

## ARGUMENT

The United States requests a Rule 16 conference in order to discuss the entry of orders (1) limiting the scope of discovery to matters relevant to Plaintiffs' negligent undertaking theory,

---

[1] Although the United States is steadfast in its position that bifurcation of liability and damages discovery is appropriate, the United States submits that the requested Rule 16 Conference is best used to address the other issues discussed in this motion. Nevertheless, the Court should be aware that damages discovery will involve tremendous efforts, requiring depositions of at least forty-three Plaintiffs, Plaintiffs' damages experts, and a fair number of the 950 medical providers and other persons Plaintiffs have identified as supporting their damages. Consequently, the United States may need to request an extension of the April 1, 2020 discovery deadline in order to complete damages discovery, particularly if Plaintiffs are permitted to take exceptionally broad discovery, like the discovery certain Plaintiffs have already propounded.

and negligent supervision and training related to such undertaking; (2) enforcing consolidation "for all purposes," as originally ordered by the Court, by placing reasonable constraints on the amount of discovery ("Discovery Plan"); (3) permitting the parties to designate medical, personally-identifiable information, and other sensitive and confidential information as such, and prohibiting the parties from disclosing such information outside this litigation ("Confidentiality and Protective Order"); (4) facilitating procedures for the clawback of inadvertently-produced privilege materials ("Order Pursuant to Fed. R. Evid. 502(d)"); and (5) setting out document production specifications, ESI preservation requirements, and privilege log protocols that expedite document production and minimize the potential for disputes about production ("Discovery Order"). A Rule 16 conference may be used to "establish[] early and continuing control so that the case will not be protracted because of lack of management." Fed. R. Civ. P. 16(a); *see* This Court's Standing Order.

In connection with the Rule 16 conference, among other things, "the court may consider and take appropriate action on . . . formulating and simplifying the issues [in the litigation,] . . . controlling and scheduling discovery, including orders affecting disclosures and discovery . . . [and] adopting special procedures for managing potentially difficult or protracted actions that may involve . . . multiple parties." Fed. R. Civ. P. 16(c)(2)(A), (F), (L). The United States submits that discussion of the orders identified above will greatly facilitate discovery that has already become unwieldy and portends to become even more so going forward.

   1. **The Scope Of Discovery Should Be Limited to The Circumstances Concerning The Absence Of Kelley's Disqualifying Information From NICS.**

In these eighteen consolidated cases, Plaintiffs have two remaining causes of action: (1) negligent undertaking, and (2) negligent training and supervision related to such undertaking.

(ECF No. 59, Order 33-40.)  Regardless of the limited scope of these issues, as discussed in the United States' motion for certification for interlocutory appeal, Plaintiffs seek not only to establish the Government's negligence specific to Kelley, but also the "systematic negligence" of the Air Force and DoD in failing to submit disqualifying information for all persons under the Brady Act to the FBI.  (ECF No. 107).  In their Rule 26(a) Initial Disclosures, Plaintiffs Joe Holcombe and Claryce Holcombe identified at least thirty-seven government witnesses or categories of witnesses as persons who have information or knowledge relevant to their claims.  The list includes the current and former Secretaries of the Air Force, the Air Force Commander for the Air Force Office of Special Investigations, the Brigadier General in charge of Security Forces, and the Air Force Chief of Staff.  These high-ranking officials would have had no personal knowledge about anything specific pertaining to the Air Force's failure to report Kelley's disqualifying information into FBI's national instant criminal background check system (NICS) prior to the horrific shooting.  Their depositions would therefore serve no legitimate purpose.

Consistent with their goal of proving "systematic negligence," as explained in the separately filed motion for a protective order, four sets of Plaintiffs have already propounded impermissibly broad discovery pertaining to (1) Kelley's other incidents of bad conduct or violence that did not give rise to a reporting obligation and (2) Department of Defense Inspector General (DODIG) Reports concerning the timeliness of the armed forces in submitting fingerprints, disposition reports, or other criminal history into proper databases for persons and time period unrelated to the non-reporting of Kelley's information.  As explained more fulsomely in the Defendant United States' Motion for a Protective Order, Kelley's other bad acts are irrelevant because they (1) cannot form the basis for any duty of the United States to Plaintiffs, (2) are not relevant to whether the United States was negligent in carrying out its undertakings

5

under NICS, and (3) do not bear on whether the absence of Kelley's information from NICS was the cause of Plaintiffs' harm. Because the ten other DODIG reports pertain to the disqualification of other service members, their veracity or substance is not relevant to the claim of negligent undertaking, or negligent training or supervision with respect to Kelley.

What are relevant to the liability the United States in this litigation are whether the Air Force was negligent with respect to the non-reporting of disqualifying information about Kelley into NICS, and whether such negligence was the proximate cause of Plaintiffs' harm. For the reasons set forth here, and the reasons contained in the United States' motion for a protective order, the Court should constrain discovery to those issues and quash the Plaintiffs' already-propounded discovery to the extent that it is not tailored to those issues.

### 2. The Entry Of A Discovery Plan Will Further The Purposes of Consolidation By Avoiding Unnecessary Costs And Delays To Discovery In This Litigation.

This Court consolidated these eighteen cases "for all purposes" under Fed. R. Civ. P. 42(a) in order "to avoid unnecessary cost or delay and promote the administration of justice." *See* Order, ECF No. 9; *see also Frazier v. Garrison Indep. Sch. Dist.*, 980 F.2d 1514, 1531 (5th Cir. 1993) (observing that purpose of consolidation is to "avoid unnecessary costs or delay"). If cases are consolidated "for all purposes" under Rule 42, those cases are then effectively treated as a single case. *See McDermott Int'l, Inc. v. Underwriters At Lloyds*, 981 F.2d 744, 747 (5th Cir. 1993) ("When the cases were consolidated pursuant to Fed. R. Civ. P. 42(a), they became a single judicial unit[.]"); *see also Hall v. Hall*, 138 S. Ct. 1118, 1129-31 (2018) (distinguishing consolidation "for all purposes" from other types of consolidation where cases retain their individual character). Because the consolidated cases are effectively treated as a single case "for all purposes," including discovery, the litigation preferences of individual parties and their counsel

6

must yield to discovery parameters that further the purposes of consolidation. *See In re Air Crash Disaster at Fla. Everglades on Dec. 29, 1972*, 549 F.2d 1006, 1014 (5th Cir. 1977) (The need for consolidation "may take precedence over desire of counsel."); *Castaneda v. Swift Transportation Corp.*, 2009 WL 10669207, at *3 (W.D. Tex. July 16, 2009) (rejecting plaintiff's argument that consolidation was inappropriate because it would restrict the discovery limits of the parties to the limits applicable in a single case).

Despite these cases being consolidated "for all purposes," and despite no Plaintiff objecting to consolidation, Plaintiffs seek to effectively carry out discovery in these cases independently. Rather than proceeding in a consolidated fashion, four sets of Plaintiffs have already propounded requests for admission, interrogatories, two sets of requests for production, and a Fed. R. Civ. P. 30(b)(6) notice of the United States. Moreover, counsel for Kris Workman continues to file motions independent of the other Plaintiffs. The day before oral argument on the United States' motion to dismiss, Mr. Workman filed a motion to amend the oral argument scheduling order based on his novel theory of liability under the vice-principal doctrine. (Workman ECF No. 2 at 3). And, while Plaintiffs filed a joint opposition to the Government's motion to certify for appeal (ECF No. 121), counsel for the Workmans and David Colbath filed a separate opposition motion based on their vice-principal allegation. (ECF No. 122). There are currently forty-three plaintiffs in these consolidated cases. Redundant, unnecessary, and cumulative discovery demands by different Plaintiffs will create unnecessary costs and delays in this litigation. Indeed, if discovery is to take place in a piecemeal fashion, any benefits of consolidation will erode quickly.

In litigation involving "a common issue of law or fact," a district court may "issue . . . orders to avoid unnecessary cost or delay." Fed. R. Civ. P. 42(a)(3). In that regard, this Court has consolidated the eighteen cases "for all purposes." (Order, ECF No. 9.) In order to further the

purpose of consolidation, the United States submits the attached proposed Discovery Plan, which (1) requires Plaintiffs to act through one attorney for discovery and motions practice on liability issues, (2) places reasonable restricts on experts, interrogatories, and requests for admission for liability discovery, and (3) contains limits and specifications concerning damages discovery, taking into account individual nature of Plaintiffs' damages claims. (Ex. 1.)

The Discovery Plan provides that one attorney will serve as a representative of all Plaintiffs for purposes of discovery and motions practice on liability issues. (Ex. 1, ¶3.) Plaintiffs must all prove the same facts to establish liability. Because the interests of Plaintiffs are aligned in that regard, the appointment of lead or liaison counsel for the liability portion of this consolidated litigation is appropriate. *See In re Air Crash Disaster at Fla. Everglades*, 549 F.2d at 1014; *see also Malden Transportation, Inc. v. Uber Technologies, Inc.*, 323 F.R.D. 118, 121 (D. Mass. 2017) (appointing "liaison counsel" in litigation involving "four law firms" and "seven original actions").

In the proposed plan, all discovery pertaining to the United States' potential liability will be served by one lead counsel on behalf of all Plaintiffs. (Ex. 1, ¶3.) Plaintiffs would file motions, take depositions, and designate liability experts jointly. *Id.* These procedures will greatly increase efficiency, and the burden of requiring Plaintiffs' counsel to collectively confer for purposes of discovery and motions is none or minimal. The Discovery Plan recognizes that discovery pertaining to Plaintiffs' potential damages of course requires individualized discovery, and damages discovery are addressed separately in the Plan.

Plaintiffs do not currently have an actual lead counsel. Mr. Alsaffar, counsel for four sets of Plaintiffs, has repeatedly represented to counsel for the United States that he is the lead counsel in these consolidated cases. But he has also asserted that all of the Plaintiffs, regardless of being

consolidated herein, have the individual right to conduct discovery as though they were separate parties.  It is insufficient for the Plaintiffs to suggest that they will attempt to coordinate with each other to prevent duplicative discovery requests because the United States' counsel must still examine all discovery requests propounded by numerous plaintiffs to determine inconsistencies.  Appointment of lead or liaison counsel is necessary for the purposes of liability discovery.

The proposed Discovery Plan also sets reasonable limits on experts, interrogatories, requests for admission, and depositions for the liability portion of the case.  (Ex. 1, ¶¶ 7-10.)  Under the Plan, both sides are permitted five experts, thirty requests for admission, twenty-five interrogatories, and fifteen depositions on liability issues.  *Id.*  In the absence of good cause, the default per-case limits for requests for admission and interrogatories are appropriate for the liability portion in this litigation (exclusive of damages discovery), which has been consolidated "for all purposes" and for which Plaintiffs must all prove the same facts concerning liability.  *See e.g.*, *Fair Housing Ctr. of Central Ind., Inc., v. Marshall Welton*, 2019 WL 2422594, at *3 (S.D. Ind. June 10, 2019); *E.E.O.C. v. Beauty Enters., Inc.*, 2008 WL 3359252, at *2 (D. Conn. Aug. 8, 2008); *see generally* 8B Fed. Prac. & Proc. Civ. § 2168.1 (3d ed.) ("[I]n some instances nominally separate parties should be considered one party for purposes of the 25–interrogatory limitation.").  In the course of discussions on a discovery plan, Plaintiffs have suggested that they should be permitted 300 requests for admission and 150 or more interrogatories, but why there is good cause for such an exorbitant number of discovery requests is far from clear.

For purposes of damages discovery, the Discovery Plan provides each side with twenty-five damages experts, five interrogatories for each Plaintiff, and five interrogatories for the United States for each Plaintiff.  (Ex. 1, ¶¶ 7-10.)  The Plan also provides for a mental and physical examination for each Plaintiff, permits the United States to take depositions of Plaintiffs' medical

providers and witnesses identified by Plaintiffs as supporting damages without regard to the fifteen-deposition limit, and requires Plaintiffs to complete necessary waivers for compliance with the Health Insurance Portability and Accountability Act (HIPAA).  *Id.*  The ability to take depositions of the providers and witnesses Plaintiffs will likely call at trial without regard to a deposition limit is essential, as Plaintiffs have collectively identified 922 medical providers and at least 28 other damages witnesses in their initial disclosures.  Although the United States does not anticipate taking 950 damages depositions (not including Plaintiffs themselves), the total number is both substantial and difficult to know with certainty at this point, necessitating the language in the Plan.

### 3. There Is Good Cause For The Entry Of A Protective Order That Provides Guidance For The Treatment of Confidential And Sensitive Information.

"Upon motion by any party demonstrating good cause, the court may enter a protective order in the form set out in Appendix H or any other appropriate form."  Local Rule CV-26(c); *see* Fed. R. Civ. P. 26(c).  The United States has submitted with this motion a proposed Confidentiality and Protective Order that substantially tracks the template appended to the Local Rules, and asks that the Court enter such order.  (Ex. 2.)  The Court has good cause to enter a protective order because the parties will be producing large volumes of documents and information, certain of which will undoubtedly contain sensitive or confidential information.

A protective order is needed so that parties can produce these confidential and sensitive documents with procedures in place to prevent disclosure outside of this litigation.  The categories of documents generally include financial, and possibly medical or other private information relating to an individual, which would properly be redacted from any public court filing pursuant to Federal Rule of Civil Procedure 5.2.  As with any personal injury case, Plaintiffs will be

10

producing large volumes of medical records that they may wish to designate confidential. Documents protected by the provisions of 45 C.F.R. §§ 164.102–164.534 (regulations promulgated pursuant to HIPAA), and the Family and Educational Rights and Privacy Act, 20 U.S.C. § 1232g, 34 C.F.R. Part 99, will need to be marked confidential. Additional information may be protected by the Privacy Act, 5 U.S.C § 552a, and documents containing such information must be marked confidential as well.

In addition to these categories of documents, the United States seeks a protective order for categories of documents unique to these consolidated cases. For instance, Plaintiffs have requested unredacted versions of several DODIG reports. These reports contain sensitive information that was permissibly redacted under the Freedom of Information Act (FOIA). Additionally, the United States believes that documents containing sensitive information in the law enforcement context, such as the names of case agents, interview transcripts, and any video, photographic, or sound recordings of the Sutherland Springs Church shooting that might incite copycats should be strictly limited by a protective order.

The proposed Protective Order contains the exact same language as the template in Appendix H with respect to paragraphs 3a, 6-10, 12a, 13, 15-19 (paragraph 19 is renumbered as paragraph 25) of the Court's nineteen paragraph protective order, but contains modifications for details specific to litigation handled by the undersigned's office and removes provisions unnecessary in this litigation. The modification to paragraph 1 retains the Appendix H definition, but refers to "Classified Information" instead as "Confidential Information," due to the specific meaning of classified information in connection with the federal government. The proposed order also includes a definition for Protected Health Information, as such information will need to be produced in this litigation. Paragraph 2 retains many of the same categories of "Qualified

Persons" listed in Appendix H, but makes some modifications to include person unique to the federal government and removes the distinction between "Confidential Information" and "Attorneys Only" information as the distinction is not necessary in this litigation. Paragraph 3 removes the subparagraph concerning "Attorneys Only" information and adds in the categories of documents that the United States anticipates needing to be marked as confidential under the order. Paragraph 5 uses the document marking criteria suggested by Plaintiffs in the course of the exchange of redlined draft protective orders.

The draft Protective Order also adds important provisions to the Appendix H template. Paragraph 4 adds language clarifying the terms of use of information designated confidential to the existing language. Paragraph 11 contains additional instructions on reproduction of documents originally marked as confidential as to which that designation is removed or withdrawn. Paragraph 12 adds a second subparagraph providing instructions concerning the use of confidential information at trial. Paragraph 14 adds in requirements specific to the federal government, as do paragraphs 20 through 24. Lastly, paragraph 19 adds language necessary for HIPAA compliance. Because of the need to produce large amounts of documents, at least some of which must or may need to be designated as confidential, and because the United States' proposed Protective Order tracks the model order in Appendix H, the Court has good cause to enter that proposed order.

  **4. The Entry Of An Order Pursuant To Federal Rule Of Evidence 502(d) Will Expedite The Production Of Documents.**

"A federal court may order that [a] privilege or protection is not waived by disclosure connected with the litigation pending before the court . . . ." Fed. R. Evid. 502(d). Federal Rule of Evidence 502(d) "is designed to enable a court to enter an order . . . that will allow the parties to conduct and respond to discovery expeditiously, without the need for exhaustive pre-production

privilege reviews, while still preserving each party's right to assert the privilege to preclude use in litigation of information disclosed in such discovery." *Olaoye v. Wells Fargo Bank NA*, 2013 WL 6912691, at *1 (N.D. Tex. Dec. 30, 2013) (Fed. R. Evid. 502 Advisory Committee Notes, subdivision (d)).  In the absence of such an order, parties must litigate reasonableness under Fed. R. Evid. 502(b) whenever a privileged document is inadvertently disclosed.

In its Standing Order, this Court requires parties to discuss issues under Fed. R. Evid. 502, and "encourages the parties to consider filing a proposed agreed order . . . that a party does not waive the attorney-client privilege or the attorney work-product privilege by inadvertently producing privileged or work-product documents."  The United States has provided such an order, the proposed Order Pursuant to Federal Rule of Evidence 502(d), as an attachment to this motion.  (Ex. 3.)

There is good cause for the entry of a Fed. R. Evid. 502(d) order.  Plaintiffs have already requested large volumes of documents and information.  Notwithstanding the merits of Plaintiffs' requests, the United States anticipates that a significant number of documents will be produced.  The process will be expedited, and motions practice may be avoided, through an order that permits the parties to produce documents without the concern that the opposing party will argue that production of a document, which is later determined to be privileged, has waived the privilege for that document.  The United States' proposed order furthers that end, and is the same order that the undersigned's office has used successfully in numerous cases.  Accordingly, the Court has "good cause" to enter the United States' proposed Order Pursuant to Federal Rule of Evidence 502(d).

    **5. A Discovery Order Setting Out Document Production Specifications, ESI Preservation Requirements, And Privilege Log Protocols That Expedite Document Production And Minimize The Potential For Disputes About Production.**

The United States is submitting a proposed Discovery Order.  (Ex. 4.)  The aim of such order is to "reduce the time, expense and other burdens of discovery of certain hard copy documents, electronically stored information ("ESI"), and privileged materials . . . and to better define the scope of their obligations with respect to preserving and producing such information and materials."  *Id.*  This is the same order that the undersigned's office has used successfully in numerous cases.

As it pertains to liability, the United States will be producing far and away the bulk of documents and information.  The United States anticipates producing electronic documents, hard copy documents, and ESI from proprietary databases responsive to Plaintiffs' discovery requests from at least six different federal agencies.  Each federal agency generally has its own information technology and document-management systems, which can create potential difficulties in producing documents in a specified format.  The document-production specifications in the Discovery Order have all been approved by the relevant agencies.  The uniform specifications ensure a smooth and efficient production of ESI and documents.

In the "Addendum Regarding Discovery" to its Standing Order, the Court encourages parties to discuss ESI in detail, and provides a list of categories of difficult-to-access ESI that is generally deemed "not discoverable."  The proposed Discovery Order identifies the non-discoverable categories of documents.  (Ex. 4, ¶ 10.)  The Discovery Order also contains sections pertaining to the discovery of expert materials and marking of privileged materials.  *Id.* ¶¶ 19-32.  These sections are to provide clarification concerning the scope of discoverable materials and to provide an orderly and uniform process for designating privileged materials.  Like with the proposed Fed. R. Evid. 502(d) Order, these sections of this order will aid in eliminating unnecessary disputes and motions practice on privilege-related issues.

## CONCLUSION

For the reasons stated and upon the authorities cited, the United States respectfully requests that the Court schedule a Rule 16 conference, enter an order limiting discovery to Plaintiffs' remaining claims, and adopt its proposed Discovery Plan, Confidentiality and Protective Order, Order Pursuant to Federal Rule of Evidence 502(d), and Discovery Order.

Dated: August 29, 2019                    Respectfully submitted,

**JOSEPH H. HUNT**
Assistant Attorney General
Civil Division
**JOHN F. BASH**
United States Attorney
Western District of Texas
**JOHN F. PANISZCZYN**
Assistant United States Attorney
State Bar. No. 15443855
**JAMES G. TOUHEY, JR.**
Director, Torts Branch
Civil Division
**STEPHEN E. HANDLER**
Senior Trial Counsel, Torts Branch
Civil Division

By:    */s/ Paul David Stern*
**PAUL DAVID STERN**
Trial Attorney, Torts Branch
Civil Division
*Counsel for the United States of America*

**CERTIFICATE OF SERVICE**

  I certify that on August 29, 2019, I electronically filed the foregoing with the clerk of court by using the CM/ECF system, and that the following counsel of record have received notice and been served through that system.

Jamal K. Alsaffar
Tom Jacob
WHITEHURST, HARKNESS, BREES,
CHENG, ALSAFFAR & HIGGINBOTHAM
& JACOB PLLC
7500 Rialto Blvd, Bldg. Two, Ste 250
Austin, TX 78735

Jason P. Steed
KILPATRICK TOWNSEND & STOCKTON LLP
2001 Ross Avenue, Suite 4400
Dallas, TX 75201

Robert E. Ammons
April A. Strahan
THE AMMONS LAW FIRM, L.L.P.
3700 Montrose Boulevard
Houston, TX  77006

Dennis Charles Peery
R. Craig Bettis
TYLER & PEERY
5822 West IH 10
San Antonio, TX 78201

Brett Reynolds
Brett Reynolds & Associates PC
1250 N.E. Loop 410, Suite 310
San Antonio, TX 78209

Mark W. Collmer
COLLMER LAW FIRM
3700 Montrose
Houston, TX 77006

Daniel J.T. Sciano
TINSMAN & SCIANO
10107 McAllister Freeway
San Antonio, TX 78216

Daniel D. Barks
SPEISER KRAUSE, P.C.
5555 Glenridge Connector, Suite 550
Atlanta, GA 30342

Tim Maloney
Paul E. Campolo
MALONEY & CAMPOLO, L.L.P.
926 S. Alamo
San Antonio, TX 78205

George LeGrand
Stanley Bernstein
LEGRAND & BERNSTEIN
2511 N. Saint Mary's St.
San Antonio, Texas 78212

          */s/ Paul David Stern*
          **PAUL DAVID STERN**
          Trial Attorney, Torts Branch