IN THE UNITED STATES DISTRICT FOR
THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JOE HOLCOMBE, et. al, | § | NO. 5:18-CV-00555-XR |
| | § | |
| Plaintiffs | § | Consolidated with: |
| | § | 5:18-cv-00712-XR (*Vidal*) |
| | § | 5:18-cv-00881-XR (*Uhl*) |
| vs. | § | 5:18-cv-00944-XR (*Ramsey*) |
| | § | 5:18-cv-00949-XR (*McNulty*) |
| UNITED STATES OF | § | 5:18-cv-00951-XR (*Wall*) |
| AMERICA, | § | 5:18-cv-01151-XR (*Amador*) |
| | § | 5:19-cv-00184-XR (*Brown*) |
| Defendant | § | 5:19-cv-00289-XR (*Ward*) |
| | § | 5:19-cv-00506-XR (*Workman*) |
| | § | 5:19-cv-00678-XR (*Colbath*) |
| | § | 5:19-cv-00691-XR (*Braden*) |
| | § | 5:19-cv-00706-XR (*Lookingbill*) |
| | § | 5:19-cv-00714-XR (*Solis*) |
| | § | 5:19-cv-00715-XR (*McKenzie*) |
| | § | 5:19-cv-00805-XR (*Curnow*) |
| | § | 5:19-cv-00806-XR (*Macias*) |

## PLAINTIFFS' RESPONSE TO THE GOVERNMENT'S MOTION FOR RULE 16 CONFERENCE

Plaintiffs do not oppose the setting of an in-person Rule 16 conference. In fact, Plaintiffs request a conference be set soon so that Plaintiffs can overcome the Government's obstruction and finally advance discovery.

The Government will only proceed with discovery if Plaintiffs accept their non-negotiable, one-sided, and restrictive versions of a discovery plan, protective order, and ESI order. In its own words, the "United States will not be producing any documents … unless instructed to do so by the Court." *E.g.*,

Exhibit 1, Defendant's Responses to Plaintiff's Request for Production numbers 39, 47–49 (the Government says this forty-one other times). So now, Plaintiffs seek the Court's guidance and ask it to enter:

- A fair discovery plan consistent with the Court's current and active Scheduling Order and which Plaintiffs offered the Government (*See* Plaintiffs' Proposed Discovery Plan, Exhibit 2)

- A fair protective order that protects information that is actually confidential and places the burden where it belongs—on the party seeking protection—and which Plaintiffs offered the Government. (*See* Plaintiffs' Proposed Protective Order, Exhibit 3)

- A fair ESI order tailored to the anticipated issues and information primarily in the Government's possession, and which Plaintiffs offered the Government (*See* Plaintiffs' Proposed ESI Order, Exhibit 4).

# ARGUMENT

The Government's proposed orders are cumbersome, non-negotiable, and one-sided so that Plaintiffs cannot prove their case. This brief will describe in detail the tools the Government uses to that end. But for example, the Government's discovery order grants itself **1,010 depositions** but limits the Plaintiffs to **50 depositions**.[1] The Government believes itself entitled to

---

[1]  Here's the math. The Government gives itself:
- **15** general, all-purpose depositions, ECF No. 125-1, at 4 ¶ 10;
- **43** depositions of named Plaintiffs, ECF No. 125, at 9;

depose every one of Plaintiffs' 922 medical providers without limit, but cannot let Plaintiffs' depose the thirty-seven (37) Government employees that plaintiffs have identified without coming back to the Court. U.S. Mot. R. 16 Conf., at 5 (ECF No. 125). And the Government admits that it has "far and away the bulk of documents and information," yet fashioned discovery orders to give itself the least discovery obligations. *Id.* at 14.

1.  ***Discovery scope should encompass the Government's negligent conduct over the time period the Government was negligent.***

For 20 years the Government's negligent operation of its evidence collection, investigation, and reporting system allowed dangerous individuals, including convicted criminals, to access weapons. See DODIG 2019-030, at 50, 57, 120.[2] But now, the Government asks this Court to restrict discovery scope in order to reveal the least amount of information as possible about the Government's 20-year negligence campaign. And the Government does this while denying basic facts.

---

- **922** medical provider depositions, ECF No. 125, at 10; ECF No. 125-1, at 4 ¶ 10(c);
- **5** depositions of Plaintiffs' liability experts, ECF No. 125-1, at 3 ¶ 7; and
- **25** depositions of Plaintiffs' damages experts, ECF No. 125-1, at 3 ¶ 7.

In contrast, the Plaintiff gets:

- **15** general depositions, ECF No. 125-1, at 4 ¶ 10;
- **5** liability experts, ECF No. 125-1, at 3 ¶ 7;
- **25** damages experts, ECF No. 125-1, at 3 ¶ 7; and
- **5** depositions under Rule 30(b)(6), ECF No. 125-1, at 5 ¶ 10(f).

[2]  The DODIG report is available online, at https://tinyurl.com/yb3tkqw8 (last visited Sept. 5, 2019).

1.1.    **Plaintiffs need discovery and the Court's intervention.**

Plaintiffs have tried multiple times to get the United States to stipulate to facts not in dispute, so as to narrow the issues in discovery. The Government's failure to narrow the issues in dispute requires the parties to conduct discovery on those matters. For example, the Government has asserted in its initial disclosures that it is aware of **no** witnesses that it "may use to support its claims or defenses." Exhibit 5, Gov't Initial Disclosures. Yet, it's answer to its complaint admits almost no facts on liability or causation. As another example, the Government states that it is "without sufficient knowledge to admit or deny" that "the Air Force Security Forces Center was responsible for training, equipping, and organizing all Security Forces for the Air Force." U.S. Answer 1st Am. Complaint, at 67–68 ¶ 4.16 (ECF No. 113) Paragraph 4.16 is taken almost verbatim from the Government Inspector General's Report. *See* DODIG 2019-030, at 98 n. 103, 99.

The Government even finds issue with those discovery requests officially sanctioned by this Court. Two of the interrogatories the Government finds objectionable are verbatim from the Local Rules, which state that the "[C]ourt will not consider objections to these interrogatories." Local Rule CV-33(b); ECF No. 124-1, at 6 (Interrogatories 2 & 3); In response to these Interrogatories, the Government makes form objections, which could be applicable to any case. Exhibit 6, Gov't Response to Plaintiff's Interrogatory, at 16.

The Government's obstructionism boils down to its belief that almost nothing is relevant to this case. In fact, the Government takes the bold position that a "substantial portion, if not most," of the DODIG Report *on the*

*Sutherland Springs' shooting* is not relevant to this case. U.S. Mot. Protective Order, at 9 (ECF No. 124); *see also* DODIG 2019-030.[3] And as a result of the Government's tapered view on discovery, the Government takes the position that a case of this magnitude allows for only 25 interrogatories and 30 requests for admission, the same limit as a two-vehicle car wreck. Because the Government took this position, Plaintiffs decided to coordinate initial discovery through only one set of Plaintiffs, to preserve the ability for future discovery. In a great judo move, the Government turns around and uses this as a justification for further restricting discovery.[4]

### 1.2. The Government's Discovery Order

Plaintiffs propose a discovery order that treats both sides fairly. *See* Exhibit 2, Plaintiffs' Discovery Plan. In contrast, the Government asks this Court to sign a "Joint Stipulations and Agreed Order" that's not joint,

---

[3] The report is titled "Report of Investigation into the United States Air Force's Failure to Submit Devin Kelley's Criminal History Information to the Federal Bureau of Investigation" and is available online, at https://tinyurl.com/yb3tkqw8 (last visited Sept. 5, 2019).

[4] But the law simply does not see it the Government's way. The rules limit discovery to parties, not "sides." *E.g.*, Fed. R. Civ. P. 33(a) ("a party may serve on any other party no more than 25 written interrogatories…"); Rule 34(a) ("A party may serve on any other party a request…"); *cf.* Rule 30(a)(2)(A)(i) (limiting the number of depositions taken by "the plaintiffs, or by the defendants, or by the third-party defendants."). In *St. Paul Fire & Marine Ins. Co. v. Birch, Stewart, Kolasch, & Birch, LLP*, 217 F.R.D. 288, 289 (D. Mass. 2003) the court held that the Federal Rules permitting each party to serve 25 interrogatories controlled over a local rule limiting interrogatories per side. *See also Mo. Republican Party v. Lamb*, 87 F.Supp.2d 912, 919 (E.D. Mo. 2000) (limiting the number of depositions per side and the number of interrogatories per party); Moore, 7 Moore's Federal Practice § 33.30[1] at 33–33 ("As noted, any party may serve interrogatories on any other party to a proceeding. Therefore, in multiparty cases, a party may serve 25 interrogatories on each other party involved. … The interrogatories are subject, however, to objections based on duplication.").

stipulated, or agreed to. Plaintiffs have numerous problems with the Government's discovery plan.

For example, the Government's discovery order limits one Plaintiff attorney to examine or defend depositions but does not impose the same limitation on the Government. ECF No. 125-1, at 2 ¶ 3(c). Or as another example, the Government wants to serve only one Plaintiffs' attorney. ECF No. 125-1, at 2 ¶ 3(a). But since parties can agree to electronic service, there's minimal burden to electronically serve all attorneys who have made an appearance. Each ECF filing provides parties with an up-to-date list of emails.

But beyond the unequal treatment of Plaintiffs, the two largest problems with the Government's proposed discovery order are: (1) the Government wants unlimited Rule 35 examinations of Plaintiffs; and (2) the Government wants Plaintiffs to sign unlimited HIPAA releases.

First, the Court should narrow the Government unlimited Rule 35 examinations request. *See* ECF No. 125-1, at 3 ¶ 3(d). The Government's order does not speak to recording examinations. Examinations should be recorded as to curb any disputes as to what was said or what was done at the examination. Also, the Government limits attendance to counsel of record. Some firms have professional medical staff, such as nurses, that would be better equipped to support clients in such invasive testing environments. The order should allow counsel of record to attend or designate someone to attend in their place. And the Government has no limit as to when such examinations must be set up.

Second, without citing a single case or mentioning the request in its brief, the Government's order requires Plaintiffs to create evidence by signing

unseen HIPAA releases. ECF No. 125-1, at 5 ¶ 12. The Government's order is contrary to law. *Fields v. W. Va. State Police*, 264 F.R.D. 260, 263 (S.D.W. Va. 2010). In *Fields*, the Defendant moved to compel Plaintiffs to sign HIPAA releases. *Id.* at 261. After reviewing relevant cases, the Court held that—under HIPPA and the Federal Rules—it has no authority to require a plaintiff to create evidence in this fashion. *Id.* at 262–63. Cases across the country agree with *Fields*. *E.g.*, *Graham v. Carroll*, No. 5:10-cv-65, 2011 WL 855331, at *2 (M.D. Fla. 2015) ("Defendants cannot compel Plaintiffs to execute a [HIPAA] release simply because Plaintiff filed a lawsuit placing his medical condition in issue."); *Chase v. Nova Se. Univ., Inc.*, No. 11-cv-61290, 2012 WL 1936082, at *5 (S.D. Fla. 2012) (same); *Whyte v. U.S. Postal Serv.*, No. 11-cv-62112, 2012 WL 13005864, at *1 (S.D. Fla. 2012) (same, in a case involving the FTCA); *Clark v. Vega Wholesale Inc.*, 181 F.R.D. 470, 471–473 (D. Nev. 1998) (same); Neal v. Boulder, 142 F.R.D. 325, 328 (D. Colo. 1992) (same).

Not only is it contrary to the law, but it's another example of Government's non-negotiable, one-sided position on discovery. First, the Government doesn't provide a copy of the HIPAA releases. Should Plaintiffs sign these releases, sight unseen? Plaintiffs do not know whether the Government's release will allow the Government to have *ex parte* communications with treating providers, a significant breach of HIPAA. Second, the Government's order does not limit the release to a time or date. In essence, the order allows the Government to go on a fishing expedition for all medical records from birth to death. Third, the Government's order does not limit the type of medical providers. The Government may use the order to seek medical records for health issues unrelated to this lawsuit. And fourth,

the Government's order imposes no requirement on the Government to produce all records procured by use of the HIPAA release.

But again, this is not the most efficient way to cover medical record discovery. Importantly, Plaintiffs have **already provided their medical records** to the Government. And the Government does not mention what additional records they need that Plaintiffs have not provided. Nor has the Government suggested that Plaintiffs have been uncooperative or slow in retrieving records.

### 2. *The Government cannot show good cause for its overbroad protective order.*

The Government asks this Court to enter an overly broad protective order without showing good cause for why such a generic, broad order should be entered in a case against the Federal Government involving a topic of grave public concern. Plaintiffs ask the Court to deny the Government's request. Alternatively, Plaintiffs ask the Court to enter a more narrowly tailored order, and one previously provided to (but rejected by) the Government. *See* Exhibit 3.

### 2.1. **The Good Cause Standard.**

Here, the burden is on the Government. "The movant bears the burden of showing that a protective order is necessary, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *EEOC v. BDO USA, L.L.P.*, 876 F.3d 690, 698 (5th Cir. 2017) (cleaned up). Rule 26(c)'s good cause requirement means "as a general proposition, pretrial discovery must take place in the public unless

compelling reasons exist for denying public access to the proceedings." *Public Citizen v. Liggett Group, Inc.*, 858 F.2d 775, 789 (1st Cir. 1988) (cleaned up).

Vitally, the fact that the Government is a party weighs against finding good cause for entry of a protective order. Courts have identified several factors in the good cause analysis, including (1) "whether confidentiality is being sought over information important to public health and safety;" (2) "whether a party benefitting from [confidentiality] is a public entity;" and (3) "whether the case involves issues important to the public." *United States v. AGS Enter., Inc.*, No. SA–14–CA–528–OLG, 2016 WL 9462335, at *2–3 (W.D. Tex. June 29, 2016). All three factors weigh against entering a generic protective order here.

Broad "allegations of harm, unsubstantiated by specific examples or articulated reason" do not support a good cause showing. *Glenmede Trust Co. v. Thompson*, 56 F.3d 476 (3d Cir. 1995) (cleaned up). For example, the Fifth Circuit found that a district court's entry of a protective order was unsupported by a "particular and specific demonstration of fact" where a party "did not support its motion for protective order with any affidavits or other evidence." *In re Terra Intern., Inc.*, 134 F.3d 302, 306 (5th Cir. 1998). Likewise, the Government provides no affidavits or evidence.

2.2.   **Like *Terra International*, the Government does not particularly and specifically demonstrate a need for their protective order.**

Courts should not enter broad protective orders in cases of grave public concern, such as this case. For example, the United States provides no articulable reasons why the investigative privilege should apply to closed investigations, civil investigations, and people who aren't under

investigation. The law does not provide such a privilege, so why should the Government create one out of whole cloth? *See* Exhibit 3, Plaintiffs' Proposed Protective Order, at 2 ¶ 1(b). Moreover, the United States provides no articulable reason why documents concerning Devin Kelley, the deceased shooter, should have confidentiality.

More importantly, the Government should not be treated as a private party for purposes of a protective order. The Freedom of Information Act broadly authorizes the public release of many of the documents the Government claims should be confidential. *See* 5 U.S.C. § 552. Even though the Court's form protective order is made for private companies, the Government still relies on it. But it simply does not apply to the Government. What "trade secrets, confidential or proprietary financial information, operational data, business plans, and competitive analyses, personnel files, [or] personal information" does the United States of America have to protect? *See* Gov't Protective Order, at 4 (ECF No. 125-2). What good cause has the Government shown that it needs protection for "sensitive information" that would subject the Government to "competitive or financial injury?" *Id.*

What's more, the Government did not enter a protective order in *Kristensen v. United States*, 1:17-cv-126-DAE (W.D. Tex. 2019). That case concerns many of the same issues the Government now complains requires a broad preemptive protective order. And *Kristiansen* is set for trial on September 17, 2019. *Id.* (ECF No. 40) (Feb. 12, 2019). Similarly, the Government did not enter a general protective order in *Sanders v. United States*, 2:16-cv-02356-RMG (D.S.C. 2019).

2.3.   **The Government's protective order is one-sided and a logistical mess.**

The Government's proposed order is one-sided. For example, it creates a Byzantine system for the disclosure of Confidential Information, including requiring Plaintiffs' counsel's paralegals sign declarations, yet creates a broad exception for the Government to disclose Confidential Information internally. ECF No. 125-2, at 15 ¶ 22. The plain text of the Government's order requires court reporters, videographers, and even parties' paralegals to sign the declaration attached to the Order. See ECF No. 125-2, at 3 ¶ 2(b).

Next, the Government has shown no good cause as to why it should be allowed to disclose Plaintiffs' medical records or educational records to any "Congressional entity." ECF No. 125-2, at 16 ¶ 23. This over broad language allows the Government to disclose this information without following any procedure that the Government imposes on Plaintiffs. The "Congressional entity" does not have to maintain confidentiality under the Government's order. Or, why does the Government get to maintain documents marked as Confidential—including Plaintiffs' medical records—indefinitely? ECF No. 125-2, at 13 ¶ 14(b). The order certainly does not give Plaintiffs' counsel the ability to maintain Government records indefinitely.

Under the Government's order, Confidential Information includes "other documents and records whose disclosure is restricted." ECF No. 125-2 at 5 ¶ 3(b)(1). This ambiguity may allow the Government to mark almost any document confidential, and the burden falls on the Plaintiffs to untangle that thicket.

In sum, the Government will abuse a confidentiality stamp by shifting the entire burden to Plaintiff if not expressly limited and hiding from public scrutiny its negligence.

### 3.    *The Government's Electronic Management Orders also fly in the face of fairness.*

Consistent with the running theme, the Governments provided the Court with a one-sided ESI order. The Government wants to enter an ESI order without identifying what types of ESI issues will actually need to be addressed. Plaintiffs have asked the Government multiple times to describe what information is electronically stored and how that information is stored. See Exhibit 7, Email (Aug. 22, 2019). The Government never answered and provided no description in their motion or order. But without that knowledge, Plaintiffs cannot know what parts of the Government's proposed ESI order are objectionable.[5] So, the Government asks this Court to blindly enter an ESI order.

Worse, the Government sneaks into this ESI Order limitations on otherwise discoverable information. For example, the Federal Rules allow a party to discover notes about the case taken by a party's designated expert. *Republic of Ecuador v. Hinchee*, 741 F.3d 1185, 1191–92 (11th Cir. 2013). The Government's ESI order bars such discovery. ECF No. 125-4, at 6 ¶ 19(a). Those notes could be crucial evidence where, for example, a defense medical expert examines a Plaintiff and takes notes about the tests performed. A

---

[5] "We also know there are known unknowns; that is to say we know there are some things we do not know. But there are also unknown unknowns—the ones we don't know we don't know." Interview with Donald H. Rumsfeld, Secretary of Defense (Feb. 12, 2002) (*available at* https://tinyurl.com/y42md2ec).

second example might be: the Government's Production Order requires production in black & white, even if the document is kept in the regular course of business in color. ECF No. 125-5, at 10 ¶ 9(c). The order invites further litigation if parties cannot agree where an image "requires color." And when an image does require color, the order requires production in a different format, for some unknown reason.

Yet a third example: the Government's ESI Appendix carves out a large loophole for documents produced from the FBI, knowing that the FBI maintains one of the databases at issue in this case. ECF No. 125-5, at 1 ¶ 2. And on that point, the Government's ESI order in no way addresses how the FBI databases (or other databases, for that matter) are stored and how they should be produced. The Government provides no explanation as to why the FBI gets this loophole. Nor did the Government comply with Rule 26(f) and discuss "any issues about disclosure, discovery, or preservation of electronically stored information, including the form or forms in which it should be produced." *See* Fed. R. Civ. P. 26(f); Exhibit 7. For all these reasons, the Court should adopt the Plaintiffs proposed ESI Order (Exhibit 4) which addresses this Court's Standing Order requirements for ESI while simultaneously eluding the discovery quagmire created by the Government's version.

**4.    *The Government's Claw-Back Order is more of the same.***

Federal Rule of Evidence 502 applies to attorney-client privilege and work product. The scope of the Government's claw-back order—even though it's pursuant to Rule 502—goes far beyond attorney-client and work-product

privileges.[6] Yet again, the Government's version can be used to gum up discovery. For example, claiming an "investigational" privilege, the United States may prevent the Plaintiffs from cross-examining a witness in deposition. See ECF No. 125-3 at 3 ¶ 4 (allowing privileges to be asserted for the first time in deposition). This will add months of delay, while the parties must litigate such use, and the additional costs of re-deposing witnesses, with no guarantee that such witnesses will even be available for a second deposition. The Government does not need such a broad open-ended order because Rule 502 is limited to one kind of privilege, and the Government is already seeking a general protective order.

The order also allows the Government to assert privilege in deposition and prevent questioning after parties have scheduled the deposition and incurred costs. And scheduling a deposition in this case is no small matter, given the dozens of attorneys and firms involved. On that point, assuming parties wait until deposition to "discover" a privileged document, why should that party have another 60 days to send a claw-back notice? ECF No. 125-3, at 3 ¶ 4. Why shouldn't the party be required to send a claw-back notice within a week of the deposition?

Additionally, the Government's order shifts the burden to the receiving party to identify documents that may be privileged. ECF No. 125-3, at 3 ¶ 1. Here, the Government leaves vague when and how a party "discovers" a privileged document and only invites further litigation on the matter. While the paragraph states it does not shift the burden to the receiving party, it imposes obligations on the receiving party, potentially to discovery privileged

---

[6]  Plaintiffs attach as Exhibit 8 a redlined version of the Government's Claw-Back order highlighting some of the problems.

documents. The Government may call it any name, but that's burden shifting. Contra the Government's iteration, Plaintiffs request the Court adopt the Plaintiffs' edited version of the claw back agreement (Exhibit 8) which follows Rule 502.

## CONCLUSION

The Court should decline the Government's invitation to arbitrarily limit relevant discovery; deny the Government's: Discovery Plan; deny the Confidentiality and Protective Order; deny the Government's Fed. R. Evid. 502 Order; and deny the Government's Discovery Order. Instead, Plaintiffs request the Court, after a Rule 16 in-person hearing, adopt Plaintiffs' proposed Discovery Order (Exhibit 2) and Electronic Production Order (Exhibit 4).

# APPENDIX OF EXHIBITS

Exhibit 1.  Defendant's Responses to Plaintiff's Request for
Production

Exhibit 2.  Discovery Order

Exhibit 3.  Protective Order

Exhibit 4.  Electronic Production Order

Exhibit 5.  Government's Initial Disclosure Excerpt

Exhibit 6.  Government's Responses to Plaintiffs' Interrogatories

Exhibit 7.  Emails regarding ESI

Exhibit 8.  Redlined Claw-Back Order

Respectfully submitted,


/s/ Jason P. Steed

**Jason P. Steed**
JSteed@kilpatricktownsend.com
Texas Bar No. 24070671
**Kilpatrick Townsend & Stockton LLP**
2001 Ross Avenue, Suite 4400
Dallas, TX75201
Office 214-922-7112
Fax 214-853-5731
Counsel for Vidal, McNulty, and Wall


/s/ Jamal K. Alsaffar

**Jamal K. Alsaffar**
JAlssaffar@nationaltriallaw.com
Texas Bar No. 24027193
**Tom Jacob**
TJacob@nationaltriallaw.com
Texas Bar No. 24069981
**Whitehurst, Harkness, Brees, Cheng, Alsaffar & Higginbotham & Jacob PLLC**
7500 Rialto Blvd, Bldg. Two, Ste 250
Austin, TX 78735
Office 512-476-4346
Fax 512-476-4400
Counsel for Vidal, McNulty,
 and Wall


/s/ April A. Strahan

**April A. Strahan**
april@ammonslaw.com
Texas Bar No. 24056387
**Robert E. Ammons**
rob@ammonslaw.com
Texas Bar No. 01159820
**The Ammons Law Firm**
3700 Montrose Blvd.
Houston, TX 77006
Office 866-523-1603
Fax 713-523-4159
Counsel for Holcombe and Ramsey


/s/ Daniel J.T. Sciano

**Daniel J.T. Sciano**
DSciano@tsslawyers.com
Texas Bar No. 17881200
**Tinsman & Sciano**
10107 McAllister Freeway
San Antonio, TX 78216
Office 210-225-3121
Fax 210-225-6235
Counsel for Amador

/s/ Daniel Barks

**Daniel D. Barks,** *pro hac vice*
ddb@speiserkrause.com
**Speiser Krause, P.C.**
5555 Glenridge Connector, Suite 550
Atlanta, GA 30342
Office 571-814-3344
Fax 866-936-6382
Counsel for Holcombe

/s/ Dennis Peery

**Dennis Charles Peery**
d.peery@tylerpeery.com
Texas Bar No. 15728750
**R. Craig Bettis**
cbettis@tylerpeery.com
Texas Bar No. 24040518
**Tyler & Peery**
5822 West IH 10
San Antonio, TX 78201
Office 210-774-6445
Counsel for Uhl

/s/ George LeGrand

**George LeGrand**
tegrande@aol.com
Texas Bar No. 12171450
**Stanley Bernstein**
Texas Bar No. 02225400
**LeGrand & Bernstein**
2511 N. Saint Mary's St.
San Antonio, Texas 78212
Office 210-733-9439
Fax 510-735-3542
Counsel for Wall

/s/ Mark Collmer

**Mark W. Collmer**
drcollmer@aol.com
Texas Bar No. 04626420
**Collmer Law Firm**
3700 Montrose
Houston, TX 77006
Office 713-337-4040
Counsel for Holcombe

/s/ Tim Maloney

**Tim Maloney**
Texas Bar No. 12887380
timmaloney@yahoo.com
**Paul E. Campolo**
pcampolo@maloneyandcampolo.com
Texas Bar No. 03730150
**Maloney & Campolo, L.L.P.**
926 S. Alamo
San Antonio, TX 78205
Office (210) 465-1523
Counsel for Ramsey

/s/ Joe Schreiber

**Joseph M. Schreiber**
joe@lawdoneright.net
Texas Bar No. 240374497
**Erik A. Knockaert**
erik@lawdoneright.net
Texas Bar No. 24036921
**Schreiber | Knockaert, PLLC**
701 N. Post Oak Rd., Suite 325
Houston, TX 77024
Phone (281) 949-8904
Fax (281) 949-8914
Counsel for Brown

/s/ Justin Demerath
**Justin Demerath**
jdemerath@808west.com
Texas Bar No. 24034415
**O'Hanlon, McCollom & Demerath**
808 West Ave.
Austin, TX 78701
Office 512-494-9949
    Counsel for Corrigan, Braden,
    Warden, Stevens, Pachal, McCain, &
    Poston

/s/ Brett Reynolds
**Brett T. Reynolds**
btreynolds@btrlaw.com
Texas Bar No. 16795500
**Brett Reynolds & Associates, P.C.**
1250 N.E. Loop 420, Suite 420
San Antonio, TX 78219
(210)805-9799
    Counsel for Workman, Colblath, and
    Harris

/s/ Marco Crawford
**Marco Crawford**
**Law Office of Thomas J. Henry**
4715 Fredricksburg
San Antonio, TX 78229
(210) 585-2151
(361) 985-0601 (fax)
mcrawford@tjhlaw.com
    Counsel for McMahan

/s/ Jason Webster
**Jason Webster**
jwebster@thewebsterlawfirm.com
Texas Bar No. 24033318
**The Webster Law Firm**
6200 Savoy
Suite 640
Houston, TX 77036
    Counsel for Lookingbill

/s/ Marion M. Reilly
**Marion M. Reilly**
**Hilliard Munoz Gonzales, L.L.P.**
719 S. Shoreline - Ste 500
Corpus Christi, TX 78401
(361) 882-1612
361/882-3015 (fax)
marion@hmglawfirm.com
    Counsel for McMahan

/s/ Kelley W. Kelley
**Kelley W. Kelley**
**Anderson & Associates Law Firm**
2600 SW Military Drive, Suite 118
San Antonio, TX 78224
(210) 928-9999
(210) 928-9118 (fax)
kk.aalaw@yahoo.com
    Counsel for Ward

# CERTIFICATE OF SERVICE

By our signatures above, we certify that a copy of Plaintiffs' Response to the Government's Motion For Rule 16 Conference has been sent to the following on September 5, 2019 via the Court's CM/ECF notice system.

JOSEPH H. HUNT
Assistant Attorney General
United States Dept. of Justice
Civil Division

JOHN F. BASH
United States Attorney
Western District of Texas

KIRSTEN WILKERSON
Assistant Director, Torts Branch
United States Dept. of Justice
Civil Division

PAUL DAVID STERN
Trial Attorney, Torts Branch
United States Dept. of Justice
Civil Division
CLAYTON R. DIEDRICHS
Assistant United States Attorney

JIM F. GILLIGAN
Assistant United States Attorney

JOHN PANISZCZYN
Civil Chief
United States Attorney's Office
Western District of Texas

JAMES G. TOUHEY, JR.
Director, Torts Branch
United States Dept. of Justice
Civil Division

STEPHEN E. HANDLER
Senior Trial Counsel, Torts Branch
United States Dept. of Justice
Civil Division

STEPHEN TERRELL
Trial Attorney, Torts Branch
United States Dept. of Justice
Civil Division
JAMES E. DINGIVAN
Assistant United States Attorney