IN THE UNITED STATES DISTRICT FOR
THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JOE HOLCOMBE, et. al, | § | NO. 5:18-CV-00555-XR |
| | § | |
| Plaintiffs | § | Consolidated with: |
| | § | 5:18-cv-00712-XR (*Vidal*) |
| | § | 5:18-cv-00881-XR (*Uhl*) |
| vs. | § | 5:18-cv-00944-XR (*Ramsey*) |
| | § | 5:18-cv-00949-XR (*McNulty*) |
| UNITED STATES OF | § | 5:18-cv-00951-XR (*Wall*) |
| AMERICA, | § | 5:18-cv-01151-XR (*Amador*) |
| | § | 5:19-cv-00184-XR (*Brown*) |
| Defendant | § | 5:19-cv-00289-XR (*Ward*) |
| | § | 5:19-cv-00506-XR (*Workman*) |
| | § | 5:19-cv-00678-XR (*Colbath*) |
| | § | 5:19-cv-00691-XR (*Braden*) |
| | § | 5:19-cv-00706-XR (*Lookingbill*) |
| | § | 5:19-cv-00714-XR (*Solis*) |
| | § | 5:19-cv-00715-XR (*McKenzie*) |
| | § | 5:19-cv-00805-XR (*Curnow*) |
| | § | 5:19-cv-00806-XR (*Macias*) |

# PLAINTIFFS' RESPONSE TO THE GOVERNMENT'S MOTION FOR PROTECTIVE ORDER

Plaintiffs sent seven (7) requests for admissions, three (3) interrogatories, and ninety-five (95) requests for production. The Government's motion seeks to quash every single request. To that end, the motion makes a hodge-podge of general objections, with the hope that

something sticks.[1] The Court should deny the Government's request for such a broad, blank check to respond to discovery as it chooses because:

- the Government created the need for this discovery by failing to stipulate to basic indisputable facts;

- the burden to respond is minimal because the Government's Inspector General should have already compiled the evidence requested by Plaintiffs; and

- the evidence of Government's systemic negligence and the evidence of Kelley's *res gestae* conduct relates directly to risk of harm, foreseeability, and a failure to train and supervise.

## 1. *The Government's refusal to admit undisputed facts puts those facts in dispute, forcing discovery.*

Plaintiffs have attempted multiple times and in multiple ways to get the Government to narrow the issues, by stipulating to indisputable facts. For example, the Government states that it is "without sufficient knowledge to admit or deny" that "the Air Force Security Forces Center was responsible for training, equipping, and organizing all Security Forces for the Air Force." U.S. Answer 1st Am. Complaint, at 67–68 ¶ 4.16 (ECF No. 113) Note, paragraph 4.16 is taken almost verbatim from the Government Inspector General's Report. *See* DOGIG 2019-030, at 98 n. 103, 99. Similarly, Plaintiffs have compiled numerous examples of the Government's failure to admit basic facts in their Response to Government's Motion for Rule 16 Conference. ECF

---

[1] The Government's proposed order also creates logistic problems because of its vagueness. For example, the Government's proposed order does not specify which requests to strike. *See* U.S. Mot. Protective Order, at 2 (ECF No. 124-3) ("Any pending discovery requests that do not comport with the Court's order on the scope of discovery shall be stricken"). Under the Government's order, parties will inevitably require further Court intervention when they cannot agree which discovery requests "comport with" the proposed order.

No. 129, at 4–19. But because Government refuses to stipulate to even basic facts, parties must take discovery on those matters.

And when Plaintiffs try to take discovery on the facts that the Government refuses to stipulate to, the Government claims such discovery is "oppressive." Is the United States of America really arguing that victims of a mass shooting have oppressed the United States Federal Government by sending them discovery concerning the shooting? In fact, Plaintiffs' discovery requests are modest because the Inspector General has done most, if not all, of the work the Government would need to do to respond to Plaintiffs' discovery.[2]

### 1.1. Plaintiffs' request to verify the DODIG report on the Sutherland Springs shooting exemplifies the Government's refusal to help narrow discovery.

The Government's opening example actually makes Plaintiffs' point. There, the Government objects to Plaintiffs' first interrogatory, which asks for verification of the statements within its Inspector General Report on the Sutherland Springs shooting. This objection is a microcosm of every objection in the Government's motion because: (a) the request concerns facts, circumstances, and the causes of the very shooting at issue in this case; (b) the Plaintiffs are asking the Government to produce work that the

---

[2] But even if the work hadn't already been done, the Advisory Committee notes the burden is properly on the Government: "One party—often an individual plaintiff—may have very little discoverable information. The other party may have vast amounts of information, including information that can be readily retrieved and information that is more difficult to retrieve. In practice these circumstances often mean that the burden of responding to discovery lies heavier on the party who has more information, and properly so." Fed. R. Civ. P. 26 advisory committee's note (2015 amendments).

Government agency tasked with the investigation *has already* completed; and (c) the Government's objections are contrary to law.

And on that third point, the Government has sent identical interrogatories in other cases. For example, in *Convertino v. U.S. Dep't of Justice*, the Government sent two interrogatories regarding the "veracity of the allegations contained" in certain documents. 565 F.Supp.2d 10, 13 (D.D.C. 2008). Plaintiff objected to its relevance, but on motion from the Government, the court forced the plaintiff to answer the interrogatories. *Id.* As another example, in *Melius*, the court allowed an interrogatory that asked a party "to identify the records … which were inaccurate and to describe 'the specific information contained therein that you believe to be irrelevant, inaccurate, false, malicious, and/or defamatory.'" *Melius v. Nat. Indian Gaming Com'n*, No. A-98-cv-2210, 2000 WL 1174994 (D.D.C. July 21, 2000); *see also Guzman v. Hecht*, No. 18-cv-3947, 2019 WL 3561869 at *2, 4 (S.D.N.Y. Aug. 6, 2019) (requiring a party to identify inaccuracies in documents at "the heart of the case").[3] Like *Convertino*, *Melius*, and *Guzman*,

---

[3] Should the Government respond that the length of Inspector General report makes it a burden, it should read *Guzman*—which involved the verification of at least 396 pages of documents. That case involved thirty-three plaintiffs. *Guzman*, 2019 WL 3561869, at *1. Each plaintiff filed a form I-589, and the defendants requested an interrogatory confirming or denying the validity of the statements in the forms. *See id.* at *4. The court held the plaintiffs must respond to the request. *See id.* at *2 (noting there are thirty-three plaintiffs); *see* U.S. Citizen and Immigration Services, I-589, UCIS, *available at* https://www.uscis.gov/i-589 (last visited Sept. 3, 2019) (I-589 is at minimum twelve pages).

Plaintiffs only ask the Government to verify statements in a document it created.

### 1.2. The Government warps the standard for discoverable evidence.

In its brief, the Government alleges every discovery request, even those sanctioned by the Local Rules,[4] are "improper, unduly burdensome, oppressive, and disproportional…" The Government's actual objection to Plaintiffs' requests seems to relate to the relevance of Plaintiffs' requests.[5] *See e.g.*, U.S. Mot. Protective Order, ECF No. 124, at 4–5. In the Government's view, if Plaintiffs' requests don't strictly conform to a specific element of a specific cause of action (which the Government then narrowly defines), then the Government need not lift a finger to respond.

The law does not see it that way. "[S]o long as a chain of inferences leads the trier of fact to conclude that the proffered submission affects the mix of material information, the evidence cannot be excluded at the threshold relevance inquiry." *United States v. Quattrone*, 441 F.3d 153, 188 (2d Cir. 2006). Courts have noted that relevancy-based arguments are a "tough sell" because "the definition of relevance is quite expansive… To be relevant, the

---

[4] Plaintiffs took, verbatim, two of the three interrogatories from the Local Rules, which state that the "[C]ourt will not consider objections to these interrogatories…" *Compare* Local Rule CV-33(b) *with* ECF No. 124-1, at 6 (Interrogatories 2 & 3).

[5] The Government also argues that the number of requests and the fact that the requests were sent from certain plaintiffs is a reason to quash discovery. Plaintiffs had to send the requests in this manner only because the Government took the unreasonable position that a case of this magnitude allowed only 25 ROGs and 30 RFAs *per side*, the same limit as a two-vehicle car wreck. *See* Pl. Resp. U.S. Mot. Rule 16 Conf. at 5 n.3 & accompanying text (ECF No. 129) (explaining the rules limit requests *per party*).

evidence need not definitively resolve a key issue in the case." *Bielunas v. F/V Misty Dawn, Inc.*, 621 F.3d 72, 76 (1st Cir. 2010).

Importantly, the evidence need not directly prove an alleged element. *See United States v. Rodriguez-Soler*, 773 F.3d 289, 293–294 (1st Cir. 2014) (holding an unrelated, non-criminal offense passes the relevance bar). And the bar for relevant evidence under Rule 26 must be even lower because under the rule, the evidence "need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).

In sum, "[r]elevancy is broadly construed, and a request for discovery should be considered relevant if there is 'any possibility' that the information sought may be relevant to the claim or defense of any party." *Sheldon v. Vermonty*, 204 F.R.D. 679, 689 (D. Kan. 2001); *United Servs. Auto Ass'n v. Mitek Sys., Inc.*, 289 F.R.D. 244, 246 (W.D. Tex. 2013). The Advisory Committee makes clear that "[a] variety of types of information not directly pertinent to the incident in the suit could be relevant to the claims or defenses raised in a given action." Fed. R. Civ. P. 26 advisory committee's note (2000 amendment). The note goes on to give "other incidents of the same type," as an example. *Id.*

2.  *Systemic Negligence is discoverable.*

Another theme of the Government's objections seems to be Plaintiffs' discovery request seeking information on the Government's "systemic negligence" in collecting, maintaining, and submitting fingerprint evidence and final disposition reports. Yet, this information is discoverable for multiple reasons: (1) systemic negligence proves the increased risk of harm to Plaintiffs; (2) systemic negligence directly concerns a failure to train and

supervise causes of action; (3) systemic negligence may demonstrate defendant's ability to correct known defects; and (4) systemic negligence may rebut theories advanced by Government witnesses or experts.

### 2.1.  Systemic negligence proves an increased risk of harm.

Systemic negligence directly addresses the magnitude of risk involved and the increased risk of harm. *See Torrington Co. v. Stutzman*, 46 S.W.3d 829, 838 (Tex. 2000) (Defendant's "performance increased the plaintiffs' risk of harm").

And on this point, the cases are clear: "Evidence of similar accidents might be relevant to the defendant's notice, magnitude of the danger involved, the defendant's ability to correct a known defect, the lack of safety for intended uses, strength of a product, the standard of care, and causation." *Ramos v. Liberty Mut. Ins. Co.*, 615 F.2d 334, 338–39 (5th Cir. 1980) (collecting numerous cases); *see also McKnight v. Johnson Controls, Inc.*, 36 F.3d 1396, 1410 (8th Cir. 1994) (same); *Adams v. Toyota Motor Corp.*, 867 F.3d 903, 911 (8th Cir. 2017) (same). The advisory committee's notes to the 2015 amendments make clear that "other incidents of the same type" would be "relevant to the parties claims or defenses." Fed. R. Civ. P. 26 advisory committee's note (2015 amendments).

The Government also complains about discovery into the Government's negligence that occurred after Kelley's negligence.[6] In fact, courts have allowed discovery into post-incident negligence. *E.g.*, *Burke v. Deere & Co.*, 6 F.3d 497, 505–06 (8th Cir 1993) (admitting evidence of post-sale product

---

[6] In this case, the Government complains of Kelley's post-discharge conduct, but that conduct occurred before the shooting at issue and the Government knew of the conduct.

accidents involving the same product at issue on the issue of causation and foreseeability); *see also Jackson v. Firestone Tire & Rubber Co.*, 788 F.2d 1070, 1085 (5th Cir. 1986) (A court should not exclude "other documents obviously referring to or reporting on [a long and continuous history of negligence] simply because they happen to be dated a few months after the manufacture" at issue). Moreover, a defendant's post-incident conduct may be relevant towards its credibility. *Learmonth v. Sears, Roebuck & Co.*, 631 F.3d 724, 733 (5th Cir. 2011) (holding a driver's conduct after an accident is relevant).

What's more, differences between incidents go to the weight of the evidence, not the admissibility. *See Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416, 426 (5th Cir. 2006) ("As long as there are similarities…, the differences are for the jury to decide."); *Jones & Laughlin Steel Corp. v Matherne*, 348 F.2d 394, 400–01 (5th Cir. 1965) (same). In fact, "in order to show defendants' awareness of a dangerous condition, the rule requiring substantial similarity of those accidents to the accident at issue should be relaxed." *Jackson*, 788 F.2d at 1083. That's especially true here, where the Government's negligence after Kelley's discharge was not just similar but of the same type (continued failure to correct missed submissions of Kelley specifically and continued failure to collect, maintain, and submit fingerprints of convicted servicemen generally).

### 2.2. **Systemic negligence relates to the Government's failure to train & supervise.**

Here, the Government denies there was a failure to train or supervise problem at the Air Force. *E.g.*, U.S. Answer 1st Am. Complaint, at 76 ¶ 5.16 (ECF No. 113). The Government also denies that it failed to train its

employees to "collect, maintain, and submit fingerprint cards and final disposition reports to the FBI." *Id.* at 76 ¶¶ 5.17–5.18. The Government even denies that certain policies on reporting are applicable to this case. *E.g.*, *id.* at 71 ¶ 5.7.

Without discovery on its training and supervision, parties cannot resolve this factual dispute. One way to prove a failure to train or supervise is to show repeated and pervasive failures in the collection, maintenance, and transfer of evidence. If the Government had trained its employees, then the employees would have followed policy and such evidence collection and reporting would not have occurred. If the Government supervised its employees, the supervisors would have noticed deficiencies in the file and required corrective action. The systemic failures evidence a lack of training and supervision.

### 2.3. Systemic negligence may demonstrate the Government's failure to take corrective action.

Systemic negligence is the reason why the Inspector General recommended (and the Air Force agreed to) subsequent corrective action. And systemic negligence relates to the context and background on which the Government's negligence rests. Regarding context, the Government, in its answer to the Complaints, admit that context is relevant. *E.g.*, U.S. Answer 1st Am. Complaint at 22 ¶ 2.22 (ECF No. 113) (claiming an allegation is "taken out of context."), at 60 ¶ 4.6 (same).[7]

---

[7] In fact, the Government at times refused to admit or deny allegations in the complaints, stating that the allegation is "taken out of context." *Id.* at 23 ¶ 2.23.

Plaintiffs alleged that the "Air Force agreed with the recommendation" to take corrective action after the Inspector General investigation of Government failures to collect and report. The Government does not admit this allegation. To resolve this dispute, the Plaintiffs will need discovery into the Government's systemic negligence. For example, evidence of previous similar incidents may be relevant to show the Government's notice of a dangerous condition. *See Kelsay v. Consolidated Rail Corp.*, 749 F.2d 437, 443 (7th Cir. 1984).

2.4. **Systemic negligence may prove its worth as rebuttal evidence.**

The Government neglects to mention that no expert discovery has occurred. Plaintiffs cannot divine what Government's experts will argue. Systemic negligence may be necessary to rebut theories advanced by Government experts. *See Brazos River Auth v. GE Ionics, Inc.*, 469 F.3d 416, 427 (5th Cir. 2006) (similar fires admissible to rebut defendant's arguments); *Jones v. Ford Motor Co.*, 204 Fed. App'x 280, 283 (4th Cir. 2006) (concluding a report of complaints related to a product were relevant to rebut an opposing experts theory of the case).

For example, the United States denies in the Answer that Defense Incident-Based Reporting System populates the Instant Criminal Background Check System. *E.g.*, U.S. Answer 1st Am. Complaint, at 16–17 ¶ 2.15 (ECF No. 113). Plaintiffs should have discovery concerning the DIBRS to determine the truth of the Government's denial. As another example, if Government experts argue that the failure to report Kelley's criminal incident data was an isolated incident, evidence of systemic negligence rebuts that claim.

### 3. *Kelley's prior and subsequent conduct is discoverable.*

Like systemic negligence, Kelley's prior and subsequent conduct relates directly to the issues in the case. Never mind that the Government wishes to exclude the *res gestae* of the case, Kelley's conduct is relevant to probable cause, risk of injury, foreseeability, knowledge, and perhaps even impeachment or rebuttal evidence.

First, it's relevant to probable cause. Department of Defense Instruction 5505.11 triggers submission of reportable offenses if "probable cause exists to believe that the person committed an offense…." DoDIG-2018-030, at 50. The instruction defines probable cause as "facts and circumstances that are more than a mere suspicion but less than proof beyond a reasonable doubt that would lead a reasonable and prudent person to believe that a person committed or is about to commit a crime." *Id.* at 51. And in *United States v. Harris*, the Supreme Court held that a person's prior bad acts and general reputation may form the basis for a probable cause determination. 403 U.S. 573, 579–80 (1971).

In this case, the Government disputes probable cause, asserting that Kelley's wrongdoings did not trigger an evidence collection and reporting requirement. *See e.g.*, U.S. Answer 1st Am. Complaint, at 58 ¶ 4.4 (denying that the "Air Force had probable cause to believe that Kelley committed assault."), at 70 ¶ 5.4 (claiming that the Government lacks "sufficient knowledge to admit or deny the allegations concerning whether probable cause existed…and, therefore, denies them.") (ECF No. 113). Plaintiffs are entitled to discovery into Kelley's conduct to cross examine Government employees on whether they had probable cause to know that Kelley committed a reportable offense. And cross examination into the existence of

probable cause may reveal additional collection, reporting, and supervision obligations beyond the ones reported in the Inspector General's report.

Second, Kelley's conduct relates to the risk of injury to Plaintiffs and the foreseeability of injury to the Government. *See supra*, at 8 ¶ 2.2 (risk of harm is an element of Plaintiffs' cause of action). In fact, the Government raised the lack of risk of harm and foreseeability as defenses to this lawsuit. For example, the Government plead in their answer that the criminal acts of a third party, Devin Kelley, were not foreseeable. *E.g.,* U.S. Answer 1st Am. Complaint, at 2 (ECF No. 113) (Fourth Defense). And the Government pleads, as a defense, the alleged third-party negligence of other "person[s] or entit[ies] with a legal duty to … to warn others concerning Devin Patrick Kelley's conduct" *E.g., id.* at 5 (Fifteenth Defense). Finally, the Government denies that it knew of the "specific increase of risk posed by Devin Kelley." *Id.* at 79–80 ¶ 5.23. Discovery into all of Kelley's conduct allows Plaintiff to rebut these theories pleaded by the Government.

Third, Kelley's conduct relates to the notice and knowledge the United States had. For example, in *Ramirez v. County of Los Angeles*, the court permitted discovery into "all discipline and personnel complaints" against an officer, where the plaintiffs alleged extensive and systemic failures on the part of his employer, such evidence would a pattern or practice, and such evidence would bear upon the defendant's notice. 231 F.R.D. 407, 412 (C.D. Ca. 2005). Kelley's pre- and post-discharge conduct is knowledge the Government had of Kelley's dangerousness. This knowledge should have put the Government on notice to re-check their investigative file and take corrective action.

Fourth, Kelley's conduct may be important to rebut theories advanced by Government experts or for impeachment purposes. Like systemic negligence, Plaintiffs will not know what Government experts will opine until the Government produces their reports. "[I]nformation that could be used to impeach a likely witness, although not otherwise relevant to the claims or defenses, might be properly discoverable." Fed. R. Civ. P. 26 advisory committee's note (2000 amendment). And "[a] party must disclose impeachment evidence in response to a specific discovery request." *Newsome v. Penske Truck Leasing Corp.*, 437 F. Supp. 2d 431, 436 (D. Md. 2006).

## CONCLUSION

The Court should deny Government's Motion for Protective Order.


Respectfully submitted,

| | |
|---|---|
| /s/ Jason P. Steed<br>**Jason P. Steed**<br>JSteed@kilpatricktownsend.com<br>Texas Bar No. 24070671<br>**Kilpatrick Townsend & Stockton LLP**<br>2001 Ross Avenue, Suite 4400<br>Dallas, TX 75201<br>Office 214-922-7112<br>Fax 214-853-5731<br>Counsel for Vidal, McNulty, and Wall | /s/ Jamal K. Alsaffar<br>**Jamal K. Alsaffar**<br>JAlssaffar@nationaltriallaw.com<br>Texas Bar No. 24027193<br>**Tom Jacob**<br>TJacob@nationaltriallaw.com<br>Texas Bar No. 24069981<br>**Whitehurst, Harkness, Brees, Cheng, Alsaffar & Higginbotham & Jacob PLLC**<br>7500 Rialto Blvd, Bldg. Two, Ste 250<br>Austin, TX 78735<br>Office 512-476-4346<br>Fax 512-476-4400<br>Counsel for Vidal, McNulty, and Wall |
| /s/ April A. Strahan<br>**April A. Strahan**<br>april@ammonslaw.com<br>Texas Bar No. 24056387<br>**Robert E. Ammons**<br>rob@ammonslaw.com<br>Texas Bar No. 01159820<br>**The Ammons Law Firm**<br>3700 Montrose Blvd.<br>Houston, TX 77006<br>Office 866-523-1603<br>Fax 713-523-4159<br>Counsel for Holcombe and Ramsey | /s/ Daniel J.T. Sciano<br>**Daniel J.T. Sciano**<br>DSciano@tsslawyers.com<br>Texas Bar No. 17881200<br>**Tinsman & Sciano**<br>10107 McAllister Freeway<br>San Antonio, TX 78216<br>Office 210-225-3121<br>Fax 210-225-6235<br>Counsel for Amador |
| /s/ Daniel Barks<br>**Daniel D. Barks,** *pro hac vice*<br>ddb@speiserkrause.com<br>**Speiser Krause, P.C.**<br>5555 Glenridge Connector, Suite 550<br>Atlanta, GA 30342<br>Office 571-814-3344<br>Fax 866-936-6382<br>Counsel for Holcombe | /s/ Mark Collmer<br>**Mark W. Collmer**<br>drcollmer@aol.com<br>Texas Bar No. 04626420<br>**Collmer Law Firm**<br>3700 Montrose<br>Houston, TX 77006<br>Office 713-337-4040<br>Counsel for Holcombe |

/s/ Dennis Peery
**Dennis Charles Peery**
d.peery@tylerpeery.com
Texas Bar No. 15728750
**R. Craig Bettis**
cbettis@tylerpeery.com
Texas Bar No. 24040518
**Tyler & Peery**
5822 West IH 10
San Antonio, TX 78201
Office 210-774-6445
Counsel for Uhl

/s/ George LeGrand
**George LeGrand**
tegrande@aol.com
Texas Bar No. 12171450
**Stanley Bernstein**
Texas Bar No. 02225400
**LeGrand & Bernstein**
2511 N. Saint Mary's St.
San Antonio, Texas 78212
Office 210-733-9439
Fax 510-735-3542
Counsel for Wall

/s/ Justin Demerath
**Justin Demerath**
jdemerath@808west.com
Texas Bar No. 24034415
**O'Hanlon, McCollom & Demerath**
808 West Ave.
Austin, TX 78701
Office 512-494-9949
    Counsel for Corrigan, Braden,
    Warden, Stevens, Pachal, McCain, &
    Poston

/s/ Tim Maloney
**Tim Maloney**
Texas Bar No. 12887380
timmaloney@yahoo.com
**Paul E. Campolo**
pcampolo@maloneyandcampolo.com
Texas Bar No. 03730150
**Maloney & Campolo, L.L.P.**
926 S. Alamo
San Antonio, TX 78205
Office (210) 465-1523
Counsel for Ramsey

/s/ Joe Schreiber
**Joseph M. Schreiber**
joe@lawdoneright.net
Texas Bar No. 240374497
**Erik A. Knockaert**
erik@lawdoneright.net
Texas Bar No. 24036921
**Schreiber | Knockaert, PLLC**
701 N. Post Oak Rd., Suite 325
Houston, TX 77024
Phone (281) 949-8904
Fax (281) 949-8914
Counsel for Brown

/s/ Jason Webster
**Jason Webster**
jwebster@thewebsterlawfirm.com
Texas Bar No. 24033318
**The Webster Law Firm**
6200 Savoy
Suite 640
Houston, TX 77036
    Counsel for Lookingbill

/s/ Brett Reynolds
**Brett T. Reynolds**
btreynolds@btrlaw.com
Texas Bar No. 16795500
**Brett Reynolds & Associates, P.C.**
1250 N.E. Loop 420, Suite 420
San Antonio, TX 78219
(210)805-9799
   Counsel for Workman, Colblath, and Harris

/s/ Marion M. Reilly
**Marion M. Reilly**
**Hilliard Munoz Gonzales, L.L.P.**
719 S. Shoreline - Ste 500
Corpus Christi, TX 78401
(361) 882-1612
361/882-3015 (fax)
marion@hmglawfirm.com
   Counsel for McMahan

/s/ Marco Crawford
**Marco Crawford**
**Law Office of Thomas J. Henry**
4715 Fredricksburg
San Antonio, TX 78229
(210) 585-2151
(361) 985-0601 (fax)
mcrawford@tjhlaw.com
   Counsel for McMahan

/s/ Kelley W. Kelley
**Kelley W. Kelley**
**Anderson & Associates Law Firm**
2600 SW Military Drive, Suite 118
San Antonio, TX 78224
(210) 928-9999
(210) 928-9118 (fax)
kk.aalaw@yahoo.com
   Counsel for Ward

## CERTIFICATE OF SERVICE

By our signatures above, we certify that a copy of Plaintiffs' Response to the Government's Motion for Protective Order has been sent to the following on September 5, 2019 via the Court's CM/ECF notice system.

| | |
|---|---|
| JOSEPH H. HUNT<br>Assistant Attorney General<br>United States Dept. of Justice<br>Civil Division | JOHN PANISZCZYN<br>Civil Chief<br>United States Attorney's Office<br>Western District of Texas |
| JOHN F. BASH<br>United States Attorney<br>Western District of Texas | JAMES G. TOUHEY, JR.<br>Director, Torts Branch<br>United States Dept. of Justice<br>Civil Division |
| KIRSTEN WILKERSON<br>Assistant Director, Torts Branch<br>United States Dept. of Justice<br>Civil Division | STEPHEN E. HANDLER<br>Senior Trial Counsel, Torts Branch<br>United States Dept. of Justice<br>Civil Division |
| PAUL DAVID STERN<br>Trial Attorney, Torts Branch<br>United States Dept. of Justice<br>Civil Division<br>CLAYTON R. DIEDRICHS<br>Assistant United States Attorney | STEPHEN TERRELL<br>Trial Attorney, Torts Branch<br>United States Dept. of Justice<br>Civil Division<br>JAMES E. DINGIVAN<br>Assistant United States Attorney |
| JIM F. GILLIGAN<br>Assistant United States Attorney | |