**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| JOE HOLCOMBE ET AL., | § | |
| | § | |
| *Plaintiffs,* | § | Civil Action No.  SA-18-CV-555-XR |
| | § | |
| | § | *Consolidated with*: |
| v. | § | Nos. 5:18-CV-712-XR; |
| | § | 5:18-CV-881-XR; 5:18-CV-944-XR; |
| UNITED STATES OF AMERICA, | § | 5:18-CV-949-XR; 5:18-CV-951-XR; |
| | § | 5:18-CV-1151-XR; 5:19-CV-184-XR; |
| *Defendant.* | § | 5:19-CV-289-XR; 5:19-CV-506-XR; |
| | § | 5:19-CV-678-XR; 5:19-CV-691-XR; |
| | § | 5:19-CV-705-XR; 5:19-CV-706-XR; |
| | § | 5:19-CV-715-XR; 5:19-CV-805-XR; |
| | § | 5:19-CV-806-XR |
| | § | |

**ORDER**

On this date, the Court considered the Government's Motion for Certification of this Court's Order Dated May 23, 2019 Pursuant to 28 U.S.C. § 1292(b) (docket no. 107) and the Plaintiffs' Joint Opposition (docket no. 121). After careful consideration, the Court DENIES the Government's motion.

I.      **Background**

This case arises from the 2017 mass shooting in Sutherland Springs, Texas. Family members and representatives of deceased victims as well as survivors of the shooting have brought damages suits against the United States under the FTCA. The thrust of the lawsuit is that the shooter, Devin Kelley, should not have been able to purchase firearms, but failures by the United States Air Force and the Department of Defense to collect, handle, and report

required information allowed him to do so. Though the complaints differ, at bottom they allege negligence *per se* based on alleged violations of the Brady Act, negligent undertaking, and negligent training and supervision.

The United States moved to dismiss on three grounds: (1) that Plaintiffs' claims were barred by the FTCA misrepresentation exception, (2) that the United States was shielded from liability by 18 U.S.C. § 922(t)(6), and (3) that Plaintiffs had not alleged viable state law causes of action. Docket no. 28. This Court agreed that Plaintiffs could not proceed on a negligence *per se* theory but rejected all other grounds for dismissal. Docket no. 59 at 29-33.

This Court rejected the misrepresentation exception defense because Plaintiffs did not rely on a governmental representation and because Plaintiffs allege operational negligence, not inaccurate communication. *Id.* at 15-20. The Court rejected the § 922(t)(6) immunity claim because the relevant immunity provision refers only to employees of the federal government and not the federal government itself. Further, the Court concluded that the United States is not immune simply because its employees might claim *state* law immunity, and that even if the United States could avail itself of its employees' immunity, such immunity would immunize the United States for only some of its allegedly negligent conduct. *Id.* at 24-27. Finally, this Court dismissed the negligence *per se* theory but concluded the Plaintiffs could proceed on negligent undertaking, negligent training, and negligent supervision claims under Texas state law. *Id.* at 27-40.

In its opposed Motion for Certification, the Government now asks the Court to certify

the following questions[1]:

(1) whether Plaintiffs' claims are precluded by 18 U.S.C. § 922(t)(6), a provision of the
    Brady Handgun Violence Protection Act that shields employees of the federal
    government from liability in actions at law for damages for failing to prevent the sale
    or transfer of firearms to persons whose receipts or possession of them is unlawful; and

(2) whether Plaintiffs have stated a viable claim under Texas law based on a negligent
    undertaking theory of liability.

Docket no. 107 at 2-3.

## II.     Standard for Certification Under § 1292(b)

Certification of an interlocutory appeal from an order is allowed if  (1) there is a

controlling question of law, (2) there is substantial ground for difference of opinion about the

question of law, and (3) immediate appeal would materially advance the ultimate termination

of the litigation. *See* 28 U.S.C. § 1292(b); *Sint v. Chambers Cty. Comm'n*, 514 U.S. 35, 46

(1995). Such appeals "are generally disfavored, and statutes permitting them must be strictly

construed." *Mae v. Hurst*, 613 F. App'x 314, 318 (5th Cir. 2015) (quoting *Allen v. Okam*

*Holdings, Inc.*, 116 F.3d 153, 154 (5th Cir. 1997)).

Such interlocutory appeals are "exceptional," *Clark-Dietz & Assocs.-Eng'rs, Inc. v.*

*Basic Constr. Co.*, 702 F.2d 67, 69 (5th Cir. 1983), and the decision to certify the appeal is

within the district court's sound discretion. *Ryan v. Flowerserve Corp.*, 444 F. Supp. 2d 718,

722 (N.D. Tex. 2006) (citing *Cheney v. U.S. Dist. Court for the Dist. Of Columbia*, 542 U.S.

---

[1] Section 1292(b) "authorizes certification of orders for interlocutory appeal, not certification of
questions." *Linton v. Shell Oil Co.*, 563 F.3d 556, 557 (5th Cir. 2009). But *Linton* indicates that courts
should nonetheless frame "controlling questions" the judge believes are presented by the order
presented for certification. *Id.*

367, 405 n. 9 (2004) (Ginsburg, J., dissenting)). Moreover, "[d]istrict courts have unfettered discretion to deny certification" even when the three § 1292(b) criteria are satisfied. *Nieman v. City of Dallas*, 3:14-CV-3897, 2016 WL 470235, at *3 (N.D. Tex. Feb. 8, 2016).

### III.   Discussion

#### A.   *Controlling Question of Law*

The first requirement to certify under § 1292(b) is that the issue for appeal must involve a controlling question of law. 28 U.S.C. § 1292(b). Whether an issue of law is controlling generally depends on the issue's potential to have some impact on the course of the litigation. *Lee v. Active Power, Inc.*, No. A-13-CA-797-SS, 2014 WL 4337860, at *3 (W.D. Tex. Sept. 2, 2014). The Government contends that whether Plaintiffs' claims against the United States are barred by § 922(t)(6), and whether Plaintiffs have stated a viable state law claim under a negligent undertaking theory are both controlling questions of law. In its Opposition, the Plaintiffs do not contend that these issues are *not* controlling questions of law.

The Court will defer to the parties' apparent agreement that such issues are indeed controlling questions of law in that the disposition of such questions would "have some impact on the course of the litigation." Determining whether Plaintiffs' claims are barred by § 922(t)(6) and whether Plaintiffs have stated a viable state law claim would indeed have an impact on the course of the litigation, but the Court has already decided those issues, docket no. 59, and most importantly, the Court finds less persuasive the Government's arguments under the remaining two elements of § 1292(b), both necessary requirements to certify an interlocutory appeal.

B.  *Substantial Ground for Difference of Opinion*

The second – and most contentious here – requirement to certify under § 1292(2) is that there must be a substantial ground for difference of opinion regarding the controlling question of law. 28 U.S.C. § 1292(b). Courts have found such grounds where:

> a trial court rules in a manner which appears contrary to the rulings of all Courts of Appeals which have reached the issue, if the circuits are in dispute on the question and the Court of Appeals of the circuit has not spoken on the point, if complicated questions arise under foreign law, or if novel and difficult questions of first impression are presented.

*Ryan*, 444 F. Supp. 2d at 723-24 (quoting 4 Am. Jur. 2d *Appellate Review* § 128 (2005)). However, "[t]he novelty of [the] issue does not necessarily make it suitable for an interlocutory appeal, as 'the mere presence of a disputed issue that is a question of first impression, standing alone, is insufficient to demonstrate a substantial ground for difference of opinion.'" *Texas v. Ysleta del Sur Pueblo*, 370 F. Supp. 3d 705, 710 (W.D. Tex. 2018) (quoting *In re Flor*, 79 F.3d 281, 284 (2d Cir. 1996)).

Nor does a party's disagreement with the district court's ruling demonstrate a substantial ground for difference of opinion, because "[i]f fervent disagreement was sufficient to satisfy this requirement, then the majority of orders issued by district courts would be ripe for interlocutory appeal." *Ysleta*, 370 F. Supp. 3d at 710; *see also First Am. Corp. v. Al-Nahyan*, 948 F. Supp 1107, 1116 (D.D.C. 1996) ("Mere disagreement, even if vehement, with a court's ruling on a motion to dismiss does not establish a substantial ground for difference of opinion sufficient to satisfy the statutory requirements for an interlocutory appeal."). After all, "§ 1292(b) is not a vehicle to question the correctness of a district court's ruling or to obtain a second, more favorable opinion." *Ryan*, 444 F. Supp. 2d at 722.

Here, the Government first argues that there are substantial grounds for difference of opinion as to whether 18 U.S.C. § 922(t)(6) shields the United States from liability. The Government admits the case law is "sparse" but argues that "what little of it exists supports the position of the United States that it is entitled to invoke the immunity conferred by § 922(t)(6)…." Docket no. 107 at 10. In support, the Government cites a case from the District of South Carolina which held that the United States could invoke §  922(t)(6) immunity. *Sanders v. United States*, 324 F. Supp. 3d 636, 649 (D.S.C. 2018).

However, the Fourth Circuit recently reversed, holding that the Government enjoys no such immunity under § 922(t)(6). *Sanders v. United States*, 2019 WL 4125233, at *11-12 (4th Cir. 2019). Notably, the Fourth Circuit used the same reasoning this Court used in its Order on Motion to Dismiss. *Compare id.* at 11 ("[W]hen Congress seeks to immunize the Federal Government from liability, it knows how to do so . . . no such grant of immunity exists here."), *with* docket no. 59 ("Here, the Brady Act is unambiguous in specifying the people and entities immune from liability in providing information to NICS, and the United States is not listed.").

Therefore, this is not a case where "a trial court rules in a manner which appears contrary to the rulings of all Courts of Appeals which have reached the issue," nor is this a case where the circuits are in dispute on the question and the Fifth Circuit has not spoken on the point. *See Ryan*,  444 F. Supp. 2d at 723-24. Rather, this is a case where only one circuit has reached the issue, and that circuit agreed with this Court. And though this is arguably a "novel and difficult question[] of first impression," *id.*, "the mere presence of a disputed issue that is a question of first impression, standing alone, is insufficient to demonstrate a substantial ground for difference of opinion." *See Ysleta*, 370 F. Supp. 3d at 710.

The remaining cases the Government cites as grounds for substantial disagreement are similarly unpersuasive in revealing substantial grounds for disagreement. Docket no. 107 at 11. *Lossberg*, an Idaho state court decision, cites to the now-overturned *Sanders* trial-court decision, and that case involved the immunity of the State of Idaho, not the immunity of the federal government – a crucial difference in this case. *Lossberg v. Tyler Tech, Inc.*, No. CV-01-18-12607, 2018 WL 6709383, at *5-6 (Idaho Dist. Ct. Nov. 21, 2018). And while the District of Rhode Island did find immunity in the Brady Act, it found such immunity in a *different* section and for a *different* entity; that court found that § 922(s)(7) provided immunity to a chief of police in a § 1983 lawsuit. *Fratus v. Devine*, No. Civ.A 96-551-T, 1997 WL 33547361, at *4 (D.R.I. Aug. 25, 1997). And importantly, that section does explicitly provide for immunity to a "chief law enforcement officer or other person providing criminal history background pursuant to this section…." 18 U.S.C. § 922(s)(7).

The Government also submits that there are substantial grounds for difference of opinion as to whether Plaintiffs have stated a viable claim under Texas law based on a negligent undertaking theory of liability. Docket no. 107 at 17. The Government takes issue with this Court's framing of the negligent undertaking theory of liability under Texas law, arguing the inquiry is not whether the Government increased the risk of harm in undertaking the background check, but whether the risk to Plaintiffs would have been lower if the government had operated no such background check at all, negligently or not. *Id.* Though the Court takes issue with the Government's framing of that inquiry,[2] the determination of liability

---

[2] Plaintiffs rightfully point out that the *Taylor* decision the Government relies upon involved a situation where the plaintiff's injuries may have been "as much a result of his own failure" to obtain insurance as the defendant-lienholder's negligence, *Colonial Sav. Ass'n v. Taylor*, 544 S.W.2d 116, 120 (Tex.

under either this Court's standard – or the standard proposed by the Government – would both involve further factual development that is best completed through discovery.

As with the Brady claim, this is not a scenario where a trial court has ruled contrary to all other circuits, where circuits are in dispute and the Fifth Circuit has not spoken, or where novel and difficult questions of first impression are presented. *Ryan*, 444 F. Supp. 2d at 723-24. Rather, this is a scenario where the Government disagrees with this Court's ruling, but "[i]f fervent disagreement was sufficient to satisfy this requirement, then the majority of orders issued by district courts would be ripe for interlocutory appeal." *Ysleta*, 370 F. Supp. 3d at 710.

### C.  Materially Advance the Litigation

As to the third element, in determining whether an interlocutory appeal would materially advance the ultimate termination of the litigation, a district court must "examine whether an immediate appeal would (1) eliminate the need for trial, (2) eliminate complex issues so as to simplify the trial, or (3) eliminate issues to make discovery easier and less costly." *Gomez v. Niemann & Heyer, LLP*, 1:16-CV-119, 2016 WL 8673848, at *2 (W.D. Tex. Aug. 8, 2016) (citing *Coates v. Brazoria Cty.*, 919 F. Supp. 2d 863, 867 (S.D. Tex. 2013)). Or as the Second Circuit noted, "The critical requirement is that [an interlocutory appeal] have the potential for *substantially* accelerating the disposition of the litigation." *In re Duplan Corp.*, 591 F.2d 139, 148 n. 11 (2d Cir. 1978) (emphasis added).

Here, the Government contends that a reversal by the Fifth Circuit on either of the two questions of law would have a dispositive effect on the litigation and that a determination of

---

1976), and that the negligent undertaking analysis there thus differs from the inquiry here, where there is no basis for concluding that Plaintiffs should have instituted their own background check.

such issues makes sense in terms of judicial efficiency. Docket no. 107 at 21. The Government cites to the number of plaintiffs (and additional claimants likely to file suit); the number of government witnesses the Plaintiffs identify, some of whom are high-ranking officials;  and the Plaintiffs' stated intent to review data entries into several federal agency databases to prove "systematic failures." *Id.*

However, this Court is not convinced that a determination of the proposed questions of law would have a dispositive effect on this litigation, nor is the Court convinced that the extent of discovery is reason enough to certify these questions. Most importantly, even if the Fifth Circuit decided the immunity questions in favor of the Government such that the Government could avail itself of its employees' immunity under § 922(t)(6), that provision applies only to those federal employees "responsible for providing information" to NICS. 18 U.S.C. § 922(t)(6).

Therefore, § 922(t)(6), if applicable, would immunize the United States for *some* of its allegedly negligent conduct, but not all. In arguing that § 922(t)(6) is dispositive of all of Plaintiffs' claims, the Government focuses only on the alleged acts related to the transmission of fingerprint cards and criminal incident data to the FBI's background check system. Such immunity would not dispose of Plaintiffs' claims related to the allegedly negligent failure to collect fingerprint and criminal incident data from and about Kelley, submit this information to the Department of Defense, and train and supervise employees in collecting and transmitting this information. In other words, not every federal employee responsible for these allegedly negligent acts is "responsible for providing information" to NICS. Thus, a determination of the Brady Act immunity provision's applicability to the federal government

would not dispose of the case, nor would it obviate the need for discovery to determine which employees' responsibilities fall under this immunity provision.

For the reasons stated above, Defendant's Motion for Certification is DENIED.

It is so ORDERED.

SIGNED this 10th day of September, 2019.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE