# EXHIBIT 1
# HYPERLINKED INDEX

| Subpart | Description |
|---|---|
| A | <u>Plaintiffs' Discovery Requests (served in August 2019; no remaining drafts at this time)</u> |
| B | <u>Plaintiffs' Written List of Potential Deponents (provided to counsel for the United States on 9/4/19)</u> |
| C | <u>Notice re: Unopposed Depositions and/or Other Discovery Requests</u> |
| D | <u>Initial Disclosures served in 5:18-cv-00555-XR (Holcombe)</u> |
| E | <u>Initial Disclosures served in 5:18-cv-00712-XR (Vidal)</u> |
| F | <u>Initial Disclosures served in 5:18-cv-00881-XR (Uhl)</u> |
| G | <u>Initial Disclosures served in 5:18-cv-00944-XR (Ramsey)</u> |
| H | <u>Initial Disclosures served in 5:18-cv-00949-XR (McNulty)</u> |
| I | <u>Initial Disclosures served in 5:18-cv-00951-XR (Wall)</u> |
| J | <u>Initial Disclosures served in 5:18-cv-01151-XR (Amador)</u> |
| K | <u>Initial Disclosures served in 5:19-cv-00184-XR (Brown)</u> |
| L | <u>Initial Disclosures served in 5:19-cv-00289-XR (Ward)</u> |
| M | <u>Initial Disclosures served in 5:19-cv-00506-XR (Workman)</u> |
| N | <u>Initial Disclosures served in 5:19-cv-00678-XR (Colbath)</u> |
| O | <u>Initial Disclosures served in 5:19-cv-00691-XR (Braden)</u> |
| P | <u>Initial Disclosures served in 5:19-cv-00706-XR (Lookingbill)</u> |
| Q | <u>Initial Disclosures served in 5:19-cv-00714-XR (Solis)</u> |
| R | <u>Initial Disclosures served in 5:19-cv-00715-XR (McKenzie)</u> |
| S | <u>Initial Disclosures served in 5:19-CV-805-XR (Curnow)</u> |
| T | <u>Initial Disclosures served in 5:19-CV-806-XR (Macias)</u> |



IN THE UNITED STATES DISTRICT FOR
THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JOE HOLCOMBE, et. al, | § | NO. 5:18-CV-00555-XR |
| | § | |
| Plaintiffs | § | Consolidated with: |
| | § | 5:18-cv-00712-XR (*Vidal*) |
| | § | 5:18-cv-00881-XR (*Uhl*) |
| vs. | § | 5:18-cv-00944-XR (*Ramsey*) |
| | § | 5:18-cv-00949-XR (*McNulty*) |
| UNITED STATES OF | § | 5:18-cv-00951-XR (*Wall*) |
| AMERICA, | § | 5:18-cv-01151-XR (*Amador*) |
| | § | 5:19-cv-00184-XR (*Brown*) |
| Defendant | § | 5:19-cv-00289-XR (*Ward*) |
| | § | 5:19-cv-00506-XR (*Workman*) |
| | § | 5:19-cv-00678-XR (*Colbath*) |
| | § | 5:19-cv-00691-XR (*Braden*) |
| | § | 5:19-cv-00706-XR (*Loodkngbill*) |
| | § | 5:19-cv-00714-XR (*Solis*) |
| | § | 5:19-cv-00715-XR (*McKenzie*) |
| | § | 5:19-cv-00805-XR (*Curnow*) |
| | § | 5:19-cv-00806-XR (*Macias*) |

## PLAINTIFFS' FIRST REQUEST FOR PRODUCTION

To:     Defendant, United States of America, by and through its

attorneys PAUL STERN, United States Department of Justice, Three

Constitution Square, 175 N Street, N.E., Washington, DC 20002.

From: Plaintiffs, McNulty, et. al, 5:18-cv-00949-XR; Wall, et. al, 5:18-cv-00951-XR; Solis, et. al, 5:19-cv-00714-XR, and McKenzie, 5:19-cv-00715-XR.

Pursuant to Rule 26 and Rule 34 of the Federal Rules of Civil Procedure, please produce true and correct copies of any evidence responsive to the attached Requests for Production. If you object to these requests, the objection must state whether any responsive materials are being withheld based on that objection. Fed. R. Civ. P. 34(b)(2)(C).

Place for Production: The items requested are to be produced at the law offices of Whitehurst, Harkness, Brees, Cheng, Alsaffar, Higginbotham, & Jacob PLLC, 7500 Rialto Blvd, Bldg. Two, Ste 250, Austin, Texas 78735.

## ANSWER DUE IN THIRTY DAYS

Pursuant to Rule 34(b)(2) of the Federal Rules of Civil Procedure, please answer the following Requests within thirty (30) days after service of this discovery requests.

## DEFINITIONS

Please see W.D. Tex. Local Rule CV-26(b):

(1) Communication. The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

(2) Document. The term "document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a). A draft of a nonidentical copy is a separate document within the meaning of this term.

(3) Identify (With Respect to Persons). When referring to a person, to "identify" means to give, to the extent known, the person's full name, present or last known address, e-mail address, and telephone number, and when referring to a natural person, additionally, the present or last known place of employment. Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

(4) Identify (With Respect to Documents). When referring to documents, "to identify" means to give, to the extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s), and recipient(s).

(5) Parties. The terms "plaintiff" and "defendant" as well as a party's full or abbreviated name or pronoun referring to a party mean the party and, where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries or affiliates. This definition is not intended to impose a discovery obligation on any person who is not a party to the litigation.

(6) Person. The term "person" is defined as any natural person or business, legal or governmental entity or association.

(7) Concerning. The term "concerning" means relating to, referring to, describing, evidencing or constituting.

(8) Plaintiffs. The term "Plaintiff" or "Plaintiffs" refers to any Plaintiff in the following causes of action: McNulty, et. al, 5:18-cv-00949-XR; Wall, et.

al, 5:18-cv-00951-XR; Solis, et. al, 5:19-cv-00714-XR, and McKenzie, 5:19-cv-00715-XR.

(9) Sutherland Springs shooting. The term "Sutherland Springs shooting" means the mass shooting at the First Baptist Church in Sutherland Springs, Texas perpetrated by Devin Kelley on November 5, 2017.

Respectfully Submitted,

/s/  Jason P. Steed
**Jason P. Steed**
   JSteed@kilpatricktownsend.com
   Texas Bar No. 24070671
**Kilpatrick Townsend & Stockton LLP**
   2001 Ross Avenue, Suite 4400
   Dallas, TX  75201
   Office 214-922-7112
   Fax 214-853-5731
      Counsel for Vidal, McNulty, and Wall

/s/ Jamal K. Alsaffar
**Jamal K. Alsaffar**
   JAlssaffar@nationaltriallaw.com
   Texas Bar No. 24027193
**Tom Jacob**
   TJacob@nationaltriallaw.com
   Texas Bar No. 24069981
**Whitehurst, Harkness, Brees, Cheng, Alsaffar & Higginbotham & Jacob PLLC**
   7500 Rialto Blvd, Bldg. Two, Ste 250
   Austin, TX 78735
   Office 512-476-4346
   Fax 512-476-4400
      Counsel for Vidal, McNulty, and Wall

# CERTIFICATE OF SERVICE

By our signatures above, we certify that a copy of this request for production has been sent to the following on August 1, 2019, via email and by USPS certified mail, return receipt requested.

JOSEPH H. HUNT
Assistant Attorney General
United States Dept. of Justice
Civil Division

JOHN F. BASH
United States Attorney
Western District of Texas

KIRSTEN WILKERSON
Assistant Director, Torts Branch
United States Dept. of Justice
Civil Division

PAUL DAVID STERN
Trial Attorney, Torts Branch
United States Dept. of Justice
Civil Division
CLAYTON R. DIEDRICHS
Assistant United States Attorney

JIM F. GILLIGAN
Assistant United States Attorney

JOHN PANISZCZYN
Civil Chief
United States Attorney's Office
Western District of Texas

JAMES G. TOUHEY, JR.
Director, Torts Branch
United States Dept. of Justice
Civil Division

STEPHEN E. HANDLER
Senior Trial Counsel, Torts Branch
United States Dept. of Justice
Civil Division

STEPHEN TERRELL
Trial Attorney, Torts Branch
United States Dept. of Justice
Civil Division
JAMES E. DINGIVAN
Assistant United States Attorney

# REQUESTS FOR PRODUCTION TO
# DEFENDANT, UNITED STATES OF AMERICA

Please produce true and correct copies of the following, including such

data or information that exists in electronic form:

1.   Any document referenced in your initial disclosure under Fed. R. Civ.
     P. 26(a)(1)(A)(i) to (iv) and not already produced in this case.

2.   If you contend that Plaintiffs did not timely present their claims to the
     appropriate federal agency, produce evidence supporting your
     contention.

3.   Evidence supporting your contention, if any, that Plaintiffs have not
     performed all conditions precedent to filing suit, or that all conditions
     precedent for Plaintiffs to file suit have not occurred.

4.   Date-stamped claim forms that have been presented by any Plaintiff to
     any agency of the United States Government.

5.   Social media posts, messages, photographs, or other evidence created
     by the Defendant, or a current or former employee, agent, or
     representative of the Defendant, concerning this case.

6.   All incident or occurrence reports concerning the Sutherland Springs
     shooting.

7.   Any photograph, video recording, or audio recording, including any
     such data or information that exists in electronic or magnetic form,
     concerning the Sutherland Springs shooting, or the Plaintiffs.

8.   Documents originating from or obtained from any state or federal
     governmental unit or agency concerning any Plaintiff or the
     Sutherland Springs shooting.

9.   Documents originating from or obtained from any employer or former
     employer concerning any Plaintiff.

6 of 26

10. Documents originating from or obtained from any educational institution or teacher concerning any Plaintiff.

11. Written statements, declarations, or admissions of any Plaintiff, including all documents in your possession written or signed by any Plaintiff.

12. Depositions, affidavits, or statements—whether in written form, audio recording, or video recording—of any person you have disclosed as a possible witness or expert in this litigation, or any person you believe likely to have discoverable information.

13. The title page(s) and the specific pages from each document, book, treatise, periodical, paper, abstract, journal, magazine, newspaper, newsletter and/or pamphlet, unpublished research (for unpublished research all papers, abstracts, posters concerning said unpublished research, and all documents containing methodology, data, and/or conclusions from such unpublished research) that any witness who you may call to testify at deposition, trial, or by affidavit may rely upon or use for any claim or defense of any party in this lawsuit.

14. Documents, photographs, video, or other tangible things, including any such data or information that exists in electronic or magnetic form, that has been shown or provided by you to any person that has been identified as having knowledge of relevant facts, or has been shown or provided to you from any person that has been identified as having knowledge of relevant facts.

15. A copy of each of your testifying experts' (both retained and non-retained) entire file concerning this lawsuit, including the most current version of the expert's curriculum vitae and/or resume, if not already provided in your Fed. R. Civ. P. Rule 26(a)(2)(B) disclosures.

16. All working papers, notes, calculations, diagrams, photographs, models, exhibits, and other documents, including reports and factual observations, prepared or reviewed by any expert (retained or non-retained) who may testify at trial, deposition or by affidavit, if not already provided in your Fed. R. Civ. P. Rule 26(a)(2)(B) disclosures.

17.   All treatises, rules, regulations, guidelines, statutes, policies, procedures, and any other material considered in forming an opinion by any expert who may testify at trial, if not already provided in your Fed. R. Civ. P. Rule 26(a)(2)(B) disclosures.

18.   All invoices, bills, fee schedules, and other billing materials for each expert you have retained to testify at trial, if not already provided in your Fed. R. Civ. P. Rule 26(a)(2)(B) disclosures.

19.   All products, medical devices, illustrations, reconstructions, animations, and/or computer graphics you may refer to, rely upon, demonstrate, explain to the trier of fact, and/or offer into evidence at the trial of this cause.

20.   If you have a theory, belief, contention, opinion, or knowledge regarding cause(s) of the injuries sustained by Plaintiffs made the subject matter of this lawsuit, produce a true and correct copy of all evidence that supports such theory, belief, contention, opinion, or knowledge, including any such data or information that exists in electronic or magnetic form.

21.   If you have a theory, belief, contention, opinion, or knowledge regarding the type, extent and/or valuation of Plaintiffs' damages, produce a true and correct copy of all evidence that supports such theory, belief, contention, opinion, or knowledge, including any such data or information that exists in electronic or magnetic form.

22.   If you contend that any Plaintiff or any third person or entity was negligent, or caused, and/or contributed to the injury and/or damages claimed by Plaintiffs in this lawsuit, please provide the documents or evidence that supports such contention.

>   Request for Production #22 includes evidence concerning the Fourth, Seventh, and Fourteenth Defenses raised in your Answer. *See* ECF Doc. #106, at 2, 4.

23.   If you contend that any Plaintiff failed to mitigate damages in this lawsuit, please provide a true and correct copy of all evidence that supports such contention.

24.     If you contend any non-human cause of Plaintiffs damages exists that caused or contributed to the injury or damages claimed by Plaintiffs in this lawsuit, please provide a true and correct copy of any evidence that supports such contention.

25.     If you contend that a superseding or intervening cause of Plaintiffs damages exists, please provide true and correct copies of any evidence that supports your contention.

26.     If you contend that the discretionary-function exception to the Federal Tort Claims Act, 28 U.S.C. § 2680(a) bars this lawsuit, please provide documents or evidence that supports such a contention.

>       Request for Production #26 includes documents or evidence concerning the Thirteenth Defense raised in your Answer. *See* ECF Doc. #106, at 4.

27.     Documents or tangible things obtained from nonparties to this suit that are relevant to the claims and defenses of any party to this lawsuit, including but not limited to, films, reports, or other records obtained via Deposition on Written Questions, Subpoena, and/or any written authorization.

28.     Documents or evidence concerning any offset, subrogation, lien, and/or other reimbursement amounts claimed by the United States that may be asserted against any monetary amount recovered by Plaintiffs in this lawsuit.

29.     Fingerprint cards, fingerprint data, and final disposition reports— electronic form or otherwise—concerning Devin Kelley while he was enlisted in the Air Force.

30.     Documents which contain or reflect the policies, procedures, checklists, and rules in effect between June 9, 2011 and November 5, 2017 concerning the reporting requirements or other requirements of the Lautenberg Amendment to the Gun Control Act, Brady Handgun Violence Prevention Act, or any other law that concerns the prohibition of the transfer of a firearm.

Request for Production #30 includes a request for policies, procedures, or rules that were followed by the Armed Forces, the Air Force, the Air Force Security Forces, and Air Force Office of Special Investigations (AFOSI), between June 9, 2011 and November 5, 2017, which governed the reporting requirements by Law Enforcement Agencies to the Federal Bureau of Investigations (FBI), FBI Criminal Justice Information Services (CJIS), Defense Manpower Data Center (DMDC), National Crime Information Center (NCIC), Defense Incident-Based Reporting System (DIBRS), or any other database which could or should be used to meet the requirements of the Lautenberg Amendment to the Gun Control Act, Brady Handgun Violence Prevention Act, or any other law which directly concerns the prohibition of the transfer of a firearm due to disqualifying factors.

Request for Production #30 includes, but is not limited to, those referenced in DODIG-2019-030 such as:

   a) Air Force Instruction 31-118 as referenced on page 51 and footnote 79;

   b) Air Force Instruction 31-115 as referenced in footnotes 61 and 76;

   c) Air Force Instruction 31-205 as referenced in footnotes 25, 35, 63, 80, 84, pages 40, 52, 77, and 78;

   d) Air Force Instruction 31-206 as referenced on pages 51, 68, 71, footnotes 61, and 76;

   e) Air Force Instruction 51-201 as referenced in footnote 40;

   f) AFOSI Handbook 71-105 as referenced on pages 35, 41, 53, 63, 64 and 73;

   g) AFOSI Manual 71-118 Volume 4 as referenced on pages 53, 63, and 73;

10 of 26

h) AFOSI Manual 71-121 as referenced on pages 35, 36, 37, 38, 40, 41, 42, 54, 63, 64, 65, 66, 73, 81, 82, 83, 85, 87, 88, footnotes 36, 41, 88 and 96;

i) DoD Instruction 6400.06 as referenced in footnote 18 of DODIG-2019-030;

Request for Production #30 further includes Air Force Instruction 51-202, DoD Instruction 7730.47, and DoD Instruction 5505.11.

31. In the event that any documents responsive to Request #30 are no longer in existence for the June 9, 2011 to November 5, 2017 period, please produce responsive documents for the next later date for which such documents exist.

32. Unredacted Inspector General Reports concerning the subject matter made the basis of this lawsuit, including the Sutherland Springs Shooting.

Request for Production #32 is intended to include, but is not limited to, unredacted Department of Defense Inspector General Report No. DODIG-2019-030 (Dec. 6, 2018), DODIG-2018-035 (Dec. 4, 2017), DODIG-2015-081 (Feb. 12, 2015), and DODIG-2015-011 (Oct. 29, 2014). This request is further intended to include, but not limited to, the unredacted reports referenced in the Inspector General's Report No. DODIG-2019-030 at pages 55 to 60.

33. Transcripts, recordings, notes, memorandum, or other documents reflecting the content or substance of witness statements, or statements by any person involved in the investigation of Devin Patrick Kelley, gathered in the preparation of the DoD Office of Inspector General's Report 2019-030.

Request for Production #33 is intended to include, but is not limited to, a request for recordings, notes, memorandum, and transcripts of:

a) interviews conducted by the Air Force Office of Special Investigations Investigator General (AFOSI IG) investigators, as noted in DODIG-2019-030 on page 2, footnote 3;

b) the subject interview of Kelley referenced on pages 9, 72, and 73;

c) the interviews of Tessa Kelley referenced on page 16 and footnote 23, as well as the documented discussion with Tessa Kelley that is referenced on page 10;

d) the interview of the redacted party referenced on page 17;

e) the interviews of friends and family of Kelley and Tessa Kelley as referenced on pages 19,103, and 107 paragraph 2;

f) the interviews listed as Witness Interview 1, 2, and 3 cited on page 20;

g) the interviews of ex-girlfriends of Kelley as listed in redacted form on pages 21 and 22;

h) the interview of the former superintendent referenced in footnote 72 on page 66;

Additionally, Request for Production #33 is intended to include, but is not limited to, a request for copies of recordings and transcripts of interviews conducted by the Office of Inspector General. This includes, but is not limited to:

a) the questioning of law enforcement agencies and other witnesses whose statements are referenced in footnote 13 on page 10, page 11, footnote 29 on page 21;

b)  interviews of AFOSI personnel referenced on page 65, 66, 74, 75, 82, 83, 84, 85, 88, 89, footnote 98 on page 91, page 91 paragraph 2, page 92, page 93, 94, 95, 96, 97, and 98;

c)  interviews of 49th Security Forces Squadron personnel referenced on pages 69, 70, 79, 80, 90, 98, 99;

d)  the interview of the HAFB Staff Judge Advocate on page 71;

e)  the interview of the Chief of Military Justice at the Holloman AFB Staff Judge Advocate office also on page 71;

f)  the Air Force Security Forces Center Action Officer interview referenced on page 99;

g)  the Curriculum Control Model Manager at the Naval Corrections Academy interview also referenced on page 99;

h)  interviews performed by Comal County Sherriff's Office, as noted on page 29; and

i)  the interviews conducted by 49th Security Forces Squadron investigators as noted on pages 12 and 37.

34.  All transcripts, recordings, emails, notes, memorandum, or other documents reflecting the communication sent or received concerning Devin Kelley, the investigation of Devin Kelley, or the DoD Office of Inspector General's Report 2019-030.

Request for Production #34 is intended to include, but is not limited to, communication referenced in the DODIG-2019-030 Report, such as:

a) the communication by the Secretary of Defense requesting the DoD Inspector General to investigate as referenced on pages 2 and 45;

b) the communication with the Under Secretary of Defense for Personnel and Readiness and the USAF as referenced on page 4 footnote 4 and pages 117 and 118;

c) the notification by Children, Youth, and Families Department to AFOSI as referenced on page 9;

d) the contact made by Registered Nurse at Providence Hospital referenced on page 10;

e) the report of assault from the USAF Reserve leadership referenced on page 10;

f) communication by or to 49th Squadron Forces contacting AFOSI referenced on page 10;

g) the communication that contained to briefing of the Staff Judge Advocate by 49th Security Forces Squadron as referenced on page 13;

h) records of Tessa Kelley providing the recording of Kelley's confession to his First Sargent or other Government employees or agents, or the subsequent transmission to AFOSI Detachment 225 as referenced on page 16;

i) communication between Kelley's chain-of-command and Peak Behavioral Health Services, including those referenced on page 16;

j) emails to and from FBI CJIS Criminal History Information and Policy Unit Program analysts, including those referenced on page 18;

k) the report of the AFOSI investigation sent to the 49th Mission Support Group Commander and Staff Judge Advocate as referenced on page 24;

l) contacts made by or to the FBI, including those referenced on page 25;

m) the receipt of the Report of Result of Trial by AFOSI as referenced on page 27;

n) Facebook messages, including the Facebook message screenshot sent by Kelley's former supervisor referenced on pages 30 and 44, and any communication by the former supervisor about the Facebook messages referenced on those pages;

o) AFOSI notification to the 49th Logistics Readiness Squadron as referenced on page 35;

p) the May 15th email referenced on page 39;

q) communications with Peak Behavioral Hospital, including the record of the May 15th contact with Peak Hospital that is referenced on page 40;

r) the record of Holloman AFB Base Exchange notification to AFOSI Detachment 225 of the June 7th gun order as referenced on page 40;

s) communications with ATF, including the Consultation with ATF as referenced on page 103; and

t) the contact with the FBI's NCIC Federal Liaison as referenced on page 105.

35. Transcripts, recordings, or other documents concerning, created, or collected in the investigation of Devin Patrick Kelley by the AFOSI.

   Request for Production #35 is intended to include a request for copies of investigative files under AFOSI Case

No. 225-C-128-G-32329111651413, or equivalent archived file or file held by the Air Force or AFOSI Headquarters, including recordings and transcripts of interviews conducted by AFOSI, all Investigation and Information Management System (I2MS) case management files, checklists, and files noting review as referenced in DOD-IG-2019-030 Report (Pages 9, 12, 16, 17, 19-22, 24, 27 35-42, 43; Footnotes 3, 11, 23, 41, 72).

36.  Transcripts, recordings, other documents or evidence concerning, created or collected in the investigation of Devin Patrick Kelley by the 49th Security Forces Squadron.

Request for Production #36 is intended to include a request for copies of investigative files held under SFMIS Case No. I20120200128, including but not limited to, recordings and transcripts of witness interviews conducted by the 49th Security Forces Squadron investigators as noted in DODIG-2019-030 (Page 12, Footnote 17).

37.  Transcripts, recordings, or other documents concerning, gathered, or created by the DoD Office of Inspector General investigators in the preparation of the DoD Office of Inspector General's Report 2019-030.

Request for Production #37 is intended to include, but is not limited to, a request for copies of:

a)  Kelley's criminal history, medical and mental health records, Kelley's admitting records at Peak Behavioral Health Services (PBHS), Kelley's student training report as referenced on page 7;

b)  Kelley's USAF Drug and Alcohol Abuse Certificate as referenced on page 5;

c)  Records of disciplinary action, including reports containing disciplinary actions taken by the USAF prior to Kelley's confinement and court-martial as referenced on pages 7, 8, 36, 37, and 38;

d) Kelley's No-Contact Order as referenced on pages 13, 37, 104, 105, and in footnote 21;

e) Kelley's Pretrial Confinement (PTC) package as referenced on pages 18 and 40;

f) PTC appeal package as referenced on page 15;

g) PTC Memorandum as referenced on page 23 and footnote 31;

h) all Article 32 Hearing documents as referenced on page 23;

i) Kelley's Military Protective Order (DD Form 2873) as referenced on pages 3, 41, and 104;

j) Kelley's Pretrial Agreement as referenced on pages 24 and 32;

k) confinement records as referenced on pages 25 and 106;

l) Memos concerning Kelley, including those referenced on pages 14, 18, and 40;

m) all ATF Forms 4473 submitted in connection to Devin Kelley as referenced on pages 30, 31, 32, and footnote 49;

n) the Report of Result of Trial as referenced on, pages 25, 27, 42, and 110;

o) the AFOSI closing checklist as referenced on page 81; and

p) the Interview Record as referenced on pages 72, 74, and 109.

38. Documents, files, policies, and procedures—electronic or otherwise— that show the Air Force and DoD complied with the following as stated in DODIG-2018-35 (page 5):

"Finally, the April 15, 2012, DoDI 5505.11 revision required the submission of all fingerprints to the FBI electronically. If no electronic submission capability existed at the LEO, the revision required the development of procedures to convert fingerprints from a hard copy FD-249 to an electronic format."

39. Documents, files, policies, procedures—electronic or otherwise—that establish whether Holloman Air Force Base had digital fingerprint scanners in place and in use during the relevant time at issue in this case. If Holloman Air Force Base was not using digital scanners at the relevant time, then produce all documents, files, policies, procedures that show how fingerprints were collected and mailed to HQ AFOSI for submission to the FBI CJIS.

> Request for Production #39 is intended to include, but is not limited to, a request for records establishing the use or digital scanners or processes in place in the event digital scanners were not available as reported in DODIG-2018-035 (Pages 25–26).

40. Documents or files, policies or procedures—electronic or otherwise— that show, during the relevant time period of this case, "AFOSI's investigative database programming prevents closure of an investigation until an AFOSI supervisor certifies in the Investigative Information Management System (I2MS) database that the fingerprint cards and final disposition reports have been submitted to FBI CJIS." DODIG-2018-035 (page 26).

> Request for Production #40 is intended to include, but is not limited to, documents that show this supervisory certification system was in place and followed (or not) when Devin Kelley's fingerprints should have been obtained and reported while he was enlisted in the Air Force.

41. AFOSI manual 71-121, Processing and Reporting Investigative Matters," April 13, 2015, Incorporating Change 1, June 6, 2016, as referenced in DODIG-2018-035 (Page 26).

42.   The "training documents" from the U.S. Air Force Special Investigations Academy as referenced in DODIG-2018-035 (Page 26).

43.   Fingerprint card collection and submission procedures taught during several classes at the AFOSI Basic Special Investigators Course (BSIC) and Advanced General Crimes Investigation Course (AGCIC), including but not limited to, the 4-hour block of instruction for I2MS as referenced in DOGIG-2018-035 (Page 26).

44.   Fingerprint card submission policies, procedures, pamphlets, PowerPoints, and other documentation—electronic or otherwise—used during the 1-hour Subject Processing Procedures lecture and the Web I2MS Case Closure lesson, including but not limited to, the I2MS navigation and documenting guide as referenced in DODIG-2018-035 (Page 26).

45.   The AFOSI Investigative Sufficiency Checklist and AFOSI Closed Case Review Checklist as referenced in DODIG-2018-035 (Page 26).

46.   The SMART-OSI (Strategic Management Analysis and Reporting Tool) report that field leaders use to identify files within I2MS with missing data, as referenced in DODIG-2018-035 (Pages 26–27).

47.   Documents, or files, electronic or otherwise, that reflect policies, procedures, and checklists created, implemented, or enforced by the AFOSI in response to the DoD IG report assessing the Air Force's failure to report fingerprints and final dispositions, including those referenced in DODIG-2018-035 (Pages 27–28).

48.   Documents, or files, electronic or otherwise, created by the AFOSI IG in connection with its inspections that began in October 2017 as noted in DODIG-2018-035 (Page 28).

> Request for Production #48 is intended to include, but is not limited to, a request for case files or records of inspections done on AFOSI criminal indexing data as a special interest item during region unit effectiveness inspections (Page 28).

49. Air Force Instruction (AFI) 31-118 "Security Forces Standards and Procedures," as referenced in DODIG-2018-035 (Page 30).

50. Air Force Instruction (AFI) 31-120 "Security Forces Systems and Administration," as referenced in DODIG-2018-035 (Page 30).

51. AFSFC presentation slides, "Completing a Federal Document (FD) 249/Criminal Fingerprint Card," as referenced in DODIG-2018-035 (Page 30).

52. The Management Internal Control Toolset (MICT) referenced in DODIG-2018-035 (Page 30).

53. The Security Forces MICT checklist items as referenced in DODIG-2018-035 (Page 30).

54. Documents, or files, electronic or otherwise, that reflect policies created, implemented, or enforced by the Air Force Security Forces in response to the DoD IG report assessing the Air Force's failure to report fingerprints and final dispositions as referenced in DODIG-2018-035 (page 31–32).

55. Communication between the DoD IG office and Secretary of the Air Force, or her office, concerning the deficiencies found and reported in DODIG-2018-035 to include, but not limited to, regular updates on the progress of recommendation implementation. *See* DODIG-2018-035 at pages 28 and 32.

56. The 93 Air Force Security Forces fingerprint cards and 93 Air Force Security Forces final disposition reports that were not on file in the FBI Next Generation Identification database as referenced in DODIG-2018-035 (Page 31).

> Request for Production #56 does not seek personal, private identifying information and includes a request to redact all but the first and last initial of any individual identified who is not Devin Kelley.

57. The Air Force Security Forces audit and results of audit (if they are different documents) that is referenced in DODIG-2018-035 (Page 32).

58. Documentation, notes from interviews, recordings from interviews— written or electronic—of interviews conducted with government personnel that were conducted as part of the DODIG-2018-035 report.

59. The "list of convicted offenders who did not have fingerprint cards or final disposition reports on file in the FBI NGI database" as referenced in Appendix A of the DODIG-2018-035 (Page 43).

60. Documents, files, reports—electronic or otherwise—of the "2,502 military service members who were convicted by court-martial of qualifying offenses during our evaluation period" as referenced in DODIG-2018-035 (Page 43).

> Request for Production #60 does not seek personal, private identifying information and includes a request to redact all but the first and last initial of any individual identified who is not Devin Kelley.

61. Documents provided to the Inspector General by the LEO representatives, as referenced in DODIG-2018-035 (Page 44), including:

   a) Guidance applicable to fingerprinting subjects and oversight of fingerprint card and final disposition report submission processes,

   b) Investigative case information, such as case numbers, date initiated, investigating organization, FBI numbers, TCNs, and the rationale for non-submission of fingerprint cards and final disposition reports,

   c) Training related to fingerprint card and final disposition report submissions, and

   d) inspection procedures and results.

62.  Policy and guidance documents, inspections reports, and training materials reviewed by the Inspector General as referenced in DODIG-2018-035 (Page 44).

63.  Interview notes, recordings, emails, transcripts from the interviews of "Military Service LEO subject matter experts" as referenced in DODIG-2018-035 (Page 44).

64.  The "spreadsheet" populated by each of the Service JAGs as referenced in DODIG-2018-035 (Page 44).

65.  The data retrieved from the military LEOs reporting systems as referenced in DODIG-2018-035 (Page 44)

> Request for Production #65 only seeks the data and reports obtained from the Air Force Automated Military Justice Administration and Management System (AMJAMS) referenced in DODIG-2018-034 (Page 44)

66.  Unredacted copy of "Report No. PO 97-003, "Criminal Investigations Policy Memorandum Number 10, Criminal History Data Reporting Requirements," January 28, 1997 as referenced in DODIG-2018-035 (Page 50).

67.  The AFOSI memorandum of December 9, 1996, that is referenced in DODIG-2018-035 (Page 51).

68.  DoD Instruction 5505.11 as referenced in DODIG-2015-081 (Page 1).

69.  The list of required convicted offender names that did not have fingerprints and/or final disposition updates in IAFIS, as referenced in DODIG-2015-081 (Page 3).

70.  The 358 Air Force qualifying convictions, 110 and 113 of which whose fingerprint data and final disposition reports, respectively, were not in the IAFIS, as referenced in DODIG-2015-081 (Pages 4–8).

> Request for Production #70 does not seek personal, private identifying information and includes a request to redact all but the first and last initial of any individual identified who is not Devin Kelley.

71. Documents, or files, electronic or otherwise, that reflect policies, rules, or regulations, created, implemented, or enforced by the Air Force in response to Recommendation 2 of DODIG-2015-081. (Page 10)

72. The unredacted "1997 Department of Defense Office of Inspector General" report titled, "Evaluation of Department of Defense Compliance with Criminal History Data Reporting Requirements" as referenced in DODIG-2015-081 (Page 12).

73. Documents, or files, electronic or otherwise, that reflect policies, rules, or regulations, created, implemented, or enforced by AFOSI to ensure fingerprints and final disposition reports for future arrestees and convicted offenders comply with DODI 5505.11 as noted in DODIG-2015-081. (page 22).

74. Documents, or files, electronic or otherwise, that reflect policies, rules, or regulations, created, implemented, or enforced by the Air Force Security Forces to ensure fingerprints and final disposition reports for future arrestees and convicted offenders comply with DODI 5505.11 as noted in DODIG-2015-081. (page 22).

75. The three tabs (attachments) referenced in the December 9, 2014, letter the Deputy Director of Security Forces, USAF sent to the DoDIG, as referenced in DODIG-2015-081 (Page 24).

> Request for Production #75 requests Tab 1-Draft report criminal history data reporting; Tab 2-(FOUO) Copy of Air Force Fingerprint Results 113 Names; and Tab 3-(FOUO) DoDIG List of Security Forces Names (Page 24)

76. DoD Manual (DoDM) 7730.47-M, Volume 1, "Defense Incident Based Reporting System (DIBRS): Data Segments and Elements," December 7, 2010, as referenced in DODIG-2015-011 (Page i).

77. Interview notes, recordings, transcripts, or other documentation related to communication with the DJIS NIBRS Coordinator referenced in DODIG-2015-011 (Page 5).

78. Interview notes, recordings, transcripts, or other documentation related to communication with the DMDC DIBRS Database Administrator referenced in DODIG-2015-011 (Pages 5-6).

79. Interview notes, recordings, transcripts, or other documentation related to communication with the DCIS Project Manager, Case Reporting Information Management System (CRIMS) as referenced in DODIG-2015-011 (Page 7).

80. Interview notes, recordings, transcripts, or other documentation related to communication with the HG Air Force Office of Special Investigation IT Enterprise Management Directorate (HQ AFOSI/XIW), Investigative Information Management System (I2MS) Program Manager, as referenced in DODIG-2015-011 (Page 8).

81. Interview notes, recordings, transcripts, or other documentation concerning communication with the DoD Director of Law Enforcement Policy and Support, as referenced in DODIG-2015-011 (Page 9).

82. The "error reports" maintained by the DMDC Database Administrator referenced in DODIG-2015-011 (Page 9).

83. Documents, or files, electronic or otherwise, that reflect policies, procedures, and checklists created, implemented, or enforced by the Air Force and DoD in response to the DoD IG report Recommendation 1 found in DODIG-2015-011 (Page 11).

84. Documents, or files, electronic or otherwise, that reflect policies, procedures, and checklists created, implemented, or enforced by the Air Force and DoD in response to the DoD IG report Recommendation 2a, 2b, found in DODIG-2015-011 (Page 12 and Page 14)).

85. Documents, files, electronic or otherwise, that establish the DCIS was able to deploy CRIMS v.2 so as to ensure DIBRS compliance as described in DODIG-2015-011 (Page 13).

24 of 26

86.     Documents, files, electronic or otherwise, that establish that "CRIMS v.2 is expected to be CJI sharing system compliant for the purposes of DIBRS criminal investigative data reporting" as described in DODIG-2015-011 (Page 14).

87.     Documents, files, data, reports, electronic or otherwise, that prove "AFOSI identified and corrected the internal process flaw which allowed this lapse to occur, and as of July 10, 2014, the DIBRS program managers completed corrective action" as stated in DODIG-2015-011 (Page 15).

88.     The "submitting agency's policies and procedures for collecting and reporting data regarding criminal incidents" referenced in DODIG-2015-011 (Page 16).

89.     The interview notes, recordings, transcripts—electronic or otherwise—of the DoD Director of Law Enforcement Policy and Support, the DMDC DIBRS System Administrator, and key DCIO staff, as referenced in DODIG-2015-011 (Page 16).

90.     The "criminal investigative database reports for a specified time period" referenced in DODIG-2015-011 (Page 16).

91.     The "policy guidance and documents to validate the submitting agencies processes concerning accurate reporting" referenced in DODIG-2015-011 (Page 17).

92.     The "DIBRS database administrator provided spreadsheets" referenced in DODIG-2015-011 (Page 17).

93.     Documents, or files, electronic or otherwise, that contain any records or findings from AFOSI Detachment 225 self-inspections or AFOSI IG Inspections of AFOSI Detachment 225, performed between June 2011 and November 2017.

94.     Documents or files, electronic or otherwise, concerning Devin Kelley, in the possession of the Defense Manpower Data Center.

> Request for Production #94 is intended to include documents or evidence concerning Devin Kelley's base access privileges as well as any information collected in accordance with DOD Instruction 7730.47-M Volume 1.

95. Reports, files, or documents submitted to any oversight institution or body, including Congress or the Attorney General, or their designee or agent, concerning compliance with the reporting requirements of the Brady Bill, the national instant background search system, or DOD Instruction 7730.47-M Volume 1.

> Request for Production #95 includes a request for documents or evidence concerning reports to Congress pursuant to 34 U.S.C. § 40901(e)(1)(E) and (e)(1)(F).

IN THE UNITED STATES DISTRICT FOR
THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JOE HOLCOMBE, et. al, | § | NO. 5:18-CV-00555-XR |
| | § | |
| Plaintiffs | § | Consolidated with: |
| | § | 5:18-cv-00712-XR (*Vidal*) |
| | § | 5:18-cv-00881-XR (*Uhl*) |
| vs. | § | 5:18-cv-00944-XR (*Ramsey*) |
| | § | 5:18-cv-00949-XR (*McNulty*) |
| UNITED STATES OF | § | 5:18-cv-00951-XR (*Wall*) |
| AMERICA, | § | 5:18-cv-01151-XR (*Amador*) |
| | § | 5:19-cv-00184-XR (*Brown*) |
| Defendant | § | 5:19-cv-00289-XR (*Ward*) |
| | § | 5:19-cv-00506-XR (*Workman*) |
| | § | 5:19-cv-00678-XR (*Colbath*) |
| | § | 5:19-cv-00691-XR (*Braden*) |
| | § | 5:19-cv-00706-XR (*Lookingbill*) |
| | § | 5:19-cv-00714-XR (*Solis*) |
| | § | 5:19-cv-00715-XR (*McKenzie*) |
| | § | 5:19-cv-00805-XR (*Curnow*) |
| | § | 5:19-cv-00806-XR (*Macias*) |

## PLAINTIFFS' SECOND REQUEST FOR PRODUCTION

To: Defendant, United States of America, by and through
its attorneys PAUL STERN, United States
Department of Justice, Three Constitution Square, 175
N Street, N.E., Washington, DC 20002.

From: Plaintiffs, Vidal, et. al, 5:18-cv-712-XR, McNulty, et.
al, 5:18-cv-00949-XR; Wall, et. al, 5:18-cv-00951-XR;
Solis, et. al, 5:19-cv-00714-XR, and McKenzie, 5:19-cv-
00715-XR.

Pursuant to Rule 26 and Rule 34 of the Federal Rules of Civil Procedure, please produce true and correct copies of any evidence responsive to the attached Requests for Production. If you object to these requests, the objection must state whether any responsive materials are being withheld based on that objection. Fed. R. Civ. P. 34(b)(2)(C).

Place for Production: The items requested are to be produced at the law offices of Whitehurst, Harkness, Brees, Cheng, Alsaffar, Higginbotham, & Jacob PLLC, 7500 Rialto Blvd, Bldg. Two, Ste 250, Austin, Texas 78735.

## ANSWER DUE IN THIRTY DAYS

Pursuant to Rule 34(b)(2) of the Federal Rules of Civil Procedure, please answer the following Requests within thirty (30) days after service of this discovery requests.

## DEFINITIONS

Please see W.D. Tex. Local Rule CV-26(b):

(1) Communication. The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

(2) Document. The term "document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a). A draft of a nonidentical copy is a separate document within the meaning of this term.

(3) Identify (With Respect to Persons). When referring to a person, to "identify" means to give, to the extent known, the person's full name, present

or last known address, e-mail address, and telephone number, and when referring to a natural person, additionally, the present or last known place of employment. Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

(4) Identify (With Respect to Documents). When referring to documents, "to identify" means to give, to the extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s), and recipient(s).

(5) Parties. The terms "plaintiff" and "defendant" as well as a party's full or abbreviated name or pronoun referring to a party mean the party and, where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries or affiliates. This definition is not intended to impose a discovery obligation on any person who is not a party to the litigation.

(6) Person. The term "person" is defined as any natural person or business, legal or governmental entity or association.

(7) Concerning. The term "concerning" means relating to, referring to, describing, evidencing or constituting.

(8) Plaintiffs. The term "Plaintiff" or "Plaintiffs" refers to any Plaintiff in the following causes of action: McNulty, et. al, 5:18-cv-00949-XR; Wall, et. al, 5:18-cv-00951-XR; Solis, et. al, 5:19-cv-00714-XR, and McKenzie, 5:19-cv-00715-XR.

(9) Sutherland Springs shooting. The term "Sutherland Springs shooting" means the mass shooting at the First Baptist Church in Sutherland Springs, Texas perpetrated by Devin Kelley on November 5, 2017.

Respectfully Submitted,

/s/Jason P. Steed

Jason P. Steed
JSteed@kilpatricktownsend.com
Texas Bar No. 24070671
Kilpatrick Townsend & Stockton LLP
2001 Ross Avenue, Suite 4400
Dallas, TX 75201
Office 214-922-7112
Fax 214-853-5731
Counsel for Vidal, McNulty, and Wall

/s/ Jamal K. Alsaffar

Jamal K. Alsaffar
JAlsaffar@nationaltriallaw.com
Texas Bar No. 24027193
Tom Jacob
TJacob@nationaltriallaw.com
Texas Bar No. 24069981
Whitehurst, Harkness, Brees, Cheng,
Alsaffar & Higginbotham & Jacob
PLLC
7500 Rialto Blvd, Bldg. Two, Ste 250
Austin, TX 78735
Office 512-476-4346
Fax 512-476-4400
Counsel for Vidal, McNulty, McKenzie,
Solis, Ramirez,
 and Wall

# CERTIFICATE OF SERVICE

By our signatures above, we certify that a copy of this request for production has been sent to the following on August 22, 2019, via email and by USPS certified mail, return receipt requested.

JOSEPH H. HUNT
Assistant Attorney General
United States Dept. of Justice
Civil Division

JOHN F. BASH
United States Attorney
Western District of Texas

KIRSTEN WILKERSON
Assistant Director, Torts Branch
United States Dept. of Justice
Civil Division

PAUL DAVID STERN
Trial Attorney, Torts Branch
United States Dept. of Justice
Civil Division
CLAYTON R. DIEDRICHS
Assistant United States Attorney

JIM F. GILLIGAN
Assistant United States Attorney

JOHN PANISZCZYN
Civil Chief
United States Attorney's Office
Western District of Texas

JAMES G. TOUHEY, JR.
Director, Torts Branch
United States Dept. of Justice
Civil Division

STEPHEN E. HANDLER
Senior Trial Counsel, Torts Branch
United States Dept. of Justice
Civil Division

STEPHEN TERRELL
Trial Attorney, Torts Branch
United States Dept. of Justice
Civil Division
JAMES E. DINGIVAN
Assistant United States Attorney

# REQUESTS FOR PRODUCTION TO DEFENDANT, UNITED STATES OF AMERICA

Please produce true and correct copies of the following, including such data or information that exists in electronic form:

1. Charts, diagrams, PowerPoints, illustrations, or other demonstrative aids that illustrate the relationships or communication between any of the following: the FBI CJIS, NICS, I2MS, NGI, DMDC, NIBRS, DIBRS, IAFIS, or NCIC.

2. Handouts, manuals, course materials, or other documents concerning the training or education of any Air Force employee on fingerprint collection and submission, and final disposition submission procedures during the relevant time period that forms the basis of this lawsuit.

IN THE UNITED STATES DISTRICT FOR
THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JOE HOLCOMBE, et. al, | § | NO. 5:18-CV-00555-XR |
| | § | |
| Plaintiffs | § | Consolidated with: |
| | § | 5:18-cv-00712-XR (*Vidal*) |
| | § | 5:18-cv-00881-XR (*Uhl*) |
| vs. | § | 5:18-cv-00944-XR (*Ramsey*) |
| | § | 5:18-cv-00949-XR (*McNulty*) |
| UNITED STATES OF | § | 5:18-cv-00951-XR (*Wall*) |
| AMERICA, | § | 5:18-cv-01151-XR (*Amador*) |
| | § | 5:19-cv-00184-XR (*Brown*) |
| Defendant | § | 5:19-cv-00289-XR (*Ward*) |
| | § | 5:19-cv-00506-XR (*Workman*) |
| | § | 5:19-cv-00678-XR (*Colbath*) |
| | § | 5:19-cv-00691-XR (*Braden*) |
| | § | 5:19-cv-00706-XR (*Lookngbill*) |
| | § | 5:19-cv-00714-XR (*Solis*) |
| | § | 5:19-cv-00715-XR (*McKenzie*) |
| | § | 5:19-cv-00805-XR (*Curnow*) |
| | § | 5:19-cv-00806-XR (*Macias*) |

## PLAINTIFFS' AMENDED FIRST REQUEST FOR ADMISSIONS & INTERROGATORIES TO DEFENDANT, UNITED STATES OF AMERICA

To:          Defendant, United States of America, by and through its

attorneys PAUL STERN, United States Department of Justice, Three

Constitution Square, 175 N Street, N.E., Washington, DC 20002.

From:        Plaintiffs, McNulty, et. al, 5:18-cv-00949-XR; Wall, et. al, 5:18-cv-00951-XR; Solis, et. al, 5:19-cv-00714-XR, Vidal, et. al, 5:18-cv-00712-XR, and McKenzie, 5:19-cv-00715-XR.

Pursuant to Rule 26, Rule 33, and Rule 36 of the Federal Rules of Civil Procedure, the above referenced Plaintiffs serve these Requests for Admissions & Interrogatories on the United States of America.

## ANSWER DUE IN THIRTY DAYS

Pursuant to Rule 33(b)(2) and Rule 36(a)(3) of the Federal Rules of Civil Procedure, please answer the following Requests within thirty (30) days after service of this discovery requests.

## DEFINITIONS

Please see W.D. Tex. Local Rule CV-26(b):

(1) Communication. The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

(2) Document. The term "document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a). A draft of a nonidentical copy is a separate document within the meaning of this term.

(3) Identify (With Respect to Persons). When referring to a person, to "identify" means to give, to the extent known, the person's full name, present

or last known address, e-mail address, and telephone number, and when referring to a natural person, additionally, the present or last known place of employment. Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

(4) Identify (With Respect to Documents). When referring to documents, "to identify" means to give, to the extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s), and recipient(s).

(5) Parties. The terms "plaintiff" and "defendant" as well as a party's full or abbreviated name or pronoun referring to a party mean the party and, where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries or affiliates. This definition is not intended to impose a discovery obligation on any person who is not a party to the litigation.

(6) Person. The term "person" is defined as any natural person or business, legal or governmental entity or association.

(7) Concerning. The term "concerning" means relating to, referring to, describing, evidencing or constituting.

(8) Plaintiffs. The term "Plaintiff" or "Plaintiffs" refers to any and all the consolidated Plaintiffs in the above styled cause of action.

(9) Sutherland Springs shooting. The term "Sutherland Springs shooting" means the mass shooting at the First Baptist Church in Sutherland Springs, Texas perpetrated by Devin Kelley on November 5, 2017.

(10) Identify (With Respect to Statements). When referring to statements, "identify" means to give the verbatim statement, the page number it appears, and the author or speaker of the statement.

## REQUESTS FOR ADMISSION

Please admit or deny:

1. Department of Defense Inspector General Report No. DODIG-2015-011, Evaluation of the Defense Criminal Investigative Organizations' Defense Incident-Based Reporting System Reporting and Reporting Accuracy (Oct. 29, 2014)[1] is a genuine report authored by an agency of the United States of America on a matter within the scope of that agency's relationship and while the agency relationship existed.

2. Department of Defense Inspector General Report No. DODIG-2015-081, Evaluation of Department of Defense Compliance with Criminal History Reporting Requirements (February 12, 2015)[2] is a genuine report authored by an agency of the United States of America on a matter within the scope of that agency's relationship and while the agency relationship existed.

---

[1] Available at https://media.defense.gov/2014/Oct/29/2001713419/-1/-1/1/DODIG-2015-011.pdf (last accessed July 24, 2019).

[2] Available at https://media.defense.gov/2015/Feb/12/2001713470/-1/-1/1/DODIG-2015-081.pdf (last accessed July 24, 2019).

3. Department of Defense Inspector General Report No. DODIG-2018-035, Evaluation of Fingerprint Card and Final Disposition Report Submissions by Military Service Law Enforcement Organizations (December 4, 2017)[3] is a genuine report authored by an agency of the United States of America on a matter within the scope of that agency's relationship and while the agency relationship existed.

4. Department of Defense Inspector General Report No. DODIG-2019-030, Report of the Investigation into the United States Air Force's Failure to Submit Devin Kelley's Criminal History Information to the Federal Bureau of Investigation (December 6, 2018)[4] is a genuine report authored by an agency of the United States of America on a matter within the scope of that agency's relationship and while the agency relationship existed.

5. Every statement contained in the Department of Defense Inspector General Report, dated December 6, 2018, and numbered DoDIG-2019-030, is factually true.

6. The United States Air Force's (USAF) was required by federal law and/or federal policy to collect and submit Devin Kelley's fingerprints and final disposition report to the FBI's Criminal Justice Information Services (CJIS) Division for inclusion in its databases after he was convicted of a crime of domestic violence by a USAF General Court-Martial.

7. The United States Air Force's failure to submit Devin Kelley's fingerprints and final disposition information to the FBI CJIS division allowed Kelley to pass the federally mandated background checks and to purchase four firearms from Federal Firearms Licensed dealers, which Kelley used three of those four firearms on November 5, 2017, to kill 26 people and wound 22 others at the First Baptist Church of Sutherland Springs, Sutherland Springs, Texas.

---

[3] Available at https://media.defense.gov/2017/Dec/05/2001852278/-1/-1/1/DODIG-2018-035.PDF (last accessed July 24, 2019).

[4] Available at https://media.defense.gov/2018/Dec/07/2002070069/-1/-1/1/DODIG-2019-030_REDACTED.PDF (last accessed July 24, 2019).

# INTERROGATORIES

Please answer the following interrogatories:

1. Identify any statement within the Department of Defense Inspector General Report, dated December 6, 2018, and numbered DoDIG-2019-030, that you contend is not factually true and the basis for such a contention.

2. Identify all persons who you believe have knowledge of relevant facts and identify the issues upon which you believe they have knowledge. *See* W.D. Tex. Local Rule CV-33(b)(1).

3. If you contend that some other person or legal entity is, in whole or in part, liable to the Plaintiffs in this matter, identify that person or legal entity and describe in detail the basis of said liability. *See* W.D. Tex. Local Rule CV-33(b)(5).


Respectfully submitted,

<table>
<tr><td>/s/  Jason P. Steed</td><td>/s/ Jamal K. Alsaffar</td></tr>
<tr><td><strong>Jason P. Steed</strong></td><td><strong>Jamal K. Alsaffar</strong></td></tr>
<tr><td>JSteed@kilpatricktownsend.com</td><td>JAlssaffar@nationaltriallaw.com</td></tr>
<tr><td>Texas Bar No. 24070671</td><td>Texas Bar No. 24027193</td></tr>
<tr><td><strong>Kilpatrick Townsend &amp; Stockton LLP</strong></td><td><strong>Tom Jacob</strong></td></tr>
<tr><td></td><td>TJacob@nationaltriallaw.com</td></tr>
<tr><td>2001 Ross Avenue, Suite 4400</td><td>Texas Bar No. 24069981</td></tr>
<tr><td>Dallas, TX  75201</td><td><strong>Whitehurst, Harkness, Brees, Cheng, Alsaffar &amp; Higginbotham &amp; Jacob PLLC</strong></td></tr>
<tr><td>Office 214-922-7112</td><td></td></tr>
<tr><td>Fax 214-853-5731</td><td>7500 Rialto Blvd, Bldg. Two, Ste 250</td></tr>
<tr><td></td><td>Austin, TX 78735</td></tr>
<tr><td></td><td>Office 512-476-4346</td></tr>
<tr><td></td><td>Fax 512-476-4400</td></tr>
</table>

## CERTIFICATE OF SERVICE

By our signatures above, we certify that a copy of Plaintiffs' Amended First Request for Admissions & Interrogatories to Defendant, United States of America has been sent to the following on August 2, 2019 via email and certified mail, return receipt requested mail.

PAUL DAVID STERN
Trial Attorney, Torts Branch
United States Dept. of Justice
Civil Division
175 N St., N.E.
United States Department of Justice,
Three Constitution Square
Washington, DC 20002
Paul.David.Stern@usdoj.gov

B

# SUTHERLAND SPRINGS DEPOSITION LIST

<u>Fact Witnesses</u>

1. **AFOSI Detachment 225 Commander(s) in June 2011-March 31, 2013.** *See* 2019 IG Report throughout. These Commanders would be in charge of the Detachment as a whole and supervising the Detachment SAIC's, Superintendents, and Special Agents responsible for collecting and submitting Fingerprint (FP) data and Final Disposition Reports (FDR).

2. **Devin Kelley's HAFB Base Commander (supervisor) in June 2011, February 2012, June 2012.** *See* 2019 IG Report 13, 17-18, 19.

3. **AFOSI Detachment 225 Special Agent-in-Charge (SAIC) in December 2012**. *See* 2019 IG Report 80. This person certified that the fingerprints and final disposition reports were certified and sent. This was post court-martial December 14, 2012.

4. **AFOSI Detachment 225 Superintendent in December 2012.** *See* 2019 IG Report 83-86. In December 14, 2012, this person worked with the SAIC in closing DK's final file following his conviction.

5. **AFOSI Detachment 225 Special Agent-in-Charge (SAIC) in June 2012**. *See* 2019 IG Report 72. The SAIC at the time of DK's pretrial confinement.

6. **AFOSI Detachment 225 Special Agents (case agents) assigned in June 2012.** *See* 2019 IG Report 72-76. The report mentions more than one agent working DK's assault case at this time.

7. **AFOSI Detachment 225 "permanent" Special Agent-in-Charge assigned in late December 2011.** *See* 2019 IG report 92. This person was assigned as permanent SAIC of AFOSI Detachment 225 in December 2011.

8. **AFOSI Detachment 225, Case Agent assigned in June 2011.** *See* IG Report 95. Case agent for DK assault investigation.

9. **49th Security Forces Squadron Confinement Non-Commissioned Officer in Charge (NCOIC) in Nov. 2012**. *See* 2019 IG Report 78-80. In charge of the confinement facility in-processing where DK was sent following his court-martial conviction on November 7, 2012.

10. **49th Security Forces Squadron Confinement Facility Commander in Nov. 2012.** *See* IG Report 99. Commander of confinement facility where DK was processed following conviction.

11. **Region Commander, 2nd Field Investigations Region, Langley AFB, Virginia, from August 2010 to April 2012.** *See* IG Report 91-94.  This is the commander of the region and maintained operational control of Detachment 225 during DK's open assault investigation.

12. **Region Commander, 2nd Field Investigations Region, Langley AFB, Virginia from May 2012 to June 2014.** *See* IG Report 93-94. This is commander of the region through DK's final conviction, incarceration, and release.

13. **AFOSI Detachment 225 Special Agents assigned in June 2011.**  *See* 2019 IG Report 62-67. Report references several case agents working on the assault investigation of DK.

14. **AFOSI Detachment 225 SAIC and Detachment 225 Superintendent in June 2011.** *See* 2019 IG report 62-67. SAIC responsible for agents who did not submit FP at first missed opportunity.

15. **49th Security Forces Squadron investigators assigned in February 2012.** *See* 2019 IG Report 67-71. The report mentions several investigators during this period relating to the DK investigation.

16. **AFOSI Detachment 225 Leadership (SAIC's and Superintendent) from June 29, 2011 to October 5, 2012.** *See* 2019 IG Report 87-88 and 110. These leadership individuals

conducted 15 independent monthly reviews of the DK
investigative case file during the 17-month DK investigation.

17. **HAFB Staff Judge Advocate (SJA) assigned in June 2011,
Feb. 2012, and Nov. 2012.** *See* 2019 IG Report 10, 13, 24. The
SJA coordinates with the Special Agents, the SAIC, and
Superintendent, on investigations and ultimately prosecutions.
This would be the SJA during DK's assault investigation, trial,
and conviction.

18. **Navy Consolidated Brig, Miramar, California,
Commander assigned December 18, 2012 to March 31,
2013.** *See* 2019 IG Report 25-27. The Commander of the facility
where DK was serving his prison sentence.

Command/Oversight Positions

19. **Air Force Chief of Staff, General Mark Welsh** (Welsh was
AF COS prior to and at time of events)

20. **Air Force Inspector General Richard Harding** (AF IG prior
to and at time of event)

21. **Air Force Vice Chief of Staff General Goldfein** (Goldfein is
currently the AF COS but was Vice-Chief at time of events).

22. **Secretary of the Air Force, Heather Wilson** (May 2017-May
2019)

23. **Secretary of the Air Force, Lisa Disbrow** (January 2017-
May 2017)

24. **Secretary of the Air Force, Deborah Lee James** (December
2013-January 2017)

25. **Secretary of Defense, Chuck Hagel** (February 2013-
February 2015)

26. **Secretary of Defense, Ash Carter** (February 2015-January
2017)

27. **Secretary of Defense, Jim Mattis** (January 2017-December 2018)

28. **Under Secretary of Defense for Personnel and Readiness** *See* 2019 IG Report 57, 120, 121.

29. **Under Secretary of Defense for Intelligence** *See* 2019 IG Report 57, 120, 121.

30. **DoD Deputy Chief Management Officer** *See* 2019 IG Report 57, 120, 121.

31. **Chief Naval Operations (CNO) Admiral Richardson** (The Navy equivalent of the Air Force Chief of Staff and relevant regarding the Naval Brig process for obtaining FP and FDR along with submission).



IN THE UNITED STATES DISTRICT FOR
THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **JOE HOLCOMBE, et. al,** | § | NO. 5:18-CV-00555-XR |
| | § | |
| **Plaintiffs** | § | Consolidated with: |
| | § | 5:18-cv-00712-XR (*Vidal*) |
| | § | 5:18-cv-00881-XR (*Uhl*) |
| **vs.** | § | 5:18-cv-00944-XR (*Ramsey*) |
| | § | 5:18-cv-00949-XR (*McNulty*) |
| **UNITED STATES OF AMERICA,** | § | 5:18-cv-00951-XR (*Wall*) |
| | § | 5:18-cv-01151-XR (*Amador*) |
| **Defendant** | § | 5:19-cv-00184-XR (*Brown*) |
| | § | 5:19-cv-00289-XR (*Ward*) |
| | § | 5:19-cv-00506-XR (*Workman*) |
| | § | 5:19-cv-00678-XR (*Colbath*) |
| | § | 5:19-cv-00691-XR (*Braden*) |
| | § | 5:19-cv-00706-XR (*Lookingbill*) |
| | § | 5:19-cv-00714-XR (*Solis*) |
| | § | 5:19-cv-00715-XR (*McKenzie*) |
| | § | 5:19-cv-00805-XR (*Curnow*) |
| | § | 5:19-cv-00806-XR (*Macias*) |

## PLAINTIFFS' NOTICE REGARDING UNOPPOSED DEPOSITIONS AND DISCOVERY REQUESTS

In accordance with this Court's Order dated September 11, 2019 (Dkt. 134), Plaintiffs notify this Court that the United States presented a witness for deposition on September 18, 2019, to address the following two of eleven topics from Plaintiffs' attached 30(b)(6) deposition notice:

> 6.     Policies, procedures, practices, checklists, and protocols concerning Air Force Security Force's and AFOSI's execution of DoD Instruction 7730.47-M Volume 1. This topic includes, but is not limited to, the monthly submission of information to the DMDC and the DIBRS database for centralization of the collection of information

1

reportable by the DoD Components pursuant to The Brady Handgun Violence Prevention Act of 1993. This topic includes but is not limited to, information concerning I2MS, as noted on pages 8-9 of DODIG-2015-011.

*and*

8.      Policies, procedures, practices, checklists, and protocols concerning the Air Force Security Force's and AFOSI's execution of DoD Instruction 5505.11. This topic includes, but is not limited to, the submission of fingerprints and final disposition reports to FBI CJIS by both the Air Force Security Force and AFOSI. This topic includes, but is not limited to, the process by which Devin Kelley's fingerprints and final disposition report should have been reported to FBI CJIS.


The United States has not presented any additional witnesses to address the remaining topics listed in the 30(b)(6) deposition notice attached to this Notice.

On September 4, 2019, Plaintiffs sent the United States a list of government witnesses to depose. That witness list is attached as Exhibit 1(B). To date, Plaintiffs have not received a response from the United States indicating which deponents, if any, the United States opposes presenting for deposition.

Plaintiffs also have not received any requests from the United States to take the deposition(s) of any Plaintiff(s) or any other individuals under Plaintiffs' control. Plaintiffs are willing to provide deposition testimony if requested.

At this time, Plaintiffs are not aware of any other outstanding discovery requests opposed by the United States except to the extent the United States has served objections to pending discovery requests.

IN THE UNITED STATES DISTRICT FOR
THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JOE HOLCOMBE, et. al, | § | NO. 5:18-CV-00555-XR |
| | § | |
| Plaintiffs | § | Consolidated with: |
| | § | 5:18-cv-00712-XR (*Vidal*) |
| | § | 5:18-cv-00881-XR (*Uhl*) |
| vs. | § | 5:18-cv-00944-XR (*Ramsey*) |
| | § | 5:18-cv-00949-XR (*McNulty*) |
| UNITED STATES OF | § | 5:18-cv-00951-XR (*Wall*) |
| AMERICA, | § | 5:18-cv-01151-XR (*Amador*) |
| | § | 5:19-cv-00184-XR (*Brown*) |
| Defendant | § | 5:19-cv-00289-XR (*Ward*) |
| | § | 5:19-cv-00506-XR (*Workman*) |
| | § | 5:19-cv-00678-XR (*Colbath*) |
| | § | 5:19-cv-00691-XR (*Braden*) |
| | § | 5:19-cv-00706-XR (*Lookingbill*) |
| | § | 5:19-cv-00714-XR (*Solis*) |
| | § | 5:19-cv-00715-XR (*McKenzie*) |
| | § | 5:19-cv-00805-XR (*Curnow*) |
| | § | 5:19-cv-00806-XR (*Macias*) |

## NOTICE OF DEPOSITION

To: Defendant, United States of America, by and through
its attorney, Paul Stern, United States Department of
Justice, Three Constitution Square, 175 N Street,
N.E., Washington, DC 20002.

From: Plaintiffs, Vidal, et. al, 5:18-cv-712-XR, McNulty, et.
al, 5:18-cv-00949-XR; Wall, et. al, 5:18-cv-00951-XR;
Solis, et. al, 5:19-cv-00714-XR, and McKenzie, 5:19-cv-
00715-XR.

Please take notice that under Fed. R. Civ. P. 30(b)(6), the above Plaintiffs will take the deposition of the Defendant, United States of America, by oral examination using video, audio, and stenographic means, at the following location and date:

| | |
|---|---|
| Date: | September 12, 2019 |
| Location: | United States Attorney's Office<br>601 NW Loop 410, Ste. 600<br>San Antonio, Texas 78216 |
| Time: | 9:00 AM CST |
| Court Reporter: | Res Ipsa or designee |
| Videographer: | Res Ipsa or designee |

The deposition will continue from day to day until completed, with such breaks, as necessary. Pursuant to Rule 30(b)(6), the United States of America shall designate one or more officers, directors, managing agents, or other persons who consent and are knowledgeable to testify on the United States' behalf with respect to the subject matters set forth in attached Exhibit A. A request to produce documents permitted under Rule 30(b)(2) is attached as Exhibit B.

## DEFINITIONS

Please see applicable definitions in W.D. Tex. Local Rule CV-26(b)(1)–(7). The singular form of any word shall include within its meaning the plural form of the word and vice versa. For your convenience, Plaintiffs have duplicated those definitions here:

**Communication**. The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

**Document**. The term "document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a). A draft of a nonidentical copy is a separate document within the meaning of this term.

**Identify (With Respect to Persons)**. When referring to a person, to "identify" means to give, to the extent known, the person's full name, present or last known address, e-mail address, and telephone number, and when referring to a natural person, additionally, the present or last known place of employment. Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

**Identify (With Respect to Documents)**. When referring to documents, "to identify" means to give, to the extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s), and recipient(s).

**Parties**. The terms "plaintiff" and "defendant" as well as a party's full or abbreviated name or pronoun referring to a party mean the party and, where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries or affiliates. This definition is not intended to impose a discovery obligation on any person who is not a party to the litigation.

**Person**. The term "person" is defined as any natural person or business, legal or governmental entity or association.

**Concerning**. The term "concerning" means relating to, referring to, describing, evidencing or constituting.

# ACRONYMS

The following acronyms apply to this notice:

| ACRONYM | MEANING |
| --- | --- |
| AFOSI | Air Force Office of Special Investigations |
| CJIS | Criminal Justice Information Services |
| DIBRS | Defense Incident-Based Reporting System |
| DMDC | Defense Manpower Data Center |
| DoD | Department of Defense |
| DODIG | Department of Defense Inspector General |
| I2MS | Investigative Information Management System |
| IAFIS | Integrated Automated Fingerprint Identification System |
| NCIC | National Crime Information Center |
| NGI | Next Generation Identification |
| NIBRS | National Incident-Based Reporting System |
| NICS | National Instant Criminal Background Check System |
| USAF | United States Department of Air Force |

Respectfully Submitted,


/s/ Jason P. Steed
**Jason P. Steed**
JSteed@kilpatricktownsend.com
Texas Bar No. 24070671
**Kilpatrick Townsend & Stockton LLP**
2001 Ross Avenue, Suite 4400
Dallas, TX75201
Office 214-922-7112
Fax 214-853-5731
Counsel for Vidal, McNulty, and Wall

/s/ Jamal K. Alsaffar
**Jamal K. Alsaffar**
JAlsaffar@nationaltriallaw.com
Texas Bar No. 24027193
**Tom Jacob**
TJacob@nationaltriallaw.com
Texas Bar No. 24069981
**Whitehurst, Harkness, Brees, Cheng, Alsaffar & Higginbotham & Jacob PLLC**
7500 Rialto Blvd, Bldg. Two, Ste 250
Austin, TX 78735
Office 512-476-4346
Fax 512-476-4400
Counsel for Vidal, McNulty, McKenzie, Solis, Ramirez and Wall

# CERTIFICATE OF SERVICE

By our signatures above, we certify that a copy of this pleading, Notice of Deposition, has been sent to the following on August 22, 2019 via email and certified mail, return receipt requested.

JOSEPH H. HUNT
Assistant Attorney General
United States Dept. of Justice
Civil Division

JOHN F. BASH
United States Attorney
Western District of Texas

KIRSTEN WILKERSON
Assistant Director, Torts Branch
United States Dept. of Justice
Civil Division

PAUL DAVID STERN
Trial Attorney, Torts Branch
United States Dept. of Justice
Civil Division
CLAYTON R. DIEDRICHS
Assistant United States Attorney

JIM F. GILLIGAN
Assistant United States Attorney

JOHN PANISZCZYN
Civil Chief
United States Attorney's Office
Western District of Texas

JAMES G. TOUHEY, JR.
Director, Torts Branch
United States Dept. of Justice
Civil Division

STEPHEN E. HANDLER
Senior Trial Counsel, Torts Branch
United States Dept. of Justice
Civil Division

STEPHEN TERRELL
Trial Attorney, Torts Branch
United States Dept. of Justice
Civil Division
JAMES E. DINGIVAN
Assistant United States Attorney

# EXHIBIT A

Examination is requested on the following subject matter areas:

1.    The identity of persons, and identity and location of documents referenced in the DODIG-2015-011 Report.

2.    The identity of persons, and identity and location of documents referenced in the DODIG 2015-081 Report.

3.    The identify of persons, and identity of location of documents referenced in the DODIG 2018-035 Report.

4.    The identity of persons, and identity and location of documents referenced in the DODIG-2019-030 report.

5.    Training or education USAF personnel received concerning fingerprint collection and final disposition submission procedures, including submission to the FBI CJIS, NIBRS, or DIBRS. This topic concerns training or education given to personnel involved in the investigation, court-martial, or confinement of Devin Kelley between July 1, 2011 and December 14, 2012, whether they received the training at the time or some earlier time. This topic includes, but is not limited to: (a) the training or education provided by the Air Force Security Forces Academy at Joint Base San Antonio-Lackland, Texas; (b) the 65-day course at the security Forces Academy covering basic military police functions; (c) formal or informal training; (d) "on-the-job" training or education; (e) recurring or annual training or education; and (f)

training or education provided by the Naval Corrections Academy.

6. Policies, procedures, practices, checklists, and protocols concerning Air Force Security Force's and AFOSI's execution of DoD Instruction 7730.47-M Volume 1. This topic includes, but is not limited to, the monthly submission of information to the DMDC and the DIBRS database for centralization of the collection of information reportable by the DoD Components pursuant to The Brady Handgun Violence Prevention Act of 1993. This topic includes but is not limited to, information concerning I2MS, as noted on pages 8–9 of DODIG-2015-011.

7. Policies, procedures, practices, checklists, and protocols concerning the FBI CJIS NICS database and how other databases such as Next Gen (NGI) (formerly Integrated Automated Fingerprint Identification System (IAFIS)), NCIC, NIBRS, and Uniform Crime Report (UCR) are used to populate it. This topic includes, but is not limited to, the process by which the FBI receives and subsequently uses the information from DIBRS to prevent the purchase of firearms by any person prohibited by one of the eight listed categories.

8. Policies, procedures, practices, checklists, and protocols concerning the Air Force Security Force's and AFOSI's execution of DoD Instruction 5505.11. This topic includes, but is not limited to, the submission of fingerprints and final disposition reports to FBI CJIS by both the Air Force Security Force and AFOSI. This topic includes, but is not limited to, the process by which Devin Kelley's

fingerprints and final disposition report should have been reported to FBI CJIS.

9.    Policies, procedures, practices, checklists, and protocols concerning probable cause determinations by a Staff Judge Advocate, especially to include, when a determination should be made, and any training given to guide Judge Advocates on probable cause determinations.

10.    Policies, procedures, practices, checklists, and protocols concerning the USAF Corrections System policy for post-trial inmates during in-processing concerning the submission of fingerprints and final disposition reports to the FBI. This topic includes, but is not limited to, the collection of Devin Kelley's fingerprints and submission of his final disposition report by the confinement facility personnel.

11.    Policies, procedures, practices, checklists, and protocols put in to place following DODIG-2015-081 pertaining to the AFOSI's NCIC program director to ensure that fingerprints and final disposition reports are submitted to IAFIS (NGI) according to DoD Instruction 5505.11.

# EXHIBIT B

Under Fed. R. Civ. P. 34(b)(2), you are commanded to attend and testify at the above specified time and place; you are commanded to produce the below designated documents, electronically stored information, or tangible things in your possession, custody, or control. The following requests do not seek any communication to or from your legal counsel. Please produce a true and correct copy of the following within thirty (30) days of this notice or at the deposition, whichever is sooner. If produced before the deposition date, please produce these documents electronically. If produced at the deposition, please produce a physical copy of the document for examination and marking as a deposition exhibit, as well as an electronic version of the document in its native format.

1.      Your current curriculum vitae or resume.

2.      Documents you reviewed in preparation for this deposition.

3.      Policies, procedures, practices, checklists, or protocols concerning the topics covered in Exhibit A.

4.      Reports, notes, logs, letters, communication, or other documents you have authored or have been sent to you concerning this case or the topics covered in Exhibit A.

5.      Charts, diagrams, PowerPoints, illustrations, or other demonstrative aids that illustrate the relationships or communication between any of the following: the FBI

CJIS, NICS, NGI, DMDC, NIBRS, DIBRS, IAFIS, or NCIC.

6.      Handouts, manuals, course materials, or other documents concerning the training or education of any Air Force employee on fingerprint collection and final disposition submission procedures.



In the United States District Court
for the Western District of Texas
San Antonio Division

In the United States District Court
for the Western District of Texas
San Antonio Division

| | |
|---|---|
| Joe Holcombe, *et al.*,<br>        Plaintiffs,<br><br>v.<br><br>United States of America,<br>        Defendant. | Civil Action No. 5:18-cv-555-XR<br><br>*Consolidated with*:<br> Nos. 5:18-cv-712-XR; 5:18-cv-881-XR;<br> 5:18-cv-944-XR; 5:18-cv-949-XR;<br> 5:18-cv-951-XR; 5:18-cv-1151-XR;<br> 5:19-cv-184-XR; 5:19-cv-289;<br> 5:19-cv-506 XR; 5:19-cv-678;<br> 5:19-cv-691-XR; 5:19-cv-705;<br> 5:19-cv-706-XR; 5:19-cv-715-XR |

**PLAINTIFFS JOE HOLCOMBE AND CLARYCE HOLCOMBE, EACH INDIVIDUALLY AND AS HEIRS AT LAW TO THE ESTATE OF JOHN BRYAN HOLCOMBE, DECEASED'S, INITIAL DISCLOSURES PURSUANT TO RULE 26(A)(1)**

Plaintiffs Joe Holcombe and Claryce Holcombe, Each Individually and as Heirs at Law to the Estate of John Bryan Holcombe, Deceased ("Plaintiffs"), serve these their initial disclosures pursuant to Rule 26 of the Federal Rules of Civil Procedure Rule 26(a)(1)(A):

(i)  *The name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment;*

**a.   Plaintiffs hereby designate as persons with knowledge the health care providers referenced in the related health care records in this case, including physicians, technicians, nurses, radiologists, physician's assistants, physical therapists, clinics, hospitals, pharmacies, and their agents, representatives, and employees. While these health care providers are not within the control of Plaintiffs and have not been retained by Plaintiffs as expert witnesses, Plaintiffs reserve the right to elicit opinion testimony from any such health care provider, including expert testimony regarding liability, causation, and damages from those treating healthcare providers relating to the medical treatment provided to the Plaintiffs. To the extent it is necessary to call live at the trial or by deposition in this cause any agents, representatives, employees and/or custodian of records for any of the following health**

**care providers, Plaintiffs identify any such custodian as a person who may have expert knowledge regarding issues related to the incident in question to include personal knowledge of the records and concerning the necessity of services rendered and referenced in the records and concerning the reasonableness of the medical bills charged and referenced in the records of the following health care providers. For the mental impressions held by and the opinions of and facts known by any of the following witnesses, please refer to the related health care records of the Plaintiffs.**

> Harold Schott, Justice of the Peace Pct. #3
> Wilson County
> 402 Bluebonnet
> La Vernia, TX 78121

**b. Plaintiffs identify themselves as persons with knowledge of relevant facts pertaining to the incident in question:**

> Joe Holcombe
> c/o Robert E. Ammons & April A. Strahan
> The Ammons Law Firm
> 3700 Montrose Blvd.
> Houston, TX 77006
> and
> Daniel D. Barks
> Speiser Krause, P.C.
> 1750 Tysons Boulevard, Suite 1500 PMB #41
> McLean, VA 22102

> Joe Holcombe is the father and wrongful death beneficiary of John Bryan Holcombe, his son, and is a Plaintiff in this case. He has knowledge of the traumatic deaths of multiple members of his immediate family, as well as his own grief, trauma and other elements of damages.

> Claryce Holcombe
> c/o Robert E. Ammons & April A. Strahan
> The Ammons Law Firm
> 3700 Montrose Blvd.
> Houston, TX 77006
> and
> Daniel D. Barks
> Speiser Krause, P.C.
> 1750 Tysons Boulevard, Suite 1500 PMB #41
> McLean, VA 22102

Claryce Holcombe is the mother and wrongful death beneficiary of John Bryan Holcombe, her son, and is a Plaintiff in this case. She has knowledge of the traumatic deaths of multiple members of her immediate family, as well as her own grief, trauma and other elements of damages.

**c.   Plaintiffs identify the following family members, friends, and other persons as persons with knowledge of relevant facts:**

Academy Sports + Outdoors in San Antonio
> Kelley bought a Ruger 5.56 mm assault rifle from Academy Sports + Outdoors in San Antonio after clearing a background check of the NICS. Store personnel will have knowledge of the transaction.

El Paso Police
Headquarters:
911 N. Raynor
El Paso, TX 79903
(915) 212-4000
> The El Paso police apprehended Kelley after he escaped. See Exhibit 15.

First Baptist Church of Sutherland Springs, Texas
Frank Pomeroy, Pastor
First Baptist Church
216 4th Street
Sutherland Springs, Texas 78161
> This is the church where the shooting occurred. The pastor was not there that morning, but on information and belief lost his daughter and many beloved friends in the massacre. He will have knowledge of their community and relationships and the impact of the shooting.

Danielle Shield Kelley
> Married to Airman Devin Kelley at the time of the church shooting.

Tessa Kelley (nee' Loge)
> Married to Airman Devin Kelley while he was in the Air Force and reported him for abuse to herself and infant child.

Johnnie Langendorff
Stephen Willeford
> Stephen Willeford confronted Kelley and chased him away from the church. Johnnie Langendorff stopped his vehicle to pick up Mr. Willeford and give chase.

Steve Moore
Wilson County Sheriff's Department
    Investigator

Harold Schott, Justice of the Peace Pct. #3
Wilson County
402 Bluebonnet
La Vernia, TX 78121

Terry Snyder
Texas Ranger Division
Texas Department of Public Safety
6100 Guadalupe Street, Building E
Austin, TX 78752
    Investigator and Custodian of Records

Sunland Park Police Department
1000 McNutt Rd
Sunland Park, NM 88063
    Tanya Wood

John Porter Holcombe
c/o Robert E. Ammons & April A. Strahan
The Ammons Law Firm
3700 Montrose Blvd.
Houston, TX 77006
and
Daniel D. Barks
Speiser Krause, P.C.
1750 Tysons Boulevard, Suite 1500 PMB #41
McLean, VA 22102

John Porter Holcombe is the son of John Bryan Holcombe and grandson of Joe
and Claryce Holcombe.  He has knowledge of the traumatic deaths of multiple
members of his immediate family, as well as his own grief, trauma and other
elements of damages and that of his parents and family.

JoCheryl Holcombe
c/o Robert E. Ammons & April A. Strahan
The Ammons Law Firm
3700 Montrose Blvd.
Houston, TX 77006
and
Daniel D. Barks

Speiser Krause, P.C.
1750 Tysons Boulevard, Suite 1500 PMB #41
McLean, VA 22102

JoCheryl Holcombe is the daughter of Joe and Claryce Holcombe and has knowledge of the traumatic deaths of multiple members of her immediate family, as well as the grief, trauma and other elements of damages of her parents and family.

**d. Plaintiffs name the Defendant herein, as well as its agents, representatives, and/or employees or former agents, representatives, or employees, as persons with knowledge of relevant facts. Plaintiffs further name the Defendant, as well as its agents, representatives, and/or employees or former agents, representatives, or employees, as persons from whom expert testimony may be elicited regarding liability, causation and/or damages, although Plaintiffs do not necessarily vouch for all the opinion testimony of such persons. Plaintiffs refer you to the Department of Defense Inspector General reports from 2018, 2017, 2014, and 2015; Defendant's discovery documents; deposition testimony; documents produced by Defendant; and related medical records for the subject matter, facts known, and opinions and impressions of these witnesses.**

Air Force personnel
> Air Force personnel are expected to have knowledge of Kelley's conduct in the Air Force and mental problems, including but not limited to his attempt to bring weapons onto the base to kill officers.

Additional Air Force personnel are provided below:
> Air Force spokesperson, Ann Stefanek. On November 28, 2017, an Air Force spokesperson, Ann Stefanek, admitted that the failure to follow Pentagon guidelines to report Kelley's crimes to the FBI was "not an isolated incident and similar reporting lapses occurred at other locations."

Heather Wilson
Secretary of the Air Force

Deborah Lee James
Secretary of the Air Force

Col. Kirk Stabler
Air Force Commander
Headquarters Air Force Office of Special Investigations
Quantico, Virginia

Brig. General Andrea Tullos
Air Force Director
Director of Security Forces
DCS/Logistics, Engineering & Force Protection
Department of the Air Force
Washington, D.C.

Director of Special Investigations
Department of the Air Force
Washington, D.C.

HQ Air Force Office of Special Investigations
Department of the Air Force
Superintendent, IT Integrations HQ AFOSI
Quantico, Virginia

Department of the Air Force
HQ USAF
Washington, D.C.

Deputy Director of Security Forces
DCS/Logistics, Installations & Missions Support

Defense Human Resources Activity
Headquarters
Pamela Mitchell, Director
4800 Mark Center Drive, Suite 06J25-01
Alexandria, VA 22350-4000

Department of the Air Force
HQ Air Force Office of Special Investigations
Quantico, VA
Brigadier General, Keith Givens
USAF Commander

Department of Defense
Under Secretary of Defense for Intelligence
Deputy Chief Management Officer

Department of Defense
Military Criminal Investigative Organizations (MCIOs)
        Commanders, Officers, supervisors and employees
Defense Criminal Investigative Organizations (DCIOs)
        Commanders, Officers, supervisors and employees

Office of Inspector General for the DOD

The Office of Inspector General for the DOD has issued four reports investigating and detailing the failures of the Air Force and Department of Defense, including negligence, negligent training, and negligent supervision. See attached reports:

Report No. DODIG-2019-030, Inspector General U.S. Department of Defense, Dec. 6, 2018, Report of Investigation into the United States Air Force's Failure to Submit Devin Kelley's Criminal History Information to the Federal Bureau of Investigation; see id. at p. 117, "The USAF concurred with this report and its recommendations." https://www.dodig.mil/reports.html/Article/1707300/reportof-investigation-into-the-united-states-air-forces-failure-to-submit-dev/

Report No. DODIG-2018-035, Inspector General U.S. Department of Defense, Dec. 4, 2017, *Evaluation of Fingerprint Card and Final Disposition Report Submissions by Military Service Law Enforcement Organizations*. https://www.dodig.mil/reports.html/Search/DODIG-2018-035/

The DOD concluded that training on the submission of fingerprints and final disposition reports was ineffective and lacking, both for AFOSI Detachment 225 and the 49th Security Forces Squadron, and "there was no valid reason for the USAF's failures". *See* p. 111-112; *see also* p. 96-98 (noting "training did not provide instructions on when or how to submit either the fingerprint card or the final disposition report to the FBI CJIS Division"). Indeed, the DOD "determined that this failure to submit Kelley's fingerprints was part of a systemic problem in AFOSI Detachment 225." See p. 94. Worse, the case agent was actually deployed for seven months during the investigation and reported that he complained he could not do his job, stating, "Boss, I'm burnt out, I'm so burnt out." "Boss, I want to get out. I can't do this anymore."

Report No. DODIG-2015-081, Inspector General U.S. Department of Defense, February 12, 2015, *Evaluation of Department of Defense Compliance with Criminal History Data Reporting Requirements*

Report No. DODIG-2015-011, Inspector General U.S. Department of Defense, October 29, 2014, *Evaluation of the Defense Criminal Investigative Organizations' Defense Incident-Based Reporting System Reporting and Reporting Accuracy*

Air Force 49th Security Forces Squadron and its investigators, Military Law
Enforcement Officers (LEOs), or AFSFC Police Services Branch
Confinement Facility Commanders, Officers, supervisors, employees

The 49th Security Forces Squadron investigated Airman Kelley. The 49th
Security Forces squadron investigators and/or Military Law Enforcement
Officers (LEOs) had responsibilities to gather fingerprints and report, and
thus will have knowledge of their responsibilities, training, and failures.
The December 6, 2018, the Inspector General of the DOD issued a 131-
page Report titled, *Investigation into the United States Air Force's Failure
to Submit Devin Kelley's Criminal History Information to the Federal
Bureau of Investigation* concluding that training on the submission of
fingerprints and final disposition reports was ineffective and lacking, both
for AFOSI Detachment 225 and the 49th Security Forces Squadron, and
"there was no valid reason for the USAF's failures". *See* p. 111-112; *see also*
p. 96-98 (noting "training did not provide instructions on when or how to
submit either the fingerprint card or the final disposition report to the FBI
CJIS Division").

AFSFC Police Services Branch training focused on collection of fingerprints
but failed to address submitting fingerprint cards and final disposition
reports to the FBI CJIS.  Their Management Internal Control Toolset
(MICT) checklist items are supposed to be monitored and assessed as
part of the installation commander's self-inspection program.  Monthly
supervisory reviews were "incomplete and ineffective. *See* Report No.
DODIG-2019-030 p. 110.

Airman Kelley's Air Force Commander

Kelley's Commander issued a no contact order and has knowledge of
Kelley's conduct and training in the Air Force.

Airman Kelley's Air Force Commander

Kelley's Commander issued a no contact order, prepared a confinement
package stating that he was "convinced" that Kelley was "dangerous and
likely to harm someone if released", and has knowledge of Kelley's
conduct and training in the Air Force.

Kelley's former Supervisor in the Air Force

Kelley sent a threatening Facebook message to his former supervisor in
the Air Force after his discharge.  She will have knowledge of Kelley's
conduct and condition and threats.

Case Agent responsible for Airman Kelley

> The Case Agent will have knowledge for the reasons he could not properly report Kelley to the FBI, as detailed by the DOD's report.

Boss of Case Agent responsible for Airman Kelley

> The boss of the Case Agent will have knowledge for the reasons the Case Agent could not properly report Kelley to the FBI, as detailed by the DOD's report.

Peak Behavioral Health Services and Xavier Alvarez
5055 McNutt Rd.
Santa Teresa, NM 88008

> Peak Behavioral Health Services (PBHS) had a program for military personnel and diagnosed Kelley with various mental and emotional disorders. On information and belief, this is the facility from which Kelley attempted to buy guns to kill his commanding officers, and the facility that Kelley escaped from and fled to El Paso.

> According to an El Paso police report, police were informed that Kelley "was a danger to himself and others as he had already been caught sneaking firearms onto Holloman Air Force Base". Police were further advised that Airman Kelley "suffered from mental disorders" and that he "was attempting to carry out death threats" against "his military chain of command." Xavier Alvarez, who worked for Peak Behavioral and who reported Kelley to police for the escape, later confirmed to NBC News that Kelley "verbalized that he wanted to get some kind of retribution to his chain of command." Other patients reported that Kelley was doing something suspicious on computers, and the military found that Kelley was "ordering weapons and tactical gear and magazines to a P.O. Box in San Antonio." Alvarez was quoted as saying, "This kid – he was hollow," and "I could never reach him."

Air Force Security Forces Squadron
Holloman Air Force Base

> Commanders, Officers, supervisors, employees
> Cmdr. Nathan McLeod-Hughes

Air Force 49th Logistics Readiness Squadron
> Commanders, Officers, supervisors, employees

Air Force Detachment 225 and/or Holloman Air Force Base Office of Special Investigations

> Commanders, Officers, Special Agents, supervisors, employees
> AFOSI Detachment 225 and/or Holloman Air Force Base Office of Special Investigation had responsibilities to gather fingerprints and report, and thus will have knowledge of their responsibilities, training, and failures. The December 6, 2018, the Inspector General of the DOD issued a 131-page Report titled, Investigation into the United States Air Force's Failure to Submit Devin Kelley's Criminal History Information to the Federal Bureau of Investigation concluding that training on the submission of fingerprints and final disposition reports was ineffective and lacking, both for AFOSI Detachment 225 and the 49th Security Forces Squadron, and "there was no valid reason for the USAF's failures". See p. 111-112; see also p. 96-98 (noting "training did not provide instructions on when or how to submit either the fingerprint card or the final disposition report to the FBI CJIS Division").

> Although AFOSI policy required supervisory reviews to include both I2MS and the investigative case file (record copy), the AFOSI Detachment 225 SAIC and Superintendent focused their reviews on the I2MS activities and not on investigative case files" *See* p. 89. "In sum, we concluded that AFOSI Detachment 225 monthly supervisory reviews of Kelley's investigative case file were incomplete and ineffective".

Air Force Article 32 Investigating Officers

Air Force Prosecutors
> Air Force prosecutors gathered evidence and handled the conviction of Airman Kelley, and thus have knowledge of his conduct and disposition.

Naval Consolidated Brig
Miramar, California
> Commanders, Officers, supervisors, employees

General David Goldfein
Air Force Chief of Staff

General Stephen Wilson
Air Force Vice Chief of Staff

Lt. General Gina Grosso
Air Force Deputy Chief of Staff, Manpower, Personnel & Services

Lt. General John Raymond
Air Force Deputy Chief of Staff, Operations

Lt. General John Cooper, Deputy Chief of Staff, Operations

Air Force Holloman Air Force Base Mental Health Clinic
     HAFB Mental Health Clinic had custody of Kelley in the Air Force

Defense Incidence-Based Reporting System
     Commanders, Officers, supervisors, employees

**e.   Regarding experts who may be called to testify at the trial in this case, please refer to Plaintiffs' Designation of Experts and any amendments or supplements thereto for additional information regarding the facts known to these witnesses and the bases of their opinions.  These expert designations will be made at the time required by the Court's Scheduling Order. Please also refer to the sworn testimony and written reports of these witnesses for further information regarding the facts known to and opinions held by these witnesses.**


**f.   Plaintiffs cross-identify as expert witnesses any person named or to be named by Defendant as a person having expert knowledge about any facts surrounding any issues relevant to the incident in question as expert witnesses who Plaintiffs reserve the right to call live at the trial of the cause.  Plaintiffs reserve the right to call such persons as expert witnesses, whether or not the designation is subsequently withdrawn.  Plaintiffs do not have any control over any such witness, nor do they have any superior right to ascertain the subject matter on which any such witness may testify and/or opinions held by any such witness, beyond the information disclosed in deposition testimony and/or by Defendant's discovery responses.  In that regard, Plaintiffs refer you to Defendant's discovery documents, deposition testimony, and documents produced by Defendant for the subject matter, facts known, and opinions and impressions of these witnesses.  Plaintiffs reserve the right to obtain opinion testimony from any such witness within their area of expertise as related to this case.**


*(ii)    A copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment;*


1.    Inspector General, US Department of Defense, Evaluation of the Defense Criminal Investigative Organizations' Defense Incident-Based Reporting System Reporting and Reporting Accuracy, October 29, 2014 (Bates #18-949-1 – 18-949-

40).  This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

2.    Inspector General, US Department of Defense, Evaluation of the Defense Compliance with Criminal History Data Reporting Requirements, February 12, 2015 (Bates #18-949-41 – 18-949-76). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

3.    Inspector General, US Department of Defense, Evaluation Fingerprint Card and Final Disposition Report Submissions by Military Service Law Enforcement Organizations, December 4, 2017 (Bates #18-949-77 – 18-949-168). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

4.    Inspector General, US Department of Defense, Report of Investigation into the United States Air Force's Failure to Submit Devin Kelley's Criminal History Information to the Federal Bureau of Investigation, December 6, 2018 (Bates #18-949-169 – 18-949-306). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

5.    Department of Defense Directive Number 7730.47, October 15, 1996 (Bates #18-949-307 – 18-949-315). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

6.    Department of Defense Manual Number 7730.47-M Volume 1, December 7, 2010 (Bates #18-949-316 – 18-949-398). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

7.    U.S. Department of Defense Press Operations, DoD launches review of Devin P. Kelley criminal record notification, Release No. NR-382-17, November 6, 2017 (Bates #18-949-399). This document is in the possession of the Defendant and

also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

8.   National Instant Criminal Background Check System Indices (Bates #18-949-400 – 18-949-401). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

9.   U.S. Air Force article, AF Implements Changes to Improve Law Enforcement Database Reporting, November 28, 2017 (Bates #18-949-402). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

10.   U.S. Air Force tweet November 9, 2017 (Bates #18-949-403). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

11.   Report to the Committee on the Judiciary United States Senate from The Honorable Heather Wilson, Secretary of the Air Force, December 6, 2017 (Bates #18-949-404 – 18-949-405). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

12.   Questions for the Record for Secretary of the United States Air Force Heather Wilson, December 13, 2017 (Bates #18-949-406 – 18-949-410). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

13.   Misdemeanor Crimes of Domestic Violence (Bates #18-949-411). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

14.   Devin Kelley Trial Transcript (Bates #18-949-412 – 18-949-1022). This document is in the possession of the Defendant and also has been produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

15.   El Paso Incident Report, June 7, 2012 (Bates #18-949-1023 – 18-949-1028). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

16.   Devin Kelley Court Martial Order (Bates #18-949-1029 – 18-949-1034). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

17.   Statement of Danielle Kelley (Bates #18-949-1035). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

18.   Devin Kelley Autopsy Report (Bates #18-949-1036 – 18-949-1037). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

19.   Life Expectancy Tables (Bates #18-949-1038 – 18-949-1101). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

20.   John Bryan Holcombe Birth Certificate (Bates #18-555-1)

21.   John Bryan Holcombe Death Certificate (Bates #18-555-2)

22.   John Bryan Holcombe Obituary (Bates #18-555-3)

23.   News Articles RE: Holcombe Family Loss (Bates #18-555-4 – 18-555-55)

24.   Holcombe Family Photos (Bates #18-555-56 – 18-555-70)

In addition, Plaintiffs are in the possession of the materials maintained by the Texas Rangers related to the incident.  In obtaining these materials, Plaintiffs entered into an agreement with the Texas Attorney General regarding their release.  As such, Plaintiffs will discuss the terms of this agreement with Defendant prior to releasing these materials.

(iii)   *A computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered;*

Discovery is still in its early stages, and it is premature for Plaintiffs to respond to this disclosure; however, please see Plaintiffs' Original Complaint(s) and any and all amendments thereto for the categories of damages sought by Plaintiffs.  Please refer also to Plaintiffs' administrative claims filed with the Government for the maximum amount of damages sought by Plaintiffs in this case.  Please refer to the sworn deposition testimony in this case.  Please also refer to Plaintiffs' Designation of Experts and any amendments or supplements thereto for additional information regarding the facts known to these witnesses and the bases of their opinions.  These expert designations will be made at the time required by the Court's Scheduling Order.  Please also refer to the sworn testimony and written reports of these witnesses for further information regarding the facts known to and opinions held by these witnesses.

Additionally, as set forth in their Complaint, Joe and Claryce Holcombe's son, John Bryan Holcombe, was shot and killed on November 5, 2017, with firearms that should have been denied to Devin Kelley. As a result of the negligence of the United States employees, agents, or representatives, Joe and Claryce Holcombe suffered past and future damages, for which recovery is sought, including:

- Past and future loss of companionship and society, meaning the loss of the positive benefits flowing from the love, comfort, companionship, and society that Joe and Claryce Holcombe, in reasonable probability, would have received from John Bryan Holcombe, had he lived.

- Past and future mental anguish, meaning the emotional pain, torment, and suffering experienced by Joe and Claryce Holcombe because of the death of John Bryan Holcombe.

- Past and future pecuniary loss, meaning the loss of the care, maintenance, support, services, advice, counsel, and reasonable contributions of a pecuniary value that Joe and Claryce Holcombe, in reasonable probability, would have received from John Bryan Holcombe, had he lived.

In addition, Joe and Claryce Holcombe seek recovery of all other damages to which they are entitled pursuant to the applicable state and federal law.


(iv)    *For inspection and copying as under Rule 34, any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment.*

Not applicable.

Respectfully Submitted,

**THE AMMONS LAW FIRM, L.L.P.**

 /s/ April A. Strahan
Robert E. Ammons
Texas State Bar # 01159820
Email: rob@ammonslaw.com
April A. Strahan
Texas State Bar # 24056387
Email: april@ammonslaw.com
3700 Montrose Boulevard
Houston, Texas 77006
Telephone:     713-523-1606
Facsimile:     713-523-4159
    *and*
Daniel D. Barks (*pro hac vice*)
Email: ddb@speiserkrause.com
**SPEISER KRAUSE, P.C.**
1750 Tysons Boulevard, Suite 1500 PMB #41
McLean, VA 22102
Telephone:     571-814-3344
Facsimile:      866-936-6382
*Attorneys for Plaintiffs Joe and Claryce Holcombe, Each Individually and as Heirs at Law to the Estate of John Bryan Holcombe, Deceased*

**Certificate of Service**

I certify that the foregoing was served on June 27, 2019, via email service and United States Mail on the following counsel for the United States.

/s/ April A. Strahan
April A. Strahan

PAUL DAVID STERN
Trial Attorney, Torts Branch
United States Dept. of Justice
Civil Division
United States Department of Justice
P.O. Box 888
Benjamin Franklin Station
Washington, D.C. 20004
T: (202) 616-2197
Paul.David.Stern@usdoj.gov

STEPHEN E. HANDLER
Senior Trial Counsel, Torts Branch
United States Dept. of Justice
Civil Division
United States Department of Justice
P.O. Box 888
Benjamin Franklin Station
Washington, D.C. 20004
T: (202) 616-2197
Stephen.Handler@usdoj.gov

# E

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| Joe Holcombe, *et al.*, <br>    Plaintiffs, <br><br> v. <br><br> United States of America, <br>    Defendant. | Civil Action No. 5:18-cv-555-XR <br><br> *Consolidated with*: <br>  Nos. 5:18-cv-712-XR; 5:18-cv-881-XR; <br>  5:18-cv-944-XR; 5:18-cv-949-XR; <br>  5:18-cv-951-XR; 5:18-cv-1151-XR; <br>  5:19-cv-184-XR; 5:19-cv-289; <br>  5:19-cv-506 XR; 5:19-cv-678; <br>  5:19-cv-691-XR; 5:19-cv-705; <br>  5:19-cv-706-XR; 5:19-cv-715-XR |

## PLAINTIFFS', MARGARETTE VIDAL, MONICA SHABBIR, ROBERT VIDAL, AND RAMIRO VIDAL, JR., INITIAL DISCLOSURES PURSUANT TO RULE 26(A)(1)

(i)    The name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment;

**a.   Plaintiffs hereby designate as persons with knowledge the health care providers referenced in the related health care records in this case, including physicians, technicians, nurses, radiologists, physician's assistants, physical therapists, clinics, hospitals, pharmacies, and their agents, representatives, and employees.  While these health care providers are not within the control of Plaintiffs and have not been retained by Plaintiffs as expert witnesses, Plaintiffs reserve the right to elicit opinion testimony from any such health care provider, including expert testimony regarding liability, causation, and damages from those treating healthcare providers relating to the medical treatment provided to the Plaintiffs. To the extent it is necessary to call live at the trial or by deposition in this cause any agents, representatives, employees and/or custodian of records for any of the following health care providers, Plaintiffs identify any such custodian as a person who may have expert knowledge regarding issues related to the incident in question to include personal knowledge of the records and concerning the necessity of services**

1

rendered and referenced in the records and concerning the reasonableness of the medical bills charged and referenced in the records of the following health care providers.  For the mental impressions held by and the opinions of and facts known by any of the following witnesses, please refer to the related health care records of the Plaintiffs.

> Apollo Ambulance
> 6323 Sovereign Street, Ste. 218
> San Antonio, Texas 78229
>
> Brooke Army Medical Center
> 3551 Roger Brooke Dr.
> Fort Sam Houston, TX 78234
>
> Floresville Residence and Rehabilitation Center
> 1811 Sixth Street
> Floresville, TX
> 830-393-2561
> Agents, servants and employees, including but not limited to:
>     Virginia Barlow, MD
>
> Harry L. Chavez, MD
> 1303 Hospital Blvd.
> Floresville, TX 78114

**b.  Plaintiffs identify themselves as persons with knowledge of relevant facts pertaining to the incident in question:**

> Margarette Vidal
> Monica Shabbir
> Robert Vidal
> Ramiro Vidal, Jr.
> c/o Jamal Alsaffar
> Whitehurst, Harkness, Brees, Cheng, Alsaffar,
>  Higginbotham, & Jacob, PLLC
> 7500 Rialto Blvd., Bldg. Two
> Suite 250
> Austin, TX 78735

**c.  Plaintiffs identify the following family members, friends, and other persons as persons with knowledge of relevant facts:**

> Academy Sports + Outdoors in San Antonio

Kelley bought a Ruger 5.56 mm assault rifle from Academy Sports + Outdoors in San Antonio after clearing a background check of the NICS. Store personnel will have knowledge of the transaction.

El Paso Police
Headquarters:
911 N. Raynor
El Paso, TX 79903
(915) 212-4000

The El Paso police apprehended Kelley after he escaped. See Exhibit 15.

First Baptist Church of Sutherland Springs, Texas
Frank Pomeroy, Pastor
First Baptist Church
216 4th Street
Sutherland Springs, Texas 78161

This is the church where the shooting occurred. The pastor was not there that morning, but on information and belief lost his daughter and many beloved friends in the massacre. He will have knowledge of their community and relationships and the impact of the shooting.

Danielle Shield Kelley

Married to Airman Devin Kelley at the time of the church shooting.

Tessa Kelley (nee' Loge)

Married to Airman Devin Kelley while he was in the Air Force and reported him for abuse to herself and infant child.

Johnnie Langendorff
Stephen Willeford

Stephen Willeford confronted Kelley and chased him away from the church. Johnnie Langendorff stopped his vehicle to pick up Mr. Willeford and give chase.

Steve Moore
Wilson County Sheriff's Department
Investigator

Harold Schott, Justice of the Peace Pct. #3
Wilson County

Terry Snyder
Texas Ranger Division

3

Texas Department of Public Safety
6100 Guadalupe Street, Building E
Austin, TX 78752
  Investigator and Custodian of Records

Sunland Park Police Department
1000 McNutt Rd
Sunland Park, NM 88063

Tanya Wood


**d. Plaintiffs name the Defendant herein, as well as its agents, representatives, and/or employees or former agents, representatives, or employees, as persons with knowledge of relevant facts. Plaintiffs further name the Defendant, as well as its agents, representatives, and/or employees or former agents, representatives, or employees, as persons from whom expert testimony may be elicited regarding liability, causation and/or damages, although Plaintiffs do not necessarily vouch for all the opinion testimony of such persons. Plaintiffs refer you to the Department of Defense Inspector General reports from 2018, 2017, 2014, and 2015; Defendant's discovery documents; deposition testimony; documents produced by Defendant; and related medical records for the subject matter, facts known, and opinions and impressions of these witnesses.**


Air Force personnel
  Air Force personnel are expected to have knowledge of Kelley's conduct in the Air Force and mental problems, including but not limited to his attempt to bring weapons onto the base to kill officers.

Additional Air Force personnel are provided below:
  Air Force spokesperson, Ann Stefanek. On November 28, 2017, an Air Force spokesperson, Ann Stefanek, admitted that the failure to follow Pentagon guidelines to report Kelley's crimes to the FBI was "not an isolated incident and similar reporting lapses occurred at other locations."

Heather Wilson
Secretary of the Air Force

Deborah Lee James
Secretary of the Air Force

Col. Kirk Stabler

4

Air Force Commander
Headquarters Air Force Office of Special Investigations
Quantico, Virginia

Brig. General Andrea Tullos
Air Force Director
Director of Security Forces
DCS/Logistics, Engineering & Force Protection
Department of the Air Force
Washington, D.C.

Director of Special Investigations
Department of the Air Force
Washington, D.C.

HQ Air Force Office of Special Investigations
Department of the Air Force
Superintendent, IT Integrations HQ AFOSI
Quantico, Virginia

Department of the Air Force
HQ USAF
Washington, D.C.

Deputy Director of Security Forces
DCS/Logistics, Installations & Missions Support

Defense Human Resources Activity
Headquarters
Pamela Mitchell, Director
4800 Mark Center Drive, Suite 06J25-01
Alexandria, VA 22350-4000

Department of the Air Force
HQ Air Force Office of Special Investigations
Quantico, VA
Brigadier General, Keith Givens
USAF Commander

Department of Defense
Under Secretary of Defense for Intelligence
Deputy Chief Management Officer

Department of Defense
Military Criminal Investigative Organizations (MCIOs)

Commanders, Officers, supervisors and employees
Defense Criminal Investigative Organizations (DCIOs)
Commanders, Officers, supervisors and employees

Office of Inspector General for the DOD

The Office of Inspector General for the DOD has issued four reports investigating and detailing the failures of the Air Force and Department of Defense, including negligence, negligent training, and negligent supervision. See attached reports:

Report No. DODIG-2019-030, Inspector General U.S. Department of Defense, Dec. 6, 2018, Report of Investigation into the United States Air Force's Failure to Submit Devin Kelley's Criminal History Information to the Federal Bureau of Investigation; see id. at p. 117, "The USAF concurred with this report and its recommendations." https://www.dodig.mil/reports.html/Article/1707300/reportof-investigation-into-the-united-states-air-forces-failure-to-submit-dev/

Report No. DODIG-2018-035, Inspector General U.S. Department of Defense, Dec. 4, 2017, *Evaluation of Fingerprint Card and Final Disposition Report Submissions by Military Service Law Enforcement Organizations.*
https://www.dodig.mil/reports.html/Search/DODIG-2018-035/

The DOD concluded that training on the submission of fingerprints and final disposition reports was ineffective and lacking, both for AFOSI Detachment 225 and the 49th Security Forces Squadron, and "there was no valid reason for the USAF's failures". *See* p. 111-112; *see also* p. 96-98 (noting "training did not provide instructions on when or how to submit either the fingerprint card or the final disposition report to the FBI CJIS Division"). Indeed, the DOD "determined that this failure to submit Kelley's fingerprints was part of a systemic problem in AFOSI Detachment 225." See p. 94. Worse, the case agent was actually deployed for seven months during the investigation and reported that he complained he could not do his job, stating, "Boss, I'm burnt out, I'm so burnt out." "Boss, I want to get out. I can't do this anymore."

Report No. DODIG-2015-081, Inspector General U.S. Department of Defense, February 12, 2015, *Evaluation of Department of Defense Compliance with Criminal History Data Reporting Requirements*

6

Report No. DODIG-2015-011, Inspector General U.S. Department of Defense, October 29, 2014, *Evaluation of the Defense Criminal Investigative Organizations' Defense Incident-Based Reporting System Reporting and Reporting Accuracy*

Air Force 49th Security Forces Squadron and its investigators, Military Law Enforcement Officers (LEOs), or AFSFC Police Services Branch Confinement Facility

Commanders, Officers, supervisors, employees
The 49th Security Forces Squadron investigated Airman Kelley. The 49th Security Forces squadron investigators and/or Military Law Enforcement Officers (LEOs) had responsibilities to gather fingerprints and report, and thus will have knowledge of their responsibilities, training, and failures. The December 6, 2018, the Inspector General of the DOD issued a 131-page Report titled, *Investigation into the United States Air Force's Failure to Submit Devin Kelley's Criminal History Information to the Federal Bureau of Investigation* concluding that training on the submission of fingerprints and final disposition reports was ineffective and lacking, both for AFOSI Detachment 225 and the 49th Security Forces Squadron, and "there was no valid reason for the USAF's failures". *See* p. 111-112; *see also* p. 96-98 (noting "training did not provide instructions on when or how to submit either the fingerprint card or the final disposition report to the FBI CJIS Division"). Air Force Office of Special Investigations

AFSFC Police Services Branch training focused on collection of fingerprints, but failed to address submitting fingerprint cards and final disposition reports to the FBI CJIS.  Their Management Internal Control Toolset (MICT) checklist items are supposed to be monitored and assessed as part of the installation commander's self-inspection program.  Monthly supervisory reviews were "incomplete and ineffective." *See* Report No. DODIG-2019-030 p. 110.

Airman Kelley's Air Force Commander

Kelley's Commander issued a no contact order and has knowledge of Kelley's conduct and training in the Air Force.

Airman Kelley's Air Force Commander

Kelley's Commander issued a no contact order, prepared a confinement package stating that he was "convinced" that Kelley

was "dangerous and likely to harm someone if released", and has knowledge of Kelley's conduct and training in the Air Force.

Kelley's former Supervisor in the Air Force

Kelley sent a threatening Facebook message to his former supervisor in the Air Force after his discharge.  She will have knowledge of Kelley's conduct and condition and threats.

Case Agent responsible for Airman Kelley

The Case Agent will have knowledge for the reasons he could not properly report Kelley to the FBI, as detailed by the DOD's report.

Boss of Case Agent responsible for Airman Kelley

The boss of the Case Agent will have knowledge for the reasons the Case Agent could not properly report Kelley to the FBI, as detailed by the DOD's report.

Peak Behavioral Health Services and Xavier Alvarez
5055 McNutt Rd.
Santa Teresa, NM 88008

Peak Behavioral Health Services (PBHS) had a program for military personnel and diagnosed Kelley with various mental and emotional disorders. On information and belief, this is the facility from which Kelley attempted to buy guns to kill his commanding officers, and the facility that Kelley escaped from and fled to El Paso.

According to an El Paso police report, police were informed that Kelley "was a danger to himself and others as he had already been caught sneaking firearms onto Holloman Air Force Base". Police were further advised that Airman Kelley "suffered from mental disorders" and that he "was attempting to carry out death threats" against "his military chain of command." Xavier Alvarez, who worked for Peak Behavioral and who reported Kelley to police for the escape, later confirmed to NBC News that Kelley "verbalized that he wanted to get some kind of retribution to his chain of command." Other patients reported that Kelley was doing something suspicious on computers, and the military found that Kelley was "ordering weapons and tactical gear and magazines to a P.O. Box in San Antonio." Alvarez was quoted as saying, "This kid – he was hollow," and "I could never reach him."

Air Force Security Forces Squadron
Holloman Air Force Base

>   Commanders, Officers, supervisors, employees
>   Cmdr. Nathan McLeod-Hughes

Air Force 49th Logistics Readiness Squadron
>   Commanders, Officers, supervisors, employees

Air Force Detachment 225 and/or Holloman Air Force Base Office of Special Investigations

>   Commanders, Officers, Special Agents, supervisors, employees
>   AFOSI Detachment 225 and/or Holloman Air Force Base Office of Special Investigation had responsibilities to gather fingerprints and report, and thus will have knowledge of their responsibilities, training, and failures. The December 6, 2018, the Inspector General of the DOD issued a 131-page Report titled, Investigation into the United States Air Force's Failure to Submit Devin Kelley's Criminal History Information to the Federal Bureau of Investigation concluding that training on the submission of fingerprints and final disposition reports was ineffective and lacking, both for AFOSI Detachment 225 and the 49th Security Forces Squadron, and "there was no valid reason for the USAF's failures". See p. 111-112; see also p. 96-98 (noting "training did not provide instructions on when or how to submit either the fingerprint card or the final disposition report to the FBI CJIS Division").

>   Although AFOSI policy required supervisory reviews to include both I2MS and the investigative case file (record copy), the AFOSI Detachment 225 SAIC and Superintendent focused their reviews on the I2MS activities and not on investigative case files" *See* p. 89. "In sum, we concluded that AFOSI Detachment 225 monthly supervisory reviews of Kelley's investigative case file were incomplete and ineffective".

Air Force Article 32 Investigating Officers

Air Force Prosecutors
>   Air Force prosecutors gathered evidence and handled the conviction of Airman Kelley, and thus have knowledge of his conduct and disposition.

Naval Consolidated Brig
Miramar, California

Commanders, Officers, supervisors, employees

General David Goldfein
Air Force Chief of Staff

General Stephen Wilson
Air Force Vice Chief of Staff

Lt. General Gina Grosso
Air Force Deputy Chief of Staff, Manpower, Personnel & Services

Lt. General John Raymond
Air Force Deputy Chief of Staff, Operations

Lt. General John Cooper, Deputy Chief of Staff, Operations

Air Force Holloman Air Force Base Mental Health Clinic
    HAFB Mental Health Clinic had custody of Kelley in the Air Force

Defense Incidence-Based Reporting System
    Commanders, Officers, supervisors, employees

      e.  **Regarding experts who may be called to testify at the trial in this case, please refer to Plaintiffs' Designation of Experts and any amendments or supplements thereto for additional information regarding the facts known to these witnesses and the bases of their opinions.  These expert designations will be made at the time required by the Court's Scheduling Order. Please also refer to the sworn testimony and written reports of these witnesses for further information regarding the facts known to and opinions held by these witnesses.**

      f.  **Plaintiffs cross-identify as expert witnesses any person named or to be named by Defendant as a person having expert knowledge about any facts surrounding any issues relevant to the incident in question as expert witnesses who Plaintiffs reserve the right to call live at the trial of the cause.  Plaintiffs reserve the right to call such persons as expert witnesses, whether or not the designation is subsequently withdrawn.  Plaintiffs do not have any control over any such witness, nor do they have any superior right to ascertain the subject matter on which any such witness may testify and/or opinions held by any such witness, beyond the information disclosed in deposition testimony and/or by Defendant's discovery responses.  In that regard, Plaintiffs refer you to Defendant's discovery documents, deposition testimony, and documents produced by Defendant for the subject matter, facts known, and opinions and impressions of these witnesses.  Plaintiffs reserve the right to obtain opinion**

**testimony from any such witness within their area of expertise as related to this case.**

(ii)  A copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment;

Plaintiffs refer Defendant to Exhibits 1 – 19 which have been identified and separately served on Defendant as exhibits to the disclosures of Plaintiffs McNulty and incorporated by reference into these disclosures.

In addition, Plaintiffs identify the following exhibits:

Exhibit 52 – Apollo Ambulance medical records (Bates #18-712-1 — 18-712-4)

Exhibit 53 – Brooke Army Medical Center medical records (Bates #18-712-5 - 18-712-2057)

Exhibit 54 – Floresville Residence and Rehabilitation Center medical records (Bates #18-712-2058 — 18-712-2610)

Exhibit 55 – Photographs, Vidal (Bates #18-712-2611 — 18-712-12)

In addition, Plaintiffs are in the possession of the materials maintained by the Texas Rangers related to the incident.  In obtaining these materials, Plaintiffs entered into an agreement with the Texas Attorney General regarding their release.  As such, Plaintiffs will discuss the terms of this agreement with Defendant prior to releasing these materials.

(iii)  A computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered;

Discovery is still in its early stages and it is premature for Plaintiffs to respond to this disclosure; however, please see Plaintiffs' Original Complaint(s) and any

and all amendments thereto for the categories of damages sought by Plaintiffs. Please refer also to Plaintiffs' administrative claims filed with the Government for the maximum amount of damages sought by Plaintiffs in this case.  Please refer to the sworn deposition testimony in this case. Please also refer to Plaintiffs' Designation of Experts and any amendments or supplements thereto for additional information regarding the facts known to these witnesses and the bases of their opinions.  These expert designations will be made at the time required by the Court's Scheduling Order. Please also refer to the sworn testimony and written reports of these witnesses for further information regarding the facts known to and opinions held by these witnesses.

(iv)  For inspection and copying as under Rule 34, any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment.

Not applicable.

Respectfully Submitted,

/s/ Jamal K. Alsaffar
**JAMAL K. ALSAFFAR**
  jalsaffar@nationaltriallaw.com
  Texas State Bar #2402719
**LAURIE HIGGINBOTHAM**
  lhigginbotham@nationaltriallaw.com
  Texas State Bar # 50511759
**TOM JACOB**
  tjacob@nationaltriallaw.com
  Texas State Bar #24069981
**WHITEHURST, HARKNESS, BREES, CHENG, ALSAFFAR, HIGGINBOTHAM, & JACOB P.L.L.C.**
  7500 Rialto Blvd, Bldg. Two, Ste 250
  Austin, TX 78735
  (512) 476-4346 (o)
  (512) 467-4400 (f)

Attorneys for the Plaintiffs

## Certificate of Service

I certify that the foregoing was served on June 27, 2019, via email service and

certified mail, return receipt requested, on the following counsel for the United States.


/s/ Jamal Alsaffar
Jamal Alsaffar

PAUL DAVID STERN
Trial Attorney, Torts Branch
United States Dept. of Justice
Civil Division
United States Department of Justice
P.O. Box 888
Benjamin Franklin Station
Washington, D.C. 20004
T: (202) 616-2197
Paul.David.Stern@usdoj.gov

STEPHEN E. HANDLER
Senior Trial Counsel, Torts Branch
United States Dept. of Justice
Civil Division
United States Department of Justice
P.O. Box 888
Benjamin Franklin Station
Washington, D.C. 20004
T: (202) 616-2197
Stephen.Handler@usdoj.gov

13



IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

|  |  |
|---|---|
| Joe Holcombe, *et al.*,<br>    Plaintiffs,<br><br>v.<br><br>United States of America,<br>    Defendant. | Civil Action No. 5:18-cv-555-XR<br><br>*Consolidated with*:<br>  Nos. 5:18-cv-712-XR; 5:18-cv-881-XR;<br>  5:18-cv-944-XR; 5:18-cv-949-XR;<br>  5:18-cv-951-XR; 5:18-cv-1151-XR;<br>  5:19-cv-184-XR; 5:19-cv-289;<br>  5:19-cv-506 XR; 5:19-cv-678;<br>  5:19-cv-691-XR; 5:19-cv-705;<br>  5:19-cv-706-XR; 5:19-cv-715-XR |

## PLAINTIFF CHARLENE UHL'S, INDIVIDUALLY AND AS PERSONAL REPRESENTATIVE OF THE ESTATE OF HALEY KRUEGER, INITIAL DISCLOSURES PURSUANT TO RULE 26(A)(1)

**(i)** The name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment;

### a. Police Officers and Public Servants

  1. Steve Moore
     Wilson County Sheriff's Department
        Investigator

  2. Harold Schott, Justice of the Peace Pct. #3
     Wilson County

  3. Terry Snyder
     Texas Ranger Division
     Texas Department of Public Safety
     6100 Guadalupe Street, Building E
     Austin, TX 78752
     Investigator and Custodian of Records

1

4. Bexar County Medical Examiner
   7337 Louis Pasteur
   San Antonio, Tx 78229-4565
   Agents, servants and employees, including but not limited to:
   Rajesh P. Kannan, M.D.
   Randall E. Frost, M.D.
   D. Kimberley Molina, M.D.
   Veronica Hargrove, Ph.D.

5. Sunland Park Police Department
   1000 McNutt Rd
   Sunland Park, NM 88063

6. El Paso Police
   Headquarters:
   911 N. Raynor
   El Paso, TX 79903
   (915) 212-4000

7. Police Officers and First Responders to the Scene

**b.  Plaintiff identifies themselves as a person with knowledge of relevant facts pertaining to the incident in question:**

Charlene Uhl
Care of: The Law Offices of Tyler & Peery
5822 IH – 10 West
San Antonio, Texas 78201
P: 210-349-0900
F: 210-736-3059

Ms. Uhl is the wrongful death beneficiary of the Estate of Haley Krueger, her daughter, as well as a Plaintiff in this case. She has knowledge of the traumatic death of her daughter as well as her own trauma, and her attempts to seek treatment, recover and cope, and other elements of damages.

**c.  Plaintiffs identify the following family members, friends, and other persons as persons with knowledge of relevant facts:**

1. Mercy Valdez
   901 W. West St #16 Stockdale Tx, 78160
   (210) 834-4222

Haley considered her an Aunt

2. Bobbie Crasher
   13748 US Highway 87 W La Vernia 78121
   (830) 251-1742
   Haley considered her an aunt

3. Sammy Young
   2455 Jakes colony Rd Seguin Tx  78155
   (210) 268-7799.
   Haley's English Teacher

4. Ann Montgomery
   4346 CR 307 Lavernia Tx 78121
   (210) 854-9538
   Haley was very close to Ann @ First Baptist Church of
   Sutherland Springs

5. Amy Arcos
   4465 Smith Rd #3  Von Ormy Tx 78073
   (210) 209-7388.
   Was the teacher of Haley's brother and came to know Haley very
   well

6. Tessa Kelley (nee' Loge)
   Devin Kelley's former spouse

7. Danielle Kelley
   Devin Kelley's former spouse

8. Academy Sports + Outdoors
   15350 I-35 North, Selma, TX 78154
   Selma, TX 78154
   (210) 637-2600
   Employees, officers and other agents who interacted with and/or
   sold weapons, magazines or ammunition to Devin Kelley, directly or
   otherwise

9. First Baptist Church of Sutherland Springs
   Frank Pomeroy, Pastor
   First Baptist Church
   216 4th Street
   Sutherland Springs, TX 78161

10. Other Plaintiffs and Survivors
    Available for contact through their counsel of record in this case.

11. Stephen Willeford
    Johnnie Langendorff
        These two individuals confronted Kelley and chased him away
        from the church.

12. Ginger Gray
    Abiding Hope Christian Counseling
    19115 Nacogdoches Loop #12
    San Antonio, TX 78266
    (210) 236-7768

13. Leann Drozd and other Courage Ranch employees, staff, counselors
    and their employees and agents.
    3292 TX-97
    Floresville, TX 78114
    (832) 721-3874

**d.  Plaintiffs name the Defendant herein, as well as its agents,
representatives, and/or employees or former agents, representatives,
or employees, as persons with knowledge of relevant facts.  Plaintiffs
further name the Defendant, as well as its agents, representatives,
and/or employees or former agents, representatives, or employees, as
persons from whom expert testimony may be elicited regarding
liability, causation and/or damages, although Plaintiffs do not
necessarily vouch for all the opinion testimony of such persons.
Plaintiffs refer you to the Department of Defense Inspector General
reports from 2018, 2017, 2014, and 2015; Defendant's discovery
documents; deposition testimony; documents produced by
Defendant; and related medical records for the subject matter, facts
known, and opinions and impressions of these witnesses.**

1. Heather Wilson
   Secretary of the Air Force

2. Deborah Lee James
   Secretary of the Air Force

3. Kirk Stabler
   Air Force Commander
   Headquarters Air Force Office of Special Investigations
   Quantico, Virginia

4

4. Brig. General Andrea Tullos
   Air Force Director
   Director of Security Forces
   DCS/Logistics, Engineering & Force Protection
   Department of the Air Force
   Washington, D.C.

5. Director of Special Investigations
   Department of the Air Force
   Washington, D.C.

6. HQ Air Force Office of Special Investigations
   Department of the Air Force
   Superintendent, IT Integrations HQ AFOSI
   Quantico, Virginia

7. Department of the Air Force
   HQ USAF
   Washington, D.C.
   Deputy Director of Security Forces
   DCS/Logistics, Installations & Missions Support

8. Defense Human Resources Activity
   Headquarters
   Pamela Mitchell, Director
   4800 Mark Center Drive, Suite 06J25-01
   Alexandria, VA 22350-4000

9. Department of the Air Force
   HQ Air Force Office of Special Investigations
   Quantico, VA
   Brigadier General, Keith Givens
   USAF Commander

10. Department of Defense
    Under Secretary of Defense for Intelligence
    Deputy Chief Management Officer

11. Department of Defense
    Military Criminal Investigative Organizations (MCIOs)
        Commanders, Officers, supervisors and employees
    Defense Criminal Investigative Organizations (DCIOs)
        Commanders, Officers, supervisors and employees

12. Air Force 49th Security Forces Squadron
    Confinement Facility
    Commanders, Officers, supervisors, employees

13. Air Force Office of Special Investigations
    Commanders, Vice-Commanders, Officers, supervisors, employees

14. Air Force Security Forces Squadron
    Holloman Air Force Base
    Commanders, Officers, supervisors, employees
    Cmdr. Nathan McLeod-Hughes

15. Air Force 49th Logistics Readiness Squadron
    Commanders, Officers, supervisors, employees

16. Air Force Detachment 225, Office of Special Investigations
    Commanders, Officers, Special Agents, supervisors, employees

17. Air Force Article 32 Investigating Officers

18. Naval Consolidated Brig
    Miramar, California
    Commanders, Officers, supervisors, employees
    General David Goldfein
    Air Force Chief of Staff

19. General Stephen Wilson
    Air Force Vice Chief of Staff

20. Lt. General Gina Grosso
    Air Force Deputy Chief of Staff, Manpower, Personnel & Services

21. Lt. General John Raymond
    Air Force Deputy Chief of Staff, Operations

22. Lt. General John Cooper, Deputy Chief of Staff, Operations

23. Air Force Holloman Air Force Base Mental Health Clinic

24. Defense Incidence-Based Reporting System
    Commanders, Officers, supervisors, employees

25. Peak Behavioral Health Services and Xavier Alvarez

5055 McNutt Rd.
Santa Teresa, NM 88008

**e.   Regarding experts who may be called to testify at the trial in this case, please refer to Plaintiffs' Designation of Experts and any amendments or supplements thereto for additional information regarding the facts known to these witnesses and the bases of their opinions.  These expert designations will be made at the time required by the Court's Scheduling Order. Please also refer to the sworn testimony and written reports of these witnesses for further information regarding the facts known to and opinions held by these witnesses.  The following people and entities have provided counseling to Plaintiff for grief and anxiety.**

1.   Ginger Gray
Abiding Hope Christian Counseling
19115 Nacogdoches Loop #12
San Antonio, TX 78266
(210) 236-7768

2.   Leann Drozd and other Courage Ranch employees, staff, counselors and their employees and agents.
3292 TX-97
Floresville, TX 78114
(832) 721-3874

**f.   Plaintiffs cross-identify as expert witnesses any person named or to be named by Defendant as a person having expert knowledge about any facts surrounding any issues relevant to the incident in question as expert witnesses who Plaintiffs reserve the right to call live at the trial of the cause.  Plaintiffs reserve the right to call such persons as expert witnesses, whether or not the designation is subsequently withdrawn.  Plaintiffs do not have any control over any such witness, nor do they have any superior right to ascertain the subject matter on which any such witness may testify and/or opinions held by any such witness, beyond the information disclosed in deposition testimony and/or by Defendant's discovery responses. In that regard, Plaintiffs refer you to Defendant's discovery documents, deposition testimony, and documents produced by Defendant for the subject matter, facts known, and opinions and impressions of these witnesses.  Plaintiffs reserve the right to obtain opinion testimony from any such witness within their area of expertise as related to this case.**

**(ii)**   A copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment;

Exhibit  1 – Inspector General, US Department of Defense, Evaluation of the Defense Criminal Investigative Organizations' Defense Incident-Based Reporting System Reporting and Reporting Accuracy, October 29, 2014. This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit  2 – Inspector General, US Department of Defense, Evaluation of the Defense Compliance with Criminal History Data Reporting Requirements, February 12, 2015. This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit  3 – Inspector General, US Department of Defense, Evaluation Fingerprint Card and Final Disposition Report Submissions by Military Service Law Enforcement Organizations, December 4, 2017. This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit  4 – Inspector General, US Department of Defense, Report of Investigation into the United States Air Force's Failure to Submit Devin Kelley's Criminal History Information to the Federal Bureau of Investigation, December 6, 2018. This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 5  – Department of Defense Directive Number 7730.47, October 15, 1996. This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for

Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 6 – Department of Defense Manual Number 7730.47-M Volume 1, December 7, 2010. This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 7 – U.S. Department of Defense Press Operations, DoD launches review of Devin P. Kelley criminal record notification, Release No. NR-382-17, November 6, 2017. This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 8 – National Instant Criminal Background Check System Indices. This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 9 – U.S. Air Force article, AF Implements Changes to Improve Law Enforcement Database Reporting, November 28, 2017. This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 10 – U.S. Air Force tweet November 9, 2017. This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 11 – Report to the Committee on the Judiciary United States Senate from The Honorable Heather Wilson, Secretary of the Air Force, December 6, 2017. This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel

for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 12 – Questions for the Record for Secretary of the United States Air Force Heather Wilson, December 13, 2017. This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 13 – Misdemeanor Crimes of Domestic Violence. This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 14 – Devin Kelley Trial Transcript. This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 15 – El Paso Incident Report, June 7, 2012. This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 16 – Devin Kelley Court Martial Order. This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 17 – Statement of Danielle Kelley. This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 18 – Devin Kelley Autopsy Report. This document is in the possession of the Defendant and also has been identified and produced to

Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 19 – Life Expectancy Tables. This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 20 – Autopsy Report of H.K., Bexar County Medical Examiner (Bates #18-00555-21000 - #18-00555-21012)

Exhibit 21 – Death Certificate for Haley Krueger (Bates #18-881-32000)

Exhibit 22 – Birth Certificate for Haley Krueger (Bates #18-881-7000)

Exhibit 23 – CD with Photographs of Haley Krueger (Bates #18-881-33000 – #18-881-33168) to be sent by Certified Mail, Return Receipt Requested.

Exhibit 24 – Statement of Glenn A. Fine, Department of Defense Principal Deputy Inspector General, Performing the Duties of the Inspector General for a hearing on "Firearm Accessory Regulation and Enforcing Federal and State Reporting to the National Instant Criminal Background Check System (NICS)", before the Senate Judiciary Committee, December 6, 2017. (Bates #18-881-34000 – #18-881-34008)

   In addition, Plaintiffs are in the possession of the materials maintained by the Texas Rangers related to the incident.  In obtaining these materials, Plaintiffs entered into an agreement with the Texas Attorney General regarding their release.  As such, Plaintiffs will discuss the terms of this agreement with Defendant prior to releasing these materials.

**(iii)   A computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered**;

   Discovery is still in its early stages and it is premature for Plaintiffs to respond to this disclosure; however, please see Plaintiffs' Original Complaint(s) and any and all amendments thereto for the categories of

damages sought by Plaintiffs.   Please refer also to Plaintiffs' administrative claims filed with the Government for the maximum amount of damages sought by Plaintiffs in this case.  Please refer to the sworn deposition testimony in this case. Please also refer to Plaintiffs' Designation of Experts and any amendments or supplements thereto for additional information regarding the facts known to these witnesses and the bases of their opinions. These expert designations will be made at the time required by the Court's Scheduling Order. Please also refer to the sworn testimony and written reports of these witnesses for further information regarding the facts known to and opinions held by these witnesses. Plaintiff additionally seeks to recover funeral expenses and attendant costs.

**(iv)  For inspection and copying as under Rule 34, any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment.**
Not applicable.

Plaintiff also identifies the following documents from the Holcombe Plaintiffs, and incorporates disclosures of all other Plaintiffs by reference.

1.  Inspector General, US Department of Defense, Evaluation of the Defense Criminal Investigative Organizations' Defense Incident-Based Reporting System Reporting and Reporting Accuracy, October 29, 2014.

2.  Inspector General, US Department of Defense, Evaluation of the Defense Compliance with Criminal History Data Reporting Requirements, February 12, 2015.

3.  Inspector General, US Department of Defense, Evaluation of Fingerprint and Final Disposition Report Submissions by Military Service Law Enforcement Organizations, December 4, 2017.

Respectfully submitted,

TYLER & PEERY
5822 IH 10 West
San Antonio, Texas 78201
(210) 340-0900 PHONE
(210) 736-9197 FACSIMILE

/s/ Dennis C. Peery
DENNIS PEERY
State Bar No. 15728750
Email:  d.peery@tylerpeery.com
R. CRAIG BETTIS
State Bar No. 24040518
Email: craig@tylerpeery.com

ATTORNEYS FOR PLAINTIFF UHL

## Certificate of Service

I certify that the foregoing was served on June 27, 2019, via email service and certified mail, return receipt requested, on the following counsel for the United States.

/s/ Dennis C. Peery
Dennis C. Peery

PAUL DAVID STERN
Trial Attorney, Torts Branch
United States Dept. of Justice
Civil Division
United States Department of Justice
P.O. Box 888
Benjamin Franklin Station
Washington, D.C. 20004
T: (202) 616-2197
Paul.David.Stern@usdoj.gov

STEPHEN E. HANDLER
Senior Trial Counsel, Torts Branch
United States Dept. of Justice
Civil Division
United States Department of Justice
P.O. Box 888
Benjamin Franklin Station
Washington, D.C. 20004
T: (202) 616-2197
Stephen.Handler@usdoj.gov

# G

<div align="center">

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

</div>

| | |
|---|---|
| Joe Holcombe, *et al.*,<br>　　　Plaintiffs,<br><br>v.<br><br>United States of America,<br>　　　Defendant. | Civil Action No. 5:18-cv-555-XR<br><br>*Consolidated with*:<br>　Nos. 5:18-cv-712-XR; 5:18-cv-881-XR;<br>　5:18-cv-944-XR; 5:18-cv-949-XR;<br>　5:18-cv-951-XR; 5:18-cv-1151-XR;<br>　5:19-cv-184-XR; 5:19-cv-289;<br>　5:19-cv-506 XR; 5:19-cv-678;<br>　5:19-cv-691-XR; 5:19-cv-705;<br>　5:19-cv-706-XR; 5:19-cv-715-XR |

**PLAINTIFFS GARY RAMSEY AND RONALD RAMSEY, JR., INDIVIDUALLY AND AS INDEPENDENT CO-ADMINISTRATORS OF THE ESTATE OF THERESE JOANN RODRIGUEZ, DECEASED'S, INITIAL DISCLOSURES PURSUANT TO RULE 26(A)(1)**

Plaintiffs Gary Ramsey and Ronald Ramsey, Jr., Individually and as Independent Co-Administrators of the Estate of Therese Joann Rodriguez, Deceased ("Plaintiffs"), serve these their initial disclosures pursuant to Rule 26 of the Federal Rules of Civil Procedure Rule 26(a)(1)(A):

(i)　*The name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment;*

**a.　Plaintiffs hereby designate as persons with knowledge the health care providers referenced in the related health care records in this case, including physicians, technicians, nurses, radiologists, physician's assistants, physical therapists, clinics, hospitals, pharmacies, and their agents, representatives, and employees. While these health care providers are not within the control of Plaintiffs and have not been retained by Plaintiffs as expert witnesses, Plaintiffs reserve the right to elicit opinion testimony from any such health care provider, including expert testimony regarding liability, causation, and damages from those treating healthcare providers relating to the medical treatment provided to the Plaintiffs. To the extent it is**

<div align="center">1</div>

necessary to call live at the trial or by deposition in this cause any agents, representatives, employees and/or custodian of records for any of the following health care providers, Plaintiffs identify any such custodian as a person who may have expert knowledge regarding issues related to the incident in question to include personal knowledge of the records and concerning the necessity of services rendered and referenced in the records and concerning the reasonableness of the medical bills charged and referenced in the records of the following health care providers.  For the mental impressions held by and the opinions of and facts known by any of the following witnesses, please refer to the related health care records of the Plaintiffs.

Harold Schott, Justice of the Peace Pct. #3
Wilson County
402 Bluebonnet
La Vernia, TX 78121

**b.   Plaintiffs identify themselves as persons with knowledge of relevant facts pertaining to the incident in question:**

Gary Ramsey
c/o Robert E. Ammons & April A. Strahan
The Ammons Law Firm
3700 Montrose Blvd.
Houston, TX 77006
and
Tim Maloney & Paul Campolo
Maloney & Campolo
926 S. Alamo
San Antonio, Texas 78205

Gary Ramsey is the wrongful death beneficiary of Therese Rodriguez, his mother, and is a Plaintiff in this case. He has knowledge of the traumatic death of his mother, as well as his own grief, trauma and other elements of damages.

Ronald Ramsey, Jr.
c/o Robert E. Ammons & April A. Strahan
The Ammons Law Firm
3700 Montrose Blvd.
Houston, TX 77006
and
Tim Maloney & Paul Campolo
Maloney & Campolo
926 S. Alamo
San Antonio, Texas 78205

Ronald Ramsey, Jr. is the wrongful death beneficiary of Therese Rodriguez, his mother, and is a Plaintiff in this case. He has knowledge of the traumatic death of his mother, as well as his own grief, trauma and other elements of damages.

**c.  Plaintiffs identify the following family members, friends, and other persons as persons with knowledge of relevant facts:**

Academy Sports + Outdoors in San Antonio
> Kelley bought a Ruger 5.56 mm assault rifle from Academy Sports + Outdoors in San Antonio after clearing a background check of the NICS. Store personnel will have knowledge of the transaction.

El Paso Police
Headquarters:
911 N. Raynor
El Paso, TX 79903
(915) 212-4000
> The El Paso police apprehended Kelley after he escaped. See Exhibit 15.

First Baptist Church of Sutherland Springs, Texas
Frank Pomeroy, Pastor
First Baptist Church
216 4th Street
Sutherland Springs, Texas 78161
> This is the church where the shooting occurred. The pastor was not there that morning, but on information and belief lost his daughter and many beloved friends in the massacre. He will have knowledge of their community and relationships and the impact of the shooting.

Danielle Shield Kelley
> Married to Airman Devin Kelley at the time of the church shooting.

Tessa Kelley (nee' Loge)
> Married to Airman Devin Kelley while he was in the Air Force and reported him for abuse to herself and infant child.

Johnnie Langendorff
Stephen Willeford
> Stephen Willeford confronted Kelley and chased him away from the church. Johnnie Langendorff stopped his vehicle to pick up Mr. Willeford and give chase.

Steve Moore
Wilson County Sheriff's Department
     Investigator

Harold Schott, Justice of the Peace Pct. #3
Wilson County
402 Bluebonnet
La Vernia, TX 78121

Terry Snyder
Texas Ranger Division
Texas Department of Public Safety
6100 Guadalupe Street, Building E
Austin, TX 78752
     Investigator and Custodian of Records

Sunland Park Police Department
1000 McNutt Rd
Sunland Park, NM 88063
     Tanya Wood

Grace Bible Church
Erin Weaver, Pastor
390 FM 1346 S
La Vernia, TX 78121
     This is the Church where Therese Rodriguez's (as well as her husband's) funeral services were held.


**d.  Plaintiffs name the Defendant herein, as well as its agents, representatives, and/or employees or former agents, representatives, or employees, as persons with knowledge of relevant facts.  Plaintiffs further name the Defendant, as well as its agents, representatives, and/or employees or former agents, representatives, or employees, as persons from whom expert testimony may be elicited regarding liability, causation and/or damages, although Plaintiffs do not necessarily vouch for all the opinion testimony of such persons.  Plaintiffs refer you to the Department of Defense Inspector General reports from 2018, 2017, 2014, and 2015; Defendant's discovery documents; deposition testimony; documents produced by Defendant; and related medical records for the subject matter, facts known, and opinions and impressions of these witnesses.**

Air Force personnel
> Air Force personnel are expected to have knowledge of Kelley's conduct in the Air Force and mental problems, including but not limited to his attempt to bring weapons onto the base to kill officers.

Additional Air Force personnel are provided below:
> Air Force spokesperson, Ann Stefanek. On November 28, 2017, an Air Force spokesperson, Ann Stefanek, admitted that the failure to follow Pentagon guidelines to report Kelley's crimes to the FBI was "not an isolated incident and similar reporting lapses occurred at other locations."

Heather Wilson
Secretary of the Air Force

Deborah Lee James
Secretary of the Air Force

Col. Kirk Stabler
Air Force Commander
Headquarters Air Force Office of Special Investigations
Quantico, Virginia

Brig. General Andrea Tullos
Air Force Director
Director of Security Forces
DCS/Logistics, Engineering & Force Protection
Department of the Air Force
Washington, D.C.

Director of Special Investigations
Department of the Air Force
Washington, D.C.

HQ Air Force Office of Special Investigations
Department of the Air Force
Superintendent, IT Integrations HQ AFOSI
Quantico, Virginia

Department of the Air Force
HQ USAF
Washington, D.C.

Deputy Director of Security Forces
DCS/Logistics, Installations & Missions Support

Defense Human Resources Activity
Headquarters
Pamela Mitchell, Director
4800 Mark Center Drive, Suite 06J25-01
Alexandria, VA 22350-4000

Department of the Air Force
HQ Air Force Office of Special Investigations
Quantico, VA
Brigadier General, Keith Givens
USAF Commander

Department of Defense
Under Secretary of Defense for Intelligence
Deputy Chief Management Officer

Department of Defense
Military Criminal Investigative Organizations (MCIOs)
 Commanders, Officers, supervisors and employees
Defense Criminal Investigative Organizations (DCIOs)
 Commanders, Officers, supervisors and employees

Office of Inspector General for the DOD

 The Office of Inspector General for the DOD has issued four reports investigating and detailing the failures of the Air Force and Department of Defense, including negligence, negligent training, and negligent supervision. See attached reports:

 Report No. DODIG-2019-030, Inspector General U.S. Department of Defense, Dec. 6, 2018, Report of Investigation into the United States Air Force's Failure to Submit Devin Kelley's Criminal History Information to the Federal Bureau of Investigation; see id. at p. 117, "The USAF concurred with this report and its recommendations."
https://www.dodig.mil/reports.html/Article/1707300/reportof-investigation-into-the-united-states-air-forces-failure-to-submit-dev/

 Report No. DODIG-2018-035, Inspector General U.S. Department of Defense, Dec. 4, 2017, *Evaluation of Fingerprint Card and Final Disposition Report Submissions by Military Service Law Enforcement Organizations*.
https://www.dodig.mil/reports.html/Search/DODIG-2018-035/

The DOD concluded that training on the submission of fingerprints and final disposition reports was ineffective and lacking, both for AFOSI Detachment 225 and the 49th Security Forces Squadron, and "there was no valid reason for the USAF's failures". *See* p. 111-112; *see also* p. 96-98 (noting "training did not provide instructions on when or how to submit either the fingerprint card or the final disposition report to the FBI CJIS Division"). Indeed, the DOD "determined that this failure to submit Kelley's fingerprints was part of a systemic problem in AFOSI Detachment 225." See p. 94. Worse, the case agent was actually deployed for seven months during the investigation and reported that he complained he could not do his job, stating, "Boss, I'm burnt out, I'm so burnt out." "Boss, I want to get out. I can't do this anymore."

Report No. DODIG-2015-081, Inspector General U.S. Department of Defense, February 12, 2015, *Evaluation of Department of Defense Compliance with Criminal History Data Reporting Requirements*

Report No. DODIG-2015-011, Inspector General U.S. Department of Defense, October 29, 2014, *Evaluation of the Defense Criminal Investigative Organizations' Defense Incident-Based Reporting System Reporting and Reporting Accuracy*

Air Force 49th Security Forces Squadron and its investigators, Military Law Enforcement Officers (LEOs), or AFSFC Police Services Branch Confinement Facility Commanders, Officers, supervisors, employees

The 49th Security Forces Squadron investigated Airman Kelley. The 49th Security Forces squadron investigators and/or Military Law Enforcement Officers (LEOs) had responsibilities to gather fingerprints and report, and thus will have knowledge of their responsibilities, training, and failures. The December 6, 2018, the Inspector General of the DOD issued a 131-page Report titled, *Investigation into the United States Air Force's Failure to Submit Devin Kelley's Criminal History Information to the Federal Bureau of Investigation* concluding that training on the submission of fingerprints and final disposition reports was ineffective and lacking, both for AFOSI Detachment 225 and the 49th Security Forces Squadron, and "there was no valid reason for the USAF's failures". *See* p. 111-112; *see also* p. 96-98 (noting "training did not provide instructions on when or how to submit either the fingerprint card or the final disposition report to the FBI CJIS Division").

AFSFC Police Services Branch training focused on collection of fingerprints but failed to address submitting fingerprint cards and final disposition reports to the FBI CJIS.  Their Management Internal Control Toolset (MICT) checklist items are supposed to be monitored and assessed as

part of the installation commander's self-inspection program.  Monthly supervisory reviews were "incomplete and ineffective. *See* Report No. DODIG-2019-030 p. 110.

Airman Kelley's Air Force Commander

Kelley's Commander issued a no contact order and has knowledge of Kelley's conduct and training in the Air Force.

Airman Kelley's Air Force Commander

Kelley's Commander issued a no contact order, prepared a confinement package stating that he was "convinced" that Kelley was "dangerous and likely to harm someone if released", and has knowledge of Kelley's conduct and training in the Air Force.

Kelley's former Supervisor in the Air Force

Kelley sent a threatening Facebook message to his former supervisor in the Air Force after his discharge.  She will have knowledge of Kelley's conduct and condition and threats.

Case Agent responsible for Airman Kelley

The Case Agent will have knowledge for the reasons he could not properly report Kelley to the FBI, as detailed by the DOD's report.

Boss of Case Agent responsible for Airman Kelley

The boss of the Case Agent will have knowledge for the reasons the Case Agent could not properly report Kelley to the FBI, as detailed by the DOD's report.

Peak Behavioral Health Services and Xavier Alvarez
5055 McNutt Rd.
Santa Teresa, NM 88008

Peak Behavioral Health Services (PBHS) had a program for military personnel and diagnosed Kelley with various mental and emotional disorders. On information and belief, this is the facility from which Kelley attempted to buy guns to kill his commanding officers, and the facility that Kelley escaped from and fled to El Paso.

According to an El Paso police report, police were informed that Kelley "was a danger to himself and others as he had already been caught sneaking firearms onto Holloman Air Force Base". Police were further advised that Airman Kelley "suffered from mental disorders" and that he "was attempting to carry out death threats" against "his military chain of command." Xavier Alvarez, who worked for Peak Behavioral and who reported Kelley to police for the escape, later confirmed to NBC News that Kelley "verbalized that he wanted to get some kind of retribution to his chain of command." Other patients reported that Kelley was doing something suspicious on computers, and the military found that Kelley was "ordering weapons and tactical gear and magazines to a P.O. Box in San Antonio." Alvarez was quoted as saying, "This kid – he was hollow," and "I could never reach him."

Air Force Security Forces Squadron
Holloman Air Force Base

      Commanders, Officers, supervisors, employees
      Cmdr. Nathan McLeod-Hughes

Air Force 49th Logistics Readiness Squadron
      Commanders, Officers, supervisors, employees

Air Force Detachment 225 and/or Holloman Air Force Base Office of Special Investigations

      Commanders, Officers, Special Agents, supervisors, employees
      AFOSI Detachment 225 and/or Holloman Air Force Base Office of Special Investigation had responsibilities to gather fingerprints and report, and thus will have knowledge of their responsibilities, training, and failures. The December 6, 2018, the Inspector General of the DOD issued a 131-page Report titled, Investigation into the United States Air Force's Failure to Submit Devin Kelley's Criminal History Information to the Federal Bureau of Investigation concluding that training on the submission of fingerprints and final disposition reports was ineffective and lacking, both for AFOSI Detachment 225 and the 49th Security Forces Squadron, and "there was no valid reason for the USAF's failures". See p. 111-112; see also p. 96-98 (noting "training did not provide instructions on when or how to submit either the fingerprint card or the final disposition report to the FBI CJIS Division").

Although AFOSI policy required supervisory reviews to include both I2MS and the investigative case file (record copy), the AFOSI Detachment 225 SAIC and Superintendent focused their reviews on the I2MS activities and

not on investigative case files" *See* p. 89. "In sum, we concluded that AFOSI Detachment 225 monthly supervisory reviews of Kelley's investigative case file were incomplete and ineffective".

Air Force Article 32 Investigating Officers

Air Force Prosecutors
> Air Force prosecutors gathered evidence and handled the conviction of Airman Kelley, and thus have knowledge of his conduct and disposition.

Naval Consolidated Brig
Miramar, California
> Commanders, Officers, supervisors, employees

General David Goldfein
Air Force Chief of Staff

General Stephen Wilson
Air Force Vice Chief of Staff

Lt. General Gina Grosso
Air Force Deputy Chief of Staff, Manpower, Personnel & Services

Lt. General John Raymond
Air Force Deputy Chief of Staff, Operations

Lt. General John Cooper, Deputy Chief of Staff, Operations

Air Force Holloman Air Force Base Mental Health Clinic
> HAFB Mental Health Clinic had custody of Kelley in the Air Force

Defense Incidence-Based Reporting System
> Commanders, Officers, supervisors, employees

   **e.   Regarding experts who may be called to testify at the trial in this case, please refer to Plaintiffs' Designation of Experts and any amendments or supplements thereto for additional information regarding the facts known to these witnesses and the bases of their opinions.  These expert designations will be made at the time required by the Court's Scheduling Order. Please also refer to the sworn testimony and written reports of these witnesses for further information regarding the facts known to and opinions held by these witnesses.**

    **f.   Plaintiffs cross-identify as expert witnesses any person named or to be named by Defendant as a person having expert knowledge about any facts surrounding any issues relevant to the incident in question as expert witnesses who Plaintiffs reserve the right to call live at the trial of the cause.  Plaintiffs reserve the right to call such persons as expert witnesses, whether or not the designation is subsequently withdrawn.  Plaintiffs do not have any control over any such witness, nor do they have any superior right to ascertain the subject matter on which any such witness may testify and/or opinions held by any such witness, beyond the information disclosed in deposition testimony and/or by Defendant's discovery responses.  In that regard, Plaintiffs refer you to Defendant's discovery documents, deposition testimony, and documents produced by Defendant for the subject matter, facts known, and opinions and impressions of these witnesses.  Plaintiffs reserve the right to obtain opinion testimony from any such witness within their area of expertise as related to this case.**

*(ii)   A copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment;*

1.   Inspector General, US Department of Defense, Evaluation of the Defense Criminal Investigative Organizations' Defense Incident-Based Reporting System Reporting and Reporting Accuracy, October 29, 2014 (Bates #18-949-1 – 18-949-40).  This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949).  Plaintiff remains willing to produce an additional copy if requested.

2.   Inspector General, US Department of Defense, Evaluation of the Defense Compliance with Criminal History Data Reporting Requirements, February 12, 2015 (Bates #18-949-41 – 18-949-76). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

3.   Inspector General, US Department of Defense, Evaluation Fingerprint Card and Final Disposition Report Submissions by Military Service Law Enforcement Organizations, December 4, 2017 (Bates #18-949-77 – 18-949-168). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

4.    Inspector General, US Department of Defense, Report of Investigation into the United States Air Force's Failure to Submit Devin Kelley's Criminal History Information to the Federal Bureau of Investigation, December 6, 2018 (Bates #18-949-169 – 18-949-306). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

5.    Department of Defense Directive Number 7730.47, October 15, 1996 (Bates #18-949-307 – 18-949-315). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

6.    Department of Defense Manual Number 7730.47-M Volume 1, December 7, 2010 (Bates #18-949-316 – 18-949-398). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

7.    U.S. Department of Defense Press Operations, DoD launches review of Devin P. Kelley criminal record notification, Release No. NR-382-17, November 6, 2017 (Bates #18-949-399). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

8.    National Instant Criminal Background Check System Indices (Bates #18-949-400 – 18-949-401). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

9.    U.S. Air Force article, AF Implements Changes to Improve Law Enforcement Database Reporting, November 28, 2017 (Bates #18-949-402). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

10.   U.S. Air Force tweet November 9, 2017 (Bates #18-949-403). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the

claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

11.    Report to the Committee on the Judiciary United States Senate from The Honorable Heather Wilson, Secretary of the Air Force, December 6, 2017 (Bates #18-949-404 – 18-949-405). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

12.    Questions for the Record for Secretary of the United States Air Force Heather Wilson, December 13, 2017 (Bates #18-949-406 – 18-949-410). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

13.    Misdemeanor Crimes of Domestic Violence (Bates #18-949-411). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

14.    Devin Kelley Trial Transcript (Bates #18-949-412 – 18-949-1022). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

15.    El Paso Incident Report, June 7, 2012 (Bates #18-949-1023 – 18-949-1028). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

16.    Devin Kelley Court Martial Order (Bates #18-949-1029 – 18-949-1034). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

17.    Statement of Danielle Kelley (Bates #18-949-1035). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the

claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

18.     Devin Kelley Autopsy Report (Bates #18-949-1036 – 18-949-1037). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

19.     Life Expectancy Tables (Bates #18-949-1038 – 18-949-1101). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

20.     Therese Rodriguez Death Certificate (Bates #18-944-1 – 18-944-2)

21.     Therese Rodriguez Funeral Expenses (Bates #18-944-3)

22.     Therese Rodriguez Obituary (Bates #18-944-4 – 18-944-5)

23.     Therese Rodriguez Family Photos (Bates #18-944-6 – 18-944-15)

24.     News Article Re: Rodriguez Family Funeral (Bates #18-944-16 – 18-944-20)

In addition, Plaintiffs are in the possession of the materials maintained by the Texas Rangers related to the incident.  In obtaining these materials, Plaintiffs entered into an agreement with the Texas Attorney General regarding their release.  As such, Plaintiffs will discuss the terms of this agreement with Defendant prior to releasing these materials.

*(iii)     A computation of each category of damages claimed by the disclosing party— who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered;*

Discovery is still in its early stages, and it is premature for Plaintiffs to respond to this disclosure; however, please see Plaintiffs' Original Complaint(s) and any and all amendments thereto for the categories of damages sought by Plaintiffs.  Please refer also to Plaintiffs' administrative claims filed with the Government for the maximum amount of damages sought by Plaintiffs in this case.  Please refer to the sworn deposition testimony in this case.  Please also refer to Plaintiffs' Designation of Experts and any amendments or supplements thereto for additional information regarding the facts known to these witnesses and the bases of their opinions.  These expert

designations will be made at the time required by the Court's Scheduling Order.  Please also refer to the sworn testimony and written reports of these witnesses for further information regarding the facts known to and opinions held by these witnesses.

Additionally, as set forth in their Complaint, Gary Ramsey and Ronald Ramsey, Jr.'s mother, Therese Joann Rodriguez, was shot and killed on November 5, 2017, with firearms that should have been denied to Devin Kelley. As a result of the negligence of the United States employees, agents, or representatives, Gary Ramsey and Ronald Ramsey, Jr. suffered past and future damages, for which recovery is sought, including:

- Past and future loss of companionship and society, meaning the loss of the positive benefits flowing from the love, comfort, companionship, and society that Gary Ramsey and Ronald Ramsey, Jr., in reasonable probability, would have received from Therese Joann Rodriguez, had she lived.

- Past and future mental anguish, meaning the emotional pain, torment, and suffering experienced by Gary Ramsey and Ronald Ramsey, Jr. because of the death of Therese Joann Rodriguez.

- Past and future pecuniary loss, meaning the loss of the care, maintenance, support, services, advice, counsel, and reasonable contributions of a pecuniary value, excluding loss of inheritance, that Gary Ramsey and Ronald Ramsey, Jr., in reasonable probability, would have received from Therese Joann Rodriguez, had she lived.

- Loss of inheritance, meaning the loss of the present value of the assets that Therese Joann Rodriguez, deceased, in reasonable probability, would have added to the estate and left at natural death to Gary Ramsey and Ronald Ramsey, Jr.

In addition, Gary Ramsey and Ronald Ramsey, Jr. seek recovery of all other damages to which they are entitled pursuant to the applicable state and federal law.


*(iv)    For inspection and copying as under Rule 34, any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment.*


Not applicable.

Respectfully Submitted,

**THE AMMONS LAW FIRM, L.L.P.**

 /s/ April A. Strahan
Robert E. Ammons
Texas State Bar # 01159820
Email: rob@ammonslaw.com
April A. Strahan
Texas State Bar # 24056387
Email: april@ammonslaw.com
3700 Montrose Boulevard
Houston, Texas 77006
Telephone:      713-523-1606
Facsimile:      713-523-4159
        *and*
Tim Maloney
Texas State Bar # 12887380
Email: tmaloney@maloneyandcampolo.com
Paul E. Campolo
Texas State Bar # 03730150
Email: pcampolo@maloneyandcampolo.com
**MALONEY & CAMPOLO, L.L.P.**
926 S. Alamo
San Antonio, Texas 78205
Telephone:      210-922-2200
Facsimile:      210-923-1313
*Attorneys for Plaintiffs Gary Ramsey, Individually
and as Independent Co-Administrator of the Estate
of Therese Joann Rodriguez, Deceased, and Ronald
Ramsey, Jr., Individually and as Independent Co-
Administrator of the Estate of Therese Joann
Rodriguez, Deceased*

**Certificate of Service**

I certify that the foregoing was served on June 27, 2019, via email service and United States Mail on the following counsel for the United States.

/s/ April A. Strahan
April A. Strahan

PAUL DAVID STERN
Trial Attorney, Torts Branch
United States Dept. of Justice
Civil Division
United States Department of Justice
P.O. Box 888
Benjamin Franklin Station
Washington, D.C. 20004
T: (202) 616-2197
Paul.David.Stern@usdoj.gov

STEPHEN E. HANDLER
Senior Trial Counsel, Torts Branch
United States Dept. of Justice
Civil Division
United States Department of Justice
P.O. Box 888
Benjamin Franklin Station
Washington, D.C. 20004
T: (202) 616-2197
Stephen.Handler@usdoj.gov



IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

Joe Holcombe, *et al.*,
   Plaintiffs,

v.

United States of America,
   Defendant.

Civil Action No. 5:18-cv-555-XR

*Consolidated with*:
  Nos. 5:18-cv-712-XR; 5:18-cv-881-XR;
  5:18-cv-944-XR; 5:18-cv-949-XR;
  5:18-cv-951-XR; 5:18-cv-1151-XR;
  5:19-cv-184-XR; 5:19-cv-289;
  5:19-cv-506 XR; 5:19-cv-678;
  5:19-cv-691-XR; 5:19-cv-705;
  5:19-cv-706-XR; 5:19-cv-715-XR

## PLAINTIFF LISA MCNULTY'S, INDIVIDUALLY AND AS PERSONAL REPRESENTATIVE OF THE ESTATE OF TARA MCNULTY, AND AS LEGAL GUARDIAN OF H.M. AND J.M., TWO MINOR CHILDREN, INITIAL DISCLOSURES PURSUANT TO RULE 26(A)(1)

(i)    The name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment;

    **a.  Plaintiffs hereby designate as persons with knowledge the health care providers referenced in the related health care records in this case, including physicians, technicians, nurses, radiologists, physician's assistants, physical therapists, clinics, hospitals, pharmacies, and their agents, representatives, and employees.  While these health care providers are not within the control of Plaintiffs and have not been retained by Plaintiffs as expert witnesses, Plaintiffs reserve the right to elicit opinion testimony from any such health care provider, including expert testimony regarding liability, causation, and damages from those treating healthcare providers relating to the medical treatment provided to the Plaintiffs. To the extent it is necessary to call live at the trial or by deposition in this cause any agents, representatives, employees and/or custodian of records for any of the following health care providers, Plaintiffs identify any such custodian as a person who may have expert knowledge regarding issues related to the incident in question to include**

1

personal knowledge of the records and concerning the necessity of services rendered and referenced in the records and concerning the reasonableness of the medical bills charged and referenced in the records of the following health care providers. For the mental impressions held by and the opinions of and facts known by any of the following witnesses, please refer to the related health care records of the Plaintiffs.

American Medical Response
11911 Radium St.
San Antonio, TX 78216

Brooke Army Medical Center
3551 Roger Brooke Dr.
Fort Sam Houston, TX 78234

The Center for the Intrepid
3851 Roger Brooke Dr.
San Antonio, TX 78219

Bexar County Medical Examiner
7337 Louis Pasteur
San Antonio, Tx 78229-4565
Agents, servants and employees, including but not limited to:
    Rajesh P. Kannan, M.D.
    Randall E. Frost, M.D.
    D. Kimberley Molina, M.D.
    Veronica Hargrove, Ph.D.

Travis County Medical Examiner
1213 Sabine Street
Austin, Texas 78701
Agents, servants and employees, including but not limited to:
    J. Keith Pinckard, MD, PhD, D-ABP, F-ABM
    Vickie L. Willoughby, DO

**b. Plaintiffs identify themselves as persons with knowledge of relevant facts pertaining to the incident in question:**

Lisa McNulty
c/o Jamal Alsaffar
Whitehurst, Harkness, Brees, Cheng, Alsaffar,
 Higginbotham, & Jacob, PLLC
7500 Rialto Blvd., Bldg. Two
Suite 250
Austin, TX 78735

H.M., a minor
c/o Jamal Alsaffar
Whitehurst, Harkness, Brees, Cheng, Alsaffar,
 Higginbotham, & Jacob, PLLC
7500 Rialto Blvd., Bldg. Two
Suite 250
Austin, TX 78735

J.M., a minor
c/o Jamal Alsaffar
Whitehurst, Harkness, Brees, Cheng, Alsaffar,
 Higginbotham, & Jacob, PLLC
7500 Rialto Blvd., Bldg. Two
Suite 250
Austin, TX 78735

**c.  Plaintiffs identify the following family members, friends, and other persons as persons with knowledge of relevant facts:**

Academy Sports + Outdoors in San Antonio
> Kelley bought a Ruger 5.56 mm assault rifle from Academy Sports + Outdoors in San Antonio after clearing a background check of the NICS. Store personnel will have knowledge of the transaction.

El Paso Police
Headquarters:
911 N. Raynor
El Paso, TX 79903
(915) 212-4000
> The El Paso police apprehended Kelley after he escaped. See Exhibit 15.

First Baptist Church of Sutherland Springs, Texas
Frank Pomeroy, Pastor
First Baptist Church
216 4th Street
Sutherland Springs, Texas 78161
> This is the church where the shooting occurred. The pastor was not there that morning, but on information and belief lost his daughter and many beloved friends in the massacre. He will have knowledge of their community and relationships and the impact of the shooting.

3

Danielle Shield Kelley
> Married to Airman Devin Kelley at the time of the church shooting.

Tessa Kelley (nee' Loge)
> Married to Airman Devin Kelley while he was in the Air Force and reported him for abuse to herself and infant child.

Johnnie Langendorff
Stephen Willeford
> Stephen Willeford confronted Kelley and chased him away from the church. Johnnie Langendorff stopped his vehicle to pick up Mr. Willeford and give chase.

Steve Moore
Wilson County Sheriff's Department
> Investigator

Harold Schott, Justice of the Peace Pct. #3
Wilson County

Terry Snyder
Texas Ranger Division
Texas Department of Public Safety
6100 Guadalupe Street, Building E
Austin, TX 78752
> Investigator and Custodian of Records

Sunland Park Police Department
1000 McNutt Rd
Sunland Park, NM 88063

Tanya Wood


**d.  Plaintiffs name the Defendant herein, as well as its agents, representatives, and/or employees or former agents, representatives, or employees, as persons with knowledge of relevant facts.  Plaintiffs further name the Defendant, as well as its agents, representatives, and/or employees or former agents, representatives, or employees, as persons from whom expert testimony may be elicited regarding liability, causation and/or damages, although Plaintiffs do not necessarily vouch for all the opinion testimony of such persons.  Plaintiffs refer you to the Department of Defense Inspector General reports from 2018, 2017, 2014, and 2015; Defendant's discovery documents; deposition testimony; documents produced by Defendant; and**

related medical records for the subject matter, facts known, and opinions and impressions of these witnesses.

Air Force personnel
> Air Force personnel are expected to have knowledge of Kelley's conduct in the Air Force and mental problems, including but not limited to his attempt to bring weapons onto the base to kill officers.

Additional Air Force personnel are provided below:
> Air Force spokesperson, Ann Stefanek. On November 28, 2017, an Air Force spokesperson, Ann Stefanek, admitted that the failure to follow Pentagon guidelines to report Kelley's crimes to the FBI was "not an isolated incident and similar reporting lapses occurred at other locations."

Heather Wilson
Secretary of the Air Force

Deborah Lee James
Secretary of the Air Force

Col. Kirk Stabler
Air Force Commander
Headquarters Air Force Office of Special Investigations
Quantico, Virginia

Brig. General Andrea Tullos
Air Force Director
Director of Security Forces
DCS/Logistics, Engineering & Force Protection
Department of the Air Force
Washington, D.C.

Director of Special Investigations
Department of the Air Force
Washington, D.C.

HQ Air Force Office of Special Investigations
Department of the Air Force
Superintendent, IT Integrations HQ AFOSI
Quantico, Virginia

Department of the Air Force
HQ USAF

Washington, D.C.

Deputy Director of Security Forces
DCS/Logistics, Installations & Missions Support

Defense Human Resources Activity
Headquarters
Pamela Mitchell, Director
4800 Mark Center Drive, Suite 06J25-01
Alexandria, VA 22350-4000

Department of the Air Force
HQ Air Force Office of Special Investigations
Quantico, VA
Brigadier General, Keith Givens
USAF Commander

Department of Defense
Under Secretary of Defense for Intelligence
Deputy Chief Management Officer

Department of Defense
Military Criminal Investigative Organizations (MCIOs)
        Commanders, Officers, supervisors and employees
Defense Criminal Investigative Organizations (DCIOs)
        Commanders, Officers, supervisors and employees

Office of Inspector General for the DOD

> The Office of Inspector General for the DOD has issued four reports
> investigating and detailing the failures of the Air Force and
> Department of Defense, including negligence, negligent training,
> and negligent supervision. See attached reports:

> Report No. DODIG-2019-030, Inspector General U.S. Department
> of Defense, Dec. 6, 2018, Report of Investigation into the United
> States Air Force's Failure to Submit Devin Kelley's Criminal History
> Information to the Federal Bureau of Investigation; see id. at p. 117,
> "The USAF concurred with this report and its recommendations."
> https://www.dodig.mil/reports.html/Article/1707300/reportof-
> investigation-into-the-united-states-air-forces-failure-to-submit-
> dev/

Report No. DODIG-2018-035, Inspector General U.S. Department of Defense, Dec. 4, 2017, *Evaluation of Fingerprint Card and Final Disposition Report Submissions by Military Service Law Enforcement Organizations*.
https://www.dodig.mil/reports.html/Search/DODIG-2018-035/

The DOD concluded that training on the submission of fingerprints and final disposition reports was ineffective and lacking, both for AFOSI Detachment 225 and the 49th Security Forces Squadron, and "there was no valid reason for the USAF's failures". *See* p. 111-112; *see also* p. 96-98 (noting "training did not provide instructions on when or how to submit either the fingerprint card or the final disposition report to the FBI CJIS Division"). Indeed, the DOD "determined that this failure to submit Kelley's fingerprints was part of a systemic problem in AFOSI Detachment 225." See p. 94. Worse, the case agent was actually deployed for seven months during the investigation and reported that he complained he could not do his job, stating, "Boss, I'm burnt out, I'm so burnt out." "Boss, I want to get out. I can't do this anymore."

Report No. DODIG-2015-081, Inspector General U.S. Department of Defense, February 12, 2015, *Evaluation of Department of Defense Compliance with Criminal History Data Reporting Requirements*

Report No. DODIG-2015-011, Inspector General U.S. Department of Defense, October 29, 2014, *Evaluation of the Defense Criminal Investigative Organizations' Defense Incident-Based Reporting System Reporting and Reporting Accuracy*

Air Force 49th Security Forces Squadron and its investigators, Military Law Enforcement Officers (LEOs), or AFSFC Police Services Branch Confinement Facility

Commanders, Officers, supervisors, employees
The 49th Security Forces Squadron investigated Airman Kelley. The 49th Security Forces squadron investigators and/or Military Law Enforcement Officers (LEOs) had responsibilities to gather fingerprints and report, and thus will have knowledge of their responsibilities, training, and failures. The December 6, 2018, the Inspector General of the DOD issued a 131-page Report titled, *Investigation into the United States Air Force's Failure to Submit Devin Kelley's Criminal History Information to the Federal Bureau of Investigation* concluding that training on the submission of fingerprints and final disposition reports was ineffective and lacking, both for AFOSI Detachment 225 and the 49th Security Forces

Squadron, and "there was no valid reason for the USAF's failures". *See* p. 111-112; *see also* p. 96-98 (noting "training did not provide instructions on when or how to submit either the fingerprint card or the final disposition report to the FBI CJIS Division"). Air Force Office of Special Investigations

AFSFC Police Services Branch training focused on collection of fingerprints, but failed to address submitting fingerprint cards and final disposition reports to the FBI CJIS.  Their Management Internal Control Toolset (MICT) checklist items are supposed to be monitored and assessed as part of the installation commander's self-inspection program.  Monthly supervisory reviews were "incomplete and ineffective. *See* Report No. DODIG-2019-030 p. 110.

Airman Kelley's Air Force Commander

Kelley's Commander issued a no contact order and has knowledge of Kelley's conduct and training in the Air Force.

Airman Kelley's Air Force Commander

Kelley's Commander issued a no contact order, prepared a confinement package stating that he was "convinced" that Kelley was "dangerous and likely to harm someone if released", and has knowledge of Kelley's conduct and training in the Air Force.

Kelley's former Supervisor in the Air Force

Kelley sent a threatening Facebook message to his former supervisor in the Air Force after his discharge.  She will have knowledge of Kelley's conduct and condition and threats.

Case Agent responsible for Airman Kelley

The Case Agent will have knowledge for the reasons he could not properly report Kelley to the FBI, as detailed by the DOD's report.

Boss of Case Agent responsible for Airman Kelley

The boss of the Case Agent will have knowledge for the reasons the Case Agent could not properly report Kelley to the FBI, as detailed by the DOD's report.

Peak Behavioral Health Services and Xavier Alvarez
5055 McNutt Rd.

Santa Teresa, NM 88008

Peak Behavioral Health Services (PBHS) had a program for military personnel and diagnosed Kelley with various mental and emotional disorders. On information and belief, this is the facility from which Kelley attempted to buy guns to kill his commanding officers, and the facility that Kelley escaped from and fled to El Paso.

According to an El Paso police report, police were informed that Kelley "was a danger to himself and others as he had already been caught sneaking firearms onto Holloman Air Force Base". Police were further advised that Airman Kelley "suffered from mental disorders" and that he "was attempting to carry out death threats" against "his military chain of command." Xavier Alvarez, who worked for Peak Behavioral and who reported Kelley to police for the escape, later confirmed to NBC News that Kelley "verbalized that he wanted to get some kind of retribution to his chain of command." Other patients reported that Kelley was doing something suspicious on computers, and the military found that Kelley was "ordering weapons and tactical gear and magazines to a P.O. Box in San Antonio." Alvarez was quoted as saying, "This kid – he was hollow," and "I could never reach him."

Air Force Security Forces Squadron
Holloman Air Force Base

Commanders, Officers, supervisors, employees
Cmdr. Nathan McLeod-Hughes

Air Force 49th Logistics Readiness Squadron
Commanders, Officers, supervisors, employees

Air Force Detachment 225 and/or Holloman Air Force Base Office of Special Investigations

Commanders, Officers, Special Agents, supervisors, employees
AFOSI Detachment 225 and/or Holloman Air Force Base Office of Special Investigation had responsibilities to gather fingerprints and report, and thus will have knowledge of their responsibilities, training, and failures. The December 6, 2018, the Inspector General of the DOD issued a 131-page Report titled, Investigation into the United States Air Force's Failure to Submit Devin Kelley's Criminal History Information to the Federal Bureau of Investigation concluding that training on the submission of fingerprints and final disposition reports was ineffective and lacking, both for AFOSI

Detachment 225 and the 49th Security Forces Squadron, and "there was no valid reason for the USAF's failures". See p. 111-112; see also p. 96-98 (noting "training did not provide instructions on when or how to submit either the fingerprint card or the final disposition report to the FBI CJIS Division").

Although AFOSI policy required supervisory reviews to include both I2MS and the investigative case file (record copy), the AFOSI Detachment 225 SAIC and Superintendent focused their reviews on the I2MS activities and not on investigative case files" *See* p. 89. "In sum, we concluded that AFOSI Detachment 225 monthly supervisory reviews of Kelley's investigative case file were incomplete and ineffective".

Air Force Article 32 Investigating Officers

Air Force Prosecutors
> Air Force prosecutors gathered evidence and handled the conviction of Airman Kelley, and thus have knowledge of his conduct and disposition.

Naval Consolidated Brig
Miramar, California
> Commanders, Officers, supervisors, employees

General David Goldfein
Air Force Chief of Staff

General Stephen Wilson
Air Force Vice Chief of Staff

Lt. General Gina Grosso
Air Force Deputy Chief of Staff, Manpower, Personnel & Services

Lt. General John Raymond
Air Force Deputy Chief of Staff, Operations

Lt. General John Cooper, Deputy Chief of Staff, Operations

Air Force Holloman Air Force Base Mental Health Clinic
> HAFB Mental Health Clinic had custody of Kelley in the Air Force

Defense Incidence-Based Reporting System
> Commanders, Officers, supervisors, employees

    **e.   Regarding experts who may be called to testify at the trial in this case, please refer to Plaintiffs' Designation of Experts and any amendments or supplements thereto for additional information regarding the facts known to these witnesses and the bases of their opinions.  These expert designations will be made at the time required by the Court's Scheduling Order. Please also refer to the sworn testimony and written reports of these witnesses for further information regarding the facts known to and opinions held by these witnesses.**

    **f.   Plaintiffs cross-identify as expert witnesses any person named or to be named by Defendant as a person having expert knowledge about any facts surrounding any issues relevant to the incident in question as expert witnesses who Plaintiffs reserve the right to call live at the trial of the cause.  Plaintiffs reserve the right to call such persons as expert witnesses, whether or not the designation is subsequently withdrawn.  Plaintiffs do not have any control over any such witness, nor do they have any superior right to ascertain the subject matter on which any such witness may testify and/or opinions held by any such witness, beyond the information disclosed in deposition testimony and/or by Defendant's discovery responses.  In that regard, Plaintiffs refer you to Defendant's discovery documents, deposition testimony, and documents produced by Defendant for the subject matter, facts known, and opinions and impressions of these witnesses.  Plaintiffs reserve the right to obtain opinion testimony from any such witness within their area of expertise as related to this case.**

(ii)    A copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment;

Exhibit 1 – Inspector General, US Department of Defense, Evaluation of the Defense Criminal Investigative Organizations' Defense Incident-Based Reporting System Reporting and Reporting Accuracy, October 29, 2014 (Bates #18-949-1 – 18-949-40)

Exhibit 2 – Inspector General, US Department of Defense, Evaluation of the Defense Compliance with Criminal History Data Reporting Requirements, February 12, 2015 (Bates #18-949-41 – 18-949-76)

Exhibit 3 – Inspector General, US Department of Defense, Evaluation Fingerprint Card and Final Disposition Report Submissions by Military Service Law

Enforcement Organizations, December 4, 2017 (Bates #18-949-77 – 18-949-168)

Exhibit 4 – Inspector General, US Department of Defense, Report of Investigation into the United States Air Force's Failure to Submit Devin Kelley's Criminal History Information to the Federal Bureau of Investigation, December 6, 2018 (Bates #18-949-169 – 18-949-306)

Exhibit 5 –Department of Defense Directive Number 7730.47, October 15, 1996 (Bates #18-949-307 – 18-949-315)

Exhibit 6 –Department of Defense Manual Number 7730.47-M Volume 1, December 7, 2010 (Bates #18-949-316 – 18-949-398)

Exhibit 7 –U.S. Department of Defense Press Operations, DoD launches review of Devin P. Kelley criminal record notification, Release No. NR-382-17, November 6, 2017 (Bates #18-949-399)

Exhibit 8 – National Instant Criminal Background Check System Indices (Bates #18-949-400 – 18-949-401)

Exhibit 9 – U.S. Air Force article, AF Implements Changes to Improve Law Enforcement Database Reporting, November 28, 2017 (Bates #18-949-402)

Exhibit 10 – U.S. Air Force tweet November 9, 2017 (Bates #18-949-403)

Exhibit 11 – Report to the Committee on the Judiciary United States Senate from The Honorable Heather Wilson, Secretary of the Air Force, December 6, 2017 (Bates #18-949-404 – 18-949-405)

Exhibit 12 – Questions for the Record for Secretary of the United States Air Force Heather Wilson, December 13, 2017 (Bates #18-949-406 – 18-949-410)

Exhibit 13 – Misdemeanor Crimes of Domestic Violence (Bates #18-949-411)

Exhibit 14 –Devin Kelley Trial Transcript (Bates #18-949-412 – 18-949-1022)

Exhibit 15 - El Paso Incident Report, June 7, 2012 (Bates #18-949-1023 – 18-949-1028)

Exhibit 16 – Devin Kelley Court Martial Order (Bates #18-949-1029 – 18-949-1034)

Exhibit 17 – Statement of Danielle Kelley (Bates #18-949-1035)

Exhibit 18 – Devin Kelley Autopsy Report (Bates #18-949-1036 – 18-949-1037)

Exhibit 19 – Life Expectancy Tables (Bates #18-949-1038 – 18-949-1101)

Exhibit 20 – Brooke Army Medical Center medical records for H.M. (Bates #18-949-1102 – 18-949-2011)

Exhibit 21 – Brooke Army Medical Center medical records for H.M. (Bates #18-949-2012)

Exhibit 22 – Brooke Army Medical Center medical records for J.M. (Bates #18-949-2013 – 18-949-2914)

Exhibit 23 – Brooke Army Medical Center billing records for H.M. (Bates #18-949-2915 – 18-949-2920)

Exhibit 24 – Brooke Army Medical Center billing records for J.M. (Bates #18-949-2921 – 18-949-2928)

Exhibit 25 – Autopsy Report, Bexar County Medical Examiner (Bates #18-949-2929 – 18-949-2936)

Exhibit 26 – Death Certificate for Tara McNulty (Bates #18-949-2937)

Exhibit 27 – Birth Certificate for H.M. (Bates #18-949-2938)

Exhibit 28 – Birth Certificate for J.M. (Bates #18-949-2939)

Exhibit 29 – Letters of Independent Administration (Bates #18-949-2940 – 18-949-2941)

Exhibit 30 – Order in Suit Affecting Parent-Child Relationship (Bates #18-949-2942-2954)

In addition, Plaintiffs are in the possession of the materials maintained by the Texas Rangers related to the incident.  In obtaining these materials, Plaintiffs entered into an agreement with the Texas Attorney General regarding their release.  As such, Plaintiffs will discuss the terms of this agreement with Defendant prior to releasing these materials.

(iii)   A computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered;

Discovery is still in its early stages and it is premature for Plaintiffs to respond to this disclosure; however, please see Plaintiffs' Original Complaint(s) and any and all amendments thereto for the categories of damages sought by Plaintiffs. Please refer also to Plaintiffs' administrative claims filed with the Government for the maximum amount of damages sought by Plaintiffs in this case. Please refer to the sworn deposition testimony in this case. Please also refer to Plaintiffs' Designation of Experts and any amendments or supplements thereto for additional information regarding the facts known to these witnesses and the bases of their opinions. These expert designations will be made at the time required by the Court's Scheduling Order. Please also refer to the sworn testimony and written reports of these witnesses for further information regarding the facts known to and opinions held by these witnesses.

(iv)   For inspection and copying as under Rule 34, any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment.

Not applicable.

14

Respectfully Submitted,

/s/ Jamal K. Alsaffar
**JAMAL K. ALSAFFAR**
    jalsaffar@nationaltriallaw.com
    Texas State Bar #2402719
**LAURIE HIGGINBOTHAM**
    lhigginbotham@nationaltriallaw.com
    Texas State Bar # 50511759
**TOM JACOB**
    tjacob@nationaltriallaw.com
    Texas State Bar #24069981
**WHITEHURST, HARKNESS, BREES,**
    **CHENG, ALSAFFAR, HIGGINBOTHAM,**
    **& JACOB P.L.L.C.**
    7500 Rialto Blvd, Bldg. Two, Ste 250
    Austin, TX 78735
    (512) 476-4346 (o)
    (512) 467-4400 (f)

Attorneys for the Plaintiffs

**Certificate of Service**

I certify that the foregoing was served on June 27, 2019, via email service and certified mail, return receipt requested, on the following counsel for the United States.

/s/ Jamal Alsaffar
Jamal Alsaffar

PAUL DAVID STERN
Trial Attorney, Torts Branch
United States Dept. of Justice
Civil Division
United States Department of Justice
P.O. Box 888
Benjamin Franklin Station
Washington, D.C. 20004
T: (202) 616-2197
Paul.David.Stern@usdoj.gov

STEPHEN E. HANDLER
Senior Trial Counsel, Torts Branch
United States Dept. of Justice
Civil Division
United States Department of Justice
P.O. Box 888
Benjamin Franklin Station
Washington, D.C. 20004
T: (202) 616-2197
Stephen.Handler@usdoj.gov



IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| Joe Holcombe, *et al.*,<br>    Plaintiffs,<br><br>v.<br><br>United States of America,<br>    Defendant. | Civil Action No. 5:18-cv-555-XR<br><br>*Consolidated with*:<br>  Nos. 5:18-cv-712-XR; 5:18-cv-881-XR;<br>  5:18-cv-944-XR; 5:18-cv-949-XR;<br>  5:18-cv-951-XR; 5:18-cv-1151-XR;<br>  5:19-cv-184-XR; 5:19-cv-289;<br>  5:19-cv-506 XR; 5:19-cv-678;<br>  5:19-cv-691-XR; 5:19-cv-705;<br>  5:19-cv-706-XR; 5:19-cv-715-XR |

**PLAINTIFFS', KATI WALL AND MICHAEL JOHNSON, INDIVIDUALLY AND AS PERSONAL REPRESENTATIVES OF THE ESTATE OF DENNIS JOHNSON AND THE ESTATE OF SARA JOHNSON, AND DENNIS JOHNSON, JR., CHRISTOPHER JOHNSON, DEANNA STATON, AND JAMES GRAHAM, INITIAL DISCLOSURES PURSUANT TO RULE 26(A)(1)**

(i)     The name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment;

        **a.   Plaintiffs hereby designate as persons with knowledge the health care providers referenced in the related health care records in this case, including physicians, technicians, nurses, radiologists, physician's assistants, physical therapists, clinics, hospitals, pharmacies, and their agents, representatives, and employees.  While these health care providers are not within the control of Plaintiffs and have not been retained by Plaintiffs as expert witnesses, Plaintiffs reserve the right to elicit opinion testimony from any such health care provider, including expert testimony regarding liability, causation, and damages from those treating healthcare providers relating to the medical treatment provided to the Plaintiffs. To the extent it is necessary to call live at the trial or by deposition in this cause any agents, representatives, employees**

and/or custodian of records for any of the following health care providers, Plaintiffs identify any such custodian as a person who may have expert knowledge regarding issues related to the incident in question to include personal knowledge of the records and concerning the necessity of services rendered and referenced in the records and concerning the reasonableness of the medical bills charged and referenced in the records of the following health care providers. For the mental impressions held by and the opinions of and facts known by any of the following witnesses, please refer to the related health care records of the Plaintiffs.

> Bexar County Medical Examiner
> 7337 Louis Pasteur
> San Antonio, Tx 78229-4565
> Agents, servants and employees, including but not limited to:
>> Rajesh P. Kannan, M.D.
>> Randall E. Frost, M.D.
>> D. Kimberley Molina, M.D.
>> Veronica Hargrove, Ph.D.

> Travis County Medical Examiner
> 1213 Sabine Street
> Austin, Texas 78701
> Agents, servants and employees, including but not limited to:
>> J. Keith Pinckard, MD, PhD, D-ABP, F-ABM
>> Vickie L. Willoughby, DO

**b. Plaintiffs identify themselves as persons with knowledge of relevant facts pertaining to the incident in question:**

> James Graham
> Christopher Johnson
> Dennis Johnson, Jr.
> Michael Johnson
> Deanna Staton
> Kati Wall
> c/o Jamal Alsaffar
> Whitehurst, Harkness, Brees, Cheng, Alsaffar,
>  Higginbotham, & Jacob, PLLC
> 7500 Rialto Blvd., Bldg. Two
> Suite 250
> Austin, TX 78735

**c. Plaintiffs identify the following family members, friends, and other persons as persons with knowledge of relevant facts:**

2

Academy Sports + Outdoors in San Antonio
> Kelley bought a Ruger 5.56 mm assault rifle from Academy Sports + Outdoors in San Antonio after clearing a background check of the NICS. Store personnel will have knowledge of the transaction.

El Paso Police
Headquarters:
911 N. Raynor
El Paso, TX 79903
(915) 212-4000
> The El Paso police apprehended Kelley after he escaped. See Exhibit 15.

First Baptist Church of Sutherland Springs, Texas
Frank Pomeroy, Pastor
First Baptist Church
216 4th Street
Sutherland Springs, Texas 78161
> This is the church where the shooting occurred. The pastor was not there that morning, but on information and belief lost his daughter and many beloved friends in the massacre. He will have knowledge of their community and relationships and the impact of the shooting.

Danielle Shield Kelley
> Married to Airman Devin Kelley at the time of the church shooting.

Tessa Kelley (nee' Loge)
> Married to Airman Devin Kelley while he was in the Air Force and reported him for abuse to herself and infant child.

Johnnie Langendorff
Stephen Willeford
> Stephen Willeford confronted Kelley and chased him away from the church. Johnnie Langendorff stopped his vehicle to pick up Mr. Willeford and give chase.

Steve Moore
Wilson County Sheriff's Department
> Investigator

Harold Schott, Justice of the Peace Pct. #3
Wilson County

Terry Snyder
Texas Ranger Division
Texas Department of Public Safety
6100 Guadalupe Street, Building E
Austin, TX 78752
   Investigator and Custodian of Records

Sunland Park Police Department
1000 McNutt Rd
Sunland Park, NM 88063

Tanya Wood

 **d.  Plaintiffs name the Defendant herein, as well as its agents, representatives, and/or employees or former agents, representatives, or employees, as persons with knowledge of relevant facts.  Plaintiffs further name the Defendant, as well as its agents, representatives, and/or employees or former agents, representatives, or employees, as persons from whom expert testimony may be elicited regarding liability, causation and/or damages, although Plaintiffs do not necessarily vouch for all the opinion testimony of such persons.  Plaintiffs refer you to the Department of Defense Inspector General reports from 2018, 2017, 2014, and 2015; Defendant's discovery documents; deposition testimony; documents produced by Defendant; and related medical records for the subject matter, facts known, and opinions and impressions of these witnesses.**

 Air Force personnel
  Air Force personnel are expected to have knowledge of Kelley's conduct in the Air Force and mental problems, including but not limited to his attempt to bring weapons onto the base to kill officers.

 Additional Air Force personnel are provided below:
  Air Force spokesperson, Ann Stefanek. On November 28, 2017, an Air Force spokesperson, Ann Stefanek, admitted that the failure to follow Pentagon guidelines to report Kelley's crimes to the FBI was "not an isolated incident and similar reporting lapses occurred at other locations."

 Heather Wilson
 Secretary of the Air Force

 Deborah Lee James
 Secretary of the Air Force

Col. Kirk Stabler
Air Force Commander
Headquarters Air Force Office of Special Investigations
Quantico, Virginia

Brig. General Andrea Tullos
Air Force Director
Director of Security Forces
DCS/Logistics, Engineering & Force Protection
Department of the Air Force
Washington, D.C.

Director of Special Investigations
Department of the Air Force
Washington, D.C.

HQ Air Force Office of Special Investigations
Department of the Air Force
Superintendent, IT Integrations HQ AFOSI
Quantico, Virginia

Department of the Air Force
HQ USAF
Washington, D.C.

Deputy Director of Security Forces
DCS/Logistics, Installations & Missions Support

Defense Human Resources Activity
Headquarters
Pamela Mitchell, Director
4800 Mark Center Drive, Suite 06J25-01
Alexandria, VA 22350-4000

Department of the Air Force
HQ Air Force Office of Special Investigations
Quantico, VA
Brigadier General, Keith Givens
USAF Commander

Department of Defense
Under Secretary of Defense for Intelligence
Deputy Chief Management Officer

Department of Defense
Military Criminal Investigative Organizations (MCIOs)
          Commanders, Officers, supervisors and employees
Defense Criminal Investigative Organizations (DCIOs)
          Commanders, Officers, supervisors and employees

Office of Inspector General for the DOD

The Office of Inspector General for the DOD has issued four reports
investigating and detailing the failures of the Air Force and
Department of Defense, including negligence, negligent training,
and negligent supervision. See attached reports:

Report No. DODIG-2019-030, Inspector General U.S. Department
of Defense, Dec. 6, 2018, Report of Investigation into the United
States Air Force's Failure to Submit Devin Kelley's Criminal History
Information to the Federal Bureau of Investigation; see id. at p. 117,
"The USAF concurred with this report and its recommendations."
https://www.dodig.mil/reports.html/Article/1707300/reportof-
investigation-into-the-united-states-air-forces-failure-to-submit-
dev/

Report No. DODIG-2018-035, Inspector General U.S. Department of
Defense, Dec. 4, 2017, *Evaluation of Fingerprint Card and Final
Disposition Report Submissions by Military Service Law Enforcement
Organizations*.
https://www.dodig.mil/reports.html/Search/DODIG-2018-035/

The DOD concluded that training on the submission of fingerprints
and final disposition reports was ineffective and lacking, both for
AFOSI Detachment 225 and the 49th Security Forces Squadron, and
"there was no valid reason for the USAF's failures". *See* p. 111-112; *see
also* p. 96-98 (noting "training did not provide instructions on when
or how to submit either the fingerprint card or the final disposition
report to the FBI CJIS Division"). Indeed, the DOD "determined
that this failure to submit Kelley's fingerprints was part of a systemic
problem in AFOSI Detachment 225." See p. 94. Worse, the case
agent was actually deployed for seven months during the
investigation and reported that he complained he could not do his
job, stating, "Boss, I'm burnt out, I'm so burnt out." "Boss, I want to
get out. I can't do this anymore."

Report No. DODIG-2015-081, Inspector General U.S. Department of Defense, February 12, 2015, *Evaluation of Department of Defense Compliance with Criminal History Data Reporting Requirements*

Report No. DODIG-2015-011, Inspector General U.S. Department of Defense, October 29, 2014, *Evaluation of the Defense Criminal Investigative Organizations' Defense Incident-Based Reporting System Reporting and Reporting Accuracy*

Air Force 49th Security Forces Squadron and its investigators, Military Law Enforcement Officers (LEOs), or AFSFC Police Services Branch Confinement Facility

Commanders, Officers, supervisors, employees
The 49th Security Forces Squadron investigated Airman Kelley. The 49th Security Forces squadron investigators and/or Military Law Enforcement Officers (LEOs) had responsibilities to gather fingerprints and report, and thus will have knowledge of their responsibilities, training, and failures. The December 6, 2018, the Inspector General of the DOD issued a 131-page Report titled, *Investigation into the United States Air Force's Failure to Submit Devin Kelley's Criminal History Information to the Federal Bureau of Investigation* concluding that training on the submission of fingerprints and final disposition reports was ineffective and lacking, both for AFOSI Detachment 225 and the 49th Security Forces Squadron, and "there was no valid reason for the USAF's failures". *See* p. 111-112; *see also* p. 96-98 (noting "training did not provide instructions on when or how to submit either the fingerprint card or the final disposition report to the FBI CJIS Division"). Air Force Office of Special Investigations

AFSFC Police Services Branch training focused on collection of fingerprints, but failed to address submitting fingerprint cards and final disposition reports to the FBI CJIS.  Their Management Internal Control Toolset (MICT) checklist items are supposed to be monitored and assessed as part of the installation commander's self-inspection program.  Monthly supervisory reviews were "incomplete and ineffective. *See* Report No. DODIG-2019-030 p. 110.

Airman Kelley's Air Force Commander

Kelley's Commander issued a no contact order and has knowledge of Kelley's conduct and training in the Air Force.

Airman Kelley's Air Force Commander

7

Kelley's Commander issued a no contact order, prepared a confinement package stating that he was "convinced" that Kelley was "dangerous and likely to harm someone if released", and has knowledge of Kelley's conduct and training in the Air Force.

Kelley's former Supervisor in the Air Force

Kelley sent a threatening Facebook message to his former supervisor in the Air Force after his discharge. She will have knowledge of Kelley's conduct and condition and threats.

Case Agent responsible for Airman Kelley

The Case Agent will have knowledge for the reasons he could not properly report Kelley to the FBI, as detailed by the DOD's report.

Boss of Case Agent responsible for Airman Kelley

The boss of the Case Agent will have knowledge for the reasons the Case Agent could not properly report Kelley to the FBI, as detailed by the DOD's report.

Peak Behavioral Health Services and Xavier Alvarez
5055 McNutt Rd.
Santa Teresa, NM 88008

Peak Behavioral Health Services (PBHS) had a program for military personnel and diagnosed Kelley with various mental and emotional disorders. On information and belief, this is the facility from which Kelley attempted to buy guns to kill his commanding officers, and the facility that Kelley escaped from and fled to El Paso.

According to an El Paso police report, police were informed that Kelley "was a danger to himself and others as he had already been caught sneaking firearms onto Holloman Air Force Base". Police were further advised that Airman Kelley "suffered from mental disorders" and that he "was attempting to carry out death threats" against "his military chain of command." Xavier Alvarez, who worked for Peak Behavioral and who reported Kelley to police for the escape, later confirmed to NBC News that Kelley "verbalized that he wanted to get some kind of retribution to his chain of command." Other patients reported that Kelley was doing something suspicious on computers, and the military found that Kelley was "ordering weapons and tactical gear and magazines to a

P.O. Box in San Antonio." Alvarez was quoted as saying, "This kid – he was hollow," and "I could never reach him."

Air Force Security Forces Squadron
Holloman Air Force Base

Commanders, Officers, supervisors, employees
Cmdr. Nathan McLeod-Hughes

Air Force 49th Logistics Readiness Squadron
Commanders, Officers, supervisors, employees

Air Force Detachment 225 and/or Holloman Air Force Base Office of Special Investigations

Commanders, Officers, Special Agents, supervisors, employees
AFOSI Detachment 225 and/or Holloman Air Force Base Office of Special Investigation had responsibilities to gather fingerprints and report, and thus will have knowledge of their responsibilities, training, and failures. The December 6, 2018, the Inspector General of the DOD issued a 131-page Report titled, Investigation into the United States Air Force's Failure to Submit Devin Kelley's Criminal History Information to the Federal Bureau of Investigation concluding that training on the submission of fingerprints and final disposition reports was ineffective and lacking, both for AFOSI Detachment 225 and the 49th Security Forces Squadron, and "there was no valid reason for the USAF's failures". See p. 111-112; see also p. 96-98 (noting "training did not provide instructions on when or how to submit either the fingerprint card or the final disposition report to the FBI CJIS Division").

Although AFOSI policy required supervisory reviews to include both I2MS and the investigative case file (record copy), the AFOSI Detachment 225 SAIC and Superintendent focused their reviews on the I2MS activities and not on investigative case files" *See* p. 89. "In sum, we concluded that AFOSI Detachment 225 monthly supervisory reviews of Kelley's investigative case file were incomplete and ineffective".

Air Force Article 32 Investigating Officers

Air Force Prosecutors
Air Force prosecutors gathered evidence and handled the conviction of Airman Kelley, and thus have knowledge of his conduct and disposition.

Naval Consolidated Brig
Miramar, California
     Commanders, Officers, supervisors, employees

General David Goldfein
Air Force Chief of Staff

General Stephen Wilson
Air Force Vice Chief of Staff

Lt. General Gina Grosso
Air Force Deputy Chief of Staff, Manpower, Personnel & Services

Lt. General John Raymond
Air Force Deputy Chief of Staff, Operations

Lt. General John Cooper, Deputy Chief of Staff, Operations

Air Force Holloman Air Force Base Mental Health Clinic
     HAFB Mental Health Clinic had custody of Kelley in the Air Force

Defense Incidence-Based Reporting System
     Commanders, Officers, supervisors, employees

    **e.   Regarding experts who may be called to testify at the trial in this case, please refer to Plaintiffs' Designation of Experts and any amendments or supplements thereto for additional information regarding the facts known to these witnesses and the bases of their opinions.  These expert designations will be made at the time required by the Court's Scheduling Order. Please also refer to the sworn testimony and written reports of these witnesses for further information regarding the facts known to and opinions held by these witnesses.**

    **f.   Plaintiffs cross-identify as expert witnesses any person named or to be named by Defendant as a person having expert knowledge about any facts surrounding any issues relevant to the incident in question as expert witnesses who Plaintiffs reserve the right to call live at the trial of the cause.  Plaintiffs reserve the right to call such persons as expert witnesses, whether or not the designation is subsequently withdrawn.  Plaintiffs do not have any control over any such witness, nor do they have any superior right to ascertain the subject matter on which any such witness may testify and/or opinions held by any such witness, beyond the information disclosed in deposition testimony and/or by Defendant's discovery responses.  In that regard, Plaintiffs refer you to Defendant's discovery documents, deposition testimony, and documents**

10

**produced by Defendant for the subject matter, facts known, and opinions and impressions of these witnesses. Plaintiffs reserve the right to obtain opinion testimony from any such witness within their area of expertise as related to this case.**

(ii)     A copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment;

Plaintiffs refer Defendant to Exhibits 1 – 19 which have been identified and separately served on Defendant as exhibits to the disclosures of Plaintiffs McNulty and incorporated by reference into these disclosures.

In addition, Plaintiffs identify the following exhibits:

Exhibit 31 – Death certificate of Dennis Johnson (Bates #18-951-1)

Exhibit 32 – Death certificate of Sara Johnson (Bates #18-951-2)

Exhibit 33 – Autopsy report of Dennis Johnson (Bates #18-951-3 – 18-951-15)

Exhibit 34– Autopsy report of Sara Johnson (Bates #18-951-16 – 18-951-22)

Exhibit 35 – Letters of Independent Administration for Dennis Johnson (Bates #18-951-23 – 18-951-24)

Exhibit 36 – Letters of Independent Administration for Sara Johnson (Bates #18-951-25 – 18-951-26)

In addition, Plaintiffs are in the possession of the materials maintained by the Texas Rangers related to the incident. In obtaining these materials, Plaintiffs entered into an agreement with the Texas Attorney General regarding their release. As such, Plaintiffs will discuss the terms of this agreement with Defendant prior to releasing these materials.

(iii)   A computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered;

Discovery is still in its early stages and it is premature for Plaintiffs to respond to this disclosure; however, please see Plaintiffs' Original Complaint(s) and any and all amendments thereto for the categories of damages sought by Plaintiffs. Please refer also to Plaintiffs' administrative claims filed with the Government for the maximum amount of damages sought by Plaintiffs in this case.  Please refer to the sworn deposition testimony in this case. Please also refer to Plaintiffs' Designation of Experts and any amendments or supplements thereto for additional information regarding the facts known to these witnesses and the bases of their opinions.  These expert designations will be made at the time required by the Court's Scheduling Order. Please also refer to the sworn testimony and written reports of these witnesses for further information regarding the facts known to and opinions held by these witnesses.

(iv)   For inspection and copying as under Rule 34, any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment.

Not applicable.

12

Respectfully Submitted,

/s/ Jamal K. Alsaffar
**JAMAL K. ALSAFFAR**
    jalsaffar@nationaltriallaw.com
    Texas State Bar #2402719
**LAURIE HIGGINBOTHAM**
    lhigginbotham@nationaltriallaw.com
    Texas State Bar # 50511759
**TOM JACOB**
    tjacob@nationaltriallaw.com
    Texas State Bar #24069981
**WHITEHURST, HARKNESS, BREES,
CHENG, ALSAFFAR, HIGGINBOTHAM,
& JACOB P.L.L.C.**
    7500 Rialto Blvd, Bldg. Two, Ste 250
    Austin, TX 78735
    (512) 476-4346 (o)
    (512) 467-4400 (f)

Attorneys for the Plaintiffs

## Certificate of Service

I certify that the foregoing was served on June 27, 2019, via email service and certified mail, return receipt requested, on the following counsel for the United States.

/s/ Jamal Alsaffar
Jamal Alsaffar

PAUL DAVID STERN
Trial Attorney, Torts Branch
United States Dept. of Justice
Civil Division
United States Department of Justice
P.O. Box 888
Benjamin Franklin Station
Washington, D.C. 20004
T: (202) 616-2197
Paul.David.Stern@usdoj.gov

STEPHEN E. HANDLER
Senior Trial Counsel, Torts Branch
United States Dept. of Justice
Civil Division
United States Department of Justice
P.O. Box 888
Benjamin Franklin Station
Washington, D.C. 20004
T: (202) 616-2197
Stephen.Handler@usdoj.gov

# J

In the United States District Court
for the Western District of Texas
San Antonio Division

| | |
|---|---|
| Joe Holcombe, *et al.*,<br>    Plaintiffs,<br><br>v.<br><br>United States of America,<br>    Defendant. | Civil Action No. 5:18-cv-555-XR<br><br>*Consolidated with*:<br> Nos. 5:18-cv-712-XR; 5:18-cv-881-XR;<br> 5:18-cv-944-XR; 5:18-cv-949-XR;<br> 5:18-cv-951-XR; 5:18-cv-1151-XR;<br> 5:19-cv-184-XR; 5:19-cv-289;<br> 5:19-cv-506 XR; 5:19-cv-678;<br> 5:19-cv-691-XR; 5:19-cv-705;<br> 5:19-cv-706-XR; 5:19-cv-715-XR |

**PLAINTIFFS' REGINA AMADOR, INDIVIDUALLY AND AS ADMINISTRATRIX OF THE ESTATE OF RICHARD C. RODRIGUEZ, DECEASED, A/K/A RICARDO RODRIGUEZ, JOSE RODRIGUEZ' AND GUADALUPE RODRIGUEZ, INITIAL DISCLOSURES PURSUANT TO RULE 26(A)(1)**

> (i)    The name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment;

   **a. Plaintiffs hereby designate as persons with knowledge all emergency first responders, the Bexar County Medical Examiner's Office and its personnel, health care providers, including individuals referenced in autopsy reports and health care records in this case including physicians, technicians, nurses, radiologists, physician's assistants, physical therapists, clinics, hospitals, pharmacies, and their agents, representatives, and employees. While these medical providers are not within the control of Plaintiffs and have not been retained by Plaintiffs as expert witnesses, Plaintiffs reserve the right to elicit opinion testimony from any such health care provider, including expert testimony regarding liability, causation, and damages from those medical personnel, including the Medical Examiner's Office personnel and other treating healthcare providers relating to any medical care provided to Richard C. Rodriguez, Deceased, and Plaintiffs. To the extent it is necessary to call live at the trial or by deposition in this cause any agents, representatives, employees and/or custodian of records for any of the following health/medical providers, Plaintiffs identify any such custodian as a person who may have expert knowledge regarding issues related to the incident in question to include, but not limited to, the personal knowledge of the records, cause, manner, and method of death,**

conscious pain and suffering, and damages sustained by Plaintiffs as a result of the untimely, tragic and wrongful death of Richard C. Rodriguez, Deceased. For the mental impressions of, opinions of, and facts known by any of the following witnesses, please refer to any records produced herewith and/or supplemented in the future by Plaintiffs.

    1)    Bexar County Medical Examiner's Office
           7337 Louis Pasteur
           San Antonio, TX 78229-4565
           Agents, servants and employees, including but not limited to:
           William D. McClain, M.D.
           Randall E. Frost, M.D.
           D. Kimberley Molina, M.D.

**b.  Plaintiffs identify themselves as persons with knowledge of relevant facts pertaining to relationships, damages, and the incident in question in general:**

    1)    Regina Amador, Individually and as Administratrix of the Estate of
           Richard C. Rodriguez, Deceased, a/k/a Ricardo Rodriguez
           c/o Daniel J. T. Sciano
           Tinsman & Sciano
           10107 McAllister Freeway
           San Antonio, TX 78216

    2)    Jose Rodriguez
           c/o Daniel J. T. Sciano
           Tinsman & Sciano
           10107 McAllister Freeway
           San Antonio, TX 78216

    3)    Guadalupe Rodriguez
           c/o Daniel J. T. Sciano
           Tinsman & Sciano
           10107 McAllister Freeway
           San Antonio, TX 78216

**c.  Plaintiffs identify the following investigative personnel including, but not limited to Police Officers, Sheriff's Officers, Troopers, Agents, Rangers, Law Enforcement Personnel, Fire Personnel, Public Servants, and other First Responders who were not specially retained or employed. Plaintiffs acknowledge that some of the witnesses identified as persons with knowledge of relevant facts who have not been specially retained by Plaintiffs have relevant information and may be considered by the Court to be experts, due to their background, training and experience. Plaintiffs refer Defendant to all documents produced in this matter from investigating agencies and public servants including, but not limited to, the investigatory reports and deposition testimony of fact and expert witnesses for the general substance of the mental impressions, opinions, and knowledge of the investigating personnel and public servants who may be qualified by the Court to render expert opinion**

testimony, all of which are incorporated herein by reference, if and when taken.  The names of the non-specially retained or non-employed potential testifying experts who were involved in investigating the facts and circumstances of this matter are as follows:

1) Wilson County Sheriff's Department
800 10th Street #4
Floresville, Texas 78114
Agents, servants and employees, and custodian of records including but not limited to:
Steve Moore, Investigator

2) Tom Caldwell
Wilson County Attorney's Office
1420 Third Street
Floresville, TX 78114
Agents, servants and employees, and custodian of records

3) Ken Paxton
Attorney General of Texas
Post Office Box 12548
Austin, TX 78711-2548
Agents, servants and employees, and custodian of records

4) Harold Schott, Justice of the Peace Pct. #3
Wilson County
Agents, servants and employees, and custodian of records

5) Texas Ranger Division
Texas Department of Public Safety
6100 Guadalupe Street, Building E
Austin, TX 78752
Agents, servants and employees, including but not limited to:
Terry Snyder, Investigator and Custodian of Records

6) Texas Department of Public Safety
Driver License Division, License & Records
5805 North Lamar Blvd., Building A
Austin, TX  78752
Agents, servants and employees and custodians of records

7) Texas Department of Public Safety
Regulatory Services Division
5805 North Lamar Blvd., Building I
Austin, TX 78752-0240
Agents, servants and employees and custodians of records

8)      Other Police Officers, Law Enforcement, and First Responders to the church shooting

**d. Plaintiffs identify the following family members, friends, and other persons as persons with knowledge of relevant facts:**

**Relatives of Richard C. Rodriguez, Deceased, including but not limited to the following:**

1) Therese JoAnn Sagan Rodriguez, Deceased, Spouse of Richard C. Rodriguez, Deceased

2) David C. Rodriguez, Brother of Richard C. Rodriguez, Deceased

3) Irma Rodriguez, Sister-in-law of Richard C. Rodriguez, Deceased

4) Lydia R. Navejas, Sister of Richard C. Rodriguez, Deceased

5) Joel Navejas, Brother-in-law of Richard C. Rodriguez, Deceased

6) Jose Rodriguez, Jr., Brother of Richard C. Rodriguez, Deceased

7) Melinda Rodriguez, Sister-in-law of Richard C. Rodriguez, Deceased

8) Evangelina Santos, Sister of Richard C. Rodriguez, Deceased

9) Hector Santos, Brother-in-law of Richard C. Rodriguez, Deceased

10) Lupe R. Navejas, Sister of Richard C. Rodriguez, Deceased

11) Jose Navejas, Brother-in-law of Richard C. Rodriguez, Deceased

12) Samuel Rodriguez, Brother of Richard C. Rodriguez, Deceased

13) Leticia Rodriguez, Sister-in-law of Richard C. Rodriguez, Deceased

14) Antonio Rodriguez, Brother of Richard C. Rodriguez, Deceased

15) Debbie Rodriguez, Sister-in-law of Richard C. Rodriguez, Deceased

**Church, Witnesses, Bystanders, Heroes at the Church Shooting**

1) First Baptist Church of Sutherland Springs, Texas
   Frank Pomeroy, Pastor
   First Baptist Church
   216 4th Street
   Sutherland Springs, Texas 78161
   > This is the church where the shooting occurred. The pastor was not there that morning, but on information and belief lost his daughter and many beloved friends in the massacre. He will have knowledge of their community and relationships and the impact of the shooting.

2) Stephen Willeford
   Sutherland Springs, TX
   > Stephen Willeford confronted Kelley and chased him away from the church.

3) Johnnie Langendorff
   Seguin, TX
   > Johnnie Langendorff stopped his vehicle to pick up Mr. Willeford and chase Kelley.

4) Other Plaintiffs and Survivors
   > Available for contact through their counsel of record in this case.

**Funeral home where Richard C. Rodriguez, Deceased's, funeral services were held**

1) Finch Funeral Chapel, L.L.C.
   13767 US Highway 87 W, P.O. Box 838
   La Vernia, TX 78121
   And its agents, servants, employees and custodians of record

**Other Persons with Knowledge**

1) Sunland Park Police Department
   1000 McNutt Rd
   Sunland Park, NM 88063
   And its agents, servants, employees and custodians of record

2) El Paso Police
   Headquarters:
   911 N. Raynor
   El Paso, TX 79903
   (915) 212-4000
   And its agents, servants, employees and custodians of record

The El Paso police apprehended Kelley after he escaped. See attached report at Exhibit 15.

3) Tanya Wood

4) Academy Sports + Outdoors in San Antonio
Kelley bought a Ruger 5.56 mm assault rifle from Academy Sports + Outdoors in San Antonio after clearing a background check of the NICS. Store personnel will have knowledge of the transaction.

**Airman Kelley's Former Spouses**

1) Tessa Kelley (nee' Loge) - Devin Kelley's former spouse
Tessa Kelley was married to Airman Devin Kelley while he was in the Airforce and reported him for abuse to herself and infant child.

2) Danielle Shields Kelley - Devin Kelley's former spouse
Danielle Shields was the spouse of Airman Devin Kelley at the time of the church shooting.

**Family of Devin Patrick Kelley**

1) Michael S. Kelley, Father of Devin Patrick Kelley
2825 Fm 2722
New Braunfels, TX 78132

2) Rebecca A. Kelley, Mother of Devin Patrick Kelley
2825 Fm 2722
New Braunfels, TX 78132

**e.  Plaintiffs name the Defendant herein, as well as its agents, representatives, and/or employees or former agents, representatives, or employees, as persons with knowledge of relevant facts.  Plaintiffs further name the Defendant, as well as its agents, representatives, and/or employees or former agents, representatives, or employees, as persons from whom expert testimony may be elicited regarding liability, causation and/or damages, although Plaintiffs do not necessarily vouch for all the opinion testimony of such persons.  Plaintiffs refer you to the Department of Defense Inspector General reports from 2018, 2017, 2014, and 2015; Defendant's discovery documents; deposition testimony; documents produced by Defendant; and related medical records, including autopsy reports for the subject matter including facts known, and opinions and impressions of these witnesses.**

1) Air Force Personnel
Air Force personnel are expected to have knowledge of Kelley's conduct in the Air Force and mental problems, including but not limited to his attempt to bring weapons onto the base to kill officers. Additional Air Force personnel are provided below.

2) Airman Kelley's Air Force Commander
   Kelley's Commander issued a no contact order and has knowledge of Kelley's conduct and training in the Air Force.

3) Airman Kelley's Air Force Commander
   Kelley's Commander issued a no contact order, prepared a confinement package stating that he was "convinced" that Kelley was "dangerous and likely to harm someone if released", and has knowledge of Kelley's conduct and training in the Air Force.

4) Kelley's former Supervisor in the Air Force
   Kelley sent a threatening Facebook message to his former supervisor in the Air Force after his discharge.  She will have knowledge of Kelley's conduct and condition and threats.

5) Air Force spokesperson, Ann Stefanek.
   On November 28, 2017, An Air Force spokesperson, Ann Stefanek, admitted that the failure to follow Pentagon guidelines to report Kelley's crimes to the FBI was "not an isolated incident and similar reporting lapses occurred at other locations."

6) Heather Wilson
   Secretary of the Air Force

7) Deborah Lee James
   Secretary of the Air Force

8) Col. Kirk Stabler
   Air Force Commander
   Headquarters Air Force Office of Special Investigations
   Quantico, Virginia

9) Brig. General Andrea Tullos
   Air Force Director
   Director of Security Forces
   DCS/Logistics, Engineering & Force Protection
   Department of the Air Force
   Washington, D.C.

10) Director of Special Investigations
    Department of the Air Force
    Washington, D.C.

11) HQ Air Force Office of Special Investigations
    Department of the Air Force
    Superintendent, IT Integrations HQ AFOSI

Quantico, Virginia

12) Department of the Air Force
      HQ USAF
      Washington, D.C.

13) Deputy Director of Security Forces
      DCS/Logistics, Installations & Missions Support

14) Defense Human Resources Activity
      Headquarters
      Pamela Mitchell, Director
      4800 Mark Center Drive, Suite 06J25-01
      Alexandria, VA 22350-4000

15) Department of the Air Force
      HQ Air Force Office of Special Investigations
      Quantico, VA
      Brigadier General, Keith Givens
      USAF Commander

16) Department of Defense
      Under Secretary of Defense for Intelligence
      Deputy Chief Management Officer

17) Military Criminal Investigative Organizations (MCIOs)
      Commanders, Officers, supervisors and employees

18) Defense Criminal Investigative Organizations (DCIOs)
      Commanders, Officers, supervisors and employees

19) Office of Inspector General for the DOD

      The Office of Inspector General for the DOD has issued two reports investigating
      and detailing the failures of the Air Force, including negligence, negligent
      training, and negligent supervision. *See* attached reports:

      Report No. DODIG-2019-030, Inspector General U.S. Department of Defense,
      Dec. 6, 2018, Report of Investigation into the United States Air Force's Failure to
      Submit Devin Kelley's Criminal History Information to the Federal Bureau of
      Investigation; see id. at p. 117, "The USAF concurred with this report and its
      recommendations." *https://www.dodig.mil/reports.html/Article/1707300/reportof-
      investigation-into-the-united-states-air-forces-failure-to-submit-dev/*

      Report No. DODIG-2018-035, Inspector General U.S. Department of Defense,
      Dec. 4, 2017, *Evaluation of Fingerprint Card and Final Disposition Report*

*Submissions   by   Military   Service   Law   Enforcement   Organizations.*
*https://www.dodig.mil/reports.html/Search/DODIG-2018-035/*

The DOD concluded that training on the submission of fingerprints and final disposition reports was ineffective and lacking, both for AFOSI Detachment 225 and the 49th Security Forces Squadron, and "there was no valid reason for the USAF's failures". *See* p. 111-112; S*ee also* p. 96-98 (noting "training did not provide instructions on when or how to submit either the fingerprint card or the final disposition report to the FBI CJIS Division"). Indeed, the DOD "determined that this failure to submit Kelley's fingerprints was part of a systemic problem in AFOSI Detachment 225." *See* p. 94. Worse, the case agent was actually deployed for seven months during the investigation and reported that he complained he could not do his job, stating, "Boss, I'm burnt out, I'm so burnt out." "Boss, I want to get out. I can't do this anymore."

Report No. DODIG-2015-081, Inspector General U.S. Department of Defense, February 12, 2015, *Evaluation of Department of Defense Compliance with Criminal History Data Reporting Requirements.*

Report No. DODIG-2015-011, Inspector General U.S. Department of Defense, October 29, 2014, *Evaluation of the Defense Criminal Investigative Organizations' Defense Incident-Based Reporting System Reporting and Reporting Accuracy.*

20) Air Force 49th Security Forces Squadron and it's investigators, Military Law Enforcement Officers (LEOs), or AFSFC Police Services Branch
Confinement Facility
Commanders, Officers, supervisors, employees
The 49th Security Forces Squadron investigated Airman Kelley. The 49th Security Forces Squadron investigators and/or Military Law Enforcement Officers (LEOs) had responsibilities to gather fingerprints and report, and thus will have knowledge of their responsibilities, training, and failures. The December 6, 2018, the Inspector General of the DOD issued a 131-page Report titled, *Investigation into the United States Air Force's Failure to Submit Devin Kelley's Criminal History Information to the Federal Bureau of Investigation* concluding that training on the submission of fingerprints and final disposition reports was ineffective and lacking, both for AFOSI Detachment 225 and the 49th Security Forces Squadron, and "there was no valid reason for the USAF's failures". *See* p. 111-112; *see also* p. 96-98 (noting "training did not provide instructions on when or how to submit either the fingerprint card or the final disposition report to the FBI CJIS Division").

21) Air Force Office of Special Investigations
AFSFC Police Services Branch training focused on collection of fingerprints, but failed to address submitting fingerprint cards and final disposition reports to the FBI CJIS. Their Management Internal Control Toolset (MICT) checklist items are supposed to be monitored and assessed as part of the installation commander's

self-inspection program. Monthly supervisory reviews were "incomplete and ineffective." *See* Report No. DODIG-2019-030 p. 110.

22) Case Agent responsible for Airman Kelley
    The Case Agent will have knowledge for the reasons he could not properly report Kelley to the FBI, as detailed by the DOD's report.

23) Boss of Case Agent responsible for Airman Kelley
    The boss of the Case Agent will have knowledge for the reasons the Case Agent could not properly report Kelley to the FBI, as detailed by the DOD's report.

24) General David Goldfein
    Air Force Chief of Staff

25) General Stephen Wilson
    Air Force Vice Chief of Staff

26) Lt. General Gina Grosso
    Air Force Deputy Chief of Staff, Manpower, Personnel & Services

27) Lt. General John Raymond
    Air Force Deputy Chief of Staff, Operations

28) Lt. General John Cooper, Deputy Chief of Staff, Operations

29) Defense Incidence-Based Reporting System
    Commanders, Officers, supervisors, employees

30) Air Force 49th Logistics Readiness Squadron
    Commanders, Officers, supervisors, employees

31) Air Force Office of Special Investigations
    Commanders, Vice-Commanders, Officers, supervisors, employees

32) Air Force Security Forces Squadron
    Holloman Air Force Base
    Commanders, Officers, supervisors, employees
    Cmdr. Nathan McLeod-Hughes

33) Air Force Detachment 225 and/or Holloman Air Force Base Office of Special Investigations
    Commanders, Officers, Special Agents, supervisors, employees
    AFOSI Detachment 225 and/or Holloman Air Force Base Office of Special Investigation had responsibilities to gather fingerprints and report, and thus will have knowledge of their responsibilities, training, and failures. The December 6, 2018, the Inspector General of the DOD issued a 131-page Report titled,

*Investigation into the United States Air Force's Failure to Submit Devin Kelley's Criminal History Information to the Federal Bureau of Investigation* concluding that training on the submission of fingerprints and final disposition reports was ineffective and lacking, both for AFOSI Detachment 225 and the 49th Security Forces Squadron, and "there was no valid reason for the USAF's failures". *See* p. 111-112; *see also* p. 96-98 (noting "training did not provide instructions on when or how to submit either the fingerprint card or the final disposition report to the FBI CJIS Division"). Although AFOSI policy required supervisory reviews to include both I2MS and the investigative case file (record copy), the AFOSI Detachment 225 SAIC and Superintendent focused their reviews on the I2MS activities and not on investigative case files" *See* p. 89. "In sum, we concluded that AFOSI Detachment 225 monthly supervisory reviews of Kelley's investigative case file were incomplete and ineffective".

34) Air Force Article 32 Investigating Officers

35) Airforce Prosecutors
      Air Force prosecutors gathered evidence and handled the conviction of Airman Kelley, and thus have knowledge of his conduct and disposition.

36) Naval Consolidated Brig
      Miramar, California
      Commanders, Officers, supervisors, employees

37) Holloman Air Force Base Mental Health Clinic
      c/o Air Force or DOJ counsel of record
      HAFB Mental Health Clinic had custody of Kelley in the Air Force.

38) Peak Behavioral Health Services (PBHS) and Xavier Alvarez
      5055 McNutt Rd,
      Santa Teresa, NM 88008
      (575) 589-3000
      Peak Behavioral Health Services (PBHS) had a program for military personnel and diagnosed Kelley with various mental and emotional disorders. On information and belief, this is the facility from which Kelley attempted to buy guns to kill his commanding officers, and the facility that Kelley escaped from and fled to El Paso. According to an El Paso police report, police were informed that Kelley "was a danger to himself and others as he had already been caught sneaking firearms onto Holloman Air Force Base". Police were further advised that Airman Kelley "suffered from mental disorders" and that he "was attempting to carry out death threats" against "his military chain of command." Xavier Alvarez, who worked for Peak Behavioral and who reported Kelley to police for the escape, later confirmed to NBC News that Kelley "verbalized that he wanted to get some kind of retribution to his chain of command." Other patients reported that Kelley was doing something suspicious on computers, and the military found that Kelley was "ordering weapons and tactical gear and magazines to a P.O. Box

in San Antonio." Alvarez was quoted as saying, "This kid – he was hollow," and "I could never reach him."

**f.   Regarding experts who may be called to testify at the trial in this case, please refer to Plaintiffs' Designation of Experts and any amendments or supplements thereto for additional information regarding the facts known to these witnesses and the bases of their opinions.   These expert designations will be made at the time required by the Court's Scheduling Order. Please also refer to the sworn testimony and written reports of these witnesses for further information regarding the facts known to and opinions held by these witnesses.**

**g.   Plaintiffs cross-identify as expert witnesses any person named or to be named by Defendant as a person having expert knowledge about any facts surrounding any issues relevant to the incident in question as expert witnesses who Plaintiffs reserve the right to call live at the trial of the cause.  Plaintiffs reserve the right to call such persons as expert witnesses, whether or not the designation is subsequently withdrawn.  Plaintiffs do not have any control over any such witness, nor do they have any superior right to ascertain the subject matter on which any such witness may testify and/or opinions held by any such witness, beyond the information disclosed in deposition testimony and/or by Defendant's discovery responses.   In that regard, Plaintiffs refer you to Defendant's discovery documents, deposition testimony, and documents produced by Defendant for the subject matter, facts known, and opinions and impressions of these witnesses.  Plaintiffs reserve the right to obtain opinion testimony from any such witness within their area of expertise as related to this case.**

(ii)    A copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment;

Exhibit 1 – Inspector General, US Department of Defense, Evaluation of the Defense Criminal Investigative Organizations' Defense Incident-Based Reporting System Reporting and Reporting Accuracy, October 29, 2014 (Bates #18-1151-000001-000040.

Exhibit 2 – Inspector General, US Department of Defense, Evaluation of the Defense Compliance with Criminal History Data Reporting Requirements, February 12, 2015 (Bates #18-1151-000041-000076)

Exhibit 3 – Inspector General, US Department of Defense, Evaluation Fingerprint Card and Final Disposition Report Submissions by Military Service Law Enforcement Organizations, December 4, 2017 (Bates #18-1151-000077-000168)

Exhibit 4 – Inspector General, US Department of Defense, Report of Investigation into the United States Air Force's Failure to Submit Devin Kelley's Criminal History Information to the Federal Bureau of Investigation, December 6, 2018 (Bates #18-1151-000169-000306)

Exhibit 5 – Department of Defense Directive Number 7730.47, October 15, 1996 (Bates #18-1151-000307-000315)

Exhibit 6 – Department of Defense Manual Number 7730.47-M Volume 1, December 7, 2010 (Bates #18-1151-000316-000398)

Exhibit 7 – U.S. Department of Defense Press Operations, DoD launches review of Devin P. Kelley criminal record notification, Release No. NR-382-17, November 6, 2017 (Bates #18-1151-000399)

Exhibit 8 – National Instant Criminal Background Check System Indices (Bates #18-1151-000400-000401)

Exhibit 9 – U.S. Air Force article, AF Implements Changes to Improve Law Enforcement Database Reporting, November 28, 2017 (Bates #18-1151-000402)

Exhibit 10 – U.S. Air Force tweet November 9, 2017 (Bates #18-1151-000403)

Exhibit 11 – Report to the Committee on the Judiciary United States Senate from The Honorable Heather Wilson, Secretary of the Air Force, December 6, 2017 (Bates #18-1151-000404-000405)

Exhibit 12 – Questions for the Record for Secretary of the United States Air Force Heather Wilson, December 13, 2017 (Bates #18-1151-000406-000410)

Exhibit 13 – Misdemeanor Crimes of Domestic Violence (Bates #18-1151-000411-000412)

Exhibit 14 –Devin Kelley Trial Transcript (Bates #18-1151-000416-001022)

Exhibit 15 – El Paso Incident Report, June 7, 2012 (Bates #18-1151-001023-001028)

Exhibit 16 – Devin Kelley Court Martial Order (Bates #18-1151-001029-001034)

Exhibit 17 – Statement of Danielle Kelley (Bates #18-1151-001035)

Exhibit 18 – Devin Kelley Autopsy Report (Bates #18-1151-001036-001047)

Exhibit 19 – Life Expectancy Tables (Bates #18-1151-001048-001111)

Exhibit 20 - Photographs (Bates #18-1151-001112-001177)

Exhibit 21 – Death Certificate for Richard Rodriguez (Bates #18-1151-001178)

Exhibit 22 – Funeral Purchase Agreement (Bates #18-1151-001179)

Exhibit 23 – Autopsy Report, Bexar County Medical Examiner (Bates #18-1151-001180-
    1192)

Exhibit 24 – Letters of Independent Administration (Bates #18-1151-001193)

In addition, Plaintiffs are in the possession of the materials maintained by the Texas
Rangers related to the incident.  In obtaining these materials, Plaintiffs entered into an
agreement with the Texas Attorney General regarding their release.  As such, Plaintiffs will
discuss the terms of this agreement with Defendant prior to releasing these materials.

(iii)   A computation of each category of damages claimed by the disclosing
        party—who must also make available for inspection and copying as under
        Rule 34 the documents or other evidentiary material, unless privileged or
        protected from disclosure, on which each computation is based, including
        materials bearing on the nature and extent of injuries suffered;

Discovery is still in its early stages and it is premature for Plaintiffs to respond to this
disclosure; however, please see Plaintiffs' Original Complaint(s) and any and all
amendments thereto for the categories of damages sought by Plaintiffs.  Please refer also
to Plaintiffs' administrative claims filed with the Government for the maximum amount
of damages sought by Plaintiffs in this case.  Please refer to the sworn deposition
testimony in this case. Please also refer to Plaintiffs' Designation of Experts and any
amendments or supplements thereto for additional information regarding the facts known
to these witnesses and the bases of their opinions.  These expert designations will be
made at the time required by the Court's Scheduling Order. Please also refer to the sworn
testimony and written reports of these witnesses for further information regarding the
facts known to and opinions held by these witnesses.

(iv)   For inspection and copying as under Rule 34, any insurance agreement
       under which an insurance business may be liable to satisfy all or part of a
       possible judgment in the action or to indemnify or reimburse for payments
       made to satisfy the judgment.

Not applicable.

Respectfully Submitted,

**TINSMAN & SCIANO**


By:*/s/ Daniel J. T. Sciano*
        DANIEL J.T. SCIANO
        State Bar No. 17881200
        Email:  dsciano@tsslawyers.com
        10107 McAllister Freeway
        San Antonio, Texas 78216
        Telephone:  (210) 225-3121
        Facsimile:   (210) 225-6235
        ***ATTORNEY FOR PLAINTIFFS***
        ***REGINA AMADOR, Individually and as***
        ***Independent Administratrix of the Estate***
        ***of RICHARD C. RODRIGUEZ, Deceased,***
        ***a/k/a RICARDO RODRIGUEZ, JOSE***
        ***RODRIGUEZ and GUDADALUPE***
        ***RODRIGUEZ***

## CERTIFICATE OF SERVICE

I certify that the foregoing was served on June 27, 2019, via email service and certified mail, return receipt requested, on the following counsel for the United States.

*/s/ Daniel J. T. Sciano*
Daniel J. T. Sciano

PAUL DAVID STERN
Trial Attorney, Torts Branch
United States Dept. of Justice
Civil Division
United States Department of Justice
P.O. Box 888
Benjamin Franklin Station
Washington, D.C. 20004
T: (202) 616-2197
Paul.David.Stern@usdoj.gov

STEPHEN E. HANDLER
Senior Trial Counsel, Torts Branch
United States Dept. of Justice
Civil Division
United States Department of Justice
P.O. Box 888
Benjamin Franklin Station
Washington, D.C. 20004
T: (202) 616-2197
Stephen.Handler@usdoj.gov



# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **JOE HOLCOMBE**, *et al.* | § | |
| | § | |
| Plaintiffs | § | |
| | § | |
| VS. | § | CIVIL ACTION NO: 5:18-cv-555-XR |
| | § | |
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| Defendant | § | |

_____

*Consolidated with*

| | | |
|---|---|---|
| **FARIDA BROWN**, | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| VS. | § | CIVIL ACTION NO: 5:19-cv-184-XR |
| | § | |
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| Defendant | § | |

## PLAINTIFF FARIDA BROWN'S RULE 26 INITIAL DISCLOSURES

Plaintiff Farida Brown, ("Plaintiff" or "Farida"), serves this, her initial disclosures pursuant to Rule 26 of the Federal Rules of Civil Procedure Rule 26(a)(1)(A):

*(i): the name, and if known, the address and telephone number of each individual likely to have discoverable information - along with the subjects of that information – that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment:*

**Response:**

**Plaintiff and her relatives**

1. Farida Brown
   c/o Schreiber | Knockaert, PLLC
   701 North Post Oak Rd., Ste 325

---

Houston, TX 77024
(281) 949-8904

Ms. Brown is the plaintiff in this case. She has knowledge of the facts alleged in her Complaint regarding her volunteer work at the church, her presence on the morning of the shooting, her experiences during the shootings, her injuries and the shrapnel that remains in her legs, her trauma, and her attempts to seek treatment, recover and cope, and other elements of damages.

2. David and Myris Brown
   c/o Schreiber | Knockaert, PLLC
   701 North Post Oak Rd., Ste 325
   Houston, TX 77024
   (281) 949-8904

David Brown is one of Farida Brown's four grown children. Myris Brown is the wife of David Brown. They live in Spring, Texas in the greater Houston area. Farida Brown lived with David and Myris Brown for a period after she was shot by Airman Kelly. Accordingly, David and Myris Brown have knowledge of Farida Brown's injuries and other elements of damages.

3. Carol Horton
   c/o Schreiber | Knockaert, PLLC
   701 North Post Oak Rd., Ste 325
   Houston, TX 77024
   (281) 949-8904

Carol Horton is a daughter of Farida Brown who lives in Alvin, Texas. Farida Brown has stayed with her at various times before and after being shot by Airman Kelly. Accordingly, Carol Horton has knowledge of Farida Brown's injuries and other elements of damages.

4. Karen Warren
   c/o Schreiber | Knockaert, PLLC
   701 North Post Oak Rd., Ste 325
   Houston, TX 77024
   (281) 949-8904

Karen Warren is a daughter of Farida Brown who lives in Sutherland Springs, Texas, and who came to the church and hospital in the aftermath of the shooting. Accordingly, Karen Warren has knowledge of Farida Brown's injuries and other elements of damages.

**Air Force Personnel**
   c/o Air Force or DOJ counsel of record

Plaintiff names the Defendant herein, as well as its agents, representatives, and/or employees or former agents, representatives, or employees, as persons with knowledge of relevant facts. Plaintiffs further name the Defendant, as well as its agents, representatives, and/or employees or former agents, representatives, or employees, as persons from whom expert testimony may be elicited regarding liability, causation and/or damages, although Plaintiffs do not necessarily vouch for all the opinion testimony of such persons. Plaintiffs refer you to the Department of Defense Inspector General reports from 2018, 2017, 2014, and 2015; Defendant's discovery documents; deposition testimony; documents produced by Defendant; and related medical records for the subject matter, facts known, and opinions and impressions of these witnesses.

5. Airman Kelley's Air Force Commander

Kelley's Commander issued a no contact order and has knowledge of Kelley's conduct and training in the Air Force.

6. Airman Kelley's Air Force Commander

Kelley's Commander issued a no contact order, prepared a confinement package stating that he was "convinced" that Kelley was "dangerous and likely to harm someone if released", and has knowledge of Kelley's conduct and training in the Air Force.

7. The 49th Security Forces Squadron and its investigators, Military Law Enforcement Officers (LEOs), or AFSFC Police Services Branch
Confinement Facility
Commanders, Officers, supervisors, employees

The 49th Security Forces Squadron investigated Airman Kelley. The 49th Security Forces Squadron investigators and/or Military Law Enforcement Officers (LEOs) had responsibilities to gather fingerprints and report, and thus will have knowledge of their responsibilities, training, and failures. The December 6, 2018, the Inspector General of the DOD issued a 131-page Report titled, *Investigation into the United States Air Force's Failure to Submit Devin Kelley's Criminal History Information to the Federal Bureau of Investigation* concluding that training on the submission of fingerprints and final disposition reports was ineffective and lacking, both for AFOSI Detachment 225 and the 49th Security Forces Squadron, and "there was no valid reason for the USAF's failures". *See* p. 111-112; *see also* p. 96-98 (noting "training did not provide instructions on when or how to submit either the fingerprint card or the final disposition report to the FBI CJIS Division").

AFSFC Police Services Branch training focused on collection of fingerprints, but failed to address submitting fingerprint cards and final disposition reports to the FBI CJIS. Their Management Internal Control Toolset (MICT) checklist items are supposed to be monitored and assessed as part of the installation commander's self-inspection program. Monthly supervisory reviews were "incomplete and ineffective. *See* Report No. DODIG-2019-030 p. 110.

8.  AFOSI Detachment 225 and/or Holloman Air Force Base Office of Special Investigation Commanders, Officers, Special Agents, supervisors, employees

    AFOSI Detachment 225 and/or Holloman Air Force Base Office of Special Investigation had responsibilities to gather fingerprints and report, and thus will have knowledge of their responsibilities, training, and failures.  The December 6, 2018, the Inspector General of the DOD issued a 131-page Report titled, *Investigation into the United States Air Force's Failure to Submit Devin Kelley's Criminal History Information to the Federal Bureau of Investigation* concluding that training on the submission of fingerprints and final disposition reports was ineffective and lacking, both for AFOSI Detachment 225 and the 49th Security Forces Squadron, and "there was no valid reason for the USAF's failures".  *See* p. 111-112; *see also* p. 96-98 (noting "training did not provide instructions on when or how to submit either the fingerprint card or the final disposition report to the FBI CJIS Division").

    Although AFOSI policy required supervisory reviews to include both I2MS and the investigative case file (record copy), the AFOSI Detachment 225 SAIC and Superintendent focused their reviews on the I2MS activities and not on investigative case files" *See* p. 89.  "In sum, we concluded that AFOSI Detachment 225 monthly supervisory reviews of Kelley's investigative case file were incomplete and ineffective".

9.  Airforce Prosecutors

    Air Force prosecutors gathered evidence and handled the conviction of Airman Kelley, and thus have knowledge of his conduct and disposition.

10. Kelley's former Supervisor in the Air Force

    Kelley sent a threatening Facebook message to his former supervisor in the Air Force, after his discharge.  She will have knowledge of Kelley's conduct and condition and threats.

11. Office of Inspector General for the DOD

    The Office of Inspector General for the DOD has issued two reports investigating and detailing the failures of the Air Force, including negligence, negligent training, and negligent supervision.  *See* attached reports:

    •  Report No. DODIG-2019-030, Inspector General U.S. Department of Defense, Dec. 6, 2018, Report of Investigation into the United States Air Force's Failure to Submit Devin Kelley's Criminal History Information to the Federal Bureau of Investigation; see id. at p. 117, "The USAF concurred with this report and its recommendations."   https://www.dodig.mil/reports.html/Article/1707300/report-of-investigation-into-the-united-states-air-forces-failure-to-submit-dev/

- Report No. DODIG-2018-035, Inspector General U.S. Department of Defense, Dec. 4, 2017, *Evaluation of Fingerprint Card and Final Disposition Report Submissions by Military Service Law Enforcement Organizations.* *https://www.dodig.mil/reports.html/Search/DODIG-2018-035/*

The DOD concluded that training on the submission of fingerprints and final disposition reports was ineffective and lacking, both for AFOSI Detachment 225 and the 49th Security Forces Squadron, and "there was no valid reason for the USAF's failures". *See* p. 111-112; *see also* p. 96-98 (noting "training did not provide instructions on when or how to submit either the fingerprint card or the final disposition report to the FBI CJIS Division"). Indeed, the DOD "determined that this failure to submit Kelley's fingerprints was part of a systemic problem in AFOSI Detachment 225." *See* p. 94. Worse, the case agent was actually deployed for seven months during the investigation and reported that he complained he could not do his job, stating, "Boss, I'm burnt out, I'm so burnt out." "Boss, I want to get out. I can't do this anymore."

12. Case Agent responsible for Airman Kelley

    The Case Agent will have knowledge for the reasons he could not properly report Kelley to the FBI, as detailed by the DOD's report.

13. Boss of Case Agent responsible for Airman Kelley

    The boss of the Case Agent will have knowledge for the reasons the Case Agent could not properly report Kelley to the FBI, as detailed by the DOD's report.

14. HAFB Mental Health Clinic a/k/a Holloman Air Force Base Mental Health Clinic
    c/o Air Force or DOJ counsel of record

    HAFB Mental Health Clinic had custody of Kelley in the Air Force.

15. Air Force Office of Special Investigations
    Commanders, Vice-Commanders, Officers, supervisors, employees

16. Air Force Security Forces Squadron
    Holloman Air Force Base
    Commanders, Officers, supervisors, employees
    Cmdr. Nathan McLeod-Hughes

17. Air Force 49th Logistics Readiness Squadron
    Commanders, Officers, supervisors, employees

18. Air Force Article 32 Investigating Officers

19. Naval Consolidated Brig
    Miramar, California

Commanders, Officers, supervisors, employees

20. Air Force personnel

Air Force personnel are expected to have knowledge of Kelley's conduct in the Air Force and mental problems, including but not limited to his attempt to bring weapons onto the base to kill officers.

Additional Air Force personnel are provided below:

Air Force spokesperson, Ann Stefanek.   On November 28, 2017, An Air Force spokesperson, Ann Stefanek, admitted that the failure to follow Pentagon guidelines to report Kelley's crimes to the FBI was "not an isolated incident and similar reporting lapses occurred at other locations."

Heather Wilson
Secretary of the Air Force

Deborah Lee James
Secretary of the Air Force

Col. Kirk Stabler
Air Force Commander
Headquarters Air Force Office of Special Investigations
Quantico, Virginia

Brig. General Andrea Tullos
Air Force Director
Director of Security Forces
DCS/Logistics, Engineering & Force Protection
Department of the Air Force
Washington, D.C.

Director of Special Investigations
Department of the Air Force
Washington, D.C.

HQ Air Force Office of Special Investigations
Department of the Air Force
Superintendent, IT Integrations HQ AFOSI
Quantico, Virginia

Department of the Air Force
HQ USAF
Washington, D.C.

Deputy Director of Security Forces
DCS/Logistics, Installations & Missions Support

Defense Human Resources Activity
Headquarters
Pamela Mitchell, Director
4800 Mark Center Drive, Suite 06J25-01
Alexandria, VA 22350-4000

Department of the Air Force
HQ Air Force Office of Special Investigations
Quantico, VA
Brigadier General, Keith Givens
USAF Commander

Department of Defense
Under Secretary of Defense for Intelligence
Deputy Chief Management Officer

Department of Defense
Military Criminal Investigative Organizations (MCIOs)
        Commanders, Officers, supervisors and employees
Defense Criminal Investigative Organizations (DCIOs)
        Commanders, Officers, supervisors and employees

General David Goldfein
Air Force Chief of Staff

General Stephen Wilson
Air Force Vice Chief of Staff

Lt. General Gina Grosso
Air Force Deputy Chief of Staff, Manpower, Personnel & Services

Lt. General John Raymond
Air Force Deputy Chief of Staff, Operations

Lt. General John Cooper, Deputy Chief of Staff, Operations

Defense Incidence-Based Reporting System
Commanders, Officers, supervisors, employees


## Psychiatric Clinic and Personnel

21. Peak Behavioral Health Services (PBHS) and Xavier Alvarez

5055 McNutt Rd,
Santa Teresa, NM 88008
(575) 589-3000

Peak Behavioral Health Services (PBHS) had a program for military personnel and
diagnosed Kelley with various mental and emotional disorders.  On information and
belief, this is the facility from which Kelley attempted to buy guns to kill his
commanding officers, and the facility that Kelley escaped from and fled to El Paso.

According to an El Paso police report, police were informed that Kelley "was a danger to
himself and others as he had already been caught sneaking firearms onto Holloman Air
Force Base".  Police were further advised that Airman Kelley "suffered from mental
disorders" and that he "was attempting to carry out death threats" against "his military
chain of command."  Xavier Alvarez, who worked for Peak Behavioral and who reported
Kelley to police for the escape, later confirmed to NBC News that Kelley "verbalized that
he wanted to get some kind of retribution to his chain of command."  Other patients
reported that Kelley was doing something suspicious on computers, and the military
found that Kelley was "ordering weapons and tactical gear and magazines to a P.O. Box
in San Antonio."  Alvarez was quoted as saying, "This kid – he was hollow," and "I
could never reach him."

## Airman Kelley's Former Spouses

22. Tessa Kelley

Tessa Kelley was married to Airman Devin Kelley while he was in the Airforce and
reported him for abuse to herself and infant child.


23. Danielle Shields Kelley

Danielle Shields was the spouse of Airman Devin Kelley at the time of the church
shooting.

## Other Entities and Persons

24. El Paso Police
Headquarters:
911 N. Raynor
El Paso, TX 79903
(915) 212-4000

The El Paso police apprehended Kelley after he escaped.  Their report is attached.

25. Sunland Park Police Department
1000 McNutt Rd

Sunland Park, NM 88063

26. Academy Sports + Outdoors in San Antonio

Kelley bought a Ruger 5.56 mm assault rifle from Academy Sports + Outdoors in San Antonio after clearing a background check of the NICS. Store personnel will have knowledge of the transaction.

27. First Baptist Church of Sutherland Springs, Texas
Frank Pomeroy, Pastor
First Baptist Church
216 4th Street
Sutherland Springs, Texas 78161

This is the church where the shooting occurred. The pastor was not there that morning, but on information and belief lost his daughter and many beloved friends in the massacre. He will have knowledge of their community and relationships and the impact of the shooting.

28. Other Plaintiffs and Survivors
Available for contact through their counsel of record in this case

The Sutherland Springs shooting was the worst mass shooting in Texas history, with around 26 dead and 20 wounded. Accordingly, the surviving victims, their relatives, and all Plaintiffs have knowledge related to what happened and elements of damages.

29. The Heroes of Sutherland Springs
Stephen Willeford
Johnnie Langendorff

Stephen Willeford confronted Kelley and chased him away from the church. Johnnie Langendorff stopped his vehicle to pick up Mr. Willeford and give chase. An article about them is attached from https://www.texasmonthly.com/articles/stephen-willeford-sutherland-springs-mass-murder/

30. Police Officers, Law Enforcement, and First Responders to the church shooting

Law enforcement and other first responders came to the scene of the shooting and witnessed the aftermath of the slaughter.

Steve Moore
Wilson County Sheriff's Department
        Investigator

Harold Schott, Justice of the Peace Pct. #3
Wilson County

Terry Snyder
Texas Ranger Division
Texas Department of Public Safety
6100 Guadalupe Street, Building E
Austin, TX 78752
      Investigator and Custodian of Records

Tanya Wood

**Treating Physicians, medical facilities and providers**

Medical records are attached, and such providers are incorporated herein by reference.

Plaintiff hereby designates as persons with knowledge the health care providers referenced in the related health care records in this case, including physicians, technicians, nurses, radiologists, physician's assistants, physical therapists, clinics, hospitals, pharmacies, and their agents, representatives, and employees.  While these health care providers are not within the control of Plaintiff and have not been retained by Plaintiff as expert witnesses, Plaintiff reserves the right to elicit opinion testimony from any such health care provider, including expert testimony regarding liability, causation, and damages from those treating healthcare providers relating to the medical treatment provided to the Plaintiff. To the extent it is necessary to call live at the trial or by deposition in this cause any agents, representatives, employees and/or custodian of records for any of the following health care providers, Plaintiff identifies any such custodian as a person who may have expert knowledge regarding issues related to the incident in question to include personal knowledge of the records and concerning the necessity of services rendered and referenced in the records and concerning the reasonableness of the medical bills charged and referenced in the records of the following health care providers.  For the mental impressions held by and the opinions of and facts known by any of the following witnesses, please refer to the related health care records of the Plaintiff.

   31. South Texas Radiology
       PO Box 29407
       San Antonio TX 78229

       Medical provider.

   32. Victoria Hospitalist Associates
       PO Box 4897
       Houston, TX 77210

       Medical provider.

   33. Wilson County Volunteer Ambulance Assn
       PO Box 450
       Mansfield, TX 76063

Ambulance service provider.

34. Connally Memorial Medical Center
Dr. Frederick Krause (operating surgeon) and other personnel reflected in the medical records
499 10th St.
Floresville TX 78114

Medical provider where Farida Brown was taken for surgery.

35. Mary Kennington, PhD
10611 Grant Rd
Houston, TX 77070
713-201-8791

Dr. Kennington is a trauma psychologist who is providing trauma and grief therapy to Farida Brown.  Records are attached.

*(ii) a copy – or a description by category and location – of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may sue to support its claims or defenses, unless the use would be solely for impeachment*

**Response:**

Plaintiff has produced contemporaneously with these disclosures, documents in her possession related to the allegations in this case.   These documents are Bates labeled 19-184-000001 – 19-184-001636. (Please note that the entire file of the surgery disc with viewer is Bates labeled 19-184-001605, since it is not a pdf.)

Plaintiff also identifies the following documents from the Holcombe Plaintiffs, and incorporates disclosures of all other Plaintiffs by reference.

- Inspector General, US Department of Defense, Evaluation of the Defense Criminal Investigative Organizations' Defense Incident-Based Reporting System Reporting and Reporting Accuracy, October 29, 2014

- Inspector General, US Department of Defense, Evaluation of the Defense Compliance with Criminal History Data Reporting Requirements, February 12, 2015

- Inspector General, US Department of Defense, Evaluation Fingerprint Card and Final Disposition Report Submissions by Military Service Law Enforcement Organizations, December 4, 2017

- Inspector General, US Department of Defense, Report of Investigation into the United States Air Force's Failure to Submit Devin Kelley's Criminal History Information to the Federal Bureau of Investigation, December 6, 2018

- Department of Defense Directive Number 7730.47, October 15, 996

- Department of Defense Manual Number 7730.47-M Volume 1, December 7, 2010

- U.S. Department of Defense Press Operations, DoD launches review of Devin P. Kelley criminal record notification, Release No. NR-382-17, November 6, 2017

- National Instant Criminal Background Check System Indices

- U.S. Air Force article, AF Implements Changes to Improve Law Enforcement Database Reporting, November 28, 2017

- U.S. Air Force tweet November 9, 2017

- Report to the Committee on the Judiciary United States Senate from The Honorable Heather Wilson, Secretary of the Air Force, December 6, 2017 (Bates #18-00949-

- Questions for the Record for Secretary of the United States Air Force Heather Wilson, December 13, 2017 (Bates #18-00949-

- Misdemeanor Crimes of Domestic Violence

- Devin Kelley Trial Transcript

- El Paso Incident Report, June 7, 2012

- Devin Kelley Court Martial Order

- Statement of Danielle Kelley

- Devin Kelley Autopsy Report

In addition, Plaintiffs are in the possession of the materials maintained by the Texas Rangers related to the incident.  In obtaining these materials, Plaintiffs entered into an agreement with the Texas Attorney General regarding their release.  As such, Plaintiffs will discuss the terms of this agreement with Defendant prior to releasing these materials.

*(iii)  a computation of each category of damages claimed by the disclosing – who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged and protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries and suffered;*

**Response:**

Discovery is still in its early stages and it is premature for Plaintiffs to respond to this disclosure; however, please see Plaintiffs' Original Complaint(s) and any and all amendments thereto for the categories of damages sought by Plaintiffs.   Please refer also to Plaintiffs' administrative claims filed with the Government for the maximum amount of damages sought by Plaintiffs in this case.  Please refer to the sworn deposition testimony in this case. Please also refer to Plaintiffs' Designation of Experts and any amendments or supplements thereto for additional information regarding the facts known to these witnesses and the bases of their opinions.  These expert designations will be made at the time required by the Court's Scheduling Order. Please also refer to the sworn testimony and written reports of these witnesses for further information regarding the facts known to and opinions held by these witnesses.

As stated in para. 123 of Plaintiff's Original Complaint, Plaintiff alleges that all damages suffered by Farida Brown were proximately caused by the actions, failures and omissions of Defendant the United States of America.  She seeks damages for:

    a.  For general and special damages, including:

        1)  Mental anguish, past and future;

        2)  Pain and suffering for personal injuries, past and future;

        3)  Medical expenses, past and future;

        4)  Physical impairment, past and future;

        5)  Disfigurement, past and future;

        6)  Cost of care and loss of household services, past and future;

        7)  Loss of enjoyment of life, past and future;

        8)  Loss of life expectancy;

    b.  For post-judgment interest as allowed by law;

    c.  For cost of suit incurred herein; and

    d.  For such other and further relief as this Court may deem just and proper.

Plaintiff is likely to need further operation(s) and medical treatment due to shrapnel left in her legs from the shooting.  Because this case is ongoing, Plaintiff reserves the right to modify damages theories as the case progresses.  Pursuant to 28 U.S. Code § 2675, Plaintiff's FTCA notice letter of August 20, 2018, demanded ten million dollars ($10,000,000).  This is not to be taken as the sum total of her damages, but rather the amount sought from the government under the FTCA.

*(iv)  for inspection and copying as under Rule 34, any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments to satisfy the judgment.*

**Response:**

Not applicable.  Plaintiffs are seeking damages from Defendants.  Any insurance agreements that Defendants have are in Defendants' possession.

*(2): Expert Disclosures:*

**Response:**

Regarding experts who may be called to testify at the trial in this case, please refer to Plaintiff's Designation of Experts and any amendments or supplements thereto for additional information regarding the facts known to these witnesses and the bases of their opinions.  These expert designations will be made at the time required by the Court's Scheduling Order. Please also refer to the sworn testimony and written reports of these witnesses for further information regarding the facts known to and opinions held by these witnesses.

Plaintiff cross-identifies as expert witnesses any person named or to be named by Defendant or another Plaintiff as a person having expert knowledge about any facts surrounding any issues relevant to the incident in question as expert witnesses who Plaintiff reserves the right to call live at the trial of the cause.  Plaintiff reserves the right to call such persons as expert witnesses, whether or not the designation is subsequently withdrawn.  Plaintiff does not have any control over any such witness, nor do they have any superior right to ascertain the subject matter on which any such witness may testify and/or opinions held by any such witness, beyond the information disclosed in deposition testimony and/or by Defendant's or other Plaintiff's discovery responses.  In that regard, Plaintiff refers you to all other parties' discovery documents, deposition testimony, and documents produced for the subject matter, facts known, and opinions and impressions of these witnesses.  Plaintiff reserves the right to obtain opinion testimony from any such witness within their area of expertise as related to this case.

RETAINED EXPERTS:  Plaintiff has retained the following experts and will supplement if additional experts are retained.

Mary Kennington, PhD
10611 Grant Rd
Houston, TX 77070
713-201-8791
https://www.marykennington.com/
https://www.marykennington.com/AboutMe.en.html

Dr. Kennington is a licensed psychologist providing trauma and grief therapy to Farida Brown.  Dr. Kennington earned her Ph.D. in Clinical Psychology from Brigham Young

University.  She interned at Baylor College of Medicine.  Her doctoral fellowship was completed through the University of Texas Medical School, Houston.  She has been licensed in the State of Texas since 1995.

Dr. Kennington's treatment records for Ms. Brown are attached.  Dr. Kennington's CV will be produced.

Medical doctors and facilities who have provided treatment to Farida Brown are identified above and/or in the attached medical records.  Such persons and facilities have not been retained at this time, but are recognized for their expertise in medical care and billing.

Respectfully submitted:

**SCHREIBER | KNOCKAERT, PLLC**

/s/ Joseph M. Schreiber_____
Joseph M. Schreiber
Texas Bar No.: 24037449
Erik A Knockaert
Texas Bar No. 24036921
701 North Post Oak Rd., Suite 325
Houston, TX 77024
Phone (281) 949-8904
Fax (281) 949-8914
joe@lawdoneright.net
erik@lawdoneright.net
ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that Defendant's counsel of record are being served via email and US mail with documents on disc by US mail on this 26th day of June 2019.

/s/ Erik Knockaert
_____

Erik Knockaert

L

IN THE UNITED STATES WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| CHRISTOPHER WARD, | § | |
| INDIVIDUALLY AND ON | § | |
| BEHALF OF THE ESTATES OF | § | |
| JOANN WARD AND BROOKE | § | |
| WARD, DECEASED; AND AS | § | |
| NEXT FRIEND OF | § | NO. 5:19-CV-00289-XR |
| , A MINOR CHILD | § | (consolidated into Holcombe v. |
| | § | United States,, No. 5:18-cv-00555-XR) |
| Plaintiffs | § | |
| | § | |
| Vs | § | |
| | § | |
| UNITED STATES OF | § | |
| AMERICA | § | |
| Defendant | § | |

**PLAINTIFF CHRISTOPHER WARD'S, INDIVIDUALLY AND AS GUARDIAN OF THE PERSON AND ESTATE OF R.W.., A MINOR AND AS REPRESENTATIVE OF THE ESTATE OF JOANN WARD, DECEASED AND B.W, DECEASED MINOR, INITIAL DISCLOSURES PURSUANT TO RULE 26(A)(1)**

(i)    The name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment;

   **a. Plaintiffs hereby designate as persons with knowledge the health care providers referenced in the related health care records in this case, including physicians, technicians, nurses, radiologists, physician's assistants, physical therapists, clinics, hospitals, pharmacies, and their agents, representatives, and employees. While these health care providers are not within the control of Plaintiffs and have not been retained by Plaintiffs as expert witnesses, Plaintiffs reserve the right to elicit opinion testimony from any such health care provider, including expert testimony regarding liability, causation, and damages from those treating healthcare providers relating to the medical treatment provided to the Plaintiffs. To the extent it is necessary to call live at the trial or by deposition in this cause any agents, representatives, employees and/or custodian of records for any of the following health care providers, Plaintiffs identify any such custodian as a person who may have expert knowledge regarding issues**

1

**related to the incident in question to include personal knowledge of the records and concerning the necessity of services rendered and referenced in the records and concerning the reasonableness of the medical bills charged and referenced in the records of the following health care providers.  For the mental impressions held by and the opinions of and facts known by any of the following witnesses, please refer to the related health care records of the Plaintiffs.**

Air Methods Corporation
Rocky Mountain Holdings, LLC
And its custodian of records, agents and employees, including but not limited to:
Ryan D. Smith
Cody Jenkins
Whitni Pryor
PO Box 713375
Cincinnati, OH 45271-3375
Tel: (888) 636-4438
*Ryland Ward's Medical Provider*

Baylor Scott and White Medical
And its custodian of records, agents and employees
3500 Gaston Ave,
Dallas Texas 75246
Tel: (844) 279-3627
*Plaintiff Ryland Ward's Medical Provider*

Century Integrated Partners, Inc.
And its custodian of records, agents and employees
4835 LBJ Freeway, Suite 900
Dallas, Texas 75244
Tel: (214) 820-2505
*Plaintiff Ryland Ward's Medical Provider*

Children's Rehabilitation Institute
And its custodian of records, agents and employees, including but not limited to:
Rudy Cardenas
Eileen De La Garza
Kristen Garza
Gerardo Loza
Paola Mariscal
Marites Navarro
Cynthia Riley

Lori Salazar
10839 Quarry Park
San Antonio, Texas 78233
Tel: (210) 257-6260
*Ryland Ward's Medical Provider*


The Ecumenical Center for Education, Counseling  & Health
The Center for Hope & Healing
And its custodian of records, agents and employees, including but not limited
to:
Manuel Terry Davis, Jr.
Elizabeth Hand
Nancy Tschirhart Brooks
8310 Ewing Halsell
San Antonio, Texas 78229
Tel: (210) 616-0885
*Ryland Ward's Mental Health Provider*

Floresville Independent School District
And its custodian of records, agents and employees, including but not limited
to:
Laura Casias
Leanne Marshall
Shelley Keck
Karol Koehler
Amiee Lopez
Lisa Lucio
Jaquelyn Miller
Kelly Orth
Kelsi Powers
Ben Reed
Sandra Salinas
Jeff Stavinoha
Cynthia Torres
1200 5th Street
Floresville,  Texas 78114
Tel: (830) 393-5300
*Ryland Ward's Educational Provider which has knowledge of time missed from
school as well as educational accommodations due to his injuries*

**La Vernia ISD**
And its custodian of records, agents and employees, including but not limited
to:
Maggie Fuller

3

Victoria Johnson
13600 US 87
La Vernia, Texas 78121
Tel; (830) 779-6600
*Ryland Ward's Educational Provider which has knowledge of time missed from school as well as educational accommodations due to his injuries*

Medco Medical Supply
And its custodian of records, agents and employees
10305 Roundup Lane,
Houston, Texas 77064
Tel; (713) 956-5288
*Ryland Ward's Medical Provider*

Pediatric Urology of San Antonio, PLLC
And its custodian of records, agents and employees, including but not limited to:
4499 Medical Drive, Suite 360
San Antonio, Texas 78229
*Ryland Ward's Medical Provider*

Juan Carlos Prieto, M.D.
And his custodian of records, agents and employees
4499 Medical Drive, Suite 360
San Antonio, Texas 78229
*Ryland Ward's Medical Provider*

Professional Associated for Children's Benefit
And its custodian of records, agents and employees
*Ryland Ward's Medical Provider*

Cynthia Riley, M.D.
And her custodian of records, agents and employees
10839 Quarry Park
San Antonio, Texas 78233
Tel (210) 257-6260
*Ryland Ward's Mental Health Provider*

San Antonio Extended Medical Care, Inc.
And its custodian of records, agents and employees
21195 W. IH 10 Suite 1101

San Antonio, Texas 78257
Tel: (210) 697-9933
*Ryland Ward's Mental Health Provider*

South Texas Radiology Group
And its custodian of records, agents and employees
8401 Data Point
San Antonio, Texas 78229
Tel: (210) 61-7700
*Ryland Ward's Medical Provider*

Southwest Texas Methodist Hospital
And its custodian of records, agents and employees
7700 Floyd Curl Drive
San Antonio, Texas 78229
Tel: (210) 575-4990
*Ryland Ward's Medical Provider*

Tejas Anesthesia, PA
And its custodian of records, agents and employees
4242 Medical Drive, Suite 3100
San Antonio, Texas 78229
Tel: (210) 615-1187
*Plaintiff Ryland Ward's Medical Provider*

University Health System
And its custodian for records, agents and employees, including but not limited to:
4502 Medical Drive
San Antonio, Texas 78229
Tel: (210) 358-4000
*Plaintiff Ryland Ward's Medical Provider*

The University of Texas Health Science Center
And its custodian of records, agents and employees, including but not limited to:
Cesar Emilio Aguiluz
Motasem Alkhatib
Veronica Armijo-Garcia
Devi Arwikar
Joseph Ayoub

Christie M. Bialowas
Benjamin Benson
Paige Camille Burau
Adina Campbell
Sabrina Carrillo
Jessica Castorena
Leah Gleaves Chodroff
Ewell Clarke
Rachel Cobos
Hope Cordova
Christopher Crane
Mark Davies
Alessandro Gregorat
Dorinda Escamilla-Padilla
Jeffrey Foster
Daniel Gebhard
Angela Gomez
Georges Haidar
Brett Hall
Thao-Phuong Hallet
Grant Hogue
Yekatarina Jordan
Joseph John
Rashmi Katre
Neera Kaur
Kenneth Kist
Sara M. Koenig
Robert Krause
Ghazwan Kroma
Lilian Liao
Jorge Lopera
Lisa Lopez
Amanda Loquias
Partha Mandal
Ashley McGinty
Michael John Metzner
Andrew Meyer
Mark T. Muir
Madison Murphy
Nazarulla Noohu
Eric Ortega
Amber Lee Pedracini
Jeremy Perlman
Dan Pong

Hamid Rajebi
Carlos Restrepo
Shane Riggs
Eric Rodriguez
Erica Salazar
Umber A. Salman
Riley P. Scott
Amita Shah
Maureen Sheehan
Elizabeth Sherer
Nicholas Robert Stephens
Minette Son
Mandie Svatek
Christopher Ang Sy
Linda Thomas
Ruchi Tiwari
Cedric Pluguez Turull
Juan Febres Vallecitos
Noel Vega
Kathryn Vela
Mario Vela
Mary Von Heiland
Guhanand Venkataraman
Sandhya Vinu Nair
John Allen Walker
Robert Daniel Wicoxson
Jeni Wilson
Maria De Consuelo Woolsey
Omid Yeganeh
Boris Zelle
Abdul Mueed Zafar
Xuchen Zhang
7703 Floyd Curl Drive
San Antonio, Texas 78229
Tel: (210) 567-7000
*Plaintiff Ryland Ward's Medical Provider*

Wilson County EMS
And its custodian of records, agents and employees
1402 Hospital Blvd.,
Floresville, Texas 78114
Tel: (830) 393-3120
*Plaintiff Ryland Ward's Medical Provider*

**b. Plaintiffs identify themselves as persons with knowledge of relevant facts pertaining to the incident in question:**

Christopher Ward
c/o Kelly Kelly
Anderson & Associates Law Firm
2600 SW Military Drive, Suite 118
San Antonio, TX 78224
*Joann Ward's husband*

R.W., a minor
c/o Kelly Kelly
Anderson & Associates Law Firm
2600 SW Military Drive, Suite 118
San Antonio, TX 78224

**c. Plaintiffs identify the following family members, friends, and other persons as persons with knowledge of relevant facts:**

Dalia Lookingbill, Individually and as Representative of the Estate of E.G.
c/o Jason Webster
The Webster Law Firm
6200 Savoy, Suite 150
Houston, Texas 77036

R.T., a minor, by and through her Guardian Dalia Lookingbill
c/o Jason Webster
The Webster Law Firm
6200 Savoy, Suite 150
Houston, Texas 77036

Chris Benavides - Bureau of Alcohol Tobacco Firearms & Explosives
San Antonio Group III
*ATF Agent investigated sale of firearms to gunman, Devin Kelly.*

Tom Caldwell
Wilson County Attorney
1420 Third Street, Suite 201
Floresville, Texas 78014
(830) 393-7305 Telephone
*Wilson County Attorney in charge of autopsies occurring in Wilson County.*

Judge Clara J. Rutland
Justice of the Peace - Precinct 4
Wilson County
800 10th Street, Suite 6
Floresville, Texas 78114
(830) 393-4052 Telephone
*Judge Rutland arrived at the scene of the incident following the massacre.*

Judge Harold Schott
Justice of the Peace - Precinct 3
Wilson County
402 Bluebonnet (FM 775)
La Vernia, Texas 78121
(830) 477-8034 Telephone
*Judge Schott arrived at the scene of the incident following the massacre. Judge Schott also certified the death certificates of several other victims of this incident in addition to several other named deceased Plaintiffs.*

Judge Sara Canady
Justice of the Peace - Precinct 2
Wilson County
121 Dilworth Plaza
Poth, Texas 78147
(830) 484-2356 Telephone
*Judge Canady arrived at the scene of the incident following the massacre.*

Andrew R. Graham - Deputy Assistant Director Field Operations (10)
U.S. Department of Justice
Address Unknown
*Mr. Graham's investigated 04/07/2016 and 10/18/2017 weapon sales to Devin Kelly.*

Scott Hester
Bureau of Alcohol Tobacco Firearms & Explosives
Firearms Program Specialist, Night Shift
ATF National Tracing Center
244 Needy Road
Martinsburg, WV 25401
(800) 788-7133, ext 01536 Telephone
*ATF Agent investigated sale of firearms to gunman, Devin Kelly.*

Jeff Kennedy
Bureau of Alcohol Tobacco Firearms & Explosives

Intelligence Research Specialist
San Antonio, Texas
(210) 805-2727
*ATF Agent investigated the sale of firearms to gunman, Devin Kelly.*

Sheriff Joe D. Tackitt, Jr.
Wilson County Sheriff's Department
800 10th Street, Unit 4
Floresville, Texas 78114
(830) 393-2535 Telephone
*Investigating Agency*

Texas Department of Public Safety
Texas Rangers – Company "F"
Joel Kite
Joey Evans
John Lingle
Michael Adcock
Johnie Deagen
Patrick OConnor
Ranger Dixon
Ranger Wolf
Reid Rackley
Ryan Clendennen
Steve Moore
c/o Ken Paxton, Attorney General and
Kimberly Fuchs, Assistant Attorney General
P.O. Box 12548
Austin, Texas 78711
(512) 463-2100 Telephone
*Investigating Agency*

United States Department of Justice
Federal Bureau of Investigation
Abby Halle, SA
Adebowale Alade, SA
Adolfo Baesa, SA
Albert Ott
Alexis Mata, SA
Brandon Kight, SA
Carlos Anchondo, SA
Carly Johnson

Christine Beining
Cruz Esquival, SA
Cynthia Meiners, SA
Daniel Galloway
David W. Boruschko, SA
David Snow, SA
Dodson Jesse, SA
Dustin McCarley, SA
Francisco G. Cruz, SA
Gabriel Villanuevo (?), SA
George S. Olivarez, SA
Gerard L. Carter, SA
Gregory P. Pratt, FBI Photographer
Hans Momberger, SA
Heather Kotara, SA
Hector D. Morales, SA
James Leal, SA
James Runkel, SA
Jason Bayne, SA
Jeffrey S. Williams, SA
Joel Stephen, SA
Jonathan Dawson
Jordana Nesvog, SA
Joseph L. Horton, SA
Joshua Banuelos, SA
Kathryn Robertson, SA
Katrina Diller, OST
Kirby Llanos, SA
Kristina Spindel, SA
Liam O'Faffell, SA
Mario DeLuna, SA
Matthew P. Melic, SA
Matthew W. Shelley, SA
Michael Call, SA
Michael Carusle, SA
Mike Haywood, SA
Noah Domnick, SA
Patrick Edgar, SA
Patrick Syson, SA
Rand L. Perdiue, SA
Rex Miller, SA

Robert Salinas, SA
Roberto Rojas, SA
Sara Marrow, SA
Shawn Byles, SA
Sophie R. Zaiontc, SA
Sophie Zarantz
Steven Gonzales
Susan Martin, SA
Tamara Dolan, SA
Timothy C. Doyle, SA
Tina Nicholas, SA
Traci Holm, SA
Victor Fernandez, SA
Vilia Ann Chafin, SA
Yvonne Muirhead, SA
Joe Horton, SA
Dustin McCarley, SA
FBI Headquarters
935 Pennsylvania Avenue, NW
Washington, D.C. 20535
(202) 324-3000 Telephone
*Investigating Agency*

William D. McClaim
Deputy Medical Examiner – Bexar County, Texas
7337 Louis Pasteur Drive
San Antonio, Texas 78229
(210) 335-4001 Telephone
(210) 335-4002 Facsimile
*Dr. McClain Certified the Death Certificate of E.G.*

Castillo Mission Funeral Home
520 N. General McMullen Drive
San Antonio, Texas 78228
(210) 432-8586 Telephone
*Arranged Funeral Services of E.G.*
*Arranged Funeral Services of B.W.*
*Arranged Funeral Services of Joann Ward*

Our Lady of Grace Catholic Cemetery
Lower Lacoste Road
La Coste, Medina County, Texas
*Burial site of E.G.*
*Burial site of B.W.*
*Burial site of Joann Ward*

University Health System
4502 Medical Dr
San Antonio, TX  78229
(210) 358-4000 Telephone
(210) 200-6002 Facsimile
*Physicians, nurses, employees and/or other personnel who treated E.G. for the severe injuries she sustained as a result of this incident until her passing.*

Custodian of Records for:
University Health System
4502 Medical Dr
San Antonio, TX  78229
(210) 358-4000 Telephone
(210) 200-6002 Facsimile
*The employees who provided record keeping and billing services for the medical services and treatment to E.G.  for the severe injuries she sustained as a result of this incident until her passing.*

Kimberley K. Gaskill, M.Ed., CSC, LPC
Adams Hill Elementary
9627 Adams Hill Drive
San Antonio, Texas 78245
(210) 397-1400 Telephone
(210) 678-2937 Facsimile
*Ms. Gaskill is the school counselor. R.T. has visited with Ms. Gaskill regarding her experience in witnessing the death of her mother, Joann Ward and her sister, E.G. as well as the death of her step-sister, B.W. and the extensive injuries of her step-brother R.W. Rhianna also saw many others shot and killed during the church massacre.*

Ray Galindo, Custodian of Educational Records for:
Adams Hill Elementary
9627 Adams Hill Drive
San Antonio, Texas 78245
(210) 397-1400 Telephone
(210) 678-2937 Facsimile

13

*Mr. Galindo is the custodian of Educational Records for Adams Hill Elementary. He may testify as to the business records and kept by Adams Hill Elementary. Specifically, this witness may testify as to the records being kept in the regular course of business by an employee or representative with personal knowledge of the act, event or condition recorded to make the record, or to transmit information thereof to be included in such record, and that records were made at or near the time of the incident, event or condition recorded or reasonably soon thereafter, and that it was in the regular course of business to make such a record. This witness may testify that the records are the true and correct copies of the originals.*

Kelli Braden
7009 Almeda Rd., Apt 828
Houston, Texas 77054
*Person with knowledge of relevant facts. Wife of Plaintiff, Robert Braden.*

David Casillas
Address Unknown
*Person with knowledge of relevant facts. Rushed to the scene of the shooting*

David Colbath
Address Unknown
*Person with knowledge of relevant facts. Shot at least 8 times in shooting.*

Tessa Kelley (nee' Loge)
Devin Kelley's former spouse

Jessika Edwards
Address Unknown
*Person with knowledge of relevant facts. Worked with Kelley at Holloman Air Force Base in New Mexico from 2010 to 2012; claims Kelley told her he was buying dogs from Craigslist and using them as target practice.*

David Flores
Address Unknown
*Person with knowledge of relevant facts. Neighbor to church.*

Lorenzo Flores
Address Unknown
*Person with knowledge of relevant facts. Heard the gunfire in the church and watched the Gunman, Devin Kelley fire into the church from the outside.*

14

Inspector General Glen A. Fine
Address Unknown
*Person with knowledge of relevant facts. Acting Inspector General at time of shooting.*

E. H., a Minor
Address Unknown
*Person with knowledge of relevant facts. Grazed by bullet and survived shooting.*

Kevin Jordan
Address Unknown
*Person with knowledge of relevant facts. Witnessed Stephen Willeford shoot at Gunman, Devin Kelley following his shooting rampage.*

Danielle Kelley (née Shields)
c/o The Law Office of Daniel D. Horowitz
2100 Travis Street
Houston, Texas 77002
(832) 460-5181 Telephone
*Person with knowledge of relevant facts. Wife of Devin Kelley; Married on April 4, 2014 and lived together with him until his death.*

Michael Kelley and Rebecca Kelley
2825 FM 2722
New Braunfels, TX 78132
(830) 899-2100 Telephone
*Persons with knowledge of relevant facts. Parents of Gunman, Devin Patrick Kelley.*

Johnnie Langendorf
Address Unknown
*Person with knowledge of relevant facts. Chased Gunman, Devin Kelley with his truck in order to apprehend him.*

Tessa K. Loge (now Brennaman)
Address Unknown
*Person with knowledge of relevant facts. Ex-wife of Gunman, Devin Kelley; Attacked by Kelley.*

Ted Montgomery
Address Unknown
*Person with knowledge of relevant facts. Rushed to the scene of the shooting to help care for the wounded.*

Debra Morales
Address Unknown
*Person with knowledge of relevant facts. Volunteer coordinating relief efforts for victims' family members at the Immediate Family Command Center.*

Pastor Donnell Frank Pomeroy
158 Oak Valley
La Vernia, Texas 78121
*Person with knowledge of relevant facts. Head pastor of First Baptist Church of Sutherland Springs; Father of Annabelle Pomeroy, who died at the scene of the shooting.*

Sherri D. Pomeroy
158 Oak Valley
La Vernia, Texas 78121
*Person with knowledge of relevant facts. Wife of Pastor Pomeroy; Mother of Annabelle Pomeroy, who died at the scene of the shooting.*

Sue Soto
Address Unknown
*Person with knowledge of relevant facts. Rosa Solis' sister; drove Solis to hospital after shooting.*

Terri Smith
Address Unknown
*Person with knowledge of relevant facts. Heard the gunfire in the church and watched the Gunman, Devin Kelley fire into the church from the outside.*

Sheri Taggart
La Vernia, Texas
*Mother-in-law of Robert Braden; Came to the scene following the shooting and drove Robert Braden to the hospital.*

Stephen Willeford
Address Unknown
*Person with knowledge of relevant facts. Shot and wounded Gunman, Devin Kelley.*

Heather Wilson
Address Unknown
*Person with knowledge of relevant facts. Air Force Secretary.*

Julie Workman
Address Unknown
*Person with knowledge of relevant facts. Shot and provided medical assistance at scene of shooting.*

Kris Workman
Address Unknown
*Person with knowledge of relevant facts. Shot and paralyzed in shooting.*

Kyle Workman
Address Unknown
*Person with knowledge of relevant facts. Shot and escaped church.*

Morgan Workman (formerly Harris)
Address Unknown
*Person with knowledge of relevant facts. Shot and wounded during shooting.*

Rosanne Solis and Joaquin Ramirez
c/o George LeGrand
LeGrand & Bernstein
2511 North St. Mary's Street
San Antonio, Texas   78212
(210) 733-9439   Telephone
(210) 735-3542   Facsimile
*Person with knowledge of relevant facts.*

Robert Braden
c/o/Justin B. Demerath
jdemerath@808west.com
David Campbell
O'Hanlon, Demerath & Castillo, PC
808 West Ave.
Austin, Texas 78701
(512) 494-9949 Telephone
(512) 494-9919 Facsimile
akeeran@808west.com
*Person with knowledge of relevant facts.*

Chancie McMahan, Individually and As Next Friend of R.W., A Minor, Roy White, Individually and As Representative of The Estate of Lula White; Scott Holcombe
c/o The Law Offices of Thomas J. Henry & Hilliard Martinez Gonzales LLP
Thomas J. Henry
Marco A. Crawford
Dennis J. Bentley
521 Starr Street
Corpus Christi, Texas 78401
(361) 985-0600 Telephone
(361) 985-0601 Facsimile
*mcrawford-svc@tjhlaw.com
and
Robert C. Hilliard
bobh@hmglawfirm.com
Catherine D. Tobin
catherine@hmglawfirm.com
Marion Reilly
marion@hmglawfirm.com
Bradford Klager
brad@hmglawfirm.com
719 S. Shoreline Boulevard
Corpus Christi, Texas 78401
(361) 882-1612 Telephone
(361) 882-3015 Facsimile
*Person with knowledge of relevant facts.*

Christopher Ward, Individually and as Representative of the Estates of Joann Ward, deceased and B.W. deceased minor, and as Next Friend of R.W., a minor
c/o Paul Anderson
Kelly Kelly
Anderson & Associates Law Firm
2600 SW Military Drive, Suite 118
San Antonio, Texas 78224
(210) 928-9999 Telephone
(210) 928-9118 Facsimile
*Plaintiffs in Consolidated Civil Action No. 5:19-cv-289*

Joe Holcombe, Individually as Heirs at Law and as Representatives of the Estate of John Bryan Holcombe, deceased.
c/o Robert E. Ammons
Rob@Ammonslaw.com

April A. Strahan
April@Ammonslaw.com
The Ammons Law Firm, LLP
3700 Montrose Blvd.
Houston, Tx 77006
713.523.1606 Telephone
713.523.4159 Facsimile

and

Daniel D. Barks
Ddb@Speiserkrause.com
Speiser Krause
5555 Glenridge Connector, Ste. 550
Atlanta, Ga 30342
404.751.0632 Telephone
866.936.6382 Facsimile

and

Mark W. Collmer
Collmer Law Firm
3700 Montrose
Houston, Texas 77006
713.337.4040 Telephone
713.337.4044 Facsimile
*Plaintiffs in Consolidated Civil Action No. 5:18-cv-00555*

Claryce Holcombe, Individually as Heirs at Law and as Representatives of
the Estate of John Bryan Holcombe, deceased
c/o Robert E. Ammons
Rob@Ammonslaw.com
April A. Strahan
April@Ammonslaw.com
The Ammons Law Firm, LLP
3700 Montrose Blvd.
Houston, Tx 77006
713.523.1606 Telephone
713.523.4159 Facsimile

and

Daniel D. Barks
Ddb@Speiserkrause.com
Speiser Krause
5555 Glenridge Connector, Ste. 550
Atlanta, Ga 30342
404.751.0632 Telephone
866.936.6382 Facsimile

and

Mark W. Collmer
Collmer Law Firm
3700 Montrose
Houston, Texas 77006
713.337.4040 Telephone
713.337.4044 Facsimile
*Plaintiffs in Consolidated Civil Action No. 5:18-cv-00555*

Margarette Vidal,
Monica Shabbir (Vidal),
Ramiro Vidal Jr.,
Robert Vidal
c/o Jamal K. Alsaffar
jalsaffar@nationaltriallaw.com
Tom Jacob
tjacob@nationaltriallaw.com
Laurie M. Higginbotham
lhigginbotham@nationaltriallaw.com
Koby J. Kirkland
kkirkland@nationaltriallaw.com
7500 Rialto Blvd.
Bldg. Two, Suite 250
Austin, TX 78735
512.476.4346 Telephone
512.476.4400 Facsimile

and

Jason P. Steed
Kilpatrick Townsend & Stockton, LLP
2001 Ross Avenue, Suite 4400
Dallas, Texas 75201
214.922.7100 Telephone

214.853.5731 Facsimile
*Plaintiffs in Consolidated Civil Action No. 18-cv-00576*

Charlene Uhl Individually, as Heir at Law and as Representative of the Estate of Haley Kruger, deceased
c/o Dennis Peery
d.peery@tylerpeery.com
R. Craig Bettis
cbettis@tylerpeery.com
The Law Offices of Tyler & Peery
5822 W. IH-10
San Antonio, TX 78201
210.340.0900 Telephone
210.736.9197 Facsimile
*Plaintiffs in Consolidated Civil Action No. 5:18-cv-00881*

Gary Ramsey, Individually, and as Independent Co-Administrator of The Estate of Therese Joann Rodriguez, Deceased
Ronald Ramsey, Jr., Individually, and As Independent Co-Administrator of The Estate of Therese Joann Rodriguez, Deceased
c/o Robert E. Ammons
Rob@Ammonslaw.com
April A. Strahan
April@Ammonslaw.com
The Ammons Law Firm, LLP
3700 Montrose Blvd.
Houston, Tx 77006
713.523.1606 Telephone
713.523.4159 Facsimile

and

Tim Maloney
tmaloney@maloneyandcampolo.com
Paul E. Campolo
pcampolo@maloneyandcampolo.com
Maloney & Campolo, L.L.P.
926 S. Alamo
San Antonio, Texas 78205
(210) 922-2200 Telephone
(210) 923-1313 Facsimile
*Plaintiffs in Consolidated Civil Action No. 5:18-cv-00944*

Lisa Mcnulty, Individually and as Personal Representative of the Estate of Tara Mcnulty and as Legal Guardian of H.M and J.M. two minor children J.M., A Minor (Mcnulty),
c/o Jamal K. Alsaffar
jalsaffar@nationaltriallaw.com
Tom Jacob
tjacob@nationaltriallaw.com
Laurie M. Higginbotham
lhigginbotham@nationaltriallaw.com
Koby J. Kirkland
kkirkland@nationaltriallaw.com
7500 Rialto Blvd.
Bldg. Two, Suite 250
Austin, TX 78735
(512) 476-4346 Telephone
(512) 476-4400 Facsimile

and

Jason P. Steed
Kilpatrick Townsend & Stockton, LLP
2001 Ross Avenue, Suite 4400
Dallas, Texas 75201
214.922.7100 Telephone
*Plaintiffs in Consolidated Civil Action No. 5:18-cv-949*

Deborah Braden, Individually, and as Independent Executor of The Estate of Keith Allen Braden,
Elizabeth Braden, Individually and as a/n/f of Z.Z. a minor
Benjamin Corrigan, Independent Executor of The Estate of Robert Michael Corrigan, and Shani Corrigan,
Preston Corrigan,
Kara Boyd (Marshall),
Martina Pachal Individually and as Independent Administratrix of the Estate of Robert Scott Marshall and as Independent Executrix of the Estate of Karen Sue Marshall
Zachary Poston,
Jimmy Stevens, Independent Executor of The Estate of Peggy Lynn Stevens Warden,
Jennifer Racey (Warden)
Patsy McCain
c/o/Justin B. Demerath
jdemerath@808west.com

David Campbell
O'Hanlon, Demerath & Castillo, PC
808 West Ave.
Austin, Texas 78701
(512) 494-9949 Telephone
(512) 494-9919 Facsimile
akeeran@808west.com
*Plaintiffs in Consolidated Civil Action No. 5:19-cv-691*

Kati Wall
Michael Johnson, Individually and as Personal Representative of the Estate
of Dennis Johnson and the Estate of Sara Johnson and Dennis Johnson, Jr.,
Christopher Johnson, Deanna Staton and James Graham
c/o Jamal K. Alsaffar
jalsaffar@nationaltriallaw.com
Tom Jacob
tjacob@nationaltriallaw.com
Laurie M. Higginbotham
lhigginbotham@nationaltriallaw.com
Koby J. Kirkland
kkirkland@nationaltriallaw.com
7500 Rialto Blvd.
Bldg. Two, Suite 250
Austin, TX 78735
(512) 476-4346 Telephone
(512) 476-4400 Facsimile
*Plaintiffs in Consolidated Civil Action No. 5:18-cv-951*

Regina Amador, Individually, and as Independent Administratrix of The
Estate of Richard C. Rodriguez, Deceased A/K/A/ Ricardo Rodriguez,
Jose Rodriguez,
Guadalupe Rodriguez
c/o Daniel J.T. Sciano
Dsciano@Tsslawyers.com
Tinsman & Sciano, Inc.
10107 McAllister Freeway
San Antonio, Tx 78216
(210) 225-3121 Telephone
(210) 225-6235 Facsimile
*Plaintiffs in Consolidated Civil Action No. 5:18-cv-01151*

Farida Brown
c/o Erik A. Knockaert

Joseph M. Schreiber
Schreiber | Knockaert, PLLC
701 North Post Oak Rd., Suite 325
Houston, Texas 77024
281.949.8904 Telephone
281.949.8914 Facsimile
*Plaintiff in Consolidated Civil Action No. 5:19-cv-184*

Margaret Mckenzie
c/o Jamal K. Alsaffar
jalsaffar@nationaltriallaw.com
Tom Jacob
tjacob@nationaltriallaw.com
Laurie M. Higginbotham
lhigginbotham@nationaltriallaw.com
7500 Rialto Blvd.
Bldg. Two, Suite 250
Austin, TX 78735
(512) 476-4346 Telephone
(512) 476-4400 Facsimile
*Plaintiff in Consolidated Civil Action No. 19-cv-00715*

Kris Workman
c/o Brett T. Reynolds
Brett Reynolds & Associates, P.C.
1250 N.E. Loop 420, Suite 420
San Antonio, Texas 78219
210.805.9799
*Plaintiff in Consolidated Civil Action No. 5:19-cv-00506*

David Colbath
c/o Brett T. Reynolds
Brett Reynolds & Associates, P.C.
1250 N.E. Loop 420, Suite 420
San Antonio, Texas 78219
210.805.9799
*Plaintiff in Consolidate Civil Action No. 5:19-cv-678*

Kyle Workman
Morgan Harris
c/o Brett T. Reynolds
Brett Reynolds & Associates, P.C.
1250 N.E. Loop 420, Suite 420

24

San Antonio, Texas 78219
210.805.9799
*Plaintiff in Consolidate Civil Action No. 5:19-cv-705*

**d. Plaintiffs name the Defendant herein, as well as its agents, representatives, and/or employees or former agents, representatives, or employees, as persons with knowledge of relevant facts. Plaintiffs further name the Defendant, as well as its agents, representatives, and/or employees or former agents, representatives, or employees, as persons from whom expert testimony may be elicited regarding liability, causation and/or damages, although Plaintiffs do not necessarily vouch for all the opinion testimony of such persons. Plaintiffs refer you to the Department of Defense Inspector General reports from 2018, 2017, 2014, and 2015; Defendant's discovery documents; deposition testimony; documents produced by Defendant; and related medical records for the subject matter, facts known, and opinions and impressions of these witnesses.**

Heather Wilson
Secretary of the Air Force

Deborah Lee James
Secretary of the Air Force

Col. Kirk Stabler
Air Force Commander
Headquarters Air Force Office of Special Investigations
Quantico, Virginia

Brig. General Andrea Tullos
Air Force Director
Director of Security Forces
DCS/Logistics, Engineering & Force Protection
Department of the Air Force
Washington, D.C.

Director of Special Investigations
Department of the Air Force
Washington, D.C.

HQ Air Force Office of Special Investigations
Department of the Air Force
Superintendent, IT Integrations HQ AFOSI

Quantico, Virginia

Department of the Air Force
HQ USAF
Washington, D.C.
Deputy Director of Security Forces
DCS/Logistics, Installations & Missions Support

Defense Human Resources Activity
Headquarters
Pamela Mitchell, Director
4800 Mark Center Drive, Suite 06J25-01
Alexandria, VA 22350-4000

Department of the Air Force
HQ Air Force Office of Special Investigations
Quantico, VA
Brigadier General, Keith Givens
USAF Commander

Department of Defense
Under Secretary of Defense for Intelligence
Deputy Chief Management Officer

Department of Defense
Military Criminal Investigative Organizations (MCIOs)
        Commanders, Officers, supervisors and employees
Defense Criminal Investigative Organizations (DCIOs)
        Commanders, Officers, supervisors and employees

Air Force 49th Security Forces Squadron
Confinement Facility
Commanders, Officers, supervisors, employees

Air Force Office of Special Investigations
Commanders, Vice-Commanders, Officers, supervisors, employees

Air Force Security Forces Squadron
Holloman Air Force Base
Commanders, Officers, supervisors, employees
Cmdr. Nathan McLeod-Hughes

Air Force 49th Logistics Readiness Squadron
Commanders, Officers, supervisors, employees

Air Force Detachment 225, Office of Special Investigations
Commanders, Officers, Special Agents, supervisors, employees

Air Force Article 32 Investigating Officers

Naval Consolidated Brig
Miramar, California
Commanders, Officers, supervisors, employees
General David Goldfein
Air Force Chief of Staff

General Stephen Wilson
Air Force Vice Chief of Staff

Lt. General Gina Grosso
Air Force Deputy Chief of Staff, Manpower, Personnel & Services

Lt. General John Raymond
Air Force Deputy Chief of Staff, Operations

Lt. General John Cooper, Deputy Chief of Staff, Operations

Air Force Holloman Air Force Base Mental Health Clinic

Defense Incidence-Based Reporting System
Commanders, Officers, supervisors, employees

Peak Behavioral Health Services
5055 McNutt Rd.
Santa Teresa, NM 88008

Sunland Park Police Department
1000 McNutt Rd
Sunland Park, NM 88063

**e. Regarding experts who may be called to testify at the trial in this case, please refer to Plaintiffs' Designation of Experts and any amendments or supplements thereto for additional information regarding the facts known to these witnesses and the bases of their opinions. These expert designations will be made at the time required by the Court's Scheduling Order. Please also refer**

**to the sworn testimony and written reports of these witnesses for further information regarding the facts known to and opinions held by these witnesses.**

**f.   Plaintiffs cross-identify as expert witnesses any person named or to be named by Defendant as a person having expert knowledge about any facts surrounding any issues relevant to the incident in question as expert witnesses who Plaintiffs reserve the right to call live at the trial of the cause.   Plaintiffs reserve the right to call such persons as expert witnesses, whether or not the designation is subsequently withdrawn.   Plaintiffs do not have any control over any such witness, nor do they have any superior right to ascertain the subject matter on which any such witness may testify and/or opinions held by any such witness, beyond the information disclosed in deposition testimony and/or by Defendant's discovery responses.    In that regard, Plaintiffs refer you to Defendant's discovery documents, deposition testimony, and documents produced by Defendant for the subject matter, facts known, and opinions and impressions of these witnesses.   Plaintiffs reserve the right to obtain opinion testimony from any such witness within their area of expertise as related to this case.**

(ii)   A copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment;

Exhibit 1 – Inspector General, US Department of Defense, Evaluation of the Defense Criminal Investigative Organizations' Defense Incident-Based Reporting System Reporting and Reporting Accuracy, October 29, 2014 (Bates #19-706-000001 – 19-706-000040)

Exhibit 2 – Inspector General, US Department of Defense, Evaluation of the Defense Compliance with Criminal History Data Reporting Requirements, February 12, 2015 (Bates #19-706-000041 – 19-706-000076)

Exhibit 3 – Inspector General, US Department of Defense, Evaluation Fingerprint Card and Final Disposition Report Submissions by Military Service Law Enforcement Organizations, December 4, 2017 (Bates #19-706-000077 – 19-706-000168)

Exhibit 4 – Inspector General, US Department of Defense, Report of Investigation into the United States Air Force's Failure to Submit Devin Kelley's Criminal History Information to the Federal Bureau of Investigation, December 6, 2018 (Bates #19-706-000169 – 19-706-000306)

Exhibit 5 –Department of Defense Directive Number 7730.47, October 15, 1996 (Bates #19-706-000307 – 19-706-000315)

Exhibit 6 –Department of Defense Manual Number 7730.47-M Volume 1, December 7, 2010 (Bates #19-706-000316 – 19-706-000398)

Exhibit 7 –U.S. Department of Defense Press Operations, DoD launches review of Devin P. Kelley criminal record notification, Release No. NR-382-17, November 6, 2017 (Bates #19-706-000399)

Exhibit 8 – National Instant Criminal Background Check System Indices (Bates #19-706-000400 – 19-706-000401)

Exhibit 9 – U.S. Air Force article, AF Implements Changes to Improve Law Enforcement Database Reporting, November 28, 2017 (Bates #19-706-000402)

Exhibit 10 – U.S. Air Force tweet November 9, 2017 (Bates #19-706-000403)

Exhibit 11 – Report to the Committee on the Judiciary United States Senate from The Honorable Heather Wilson, Secretary of the Air Force, December 6, 2017 (Bates #19-706-000404 – 19-706-000405)

Exhibit 12 – Questions for the Record for Secretary of the United States Air Force Heather Wilson, December 13, 2017 (Bates #19-706-000406 – 19-706-000410)

Exhibit 13 – Misdemeanor Crimes of Domestic Violence (Bates #19-706-000411 - 19-706-000412)

Exhibit 14 –Devin Kelley Trial Transcript (Bates #19-706-000413 – 19-706-1022)

Exhibit 15 - El Paso Incident Report, June 7, 2012 (Bates #19-706-001023 – 19-706-001028)

Exhibit 16 – Devin Kelley Court Martial Order (Bates #19-706-001029 – 19-706-001034)

Exhibit 17 – Statement of Danielle Kelley (Bates #19-706-001035)

Exhibit 18 – Devin Kelley Autopsy Report (Bates #Ward 0008-0019)

Exhibit 19 – Life Expectancy Tables (Bates #19-706-1048 – 19-706-1111)

Exhibit 20 – Family Photographs

Exhibit 21 –Joann Ward and B.W. Funeral Home Documents (Bates # Ward 001-004 and Ward 0023-0026)

Exhibit 22- Birth Certificates for B.W. and R.W. (Bates # Ward 005-007)

Exhibit 22 – Birth Certificate and Marriage License of Joann Ward (Bates # Ward 0027-0036)

Exhibit 23 – Ryland Ward Medical Records and Bills (Bates # Ward 00036-


In addition, Plaintiffs are in the possession of the materials maintained by the Texas Rangers related to the incident.  In obtaining these materials, Plaintiffs entered into an agreement with the Texas Attorney General regarding their release.  Further, Plaintiffs are also in possession of the materials maintained by the Wilson County Attorney, Tom Caldwell related to the incident.  In obtaining these materials, Plaintiffs entered into an agreement with the Wilson County Attorney, Tom Caldwell regarding their release.  As such, Plaintiffs will discuss the terms of this agreement with Defendant prior to releasing these materials.

(iii)   A computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered;


Discovery is still in its early stages and it is premature for Plaintiffs to respond to this disclosure; however, please see Plaintiffs' Original Complaint(s) and any and all amendments thereto for the categories of damages sought by Plaintiffs.   Please refer also to Plaintiffs' administrative claims filed with the Government for the maximum amount of damages sought by Plaintiffs in this case.   Please refer to the sworn deposition testimony in this case. Please also refer to Plaintiffs' Designation of Experts and any amendments or supplements thereto for additional information regarding the facts known to these witnesses and the bases of their opinions.  These expert designations will be made at the time required by the Court's Scheduling Order. Please also refer to the sworn testimony and written reports of these witnesses for further information regarding the facts known to and opinions held by these witnesses.

(iv)  For inspection and copying as under Rule 34, any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment.

Not applicable.

Respectfully Submitted:

/s/ Kelly, Kelly_____
KELLY KELLY
Anderson & Associates Law Firm
2600 SW Military Drive, Suite 118
San Antonio, Texas 78224
Tel: (210) 928-9999
Fax: (210) 928-9118
kk.aalaw@yahoo.com
ol.aalaw@yahoo.com: efiling address
ATTORNEY FOR PLAINTIFFS'
Christopher Ward, Individually, &
as A/N/ F of R. W. (minor) & on behalf of
 The Estate of JoAnn Ward & Brooke Ward

**Certificate of Service**

I certify that the foregoing was served on September 20, 2019, via email service and certified mail, return receipt requested, on the following counsel for the United States.

/s/ Kelly Kelly
Kelly Kelly

PAUL DAVID STERN
Trial Attorney, Torts Branch
United States Dept. of Justice
Civil Division
United States Department of Justice
P.O. Box 888
Benjamin Franklin Station
Washington, D.C. 20004
T: (202) 616-2197
Paul.David.Stern@usdoj.gov

STEPHEN E. HANDLER
Senior Trial Counsel, Torts Branch
United States Dept. of Justice
Civil Division
United States Department of Justice
P.O. Box 888
Benjamin Franklin Station
Washington, D.C. 20004
T: (202) 616-2197
Stephen.Handler@usdoj.gov



I<small>N THE</small> U<small>NITED</small> S<small>TATES</small> D<small>ISTRICT</small> C<small>OURT</small>
<small>FOR THE</small> W<small>ESTERN</small> D<small>ISTRICT OF</small> T<small>EXAS</small>
S<small>AN</small> A<small>NTONIO</small> D<small>IVISION</small>

| | |
|---|---|
| Kris Workman<br>    Plaintiffs,<br><br>v.<br><br>United States of America,<br>    Defendant. | Civil Action No. 5:19-cv-506-XR<br><br>*Consolidated with*:<br> Nos. 5:18-cv-712-XR; 5:18-cv-881-XR;<br> 5:18-cv-944-XR; 5:18-cv-949-XR;<br> 5:18-cv-951-XR; 5:18-cv-1151-XR;<br> 5:19-cv-184-XR; 5:19-cv-289;<br> 5:19-cv-506 XR; 5:19-cv-678;<br> 5:19-cv-691-XR; 5:19-cv-705;<br> 5:19-cv-706-XR; 5:19-cv-715-XR<br> 5:19-cv-506-XR; 5:19-cv-678-XR |

**PLAINTIFF KRIS WORKMAN'S RULE 26(a)(1) INITIAL DISCLOSURES**

NOW COMES PLAINTIFF, KRIS WORKMAN, and makes the following initial disclosures pursuant to Federal Rule of Civil Procedure 26(a)(1) of the Federal Rules of Civil Procedure.

(i)     The name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment;

**a.     Plaintiffs hereby designate as persons with knowledge all emergency first responders, the health care providers referenced in the related health care records in this case, including physicians, technicians, nurses, radiologists, physician's assistants, physical therapists, clinics, hospitals, pharmacies, and their agents, representatives, and employees.  While these health care providers are not within the control of Plaintiffs and have not been retained by Plaintiffs as expert witnesses, Plaintiffs reserve the right to elicit opinion testimony from any such health care provider, including expert testimony regarding liability,**

**causation, and damages from those treating healthcare providers relating to the medical treatment provided to the Plaintiffs. To the extent it is necessary to call live at the trial or by deposition in this cause any agents, representatives, employees and/or custodian of records for any of the following health care providers, Plaintiffs identify any such custodian as a person who may have expert knowledge regarding issues related to the incident in question to include personal knowledge of the records and concerning the necessity of services rendered and referenced in the records and concerning the reasonableness of the medical bills charged and referenced in the records of the following health care providers. For the mental impressions held by and the opinions of and facts known by any of the following witnesses, please refer to the related health care records of the Plaintiffs.**

American Medical Response
And its custodians of records
11911 Radium St.
San Antonio, TX 78216

San Antonio Military Medical Center
And its custodians of records
3551 Roger Brooke Dr.
Fort Sam Houston, TX 78234

Awoala Banigo
And any and all other custodians of billing records for
Bexar County Hospital District d/b/a
University Health System
And Community Medicine Associates d/b/a
University Medicine Associates
4502 Medical Drive
San Antonio, Texas 78229

Brenda Gutierrez
And any and all other custodians of medical records for
University Health System and Community Medical Associates

The Center for the Intrepid
3851 Roger Brooke Dr.
San Antonio, TX 78219

Agents, servants and employees of the University Health System who provide care to
    Plaintiff, including but not limited to:

Dr. Angela Vrooman
Dr. Stephen Kraus

2

Dr. John C. King
Dr. Jesse Neeley
Sarah Rasor, Physical therapist
Gabrielle Canales, Physical therapist
Selina Morgan
Crystal Keller
Stephanie Cavazos, Occupational therapist
Johanna Vidola, Occupational therapist
Seth Chandler, D.O.
Raquel A. Rodriguez, MST
Dat Dinh, OTR
Dr Warren Neeley (unassigned)
Dr. Natalie Nyren
Natalie M. Uhlig OPCSR
Mayra Vargas, MA
Orlando Pena, MD
Venkata S. Katabathina, MD
Emily M. Noll, PT
Caroline P. Brennick, DO
Clark S. Tyler MD
Kathleen Palmer LPC
Leanna Godwin, OT
Raymund Hernandez SPT
Samantha A Zimmerman PT
Norma F. Salazar LMSW
Dr. Donamaria


Alex C. Willingham, MD
2 Spurs Lane, Suite 101
San Antonio, Texas 78240

Additional physicians and providers' names may be included in the records. The list is not intended as exhaustive of all names identified in the copious medical records of Mr. Workman's providers.


**b.      Plaintiffs identify themselves as persons with knowledge of relevant facts pertaining to the incident in question:**

Kris Workman
c/o Brett Reynolds
Brett Reynolds & Associates, P.C.
1250 N.E. Loop 410 Suite 310
San Antonio, Texas 78209
*Plaintiff*


Colbey Workman
c/o Brett Reynolds
Brett Reynolds & Associates, P.C.
1250 N.E. Loop 410 Suite 310
San Antonio, Texas 78209
*Plaintiff's wife and soon-to-be Plaintiff for extensive loss of spousal consortium and mother of Eevee Workman, soon-to-be Plaintiff for extensive loss of parental consortium of her father Kris Workman.*


c. **Plaintiffs identify the following investigative personnel, including but not limited to police officers, sheriffs' officers, troopers, agents, Rangers, and other first responders where were not specifically retained or employed. Some of these persons by reason of their training, background and experience may qualify as experts. Plaintiffs refer Defendant to all documents produced in this matter from investigative agencies and public servants, including but not limited to the investigatory reports and deposition testimony of fact and expert witnesses. The names of the non-specially retained or non-employed potential testifying experts who were involved in investigating the facts and circumstances of this matter are as follows:**

1) Wilson County Sheriff's Department
800 10th Street #4
Floresville, Tx. 78114
Agents, servants and employees, and custodian of records including but not limited to:
Steve Moore, Investigator

2) Tom Caldwell
Wilson County Attorney's Office
1420 Third Street
Floresville, Tx. 78114
Agents, employees and custodians of records

3) Ken Paxton
Attorney General of Texas
P.O. Box 12548

4

Austin, Tx. 78711-2548

4)      Texas Ranger Division
        Texas Department of Public Safety
        6100 Guadalupe St. Building E.
        Austin, Tx. 78752

5)      Texas Department of Public Safety
        Drivers License Division, License & Records
        5805 North Lamar Blvd. Building A
        Austin Tx. 78752
        Agents, employees and custodians of records

6)      Texas Department of Public Safety
        Regulatory Services Division
        5805 North Lamar Blvd., Building 1
        Austin, Tx. 78752-0240
        Agents, employees and custodians of records

7)      Other officers and first responders to the church shooting.

**d.      Plaintiffs identify the following family members, friends, and other persons    as persons with knowledge of relevant facts:**

Julie Workman and Kip Workman
c/o Brett Reynolds
Brett Reynolds & Associates, P.C.
1250 N.E. Loop 410 Suite 310
San Antonio, Texas 78209
*Plaintiffs' parents with personal knowledge of the occurrence of and consequences of Kris Workman's extensive and permanent injuries; and soon-to-be Plaintiffs for their own physical and emotional injuries-direct and derivative as allowed under Texas law.*

Kyle Workman and Morgan Workman
c/o Brett Reynolds
Brett Reynolds & Associates, P.C.
1250 N.E. Loop 410 Suite 310
San Antonio, Texas 78209
*Plaintiff's brother and sister-in-law with personal knowledge of the occurrence of and consequences of Kris Workman's extensive and permanent injuries and co-*

*Plaintiffs seeking recovery for their own extensive injuries arising out of the shooting.*

Pastor Frank Pomeroy
First Baptist Church of Sutherland Springs
216 4th St., Sutherland Springs, Tx. 78161

David Colbath
c/o Brett Reynolds
Brett Reynolds & Associates, P.C.
1250 N.E. Loop 410 Suite 310
San Antonio, Texas 78209

Stephen Willeford
Sutherland Springs Texas
Mr. Willeford confronted the shooter with an AR-15 and fired numerous rounds at and into his body, injuring him and stopping the massacre

Other Plaintiffs and Survivors
Available for contact through their counsel of record in this case.

**Other persons with knowledge:**

Sunland Park Police Department
1000 McNutt Rd
Sunland Park, NM 88063
Agents, employees and custodian of records

El Paso Police Dept
911 N. Raynor
El Paso, Tx. 79903
915-212-4000
Its agents, employees and custodians of records
The El Paso Police apprehended Kelley after he escaped.

Tanya Wood

Tessa Kelley
Was married to Devin Kelley while he was in the Air Force and reported him for abused of herself and an infant child.

Danielle Shields Kelley/Harris

Spouse of Kelley at time of the church shooting

Michael Kelley
2825 FM 2722
New Braunfels, Tx. 78132
Father of Devin Kelley

Rebecca A. Kelley
2825 FM 2722
New Braunfels, Tx. 78132
Mother of Devin Kelley

**d.**    **Plaintiffs name the Defendant herein, as well as its agents, representatives,    and/or employees or former agents, representatives, or employees, as persons with knowledge of relevant facts.  Plaintiffs further name the Defendant, as well as its agents, representatives, and/or employees or former agents, representatives, or employees, as persons from whom expert testimony may be elicited regarding liability, causation and/or damages, although Plaintiffs  do not by designation adopt or judicially admit all of the opinion testimony of such persons.  Plaintiffs refer you to the Department of Defense Inspector General reports from 2018, 2017, 2014, and 2015; Defendant's discovery documents; deposition testimony; documents produced by Defendant; and related medical records for the subject matter, facts known, and opinions and impressions of these witnesses.**

Heather Wilson
Secretary of the Air Force

Deborah Lee James
Secretary of the Air Force

Col. Kirk Stabler
Air Force Commander
Headquarters Air Force Office of Special Investigations
Quantico, Virginia

Brig. General Andrea Tullos
Air Force Director
Director of Security Forces
DCS/Logistics, Engineering & Force Protection
Department of the Air Force
Washington, D.C.

Director of Special Investigations
Department of the Air Force

7

Washington, D.C.

HQ Air Force Office of Special Investigations
Department of the Air Force
Superintendent, IT Integrations HQ AFOSI
Quantico, Virginia

Department of the Air Force
HQ USAF
Washington, D.C.
Deputy Director of Security Forces
DCS/Logistics, Installations & Missions Support

Defense Human Resources Activity
Headquarters
Pamela Mitchell, Director
4800 Mark Center Drive, Suite 06J25-01
Alexandria, VA 22350-4000

Department of the Air Force
HQ Air Force Office of Special Investigations
Quantico, VA
Brigadier General, Keith Givens
USAF Commander


Department of Defense
Under Secretary of Defense for Intelligence
Deputy Chief Management Officer

Department of Defense
Military Criminal Investigative Organizations (MCIOs)
        Commanders, Officers, supervisors and employees
Defense Criminal Investigative Organizations (DCIOs)
        Commanders, Officers, supervisors and employees

Tessa Kelley (nee' Loge)
Devin Kelley's former spouse

Danielle Kelley
Devin Kelley's former spouse

Air Force 49th Security Forces Squadron
Confinement Facility
Commanders, Officers, supervisors, employees

Air Force Office of Special Investigations
Commanders, Vice-Commanders, Officers, supervisors, employees

Air Force Security Forces Squadron
Holloman Air Force Base
Commanders, Officers, supervisors, employees
Cmdr. Nathan McLeod-Hughes


Nathan McLeod-Hughes
Commander
Air Force 49th Logistics Readiness Squadron
Along with Officers, supervisors, employees of the squadron under his command.
McLeod Hughes issued a no contact order specifying pre-trial confinement in
which he indicated he was convinced Kelley was going to "hurt someone"  and
was "dangerous and likely to harm someone if released"  and was responsible
among others for overseeing and ensuring the input of the disqualifying
information into the NICS system by making sure the information was gathered
and submitted to the appropriate personnel to do so.

Air Force Detachment 225, Office of Special Investigations
Commanders, Officers, Special Agents, supervisors, employees

Air Force Article 32 Investigating Officers

Naval Consolidated Brig
Miramar, California
Commanders, Officers, supervisors, employees

General David Goldfein
Air Force Chief of Staff

General Stephen Wilson
Air Force Vice Chief of Staff

Lt. General Gina Grosso
Air Force Deputy Chief of Staff, Manpower, Personnel & Services

Lt. General John Raymond
Air Force Deputy Chief of Staff, Operations

Lt. General John Cooper, Deputy Chief of Staff, Operations

Air Force Holloman Air Force Base Mental Health Clinic

Defense Incidence-Based Reporting System

Commanders, Officers, supervisors, employees

Peak Behavioral Health Services
5055 McNutt Rd.
Santa Teresa, NM 88008

Sunland Park Police Department
1000 McNutt Rd
Sunland Park, NM 88063

Department of the
Air Force HQ USAF
Washington, D.C.

Deputy Director of Security Forces
DCS/Logistics, Installations & Missions Support

Defense Human Resources
Activity Headquarters
Pamela Mitchell, Director
4800 Mark Center Drive, Suite 06J25-
01 Alexandria, VA 22350-4000

Department of the Air Force
HQ Air Force Office of Special Investigations Quantico, VA
Brigadier   General,   Keith
Givens USAF Commander

Department of Defense
Under   Secretary   of   Defense   for
Intelligence  Deputy  Chief  Management
Officer

Military Criminal Investigative
Organizations (MCIOs) Commanders,
Officers, supervisors and employees

Defense Criminal Investigative
Organizations (DCIOs) Commanders,

Officers, supervisors and employees

Office of Inspector General for the DOD
The Office of Inspector General for the DOD has issued two reports investigating and detailing the failures of the Air Force, including negligence, negligent training, and negligent supervision. *See* attached reports:

Report No. DODIG-2019-030, Inspector General U.S. Department of Defense, Dec. 6, 2018, Report of Investigation into the United States Air Force's Failure to Submit Devin Kelley's Criminal History Information to the Federal Bureau of Investigation; see id. at p. 117, "The USAF concurred with this report and its recommendations."
*https://www.dodig.mil/reports.html/Article/1707300/reportof- investigation-into-the-united-states-air-forces-failure-to-submit-dev/*

Report No. DODIG-2018-035, Inspector General U.S. Department of Defense, Dec. 4, 2017, *Evaluation of Fingerprint Card and Final Disposition Report*

*Submissions by Military Service Law Enforcement Organizations.* *https://www.dodig.mil/reports.html/Search/DODIG-2018-035/*

The DOD concluded that training on the submission of fingerprints and final disposition reports was ineffective and lacking, both for AFOSI Detachment 225 and the 49th Security Forces Squadron, and "there was no valid reason for the USAF's failures". *See* p. 111-112; S*ee also* p. 96-98 (noting "training did not provide instructions on when or how to submit either the fingerprint card or the final disposition report to the FBI CJIS Division"). Indeed, the DOD "determined that this failure to submit Kelley's fingerprints was part of a systemic problem in AFOSI Detachment 225." *See* p. 94. Worse, the case agent was actually deployed for seven months during the investigation and reported that he complained he could not do his job, stating, "Boss, I'm burnt out, I'm so burnt out." "Boss, I want to get out. I can't do this anymore."

Report No. DODIG-2015-081, Inspector General U.S. Department of Defense, February 12, 2015, *Evaluation of Department of Defense Compliance with Criminal History Data Reporting Requirements.*

Report No. DODIG-2015-011, Inspector General U.S. Department of Defense, October 29, 2014, *Evaluation of the Defense Criminal Investigative Organizations' Defense Incident-Based Reporting System Reporting and Reporting Accuracy.*

Air Force 49th Security Forces Squadron and it's investigators,
Military Law Enforcement Officers (LEOs), or AFSFC Police
Services Branch Confinement Facility
Commanders, Officers, supervisors, employees

The 49th Security Forces Squadron investigated Airman Kelley. The 49th Security
Forces Squadron investigators and/or Military Law Enforcement Officers (LEOs)
had responsibilities to gather fingerprints and report, and thus will have
knowledge of their responsibilities, training, and failures. The December 6, 2018,
the Inspector General of the DOD issued a 131-page Report titled, *Investigation
into the United States Air Force's Failure to Submit Devin Kelley's Criminal
History Information to the Federal Bureau of Investigation* concluding that
training on the submission of fingerprints and final disposition reports was
ineffective and lacking, both for AFOSI Detachment 225 and the 49th Security
Forces Squadron, and "there was no valid reason for the USAF's failures". *See* p.
111-112; *see also* p. 96-98 (noting "training did not provide instructions on when
or how to submit either the fingerprint card or the final disposition report to the
FBI CJIS Division").


Air Force Office of Special Investigations
AFSFC Police Services Branch training focused on collection of fingerprints, but
failed to address submitting fingerprint cards and final disposition reports to the
FBI CJIS. Their Management Internal Control Toolset (MICT) checklist items
are supposed to be monitored and assessed as part of the installation
commander'sself-inspection program. Monthly supervisory reviews were
"incomplete and ineffective." *See* Report No. DODIG-2019-030 p. 110.


Case Agent responsible for Airman Kelley
The Case Agent will have knowledge for the reasons he could not properly report
Kelley to the FBI, as detailed by the DOD's report.

Boss of Case Agent responsible for Airman Kelley
The boss of the Case Agent will have knowledge for the reasons the Case Agent
could not properly report Kelley to the FBI, as detailed by the DOD's report.


General David
Goldfein
Air Force Chief of
Staff


General Stephen Wilson
Air Force Vice Chief of Staff


Lt. General Gina Grosso

Air Force Deputy Chief of Staff, Manpower, Personnel & Services

Lt. General John Raymond
Air Force Deputy Chief of Staff, Operations

Lt. General John Cooper, Deputy Chief of Staff, Operations

Defense Incidence-Based Reporting
System Commanders, Officers,
supervisors, employees

Air Force 49th Logistics Readiness
Squadron Commanders, Officers,
supervisors, employees

Air Force Office of Special Investigations
Commanders, Vice-Commanders, Officers, supervisors, employees

Air Force Security Forces
Squadron Holloman Air
Force Base
Commanders, Officers, supervisors, employees
     Cmdr. Nathan McLeod-Hughes

Air Force Detachment 225 and/or Holloman Air Force Base
Office of Special Investigations
Commanders, Officers, Special Agents, supervisors, employees

AFOSI Detachment 225 and/or Holloman Air Force Base Office of Special Investigation had responsibilities to gather fingerprints and report, and thus will have knowledge of their responsibilities, training, and failures. The December 6, 2018, the Inspector General of the DOD issued a 131-page Report titled,

*Investigation into the United States Air Force's Failure to Submit Devin Kelley's Criminal History Information to the Federal Bureau of Investigation* concluding that training on the submission of fingerprints and final disposition reports was ineffective and lacking, both for AFOSI Detachment 225 and the 49th Security Forces Squadron, and "there was no valid reason for the USAF's failures". *See* p. 111-112; *see also* p. 96-98 (noting "training did not provide instructions on when or how to submit either the fingerprint card or the final disposition report to the FBI CJIS Division"). Although AFOSI

13

policy required supervisory reviews to include both I2MS and the investigative case file (record copy), the AFOSI Detachment 225 SAIC and Superintendent focused their reviews on the I2MS activities and not on investigative case files" *See* p. 89. "In sum, we concluded that AFOSI Detachment 225 monthly supervisory reviews of Kelley's investigative case file were incomplete and ineffective".


Air Force Article 32 Investigating Officers


Airforce Prosecutors

Air Force prosecutors gathered evidence and handled the conviction of Airman Kelley, and thus have knowledge of his conduct and disposition.


Naval Consolidated Brig, Miramar California

Commanders, Officers, supervisors, employees


Holloman Air Force Base Mental Health Clinic c/o Air Force or DOJ counsel of record

HAFB Mental Health Clinic had custody of Kelley in the Air Force.


Peak Behavioral Health Services (PBHS) and Xavier Alvarez 5055 McNutt Rd, Santa Teresa, NM 88008 (575) 589-3000

Peak Behavioral Health Services (PBHS) had a program for military personnel and diagnosed Kelley with various mental and emotional disorders. On information and belief, this is the facility from which Kelley attempted to buy guns to kill his commanding officers, and the facility that Kelley escaped from and fled to El Paso. According to an El Paso police report, police were informed that Kelley "was a danger to himself and others as he had already been caught sneaking firearms onto Holloman Air Force Base". Police were further advised that Airman Kelley "suffered from mental disorders" and that he "was attempting to carry out death threats" against "his military chain of command." Xavier Alvarez, who worked for Peak Behavioral and who reported Kelley to police for the escape, later confirmed to NBC News that Kelley "verbalized that he wanted to get some kind of retribution to his chain of command." Other patients reported that Kelley was doing something suspicious on computers, and the military found that Kelley was "ordering weapons and tactical gear and magazines to a P.O. Box

in San Antonio." Alvarez was quoted as saying, "This kid – he was hollow," and "I could never reach him."

e. **Regarding experts who may be called to testify at the trial in this case, please refer to Plaintiffs' Designation of Experts and any amendments or supplements thereto for additional information regarding the facts known to these witnesses and the bases of their opinions. These expert designations will be made at the time required by the Court's Scheduling Order. Please also refer to the sworn testimony and written reports of these witnesses for further information regarding the facts known to and opinions held by these witnesses.**

**Subject to and without waiving the right to later designate such experts, and in recognition that Plaintiff has already provided certain voluminous information, including reports, to the United States Air Force prior to the inception of the litigation, Plaintiff provides a partial designation of the following experts:**

Dr. David Altman
Mr. Dan Bagwell
Certified Life Care Planning
Rehabilitation Professional Consultants
16023 Via Shavano # 101,
San Antonio, TX 78249

Christopher B. Ticknor, MD
Adult and Forensic Psychiatry
1202 E. Sonterra Blvd, Suite 202
San Antonio, Texas  78258

f. **Plaintiffs cross-identify as expert witnesses any person named or to be named by Defendant as a person having expert knowledge about any facts surrounding any issues relevant to the incident in question as expert witnesses who Plaintiffs reserve the right to call live at the trial of the cause.  Plaintiffs reserve the right to call such persons as expert witnesses, whether or not the designation is subsequently withdrawn.  Plaintiffs do not have any control over any such witness, nor do they have any superior right to ascertain the subject matter on which any such witness may testify and/or opinions held by any such witness, beyond the information disclosed in deposition testimony and/or by Defendant's discovery responses.  In that regard, Plaintiffs refer you to Defendant's discovery documents, deposition testimony, and documents produced by Defendant for the subject matter, facts known, and opinions and impressions of these witnesses.  Plaintiffs reserve the right to obtain opinion testimony from any such witness within their area of expertise as related to this case.**

15

(ii)     A copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment;

Exhibit 1  – Inspector General, US Department of Defense, Evaluation of the Defense Criminal Investigative Organizations' Defense Incident-Based Reporting System Reporting and Reporting Accuracy, October 29, 2014 (Bates #19-00506-002912-002981)

Exhibit 2 – Inspector General, US Department of Defense, Evaluation of the Defense Compliance with Criminal History Data Reporting Requirements, February 12, 2015 (Bates #19-00506-002952-002987)

Exhibit 3  – Inspector General, US Department of Defense, Evaluation Fingerprint Card and Final Disposition Report Submissions by Military Service Law Enforcement Organizations, December 4, 2017 (Bates #19-00506-002988-003079)

Exhibit 4  – Inspector General, US Department of Defense, Report of Investigation into the United States Air Force's Failure to Submit Devin Kelley's Criminal History Information to the Federal Bureau of Investigation, December 6, 2018( Bates #19-00506-003080-003217)

Exhibit 5 –Department of Defense Directive Number 7730.47, October 15,  1996 (Bates #19-00506-003218-003226)

Exhibit 4 –Department of Defense Manual Number 7730.47-M Volume 1, December 7, 2010 (Bates #19-00506-003227-003309)

Exhibit 5 –U.S. Department of Defense Press Operations, DoD launches review of Devin P. Kelley criminal record notification, Release No. NR-382-17, November 6, 2017 (Bates #19-00506-003310)

Exhibit 6 – National Instant Criminal Background Check System Indices (Bates #19-00506-003311-003312)

Exhibit 7  – U.S. Air Force article, AF Implements Changes to Improve Law Enforcement Database Reporting, November 28, 2017 (Bates #19-00506-003313)

Exhibit 8 – U.S. Air Force tweet November 9, 2017 (Bates #19-00506-003314)

Exhibit 9  – Report to the Committee on the Judiciary United States Senate from The Honorable Heather Wilson, Secretary of the Air Force, December 6, 2017 (Bates #19-00506-003315-003316)

Exhibit 10 – Questions for the Record for Secretary of the United States Air Force Heather Wilson, December 13, 2017 (Bates #19-00506-003317-003321)

Exhibit 11 – Misdemeanor Crimes of Domestic Violence (Bates #19-00506-003322-003323)

Exhibit 12 –Devin Kelley Trial Transcript (Bates #19-00506-003324-003933)

Exhibit 13 – El Paso Incident Report, June 7, 2012 (Bates #19-00506-003934-003939)

Exhibit 14 – Devin Kelley Court Martial Order (Bates #19-00506-003940-003945)

Exhibit 15 – Statement of Danielle Kelley (Bates #19-00506-003946)

Exhibit 16 – Devin Kelley Autopsy Report (Bates #19-00506-003947-003958)

Exhibit 17 – Life Expectancy Tables (Bates #19-00506-003959-004022)

Exhibit 18 – University Hospital medical records for Kris Workman. (Bates #19-00506-000001 – 001390)

Exhibit 19 – University Hospital billing records for Kris Workman (Bates #19-00506-001391-001546)

Exhibit 20 – San Antonio Military Medical Center medical records for Kris Workman (Bates #19-00506-001547-002819)

Exhibit 21 - Insurance billing records for Kris Workman (Bates #19-00506-002820-002824)

Exhibit 22 – Life Care Plan for Kris Workman (Bates #19-00506-002836-002903)

Exhibit 23– Life Care Cost Analysis for Kris Workman (Bates #19-00506-002904-002911)

Exhibit 24 – Dr. Christopher Ticknor M.D.'s Expert Report on Kris Workman (Bates #19-00506-002827-002835)

Exhibit 25 – Dr. Alex Wilingham M.D.'s Expert Report on Kris Workman (Bates #19-00506-002825-002826)


In addition, Plaintiffs are in the possession of the materials maintained by the Texas Rangers related to the incident.  In obtaining these materials, Plaintiffs entered into an agreement with the Texas Attorney General regarding their release.  As such, Plaintiffs will discuss the terms of this agreement with Defendant prior to releasing these materials.

(iii)      A computation of each category of damages claimed by the disclosing party—
who must also make available for inspection and copying as under Rule 34 the
documents or other evidentiary material, unless privileged or protected from
disclosure, on which each computation is based, including materials bearing
on the nature and extent of injuries suffered;

Discovery is still in its early stages and it is premature for Plaintiffs to respond to
this disclosure; however, please see Plaintiffs' Original Complaint(s) and any and
all amendments thereto for the categories of damages sought by Plaintiffs.   Please
refer also to Plaintiffs' administrative claims filed with the Government for the
maximum amount of damages sought by Plaintiffs in this case.  Please refer to the
sworn deposition testimony in this case. Please also refer to Plaintiffs'
Designation of Experts and any amendments or supplements thereto for additional
information regarding the facts known to these witnesses and the bases of their
opinions.  These expert designations will be made at the time required by the
Court's Scheduling Order. Please also refer to the sworn testimony and written
reports of these witnesses for further information regarding the facts known to and
opinions held by these witnesses.

See also Life Care Plan for Kris Workman authored by Rehabilitation
Professional Consultants, which is subject to revision and supplementation as
time progresses and as Mr. Workman's projections for future medical care require
revision.

(iv)      For inspection and copying as under Rule 34, any insurance agreement under
which an insurance business may be liable to satisfy all or part of a possible
judgment in the action or to indemnify or reimburse for payments made to
satisfy the judgment.

Not applicable.

18

Respectfully submitted,

*/s/ Brett T. Reynolds*

_____

BRETT T. REYNOLDS
Federal Bar No. 19994
State Bar No. 16795500
BRETT REYNOLDS & ASSOCIATES, P.C.
1250 N.E. Loop 410, Suite 310
San Antonio, Texas  78209
Telephone:(210) 805-9799
Telecopier:(210) 455-2434
E-Mail:    btreynolds@btrlaw.com
**ATTORNEY FOR DEFENDANT,**
**PENSKE TRUCK LEASING CO., L.P.**

## CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of July, 2019 a true and correct copy of the foregoing document was forwarded in accordance with the Federal Rules of Civil Procedure to:

PAUL DAVID STERN
Trial Attorney, Torts Branch
United States Dept. of Justice
Civil Division
United States Department of Justice
P.O. Box 888
Benjamin Franklin Station
Washington, D.C. 20004
T: (202) 616-2197
Paul.David.Stern@usdoj.gov

STEPHEN E. HANDLER
Senior Trial Counsel, Torts Branch
United States Dept. of Justice
Civil Division
United States Department of Justice
P.O. Box 888
Benjamin Franklin Station
Washington, D.C. 20004
T: (202) 616-2197
Stephen.Handler@usdoj.gov

*/s/ Brett T. Reynolds*

_____

BRETT T. REYNOLDS



IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| David Colbath<br>    Plaintiffs,<br><br>v.<br><br>United States of America,<br>    Defendant. | Civil Action No. 5:18-cv-678-XR<br><br>*Consolidated with*:<br> Nos. 5:18-cv-712-XR; 5:18-cv-881-XR;<br> 5:18-cv-944-XR; 5:18-cv-949-XR;<br> 5:18-cv-951-XR; 5:18-cv-1151-XR;<br> 5:19-cv-184-XR; 5:19-cv-289;<br> 5:19-cv-506 XR; 5:19-cv-678;<br> 5:19-cv-691-XR; 5:19-cv-705;<br> 5:19-cv-706-XR; 5:19-cv-715-XR<br> 5:19-cv-506-XR; 5:19-cv-678-XR |

## PLAINTIFF DAVID COLBATH'S RULE 26(a)(1) INITIAL DISCLOSURES

NOW COMES PLAINTIFF, DAVID COLBATH, and makes the following initial disclosures pursuant to Federal Rule of Civil Procedure 26(a)(1) of the Federal Rules of Civil Procedure.

(i)      The name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment;

a.      **Plaintiffs hereby designate as persons with knowledge all emergency first responders, the health care providers referenced in the related health care records in this case, including physicians, technicians, nurses, radiologists, physician's assistants, physical therapists, clinics, hospitals, pharmacies, and their agents, representatives, and employees.  While these health care providers are not within the control of Plaintiffs and have not been retained by Plaintiffs as expert witnesses, Plaintiffs reserve the right to elicit opinion testimony from any such health care provider, including expert testimony regarding liability,**

causation, and damages from those treating healthcare providers relating to the medical treatment provided to the Plaintiffs. To the extent it is necessary to call live at the trial or by deposition in this cause any agents, representatives, employees and/or custodian of records for any of the following health care providers, Plaintiffs identify any such custodian as a person who may have expert knowledge regarding issues related to the incident in question to include personal knowledge of the records and concerning the necessity of services rendered and referenced in the records and concerning the reasonableness of the medical bills charged and referenced in the records of the following health care providers.  For the mental impressions held by and the opinions of and facts known by any of the following witnesses, please refer to the related health care records of the Plaintiffs.

American Medical Response
And its custodians of records
11911 Radium St.
San Antonio, TX 78216

San Antonio Military Medical Center
And its custodians of records
3551 Roger Brooke Dr.
Fort Sam Houston, TX 78234

Awoala Banigo
And any and all other custodians of billing records for
Bexar County Hospital District d/b/a
University Health System
And Community Medicine Associates d/b/a
University Medicine Associates
4502 Medical Drive
San Antonio, Texas 78229

Brenda Gutierrez
And any and all other custodians of medical records for
University Health System and Community Medical Associates

The Center for the Intrepid
3851 Roger Brooke Dr.
San Antonio, TX 78219

Agents, servants and employees of the University Health System who provide care to
    Plaintiff, including but not limited to:


Dr. Angela Vrooman
Dr. Stephen Kraus

Dr. John C. King
Dr. Jesse Neeley
Sarah Rasor, Physical therapist
Gabrielle Canales, Physical therapist
Selina Morgan
Crystal Keller
Stephanie Cavazos, Occupational therapist
Johanna Vidola, Occupational therapist
Seth Chandler, D.O.
Raquel A. Rodriguez, MST
Dat Dinh, OTR
Dr Warren Neeley (unassigned)
Dr. Natalie Nyren
Natalie M. Uhlig OPCSR
Mayra Vargas, MA
Orlando Pena, MD
Venkata S. Katabathina, MD
Emily M. Noll, PT
Caroline P. Brennick, DO
Clark S. Tyler MD
Kathleen Palmer LPC
Leanna Godwin, OT
Raymund Hernandez SPT
Samantha A Zimmerman PT
Norma F. Salazar LMSW
Dr. Donamaria


Alex C. Willingham, MD
2 Spurs Lane, Suite 101
San Antonio, Texas 78240

Additional physicians and providers' names may be included in the records. The list is not intended as exhaustive of all names identified in the copious medical records of Mr. Workman's providers.


**b.      Plaintiffs identify themselves as persons with knowledge of relevant facts pertaining to the incident in question:**

David Colbath
c/o Brett Reynolds
Brett Reynolds & Associates, P.C.
1250 N.E. Loop 410 Suite 310
San Antonio, Texas 78209
*Plaintiff*

c.   **Plaintiffs identify the following investigative personnel, including but not limited to police officers, sheriffs' officers, troopers, agents, Rangers, and other first responders where were not specifically retained or employed. Some of these persons by reason of their training, background and experience may qualify as experts. Plaintiffs refer Defendant to all documents produced in this matter from investigative agencies and public servants, including but not limited to the investigatory reports and deposition testimony of fact and expert witnesses. The names of the non-specially retained or non-employed potential testifying experts who were involved in investigating the facts and circumstances of this matter are as follows:**

1)   Wilson County Sheriff's Department
     800 10th Street #4
     Floresville, Tx. 78114
     Agents, servants and employees, and custodian of records including but not
     limited to:
     Steve Moore, Investigator

2)   Tom Caldwell
     Wilson County Attorney's Office
     1420 Third Street
     Floresville, Tx. 78114
     Agents, employees and custodians of records

3)   Ken Paxton
     Attorney General of Texas
     P.O. Box 12548
     Austin, Tx. 78711-2548

4)   Texas Ranger Division
     Texas Department of Public Safety
     6100 Guadalupe St. Building E.
     Austin, Tx. 78752

5)   Texas Department of Public Safety
     Drivers License Division, License & Records

> 5805 North Lamar Blvd. Building A
> Austin Tx. 78752
> Agents, employees and custodians of records

6)      Texas Department of Public Safety
        Regulatory Services Division
        5805 North Lamar Blvd., Building 1
        Austin, Tx. 78752-0240
        Agents, employees and custodians of records


7)      Other officers and first responders to the church shooting.



**d.      Plaintiffs identify the following family members, friends, and other persons    as persons with knowledge of relevant facts:**


> Julie Workman and Kip Workman
> c/o Brett Reynolds
> Brett Reynolds & Associates, P.C.
> 1250 N.E. Loop 410 Suite 310
> San Antonio, Texas 78209
> *Plaintiffs' parents with personal knowledge of the occurrence of and consequences of Kris Workman's extensive and permanent injuries; and soon-to-be Plaintiffs for their own physical and emotional injuries-direct and derivative as allowed under Texas law.*
>
> Kyle Workman and Morgan Workman
> c/o Brett Reynolds
> Brett Reynolds & Associates, P.C.
> 1250 N.E. Loop 410 Suite 310
> San Antonio, Texas 78209
> *Plaintiff's brother and sister-in-law with personal knowledge of the occurrence of and consequences of Kris Workman's extensive and permanent injuries and co-Plaintiffs seeking recovery for their own extensive injuries arising out of the shooting.*

Pastor Frank Pomeroy
First Baptist Church of Sutherland Springs
216 4th St., Sutherland Springs, Tx. 78161

Kris Workman
c/o Brett Reynolds
Brett Reynolds & Associates, P.C.
1250 N.E. Loop 410 Suite 310
San Antonio, Texas 78209

Stephen Willeford
Sutherland Springs Texas
Mr. Willeford confronted the shooter with an AR-15 and fired numerous rounds at and
into his body, injuring him and stopping the massacre


Other Plaintiffs and Survivors
Available for contact through their counsel of record in this case.


**Other persons with knowledge:**

Sunland Park Police Department
1000 McNutt Rd
Sunland Park, NM 88063
Agents, employees and custodian of records


El Paso Police Dept
911 N. Raynor
El Paso, Tx. 79903
915-212-4000
Its agents, employees and custodians of records
The El Paso Police apprehended Kelley after he escaped.


Tanya Wood

Tessa Kelley
Was married to Devin Kelley while he was in the Air Force and reported him for abused
of herself and an infant child.

Danielle Shields Kelley/Harris
Spouse of Kelley at time of the church shooting

Michael Kelley
2825 FM 2722
New Braunfels, Tx. 78132
Father of Devin Kelley

Rebecca A. Kelley
2825 FM 2722
New Braunfels, Tx. 78132
Mother of Devin Kelley


**d.      Plaintiffs name the Defendant herein, as well as its agents, representatives,    and/or employees or former agents, representatives, or employees, as persons with knowledge of relevant facts.  Plaintiffs further name the Defendant, as well as its agents, representatives, and/or employees or former agents, representatives, or employees, as persons from whom expert testimony may be elicited regarding liability, causation and/or damages, although Plaintiffs  do not by designation adopt or judicially admit all of the opinion testimony of such persons.  Plaintiffs refer you to the Department of Defense Inspector General reports from 2018, 2017, 2014, and 2015; Defendant's discovery documents; deposition testimony; documents produced by Defendant; and related medical records for the subject matter, facts known, and opinions and impressions of these witnesses.**

Heather Wilson
Secretary of the Air Force

Deborah Lee James
Secretary of the Air Force

Col. Kirk Stabler
Air Force Commander
Headquarters Air Force Office of Special Investigations
Quantico, Virginia

Brig. General Andrea Tullos
Air Force Director
Director of Security Forces
DCS/Logistics, Engineering & Force Protection
Department of the Air Force
Washington, D.C.

Director of Special Investigations
Department of the Air Force

7

Washington, D.C.

HQ Air Force Office of Special Investigations
Department of the Air Force
Superintendent, IT Integrations HQ AFOSI
Quantico, Virginia

Department of the Air Force
HQ USAF
Washington, D.C.
Deputy Director of Security Forces
DCS/Logistics, Installations & Missions Support

Defense Human Resources Activity
Headquarters
Pamela Mitchell, Director
4800 Mark Center Drive, Suite 06J25-01
Alexandria, VA 22350-4000

Department of the Air Force
HQ Air Force Office of Special Investigations
Quantico, VA
Brigadier General, Keith Givens
USAF Commander


Department of Defense
Under Secretary of Defense for Intelligence
Deputy Chief Management Officer

Department of Defense
Military Criminal Investigative Organizations (MCIOs)
      Commanders, Officers, supervisors and employees
Defense Criminal Investigative Organizations (DCIOs)
      Commanders, Officers, supervisors and employees

Tessa Kelley (nee' Loge)
Devin Kelley's former spouse

Danielle Kelley
Devin Kelley's former spouse

Air Force 49th Security Forces Squadron
Confinement Facility
Commanders, Officers, supervisors, employees

8

Air Force Office of Special Investigations
Commanders, Vice-Commanders, Officers, supervisors, employees

Air Force Security Forces Squadron
Holloman Air Force Base
Commanders, Officers, supervisors, employees
Cmdr. Nathan McLeod-Hughes


Nathan McLeod-Hughes
Commander
Air Force 49th Logistics Readiness Squadron
Along with Officers, supervisors, employees of the squadron under his command.
McLeod Hughes issued a no contact order specifying pre-trial confinement in
which he indicated he was convinced Kelley was going to "hurt someone"  and
was "dangerous and likely to harm someone if released"  and was responsible
among others for overseeing and ensuring the input of the disqualifying
information into the NICS system by making sure the information was gathered
and submitted to the appropriate personnel to do so.

Air Force Detachment 225, Office of Special Investigations
Commanders, Officers, Special Agents, supervisors, employees

Air Force Article 32 Investigating Officers

Naval Consolidated Brig
Miramar, California
Commanders, Officers, supervisors, employees

General David Goldfein
Air Force Chief of Staff

General Stephen Wilson
Air Force Vice Chief of Staff

Lt. General Gina Grosso
Air Force Deputy Chief of Staff, Manpower, Personnel & Services

Lt. General John Raymond
Air Force Deputy Chief of Staff, Operations

Lt. General John Cooper, Deputy Chief of Staff, Operations

Air Force Holloman Air Force Base Mental Health Clinic

Defense Incidence-Based Reporting System

9

Commanders, Officers, supervisors, employees

Peak Behavioral Health Services
5055 McNutt Rd.
Santa Teresa, NM 88008

Sunland Park Police Department
1000 McNutt Rd
Sunland Park, NM 88063

Department of the
Air Force HQ USAF
Washington, D.C.

Deputy Director of Security Forces
DCS/Logistics, Installations & Missions Support

Defense Human Resources
Activity Headquarters
Pamela Mitchell, Director
4800 Mark Center Drive, Suite 06J25-
01 Alexandria, VA 22350-4000

Department of the Air Force
HQ Air Force Office of Special Investigations Quantico, VA
Brigadier General, Keith
Givens USAF Commander

Department of Defense
Under Secretary of Defense for
Intelligence Deputy Chief Management
Officer

Military Criminal Investigative
Organizations (MCIOs) Commanders,
Officers, supervisors and employees

Defense Criminal Investigative
Organizations (DCIOs) Commanders,

10

Officers, supervisors and employees

Office of Inspector General for the DOD
The Office of Inspector General for the DOD has issued two reports investigating and detailing the failures of the Air Force, including negligence, negligent training, and negligent supervision. *See* attached reports:

Report No. DODIG-2019-030, Inspector General U.S. Department of Defense, Dec. 6, 2018, Report of Investigation into the United States Air Force's Failure to Submit Devin Kelley's Criminal History Information to the Federal Bureau of Investigation; see id. at p. 117, "The USAF concurred with this report and its recommendations."
*https://www.dodig.mil/reports.html/Article/1707300/reportof-  investigation-into-the-united-states-air-forces-failure-to-submit-dev/*

Report No. DODIG-2018-035, Inspector General U.S. Department of Defense, Dec. 4, 2017, *Evaluation of Fingerprint Card and Final Disposition Report*

*Submissions by Military Service Law Enforcement Organizations.* *https://www.dodig.mil/reports.html/Search/DODIG-2018-035/*

The DOD concluded that training on the submission of fingerprints and final disposition reports was ineffective and lacking, both for AFOSI Detachment 225 and the 49th Security Forces Squadron, and "there was no valid reason for the USAF's failures". *See* p. 111-112; S*ee also* p. 96-98 (noting "training did not provide instructions on when or how to submit either the fingerprint card or the final disposition report to the FBI CJIS Division"). Indeed, the DOD "determined that this failure to submit Kelley's fingerprints was part of a systemic problem in AFOSI Detachment 225." *See* p. 94. Worse, the case agent was actually deployed for seven months during the investigation and reported that he complained he could not do his job, stating, "Boss, I'm burnt out, I'm so burnt out." "Boss, I want to get out. I can't do this anymore."

Report No. DODIG-2015-081, Inspector General U.S. Department of Defense, February 12, 2015, *Evaluation of Department of Defense Compliance with Criminal History Data Reporting Requirements.*

Report No. DODIG-2015-011, Inspector General U.S. Department of Defense, October 29, 2014, *Evaluation of the Defense Criminal Investigative Organizations' Defense Incident-Based Reporting System Reporting and Reporting Accuracy.*

Air Force 49th Security Forces Squadron and it's investigators,
Military Law Enforcement Officers (LEOs), or AFSFC Police
Services Branch Confinement Facility
Commanders, Officers, supervisors, employees

The 49th Security Forces Squadron investigated Airman Kelley. The 49th Security
Forces Squadron investigators and/or Military Law Enforcement Officers (LEOs)
had responsibilities to gather fingerprints and report, and thus will have
knowledge of their responsibilities, training, and failures. The December 6, 2018,
the Inspector General of the DOD issued a 131-page Report titled, *Investigation
into the United States Air Force's Failure to Submit Devin Kelley's Criminal
History Information to the Federal Bureau of Investigation* concluding that
training on the submission of fingerprints and final disposition reports was
ineffective and lacking, both for AFOSI Detachment 225 and the 49th Security
Forces Squadron, and "there was no valid reason for the USAF's failures". *See* p.
111-112; *see also* p. 96-98 (noting "training did not provide instructions on when
or how to submit either the fingerprint card or the final disposition report to the
FBI CJIS Division").


Air Force Office of Special Investigations
AFSFC Police Services Branch training focused on collection of fingerprints, but
failed to address submitting fingerprint cards and final disposition reports to the
FBI CJIS. Their Management Internal Control Toolset (MICT) checklist items
are supposed to be monitored and assessed as part of the installation
commander'sself-inspection program. Monthly supervisory reviews were
"incomplete and ineffective." *See* Report No. DODIG-2019-030 p. 110.


Case Agent responsible for Airman Kelley
The Case Agent will have knowledge for the reasons he could not properly report
Kelley to the FBI, as detailed by the DOD's report.

Boss of Case Agent responsible for Airman Kelley
The boss of the Case Agent will have knowledge for the reasons the Case Agent
could not properly report Kelley to the FBI, as detailed by the DOD's report.


General David
Goldfein
Air Force Chief of
Staff


General Stephen Wilson
Air Force Vice Chief of Staff


Lt. General Gina Grosso

12

Air Force Deputy Chief of Staff, Manpower, Personnel & Services

Lt. General John Raymond
Air Force Deputy Chief of Staff, Operations

Lt. General John Cooper, Deputy Chief of Staff, Operations

Defense Incidence-Based Reporting
System Commanders, Officers,
supervisors, employees

Air Force 49th Logistics Readiness
Squadron Commanders, Officers,
supervisors, employees

Air Force Office of Special Investigations
Commanders, Vice-Commanders, Officers, supervisors, employees

Air Force Security Forces
Squadron Holloman Air
Force Base
Commanders, Officers, supervisors, employees
    Cmdr. Nathan McLeod-Hughes

Air Force Detachment 225 and/or Holloman Air Force Base
Office of Special Investigations
Commanders, Officers, Special Agents, supervisors, employees

AFOSI Detachment 225 and/or Holloman Air Force Base Office of Special Investigation had responsibilities to gather fingerprints and report, and thus will have knowledge of their responsibilities, training, and failures. The December 6, 2018, the Inspector General of the DOD issued a 131-page Report titled,

*Investigation into the United States Air Force's Failure to Submit Devin Kelley's Criminal History Information to the Federal Bureau of Investigation* concluding that training on the submission of fingerprints and final disposition reports was ineffective and lacking, both for AFOSI Detachment 225 and the 49th Security Forces Squadron, and "there was no valid reason for the USAF's failures". *See* p. 111-112; *see also* p. 96-98 (noting "training did not provide instructions on when or how to submit either the fingerprint card or the final disposition report to the FBI CJIS Division"). Although AFOSI

policy required supervisory reviews to include both I2MS and the investigative case file (record copy), the AFOSI Detachment 225 SAIC and Superintendent focused their reviews on the I2MS activities and not on investigative case files" *See* p. 89. "In sum, we concluded that AFOSI Detachment 225 monthly supervisory reviews of Kelley's investigative case file were incomplete and ineffective".

Air Force Article 32 Investigating Officers

Airforce Prosecutors
Air Force prosecutors gathered evidence and handled the conviction of Airman Kelley, and thus have knowledge of his conduct and disposition.

Naval Consolidated Brig, Miramar California

Commanders, Officers, supervisors, employees

Holloman Air Force Base Mental
Health Clinic c/o Air Force or
DOJ counsel of record
HAFB Mental Health Clinic had custody of Kelley in the Air Force.

Peak Behavioral Health Services (PBHS) and
Xavier Alvarez 5055 McNutt Rd,
Santa Teresa, NM
88008 (575) 589-
3000

Peak Behavioral Health Services (PBHS) had a program for military personnel and diagnosed Kelley with various mental and emotional disorders. On information and belief, this is the facility from which Kelley attempted to buy guns to kill his commanding officers, and the facility that Kelley escaped from and fled to El Paso. According to an El Paso police report, police were informed that Kelley "was a danger to himself and others as he had already been caught sneaking firearms onto Holloman Air Force Base". Police were further advised that Airman Kelley "suffered from mental disorders" and that he "was attempting to carry out death threats" against "his military chain of command." Xavier Alvarez, who worked for Peak Behavioral and who reported Kelley to police for the escape, later confirmed to NBC News that Kelley "verbalized that he wanted to get some kind of retribution to his chain of command." Other patients reported that Kelley was doing something suspicious on computers, and the military found that Kelley was "ordering weapons and tactical gear and magazines to a P.O. Box

14

in San Antonio." Alvarez was quoted as saying, "This kid – he was hollow," and "I could never reach him."

e.   **Regarding experts who may be called to testify at the trial in this case, please refer to Plaintiffs' Designation of Experts and any amendments or supplements thereto for additional information regarding the facts known to these witnesses and the bases of their opinions.  These expert designations will be made at the time required by the Court's Scheduling Order. Please also refer to the sworn testimony and written reports of these witnesses for further information regarding the facts known to and opinions held by these witnesses.**

**Subject to and without waiving the right to later designate such experts, and in recognition that Plaintiff has already provided certain voluminous information, including reports, to the United States Air Force prior to the inception of the litigation, Plaintiff provides a partial designation of the following experts:**

Dr. David Altman
Mr. Dan Bagwell
Certified Life Care Planning
Rehabilitation Professional Consultants
16023 Via Shavano # 101,
San Antonio, TX 78249

Christopher B. Ticknor, MD
Adult and Forensic Psychiatry
1202 E. Sonterra Blvd, Suite 202
San Antonio, Texas  78258

f.   **Plaintiffs cross-identify as expert witnesses any person named or to be named by Defendant as a person having expert knowledge about any facts surrounding any issues relevant to the incident in question as expert witnesses who Plaintiffs reserve the right to call live at the trial of the cause.  Plaintiffs reserve the right to call such persons as expert witnesses, whether or not the designation is subsequently withdrawn.  Plaintiffs do not have any control over any such witness, nor do they have any superior right to ascertain the subject matter on which any such witness may testify and/or opinions held by any such witness, beyond the information disclosed in deposition testimony and/or by Defendant's discovery responses.  In that regard, Plaintiffs refer you to Defendant's discovery documents, deposition testimony, and documents produced by Defendant for the subject matter, facts known, and opinions and impressions of these witnesses.  Plaintiffs reserve the right to obtain opinion testimony from any such witness within their area of expertise as related to this case.**

(ii)      A copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment;

Exhibit 1  – Inspector General, US Department of Defense, Evaluation of the Defense Criminal Investigative Organizations' Defense Incident-Based Reporting System Reporting and Reporting Accuracy, October 29, 2014 (Bates #19-678-002533 – 19-678-002572)

Exhibit 2  – Inspector General, US Department of Defense, Evaluation of the Defense Compliance with Criminal History Data Reporting Requirements, February 12, 2015 (Bates #19-678-002573 – 19-678-002608)

Exhibit 3 – Inspector General, US Department of Defense, Evaluation Fingerprint Card and Final Disposition Report Submissions by Military Service Law Enforcement Organizations, December 4, 2017 (Bates #19-678-002609 – 19-678-002700)

Exhibit 4 – Inspector General, US Department of Defense, Report of Investigation into the United States Air Force's Failure to Submit Devin Kelley's Criminal History Information to the Federal Bureau of Investigation, December 6, 2018( Bates #19-678-002701 – 19-678-002838)

Exhibit 5 –Department of Defense Directive Number 7730.47, October 15,  1996 (Bates #19-678-002839 – 19-678-002847)

Exhibit 6 –Department of Defense Manual Number 7730.47-M Volume 1, December 7, 2010 (Bates #19-678-002846 – 19-678-002930)

Exhibit 7–U.S. Department of Defense Press Operations, DoD launches review of Devin P. Kelley criminal record notification, Release No. NR-382-17, November 6, 2017 (Bates #19-678-002931)

Exhibit 8 – National Instant Criminal Background Check System Indices (Bates #19-678-002932 – 19-678-002933)

Exhibit 9 – U.S. Air Force article, AF Implements Changes to Improve Law Enforcement Database Reporting, November 28, 2017 (Bates #19-678-002934)

Exhibit 10– U.S. Air Force tweet November 9, 2017 (Bates #19-678-002935)

Exhibit  11– Report to the Committee on the Judiciary United States Senate from The Honorable Heather Wilson, Secretary of the Air Force, December 6, 2017 (Bates #19-678-002936 – 19-678-002937)

Exhibit 12 – Questions for the Record for Secretary of the United States Air Force Heather Wilson, December 13, 2017 (Bates #19-00506-002938 – 19-678-002942)

Exhibit 13– Misdemeanor Crimes of Domestic Violence (Bates #19-678-002943 – 19-678-002944 0

Exhibit 14–Devin Kelley Trial Transcript (Bates #19-678-002945 – 19-678-003554)

Exhibit 15– El Paso Incident Report, June 7, 2012 (Bates #19-678-003555 – 19-678-003560)

Exhibit 16– Devin Kelley Court Martial Order (Bates #19-678-003561 – 19-678-003566)

Exhibit 17– Statement of Danielle Kelley (Bates #19-678-003567)

Exhibit 18 – Devin Kelley Autopsy Report (Bates #19-678-003564 – 19-678-003579)

Exhibit 19– Life Expectancy Tables (Bates #19-678-003580 – 19-678-003643)

Exhibit 20– San Antonio Military Medical Center medical records for David Colbath (Bates #19-678-000001 – 19-678-002403)

Exhibit 21– San Antonio Military Medical Center billing records for David Colbath. (Bates #19-678-002404 – 19-678-002466)

Exhibit 22– Life Care Plan for David Colbath (Bates #19-678-002493 – 19-678-002528)

Exhibit 23 – Life Care Cost Analysis for David Colbath (Bates #19-678-002489 – 19-678-002492)

Exhibit 24 – Dr. Christopher Ticknor M.D.'s Expert Report on David Colbath (Bates #19-678-002482 – 19-678-002488)

Exhibit 25– Various Photos (Bates #19-678-002529 – 19-678-002532)

In addition, Plaintiffs are in the possession of the materials maintained by the Texas Rangers related to the incident.  In obtaining these materials, Plaintiffs entered into an agreement with the Texas Attorney General regarding their release.  As such, Plaintiffs will discuss the terms of this agreement with Defendant prior to releasing these materials.

(iii)     A computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered;

Discovery is still in its early stages and it is premature for Plaintiffs to respond to this disclosure; however, please see Plaintiffs' Original Complaint(s) and any and all amendments thereto for the categories of damages sought by Plaintiffs.   Please refer also to Plaintiffs' administrative claims filed with the Government for the maximum amount of damages sought by Plaintiffs in this case.  Please refer to the sworn deposition testimony in this case. Please also refer to Plaintiffs' Designation of Experts and any amendments or supplements thereto for additional information regarding the facts known to these witnesses and the bases of their opinions.  These expert designations will be made at the time required by the Court's Scheduling Order. Please also refer to the sworn testimony and written reports of these witnesses for further information regarding the facts known to and opinions held by these witnesses.

See also Life Care Plan for Kris Workman authored by Rehabilitation Professional Consultants, which is subject to revision and supplementation as time progresses and as Mr. Workman's projections for future medical care require revision.

(iv)    For inspection and copying as under Rule 34, any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment.

Not applicable.

Respectfully submitted,

 /s/ Brett T. Reynolds

_____
BRETT T. REYNOLDS
Federal Bar No. 19994

18

State Bar No. 16795500
BRETT REYNOLDS & ASSOCIATES, P.C.
1250 N.E. Loop 410, Suite 310
San Antonio, Texas  78209
Telephone:(210) 805-9799
Telecopier:(210) 455-2434
E-Mail:    btreynolds@btrlaw.com
**ATTORNEY FOR DEFENDANT,**
**PENSKE TRUCK LEASING CO., L.P.**

## CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of July, 2019 a true and correct copy of the foregoing document was forwarded in accordance with the Federal Rules of Civil Procedure to:

PAUL DAVID STERN
Trial Attorney, Torts Branch
United States Dept. of Justice
Civil Division
United States Department of Justice
P.O. Box 888
Benjamin Franklin Station
Washington, D.C. 20004
T: (202) 616-2197
Paul.David.Stern@usdoj.gov

STEPHEN E. HANDLER
Senior Trial Counsel, Torts Branch
United States Dept. of Justice
Civil Division
United States Department of Justice
P.O. Box 888
Benjamin Franklin Station
Washington, D.C. 20004
T: (202) 616-2197
Stephen.Handler@usdoj.gov

*/s/ Brett T. Reynolds*

_____

BRETT T. REYNOLDS



Joe Holcombe, *et al.*,
    Plaintiffs,

v.

United States of America,
    Defendant.

Civil Action No. 5:18-cv-555-XR

*Consolidated with*:
  Nos. 5:18-cv-712-XR; 5:18-cv-881-XR;
  5:18-cv-944-XR; 5:18-cv-949-XR;
  5:18-cv-951-XR; 5:18-cv-1151-XR;
  5:19-cv-184-XR; 5:19-cv-289;
  5:19-cv-506 XR; 5:19-cv-678;
  5:19-cv-691-XR; 5:19-cv-705;
  5:19-cv-706-XR; 5:19-cv-715-XR

## PLAINTIFF DEBORAH BRADEN'S, INDEPENDENT EXECUTOR OF THE ESTATE OF KEITH BRADEN, INITIAL DISCLOSURES PURSUANT TO RULE 26(A)(1)

(i)    The name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment;

**a. Plaintiff hereby designates as persons with knowledge the health care providers referenced in the related health care records in this case, including physicians, technicians, nurses, radiologists, physician's assistants, physical therapists, clinics, hospitals, pharmacies, and their agents, representatives, and employees. While these health care providers are not within the control of Plaintiff and have not been retained by Plaintiff as expert witnesses, Plaintiff reserves the right to elicit opinion testimony from any such health care provider, including expert testimony regarding liability, causation, and damages from those treating healthcare providers relating to the medical treatment provided to the Plaintiff. To the extent it is necessary to call live at the trial or by deposition in this cause any agents, representatives, employees and/or custodian of records for any of the following health care providers, Plaintiff identifies any such custodian as a person who may have expert knowledge regarding issues related to the incident in question to include personal knowledge of the records and concerning the necessity of services rendered and referenced in the records and concerning the reasonableness of the medical bills charged and referenced in the records of the following health care providers. For the**

mental impressions held by and the opinions of and facts known by any of the following witnesses, please refer to the related health care records of the Plaintiff.

| NAME | ADDRESS/TELEPHONE |
|------|-------------------|
| Agents, servants and employees, including but not limited to:<br>James A. Feig, MD<br>Rajesh P. Kannan, M.D.<br>Randall E. Frost, M.D.<br>D. Kimberley Molina, M.D.<br>Veronica Hargrove, Ph.D.<br>**Bexar County Medical Examiner** | 7337 Louis Pasteur<br>San Antonio, Tx 78229-4565<br>(210) 335-4000 |

  b. **Plaintiff identifies herself as persons with knowledge of relevant facts pertaining to the incident in question:**

| NAME | ADDRESS/TELEPHONE |
|------|-------------------|
| **PARTIES** | |
| Deborah Braden, Independent Executor of the Estate of Keith Allen Braden<br>c/o Justin B. Demerath<br>O'HANLON, DEMERATH & CASTILLO, PC | 808 West Avenue<br>Austin, Texas 78701<br>(512) 494-9949 |

  c. **Plaintiff identifies the following family members, friends, and other persons as persons with knowledge of relevant facts:**

    Academy Sports + Outdoors in San Antonio
      Kelley bought a Ruger 5.56 mm assault rifle from Academy Sports + Outdoors in San Antonio after clearing a background check of the NICS. Store personnel will have knowledge of the transaction.

    El Paso Police
    Headquarters:
    911 N. Raynor
    El Paso, TX 79903
    (915) 212-4000
      The El Paso police apprehended Kelley after he escaped. See Exhibit 15.

    First Baptist Church of Sutherland Springs, Texas
    Frank Pomeroy, Pastor
    First Baptist Church
    216 4th Street

Sutherland Springs, Texas 78161
> This is the church where the shooting occurred. The pastor was not there that morning, but on information and belief lost his daughter and many beloved friends in the massacre. He will have knowledge of their community and relationships and the impact of the shooting.

Danielle Shield Kelley
> Married to Airman Devin Kelley at the time of the church shooting.

Tessa Kelley (nee' Loge)
> Married to Airman Devin Kelley while he was in the Air Force and reported him for abuse to herself and infant child.

Johnnie Langendorff
Stephen Willeford
> Stephen Willeford confronted Kelley and chased him away from the church. Johnnie Langendorff stopped his vehicle to pick up Mr. Willeford and give chase.

Steve Moore
Wilson County Sheriff's Department
> Investigator

Harold Schott, Justice of the Peace Pct. #3
Wilson County

Terry Snyder
Texas Ranger Division
Texas Department of Public Safety
6100 Guadalupe Street, Building E
Austin, TX 78752
> Investigator and Custodian of Records

Sunland Park Police Department
1000 McNutt Rd
Sunland Park, NM 88063

Robert Braden
> Robert Braden is the son of Keith Braden. He has knowledge of the death of his father, Keith Braden, as well as his own injuries, grief, trauma and other elements of damages and that of his parents and family.

Elizabeth Braden
> Elizabeth Braden is the daughter of Keith Braden. She has knowledge of the death of her father, Keith Braden, as well as her own grief, trauma and other elements of damages and that of her parents and family.

█████████ a Minor

████████████ is the granddaughter of Keith Braden. She has knowledge of the death of her grandfather, Keith Braden, as well as her own traumatic injuries, grief, trauma and other elements of damages and that of her grandparents and family.

Rebecca Metcalf

Rebecca Metcalf is the daughter of Keith Braden. She has knowledge of the death of her father, Keith Braden, as well as her own grief, trauma and other elements of damages and that of her parents and family.

**d. Plaintiff names the Defendant herein, as well as its agents, representatives, and/or employees or former agents, representatives, or employees, as persons with knowledge of relevant facts. Plaintiff further names the Defendant, as well as its agents, representatives, and/or employees or former agents, representatives, or employees, as persons from whom expert testimony may be elicited regarding liability, causation and/or damages, although Plaintiff does not necessarily vouch for all the opinion testimony of such persons. Plaintiff refers you to the Department of Defense Inspector General reports from 2018, 2017, 2014, and 2015; Defendant's discovery documents; deposition testimony; documents produced by Defendant; and related medical records for the subject matter, facts known, and opinions and impressions of these witnesses.**

Air Force personnel

Air Force personnel are expected to have knowledge of Kelley's conduct in the Air Force and mental problems, including but not limited to his attempt to bring weapons onto the base to kill officers.

Additional Air Force personnel are provided below:

Air Force spokesperson, Ann Stefanek. On November 28, 2017, an Air Force spokesperson, Ann Stefanek, admitted that the failure to follow Pentagon guidelines to report Kelley's crimes to the FBI was "not an isolated incident and similar reporting lapses occurred at other locations."

Heather Wilson
Secretary of the Air Force

Deborah Lee James
Secretary of the Air Force

Col. Kirk Stabler
Air Force Commander
Headquarters Air Force Office of Special Investigations
Quantico, Virginia

Brig. General Andrea Tullos
Air Force Director
Director of Security Forces
DCS/Logistics, Engineering & Force Protection
Department of the Air Force
Washington, D.C.

Director of Special Investigations
Department of the Air Force
Washington, D.C.

HQ Air Force Office of Special Investigations
Department of the Air Force
Superintendent, IT Integrations HQ AFOSI
Quantico, Virginia

Department of the Air Force
HQ USAF
Washington, D.C.

Deputy Director of Security Forces
DCS/Logistics, Installations & Missions Support

Defense Human Resources Activity
Headquarters
Pamela Mitchell, Director
4800 Mark Center Drive, Suite 06J25-01
Alexandria, VA 22350-4000

Department of the Air Force
HQ Air Force Office of Special Investigations
Quantico, VA
Brigadier General, Keith Givens
USAF Commander

Department of Defense
Under Secretary of Defense for Intelligence
Deputy Chief Management Officer

Department of Defense
Military Criminal Investigative Organizations (MCIOs)
        Commanders, Officers, supervisors and employees
Defense Criminal Investigative Organizations (DCIOs)
        Commanders, Officers, supervisors and employees

Office of Inspector General for the DOD

The Office of Inspector General for the DOD has issued four reports investigating and detailing the failures of the Air Force and Department of Defense, including negligence, negligent training, and negligent supervision. See attached reports:

Report No. DODIG-2019-030, Inspector General U.S. Department of Defense, Dec. 6, 2018, Report of Investigation into the United States Air Force's Failure to Submit Devin Kelley's Criminal History Information to the Federal Bureau of Investigation; see id. at p. 117, "The USAF concurred with this report and its recommendations." https://www.dodig.mil/reports.html/Article/1707300/reportof-investigation-into-the-united-states-air-forces-failure-to-submit-dev/

Report No. DODIG-2018-035, Inspector General U.S. Department of Defense, Dec. 4, 2017, *Evaluation of Fingerprint Card and Final Disposition Report Submissions by Military Service Law Enforcement Organizations*.   https://www.dodig.mil/reports.html/Search/DODIG-2018-035/

The DOD concluded that training on the submission of fingerprints and final disposition reports was ineffective and lacking, both for AFOSI Detachment 225 and the 49th Security Forces Squadron, and "there was no valid reason for the USAF's failures". *See* p. 111-112; *see also* p. 96-98 (noting "training did not provide instructions on when or how to submit either the fingerprint card or the final disposition report to the FBI CJIS Division"). Indeed, the DOD "determined that this failure to submit Kelley's fingerprints was part of a systemic problem in AFOSI Detachment 225." See p. 94. Worse, the case agent was actually deployed for seven months during the investigation and reported that he complained he could not do his job, stating, "Boss, I'm burnt out, I'm so burnt out." "Boss, I want to get out. I can't do this anymore."

Report No. DODIG-2015-081, Inspector General U.S. Department of Defense, February 12, 2015, *Evaluation of Department of Defense Compliance with Criminal History Data Reporting Requirements*

Report No. DODIG-2015-011, Inspector General U.S. Department of Defense, October 29, 2014, *Evaluation of the Defense Criminal Investigative Organizations' Defense Incident-Based Reporting System Reporting and Reporting Accuracy*

Air Force 49th Security Forces Squadron and its investigators, Military Law Enforcement Officers (LEOs), or AFSFC Police Services Branch Confinement Facility

Commanders, Officers, supervisors, employees

The 49th Security Forces Squadron investigated Airman Kelley. The 49th Security Forces squadron investigators and/or Military Law Enforcement Officers (LEOs) had responsibilities to gather fingerprints and report, and thus will have knowledge of their responsibilities, training, and failures. The December 6, 2018, the Inspector General of the DOD issued a 131-page Report titled, *Investigation into the United States Air Force's Failure to Submit Devin Kelley's Criminal History Information to the Federal Bureau of Investigation* concluding that training on the submission of fingerprints and final disposition reports was ineffective and lacking, both for AFOSI Detachment 225 and the 49th Security Forces Squadron, and "there was no valid reason for the USAF's failures". *See* p. 111-112; *see also* p. 96-98 (noting "training did not provide instructions on when or how to submit either the fingerprint card or the final disposition report to the FBI CJIS Division"). Air Force Office of Special Investigations

AFSFC Police Services Branch training focused on collection of fingerprints, but failed to address submitting fingerprint cards and final disposition reports to the FBI CJIS.  Their Management Internal Control Toolset (MICT) checklist items are supposed to be monitored and assessed as part of the installation commander's self-inspection program.  Monthly supervisory reviews were "incomplete and ineffective. *See* Report No. DODIG-2019-030 p. 110.

Airman Kelley's Air Force Commander

Kelley's Commander issued a no contact order and has knowledge of Kelley's conduct and training in the Air Force.

Airman Kelley's Air Force Commander

Kelley's Commander issued a no contact order, prepared a confinement package stating that he was "convinced" that Kelley was "dangerous and likely to harm someone if released", and has knowledge of Kelley's conduct and training in the Air Force.

Kelley's former Supervisor in the Air Force

Kelley sent a threatening Facebook message to his former supervisor in the Air Force after his discharge.  She will have knowledge of Kelley's conduct and condition and threats.

Case Agent responsible for Airman Kelley

The Case Agent will have knowledge for the reasons he could not properly report Kelley to the FBI, as detailed by the DOD's report.

Boss of Case Agent responsible for Airman Kelley

> The boss of the Case Agent will have knowledge for the reasons the Case Agent could not properly report Kelley to the FBI, as detailed by the DOD's report.

Peak Behavioral Health Services and Xavier Alvarez
5055 McNutt Rd.
Santa Teresa, NM 88008

> Peak Behavioral Health Services (PBHS) had a program for military personnel and diagnosed Kelley with various mental and emotional disorders. On information and belief, this is the facility from which Kelley attempted to buy guns to kill his commanding officers, and the facility that Kelley escaped from and fled to El Paso.
>
> According to an El Paso police report, police were informed that Kelley "was a danger to himself and others as he had already been caught sneaking firearms onto Holloman Air Force Base". Police were further advised that Airman Kelley "suffered from mental disorders" and that he "was attempting to carry out death threats" against "his military chain of command." Xavier Alvarez, who worked for Peak Behavioral and who reported Kelley to police for the escape, later confirmed to NBC News that Kelley "verbalized that he wanted to get some kind of retribution to his chain of command." Other patients reported that Kelley was doing something suspicious on computers, and the military found that Kelley was "ordering weapons and tactical gear and magazines to a P.O. Box in San Antonio." Alvarez was quoted as saying, "This kid – he was hollow," and "I could never reach him."

Air Force Security Forces Squadron
Holloman Air Force Base

> Commanders, Officers, supervisors, employees
> Cmdr. Nathan McLeod-Hughes

Air Force 49th Logistics Readiness Squadron
> Commanders, Officers, supervisors, employees

Air Force Detachment 225 and/or Holloman Air Force Base Office of Special Investigations

> Commanders, Officers, Special Agents, supervisors, employees
> AFOSI Detachment 225 and/or Holloman Air Force Base Office of Special Investigation had responsibilities to gather fingerprints and report, and thus will have knowledge of their responsibilities, training, and

failures. The December 6, 2018, the Inspector General of the DOD issued a 131-page Report titled, Investigation into the United States Air Force's Failure to Submit Devin Kelley's Criminal History Information to the Federal Bureau of Investigation concluding that training on the submission of fingerprints and final disposition reports was ineffective and lacking, both for AFOSI Detachment 225 and the 49th Security Forces Squadron, and "there was no valid reason for the USAF's failures". See p. 111-112; see also p. 96-98 (noting "training did not provide instructions on when or how to submit either the fingerprint card or the final disposition report to the FBI CJIS Division").

Although AFOSI policy required supervisory reviews to include both I2MS and the investigative case file (record copy), the AFOSI Detachment 225 SAIC and Superintendent focused their reviews on the I2MS activities and not on investigative case files" *See* p. 89. "In sum, we concluded that AFOSI Detachment 225 monthly supervisory reviews of Kelley's investigative case file were incomplete and ineffective".

Air Force Article 32 Investigating Officers

Air Force Prosecutors
     Air Force prosecutors gathered evidence and handled the conviction of Airman Kelley, and thus have knowledge of his conduct and disposition.

Naval Consolidated Brig
Miramar, California
     Commanders, Officers, supervisors, employees

General David Goldfein
Air Force Chief of Staff

General Stephen Wilson
Air Force Vice Chief of Staff

Lt. General Gina Grosso
Air Force Deputy Chief of Staff, Manpower, Personnel & Services

Lt. General John Raymond
Air Force Deputy Chief of Staff, Operations

Lt. General John Cooper, Deputy Chief of Staff, Operations

Air Force Holloman Air Force Base Mental Health Clinic
     HAFB Mental Health Clinic had custody of Kelley in the Air Force

Defense Incidence-Based Reporting System

Commanders, Officers, supervisors, employees

**e. Regarding experts who may be called to testify at the trial in this case, please refer to Plaintiff's Designation of Experts and any amendments or supplements thereto for additional information regarding the facts known to these witnesses and the bases of their opinions. These expert designations will be made at the time required by the Court's Scheduling Order. Please also refer to the sworn testimony and written reports of these witnesses for further information regarding the facts known to and opinions held by these witnesses.**

**f. Plaintiff cross-identifies as expert witnesses any person named or to be named by Defendant as a person having expert knowledge about any facts surrounding any issues relevant to the incident in question as expert witnesses who Plaintiff reserves the right to call live at the trial of the cause. Plaintiff reserves the right to call such persons as expert witnesses, whether or not the designation is subsequently withdrawn. Plaintiff does not have any control over any such witness, nor do they have any superior right to ascertain the subject matter on which any such witness may testify and/or opinions held by any such witness, beyond the information disclosed in deposition testimony and/or by Defendant's discovery responses. In that regard, Plaintiff refers you to Defendant's discovery documents, deposition testimony, and documents produced by Defendant for the subject matter, facts known, and opinions and impressions of these witnesses. Plaintiff reserves the right to obtain opinion testimony from any such witness within their area of expertise as related to this case.**

(ii)     A copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment;

Exhibit 1 – Inspector General, US Department of Defense, Evaluation of the Defense Criminal Investigative Organizations' Defense Incident-Based Reporting System Reporting and Reporting Accuracy, October 29, 2014 (Bates #18-949-1 – 18-949-40). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 2 – Inspector General, US Department of Defense, Evaluation of the Defense Compliance with Criminal History Data Reporting Requirements, February 12, 2015 (Bates #18-949-41 – 18-949-76). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 3 – Inspector General, US Department of Defense, Evaluation Fingerprint Card and Final Disposition Report Submissions by Military Service Law Enforcement Organizations, December 4, 2017 (Bates #18-949-77 – 18-949-168). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 4 – Inspector General, US Department of Defense, Report of Investigation into the United States Air Force's Failure to Submit Devin Kelley's Criminal History Information to the Federal Bureau of Investigation, December 6, 2018 (Bates #18-949-169 – 18-949-306). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 5 –Department of Defense Directive Number 7730.47, October 15, 1996 (Bates #18-949-307 – 18-949-315). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 6 –Department of Defense Manual Number 7730.47-M Volume 1, December 7, 2010 (Bates #18-949-316 – 18-949-398). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 7 –U.S. Department of Defense Press Operations, DoD launches review of Devin P. Kelley criminal record notification, Release No. NR-382-17, November 6, 2017 (Bates #18-949-399). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 8 – National Instant Criminal Background Check System Indices (Bates #18-949-400 – 18-949-401). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 9 – U.S. Air Force article, AF Implements Changes to Improve Law Enforcement Database Reporting, November 28, 2017 (Bates #18-949-402). This document is in the possession of the Defendant and also has been identified and produced to

Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 10 – U.S. Air Force tweet November 9, 2017 (Bates #18-949-403). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 11 – Report to the Committee on the Judiciary United States Senate from The Honorable Heather Wilson, Secretary of the Air Force, December 6, 2017 (Bates #18-949-404 – 18-949-405). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 12 – Questions for the Record for Secretary of the United States Air Force Heather Wilson, December 13, 2017 (Bates #18-949-406 – 18-949-410). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 13 – Misdemeanor Crimes of Domestic Violence (Bates #18-949-411). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 14 –Devin Kelley Trial Transcript (Bates #18-949-412 – 18-949-1022). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 15 - El Paso Incident Report, June 7, 2012 (Bates #18-949-1023 – 18-949-1028). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 16 – Devin Kelley Court Martial Order (Bates #18-949-1029 – 18-949-1034). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27,

2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 17 – Statement of Danielle Kelley (Bates #18-949-1035). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 18 – Devin Kelley Autopsy Report (Bates #18-949-1036 – 18-949-1037). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 19 – Life Expectancy Tables (Bates #18-949-1038 – 18-949-1101). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 20 – Death Certificate (Bates #KBRADEN-19-691-000001)

Exhibit 21 – Autopsy (Bates #KBRADEN-19-691-000002 - KBRADEN-19-691-000011)

Exhibit 22 – Letters Testamentary (Bates #KBRADEN-19-691-000012 - KBRADEN-19-691-000013)

Exhibit 23 – 2012 Tax Return (Bates #KBRADEN-19-691-000014 - KBRADEN-19-691-000027)

Exhibit 24 – 2013 Tax Return (Bates #KBRADEN-19-691-000028 - KBRADEN-19-691-000043)

Exhibit 25 – 2014 Tax Return (Bates #KBRADEN-19-691-000044 - KBRADEN-19-691-000051)

Exhibit 26 – 2015 Tax Return (Bates #KBRADEN-19-691-000052 - KBRADEN-19-691-000059)

Exhibit 27 – 2016 Tax Return (Bates #KBRADEN-19-691-000060 - KBRADEN-19-691-000067)

Exhibit 28 – 2017 Tax Return (Bates #KBRADEN-19-691-000068 - KBRADEN-19-691-000079)

Exhibit 29 – Social Security Earnings Summary (Bates #KBRADEN-19-691-000080 - KBRADEN-19-691-000081)

In addition, Plaintiff is in the possession of the materials maintained by the Texas Rangers related to the incident. In obtaining these materials, Plaintiff entered into an agreement with the Texas Attorney General regarding their release. As such, Plaintiff will discuss the terms of this agreement with Defendant prior to releasing these materials.

Further, Plaintiff is in the possession of the full Autopsy containing photographs taken by the Medical Examiner. In obtaining these materials, Plaintiff entered into an agreement with the Wilson County Attorney regarding their release. As such, Plaintiff will discuss the terms of this agreement with Defendant prior to releasing these materials.

(iii)   A computation of each category of damages claimed by the disclosing party— who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered;

Discovery is still in its early stages and it is premature for Plaintiff to respond to this disclosure; however, please see Plaintiff's Original Complaint(s) and any and all amendments thereto for the categories of damages sought by Plaintiff. Please refer also to Plaintiff's administrative claims filed with the Government for the maximum amount of damages sought by Plaintiff in this case. Please refer to the sworn deposition testimony in this case. Please also refer to Plaintiff's Designation of Experts and any amendments or supplements thereto for additional information regarding the facts known to these witnesses and the bases of their opinions. These expert designations will be made at the time required by the Court's Scheduling Order. Please also refer to the sworn testimony and written reports of these witnesses for further information regarding the facts known to and opinions held by these witnesses.

(iv)   For inspection and copying as under Rule 34, any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment.

Not applicable.

Respectfully Submitted,

/s/ *Justin Demerath*
**JUSTIN DEMERATH**
jdemerath@808west.com
Texas State Bar No. 24034415
**DAVID CAMPBELL**
dcampbell@808west.com
Texas State Bar No. 24057033
**O'HANLON, DEMERATH & CASTILLO, PC**
808 West Avenue
Austin, TX 78701
Telephone: (512) 494-9949
Facsimile: (512) 494-9919

Attorneys for Plaintiff Deborah Braden, Independent
Executor of the Estate of Keith Allen Braden

**Certificate of Service**

I certify that the foregoing was served on July 12, 2019, via email service and certified mail, return receipt requested, on the following counsel for the United States.

/s/ *Justin Demerath*
**JUSTIN DEMERATH**

PAUL DAVID STERN
Trial Attorney, Torts Branch
United States Dept. of Justice
Civil Division
United States Department of Justice
P.O. Box 888
Benjamin Franklin Station
Washington, D.C. 20004
T: (202) 616-2197
Paul.David.Stern@usdoj.gov

STEPHEN E. HANDLER
Senior Trial Counsel, Torts Branch
United States Dept. of Justice
Civil Division
United States Department of Justice
P.O. Box 888
Benjamin Franklin Station
Washington, D.C. 20004
T: (202) 616-2197
Stephen.Handler@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| Joe Holcombe, *et al.*,<br>    Plaintiffs,<br><br>v.<br><br>United States of America,<br>    Defendant. | Civil Action No. 5:18-cv-555-XR<br><br>*Consolidated with*:<br> Nos. 5:18-cv-712-XR; 5:18-cv-881-XR;<br> 5:18-cv-944-XR; 5:18-cv-949-XR;<br> 5:18-cv-951-XR; 5:18-cv-1151-XR;<br> 5:19-cv-184-XR; 5:19-cv-289;<br> 5:19-cv-506 XR; 5:19-cv-678;<br> 5:19-cv-691-XR; 5:19-cv-705;<br> 5:19-cv-706-XR; 5:19-cv-715-XR |

## PLAINTIFF DEBORAH BRADEN'S, INDIVIDUALLY, INITIAL DISCLOSURES PURSUANT TO RULE 26(A)(1)

(i)     The name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment;

**a. Plaintiff hereby designates as persons with knowledge the health care providers referenced in the related health care records in this case, including physicians, technicians, nurses, radiologists, physician's assistants, physical therapists, clinics, hospitals, pharmacies, and their agents, representatives, and employees. While these health care providers are not within the control of Plaintiff and have not been retained by Plaintiff as expert witnesses, Plaintiff reserves the right to elicit opinion testimony from any such health care provider, including expert testimony regarding liability, causation, and damages from those treating healthcare providers relating to the medical treatment provided to the Plaintiff. To the extent it is necessary to call live at the trial or by deposition in this cause any agents, representatives, employees and/or custodian of records for any of the following health care providers, Plaintiff identifies any such custodian as a person who may have expert knowledge regarding issues related to the incident in question to include personal knowledge of the records and concerning the necessity of services rendered and referenced in the records and concerning the reasonableness of the medical bills charged and referenced in the records of the following health care providers. For the mental impressions held by and the opinions of and facts known by any of the following witnesses, please refer to the related health care records of the Plaintiff.**

1

| NAME | ADDRESS/TELEPHONE |
|---|---|
| **MEDICAL CARE PROVIDERS** | |
| Employees, agents, custodians and representatives, including:<br>Margarette Gonzalez, EMT-B, 727811<br>Mary Hernandez, EMT-B, 16873,<br>Tina Taheri and/or<br>Present Custodian of Records<br>**Wilson County EMS** | 1402 Hospital Blvd.<br>Floresville, Texas 78114<br>(830) 393-3120 |
| Employees, agents, custodians and representatives, including:<br>Aazib Khan, MD<br>Anand Prasad, MD<br>Blanca E. Ulloa, PA<br>Carlos S. Restrepo, MD<br>Cedric Pluguez Turull, MD<br>Christopher Crane, MD<br>Debanshu D. Roy, MD<br>Debra L. Fraley, CNS<br>Devraj U. Nayak, MD<br>Diane Foster, RN<br>Dipan L. Patel, MD<br>Ernest Lee Wheeler, PA<br>Jillian Kate Grimm, MD<br>Juan M. Febres Valecillos, MD<br>Katherine Grace Beale, MD<br>Kathy Brown<br>Kevin T. Grieder, DO<br>Lisa Moore, RN<br>Marc Feldman, MD<br>Marlena Nancy<br>Matthew Petrie, DPT<br>Merritt G. Davis, Jr.<br>Motasem Alkhatib, MD<br>Rashmi S. Katre, MD<br>Ronald Beasley<br>Sarah Hernandez<br>Venkatesh J. Kadaba, MD<br>Yousef Hindi, MD<br>Sylvia Alzale and/or Present Custodian of Records<br>**Connally Memorial Medical Center** | 499 10th St<br>Floresville, Texas 78114<br>(830) 393-1300 |
| Employees, agents, custodians and representatives, including:<br>Aazib Khan, MD<br>Adam R. Lemmons | 4502 Medical Drive<br>San Antonio, Texas 78229<br>(210) 358-4000 |

Amanda R. Hames, RN
Amelia Vera
Anand Prasad, MD
Anjlee Mehta
Anthony W. Schaumburg
Arbrisha Bridget, MSW
Ashley N. Jacobi
Ashley McGinity, MD
Baylee R. Hopper, OT
Benoy K. Naramangalathu
Blanca E. Ulloa, PA
Brenda M. Wexler
Brianna Duncan, RN
Carlos S. Restrepo
Cat Shah, RN
Catherine S. Flores, RN
Cecilia J. Gibson, RN
Cedric Plugue Turull, MD
Christina Little, Admin
Christopher E. Crane, MD
Christopher C. Nichols
Cindy Anaya
Conrad Gamboa, RPH
Cole S. Helm, MD
David A. Hockridge, MD
Debanshu D. Roy, MD
Debra L. Fraley, CNS
Diana Foster, RN
Diego Aleman, MD
Dietrich W. Kayser, MD
Edward S. Shipper, MD
Efrain Guerrero Lozano
Elijah C. Gomez
Emanuel Silva, MD
Ernest L. Wheeler, PA
Jacob Moore, Scribe
Jacqueline M. Hernandez, RN
Janet R. Terrazas, RN
Jennifer S. Garza, Pharmacy Tech
Jillian K. Grimm, MD
Jo Ann F. Cabang
Joe Zamarripa
Joel I. Edionwe, MD
John Arredondo, CRNA
Jordan D. Meckel. Pharm Intern
Judith S. Quindo

Juan M. Febres Valecilios, MD
Katherine G. Beale, MD
Keely M. Voytovich, MD
Kelly A. Karcher
Kelly J. Sponhaltz, PA
Kenneth M. Kingdon, MD
Khafra Garcia Henry, MD
Kyle J. Johnston, MD
Kyle M. Struzyk, MD
Kyllie S. Ryan-Hummel, RPH
Kyndal Bippert, SPT
Laura J. Laroe
Lauren R. Davis
Leanna M. Dolson, MD
Lillian Liao, MD
Lindsey Rippee, NP
Marc D. Feldman, MD
Maria Duenez
Maria I. Serapio
Mark Muir, MD
Martha E. Flores
Mateo Porres Aguilar, MD
Matthew Petrie, PT, DPT
Merritt G. Davis, Jr., MD
Michael C. Johnson, MD
Michael J. Metzner, MD
Michelle Vidad, RN
Mohammad Hamideh, Scribe
Monica Natividad, CRNA
Monzerrat Luevano
Mooney Mark-Johnson, RN
Motasem Alkhatic
Muhammad U. Rabbani, MD
Nadia Kurji, RN
Natalie A. Guerra
Nicholas Mars, Scribe
Nora Trevino
Patrick Bibb, Scribe
Patti Reddoch
Rachel J. Cobos, MD
Rashmi S. Katre
Raymond C. Basco
Richard Wilmeth, CVT, ARRT III
Riikka E. Koso, MD
Robert Martinez, MD
Robert Pesek, LVN

| | |
|---|---|
| Robert Pfennig<br>Robert E. Weston<br>Rosalva Washington, LMSW<br>Shannon Diamond-Lopez, Case Mngr<br>Silvia Lujano, RN<br>Susan K. McCollow, NP<br>Teresa M. Beard<br>Tess DeJesus, RN<br>Timothy R. Farris, MD<br>Tracy J. Cheun, MD<br>Valencio Bannister, CCT<br>Venkatesh J. Kadaba<br>Vianca M. Ruiz<br>Victoria A. Lara<br>William E.Shaddock, MD<br>Yousef M. Hindi, MD<br>Yukari Reid, RCIS RT(R)<br>Yvette Medina, RN<br>Zachary Fulton<br>Brenda J. Gutierrez, Awoala Banigo, & Leticia Borrego<br>and/or<br>Present Custodian of Records<br>**University Health System** | |
| Employees, agents, custodians and representatives, including:<br>Anamarie, MA<br>Annette Gantz, NP-C<br>Kristina Mata, FNP<br>Mehgan E. Compton<br>R. Zachary Garza, MD<br>Diana S. Pedroza, Irene J. Martinez and/or Present Custodian of Records<br>**South Texas Spinal Clinic** | 9150 Huebner Road<br>San Antonio, Texas 78240<br>(210) 664-2042<br>18626 Hardy Oak Blvd., Suite 300<br>San Antonio, Texas 78258<br>(210) 614-6432 |
| Employees, agents, custodians and representatives, including:<br>Andy Zepeda, LVN<br>Edward Davis, RN<br>Nadia Kurji, CM<br>Rene Martinez, BSN, RN<br>Hope Flores, and/or Present Custodian of Records<br>**Comprehensive Home Health, Inc.** | 9502 Computer Drive, Suite 102<br>San Antonio, Texas 78229<br>(210) 614-0200 |
| Employees, agents, custodians and representatives, including:<br>Allan Truax, MD<br>David Mitchell, MD<br>David Riesz, MD | 3327 Research Plaza, Ste., #108<br>San Antonio, TX 78235<br>(210) 426-3950 |

| | |
|---|---|
| Jasmine Jackson<br>Isabel Torres<br>Steven Scarpino, MD<br>Ernesto Galindo and/or Present Custodian of Records<br>**Baptist M&S Imaging Center** | |
| Employees, agents, custodians and representatives, including:<br>Juanita Castineda<br>Lisette Carrasco, LVN<br>Patricia V. S., RN<br>Sylvan Luna, RN<br>Mary J. Kisselburgh, and/or Present Custodian of Records<br>**Design Home Care** | 2379 NE Loop 410, Suite 117<br>San Antonio, Texas 78217<br>(210) 654-7500 |
| Employees, agents, custodians and representatives, including:<br>Ayham Shneker, MD<br>Kristina Mata, FNP<br>Ronald Beasley, FNP<br>Helen Gonzales, /or Present Custodian of Records<br>**Floresville Premiere Primary Care/San Antonio Premier Internal Medicine** | 559 10th St.<br>Floresville, TX 78114<br>(830) 393-9152 |
| Employees, agents, custodians and representatives, including:<br>Michelle Carroll Bost Rodriguez, MD<br>J. Johnson, and/or Present Custodian of Records<br>**Magenta Health** | 4949 Rittiman Road<br>San Antonio, TX 78218<br>(210) 938-9355 |
| Employees, agents, custodians and representatives, including:<br>David Wood, MD<br>George Galvan, MD<br>John P. Clement, MD<br>Angie Flores, and/or Present Custodian of Records<br>**Texas Neurological Spine** | 2829 Babcock Road<br>San Antonio, Texas 78229 |
| Employees, agents, custodians and representatives, including:<br>Alyssa Ramos<br>Antonio Castillo<br>Ashley Heard<br>Luis Trevino, PA<br>Melissa Martinez<br>Sridhar Vasireddy, MD<br>Stephanie Sanchez<br>Zachary Garza, MD<br>Debbie Harrison, and/or Present Custodian of Records | 1350 Ashby<br>Seguin, Texas 78155<br>(830) 626-1000 |

| | |
|---|---|
| **Tri City Pain Associates** | |

**b. Plaintiff identifies herself as persons with knowledge of relevant facts pertaining to the incident in question:**

| NAME | ADDRESS/TELEPHONE |
|---|---|
| **PARTIES** | |
| Deborah Braden, Individually<br>c/o Justin B. Demerath<br>O'HANLON, DEMERATH & CASTILLO, PC | 808 West Avenue<br>Austin, Texas 78701<br>(512) 494-9949 |

**c. Plaintiff identifies the following family members, friends, and other persons as persons with knowledge of relevant facts:**

Academy Sports + Outdoors in San Antonio
> Kelley bought a Ruger 5.56 mm assault rifle from Academy Sports + Outdoors in San Antonio after clearing a background check of the NICS. Store personnel will have knowledge of the transaction.

El Paso Police
Headquarters:
911 N. Raynor
El Paso, TX 79903
(915) 212-4000
> The El Paso police apprehended Kelley after he escaped. See Exhibit 15.

First Baptist Church of Sutherland Springs, Texas
Frank Pomeroy, Pastor
First Baptist Church
216 4th Street
Sutherland Springs, Texas 78161
> This is the church where the shooting occurred. The pastor was not there that morning, but on information and belief lost his daughter and many beloved friends in the massacre. He will have knowledge of their community and relationships and the impact of the shooting.

Danielle Shield Kelley
> Married to Airman Devin Kelley at the time of the church shooting.

Tessa Kelley (nee' Loge)
> Married to Airman Devin Kelley while he was in the Air Force and reported him for abuse to herself and infant child.

Johnnie Langendorff
Stephen Willeford
>Stephen Willeford confronted Kelley and chased him away from the church. Johnnie Langendorff stopped his vehicle to pick up Mr. Willeford and give chase.

Steve Moore
Wilson County Sheriff's Department
>Investigator

Harold Schott, Justice of the Peace Pct. #3
Wilson County

Terry Snyder
Texas Ranger Division
Texas Department of Public Safety
6100 Guadalupe Street, Building E
Austin, TX 78752
>Investigator and Custodian of Records

Sunland Park Police Department
1000 McNutt Rd
Sunland Park, NM 88063

Robert Braden
>Robert Braden is the son of Deborah Braden. He has knowledge of the traumatic injuries sustained by his mother, the death of his father, Keith Braden, as well as his own injuries, grief, trauma and other elements of damages and that of his parents and family.

Elizabeth Braden
>Elizabeth Braden is the daughter of Deborah Braden. She has knowledge of the traumatic injuries sustained by her mother, the death of her father, Keith Braden, as well as her own grief, trauma and other elements of damages and that of her parents and family.

████████, a Minor
>████████ is the granddaughter of Deborah Braden. She has knowledge of the traumatic injuries sustained by her grandmother, the death of his grandfather, Keith Braden, as well as her own traumatic injuries, grief, trauma and other elements of damages and that of her grandparents and family.

Rebecca Metcalf
>Rebecca Metcalf is the daughter of Deborah Braden. She has knowledge of the traumatic injuries sustained by her mother, the death of her father, Keith

Braden, as well as her own grief, trauma and other elements of damages and that of her parents and family.

**d. Plaintiff names the Defendant herein, as well as its agents, representatives, and/or employees or former agents, representatives, or employees, as persons with knowledge of relevant facts. Plaintiff further names the Defendant, as well as its agents, representatives, and/or employees or former agents, representatives, or employees, as persons from whom expert testimony may be elicited regarding liability, causation and/or damages, although Plaintiff does not necessarily vouch for all the opinion testimony of such persons. Plaintiff refers you to the Department of Defense Inspector General reports from 2018, 2017, 2014, and 2015; Defendant's discovery documents; deposition testimony; documents produced by Defendant; and related medical records for the subject matter, facts known, and opinions and impressions of these witnesses.**

Air Force personnel
Air Force personnel are expected to have knowledge of Kelley's conduct in the Air Force and mental problems, including but not limited to his attempt to bring weapons onto the base to kill officers.

Additional Air Force personnel are provided below:
Air Force spokesperson, Ann Stefanek. On November 28, 2017, an Air Force spokesperson, Ann Stefanek, admitted that the failure to follow Pentagon guidelines to report Kelley's crimes to the FBI was "not an isolated incident and similar reporting lapses occurred at other locations."

Heather Wilson
Secretary of the Air Force

Deborah Lee James
Secretary of the Air Force

Col. Kirk Stabler
Air Force Commander
Headquarters Air Force Office of Special Investigations
Quantico, Virginia

Brig. General Andrea Tullos
Air Force Director
Director of Security Forces
DCS/Logistics, Engineering & Force Protection
Department of the Air Force
Washington, D.C.

Director of Special Investigations
Department of the Air Force

Washington, D.C.

HQ Air Force Office of Special Investigations
Department of the Air Force
Superintendent, IT Integrations HQ AFOSI
Quantico, Virginia

Department of the Air Force
HQ USAF
Washington, D.C.

Deputy Director of Security Forces
DCS/Logistics, Installations & Missions Support

Defense Human Resources Activity
Headquarters
Pamela Mitchell, Director
4800 Mark Center Drive, Suite 06J25-01
Alexandria, VA 22350-4000

Department of the Air Force
HQ Air Force Office of Special Investigations
Quantico, VA
Brigadier General, Keith Givens
USAF Commander

Department of Defense
Under Secretary of Defense for Intelligence
Deputy Chief Management Officer

Department of Defense
Military Criminal Investigative Organizations (MCIOs)
        Commanders, Officers, supervisors and employees
Defense Criminal Investigative Organizations (DCIOs)
        Commanders, Officers, supervisors and employees

Office of Inspector General for the DOD

    The Office of Inspector General for the DOD has issued four reports
    investigating and detailing the failures of the Air Force and Department of
    Defense, including negligence, negligent training, and negligent
    supervision. See attached reports:

    Report No. DODIG-2019-030, Inspector General U.S. Department of
    Defense, Dec. 6, 2018, Report of Investigation into the United States Air
    Force's Failure to Submit Devin Kelley's Criminal History Information to

the Federal Bureau of Investigation; see id. at p. 117, "The USAF concurred with this report and its recommendations." https://www.dodig.mil/reports.html/Article/1707300/reportof-investigation-into-the-united-states-air-forces-failure-to-submit-dev/

▢

Report No. DODIG-2018-035, Inspector General U.S. Department of Defense, Dec. 4, 2017, *Evaluation of Fingerprint Card and Final Disposition Report Submissions by Military Service Law Enforcement Organizations*. https://www.dodig.mil/reports.html/Search/DODIG-2018-035/

The DOD concluded that training on the submission of fingerprints and final disposition reports was ineffective and lacking, both for AFOSI Detachment 225 and the 49th Security Forces Squadron, and "there was no valid reason for the USAF's failures". *See* p. 111-112; *see also* p. 96-98 (noting "training did not provide instructions on when or how to submit either the fingerprint card or the final disposition report to the FBI CJIS Division"). Indeed, the DOD "determined that this failure to submit Kelley's fingerprints was part of a systemic problem in AFOSI Detachment 225." See p. 94. Worse, the case agent was actually deployed for seven months during the investigation and reported that he complained he could not do his job, stating, "Boss, I'm burnt out, I'm so burnt out." "Boss, I want to get out. I can't do this anymore."

Report No. DODIG-2015-081, Inspector General U.S. Department of Defense, February 12, 2015, *Evaluation of Department of Defense Compliance with Criminal History Data Reporting Requirements*

Report No. DODIG-2015-011, Inspector General U.S. Department of Defense, October 29, 2014, *Evaluation of the Defense Criminal Investigative Organizations' Defense Incident-Based Reporting System Reporting and Reporting Accuracy*

Air Force 49th Security Forces Squadron and its investigators, Military Law Enforcement Officers (LEOs), or AFSFC Police Services Branch
Confinement Facility

Commanders, Officers, supervisors, employees
The 49th Security Forces Squadron investigated Airman Kelley. The 49th Security Forces squadron investigators and/or Military Law Enforcement Officers (LEOs) had responsibilities to gather fingerprints and report, and thus will have knowledge of their responsibilities, training, and failures. The December 6, 2018, the Inspector General of the DOD issued a 131-page Report titled, *Investigation into the United States Air Force's Failure to Submit Devin Kelley's Criminal History Information to the Federal Bureau of Investigation* concluding that training on the submission of fingerprints

and final disposition reports was ineffective and lacking, both for AFOSI Detachment 225 and the 49th Security Forces Squadron, and "there was no valid reason for the USAF's failures".  *See* p. 111-112; *see also* p. 96-98 (noting "training did not provide instructions on when or how to submit either the fingerprint card or the final disposition report to the FBI CJIS Division"). Air Force Office of Special Investigations

AFSFC Police Services Branch training focused on collection of fingerprints, but failed to address submitting fingerprint cards and final disposition reports to the FBI CJIS.  Their Management Internal Control Toolset (MICT) checklist items are supposed to be monitored and assessed as part of the installation commander's self-inspection program.  Monthly supervisory reviews were "incomplete and ineffective. *See* Report No. DODIG-2019-030 p. 110.

Airman Kelley's Air Force Commander

Kelley's Commander issued a no contact order and has knowledge of Kelley's conduct and training in the Air Force.

Airman Kelley's Air Force Commander

Kelley's Commander issued a no contact order, prepared a confinement package stating that he was "convinced" that Kelley was "dangerous and likely to harm someone if released", and has knowledge of Kelley's conduct and training in the Air Force.

Kelley's former Supervisor in the Air Force

Kelley sent a threatening Facebook message to his former supervisor in the Air Force after his discharge.  She will have knowledge of Kelley's conduct and condition and threats.

Case Agent responsible for Airman Kelley

The Case Agent will have knowledge for the reasons he could not properly report Kelley to the FBI, as detailed by the DOD's report.

Boss of Case Agent responsible for Airman Kelley

The boss of the Case Agent will have knowledge for the reasons the Case Agent could not properly report Kelley to the FBI, as detailed by the DOD's report.

Peak Behavioral Health Services and Xavier Alvarez
5055 McNutt Rd.

Santa Teresa, NM 88008

Peak Behavioral Health Services (PBHS) had a program for military personnel and diagnosed Kelley with various mental and emotional disorders. On information and belief, this is the facility from which Kelley attempted to buy guns to kill his commanding officers, and the facility that Kelley escaped from and fled to El Paso.

According to an El Paso police report, police were informed that Kelley "was a danger to himself and others as he had already been caught sneaking firearms onto Holloman Air Force Base". Police were further advised that Airman Kelley "suffered from mental disorders" and that he "was attempting to carry out death threats" against "his military chain of command." Xavier Alvarez, who worked for Peak Behavioral and who reported Kelley to police for the escape, later confirmed to NBC News that Kelley "verbalized that he wanted to get some kind of retribution to his chain of command." Other patients reported that Kelley was doing something suspicious on computers, and the military found that Kelley was "ordering weapons and tactical gear and magazines to a P.O. Box in San Antonio." Alvarez was quoted as saying, "This kid – he was hollow," and "I could never reach him."

Air Force Security Forces Squadron
Holloman Air Force Base

Commanders, Officers, supervisors, employees
Cmdr. Nathan McLeod-Hughes

Air Force 49th Logistics Readiness Squadron
Commanders, Officers, supervisors, employees

Air Force Detachment 225 and/or Holloman Air Force Base Office of Special Investigations

Commanders, Officers, Special Agents, supervisors, employees
AFOSI Detachment 225 and/or Holloman Air Force Base Office of Special Investigation had responsibilities to gather fingerprints and report, and thus will have knowledge of their responsibilities, training, and failures. The December 6, 2018, the Inspector General of the DOD issued a 131-page Report titled, Investigation into the United States Air Force's Failure to Submit Devin Kelley's Criminal History Information to the Federal Bureau of Investigation concluding that training on the submission of fingerprints and final disposition reports was ineffective and lacking, both for AFOSI Detachment 225 and the 49th Security Forces Squadron, and "there was no valid reason for the USAF's failures". See p. 111-112; see also p. 96-98 (noting "training did not provide instructions on when or

how to submit either the fingerprint card or the final disposition report to the FBI CJIS Division").

Although AFOSI policy required supervisory reviews to include both I2MS and the investigative case file (record copy), the AFOSI Detachment 225 SAIC and Superintendent focused their reviews on the I2MS activities and not on investigative case files" *See* p. 89. "In sum, we concluded that AFOSI Detachment 225 monthly supervisory reviews of Kelley's investigative case file were incomplete and ineffective".

Air Force Article 32 Investigating Officers

Air Force Prosecutors
>Air Force prosecutors gathered evidence and handled the conviction of Airman Kelley, and thus have knowledge of his conduct and disposition.

Naval Consolidated Brig
Miramar, California
>Commanders, Officers, supervisors, employees

General David Goldfein
Air Force Chief of Staff

General Stephen Wilson
Air Force Vice Chief of Staff

Lt. General Gina Grosso
Air Force Deputy Chief of Staff, Manpower, Personnel & Services

Lt. General John Raymond
Air Force Deputy Chief of Staff, Operations

Lt. General John Cooper, Deputy Chief of Staff, Operations

Air Force Holloman Air Force Base Mental Health Clinic
>HAFB Mental Health Clinic had custody of Kelley in the Air Force

Defense Incidence-Based Reporting System
>Commanders, Officers, supervisors, employees

**e.   Regarding experts who may be called to testify at the trial in this case, please refer to Plaintiff's Designation of Experts and any amendments or supplements thereto for additional information regarding the facts known to these witnesses and the bases of their opinions.   These expert designations will be made at the time required by the Court's Scheduling Order. Please also refer to the sworn testimony**

and written reports of these witnesses for further information regarding the facts known to and opinions held by these witnesses.

**f.   Plaintiff cross-identifies as expert witnesses any person named or to be named by Defendant as a person having expert knowledge about any facts surrounding any issues relevant to the incident in question as expert witnesses who Plaintiff reserves the right to call live at the trial of the cause.   Plaintiff reserves the right to call such persons as expert witnesses, whether or not the designation is subsequently withdrawn.   Plaintiff does not have any control over any such witness, nor do they have any superior right to ascertain the subject matter on which any such witness may testify and/or opinions held by any such witness, beyond the information disclosed in deposition testimony and/or by Defendant's discovery responses.   In that regard, Plaintiff refers you to Defendant's discovery documents, deposition testimony, and documents produced by Defendant for the subject matter, facts known, and opinions and impressions of these witnesses.   Plaintiff reserves the right to obtain opinion testimony from any such witness within their area of expertise as related to this case.**

(ii)   A copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment;

Exhibit 1 – Inspector General, US Department of Defense, Evaluation of the Defense Criminal Investigative Organizations' Defense Incident-Based Reporting System Reporting and Reporting Accuracy, October 29, 2014 (Bates #18-949-1 – 18-949-40). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 2 – Inspector General, US Department of Defense, Evaluation of the Defense Compliance with Criminal History Data Reporting Requirements, February 12, 2015 (Bates #18-949-41 – 18-949-76). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 3 – Inspector General, US Department of Defense, Evaluation Fingerprint Card and Final Disposition Report Submissions by Military Service Law Enforcement Organizations, December 4, 2017 (Bates #18-949-77 – 18-949-168). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the

claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 4 – Inspector General, US Department of Defense, Report of Investigation into the United States Air Force's Failure to Submit Devin Kelley's Criminal History Information to the Federal Bureau of Investigation, December 6, 2018 (Bates #18-949-169 – 18-949-306). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 5 –Department of Defense Directive Number 7730.47, October 15, 1996 (Bates #18-949-307 – 18-949-315). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 6 –Department of Defense Manual Number 7730.47-M Volume 1, December 7, 2010 (Bates #18-949-316 – 18-949-398). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 7 –U.S. Department of Defense Press Operations, DoD launches review of Devin P. Kelley criminal record notification, Release No. NR-382-17, November 6, 2017 (Bates #18-949-399). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 8 – National Instant Criminal Background Check System Indices (Bates #18-949-400 – 18-949-401). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 9 – U.S. Air Force article, AF Implements Changes to Improve Law Enforcement Database Reporting, November 28, 2017 (Bates #18-949-402). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 10 – U.S. Air Force tweet November 9, 2017 (Bates #18-949-403). This document is in the possession of the Defendant and also has been identified and produced to

16

Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 11 – Report to the Committee on the Judiciary United States Senate from The Honorable Heather Wilson, Secretary of the Air Force, December 6, 2017 (Bates #18-949-404 – 18-949-405). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 12 – Questions for the Record for Secretary of the United States Air Force Heather Wilson, December 13, 2017 (Bates #18-949-406 – 18-949-410). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 13 – Misdemeanor Crimes of Domestic Violence (Bates #18-949-411). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 14 –Devin Kelley Trial Transcript (Bates #18-949-412 – 18-949-1022). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 15 - El Paso Incident Report, June 7, 2012 (Bates #18-949-1023 – 18-949-1028). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 16 – Devin Kelley Court Martial Order (Bates #18-949-1029 – 18-949-1034). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 17 – Statement of Danielle Kelley (Bates #18-949-1035). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought

by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 18 – Devin Kelley Autopsy Report (Bates #18-949-1036 – 18-949-1037). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 19 – Life Expectancy Tables (Bates #18-949-1038 – 18-949-1101). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 20 – Wilson County EMS medical records (Bates #DBRADEN-19-691-000001 - DBRADEN-19-691-000009)

Exhibit 21 – Wilson County EMS billing records (Bates #DBRADEN-19-691-000010 - DBRADEN-19-691-000012)

Exhibit 22 – Universal Health System medical records (Bates #DBRADEN-19-691-000013 - DBRADEN-19-691-000808)

Exhibit 23 – Universal Health System billing records (Bates #DBRADEN-19-691-000809- DBRADEN-19-691-000841)

Exhibit 24 – Connally Memorial Medical Center medical records (Bates #DBRADEN-19-691-000842 - DBRADEN-19-691-000912)

Exhibit 25 – Connally Memorial Medical Center updated medical records (Bates #DBRADEN-19-691-000913 - DBRADEN-19-691-001040)

Exhibit 26 – Connally Memorial Medical Center billing records (Bates #DBRADEN-19-691-001041 - DBRADEN-19-691-001045)

Exhibit 27 – Connally Memorial Medical Center updated billing records (Bates #DBRADEN-19-691-001046 - DBRADEN-19-691-001059)

Exhibit 28 – Connally Memorial Medical Center radiology records (Bates #DBRADEN-19-691-001060 - DBRADEN-19-691-001063)

Exhibit 29 – Comprehensive Home Health medical records (Bates #DBRADEN-19-691-001064 - DBRADEN-19-691-001236)

Exhibit 30 – Comprehensive Home Health billing records (Bates #DBRADEN-19-691-001237 - DBRADEN-19-691-001239)

Exhibit 31 – Baptist M&S Imaging medical records (Bates #DBRADEN-19-691-001240 - DBRADEN-19-691-001264)

Exhibit 32 – Baptist M&S Imaging billing records (Bates #DBRADEN-19-691-001265 - DBRADEN-19-691-001271)

Exhibit 33 – Design Home Care medical records (Bates #DBRADEN-19-691-001272 - DBRADEN-19-691-001287)

Exhibit 34 – Design Home Care billing records (Bates #DBRADEN-19-691-001288 - DBRADEN-19-691-001292)

Exhibit 35 – Floresville Premiere Primary Care medical records (Bates #DBRADEN-19-691-001293 - DBRADEN-19-691-001316)

Exhibit 36 – Floresville Premiere Primary Care billing records (Bates #DBRADEN-19-691-001317 - DBRADEN-19-691-001329)

Exhibit 37 – Magenta Health medical records (Bates #DBRADEN-19-691-00130 - DBRADEN-19-691-001372)

Exhibit 38 – Magenta Health billing records (Bates #DBRADEN-19-691-001373 - DBRADEN-19-691-001377)

Exhibit 39 – South Texas Spinal Clinic medical records (Bates #DBRADEN-19-691-001378 - DBRADEN-19-691-001477)

Exhibit 40 – South Texas Spinal Clinic billing records (Bates #DBRADEN-19-691-001478 - DBRADEN-19-691-001484)

Exhibit 41 – Texas Neurosurgical Spine medical records (Bates #DBRADEN-19-691-001485 - DBRADEN-19-691-001496)

Exhibit 42 – Texas Neurosurgical Spine billing records (Bates #DBRADEN-19-691-001497 - DBRADEN-19-691-001498)

Exhibit 43 – Tri City Pain Associates medical records (Bates #DBRADEN-19-691-001499 - DBRADEN-19-691-001551)

Exhibit 44 – Tri City Pain Associates billing records (Bates #DBRADEN-19-691-001552 - DBRADEN-19-691-001558)

Exhibit 45 – 2012 Tax Return (Bates #DBRADEN-19-691-001559 - DBRADEN-19-691-001572)

Exhibit 46 – 2013 Tax Return (Bates #DBRADEN-19-691-001573 - DBRADEN-19-691-001588)

Exhibit 47 – 2014 Tax Return (Bates #DBRADEN-19-691-001589 - DBRADEN-19-691-001596)

Exhibit 48 – 2015 Tax Return (Bates #DBRADEN-19-691-001597 - DBRADEN-19-691-001604)

Exhibit 49 – 2016 Tax Return (Bates #DBRADEN-19-691-001605 - DBRADEN-19-691-001612)

Exhibit 50 – 2017 Tax Return (Bates #DBRADEN-19-691-001613 - DBRADEN-19-691-001624)

Exhibit 51 – Social Security Earnings Summary (Bates #DBRADEN-19-691-001625 - DBRADEN-19-691-001626)

In addition, Plaintiff is in the possession of the materials maintained by the Texas Rangers related to the incident.  In obtaining these materials, Plaintiff entered into an agreement with the Texas Attorney General regarding their release.  As such, Plaintiff will discuss the terms of this agreement with Defendant prior to releasing these materials.

(iii)   A computation of each category of damages claimed by the disclosing party— who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered;

Discovery is still in its early stages and it is premature for Plaintiff to respond to this disclosure; however, please see Plaintiff's Original Complaint(s) and any and all amendments thereto for the categories of damages sought by Plaintiff.  Please refer also to Plaintiff's administrative claims filed with the Government for the maximum amount of damages sought by Plaintiff in this case.  Please refer to the sworn deposition testimony in this case. Please also refer to Plaintiff's Designation of Experts and any amendments or supplements thereto for additional information regarding the facts known to these witnesses and the bases of their opinions.  These expert designations will be made at the time required by the Court's Scheduling Order. Please also refer to the sworn testimony and written reports of these witnesses for further information regarding the facts known to and opinions held by these witnesses.

(iv)    For inspection and copying as under Rule 34, any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment.

Not applicable.

Respectfully Submitted,

/s/ *Justin Demerath*

**JUSTIN DEMERATH**
jdemerath@808west.com
Texas State Bar No. 24034415
**DAVID CAMPBELL**
dcampbell@808west.com
Texas State Bar No. 24057033
**O'HANLON, DEMERATH & CASTILLO, PC**
808 West Avenue
Austin, TX 78701
Telephone: (512) 494-9949
Facsimile: (512) 494-9919

Attorneys for Plaintiff Deborah Braden

**Certificate of Service**

I certify that the foregoing was served on July 12, 2019, via email service and certified mail, return receipt requested, on the following counsel for the United States.

/s/ *Justin Demerath*
**JUSTIN DEMERATH**

PAUL DAVID STERN
Trial Attorney, Torts Branch
United States Dept. of Justice
Civil Division
United States Department of Justice
P.O. Box 888
Benjamin Franklin Station
Washington, D.C. 20004
T: (202) 616-2197
Paul.David.Stern@usdoj.gov

STEPHEN E. HANDLER
Senior Trial Counsel, Torts Branch
United States Dept. of Justice
Civil Division
United States Department of Justice
P.O. Box 888
Benjamin Franklin Station
Washington, D.C. 20004
T: (202) 616-2197
Stephen.Handler@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| Joe Holcombe, *et al.*, <br>    Plaintiffs, <br><br> v. <br><br> United States of America, <br>    Defendant. | Civil Action No. 5:18-cv-555-XR <br><br> *Consolidated with*: <br> Nos. 5:18-cv-712-XR; 5:18-cv-881-XR; <br> 5:18-cv-944-XR; 5:18-cv-949-XR; <br> 5:18-cv-951-XR; 5:18-cv-1151-XR; <br> 5:19-cv-184-XR; 5:19-cv-289; <br> 5:19-cv-506 XR; 5:19-cv-678; <br> 5:19-cv-691-XR; 5:19-cv-705; <br> 5:19-cv-706-XR; 5:19-cv-715-XR |

## PLAINTIFF BENJAMIN CORRIGAN'S, INDEPENDENT EXECUTOR OF THE ESTATE OF ROBERT MICHAEL CORRIGAN, INITIAL DISCLOSURES PURSUANT TO RULE 26(A)(1)

(i)   The name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment;

   **a.  Plaintiff hereby designates as persons with knowledge the health care providers referenced in the related health care records in this case, including physicians, technicians, nurses, radiologists, physician's assistants, physical therapists, clinics, hospitals, pharmacies, and their agents, representatives, and employees.  While these health care providers are not within the control of Plaintiff and have not been retained by Plaintiff as expert witnesses, Plaintiff reserves the right to elicit opinion testimony from any such health care provider, including expert testimony regarding liability, causation, and damages from those treating healthcare providers relating to the medical treatment provided to the Plaintiff. To the extent it is necessary to call live at the trial or by deposition in this cause any agents, representatives, employees and/or custodian of records for any of the following health care providers, Plaintiff identifies any such custodian as a person who may have expert knowledge regarding issues related to the incident in question to include personal knowledge of the records and concerning the necessity of services rendered and referenced in the records and concerning the reasonableness of the medical bills charged and referenced in the records of the following health care providers.  For the**

1

**mental impressions held by and the opinions of and facts known by any of the following witnesses, please refer to the related health care records of the Plaintiff.**

| NAME | ADDRESS/TELEPHONE |
|---|---|
| Agents, servants and employees, including but not limited to:<br>James A. Feig, MD<br>Jennifer J. Rulon, MD<br>Rajesh P. Kannan, M.D.<br>Randall E. Frost, M.D.<br>D. Kimberley Molina, M.D.<br>Veronica Hargrove, Ph.D.<br>**Bexar County Medical Examiner** | 7337 Louis Pasteur<br>San Antonio, Tx 78229-4565<br>(210) 335-4000 |

**b. Plaintiff identifies himself as persons with knowledge of relevant facts pertaining to the incident in question:**

| NAME | ADDRESS/TELEPHONE |
|---|---|
| **PARTIES** | |
| Benjamin Corrigan, Independent Executor of the Estate of Robert Michael Corrigan<br>c/o Justin B. Demerath<br>O'HANLON, DEMERATH & CASTILLO, PC | 808 West Avenue<br>Austin, Texas 78701<br>(512) 494-9949 |

**c. Plaintiff identifies the following family members, friends, and other persons as persons with knowledge of relevant facts:**

Academy Sports + Outdoors in San Antonio
> Kelley bought a Ruger 5.56 mm assault rifle from Academy Sports + Outdoors in San Antonio after clearing a background check of the NICS. Store personnel will have knowledge of the transaction.

El Paso Police
Headquarters:
9ll N. Raynor
El Paso, TX 79903
(915) 212-4000
> The El Paso police apprehended Kelley after he escaped. See Exhibit 15.

First Baptist Church of Sutherland Springs, Texas
Frank Pomeroy, Pastor
First Baptist Church
216 4th Street

Sutherland Springs, Texas 78161
>This is the church where the shooting occurred. The pastor was not there that morning, but on information and belief lost his daughter and many beloved friends in the massacre. He will have knowledge of their community and relationships and the impact of the shooting.

Danielle Shield Kelley
>Married to Airman Devin Kelley at the time of the church shooting.

Tessa Kelley (nee' Loge)
>Married to Airman Devin Kelley while he was in the Air Force and reported him for abuse to herself and infant child.

Johnnie Langendorff
Stephen Willeford
>Stephen Willeford confronted Kelley and chased him away from the church. Johnnie Langendorff stopped his vehicle to pick up Mr. Willeford and give chase.

Steve Moore
Wilson County Sheriff's Department
>Investigator

Harold Schott, Justice of the Peace Pct. #3
Wilson County

Terry Snyder
Texas Ranger Division
Texas Department of Public Safety
6100 Guadalupe Street, Building E
Austin, TX 78752
>Investigator and Custodian of Records

Sunland Park Police Department
1000 McNutt Rd
Sunland Park, NM 88063

Preston Corrigan
>Preston Corrigan is the son of Robert Michael Corrigan. He has knowledge of the death of his father, Robert Michael Corrigan, as well as his own grief, trauma and other elements of damages and that of his parents and family.

**d.  Plaintiff names the Defendant herein, as well as its agents, representatives, and/or employees or former agents, representatives, or employees, as persons with knowledge of relevant facts. Plaintiff further names the Defendant, as well as its agents, representatives, and/or employees or former agents, representatives, or**

**employees, as persons from whom expert testimony may be elicited regarding liability, causation and/or damages, although Plaintiff does not necessarily vouch for all the opinion testimony of such persons. Plaintiff refers you to the Department of Defense Inspector General reports from 2018, 2017, 2014, and 2015; Defendant's discovery documents; deposition testimony; documents produced by Defendant; and related medical records for the subject matter, facts known, and opinions and impressions of these witnesses.**

Air Force personnel
Air Force personnel are expected to have knowledge of Kelley's conduct in the Air Force and mental problems, including but not limited to his attempt to bring weapons onto the base to kill officers.

Additional Air Force personnel are provided below:
Air Force spokesperson, Ann Stefanek. On November 28, 2017, an Air Force spokesperson, Ann Stefanek, admitted that the failure to follow Pentagon guidelines to report Kelley's crimes to the FBI was "not an isolated incident and similar reporting lapses occurred at other locations."

Heather Wilson
Secretary of the Air Force

Deborah Lee James
Secretary of the Air Force

Col. Kirk Stabler
Air Force Commander
Headquarters Air Force Office of Special Investigations
Quantico, Virginia

Brig. General Andrea Tullos
Air Force Director
Director of Security Forces
DCS/Logistics, Engineering & Force Protection
Department of the Air Force
Washington, D.C.

Director of Special Investigations
Department of the Air Force
Washington, D.C.

HQ Air Force Office of Special Investigations
Department of the Air Force
Superintendent, IT Integrations HQ AFOSI
Quantico, Virginia

Department of the Air Force
HQ USAF
Washington, D.C.

Deputy Director of Security Forces
DCS/Logistics, Installations & Missions Support

Defense Human Resources Activity
Headquarters
Pamela Mitchell, Director
4800 Mark Center Drive, Suite 06J25-01
Alexandria, VA 22350-4000

Department of the Air Force
HQ Air Force Office of Special Investigations
Quantico, VA
Brigadier General, Keith Givens
USAF Commander

Department of Defense
Under Secretary of Defense for Intelligence
Deputy Chief Management Officer

Department of Defense
Military Criminal Investigative Organizations (MCIOs)
        Commanders, Officers, supervisors and employees
Defense Criminal Investigative Organizations (DCIOs)
        Commanders, Officers, supervisors and employees

Office of Inspector General for the DOD

The Office of Inspector General for the DOD has issued four reports investigating and detailing the failures of the Air Force and Department of Defense, including negligence, negligent training, and negligent supervision. See attached reports:

Report No. DODIG-2019-030, Inspector General U.S. Department of Defense, Dec. 6, 2018, Report of Investigation into the United States Air Force's Failure to Submit Devin Kelley's Criminal History Information to the Federal Bureau of Investigation; see id. at p. 117, "The USAF concurred with this report and its recommendations." https://www.dodig.mil/reports.html/Article/1707300/reportof-investigation-into-the-united-states-air-forces-failure-to-submit-dev/

Report No. DODIG-2018-035, Inspector General U.S. Department of Defense, Dec. 4, 2017, *Evaluation of Fingerprint Card and Final Disposition Report Submissions by Military Service Law Enforcement*

*Organizations.*   https://www.dodig.mil/reports.html/Search/DODIG-2018-035/

The DOD concluded that training on the submission of fingerprints and final disposition reports was ineffective and lacking, both for AFOSI Detachment 225 and the 49th Security Forces Squadron, and "there was no valid reason for the USAF's failures". *See* p. 111-112; *see also* p. 96-98 (noting "training did not provide instructions on when or how to submit either the fingerprint card or the final disposition report to the FBI CJIS Division"). Indeed, the DOD "determined that this failure to submit Kelley's fingerprints was part of a systemic problem in AFOSI Detachment 225." See p. 94. Worse, the case agent was actually deployed for seven months during the investigation and reported that he complained he could not do his job, stating, "Boss, I'm burnt out, I'm so burnt out." "Boss, I want to get out. I can't do this anymore."

Report No. DODIG-2015-081, Inspector General U.S. Department of Defense, February 12, 2015, *Evaluation of Department of Defense Compliance with Criminal History Data Reporting Requirements*

Report No. DODIG-2015-011, Inspector General U.S. Department of Defense, October 29, 2014, *Evaluation of the Defense Criminal Investigative Organizations' Defense Incident-Based Reporting System Reporting and Reporting Accuracy*

Air Force 49th Security Forces Squadron and its investigators, Military Law Enforcement Officers (LEOs), or AFSFC Police Services Branch Confinement Facility

Commanders, Officers, supervisors, employees
The 49th Security Forces Squadron investigated Airman Kelley. The 49th Security Forces squadron investigators and/or Military Law Enforcement Officers (LEOs) had responsibilities to gather fingerprints and report, and thus will have knowledge of their responsibilities, training, and failures. The December 6, 2018, the Inspector General of the DOD issued a 131-page Report titled, *Investigation into the United States Air Force's Failure to Submit Devin Kelley's Criminal History Information to the Federal Bureau of Investigation* concluding that training on the submission of fingerprints and final disposition reports was ineffective and lacking, both for AFOSI Detachment 225 and the 49th Security Forces Squadron, and "there was no valid reason for the USAF's failures". *See* p. 111-112; *see also* p. 96-98 (noting "training did not provide instructions on when or how to submit either the fingerprint card or the final disposition report to the FBI CJIS Division"). Air Force Office of Special Investigations

AFSFC Police Services Branch training focused on collection of fingerprints, but failed to address submitting fingerprint cards and final

disposition reports to the FBI CJIS.  Their Management Internal Control Toolset (MICT) checklist items are supposed to be monitored and assessed as part of the installation commander's self-inspection program.  Monthly supervisory reviews were "incomplete and ineffective. *See* Report No. DODIG-2019-030 p. 110.

Airman Kelley's Air Force Commander

Kelley's Commander issued a no contact order and has knowledge of Kelley's conduct and training in the Air Force.

Airman Kelley's Air Force Commander

Kelley's Commander issued a no contact order, prepared a confinement package stating that he was "convinced" that Kelley was "dangerous and likely to harm someone if released", and has knowledge of Kelley's conduct and training in the Air Force.

Kelley's former Supervisor in the Air Force

Kelley sent a threatening Facebook message to his former supervisor in the Air Force after his discharge.  She will have knowledge of Kelley's conduct and condition and threats.

Case Agent responsible for Airman Kelley

The Case Agent will have knowledge for the reasons he could not properly report Kelley to the FBI, as detailed by the DOD's report.

Boss of Case Agent responsible for Airman Kelley

The boss of the Case Agent will have knowledge for the reasons the Case Agent could not properly report Kelley to the FBI, as detailed by the DOD's report.

Peak Behavioral Health Services and Xavier Alvarez
5055 McNutt Rd.
Santa Teresa, NM 88008

Peak Behavioral Health Services (PBHS) had a program for military personnel and diagnosed Kelley with various mental and emotional disorders. On information and belief, this is the facility from which Kelley attempted to buy guns to kill his commanding officers, and the facility that Kelley escaped from and fled to El Paso.

According to an El Paso police report, police were informed that Kelley "was a danger to himself and others as he had already been caught sneaking firearms onto Holloman Air Force Base". Police were further advised that Airman Kelley "suffered from mental disorders" and that he "was attempting to carry out death threats" against "his military chain of command." Xavier Alvarez, who worked for Peak Behavioral and who reported Kelley to police for the escape, later confirmed to NBC News that Kelley "verbalized that he wanted to get some kind of retribution to his chain of command." Other patients reported that Kelley was doing something suspicious on computers, and the military found that Kelley was "ordering weapons and tactical gear and magazines to a P.O. Box in San Antonio." Alvarez was quoted as saying, "This kid – he was hollow," and "I could never reach him."

Air Force Security Forces Squadron
Holloman Air Force Base

Commanders, Officers, supervisors, employees
Cmdr. Nathan McLeod-Hughes

Air Force 49th Logistics Readiness Squadron
Commanders, Officers, supervisors, employees

Air Force Detachment 225 and/or Holloman Air Force Base Office of Special Investigations

Commanders, Officers, Special Agents, supervisors, employees
AFOSI Detachment 225 and/or Holloman Air Force Base Office of Special Investigation had responsibilities to gather fingerprints and report, and thus will have knowledge of their responsibilities, training, and failures. The December 6, 2018, the Inspector General of the DOD issued a 13l-page Report titled, Investigation into the United States Air Force's Failure to Submit Devin Kelley's Criminal History Information to the Federal Bureau of Investigation concluding that training on the submission of fingerprints and final disposition reports was ineffective and lacking, both for AFOSI Detachment 225 and the 49th Security Forces Squadron, and "there was no valid reason for the USAF's failures". See p. 1l1-l12; see also p. 96-98 (noting "training did not provide instructions on when or how to submit either the fingerprint card or the final disposition report to the FBI CJIS Division").

Although AFOSI policy required supervisory reviews to include both I2MS and the investigative case file (record copy), the AFOSI Detachment 225 SAIC and Superintendent focused their reviews on the I2MS activities and not on investigative case files" *See* p. 89. "In sum, we concluded that

      AFOSI Detachment 225 monthly supervisory reviews of Kelley's
      investigative case file were incomplete and ineffective".

Air Force Article 32 Investigating Officers

Air Force Prosecutors
      Air Force prosecutors gathered evidence and handled the conviction of
      Airman Kelley, and thus have knowledge of his conduct and disposition.

Naval Consolidated Brig
Miramar, California
      Commanders, Officers, supervisors, employees

General David Goldfein
Air Force Chief of Staff

General Stephen Wilson
Air Force Vice Chief of Staff

Lt. General Gina Grosso
Air Force Deputy Chief of Staff, Manpower, Personnel & Services

Lt. General John Raymond
Air Force Deputy Chief of Staff, Operations

Lt. General John Cooper, Deputy Chief of Staff, Operations

Air Force Holloman Air Force Base Mental Health Clinic
      HAFB Mental Health Clinic had custody of Kelley in the Air Force

Defense Incidence-Based Reporting System
      Commanders, Officers, supervisors, employees

    **e.   Regarding experts who may be called to testify at the trial in this case, please refer to Plaintiff's Designation of Experts and any amendments or supplements thereto for additional information regarding the facts known to these witnesses and the bases of their opinions.   These expert designations will be made at the time required by the Court's Scheduling Order. Please also refer to the sworn testimony and written reports of these witnesses for further information regarding the facts known to and opinions held by these witnesses.**

    **f.   Plaintiff cross-identifies as expert witnesses any person named or to be named by Defendant as a person having expert knowledge about any facts surrounding any issues relevant to the incident in question as expert witnesses who Plaintiff reserves the right to call live at the trial of the cause.  Plaintiff reserves the right to call such persons as expert witnesses, whether or not the designation is subsequently**

**withdrawn.  Plaintiff does not have any control over any such witness, nor do they have any superior right to ascertain the subject matter on which any such witness may testify and/or opinions held by any such witness, beyond the information disclosed in deposition testimony and/or by Defendant's discovery responses.  In that regard, Plaintiff refers you to Defendant's discovery documents, deposition testimony, and documents produced by Defendant for the subject matter, facts known, and opinions and impressions of these witnesses.  Plaintiff reserves the right to obtain opinion testimony from any such witness within their area of expertise as related to this case.**

(ii)     A copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment;

Exhibit 1 – Inspector General, US Department of Defense, Evaluation of the Defense Criminal Investigative Organizations' Defense Incident-Based Reporting System Reporting and Reporting Accuracy, October 29, 2014 (Bates #18-949-1 – 18-949-40). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 2 – Inspector General, US Department of Defense, Evaluation of the Defense Compliance with Criminal History Data Reporting Requirements, February 12, 2015 (Bates #18-949-41 – 18-949-76). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 3 – Inspector General, US Department of Defense, Evaluation Fingerprint Card and Final Disposition Report Submissions by Military Service Law Enforcement Organizations, December 4, 2017 (Bates #18-949-77 – 18-949-168). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 4 – Inspector General, US Department of Defense, Report of Investigation into the United States Air Force's Failure to Submit Devin Kelley's Criminal History Information to the Federal Bureau of Investigation, December 6, 2018 (Bates #18-949-169 – 18-949-306). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs,

Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 5 –Department of Defense Directive Number 7730.47, October 15, 1996 (Bates #18-949-307 – 18-949-315). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 6 –Department of Defense Manual Number 7730.47-M Volume 1, December 7, 2010 (Bates #18-949-316 – 18-949-398). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 7 –U.S. Department of Defense Press Operations, DoD launches review of Devin P. Kelley criminal record notification, Release No. NR-382-17, November 6, 2017 (Bates #18-949-399). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 8 – National Instant Criminal Background Check System Indices (Bates #18-949-400 – 18-949-401). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 9 – U.S. Air Force article, AF Implements Changes to Improve Law Enforcement Database Reporting, November 28, 2017 (Bates #18-949-402). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 10 – U.S. Air Force tweet November 9, 2017 (Bates #18-949-403). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 11 – Report to the Committee on the Judiciary United States Senate from The Honorable Heather Wilson, Secretary of the Air Force, December 6, 2017 (Bates #18-949-404 – 18-949-405). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for

Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 12 – Questions for the Record for Secretary of the United States Air Force Heather Wilson, December 13, 2017 (Bates #18-949-406 – 18-949-410). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 13 – Misdemeanor Crimes of Domestic Violence (Bates #18-949-411). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 14 –Devin Kelley Trial Transcript (Bates #18-949-412 – 18-949-1022). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 15 - El Paso Incident Report, June 7, 2012 (Bates #18-949-1023 – 18-949-1028). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 16 – Devin Kelley Court Martial Order (Bates #18-949-1029 – 18-949-1034). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 17 – Statement of Danielle Kelley (Bates #18-949-1035). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 18 – Devin Kelley Autopsy Report (Bates #18-949-1036 – 18-949-1037). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 19 – Life Expectancy Tables (Bates #18-949-1038 – 18-949-1101). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 20 – Death Certificate (Bates #RCORRIGAN-19-691-000001)

Exhibit 21 – Autopsy (Bates #RCORRIGAN-19-691-000002 - RCORRIGAN-19-691-000011)

Exhibit 22 – Letters of Independent Administration (Bates #RCORRIGAN-19-691-000012)

Exhibit 23 – 2012 Tax Return (Bates #RCORRIGAN-19-691-000013 - RCORRIGAN-19-691-000029)

Exhibit 24 – 2013 Tax Return (Bates #RCORRIGAN-19-691-000030 - RCORRIGAN-19-691-000034)

Exhibit 25 – 2014 Tax Return (Bates #RCORRIGAN-19-691-000035 - RCORRIGAN-19-691-000051)

Exhibit 26 – 2015 Tax Return (Bates #RCORRIGAN-19-691-000052 - RCORRIGAN-19-691-000071)

Exhibit 27 – 2016 Tax Return (Bates #RCORRIGAN-19-691-000072 - RCORRIGAN-19-691-000093)

Exhibit 28 – Social Security Earnings Summary of Robert Corrigan (Bates #RCORRIGAN-19-691-000094 - RCORRIGAN-19-691-000095)

Exhibit 29 – U.S. Air Force Personnel Records of Robert Corrigan (Bates #RCORRIGAN-19-691-000096 - RCORRIGAN-19-691-000296)

Exhibit 30 – Wellmed Employment Records of Robert Corrigan (Bates #RCORRIGAN-19-691-000297 - RCORRIGAN-19-691-000371)

In addition, Plaintiff is in the possession of the materials maintained by the Texas Rangers related to the incident.  In obtaining these materials, Plaintiff entered into an agreement with the Texas Attorney General regarding their release.  As such, Plaintiff will discuss the terms of this agreement with Defendant prior to releasing these materials.

Further, Plaintiff is in the possession of the full Autopsy containing photographs taken by the Medical Examiner. In obtaining these materials, Plaintiff entered into an agreement with the

Wilson County Attorney regarding their release. As such, Plaintiff will discuss the terms of this agreement with Defendant prior to releasing these materials.

(iii)   A computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered;

Discovery is still in its early stages and it is premature for Plaintiff to respond to this disclosure; however, please see Plaintiff's Original Complaint(s) and any and all amendments thereto for the categories of damages sought by Plaintiff.  Please refer also to Plaintiff's administrative claims filed with the Government for the maximum amount of damages sought by Plaintiff in this case.  Please refer to the sworn deposition testimony in this case. Please also refer to Plaintiff's Designation of Experts and any amendments or supplements thereto for additional information regarding the facts known to these witnesses and the bases of their opinions.  These expert designations will be made at the time required by the Court's Scheduling Order. Please also refer to the sworn testimony and written reports of these witnesses for further information regarding the facts known to and opinions held by these witnesses.

(iv)   For inspection and copying as under Rule 34, any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment.

Not applicable.

Respectfully Submitted,

/s/ *Justin Demerath*
**JUSTIN DEMERATH**
jdemerath@808west.com
Texas State Bar No. 24034415
**DAVID CAMPBELL**
dcampbell@808west.com
Texas State Bar No. 24057033
**O'HANLON, DEMERATH & CASTILLO, PC**
808 West Avenue
Austin, TX 78701
Telephone: (512) 494-9949
Facsimile: (512) 494-9919

Attorneys for Plaintiff Benjamin Corrigan, Independent Executor of the Estate of Robert Michael Corrigan

15

**Certificate of Service**

I certify that the foregoing was served on July 12, 2019, via email service and certified mail, return receipt requested, on the following counsel for the United States.

/s/ *Justin Demerath*
**JUSTIN DEMERATH**

PAUL DAVID STERN
Trial Attorney, Torts Branch
United States Dept. of Justice
Civil Division
United States Department of Justice
P.O. Box 888
Benjamin Franklin Station
Washington, D.C. 20004
T: (202) 616-2197
Paul.David.Stern@usdoj.gov

STEPHEN E. HANDLER
Senior Trial Counsel, Torts Branch
United States Dept. of Justice
Civil Division
United States Department of Justice
P.O. Box 888
Benjamin Franklin Station
Washington, D.C. 20004
T: (202) 616-2197
Stephen.Handler@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| Joe Holcombe, *et al.*,<br>    Plaintiffs,<br><br>v.<br><br>United States of America,<br>    Defendant. | Civil Action No. 5:18-cv-555-XR<br><br>*Consolidated with*:<br> Nos. 5:18-cv-712-XR; 5:18-cv-881-XR;<br> 5:18-cv-944-XR; 5:18-cv-949-XR;<br> 5:18-cv-951-XR; 5:18-cv-1151-XR;<br> 5:19-cv-184-XR; 5:19-cv-289;<br> 5:19-cv-506 XR; 5:19-cv-678;<br> 5:19-cv-691-XR; 5:19-cv-705;<br> 5:19-cv-706-XR; 5:19-cv-715-XR |

## PLAINTIFF BENJAMIN CORRIGAN'S, INDEPENDENT EXECUTOR OF THE ESTATE OF SHANI CORRIGAN, INITIAL DISCLOSURES PURSUANT TO RULE 26(A)(1)

(i)   The name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment;

**a. Plaintiff hereby designates as persons with knowledge the health care providers referenced in the related health care records in this case, including physicians, technicians, nurses, radiologists, physician's assistants, physical therapists, clinics, hospitals, pharmacies, and their agents, representatives, and employees. While these health care providers are not within the control of Plaintiff and have not been retained by Plaintiff as expert witnesses, Plaintiff reserves the right to elicit opinion testimony from any such health care provider, including expert testimony regarding liability, causation, and damages from those treating healthcare providers relating to the medical treatment provided to the Plaintiff. To the extent it is necessary to call live at the trial or by deposition in this cause any agents, representatives, employees and/or custodian of records for any of the following health care providers, Plaintiff identifies any such custodian as a person who may have expert knowledge regarding issues related to the incident in question to include personal knowledge of the records and concerning the necessity of services rendered and referenced in the records and concerning the reasonableness of the medical bills charged and referenced in the records of the following health care providers. For the**

1

mental impressions held by and the opinions of and facts known by any of the following witnesses, please refer to the related health care records of the Plaintiff.

| NAME | ADDRESS/TELEPHONE |
|---|---|
| Agents, servants and employees, including but not limited to: James A. Feig, MD Jennifer J. Rulon, MD Rajesh P. Kannan, M.D. Randall E. Frost, M.D. D. Kimberley Molina, M.D. Veronica Hargrove, Ph.D. **Bexar County Medical Examiner** | 7337 Louis Pasteur San Antonio, Tx 78229-4565 (210) 335-4000 |

**b. Plaintiff identifies himself as persons with knowledge of relevant facts pertaining to the incident in question:**

| NAME | ADDRESS/TELEPHONE |
|---|---|
| PARTIES | |
| Benjamin Corrigan, Independent Executor of the Estate of Shani Corrigan c/o Justin B. Demerath O'HANLON, DEMERATH & CASTILLO, PC | 808 West Avenue Austin, Texas 78701 (512) 494-9949 |

**c. Plaintiff identifies the following family members, friends, and other persons as persons with knowledge of relevant facts:**

Academy Sports + Outdoors in San Antonio
　　　Kelley bought a Ruger 5.56 mm assault rifle from Academy Sports + Outdoors in San Antonio after clearing a background check of the NICS. Store personnel will have knowledge of the transaction.

El Paso Police
Headquarters:
911 N. Raynor
El Paso, TX 79903
(915) 212-4000
　　　The El Paso police apprehended Kelley after he escaped. See Exhibit 15.

First Baptist Church of Sutherland Springs, Texas
Frank Pomeroy, Pastor
First Baptist Church
216 4th Street

Sutherland Springs, Texas 78161
> This is the church where the shooting occurred. The pastor was not there that morning, but on information and belief lost his daughter and many beloved friends in the massacre. He will have knowledge of their community and relationships and the impact of the shooting.

Danielle Shield Kelley
> Married to Airman Devin Kelley at the time of the church shooting.

Tessa Kelley (nee' Loge)
> Married to Airman Devin Kelley while he was in the Air Force and reported him for abuse to herself and infant child.

Johnnie Langendorff
Stephen Willeford
> Stephen Willeford confronted Kelley and chased him away from the church. Johnnie Langendorff stopped his vehicle to pick up Mr. Willeford and give chase.

Steve Moore
Wilson County Sheriff's Department
> Investigator

Harold Schott, Justice of the Peace Pct. #3
Wilson County

Terry Snyder
Texas Ranger Division
Texas Department of Public Safety
6100 Guadalupe Street, Building E
Austin, TX 78752
> Investigator and Custodian of Records

Sunland Park Police Department
1000 McNutt Rd
Sunland Park, NM 88063

Preston Corrigan
> Preston Corrigan is the son of Shani Corrigan. He has knowledge of the death of his mother, Shani Corrigan, as well as his own grief, trauma and other elements of damages and that of his parents and family.

**d.  Plaintiff names the Defendant herein, as well as its agents, representatives, and/or employees or former agents, representatives, or employees, as persons with knowledge of relevant facts. Plaintiff further names the Defendant, as well as its agents, representatives, and/or employees or former agents, representatives, or**

3

**employees, as persons from whom expert testimony may be elicited regarding liability, causation and/or damages, although Plaintiff does not necessarily vouch for all the opinion testimony of such persons. Plaintiff refers you to the Department of Defense Inspector General reports from 2018, 2017, 2014, and 2015; Defendant's discovery documents; deposition testimony; documents produced by Defendant; and related medical records for the subject matter, facts known, and opinions and impressions of these witnesses.**

Air Force personnel
> Air Force personnel are expected to have knowledge of Kelley's conduct in the Air Force and mental problems, including but not limited to his attempt to bring weapons onto the base to kill officers.

Additional Air Force personnel are provided below:
> Air Force spokesperson, Ann Stefanek. On November 28, 2017, an Air Force spokesperson, Ann Stefanek, admitted that the failure to follow Pentagon guidelines to report Kelley's crimes to the FBI was "not an isolated incident and similar reporting lapses occurred at other locations."

Heather Wilson
Secretary of the Air Force

Deborah Lee James
Secretary of the Air Force

Col. Kirk Stabler
Air Force Commander
Headquarters Air Force Office of Special Investigations
Quantico, Virginia

Brig. General Andrea Tullos
Air Force Director
Director of Security Forces
DCS/Logistics, Engineering & Force Protection
Department of the Air Force
Washington, D.C.

Director of Special Investigations
Department of the Air Force
Washington, D.C.

HQ Air Force Office of Special Investigations
Department of the Air Force
Superintendent, IT Integrations HQ AFOSI
Quantico, Virginia

Department of the Air Force
HQ USAF
Washington, D.C.

Deputy Director of Security Forces
DCS/Logistics, Installations & Missions Support

Defense Human Resources Activity
Headquarters
Pamela Mitchell, Director
4800 Mark Center Drive, Suite 06J25-01
Alexandria, VA 22350-4000

Department of the Air Force
HQ Air Force Office of Special Investigations
Quantico, VA
Brigadier General, Keith Givens
USAF Commander

Department of Defense
Under Secretary of Defense for Intelligence
Deputy Chief Management Officer

Department of Defense
Military Criminal Investigative Organizations (MCIOs)
        Commanders, Officers, supervisors and employees
Defense Criminal Investigative Organizations (DCIOs)
        Commanders, Officers, supervisors and employees

Office of Inspector General for the DOD

The Office of Inspector General for the DOD has issued four reports investigating and detailing the failures of the Air Force and Department of Defense, including negligence, negligent training, and negligent supervision. See attached reports:

Report No. DODIG-2019-030, Inspector General U.S. Department of Defense, Dec. 6, 2018, Report of Investigation into the United States Air Force's Failure to Submit Devin Kelley's Criminal History Information to the Federal Bureau of Investigation; see id. at p. l17, "The USAF concurred with this report and its recommendations." https://www.dodig.mil/reports.html/Article/1707300/reportof-investigation-into-the-united-states-air-forces-failure-to-submit-dev/

Report No. DODIG-2018-035, Inspector General U.S. Department of Defense, Dec. 4, 2017, *Evaluation of Fingerprint Card and Final Disposition Report Submissions by Military Service Law Enforcement*

5

*Organizations*.   https://www.dodig.mil/reports.html/Search/DODIG-2018-035/

The DOD concluded that training on the submission of fingerprints and final disposition reports was ineffective and lacking, both for AFOSI Detachment 225 and the 49th Security Forces Squadron, and "there was no valid reason for the USAF's failures". *See* p. 111-112; *see also* p. 96-98 (noting "training did not provide instructions on when or how to submit either the fingerprint card or the final disposition report to the FBI CJIS Division"). Indeed, the DOD "determined that this failure to submit Kelley's fingerprints was part of a systemic problem in AFOSI Detachment 225." See p. 94. Worse, the case agent was actually deployed for seven months during the investigation and reported that he complained he could not do his job, stating, "Boss, I'm burnt out, I'm so burnt out." "Boss, I want to get out. I can't do this anymore."

Report No. DODIG-2015-081, Inspector General U.S. Department of Defense, February 12, 2015, *Evaluation of Department of Defense Compliance with Criminal History Data Reporting Requirements*

Report No. DODIG-2015-011, Inspector General U.S. Department of Defense, October 29, 2014, *Evaluation of the Defense Criminal Investigative Organizations' Defense Incident-Based Reporting System Reporting and Reporting Accuracy*

Air Force 49th Security Forces Squadron and its investigators, Military Law Enforcement Officers (LEOs), or AFSFC Police Services Branch Confinement Facility

Commanders, Officers, supervisors, employees
The 49th Security Forces Squadron investigated Airman Kelley. The 49th Security Forces squadron investigators and/or Military Law Enforcement Officers (LEOs) had responsibilities to gather fingerprints and report, and thus will have knowledge of their responsibilities, training, and failures. The December 6, 2018, the Inspector General of the DOD issued a 131-page Report titled, *Investigation into the United States Air Force's Failure to Submit Devin Kelley's Criminal History Information to the Federal Bureau of Investigation* concluding that training on the submission of fingerprints and final disposition reports was ineffective and lacking, both for AFOSI Detachment 225 and the 49th Security Forces Squadron, and "there was no valid reason for the USAF's failures". *See* p. 111-112; *see also* p. 96-98 (noting "training did not provide instructions on when or how to submit either the fingerprint card or the final disposition report to the FBI CJIS Division"). Air Force Office of Special Investigations

AFSFC Police Services Branch training focused on collection of fingerprints, but failed to address submitting fingerprint cards and final

disposition reports to the FBI CJIS.  Their Management Internal Control Toolset (MICT) checklist items are supposed to be monitored and assessed as part of the installation commander's self-inspection program.  Monthly supervisory reviews were "incomplete and ineffective. *See* Report No. DODIG-2019-030 p. 110.

Airman Kelley's Air Force Commander

Kelley's Commander issued a no contact order and has knowledge of Kelley's conduct and training in the Air Force.

Airman Kelley's Air Force Commander

Kelley's Commander issued a no contact order, prepared a confinement package stating that he was "convinced" that Kelley was "dangerous and likely to harm someone if released", and has knowledge of Kelley's conduct and training in the Air Force.

Kelley's former Supervisor in the Air Force

Kelley sent a threatening Facebook message to his former supervisor in the Air Force after his discharge.  She will have knowledge of Kelley's conduct and condition and threats.

Case Agent responsible for Airman Kelley

The Case Agent will have knowledge for the reasons he could not properly report Kelley to the FBI, as detailed by the DOD's report.

Boss of Case Agent responsible for Airman Kelley

The boss of the Case Agent will have knowledge for the reasons the Case Agent could not properly report Kelley to the FBI, as detailed by the DOD's report.

Peak Behavioral Health Services and Xavier Alvarez
5055 McNutt Rd.
Santa Teresa, NM 88008

Peak Behavioral Health Services (PBHS) had a program for military personnel and diagnosed Kelley with various mental and emotional disorders. On information and belief, this is the facility from which Kelley attempted to buy guns to kill his commanding officers, and the facility that Kelley escaped from and fled to El Paso.

According to an El Paso police report, police were informed that Kelley "was a danger to himself and others as he had already been caught sneaking firearms onto Holloman Air Force Base". Police were further advised that Airman Kelley "suffered from mental disorders" and that he "was attempting to carry out death threats" against "his military chain of command." Xavier Alvarez, who worked for Peak Behavioral and who reported Kelley to police for the escape, later confirmed to NBC News that Kelley "verbalized that he wanted to get some kind of retribution to his chain of command." Other patients reported that Kelley was doing something suspicious on computers, and the military found that Kelley was "ordering weapons and tactical gear and magazines to a P.O. Box in San Antonio." Alvarez was quoted as saying, "This kid – he was hollow," and "I could never reach him."

Air Force Security Forces Squadron
Holloman Air Force Base

Commanders, Officers, supervisors, employees
Cmdr. Nathan McLeod-Hughes

Air Force 49th Logistics Readiness Squadron
Commanders, Officers, supervisors, employees

Air Force Detachment 225 and/or Holloman Air Force Base Office of Special Investigations

Commanders, Officers, Special Agents, supervisors, employees
AFOSI Detachment 225 and/or Holloman Air Force Base Office of Special Investigation had responsibilities to gather fingerprints and report, and thus will have knowledge of their responsibilities, training, and failures. The December 6, 2018, the Inspector General of the DOD issued a 131-page Report titled, Investigation into the United States Air Force's Failure to Submit Devin Kelley's Criminal History Information to the Federal Bureau of Investigation concluding that training on the submission of fingerprints and final disposition reports was ineffective and lacking, both for AFOSI Detachment 225 and the 49th Security Forces Squadron, and "there was no valid reason for the USAF's failures". See p. 111-112; see also p. 96-98 (noting "training did not provide instructions on when or how to submit either the fingerprint card or the final disposition report to the FBI CJIS Division").

Although AFOSI policy required supervisory reviews to include both I2MS and the investigative case file (record copy), the AFOSI Detachment 225 SAIC and Superintendent focused their reviews on the I2MS activities and not on investigative case files" *See* p. 89. "In sum, we concluded that

AFOSI Detachment 225 monthly supervisory reviews of Kelley's investigative case file were incomplete and ineffective".

Air Force Article 32 Investigating Officers

Air Force Prosecutors
Air Force prosecutors gathered evidence and handled the conviction of Airman Kelley, and thus have knowledge of his conduct and disposition.

Naval Consolidated Brig
Miramar, California
Commanders, Officers, supervisors, employees

General David Goldfein
Air Force Chief of Staff

General Stephen Wilson
Air Force Vice Chief of Staff

Lt. General Gina Grosso
Air Force Deputy Chief of Staff, Manpower, Personnel & Services

Lt. General John Raymond
Air Force Deputy Chief of Staff, Operations

Lt. General John Cooper, Deputy Chief of Staff, Operations

Air Force Holloman Air Force Base Mental Health Clinic
HAFB Mental Health Clinic had custody of Kelley in the Air Force

Defense Incidence-Based Reporting System
Commanders, Officers, supervisors, employees

**e.   Regarding experts who may be called to testify at the trial in this case, please refer to Plaintiff's Designation of Experts and any amendments or supplements thereto for additional information regarding the facts known to these witnesses and the bases of their opinions.  These expert designations will be made at the time required by the Court's Scheduling Order. Please also refer to the sworn testimony and written reports of these witnesses for further information regarding the facts known to and opinions held by these witnesses.**

**f.   Plaintiff cross-identifies as expert witnesses any person named or to be named by Defendant as a person having expert knowledge about any facts surrounding any issues relevant to the incident in question as expert witnesses who Plaintiff reserves the right to call live at the trial of the cause.  Plaintiff reserves the right to call such persons as expert witnesses, whether or not the designation is subsequently**

withdrawn.  **Plaintiff does not have any control over any such witness, nor do they have any superior right to ascertain the subject matter on which any such witness may testify and/or opinions held by any such witness, beyond the information disclosed in deposition testimony and/or by Defendant's discovery responses.  In that regard, Plaintiff refers you to Defendant's discovery documents, deposition testimony, and documents produced by Defendant for the subject matter, facts known, and opinions and impressions of these witnesses.  Plaintiff reserves the right to obtain opinion testimony from any such witness within their area of expertise as related to this case.**

(ii)    A copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment;

Exhibit 1 – Inspector General, US Department of Defense, Evaluation of the Defense Criminal Investigative Organizations' Defense Incident-Based Reporting System Reporting and Reporting Accuracy, October 29, 2014 (Bates #18-949-1 – 18-949-40). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 2 – Inspector General, US Department of Defense, Evaluation of the Defense Compliance with Criminal History Data Reporting Requirements, February 12, 2015 (Bates #18-949-41 – 18-949-76). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 3 – Inspector General, US Department of Defense, Evaluation Fingerprint Card and Final Disposition Report Submissions by Military Service Law Enforcement Organizations, December 4, 2017 (Bates #18-949-77 – 18-949-168). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 4 – Inspector General, US Department of Defense, Report of Investigation into the United States Air Force's Failure to Submit Devin Kelley's Criminal History Information to the Federal Bureau of Investigation, December 6, 2018 (Bates #18-949-169 – 18-949-306). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs,

Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 5 –Department of Defense Directive Number 7730.47, October 15, 1996 (Bates #18-949-307 – 18-949-315). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 6 –Department of Defense Manual Number 7730.47-M Volume 1, December 7, 2010 (Bates #18-949-316 – 18-949-398). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 7 –U.S. Department of Defense Press Operations, DoD launches review of Devin P. Kelley criminal record notification, Release No. NR-382-17, November 6, 2017 (Bates #18-949-399). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 8 – National Instant Criminal Background Check System Indices (Bates #18-949-400 – 18-949-401). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 9 – U.S. Air Force article, AF Implements Changes to Improve Law Enforcement Database Reporting, November 28, 2017 (Bates #18-949-402). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 10 – U.S. Air Force tweet November 9, 2017 (Bates #18-949-403). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 11 – Report to the Committee on the Judiciary United States Senate from The Honorable Heather Wilson, Secretary of the Air Force, December 6, 2017 (Bates #18-949-404 – 18-949-405). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for

Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 12 – Questions for the Record for Secretary of the United States Air Force Heather Wilson, December 13, 2017 (Bates #18-949-406 – 18-949-410). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 13 – Misdemeanor Crimes of Domestic Violence (Bates #18-949-411). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 14 – Devin Kelley Trial Transcript (Bates #18-949-412 – 18-949-1022). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 15 - El Paso Incident Report, June 7, 2012 (Bates #18-949-1023 – 18-949-1028). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 16 – Devin Kelley Court Martial Order (Bates #18-949-1029 – 18-949-1034). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 17 – Statement of Danielle Kelley (Bates #18-949-1035). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 18 – Devin Kelley Autopsy Report (Bates #18-949-1036 – 18-949-1037). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 19 – Life Expectancy Tables (Bates #18-949-1038 – 18-949-1101). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 20 – Death Certificate (Bates #SCORRIGAN-19-691-000001)

Exhibit 21 – Autopsy (Bates #SCORRIGAN-19-691-000002 - SCORRIGAN-19-691-000011)

Exhibit 22 – Letters of Independent Administration (Bates #SCORRIGAN-19-691-000012)

Exhibit 23 – 2012 Tax Return (Bates #SCORRIGAN-19-691-000013 - SCORRIGAN-19-691-000029)

Exhibit 24 – 2013 Tax Return (Bates #SCORRIGAN-19-691-000030 - SCORRIGAN-19-691-000034)

Exhibit 25 – 2014 Tax Return (Bates #SCORRIGAN-19-691-000035 - SCORRIGAN-19-691-000051)

Exhibit 26 – 2015 Tax Return (Bates #SCORRIGAN-19-691-000052 - SCORRIGAN-19-691-000071)

Exhibit 27 – 2016 Tax Return (Bates #SCORRIGAN-19-691-000072 - SCORRIGAN-19-691-000093)

Exhibit 28 – Social Security Earnings Summary of Shani Corrigan (Bates #SCORRIGAN-19-691-000094 - SCORRIGAN-19-691-000095)


In addition, Plaintiff is in the possession of the materials maintained by the Texas Rangers related to the incident.  In obtaining these materials, Plaintiff entered into an agreement with the Texas Attorney General regarding their release.  As such, Plaintiff will discuss the terms of this agreement with Defendant prior to releasing these materials.

Further, Plaintiff is in the possession of the full Autopsy containing photographs taken by the Medical Examiner. In obtaining these materials, Plaintiff entered into an agreement with the Wilson County Attorney regarding their release. As such, Plaintiff will discuss the terms of this agreement with Defendant prior to releasing these materials.

(iii)   A computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered;

Discovery is still in its early stages and it is premature for Plaintiff to respond to this disclosure; however, please see Plaintiff's Original Complaint(s) and any and all amendments thereto for the categories of damages sought by Plaintiff.  Please refer also to Plaintiff's administrative claims filed with the Government for the maximum amount of damages sought by Plaintiff in this case.  Please refer to the sworn deposition testimony in this case. Please also refer to Plaintiff's Designation of Experts and any amendments or supplements thereto for additional information regarding the facts known to these witnesses and the bases of their opinions.  These expert designations will be made at the time required by the Court's Scheduling Order. Please also refer to the sworn testimony and written reports of these witnesses for further information regarding the facts known to and opinions held by these witnesses.

(iv)   For inspection and copying as under Rule 34, any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment.

Not applicable.

Respectfully Submitted,

/s/ *Justin Demerath*

**JUSTIN DEMERATH**
jdemerath@808west.com
Texas State Bar No. 24034415
**DAVID CAMPBELL**
dcampbell@808west.com
Texas State Bar No. 24057033
**O'HANLON, DEMERATH & CASTILLO, PC**
808 West Avenue
Austin, TX 78701
Telephone: (512) 494-9949
Facsimile: (512) 494-9919

Attorneys for Plaintiff Benjamin Corrigan, Independent Executor of the Estate of Shani Corrigan

**Certificate of Service**

I certify that the foregoing was served on July 12, 2019, via email service and certified mail, return receipt requested, on the following counsel for the United States.

/s/ *Justin Demerath*
**JUSTIN DEMERATH**

PAUL DAVID STERN
Trial Attorney, Torts Branch
United States Dept. of Justice
Civil Division
United States Department of Justice
P.O. Box 888
Benjamin Franklin Station
Washington, D.C. 20004
T: (202) 616-2197
Paul.David.Stern@usdoj.gov

STEPHEN E. HANDLER
Senior Trial Counsel, Torts Branch
United States Dept. of Justice
Civil Division
United States Department of Justice
P.O. Box 888
Benjamin Franklin Station
Washington, D.C. 20004
T: (202) 616-2197
Stephen.Handler@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| Joe Holcombe, *et al.*,<br>    Plaintiffs,<br><br>v.<br><br>United States of America,<br>    Defendant. | Civil Action No. 5:18-cv-555-XR<br><br>*Consolidated with*:<br>  Nos. 5:18-cv-712-XR; 5:18-cv-881-XR;<br>  5:18-cv-944-XR; 5:18-cv-949-XR;<br>  5:18-cv-951-XR; 5:18-cv-1151-XR;<br>  5:19-cv-184-XR; 5:19-cv-289;<br>  5:19-cv-506 XR; 5:19-cv-678;<br>  5:19-cv-691-XR; 5:19-cv-705;<br>  5:19-cv-706-XR; 5:19-cv-715-XR |

## PLAINTIFF BENJAMIN CORRIGAN'S, INDIVIDUALLY, INITIAL DISCLOSURES PURSUANT TO RULE 26(A)(1)

(i)   The name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment;

**a. Plaintiff hereby designates as persons with knowledge the health care providers referenced in the related health care records in this case, including physicians, technicians, nurses, radiologists, physician's assistants, physical therapists, clinics, hospitals, pharmacies, and their agents, representatives, and employees. While these health care providers are not within the control of Plaintiff and have not been retained by Plaintiff as expert witnesses, Plaintiff reserves the right to elicit opinion testimony from any such health care provider, including expert testimony regarding liability, causation, and damages from those treating healthcare providers relating to the medical treatment provided to the Plaintiff. To the extent it is necessary to call live at the trial or by deposition in this cause any agents, representatives, employees and/or custodian of records for any of the following health care providers, Plaintiff identifies any such custodian as a person who may have expert knowledge regarding issues related to the incident in question to include personal knowledge of the records and concerning the necessity of services rendered and referenced in the records and concerning the reasonableness of the medical bills charged and referenced in the records of the following health care providers. For the mental impressions held by and the opinions of and facts known by any of the following witnesses, please refer to the related health care records of the Plaintiff.**

1

None at this time for the Plaintiff, individually.

**b. Plaintiff identifies himself as persons with knowledge of relevant facts pertaining to the incident in question:**

| NAME | ADDRESS/TELEPHONE |
|---|---|
| **PARTIES** | |
| Benjamin Corrigan, Individually<br>c/o Justin B. Demerath<br>O'HANLON, DEMERATH & CASTILLO, PC | 808 West Avenue<br>Austin, Texas 78701<br>(512) 494-9949 |

**c. Plaintiff identifies the following family members, friends, and other persons as persons with knowledge of relevant facts:**

Academy Sports + Outdoors in San Antonio
> Kelley bought a Ruger 5.56 mm assault rifle from Academy Sports + Outdoors in San Antonio after clearing a background check of the NICS. Store personnel will have knowledge of the transaction.

El Paso Police
Headquarters:
911 N. Raynor
El Paso, TX 79903
(915) 212-4000
> The El Paso police apprehended Kelley after he escaped. See Exhibit 15.

First Baptist Church of Sutherland Springs, Texas
Frank Pomeroy, Pastor
First Baptist Church
216 4th Street
Sutherland Springs, Texas 78161
> This is the church where the shooting occurred. The pastor was not there that morning, but on information and belief lost his daughter and many beloved friends in the massacre. He will have knowledge of their community and relationships and the impact of the shooting.

Danielle Shield Kelley
> Married to Airman Devin Kelley at the time of the church shooting.

Tessa Kelley (nee' Loge)
> Married to Airman Devin Kelley while he was in the Air Force and reported him for abuse to herself and infant child.

Johnnie Langendorff
Stephen Willeford

2

Stephen Willeford confronted Kelley and chased him away from the church. Johnnie Langendorff stopped his vehicle to pick up Mr. Willeford and give chase.

Steve Moore
Wilson County Sheriff's Department
    Investigator

Harold Schott, Justice of the Peace Pct. #3
Wilson County

Terry Snyder
Texas Ranger Division
Texas Department of Public Safety
6100 Guadalupe Street, Building E
Austin, TX 78752
    Investigator and Custodian of Records

Sunland Park Police Department
1000 McNutt Rd
Sunland Park, NM 88063

Preston Corrigan
    Preston Corrigan is the brother of Benjamin Corrigan. He has knowledge of the grief and trauma of Benjamin Corrigan, as well as his own grief, trauma and other elements of damages and that of his family.

**d.  Plaintiff names the Defendant herein, as well as its agents, representatives, and/or employees or former agents, representatives, or employees, as persons with knowledge of relevant facts. Plaintiff further names the Defendant, as well as its agents, representatives, and/or employees or former agents, representatives, or employees, as persons from whom expert testimony may be elicited regarding liability, causation and/or damages, although Plaintiff does not necessarily vouch for all the opinion testimony of such persons. Plaintiff refers you to the Department of Defense Inspector General reports from 2018, 2017, 2014, and 2015; Defendant's discovery documents; deposition testimony; documents produced by Defendant; and related medical records for the subject matter, facts known, and opinions and impressions of these witnesses.**

Air Force personnel
    Air Force personnel are expected to have knowledge of Kelley's conduct in the Air Force and mental problems, including but not limited to his attempt to bring weapons onto the base to kill officers.

Additional Air Force personnel are provided below:
> Air Force spokesperson, Ann Stefanek. On November 28, 2017, an Air Force spokesperson, Ann Stefanek, admitted that the failure to follow Pentagon guidelines to report Kelley's crimes to the FBI was "not an isolated incident and similar reporting lapses occurred at other locations."

Heather Wilson
Secretary of the Air Force

Deborah Lee James
Secretary of the Air Force

Col. Kirk Stabler
Air Force Commander
Headquarters Air Force Office of Special Investigations
Quantico, Virginia

Brig. General Andrea Tullos
Air Force Director
Director of Security Forces
DCS/Logistics, Engineering & Force Protection
Department of the Air Force
Washington, D.C.

Director of Special Investigations
Department of the Air Force
Washington, D.C.

HQ Air Force Office of Special Investigations
Department of the Air Force
Superintendent, IT Integrations HQ AFOSI
Quantico, Virginia

Department of the Air Force
HQ USAF
Washington, D.C.

Deputy Director of Security Forces
DCS/Logistics, Installations & Missions Support

Defense Human Resources Activity
Headquarters
Pamela Mitchell, Director
4800 Mark Center Drive, Suite 06J25-01
Alexandria, VA 22350-4000

Department of the Air Force
HQ Air Force Office of Special Investigations
Quantico, VA
Brigadier General, Keith Givens
USAF Commander

Department of Defense
Under Secretary of Defense for Intelligence
Deputy Chief Management Officer

Department of Defense
Military Criminal Investigative Organizations (MCIOs)
        Commanders, Officers, supervisors and employees
Defense Criminal Investigative Organizations (DCIOs)
        Commanders, Officers, supervisors and employees

Office of Inspector General for the DOD

The Office of Inspector General for the DOD has issued four reports investigating and detailing the failures of the Air Force and Department of Defense, including negligence, negligent training, and negligent supervision. See attached reports:

Report No. DODIG-2019-030, Inspector General U.S. Department of Defense, Dec. 6, 2018, Report of Investigation into the United States Air Force's Failure to Submit Devin Kelley's Criminal History Information to the Federal Bureau of Investigation; see id. at p. l17, "The USAF concurred with this report and its recommendations." https://www.dodig.mil/reports.html/Article/1707300/reportof-investigation-into-the-united-states-air-forces-failure-to-submit-dev/

Report No. DODIG-2018-035, Inspector General U.S. Department of Defense, Dec. 4, 2017, *Evaluation of Fingerprint Card and Final Disposition Report Submissions by Military Service Law Enforcement Organizations*.   https://www.dodig.mil/reports.html/Search/DODIG-2018-035/

The DOD concluded that training on the submission of fingerprints and final disposition reports was ineffective and lacking, both for AFOSI Detachment 225 and the 49th Security Forces Squadron, and "there was no valid reason for the USAF's failures". *See* p. 111-112; *see also* p. 96-98 (noting "training did not provide instructions on when or how to submit either the fingerprint card or the final disposition report to the FBI CJIS Division"). Indeed, the DOD "determined that this failure to submit Kelley's fingerprints was part of a systemic problem in AFOSI Detachment 225." See p. 94. Worse, the case agent was actually deployed for seven months during the investigation and reported that he complained he could

not do his job, stating, "Boss, I'm burnt out, I'm so burnt out." "Boss, I want to get out. I can't do this anymore."

Report No. DODIG-2015-081, Inspector General U.S. Department of Defense, February 12, 2015, *Evaluation of Department of Defense Compliance with Criminal History Data Reporting Requirements*

Report No. DODIG-2015-011, Inspector General U.S. Department of Defense, October 29, 2014, *Evaluation of the Defense Criminal Investigative Organizations' Defense Incident-Based Reporting System Reporting and Reporting Accuracy*

Air Force 49th Security Forces Squadron and its investigators, Military Law Enforcement Officers (LEOs), or AFSFC Police Services Branch Confinement Facility

Commanders, Officers, supervisors, employees
The 49th Security Forces Squadron investigated Airman Kelley. The 49th Security Forces squadron investigators and/or Military Law Enforcement Officers (LEOs) had responsibilities to gather fingerprints and report, and thus will have knowledge of their responsibilities, training, and failures. The December 6, 2018, the Inspector General of the DOD issued a 131-page Report titled, *Investigation into the United States Air Force's Failure to Submit Devin Kelley's Criminal History Information to the Federal Bureau of Investigation* concluding that training on the submission of fingerprints and final disposition reports was ineffective and lacking, both for AFOSI Detachment 225 and the 49th Security Forces Squadron, and "there was no valid reason for the USAF's failures". *See* p. 111-112; *see also* p. 96-98 (noting "training did not provide instructions on when or how to submit either the fingerprint card or the final disposition report to the FBI CJIS Division"). Air Force Office of Special Investigations

AFSFC Police Services Branch training focused on collection of fingerprints, but failed to address submitting fingerprint cards and final disposition reports to the FBI CJIS. Their Management Internal Control Toolset (MICT) checklist items are supposed to be monitored and assessed as part of the installation commander's self-inspection program. Monthly supervisory reviews were "incomplete and ineffective. *See* Report No. DODIG-2019-030 p. 110.

Airman Kelley's Air Force Commander

Kelley's Commander issued a no contact order and has knowledge of Kelley's conduct and training in the Air Force.

Airman Kelley's Air Force Commander

> Kelley's Commander issued a no contact order, prepared a confinement package stating that he was "convinced" that Kelley was "dangerous and likely to harm someone if released", and has knowledge of Kelley's conduct and training in the Air Force.

Kelley's former Supervisor in the Air Force

> Kelley sent a threatening Facebook message to his former supervisor in the Air Force after his discharge.  She will have knowledge of Kelley's conduct and condition and threats.

Case Agent responsible for Airman Kelley

> The Case Agent will have knowledge for the reasons he could not properly report Kelley to the FBI, as detailed by the DOD's report.

Boss of Case Agent responsible for Airman Kelley

> The boss of the Case Agent will have knowledge for the reasons the Case Agent could not properly report Kelley to the FBI, as detailed by the DOD's report.

Peak Behavioral Health Services and Xavier Alvarez
5055 McNutt Rd.
Santa Teresa, NM 88008

> Peak Behavioral Health Services (PBHS) had a program for military personnel and diagnosed Kelley with various mental and emotional disorders. On information and belief, this is the facility from which Kelley attempted to buy guns to kill his commanding officers, and the facility that Kelley escaped from and fled to El Paso.

> According to an El Paso police report, police were informed that Kelley "was a danger to himself and others as he had already been caught sneaking firearms onto Holloman Air Force Base". Police were further advised that Airman Kelley "suffered from mental disorders" and that he "was attempting to carry out death threats" against "his military chain of command." Xavier Alvarez, who worked for Peak Behavioral and who reported Kelley to police for the escape, later confirmed to NBC News that Kelley "verbalized that he wanted to get some kind of retribution to his chain of command." Other patients reported that Kelley was doing something suspicious on computers, and the military found that Kelley was "ordering weapons and tactical gear and magazines to a P.O. Box in

7

San Antonio." Alvarez was quoted as saying, "This kid – he was hollow," and "I could never reach him."

Air Force Security Forces Squadron
Holloman Air Force Base

    Commanders, Officers, supervisors, employees
    Cmdr. Nathan McLeod-Hughes

Air Force 49th Logistics Readiness Squadron
    Commanders, Officers, supervisors, employees

Air Force Detachment 225 and/or Holloman Air Force Base Office of Special Investigations

    Commanders, Officers, Special Agents, supervisors, employees
    AFOSI Detachment 225 and/or Holloman Air Force Base Office of Special Investigation had responsibilities to gather fingerprints and report, and thus will have knowledge of their responsibilities, training, and failures. The December 6, 2018, the Inspector General of the DOD issued a 131-page Report titled, Investigation into the United States Air Force's Failure to Submit Devin Kelley's Criminal History Information to the Federal Bureau of Investigation concluding that training on the submission of fingerprints and final disposition reports was ineffective and lacking, both for AFOSI Detachment 225 and the 49th Security Forces Squadron, and "there was no valid reason for the USAF's failures". See p. 111-112; see also p. 96-98 (noting "training did not provide instructions on when or how to submit either the fingerprint card or the final disposition report to the FBI CJIS Division").

    Although AFOSI policy required supervisory reviews to include both I2MS and the investigative case file (record copy), the AFOSI Detachment 225 SAIC and Superintendent focused their reviews on the I2MS activities and not on investigative case files *See* p. 89. "In sum, we concluded that AFOSI Detachment 225 monthly supervisory reviews of Kelley's investigative case file were incomplete and ineffective".

Air Force Article 32 Investigating Officers

Air Force Prosecutors
    Air Force prosecutors gathered evidence and handled the conviction of Airman Kelley, and thus have knowledge of his conduct and disposition.

Naval Consolidated Brig
Miramar, California
    Commanders, Officers, supervisors, employees

General David Goldfein
Air Force Chief of Staff

General Stephen Wilson
Air Force Vice Chief of Staff

Lt. General Gina Grosso
Air Force Deputy Chief of Staff, Manpower, Personnel & Services

Lt. General John Raymond
Air Force Deputy Chief of Staff, Operations

Lt. General John Cooper, Deputy Chief of Staff, Operations

Air Force Holloman Air Force Base Mental Health Clinic
        HAFB Mental Health Clinic had custody of Kelley in the Air Force

Defense Incidence-Based Reporting System
        Commanders, Officers, supervisors, employees

**e.   Regarding experts who may be called to testify at the trial in this case, please refer to Plaintiff's Designation of Experts and any amendments or supplements thereto for additional information regarding the facts known to these witnesses and the bases of their opinions.  These expert designations will be made at the time required by the Court's Scheduling Order. Please also refer to the sworn testimony and written reports of these witnesses for further information regarding the facts known to and opinions held by these witnesses.**

**f.   Plaintiff cross-identifies as expert witnesses any person named or to be named by Defendant as a person having expert knowledge about any facts surrounding any issues relevant to the incident in question as expert witnesses who Plaintiff reserves the right to call live at the trial of the cause.  Plaintiff reserves the right to call such persons as expert witnesses, whether or not the designation is subsequently withdrawn.  Plaintiff does not have any control over any such witness, nor do they have any superior right to ascertain the subject matter on which any such witness may testify and/or opinions held by any such witness, beyond the information disclosed in deposition testimony and/or by Defendant's discovery responses.  In that regard, Plaintiff refers you to Defendant's discovery documents, deposition testimony, and documents produced by Defendant for the subject matter, facts known, and opinions and impressions of these witnesses.  Plaintiff reserves the right to obtain opinion testimony from any such witness within their area of expertise as related to this case.**

(ii)    A copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment;

Exhibit 1 – Inspector General, US Department of Defense, Evaluation of the Defense Criminal Investigative Organizations' Defense Incident-Based Reporting System Reporting and Reporting Accuracy, October 29, 2014 (Bates #18-949-1 – 18-949-40). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 2 – Inspector General, US Department of Defense, Evaluation of the Defense Compliance with Criminal History Data Reporting Requirements, February 12, 2015 (Bates #18-949-41 – 18-949-76). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 3 – Inspector General, US Department of Defense, Evaluation Fingerprint Card and Final Disposition Report Submissions by Military Service Law Enforcement Organizations, December 4, 2017 (Bates #18-949-77 – 18-949-168). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 4 – Inspector General, US Department of Defense, Report of Investigation into the United States Air Force's Failure to Submit Devin Kelley's Criminal History Information to the Federal Bureau of Investigation, December 6, 2018 (Bates #18-949-169 – 18-949-306). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 5 – Department of Defense Directive Number 7730.47, October 15, 1996 (Bates #18-949-307 – 18-949-315). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 6 – Department of Defense Manual Number 7730.47-M Volume 1, December 7, 2010 (Bates #18-949-316 – 18-949-398). This document is in the possession of the

Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 7 –U.S. Department of Defense Press Operations, DoD launches review of Devin P. Kelley criminal record notification, Release No. NR-382-17, November 6, 2017 (Bates #18-949-399). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 8 – National Instant Criminal Background Check System Indices (Bates #18-949-400 – 18-949-401). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 9 – U.S. Air Force article, AF Implements Changes to Improve Law Enforcement Database Reporting, November 28, 2017 (Bates #18-949-402). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 10 – U.S. Air Force tweet November 9, 2017 (Bates #18-949-403). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 11 – Report to the Committee on the Judiciary United States Senate from The Honorable Heather Wilson, Secretary of the Air Force, December 6, 2017 (Bates #18-949-404 – 18-949-405). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 12 – Questions for the Record for Secretary of the United States Air Force Heather Wilson, December 13, 2017 (Bates #18-949-406 – 18-949-410). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 13 – Misdemeanor Crimes of Domestic Violence (Bates #18-949-411). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 14 –Devin Kelley Trial Transcript (Bates #18-949-412 – 18-949-1022). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 15 - El Paso Incident Report, June 7, 2012 (Bates #18-949-1023 – 18-949-1028). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 16 – Devin Kelley Court Martial Order (Bates #18-949-1029 – 18-949-1034). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 17 – Statement of Danielle Kelley (Bates #18-949-1035). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 18 – Devin Kelley Autopsy Report (Bates #18-949-1036 – 18-949-1037). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 19 – Life Expectancy Tables (Bates #18-949-1038 – 18-949-1101). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 20 – Birth Certificate (Bates #BCORRIGAN-19-691-000001)

Exhibit 21 – 2012 Tax Return (Bates # BCORRIGAN-19-691-000002 - BCORRIGAN-19-691-000018)

Exhibit 22 – 2013 Tax Return (Bates #BCORRIGAN-19-691-000019 – BCORRIGAN-19-691-000023)

Exhibit 23 – 2014 Tax Return (Bates #BCORRIGAN-19-691-000024 – BCORRIGAN-19-691-000040)

Exhibit 24 – 2015 Tax Return (Bates #BCORRIGAN-19-691-000041 – BCORRIGAN-19-691-000060)

Exhibit 25 – 2016 Tax Return (Bates #BCORRIGAN-19-691-000061 – BCORRIGAN-19-691-000082)

Exhibit 26 – Social Security Earnings Summary of Robert Corrigan (Bates #BCORRIGAN-19-691-000083 – BCORRIGAN-19-691-000084)

Exhibit 27 – Social Security Earnings Summary of Shani Corrigan (Bates #BCORRIGAN-19-691-000085 – BCORRIGAN-19-691-000086)

In addition, Plaintiff is in the possession of the materials maintained by the Texas Rangers related to the incident.  In obtaining these materials, Plaintiff entered into an agreement with the Texas Attorney General regarding their release.  As such, Plaintiff will discuss the terms of this agreement with Defendant prior to releasing these materials.

(iii)   A computation of each category of damages claimed by the disclosing party— who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered;

Discovery is still in its early stages and it is premature for Plaintiff to respond to this disclosure; however, please see Plaintiff's Original Complaint(s) and any and all amendments thereto for the categories of damages sought by Plaintiff.  Please refer also to Plaintiff's administrative claims filed with the Government for the maximum amount of damages sought by Plaintiff in this case.  Please refer to the sworn deposition testimony in this case. Please also refer to Plaintiff's Designation of Experts and any amendments or supplements thereto for additional information regarding the facts known to these witnesses and the bases of their opinions.  These expert designations will be made at the time required by the Court's Scheduling Order. Please also refer to the sworn testimony and written reports of these witnesses for further information regarding the facts known to and opinions held by these witnesses.

(iv)   For inspection and copying as under Rule 34, any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment.

Not applicable.

Respectfully Submitted,

/s/ *Justin Demerath*

**JUSTIN DEMERATH**
jdemerath@808west.com
Texas State Bar No. 24034415
**DAVID CAMPBELL**
dcampbell@808west.com
Texas State Bar No. 24057033
**O'HANLON, DEMERATH & CASTILLO, PC**
808 West Avenue
Austin, TX 78701
Telephone: (512) 494-9949
Facsimile: (512) 494-9919

Attorneys for Plaintiff Benjamin Corrigan, Individually

**Certificate of Service**

I certify that the foregoing was served on July 12, 2019, via email service and certified mail, return receipt requested, on the following counsel for the United States.

/s/ *Justin Demerath*
**JUSTIN DEMERATH**

PAUL DAVID STERN
Trial Attorney, Torts Branch
United States Dept. of Justice
Civil Division
United States Department of Justice
P.O. Box 888
Benjamin Franklin Station
Washington, D.C. 20004
T: (202) 616-2197
Paul.David.Stern@usdoj.gov

STEPHEN E. HANDLER
Senior Trial Counsel, Torts Branch
United States Dept. of Justice
Civil Division
United States Department of Justice
P.O. Box 888
Benjamin Franklin Station
Washington, D.C. 20004
T: (202) 616-2197
Stephen.Handler@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| Joe Holcombe, *et al.*, <br>     Plaintiffs, <br><br> v. <br><br> United States of America, <br>     Defendant. | Civil Action No. 5:18-cv-555-XR <br><br> *Consolidated with*: <br>   Nos. 5:18-cv-712-XR; 5:18-cv-881-XR; <br>   5:18-cv-944-XR; 5:18-cv-949-XR; <br>   5:18-cv-951-XR; 5:18-cv-1151-XR; <br>   5:19-cv-184-XR; 5:19-cv-289; <br>   5:19-cv-506 XR; 5:19-cv-678; <br>   5:19-cv-691-XR; 5:19-cv-705; <br>   5:19-cv-706-XR; 5:19-cv-715-XR |

## PLAINTIFF ELIZABETH BRADEN'S INITIAL DISCLOSURES PURSUANT TO RULE 26(A)(1)

(i)    The name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment;

    **a. Plaintiff hereby designates as persons with knowledge the health care providers referenced in the related health care records in this case, including physicians, technicians, nurses, radiologists, physician's assistants, physical therapists, clinics, hospitals, pharmacies, and their agents, representatives, and employees. While these health care providers are not within the control of Plaintiff and have not been retained by Plaintiff as expert witnesses, Plaintiff reserves the right to elicit opinion testimony from any such health care provider, including expert testimony regarding liability, causation, and damages from those treating healthcare providers relating to the medical treatment provided to the Plaintiff. To the extent it is necessary to call live at the trial or by deposition in this cause any agents, representatives, employees and/or custodian of records for any of the following health care providers, Plaintiff identifies any such custodian as a person who may have expert knowledge regarding issues related to the incident in question to include personal knowledge of the records and concerning the necessity of services rendered and referenced in the records and concerning the reasonableness of the medical bills charged and referenced in the records of the following health care providers. For the mental impressions held by and the opinions of and facts known by any of the following witnesses, please refer to the related health care records of the Plaintiff.**

None at this time for the Plaintiff, individually.

**b. Plaintiff identifies herself as persons with knowledge of relevant facts pertaining to the incident in question:**

| NAME | ADDRESS/TELEPHONE |
|---|---|
| **PARTIES** | |
| Elizabeth Braden<br>c/o Justin B. Demerath<br>O'HANLON, DEMERATH & CASTILLO, PC | 808 West Avenue<br>Austin, Texas 78701<br>(512) 494-9949 |

**c. Plaintiff identifies the following family members, friends, and other persons as persons with knowledge of relevant facts:**

Academy Sports + Outdoors in San Antonio
> Kelley bought a Ruger 5.56 mm assault rifle from Academy Sports + Outdoors in San Antonio after clearing a background check of the NICS. Store personnel will have knowledge of the transaction.

El Paso Police
Headquarters:
911 N. Raynor
El Paso, TX 79903
(915) 212-4000
> The El Paso police apprehended Kelley after he escaped. See Exhibit 15.

First Baptist Church of Sutherland Springs, Texas
Frank Pomeroy, Pastor
First Baptist Church
216 4th Street
Sutherland Springs, Texas 78161
> This is the church where the shooting occurred. The pastor was not there that morning, but on information and belief lost his daughter and many beloved friends in the massacre. He will have knowledge of their community and relationships and the impact of the shooting.

Danielle Shield Kelley
> Married to Airman Devin Kelley at the time of the church shooting.

Tessa Kelley (nee' Loge)
> Married to Airman Devin Kelley while he was in the Air Force and reported him for abuse to herself and infant child.

Johnnie Langendorff
Stephen Willeford

Stephen Willeford confronted Kelley and chased him away from the church. Johnnie Langendorff stopped his vehicle to pick up Mr. Willeford and give chase.

Steve Moore
Wilson County Sheriff's Department
    Investigator

Harold Schott, Justice of the Peace Pct. #3
Wilson County

Terry Snyder
Texas Ranger Division
Texas Department of Public Safety
6100 Guadalupe Street, Building E
Austin, TX 78752
    Investigator and Custodian of Records

Sunland Park Police Department
1000 McNutt Rd
Sunland Park, NM 88063

Deborah Braden
    Deborah Braden is the mother of Elizabeth Braden. She has knowledge of the grief and trauma of Elizabeth Braden, as well as her own traumatic injuries, grief, trauma and other elements of damages and that of her family.

Robert Braden
    Robert Braden is the brother of Elizabeth Braden. He has knowledge of the grief and trauma of Elizabeth Braden, as well as his own injuries, grief, trauma and other elements of damages and that of his family.

███████, a Minor
    ███████ is the daughter of Elizabeth Braden. She has knowledge of the grief and trauma of Elizabeth Braden, as well as her own traumatic injuries, grief and trauma and other elements of damages and that of her family.

Rebecca Metcalf
    Rebecca Metcalf is the sister of Keith Braden. She has knowledge of the grief and trauma of Elizabeth Braden, as well as her own grief, trauma and other elements of damages and that of her family.

**d. Plaintiff names the Defendant herein, as well as its agents, representatives, and/or employees or former agents, representatives, or employees, as persons with knowledge of relevant facts. Plaintiff further names the Defendant, as well as its agents, representatives, and/or employees or former agents, representatives, or**

**employees, as persons from whom expert testimony may be elicited regarding liability, causation and/or damages, although Plaintiff does not necessarily vouch for all the opinion testimony of such persons. Plaintiff refers you to the Department of Defense Inspector General reports from 2018, 2017, 2014, and 2015; Defendant's discovery documents; deposition testimony; documents produced by Defendant; and related medical records for the subject matter, facts known, and opinions and impressions of these witnesses.**

Air Force personnel
Air Force personnel are expected to have knowledge of Kelley's conduct in the Air Force and mental problems, including but not limited to his attempt to bring weapons onto the base to kill officers.

Additional Air Force personnel are provided below:
Air Force spokesperson, Ann Stefanek. On November 28, 2017, an Air Force spokesperson, Ann Stefanek, admitted that the failure to follow Pentagon guidelines to report Kelley's crimes to the FBI was "not an isolated incident and similar reporting lapses occurred at other locations."

Heather Wilson
Secretary of the Air Force

Deborah Lee James
Secretary of the Air Force

Col. Kirk Stabler
Air Force Commander
Headquarters Air Force Office of Special Investigations
Quantico, Virginia

Brig. General Andrea Tullos
Air Force Director
Director of Security Forces
DCS/Logistics, Engineering & Force Protection
Department of the Air Force
Washington, D.C.

Director of Special Investigations
Department of the Air Force
Washington, D.C.

HQ Air Force Office of Special Investigations
Department of the Air Force
Superintendent, IT Integrations HQ AFOSI
Quantico, Virginia

Department of the Air Force
HQ USAF
Washington, D.C.

Deputy Director of Security Forces
DCS/Logistics, Installations & Missions Support

Defense Human Resources Activity
Headquarters
Pamela Mitchell, Director
4800 Mark Center Drive, Suite 06J25-01
Alexandria, VA 22350-4000

Department of the Air Force
HQ Air Force Office of Special Investigations
Quantico, VA
Brigadier General, Keith Givens
USAF Commander

Department of Defense
Under Secretary of Defense for Intelligence
Deputy Chief Management Officer

Department of Defense
Military Criminal Investigative Organizations (MCIOs)
        Commanders, Officers, supervisors and employees
Defense Criminal Investigative Organizations (DCIOs)
        Commanders, Officers, supervisors and employees

Office of Inspector General for the DOD

The Office of Inspector General for the DOD has issued four reports
investigating and detailing the failures of the Air Force and Department of
Defense, including negligence, negligent training, and negligent
supervision. See attached reports:

Report No. DODIG-2019-030, Inspector General U.S. Department of
Defense, Dec. 6, 2018, Report of Investigation into the United States Air
Force's Failure to Submit Devin Kelley's Criminal History Information to
the Federal Bureau of Investigation; see id. at p. 117, "The USAF concurred
with        this        report        and        its        recommendations."
https://www.dodig.mil/reports.html/Article/1707300/reportof-
investigation-into-the-united-states-air-forces-failure-to-submit-dev/

Report No. DODIG-2018-035, Inspector General U.S. Department of
Defense, Dec. 4, 2017, *Evaluation of Fingerprint Card and Final
Disposition Report Submissions by Military Service Law Enforcement*

*Organizations.*   https://www.dodig.mil/reports.html/Search/DODIG-2018-035/

The DOD concluded that training on the submission of fingerprints and final disposition reports was ineffective and lacking, both for AFOSI Detachment 225 and the 49th Security Forces Squadron, and "there was no valid reason for the USAF's failures". *See* p. 111-112; *see also* p. 96-98 (noting "training did not provide instructions on when or how to submit either the fingerprint card or the final disposition report to the FBI CJIS Division"). Indeed, the DOD "determined that this failure to submit Kelley's fingerprints was part of a systemic problem in AFOSI Detachment 225." See p. 94. Worse, the case agent was actually deployed for seven months during the investigation and reported that he complained he could not do his job, stating, "Boss, I'm burnt out, I'm so burnt out." "Boss, I want to get out. I can't do this anymore."

Report No. DODIG-2015-081, Inspector General U.S. Department of Defense, February 12, 2015, *Evaluation of Department of Defense Compliance with Criminal History Data Reporting Requirements*

Report No. DODIG-2015-011, Inspector General U.S. Department of Defense, October 29, 2014, *Evaluation of the Defense Criminal Investigative Organizations' Defense Incident-Based Reporting System Reporting and Reporting Accuracy*

Air Force 49th Security Forces Squadron and its investigators, Military Law Enforcement Officers (LEOs), or AFSFC Police Services Branch Confinement Facility

Commanders, Officers, supervisors, employees
The 49th Security Forces Squadron investigated Airman Kelley. The 49th Security Forces squadron investigators and/or Military Law Enforcement Officers (LEOs) had responsibilities to gather fingerprints and report, and thus will have knowledge of their responsibilities, training, and failures. The December 6, 2018, the Inspector General of the DOD issued a 131-page Report titled, *Investigation into the United States Air Force's Failure to Submit Devin Kelley's Criminal History Information to the Federal Bureau of Investigation* concluding that training on the submission of fingerprints and final disposition reports was ineffective and lacking, both for AFOSI Detachment 225 and the 49th Security Forces Squadron, and "there was no valid reason for the USAF's failures". *See* p. 111-112; *see also* p. 96-98 (noting "training did not provide instructions on when or how to submit either the fingerprint card or the final disposition report to the FBI CJIS Division"). Air Force Office of Special Investigations

AFSFC Police Services Branch training focused on collection of fingerprints, but failed to address submitting fingerprint cards and final

disposition reports to the FBI CJIS.  Their Management Internal Control Toolset (MICT) checklist items are supposed to be monitored and assessed as part of the installation commander's self-inspection program.  Monthly supervisory reviews were "incomplete and ineffective. *See* Report No. DODIG-2019-030 p. 110.

Airman Kelley's Air Force Commander

Kelley's Commander issued a no contact order and has knowledge of Kelley's conduct and training in the Air Force.

Airman Kelley's Air Force Commander

Kelley's Commander issued a no contact order, prepared a confinement package stating that he was "convinced" that Kelley was "dangerous and likely to harm someone if released", and has knowledge of Kelley's conduct and training in the Air Force.

Kelley's former Supervisor in the Air Force

Kelley sent a threatening Facebook message to his former supervisor in the Air Force after his discharge.  She will have knowledge of Kelley's conduct and condition and threats.

Case Agent responsible for Airman Kelley

The Case Agent will have knowledge for the reasons he could not properly report Kelley to the FBI, as detailed by the DOD's report.

Boss of Case Agent responsible for Airman Kelley

The boss of the Case Agent will have knowledge for the reasons the Case Agent could not properly report Kelley to the FBI, as detailed by the DOD's report.

Peak Behavioral Health Services and Xavier Alvarez
5055 McNutt Rd.
Santa Teresa, NM 88008

Peak Behavioral Health Services (PBHS) had a program for military personnel and diagnosed Kelley with various mental and emotional disorders. On information and belief, this is the facility from which Kelley attempted to buy guns to kill his commanding officers, and the facility that Kelley escaped from and fled to El Paso.

According to an El Paso police report, police were informed that Kelley "was a danger to himself and others as he had already been caught sneaking firearms onto Holloman Air Force Base". Police were further advised that Airman Kelley "suffered from mental disorders" and that he "was attempting to carry out death threats" against "his military chain of command." Xavier Alvarez, who worked for Peak Behavioral and who reported Kelley to police for the escape, later confirmed to NBC News that Kelley "verbalized that he wanted to get some kind of retribution to his chain of command." Other patients reported that Kelley was doing something suspicious on computers, and the military found that Kelley was "ordering weapons and tactical gear and magazines to a P.O. Box in San Antonio." Alvarez was quoted as saying, "This kid – he was hollow," and "I could never reach him."

Air Force Security Forces Squadron
Holloman Air Force Base

Commanders, Officers, supervisors, employees
Cmdr. Nathan McLeod-Hughes

Air Force 49th Logistics Readiness Squadron
Commanders, Officers, supervisors, employees

Air Force Detachment 225 and/or Holloman Air Force Base Office of Special Investigations

Commanders, Officers, Special Agents, supervisors, employees
AFOSI Detachment 225 and/or Holloman Air Force Base Office of Special Investigation had responsibilities to gather fingerprints and report, and thus will have knowledge of their responsibilities, training, and failures. The December 6, 2018, the Inspector General of the DOD issued a 131-page Report titled, Investigation into the United States Air Force's Failure to Submit Devin Kelley's Criminal History Information to the Federal Bureau of Investigation concluding that training on the submission of fingerprints and final disposition reports was ineffective and lacking, both for AFOSI Detachment 225 and the 49th Security Forces Squadron, and "there was no valid reason for the USAF's failures". See p. 111-112; see also p. 96-98 (noting "training did not provide instructions on when or how to submit either the fingerprint card or the final disposition report to the FBI CJIS Division").

Although AFOSI policy required supervisory reviews to include both I2MS and the investigative case file (record copy), the AFOSI Detachment 225 SAIC and Superintendent focused their reviews on the I2MS activities and not on investigative case files" *See* p. 89. "In sum, we concluded that

8

AFOSI Detachment 225 monthly supervisory reviews of Kelley's investigative case file were incomplete and ineffective".

Air Force Article 32 Investigating Officers

Air Force Prosecutors
Air Force prosecutors gathered evidence and handled the conviction of Airman Kelley, and thus have knowledge of his conduct and disposition.

Naval Consolidated Brig
Miramar, California
Commanders, Officers, supervisors, employees

General David Goldfein
Air Force Chief of Staff

General Stephen Wilson
Air Force Vice Chief of Staff

Lt. General Gina Grosso
Air Force Deputy Chief of Staff, Manpower, Personnel & Services

Lt. General John Raymond
Air Force Deputy Chief of Staff, Operations

Lt. General John Cooper, Deputy Chief of Staff, Operations

Air Force Holloman Air Force Base Mental Health Clinic
HAFB Mental Health Clinic had custody of Kelley in the Air Force

Defense Incidence-Based Reporting System
Commanders, Officers, supervisors, employees

**e.   Regarding experts who may be called to testify at the trial in this case, please refer to Plaintiff's Designation of Experts and any amendments or supplements thereto for additional information regarding the facts known to these witnesses and the bases of their opinions.   These expert designations will be made at the time required by the Court's Scheduling Order. Please also refer to the sworn testimony and written reports of these witnesses for further information regarding the facts known to and opinions held by these witnesses.**

**f.   Plaintiff cross-identifies as expert witnesses any person named or to be named by Defendant as a person having expert knowledge about any facts surrounding any issues relevant to the incident in question as expert witnesses who Plaintiff reserves the right to call live at the trial of the cause.   Plaintiff reserves the right to call such persons as expert witnesses, whether or not the designation is subsequently**

**withdrawn. Plaintiff does not have any control over any such witness, nor do they have any superior right to ascertain the subject matter on which any such witness may testify and/or opinions held by any such witness, beyond the information disclosed in deposition testimony and/or by Defendant's discovery responses. In that regard, Plaintiff refers you to Defendant's discovery documents, deposition testimony, and documents produced by Defendant for the subject matter, facts known, and opinions and impressions of these witnesses. Plaintiff reserves the right to obtain opinion testimony from any such witness within their area of expertise as related to this case.**

(ii)   A copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment;

Exhibit 1 – Inspector General, US Department of Defense, Evaluation of the Defense Criminal Investigative Organizations' Defense Incident-Based Reporting System Reporting and Reporting Accuracy, October 29, 2014 (Bates #18-949-1 – 18-949-40). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 2 – Inspector General, US Department of Defense, Evaluation of the Defense Compliance with Criminal History Data Reporting Requirements, February 12, 2015 (Bates #18-949-41 – 18-949-76). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 3 – Inspector General, US Department of Defense, Evaluation Fingerprint Card and Final Disposition Report Submissions by Military Service Law Enforcement Organizations, December 4, 2017 (Bates #18-949-77 – 18-949-168). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 4 – Inspector General, US Department of Defense, Report of Investigation into the United States Air Force's Failure to Submit Devin Kelley's Criminal History Information to the Federal Bureau of Investigation, December 6, 2018 (Bates #18-949-169 – 18-949-306). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs,

Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 5 –Department of Defense Directive Number 7730.47, October 15, 1996 (Bates #18-949-307 – 18-949-315). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 6 –Department of Defense Manual Number 7730.47-M Volume 1, December 7, 2010 (Bates #18-949-316 – 18-949-398). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 7 –U.S. Department of Defense Press Operations, DoD launches review of Devin P. Kelley criminal record notification, Release No. NR-382-17, November 6, 2017 (Bates #18-949-399). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 8 – National Instant Criminal Background Check System Indices (Bates #18-949-400 – 18-949-401). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 9 – U.S. Air Force article, AF Implements Changes to Improve Law Enforcement Database Reporting, November 28, 2017 (Bates #18-949-402). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 10 – U.S. Air Force tweet November 9, 2017 (Bates #18-949-403). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 11 – Report to the Committee on the Judiciary United States Senate from The Honorable Heather Wilson, Secretary of the Air Force, December 6, 2017 (Bates #18-949-404 – 18-949-405). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for

Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 12 – Questions for the Record for Secretary of the United States Air Force Heather Wilson, December 13, 2017 (Bates #18-949-406 – 18-949-410). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 13 – Misdemeanor Crimes of Domestic Violence (Bates #18-949-411). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 14 –Devin Kelley Trial Transcript (Bates #18-949-412 – 18-949-1022). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 15 - El Paso Incident Report, June 7, 2012 (Bates #18-949-1023 – 18-949-1028). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 16 – Devin Kelley Court Martial Order (Bates #18-949-1029 – 18-949-1034). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 17 – Statement of Danielle Kelley (Bates #18-949-1035). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 18 – Devin Kelley Autopsy Report (Bates #18-949-1036 – 18-949-1037). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 19 – Life Expectancy Tables (Bates #18-949-1038 – 18-949-1101). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 20 – Birth Certificate (Bates # EBRADEN-19-691-000002)

Exhibit 21 – Death Certificate of Keith Braden (Bates # EBRADEN-19-691-000002)

Exhibit 22 – Autopsy of Keith Braden (Bates #EBRADEN-19-691-000003 - EBRADEN-19-691-000012)

Exhibit 23 – 2012 Tax Return (Bates #EBRADEN-19-691-000013 - EBRADEN-19-691-000026)

Exhibit 24 – 2013 Tax Return (Bates #EBRADEN-19-691-000027 - EBRADEN-19-691-000042)

Exhibit 25 – 2014 Tax Return (Bates #EBRADEN-19-691-000043 - EBRADEN-19-691-000050)

Exhibit 26 – 2015 Tax Return (Bates #EBRADEN-19-691-000051 - EBRADEN-19-691-000058)

Exhibit 27 – 2016 Tax Return (Bates #EBRADEN-19-691-000059 - EBRADEN-19-691-000066)

Exhibit 28 – 2017 Tax Return (Bates #EBRADEN-19-691-000067 - EBRADEN-19-691-000078)

Exhibit 29 – Social Security Earnings Summary of Keith Braden (Bates #EBRADEN-19-691-000079 - EBRADEN-19-691-000080)

In addition, Plaintiff is in the possession of the materials maintained by the Texas Rangers related to the incident.  In obtaining these materials, Plaintiff entered into an agreement with the Texas Attorney General regarding their release.  As such, Plaintiff will discuss the terms of this agreement with Defendant prior to releasing these materials.

(iii)    A computation of each category of damages claimed by the disclosing party— who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered;

Discovery is still in its early stages and it is premature for Plaintiff to respond to this disclosure; however, please see Plaintiff's Original Complaint(s) and any and all amendments thereto for the categories of damages sought by Plaintiff. Please refer also to Plaintiff's administrative claims filed with the Government for the maximum amount of damages sought by Plaintiff in this case. Please refer to the sworn deposition testimony in this case. Please also refer to Plaintiff's Designation of Experts and any amendments or supplements thereto for additional information regarding the facts known to these witnesses and the bases of their opinions. These expert designations will be made at the time required by the Court's Scheduling Order. Please also refer to the sworn testimony and written reports of these witnesses for further information regarding the facts known to and opinions held by these witnesses.

(iv)   For inspection and copying as under Rule 34, any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment.

Not applicable.

Respectfully Submitted,

/s/ *Justin Demerath*
**JUSTIN DEMERATH**
jdemerath@808west.com
Texas State Bar No. 24034415
**DAVID CAMPBELL**
dcampbell@808west.com
Texas State Bar No. 24057033
**O'HANLON, DEMERATH & CASTILLO, PC**
808 West Avenue
Austin, TX 78701
Telephone: (512) 494-9949
Facsimile: (512) 494-9919

Attorneys for Plaintiff Elizabeth Braden

14

**Certificate of Service**

I certify that the foregoing was served on July 12, 2019, via email service and certified mail, return receipt requested, on the following counsel for the United States.

/s/ *Justin Demerath*
**JUSTIN DEMERATH**

PAUL DAVID STERN
Trial Attorney, Torts Branch
United States Dept. of Justice
Civil Division
United States Department of Justice
P.O. Box 888
Benjamin Franklin Station
Washington, D.C. 20004
T: (202) 616-2197
Paul.David.Stern@usdoj.gov

STEPHEN E. HANDLER
Senior Trial Counsel, Torts Branch
United States Dept. of Justice
Civil Division
United States Department of Justice
P.O. Box 888
Benjamin Franklin Station
Washington, D.C. 20004
T: (202) 616-2197
Stephen.Handler@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| Joe Holcombe, *et al.*,<br>    Plaintiffs,<br><br>v.<br><br>United States of America,<br>    Defendant. | Civil Action No. 5:18-cv-555-XR<br><br>*Consolidated with*:<br> Nos. 5:18-cv-712-XR; 5:18-cv-881-XR;<br> 5:18-cv-944-XR; 5:18-cv-949-XR;<br> 5:18-cv-951-XR; 5:18-cv-1151-XR;<br> 5:19-cv-184-XR; 5:19-cv-289;<br> 5:19-cv-506 XR; 5:19-cv-678;<br> 5:19-cv-691-XR; 5:19-cv-705;<br> 5:19-cv-706-XR; 5:19-cv-715-XR |

## PLAINTIFF ELIZABETH BRADEN'S, AS NEXT FRIEND OF ██████, A MINOR, INITIAL DISCLOSURES PURSUANT TO RULE 26(A)(1)

(i)   The name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment;

**a. Plaintiff hereby designates as persons with knowledge the health care providers referenced in the related health care records in this case, including physicians, technicians, nurses, radiologists, physician's assistants, physical therapists, clinics, hospitals, pharmacies, and their agents, representatives, and employees. While these health care providers are not within the control of Plaintiff and have not been retained by Plaintiff as expert witnesses, Plaintiff reserves the right to elicit opinion testimony from any such health care provider, including expert testimony regarding liability, causation, and damages from those treating healthcare providers relating to the medical treatment provided to the Plaintiff. To the extent it is necessary to call live at the trial or by deposition in this cause any agents, representatives, employees and/or custodian of records for any of the following health care providers, Plaintiff identifies any such custodian as a person who may have expert knowledge regarding issues related to the incident in question to include personal knowledge of the records and concerning the necessity of services rendered and referenced in the records and concerning the reasonableness of the medical bills charged and referenced in the records of the following health care providers. For the**

1

mental impressions held by and the opinions of and facts known by any of the following witnesses, please refer to the related health care records of the Plaintiff.

Plaintiff also designates as persons with knowledge the education providers referenced in the related education records in this case.

| NAME | ADDRESS/TELEPHONE |
|---|---|
| **MEDICAL CARE PROVIDERS** ||
| Employees, agents, custodians and representatives, including:<br>Mario Salas<br>Pablo Pena<br>Jonathan Callison, Karen P.<br>and/or  Present Custodian of Records<br>**Wilson County ESD #2** | 11382 FM 775<br>Floresville, Texas 78114<br>(830) 393-7283 |
| Employees, agents, custodians and representatives, including:<br>Christopher G. Hammet, MD<br>David R. Ekmark, MD<br>Diane Foster, RN<br>Kathy Brown, Scribe<br>Kenneth M. Kingdon, MD<br>Kenneth A. Sandoval, MD<br>Lorine LaGatta, MD<br>Mary Dawn Gorzell, RN<br>Roby P. Joyce, MD<br>Sylvia Alcala and/or Present Custodian of Records<br>**Connally Memorial Medical Center** | 499 10th St<br>Floresville, Texas 78114<br>(830) 393-1428 |
| Employees, agents, custodians and representatives, including:<br>Kenneth Kingdon, MD<br>Sarah Savage and/or Present Custodian of Records<br>**Victoria Emergency Partners** | PO Box 203949<br>Dallas, Texas 75320-3949<br>(855) 580-2961 |
| Employees, agents, custodians and representatives, including:<br>Aaron M. Lewis, DO<br>Abdulgahar S. Abdullah<br>Abhijit G Sunnapwar<br>Achint K Singh, MD<br>Adam W. Spjute, MD<br>Adina J. Campbell, MD<br>Adriana E. Arocha, MD<br>Adrianne M. Thomas<br>Adina J. Campbell, MD<br>Alexandra N. Grace, RN<br>Alexandra I. Quintanilla, MD | 4502 Medical Drive<br>San Antonio, Texas 78229<br>(210) 358-4000 |

Alice Y. Kim, MD
Alina Ghani, MD
Amanda B. Loquias, NP
Amanda M.  Reneer, RN
Amanda Silsbee, RN
Amanda Willauer
Amber N. David
Amber Pedracini, DO
Amy Bomersbach-Sandoval, RN
Anhaid Cuellar
Annabella Barbosa-Prince, RN
Antonia V. Tejeda
Antonio J. Webb, MD
Anupama Y. Gotimukula, MD
Arlene R. Logatoc, RN
Ashley McGinity, MD
Austin E. Horrocks, DO
Benjamin C. Long, MD
Bianca R. Gonzales, OT
Bonita Noel
Boris A. Zelle, MD
Brett M.Hall, MD
Brittani N. Smith, RN
Brittany M. Weber
Bryan A. Everitt, MD
Caitlin E.Sellard, RN
Carlos S Restrepo
Catherine A. Pintac, RN
Cecilia Ugwu
Cesar E.Aguiluz, DO
Chandana Ravikumar, DO
Chalseya V. Williams
Chelsea E. Cook
Chloe Verciglio, VT
Christian A. Lunde, DO
Christina S. Ateek, DO
Christine L. Fleming, MD
Christine L. Morelli
Christopher E, Crane, MD
Christopher J. Valdez
Christy Cervera, RN
Colin Constable, LVN
Corinne H. Watson, RN
Cynthia Alonzo, RVS
Cynthia Quezada, LVN
Cynthia R. Riley, MD

Dale T. Hoang, MS
Dan Pong, MD
Daniel A. Alegre
Daniel J. Gebhard, MD
Daniel Torres
Daniel Wood
Danielle N. Sanchez, RN
David M. Jasso
Darlene F. Metter
Denise Sanchez, LVN
Dev Arwikar
Devin L. Costa, RN
Dewey J. Thoms, MD
Deyanira Aparicio Trujillo, MD
Diana L. Jones, RRT
Diana D. Landis
Dietrich W. Kayser, MD
Dina M. Tom, MD
Dylan G. Pratt, MD
Edward A. Arredondo
Elisa M. Quintanilla
Elizabeth P. Scherer, MD
Elvira Villanueva
Emily D.Gomez, RN
Evan R. Hadaway
Evangelina Hernandez, RN
Evita M. Rocha, MD
Felicia M. Lanmon
Fernando L.Zaragoza, MD
Gabriela Quinones
Gamze Urkun, RN
Gary Legarda
George R. Sontag, MD
Georges M. Haidar, MD
Georgina Gonzales
Gloria Gutierrez
Grace E. Martinez, OPCSR
Grace Param, RN
Grady C. Hogue
Grant D. Hogue, MD
Guhanand Venkataraman,
Haley G. Hutting, MD
Haneme Idrizi, MD
Heather M. Gardner, MD
Hope E. Cordova, DO
Isaac A. Zoch, MD

Izabela Tarasiewicz, MD
Jacob J. Comiskey, MD
Jacqueline D. Antonishek, MD
Jacqueline M.  Ryaboy, MD
Jahanzeb Effendi, MD
Jamie Woodring, RN
Janae Strickland, DO
Janet Deitiker Tracy
Jeannette W. Pape, ST
Jeanette P. Smith
Jeff  H. Svec, MD
Jeffrey A. Faulkner, MD
Jeffrey L Foster
Jennifer Aguilar
Jennifer L. Block, RN
Jennifer R Chrisman, RN
Jennifer N. Goldberg, RT
Jennifer Lobo, UC
Jennifer A. Talley, MSW
Jennifer M. Watkins
Jeremy S. Perlman, MD
Jessica M.Castorena, NP
Jessica L. Luna, BA-CCLS
Jessica Munoz
John R. Admire, MD
John Hirsch, MD
John B. Hyman, MD
John Shepherd, MD
Jonathan Manzo, MD
Jorge Arizabalo, RN
Joseph S. Ayoub
Joseph M. John
Joseph H. Rangel, DO
Joshua Dubois, MD
Julia L. Aulner, PT
Juan M. Febres Valecillos, MD
Juan E. Gongora, RRT
Juan R. Ramos Dominguez, MD
Juan C. Samayoa, MD
Julie B. Rowe
Kal L Clark
Kaleyann J. Herrera
Kara D. Raful, PNP
Karen A. Nadem-Mollaei, RN
Kari E. Smith, MD
Kasey Oroian, RD, LD, CNSC

Katherine Gonzalez, RN
Kathryn E. Vela, GNP
Katie L. Chavarria
Kayeleigh E. Higgerson, DO
Keely M. Voytovich, MD
Kelley J. Walls, RN
Kellye C. Thompson
Kenneth S. Mensch, MD
Kevyn M. Elkins
Khafra S. Garcia Henry, MD
Kimberly M. Blankenship
Kimberly Guevera
Kristal L. Martinez, LVN
Kristell Flores, RN
Kristen Phoenix
Kristopher D. Lowrey, RTS
Kristy L. Mendoza, RN
Kyle J. Johnston, MD
Laura Gutierrez, OT
Laura A. Henry
Laura L. Junco, RN
Leah G. Chodroff, MD
Leanne Ricondo, RN
Lenny Jacob, RN
Leslie A. Crowson, RRT
Lillian Liao, MD
Linda G. Lea, TR
Lisa A. Rupp
Lorraine Bonilla
Louis D. Perez, RN
Lucas Smedley
Ma Alejandra C. Deregla
Macie R. Perkins
Maggie Santana, CCT
Mallory A. Duncan, MD
Mandie A. Svatek, MD
Mandy Walpole, UAP
Maggie I. Santana
Maria Frieda
Maria Ramirez, UAP
Maria C Woosley, DNP
Mario J Vela
Mark C.Garcia, MD
Mark C. Gwin, RN
Marlena Nance
Martha M. Garcia

Mary E. Von Heiland, A PRN-BC
Maureen Sheehan, MD
Meenakshi Rajan, MD
Mehak M. Sumar, RN
Melinda Ver, RN
Melissa A. Luna
Melody S. Spargur
Michael D. Arriaga
Michael C. Johnson, MD
Michael J. Metzner, MD
Michelle Arandes, MD
Michelle N. Larsen, LVN
Mireille Liboiron, DO
Monica Gibson, MS, CCLS, CA
Monica O. Ruiz
Motasem Alkhatib,
Murad M. Khanmohamed
Namiko K. Miller
Nazima Zakhidova, MD
Neeraj Kaur
Nelia A. Acuna, RN
Nicole D. Leber
Noel R. La Guardia
Qi Yan, MD
Qusay A. Abbas
Paige L. Wren, RN
Patricia P. Banner, RN
Prashant Jha, MD
Rachel J. Cobos, MD
Rachel M. Rodriguez, MD
Rashmi S Katre,
Rebecca Wood, RN
Rebecca A. Ytuarte
Rebekah E. Foguth, RN
Rene L. Olvera, MD
Riikka E. Koso, MD
Riley P Scott, MD
Robert C. Ayres, RN
Robert Pfennig
Robert Strehlow, MD
Robert E. Weston
Rosa L. Romero,
Rudy C. Martinez
Ryan J. Prows
Ryan A. Ranells
S. Mikelis, RN

Sabrina A. Carrillo, MD
Samantha Caga
Sandra L. Goss
Sara Koenig
Sara Moreno
Sarah Adkins
Sarah Brooks, RN
Sareh E. Cavazos, MD
Savitha D. Sehgal, MD
Sean Brady
Shane Hawksworth, MD
Shane D. Riggs, DO
Shanique L. Reed-Steen
Shannon B. Mikelis, RN
Sharon Lee, MD
Shawn K. Velez, RN
Stephanie A. Harper, SPT
Stephanie L. Pargas, LMSW
Stephanie Reeves, DO
Stephen Rupp, RPH
Susan Lee, MD
Susy J. De La Garza
Suzanne M. Roddel, RN
Tabitha L. Piegza
Tanja Rios
Taryn J. Shea, RN
Taylor Palczewski, RN
Tennessee Bailey, MD
Tess V.  DeJesus, RN
Thao-Phuong C. Hallett, MD
Thomas Matthews, MD
Treacy M. Rohan, RN
Trevor J. Wait, MD
Tyler C. Roe, DO
Tyler A. Stewart, MD
Veronica Armijo-Garcia, MD
Veronica Medrano, RN
Victoria A. Sparkman, RN
Yajaira I. DeLuna
Yekaterina A. Jordan, MD
Zachary Adman, RN
Zachary L. Brown, DDS
Zachary Fulton
Zachary C. Garrett, PA
Brenda J. Gutierrez, Awoala Banigo, & Leticia Borrego
and/or

| Present Custodian of Records **University Health System** | |
|---|---|
| Employees, agents, custodians and representatives, including: Aaron M. Lewis, MD Achint K. Singh, MD Alice Molina, MA Amanda B. Loquias, MD Alessandro Gregorat, MD Boris A. Zelle, MD Carlos S. Restrepo, MD Dan Pong, MD Daniel J. Gebhard, MD Darlene F. Metter, MD Dev K. Arwikar, MD Dina M. Tom, MD Elizabeth P. Scherer, MD Frank Scribbick, MD Georges M. Haidar, MD Grant D. Hogue, MD Guhanand Venkataraman, MD Haneme Idrizi, MD Jeffrey L. Foster, MD Juan Valecillos Febres, MD Kal Clark, MD Leah Gleaves Chodroff, MD Leonor Alvarado, TECH Lillian F. Liao, MD Lisa T. Lopez, MD Mallory Anne Duncan, MD Mandie A. Svatek, MD Mario Vela, MD Mark G. Davies, MD Mary Elizabeth von Heiland, MD Maureen K. Sheehan, MD Michael C. Johnson, MD Michelle M. Arandes, MD Michelle San Roman Minnette Son, MD Motasem Alkhatib, MD Muhammed Rabbani, MD Rashmi S. Katre, MD Sabrina A. Carrillo, MD Sara M. Koenig, MD Stephanie Reeves, MD Thao-Phuong C. Hallett, MD | Medical Arts and Research Center 8300 Floyd Curl Drive San Antonio, Texas 78229 and PO Box 759 San Antonio, Texas 78293 |

| | |
|---|---|
| Veroniza Armijo-Garcia, MD<br>Yvonne Hansel<br>Zachary Fulton, MD<br>Valerie Works-Gomez & Carol J. Menig and/or Present Custodian of Records<br>**University of Texas Health Science Center at SA** | |
| Employees, agents, custodians and representatives, including:<br>L. Brook<br>Mary Rios, LVN, Richard A. Martinez, III and/or Present Custodian of Records<br>**Angelic Medical Designs** | 7043 Bandera Road<br>San Antonio, Texas 78238<br>(210) 384-9201 |
| Employees, agents, custodians and representatives, including:<br>Estella Garza<br>Nancy Villarreal  and/or Present Custodian of Records<br>**Any Baby Can** | 217 Howard<br>San Antonio, Texas 78212<br>(210) 227-0170 |
| Employees, agents, custodians and representatives, including:<br>Ashley Jesse, MC, LPC-S<br>Tami Logsdon, LPC-S and/or Present Custodian of Records<br>**Children's Bereavement Center of South Texas** | 205 W. Olmos Drive<br>San Antonio, Texas 78212<br>(210) 736-4847 |
| Employees, agents, custodians and representatives, including:<br>Cynthia Riley, MD<br>Tierney Savage and/or Present Custodian of Records<br>**Children's Rehabilitation Institute Teleton USA** | 10839 Quarry Park<br>San Antonio, Texas 78233<br>(844) 206-4512 |
| Employees, agents, custodians and representatives, including:<br>Anissa Arreola<br>Courtney Burgoon, RN<br>Kelsey Ripple<br>Lisa Stacy<br>Richard S. Vaughn, MD<br>Robert Bradley Rather, PA<br>Stephen Dietrich Swearington, MD<br>Sherry Nosayamen Igbinigie, MD<br>Susannah Nicholson, MD<br>L. Siverson & Jinny McCulloch and/or Present Custodian of Records<br>**Guadalupe Regional Medical Center** | 1215 East Court Street<br>Seguin, Texas 78155<br>(830) 379-2411 |
| Employees, agents, custodians and representatives, including:<br>Ashley Joya, LVN<br>Glendaliz Bosques, MD | 1333 Moursand Street<br>Houston, Texas 77030<br>(713) 797-5929 |

| | |
|---|---|
| Rosalinda Santillan, LVN<br>Brittany Whittaker & Minerva Antu<br>and/or Present Custodian of Records<br>**Memorial Hermann The Institute for Rehabilitation and Research Hospital** | |
| Employees, agents, custodians and representatives, including:<br>Amanda Loquias, MD<br>Cynthia Riley, MD<br>Glendaliz Bosques, MD<br>Justin Bridges, PT<br>Kara Goode, PT<br>Melody Spargur, RN<br>Michelle A. Little and/or Present Custodian of Records<br>**Momentum Physical Therapy** | 13857 US Hwy 87 West Unit 400<br>LaVernia, TX 78121-5919<br>(830) 253-2101 |
| Employees, agents, custodians and representatives, including:<br>Gary Prescott, CO/LPO<br>Gizeh Marotta, Natalie Prescott  and/or Present Custodian of Records<br>**Prescott's Orthotics & Prosthetics** | 6715 San Pedro<br>San Antonio, Texas 78216<br>(210) 224-0726 |
| Employees, agents, custodians and representatives, including:<br>Alexandria Marshall and/or Present Custodian of Records<br>**SouthernCross Ambulance** | 1718 S. state Hwy 46<br>New Braunfels, Texas 78130<br>(830) 608-0296<br>(830) 387-5236 |
| Employees, agents, custodians and representatives, including:<br>Anupama Gotimukula, MD<br>Christine Liu Fleming, MD<br>Fernando Zaragoza, MD<br>Haley Hutting, MD<br>John Hirsch, MD<br>John Shepard, MD<br>Murali Mamidi, MD<br>Robert Strehlow, MD<br>Savitha Sehgal, MD<br>Sharon Lee, MD<br>Corinne Soboloski and/or Present Custodian of Records<br>**Tejas Anesthesia** | 4242 Medical Drive,<br>Suite 3100<br>San Antonio, Texas 78229<br>(210) 615-1187 |
| Employees, agents, custodians and representatives, including:<br>Dolores Wages, RN<br>Kristen Godett, RN<br>Mariana Perez-Valle<br>Shelley-Ann Passley-Brown, LVN | 7 Upper Balcones Road<br>Boerne, TX 78006<br>(210) 360-1662 |

| | |
|---|---|
| Katie Clark, RN, Dershie Kurtz and/or Present Custodian of Records<br>**Texas Kids Home Therapy and Nursing** | |
| Employees, agents, custodians and representatives, including:<br>Donald M. Currie, MD<br>Natasha Marable, Celina Contreras Lopez and/or Present Custodian of Records<br>**The Children's Hospital of San Antonio (Christus Santa Rosa Health Care)** | 333 North Santa Rosa Street<br>San Antonio, Texas 78207<br>(210) 704-3760 |
| Employees, agents, custodians and representatives, including:<br>Suzanne Cuda, MD<br>Annabelle Martinez and/or Present Custodian of Records<br>**Christus Physician Group/BCM Physicians of San Antonio** | PO Box 14607<br>Belfast, ME 04915<br>(866) 320-9219 |
| <div align="center">**EDUCATIONAL PROVIDERS**</div> | |
| A. Wood, Teacher<br>Carrie Walker, Teacher<br>Casey Pietka, General Education Representative<br>Christina Broadway, School Nurse<br>Deborah Casey, Counselor<br>Jessica Fry, General Education Representative<br>Jodi Forrest<br>Krista Hocek, FNP-C<br>Lorna Hodge, Teacher<br>Mistelle Burg, Teacher<br>Nancy Bielefeidt, Counselor<br>Rhonda Cunningham, PhD, Licensed Specialist in School Psychology<br>Roseanne Armendariz, Special Education Representative<br>Tracey Parnell, Teacher<br>Wendy Pruitt, Administrator<br>Magdalene Fuller and/or Present Custodian of Records<br>**La Vernia Primary School** | 249 FM 1346 S.<br>La Vernia, Texas 78121<br>(830) 799-6660 |

    **b. Plaintiff identifies herself as persons with knowledge of relevant facts pertaining to the incident in question:**

| NAME | ADDRESS/TELEPHONE |
|---|---|
| <div align="center">**PARTIES**</div> | |
| Elizabeth Braden, As Next Friend of ███████, a Minor<br>c/o Justin B. Demerath<br>O'HANLON, DEMERATH & CASTILLO, PC | 808 West Avenue<br>Austin, Texas 78701<br>(512) 494-9949 |

**c. Plaintiff identifies the following family members, friends, and other persons as persons with knowledge of relevant facts:**

Academy Sports + Outdoors in San Antonio
> Kelley bought a Ruger 5.56 mm assault rifle from Academy Sports + Outdoors in San Antonio after clearing a background check of the NICS. Store personnel will have knowledge of the transaction.

El Paso Police
Headquarters:
911 N. Raynor
El Paso, TX 79903
(915) 212-4000
> The El Paso police apprehended Kelley after he escaped. See Exhibit 15.

First Baptist Church of Sutherland Springs, Texas
Frank Pomeroy, Pastor
First Baptist Church
216 4th Street
Sutherland Springs, Texas 78161
> This is the church where the shooting occurred. The pastor was not there that morning, but on information and belief lost his daughter and many beloved friends in the massacre. He will have knowledge of their community and relationships and the impact of the shooting.

Danielle Shield Kelley
> Married to Airman Devin Kelley at the time of the church shooting.

Tessa Kelley (nee' Loge)
> Married to Airman Devin Kelley while he was in the Air Force and reported him for abuse to herself and infant child.

Johnnie Langendorff
Stephen Willeford
> Stephen Willeford confronted Kelley and chased him away from the church. Johnnie Langendorff stopped his vehicle to pick up Mr. Willeford and give chase.

Steve Moore
Wilson County Sheriff's Department
> Investigator

Harold Schott, Justice of the Peace Pct. #3
Wilson County

Terry Snyder
Texas Ranger Division
Texas Department of Public Safety
6100 Guadalupe Street, Building E
Austin, TX 78752
      Investigator and Custodian of Records

Sunland Park Police Department
1000 McNutt Rd
Sunland Park, NM 88063

Deborah Braden
      Deborah Braden is the mother of Elizabeth Braden. She has knowledge of the grief and trauma of Elizabeth Braden, as well as her own traumatic injuries, grief, trauma and other elements of damages and that of her family.

Robert Braden
      Robert Braden is the brother of Elizabeth Braden. He has knowledge of the grief and trauma of Elizabeth Braden, as well as his own injuries, grief, trauma and other elements of damages and that of his family.

Rebecca Metcalf
      Rebecca Metcalf is the sister of Keith Braden. She has knowledge of the grief and trauma of Elizabeth Braden, as well as her own grief, trauma and other elements of damages and that of her family.

**d. Plaintiff names the Defendant herein, as well as its agents, representatives, and/or employees or former agents, representatives, or employees, as persons with knowledge of relevant facts. Plaintiff further names the Defendant, as well as its agents, representatives, and/or employees or former agents, representatives, or employees, as persons from whom expert testimony may be elicited regarding liability, causation and/or damages, although Plaintiff does not necessarily vouch for all the opinion testimony of such persons. Plaintiff refers you to the Department of Defense Inspector General reports from 2018, 2017, 2014, and 2015; Defendant's discovery documents; deposition testimony; documents produced by Defendant; and related medical records for the subject matter, facts known, and opinions and impressions of these witnesses.**

Air Force personnel
      Air Force personnel are expected to have knowledge of Kelley's conduct in the Air Force and mental problems, including but not limited to his attempt to bring weapons onto the base to kill officers.

Additional Air Force personnel are provided below:
      Air Force spokesperson, Ann Stefanek. On November 28, 2017, an Air Force spokesperson, Ann Stefanek, admitted that the failure to follow

Pentagon guidelines to report Kelley's crimes to the FBI was "not an isolated incident and similar reporting lapses occurred at other locations."

Heather Wilson
Secretary of the Air Force

Deborah Lee James
Secretary of the Air Force

Col. Kirk Stabler
Air Force Commander
Headquarters Air Force Office of Special Investigations
Quantico, Virginia

Brig. General Andrea Tullos
Air Force Director
Director of Security Forces
DCS/Logistics, Engineering & Force Protection
Department of the Air Force
Washington, D.C.

Director of Special Investigations
Department of the Air Force
Washington, D.C.

HQ Air Force Office of Special Investigations
Department of the Air Force
Superintendent, IT Integrations HQ AFOSI
Quantico, Virginia

Department of the Air Force
HQ USAF
Washington, D.C.

Deputy Director of Security Forces
DCS/Logistics, Installations & Missions Support

Defense Human Resources Activity
Headquarters
Pamela Mitchell, Director
4800 Mark Center Drive, Suite 06J25-0l
Alexandria, VA 22350-4000

Department of the Air Force
HQ Air Force Office of Special Investigations
Quantico, VA

Brigadier General, Keith Givens
USAF Commander

Department of Defense
Under Secretary of Defense for Intelligence
Deputy Chief Management Officer

Department of Defense
Military Criminal Investigative Organizations (MCIOs)
        Commanders, Officers, supervisors and employees
Defense Criminal Investigative Organizations (DCIOs)
        Commanders, Officers, supervisors and employees

Office of Inspector General for the DOD

The Office of Inspector General for the DOD has issued four reports investigating and detailing the failures of the Air Force and Department of Defense, including negligence, negligent training, and negligent supervision. See attached reports:

Report No. DODIG-2019-030, Inspector General U.S. Department of Defense, Dec. 6, 2018, Report of Investigation into the United States Air Force's Failure to Submit Devin Kelley's Criminal History Information to the Federal Bureau of Investigation; see id. at p. 117, "The USAF concurred with this report and its recommendations." https://www.dodig.mil/reports.html/Article/1707300/reportof-investigation-into-the-united-states-air-forces-failure-to-submit-dev/

Report No. DODIG-2018-035, Inspector General U.S. Department of Defense, Dec. 4, 2017, *Evaluation of Fingerprint Card and Final Disposition Report Submissions by Military Service Law Enforcement Organizations*. https://www.dodig.mil/reports.html/Search/DODIG-2018-035/

The DOD concluded that training on the submission of fingerprints and final disposition reports was ineffective and lacking, both for AFOSI Detachment 225 and the 49th Security Forces Squadron, and "there was no valid reason for the USAF's failures". *See* p. 111-112; *see also* p. 96-98 (noting "training did not provide instructions on when or how to submit either the fingerprint card or the final disposition report to the FBI CJIS Division"). Indeed, the DOD "determined that this failure to submit Kelley's fingerprints was part of a systemic problem in AFOSI Detachment 225." See p. 94. Worse, the case agent was actually deployed for seven months during the investigation and reported that he complained he could not do his job, stating, "Boss, I'm burnt out, I'm so burnt out." "Boss, I want to get out. I can't do this anymore."

Report No. DODIG-2015-081, Inspector General U.S. Department of Defense, February 12, 2015, *Evaluation of Department of Defense Compliance with Criminal History Data Reporting Requirements*

Report No. DODIG-2015-011, Inspector General U.S. Department of Defense, October 29, 2014, *Evaluation of the Defense Criminal Investigative Organizations' Defense Incident-Based Reporting System Reporting and Reporting Accuracy*

Air Force 49th Security Forces Squadron and its investigators, Military Law Enforcement Officers (LEOs), or AFSFC Police Services Branch
Confinement Facility

Commanders, Officers, supervisors, employees
The 49th Security Forces Squadron investigated Airman Kelley. The 49th Security Forces squadron investigators and/or Military Law Enforcement Officers (LEOs) had responsibilities to gather fingerprints and report, and thus will have knowledge of their responsibilities, training, and failures. The December 6, 2018, the Inspector General of the DOD issued a 131-page Report titled, *Investigation into the United States Air Force's Failure to Submit Devin Kelley's Criminal History Information to the Federal Bureau of Investigation* concluding that training on the submission of fingerprints and final disposition reports was ineffective and lacking, both for AFOSI Detachment 225 and the 49th Security Forces Squadron, and "there was no valid reason for the USAF's failures". *See* p. 111-112; *see also* p. 96-98 (noting "training did not provide instructions on when or how to submit either the fingerprint card or the final disposition report to the FBI CJIS Division"). Air Force Office of Special Investigations

AFSFC Police Services Branch training focused on collection of fingerprints, but failed to address submitting fingerprint cards and final disposition reports to the FBI CJIS. Their Management Internal Control Toolset (MICT) checklist items are supposed to be monitored and assessed as part of the installation commander's self-inspection program. Monthly supervisory reviews were "incomplete and ineffective. *See* Report No. DODIG-2019-030 p. 110.

Airman Kelley's Air Force Commander

Kelley's Commander issued a no contact order and has knowledge of Kelley's conduct and training in the Air Force.

Airman Kelley's Air Force Commander

Kelley's Commander issued a no contact order, prepared a confinement package stating that he was "convinced" that Kelley was "dangerous and

likely to harm someone if released", and has knowledge of Kelley's conduct and training in the Air Force.

Kelley's former Supervisor in the Air Force

Kelley sent a threatening Facebook message to his former supervisor in the Air Force after his discharge.  She will have knowledge of Kelley's conduct and condition and threats.

Case Agent responsible for Airman Kelley

The Case Agent will have knowledge for the reasons he could not properly report Kelley to the FBI, as detailed by the DOD's report.

Boss of Case Agent responsible for Airman Kelley

The boss of the Case Agent will have knowledge for the reasons the Case Agent could not properly report Kelley to the FBI, as detailed by the DOD's report.

Peak Behavioral Health Services and Xavier Alvarez
5055 McNutt Rd.
Santa Teresa, NM 88008

Peak Behavioral Health Services (PBHS) had a program for military personnel and diagnosed Kelley with various mental and emotional disorders. On information and belief, this is the facility from which Kelley attempted to buy guns to kill his commanding officers, and the facility that Kelley escaped from and fled to El Paso.

According to an El Paso police report, police were informed that Kelley "was a danger to himself and others as he had already been caught sneaking firearms onto Holloman Air Force Base". Police were further advised that Airman Kelley "suffered from mental disorders" and that he "was attempting to carry out death threats" against "his military chain of command." Xavier Alvarez, who worked for Peak Behavioral and who reported Kelley to police for the escape, later confirmed to NBC News that Kelley "verbalized that he wanted to get some kind of retribution to his chain of command." Other patients reported that Kelley was doing something suspicious on computers, and the military found that Kelley was "ordering weapons and tactical gear and magazines to a P.O. Box in San Antonio." Alvarez was quoted as saying, "This kid – he was hollow," and "I could never reach him."

Air Force Security Forces Squadron
Holloman Air Force Base

Commanders, Officers, supervisors, employees
Cmdr. Nathan McLeod-Hughes

Air Force 49th Logistics Readiness Squadron
Commanders, Officers, supervisors, employees

Air Force Detachment 225 and/or Holloman Air Force Base Office of Special Investigations

Commanders, Officers, Special Agents, supervisors, employees
AFOSI Detachment 225 and/or Holloman Air Force Base Office of Special Investigation had responsibilities to gather fingerprints and report, and thus will have knowledge of their responsibilities, training, and failures. The December 6, 2018, the Inspector General of the DOD issued a 131-page Report titled, Investigation into the United States Air Force's Failure to Submit Devin Kelley's Criminal History Information to the Federal Bureau of Investigation concluding that training on the submission of fingerprints and final disposition reports was ineffective and lacking, both for AFOSI Detachment 225 and the 49th Security Forces Squadron, and "there was no valid reason for the USAF's failures". See p. 111-112; see also p. 96-98 (noting "training did not provide instructions on when or how to submit either the fingerprint card or the final disposition report to the FBI CJIS Division").

Although AFOSI policy required supervisory reviews to include both I2MS and the investigative case file (record copy), the AFOSI Detachment 225 SAIC and Superintendent focused their reviews on the I2MS activities and not on investigative case files" *See* p. 89. "In sum, we concluded that AFOSI Detachment 225 monthly supervisory reviews of Kelley's investigative case file were incomplete and ineffective".

Air Force Article 32 Investigating Officers

Air Force Prosecutors
Air Force prosecutors gathered evidence and handled the conviction of Airman Kelley, and thus have knowledge of his conduct and disposition.

Naval Consolidated Brig
Miramar, California
Commanders, Officers, supervisors, employees

General David Goldfein
Air Force Chief of Staff

General Stephen Wilson

19

Air Force Vice Chief of Staff

Lt. General Gina Grosso
Air Force Deputy Chief of Staff, Manpower, Personnel & Services

Lt. General John Raymond
Air Force Deputy Chief of Staff, Operations

Lt. General John Cooper, Deputy Chief of Staff, Operations

Air Force Holloman Air Force Base Mental Health Clinic
     HAFB Mental Health Clinic had custody of Kelley in the Air Force

Defense Incidence-Based Reporting System
     Commanders, Officers, supervisors, employees

**e.   Regarding experts who may be called to testify at the trial in this case, please refer to Plaintiff's Designation of Experts and any amendments or supplements thereto for additional information regarding the facts known to these witnesses and the bases of their opinions.   These expert designations will be made at the time required by the Court's Scheduling Order. Please also refer to the sworn testimony and written reports of these witnesses for further information regarding the facts known to and opinions held by these witnesses.**

**f.   Plaintiff cross-identifies as expert witnesses any person named or to be named by Defendant as a person having expert knowledge about any facts surrounding any issues relevant to the incident in question as expert witnesses who Plaintiff reserves the right to call live at the trial of the cause.   Plaintiff reserves the right to call such persons as expert witnesses, whether or not the designation is subsequently withdrawn.   Plaintiff does not have any control over any such witness, nor do they have any superior right to ascertain the subject matter on which any such witness may testify and/or opinions held by any such witness, beyond the information disclosed in deposition testimony and/or by Defendant's discovery responses.   In that regard, Plaintiff refers you to Defendant's discovery documents, deposition testimony, and documents produced by Defendant for the subject matter, facts known, and opinions and impressions of these witnesses.   Plaintiff reserves the right to obtain opinion testimony from any such witness within their area of expertise as related to this case.**

(ii)   A copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment;

Exhibit 1 – Inspector General, US Department of Defense, Evaluation of the Defense Criminal Investigative Organizations' Defense Incident-Based Reporting System Reporting and Reporting Accuracy, October 29, 2014 (Bates #18-949-1 – 18-949-40). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 2 – Inspector General, US Department of Defense, Evaluation of the Defense Compliance with Criminal History Data Reporting Requirements, February 12, 2015 (Bates #18-949-41 – 18-949-76). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 3 – Inspector General, US Department of Defense, Evaluation Fingerprint Card and Final Disposition Report Submissions by Military Service Law Enforcement Organizations, December 4, 2017 (Bates #18-949-77 – 18-949-168). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 4 – Inspector General, US Department of Defense, Report of Investigation into the United States Air Force's Failure to Submit Devin Kelley's Criminal History Information to the Federal Bureau of Investigation, December 6, 2018 (Bates #18-949-169 – 18-949-306). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 5 –Department of Defense Directive Number 7730.47, October 15, 1996 (Bates #18-949-307 – 18-949-315). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 6 –Department of Defense Manual Number 7730.47-M Volume 1, December 7, 2010 (Bates #18-949-316 – 18-949-398). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 7 –U.S. Department of Defense Press Operations, DoD launches review of Devin P. Kelley criminal record notification, Release No. NR-382-17, November 6, 2017 (Bates #18-949-399). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 8 – National Instant Criminal Background Check System Indices (Bates #18-949-400 – 18-949-401). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 9 – U.S. Air Force article, AF Implements Changes to Improve Law Enforcement Database Reporting, November 28, 2017 (Bates #18-949-402). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 10 – U.S. Air Force tweet November 9, 2017 (Bates #18-949-403). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 11 – Report to the Committee on the Judiciary United States Senate from The Honorable Heather Wilson, Secretary of the Air Force, December 6, 2017 (Bates #18-949-404 – 18-949-405). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 12 – Questions for the Record for Secretary of the United States Air Force Heather Wilson, December 13, 2017 (Bates #18-949-406 – 18-949-410). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 13 – Misdemeanor Crimes of Domestic Violence (Bates #18-949-411). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 14 –Devin Kelley Trial Transcript (Bates #18-949-412 – 18-949-1022). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 15 - El Paso Incident Report, June 7, 2012 (Bates #18-949-1023 – 18-949-1028). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 16 – Devin Kelley Court Martial Order (Bates #18-949-1029 – 18-949-1034). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 17 – Statement of Danielle Kelley (Bates #18-949-1035). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 18 – Devin Kelley Autopsy Report (Bates #18-949-1036 – 18-949-1037). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 19 – Life Expectancy Tables (Bates #18-949-1038 – 18-949-1101). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 20 – Wilson County ESD#2 medical records (Bates #ZZAVALA-19-691-000001 - ZZAVALA-19-691-000007)

Exhibit 21 – Wilson County ESD#2 billing records (Bates #ZZAVALA-19-691-000008 - ZZAVALA-19-691-000010)

Exhibit 22 – Connally Memorial Medical Center medical records (Bates #ZZAVALA-19-691-000011 - ZZAVALA-19-691-000052)

Exhibit 23 – Connally Memorial Medical Center updated medical records (Bates #ZZAVALA-19-691-000053 - ZZAVALA-19-691-000092)

Exhibit 24 – Connally Memorial Medical Center billing records (Bates #ZZAVALA-19-691-000093 - ZZAVALA-19-691-00097)

Exhibit 25 – Connally Memorial Medical Center updated billing records (Bates #ZZAVALA-19-691-000098 - ZZAVALA-19-691-000107)

Exhibit 26 – Connally Memorial Medical Center radiology records (Bates #ZZAVALA-19-691-000108 - ZZAVALA-19-691-000110)

Exhibit 27 – Victoria Emergency Partners billing records (Bates #ZZAVALA-19-691-000111 - ZZAVALA-19-691-000112)

Exhibit 28 – Universal Health System medical records (Bates #ZZAVALA-19-691-000113 - ZZAVALA-19-691-003534)

Exhibit 29 – Universal Health System updated medical records (Bates #ZZAVALA-19-691-003535 - ZZAVALA-19-691-003638)

Exhibit 30 – Universal Health System billing records (Bates #ZZAVALA-19-691-003639 - ZZAVALA-19-691-003764)

Exhibit 31 – Universal Health System updated billing records (Bates #ZZAVALA-19-691-003765 - ZZAVALA-19-691-003792)

Exhibit 32 – University of Texas Health Science Center at SA medical records (Bates #ZZAVALA-19-691-003793 - ZZAVALA-19-691-003831)

Exhibit 33 – University of Texas Health Science Center at SA updated medical records (Bates #ZZAVALA-19-691-003832 - ZZAVALA-19-691-003873)

Exhibit 34 – University of Texas Health Science Center at SA billing records (Bates #ZZAVALA-19-691-003874 - ZZAVALA-19-691-003900)

Exhibit 35 – University of Texas Health Science Center at SA updated billing records (Bates #ZZAVALA-19-691-003901 - ZZAVALA-19-691-003903)

Exhibit 36 – Angelic Medical Designs medical records (Bates #ZZAVALA-19-691-003904-ZZAVALA-19-691-003924)

Exhibit 37 – Angelic Medical Designs billing records (Bates #ZZAVALA-19-691-003925 - ZZAVALA-19-691-003928)

Exhibit 38 – Any Baby Can medical records (Bates #ZZAVALA-19-691-003929-ZZAVALA-19-691-003965)

Exhibit 39 – Children's Bereavement Center of South Texas medical records (Bates #ZZAVALA-19-691-003966 - ZZAVALA-19-691-003999)

Exhibit 40 – Children's Bereavement Center of South Texas billing records (Bates #ZZAVALA-19-691-004000 - ZZAVALA-19-691-004003)

Exhibit 41 – Children's Bereavement Center of South Texas billing records (Bates #ZZAVALA-19-691-004004 - ZZAVALA-19-691-004007)

Exhibit 42 – Guadalupe Regional Medical Center medical records (Bates #ZZAVALA-19-691-004008 - ZZAVALA-19-691-004039)

Exhibit 43 – Guadalupe Regional Medical Center billing records (Bates #ZZAVALA-19-691-004040 - ZZAVALA-19-691-004045)

Exhibit 44 – Memorial Hermann The Institute for Rehabilitation and Research Hospital medical records (Bates #ZZAVALA-19-691-004046 - ZZAVALA-19-691-004240)

Exhibit 45 – Memorial Hermann The Institute for Rehabilitation and Research Hospital billing records (Bates #ZZAVALA-19-691-004241 - ZZAVALA-19-691-004247)

Exhibit 46 – Momentum Physical Therapy medical records (Bates #ZZAVALA-19-691-004248 - ZZAVALA-19-691-004607)

Exhibit 47 – Momentum Physical Therapy updated medical records (Bates #ZZAVALA-19-691-004608 - ZZAVALA-19-691-004871)

Exhibit 48 – Momentum Physical Therapy billing records (Bates #ZZAVALA-19-691-004872 - ZZAVALA-19-691-004905)

Exhibit 49 – Momentum Physical Therapy updated billing records (Bates #ZZAVALA-19-691-004906 - ZZAVALA-19-691-004951)

Exhibit 50 – Prescott's Orthotics & Prosthetics medical records (Bates #ZZAVALA-19-691-004952 - ZZAVALA-19-691-004965)

Exhibit 51 – Prescott's Orthotics & Prosthetics updated medical records (Bates #ZZAVALA-19-691-004966 - ZZAVALA-19-691-005003)

Exhibit 52 – Prescott's Orthotics & Prosthetics billing records (Bates #ZZAVALA-19-691-005004 - ZZAVALA-19-691-005006)

Exhibit 53 – Prescott's Orthotics & Prosthetics updated billing records (Bates #ZZAVALA-19-691-005007 - ZZAVALA-19-691-005013)

Exhibit 54 – SouthernCross Ambulance medical records (Bates #ZZAVALA-19-691-005014 - ZZAVALA-19-691-005020)

Exhibit 55 – SouthernCross Ambulance billing records (Bates #ZZAVALA-19-691-005021 - ZZAVALA-19-691-005025)

Exhibit 56 – Tejas Anesthesia billing records (Bates #ZZAVALA-19-691-005026 - ZZAVALA-19-691-005029)

Exhibit 57 – Texas Kids Home Therapy medical records (Bates #ZZAVALA-19-691-005030 - ZZAVALA-19-691-005706)

Exhibit 58 – Texas Kids Home Therapy billing records (Bates #ZZAVALA-19-691-005707 - ZZAVALA-19-691-005717)

Exhibit 59 – The Children's Hospital of San Antonio medical records (Bates #ZZAVALA-19-691-005718 - ZZAVALA-19-691-005728)

Exhibit 60 – The Children's Hospital of San Antonio billing records (Bates #ZZAVALA-19-691-005729 - ZZAVALA-19-691-005730)

Exhibit 61 – Christus Physician Group billing records (Bates #ZZAVALA-19-691-005731 - ZZAVALA-19-691-005732)

Exhibit 62 - La Vernia Primary School education records (Bates #ZZAVALA-19-691-005733 - ZZAVALA-19-691-005775)

Exhibit 63 – Birth Certificate of ███████ (Bates #ZZAVALA-19-691-005776)


In addition, Plaintiff is in the possession of the materials maintained by the Texas Rangers related to the incident. In obtaining these materials, Plaintiff entered into an agreement with the Texas Attorney General regarding their release. As such, Plaintiff will discuss the terms of this agreement with Defendant prior to releasing these materials.

(iii)   A computation of each category of damages claimed by the disclosing party— who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered;

Discovery is still in its early stages and it is premature for Plaintiff to respond to this disclosure; however, please see Plaintiff's Original Complaint(s) and any and all amendments thereto for the categories of damages sought by Plaintiff. Please refer also to Plaintiff's administrative claims filed with the Government for the maximum amount of damages sought by Plaintiff in this case. Please refer to the sworn deposition testimony in this case. Please also refer to Plaintiff's Designation of Experts and any amendments or supplements thereto for additional information regarding the facts known to these witnesses and the bases of their opinions. These expert designations will be made at the time required by the Court's Scheduling Order. Please also refer to the sworn testimony and written reports of these witnesses for further information regarding the facts known to and opinions held by these witnesses.

(iv)    For inspection and copying as under Rule 34, any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment.

Not applicable.

Respectfully Submitted,

/s/ *Justin Demerath*
**JUSTIN DEMERATH**
jdemerath@808west.com
Texas State Bar No. 24034415
**DAVID CAMPBELL**
dcampbell@808west.com
Texas State Bar No. 24057033
**O'HANLON, DEMERATH & CASTILLO, PC**
808 West Avenue
Austin, TX 78701
Telephone: (512) 494-9949
Facsimile: (512) 494-9919

Attorneys for Plaintiff Elizabeth Braden, As Next Friend of ████████, a Minor

27

**Certificate of Service**

I certify that the foregoing was served on July 12, 2019, via email service and certified mail, return receipt requested, on the following counsel for the United States.

/s/ *Justin Demerath*
**JUSTIN DEMERATH**

PAUL DAVID STERN
Trial Attorney, Torts Branch
United States Dept. of Justice
Civil Division
United States Department of Justice
P.O. Box 888
Benjamin Franklin Station
Washington, D.C. 20004
T: (202) 616-2197
Paul.David.Stern@usdoj.gov

STEPHEN E. HANDLER
Senior Trial Counsel, Torts Branch
United States Dept. of Justice
Civil Division
United States Department of Justice
P.O. Box 888
Benjamin Franklin Station
Washington, D.C. 20004
T: (202) 616-2197
Stephen.Handler@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

Joe Holcombe, *et al.*,
    Plaintiffs,

v.

United States of America,
    Defendant.

Civil Action No. 5:18-cv-555-XR

*Consolidated with*:
Nos. 5:18-cv-712-XR; 5:18-cv-881-XR;
5:18-cv-944-XR; 5:18-cv-949-XR;
5:18-cv-951-XR; 5:18-cv-1151-XR;
5:19-cv-184-XR; 5:19-cv-289;
5:19-cv-506 XR; 5:19-cv-678;
5:19-cv-691-XR; 5:19-cv-705;
5:19-cv-706-XR; 5:19-cv-715-XR

## PLAINTIFF JENNIFER RACEY (WARDEN)'S INITIAL DISCLOSURES PURSUANT TO RULE 26(A)(1)

(i)    The name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment;

**a. Plaintiff hereby designates as persons with knowledge the health care providers referenced in the related health care records in this case, including physicians, technicians, nurses, radiologists, physician's assistants, physical therapists, clinics, hospitals, pharmacies, and their agents, representatives, and employees. While these health care providers are not within the control of Plaintiff and have not been retained by Plaintiff as expert witnesses, Plaintiff reserves the right to elicit opinion testimony from any such health care provider, including expert testimony regarding liability, causation, and damages from those treating healthcare providers relating to the medical treatment provided to the Plaintiff. To the extent it is necessary to call live at the trial or by deposition in this cause any agents, representatives, employees and/or custodian of records for any of the following health care providers, Plaintiff identifies any such custodian as a person who may have expert knowledge regarding issues related to the incident in question to include personal knowledge of the records and concerning the necessity of services rendered and referenced in the records and concerning the reasonableness of the medical bills charged and referenced in the records of the following health care providers. For the mental impressions held by and the opinions of and facts known by any of the following witnesses, please refer to the related health care records of the Plaintiff.**

1

Plaintiff may supplement medical records and bills from Paul T. Ingmundson/Key Health.

**b. Plaintiff identifies herself as persons with knowledge of relevant facts pertaining to the incident in question:**

| NAME | ADDRESS/TELEPHONE |
|------|-------------------|
| **PARTIES** | |
| Jennifer Racey<br>c/o Justin B. Demerath<br>O'HANLON, DEMERATH & CASTILLO, PC | 808 West Avenue<br>Austin, Texas 78701<br>(512) 494-9949 |

**c. Plaintiff identifies the following family members, friends, and other persons as persons with knowledge of relevant facts:**

Academy Sports + Outdoors in San Antonio
    Kelley bought a Ruger 5.56 mm assault rifle from Academy Sports + Outdoors in San Antonio after clearing a background check of the NICS. Store personnel will have knowledge of the transaction.

El Paso Police
Headquarters:
911 N. Raynor
El Paso, TX 79903
(915) 212-4000
    The El Paso police apprehended Kelley after he escaped. See Exhibit 15.

First Baptist Church of Sutherland Springs, Texas
Frank Pomeroy, Pastor
First Baptist Church
216 4th Street
Sutherland Springs, Texas 78161
    This is the church where the shooting occurred. The pastor was not there that morning, but on information and belief lost his daughter and many beloved friends in the massacre. He will have knowledge of their community and relationships and the impact of the shooting.

Danielle Shield Kelley
    Married to Airman Devin Kelley at the time of the church shooting.

Tessa Kelley (nee' Loge)
    Married to Airman Devin Kelley while he was in the Air Force and reported him for abuse to herself and infant child.

Johnnie Langendorff

Stephen Willeford
> Stephen Willeford confronted Kelley and chased him away from the church. Johnnie Langendorff stopped his vehicle to pick up Mr. Willeford and give chase.

Steve Moore
Wilson County Sheriff's Department
> Investigator

Harold Schott, Justice of the Peace Pct. #3
Wilson County

Terry Snyder
Texas Ranger Division
Texas Department of Public Safety
6100 Guadalupe Street, Building E
Austin, TX 78752
> Investigator and Custodian of Records

Sunland Park Police Department
1000 McNutt Rd
Sunland Park, NM 88063

Zachary Poston
> Zachary Poston is the son of Jennifer Racey. He has knowledge of the death of his grandmother, Peggy Warden, as well as his own traumatic injuries, grief, trauma and other elements of damages and that of his family.

Patsy McCain
> Patsy McCain is the grandmother of Jennifer Racey. She has knowledge of the traumatic injuries sustained by her great grandson, the death of her daughter, Peggy Warden, as well as her own grief, trauma and other elements of damages and that of her family.

**d.  Plaintiff names the Defendant herein, as well as its agents, representatives, and/or employees or former agents, representatives, or employees, as persons with knowledge of relevant facts. Plaintiff further names the Defendant, as well as its agents, representatives, and/or employees or former agents, representatives, or employees, as persons from whom expert testimony may be elicited regarding liability, causation and/or damages, although Plaintiff does not necessarily vouch for all the opinion testimony of such persons. Plaintiff refers you to the Department of Defense Inspector General reports from 2018, 2017, 2014, and 2015; Defendant's discovery documents; deposition testimony; documents produced by Defendant; and related medical records for the subject matter, facts known, and opinions and impressions of these witnesses.**

3

Air Force personnel
> Air Force personnel are expected to have knowledge of Kelley's conduct in the Air Force and mental problems, including but not limited to his attempt to bring weapons onto the base to kill officers.


Additional Air Force personnel are provided below:
> Air Force spokesperson, Ann Stefanek. On November 28, 2017, an Air Force spokesperson, Ann Stefanek, admitted that the failure to follow Pentagon guidelines to report Kelley's crimes to the FBI was "not an isolated incident and similar reporting lapses occurred at other locations."

Heather Wilson
Secretary of the Air Force

Deborah Lee James
Secretary of the Air Force

Col. Kirk Stabler
Air Force Commander
Headquarters Air Force Office of Special Investigations
Quantico, Virginia

Brig. General Andrea Tullos
Air Force Director
Director of Security Forces
DCS/Logistics, Engineering & Force Protection
Department of the Air Force
Washington, D.C.

Director of Special Investigations
Department of the Air Force
Washington, D.C.

HQ Air Force Office of Special Investigations
Department of the Air Force
Superintendent, IT Integrations HQ AFOSI
Quantico, Virginia

Department of the Air Force
HQ USAF
Washington, D.C.

Deputy Director of Security Forces
DCS/Logistics, Installations & Missions Support

Defense Human Resources Activity
Headquarters
Pamela Mitchell, Director
4800 Mark Center Drive, Suite 06J25-01
Alexandria, VA 22350-4000

Department of the Air Force
HQ Air Force Office of Special Investigations
Quantico, VA
Brigadier General, Keith Givens
USAF Commander

Department of Defense
Under Secretary of Defense for Intelligence
Deputy Chief Management Officer

Department of Defense
Military Criminal Investigative Organizations (MCIOs)
  Commanders, Officers, supervisors and employees
Defense Criminal Investigative Organizations (DCIOs)
  Commanders, Officers, supervisors and employees

Office of Inspector General for the DOD

  The Office of Inspector General for the DOD has issued four reports investigating and detailing the failures of the Air Force and Department of Defense, including negligence, negligent training, and negligent supervision. See attached reports:

  Report No. DODIG-2019-030, Inspector General U.S. Department of Defense, Dec. 6, 2018, Report of Investigation into the United States Air Force's Failure to Submit Devin Kelley's Criminal History Information to the Federal Bureau of Investigation; see id. at p. l17, "The USAF concurred with this report and its recommendations." https://www.dodig.mil/reports.html/Article/l707300/reportof-investigation-into-the-united-states-air-forces-failure-to-submit-dev/

  Report No. DODIG-2018-035, Inspector General U.S. Department of Defense, Dec. 4, 2017, *Evaluation of Fingerprint Card and Final Disposition Report Submissions by Military Service Law Enforcement Organizations*. https://www.dodig.mil/reports.html/Search/DODIG-2018-035/

  The DOD concluded that training on the submission of fingerprints and final disposition reports was ineffective and lacking, both for AFOSI Detachment 225 and the 49th Security Forces Squadron, and "there was no

valid reason for the USAF's failures". *See* p. 111-112; *see also* p. 96-98 (noting "training did not provide instructions on when or how to submit either the fingerprint card or the final disposition report to the FBI CJIS Division"). Indeed, the DOD "determined that this failure to submit Kelley's fingerprints was part of a systemic problem in AFOSI Detachment 225." See p. 94. Worse, the case agent was actually deployed for seven months during the investigation and reported that he complained he could not do his job, stating, "Boss, I'm burnt out, I'm so burnt out." "Boss, I want to get out. I can't do this anymore."

Report No. DODIG-2015-081, Inspector General U.S. Department of Defense, February 12, 2015, *Evaluation of Department of Defense Compliance with Criminal History Data Reporting Requirements*

Report No. DODIG-2015-011, Inspector General U.S. Department of Defense, October 29, 2014, *Evaluation of the Defense Criminal Investigative Organizations' Defense Incident-Based Reporting System Reporting and Reporting Accuracy*

Air Force 49th Security Forces Squadron and its investigators, Military Law Enforcement Officers (LEOs), or AFSFC Police Services Branch
Confinement Facility

Commanders, Officers, supervisors, employees
The 49th Security Forces Squadron investigated Airman Kelley. The 49th Security Forces squadron investigators and/or Military Law Enforcement Officers (LEOs) had responsibilities to gather fingerprints and report, and thus will have knowledge of their responsibilities, training, and failures. The December 6, 2018, the Inspector General of the DOD issued a 131-page Report titled, *Investigation into the United States Air Force's Failure to Submit Devin Kelley's Criminal History Information to the Federal Bureau of Investigation* concluding that training on the submission of fingerprints and final disposition reports was ineffective and lacking, both for AFOSI Detachment 225 and the 49th Security Forces Squadron, and "there was no valid reason for the USAF's failures". *See* p. 111-112; *see also* p. 96-98 (noting "training did not provide instructions on when or how to submit either the fingerprint card or the final disposition report to the FBI CJIS Division"). Air Force Office of Special Investigations

AFSFC Police Services Branch training focused on collection of fingerprints, but failed to address submitting fingerprint cards and final disposition reports to the FBI CJIS. Their Management Internal Control Toolset (MICT) checklist items are supposed to be monitored and assessed as part of the installation commander's self-inspection program. Monthly supervisory reviews were "incomplete and ineffective. *See* Report No. DODIG-2019-030 p. 110.

Airman Kelley's Air Force Commander

> Kelley's Commander issued a no contact order and has knowledge of Kelley's conduct and training in the Air Force.

Airman Kelley's Air Force Commander

> Kelley's Commander issued a no contact order, prepared a confinement package stating that he was "convinced" that Kelley was "dangerous and likely to harm someone if released", and has knowledge of Kelley's conduct and training in the Air Force.

Kelley's former Supervisor in the Air Force

> Kelley sent a threatening Facebook message to his former supervisor in the Air Force after his discharge.  She will have knowledge of Kelley's conduct and condition and threats.

Case Agent responsible for Airman Kelley

> The Case Agent will have knowledge for the reasons he could not properly report Kelley to the FBI, as detailed by the DOD's report.

Boss of Case Agent responsible for Airman Kelley

> The boss of the Case Agent will have knowledge for the reasons the Case Agent could not properly report Kelley to the FBI, as detailed by the DOD's report.

Peak Behavioral Health Services and Xavier Alvarez
5055 McNutt Rd.
Santa Teresa, NM 88008

> Peak Behavioral Health Services (PBHS) had a program for military personnel and diagnosed Kelley with various mental and emotional disorders. On information and belief, this is the facility from which Kelley attempted to buy guns to kill his commanding officers, and the facility that Kelley escaped from and fled to El Paso.

> According to an El Paso police report, police were informed that Kelley "was a danger to himself and others as he had already been caught sneaking firearms onto Holloman Air Force Base". Police were further advised that Airman Kelley "suffered from mental disorders" and that he "was attempting to carry out death threats" against "his military chain of

command." Xavier Alvarez, who worked for Peak Behavioral and who reported Kelley to police for the escape, later confirmed to NBC News that Kelley "verbalized that he wanted to get some kind of retribution to his chain of command." Other patients reported that Kelley was doing something suspicious on computers, and the military found that Kelley was "ordering weapons and tactical gear and magazines to a P.O. Box in San Antonio." Alvarez was quoted as saying, "This kid – he was hollow," and "I could never reach him."

Air Force Security Forces Squadron
Holloman Air Force Base

Commanders, Officers, supervisors, employees
Cmdr. Nathan McLeod-Hughes

Air Force 49th Logistics Readiness Squadron
Commanders, Officers, supervisors, employees

Air Force Detachment 225 and/or Holloman Air Force Base Office of Special Investigations

Commanders, Officers, Special Agents, supervisors, employees
AFOSI Detachment 225 and/or Holloman Air Force Base Office of Special Investigation had responsibilities to gather fingerprints and report, and thus will have knowledge of their responsibilities, training, and failures. The December 6, 2018, the Inspector General of the DOD issued a 131-page Report titled, Investigation into the United States Air Force's Failure to Submit Devin Kelley's Criminal History Information to the Federal Bureau of Investigation concluding that training on the submission of fingerprints and final disposition reports was ineffective and lacking, both for AFOSI Detachment 225 and the 49th Security Forces Squadron, and "there was no valid reason for the USAF's failures". See p. 111-112; see also p. 96-98 (noting "training did not provide instructions on when or how to submit either the fingerprint card or the final disposition report to the FBI CJIS Division").

Although AFOSI policy required supervisory reviews to include both I2MS and the investigative case file (record copy), the AFOSI Detachment 225 SAIC and Superintendent focused their reviews on the I2MS activities and not on investigative case files" *See* p. 89. "In sum, we concluded that AFOSI Detachment 225 monthly supervisory reviews of Kelley's investigative case file were incomplete and ineffective".

Air Force Article 32 Investigating Officers

Air Force Prosecutors

8

Air Force prosecutors gathered evidence and handled the conviction of
Airman Kelley, and thus have knowledge of his conduct and disposition.

Naval Consolidated Brig
Miramar, California
Commanders, Officers, supervisors, employees

General David Goldfein
Air Force Chief of Staff

General Stephen Wilson
Air Force Vice Chief of Staff

Lt. General Gina Grosso
Air Force Deputy Chief of Staff, Manpower, Personnel & Services

Lt. General John Raymond
Air Force Deputy Chief of Staff, Operations

Lt. General John Cooper, Deputy Chief of Staff, Operations

Air Force Holloman Air Force Base Mental Health Clinic
HAFB Mental Health Clinic had custody of Kelley in the Air Force

Defense Incidence-Based Reporting System
Commanders, Officers, supervisors, employees

**e.   Regarding experts who may be called to testify at the trial in this case, please
refer to Plaintiff's Designation of Experts and any amendments or supplements
thereto for additional information regarding the facts known to these witnesses and
the bases of their opinions.   These expert designations will be made at the time
required by the Court's Scheduling Order. Please also refer to the sworn testimony
and written reports of these witnesses for further information regarding the facts
known to and opinions held by these witnesses.**

**f.   Plaintiff cross-identifies as expert witnesses any person named or to be named
by Defendant as a person having expert knowledge about any facts surrounding any
issues relevant to the incident in question as expert witnesses who Plaintiff reserves
the right to call live at the trial of the cause.   Plaintiff reserves the right to call such
persons as expert witnesses, whether or not the designation is subsequently
withdrawn.   Plaintiff does not have any control over any such witness, nor do they
have any superior right to ascertain the subject matter on which any such witness
may testify and/or opinions held by any such witness, beyond the information
disclosed in deposition testimony and/or by Defendant's discovery responses.   In that
regard, Plaintiff refers you to Defendant's discovery documents, deposition testimony,
and documents produced by Defendant for the subject matter, facts known, and**

**opinions and impressions of these witnesses.  Plaintiff reserves the right to obtain opinion testimony from any such witness within their area of expertise as related to this case.**

(ii)  A copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment;

Exhibit 1 – Inspector General, US Department of Defense, Evaluation of the Defense Criminal Investigative Organizations' Defense Incident-Based Reporting System Reporting and Reporting Accuracy, October 29, 2014 (Bates #18-949-1 – 18-949-40). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 2 – Inspector General, US Department of Defense, Evaluation of the Defense Compliance with Criminal History Data Reporting Requirements, February 12, 2015 (Bates #18-949-41 – 18-949-76). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 3 – Inspector General, US Department of Defense, Evaluation Fingerprint Card and Final Disposition Report Submissions by Military Service Law Enforcement Organizations, December 4, 2017 (Bates #18-949-77 – 18-949-168). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 4 – Inspector General, US Department of Defense, Report of Investigation into the United States Air Force's Failure to Submit Devin Kelley's Criminal History Information to the Federal Bureau of Investigation, December 6, 2018 (Bates #18-949-169 – 18-949-306). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 5 –Department of Defense Directive Number 7730.47, October 15, 1996 (Bates #18-949-307 – 18-949-315). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs,

Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 6 –Department of Defense Manual Number 7730.47-M Volume 1, December 7, 2010 (Bates #18-949-316 – 18-949-398). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 7 –U.S. Department of Defense Press Operations, DoD launches review of Devin P. Kelley criminal record notification, Release No. NR-382-17, November 6, 2017 (Bates #18-949-399). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 8 – National Instant Criminal Background Check System Indices (Bates #18-949-400 – 18-949-401). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 9 – U.S. Air Force article, AF Implements Changes to Improve Law Enforcement Database Reporting, November 28, 2017 (Bates #18-949-402). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 10 – U.S. Air Force tweet November 9, 2017 (Bates #18-949-403). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 11 – Report to the Committee on the Judiciary United States Senate from The Honorable Heather Wilson, Secretary of the Air Force, December 6, 2017 (Bates #18-949-404 – 18-949-405). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 12 – Questions for the Record for Secretary of the United States Air Force Heather Wilson, December 13, 2017 (Bates #18-949-406 – 18-949-410). This document is in

the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 13 – Misdemeanor Crimes of Domestic Violence (Bates #18-949-411). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 14 –Devin Kelley Trial Transcript (Bates #18-949-412 – 18-949-1022). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 15 - El Paso Incident Report, June 7, 2012 (Bates #18-949-1023 – 18-949-1028). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 16 – Devin Kelley Court Martial Order (Bates #18-949-1029 – 18-949-1034). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 17 – Statement of Danielle Kelley (Bates #18-949-1035). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 18 – Devin Kelley Autopsy Report (Bates #18-949-1036 – 18-949-1037). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 19 – Life Expectancy Tables (Bates #18-949-1038 – 18-949-1101). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 20 – Birth Certificate (Bates #JRACEY-19-691-000001)

Exhibit 21 – Death Certificate of Peggy Lynn Stevens Warden (Bates # JRACEY-19-691-000002)

Exhibit 22 – Autopsy of Peggy Lynn Stevens Warden (Bates # JRACEY-19-691-000003 - JRACEY-19-691-000012)

Exhibit 23 – 2012 Tax Return (Bates # JRACEY-19-691-000013 - JRACEY-19-691-000020)

Exhibit 24 – 2014 Tax Return (Bates # JRACEY-19-691-000021 - JRACEY-19-691-000026)

Exhibit 25 – 2015 Tax Return (Bates # JRACEY-19-691-000027 - JRACEY-19-691-000034)

Exhibit 26 – 2016 Tax Return (Bates # JRACEY-19-691-000035 - JRACEY-19-691-000043)

Exhibit 27 – Social Security Earnings Summary of Peggy Lynn Stevens Warden (Bates # JRACEY-19-691-000044 - JRACEY-19-691-000045)

In addition, Plaintiff is in the possession of the materials maintained by the Texas Rangers related to the incident. In obtaining these materials, Plaintiff entered into an agreement with the Texas Attorney General regarding their release. As such, Plaintiff will discuss the terms of this agreement with Defendant prior to releasing these materials.

(iii)   A computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered;

Discovery is still in its early stages and it is premature for Plaintiff to respond to this disclosure; however, please see Plaintiff's Original Complaint(s) and any and all amendments thereto for the categories of damages sought by Plaintiff. Please refer also to Plaintiff's administrative claims filed with the Government for the maximum amount of damages sought by Plaintiff in this case. Please refer to the sworn deposition testimony in this case. Please also refer to Plaintiff's Designation of Experts and any amendments or supplements thereto for additional information regarding the facts known to these witnesses and the bases of their opinions. These expert designations will be made at the time required by the Court's Scheduling Order. Please also refer to the sworn testimony and written reports of these witnesses for further information regarding the facts known to and opinions held by these witnesses.

(iv)    For inspection and copying as under Rule 34, any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment.

Not applicable.

Respectfully Submitted,

/s/ *Justin Demerath*
**JUSTIN DEMERATH**
jdemerath@808west.com
Texas State Bar No. 24034415
**DAVID CAMPBELL**
dcampbell@808west.com
Texas State Bar No. 24057033
**O'HANLON, DEMERATH & CASTILLO, PC**
808 West Avenue
Austin, TX 78701
Telephone: (512) 494-9949
Facsimile: (512) 494-9919

Attorneys for Plaintiff Jennifer Racey

**Certificate of Service**

I certify that the foregoing was served on July 12, 2019, via email service and certified mail, return receipt requested, on the following counsel for the United States.

/s/ *Justin Demerath* _____
**JUSTIN DEMERATH**

PAUL DAVID STERN
Trial Attorney, Torts Branch
United States Dept. of Justice
Civil Division
United States Department of Justice
P.O. Box 888
Benjamin Franklin Station
Washington, D.C. 20004
T: (202) 616-2197
Paul.David.Stern@usdoj.gov

STEPHEN E. HANDLER
Senior Trial Counsel, Torts Branch
United States Dept. of Justice
Civil Division
United States Department of Justice
P.O. Box 888
Benjamin Franklin Station
Washington, D.C. 20004
T: (202) 616-2197
Stephen.Handler@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| Joe Holcombe, *et al.*,<br>    Plaintiffs,<br><br>v.<br><br>United States of America,<br>    Defendant. | Civil Action No. 5:18-cv-555-XR<br><br>*Consolidated with*:<br> Nos. 5:18-cv-712-XR; 5:18-cv-881-XR;<br> 5:18-cv-944-XR; 5:18-cv-949-XR;<br> 5:18-cv-951-XR; 5:18-cv-1151-XR;<br> 5:19-cv-184-XR; 5:19-cv-289;<br> 5:19-cv-506 XR; 5:19-cv-678;<br> 5:19-cv-691-XR; 5:19-cv-705;<br> 5:19-cv-706-XR; 5:19-cv-715-XR |

**PLAINTIFF JIMMY STEVENS', INDEPENDENT EXECUTOR OF THE ESTATE OF PEGGY LYNN STEVENS WARDEN, INITIAL DISCLOSURES PURSUANT TO RULE 26(A)(1)**

(i)     The name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment;

   **a. Plaintiff hereby designates as persons with knowledge the health care providers referenced in the related health care records in this case, including physicians, technicians, nurses, radiologists, physician's assistants, physical therapists, clinics, hospitals, pharmacies, and their agents, representatives, and employees. While these health care providers are not within the control of Plaintiff and have not been retained by Plaintiff as expert witnesses, Plaintiff reserves the right to elicit opinion testimony from any such health care provider, including expert testimony regarding liability, causation, and damages from those treating healthcare providers relating to the medical treatment provided to the Plaintiff. To the extent it is necessary to call live at the trial or by deposition in this cause any agents, representatives, employees and/or custodian of records for any of the following health care providers, Plaintiff identifies any such custodian as a person who may have expert knowledge regarding issues related to the incident in question to include personal knowledge of the records and concerning the necessity of services rendered and referenced in the records and concerning the reasonableness of the medical bills charged and referenced in the records of the following health care providers. For the**

mental impressions held by and the opinions of and facts known by any of the following witnesses, please refer to the related health care records of the Plaintiff.

| NAME | ADDRESS/TELEPHONE |
|---|---|
| Agents, servants and employees, including but not limited to: James A. Feig, MD Jennifer J. Rulon, MD Rajesh P. Kannan, M.D. Randall E. Frost, M.D. D. Kimberley Molina, M.D. Veronica Hargrove, Ph.D. **Bexar County Medical Examiner** | 7337 Louis Pasteur San Antonio, Tx 78229-4565 (210) 335-4000 |

 **b. Plaintiff identifies himself as persons with knowledge of relevant facts pertaining to the incident in question:**

| NAME | ADDRESS/TELEPHONE |
|---|---|
| **PARTIES** | |
| Jimmy Stevens, Independent Executor of the Estate of Peggy Lynn Stevens Warden c/o Justin B. Demerath O'HANLON, DEMERATH & CASTILLO, PC | 808 West Avenue Austin, Texas 78701 (512) 494-9949 |

 **c. Plaintiff identifies the following family members, friends, and other persons as persons with knowledge of relevant facts:**

  Academy Sports + Outdoors in San Antonio
   Kelley bought a Ruger 5.56 mm assault rifle from Academy Sports + Outdoors in San Antonio after clearing a background check of the NICS. Store personnel will have knowledge of the transaction.

  El Paso Police
  Headquarters:
  9ll N. Raynor
  El Paso, TX 79903
  (915) 212-4000
   The El Paso police apprehended Kelley after he escaped. See Exhibit 15.

  First Baptist Church of Sutherland Springs, Texas
  Frank Pomeroy, Pastor
  First Baptist Church
  216 4th Street

Sutherland Springs, Texas 78161
> This is the church where the shooting occurred. The pastor was not there that morning, but on information and belief lost his daughter and many beloved friends in the massacre. He will have knowledge of their community and relationships and the impact of the shooting.

Danielle Shield Kelley
> Married to Airman Devin Kelley at the time of the church shooting.

Tessa Kelley (nee' Loge)
> Married to Airman Devin Kelley while he was in the Air Force and reported him for abuse to herself and infant child.

Johnnie Langendorff
Stephen Willeford
> Stephen Willeford confronted Kelley and chased him away from the church. Johnnie Langendorff stopped his vehicle to pick up Mr. Willeford and give chase.

Steve Moore
Wilson County Sheriff's Department
> Investigator

Harold Schott, Justice of the Peace Pct. #3
Wilson County

Terry Snyder
Texas Ranger Division
Texas Department of Public Safety
6100 Guadalupe Street, Building E
Austin, TX 78752
> Investigator and Custodian of Records

Sunland Park Police Department
1000 McNutt Rd
Sunland Park, NM 88063

Preston Corrigan
> Preston Corrigan is the son of Shani Corrigan. He has knowledge of the death of his mother, Shani Corrigan, as well as his own grief, trauma and other elements of damages and that of his parents and family.

**d. Plaintiff names the Defendant herein, as well as its agents, representatives, and/or employees or former agents, representatives, or employees, as persons with knowledge of relevant facts. Plaintiff further names the Defendant, as well as its agents, representatives, and/or employees or former agents, representatives, or**

**employees, as persons from whom expert testimony may be elicited regarding liability, causation and/or damages, although Plaintiff does not necessarily vouch for all the opinion testimony of such persons. Plaintiff refers you to the Department of Defense Inspector General reports from 2018, 2017, 2014, and 2015; Defendant's discovery documents; deposition testimony; documents produced by Defendant; and related medical records for the subject matter, facts known, and opinions and impressions of these witnesses.**

Air Force personnel
>Air Force personnel are expected to have knowledge of Kelley's conduct in the Air Force and mental problems, including but not limited to his attempt to bring weapons onto the base to kill officers.

Additional Air Force personnel are provided below:
>Air Force spokesperson, Ann Stefanek. On November 28, 2017, an Air Force spokesperson, Ann Stefanek, admitted that the failure to follow Pentagon guidelines to report Kelley's crimes to the FBI was "not an isolated incident and similar reporting lapses occurred at other locations."

Heather Wilson
Secretary of the Air Force

Deborah Lee James
Secretary of the Air Force

Col. Kirk Stabler
Air Force Commander
Headquarters Air Force Office of Special Investigations
Quantico, Virginia

Brig. General Andrea Tullos
Air Force Director
Director of Security Forces
DCS/Logistics, Engineering & Force Protection
Department of the Air Force
Washington, D.C.

Director of Special Investigations
Department of the Air Force
Washington, D.C.

HQ Air Force Office of Special Investigations
Department of the Air Force
Superintendent, IT Integrations HQ AFOSI
Quantico, Virginia

Department of the Air Force
HQ USAF
Washington, D.C.

Deputy Director of Security Forces
DCS/Logistics, Installations & Missions Support

Defense Human Resources Activity
Headquarters
Pamela Mitchell, Director
4800 Mark Center Drive, Suite 06J25-01
Alexandria, VA 22350-4000

Department of the Air Force
HQ Air Force Office of Special Investigations
Quantico, VA
Brigadier General, Keith Givens
USAF Commander

Department of Defense
Under Secretary of Defense for Intelligence
Deputy Chief Management Officer

Department of Defense
Military Criminal Investigative Organizations (MCIOs)
        Commanders, Officers, supervisors and employees
Defense Criminal Investigative Organizations (DCIOs)
        Commanders, Officers, supervisors and employees

Office of Inspector General for the DOD

The Office of Inspector General for the DOD has issued four reports
investigating and detailing the failures of the Air Force and Department of
Defense, including negligence, negligent training, and negligent
supervision. See attached reports:

Report No. DODIG-2019-030, Inspector General U.S. Department of
Defense, Dec. 6, 2018, Report of Investigation into the United States Air
Force's Failure to Submit Devin Kelley's Criminal History Information to
the Federal Bureau of Investigation; see id. at p. 117, "The USAF concurred
with        this        report        and        its        recommendations."
https://www.dodig.mil/reports.html/Article/1707300/reportof-
investigation-into-the-united-states-air-forces-failure-to-submit-dev/

Report No. DODIG-2018-035, Inspector General U.S. Department of
Defense, Dec. 4, 2017, *Evaluation of Fingerprint Card and Final
Disposition Report Submissions by Military Service Law Enforcement*

5

*Organizations.*   https://www.dodig.mil/reports.html/Search/DODIG-2018-035/

The DOD concluded that training on the submission of fingerprints and final disposition reports was ineffective and lacking, both for AFOSI Detachment 225 and the 49th Security Forces Squadron, and "there was no valid reason for the USAF's failures". *See* p. 111-112; *see also* p. 96-98 (noting "training did not provide instructions on when or how to submit either the fingerprint card or the final disposition report to the FBI CJIS Division"). Indeed, the DOD "determined that this failure to submit Kelley's fingerprints was part of a systemic problem in AFOSI Detachment 225." See p. 94. Worse, the case agent was actually deployed for seven months during the investigation and reported that he complained he could not do his job, stating, "Boss, I'm burnt out, I'm so burnt out." "Boss, I want to get out. I can't do this anymore."

Report No. DODIG-2015-081, Inspector General U.S. Department of Defense, February 12, 2015, *Evaluation of Department of Defense Compliance with Criminal History Data Reporting Requirements*

Report No. DODIG-2015-011, Inspector General U.S. Department of Defense, October 29, 2014, *Evaluation of the Defense Criminal Investigative Organizations' Defense Incident-Based Reporting System Reporting and Reporting Accuracy*

Air Force 49th Security Forces Squadron and its investigators, Military Law Enforcement Officers (LEOs), or AFSFC Police Services Branch Confinement Facility

Commanders, Officers, supervisors, employees
The 49th Security Forces Squadron investigated Airman Kelley. The 49th Security Forces squadron investigators and/or Military Law Enforcement Officers (LEOs) had responsibilities to gather fingerprints and report, and thus will have knowledge of their responsibilities, training, and failures. The December 6, 2018, the Inspector General of the DOD issued a 131-page Report titled, *Investigation into the United States Air Force's Failure to Submit Devin Kelley's Criminal History Information to the Federal Bureau of Investigation* concluding that training on the submission of fingerprints and final disposition reports was ineffective and lacking, both for AFOSI Detachment 225 and the 49th Security Forces Squadron, and "there was no valid reason for the USAF's failures". *See* p. 111-112; *see also* p. 96-98 (noting "training did not provide instructions on when or how to submit either the fingerprint card or the final disposition report to the FBI CJIS Division"). Air Force Office of Special Investigations

AFSFC Police Services Branch training focused on collection of fingerprints, but failed to address submitting fingerprint cards and final

disposition reports to the FBI CJIS.  Their Management Internal Control Toolset (MICT) checklist items are supposed to be monitored and assessed as part of the installation commander's self-inspection program.  Monthly supervisory reviews were "incomplete and ineffective. *See* Report No. DODIG-2019-030 p. 110.

Airman Kelley's Air Force Commander

Kelley's Commander issued a no contact order and has knowledge of Kelley's conduct and training in the Air Force.

Airman Kelley's Air Force Commander

Kelley's Commander issued a no contact order, prepared a confinement package stating that he was "convinced" that Kelley was "dangerous and likely to harm someone if released", and has knowledge of Kelley's conduct and training in the Air Force.

Kelley's former Supervisor in the Air Force

Kelley sent a threatening Facebook message to his former supervisor in the Air Force after his discharge.  She will have knowledge of Kelley's conduct and condition and threats.

Case Agent responsible for Airman Kelley

The Case Agent will have knowledge for the reasons he could not properly report Kelley to the FBI, as detailed by the DOD's report.

Boss of Case Agent responsible for Airman Kelley

The boss of the Case Agent will have knowledge for the reasons the Case Agent could not properly report Kelley to the FBI, as detailed by the DOD's report.

Peak Behavioral Health Services and Xavier Alvarez
5055 McNutt Rd.
Santa Teresa, NM 88008

Peak Behavioral Health Services (PBHS) had a program for military personnel and diagnosed Kelley with various mental and emotional disorders. On information and belief, this is the facility from which Kelley attempted to buy guns to kill his commanding officers, and the facility that Kelley escaped from and fled to El Paso.

According to an El Paso police report, police were informed that Kelley "was a danger to himself and others as he had already been caught sneaking firearms onto Holloman Air Force Base". Police were further advised that Airman Kelley "suffered from mental disorders" and that he "was attempting to carry out death threats" against "his military chain of command." Xavier Alvarez, who worked for Peak Behavioral and who reported Kelley to police for the escape, later confirmed to NBC News that Kelley "verbalized that he wanted to get some kind of retribution to his chain of command." Other patients reported that Kelley was doing something suspicious on computers, and the military found that Kelley was "ordering weapons and tactical gear and magazines to a P.O. Box in San Antonio." Alvarez was quoted as saying, "This kid – he was hollow," and "I could never reach him."

Air Force Security Forces Squadron
Holloman Air Force Base

Commanders, Officers, supervisors, employees
Cmdr. Nathan McLeod-Hughes

Air Force 49th Logistics Readiness Squadron
Commanders, Officers, supervisors, employees

Air Force Detachment 225 and/or Holloman Air Force Base Office of Special Investigations

Commanders, Officers, Special Agents, supervisors, employees
AFOSI Detachment 225 and/or Holloman Air Force Base Office of Special Investigation had responsibilities to gather fingerprints and report, and thus will have knowledge of their responsibilities, training, and failures. The December 6, 2018, the Inspector General of the DOD issued a 131-page Report titled, Investigation into the United States Air Force's Failure to Submit Devin Kelley's Criminal History Information to the Federal Bureau of Investigation concluding that training on the submission of fingerprints and final disposition reports was ineffective and lacking, both for AFOSI Detachment 225 and the 49th Security Forces Squadron, and "there was no valid reason for the USAF's failures". See p. 111-112; see also p. 96-98 (noting "training did not provide instructions on when or how to submit either the fingerprint card or the final disposition report to the FBI CJIS Division").

Although AFOSI policy required supervisory reviews to include both I2MS and the investigative case file (record copy), the AFOSI Detachment 225 SAIC and Superintendent focused their reviews on the I2MS activities and not on investigative case files" *See* p. 89. "In sum, we concluded that

AFOSI Detachment 225 monthly supervisory reviews of Kelley's investigative case file were incomplete and ineffective".

Air Force Article 32 Investigating Officers

Air Force Prosecutors
    Air Force prosecutors gathered evidence and handled the conviction of Airman Kelley, and thus have knowledge of his conduct and disposition.

Naval Consolidated Brig
Miramar, California
    Commanders, Officers, supervisors, employees

General David Goldfein
Air Force Chief of Staff

General Stephen Wilson
Air Force Vice Chief of Staff

Lt. General Gina Grosso
Air Force Deputy Chief of Staff, Manpower, Personnel & Services

Lt. General John Raymond
Air Force Deputy Chief of Staff, Operations

Lt. General John Cooper, Deputy Chief of Staff, Operations

Air Force Holloman Air Force Base Mental Health Clinic
    HAFB Mental Health Clinic had custody of Kelley in the Air Force

Defense Incidence-Based Reporting System
    Commanders, Officers, supervisors, employees

**e.   Regarding experts who may be called to testify at the trial in this case, please refer to Plaintiff's Designation of Experts and any amendments or supplements thereto for additional information regarding the facts known to these witnesses and the bases of their opinions.   These expert designations will be made at the time required by the Court's Scheduling Order. Please also refer to the sworn testimony and written reports of these witnesses for further information regarding the facts known to and opinions held by these witnesses.**

**f.   Plaintiff cross-identifies as expert witnesses any person named or to be named by Defendant as a person having expert knowledge about any facts surrounding any issues relevant to the incident in question as expert witnesses who Plaintiff reserves the right to call live at the trial of the cause.  Plaintiff reserves the right to call such persons as expert witnesses, whether or not the designation is subsequently**

**withdrawn.  Plaintiff does not have any control over any such witness, nor do they have any superior right to ascertain the subject matter on which any such witness may testify and/or opinions held by any such witness, beyond the information disclosed in deposition testimony and/or by Defendant's discovery responses.  In that regard, Plaintiff refers you to Defendant's discovery documents, deposition testimony, and documents produced by Defendant for the subject matter, facts known, and opinions and impressions of these witnesses.  Plaintiff reserves the right to obtain opinion testimony from any such witness within their area of expertise as related to this case.**

(ii)     A copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment;

Exhibit 1 – Inspector General, US Department of Defense, Evaluation of the Defense Criminal Investigative Organizations' Defense Incident-Based Reporting System Reporting and Reporting Accuracy, October 29, 2014 (Bates #18-949-1 – 18-949-40). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 2 – Inspector General, US Department of Defense, Evaluation of the Defense Compliance with Criminal History Data Reporting Requirements, February 12, 2015 (Bates #18-949-41 – 18-949-76). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 3 – Inspector General, US Department of Defense, Evaluation Fingerprint Card and Final Disposition Report Submissions by Military Service Law Enforcement Organizations, December 4, 2017 (Bates #18-949-77 – 18-949-168). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 4 – Inspector General, US Department of Defense, Report of Investigation into the United States Air Force's Failure to Submit Devin Kelley's Criminal History Information to the Federal Bureau of Investigation, December 6, 2018 (Bates #18-949-169 – 18-949-306). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs,

Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 5 –Department of Defense Directive Number 7730.47, October 15, 1996 (Bates #18-949-307 – 18-949-315). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 6 –Department of Defense Manual Number 7730.47-M Volume 1, December 7, 2010 (Bates #18-949-316 – 18-949-398). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 7 –U.S. Department of Defense Press Operations, DoD launches review of Devin P. Kelley criminal record notification, Release No. NR-382-17, November 6, 2017 (Bates #18-949-399). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 8 – National Instant Criminal Background Check System Indices (Bates #18-949-400 – 18-949-401). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 9 – U.S. Air Force article, AF Implements Changes to Improve Law Enforcement Database Reporting, November 28, 2017 (Bates #18-949-402). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 10 – U.S. Air Force tweet November 9, 2017 (Bates #18-949-403). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 11 – Report to the Committee on the Judiciary United States Senate from The Honorable Heather Wilson, Secretary of the Air Force, December 6, 2017 (Bates #18-949-404 – 18-949-405). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for

Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 12 – Questions for the Record for Secretary of the United States Air Force Heather Wilson, December 13, 2017 (Bates #18-949-406 – 18-949-410). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 13 – Misdemeanor Crimes of Domestic Violence (Bates #18-949-411). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 14 –Devin Kelley Trial Transcript (Bates #18-949-412 – 18-949-1022). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 15 - El Paso Incident Report, June 7, 2012 (Bates #18-949-1023 – 18-949-1028). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 16 – Devin Kelley Court Martial Order (Bates #18-949-1029 – 18-949-1034). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 17 – Statement of Danielle Kelley (Bates #18-949-1035). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 18 – Devin Kelley Autopsy Report (Bates #18-949-1036 – 18-949-1037). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 19 – Life Expectancy Tables (Bates #18-949-1038 – 18-949-1101). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 20 – Death Certificate (Bates #PWARDEN-19-691-000001)

Exhibit 21 – Autopsy (Bates # PWARDEN-19-691-000002 - PWARDEN-19-691-000011)

Exhibit 22 – Letters Testamentary (Bates #PWARDEN-19-691-000012)

Exhibit 23 – 2012 Tax Return (Bates #PWARDEN-19-691-000013 - PWARDEN-19-691-000020)

Exhibit 24 – 2014 Tax Return (Bates #PWARDEN-19-691-000021 - PWARDEN-19-691-000026)

Exhibit 25 – 2015 Tax Return (Bates #PWARDEN-19-691-000027 - PWARDEN-19-691-000034)

Exhibit 26 – 2016 Tax Return (Bates #PWARDEN-19-691-000035 - PWARDEN-19-691-000043)

Exhibit 27 – Social Security Earnings Summary (Bates #PWARDEN-19-691-000044 - PWARDEN-19-691-000045)

In addition, Plaintiff is in the possession of the materials maintained by the Texas Rangers related to the incident.  In obtaining these materials, Plaintiff entered into an agreement with the Texas Attorney General regarding their release.  As such, Plaintiff will discuss the terms of this agreement with Defendant prior to releasing these materials.

Further, Plaintiff is in the possession of the full Autopsy containing photographs taken by the Medical Examiner. In obtaining these materials, Plaintiff entered into an agreement with the Wilson County Attorney regarding their release. As such, Plaintiff will discuss the terms of this agreement with Defendant prior to releasing these materials.

(iii)   A computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered;

13

Discovery is still in its early stages and it is premature for Plaintiff to respond to this disclosure; however, please see Plaintiff's Original Complaint(s) and any and all amendments thereto for the categories of damages sought by Plaintiff.  Please refer also to Plaintiff's administrative claims filed with the Government for the maximum amount of damages sought by Plaintiff in this case.  Please refer to the sworn deposition testimony in this case. Please also refer to Plaintiff's Designation of Experts and any amendments or supplements thereto for additional information regarding the facts known to these witnesses and the bases of their opinions.  These expert designations will be made at the time required by the Court's Scheduling Order. Please also refer to the sworn testimony and written reports of these witnesses for further information regarding the facts known to and opinions held by these witnesses.

(iv)   For inspection and copying as under Rule 34, any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment.

Not applicable.

Respectfully Submitted,

/s/ *Justin Demerath*
**JUSTIN DEMERATH**
jdemerath@808west.com
Texas State Bar No. 24034415
**DAVID CAMPBELL**
dcampbell@808west.com
Texas State Bar No. 24057033
**O'HANLON, DEMERATH & CASTILLO, PC**
808 West Avenue
Austin, TX 78701
Telephone: (512) 494-9949
Facsimile: (512) 494-9919

Attorneys for Plaintiff Jimmy Stevens, Independent Executor of the Estate of Peggy Lynn Stevens Warden

## Certificate of Service

I certify that the foregoing was served on July 12, 2019, via email service and certified mail, return receipt requested, on the following counsel for the United States.

/s/ *Justin Demerath*
**JUSTIN DEMERATH**

PAUL DAVID STERN
Trial Attorney, Torts Branch
United States Dept. of Justice
Civil Division
United States Department of Justice
P.O. Box 888
Benjamin Franklin Station
Washington, D.C. 20004
T: (202) 616-2197
Paul.David.Stern@usdoj.gov

STEPHEN E. HANDLER
Senior Trial Counsel, Torts Branch
United States Dept. of Justice
Civil Division
United States Department of Justice
P.O. Box 888
Benjamin Franklin Station
Washington, D.C. 20004
T: (202) 616-2197
Stephen.Handler@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| Joe Holcombe, *et al.*,<br>    Plaintiffs,<br><br>v.<br><br>United States of America,<br>    Defendant. | Civil Action No. 5:18-cv-555-XR<br><br>*Consolidated with*:<br> Nos. 5:18-cv-712-XR; 5:18-cv-881-XR;<br> 5:18-cv-944-XR; 5:18-cv-949-XR;<br> 5:18-cv-951-XR; 5:18-cv-1151-XR;<br> 5:19-cv-184-XR; 5:19-cv-289;<br> 5:19-cv-506 XR; 5:19-cv-678;<br> 5:19-cv-691-XR; 5:19-cv-705;<br> 5:19-cv-706-XR; 5:19-cv-715-XR |

## PLAINTIFF KARA BOYD (MARSHALL)'S INITIAL DISCLOSURES PURSUANT TO RULE 26(A)(1)

(i)    The name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment;

**a. Plaintiff hereby designates as persons with knowledge the health care providers referenced in the related health care records in this case, including physicians, technicians, nurses, radiologists, physician's assistants, physical therapists, clinics, hospitals, pharmacies, and their agents, representatives, and employees. While these health care providers are not within the control of Plaintiff and have not been retained by Plaintiff as expert witnesses, Plaintiff reserves the right to elicit opinion testimony from any such health care provider, including expert testimony regarding liability, causation, and damages from those treating healthcare providers relating to the medical treatment provided to the Plaintiff. To the extent it is necessary to call live at the trial or by deposition in this cause any agents, representatives, employees and/or custodian of records for any of the following health care providers, Plaintiff identifies any such custodian as a person who may have expert knowledge regarding issues related to the incident in question to include personal knowledge of the records and concerning the necessity of services rendered and referenced in the records and concerning the reasonableness of the medical bills charged and referenced in the records of the following health care providers. For the mental impressions held by and the opinions of and facts known by any of the following witnesses, please refer to the related health care records of the Plaintiff.**

1

None at this time for the Plaintiff, individually.

**b. Plaintiff identifies himself as persons with knowledge of relevant facts pertaining to the incident in question:**

| NAME | ADDRESS/TELEPHONE |
|---|---|
| **PARTIES** | |
| Kara Boyd (Marshall)<br>c/o Justin B. Demerath<br>O'HANLON, DEMERATH & CASTILLO, PC | 808 West Avenue<br>Austin, Texas 78701<br>(512) 494-9949 |

**c. Plaintiff identifies the following family members, friends, and other persons as persons with knowledge of relevant facts:**

Academy Sports + Outdoors in San Antonio
> Kelley bought a Ruger 5.56 mm assault rifle from Academy Sports + Outdoors in San Antonio after clearing a background check of the NICS. Store personnel will have knowledge of the transaction.

El Paso Police
Headquarters:
911 N. Raynor
El Paso, TX 79903
(915) 212-4000
> The El Paso police apprehended Kelley after he escaped. See Exhibit 15.

First Baptist Church of Sutherland Springs, Texas
Frank Pomeroy, Pastor
First Baptist Church
216 4th Street
Sutherland Springs, Texas 78161
> This is the church where the shooting occurred. The pastor was not there that morning, but on information and belief lost his daughter and many beloved friends in the massacre. He will have knowledge of their community and relationships and the impact of the shooting.

Danielle Shield Kelley
> Married to Airman Devin Kelley at the time of the church shooting.

Tessa Kelley (nee' Loge)
> Married to Airman Devin Kelley while he was in the Air Force and reported him for abuse to herself and infant child.

Johnnie Langendorff
Stephen Willeford

2

> Stephen Willeford confronted Kelley and chased him away from the church. Johnnie Langendorff stopped his vehicle to pick up Mr. Willeford and give chase.

Steve Moore
Wilson County Sheriff's Department
> Investigator

Harold Schott, Justice of the Peace Pct. #3
Wilson County

Terry Snyder
Texas Ranger Division
Texas Department of Public Safety
6100 Guadalupe Street, Building E
Austin, TX 78752
> Investigator and Custodian of Records

Sunland Park Police Department
1000 McNutt Rd
Sunland Park, NM 88063

Martina Pachal (née Marshall)
> Martina Pachal is the sister of Kara Boyd. She has knowledge of the grief and trauma of Kara Boyd, as well as her own grief, trauma and other elements of damages and that of her family.

**d. Plaintiff names the Defendant herein, as well as its agents, representatives, and/or employees or former agents, representatives, or employees, as persons with knowledge of relevant facts. Plaintiff further names the Defendant, as well as its agents, representatives, and/or employees or former agents, representatives, or employees, as persons from whom expert testimony may be elicited regarding liability, causation and/or damages, although Plaintiff does not necessarily vouch for all the opinion testimony of such persons. Plaintiff refers you to the Department of Defense Inspector General reports from 2018, 2017, 2014, and 2015; Defendant's discovery documents; deposition testimony; documents produced by Defendant; and related medical records for the subject matter, facts known, and opinions and impressions of these witnesses.**

Air Force personnel
> Air Force personnel are expected to have knowledge of Kelley's conduct in the Air Force and mental problems, including but not limited to his attempt to bring weapons onto the base to kill officers.

Additional Air Force personnel are provided below:

Air Force spokesperson, Ann Stefanek. On November 28, 2017, an Air Force spokesperson, Ann Stefanek, admitted that the failure to follow Pentagon guidelines to report Kelley's crimes to the FBI was "not an isolated incident and similar reporting lapses occurred at other locations."

Heather Wilson
Secretary of the Air Force

Deborah Lee James
Secretary of the Air Force

Col. Kirk Stabler
Air Force Commander
Headquarters Air Force Office of Special Investigations
Quantico, Virginia

Brig. General Andrea Tullos
Air Force Director
Director of Security Forces
DCS/Logistics, Engineering & Force Protection
Department of the Air Force
Washington, D.C.

Director of Special Investigations
Department of the Air Force
Washington, D.C.

HQ Air Force Office of Special Investigations
Department of the Air Force
Superintendent, IT Integrations HQ AFOSI
Quantico, Virginia

Department of the Air Force
HQ USAF
Washington, D.C.

Deputy Director of Security Forces
DCS/Logistics, Installations & Missions Support

Defense Human Resources Activity
Headquarters
Pamela Mitchell, Director
4800 Mark Center Drive, Suite 06J25-01
Alexandria, VA 22350-4000

Department of the Air Force
HQ Air Force Office of Special Investigations
Quantico, VA
Brigadier General, Keith Givens
USAF Commander

Department of Defense
Under Secretary of Defense for Intelligence
Deputy Chief Management Officer

Department of Defense
Military Criminal Investigative Organizations (MCIOs)
        Commanders, Officers, supervisors and employees
Defense Criminal Investigative Organizations (DCIOs)
        Commanders, Officers, supervisors and employees

Office of Inspector General for the DOD

The Office of Inspector General for the DOD has issued four reports investigating and detailing the failures of the Air Force and Department of Defense, including negligence, negligent training, and negligent supervision. See attached reports:

Report No. DODIG-2019-030, Inspector General U.S. Department of Defense, Dec. 6, 2018, Report of Investigation into the United States Air Force's Failure to Submit Devin Kelley's Criminal History Information to the Federal Bureau of Investigation; see id. at p. l17, "The USAF concurred with this report and its recommendations." https://www.dodig.mil/reports.html/Article/1707300/reportof-investigation-into-the-united-states-air-forces-failure-to-submit-dev/

Report No. DODIG-2018-035, Inspector General U.S. Department of Defense, Dec. 4, 2017, *Evaluation of Fingerprint Card and Final Disposition Report Submissions by Military Service Law Enforcement Organizations*.   https://www.dodig.mil/reports.html/Search/DODIG-2018-035/

The DOD concluded that training on the submission of fingerprints and final disposition reports was ineffective and lacking, both for AFOSI Detachment 225 and the 49th Security Forces Squadron, and "there was no valid reason for the USAF's failures". *See* p. 111-112; *see also* p. 96-98 (noting "training did not provide instructions on when or how to submit either the fingerprint card or the final disposition report to the FBI CJIS Division"). Indeed, the DOD "determined that this failure to submit Kelley's fingerprints was part of a systemic problem in AFOSI Detachment 225." See p. 94. Worse, the case agent was actually deployed for seven months during the investigation and reported that he complained he could

5

not do his job, stating, "Boss, I'm burnt out, I'm so burnt out." "Boss, I want to get out. I can't do this anymore."

Report No. DODIG-2015-081, Inspector General U.S. Department of Defense, February 12, 2015, *Evaluation of Department of Defense Compliance with Criminal History Data Reporting Requirements*

Report No. DODIG-2015-011, Inspector General U.S. Department of Defense, October 29, 2014, *Evaluation of the Defense Criminal Investigative Organizations' Defense Incident-Based Reporting System Reporting and Reporting Accuracy*

Air Force 49th Security Forces Squadron and its investigators, Military Law Enforcement Officers (LEOs), or AFSFC Police Services Branch Confinement Facility

Commanders, Officers, supervisors, employees
The 49th Security Forces Squadron investigated Airman Kelley. The 49th Security Forces squadron investigators and/or Military Law Enforcement Officers (LEOs) had responsibilities to gather fingerprints and report, and thus will have knowledge of their responsibilities, training, and failures. The December 6, 2018, the Inspector General of the DOD issued a 131-page Report titled, *Investigation into the United States Air Force's Failure to Submit Devin Kelley's Criminal History Information to the Federal Bureau of Investigation* concluding that training on the submission of fingerprints and final disposition reports was ineffective and lacking, both for AFOSI Detachment 225 and the 49th Security Forces Squadron, and "there was no valid reason for the USAF's failures". *See* p. 111-112; *see also* p. 96-98 (noting "training did not provide instructions on when or how to submit either the fingerprint card or the final disposition report to the FBI CJIS Division"). Air Force Office of Special Investigations

AFSFC Police Services Branch training focused on collection of fingerprints, but failed to address submitting fingerprint cards and final disposition reports to the FBI CJIS. Their Management Internal Control Toolset (MICT) checklist items are supposed to be monitored and assessed as part of the installation commander's self-inspection program. Monthly supervisory reviews were "incomplete and ineffective. *See* Report No. DODIG-2019-030 p. 110.

Airman Kelley's Air Force Commander

Kelley's Commander issued a no contact order and has knowledge of Kelley's conduct and training in the Air Force.

Airman Kelley's Air Force Commander

> Kelley's Commander issued a no contact order, prepared a confinement package stating that he was "convinced" that Kelley was "dangerous and likely to harm someone if released", and has knowledge of Kelley's conduct and training in the Air Force.

Kelley's former Supervisor in the Air Force

> Kelley sent a threatening Facebook message to his former supervisor in the Air Force after his discharge.  She will have knowledge of Kelley's conduct and condition and threats.

Case Agent responsible for Airman Kelley

> The Case Agent will have knowledge for the reasons he could not properly report Kelley to the FBI, as detailed by the DOD's report.

Boss of Case Agent responsible for Airman Kelley

> The boss of the Case Agent will have knowledge for the reasons the Case Agent could not properly report Kelley to the FBI, as detailed by the DOD's report.

Peak Behavioral Health Services and Xavier Alvarez
5055 McNutt Rd.
Santa Teresa, NM 88008

> Peak Behavioral Health Services (PBHS) had a program for military personnel and diagnosed Kelley with various mental and emotional disorders. On information and belief, this is the facility from which Kelley attempted to buy guns to kill his commanding officers, and the facility that Kelley escaped from and fled to El Paso.

> According to an El Paso police report, police were informed that Kelley "was a danger to himself and others as he had already been caught sneaking firearms onto Holloman Air Force Base". Police were further advised that Airman Kelley "suffered from mental disorders" and that he "was attempting to carry out death threats" against "his military chain of command." Xavier Alvarez, who worked for Peak Behavioral and who reported Kelley to police for the escape, later confirmed to NBC News that Kelley "verbalized that he wanted to get some kind of retribution to his chain of command." Other patients reported that Kelley was doing something suspicious on computers, and the military found that Kelley was "ordering weapons and tactical gear and magazines to a P.O. Box in

San Antonio." Alvarez was quoted as saying, "This kid – he was hollow," and "I could never reach him."

Air Force Security Forces Squadron
Holloman Air Force Base

Commanders, Officers, supervisors, employees
Cmdr. Nathan McLeod-Hughes

Air Force 49th Logistics Readiness Squadron
Commanders, Officers, supervisors, employees

Air Force Detachment 225 and/or Holloman Air Force Base Office of Special Investigations

Commanders, Officers, Special Agents, supervisors, employees
AFOSI Detachment 225 and/or Holloman Air Force Base Office of Special Investigation had responsibilities to gather fingerprints and report, and thus will have knowledge of their responsibilities, training, and failures. The December 6, 2018, the Inspector General of the DOD issued a 131-page Report titled, Investigation into the United States Air Force's Failure to Submit Devin Kelley's Criminal History Information to the Federal Bureau of Investigation concluding that training on the submission of fingerprints and final disposition reports was ineffective and lacking, both for AFOSI Detachment 225 and the 49th Security Forces Squadron, and "there was no valid reason for the USAF's failures". See p. 111-112; see also p. 96-98 (noting "training did not provide instructions on when or how to submit either the fingerprint card or the final disposition report to the FBI CJIS Division").

Although AFOSI policy required supervisory reviews to include both I2MS and the investigative case file (record copy), the AFOSI Detachment 225 SAIC and Superintendent focused their reviews on the I2MS activities and not on investigative case files *See* p. 89. "In sum, we concluded that AFOSI Detachment 225 monthly supervisory reviews of Kelley's investigative case file were incomplete and ineffective".

Air Force Article 32 Investigating Officers

Air Force Prosecutors
Air Force prosecutors gathered evidence and handled the conviction of Airman Kelley, and thus have knowledge of his conduct and disposition.

Naval Consolidated Brig
Miramar, California
Commanders, Officers, supervisors, employees

8

General David Goldfein
Air Force Chief of Staff

General Stephen Wilson
Air Force Vice Chief of Staff

Lt. General Gina Grosso
Air Force Deputy Chief of Staff, Manpower, Personnel & Services

Lt. General John Raymond
Air Force Deputy Chief of Staff, Operations

Lt. General John Cooper, Deputy Chief of Staff, Operations

Air Force Holloman Air Force Base Mental Health Clinic
     HAFB Mental Health Clinic had custody of Kelley in the Air Force

Defense Incidence-Based Reporting System
     Commanders, Officers, supervisors, employees

**e.   Regarding experts who may be called to testify at the trial in this case, please refer to Plaintiff's Designation of Experts and any amendments or supplements thereto for additional information regarding the facts known to these witnesses and the bases of their opinions.  These expert designations will be made at the time required by the Court's Scheduling Order. Please also refer to the sworn testimony and written reports of these witnesses for further information regarding the facts known to and opinions held by these witnesses.**

**f.   Plaintiff cross-identifies as expert witnesses any person named or to be named by Defendant as a person having expert knowledge about any facts surrounding any issues relevant to the incident in question as expert witnesses who Plaintiff reserves the right to call live at the trial of the cause.  Plaintiff reserves the right to call such persons as expert witnesses, whether or not the designation is subsequently withdrawn.  Plaintiff does not have any control over any such witness, nor do they have any superior right to ascertain the subject matter on which any such witness may testify and/or opinions held by any such witness, beyond the information disclosed in deposition testimony and/or by Defendant's discovery responses.  In that regard, Plaintiff refers you to Defendant's discovery documents, deposition testimony, and documents produced by Defendant for the subject matter, facts known, and opinions and impressions of these witnesses.  Plaintiff reserves the right to obtain opinion testimony from any such witness within their area of expertise as related to this case.**

(ii)     A copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment;

Exhibit 1 – Inspector General, US Department of Defense, Evaluation of the Defense Criminal Investigative Organizations' Defense Incident-Based Reporting System Reporting and Reporting Accuracy, October 29, 2014 (Bates #18-949-1 – 18-949-40). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 2 – Inspector General, US Department of Defense, Evaluation of the Defense Compliance with Criminal History Data Reporting Requirements, February 12, 2015 (Bates #18-949-41 – 18-949-76). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 3 – Inspector General, US Department of Defense, Evaluation Fingerprint Card and Final Disposition Report Submissions by Military Service Law Enforcement Organizations, December 4, 2017 (Bates #18-949-77 – 18-949-168). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 4 – Inspector General, US Department of Defense, Report of Investigation into the United States Air Force's Failure to Submit Devin Kelley's Criminal History Information to the Federal Bureau of Investigation, December 6, 2018 (Bates #18-949-169 – 18-949-306). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 5 – Department of Defense Directive Number 7730.47, October 15, 1996 (Bates #18-949-307 – 18-949-315). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 6 – Department of Defense Manual Number 7730.47-M Volume 1, December 7, 2010 (Bates #18-949-316 – 18-949-398). This document is in the possession of the

Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 7 –U.S. Department of Defense Press Operations, DoD launches review of Devin P. Kelley criminal record notification, Release No. NR-382-17, November 6, 2017 (Bates #18-949-399). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 8 – National Instant Criminal Background Check System Indices (Bates #18-949-400 – 18-949-401). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 9 – U.S. Air Force article, AF Implements Changes to Improve Law Enforcement Database Reporting, November 28, 2017 (Bates #18-949-402). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 10 – U.S. Air Force tweet November 9, 2017 (Bates #18-949-403). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 11 – Report to the Committee on the Judiciary United States Senate from The Honorable Heather Wilson, Secretary of the Air Force, December 6, 2017 (Bates #18-949-404 – 18-949-405). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 12 – Questions for the Record for Secretary of the United States Air Force Heather Wilson, December 13, 2017 (Bates #18-949-406 – 18-949-410). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 13 – Misdemeanor Crimes of Domestic Violence (Bates #18-949-411). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 14 –Devin Kelley Trial Transcript (Bates #18-949-412 – 18-949-1022). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 15 - El Paso Incident Report, June 7, 2012 (Bates #18-949-1023 – 18-949-1028). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 16 – Devin Kelley Court Martial Order (Bates #18-949-1029 – 18-949-1034). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 17 – Statement of Danielle Kelley (Bates #18-949-1035). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 18 – Devin Kelley Autopsy Report (Bates #18-949-1036 – 18-949-1037). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 19 – Life Expectancy Tables (Bates #18-949-1038 – 18-949-1101). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 20 – Birth Certificate (Bates #KBOYD-19-691-000001)

Exhibit 21 – Death Certificate of Robert Scott Marshall (Bates #KBOYD-19-691-000002)

Exhibit 22 – Death Certificate of Karen Sue Marshall (Bates #KBOYD-19-691-000003)

Exhibit 23 – Autopsy of Robert Scott Marshall (Bates #KBOYD-19-691-000004 - KBOYD-19-691-000010)

Exhibit 24 – Autopsy of Karen Sue Marshall (Bates #KBOYD-19-691-000011 - KBOYD-19-691-000018)

Exhibit 25 – 2012 Tax Return (Bates #KBOYD-19-691-000019 - KBOYD-19-691-000029)

Exhibit 26 – 2013 Tax Return (Bates #KBOYD-19-691-000030 - KBOYD-19-691-000054)

Exhibit 27 – 2014 Tax Return (Bates #KBOYD-19-691-000055 - KBOYD-19-691-000065)

Exhibit 28 – 2015 Tax Return (Bates #KBOYD-19-691-000066 - KBOYD-19-691-000086)

Exhibit 29 – 2016 Tax Return (Bates #KBOYD-19-691-000087 - KBOYD-19-691-000111)

Exhibit 30 – Social Security Earnings Summary of Robert Marshall (Bates #KBOYD -19-691-000112 - KBOYD-19-691-000113)

Exhibit 27 – Social Security Earnings Summary of Shani Marshall (Bates #KBOYD -19-691-000114 - KBOYD-19-691-000115)

In addition, Plaintiff is in the possession of the materials maintained by the Texas Rangers related to the incident.  In obtaining these materials, Plaintiff entered into an agreement with the Texas Attorney General regarding their release.  As such, Plaintiff will discuss the terms of this agreement with Defendant prior to releasing these materials.

(iii)    A computation of each category of damages claimed by the disclosing party— who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered;

Discovery is still in its early stages and it is premature for Plaintiff to respond to this disclosure; however, please see Plaintiff's Original Complaint(s) and any and all amendments thereto for the categories of damages sought by Plaintiff.  Please refer also to Plaintiff's administrative claims filed with the Government for the maximum amount of damages sought by Plaintiff in this case.  Please refer to the sworn deposition testimony in this case. Please also refer to Plaintiff's Designation of Experts and any amendments or supplements thereto for additional information regarding the facts known to these witnesses and the bases of their opinions.  These expert designations will be made at the time required by the Court's Scheduling Order. Please also refer to the sworn testimony

and written reports of these witnesses for further information regarding the facts known to and opinions held by these witnesses.

(iv)    For inspection and copying as under Rule 34, any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment.

Not applicable.

Respectfully Submitted,

/s/ *Justin Demerath*
**JUSTIN DEMERATH**
jdemerath@808west.com
Texas State Bar No. 24034415
**DAVID CAMPBELL**
dcampbell@808west.com
Texas State Bar No. 24057033
**O'HANLON, DEMERATH & CASTILLO, PC**
808 West Avenue
Austin, TX 78701
Telephone: (512) 494-9949
Facsimile: (512) 494-9919

Attorneys for Plaintiff Kara Boyd (Marshall)

**Certificate of Service**

I certify that the foregoing was served on July 12, 2019, via email service and certified mail, return receipt requested, on the following counsel for the United States.


/s/ *Justin Demerath*
**JUSTIN DEMERATH**

PAUL DAVID STERN
Trial Attorney, Torts Branch
United States Dept. of Justice
Civil Division
United States Department of Justice
P.O. Box 888
Benjamin Franklin Station
Washington, D.C. 20004
T: (202) 616-2197
Paul.David.Stern@usdoj.gov

STEPHEN E. HANDLER
Senior Trial Counsel, Torts Branch
United States Dept. of Justice
Civil Division
United States Department of Justice
P.O. Box 888
Benjamin Franklin Station
Washington, D.C. 20004
T: (202) 616-2197
Stephen.Handler@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| Joe Holcombe, *et al.*,<br>　　Plaintiffs,<br><br>v.<br><br>United States of America,<br>　　Defendant. | Civil Action No. 5:18-cv-555-XR<br><br>*Consolidated with*:<br>　Nos. 5:18-cv-712-XR; 5:18-cv-881-XR;<br>　5:18-cv-944-XR; 5:18-cv-949-XR;<br>　5:18-cv-951-XR; 5:18-cv-1151-XR;<br>　5:19-cv-184-XR; 5:19-cv-289;<br>　5:19-cv-506 XR; 5:19-cv-678;<br>　5:19-cv-691-XR; 5:19-cv-705;<br>　5:19-cv-706-XR; 5:19-cv-715-XR |

### PLAINTIFF MARTINA PACHAL'S, INDEPENDENT EXECUTRIX OF THE ESTATE OF KAREN SUE MARSHALL, INITIAL DISCLOSURES PURSUANT TO RULE 26(A)(1)

(i)　The name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment;

**a. Plaintiff hereby designates as persons with knowledge the health care providers referenced in the related health care records in this case, including physicians, technicians, nurses, radiologists, physician's assistants, physical therapists, clinics, hospitals, pharmacies, and their agents, representatives, and employees. While these health care providers are not within the control of Plaintiff and have not been retained by Plaintiff as expert witnesses, Plaintiff reserves the right to elicit opinion testimony from any such health care provider, including expert testimony regarding liability, causation, and damages from those treating healthcare providers relating to the medical treatment provided to the Plaintiff. To the extent it is necessary to call live at the trial or by deposition in this cause any agents, representatives, employees and/or custodian of records for any of the following health care providers, Plaintiff identifies any such custodian as a person who may have expert knowledge regarding issues related to the incident in question to include personal knowledge of the records and concerning the necessity of services rendered and referenced in the records and concerning the reasonableness of the medical bills charged and referenced in the records of the following health care providers. For the**

1

mental impressions held by and the opinions of and facts known by any of the following witnesses, please refer to the related health care records of the Plaintiff.

| NAME | ADDRESS/TELEPHONE |
| --- | --- |
| Agents, servants and employees, including but not limited to: James A. Feig, MD Jennifer J. Rulon, MD Rajesh P. Kannan, M.D. Randall E. Frost, M.D. D. Kimberley Molina, M.D. Veronica Hargrove, Ph.D. **Bexar County Medical Examiner** | 7337 Louis Pasteur San Antonio, Tx 78229-4565 (210) 335-4000 |

    **b. Plaintiff identifies herself as persons with knowledge of relevant facts pertaining to the incident in question:**

| NAME | ADDRESS/TELEPHONE |
| --- | --- |
| **PARTIES** | |
| Martina Pachal, Independent Executrix of the Estate of Karen Sue Marshall c/o Justin B. Demerath O'HANLON, DEMERATH & CASTILLO, PC | 808 West Avenue Austin, Texas 78701 (512) 494-9949 |

    **c. Plaintiff identifies the following family members, friends, and other persons as persons with knowledge of relevant facts:**

       Academy Sports + Outdoors in San Antonio
           Kelley bought a Ruger 5.56 mm assault rifle from Academy Sports + Outdoors in San Antonio after clearing a background check of the NICS. Store personnel will have knowledge of the transaction.

       El Paso Police
       Headquarters:
       911 N. Raynor
       El Paso, TX 79903
       (915) 212-4000
           The El Paso police apprehended Kelley after he escaped. See Exhibit 15.

       First Baptist Church of Sutherland Springs, Texas
       Frank Pomeroy, Pastor
       First Baptist Church
       216 4th Street

Sutherland Springs, Texas 78161
> This is the church where the shooting occurred. The pastor was not there that morning, but on information and belief lost his daughter and many beloved friends in the massacre. He will have knowledge of their community and relationships and the impact of the shooting.

Danielle Shield Kelley
> Married to Airman Devin Kelley at the time of the church shooting.

Tessa Kelley (nee' Loge)
> Married to Airman Devin Kelley while he was in the Air Force and reported him for abuse to herself and infant child.

Johnnie Langendorff
Stephen Willeford
> Stephen Willeford confronted Kelley and chased him away from the church. Johnnie Langendorff stopped his vehicle to pick up Mr. Willeford and give chase.

Steve Moore
Wilson County Sheriff's Department
> Investigator

Harold Schott, Justice of the Peace Pct. #3
Wilson County

Terry Snyder
Texas Ranger Division
Texas Department of Public Safety
6100 Guadalupe Street, Building E
Austin, TX 78752
> Investigator and Custodian of Records

Sunland Park Police Department
1000 McNutt Rd
Sunland Park, NM 88063

Kara Boyd (née Marshall)
> Kara Boyd is the daughter of Karen Sue Marshall. She has knowledge of the death of her mother, Karen Sue Marshall, as well as her own grief, trauma and other elements of damages and that of her parents and family.

**d. Plaintiff names the Defendant herein, as well as its agents, representatives, and/or employees or former agents, representatives, or employees, as persons with knowledge of relevant facts. Plaintiff further names the Defendant, as well as its agents, representatives, and/or employees or former agents, representatives, or**

**employees, as persons from whom expert testimony may be elicited regarding liability, causation and/or damages, although Plaintiff does not necessarily vouch for all the opinion testimony of such persons. Plaintiff refers you to the Department of Defense Inspector General reports from 2018, 2017, 2014, and 2015; Defendant's discovery documents; deposition testimony; documents produced by Defendant; and related medical records for the subject matter, facts known, and opinions and impressions of these witnesses.**

Air Force personnel
> Air Force personnel are expected to have knowledge of Kelley's conduct in the Air Force and mental problems, including but not limited to his attempt to bring weapons onto the base to kill officers.

Additional Air Force personnel are provided below:
> Air Force spokesperson, Ann Stefanek. On November 28, 2017, an Air Force spokesperson, Ann Stefanek, admitted that the failure to follow Pentagon guidelines to report Kelley's crimes to the FBI was "not an isolated incident and similar reporting lapses occurred at other locations."

Heather Wilson
Secretary of the Air Force

Deborah Lee James
Secretary of the Air Force

Col. Kirk Stabler
Air Force Commander
Headquarters Air Force Office of Special Investigations
Quantico, Virginia

Brig. General Andrea Tullos
Air Force Director
Director of Security Forces
DCS/Logistics, Engineering & Force Protection
Department of the Air Force
Washington, D.C.

Director of Special Investigations
Department of the Air Force
Washington, D.C.

HQ Air Force Office of Special Investigations
Department of the Air Force
Superintendent, IT Integrations HQ AFOSI
Quantico, Virginia

Department of the Air Force
HQ USAF
Washington, D.C.

Deputy Director of Security Forces
DCS/Logistics, Installations & Missions Support

Defense Human Resources Activity
Headquarters
Pamela Mitchell, Director
4800 Mark Center Drive, Suite 06J25-01
Alexandria, VA 22350-4000

Department of the Air Force
HQ Air Force Office of Special Investigations
Quantico, VA
Brigadier General, Keith Givens
USAF Commander

Department of Defense
Under Secretary of Defense for Intelligence
Deputy Chief Management Officer

Department of Defense
Military Criminal Investigative Organizations (MCIOs)
        Commanders, Officers, supervisors and employees
Defense Criminal Investigative Organizations (DCIOs)
        Commanders, Officers, supervisors and employees

Office of Inspector General for the DOD

The Office of Inspector General for the DOD has issued four reports investigating and detailing the failures of the Air Force and Department of Defense, including negligence, negligent training, and negligent supervision. See attached reports:

Report No. DODIG-2019-030, Inspector General U.S. Department of Defense, Dec. 6, 2018, Report of Investigation into the United States Air Force's Failure to Submit Devin Kelley's Criminal History Information to the Federal Bureau of Investigation; see id. at p. 117, "The USAF concurred with         this        report        and        its        recommendations." https://www.dodig.mil/reports.html/Article/1707300/reportof-investigation-into-the-united-states-air-forces-failure-to-submit-dev/

Report No. DODIG-2018-035, Inspector General U.S. Department of Defense, Dec. 4, 2017, *Evaluation of Fingerprint Card and Final Disposition Report Submissions by Military Service Law Enforcement*

*Organizations*. https://www.dodig.mil/reports.html/Search/DODIG-2018-035/

The DOD concluded that training on the submission of fingerprints and final disposition reports was ineffective and lacking, both for AFOSI Detachment 225 and the 49th Security Forces Squadron, and "there was no valid reason for the USAF's failures". *See* p. 111-112; *see also* p. 96-98 (noting "training did not provide instructions on when or how to submit either the fingerprint card or the final disposition report to the FBI CJIS Division"). Indeed, the DOD "determined that this failure to submit Kelley's fingerprints was part of a systemic problem in AFOSI Detachment 225." See p. 94. Worse, the case agent was actually deployed for seven months during the investigation and reported that he complained he could not do his job, stating, "Boss, I'm burnt out, I'm so burnt out." "Boss, I want to get out. I can't do this anymore."

Report No. DODIG-2015-081, Inspector General U.S. Department of Defense, February 12, 2015, *Evaluation of Department of Defense Compliance with Criminal History Data Reporting Requirements*

Report No. DODIG-2015-011, Inspector General U.S. Department of Defense, October 29, 2014, *Evaluation of the Defense Criminal Investigative Organizations' Defense Incident-Based Reporting System Reporting and Reporting Accuracy*

Air Force 49th Security Forces Squadron and its investigators, Military Law Enforcement Officers (LEOs), or AFSFC Police Services Branch Confinement Facility

Commanders, Officers, supervisors, employees
The 49th Security Forces Squadron investigated Airman Kelley. The 49th Security Forces squadron investigators and/or Military Law Enforcement Officers (LEOs) had responsibilities to gather fingerprints and report, and thus will have knowledge of their responsibilities, training, and failures. The December 6, 2018, the Inspector General of the DOD issued a 131-page Report titled, *Investigation into the United States Air Force's Failure to Submit Devin Kelley's Criminal History Information to the Federal Bureau of Investigation* concluding that training on the submission of fingerprints and final disposition reports was ineffective and lacking, both for AFOSI Detachment 225 and the 49th Security Forces Squadron, and "there was no valid reason for the USAF's failures". *See* p. 111-112; *see also* p. 96-98 (noting "training did not provide instructions on when or how to submit either the fingerprint card or the final disposition report to the FBI CJIS Division"). Air Force Office of Special Investigations

AFSFC Police Services Branch training focused on collection of fingerprints, but failed to address submitting fingerprint cards and final

disposition reports to the FBI CJIS.  Their Management Internal Control Toolset (MICT) checklist items are supposed to be monitored and assessed as part of the installation commander's self-inspection program.  Monthly supervisory reviews were "incomplete and ineffective. *See* Report No. DODIG-2019-030 p. 110.

Airman Kelley's Air Force Commander

Kelley's Commander issued a no contact order and has knowledge of Kelley's conduct and training in the Air Force.

Airman Kelley's Air Force Commander

Kelley's Commander issued a no contact order, prepared a confinement package stating that he was "convinced" that Kelley was "dangerous and likely to harm someone if released", and has knowledge of Kelley's conduct and training in the Air Force.

Kelley's former Supervisor in the Air Force

Kelley sent a threatening Facebook message to his former supervisor in the Air Force after his discharge.  She will have knowledge of Kelley's conduct and condition and threats.

Case Agent responsible for Airman Kelley

The Case Agent will have knowledge for the reasons he could not properly report Kelley to the FBI, as detailed by the DOD's report.

Boss of Case Agent responsible for Airman Kelley

The boss of the Case Agent will have knowledge for the reasons the Case Agent could not properly report Kelley to the FBI, as detailed by the DOD's report.

Peak Behavioral Health Services and Xavier Alvarez
5055 McNutt Rd.
Santa Teresa, NM 88008

Peak Behavioral Health Services (PBHS) had a program for military personnel and diagnosed Kelley with various mental and emotional disorders. On information and belief, this is the facility from which Kelley attempted to buy guns to kill his commanding officers, and the facility that Kelley escaped from and fled to El Paso.

According to an El Paso police report, police were informed that Kelley "was a danger to himself and others as he had already been caught sneaking firearms onto Holloman Air Force Base". Police were further advised that Airman Kelley "suffered from mental disorders" and that he "was attempting to carry out death threats" against "his military chain of command." Xavier Alvarez, who worked for Peak Behavioral and who reported Kelley to police for the escape, later confirmed to NBC News that Kelley "verbalized that he wanted to get some kind of retribution to his chain of command." Other patients reported that Kelley was doing something suspicious on computers, and the military found that Kelley was "ordering weapons and tactical gear and magazines to a P.O. Box in San Antonio." Alvarez was quoted as saying, "This kid – he was hollow," and "I could never reach him."

Air Force Security Forces Squadron
Holloman Air Force Base

Commanders, Officers, supervisors, employees
Cmdr. Nathan McLeod-Hughes

Air Force 49th Logistics Readiness Squadron
Commanders, Officers, supervisors, employees

Air Force Detachment 225 and/or Holloman Air Force Base Office of Special Investigations

Commanders, Officers, Special Agents, supervisors, employees
AFOSI Detachment 225 and/or Holloman Air Force Base Office of Special Investigation had responsibilities to gather fingerprints and report, and thus will have knowledge of their responsibilities, training, and failures. The December 6, 2018, the Inspector General of the DOD issued a 131-page Report titled, Investigation into the United States Air Force's Failure to Submit Devin Kelley's Criminal History Information to the Federal Bureau of Investigation concluding that training on the submission of fingerprints and final disposition reports was ineffective and lacking, both for AFOSI Detachment 225 and the 49th Security Forces Squadron, and "there was no valid reason for the USAF's failures". See p. 111-112; see also p. 96-98 (noting "training did not provide instructions on when or how to submit either the fingerprint card or the final disposition report to the FBI CJIS Division").

Although AFOSI policy required supervisory reviews to include both I2MS and the investigative case file (record copy), the AFOSI Detachment 225 SAIC and Superintendent focused their reviews on the I2MS activities and not on investigative case files" *See* p. 89. "In sum, we concluded that

AFOSI Detachment 225 monthly supervisory reviews of Kelley's
investigative case file were incomplete and ineffective".

Air Force Article 32 Investigating Officers

Air Force Prosecutors
Air Force prosecutors gathered evidence and handled the conviction of
Airman Kelley, and thus have knowledge of his conduct and disposition.

Naval Consolidated Brig
Miramar, California
Commanders, Officers, supervisors, employees

General David Goldfein
Air Force Chief of Staff

General Stephen Wilson
Air Force Vice Chief of Staff

Lt. General Gina Grosso
Air Force Deputy Chief of Staff, Manpower, Personnel & Services

Lt. General John Raymond
Air Force Deputy Chief of Staff, Operations

Lt. General John Cooper, Deputy Chief of Staff, Operations

Air Force Holloman Air Force Base Mental Health Clinic
HAFB Mental Health Clinic had custody of Kelley in the Air Force

Defense Incidence-Based Reporting System
Commanders, Officers, supervisors, employees

**e.   Regarding experts who may be called to testify at the trial in this case, please
refer to Plaintiff's Designation of Experts and any amendments or supplements
thereto for additional information regarding the facts known to these witnesses and
the bases of their opinions.   These expert designations will be made at the time
required by the Court's Scheduling Order. Please also refer to the sworn testimony
and written reports of these witnesses for further information regarding the facts
known to and opinions held by these witnesses.**

**f.   Plaintiff cross-identifies as expert witnesses any person named or to be named
by Defendant as a person having expert knowledge about any facts surrounding any
issues relevant to the incident in question as expert witnesses who Plaintiff reserves
the right to call live at the trial of the cause.  Plaintiff reserves the right to call such
persons as expert witnesses, whether or not the designation is subsequently**

**withdrawn.  Plaintiff does not have any control over any such witness, nor do they have any superior right to ascertain the subject matter on which any such witness may testify and/or opinions held by any such witness, beyond the information disclosed in deposition testimony and/or by Defendant's discovery responses.  In that regard, Plaintiff refers you to Defendant's discovery documents, deposition testimony, and documents produced by Defendant for the subject matter, facts known, and opinions and impressions of these witnesses.  Plaintiff reserves the right to obtain opinion testimony from any such witness within their area of expertise as related to this case.**

(ii)    A copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment;

Exhibit 1 – Inspector General, US Department of Defense, Evaluation of the Defense Criminal Investigative Organizations' Defense Incident-Based Reporting System Reporting and Reporting Accuracy, October 29, 2014 (Bates #18-949-1 – 18-949-40). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 2 – Inspector General, US Department of Defense, Evaluation of the Defense Compliance with Criminal History Data Reporting Requirements, February 12, 2015 (Bates #18-949-41 – 18-949-76). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 3 – Inspector General, US Department of Defense, Evaluation Fingerprint Card and Final Disposition Report Submissions by Military Service Law Enforcement Organizations, December 4, 2017 (Bates #18-949-77 – 18-949-168). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 4 – Inspector General, US Department of Defense, Report of Investigation into the United States Air Force's Failure to Submit Devin Kelley's Criminal History Information to the Federal Bureau of Investigation, December 6, 2018 (Bates #18-949-169 – 18-949-306). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs,

Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 5 –Department of Defense Directive Number 7730.47, October 15, 1996 (Bates #18-949-307 – 18-949-315). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 6 –Department of Defense Manual Number 7730.47-M Volume 1, December 7, 2010 (Bates #18-949-316 – 18-949-398). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 7 –U.S. Department of Defense Press Operations, DoD launches review of Devin P. Kelley criminal record notification, Release No. NR-382-17, November 6, 2017 (Bates #18-949-399). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 8 – National Instant Criminal Background Check System Indices (Bates #18-949-400 – 18-949-401). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 9 – U.S. Air Force article, AF Implements Changes to Improve Law Enforcement Database Reporting, November 28, 2017 (Bates #18-949-402). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 10 – U.S. Air Force tweet November 9, 2017 (Bates #18-949-403). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 11 – Report to the Committee on the Judiciary United States Senate from The Honorable Heather Wilson, Secretary of the Air Force, December 6, 2017 (Bates #18-949-404 – 18-949-405). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for

Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 12 – Questions for the Record for Secretary of the United States Air Force Heather Wilson, December 13, 2017 (Bates #18-949-406 – 18-949-410). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 13 – Misdemeanor Crimes of Domestic Violence (Bates #18-949-411). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 14 –Devin Kelley Trial Transcript (Bates #18-949-412 – 18-949-1022). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 15 - El Paso Incident Report, June 7, 2012 (Bates #18-949-1023 – 18-949-1028). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 16 – Devin Kelley Court Martial Order (Bates #18-949-1029 – 18-949-1034). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 17 – Statement of Danielle Kelley (Bates #18-949-1035). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 18 – Devin Kelley Autopsy Report (Bates #18-949-1036 – 18-949-1037). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 19 – Life Expectancy Tables (Bates #18-949-1038 – 18-949-1101). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 20 – Death Certificate (Bates #KMARSHALL-19-691-000001)

Exhibit 21 – Autopsy (Bates #KMARSHALL-19-691-000002 - KMARSHALL-19-691-000009)

Exhibit 22 – Letters Testamentary (Bates #KMARSHALL-19-691-000010 - KMARSHALL-19-691-000011)

Exhibit 23 – 2012 Tax Return (Bates #KMARSHALL-19-691-000012 - KMARSHALL-19-691-000022)

Exhibit 24 – 2013 Tax Return (Bates #KMARSHALL-19-691-000023 - KMARSHALL-19-691-0047)

Exhibit 25 – 2014 Tax Return (Bates #KMARSHALL-19-691-000048 - KMARSHALL-19-691-000058)

Exhibit 26 – 2015 Tax Return (Bates #KMARSHALL-19-691-000059 - KMARSHALL-19-691-000079)

Exhibit 27 – 2016 Tax Return (Bates #KMARSHALL-19-691-000080 - KMARSHALL-19-691-000104)

Exhibit 28 – Social Security Earnings Summary of Karen Marshall (Bates #KMARSHALL-19-691-000105 - KMARSHALL-19-691-000106)

Exhibit 29 – Air Force Civilian Service Personnel Records of Karen Marshall (Bates #KMARSHALL-19-691-000107 - KMARSHALL-19-691-000169)

In addition, Plaintiff is in the possession of the materials maintained by the Texas Rangers related to the incident.  In obtaining these materials, Plaintiff entered into an agreement with the Texas Attorney General regarding their release.  As such, Plaintiff will discuss the terms of this agreement with Defendant prior to releasing these materials.

Further, Plaintiff is in the possession of the full Autopsy containing photographs taken by the Medical Examiner. In obtaining these materials, Plaintiff entered into an agreement with the Wilson County Attorney regarding their release. As such, Plaintiff will discuss the terms of this agreement with Defendant prior to releasing these materials.

(iii)     A computation of each category of damages claimed by the disclosing party—
who must also make available for inspection and copying as under Rule 34 the
documents or other evidentiary material, unless privileged or protected from
disclosure, on which each computation is based, including materials bearing on
the nature and extent of injuries suffered;

Discovery is still in its early stages and it is premature for Plaintiff to respond to this
disclosure; however, please see Plaintiff's Original Complaint(s) and any and all
amendments thereto for the categories of damages sought by Plaintiff.  Please refer also to
Plaintiff's administrative claims filed with the Government for the maximum amount of
damages sought by Plaintiff in this case.  Please refer to the sworn deposition testimony in
this case. Please also refer to Plaintiff's Designation of Experts and any amendments or
supplements thereto for additional information regarding the facts known to these
witnesses and the bases of their opinions.  These expert designations will be made at the
time required by the Court's Scheduling Order. Please also refer to the sworn testimony
and written reports of these witnesses for further information regarding the facts known to
and opinions held by these witnesses.

(iv)     For inspection and copying as under Rule 34, any insurance agreement under
which an insurance business may be liable to satisfy all or part of a possible
judgment in the action or to indemnify or reimburse for payments made to
satisfy the judgment.

Not applicable.

Respectfully Submitted,

/s/ *Justin Demerath*
**JUSTIN DEMERATH**
jdemerath@808west.com
Texas State Bar No. 24034415
**DAVID CAMPBELL**
dcampbell@808west.com
Texas State Bar No. 24057033
**O'HANLON, DEMERATH & CASTILLO, PC**
808 West Avenue
Austin, TX 78701
Telephone: (512) 494-9949
Facsimile: (512) 494-9919

Attorneys for Plaintiff Martina Pachal, Independent
Executrix of the Estate of Karen Sue Marshall

14

## Certificate of Service

I certify that the foregoing was served on July 12, 2019, via email service and certified mail, return receipt requested, on the following counsel for the United States.

/s/ *Justin Demerath*
**JUSTIN DEMERATH**

PAUL DAVID STERN
Trial Attorney, Torts Branch
United States Dept. of Justice
Civil Division
United States Department of Justice
P.O. Box 888
Benjamin Franklin Station
Washington, D.C. 20004
T: (202) 616-2197
Paul.David.Stern@usdoj.gov

STEPHEN E. HANDLER
Senior Trial Counsel, Torts Branch
United States Dept. of Justice
Civil Division
United States Department of Justice
P.O. Box 888
Benjamin Franklin Station
Washington, D.C. 20004
T: (202) 616-2197
Stephen.Handler@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| Joe Holcombe, *et al.*,<br>    Plaintiffs, | Civil Action No. 5:18-cv-555-XR |
| v. | *Consolidated with*:<br>Nos. 5:18-cv-712-XR; 5:18-cv-881-XR;<br>5:18-cv-944-XR; 5:18-cv-949-XR;<br>5:18-cv-951-XR; 5:18-cv-1151-XR;<br>5:19-cv-184-XR; 5:19-cv-289;<br>5:19-cv-506 XR; 5:19-cv-678;<br>5:19-cv-691-XR; 5:19-cv-705;<br>5:19-cv-706-XR; 5:19-cv-715-XR |
| United States of America,<br>    Defendant. | |

## PLAINTIFF MARTINA PACHAL'S, INDEPENDENT ADMINISTRATRIX OF THE ESTATE OF ROBERT SCOTT MARSHALL, INITIAL DISCLOSURES PURSUANT TO RULE 26(A)(1)

(i)    The name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment;

**a. Plaintiff hereby designates as persons with knowledge the health care providers referenced in the related health care records in this case, including physicians, technicians, nurses, radiologists, physician's assistants, physical therapists, clinics, hospitals, pharmacies, and their agents, representatives, and employees. While these health care providers are not within the control of Plaintiff and have not been retained by Plaintiff as expert witnesses, Plaintiff reserves the right to elicit opinion testimony from any such health care provider, including expert testimony regarding liability, causation, and damages from those treating healthcare providers relating to the medical treatment provided to the Plaintiff. To the extent it is necessary to call live at the trial or by deposition in this cause any agents, representatives, employees and/or custodian of records for any of the following health care providers, Plaintiff identifies any such custodian as a person who may have expert knowledge regarding issues related to the incident in question to include personal knowledge of the records and concerning the necessity of services rendered and referenced in the records and concerning the reasonableness of the medical bills charged and referenced in the records of the following health care providers. For the**

1

**mental impressions held by and the opinions of and facts known by any of the following witnesses, please refer to the related health care records of the Plaintiff.**

| NAME | ADDRESS/TELEPHONE |
|---|---|
| Agents, servants and employees, including but not limited to: <br> James A. Feig, MD <br> Jennifer J. Rulon, MD <br> Rajesh P. Kannan, M.D. <br> Randall E. Frost, M.D. <br> D. Kimberley Molina, M.D. <br> Veronica Hargrove, Ph.D. <br> **Bexar County Medical Examiner** | 7337 Louis Pasteur <br> San Antonio, Tx 78229-4565 <br> (210) 335-4000 |

 **b. Plaintiff identifies herself as persons with knowledge of relevant facts pertaining to the incident in question:**

| NAME | ADDRESS/TELEPHONE |
|---|---|
| **PARTIES** | |
| Martina Pachal, Independent Administratrix of the Estate of Robert Scott Marshall <br> c/o Justin B. Demerath <br> O'HANLON, DEMERATH & CASTILLO, PC | 808 West Avenue <br> Austin, Texas 78701 <br> (512) 494-9949 |

 **c. Plaintiff identifies the following family members, friends, and other persons as persons with knowledge of relevant facts:**

  Academy Sports + Outdoors in San Antonio
   Kelley bought a Ruger 5.56 mm assault rifle from Academy Sports + Outdoors in San Antonio after clearing a background check of the NICS. Store personnel will have knowledge of the transaction.

  El Paso Police
  Headquarters:
  911 N. Raynor
  El Paso, TX 79903
  (915) 212-4000
   The El Paso police apprehended Kelley after he escaped. See Exhibit 15.

  First Baptist Church of Sutherland Springs, Texas
  Frank Pomeroy, Pastor
  First Baptist Church
  216 4th Street

Sutherland Springs, Texas 78161
> This is the church where the shooting occurred. The pastor was not there that morning, but on information and belief lost his daughter and many beloved friends in the massacre. He will have knowledge of their community and relationships and the impact of the shooting.

Danielle Shield Kelley
> Married to Airman Devin Kelley at the time of the church shooting.

Tessa Kelley (nee' Loge)
> Married to Airman Devin Kelley while he was in the Air Force and reported him for abuse to herself and infant child.

Johnnie Langendorff
Stephen Willeford
> Stephen Willeford confronted Kelley and chased him away from the church. Johnnie Langendorff stopped his vehicle to pick up Mr. Willeford and give chase.

Steve Moore
Wilson County Sheriff's Department
> Investigator

Harold Schott, Justice of the Peace Pct. #3
Wilson County

Terry Snyder
Texas Ranger Division
Texas Department of Public Safety
6100 Guadalupe Street, Building E
Austin, TX 78752
> Investigator and Custodian of Records

Sunland Park Police Department
1000 McNutt Rd
Sunland Park, NM 88063

Kara Boyd (née Marshall)
> Kara Boyd is the daughter of Robert Scott Marshall. She has knowledge of the death of her father, Robert Scott Marshall, as well as her own grief, trauma and other elements of damages and that of her parents and family.

**d. Plaintiff names the Defendant herein, as well as its agents, representatives, and/or employees or former agents, representatives, or employees, as persons with knowledge of relevant facts. Plaintiff further names the Defendant, as well as its agents, representatives, and/or employees or former agents, representatives, or**

**employees, as persons from whom expert testimony may be elicited regarding liability, causation and/or damages, although Plaintiff does not necessarily vouch for all the opinion testimony of such persons. Plaintiff refers you to the Department of Defense Inspector General reports from 2018, 2017, 2014, and 2015; Defendant's discovery documents; deposition testimony; documents produced by Defendant; and related medical records for the subject matter, facts known, and opinions and impressions of these witnesses.**

Air Force personnel
> Air Force personnel are expected to have knowledge of Kelley's conduct in the Air Force and mental problems, including but not limited to his attempt to bring weapons onto the base to kill officers.

Additional Air Force personnel are provided below:
> Air Force spokesperson, Ann Stefanek. On November 28, 2017, an Air Force spokesperson, Ann Stefanek, admitted that the failure to follow Pentagon guidelines to report Kelley's crimes to the FBI was "not an isolated incident and similar reporting lapses occurred at other locations."

Heather Wilson
Secretary of the Air Force

Deborah Lee James
Secretary of the Air Force

Col. Kirk Stabler
Air Force Commander
Headquarters Air Force Office of Special Investigations
Quantico, Virginia

Brig. General Andrea Tullos
Air Force Director
Director of Security Forces
DCS/Logistics, Engineering & Force Protection
Department of the Air Force
Washington, D.C.

Director of Special Investigations
Department of the Air Force
Washington, D.C.

HQ Air Force Office of Special Investigations
Department of the Air Force
Superintendent, IT Integrations HQ AFOSI
Quantico, Virginia

Department of the Air Force
HQ USAF
Washington, D.C.

Deputy Director of Security Forces
DCS/Logistics, Installations & Missions Support

Defense Human Resources Activity
Headquarters
Pamela Mitchell, Director
4800 Mark Center Drive, Suite 06J25-01
Alexandria, VA 22350-4000

Department of the Air Force
HQ Air Force Office of Special Investigations
Quantico, VA
Brigadier General, Keith Givens
USAF Commander

Department of Defense
Under Secretary of Defense for Intelligence
Deputy Chief Management Officer

Department of Defense
Military Criminal Investigative Organizations (MCIOs)
         Commanders, Officers, supervisors and employees
Defense Criminal Investigative Organizations (DCIOs)
         Commanders, Officers, supervisors and employees

Office of Inspector General for the DOD

The Office of Inspector General for the DOD has issued four reports investigating and detailing the failures of the Air Force and Department of Defense, including negligence, negligent training, and negligent supervision. See attached reports:

Report No. DODIG-2019-030, Inspector General U.S. Department of Defense, Dec. 6, 2018, Report of Investigation into the United States Air Force's Failure to Submit Devin Kelley's Criminal History Information to the Federal Bureau of Investigation; see id. at p. l17, "The USAF concurred with       this      report      and      its      recommendations." https://www.dodig.mil/reports.html/Article/1707300/reportof-investigation-into-the-united-states-air-forces-failure-to-submit-dev/

Report No. DODIG-2018-035, Inspector General U.S. Department of Defense, Dec. 4, 2017, *Evaluation of Fingerprint Card and Final Disposition Report Submissions by Military Service Law Enforcement*

5

*Organizations*.   https://www.dodig.mil/reports.html/Search/DODIG-2018-035/

The DOD concluded that training on the submission of fingerprints and final disposition reports was ineffective and lacking, both for AFOSI Detachment 225 and the 49th Security Forces Squadron, and "there was no valid reason for the USAF's failures". *See* p. 111-112; *see also* p. 96-98 (noting "training did not provide instructions on when or how to submit either the fingerprint card or the final disposition report to the FBI CJIS Division"). Indeed, the DOD "determined that this failure to submit Kelley's fingerprints was part of a systemic problem in AFOSI Detachment 225." See p. 94. Worse, the case agent was actually deployed for seven months during the investigation and reported that he complained he could not do his job, stating, "Boss, I'm burnt out, I'm so burnt out." "Boss, I want to get out. I can't do this anymore."

Report No. DODIG-2015-081, Inspector General U.S. Department of Defense, February 12, 2015, *Evaluation of Department of Defense Compliance with Criminal History Data Reporting Requirements*

Report No. DODIG-2015-011, Inspector General U.S. Department of Defense, October 29, 2014, *Evaluation of the Defense Criminal Investigative Organizations' Defense Incident-Based Reporting System Reporting and Reporting Accuracy*

Air Force 49th Security Forces Squadron and its investigators, Military Law Enforcement Officers (LEOs), or AFSFC Police Services Branch Confinement Facility

Commanders, Officers, supervisors, employees
The 49th Security Forces Squadron investigated Airman Kelley. The 49th Security Forces squadron investigators and/or Military Law Enforcement Officers (LEOs) had responsibilities to gather fingerprints and report, and thus will have knowledge of their responsibilities, training, and failures. The December 6, 2018, the Inspector General of the DOD issued a 131-page Report titled, *Investigation into the United States Air Force's Failure to Submit Devin Kelley's Criminal History Information to the Federal Bureau of Investigation* concluding that training on the submission of fingerprints and final disposition reports was ineffective and lacking, both for AFOSI Detachment 225 and the 49th Security Forces Squadron, and "there was no valid reason for the USAF's failures". *See* p. 111-112; *see also* p. 96-98 (noting "training did not provide instructions on when or how to submit either the fingerprint card or the final disposition report to the FBI CJIS Division"). Air Force Office of Special Investigations

AFSFC Police Services Branch training focused on collection of fingerprints, but failed to address submitting fingerprint cards and final

disposition reports to the FBI CJIS.  Their Management Internal Control Toolset (MICT) checklist items are supposed to be monitored and assessed as part of the installation commander's self-inspection program.  Monthly supervisory reviews were "incomplete and ineffective. *See* Report No. DODIG-2019-030 p. 110.

Airman Kelley's Air Force Commander

Kelley's Commander issued a no contact order and has knowledge of Kelley's conduct and training in the Air Force.

Airman Kelley's Air Force Commander

Kelley's Commander issued a no contact order, prepared a confinement package stating that he was "convinced" that Kelley was "dangerous and likely to harm someone if released", and has knowledge of Kelley's conduct and training in the Air Force.

Kelley's former Supervisor in the Air Force

Kelley sent a threatening Facebook message to his former supervisor in the Air Force after his discharge.  She will have knowledge of Kelley's conduct and condition and threats.

Case Agent responsible for Airman Kelley

The Case Agent will have knowledge for the reasons he could not properly report Kelley to the FBI, as detailed by the DOD's report.

Boss of Case Agent responsible for Airman Kelley

The boss of the Case Agent will have knowledge for the reasons the Case Agent could not properly report Kelley to the FBI, as detailed by the DOD's report.

Peak Behavioral Health Services and Xavier Alvarez
5055 McNutt Rd.
Santa Teresa, NM 88008

Peak Behavioral Health Services (PBHS) had a program for military personnel and diagnosed Kelley with various mental and emotional disorders. On information and belief, this is the facility from which Kelley attempted to buy guns to kill his commanding officers, and the facility that Kelley escaped from and fled to El Paso.

According to an El Paso police report, police were informed that Kelley "was a danger to himself and others as he had already been caught sneaking firearms onto Holloman Air Force Base". Police were further advised that Airman Kelley "suffered from mental disorders" and that he "was attempting to carry out death threats" against "his military chain of command." Xavier Alvarez, who worked for Peak Behavioral and who reported Kelley to police for the escape, later confirmed to NBC News that Kelley "verbalized that he wanted to get some kind of retribution to his chain of command." Other patients reported that Kelley was doing something suspicious on computers, and the military found that Kelley was "ordering weapons and tactical gear and magazines to a P.O. Box in San Antonio." Alvarez was quoted as saying, "This kid – he was hollow," and "I could never reach him."

Air Force Security Forces Squadron
Holloman Air Force Base

    Commanders, Officers, supervisors, employees
    Cmdr. Nathan McLeod-Hughes

Air Force 49th Logistics Readiness Squadron
    Commanders, Officers, supervisors, employees

Air Force Detachment 225 and/or Holloman Air Force Base Office of Special Investigations

    Commanders, Officers, Special Agents, supervisors, employees
    AFOSI Detachment 225 and/or Holloman Air Force Base Office of Special Investigation had responsibilities to gather fingerprints and report, and thus will have knowledge of their responsibilities, training, and failures. The December 6, 2018, the Inspector General of the DOD issued a 131-page Report titled, Investigation into the United States Air Force's Failure to Submit Devin Kelley's Criminal History Information to the Federal Bureau of Investigation concluding that training on the submission of fingerprints and final disposition reports was ineffective and lacking, both for AFOSI Detachment 225 and the 49th Security Forces Squadron, and "there was no valid reason for the USAF's failures". See p. 111-112; see also p. 96-98 (noting "training did not provide instructions on when or how to submit either the fingerprint card or the final disposition report to the FBI CJIS Division").

Although AFOSI policy required supervisory reviews to include both I2MS and the investigative case file (record copy), the AFOSI Detachment 225 SAIC and Superintendent focused their reviews on the I2MS activities and not on investigative case files" See p. 89. "In sum, we concluded that

AFOSI Detachment 225 monthly supervisory reviews of Kelley's
investigative case file were incomplete and ineffective".

Air Force Article 32 Investigating Officers

Air Force Prosecutors
Air Force prosecutors gathered evidence and handled the conviction of
Airman Kelley, and thus have knowledge of his conduct and disposition.

Naval Consolidated Brig
Miramar, California
Commanders, Officers, supervisors, employees

General David Goldfein
Air Force Chief of Staff

General Stephen Wilson
Air Force Vice Chief of Staff

Lt. General Gina Grosso
Air Force Deputy Chief of Staff, Manpower, Personnel & Services

Lt. General John Raymond
Air Force Deputy Chief of Staff, Operations

Lt. General John Cooper, Deputy Chief of Staff, Operations

Air Force Holloman Air Force Base Mental Health Clinic
HAFB Mental Health Clinic had custody of Kelley in the Air Force

Defense Incidence-Based Reporting System
Commanders, Officers, supervisors, employees

**e.   Regarding experts who may be called to testify at the trial in this case, please
refer to Plaintiff's Designation of Experts and any amendments or supplements
thereto for additional information regarding the facts known to these witnesses and
the bases of their opinions.  These expert designations will be made at the time
required by the Court's Scheduling Order. Please also refer to the sworn testimony
and written reports of these witnesses for further information regarding the facts
known to and opinions held by these witnesses.**

**f.   Plaintiff cross-identifies as expert witnesses any person named or to be named
by Defendant as a person having expert knowledge about any facts surrounding any
issues relevant to the incident in question as expert witnesses who Plaintiff reserves
the right to call live at the trial of the cause.  Plaintiff reserves the right to call such
persons as expert witnesses, whether or not the designation is subsequently**

9

**withdrawn.  Plaintiff does not have any control over any such witness, nor do they have any superior right to ascertain the subject matter on which any such witness may testify and/or opinions held by any such witness, beyond the information disclosed in deposition testimony and/or by Defendant's discovery responses.  In that regard, Plaintiff refers you to Defendant's discovery documents, deposition testimony, and documents produced by Defendant for the subject matter, facts known, and opinions and impressions of these witnesses.  Plaintiff reserves the right to obtain opinion testimony from any such witness within their area of expertise as related to this case.**

(ii)     A copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment;

Exhibit 1 – Inspector General, US Department of Defense, Evaluation of the Defense Criminal Investigative Organizations' Defense Incident-Based Reporting System Reporting and Reporting Accuracy, October 29, 2014 (Bates #18-949-1 – 18-949-40). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 2 – Inspector General, US Department of Defense, Evaluation of the Defense Compliance with Criminal History Data Reporting Requirements, February 12, 2015 (Bates #18-949-41 – 18-949-76). This document is in the possession of the Defendant and also has been identified and produced to Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 3 – Inspector General, US Department of Defense, Evaluation Fingerprint Card and Final Disposition Report Submissions by Military Service Law Enforcement Organizations, December 4, 2017 (Bates #18-949-77 – 18-949-168). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 4 – Inspector General, US Department of Defense, Report of Investigation into the United States Air Force's Failure to Submit Devin Kelley's Criminal History Information to the Federal Bureau of Investigation, December 6, 2018 (Bates #18-949-169 – 18-949-306). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs,

Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 5 –Department of Defense Directive Number 7730.47, October 15, 1996 (Bates #18-949-307 – 18-949-315). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 6 –Department of Defense Manual Number 7730.47-M Volume 1, December 7, 2010 (Bates #18-949-316 – 18-949-398). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 7 –U.S. Department of Defense Press Operations, DoD launches review of Devin P. Kelley criminal record notification, Release No. NR-382-17, November 6, 2017 (Bates #18-949-399). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 8 – National Instant Criminal Background Check System Indices (Bates #18-949-400 – 18-949-401). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 9 – U.S. Air Force article, AF Implements Changes to Improve Law Enforcement Database Reporting, November 28, 2017 (Bates #18-949-402). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 10 – U.S. Air Force tweet November 9, 2017 (Bates #18-949-403). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 11 – Report to the Committee on the Judiciary United States Senate from The Honorable Heather Wilson, Secretary of the Air Force, December 6, 2017 (Bates #18-949-404 – 18-949-405). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for

Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 12 – Questions for the Record for Secretary of the United States Air Force Heather Wilson, December 13, 2017 (Bates #18-949-406 – 18-949-410). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 13 – Misdemeanor Crimes of Domestic Violence (Bates #18-949-411). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 14 –Devin Kelley Trial Transcript (Bates #18-949-412 – 18-949-1022). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 15 - El Paso Incident Report, June 7, 2012 (Bates #18-949-1023 – 18-949-1028). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 16 – Devin Kelley Court Martial Order (Bates #18-949-1029 – 18-949-1034). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 17 – Statement of Danielle Kelley (Bates #18-949-1035). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 18 – Devin Kelley Autopsy Report (Bates #18-949-1036 – 18-949-1037). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 19 – Life Expectancy Tables (Bates #18-949-1038 – 18-949-1101). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 20 – Death Certificate (Bates #RMARSHALL-19-691-000001)

Exhibit 21 – Autopsy (Bates #RMARSHALL-19-691-000002 - RMARSHALL-19-691-000008)

Exhibit 22 – Letters of Independent Administration (Bates #RMARSHALL-19-691-000009 - RMARSHALL-19-691-000010)

Exhibit 23 – 2012 Tax Return (Bates #RMARSHALL-19-691-000011 - RMARSHALL-19-691-000021)

Exhibit 24 – 2013 Tax Return (Bates #RMARSHALL-19-691-000022 - RMARSHALL-19-691-0046)

Exhibit 25 – 2014 Tax Return (Bates #RMARSHALL-19-691-000047 - RMARSHALL-19-691-000057)

Exhibit 26 – 2015 Tax Return (Bates #RMARSHALL-19-691-000058 - RMARSHALL-19-691-000078)

Exhibit 27 – 2016 Tax Return (Bates #RMARSHALL-19-691-000079 - RMARSHALL-19-691-000103)

Exhibit 28 – Social Security Earnings Summary of Robert Marshall (Bates #RMARSHALL-19-691-000104 - RMARSHALL-19-691-000105)

Exhibit 29 – Air Force Civilian Service Personnel Records of Robert Marshall (Bates #RMARSHALL-19-691-000106 - RMARSHALL-19-691-000161)

In addition, Plaintiff is in the possession of the materials maintained by the Texas Rangers related to the incident.  In obtaining these materials, Plaintiff entered into an agreement with the Texas Attorney General regarding their release.  As such, Plaintiff will discuss the terms of this agreement with Defendant prior to releasing these materials.

Further, Plaintiff is in the possession of the full Autopsy containing photographs taken by the Medical Examiner. In obtaining these materials, Plaintiff entered into an agreement with the Wilson County Attorney regarding their release. As such, Plaintiff will discuss the terms of this agreement with Defendant prior to releasing these materials.

(iii)   A computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered;

Discovery is still in its early stages and it is premature for Plaintiff to respond to this disclosure; however, please see Plaintiff's Original Complaint(s) and any and all amendments thereto for the categories of damages sought by Plaintiff.  Please refer also to Plaintiff's administrative claims filed with the Government for the maximum amount of damages sought by Plaintiff in this case.  Please refer to the sworn deposition testimony in this case. Please also refer to Plaintiff's Designation of Experts and any amendments or supplements thereto for additional information regarding the facts known to these witnesses and the bases of their opinions.  These expert designations will be made at the time required by the Court's Scheduling Order. Please also refer to the sworn testimony and written reports of these witnesses for further information regarding the facts known to and opinions held by these witnesses.

(iv)   For inspection and copying as under Rule 34, any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment.

Not applicable.

Respectfully Submitted,

/s/ *Justin Demerath*
**JUSTIN DEMERATH**
jdemerath@808west.com
Texas State Bar No. 24034415
**DAVID CAMPBELL**
dcampbell@808west.com
Texas State Bar No. 24057033
**O'HANLON, DEMERATH & CASTILLO, PC**
808 West Avenue
Austin, TX 78701
Telephone: (512) 494-9949
Facsimile: (512) 494-9919

Attorneys for Plaintiff Martina Pachal, Independent
Administratrix of the Estate of Robert Scott Marshall

14

## Certificate of Service

I certify that the foregoing was served on July 12, 2019, via email service and certified mail, return receipt requested, on the following counsel for the United States.


/s/ *Justin Demerath*
**JUSTIN DEMERATH**

PAUL DAVID STERN
Trial Attorney, Torts Branch
United States Dept. of Justice
Civil Division
United States Department of Justice
P.O. Box 888
Benjamin Franklin Station
Washington, D.C. 20004
T: (202) 616-2197
Paul.David.Stern@usdoj.gov

STEPHEN E. HANDLER
Senior Trial Counsel, Torts Branch
United States Dept. of Justice
Civil Division
United States Department of Justice
P.O. Box 888
Benjamin Franklin Station
Washington, D.C. 20004
T: (202) 616-2197
Stephen.Handler@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| Joe Holcombe, *et al.*, <br>     Plaintiffs, <br><br> v. <br><br> United States of America, <br>     Defendant. | Civil Action No. 5:18-cv-555-XR <br><br> *Consolidated with*: <br> Nos. 5:18-cv-712-XR; 5:18-cv-881-XR; <br> 5:18-cv-944-XR; 5:18-cv-949-XR; <br> 5:18-cv-951-XR; 5:18-cv-1151-XR; <br> 5:19-cv-184-XR; 5:19-cv-289; <br> 5:19-cv-506 XR; 5:19-cv-678; <br> 5:19-cv-691-XR; 5:19-cv-705; <br> 5:19-cv-706-XR; 5:19-cv-715-XR |

## PLAINTIFF MARTINA PACHAL'S, INDIVIDUALLY, INITIAL DISCLOSURES PURSUANT TO RULE 26(A)(1)

(i)     The name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment;

**a. Plaintiff hereby designates as persons with knowledge the health care providers referenced in the related health care records in this case, including physicians, technicians, nurses, radiologists, physician's assistants, physical therapists, clinics, hospitals, pharmacies, and their agents, representatives, and employees. While these health care providers are not within the control of Plaintiff and have not been retained by Plaintiff as expert witnesses, Plaintiff reserves the right to elicit opinion testimony from any such health care provider, including expert testimony regarding liability, causation, and damages from those treating healthcare providers relating to the medical treatment provided to the Plaintiff. To the extent it is necessary to call live at the trial or by deposition in this cause any agents, representatives, employees and/or custodian of records for any of the following health care providers, Plaintiff identifies any such custodian as a person who may have expert knowledge regarding issues related to the incident in question to include personal knowledge of the records and concerning the necessity of services rendered and referenced in the records and concerning the reasonableness of the medical bills charged and referenced in the records of the following health care providers. For the mental impressions held by and the opinions of and facts known by any of the following witnesses, please refer to the related health care records of the Plaintiff.**

1

None at this time for the Plaintiff, individually.

**b. Plaintiff identifies himself as persons with knowledge of relevant facts pertaining to the incident in question:**

| NAME | ADDRESS/TELEPHONE |
|---|---|
| **PARTIES** | |
| Martina Pachal, Individually<br>c/o Justin B. Demerath<br>O'HANLON, DEMERATH & CASTILLO, PC | 808 West Avenue<br>Austin, Texas 78701<br>(512) 494-9949 |

**c. Plaintiff identifies the following family members, friends, and other persons as persons with knowledge of relevant facts:**

Academy Sports + Outdoors in San Antonio
> Kelley bought a Ruger 5.56 mm assault rifle from Academy Sports + Outdoors in San Antonio after clearing a background check of the NICS. Store personnel will have knowledge of the transaction.

El Paso Police
Headquarters:
911 N. Raynor
El Paso, TX 79903
(915) 212-4000
> The El Paso police apprehended Kelley after he escaped. See Exhibit 15.

First Baptist Church of Sutherland Springs, Texas
Frank Pomeroy, Pastor
First Baptist Church
216 4th Street
Sutherland Springs, Texas 78161
> This is the church where the shooting occurred. The pastor was not there that morning, but on information and belief lost his daughter and many beloved friends in the massacre. He will have knowledge of their community and relationships and the impact of the shooting.

Danielle Shield Kelley
> Married to Airman Devin Kelley at the time of the church shooting.

Tessa Kelley (nee' Loge)
> Married to Airman Devin Kelley while he was in the Air Force and reported him for abuse to herself and infant child.

Johnnie Langendorff
Stephen Willeford

Stephen Willeford confronted Kelley and chased him away from the church. Johnnie Langendorff stopped his vehicle to pick up Mr. Willeford and give chase.

Steve Moore
Wilson County Sheriff's Department
     Investigator

Harold Schott, Justice of the Peace Pct. #3
Wilson County

Terry Snyder
Texas Ranger Division
Texas Department of Public Safety
6100 Guadalupe Street, Building E
Austin, TX 78752
     Investigator and Custodian of Records

Sunland Park Police Department
1000 McNutt Rd
Sunland Park, NM 88063

Kara Boyd (née Marshall)
     Kara Boyd is the sister of Martina Pachal. She has knowledge of the grief and trauma of Martina Pachal, as well as her own grief, trauma and other elements of damages and that of her family.

**d.  Plaintiff names the Defendant herein, as well as its agents, representatives, and/or employees or former agents, representatives, or employees, as persons with knowledge of relevant facts. Plaintiff further names the Defendant, as well as its agents, representatives, and/or employees or former agents, representatives, or employees, as persons from whom expert testimony may be elicited regarding liability, causation and/or damages, although Plaintiff does not necessarily vouch for all the opinion testimony of such persons. Plaintiff refers you to the Department of Defense Inspector General reports from 2018, 2017, 2014, and 2015; Defendant's discovery documents; deposition testimony; documents produced by Defendant; and related medical records for the subject matter, facts known, and opinions and impressions of these witnesses.**

Air Force personnel
     Air Force personnel are expected to have knowledge of Kelley's conduct in the Air Force and mental problems, including but not limited to his attempt to bring weapons onto the base to kill officers.

Additional Air Force personnel are provided below:

    Air Force spokesperson, Ann Stefanek. On November 28, 2017, an Air Force spokesperson, Ann Stefanek, admitted that the failure to follow Pentagon guidelines to report Kelley's crimes to the FBI was "not an isolated incident and similar reporting lapses occurred at other locations."

Heather Wilson
Secretary of the Air Force

Deborah Lee James
Secretary of the Air Force

Col. Kirk Stabler
Air Force Commander
Headquarters Air Force Office of Special Investigations
Quantico, Virginia

Brig. General Andrea Tullos
Air Force Director
Director of Security Forces
DCS/Logistics, Engineering & Force Protection
Department of the Air Force
Washington, D.C.

Director of Special Investigations
Department of the Air Force
Washington, D.C.

HQ Air Force Office of Special Investigations
Department of the Air Force
Superintendent, IT Integrations HQ AFOSI
Quantico, Virginia

Department of the Air Force
HQ USAF
Washington, D.C.

Deputy Director of Security Forces
DCS/Logistics, Installations & Missions Support

Defense Human Resources Activity
Headquarters
Pamela Mitchell, Director
4800 Mark Center Drive, Suite 06J25-01
Alexandria, VA 22350-4000

Department of the Air Force
HQ Air Force Office of Special Investigations
Quantico, VA
Brigadier General, Keith Givens
USAF Commander

Department of Defense
Under Secretary of Defense for Intelligence
Deputy Chief Management Officer

Department of Defense
Military Criminal Investigative Organizations (MCIOs)
        Commanders, Officers, supervisors and employees
Defense Criminal Investigative Organizations (DCIOs)
        Commanders, Officers, supervisors and employees

Office of Inspector General for the DOD

The Office of Inspector General for the DOD has issued four reports investigating and detailing the failures of the Air Force and Department of Defense, including negligence, negligent training, and negligent supervision. See attached reports:

Report No. DODIG-2019-030, Inspector General U.S. Department of Defense, Dec. 6, 2018, Report of Investigation into the United States Air Force's Failure to Submit Devin Kelley's Criminal History Information to the Federal Bureau of Investigation; see id. at p. l17, "The USAF concurred with this report and its recommendations." https://www.dodig.mil/reports.html/Article/1707300/reportof-investigation-into-the-united-states-air-forces-failure-to-submit-dev/

Report No. DODIG-2018-035, Inspector General U.S. Department of Defense, Dec. 4, 2017, *Evaluation of Fingerprint Card and Final Disposition Report Submissions by Military Service Law Enforcement Organizations*.   https://www.dodig.mil/reports.html/Search/DODIG-2018-035/

The DOD concluded that training on the submission of fingerprints and final disposition reports was ineffective and lacking, both for AFOSI Detachment 225 and the 49th Security Forces Squadron, and "there was no valid reason for the USAF's failures". *See* p. 111-112; *see also* p. 96-98 (noting "training did not provide instructions on when or how to submit either the fingerprint card or the final disposition report to the FBI CJIS Division"). Indeed, the DOD "determined that this failure to submit Kelley's fingerprints was part of a systemic problem in AFOSI Detachment 225." See p. 94. Worse, the case agent was actually deployed for seven months during the investigation and reported that he complained he could

not do his job, stating, "Boss, I'm burnt out, I'm so burnt out." "Boss, I want to get out. I can't do this anymore."

Report No. DODIG-2015-081, Inspector General U.S. Department of Defense, February 12, 2015, *Evaluation of Department of Defense Compliance with Criminal History Data Reporting Requirements*

Report No. DODIG-2015-011, Inspector General U.S. Department of Defense, October 29, 2014, *Evaluation of the Defense Criminal Investigative Organizations' Defense Incident-Based Reporting System Reporting and Reporting Accuracy*

Air Force 49th Security Forces Squadron and its investigators, Military Law Enforcement Officers (LEOs), or AFSFC Police Services Branch Confinement Facility

Commanders, Officers, supervisors, employees
The 49th Security Forces Squadron investigated Airman Kelley. The 49th Security Forces squadron investigators and/or Military Law Enforcement Officers (LEOs) had responsibilities to gather fingerprints and report, and thus will have knowledge of their responsibilities, training, and failures. The December 6, 2018, the Inspector General of the DOD issued a 131-page Report titled, *Investigation into the United States Air Force's Failure to Submit Devin Kelley's Criminal History Information to the Federal Bureau of Investigation* concluding that training on the submission of fingerprints and final disposition reports was ineffective and lacking, both for AFOSI Detachment 225 and the 49th Security Forces Squadron, and "there was no valid reason for the USAF's failures". *See* p. 111-112; *see also* p. 96-98 (noting "training did not provide instructions on when or how to submit either the fingerprint card or the final disposition report to the FBI CJIS Division"). Air Force Office of Special Investigations

AFSFC Police Services Branch training focused on collection of fingerprints, but failed to address submitting fingerprint cards and final disposition reports to the FBI CJIS. Their Management Internal Control Toolset (MICT) checklist items are supposed to be monitored and assessed as part of the installation commander's self-inspection program. Monthly supervisory reviews were "incomplete and ineffective. *See* Report No. DODIG-2019-030 p. 110.

Airman Kelley's Air Force Commander

Kelley's Commander issued a no contact order and has knowledge of Kelley's conduct and training in the Air Force.

Airman Kelley's Air Force Commander

> Kelley's Commander issued a no contact order, prepared a confinement package stating that he was "convinced" that Kelley was "dangerous and likely to harm someone if released", and has knowledge of Kelley's conduct and training in the Air Force.

Kelley's former Supervisor in the Air Force

> Kelley sent a threatening Facebook message to his former supervisor in the Air Force after his discharge.  She will have knowledge of Kelley's conduct and condition and threats.

Case Agent responsible for Airman Kelley

> The Case Agent will have knowledge for the reasons he could not properly report Kelley to the FBI, as detailed by the DOD's report.

Boss of Case Agent responsible for Airman Kelley

> The boss of the Case Agent will have knowledge for the reasons the Case Agent could not properly report Kelley to the FBI, as detailed by the DOD's report.

Peak Behavioral Health Services and Xavier Alvarez
5055 McNutt Rd.
Santa Teresa, NM 88008

> Peak Behavioral Health Services (PBHS) had a program for military personnel and diagnosed Kelley with various mental and emotional disorders. On information and belief, this is the facility from which Kelley attempted to buy guns to kill his commanding officers, and the facility that Kelley escaped from and fled to El Paso.
>
> According to an El Paso police report, police were informed that Kelley "was a danger to himself and others as he had already been caught sneaking firearms onto Holloman Air Force Base". Police were further advised that Airman Kelley "suffered from mental disorders" and that he "was attempting to carry out death threats" against "his military chain of command." Xavier Alvarez, who worked for Peak Behavioral and who reported Kelley to police for the escape, later confirmed to NBC News that Kelley "verbalized that he wanted to get some kind of retribution to his chain of command." Other patients reported that Kelley was doing something suspicious on computers, and the military found that Kelley was "ordering weapons and tactical gear and magazines to a P.O. Box in

San Antonio." Alvarez was quoted as saying, "This kid – he was hollow," and "I could never reach him."

Air Force Security Forces Squadron
Holloman Air Force Base

Commanders, Officers, supervisors, employees
Cmdr. Nathan McLeod-Hughes

Air Force 49th Logistics Readiness Squadron
Commanders, Officers, supervisors, employees

Air Force Detachment 225 and/or Holloman Air Force Base Office of Special Investigations

Commanders, Officers, Special Agents, supervisors, employees
AFOSI Detachment 225 and/or Holloman Air Force Base Office of Special Investigation had responsibilities to gather fingerprints and report, and thus will have knowledge of their responsibilities, training, and failures. The December 6, 2018, the Inspector General of the DOD issued a 131-page Report titled, Investigation into the United States Air Force's Failure to Submit Devin Kelley's Criminal History Information to the Federal Bureau of Investigation concluding that training on the submission of fingerprints and final disposition reports was ineffective and lacking, both for AFOSI Detachment 225 and the 49th Security Forces Squadron, and "there was no valid reason for the USAF's failures". See p. 111-112; see also p. 96-98 (noting "training did not provide instructions on when or how to submit either the fingerprint card or the final disposition report to the FBI CJIS Division").

Although AFOSI policy required supervisory reviews to include both I2MS and the investigative case file (record copy), the AFOSI Detachment 225 SAIC and Superintendent focused their reviews on the I2MS activities and not on investigative case files *See* p. 89. "In sum, we concluded that AFOSI Detachment 225 monthly supervisory reviews of Kelley's investigative case file were incomplete and ineffective".

Air Force Article 32 Investigating Officers

Air Force Prosecutors
Air Force prosecutors gathered evidence and handled the conviction of Airman Kelley, and thus have knowledge of his conduct and disposition.

Naval Consolidated Brig
Miramar, California
Commanders, Officers, supervisors, employees

General David Goldfein
Air Force Chief of Staff

General Stephen Wilson
Air Force Vice Chief of Staff

Lt. General Gina Grosso
Air Force Deputy Chief of Staff, Manpower, Personnel & Services

Lt. General John Raymond
Air Force Deputy Chief of Staff, Operations

Lt. General John Cooper, Deputy Chief of Staff, Operations

Air Force Holloman Air Force Base Mental Health Clinic
  HAFB Mental Health Clinic had custody of Kelley in the Air Force

Defense Incidence-Based Reporting System
  Commanders, Officers, supervisors, employees

**e.   Regarding experts who may be called to testify at the trial in this case, please refer to Plaintiff's Designation of Experts and any amendments or supplements thereto for additional information regarding the facts known to these witnesses and the bases of their opinions.   These expert designations will be made at the time required by the Court's Scheduling Order. Please also refer to the sworn testimony and written reports of these witnesses for further information regarding the facts known to and opinions held by these witnesses.**

**f.   Plaintiff cross-identifies as expert witnesses any person named or to be named by Defendant as a person having expert knowledge about any facts surrounding any issues relevant to the incident in question as expert witnesses who any Plaintiff reserves the right to call live at the trial of the cause.   Plaintiff reserves the right to call such persons as expert witnesses, whether or not the designation is subsequently withdrawn.   Plaintiff does not have any control over any such witness, nor do they have any superior right to ascertain the subject matter on which any such witness may testify and/or opinions held by any such witness, beyond the information disclosed in deposition testimony and/or by Defendant's discovery responses.   In that regard, Plaintiff refers you to Defendant's discovery documents, deposition testimony, and documents produced by Defendant for the subject matter, facts known, and opinions and impressions of these witnesses.   Plaintiff reserves the right to obtain opinion testimony from any such witness within their area of expertise as related to this case.**

(ii)    A copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment;

Exhibit 1 – Inspector General, US Department of Defense, Evaluation of the Defense Criminal Investigative Organizations' Defense Incident-Based Reporting System Reporting and Reporting Accuracy, October 29, 2014 (Bates #18-949-1 – 18-949-40). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 2 – Inspector General, US Department of Defense, Evaluation of the Defense Compliance with Criminal History Data Reporting Requirements, February 12, 2015 (Bates #18-949-41 – 18-949-76). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 3 – Inspector General, US Department of Defense, Evaluation Fingerprint Card and Final Disposition Report Submissions by Military Service Law Enforcement Organizations, December 4, 2017 (Bates #18-949-77 – 18-949-168). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 4 – Inspector General, US Department of Defense, Report of Investigation into the United States Air Force's Failure to Submit Devin Kelley's Criminal History Information to the Federal Bureau of Investigation, December 6, 2018 (Bates #18-949-169 – 18-949-306). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 5 – Department of Defense Directive Number 7730.47, October 15, 1996 (Bates #18-949-307 – 18-949-315). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 6 – Department of Defense Manual Number 7730.47-M Volume 1, December 7, 2010 (Bates #18-949-316 – 18-949-398). This document is in the possession of the

Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 7 –U.S. Department of Defense Press Operations, DoD launches review of Devin P. Kelley criminal record notification, Release No. NR-382-17, November 6, 2017 (Bates #18-949-399). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 8 – National Instant Criminal Background Check System Indices (Bates #18-949-400 – 18-949-401). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 9 – U.S. Air Force article, AF Implements Changes to Improve Law Enforcement Database Reporting, November 28, 2017 (Bates #18-949-402). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 10 – U.S. Air Force tweet November 9, 2017 (Bates #18-949-403). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 11 – Report to the Committee on the Judiciary United States Senate from The Honorable Heather Wilson, Secretary of the Air Force, December 6, 2017 (Bates #18-949-404 – 18-949-405). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 12 – Questions for the Record for Secretary of the United States Air Force Heather Wilson, December 13, 2017 (Bates #18-949-406 – 18-949-410). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 13 – Misdemeanor Crimes of Domestic Violence (Bates #18-949-411). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 14 –Devin Kelley Trial Transcript (Bates #18-949-412 – 18-949-1022). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 15 - El Paso Incident Report, June 7, 2012 (Bates #18-949-1023 – 18-949-1028). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 16 – Devin Kelley Court Martial Order (Bates #18-949-1029 – 18-949-1034). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 17 – Statement of Danielle Kelley (Bates #18-949-1035). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 18 – Devin Kelley Autopsy Report (Bates #18-949-1036 – 18-949-1037). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 19 – Life Expectancy Tables (Bates #18-949-1038 – 18-949-1101). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 20 – Birth Certificate (Bates #MPACHAL-19-691-000001)

Exhibit 21 – 2012 Tax Return (Bates #MPACHAL-19-691-000002 - MPACHAL-19-691-000012)

Exhibit 22 – 2013 Tax Return (Bates #MPACHAL-19-691-000013 - MPACHAL-19-691-000037)

Exhibit 23 – 2014 Tax Return (Bates #MPACHAL-19-691-000038 – MPACHAL-19-691-000048)

Exhibit 24 – 2015 Tax Return (Bates #MPACHAL-19-691-000049 – MPACHAL-19-691-000069)

Exhibit 25 – 2016 Tax Return (Bates #MPACHAL-19-691-000070 – MPACHAL-19-691-000094)

Exhibit 26 – Social Security Earnings Summary of Robert Corrigan (Bates #MPACHAL-19-691-000095 – MPACHAL-19-691-000096)

Exhibit 27 – Social Security Earnings Summary of Shani Corrigan (Bates #MPACHAL-19-691-000097 – MPACHAL-19-691-000098)

In addition, Plaintiff is in the possession of the materials maintained by the Texas Rangers related to the incident.  In obtaining these materials, Plaintiff entered into an agreement with the Texas Attorney General regarding their release.  As such, Plaintiff will discuss the terms of this agreement with Defendant prior to releasing these materials.

(iii)   A computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered;

Discovery is still in its early stages and it is premature for Plaintiff to respond to this disclosure; however, please see Plaintiff's Original Complaint(s) and any and all amendments thereto for the categories of damages sought by Plaintiff.  Please refer also to Plaintiff's administrative claims filed with the Government for the maximum amount of damages sought by Plaintiff in this case.  Please refer to the sworn deposition testimony in this case. Please also refer to Plaintiff's Designation of Experts and any amendments or supplements thereto for additional information regarding the facts known to these witnesses and the bases of their opinions.  These expert designations will be made at the time required by the Court's Scheduling Order. Please also refer to the sworn testimony and written reports of these witnesses for further information regarding the facts known to and opinions held by these witnesses.

(iv)   For inspection and copying as under Rule 34, any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment.

Not applicable.

Respectfully Submitted,

/s/ *Justin Demerath*
**JUSTIN DEMERATH**
jdemerath@808west.com
Texas State Bar No. 24034415
**DAVID CAMPBELL**
dcampbell@808west.com
Texas State Bar No. 24057033
**O'HANLON, DEMERATH & CASTILLO, PC**
808 West Avenue
Austin, TX 78701
Telephone: (512) 494-9949
Facsimile: (512) 494-9919

Attorneys for Plaintiff Martina Pachal, Individually

**Certificate of Service**

I certify that the foregoing was served on July 12, 2019, via email service and certified mail, return receipt requested, on the following counsel for the United States.

/s/ *Justin Demerath*
**JUSTIN DEMERATH**

PAUL DAVID STERN
Trial Attorney, Torts Branch
United States Dept. of Justice
Civil Division
United States Department of Justice
P.O. Box 888
Benjamin Franklin Station
Washington, D.C. 20004
T: (202) 616-2197
Paul.David.Stern@usdoj.gov

STEPHEN E. HANDLER
Senior Trial Counsel, Torts Branch
United States Dept. of Justice
Civil Division
United States Department of Justice
P.O. Box 888
Benjamin Franklin Station
Washington, D.C. 20004
T: (202) 616-2197
Stephen.Handler@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| Joe Holcombe, *et al.*,<br>        Plaintiffs,<br><br>v.<br><br>United States of America,<br>        Defendant. | Civil Action No. 5:18-cv-555-XR<br><br>*Consolidated with*:<br>  Nos. 5:18-cv-712-XR; 5:18-cv-881-XR;<br>  5:18-cv-944-XR; 5:18-cv-949-XR;<br>  5:18-cv-951-XR; 5:18-cv-1151-XR;<br>  5:19-cv-184-XR; 5:19-cv-289;<br>  5:19-cv-506 XR; 5:19-cv-678;<br>  5:19-cv-691-XR; 5:19-cv-705;<br>  5:19-cv-706-XR; 5:19-cv-715-XR |

## PLAINTIFF PATSY MCCAIN'S INITIAL DISCLOSURES PURSUANT TO RULE 26(A)(1)

(i)    The name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment;

**a. Plaintiff hereby designates as persons with knowledge the health care providers referenced in the related health care records in this case, including physicians, technicians, nurses, radiologists, physician's assistants, physical therapists, clinics, hospitals, pharmacies, and their agents, representatives, and employees. While these health care providers are not within the control of Plaintiff and have not been retained by Plaintiff as expert witnesses, Plaintiff reserves the right to elicit opinion testimony from any such health care provider, including expert testimony regarding liability, causation, and damages from those treating healthcare providers relating to the medical treatment provided to the Plaintiff. To the extent it is necessary to call live at the trial or by deposition in this cause any agents, representatives, employees and/or custodian of records for any of the following health care providers, Plaintiff identifies any such custodian as a person who may have expert knowledge regarding issues related to the incident in question to include personal knowledge of the records and concerning the necessity of services rendered and referenced in the records and concerning the reasonableness of the medical bills charged and referenced in the records of the following health care providers. For the mental impressions held by and the opinions of and facts known by any of the following witnesses, please refer to the related health care records of the Plaintiff.**

1

| MEDICAL CARE PROVIDERS | |
|---|---|
| Employees, agents, custodians and representatives, including:<br>Victor John Manocchio, MSW/LCSW<br>Amy Vitucci and/or<br>Present Custodian of Records<br>**Four Winds Acupuncture Clinic and Integrative Therapies, PC** | 6 Sunnyside Road<br>Tunkhannock, PA 18657<br>(570) 836-7777 |

**b.  Plaintiff identifies herself as persons with knowledge of relevant facts pertaining to the incident in question:**

| NAME | ADDRESS/TELEPHONE |
|---|---|
| | |
| PARTIES | |
| Patsy McCain<br>c/o Justin B. Demerath<br>O'HANLON, DEMERATH & CASTILLO, PC | 808 West Avenue<br>Austin, Texas 78701<br>(512) 494-9949 |

**c.   Plaintiff identifies the following family members, friends, and other persons as persons with knowledge of relevant facts:**

Academy Sports + Outdoors in San Antonio
> Kelley bought a Ruger 5.56 mm assault rifle from Academy Sports + Outdoors in San Antonio after clearing a background check of the NICS. Store personnel will have knowledge of the transaction.

El Paso Police
Headquarters:
911 N. Raynor
El Paso, TX 79903
(915) 212-4000
> The El Paso police apprehended Kelley after he escaped. See Exhibit 15.

First Baptist Church of Sutherland Springs, Texas
Frank Pomeroy, Pastor
First Baptist Church
216 4th Street
Sutherland Springs, Texas 78161
> This is the church where the shooting occurred. The pastor was not there that morning, but on information and belief lost his daughter and many beloved friends in the massacre. He will have knowledge of their community and relationships and the impact of the shooting.

Danielle Shield Kelley
>Married to Airman Devin Kelley at the time of the church shooting.

Tessa Kelley (nee' Loge)
>Married to Airman Devin Kelley while he was in the Air Force and reported him for abuse to herself and infant child.

Johnnie Langendorff
Stephen Willeford
>Stephen Willeford confronted Kelley and chased him away from the church. Johnnie Langendorff stopped his vehicle to pick up Mr. Willeford and give chase.

Steve Moore
Wilson County Sheriff's Department
>Investigator

Harold Schott, Justice of the Peace Pct. #3
Wilson County

Terry Snyder
Texas Ranger Division
Texas Department of Public Safety
6100 Guadalupe Street, Building E
Austin, TX 78752
>Investigator and Custodian of Records

Sunland Park Police Department
1000 McNutt Rd
Sunland Park, NM 88063

Zachary Poston
>Zachary Poston is the son of Jennifer Racey. He has knowledge of the death of his grandmother, Peggy Warden, as well as his own traumatic injuries, grief, trauma and other elements of damages and that of his family.

Jennifer Racey
>Jennifer Racey is the granddaughter of Patsy McCain and mother of Zachary Poston. She has knowledge of the traumatic injuries sustained by her son, the death of her mother, Peggy Warden, as well as her own grief, trauma and other elements of damages and that of her family.

**d. Plaintiff names the Defendant herein, as well as its agents, representatives, and/or employees or former agents, representatives, or employees, as persons with knowledge of relevant facts. Plaintiff further names the Defendant, as well as its agents, representatives, and/or employees or former agents, representatives, or**

**employees, as persons from whom expert testimony may be elicited regarding liability, causation and/or damages, although Plaintiff does not necessarily vouch for all the opinion testimony of such persons. Plaintiff refers you to the Department of Defense Inspector General reports from 2018, 2017, 2014, and 2015; Defendant's discovery documents; deposition testimony; documents produced by Defendant; and related medical records for the subject matter, facts known, and opinions and impressions of these witnesses.**

Air Force personnel
> Air Force personnel are expected to have knowledge of Kelley's conduct in the Air Force and mental problems, including but not limited to his attempt to bring weapons onto the base to kill officers.

Additional Air Force personnel are provided below:
> Air Force spokesperson, Ann Stefanek. On November 28, 2017, an Air Force spokesperson, Ann Stefanek, admitted that the failure to follow Pentagon guidelines to report Kelley's crimes to the FBI was "not an isolated incident and similar reporting lapses occurred at other locations."

Heather Wilson
Secretary of the Air Force

Deborah Lee James
Secretary of the Air Force

Col. Kirk Stabler
Air Force Commander
Headquarters Air Force Office of Special Investigations
Quantico, Virginia

Brig. General Andrea Tullos
Air Force Director
Director of Security Forces
DCS/Logistics, Engineering & Force Protection
Department of the Air Force
Washington, D.C.

Director of Special Investigations
Department of the Air Force
Washington, D.C.

HQ Air Force Office of Special Investigations
Department of the Air Force
Superintendent, IT Integrations HQ AFOSI
Quantico, Virginia

Department of the Air Force
HQ USAF
Washington, D.C.

Deputy Director of Security Forces
DCS/Logistics, Installations & Missions Support

Defense Human Resources Activity
Headquarters
Pamela Mitchell, Director
4800 Mark Center Drive, Suite 06J25-01
Alexandria, VA 22350-4000

Department of the Air Force
HQ Air Force Office of Special Investigations
Quantico, VA
Brigadier General, Keith Givens
USAF Commander

Department of Defense
Under Secretary of Defense for Intelligence
Deputy Chief Management Officer

Department of Defense
Military Criminal Investigative Organizations (MCIOs)
        Commanders, Officers, supervisors and employees
Defense Criminal Investigative Organizations (DCIOs)
        Commanders, Officers, supervisors and employees

Office of Inspector General for the DOD

The Office of Inspector General for the DOD has issued four reports investigating and detailing the failures of the Air Force and Department of Defense, including negligence, negligent training, and negligent supervision. See attached reports:

Report No. DODIG-2019-030, Inspector General U.S. Department of Defense, Dec. 6, 2018, Report of Investigation into the United States Air Force's Failure to Submit Devin Kelley's Criminal History Information to the Federal Bureau of Investigation; see id. at p. 117, "The USAF concurred with this report and its recommendations." https://www.dodig.mil/reports.html/Article/1707300/reportof-investigation-into-the-united-states-air-forces-failure-to-submit-dev/

Report No. DODIG-2018-035, Inspector General U.S. Department of Defense, Dec. 4, 2017, *Evaluation of Fingerprint Card and Final Disposition Report Submissions by Military Service Law Enforcement*

*Organizations*.   https://www.dodig.mil/reports.html/Search/DODIG-2018-035/

The DOD concluded that training on the submission of fingerprints and final disposition reports was ineffective and lacking, both for AFOSI Detachment 225 and the 49th Security Forces Squadron, and "there was no valid reason for the USAF's failures". *See* p. 111-112; *see also* p. 96-98 (noting "training did not provide instructions on when or how to submit either the fingerprint card or the final disposition report to the FBI CJIS Division"). Indeed, the DOD "determined that this failure to submit Kelley's fingerprints was part of a systemic problem in AFOSI Detachment 225." See p. 94. Worse, the case agent was actually deployed for seven months during the investigation and reported that he complained he could not do his job, stating, "Boss, I'm burnt out, I'm so burnt out." "Boss, I want to get out. I can't do this anymore."

Report No. DODIG-2015-081, Inspector General U.S. Department of Defense, February 12, 2015, *Evaluation of Department of Defense Compliance with Criminal History Data Reporting Requirements*

Report No. DODIG-2015-011, Inspector General U.S. Department of Defense, October 29, 2014, *Evaluation of the Defense Criminal Investigative Organizations' Defense Incident-Based Reporting System Reporting and Reporting Accuracy*

Air Force 49th Security Forces Squadron and its investigators, Military Law Enforcement Officers (LEOs), or AFSFC Police Services Branch Confinement Facility

Commanders, Officers, supervisors, employees
The 49th Security Forces Squadron investigated Airman Kelley. The 49th Security Forces squadron investigators and/or Military Law Enforcement Officers (LEOs) had responsibilities to gather fingerprints and report, and thus will have knowledge of their responsibilities, training, and failures. The December 6, 2018, the Inspector General of the DOD issued a 131-page Report titled, *Investigation into the United States Air Force's Failure to Submit Devin Kelley's Criminal History Information to the Federal Bureau of Investigation* concluding that training on the submission of fingerprints and final disposition reports was ineffective and lacking, both for AFOSI Detachment 225 and the 49th Security Forces Squadron, and "there was no valid reason for the USAF's failures". *See* p. 111-112; *see also* p. 96-98 (noting "training did not provide instructions on when or how to submit either the fingerprint card or the final disposition report to the FBI CJIS Division"). Air Force Office of Special Investigations

AFSFC Police Services Branch training focused on collection of fingerprints, but failed to address submitting fingerprint cards and final

disposition reports to the FBI CJIS. Their Management Internal Control Toolset (MICT) checklist items are supposed to be monitored and assessed as part of the installation commander's self-inspection program. Monthly supervisory reviews were "incomplete and ineffective. *See* Report No. DODIG-2019-030 p. 110.

Airman Kelley's Air Force Commander

Kelley's Commander issued a no contact order and has knowledge of Kelley's conduct and training in the Air Force.

Airman Kelley's Air Force Commander

Kelley's Commander issued a no contact order, prepared a confinement package stating that he was "convinced" that Kelley was "dangerous and likely to harm someone if released", and has knowledge of Kelley's conduct and training in the Air Force.

Kelley's former Supervisor in the Air Force

Kelley sent a threatening Facebook message to his former supervisor in the Air Force after his discharge. She will have knowledge of Kelley's conduct and condition and threats.

Case Agent responsible for Airman Kelley

The Case Agent will have knowledge for the reasons he could not properly report Kelley to the FBI, as detailed by the DOD's report.

Boss of Case Agent responsible for Airman Kelley

The boss of the Case Agent will have knowledge for the reasons the Case Agent could not properly report Kelley to the FBI, as detailed by the DOD's report.

Peak Behavioral Health Services and Xavier Alvarez
5055 McNutt Rd.
Santa Teresa, NM 88008

Peak Behavioral Health Services (PBHS) had a program for military personnel and diagnosed Kelley with various mental and emotional disorders. On information and belief, this is the facility from which Kelley attempted to buy guns to kill his commanding officers, and the facility that Kelley escaped from and fled to El Paso.

According to an El Paso police report, police were informed that Kelley "was a danger to himself and others as he had already been caught sneaking firearms onto Holloman Air Force Base". Police were further advised that Airman Kelley "suffered from mental disorders" and that he "was attempting to carry out death threats" against "his military chain of command." Xavier Alvarez, who worked for Peak Behavioral and who reported Kelley to police for the escape, later confirmed to NBC News that Kelley "verbalized that he wanted to get some kind of retribution to his chain of command." Other patients reported that Kelley was doing something suspicious on computers, and the military found that Kelley was "ordering weapons and tactical gear and magazines to a P.O. Box in San Antonio." Alvarez was quoted as saying, "This kid – he was hollow," and "I could never reach him."

Air Force Security Forces Squadron
Holloman Air Force Base

Commanders, Officers, supervisors, employees
Cmdr. Nathan McLeod-Hughes

Air Force 49th Logistics Readiness Squadron
Commanders, Officers, supervisors, employees

Air Force Detachment 225 and/or Holloman Air Force Base Office of Special Investigations

Commanders, Officers, Special Agents, supervisors, employees
AFOSI Detachment 225 and/or Holloman Air Force Base Office of Special Investigation had responsibilities to gather fingerprints and report, and thus will have knowledge of their responsibilities, training, and failures. The December 6, 2018, the Inspector General of the DOD issued a 131-page Report titled, Investigation into the United States Air Force's Failure to Submit Devin Kelley's Criminal History Information to the Federal Bureau of Investigation concluding that training on the submission of fingerprints and final disposition reports was ineffective and lacking, both for AFOSI Detachment 225 and the 49th Security Forces Squadron, and "there was no valid reason for the USAF's failures". See p. 111-112; see also p. 96-98 (noting "training did not provide instructions on when or how to submit either the fingerprint card or the final disposition report to the FBI CJIS Division").

Although AFOSI policy required supervisory reviews to include both I2MS and the investigative case file (record copy), the AFOSI Detachment 225 SAIC and Superintendent focused their reviews on the I2MS activities and not on investigative case files" *See* p. 89. "In sum, we concluded that

8

> AFOSI Detachment 225 monthly supervisory reviews of Kelley's investigative case file were incomplete and ineffective".

Air Force Article 32 Investigating Officers

Air Force Prosecutors
> Air Force prosecutors gathered evidence and handled the conviction of Airman Kelley, and thus have knowledge of his conduct and disposition.

Naval Consolidated Brig
Miramar, California
> Commanders, Officers, supervisors, employees

General David Goldfein
Air Force Chief of Staff

General Stephen Wilson
Air Force Vice Chief of Staff

Lt. General Gina Grosso
Air Force Deputy Chief of Staff, Manpower, Personnel & Services

Lt. General John Raymond
Air Force Deputy Chief of Staff, Operations

Lt. General John Cooper, Deputy Chief of Staff, Operations

Air Force Holloman Air Force Base Mental Health Clinic
> HAFB Mental Health Clinic had custody of Kelley in the Air Force

Defense Incidence-Based Reporting System
> Commanders, Officers, supervisors, employees

**e. Regarding experts who may be called to testify at the trial in this case, please refer to Plaintiff's Designation of Experts and any amendments or supplements thereto for additional information regarding the facts known to these witnesses and the bases of their opinions. These expert designations will be made at the time required by the Court's Scheduling Order. Please also refer to the sworn testimony and written reports of these witnesses for further information regarding the facts known to and opinions held by these witnesses.**

**f. Plaintiff cross-identifies as expert witnesses any person named or to be named by Defendant as a person having expert knowledge about any facts surrounding any issues relevant to the incident in question as expert witnesses who Plaintiff reserves the right to call live at the trial of the cause. Plaintiff reserves the right to call such persons as expert witnesses, whether or not the designation is subsequently**

**withdrawn. Plaintiff does not have any control over any such witness, nor do they have any superior right to ascertain the subject matter on which any such witness may testify and/or opinions held by any such witness, beyond the information disclosed in deposition testimony and/or by Defendant's discovery responses. In that regard, Plaintiff refers you to Defendant's discovery documents, deposition testimony, and documents produced by Defendant for the subject matter, facts known, and opinions and impressions of these witnesses. Plaintiff reserves the right to obtain opinion testimony from any such witness within their area of expertise as related to this case.**

(ii)     A copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment;

Exhibit 1 – Inspector General, US Department of Defense, Evaluation of the Defense Criminal Investigative Organizations' Defense Incident-Based Reporting System Reporting and Reporting Accuracy, October 29, 2014 (Bates #18-949-1 – 18-949-40). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 2 – Inspector General, US Department of Defense, Evaluation of the Defense Compliance with Criminal History Data Reporting Requirements, February 12, 2015 (Bates #18-949-41 – 18-949-76). This document is in the possession of the Defendant and also has been identified and produced to Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 3 – Inspector General, US Department of Defense, Evaluation Fingerprint Card and Final Disposition Report Submissions by Military Service Law Enforcement Organizations, December 4, 2017 (Bates #18-949-77 – 18-949-168). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 4 – Inspector General, US Department of Defense, Report of Investigation into the United States Air Force's Failure to Submit Devin Kelley's Criminal History Information to the Federal Bureau of Investigation, December 6, 2018 (Bates #18-949-169 – 18-949-306). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs,

Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 5 –Department of Defense Directive Number 7730.47, October 15, 1996 (Bates #18-949-307 – 18-949-315). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 6 –Department of Defense Manual Number 7730.47-M Volume 1, December 7, 2010 (Bates #18-949-316 – 18-949-398). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 7 –U.S. Department of Defense Press Operations, DoD launches review of Devin P. Kelley criminal record notification, Release No. NR-382-17, November 6, 2017 (Bates #18-949-399). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 8 – National Instant Criminal Background Check System Indices (Bates #18-949-400 – 18-949-401). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 9 – U.S. Air Force article, AF Implements Changes to Improve Law Enforcement Database Reporting, November 28, 2017 (Bates #18-949-402). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 10 – U.S. Air Force tweet November 9, 2017 (Bates #18-949-403). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 11 – Report to the Committee on the Judiciary United States Senate from The Honorable Heather Wilson, Secretary of the Air Force, December 6, 2017 (Bates #18-949-404 – 18-949-405). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for

Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 12 – Questions for the Record for Secretary of the United States Air Force Heather Wilson, December 13, 2017 (Bates #18-949-406 – 18-949-410). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 13 – Misdemeanor Crimes of Domestic Violence (Bates #18-949-411). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 14 –Devin Kelley Trial Transcript (Bates #18-949-412 – 18-949-1022). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 15 - El Paso Incident Report, June 7, 2012 (Bates #18-949-1023 – 18-949-1028). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 16 – Devin Kelley Court Martial Order (Bates #18-949-1029 – 18-949-1034). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 17 – Statement of Danielle Kelley (Bates #18-949-1035). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 18 – Devin Kelley Autopsy Report (Bates #18-949-1036 – 18-949-1037). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 19 – Life Expectancy Tables (Bates #18-949-1038 – 18-949-1101). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 20 – Birth Certificate of Peggy Lynn Stevens Warden (Bates #PMcCAIN-19-691-000001 - PMcCAIN-19-691-000002)

Exhibit 21 – Death Certificate of Peggy Lynn Stevens Warden (Bates # PMcCAIN -19-691-000003)

Exhibit 22 – Autopsy of Peggy Lynn Stevens Warden (Bates # PMcCAIN -19-691-000004 - PMcCAIN-19-691-000013)

Exhibit 23 – 2012 Tax Return (Bates # PMcCAIN-19-691-000014 - PMcCAIN-19-691-000021)

Exhibit 24 – 2014 Tax Return (Bates # PMcCAIN-19-691-000022 - PMcCAIN-19-691-000027)

Exhibit 25 – 2015 Tax Return (Bates # PMcCAIN-19-691-000028 - PMcCAIN-19-691-000035)

Exhibit 26 – 2016 Tax Return (Bates # PMcCAIN-19-691-000036 - PMcCAIN-19-691-000044)

Exhibit 27 – Social Security Earnings Summary of Peggy Lynn Stevens Warden (Bates # PMcCAIN-19-691-000045 - PMcCAIN-19-691-000046)

Exhibit 28 – Four Winds Acupuncture Clinic and Integrative Therapies, PC medical records (Bates # PMcCAIN-19-691-000047 - PMcCAIN-19-691-000056)

Exhibit 29 – Four Winds Acupuncture Clinic and Integrative Therapies, PC billing records (Bates # PMcCAIN-19-691-000057 - PMcCAIN-19-691-000066)

In addition, Plaintiff is in the possession of the materials maintained by the Texas Rangers related to the incident.  In obtaining these materials, Plaintiff entered into an agreement with the Texas Attorney General regarding their release.  As such, Plaintiff will discuss the terms of this agreement with Defendant prior to releasing these materials.

(iii)    A computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered;

Discovery is still in its early stages and it is premature for Plaintiff to respond to this disclosure; however, please see Plaintiff's Original Complaint(s) and any and all amendments thereto for the categories of damages sought by Plaintiff. Please refer also to Plaintiff's administrative claims filed with the Government for the maximum amount of damages sought by Plaintiff in this case. Please refer to the sworn deposition testimony in this case. Please also refer to Plaintiff's Designation of Experts and any amendments or supplements thereto for additional information regarding the facts known to these witnesses and the bases of their opinions. These expert designations will be made at the time required by the Court's Scheduling Order. Please also refer to the sworn testimony and written reports of these witnesses for further information regarding the facts known to and opinions held by these witnesses.

(iv)    For inspection and copying as under Rule 34, any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment.

Not applicable.

Respectfully Submitted,

/s/ *Justin Demerath*
**JUSTIN DEMERATH**
jdemerath@808west.com
Texas State Bar No. 24034415
**DAVID CAMPBELL**
dcampbell@808west.com
Texas State Bar No. 24057033
**O'HANLON, DEMERATH & CASTILLO, PC**
808 West Avenue
Austin, TX 78701
Telephone: (512) 494-9949
Facsimile: (512) 494-9919

Attorneys for Plaintiff Patsy McCain

14

**Certificate of Service**

I certify that the foregoing was served on July 12, 2019, via email service and certified mail, return receipt requested, on the following counsel for the United States.

/s/ *Justin Demerath*
**JUSTIN DEMERATH**

PAUL DAVID STERN
Trial Attorney, Torts Branch
United States Dept. of Justice
Civil Division
United States Department of Justice
P.O. Box 888
Benjamin Franklin Station
Washington, D.C. 20004
T: (202) 616-2197
Paul.David.Stern@usdoj.gov

STEPHEN E. HANDLER
Senior Trial Counsel, Torts Branch
United States Dept. of Justice
Civil Division
United States Department of Justice
P.O. Box 888
Benjamin Franklin Station
Washington, D.C. 20004
T: (202) 616-2197
Stephen.Handler@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| Joe Holcombe, *et al.*,<br>    Plaintiffs,<br><br>v.<br><br>United States of America,<br>    Defendant. | Civil Action No. 5:18-cv-555-XR<br><br>*Consolidated with*:<br>  Nos. 5:18-cv-712-XR; 5:18-cv-881-XR;<br>  5:18-cv-944-XR; 5:18-cv-949-XR;<br>  5:18-cv-951-XR; 5:18-cv-1151-XR;<br>  5:19-cv-184-XR; 5:19-cv-289;<br>  5:19-cv-506 XR; 5:19-cv-678;<br>  5:19-cv-691-XR; 5:19-cv-705;<br>  5:19-cv-706-XR; 5:19-cv-715-XR |

**PLAINTIFF PRESTON CORRIGAN'S INITIAL DISCLOSURES
PURSUANT TO RULE 26(A)(1)**

(i)     The name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment;

**a. Plaintiff hereby designates as persons with knowledge the health care providers referenced in the related health care records in this case, including physicians, technicians, nurses, radiologists, physician's assistants, physical therapists, clinics, hospitals, pharmacies, and their agents, representatives, and employees. While these health care providers are not within the control of Plaintiff and have not been retained by Plaintiff as expert witnesses, Plaintiff reserves the right to elicit opinion testimony from any such health care provider, including expert testimony regarding liability, causation, and damages from those treating healthcare providers relating to the medical treatment provided to the Plaintiff. To the extent it is necessary to call live at the trial or by deposition in this cause any agents, representatives, employees and/or custodian of records for any of the following health care providers, Plaintiff identifies any such custodian as a person who may have expert knowledge regarding issues related to the incident in question to include personal knowledge of the records and concerning the necessity of services rendered and referenced in the records and concerning the reasonableness of the medical bills charged and referenced in the records of the following health care providers. For the mental impressions held by and the opinions of and facts known by any of the following witnesses, please refer to the related health care records of the Plaintiff.**

1

None at this time for the Plaintiff, individually.

**b. Plaintiff identifies himself as persons with knowledge of relevant facts pertaining to the incident in question:**

| NAME | ADDRESS/TELEPHONE |
|---|---|
| **PARTIES** | |
| Preston Corrigan<br>c/o Justin B. Demerath<br>O'HANLON, DEMERATH & CASTILLO, PC | 808 West Avenue<br>Austin, Texas 78701<br>(512) 494-9949 |

**c. Plaintiff identifies the following family members, friends, and other persons as persons with knowledge of relevant facts:**

Academy Sports + Outdoors in San Antonio
> Kelley bought a Ruger 5.56 mm assault rifle from Academy Sports + Outdoors in San Antonio after clearing a background check of the NICS. Store personnel will have knowledge of the transaction.

El Paso Police
Headquarters:
911 N. Raynor
El Paso, TX 79903
(915) 212-4000
> The El Paso police apprehended Kelley after he escaped. See Exhibit 15.

First Baptist Church of Sutherland Springs, Texas
Frank Pomeroy, Pastor
First Baptist Church
216 4th Street
Sutherland Springs, Texas 78161
> This is the church where the shooting occurred. The pastor was not there that morning, but on information and belief lost his daughter and many beloved friends in the massacre. He will have knowledge of their community and relationships and the impact of the shooting.

Danielle Shield Kelley
> Married to Airman Devin Kelley at the time of the church shooting.

Tessa Kelley (nee' Loge)
> Married to Airman Devin Kelley while he was in the Air Force and reported him for abuse to herself and infant child.

Johnnie Langendorff
Stephen Willeford

Stephen Willeford confronted Kelley and chased him away from the church. Johnnie Langendorff stopped his vehicle to pick up Mr. Willeford and give chase.

Steve Moore
Wilson County Sheriff's Department
        Investigator

Harold Schott, Justice of the Peace Pct. #3
Wilson County

Terry Snyder
Texas Ranger Division
Texas Department of Public Safety
6100 Guadalupe Street, Building E
Austin, TX 78752
        Investigator and Custodian of Records

Sunland Park Police Department
1000 McNutt Rd
Sunland Park, NM 88063

Benjamin Corrigan
        Benjamin Corrigan is the brother of Preston Corrigan. He has knowledge of the grief and trauma of Preston Corrigan, as well as his own grief, trauma and other elements of damages and that of his family.

   **d.  Plaintiff names the Defendant herein, as well as its agents, representatives, and/or employees or former agents, representatives, or employees, as persons with knowledge of relevant facts. Plaintiff further names the Defendant, as well as its agents, representatives, and/or employees or former agents, representatives, or employees, as persons from whom expert testimony may be elicited regarding liability, causation and/or damages, although Plaintiff does not necessarily vouch for all the opinion testimony of such persons. Plaintiff refers you to the Department of Defense Inspector General reports from 2018, 2017, 2014, and 2015; Defendant's discovery documents; deposition testimony; documents produced by Defendant; and related medical records for the subject matter, facts known, and opinions and impressions of these witnesses.**

Air Force personnel
        Air Force personnel are expected to have knowledge of Kelley's conduct in the Air Force and mental problems, including but not limited to his attempt to bring weapons onto the base to kill officers.

Additional Air Force personnel are provided below:

    Air Force spokesperson, Ann Stefanek. On November 28, 2017, an Air
    Force spokesperson, Ann Stefanek, admitted that the failure to follow
    Pentagon guidelines to report Kelley's crimes to the FBI was "not an
    isolated incident and similar reporting lapses occurred at other locations."

Heather Wilson
Secretary of the Air Force

Deborah Lee James
Secretary of the Air Force

Col. Kirk Stabler
Air Force Commander
Headquarters Air Force Office of Special Investigations
Quantico, Virginia

Brig. General Andrea Tullos
Air Force Director
Director of Security Forces
DCS/Logistics, Engineering & Force Protection
Department of the Air Force
Washington, D.C.

Director of Special Investigations
Department of the Air Force
Washington, D.C.

HQ Air Force Office of Special Investigations
Department of the Air Force
Superintendent, IT Integrations HQ AFOSI
Quantico, Virginia

Department of the Air Force
HQ USAF
Washington, D.C.

Deputy Director of Security Forces
DCS/Logistics, Installations & Missions Support

Defense Human Resources Activity
Headquarters
Pamela Mitchell, Director
4800 Mark Center Drive, Suite 06J25-01
Alexandria, VA 22350-4000

Department of the Air Force
HQ Air Force Office of Special Investigations
Quantico, VA
Brigadier General, Keith Givens
USAF Commander

Department of Defense
Under Secretary of Defense for Intelligence
Deputy Chief Management Officer

Department of Defense
Military Criminal Investigative Organizations (MCIOs)
    Commanders, Officers, supervisors and employees
Defense Criminal Investigative Organizations (DCIOs)
    Commanders, Officers, supervisors and employees

Office of Inspector General for the DOD

    The Office of Inspector General for the DOD has issued four reports investigating and detailing the failures of the Air Force and Department of Defense, including negligence, negligent training, and negligent supervision. See attached reports:

    Report No. DODIG-2019-030, Inspector General U.S. Department of Defense, Dec. 6, 2018, Report of Investigation into the United States Air Force's Failure to Submit Devin Kelley's Criminal History Information to the Federal Bureau of Investigation; see id. at p. l17, "The USAF concurred with this report and its recommendations." https://www.dodig.mil/reports.html/Article/1707300/reportof-investigation-into-the-united-states-air-forces-failure-to-submit-dev/

    Report No. DODIG-2018-035, Inspector General U.S. Department of Defense, Dec. 4, 2017, *Evaluation of Fingerprint Card and Final Disposition Report Submissions by Military Service Law Enforcement Organizations*. https://www.dodig.mil/reports.html/Search/DODIG-2018-035/

    The DOD concluded that training on the submission of fingerprints and final disposition reports was ineffective and lacking, both for AFOSI Detachment 225 and the 49th Security Forces Squadron, and "there was no valid reason for the USAF's failures". *See* p. 111-112; *see also* p. 96-98 (noting "training did not provide instructions on when or how to submit either the fingerprint card or the final disposition report to the FBI CJIS Division"). Indeed, the DOD "determined that this failure to submit Kelley's fingerprints was part of a systemic problem in AFOSI Detachment 225." See p. 94. Worse, the case agent was actually deployed for seven months during the investigation and reported that he complained he could

not do his job, stating, "Boss, I'm burnt out, I'm so burnt out." "Boss, I want to get out. I can't do this anymore."

Report No. DODIG-2015-081, Inspector General U.S. Department of Defense, February 12, 2015, *Evaluation of Department of Defense Compliance with Criminal History Data Reporting Requirements*

Report No. DODIG-2015-011, Inspector General U.S. Department of Defense, October 29, 2014, *Evaluation of the Defense Criminal Investigative Organizations' Defense Incident-Based Reporting System Reporting and Reporting Accuracy*

Air Force 49th Security Forces Squadron and its investigators, Military Law Enforcement Officers (LEOs), or AFSFC Police Services Branch Confinement Facility

Commanders, Officers, supervisors, employees
The 49th Security Forces Squadron investigated Airman Kelley. The 49th Security Forces squadron investigators and/or Military Law Enforcement Officers (LEOs) had responsibilities to gather fingerprints and report, and thus will have knowledge of their responsibilities, training, and failures. The December 6, 2018, the Inspector General of the DOD issued a 131-page Report titled, *Investigation into the United States Air Force's Failure to Submit Devin Kelley's Criminal History Information to the Federal Bureau of Investigation* concluding that training on the submission of fingerprints and final disposition reports was ineffective and lacking, both for AFOSI Detachment 225 and the 49th Security Forces Squadron, and "there was no valid reason for the USAF's failures". *See* p. 111-112; *see also* p. 96-98 (noting "training did not provide instructions on when or how to submit either the fingerprint card or the final disposition report to the FBI CJIS Division"). Air Force Office of Special Investigations

AFSFC Police Services Branch training focused on collection of fingerprints, but failed to address submitting fingerprint cards and final disposition reports to the FBI CJIS. Their Management Internal Control Toolset (MICT) checklist items are supposed to be monitored and assessed as part of the installation commander's self-inspection program. Monthly supervisory reviews were "incomplete and ineffective. *See* Report No. DODIG-2019-030 p. 110.

Airman Kelley's Air Force Commander

Kelley's Commander issued a no contact order and has knowledge of Kelley's conduct and training in the Air Force.

Airman Kelley's Air Force Commander

Kelley's Commander issued a no contact order, prepared a confinement package stating that he was "convinced" that Kelley was "dangerous and likely to harm someone if released", and has knowledge of Kelley's conduct and training in the Air Force.

Kelley's former Supervisor in the Air Force

Kelley sent a threatening Facebook message to his former supervisor in the Air Force after his discharge.  She will have knowledge of Kelley's conduct and condition and threats.

Case Agent responsible for Airman Kelley

The Case Agent will have knowledge for the reasons he could not properly report Kelley to the FBI, as detailed by the DOD's report.

Boss of Case Agent responsible for Airman Kelley

The boss of the Case Agent will have knowledge for the reasons the Case Agent could not properly report Kelley to the FBI, as detailed by the DOD's report.

Peak Behavioral Health Services and Xavier Alvarez
5055 McNutt Rd.
Santa Teresa, NM 88008

Peak Behavioral Health Services (PBHS) had a program for military personnel and diagnosed Kelley with various mental and emotional disorders. On information and belief, this is the facility from which Kelley attempted to buy guns to kill his commanding officers, and the facility that Kelley escaped from and fled to El Paso.

According to an El Paso police report, police were informed that Kelley "was a danger to himself and others as he had already been caught sneaking firearms onto Holloman Air Force Base". Police were further advised that Airman Kelley "suffered from mental disorders" and that he "was attempting to carry out death threats" against "his military chain of command." Xavier Alvarez, who worked for Peak Behavioral and who reported Kelley to police for the escape, later confirmed to NBC News that Kelley "verbalized that he wanted to get some kind of retribution to his chain of command." Other patients reported that Kelley was doing something suspicious on computers, and the military found that Kelley was "ordering weapons and tactical gear and magazines to a P.O. Box in

San Antonio." Alvarez was quoted as saying, "This kid – he was hollow," and "I could never reach him."

Air Force Security Forces Squadron
Holloman Air Force Base

Commanders, Officers, supervisors, employees
Cmdr. Nathan McLeod-Hughes

Air Force 49th Logistics Readiness Squadron
Commanders, Officers, supervisors, employees

Air Force Detachment 225 and/or Holloman Air Force Base Office of Special Investigations

Commanders, Officers, Special Agents, supervisors, employees
AFOSI Detachment 225 and/or Holloman Air Force Base Office of Special Investigation had responsibilities to gather fingerprints and report, and thus will have knowledge of their responsibilities, training, and failures. The December 6, 2018, the Inspector General of the DOD issued a 131-page Report titled, Investigation into the United States Air Force's Failure to Submit Devin Kelley's Criminal History Information to the Federal Bureau of Investigation concluding that training on the submission of fingerprints and final disposition reports was ineffective and lacking, both for AFOSI Detachment 225 and the 49th Security Forces Squadron, and "there was no valid reason for the USAF's failures". See p. 111-112; see also p. 96-98 (noting "training did not provide instructions on when or how to submit either the fingerprint card or the final disposition report to the FBI CJIS Division").

Although AFOSI policy required supervisory reviews to include both I2MS and the investigative case file (record copy), the AFOSI Detachment 225 SAIC and Superintendent focused their reviews on the I2MS activities and not on investigative case files *See* p. 89. "In sum, we concluded that AFOSI Detachment 225 monthly supervisory reviews of Kelley's investigative case file were incomplete and ineffective".

Air Force Article 32 Investigating Officers

Air Force Prosecutors
Air Force prosecutors gathered evidence and handled the conviction of Airman Kelley, and thus have knowledge of his conduct and disposition.

Naval Consolidated Brig
Miramar, California
Commanders, Officers, supervisors, employees

General David Goldfein
Air Force Chief of Staff

General Stephen Wilson
Air Force Vice Chief of Staff

Lt. General Gina Grosso
Air Force Deputy Chief of Staff, Manpower, Personnel & Services

Lt. General John Raymond
Air Force Deputy Chief of Staff, Operations

Lt. General John Cooper, Deputy Chief of Staff, Operations

Air Force Holloman Air Force Base Mental Health Clinic
    HAFB Mental Health Clinic had custody of Kelley in the Air Force

Defense Incidence-Based Reporting System
    Commanders, Officers, supervisors, employees

    **e.  Regarding experts who may be called to testify at the trial in this case, please refer to Plaintiff's Designation of Experts and any amendments or supplements thereto for additional information regarding the facts known to these witnesses and the bases of their opinions.  These expert designations will be made at the time required by the Court's Scheduling Order. Please also refer to the sworn testimony and written reports of these witnesses for further information regarding the facts known to and opinions held by these witnesses.**

    **f.  Plaintiff cross-identifies as expert witnesses any person named or to be named by Defendant as a person having expert knowledge about any facts surrounding any issues relevant to the incident in question as expert witnesses who any Plaintiff reserves the right to call live at the trial of the cause.  Plaintiff reserves the right to call such persons as expert witnesses, whether or not the designation is subsequently withdrawn.  Plaintiff does not have any control over any such witness, nor do they have any superior right to ascertain the subject matter on which any such witness may testify and/or opinions held by any such witness, beyond the information disclosed in deposition testimony and/or by Defendant's discovery responses.  In that regard, Plaintiff refers you to Defendant's discovery documents, deposition testimony, and documents produced by Defendant for the subject matter, facts known, and opinions and impressions of these witnesses.  Plaintiff reserves the right to obtain opinion testimony from any such witness within their area of expertise as related to this case.**

(ii)    A copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment;

Exhibit 1 – Inspector General, US Department of Defense, Evaluation of the Defense Criminal Investigative Organizations' Defense Incident-Based Reporting System Reporting and Reporting Accuracy, October 29, 2014 (Bates #18-949-1 – 18-949-40). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 2 – Inspector General, US Department of Defense, Evaluation of the Defense Compliance with Criminal History Data Reporting Requirements, February 12, 2015 (Bates #18-949-41 – 18-949-76). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 3 – Inspector General, US Department of Defense, Evaluation Fingerprint Card and Final Disposition Report Submissions by Military Service Law Enforcement Organizations, December 4, 2017 (Bates #18-949-77 – 18-949-168). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 4 – Inspector General, US Department of Defense, Report of Investigation into the United States Air Force's Failure to Submit Devin Kelley's Criminal History Information to the Federal Bureau of Investigation, December 6, 2018 (Bates #18-949-169 – 18-949-306). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 5 – Department of Defense Directive Number 7730.47, October 15, 1996 (Bates #18-949-307 – 18-949-315). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 6 – Department of Defense Manual Number 7730.47-M Volume 1, December 7, 2010 (Bates #18-949-316 – 18-949-398). This document is in the possession of the

Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 7 –U.S. Department of Defense Press Operations, DoD launches review of Devin P. Kelley criminal record notification, Release No. NR-382-17, November 6, 2017 (Bates #18-949-399). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 8 – National Instant Criminal Background Check System Indices (Bates #18-949-400 – 18-949-401). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 9 – U.S. Air Force article, AF Implements Changes to Improve Law Enforcement Database Reporting, November 28, 2017 (Bates #18-949-402). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 10 – U.S. Air Force tweet November 9, 2017 (Bates #18-949-403). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 11 – Report to the Committee on the Judiciary United States Senate from The Honorable Heather Wilson, Secretary of the Air Force, December 6, 2017 (Bates #18-949-404 – 18-949-405). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 12 – Questions for the Record for Secretary of the United States Air Force Heather Wilson, December 13, 2017 (Bates #18-949-406 – 18-949-410). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 13 – Misdemeanor Crimes of Domestic Violence (Bates #18-949-411). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 14 –Devin Kelley Trial Transcript (Bates #18-949-412 – 18-949-1022). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 15 - El Paso Incident Report, June 7, 2012 (Bates #18-949-1023 – 18-949-1028). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 16 – Devin Kelley Court Martial Order (Bates #18-949-1029 – 18-949-1034). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 17 – Statement of Danielle Kelley (Bates #18-949-1035). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 18 – Devin Kelley Autopsy Report (Bates #18-949-1036 – 18-949-1037). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 19 – Life Expectancy Tables (Bates #18-949-1038 – 18-949-1101). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 20 – Birth Certificate (Bates #PCORRIGAN-19-691-000001)

Exhibit 21 – Death Certificate of Robert Corrigan (Bates #PCORRIGAN-19-691-000002)

Exhibit 22 – Death Certificate of Shani Corrigan (Bates #PCORRIGAN-19-691-000003)

Exhibit 23 – Autopsy of Robert Corrigan (Bates #PCORRIGAN-19-691-000004 - PCORRIGAN-19-691-000013)

Exhibit 24 – Autopsy of Shani Corrigan (Bates #PCORRIGAN-19-691-000014 - PCORRIGAN-19-691-000024)

Exhibit 25 – 2012 Tax Return (Bates # PCORRIGAN-19-691-000025 - PCORRIGAN-19-691-000041)

Exhibit 26 – 2013 Tax Return (Bates # PCORRIGAN-19-691-000042 - PCORRIGAN-19-691-000046)

Exhibit 27 – 2014 Tax Return (Bates # PCORRIGAN-19-691-000047 - PCORRIGAN-19-691-000063)

Exhibit 28 – 2015 Tax Return (Bates # PCORRIGAN-19-691-000064 - PCORRIGAN-19-691-000083)

Exhibit 29 – 2016 Tax Return (Bates # PCORRIGAN-19-691-000084 - PCORRIGAN-19-691-000105)

Exhibit 30 – Social Security Earnings Summary of Robert Corrigan (Bates # PCORRIGAN-19-691-000106 - PCORRIGAN-19-691-000107)

Exhibit 31 – Social Security Earnings Summary of Shani Corrigan (Bates # PCORRIGAN-19-691-000108 - PCORRIGAN-19-691-000109)

In addition, Plaintiff is in the possession of the materials maintained by the Texas Rangers related to the incident.  In obtaining these materials, Plaintiff entered into an agreement with the Texas Attorney General regarding their release.  As such, Plaintiff will discuss the terms of this agreement with Defendant prior to releasing these materials.

(iii)   A computation of each category of damages claimed by the disclosing party— who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered;

Discovery is still in its early stages and it is premature for Plaintiff to respond to this disclosure; however, please see Plaintiff's Original Complaint(s) and any and all amendments thereto for the categories of damages sought by Plaintiff.  Please refer also to Plaintiff's administrative claims filed with the Government for the maximum amount of damages sought by Plaintiff in this case.  Please refer to the sworn deposition testimony in

13

this case. Please also refer to Plaintiff's Designation of Experts and any amendments or supplements thereto for additional information regarding the facts known to these witnesses and the bases of their opinions.  These expert designations will be made at the time required by the Court's Scheduling Order. Please also refer to the sworn testimony and written reports of these witnesses for further information regarding the facts known to and opinions held by these witnesses.

(iv)    For inspection and copying as under Rule 34, any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment.

Not applicable.

Respectfully Submitted,

/s/ *Justin Demerath*
**JUSTIN DEMERATH**
jdemerath@808west.com
Texas State Bar No. 24034415
**DAVID CAMPBELL**
dcampbell@808west.com
Texas State Bar No. 24057033
**O'HANLON, DEMERATH & CASTILLO, PC**
808 West Avenue
Austin, TX 78701
Telephone: (512) 494-9949
Facsimile: (512) 494-9919

Attorneys for Plaintiff Preston Corrigan

14

**Certificate of Service**

I certify that the foregoing was served on July 12, 2019, via email service and certified mail, return receipt requested, on the following counsel for the United States.

/s/ *Justin Demerath*
**JUSTIN DEMERATH**

PAUL DAVID STERN
Trial Attorney, Torts Branch
United States Dept. of Justice
Civil Division
United States Department of Justice
P.O. Box 888
Benjamin Franklin Station
Washington, D.C. 20004
T: (202) 616-2197
Paul.David.Stern@usdoj.gov

STEPHEN E. HANDLER
Senior Trial Counsel, Torts Branch
United States Dept. of Justice
Civil Division
United States Department of Justice
P.O. Box 888
Benjamin Franklin Station
Washington, D.C. 20004
T: (202) 616-2197
Stephen.Handler@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

Joe Holcombe, *et al.*,
    Plaintiffs,

v.

United States of America,
    Defendant.

Civil Action No. 5:18-cv-555-XR

*Consolidated with*:
  Nos. 5:18-cv-712-XR; 5:18-cv-881-XR;
  5:18-cv-944-XR; 5:18-cv-949-XR;
  5:18-cv-951-XR; 5:18-cv-1151-XR;
  5:19-cv-184-XR; 5:19-cv-289;
  5:19-cv-506 XR; 5:19-cv-678;
  5:19-cv-691-XR; 5:19-cv-705;
  5:19-cv-706-XR; 5:19-cv-715-XR

## PLAINTIFF ZACHARY POSTON'S
## INITIAL DISCLOSURES PURSUANT TO RULE 26(A)(1)

(i)    The name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment;

**a. Plaintiff hereby designates as persons with knowledge the health care providers referenced in the related health care records in this case, including physicians, technicians, nurses, radiologists, physician's assistants, physical therapists, clinics, hospitals, pharmacies, and their agents, representatives, and employees. While these health care providers are not within the control of Plaintiff and have not been retained by Plaintiff as expert witnesses, Plaintiff reserves the right to elicit opinion testimony from any such health care provider, including expert testimony regarding liability, causation, and damages from those treating healthcare providers relating to the medical treatment provided to the Plaintiff. To the extent it is necessary to call live at the trial or by deposition in this cause any agents, representatives, employees and/or custodian of records for any of the following health care providers, Plaintiff identifies any such custodian as a person who may have expert knowledge regarding issues related to the incident in question to include personal knowledge of the records and concerning the necessity of services rendered and referenced in the records and concerning the reasonableness of the medical bills charged and referenced in the records of the following health care providers. For the mental impressions held by and the opinions of and facts known by any of the following witnesses, please refer to the related health care records of the Plaintiff.**

1

| NAME | ADDRESS/TELEPHONE |
|---|---|
| **MEDICAL CARE PROVIDERS** ||
| Employees, agents, custodians and representatives, including:<br>Kym See, Nurse (Crew 1)<br>Joel S. Ramirez, Medic (Crew 2)<br>William Batey (Crew 3)<br>Rayann Waldenburg and/or<br>Present Custodian of Records<br>**San Antonio Air LIFE** | 7500 W US Highway 90<br>San Antonio, Texas 78227<br>(210) 233-5817 |
| Employees, agents, custodians and representatives, including:<br>Aaron Brashear, ST<br>Aaron M. Volk<br>Aaron T. Yu<br>Adam R. Mann<br>Adam M. Starr, MD<br>Adam M. Woodyard<br>Adrianna Quintanilla, RN<br>Alan J. Harvey<br>Alexandria F. Jaksha<br>Amber R. Hosier, RN<br>Amy E. Duesman<br>Alexander B. Merkle, PA-C<br>Amol S. Katkar<br>Andrew R. Davis, CAPT AN<br>Andrew S. Haganman<br>Andrew LeFevre, CRNA<br>Andrew S. Murtha, CAPT MC<br>Anesia S. Woulard<br>Angela M. Curell, CAPT MC<br>Angela D. Manning, MD<br>Angelica S. Dantzler, RN<br>Anita M. Bell, CNA<br>Annelies T. Hickerson<br>Anthony M. Calhoun, RN<br>Anthony R. Frattalone, MD<br>Ariana R. Bryant, 2LT NC<br>Arun Sharma<br>Ashley D. Clark, RN<br>Ashley George<br>Ashley R. Phillips, PFC MED TECH<br>Avia L. McDaniel | 3551 Roger Brooke Dr.<br>Ft. Sam Houston, TX 78234<br>(210) 916-8563 |

Basco M. Pompeo, RN
Belinda R. Correa BB GS
Blake T. Pfaff
Bradley A. Reel, CAPT MC
Brandi C. Armstrong
Brandon C. Beard, RN
Brandon J. Goff
Brandy L. Cooper, LVN CTR
Breana Brooks, Surgical Tech
Breanna P. Garcia
Brendan C. Graham
Brendan S. Kelley, CPT MC
Brenstein Ragay
Brenton R. Kohler
Bria Moore
Brian M. Freeman, PT
Briana L. Waldhelm, RN
Brietta B. Ross, RN
Brittany N. Robinson
Brittney J. Fisher
Callie E. Davis, RN
Carlton J. Kizzie
Carolina E. Bardales
Carolina Lopez, RN
Cathy J. Bernal, LVN
Cesar A. Aguirre
Chad T. Christensen
Changhoon Jeon, CPT AN
Chanise K. Cyrus
Charmaine Mae T. Fortune,
Chesly L. Sanchez, RN
Chris White
Christian D. Gibson
Christian T. Verdau, CPT MC
Christine L. Romero, RN
Christopher L. Gaunder, MD
Christopher Gomez
Christopher H. Jordan
Christopher E. Pierpont
Christopher J. Roach
Christopher J. Walker
Christy A. Velasquez, CAPT NC
Cipriana V. Lopez, CNA
Cory A. Blacksmith
Courtney R. Gerber, RN
Craig A. Kampfer, CPT MC

Cyrus Anguita
Cyrus Ashraf Askin, MD
Dale C. Capener, MD
Dakota D. Cook, PT
Dale C. Capener
Daniel E. Nevius, AMN MT
Darshan Sunil Shah
David W. Grant
David C. Rogers
Dawn Oswald
Debbie O. Ferguson, RN
Deborah A. Anderson, Med Sup
Debra A. Jernigan, Tech
Delia M. Urdiales
Della M. Acquiz
Delotta Richard
Derek H. Arndt
Derek D. Bradley, CAPT MC
Deven A. Johnson
Devin H. Larsen, CPT MC
Diane Petlewski, LPN CIV
Dion A. Saenz, RN
Domair S. Harris, ST
Domanique N. Hyman
Dominic S. Ratto, CPT MC
Donal P. Hawkins
Donald Arnold Schultz, Jr., MD
Donald N. Hope
Dorothy L. Hall-Knaub, RN
Dustin Lybeck, MD
Emily J. Thigpen
Eric J. Acuna, RN CIV
Erin Lundquist
Ernest Gonzales, RN
Esing J. Adams
Evelyn S. Walling, RN
Fernando Hernandez-Moran, Tech
Francis J. Cloran
Gabriel Pivawer
Gail E. Owens, RN
Galvester Miles
Gary C. Jarvis
Geoffrey J. Mittelsteadt, MD
Gena L. Goodson, 1LT AN
Gregory Carreon, CST CTR
Gregory P. Kraus, MD

| | |
|---|---|
| Griffin M. Holauchock, CAPT PA | |
| Ha E. McMillan | |
| Hans E. Bakken | |
| Hans V. Schjang, RN CIV | |
| Heather J. Wassner, RN | |
| Helen H. Brandabur | |
| Helen K. Shelton | |
| Hilary Z. Strube | |
| Holly C. Lacy, RN | |
| Howard E. Gill, IV | |
| Ian P. Kelly, CPT MC | |
| Ian P. Kelly, CPT MC | |
| Ian A. Mullikin, CPT | |
| Ivan Viera Corral, A1C MT | |
| Jaqueline S. Knight, RN CTR | |
| Jacob F. Kortum, 2LT AN | |
| Jacob Sides, ST | |
| James H. Brown, Capt. RN | |
| James S. Carpenter, CAPT NC | |
| James Stovall, RN | |
| Jamie L. LeBlanc | |
| Jamilia M. Adams-Henderson, CRNA | |
| Janessa Chavez, RN | |
| Janet D. Lamiroult, OT | |
| Janelle N. Pierson, LVN CTR | |
| Janneth Ferdin, Surgical Tech | |
| Jared R. Schneider, RN | |
| Jared M. Katchen | |
| Jason A. Beachler | |
| Jason A. Cuevas, CMA | |
| Jason Kim | |
| Jason Tam, CPT MC | |
| Jason M. Zhao | |
| Jayme L. sells, RN CTR | |
| Jeffrey R. Hartley, LVN | |
| Jeffrey D. Howard | |
| Jenna Sylvain | |
| Jennifer Lopez, RN | |
| Jeremy M. Holzberger, MAJ CRNA | |
| Jett J. Mercer, MD | |
| John J. Carroll | |
| Jon M. Hall, PFC | |
| Jonathan M. Coredero, RN CIV | |
| Jonathan T. Hammett | |
| Jonathan H. Payne | |
| Jordan P. Hauschild | |

Jorge Torres
Jose A. Flores CIV TECH
Joseph Martinez
Joseph E. Mallett
Joshua Henley
Julia Nuelle
Julie N. Barker, 2LT AN
Julie D. Chambers, RN SPEC
Julia Ann Vetter Nuelle
Justin G. Peacock
Kaonohi A. Young, Tech
Karissa K. Hanby, LT
Karsten G. Jennings
Kathleen M. Cummings, PT
Kathleen J. McGowan, CNA
Kathleen Ladi, Surgical Tech
Kelly A. Jones
Kelly Mittal, RN
Keondra D. Harris, SPC LVN
Kerim H. Henriquez, RN
Kevin M. Brady, MD
Kevin J. Krauland, Maj, USAF, MC
Kevin C. Petereson
Kimberley M. More, LVN
Kimpreet Kaur, CAPT MC
Kristen B. Ashby
Kristi N. Shaverm, LVN
Krystal D. Allen, Tech
Kuzma V. Kovzun, CAPT MC
Kyle D. Marshall
Kyle Walker, MD
Lace Busby, RN
Lachesis V. Zimmerman, OTA
Larry L. Wheat, CPT CRNA
Lauren C. Powell, CAPT MC
Leslie Hourigan
Lisa A. Cameron
Lisa M. Shropshire, CAPT AN
Lissiette M. Martinedelacruz
Lori A. Leal
Lucero Duran, RN
Lucille Allen
Luisa Garcia-Melendez, PAD CLK
Lydia E. Santiago, RN GS
M. Hutsen, RN
Marcel Alain MacGilvray, MD

Marcia A. LaFleur, CRNA CTR
Maria Christina C. Tijerina, RN
Marisa L. Gossweiler
Mariya Gusman
Marlin Causey, MD
Mark A. Antonacci, MD
Mark Leroy Heniser, MD
Martha G. Guerrero
Martha E. Paul, MAJ CRNA
Martin P. Curry, MD
Matthew A. Freeman
Matthew L. Kluckman
Matthew S. Louis. PA-C
Matthew McGregor, CRNA
Matthew J. Streitz, MD, MAJ
Matthew  S. Louis, PA-C
Meagan A. Frazier, 2d Lt NC
Megan E. Hylton,
Melissa A. Jacob, MD
Melissa M. Rudd, RN CTR
Melody A. Hensel, RN
Michael C. Castillo, LVN
Michael F. D'Amore. MD
Michael J. Beltran, MD
Michael D. Bird
Michael U. Bolduc, CPT PT
Michael F. Damore, MD
Michael P. Hawkinson, MD
Michael K. Okikawa
Michael E. Parsons
Michelle D. Garish, RN
Michele D. Wilson, BB GS
Mickey S. Cho, MD
Miguel A. Escalante, RN
Monica M. Holloway, MAJ SRNA
Myrta Valdes, RN
Natalia S. Parker
Natalie N. Belvin, RN
Natalie Sandoval, Pharm-D
Nathan P. Bastien, CPT MC
Nathan P. Hannemann
Nicholas Jaszczak
Nicole K. Long, CAN
Nikita Williams
Nokomie R. Harris, Pharm-D
Norma E. King, RN

Olivia G. Parry
Patricia Martinez
Patrick Cantu
Patrick J. Coleman, MD
Patrick Dean
Patrick M. Osborn, LT COL MC
Paul Joseph Shogan
Phyllis G. Evans, DNM
Portia E. Brooks, LVN GS
Preetinder S. Bhullar
Rachelle A. Jackson, 1LT AN
Ralph L. Price, MAJ Chaplain
Ramon Vega
Raul G. Marin
Raul J. Solorzano, RN HS
Rebecca A. Flores
Rebecca H. Johnson
Rebecca C. Parrish
Remealle A. How
Rhonda D. Mills, BB GS
Ricardo John Galindo
Richard D. Laduron, RN
Richard Staley, RN
Richard J. Curasi
Rick Guerrero
Robert D. Moore
Robert D. Nicholas, CAPT NC
Robin Tennekoon, MOT, OTR/L, DscOT
Ronald E. Nichols, PAD ROI CTR
Rosendo T. Gutierrez, PT
Roy B. Anderson, RN CTR
Russell A. Gray, MD
Ryan B. Schwope
Samuel L. Madson
Sandy A. Harris, 2LT NC
Sara L. Mackey, 2LT NC
Scot E. Campbell
Scott A. Tonder, MD
Scott M. Fitzgerald
Sean P. Gwin
Seth M. Grubb
Shawn K. Bannister, MD
Shayvonne L. Taylor, CNA
Stephen Van Silvey, MD
Sherri A. Pena, RN
Stacy A. Shackelford

| | |
|---|---|
| Stephanie A. James, LVN CIV<br>Stephen Van Silvey<br>Steve M. Nelson<br>Steven L. Bailey, MD CTR<br>Steven J. Lohmeier, CAPT MC<br>Sylvia Lopez, Clerk<br>Tammy L. Lockhart, LVN<br>Tanya M. Blanchard<br>Tarvin D. Smith, BB CIV<br>Tatyana Boulgakova<br>Taylor J. Bates, CAPT MC<br>Terry E. Bailey, RN GS<br>Theo Kekllas, Surgical Tech<br>Thomas G. Robinson, RN CTR<br>Tierney A. Shannon, CAPT MC<br>Tiffany N. Bond<br>Tiffany N. Salyers<br>Timothy E. Brenner, GS NP<br>Timothy M. Hatfield, RN<br>Travis E. Whiteside, Pharm<br>Trevor L. Edgington, MD<br>Tyson E. Becker<br>Ursula M. Coats, RN CIV<br>Valerie L. Hedenland, PFC<br>Valerie G. Sams, MD<br>Veronica Briones, LMSW<br>Veronica R. Huerta, PT<br>Vicente S. Nelson<br>Warren B. Moore, MAJ CRNA<br>William K. Baxter, COL MC<br>William A. Bell, LVN<br>William Crayton<br>William D. McClain<br>William J. McNeill<br>William Waggoner, MD<br>Xiaoming Shi, MD<br>Yolanda M. Weppelman<br>Yvette Woods, MD<br>Zachary T. Roward, MD<br>Dequan B. Jones, Cherry Moore, Sandor J. Maury, Jr.,<br>and/or Present Custodian of Records<br>**San Antonio Military Medical Center/Brooke Army<br>Medical Center** | |
| Alice Finegan, FNP<br>Amy Dugl, FNP<br>Brandi King, LVN | 402 W. Chihuahua St.<br>LaVernia, Texas 78121 |

| | |
|---|---|
| Diana Jones, and/or Present Custodian of Records<br>**Daryl C. Currier, MD** | (830) 779-3800 |
| Employees, agents, custodians and representatives, including:<br>Mark R. Bagg, MD<br>Susie Reyes, and/or Present Custodian of Records<br>**The Hand Center of San Antonio** | 21 Spurs Lane, #310<br>San Antonio, TX 78240<br>(210) 558-7025 |
| **EDUCATIONAL PROVIDERS** | |
| Employees, agents, custodians and representatives, including:<br>Amber Setzer<br>Jennifer Henrickson<br>Kay Cover<br>Maria Wildenstein<br>Michelle Shaffer<br>Paul Pawelek<br>Sheri Boos<br>Tom Harvey<br>Kristen Beavers, and/or Present Custodian of Records<br>**La Vernia High School/La Vernia Independent School District** | 13600 US Hwy 87 West<br>La Vernia, Texas 78121<br>(830) 779-2181 |

**b. Plaintiff identifies himself as persons with knowledge of relevant facts pertaining to the incident in question:**

| NAME | ADDRESS/TELEPHONE |
|---|---|
| **PARTIES** | |
| Zachary Poston, Individually<br>c/o Justin B. Demerath<br>O'HANLON, DEMERATH & CASTILLO, PC | 808 West Avenue<br>Austin, Texas 78701<br>(512) 494-9949 |

**c. Plaintiff identifies the following family members, friends, and other persons as persons with knowledge of relevant facts:**

Academy Sports + Outdoors in San Antonio
> Kelley bought a Ruger 5.56 mm assault rifle from Academy Sports + Outdoors in San Antonio after clearing a background check of the NICS. Store personnel will have knowledge of the transaction.

El Paso Police
Headquarters:
911 N. Raynor

El Paso, TX 79903
(915) 212-4000
> The El Paso police apprehended Kelley after he escaped. See Exhibit 15.

First Baptist Church of Sutherland Springs, Texas
Frank Pomeroy, Pastor
First Baptist Church
216 4th Street
Sutherland Springs, Texas 78161
> This is the church where the shooting occurred. The pastor was not there that morning, but on information and belief lost his daughter and many beloved friends in the massacre. He will have knowledge of their community and relationships and the impact of the shooting.

Danielle Shield Kelley
> Married to Airman Devin Kelley at the time of the church shooting.

Tessa Kelley (nee' Loge)
> Married to Airman Devin Kelley while he was in the Air Force and reported him for abuse to herself and infant child.

Johnnie Langendorff
Stephen Willeford
> Stephen Willeford confronted Kelley and chased him away from the church. Johnnie Langendorff stopped his vehicle to pick up Mr. Willeford and give chase.

Steve Moore
Wilson County Sheriff's Department
> Investigator

Harold Schott, Justice of the Peace Pct. #3
Wilson County

Terry Snyder
Texas Ranger Division
Texas Department of Public Safety
6100 Guadalupe Street, Building E
Austin, TX 78752
> Investigator and Custodian of Records

Sunland Park Police Department
1000 McNutt Rd
Sunland Park, NM 88063

Jennifer Racey
> Jennifer Racey is the mother of Zachary Poston. She has knowledge of the traumatic injuries sustained by her son, the death of his own mother, Peggy Warden, as well as her own grief, trauma and other elements of damages and that of her family.

Patsy McCain
> Patsy McCain is the great grandmother of Zachary Poston. She has knowledge of the traumatic injuries sustained by her great grandson, the death of her daughter, Peggy Warden, as well as her own grief, trauma and other elements of damages and that of her family.

**d. Plaintiff names the Defendant herein, as well as its agents, representatives, and/or employees or former agents, representatives, or employees, as persons with knowledge of relevant facts. Plaintiff further names the Defendant, as well as its agents, representatives, and/or employees or former agents, representatives, or employees, as persons from whom expert testimony may be elicited regarding liability, causation and/or damages, although Plaintiff does not necessarily vouch for all the opinion testimony of such persons. Plaintiff refers you to the Department of Defense Inspector General reports from 2018, 2017, 2014, and 2015; Defendant's discovery documents; deposition testimony; documents produced by Defendant; and related medical records for the subject matter, facts known, and opinions and impressions of these witnesses.**

Air Force personnel
> Air Force personnel are expected to have knowledge of Kelley's conduct in the Air Force and mental problems, including but not limited to his attempt to bring weapons onto the base to kill officers.

Additional Air Force personnel are provided below:
> Air Force spokesperson, Ann Stefanek. On November 28, 2017, an Air Force spokesperson, Ann Stefanek, admitted that the failure to follow Pentagon guidelines to report Kelley's crimes to the FBI was "not an isolated incident and similar reporting lapses occurred at other locations."

Heather Wilson
Secretary of the Air Force

Deborah Lee James
Secretary of the Air Force

Col. Kirk Stabler
Air Force Commander
Headquarters Air Force Office of Special Investigations
Quantico, Virginia

Brig. General Andrea Tullos
Air Force Director
Director of Security Forces
DCS/Logistics, Engineering & Force Protection
Department of the Air Force
Washington, D.C.

Director of Special Investigations
Department of the Air Force
Washington, D.C.

HQ Air Force Office of Special Investigations
Department of the Air Force
Superintendent, IT Integrations HQ AFOSI
Quantico, Virginia

Department of the Air Force
HQ USAF
Washington, D.C.

Deputy Director of Security Forces
DCS/Logistics, Installations & Missions Support

Defense Human Resources Activity
Headquarters
Pamela Mitchell, Director
4800 Mark Center Drive, Suite 06J25-01
Alexandria, VA 22350-4000

Department of the Air Force
HQ Air Force Office of Special Investigations
Quantico, VA
Brigadier General, Keith Givens
USAF Commander

Department of Defense
Under Secretary of Defense for Intelligence
Deputy Chief Management Officer

Department of Defense
Military Criminal Investigative Organizations (MCIOs)
        Commanders, Officers, supervisors and employees
Defense Criminal Investigative Organizations (DCIOs)
        Commanders, Officers, supervisors and employees

Office of Inspector General for the DOD

The Office of Inspector General for the DOD has issued four reports investigating and detailing the failures of the Air Force and Department of Defense, including negligence, negligent training, and negligent supervision. See attached reports:

Report No. DODIG-2019-030, Inspector General U.S. Department of Defense, Dec. 6, 2018, Report of Investigation into the United States Air Force's Failure to Submit Devin Kelley's Criminal History Information to the Federal Bureau of Investigation; see id. at p. 117, "The USAF concurred with this report and its recommendations." https://www.dodig.mil/reports.html/Article/1707300/reportof-investigation-into-the-united-states-air-forces-failure-to-submit-dev/

☐

Report No. DODIG-2018-035, Inspector General U.S. Department of Defense, Dec. 4, 2017, *Evaluation of Fingerprint Card and Final Disposition Report Submissions by Military Service Law Enforcement Organizations.*   https://www.dodig.mil/reports.html/Search/DODIG-2018-035/

The DOD concluded that training on the submission of fingerprints and final disposition reports was ineffective and lacking, both for AFOSI Detachment 225 and the 49th Security Forces Squadron, and "there was no valid reason for the USAF's failures". *See* p. 111-112; *see also* p. 96-98 (noting "training did not provide instructions on when or how to submit either the fingerprint card or the final disposition report to the FBI CJIS Division"). Indeed, the DOD "determined that this failure to submit Kelley's fingerprints was part of a systemic problem in AFOSI Detachment 225." See p. 94. Worse, the case agent was actually deployed for seven months during the investigation and reported that he complained he could not do his job, stating, "Boss, I'm burnt out, I'm so burnt out." "Boss, I want to get out. I can't do this anymore."

Report No. DODIG-2015-081, Inspector General U.S. Department of Defense, February 12, 2015, *Evaluation of Department of Defense Compliance with Criminal History Data Reporting Requirements*

Report No. DODIG-2015-011, Inspector General U.S. Department of Defense, October 29, 2014, *Evaluation of the Defense Criminal Investigative Organizations' Defense Incident-Based Reporting System Reporting and Reporting Accuracy*

Air Force 49th Security Forces Squadron and its investigators, Military Law Enforcement Officers (LEOs), or AFSFC Police Services Branch Confinement Facility

Commanders, Officers, supervisors, employees

The 49th Security Forces Squadron investigated Airman Kelley. The 49th Security Forces squadron investigators and/or Military Law Enforcement Officers (LEOs) had responsibilities to gather fingerprints and report, and thus will have knowledge of their responsibilities, training, and failures. The December 6, 2018, the Inspector General of the DOD issued a 131-page Report titled, *Investigation into the United States Air Force's Failure to Submit Devin Kelley's Criminal History Information to the Federal Bureau of Investigation* concluding that training on the submission of fingerprints and final disposition reports was ineffective and lacking, both for AFOSI Detachment 225 and the 49th Security Forces Squadron, and "there was no valid reason for the USAF's failures". *See* p. 111-112; *see also* p. 96-98 (noting "training did not provide instructions on when or how to submit either the fingerprint card or the final disposition report to the FBI CJIS Division"). Air Force Office of Special Investigations

AFSFC Police Services Branch training focused on collection of fingerprints, but failed to address submitting fingerprint cards and final disposition reports to the FBI CJIS. Their Management Internal Control Toolset (MICT) checklist items are supposed to be monitored and assessed as part of the installation commander's self-inspection program. Monthly supervisory reviews were "incomplete and ineffective. *See* Report No. DODIG-2019-030 p. 110.

Airman Kelley's Air Force Commander

Kelley's Commander issued a no contact order and has knowledge of Kelley's conduct and training in the Air Force.

Airman Kelley's Air Force Commander

Kelley's Commander issued a no contact order, prepared a confinement package stating that he was "convinced" that Kelley was "dangerous and likely to harm someone if released", and has knowledge of Kelley's conduct and training in the Air Force.

Kelley's former Supervisor in the Air Force

Kelley sent a threatening Facebook message to his former supervisor in the Air Force after his discharge. She will have knowledge of Kelley's conduct and condition and threats.

Case Agent responsible for Airman Kelley

The Case Agent will have knowledge for the reasons he could not properly report Kelley to the FBI, as detailed by the DOD's report.

Boss of Case Agent responsible for Airman Kelley

> The boss of the Case Agent will have knowledge for the reasons the Case Agent could not properly report Kelley to the FBI, as detailed by the DOD's report.

Peak Behavioral Health Services and Xavier Alvarez
5055 McNutt Rd.
Santa Teresa, NM 88008

> Peak Behavioral Health Services (PBHS) had a program for military personnel and diagnosed Kelley with various mental and emotional disorders. On information and belief, this is the facility from which Kelley attempted to buy guns to kill his commanding officers, and the facility that Kelley escaped from and fled to El Paso.

> According to an El Paso police report, police were informed that Kelley "was a danger to himself and others as he had already been caught sneaking firearms onto Holloman Air Force Base". Police were further advised that Airman Kelley "suffered from mental disorders" and that he "was attempting to carry out death threats" against "his military chain of command." Xavier Alvarez, who worked for Peak Behavioral and who reported Kelley to police for the escape, later confirmed to NBC News that Kelley "verbalized that he wanted to get some kind of retribution to his chain of command." Other patients reported that Kelley was doing something suspicious on computers, and the military found that Kelley was "ordering weapons and tactical gear and magazines to a P.O. Box in San Antonio." Alvarez was quoted as saying, "This kid – he was hollow," and "I could never reach him."

Air Force Security Forces Squadron
Holloman Air Force Base

> Commanders, Officers, supervisors, employees
> Cmdr. Nathan McLeod-Hughes

Air Force 49th Logistics Readiness Squadron
> Commanders, Officers, supervisors, employees

Air Force Detachment 225 and/or Holloman Air Force Base Office of Special Investigations

> Commanders, Officers, Special Agents, supervisors, employees
> AFOSI Detachment 225 and/or Holloman Air Force Base Office of Special Investigation had responsibilities to gather fingerprints and report,

and thus will have knowledge of their responsibilities, training, and failures. The December 6, 2018, the Inspector General of the DOD issued a 131-page Report titled, Investigation into the United States Air Force's Failure to Submit Devin Kelley's Criminal History Information to the Federal Bureau of Investigation concluding that training on the submission of fingerprints and final disposition reports was ineffective and lacking, both for AFOSI Detachment 225 and the 49th Security Forces Squadron, and "there was no valid reason for the USAF's failures". See p. 111-112; see also p. 96-98 (noting "training did not provide instructions on when or how to submit either the fingerprint card or the final disposition report to the FBI CJIS Division").

Although AFOSI policy required supervisory reviews to include both I2MS and the investigative case file (record copy), the AFOSI Detachment 225 SAIC and Superintendent focused their reviews on the I2MS activities and not on investigative case files" *See* p. 89. "In sum, we concluded that AFOSI Detachment 225 monthly supervisory reviews of Kelley's investigative case file were incomplete and ineffective".

Air Force Article 32 Investigating Officers

Air Force Prosecutors
Air Force prosecutors gathered evidence and handled the conviction of Airman Kelley, and thus have knowledge of his conduct and disposition.

Naval Consolidated Brig
Miramar, California
Commanders, Officers, supervisors, employees

General David Goldfein
Air Force Chief of Staff

General Stephen Wilson
Air Force Vice Chief of Staff

Lt. General Gina Grosso
Air Force Deputy Chief of Staff, Manpower, Personnel & Services

Lt. General John Raymond
Air Force Deputy Chief of Staff, Operations

Lt. General John Cooper, Deputy Chief of Staff, Operations

Air Force Holloman Air Force Base Mental Health Clinic
HAFB Mental Health Clinic had custody of Kelley in the Air Force

Defense Incidence-Based Reporting System
Commanders, Officers, supervisors, employees

**e.  Regarding experts who may be called to testify at the trial in this case, please refer to Plaintiff's Designation of Experts and any amendments or supplements thereto for additional information regarding the facts known to these witnesses and the bases of their opinions.  These expert designations will be made at the time required by the Court's Scheduling Order. Please also refer to the sworn testimony and written reports of these witnesses for further information regarding the facts known to and opinions held by these witnesses.**

**f.  Plaintiff cross-identifies as expert witnesses any person named or to be named by Defendant as a person having expert knowledge about any facts surrounding any issues relevant to the incident in question as expert witnesses who Plaintiff reserves the right to call live at the trial of the cause.  Plaintiff reserves the right to call such persons as expert witnesses, whether or not the designation is subsequently withdrawn.  Plaintiff does not have any control over any such witness, nor do they have any superior right to ascertain the subject matter on which any such witness may testify and/or opinions held by any such witness, beyond the information disclosed in deposition testimony and/or by Defendant's discovery responses.  In that regard, Plaintiff refers you to Defendant's discovery documents, deposition testimony, and documents produced by Defendant for the subject matter, facts known, and opinions and impressions of these witnesses.  Plaintiff reserves the right to obtain opinion testimony from any such witness within their area of expertise as related to this case.**

(ii)   A copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment;

Exhibit 1 – Inspector General, US Department of Defense, Evaluation of the Defense Criminal Investigative Organizations' Defense Incident-Based Reporting System Reporting and Reporting Accuracy, October 29, 2014 (Bates #18-949-1 – 18-949-40). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 2 – Inspector General, US Department of Defense, Evaluation of the Defense Compliance with Criminal History Data Reporting Requirements, February 12, 2015 (Bates #18-949-41 – 18-949-76). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et

al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 3 – Inspector General, US Department of Defense, Evaluation Fingerprint Card and Final Disposition Report Submissions by Military Service Law Enforcement Organizations, December 4, 2017 (Bates #18-949-77 – 18-949-168). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 4 – Inspector General, US Department of Defense, Report of Investigation into the United States Air Force's Failure to Submit Devin Kelley's Criminal History Information to the Federal Bureau of Investigation, December 6, 2018 (Bates #18-949-169 – 18-949-306). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 5 –Department of Defense Directive Number 7730.47, October 15, 1996 (Bates #18-949-307 – 18-949-315). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 6 –Department of Defense Manual Number 7730.47-M Volume 1, December 7, 2010 (Bates #18-949-316 – 18-949-398). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 7 –U.S. Department of Defense Press Operations, DoD launches review of Devin P. Kelley criminal record notification, Release No. NR-382-17, November 6, 2017 (Bates #18-949-399). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 8 – National Instant Criminal Background Check System Indices (Bates #18-949-400 – 18-949-401). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 9 – U.S. Air Force article, AF Implements Changes to Improve Law Enforcement Database Reporting, November 28, 2017 (Bates #18-949-402). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 10 – U.S. Air Force tweet November 9, 2017 (Bates #18-949-403). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 11 – Report to the Committee on the Judiciary United States Senate from The Honorable Heather Wilson, Secretary of the Air Force, December 6, 2017 (Bates #18-949-404 – 18-949-405). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 12 – Questions for the Record for Secretary of the United States Air Force Heather Wilson, December 13, 2017 (Bates #18-949-406 – 18-949-410). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 13 – Misdemeanor Crimes of Domestic Violence (Bates #18-949-411). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 14 –Devin Kelley Trial Transcript (Bates #18-949-412 – 18-949-1022). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 15 - El Paso Incident Report, June 7, 2012 (Bates #18-949-1023 – 18-949-1028). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 16 – Devin Kelley Court Martial Order (Bates #18-949-1029 – 18-949-1034). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 17 – Statement of Danielle Kelley (Bates #18-949-1035). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 18 – Devin Kelley Autopsy Report (Bates #18-949-1036 – 18-949-1037). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 19 – Life Expectancy Tables (Bates #18-949-1038 – 18-949-1101). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

Exhibit 20 – San Antonio Airlife medical records (Bates #ZPOSTON-19-691-000001 - ZPOSTON-19-691-000013)

Exhibit 21 – San Antonio Airlife billing records (Bates # ZPOSTON-19-691-000014 - ZPOSTON-19-691-000018)

Exhibit 22 – San Antonio Military Medical Center/Brooke Army Medical Center medical records (Bates #ZPOSTON-19-691-000019 - ZPOSTON-19-691-002741)

Exhibit 23 – San Antonio Military Medical Center/Brooke Army Medical Center billing records (Bates # ZPOSTON-19-691-002742- ZPOSTON-19-691-002843)

Exhibit 24 – Daryl C. Currier, MD medical records (Bates # ZPOSTON-19-691-002844 - ZPOSTON-19-691-002866)

Exhibit 25 – Daryl C. Currier, MD billing records (Bates # ZPOSTON-19-691-002867 - ZPOSTON-19-691-002871)

Exhibit 26 – The Hand Center of San Antonio medical records (Bates # ZPOSTON-19-691-002872 - ZPOSTON-19-691-002881)

Exhibit 27 – The Hand Center of San Antonio billing records (Bates # ZPOSTON-19-691-002882 - ZPOSTON-19-691-002888)

Exhibit 28 – La Vernia High School education records (Bates # ZPOSTON-19-691-002889 - ZPOSTON-19-691-003021)

In addition, Plaintiff is in the possession of the materials maintained by the Texas Rangers related to the incident.  In obtaining these materials, Plaintiff entered into an agreement with the Texas Attorney General regarding their release.  As such, Plaintiff will discuss the terms of this agreement with Defendant prior to releasing these materials.

(iii)   A computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered;

Discovery is still in its early stages and it is premature for Plaintiff to respond to this disclosure; however, please see Plaintiff's Original Complaint(s) and any and all amendments thereto for the categories of damages sought by Plaintiff.  Please refer also to Plaintiff's administrative claims filed with the Government for the maximum amount of damages sought by Plaintiff in this case.  Please refer to the sworn deposition testimony in this case.  Please also refer to Plaintiff's Designation of Experts and any amendments or supplements thereto for additional information regarding the facts known to these witnesses and the bases of their opinions.  These expert designations will be made at the time required by the Court's Scheduling Order. Please also refer to the sworn testimony and written reports of these witnesses for further information regarding the facts known to and opinions held by these witnesses.

(iv)   For inspection and copying as under Rule 34, any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment.

Not applicable.

Respectfully Submitted,

/s/ *Justin Demerath*

**JUSTIN DEMERATH**
jdemerath@808west.com
Texas State Bar No. 24034415
**DAVID CAMPBELL**
dcampbell@808west.com
Texas State Bar No. 24057033
**O'HANLON, DEMERATH & CASTILLO, PC**
808 West Avenue
Austin, TX 78701
Telephone: (512) 494-9949
Facsimile: (512) 494-9919

Attorneys for Plaintiff Zachary Poston

## Certificate of Service

I certify that the foregoing was served on July 12, 2019, via email service and certified mail, return receipt requested, on the following counsel for the United States.

/s/ *Justin Demerath*
**JUSTIN DEMERATH**

PAUL DAVID STERN
Trial Attorney, Torts Branch
United States Dept. of Justice
Civil Division
United States Department of Justice
P.O. Box 888
Benjamin Franklin Station
Washington, D.C. 20004
T: (202) 616-2197
Paul.David.Stern@usdoj.gov

STEPHEN E. HANDLER
Senior Trial Counsel, Torts Branch
United States Dept. of Justice
Civil Division
United States Department of Justice
P.O. Box 888
Benjamin Franklin Station
Washington, D.C. 20004
T: (202) 616-2197
Stephen.Handler@usdoj.gov

# P

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| Dalia Lookingbill, *et al.*, <br>    Plaintiffs, <br><br> v. <br><br> United States of America, <br>    Defendant. | Civil Action No. 5:19-cv-00706 <br><br> *Consolidated with*: <br>  Nos. 5:18-cv-712-XR; 5:18-cv-881-XR; <br>  5:18-cv-944-XR; 5:18-cv-949-XR; <br>  5:18-cv-951-XR; 5:18-cv-1151-XR; <br>  5:19-cv-184-XR; 5:19-cv-289; <br>  5:19-cv-506 XR; 5:19-cv-678; <br>  5:19-cv-691-XR; 5:19-cv-705; <br>  5:19-cv-706-XR; 5:19-cv-715-XR |

## PLAINTIFF DALIA LOOKINGBILL'S, INDIVIDUALLY AND AS GUARDIAN OF THE PERSON AND ESTATE OF R.T., A MINOR AND AS REPRESENTATIVE OF THE ESTATE OF E.G., DECEASED MINOR, INITIAL DISCLOSURES PURSUANT TO RULE 26(A)(1)

(i)   The name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment;

**a. Plaintiffs hereby designate as persons with knowledge the health care providers referenced in the related health care records in this case, including physicians, technicians, nurses, radiologists, physician's assistants, physical therapists, clinics, hospitals, pharmacies, and their agents, representatives, and employees. While these health care providers are not within the control of Plaintiffs and have not been retained by Plaintiffs as expert witnesses, Plaintiffs reserve the right to elicit opinion testimony from any such health care provider, including expert testimony regarding liability, causation, and damages from those treating healthcare providers relating to the medical treatment provided to the Plaintiffs. To the extent it is necessary to call live at the trial or by deposition in this cause any agents, representatives, employees and/or custodian of records for any of the following health care providers, Plaintiffs identify any such custodian as a person who may have expert knowledge regarding issues related to the incident in question to include personal knowledge of the records**

1

**and concerning the necessity of services rendered and referenced in the records and concerning the reasonableness of the medical bills charged and referenced in the records of the following health care providers.  For the mental impressions held by and the opinions of and facts known by any of the following witnesses, please refer to the related health care records of the Plaintiffs.**

American Medical Response
11911 Radium St.
San Antonio, TX 78216

Brooke Army Medical Center
3551 Roger Brooke Dr.
Fort Sam Houston, TX 78234

The Center for the Intrepid
3851 Roger Brooke Dr.
San Antonio, TX 78219

Bexar County Medical Examiner
7337 Louis Pasteur
San Antonio, Tx 78229-4565
Agents, servants and employees, including but not limited to:
    Rajesh P. Kannan, M.D.
    Randall E. Frost, M.D.
    D. Kimberley Molina, M.D.
    Veronica Hargrove, Ph.D.

Travis County Medical Examiner
1213 Sabine Street
Austin, Texas 78701
Agents, servants and employees, including but not limited to:
    J. Keith Pinckard, MD, PhD, D-ABP, F-ABM
    Vickie L. Willoughby, DO

Custodian of Records for:
University Health System
4502 Medical Dr
San Antonio, TX  78229
(210) 358-4000 Telephone
(210) 200-6002 Facsimile
*The employees who provided record keeping and billing services for the medical services and treatment to E.G.  for the severe injuries she sustained as a result of this incident until her passing.*

2

**b.  Plaintiffs identify themselves as persons with knowledge of relevant facts pertaining to the incident in question:**

Dalia Lookingbill, Individually and as Representative of the Estate of E.G.
c/o Jason Webster
The Webster Law Firm
6200 Savoy, Suite 150
Houston, Texas 77036

R.T., a minor, by and through her Guardian Dalia Lookingbill
c/o Jason Webster
The Webster Law Firm
6200 Savoy, Suite 150
Houston, Texas 77036

**c.  Plaintiffs identify the following family members, friends, and other persons as persons with knowledge of relevant facts:**

Christopher Ward
c/o Kelly Kelly
Anderson & Associates Law Firm
2600 SW Military Drive, Suite 118
San Antonio, TX 78224
*Joann Ward's husband*

R.W., a minor
c/o Kelly Kelly
Anderson & Associates Law Firm
2600 SW Military Drive, Suite 118
San Antonio, TX 78224

Chris Benavides - Bureau of Alcohol Tobacco Firearms & Explosives
San Antonio Group III
*ATF Agent investigated sale of firearms to gunman, Devin Kelly.*

Tom Caldwell
Wilson County Attorney
1420 Third Street, Suite 201
Floresville, Texas 78014
(830) 393-7305 Telephone
*Wilson County Attorney in charge of autopsies occurring in Wilson County.*

Judge Clara J. Rutland
Justice of the Peace - Precinct 4
Wilson County
800 10th Street, Suite 6
Floresville, Texas 78114
(830) 393-4052 Telephone
*Judge Rutland arrived at the scene of the incident following the massacre.*

Judge Harold Schott
Justice of the Peace - Precinct 3
Wilson County
402 Bluebonnet (FM 775)
La Vernia, Texas 78121
(830) 477-8034 Telephone
*Judge Schott arrived at the scene of the incident following the massacre. Judge Schott also certified the death certificates of several other victims of this incident in addition to several other named deceased Plaintiffs.*

Judge Sara Canady
Justice of the Peace - Precinct 2
Wilson County
121 Dilworth Plaza
Poth, Texas 78147
(830) 484-2356 Telephone
*Judge Canady arrived at the scene of the incident following the massacre.*

Andrew R. Graham - Deputy Assistant Director Field Operations (10)
U.S. Department of Justice
Address Unknown
*Mr. Graham's investigated 04/07/2016 and 10/18/2017 weapon sales to Devin Kelly.*

Scott Hester
Bureau of Alcohol Tobacco Firearms & Explosives
Firearms Program Specialist, Night Shift
ATF National Tracing Center
244 Needy Road
Martinsburg, WV 25401
(800) 788-7133, ext 01536 Telephone
*ATF Agent investigated sale of firearms to gunman, Devin Kelly.*

Jeff Kennedy
Bureau of Alcohol Tobacco Firearms & Explosives

4

Intelligence Research Specialist
San Antonio, Texas
(210) 805-2727
*ATF Agent investigated the sale of firearms to gunman, Devin Kelly.*

Sheriff Joe D. Tackitt, Jr.
Wilson County Sheriff's Department
800 10th Street, Unit 4
Floresville, Texas 78114
(830) 393-2535 Telephone
*Investigating Agency*

Texas Department of Public Safety
Texas Rangers – Company "F"
Joel Kite
Joey Evans
John Lingle
Michael Adcock
Johnie Deagen
Patrick OConnor
Ranger Dixon
Ranger Wolf
Reid Rackley
Ryan Clendennen
Steve Moore
c/o Ken Paxton, Attorney General and
Kimberly Fuchs, Assistant Attorney General
P.O. Box 12548
Austin, Texas 78711
(512) 463-2100 Telephone
*Investigating Agency*

United States Department of Justice
Federal Bureau of Investigation
Abby Halle, SA
Adebowale Alade, SA
Adolfo Baesa, SA
Albert Ott
Alexis Mata, SA
Brandon Kight, SA
Carlos Anchondo, SA
Carly Johnson

5

Christine Beining
Cruz Esquival, SA
Cynthia Meiners, SA
Daniel Galloway
David W. Boruschko, SA
David Snow, SA
Dodson Jesse, SA
Dustin McCarley, SA
Francisco G. Cruz, SA
Gabriel Villanuevo (?), SA
George S. Olivarez, SA
Gerard L. Carter, SA
Gregory P. Pratt, FBI Photographer
Hans Momberger, SA
Heather Kotara, SA
Hector D. Morales, SA
James Leal, SA
James Runkel, SA
Jason Bayne, SA
Jeffrey S. Williams, SA
Joel Stephen, SA
Jonathan Dawson
Jordana Nesvog, SA
Joseph L. Horton, SA
Joshua Banuelos, SA
Kathryn Robertson, SA
Katrina Diller, OST
Kirby Llanos, SA
Kristina Spindel, SA
Liam O'Faffell, SA
Mario DeLuna, SA
Matthew P. Melic, SA
Matthew W. Shelley, SA
Michael Call, SA
Michael Carusle, SA
Mike Haywood, SA
Noah Domnick, SA
Patrick Edgar, SA
Patrick Syson, SA
Rand L. Perdiue, SA
Rex Miller, SA

Robert Salinas, SA
Roberto Rojas, SA
Sara Marrow, SA
Shawn Byles, SA
Sophie R. Zaiontc, SA
Sophie Zarantz
Steven Gonzales
Susan Martin, SA
Tamara Dolan, SA
Timothy C. Doyle, SA
Tina Nicholas, SA
Traci Holm, SA
Victor Fernandez, SA
Vilia Ann Chafin, SA
Yvonne Muirhead, SA
Joe Horton, SA
Dustin McCarley, SA
FBI Headquarters
935 Pennsylvania Avenue, NW
Washington, D.C. 20535
(202) 324-3000 Telephone
*Investigating Agency*

William D. McClaim
Deputy Medical Examiner – Bexar County, Texas
7337 Louis Pasteur Drive
San Antonio, Texas 78229
(210) 335-4001 Telephone
(210) 335-4002 Facsimile
*Dr. McClain Certified the Death Certificate of E.G.*

Castillo Mission Funeral Home
520 N. General McMullen Drive
San Antonio, Texas 78228
(210) 432-8586 Telephone
*Arranged Funeral Services of E.G.*
*Arranged Funeral Services of B.W.*
*Arranged Funeral Services of Joann Ward*

Our Lady of Grace Catholic Cemetery
Lower Lacoste Road
La Coste, Medina County, Texas
*Burial site of E.G.*
*Burial site of B.W.*
*Burial site of Joann Ward*

University Health System
4502 Medical Dr
San Antonio, TX  78229
(210) 358-4000 Telephone
(210) 200-6002 Facsimile
*Physicians, nurses, employees and/or other personnel who treated E.G. for the*
*severe injuries she sustained as a result of this incident until her passing.*

Custodian of Records for:
University Health System
4502 Medical Dr
San Antonio, TX  78229
(210) 358-4000 Telephone
(210) 200-6002 Facsimile
*The employees who provided record keeping and billing services for the*
*medical services and treatment to E.G.  for the severe injuries she sustained*
*as a result of this incident until her passing.*

Kimberley K. Gaskill, M.Ed., CSC, LPC
Adams Hill Elementary
9627 Adams Hill Drive
San Antonio, Texas 78245
(210) 397-1400 Telephone
(210) 678-2937 Facsimile
*Ms. Gaskill is the school counselor. R.T. has visited with Ms. Gaskill regarding*
*her experience in witnessing the death of her mother, Joann Ward and her*
*sister, E.G. as well as the death of her step-sister, B.W. and the extensive*
*injuries of her step-brother R.W. Rhianna also saw many others shot and killed*
*during the church massacre.*

Ray Galindo, Custodian of Educational Records for:
Adams Hill Elementary
9627 Adams Hill Drive
San Antonio, Texas 78245
(210) 397-1400 Telephone
(210) 678-2937 Facsimile

8

*Mr. Galindo is the custodian of Educational Records for Adams Hill Elementary. He may testify as to the business records and kept by Adams Hill Elementary. Specifically, this witness may testify as to the records being kept in the regular course of business by an employee or representative with personal knowledge of the act, event or condition recorded to make the record, or to transmit information thereof to be included in such record, and that records were made at or near the time of the incident, event or condition recorded or reasonably soon thereafter, and that it was in the regular course of business to make such a record.  This witness may testify that the records are the true and correct copies of the originals.*

Kelli Braden
7009 Almeda Rd., Apt 828
Houston, Texas 77054
*Person with knowledge of relevant facts. Wife of Plaintiff, Robert Braden.*

David Casillas
Address Unknown
*Person with knowledge of relevant facts. Rushed to the scene of the shooting*

David Colbath
Address Unknown
*Person with knowledge of relevant facts. Shot at least 8 times in shooting***.**

Tessa Kelley (nee' Loge)
Devin Kelley's former spouse

Jessika Edwards
Address Unknown
*Person with knowledge of relevant facts. Worked with Kelley at Holloman Air Force Base in New Mexico from 2010 to 2012; claims Kelley told her he was buying dogs from Craigslist and using them as target practice.*

David Flores
Address Unknown
*Person with knowledge of relevant facts. Neighbor to church.*

Lorenzo Flores
Address Unknown
*Person with knowledge of relevant facts. Heard the gunfire in the church and watched the Gunman, Devin Kelley fire into the church from the outside.*

Inspector General Glen A. Fine
Address Unknown
*Person with knowledge of relevant facts. Acting Inspector General at time of shooting.*

E. H., a Minor
Address Unknown
*Person with knowledge of relevant facts. Grazed by bullet and survived shooting.*

Kevin Jordan
Address Unknown
*Person with knowledge of relevant facts. Witnessed Stephen Willeford shoot at Gunman, Devin Kelley following his shooting rampage.*

Danielle Kelley (née Shields)
c/o The Law Office of Daniel D. Horowitz
2100 Travis Street
Houston, Texas 77002
(832) 460-5181 Telephone
*Person with knowledge of relevant facts. Wife of Devin Kelley; Married on April 4, 2014 and lived together with him until his death.*

Michael Kelley and Rebecca Kelley
2825 FM 2722
New Braunfels, TX 78132
(830) 899-2100 Telephone
*Persons with knowledge of relevant facts. Parents of Gunman, Devin Patrick Kelley.*

Johnnie Langendorf
Address Unknown
*Person with knowledge of relevant facts. Chased Gunman, Devin Kelley with his truck in order to apprehend him.*

Tessa K. Loge (now Brennaman)
Address Unknown
*Person with knowledge of relevant facts. Ex-wife of Gunman, Devin Kelley; Attacked by Kelley.*

Ted Montgomery
Address Unknown
*Person with knowledge of relevant facts. Rushed to the scene of the shooting to help care for the wounded.*

Debra Morales
Address Unknown
*Person with knowledge of relevant facts. Volunteer coordinating relief efforts for victims' family members at the Immediate Family Command Center.*

Pastor Donnell Frank Pomeroy
158 Oak Valley
La Vernia, Texas 78121
*Person with knowledge of relevant facts. Head pastor of First Baptist Church of Sutherland Springs; Father of Annabelle Pomeroy, who died at the scene of the shooting.*

Sherri D. Pomeroy
158 Oak Valley
La Vernia, Texas 78121
*Person with knowledge of relevant facts. Wife of Pastor Pomeroy; Mother of Annabelle Pomeroy, who died at the scene of the shooting.*

Sue Soto
Address Unknown
*Person with knowledge of relevant facts. Rosa Solis' sister; drove Solis to hospital after shooting.*

Terri Smith
Address Unknown
*Person with knowledge of relevant facts. Heard the gunfire in the church and watched the Gunman, Devin Kelley fire into the church from the outside.*

Sheri Taggart
La Vernia, Texas
*Mother-in-law of Robert Braden; Came to the scene following the shooting and drove Robert Braden to the hospital.*

Stephen Willeford
Address Unknown
*Person with knowledge of relevant facts. Shot and wounded Gunman, Devin Kelley.*

11

Heather Wilson
Address Unknown
*Person with knowledge of relevant facts. Air Force Secretary.*

Julie Workman
Address Unknown
*Person with knowledge of relevant facts. Shot and provided medical assistance at scene of shooting.*

Kris Workman
Address Unknown
*Person with knowledge of relevant facts. Shot and paralyzed in shooting.*

Kyle Workman
Address Unknown
*Person with knowledge of relevant facts. Shot and escaped church.*

Morgan Workman (formerly Harris)
Address Unknown
*Person with knowledge of relevant facts. Shot and wounded during shooting.*

Rosanne Solis and Joaquin Ramirez
c/o George LeGrand
LeGrand & Bernstein
2511 North St. Mary's Street
San Antonio, Texas   78212
(210) 733-9439   Telephone
(210) 735-3542   Facsimile
*Person with knowledge of relevant facts.*

Robert Braden
c/o/Justin B. Demerath
jdemerath@808west.com
David Campbell
O'Hanlon, Demerath & Castillo, PC
808 West Ave.
Austin, Texas 78701
(512) 494-9949 Telephone
(512) 494-9919 Facsimile
akeeran@808west.com
*Person with knowledge of relevant facts.*

Chancie McMahan, Individually and As Next Friend of R.W., A Minor, Roy White, Individually and As Representative of The Estate of Lula White; Scott Holcombe
c/o The Law Offices of Thomas J. Henry & Hilliard Martinez Gonzales LLP
Thomas J. Henry
Marco A. Crawford
Dennis J. Bentley
521 Starr Street
Corpus Christi, Texas 78401
(361) 985-0600 Telephone
(361) 985-0601 Facsimile
*mcrawford-svc@tjhlaw.com
and
Robert C. Hilliard
bobh@hmglawfirm.com
Catherine D. Tobin
catherine@hmglawfirm.com
Marion Reilly
marion@hmglawfirm.com
Bradford Klager
brad@hmglawfirm.com
719 S. Shoreline Boulevard
Corpus Christi, Texas 78401
(361) 882-1612 Telephone
(361) 882-3015 Facsimile
*Person with knowledge of relevant facts.*

Christopher Ward, Individually and as Representative of the Estates of Joann Ward, deceased and B.W. deceased minor, and as Next Friend of R.W., a minor
c/o Paul Anderson
Kelly Kelly
Anderson & Associates Law Firm
2600 SW Military Drive, Suite 118
San Antonio, Texas 78224
(210) 928-9999 Telephone
(210) 928-9118 Facsimile
*Plaintiffs in Consolidated Civil Action No. 5:19-cv-289*

Joe Holcombe, Individually as Heirs at Law and as Representatives of the Estate of John Bryan Holcombe, deceased.
c/o Robert E. Ammons
Rob@Ammonslaw.com

April A. Strahan
April@Ammonslaw.com
The Ammons Law Firm, LLP
3700 Montrose Blvd.
Houston, Tx 77006
713.523.1606 Telephone
713.523.4159 Facsimile

and

Daniel D. Barks
Ddb@Speiserkrause.com
Speiser Krause
5555 Glenridge Connector, Ste. 550
Atlanta, Ga 30342
404.751.0632 Telephone
866.936.6382 Facsimile

and

Mark W. Collmer
Collmer Law Firm
3700 Montrose
Houston, Texas 77006
713.337.4040 Telephone
713.337.4044 Facsimile
*Plaintiffs in Consolidated Civil Action No. 5:18-cv-00555*

Claryce Holcombe, Individually as Heirs at Law and as Representatives of
the Estate of John Bryan Holcombe, deceased
c/o Robert E. Ammons
Rob@Ammonslaw.com
April A. Strahan
April@Ammonslaw.com
The Ammons Law Firm, LLP
3700 Montrose Blvd.
Houston, Tx 77006
713.523.1606 Telephone
713.523.4159 Facsimile

and

Daniel D. Barks
Ddb@Speiserkrause.com
Speiser Krause
5555 Glenridge Connector, Ste. 550
Atlanta, Ga 30342
404.751.0632 Telephone
866.936.6382 Facsimile

and

Mark W. Collmer
Collmer Law Firm
3700 Montrose
Houston, Texas 77006
713.337.4040 Telephone
713.337.4044 Facsimile
*Plaintiffs in Consolidated Civil Action No. 5:18-cv-00555*

Margarette Vidal,
Monica Shabbir (Vidal),
Ramiro Vidal Jr.,
Robert Vidal
c/o Jamal K. Alsaffar
jalsaffar@nationaltriallaw.com
Tom Jacob
tjacob@nationaltriallaw.com
Laurie M. Higginbotham
lhigginbotham@nationaltriallaw.com
Koby J. Kirkland
kkirkland@nationaltriallaw.com
7500 Rialto Blvd.
Bldg. Two, Suite 250
Austin, TX 78735
512.476.4346 Telephone
512.476.4400 Facsimile

and

Jason P. Steed
Kilpatrick Townsend & Stockton, LLP
2001 Ross Avenue, Suite 4400
Dallas, Texas 75201
214.922.7100 Telephone

214.853.5731 Facsimile
*Plaintiffs in Consolidated Civil Action No. 18-cv-00576*

Charlene Uhl Individually, as Heir at Law and as Representative of the Estate of Haley Kruger, deceased
c/o Dennis Peery
d.peery@tylerpeery.com
R. Craig Bettis
cbettis@tylerpeery.com
The Law Offices of Tyler & Peery
5822 W. IH-10
San Antonio, TX 78201
210.340.0900 Telephone
210.736.9197 Facsimile
*Plaintiffs in Consolidated Civil Action No. 5:18-cv-00881*

Gary Ramsey, Individually, and as Independent Co-Administrator of The Estate of Therese Joann Rodriguez, Deceased
Ronald Ramsey, Jr., Individually, and As Independent Co-Administrator of The Estate of Therese Joann Rodriguez, Deceased
c/o Robert E. Ammons
Rob@Ammonslaw.com
April A. Strahan
April@Ammonslaw.com
The Ammons Law Firm, LLP
3700 Montrose Blvd.
Houston, Tx 77006
713.523.1606 Telephone
713.523.4159 Facsimile

and

Tim Maloney
tmaloney@maloneyandcampolo.com
Paul E. Campolo
pcampolo@maloneyandcampolo.com
Maloney & Campolo, L.L.P.
926 S. Alamo
San Antonio, Texas 78205
(210) 922-2200 Telephone
(210) 923-1313 Facsimile
*Plaintiffs in Consolidated Civil Action No. 5:18-cv-00944*

16

Lisa Mcnulty, Individually and as Personal Representative of the Estate of Tara Mcnulty and as Legal Guardian of H.M and J.M. two minor children J.M., A Minor (Mcnulty),
c/o Jamal K. Alsaffar
jalsaffar@nationaltriallaw.com
Tom Jacob
tjacob@nationaltriallaw.com
Laurie M. Higginbotham
lhigginbotham@nationaltriallaw.com
Koby J. Kirkland
kkirkland@nationaltriallaw.com
7500 Rialto Blvd.
Bldg. Two, Suite 250
Austin, TX 78735
(512) 476-4346 Telephone
(512) 476-4400 Facsimile

and

Jason P. Steed
Kilpatrick Townsend & Stockton, LLP
2001 Ross Avenue, Suite 4400
Dallas, Texas 75201
214.922.7100 Telephone
*Plaintiffs in Consolidated Civil Action No. 5:18-cv-949*

Deborah Braden, Individually, and as Independent Executor of The Estate of Keith Allen Braden,
Elizabeth Braden, Individually and as a/n/f of Z.Z. a minor
Benjamin Corrigan, Independent Executor of The Estate of Robert Michael Corrigan, and Shani Corrigan,
Preston Corrigan,
Kara Boyd (Marshall),
Martina Pachal Individually and as Independent Administratrix of the Estate of Robert Scott Marshall and as Independent Executrix of the Estate of Karen Sue Marshall
Zachary Poston,
Jimmy Stevens, Independent Executor of The Estate of Peggy Lynn Stevens Warden,
Jennifer Racey (Warden)
Patsy McCain
c/o/Justin B. Demerath
jdemerath@808west.com

17

David Campbell
O'Hanlon, Demerath & Castillo, PC
808 West Ave.
Austin, Texas 78701
(512) 494-9949 Telephone
(512) 494-9919 Facsimile
akeeran@808west.com
*Plaintiffs in Consolidated Civil Action No. 5:19-cv-691*

Kati Wall
Michael Johnson, Individually and as Personal Representative of the Estate
of Dennis Johnson and the Estate of Sara Johnson and Dennis Johnson, Jr.,
Christopher Johnson, Deanna Staton and James Graham
c/o Jamal K. Alsaffar
jalsaffar@nationaltriallaw.com
Tom Jacob
tjacob@nationaltriallaw.com
Laurie M. Higginbotham
lhigginbotham@nationaltriallaw.com
Koby J. Kirkland
kkirkland@nationaltriallaw.com
7500 Rialto Blvd.
Bldg. Two, Suite 250
Austin, TX 78735
(512) 476-4346 Telephone
(512) 476-4400 Facsimile
*Plaintiffs in Consolidated Civil Action No. 5:18-cv-951*

Regina Amador, Individually, and as Independent Administratrix of The
Estate of Richard C. Rodriguez, Deceased A/K/A/ Ricardo Rodriguez,
Jose Rodriguez,
Guadalupe Rodriguez
c/o Daniel J.T. Sciano
Dsciano@Tsslawyers.com
Tinsman & Sciano, Inc.
10107 McAllister Freeway
San Antonio, Tx 78216
(210) 225-3121 Telephone
(210) 225-6235 Facsimile
*Plaintiffs in Consolidated Civil Action No. 5:18-cv-01151*

Farida Brown
c/o Erik A. Knockaert

Joseph M. Schreiber
Schreiber | Knockaert, PLLC
701 North Post Oak Rd., Suite 325
Houston, Texas 77024
281.949.8904 Telephone
281.949.8914 Facsimile
*Plaintiff in Consolidated Civil Action No. 5:19-cv-184*

Margaret Mckenzie
c/o Jamal K. Alsaffar
jalsaffar@nationaltriallaw.com
Tom Jacob
tjacob@nationaltriallaw.com
Laurie M. Higginbotham
lhigginbotham@nationaltriallaw.com
7500 Rialto Blvd.
Bldg. Two, Suite 250
Austin, TX 78735
(512) 476-4346 Telephone
(512) 476-4400 Facsimile
*Plaintiff in Consolidated Civil Action No. 19-cv-00715*

Kris Workman
c/o Brett T. Reynolds
Brett Reynolds & Associates, P.C.
1250 N.E. Loop 420, Suite 420
San Antonio, Texas 78219
210.805.9799
*Plaintiff in Consolidated Civil Action No. 5:19-cv-00506*

David Colbath
c/o Brett T. Reynolds
Brett Reynolds & Associates, P.C.
1250 N.E. Loop 420, Suite 420
San Antonio, Texas 78219
210.805.9799
*Plaintiff in Consolidate Civil Action No. 5:19-cv-678*

Kyle Workman
Morgan Harris
c/o Brett T. Reynolds
Brett Reynolds & Associates, P.C.
1250 N.E. Loop 420, Suite 420

19

San Antonio, Texas 78219
210.805.9799
*Plaintiff in Consolidate Civil Action No. 5:19-cv-705*

**d.   Plaintiffs name the Defendant herein, as well as its agents, representatives, and/or employees or former agents, representatives, or employees, as persons with knowledge of relevant facts.  Plaintiffs further name the Defendant, as well as its agents, representatives, and/or employees or former agents, representatives, or employees, as persons from whom expert testimony may be elicited regarding liability, causation and/or damages, although Plaintiffs do not necessarily vouch for all the opinion testimony of such persons.  Plaintiffs refer you to the Department of Defense Inspector General reports from 2018, 2017, 2014, and 2015; Defendant's discovery documents; deposition testimony; documents produced by Defendant; and related medical records for the subject matter, facts known, and opinions and impressions of these witnesses.**

Heather Wilson
Secretary of the Air Force

Deborah Lee James
Secretary of the Air Force

Col. Kirk Stabler
Air Force Commander
Headquarters Air Force Office of Special Investigations
Quantico, Virginia

Brig. General Andrea Tullos
Air Force Director
Director of Security Forces
DCS/Logistics, Engineering & Force Protection
Department of the Air Force
Washington, D.C.

Director of Special Investigations
Department of the Air Force
Washington, D.C.

HQ Air Force Office of Special Investigations
Department of the Air Force
Superintendent, IT Integrations HQ AFOSI
Quantico, Virginia

Department of the Air Force
HQ USAF
Washington, D.C.
Deputy Director of Security Forces
DCS/Logistics, Installations & Missions Support

Defense Human Resources Activity
Headquarters
Pamela Mitchell, Director
4800 Mark Center Drive, Suite 06J25-01
Alexandria, VA 22350-4000

Department of the Air Force
HQ Air Force Office of Special Investigations
Quantico, VA
Brigadier General, Keith Givens
USAF Commander

Department of Defense
Under Secretary of Defense for Intelligence
Deputy Chief Management Officer

Department of Defense
Military Criminal Investigative Organizations (MCIOs)
        Commanders, Officers, supervisors and employees
Defense Criminal Investigative Organizations (DCIOs)
        Commanders, Officers, supervisors and employees


Air Force 49th Security Forces Squadron
Confinement Facility
Commanders, Officers, supervisors, employees

Air Force Office of Special Investigations
Commanders, Vice-Commanders, Officers, supervisors, employees

Air Force Security Forces Squadron
Holloman Air Force Base
Commanders, Officers, supervisors, employees
Cmdr. Nathan McLeod-Hughes

Air Force 49th Logistics Readiness Squadron

Commanders, Officers, supervisors, employees

Air Force Detachment 225, Office of Special Investigations
Commanders, Officers, Special Agents, supervisors, employees

Air Force Article 32 Investigating Officers

Naval Consolidated Brig
Miramar, California
Commanders, Officers, supervisors, employees
General David Goldfein
Air Force Chief of Staff

General Stephen Wilson
Air Force Vice Chief of Staff

Lt. General Gina Grosso
Air Force Deputy Chief of Staff, Manpower, Personnel & Services

Lt. General John Raymond
Air Force Deputy Chief of Staff, Operations

Lt. General John Cooper, Deputy Chief of Staff, Operations

Air Force Holloman Air Force Base Mental Health Clinic

Defense Incidence-Based Reporting System
Commanders, Officers, supervisors, employees

Peak Behavioral Health Services
5055 McNutt Rd.
Santa Teresa, NM 88008

Sunland Park Police Department
1000 McNutt Rd
Sunland Park, NM 88063

**e.  Regarding experts who may be called to testify at the trial in this case, please refer to Plaintiffs' Designation of Experts and any amendments or supplements thereto for additional information regarding the facts known to these witnesses and the bases of their opinions.  These expert designations will be made at the time required by the Court's Scheduling Order. Please also refer to**

**the sworn testimony and written reports of these witnesses for further information regarding the facts known to and opinions held by these witnesses.**

> **f.   Plaintiffs cross-identify as expert witnesses any person named or to be named by Defendant as a person having expert knowledge about any facts surrounding any issues relevant to the incident in question as expert witnesses who Plaintiffs reserve the right to call live at the trial of the cause.  Plaintiffs reserve the right to call such persons as expert witnesses, whether or not the designation is subsequently withdrawn.  Plaintiffs do not have any control over any such witness, nor do they have any superior right to ascertain the subject matter on which any such witness may testify and/or opinions held by any such witness, beyond the information disclosed in deposition testimony and/or by Defendant's discovery responses.   In that regard, Plaintiffs refer you to Defendant's discovery documents, deposition testimony, and documents produced by Defendant for the subject matter, facts known, and opinions and impressions of these witnesses.  Plaintiffs reserve the right to obtain opinion testimony from any such witness within their area of expertise as related to this case.**

(ii)   A copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment;

Exhibit 1 – Inspector General, US Department of Defense, Evaluation of the Defense Criminal Investigative Organizations' Defense Incident-Based Reporting System Reporting and Reporting Accuracy, October 29, 2014 (Bates #19-706-000001 – 19-706-000040)

Exhibit 2 – Inspector General, US Department of Defense, Evaluation of the Defense Compliance with Criminal History Data Reporting Requirements, February 12, 2015 (Bates #19-706-000041 – 19-706-000076)

Exhibit 3 – Inspector General, US Department of Defense, Evaluation Fingerprint Card and Final Disposition Report Submissions by Military Service Law Enforcement Organizations, December 4, 2017 (Bates #19-706-000077 – 19-706-000168)

Exhibit 4 – Inspector General, US Department of Defense, Report of Investigation into the United States Air Force's Failure to Submit Devin Kelley's Criminal History Information to the Federal Bureau of Investigation, December 6, 2018 (Bates #19-706-000169 – 19-706-000306)

Exhibit 5 –Department of Defense Directive Number 7730.47, October 15, 1996 (Bates #19-706-000307 – 19-706-000315)

Exhibit 6 –Department of Defense Manual Number 7730.47-M Volume 1, December 7, 2010 (Bates #19-706-000316 – 19-706-000398)

Exhibit 7 –U.S. Department of Defense Press Operations, DoD launches review of Devin P. Kelley criminal record notification, Release No. NR-382-17, November 6, 2017 (Bates #19-706-000399)

Exhibit 8 – National Instant Criminal Background Check System Indices (Bates #19-706-000400 – 19-706-000401)

Exhibit 9 – U.S. Air Force article, AF Implements Changes to Improve Law Enforcement Database Reporting, November 28, 2017 (Bates #19-706-000402)

Exhibit 10 – U.S. Air Force tweet November 9, 2017 (Bates #19-706-000403)

Exhibit 11 – Report to the Committee on the Judiciary United States Senate from The Honorable Heather Wilson, Secretary of the Air Force, December 6, 2017 (Bates #19-706-000404 – 19-706-000405)

Exhibit 12 – Questions for the Record for Secretary of the United States Air Force Heather Wilson, December 13, 2017 (Bates #19-706-000406 – 19-706-000410)

Exhibit 13 – Misdemeanor Crimes of Domestic Violence (Bates #19-706-000411 - 19-706-000412)

Exhibit 14 –Devin Kelley Trial Transcript (Bates #19-706-000413 – 19-706-1022)

Exhibit 15 - El Paso Incident Report, June 7, 2012 (Bates #19-706-001023 – 19-706-001028)

Exhibit 16 – Devin Kelley Court Martial Order (Bates #19-706-001029 – 19-706-001034)

Exhibit 17 – Statement of Danielle Kelley (Bates #19-706-001035)

Exhibit 18 – Devin Kelley Autopsy Report (Bates #19-706-001036 – 19-706-001047)

Exhibit 19 – Life Expectancy Tables (Bates #19-706-1048 – 19-706-1111)

Exhibit 20 – Family Photographs (Bates #19-706-001112 – 19-706-001134)

Exhibit 21 – Photographs of First Baptist Church Memorial (Bates #19-706-001135 - 19-706-001278)

Exhibit 22 – Dalia Lookingbill – Payment Records (Bates #19-706-001279 - 19-706-001332)

Exhibit 23 – Dalia Lookingbill – Prescription Records (Bates #19-706-001333 - 19-706-001334)

Exhibit 24 – R.T. Birth Certificate (Bates #19-706-001335)

Exhibit 25 – R.T. Educational Records (Bates #19-706-001336 - 19-706-001351)

Exhibit 26 – R.T. Guardianship Documents (Bates #19-706-001352 - 19-706-001356)

Exhibit 27 – E.G. Death Certificate (Bates #19-706-001357)

Exhibit 28 – E.G. Funeral Home Documents (Bates #19-706-001358 - 19-706-001361)

Exhibit 29 – E.G. Dependent Administration Documents (Bates #19-706-001362 - 19-706-001363)

In addition, Plaintiffs are in the possession of the materials maintained by the Texas Rangers related to the incident.  In obtaining these materials, Plaintiffs entered into an agreement with the Texas Attorney General regarding their release.  Further, Plaintiffs are also in possession of the materials maintained by the Wilson County Attorney, Tom Caldwell related to the incident.  In obtaining these materials, Plaintiffs entered into an agreement with the Wilson County Attorney, Tom Caldwell regarding their release.  As such, Plaintiffs will discuss the terms of this agreement with Defendant prior to releasing these materials.

(iii)   A computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered;

Discovery is still in its early stages and it is premature for Plaintiffs to respond to this disclosure; however, please see Plaintiffs' Original Complaint(s) and any and all amendments thereto for the categories of damages sought by Plaintiffs.   Please refer also to Plaintiffs' administrative claims filed with the Government for the maximum amount of damages sought by Plaintiffs in this case.   Please refer to the sworn deposition testimony in this case. Please also refer to Plaintiffs' Designation of Experts and any amendments or supplements thereto for additional information regarding the facts known to these witnesses and the bases of their opinions.  These expert designations will be made at the time required by the Court's Scheduling Order. Please also refer to the sworn testimony and written reports of these witnesses for further information regarding the facts known to and opinions held by these witnesses.

(iv)  For inspection and copying as under Rule 34, any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment.

Not applicable.

Respectfully Submitted,

**THE WEBSTER LAW FIRM**

**By:** */s/ Jason C. Webster*
JASON C. WEBSTER
State Bar No. 24033318
HEIDI O. VICKNAIR
State Bar No. 24046557
OMAR R. CHAWDHARY
State Bar No. 24082807
6200 Savoy, Suite 150
Houston, TX 77036
(713) 581-3900 (telephone)
(713) 581-3907 (telecopier)
filing@thewebsterlawfirm.com

**&**

26

**THE HERRERA LAW FIRM**
Frank Herrera, Jr.
State Bar No. 09531000
Jorge A. Herrera
State Bar No.24044242
111 Soledad St., 19th Floor San Antonio, Texas
78205 210-224-1054
jherrera@herreralaw.com

**ATTORNEYS FOR PLAINTIFFS**
**DALIA LOOKINGBILL, INDIVIDUALLY AND AS GUARDIAN OF THE PERSON AND ESTATE OF R.T., A MINOR AND AS REPRESENTATIVE OF THE ESTATE OF E.G.**

## Certificate of Service

I certify that the foregoing was served on June 27, 2019, via email service and certified mail, return receipt requested, on the following counsel for the United States.

/s/ Jason Webster
Jason Webster

PAUL DAVID STERN
Trial Attorney, Torts Branch
United States Dept. of Justice
Civil Division
United States Department of Justice
P.O. Box 888
Benjamin Franklin Station
Washington, D.C. 20004
T: (202) 616-2197
Paul.David.Stern@usdoj.gov

STEPHEN E. HANDLER
Senior Trial Counsel, Torts Branch
United States Dept. of Justice
Civil Division
United States Department of Justice
P.O. Box 888
Benjamin Franklin Station
Washington, D.C. 20004
T: (202) 616-2197
Stephen.Handler@usdoj.gov



IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| Joe Holcombe, *et al.*,<br>    Plaintiffs,<br><br>v.<br><br>United States of America,<br>    Defendant. | Civil Action No. 5:18-cv-555-XR<br><br>*Consolidated with*:<br> Nos. 5:18-cv-712-XR; 5:18-cv-881-XR;<br> 5:18-cv-944-XR; 5:18-cv-949-XR;<br> 5:18-cv-951-XR; 5:18-cv-1151-XR;<br> 5:19-cv-184-XR; 5:19-cv-289;<br> 5:19-cv-506 XR; 5:19-cv-678;<br> 5:19-cv-691-XR; 5:19-cv-705;<br> 5:19-cv-706-XR; 5:19-cv-715-XR |

## PLAINTIFFS', ROSANNE SOLIS AND JOAQUIN RAMIREZ, INITIAL DISCLOSURES PURSUANT TO RULE 26(A)(1)

(i)    The name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment;

**a.   Plaintiffs hereby designate as persons with knowledge the health care providers referenced in the related health care records in this case, including physicians, technicians, nurses, radiologists, physician's assistants, physical therapists, clinics, hospitals, pharmacies, and their agents, representatives, and employees.  While these health care providers are not within the control of Plaintiffs and have not been retained by Plaintiffs as expert witnesses, Plaintiffs reserve the right to elicit opinion testimony from any such health care provider, including expert testimony regarding liability, causation, and damages from those treating healthcare providers relating to the medical treatment provided to the Plaintiffs. To the extent it is necessary to call live at the trial or by deposition in this cause any agents, representatives, employees and/or custodian of records for any of the following health care providers, Plaintiffs identify any such custodian as a person who may have expert knowledge regarding issues related to the incident in question to include personal knowledge of the records and concerning the necessity of services rendered and referenced in the records and concerning the reasonableness of**

1

the medical bills charged and referenced in the records of the following health care providers.  For the mental impressions held by and the opinions of and facts known by any of the following witnesses, please refer to the related health care records of the Plaintiffs.

Acadian Ambulance
105 Auditorium Cir
San Antonio, TX 78205
Agents, servants and employees, including but not limited to:
Jessica Martinez, technician

Camino Real Floresville
1005 B Street
Floresville, TX 78114
Agents, servants and employees, including but not limited to:
Jacinto Ybarra, LCSW

South Texas Spinal Clinic
9150 Huebner Road
San Antonio, Texas 78240-1558
Agents, servants and employees, including but not limited to:
Deborah Guerra, NP
John Cadrain, PA

Connally Memorial Medical Center
499 10th Street
Floresville, TX 78114"
Agents, servants and employees, including but not limited to:
Kenneth Kingdon, MD

University Hospital
4502 Medical Drive
San Antonio, TX 78229

Gonzaba Medical Group
730 Pleasanton Rd
San Antonio, TX 78214-1306
Agents, servants and employees, including but not limited to:
Gabriel Urrea-Botero, MD
Brad Smith, DC

Atascosa Health Center
310 W Oaklawn Rd
Pleasanton, TX 78064

**b.  Plaintiffs identify themselves as persons with knowledge of relevant facts pertaining to the incident in question:**

Rosanne Solis
Joaquin Ramirez
c/o Jamal Alsaffar
Whitehurst, Harkness, Brees, Cheng, Alsaffar,
 Higginbotham, & Jacob, PLLC
7500 Rialto Blvd., Bldg. Two
Suite 250
Austin, TX 78735

**c.  Plaintiffs identify the following family members, friends, and other persons as persons with knowledge of relevant facts:**

Academy Sports + Outdoors in San Antonio
> Kelley bought a Ruger 5.56 mm assault rifle from Academy Sports + Outdoors in San Antonio after clearing a background check of the NICS. Store personnel will have knowledge of the transaction.

El Paso Police
Headquarters:
911 N. Raynor
El Paso, TX 79903
(915) 212-4000
> The El Paso police apprehended Kelley after he escaped. See Exhibit 15.

First Baptist Church of Sutherland Springs, Texas
Frank Pomeroy, Pastor
First Baptist Church
216 4th Street
Sutherland Springs, Texas 78161
> This is the church where the shooting occurred. The pastor was not there that morning, but on information and belief lost his daughter and many beloved friends in the massacre. He will have knowledge of their community and relationships and the impact of the shooting.

Danielle Shield Kelley
> Married to Airman Devin Kelley at the time of the church shooting.

Tessa Kelley (nee' Loge)
> Married to Airman Devin Kelley while he was in the Air Force and reported him for abuse to herself and infant child.

Johnnie Langendorff
Stephen Willeford
> Stephen Willeford confronted Kelley and chased him away from the church. Johnnie Langendorff stopped his vehicle to pick up Mr. Willeford and give chase.

Steve Moore
Wilson County Sheriff's Department
> Investigator

Harold Schott, Justice of the Peace Pct. #3
Wilson County

Terry Snyder
Texas Ranger Division
Texas Department of Public Safety
6100 Guadalupe Street, Building E
Austin, TX 78752
> Investigator and Custodian of Records

Sunland Park Police Department
1000 McNutt Rd
Sunland Park, NM 88063

Tanya Wood

 

   d.  Plaintiffs name the Defendant herein, as well as its agents, representatives, and/or employees or former agents, representatives, or employees, as persons with knowledge of relevant facts.  Plaintiffs further name the Defendant, as well as its agents, representatives, and/or employees or former agents, representatives, or employees, as persons from whom expert testimony may be elicited regarding liability, causation and/or damages, although Plaintiffs do not necessarily vouch for all the opinion testimony of such persons.  Plaintiffs refer you to the Department of Defense Inspector General reports from 2018, 2017, 2014, and 2015; Defendant's discovery documents; deposition testimony; documents produced by Defendant; and related medical records for the subject matter, facts known, and opinions and impressions of these witnesses.

 

Air Force personnel

Air Force personnel are expected to have knowledge of Kelley's conduct in the Air Force and mental problems, including but not limited to his attempt to bring weapons onto the base to kill officers.

Additional Air Force personnel are provided below:
Air Force spokesperson, Ann Stefanek. On November 28, 2017, an Air Force spokesperson, Ann Stefanek, admitted that the failure to follow Pentagon guidelines to report Kelley's crimes to the FBI was "not an isolated incident and similar reporting lapses occurred at other locations."

Heather Wilson
Secretary of the Air Force

Deborah Lee James
Secretary of the Air Force

Col. Kirk Stabler
Air Force Commander
Headquarters Air Force Office of Special Investigations
Quantico, Virginia

Brig. General Andrea Tullos
Air Force Director
Director of Security Forces
DCS/Logistics, Engineering & Force Protection
Department of the Air Force
Washington, D.C.

Director of Special Investigations
Department of the Air Force
Washington, D.C.

HQ Air Force Office of Special Investigations
Department of the Air Force
Superintendent, IT Integrations HQ AFOSI
Quantico, Virginia

Department of the Air Force
HQ USAF
Washington, D.C.

Deputy Director of Security Forces
DCS/Logistics, Installations & Missions Support

Defense Human Resources Activity
Headquarters
Pamela Mitchell, Director
4800 Mark Center Drive, Suite 06J25-01
Alexandria, VA 22350-4000

Department of the Air Force
HQ Air Force Office of Special Investigations
Quantico, VA
Brigadier General, Keith Givens
USAF Commander

Department of Defense
Under Secretary of Defense for Intelligence
Deputy Chief Management Officer

Department of Defense
Military Criminal Investigative Organizations (MCIOs)
        Commanders, Officers, supervisors and employees
Defense Criminal Investigative Organizations (DCIOs)
        Commanders, Officers, supervisors and employees

Office of Inspector General for the DOD

The Office of Inspector General for the DOD has issued four reports
investigating and detailing the failures of the Air Force and
Department of Defense, including negligence, negligent training,
and negligent supervision. See attached reports:

Report No. DODIG-2019-030, Inspector General U.S. Department
of Defense, Dec. 6, 2018, Report of Investigation into the United
States Air Force's Failure to Submit Devin Kelley's Criminal History
Information to the Federal Bureau of Investigation; see id. at p. 117,
"The USAF concurred with this report and its recommendations."
https://www.dodig.mil/reports.html/Article/1707300/reportof-
investigation-into-the-united-states-air-forces-failure-to-submit-
dev/

Report No. DODIG-2018-035, Inspector General U.S. Department of
Defense, Dec. 4, 2017, *Evaluation of Fingerprint Card and Final
Disposition Report Submissions by Military Service Law Enforcement
Organizations*.
https://www.dodig.mil/reports.html/Search/DODIG-2018-035/

The DOD concluded that training on the submission of fingerprints and final disposition reports was ineffective and lacking, both for AFOSI Detachment 225 and the 49th Security Forces Squadron, and "there was no valid reason for the USAF's failures". *See* p. 111-112; *see also* p. 96-98 (noting "training did not provide instructions on when or how to submit either the fingerprint card or the final disposition report to the FBI CJIS Division"). Indeed, the DOD "determined that this failure to submit Kelley's fingerprints was part of a systemic problem in AFOSI Detachment 225." See p. 94. Worse, the case agent was actually deployed for seven months during the investigation and reported that he complained he could not do his job, stating, "Boss, I'm burnt out, I'm so burnt out." "Boss, I want to get out. I can't do this anymore."

Report No. DODIG-2015-081, Inspector General U.S. Department of Defense, February 12, 2015, *Evaluation of Department of Defense Compliance with Criminal History Data Reporting Requirements*

Report No. DODIG-2015-011, Inspector General U.S. Department of Defense, October 29, 2014, *Evaluation of the Defense Criminal Investigative Organizations' Defense Incident-Based Reporting System Reporting and Reporting Accuracy*

Air Force 49th Security Forces Squadron and its investigators, Military Law Enforcement Officers (LEOs), or AFSFC Police Services Branch Confinement Facility

Commanders, Officers, supervisors, employees
The 49th Security Forces Squadron investigated Airman Kelley. The 49th Security Forces squadron investigators and/or Military Law Enforcement Officers (LEOs) had responsibilities to gather fingerprints and report, and thus will have knowledge of their responsibilities, training, and failures. The December 6, 2018, the Inspector General of the DOD issued a 131-page Report titled, *Investigation into the United States Air Force's Failure to Submit Devin Kelley's Criminal History Information to the Federal Bureau of Investigation* concluding that training on the submission of fingerprints and final disposition reports was ineffective and lacking, both for AFOSI Detachment 225 and the 49th Security Forces Squadron, and "there was no valid reason for the USAF's failures". *See* p. 111-112; *see also* p. 96-98 (noting "training did not provide instructions on when or how to submit either the fingerprint card or the final disposition report to the FBI CJIS Division"). Air Force Office of Special Investigations

AFSFC Police Services Branch training focused on collection of fingerprints, but failed to address submitting fingerprint cards and final disposition reports to the FBI CJIS.  Their Management Internal Control Toolset (MICT) checklist items are supposed to be monitored and assessed as part of the installation commander's self-inspection program.  Monthly supervisory reviews were "incomplete and ineffective. *See* Report No. DODIG-2019-030 p. 110.

Airman Kelley's Air Force Commander

Kelley's Commander issued a no contact order and has knowledge of Kelley's conduct and training in the Air Force.

Airman Kelley's Air Force Commander

Kelley's Commander issued a no contact order, prepared a confinement package stating that he was "convinced" that Kelley was "dangerous and likely to harm someone if released", and has knowledge of Kelley's conduct and training in the Air Force.

Kelley's former Supervisor in the Air Force

Kelley sent a threatening Facebook message to his former supervisor in the Air Force after his discharge.  She will have knowledge of Kelley's conduct and condition and threats.

Case Agent responsible for Airman Kelley

The Case Agent will have knowledge for the reasons he could not properly report Kelley to the FBI, as detailed by the DOD's report.

Boss of Case Agent responsible for Airman Kelley

The boss of the Case Agent will have knowledge for the reasons the Case Agent could not properly report Kelley to the FBI, as detailed by the DOD's report.

Peak Behavioral Health Services and Xavier Alvarez
5055 McNutt Rd.
Santa Teresa, NM 88008

Peak Behavioral Health Services (PBHS) had a program for military personnel and diagnosed Kelley with various mental and emotional disorders. On information and belief, this is the facility from which

Kelley attempted to buy guns to kill his commanding officers, and the facility that Kelley escaped from and fled to El Paso.

According to an El Paso police report, police were informed that Kelley "was a danger to himself and others as he had already been caught sneaking firearms onto Holloman Air Force Base". Police were further advised that Airman Kelley "suffered from mental disorders" and that he "was attempting to carry out death threats" against "his military chain of command." Xavier Alvarez, who worked for Peak Behavioral and who reported Kelley to police for the escape, later confirmed to NBC News that Kelley "verbalized that he wanted to get some kind of retribution to his chain of command." Other patients reported that Kelley was doing something suspicious on computers, and the military found that Kelley was "ordering weapons and tactical gear and magazines to a P.O. Box in San Antonio." Alvarez was quoted as saying, "This kid – he was hollow," and "I could never reach him."

Air Force Security Forces Squadron
Holloman Air Force Base

Commanders, Officers, supervisors, employees
Cmdr. Nathan McLeod-Hughes

Air Force 49th Logistics Readiness Squadron
Commanders, Officers, supervisors, employees

Air Force Detachment 225 and/or Holloman Air Force Base Office of Special Investigations

Commanders, Officers, Special Agents, supervisors, employees AFOSI Detachment 225 and/or Holloman Air Force Base Office of Special Investigation had responsibilities to gather fingerprints and report, and thus will have knowledge of their responsibilities, training, and failures. The December 6, 2018, the Inspector General of the DOD issued a 131-page Report titled, Investigation into the United States Air Force's Failure to Submit Devin Kelley's Criminal History Information to the Federal Bureau of Investigation concluding that training on the submission of fingerprints and final disposition reports was ineffective and lacking, both for AFOSI Detachment 225 and the 49th Security Forces Squadron, and "there was no valid reason for the USAF's failures". See p. 111-112; see also p. 96-98 (noting "training did not provide instructions on when or how to submit either the fingerprint card or the final disposition report to the FBI CJIS Division").

Although AFOSI policy required supervisory reviews to include both I2MS and the investigative case file (record copy), the AFOSI Detachment 225 SAIC and Superintendent focused their reviews on the I2MS activities and not on investigative case files" *See* p. 89. "In sum, we concluded that AFOSI Detachment 225 monthly supervisory reviews of Kelley's investigative case file were incomplete and ineffective".

Air Force Article 32 Investigating Officers

Air Force Prosecutors
Air Force prosecutors gathered evidence and handled the conviction of Airman Kelley, and thus have knowledge of his conduct and disposition.

Naval Consolidated Brig
Miramar, California
Commanders, Officers, supervisors, employees

General David Goldfein
Air Force Chief of Staff

General Stephen Wilson
Air Force Vice Chief of Staff

Lt. General Gina Grosso
Air Force Deputy Chief of Staff, Manpower, Personnel & Services

Lt. General John Raymond
Air Force Deputy Chief of Staff, Operations

Lt. General John Cooper, Deputy Chief of Staff, Operations

Air Force Holloman Air Force Base Mental Health Clinic
HAFB Mental Health Clinic had custody of Kelley in the Air Force

Defense Incidence-Based Reporting System
Commanders, Officers, supervisors, employees

**e. Regarding experts who may be called to testify at the trial in this case, please refer to Plaintiffs' Designation of Experts and any amendments or supplements thereto for additional information regarding the facts known to these witnesses and the bases of their opinions. These expert designations will be made at the time required by the Court's Scheduling Order. Please also**

refer to the sworn testimony and written reports of these witnesses for further information regarding the facts known to and opinions held by these witnesses.

f.   Plaintiffs cross-identify as expert witnesses any person named or to be named by Defendant as a person having expert knowledge about any facts surrounding any issues relevant to the incident in question as expert witnesses who Plaintiffs reserve the right to call live at the trial of the cause.  Plaintiffs reserve the right to call such persons as expert witnesses, whether or not the designation is subsequently withdrawn.  Plaintiffs do not have any control over any such witness, nor do they have any superior right to ascertain the subject matter on which any such witness may testify and/or opinions held by any such witness, beyond the information disclosed in deposition testimony and/or by Defendant's discovery responses.  In that regard, Plaintiffs refer you to Defendant's discovery documents, deposition testimony, and documents produced by Defendant for the subject matter, facts known, and opinions and impressions of these witnesses.  Plaintiffs reserve the right to obtain opinion testimony from any such witness within their area of expertise as related to this case.

(ii)   A copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment;

Plaintiffs refer Defendant to Exhibits 1–19 which have been identified and separately served on Defendant as exhibits to the disclosures of Plaintiffs McNulty and incorporated by reference into these disclosures.

In addition, Plaintiffs identify the following exhibits:

Exhibit 43 – Acadian Ambulance medical records of Rosanne Solis (Bates #19-714-1 – 19-714-8)

Exhibit 44 – Connally Memorial Hospital medical records of Rosanne Solis (Bates #19-714-9 – 19-714-45)

Exhibit 45 – Gonzaba Medical Group medical records of Rosanne Solis (Bates #19-714-46 – 19-714-71)

Exhibit 46– South Texas Spinal Clinic medical records of Rosanne Solis

(Bates #19-714-72 – 19-714-137)

Exhibit 47 – Camino Real medical records of Rosanne Solis (Bates #19-714-138 – 19-714-170)

Exhibit 48 – Connally Memorial Hospital medical records of Joaquin Ramirez (Bates #19-714-171 – 19-714-194)

Exhibit 49 – Gonzaba Medical Group medical records of Joaquin Ramirez (Bates #19-714-195 – 19-714-221)

Exhibit 50 – Gonzaba Medical Group billing records of Joaquin Ramirez (Bates #19-714-222 – 19-714-223)

Exhibit 51– Photographs, Solis and Ramirez (Bates #19-714-224 – 19-714-227)

In addition, Plaintiffs are in the possession of the materials maintained by the Texas Rangers related to the incident.  In obtaining these materials, Plaintiffs entered into an agreement with the Texas Attorney General regarding their release.  As such, Plaintiffs will discuss the terms of this agreement with Defendant prior to releasing these materials.

(iii)    A computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered;

Discovery is still in its early stages and it is premature for Plaintiffs to respond to this disclosure; however, please see Plaintiffs' Original Complaint(s) and any and all amendments thereto for the categories of damages sought by Plaintiffs. Please refer also to Plaintiffs' administrative claims filed with the Government for the maximum amount of damages sought by Plaintiffs in this case.  Please refer to the sworn deposition testimony in this case. Please also refer to Plaintiffs' Designation of Experts and any amendments or supplements thereto for additional information regarding the facts known to these witnesses and the bases of their opinions.  These expert designations will be made at the time required by the Court's Scheduling Order. Please also refer to the sworn testimony and written reports of these witnesses for further information regarding the facts known to and opinions held by these witnesses.

(iv)   For inspection and copying as under Rule 34, any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment.

Not applicable.

Respectfully Submitted,

/s/ Jamal K. Alsaffar
**JAMAL K. ALSAFFAR**
   jalsaffar@nationaltriallaw.com
   Texas State Bar #2402719
**LAURIE HIGGINBOTHAM**
   lhigginbotham@nationaltriallaw.com
   Texas State Bar # 50511759
**TOM JACOB**
   tjacob@nationaltriallaw.com
   Texas State Bar #24069981
**WHITEHURST, HARKNESS, BREES, CHENG, ALSAFFAR, HIGGINBOTHAM, & JACOB P.L.L.C.**
   7500 Rialto Blvd, Bldg. Two, Ste 250
   Austin, TX 78735
   (512) 476-4346 (o)
   (512) 467-4400 (f)

Attorneys for the Plaintiffs

13

**Certificate of Service**

I certify that the foregoing was served on June 27, 2019, via email service and certified mail, return receipt requested, on the following counsel for the United States.

/s/ Jamal Alsaffar
Jamal Alsaffar

PAUL DAVID STERN
Trial Attorney, Torts Branch
United States Dept. of Justice
Civil Division
United States Department of Justice
P.O. Box 888
Benjamin Franklin Station
Washington, D.C. 20004
T: (202) 616-2197
Paul.David.Stern@usdoj.gov

STEPHEN E. HANDLER
Senior Trial Counsel, Torts Branch
United States Dept. of Justice
Civil Division
United States Department of Justice
P.O. Box 888
Benjamin Franklin Station
Washington, D.C. 20004
T: (202) 616-2197
Stephen.Handler@usdoj.gov



IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

Joe Holcombe, *et al.*,
    Plaintiffs,

v.

United States of America,
    Defendant.

Civil Action No. 5:18-cv-555-XR

*Consolidated with*:
  Nos. 5:18-cv-712-XR; 5:18-cv-881-XR;
  5:18-cv-944-XR; 5:18-cv-949-XR;
  5:18-cv-951-XR; 5:18-cv-1151-XR;
  5:19-cv-184-XR; 5:19-cv-289;
  5:19-cv-506 XR; 5:19-cv-678;
  5:19-cv-691-XR; 5:19-cv-705;
  5:19-cv-706-XR; 5:19-cv-715-XR

## PLAINTIFF MARGARET MCKENZIE'S INITIAL DISCLOSURES PURSUANT TO RULE 26(A)(1)

(i)    The name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment;

    **a.  Plaintiff hereby designates as persons with knowledge the health care providers referenced in the related health care records in this case, including physicians, technicians, nurses, radiologists, physician's assistants, physical therapists, clinics, hospitals, pharmacies, and their agents, representatives, and employees.  While these health care providers are not within the control of Plaintiff and have not been retained by Plaintiff as expert witnesses, Plaintiff reserves the right to elicit opinion testimony from any such health care provider, including expert testimony regarding liability, causation, and damages from those treating healthcare providers relating to the medical treatment provided to the Plaintiff. To the extent it is necessary to call live at the trial or by deposition in this cause any agents, representatives, employees and/or custodian of records for any of the following health care providers, Plaintiff identifies any such custodian as a person who may have expert knowledge regarding issues related to the incident in question to include personal knowledge of the records and concerning the necessity of services rendered and referenced in the records and concerning the reasonableness of**

1

the medical bills charged and referenced in the records of the following health care providers.  For the mental impressions held by and the opinions of and facts known by any of the following witnesses, please refer to the related health care records of the Plaintiff.

> Brooke Army Medical Center
> 3551 Roger Brooke Dr. #211
> Ft Sam Houston, TX 78234
> 210-916-8563
>
> St. Peters Health Partners Medical Associates
> 15 Maple Dell
> Saratoga Springs, NY 12866
> 518-583-7400
> Agents, servants and employees, including but not limited to:
> > Tammy Wheeler, PA-C
>
> Kindred at Home
> 100 Saratoga Village Blvd, #5
> Malta, NY
> 518- 899-1158
>
> Saratoga County Mental Health
> 135 South Broadway
> Saratoga Springs, NY 12866
> Agents, servants and employees, including but not limited to:
> > Kelly Kolnick, LCSW
>
> Union Center
> 157 Lake Ave.
> Saratoga, NY 12866
> 518-584-8279
> Agents, servants and employees, including but not limited to:
> > Lee Nagel, Ph.D.

**b.  Plaintiff identifies herself as a person with knowledge of relevant facts pertaining to the incident in question:**

> Margaret McKenzie
> c/o Jamal Alsaffar
> Whitehurst, Harkness, Brees, Cheng, Alsaffar,
>  Higginbotham, & Jacob, PLLC
> 7500 Rialto Blvd., Bldg. Two
> Suite 250

Austin, TX 78735

**c. Plaintiff identifies the following family members, friends, and other persons as persons with knowledge of relevant facts:**

Lisa McNulty
c/o Jamal Alsaffar
Whitehurst, Harkness, Brees, Cheng, Alsaffar,
  Higginbotham, & Jacob, PLLC
7500 Rialto Blvd., Bldg. Two
Suite 250
Austin, TX 78735

H.M., a minor
c/o Jamal Alsaffar
Whitehurst, Harkness, Brees, Cheng, Alsaffar,
  Higginbotham, & Jacob, PLLC
7500 Rialto Blvd., Bldg. Two
Suite 250
Austin, TX 78735

J.M., a minor
c/o Jamal Alsaffar
Whitehurst, Harkness, Brees, Cheng, Alsaffar,
  Higginbotham, & Jacob, PLLC
7500 Rialto Blvd., Bldg. Two
Suite 250
Austin, TX 78735

Academy Sports + Outdoors in San Antonio
    Kelley bought a Ruger 5.56 mm assault rifle from Academy Sports +
    Outdoors in San Antonio after clearing a background check of the
    NICS. Store personnel will have knowledge of the transaction.

El Paso Police
Headquarters:
911 N. Raynor
El Paso, TX 79903
(915) 212-4000
    The El Paso police apprehended Kelley after he escaped. See Exhibit
    15.

First Baptist Church of Sutherland Springs, Texas
Frank Pomeroy, Pastor
First Baptist Church

3

216 4th Street
Sutherland Springs, Texas 78161
> This is the church where the shooting occurred. The pastor was not there that morning, but on information and belief lost his daughter and many beloved friends in the massacre. He will have knowledge of their community and relationships and the impact of the shooting.

Danielle Shield Kelley
> Married to Airman Devin Kelley at the time of the church shooting.

Tessa Kelley (nee' Loge)
> Married to Airman Devin Kelley while he was in the Air Force and reported him for abuse to herself and infant child.

Johnnie Langendorff
Stephen Willeford
> Stephen Willeford confronted Kelley and chased him away from the church. Johnnie Langendorff stopped his vehicle to pick up Mr. Willeford and give chase.

Steve Moore
Wilson County Sheriff's Department
> Investigator

Harold Schott, Justice of the Peace Pct. #3
Wilson County

Terry Snyder
Texas Ranger Division
Texas Department of Public Safety
6100 Guadalupe Street, Building E
Austin, TX 78752
> Investigator and Custodian of Records

Sunland Park Police Department
1000 McNutt Rd
Sunland Park, NM 88063

Tanya Wood

**d. Plaintiff names the Defendant herein, as well as its agents, representatives, and/or employees or former agents, representatives, or employees, as persons with knowledge of relevant facts. Plaintiffs further**

name the Defendant, as well as its agents, representatives, and/or employees or former agents, representatives, or employees, as persons from whom expert testimony may be elicited regarding liability, causation and/or damages, although Plaintiffs do not necessarily vouch for all the opinion testimony of such persons.  Plaintiff refers you to the Department of Defense Inspector General reports from 2018, 2017, 2014, and 2015; Defendant's discovery documents; deposition testimony; documents produced by Defendant; and related medical records for the subject matter, facts known, and opinions and impressions of these witnesses.

Air Force personnel
Air Force personnel are expected to have knowledge of Kelley's conduct in the Air Force and mental problems, including but not limited to his attempt to bring weapons onto the base to kill officers.

Additional Air Force personnel are provided below:
Air Force spokesperson, Ann Stefanek. On November 28, 2017, an Air Force spokesperson, Ann Stefanek, admitted that the failure to follow Pentagon guidelines to report Kelley's crimes to the FBI was "not an isolated incident and similar reporting lapses occurred at other locations."

Heather Wilson
Secretary of the Air Force

Deborah Lee James
Secretary of the Air Force

Col. Kirk Stabler
Air Force Commander
Headquarters Air Force Office of Special Investigations
Quantico, Virginia

Brig. General Andrea Tullos
Air Force Director
Director of Security Forces
DCS/Logistics, Engineering & Force Protection
Department of the Air Force
Washington, D.C.

Director of Special Investigations
Department of the Air Force
Washington, D.C.

HQ Air Force Office of Special Investigations

Department of the Air Force
Superintendent, IT Integrations HQ AFOSI
Quantico, Virginia

Department of the Air Force
HQ USAF
Washington, D.C.

Deputy Director of Security Forces
DCS/Logistics, Installations & Missions Support

Defense Human Resources Activity
Headquarters
Pamela Mitchell, Director
4800 Mark Center Drive, Suite 06J25-01
Alexandria, VA 22350-4000

Department of the Air Force
HQ Air Force Office of Special Investigations
Quantico, VA
Brigadier General, Keith Givens
USAF Commander

Department of Defense
Under Secretary of Defense for Intelligence
Deputy Chief Management Officer

Department of Defense
Military Criminal Investigative Organizations (MCIOs)
        Commanders, Officers, supervisors and employees
Defense Criminal Investigative Organizations (DCIOs)
        Commanders, Officers, supervisors and employees

Office of Inspector General for the DOD

> The Office of Inspector General for the DOD has issued four reports
> investigating and detailing the failures of the Air Force and
> Department of Defense, including negligence, negligent training,
> and negligent supervision. See attached reports:
>
> Report No. DODIG-2019-030, Inspector General U.S. Department
> of Defense, Dec. 6, 2018, Report of Investigation into the United
> States Air Force's Failure to Submit Devin Kelley's Criminal History
> Information to the Federal Bureau of Investigation; see id. at p. 117,
> "The USAF concurred with this report and its recommendations."

https://www.dodig.mil/reports.html/Article/1707300/reportof-investigation-into-the-united-states-air-forces-failure-to-submit-dev/

Report No. DODIG-2018-035, Inspector General U.S. Department of Defense, Dec. 4, 2017, *Evaluation of Fingerprint Card and Final Disposition Report Submissions by Military Service Law Enforcement Organizations.*
https://www.dodig.mil/reports.html/Search/DODIG-2018-035/

The DOD concluded that training on the submission of fingerprints and final disposition reports was ineffective and lacking, both for AFOSI Detachment 225 and the 49th Security Forces Squadron, and "there was no valid reason for the USAF's failures". *See* p. 111-112; *see also* p. 96-98 (noting "training did not provide instructions on when or how to submit either the fingerprint card or the final disposition report to the FBI CJIS Division"). Indeed, the DOD "determined that this failure to submit Kelley's fingerprints was part of a systemic problem in AFOSI Detachment 225." See p. 94. Worse, the case agent was actually deployed for seven months during the investigation and reported that he complained he could not do his job, stating, "Boss, I'm burnt out, I'm so burnt out." "Boss, I want to get out. I can't do this anymore."

Report No. DODIG-2015-081, Inspector General U.S. Department of Defense, February 12, 2015, *Evaluation of Department of Defense Compliance with Criminal History Data Reporting Requirements*

Report No. DODIG-2015-011, Inspector General U.S. Department of Defense, October 29, 2014, *Evaluation of the Defense Criminal Investigative Organizations' Defense Incident-Based Reporting System Reporting and Reporting Accuracy*

Air Force 49th Security Forces Squadron and its investigators, Military Law Enforcement Officers (LEOs), or AFSFC Police Services Branch Confinement Facility

Commanders, Officers, supervisors, employees
The 49th Security Forces Squadron investigated Airman Kelley. The 49th Security Forces squadron investigators and/or Military Law Enforcement Officers (LEOs) had responsibilities to gather fingerprints and report, and thus will have knowledge of their responsibilities, training, and failures. The December 6, 2018, the Inspector General of the DOD issued a 131-page Report titled,

7

*Investigation into the United States Air Force's Failure to Submit Devin Kelley's Criminal History Information to the Federal Bureau of Investigation* concluding that training on the submission of fingerprints and final disposition reports was ineffective and lacking, both for AFOSI Detachment 225 and the 49th Security Forces Squadron, and "there was no valid reason for the USAF's failures". *See* p. 111-112; *see also* p. 96-98 (noting "training did not provide instructions on when or how to submit either the fingerprint card or the final disposition report to the FBI CJIS Division"). Air Force Office of Special Investigations

AFSFC Police Services Branch training focused on collection of fingerprints, but failed to address submitting fingerprint cards and final disposition reports to the FBI CJIS. Their Management Internal Control Toolset (MICT) checklist items are supposed to be monitored and assessed as part of the installation commander's self-inspection program. Monthly supervisory reviews were "incomplete and ineffective. *See* Report No. DODIG-2019-030 p. 110.

Airman Kelley's Air Force Commander

Kelley's Commander issued a no contact order and has knowledge of Kelley's conduct and training in the Air Force.

Airman Kelley's Air Force Commander

Kelley's Commander issued a no contact order, prepared a confinement package stating that he was "convinced" that Kelley was "dangerous and likely to harm someone if released", and has knowledge of Kelley's conduct and training in the Air Force.

Kelley's former Supervisor in the Air Force

Kelley sent a threatening Facebook message to his former supervisor in the Air Force after his discharge. She will have knowledge of Kelley's conduct and condition and threats.

Case Agent responsible for Airman Kelley

The Case Agent will have knowledge for the reasons he could not properly report Kelley to the FBI, as detailed by the DOD's report.

Boss of Case Agent responsible for Airman Kelley

8

The boss of the Case Agent will have knowledge for the reasons the Case Agent could not properly report Kelley to the FBI, as detailed by the DOD's report.

Peak Behavioral Health Services and Xavier Alvarez
5055 McNutt Rd.
Santa Teresa, NM 88008

Peak Behavioral Health Services (PBHS) had a program for military personnel and diagnosed Kelley with various mental and emotional disorders. On information and belief, this is the facility from which Kelley attempted to buy guns to kill his commanding officers, and the facility that Kelley escaped from and fled to El Paso.

According to an El Paso police report, police were informed that Kelley "was a danger to himself and others as he had already been caught sneaking firearms onto Holloman Air Force Base". Police were further advised that Airman Kelley "suffered from mental disorders" and that he "was attempting to carry out death threats" against "his military chain of command." Xavier Alvarez, who worked for Peak Behavioral and who reported Kelley to police for the escape, later confirmed to NBC News that Kelley "verbalized that he wanted to get some kind of retribution to his chain of command." Other patients reported that Kelley was doing something suspicious on computers, and the military found that Kelley was "ordering weapons and tactical gear and magazines to a P.O. Box in San Antonio." Alvarez was quoted as saying, "This kid – he was hollow," and "I could never reach him."

Air Force Security Forces Squadron
Holloman Air Force Base

Commanders, Officers, supervisors, employees
Cmdr. Nathan McLeod-Hughes

Air Force 49th Logistics Readiness Squadron
Commanders, Officers, supervisors, employees

Air Force Detachment 225 and/or Holloman Air Force Base Office of Special Investigations

Commanders, Officers, Special Agents, supervisors, employees
AFOSI Detachment 225 and/or Holloman Air Force Base Office of Special Investigation had responsibilities to gather fingerprints and report, and thus will have knowledge of their responsibilities,

training, and failures. The December 6, 2018, the Inspector General of the DOD issued a 131-page Report titled, Investigation into the United States Air Force's Failure to Submit Devin Kelley's Criminal History Information to the Federal Bureau of Investigation concluding that training on the submission of fingerprints and final disposition reports was ineffective and lacking, both for AFOSI Detachment 225 and the 49th Security Forces Squadron, and "there was no valid reason for the USAF's failures". See p. 111-112; see also p. 96-98 (noting "training did not provide instructions on when or how to submit either the fingerprint card or the final disposition report to the FBI CJIS Division").

Although AFOSI policy required supervisory reviews to include both I2MS and the investigative case file (record copy), the AFOSI Detachment 225 SAIC and Superintendent focused their reviews on the I2MS activities and not on investigative case files" *See* p. 89. "In sum, we concluded that AFOSI Detachment 225 monthly supervisory reviews of Kelley's investigative case file were incomplete and ineffective".

Air Force Article 32 Investigating Officers

Air Force Prosecutors
　　　Air Force prosecutors gathered evidence and handled the conviction of Airman Kelley, and thus have knowledge of his conduct and disposition.

Naval Consolidated Brig
Miramar, California
　　　Commanders, Officers, supervisors, employees

General David Goldfein
Air Force Chief of Staff

General Stephen Wilson
Air Force Vice Chief of Staff

Lt. General Gina Grosso
Air Force Deputy Chief of Staff, Manpower, Personnel & Services

Lt. General John Raymond
Air Force Deputy Chief of Staff, Operations

Lt. General John Cooper, Deputy Chief of Staff, Operations

10

Air Force Holloman Air Force Base Mental Health Clinic
      HAFB Mental Health Clinic had custody of Kelley in the Air Force

Defense Incidence-Based Reporting System
      Commanders, Officers, supervisors, employees

**e.   Regarding experts who may be called to testify at the trial in this case, please refer to Plaintiffs' Designation of Experts and any amendments or supplements thereto for additional information regarding the facts known to these witnesses and the bases of their opinions.  These expert designations will be made at the time required by the Court's Scheduling Order. Please also refer to the sworn testimony and written reports of these witnesses for further information regarding the facts known to and opinions held by these witnesses.**

**f.   Plaintiff cross-identifies as expert witnesses any person named or to be named by Defendant as a person having expert knowledge about any facts surrounding any issues relevant to the incident in question as expert witnesses who Plaintiff reserves the right to call live at the trial of the cause.  Plaintiff reserves the right to call such persons as expert witnesses, whether or not the designation is subsequently withdrawn.  Plaintiff does not have any control over any such witness, nor do they have any superior right to ascertain the subject matter on which any such witness may testify and/or opinions held by any such witness, beyond the information disclosed in deposition testimony and/or by Defendant's discovery responses.  In that regard, Plaintiff refers you to Defendant's discovery documents, deposition testimony, and documents produced by Defendant for the subject matter, facts known, and opinions and impressions of these witnesses.  Plaintiff reserves the right to obtain opinion testimony from any such witness within their area of expertise as related to this case.**

(ii)    A copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment;

Plaintiff refers Defendant to Exhibits 1 – 19 which have been identified and separately served on Defendant as exhibits to the disclosures of Plaintiffs McNulty and incorporated by reference into these disclosures.

In addition, Plaintiff identifies the following exhibits:

11

Exhibit 37 – St. Peters Health Medical Associates medical records
(Bates #19-715-1 – 19-751-50)

Exhibit 38 – St. Peters Health Medical Associates medical records
(Bates #19-715-51 – 19-751-70)

Exhibit 39 – Kindred at Home medical records (Bates #19-751-71 – 19-751-77)

Exhibit 40 – Saratoga County Mental Health medical records (Bates #19-751-78 –
19-751-79)

Exhibit 41– Union Center medical records (Bates #19-751-80 – 19-751-81)

Exhibit 42 – Photographs (Bates #19-751-82 – 19-751-85)

In addition, Plaintiffs are in the possession of the materials maintained by the
Texas Rangers related to the incident.  In obtaining these materials, Plaintiffs entered
into an agreement with the Texas Attorney General regarding their release.  As such,
Plaintiffs will discuss the terms of this agreement with Defendant prior to releasing
these materials.

(iii)   A computation of each category of damages claimed by the disclosing
party—who must also make available for inspection and copying as
under Rule 34 the documents or other evidentiary material, unless
privileged or protected from disclosure, on which each computation is
based, including materials bearing on the nature and extent of injuries
suffered;

Discovery is still in its early stages and it is premature for Plaintiff to respond to
this disclosure; however, please see Plaintiff's Original Complaint(s) and any and
all amendments thereto for the categories of damages sought by Plaintiff.  Please
refer also to Plaintiff's administrative claims filed with the Government for the
maximum amount of damages sought by Plaintiff in this case.  Please refer to the
sworn deposition testimony in this case. Please also refer to Plaintiffs' Designation
of Experts and any amendments or supplements thereto for additional
information regarding the facts known to these witnesses and the bases of their
opinions.  These expert designations will be made at the time required by the
Court's Scheduling Order. Please also refer to the sworn testimony and written
reports of these witnesses for further information regarding the facts known to
and opinions held by these witnesses.

(iv)    For inspection and copying as under Rule 34, any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment.

    Not applicable.

Respectfully Submitted,

/s/ Jamal K. Alsaffar
**JAMAL K. ALSAFFAR**
    jalsaffar@nationaltriallaw.com
    Texas State Bar #2402719
**LAURIE HIGGINBOTHAM**
    lhigginbotham@nationaltriallaw.com
    Texas State Bar # 50511759
**TOM JACOB**
    tjacob@nationaltriallaw.com
    Texas State Bar #24069981
**WHITEHURST, HARKNESS, BREES, CHENG, ALSAFFAR, HIGGINBOTHAM, & JACOB P.L.L.C.**
    7500 Rialto Blvd, Bldg. Two, Ste 250
    Austin, TX 78735
    (512) 476-4346 (o)
    (512) 467-4400 (f)

Attorneys for the Plaintiffs

## Certificate of Service

I certify that the foregoing was served on June 27, 2019, via email service and certified mail, return receipt requested, on the following counsel for the United States.

/s/ Jamal Alsaffar
Jamal Alsaffar

PAUL DAVID STERN
Trial Attorney, Torts Branch
United States Dept. of Justice
Civil Division
United States Department of Justice
P.O. Box 888
Benjamin Franklin Station
Washington, D.C. 20004
T: (202) 616-2197
Paul.David.Stern@usdoj.gov

STEPHEN E. HANDLER
Senior Trial Counsel, Torts Branch
United States Dept. of Justice
Civil Division
United States Department of Justice
P.O. Box 888
Benjamin Franklin Station
Washington, D.C. 20004
T: (202) 616-2197
Stephen.Handler@usdoj.gov

14

S

IN THE UNITED STATES DISTRICT FOR
THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JOE HOLCOMBE, et. al, | § | NO. 5:18-CV-00555-XR |
| | § | |
| Plaintiffs | § | Consolidated with: |
| | § | 5:18-cv-00712-XR (*Vidal*) |
| | § | 5:18-cv-00881-XR (*Uhl*) |
| vs. | § | 5:18-cv-00944-XR (*Ramsey*) |
| | § | 5:18-cv-00949-XR (*McNulty*) |
| UNITED STATES OF AMERICA, | § | 5:18-cv-00951-XR (*Wall*) |
| | § | 5:18-cv-01151-XR (*Amador*) |
| Defendant | § | 5:19-cv-00184-XR (*Brown*) |
| | § | 5:19-cv-00289-XR (*Ward*) |
| | § | 5:19-cv-00506-XR (*Workman*) |
| | § | 5:19-cv-00678-XR (*Colbath*) |
| | § | 5:19-cv-00691-XR (*Braden*) |
| | § | 5:19-cv-00706-XR (*Lookingbill*) |
| | § | 5:19-cv-00714-XR (*Solis*) |
| | § | 5:19-cv-00715-XR (*McKenzie*) |
| | § | 5:19-cv-00805-XR (*Curnow*) |
| | § | 5:19-cv-00806-XR (*Macias*) |

**PLAINTIFFS FRED AND KATHLEEN CURNOW'S INITIAL
DISCLOSURES PURSUANT TO RULE 26(A)(1)**

Plaintiffs Fred Curnow and Kathleen Curnow ("Plaintiffs"), serve these their initial

disclosures pursuant to Rule 26 of the Federal Rules of Civil Procedure Rule 26(a)(1)(A):

(i)     *The name and, if known, the address and telephone number of each individual
likely to have discoverable information—along with the subjects of that
information—that the disclosing party may use to support its claims or
defenses, unless the use would be solely for impeachment;*

    **a.   Plaintiffs hereby designate as persons with knowledge the health care
providers referenced in the related health care records in this case, including
physicians, technicians, nurses, radiologists, physician's assistants, physical
therapists, clinics, hospitals, pharmacies, and their agents, representatives, and
employees.  While these health care providers are not within the control of Plaintiffs**

1

**and have not been retained by Plaintiffs as expert witnesses, Plaintiffs reserve the right to elicit opinion testimony from any such health care provider, including expert testimony regarding liability, causation, and damages from those treating healthcare providers relating to the medical treatment provided to the Plaintiffs. To the extent it is necessary to call live at the trial or by deposition in this cause any agents, representatives, employees and/or custodian of records for any of the following health care providers, Plaintiffs identify any such custodian as a person who may have expert knowledge regarding issues related to the incident in question to include personal knowledge of the records and concerning the necessity of services rendered and referenced in the records and concerning the reasonableness of the medical bills charged and referenced in the records of the following health care providers.  For the mental impressions held by and the opinions of and facts known by any of the following witnesses, please refer to the related health care records of the Plaintiffs.**

    **b.   Plaintiffs identify themselves as persons with knowledge of relevant facts pertaining to the incident in question:**

Fred Curnow
c/o Robert E. Ammons & April A. Strahan
The Ammons Law Firm
3700 Montrose Blvd.
Houston, TX 77006

Fred Curnow is a Plaintiff in this case, lives directly next door to the Church, and witnessed the shooting and its aftermath.  Fred's home was damaged when bullets from Kelley's gun both penetrated and lodged inside his home.  Fred has knowledge of the facts alleged in his Complaint regarding his presence on the morning of the shooting, his experiences during the shootings, his injuries and damages, including his trauma and other elements of his damages. Fred also has knowledge of the impact of this event on his family and community.

Kathleen Curnow
c/o Robert E. Ammons & April A. Strahan
The Ammons Law Firm
3700 Montrose Blvd.
Houston, TX 77006

Kathleen Curnow is a Plaintiff in this case, lives directly next door to the Church, and witnessed the shooting and its aftermath.  Kathleen's home was damaged when bullets from Kelley's gun both penetrated and lodged inside her home. Kathleen has knowledge of the facts alleged in her Complaint regarding her presence on the morning of the shooting, her experiences during the shootings, her injuries and damages, including her trauma and other elements of her damages. Kathleen also has knowledge of the impact of this event on her family and community.

**c.   Plaintiffs identify the following family members, friends, and other persons as persons with knowledge of relevant facts:**

Academy Sports + Outdoors in San Antonio
> Kelley bought a Ruger 5.56 mm assault rifle from Academy Sports + Outdoors in San Antonio after clearing a background check of the NICS. Store personnel will have knowledge of the transaction.

El Paso Police
Headquarters:
911 N. Raynor
El Paso, TX 79903
(915) 212-4000
> The El Paso police apprehended Kelley after he escaped. See Exhibit 15.

First Baptist Church of Sutherland Springs, Texas
Frank Pomeroy, Pastor
First Baptist Church
216 4th Street
Sutherland Springs, Texas 78161
> This is the church where the shooting occurred. The pastor was not there that morning, but on information and belief lost his daughter and many beloved friends in the massacre. He will have knowledge of their community and relationships and the impact of the shooting.

Danielle Shield Kelley
> Married to Airman Devin Kelley at the time of the church shooting.

Tessa Kelley (nee' Loge)
> Married to Airman Devin Kelley while he was in the Air Force and reported him for abuse to herself and infant child.

Johnnie Langendorff
Stephen Willeford
> Stephen Willeford confronted Kelley and chased him away from the church. Johnnie Langendorff stopped his vehicle to pick up Mr. Willeford and give chase.

Steve Moore
Wilson County Sheriff's Department
> Investigator

Harold Schott, Justice of the Peace Pct. #3
Wilson County
402 Bluebonnet
La Vernia, TX 78121

Terry Snyder
Texas Ranger Division
Texas Department of Public Safety
6100 Guadalupe Street, Building E
Austin, TX 78752
        Investigator and Custodian of Records

Sunland Park Police Department
1000 McNutt Rd
Sunland Park, NM 88063
        Tanya Wood


**d.  Plaintiffs name the Defendant herein, as well as its agents, representatives, and/or employees or former agents, representatives, or employees, as persons with knowledge of relevant facts.  Plaintiffs further name the Defendant, as well as its agents, representatives, and/or employees or former agents, representatives, or employees, as persons from whom expert testimony may be elicited regarding liability, causation and/or damages, although Plaintiffs do not necessarily vouch for all the opinion testimony of such persons.  Plaintiffs refer you to the Department of Defense Inspector General reports from 2018, 2017, 2014, and 2015; Defendant's discovery documents; deposition testimony; documents produced by Defendant; and related medical records for the subject matter, facts known, and opinions and impressions of these witnesses.**

Air Force personnel
        Air Force personnel are expected to have knowledge of Kelley's conduct in the Air Force and mental problems, including but not limited to his attempt to bring weapons onto the base to kill officers.

Additional Air Force personnel are provided below:
        Air Force spokesperson, Ann Stefanek. On November 28, 2017, an Air Force spokesperson, Ann Stefanek, admitted that the failure to follow Pentagon guidelines to report Kelley's crimes to the FBI was "not an isolated incident and similar reporting lapses occurred at other locations."

Matthew Donovan
Acting Secretary of the Air Force

Heather Wilson
Former Secretary of the Air Force

Deborah Lee James
Secretary of the Air Force

4

Col. Kirk Stabler
Air Force Commander
Headquarters Air Force Office of Special Investigations
Quantico, Virginia

Brig. General Andrea Tullos
Air Force Director
Director of Security Forces
DCS/Logistics, Engineering & Force Protection
Department of the Air Force
Washington, D.C.

Director of Special Investigations
Department of the Air Force
Washington, D.C.

HQ Air Force Office of Special Investigations
Department of the Air Force
Superintendent, IT Integrations HQ AFOSI
Quantico, Virginia

Department of the Air Force
HQ USAF
Washington, D.C.

Deputy Director of Security Forces
DCS/Logistics, Installations & Missions Support

Defense Human Resources Activity
Headquarters
Pamela Mitchell, Director
4800 Mark Center Drive, Suite 06J25-01
Alexandria, VA 22350-4000

Department of the Air Force
HQ Air Force Office of Special Investigations
Quantico, VA
Brigadier General, Keith Givens
USAF Commander

Department of Defense
Under Secretary of Defense for Intelligence
Deputy Chief Management Officer

Department of Defense
Military Criminal Investigative Organizations (MCIOs)

Commanders, Officers, supervisors and employees
Defense Criminal Investigative Organizations (DCIOs)
Commanders, Officers, supervisors and employees

Office of Inspector General for the DOD

The Office of Inspector General for the DOD has issued four reports investigating and detailing the failures of the Air Force and Department of Defense, including negligence, negligent training, and negligent supervision. See attached reports:

Report No. DODIG-2019-030, Inspector General U.S. Department of Defense, Dec. 6, 2018, Report of Investigation into the United States Air Force's Failure to Submit Devin Kelley's Criminal History Information to the Federal Bureau of Investigation; see id. at p. 117, "The USAF concurred with this report and its recommendations." https://www.dodig.mil/reports.html/Article/1707300/reportof-investigation-into-the-united-states-air-forces-failure-to-submit-dev/

Report No. DODIG-2018-035, Inspector General U.S. Department of Defense, Dec. 4, 2017, *Evaluation of Fingerprint Card and Final Disposition Report Submissions by Military Service Law Enforcement Organizations*. https://www.dodig.mil/reports.html/Search/DODIG-2018-035/

The DOD concluded that training on the submission of fingerprints and final disposition reports was ineffective and lacking, both for AFOSI Detachment 225 and the 49th Security Forces Squadron, and "there was no valid reason for the USAF's failures". *See* p. 111-112; *see also* p. 96-98 (noting "training did not provide instructions on when or how to submit either the fingerprint card or the final disposition report to the FBI CJIS Division"). Indeed, the DOD "determined that this failure to submit Kelley's fingerprints was part of a systemic problem in AFOSI Detachment 225." See p. 94. Worse, the case agent was actually deployed for seven months during the investigation and reported that he complained he could not do his job, stating, "Boss, I'm burnt out, I'm so burnt out." "Boss, I want to get out. I can't do this anymore."

Report No. DODIG-2015-081, Inspector General U.S. Department of Defense, February 12, 2015, *Evaluation of Department of Defense Compliance with Criminal History Data Reporting Requirements*

Report No. DODIG-2015-011, Inspector General U.S. Department of Defense, October 29, 2014, *Evaluation of the Defense Criminal Investigative Organizations' Defense Incident-Based Reporting System Reporting and Reporting Accuracy*

6

Air Force 49th Security Forces Squadron and its investigators, Military Law
Enforcement Officers (LEOs), or AFSFC Police Services Branch
Confinement Facility Commanders, Officers, supervisors, employees

> The 49th Security Forces Squadron investigated Airman Kelley. The 49th
> Security Forces squadron investigators and/or Military Law Enforcement
> Officers (LEOs) had responsibilities to gather fingerprints and report, and
> thus will have knowledge of their responsibilities, training, and failures.
> The December 6, 2018, the Inspector General of the DOD issued a 131-
> page Report titled, *Investigation into the United States Air Force's Failure
> to Submit Devin Kelley's Criminal History Information to the Federal
> Bureau of Investigation* concluding that training on the submission of
> fingerprints and final disposition reports was ineffective and lacking, both
> for AFOSI Detachment 225 and the 49th Security Forces Squadron, and
> "there was no valid reason for the USAF's failures". *See* p. 111-112; *see
> also* p. 96-98 (noting "training did not provide instructions on when or
> how to submit either the fingerprint card or the final disposition report to
> the FBI CJIS Division").

> AFSFC Police Services Branch training focused on collection of
> fingerprints but failed to address submitting fingerprint cards and final
> disposition reports to the FBI CJIS.  Their Management Internal Control
> Toolset (MICT) checklist items are supposed to be monitored and assessed
> as part of the installation commander's self-inspection program.  Monthly
> supervisory reviews were "incomplete and ineffective. *See* Report No.
> DODIG-2019-030 p. 110.

Airman Kelley's Air Force Commander

> Kelley's Commander issued a no contact order and has knowledge of
> Kelley's conduct and training in the Air Force.

Airman Kelley's Air Force Commander

> Kelley's Commander issued a no contact order, prepared a confinement
> package stating that he was "convinced" that Kelley was "dangerous and
> likely to harm someone if released", and has knowledge of Kelley's
> conduct and training in the Air Force.

Kelley's former Supervisor in the Air Force

> Kelley sent a threatening Facebook message to his former supervisor in
> the Air Force after his discharge.  She will have knowledge of Kelley's
> conduct and condition and threats.

Case Agent responsible for Airman Kelley

The Case Agent will have knowledge for the reasons he could not properly report Kelley to the FBI, as detailed by the DOD's report.

Boss of Case Agent responsible for Airman Kelley

The boss of the Case Agent will have knowledge for the reasons the Case Agent could not properly report Kelley to the FBI, as detailed by the DOD's report.

Peak Behavioral Health Services and Xavier Alvarez
5055 McNutt Rd.
Santa Teresa, NM 88008

Peak Behavioral Health Services (PBHS) had a program for military personnel and diagnosed Kelley with various mental and emotional disorders. On information and belief, this is the facility from which Kelley attempted to buy guns to kill his commanding officers, and the facility that Kelley escaped from and fled to El Paso.

According to an El Paso police report, police were informed that Kelley "was a danger to himself and others as he had already been caught sneaking firearms onto Holloman Air Force Base". Police were further advised that Airman Kelley "suffered from mental disorders" and that he "was attempting to carry out death threats" against "his military chain of command." Xavier Alvarez, who worked for Peak Behavioral and who reported Kelley to police for the escape, later confirmed to NBC News that Kelley "verbalized that he wanted to get some kind of retribution to his chain of command." Other patients reported that Kelley was doing something suspicious on computers, and the military found that Kelley was "ordering weapons and tactical gear and magazines to a P.O. Box in San Antonio." Alvarez was quoted as saying, "This kid – he was hollow," and "I could never reach him."

Air Force Security Forces Squadron
Holloman Air Force Base

Commanders, Officers, supervisors, employees
Cmdr. Nathan McLeod-Hughes

Air Force 49th Logistics Readiness Squadron
Commanders, Officers, supervisors, employees

Air Force Detachment 225 and/or Holloman Air Force Base Office of Special Investigations

Commanders, Officers, Special Agents, supervisors, employees

AFOSI Detachment 225 and/or Holloman Air Force Base Office of
Special Investigation had responsibilities to gather fingerprints and report,
and thus will have knowledge of their responsibilities, training, and
failures. The December 6, 2018, the Inspector General of the DOD issued
a 131-page Report titled, Investigation into the United States Air Force's
Failure to Submit Devin Kelley's Criminal History Information to the
Federal Bureau of Investigation concluding that training on the submission
of fingerprints and final disposition reports was ineffective and lacking,
both for AFOSI Detachment 225 and the 49th Security Forces Squadron,
and "there was no valid reason for the USAF's failures". See p. 111-112; see
also p. 96-98 (noting "training did not provide instructions on when or
how to submit either the fingerprint card or the final disposition report to
the FBI CJIS Division").

Although AFOSI policy required supervisory reviews to include both
I2MS and the investigative case file (record copy), the AFOSI Detachment
225 SAIC and Superintendent focused their reviews on the I2MS activities
and not on investigative case files" *See* p. 89. "In sum, we concluded that
AFOSI Detachment 225 monthly supervisory reviews of Kelley's
investigative case file were incomplete and ineffective".

Air Force Article 32 Investigating Officers

Air Force Prosecutors
        Air Force prosecutors gathered evidence and handled the conviction of
        Airman Kelley, and thus have knowledge of his conduct and disposition.

Naval Consolidated Brig
Miramar, California
        Commanders, Officers, supervisors, employees

General David Goldfein
Air Force Chief of Staff

General Stephen Wilson
Air Force Vice Chief of Staff

Lt. General Gina Grosso
Air Force Deputy Chief of Staff, Manpower, Personnel & Services

Lt. General John Raymond
Air Force Deputy Chief of Staff, Operations

Lt. General John Cooper, Deputy Chief of Staff, Operations

Air Force Holloman Air Force Base Mental Health Clinic

HAFB Mental Health Clinic had custody of Kelley in the Air Force

Defense Incidence-Based Reporting System
Commanders, Officers, supervisors, employees

**e.   Regarding experts who may be called to testify at the trial in this case, please refer to Plaintiffs' Designation of Experts and any amendments or supplements thereto for additional information regarding the facts known to these witnesses and the bases of their opinions.  These expert designations will be made at the time required by the Court's Scheduling Order. Please also refer to the sworn testimony and written reports of these witnesses for further information regarding the facts known to and opinions held by these witnesses.**


**f.   Plaintiffs cross-identify as expert witnesses any person named or to be named by Defendant as a person having expert knowledge about any facts surrounding any issues relevant to the incident in question as expert witnesses who Plaintiffs reserve the right to call live at the trial of the cause.  Plaintiffs reserve the right to call such persons as expert witnesses, whether or not the designation is subsequently withdrawn.  Plaintiffs do not have any control over any such witness, nor do they have any superior right to ascertain the subject matter on which any such witness may testify and/or opinions held by any such witness, beyond the information disclosed in deposition testimony and/or by Defendant's discovery responses.  In that regard, Plaintiffs refer you to Defendant's discovery documents, deposition testimony, and documents produced by Defendant for the subject matter, facts known, and opinions and impressions of these witnesses.  Plaintiffs reserve the right to obtain opinion testimony from any such witness within their area of expertise as related to this case.**


(ii)   *A copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment;*


1.      Inspector General, US Department of Defense, Evaluation of the Defense Criminal Investigative Organizations' Defense Incident-Based Reporting System Reporting and Reporting Accuracy, October 29, 2014 (Bates #18-949-1 – 18-949-40).  This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949).  Plaintiff remains willing to produce an additional copy if requested.

2.      Inspector General, US Department of Defense, Evaluation of the Defense Compliance with Criminal History Data Reporting Requirements, February 12,

2015 (Bates #18-949-41 – 18-949-76). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

3.   Inspector General, US Department of Defense, Evaluation Fingerprint Card and Final Disposition Report Submissions by Military Service Law Enforcement Organizations, December 4, 2017 (Bates #18-949-77 – 18-949-168). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

4.   Inspector General, US Department of Defense, Report of Investigation into the United States Air Force's Failure to Submit Devin Kelley's Criminal History Information to the Federal Bureau of Investigation, December 6, 2018 (Bates #18-949-169 – 18-949-306). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

5.   Department of Defense Directive Number 7730.47, October 15, 1996 (Bates #18-949-307 – 18-949-315). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

6.   Department of Defense Manual Number 7730.47-M Volume 1, December 7, 2010 (Bates #18-949-316 – 18-949-398). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

7.   U.S. Department of Defense Press Operations, DoD launches review of Devin P. Kelley criminal record notification, Release No. NR-382-17, November 6, 2017 (Bates #18-949-399). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

8.   National Instant Criminal Background Check System Indices (Bates #18-949-400 – 18-949-401). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

9.      U.S. Air Force article, AF Implements Changes to Improve Law Enforcement Database Reporting, November 28, 2017 (Bates #18-949-402). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

10.     U.S. Air Force tweet November 9, 2017 (Bates #18-949-403). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

11.     Report to the Committee on the Judiciary United States Senate from The Honorable Heather Wilson, Secretary of the Air Force, December 6, 2017 (Bates #18-949-404 – 18-949-405). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

12.     Questions for the Record for Secretary of the United States Air Force Heather Wilson, December 13, 2017 (Bates #18-949-406 – 18-949-410). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

13.     Misdemeanor Crimes of Domestic Violence (Bates #18-949-411). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

14.     Devin Kelley Trial Transcript (Bates #18-949-412 – 18-949-1022). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

15.     El Paso Incident Report, June 7, 2012 (Bates #18-949-1023 – 18-949-1028). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

16.     Devin Kelley Court Martial Order (Bates #18-949-1029 – 18-949-1034). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

17.     Statement of Danielle Kelley (Bates #18-949-1035). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

18.     Devin Kelley Autopsy Report (Bates #18-949-1036 – 18-949-1037). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

19.     Life Expectancy Tables (Bates #18-949-1038 – 18-949-1101). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

20.     Photographs of Curnow Residence and Scene of Shooting on 11/5/17 (Bates #19-805-000001)

21.     Photographs of Curnow Clients (Bates #19-805-000002)

In addition, Plaintiffs are in the possession of the materials maintained by the Texas Rangers related to the incident.  In obtaining these materials, Plaintiffs entered into an agreement with the Texas Attorney General regarding their release.  As such, Plaintiffs will discuss the terms of this agreement with Defendant prior to releasing these materials.

(iii)   *A computation of each category of damages claimed by the disclosing party— who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered;*

Discovery is still in its early stages, and it is premature for Plaintiffs to respond to this disclosure; however, please see Plaintiffs' Original Complaint(s) and any and all amendments thereto for the categories of damages sought by Plaintiffs.  Please refer also to Plaintiffs' administrative claims filed with the Government for the maximum amount of damages sought by Plaintiffs in this case.  Please refer to the sworn deposition

testimony in this case.  Please also refer to Plaintiffs' Designation of Experts and any amendments or supplements thereto for additional information regarding the facts known to these witnesses and the bases of their opinions.  These expert designations will be made at the time required by the Court's Scheduling Order.  Please also refer to the sworn testimony and written reports of these witnesses for further information regarding the facts known to and opinions held by these witnesses.

Additionally, as set forth in their Complaint, Fred and Kathleen Curnow suffered physical and emotional damages, including extensive property damages, during the shootings on November 5, 2017, which involved firearms that should have been denied to Devin Kelley. As a result of the negligence of the United States employees, agents, or representatives, Fred and Kathleen Curnow have suffered past and future damages, for which recovery is sought, including:

- Past and future physical pain & suffering;
- Past and future mental anguish;
- Past and future medical, healthcare, and attendant care expenses;
- Past and future physical impairment;
- Past and future physical disfigurement;
- Past and future lost income and earning capacity;
- Property damage;
- Out of pocket expenses; and
- Other pecuniary damages.

In addition, Fred and Kathleen Curnow seek recovery of all other damages to which they are entitled pursuant to the applicable state and federal law.


*(iv)*    *For inspection and copying as under Rule 34, any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment.*


Not applicable.

Respectfully Submitted,

**THE AMMONS LAW FIRM, L.L.P.**

  /s/ April A. Strahan
Robert E. Ammons
Texas State Bar # 01159820
Email: rob@ammonslaw.com
April A. Strahan
Texas State Bar # 24056387
Email: april@ammonslaw.com
3700 Montrose Boulevard
Houston, Texas 77006
Telephone:    713-523-1606
Facsimile:    713-523-4159
*Attorneys for Plaintiffs Fred and Kathleen Curnow*

**Certificate of Service**

I certify that the foregoing was served on September 20, 2019, via email service and United States Mail on the following counsel for the United States.

/s/ April A. Strahan
April A. Strahan

JOSEPH H. HUNT
Assistant Attorney General
United States Dept. of Justice
Civil Division

JOHN PANISZCZYN
Civil Chief
United States Attorney's Office
Western District of Texas

JOHN F. BASH
United States Attorney
Western District of Texas

JAMES G. TOUHEY, JR.
Director, Torts Branch
United States Dept. of Justice
Civil Division

KIRSTEN WILKERSON
Assistant Director, Torts Branch
United States Dept. of Justice
Civil Division

STEPHEN E. HANDLER
Senior Trial Counsel, Torts Branch
United States Dept. of Justice
Civil Division

PAUL DAVID STERN
Trial Attorney, Torts Branch
United States Dept. of Justice
Civil Division

STEPHEN TERRELL
Trial Attorney, Torts Branch
United States Dept. of Justice
Civil Division

CLAYTON R. DIEDRICHS
Assistant United States Attorney

JAMES E. DINGIVAN
Assistant United States Attorney

JIM F. GILLIGAN
Assistant United States Attorney

T

IN THE UNITED STATES DISTRICT FOR
THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JOE HOLCOMBE, et. al, | § | NO. 5:18-CV-00555-XR |
| | § | |
| Plaintiffs | § | Consolidated with: |
| | § | 5:18-cv-00712-XR (*Vidal*) |
| | § | 5:18-cv-00881-XR (*Uhl*) |
| vs. | § | 5:18-cv-00944-XR (*Ramsey*) |
| | § | 5:18-cv-00949-XR (*McNulty*) |
| UNITED STATES OF AMERICA, | § | 5:18-cv-00951-XR (*Wall*) |
| | § | 5:18-cv-01151-XR (*Amador*) |
| Defendant | § | 5:19-cv-00184-XR (*Brown*) |
| | § | 5:19-cv-00289-XR (*Ward*) |
| | § | 5:19-cv-00506-XR (*Workman*) |
| | § | 5:19-cv-00678-XR (*Colbath*) |
| | § | 5:19-cv-00691-XR (*Braden*) |
| | § | 5:19-cv-00706-XR (*Lookingbill*) |
| | § | 5:19-cv-00714-XR (*Solis*) |
| | § | 5:19-cv-00715-XR (*McKenzie*) |
| | § | 5:19-cv-00805-XR (*Curnow*) |
| | § | 5:19-cv-00806-XR (*Macias*) |

**PLAINTIFFS' JUAN MACIAS AND JENNIFER MACIAS INITIAL
DISCLOSURES PURSUANT TO RULE 26(A)(1)**

Plaintiffs Juan Macias and Jennifer Macias ("Plaintiffs"), serve these their initial

disclosures pursuant to Rule 26 of the Federal Rules of Civil Procedure Rule 26(a)(1)(A):

(i)   *The name and, if known, the address and telephone number of each individual
likely to have discoverable information—along with the subjects of that
information—that the disclosing party may use to support its claims or
defenses, unless the use would be solely for impeachment;*

a.   **Plaintiffs hereby designate as persons with knowledge the health care
providers referenced in the related health care records in this case, including
physicians, technicians, nurses, radiologists, physician's assistants, physical
therapists, clinics, hospitals, pharmacies, and their agents, representatives, and
employees.  While these health care providers are not within the control of Plaintiffs**

1

**and have not been retained by Plaintiffs as expert witnesses, Plaintiffs reserve the right to elicit opinion testimony from any such health care provider, including expert testimony regarding liability, causation, and damages from those treating healthcare providers relating to the medical treatment provided to the Plaintiffs. To the extent it is necessary to call live at the trial or by deposition in this cause any agents, representatives, employees and/or custodian of records for any of the following health care providers, Plaintiffs identify any such custodian as a person who may have expert knowledge regarding issues related to the incident in question to include personal knowledge of the records and concerning the necessity of services rendered and referenced in the records and concerning the reasonableness of the medical bills charged and referenced in the records of the following health care providers.  For the mental impressions held by and the opinions of and facts known by any of the following witnesses, please refer to the related health care records of the Plaintiffs.**

Advanced Home Health Services
12966 US-87 W
La Vernia, Texas 78121
830-779-2835

Anticoagulation Clinics of North America
4411 Medical Dr. Ste 100
San Antonio, Texas 78229
210-595-5300

Audie L. Murphy VA Hospital
7400 Merton Minter
San Antonio, Texas 78229
210-617-5300

Brooke Army Medical Center
3551 Roger Brooke Dr.
Fort Sam Houston, TX 78234
210-916-7500

Dr. Valerie Sams
3851 Roger Brooke Dr.
Fort Sam Houston, Texas 78234
210-916-0324

Methodist Specialty and Transplant Hospital
8026 Floyd Curl Dr.
San Antonio, Texas 78229
210-575-8110

Post Acute Medical
5418 N. Loop 1604 West 3rd Floor

San Antonio, TX 78249
210-921-3550

Seema Izfar, M.D.
7940 Floyd Curl Dr., Ste 215
San Antonio, Texas 78229
210-305-4989

Steven Hudak, M.D.
3851 Roger Brooke Dr. #3600
Fort Sam Houston, Texas 78234
210-916-2460

UT Health San Antonio
Health Information Management
7979 Wurzbach Rd. #G413 MC8204
San Antonio, Texas 78229
210-450-5525

VA Outpatient Clinic
526 E Court St
Seguin, TX 78155
830-372-1697

Warm Springs Rehabilitation Hospital of San Antonio/PAM-Post Acute Medical
5101 Medical Dr.
San Antonio, Texas 78229
210-616-0100

**b.  Plaintiffs identify themselves as persons with knowledge of relevant facts pertaining to the incident in question:**

Juan "Gunny" Macias
c/o Robert E. Ammons & April A. Strahan
The Ammons Law Firm
3700 Montrose Blvd.
Houston, TX 77006

Juan "Gunny" Macias is a Plaintiff in this case and survived the shooting but suffered incredible physical and emotional injuries as a direct result.  Gunny has knowledge of the facts alleged in his Complaint regarding his presence on the morning of the shooting, his experiences during the shootings, his injuries and the shrapnel that remains inside his body, the scars that remain on his body, his physical, mental and emotional trauma, his past medical care, his knowledge about future anticipated medical care and potential complications, and other

elements of his damages. He has knowledge of the events in the church, the injuries to himself and others, as well as his and his wife's harms, losses and other elements of damages.  Gunny also has knowledge of the impact of this event on his family and community.

Jennifer Macias
c/o Robert E. Ammons & April A. Strahan
The Ammons Law Firm
3700 Montrose Blvd.
Houston, TX 77006

Jennifer Macias is the wife of Juan "Gunny" Macias and is a Plaintiff in this case. She has knowledge of the injuries to her husband, as well as her own loss of consortium because of the injuries to her husband and other elements of her damages.  Jennifer also has knowledge of the impact of this event on her family and community.

**c.  Plaintiffs identify the following family members, friends, and other persons as persons with knowledge of relevant facts:**

Academy Sports + Outdoors in San Antonio
> Kelley bought a Ruger 5.56 mm assault rifle from Academy Sports + Outdoors in San Antonio after clearing a background check of the NICS. Store personnel will have knowledge of the transaction.

El Paso Police
Headquarters:
911 N. Raynor
El Paso, TX 79903
(915) 212-4000
> The El Paso police apprehended Kelley after he escaped. See Exhibit 15.

First Baptist Church of Sutherland Springs, Texas
Frank Pomeroy, Pastor
First Baptist Church
216 4th Street
Sutherland Springs, Texas 78161
> This is the church where the shooting occurred. The pastor was not there that morning, but on information and belief lost his daughter and many beloved friends in the massacre. He will have knowledge of their community and relationships and the impact of the shooting.

Danielle Shield Kelley
> Married to Airman Devin Kelley at the time of the church shooting.

Tessa Kelley (nee' Loge)

4

Married to Airman Devin Kelley while he was in the Air Force and reported him for abuse to herself and infant child.

Johnnie Langendorff
Stephen Willeford
Stephen Willeford confronted Kelley and chased him away from the church. Johnnie Langendorff stopped his vehicle to pick up Mr. Willeford and give chase.

Steve Moore
Wilson County Sheriff's Department
Investigator

Harold Schott, Justice of the Peace Pct. #3
Wilson County
402 Bluebonnet
La Vernia, TX 78121

Terry Snyder
Texas Ranger Division
Texas Department of Public Safety
6100 Guadalupe Street, Building E
Austin, TX 78752
Investigator and Custodian of Records

Sunland Park Police Department
1000 McNutt Rd
Sunland Park, NM 88063
Tanya Wood

**d.   Plaintiffs name the Defendant herein, as well as its agents, representatives, and/or employees or former agents, representatives, or employees, as persons with knowledge of relevant facts.  Plaintiffs further name the Defendant, as well as its agents, representatives, and/or employees or former agents, representatives, or employees, as persons from whom expert testimony may be elicited regarding liability, causation and/or damages, although Plaintiffs do not necessarily vouch for all the opinion testimony of such persons.  Plaintiffs refer you to the Department of Defense Inspector General reports from 2018, 2017, 2014, and 2015; Defendant's discovery documents; deposition testimony; documents produced by Defendant; and related medical records for the subject matter, facts known, and opinions and impressions of these witnesses.**

Air Force personnel

Air Force personnel are expected to have knowledge of Kelley's conduct in the Air Force and mental problems, including but not limited to his attempt to bring weapons onto the base to kill officers.

Additional Air Force personnel are provided below:
Air Force spokesperson, Ann Stefanek. On November 28, 2017, an Air Force spokesperson, Ann Stefanek, admitted that the failure to follow Pentagon guidelines to report Kelley's crimes to the FBI was "not an isolated incident and similar reporting lapses occurred at other locations."

Matthew Donovan
Acting Secretary of the Air Force

Heather Wilson
Former Secretary of the Air Force

Deborah Lee James
Secretary of the Air Force

Col. Kirk Stabler
Air Force Commander
Headquarters Air Force Office of Special Investigations
Quantico, Virginia

Brig. General Andrea Tullos
Air Force Director
Director of Security Forces
DCS/Logistics, Engineering & Force Protection
Department of the Air Force
Washington, D.C.

Director of Special Investigations
Department of the Air Force
Washington, D.C.

HQ Air Force Office of Special Investigations
Department of the Air Force
Superintendent, IT Integrations HQ AFOSI
Quantico, Virginia

Department of the Air Force
HQ USAF
Washington, D.C.

Deputy Director of Security Forces
DCS/Logistics, Installations & Missions Support

Defense Human Resources Activity
Headquarters
Pamela Mitchell, Director
4800 Mark Center Drive, Suite 06J25-01
Alexandria, VA 22350-4000

Department of the Air Force
HQ Air Force Office of Special Investigations
Quantico, VA
Brigadier General, Keith Givens
USAF Commander

Department of Defense
Under Secretary of Defense for Intelligence
Deputy Chief Management Officer

Department of Defense
Military Criminal Investigative Organizations (MCIOs)
        Commanders, Officers, supervisors and employees
Defense Criminal Investigative Organizations (DCIOs)
        Commanders, Officers, supervisors and employees

Office of Inspector General for the DOD

> The Office of Inspector General for the DOD has issued four reports investigating and detailing the failures of the Air Force and Department of Defense, including negligence, negligent training, and negligent supervision. See attached reports:
>
> Report No. DODIG-2019-030, Inspector General U.S. Department of Defense, Dec. 6, 2018, Report of Investigation into the United States Air Force's Failure to Submit Devin Kelley's Criminal History Information to the Federal Bureau of Investigation; see id. at p. 117, "The USAF concurred with this report and its recommendations."
> https://www.dodig.mil/reports.html/Article/1707300/reportof-investigation-into-the-united-states-air-forces-failure-to-submit-dev/
>
> Report No. DODIG-2018-035, Inspector General U.S. Department of Defense, Dec. 4, 2017, *Evaluation of Fingerprint Card and Final Disposition Report Submissions by Military Service Law Enforcement Organizations*. https://www.dodig.mil/reports.html/Search/DODIG-2018-035/
>
> The DOD concluded that training on the submission of fingerprints and final disposition reports was ineffective and lacking, both for AFOSI Detachment 225 and the 49th Security Forces Squadron, and "there was no

valid reason for the USAF's failures". *See* p. 111-112; *see also* p. 96-98 (noting "training did not provide instructions on when or how to submit either the fingerprint card or the final disposition report to the FBI CJIS Division"). Indeed, the DOD "determined that this failure to submit Kelley's fingerprints was part of a systemic problem in AFOSI Detachment 225." See p. 94. Worse, the case agent was actually deployed for seven months during the investigation and reported that he complained he could not do his job, stating, "Boss, I'm burnt out, I'm so burnt out." "Boss, I want to get out. I can't do this anymore."

Report No. DODIG-2015-081, Inspector General U.S. Department of Defense, February 12, 2015, *Evaluation of Department of Defense Compliance with Criminal History Data Reporting Requirements*

Report No. DODIG-2015-011, Inspector General U.S. Department of Defense, October 29, 2014, *Evaluation of the Defense Criminal Investigative Organizations' Defense Incident-Based Reporting System Reporting and Reporting Accuracy*

Air Force 49th Security Forces Squadron and its investigators, Military Law Enforcement Officers (LEOs), or AFSFC Police Services Branch Confinement Facility Commanders, Officers, supervisors, employees

The 49th Security Forces Squadron investigated Airman Kelley. The 49th Security Forces squadron investigators and/or Military Law Enforcement Officers (LEOs) had responsibilities to gather fingerprints and report, and thus will have knowledge of their responsibilities, training, and failures. The December 6, 2018, the Inspector General of the DOD issued a 131-page Report titled, *Investigation into the United States Air Force's Failure to Submit Devin Kelley's Criminal History Information to the Federal Bureau of Investigation* concluding that training on the submission of fingerprints and final disposition reports was ineffective and lacking, both for AFOSI Detachment 225 and the 49th Security Forces Squadron, and "there was no valid reason for the USAF's failures". *See* p. 111-112; *see also* p. 96-98 (noting "training did not provide instructions on when or how to submit either the fingerprint card or the final disposition report to the FBI CJIS Division").

AFSFC Police Services Branch training focused on collection of fingerprints but failed to address submitting fingerprint cards and final disposition reports to the FBI CJIS. Their Management Internal Control Toolset (MICT) checklist items are supposed to be monitored and assessed as part of the installation commander's self-inspection program. Monthly supervisory reviews were "incomplete and ineffective. *See* Report No. DODIG-2019-030 p. 110.

Airman Kelley's Air Force Commander

Kelley's Commander issued a no contact order and has knowledge of Kelley's conduct and training in the Air Force.

Airman Kelley's Air Force Commander

Kelley's Commander issued a no contact order, prepared a confinement package stating that he was "convinced" that Kelley was "dangerous and likely to harm someone if released", and has knowledge of Kelley's conduct and training in the Air Force.

Kelley's former Supervisor in the Air Force

Kelley sent a threatening Facebook message to his former supervisor in the Air Force after his discharge.  She will have knowledge of Kelley's conduct and condition and threats.

Case Agent responsible for Airman Kelley

The Case Agent will have knowledge for the reasons he could not properly report Kelley to the FBI, as detailed by the DOD's report.

Boss of Case Agent responsible for Airman Kelley

The boss of the Case Agent will have knowledge for the reasons the Case Agent could not properly report Kelley to the FBI, as detailed by the DOD's report.

Peak Behavioral Health Services and Xavier Alvarez
5055 McNutt Rd.
Santa Teresa, NM 88008

Peak Behavioral Health Services (PBHS) had a program for military personnel and diagnosed Kelley with various mental and emotional disorders. On information and belief, this is the facility from which Kelley attempted to buy guns to kill his commanding officers, and the facility that Kelley escaped from and fled to El Paso.

According to an El Paso police report, police were informed that Kelley "was a danger to himself and others as he had already been caught sneaking firearms onto Holloman Air Force Base". Police were further advised that Airman Kelley "suffered from mental disorders" and that he "was attempting to carry out death threats" against "his military chain of command." Xavier Alvarez, who worked for Peak Behavioral and who reported Kelley to police for the escape, later confirmed to NBC News that Kelley "verbalized that he wanted to get some kind of retribution to his chain of command." Other patients reported that Kelley was doing

something suspicious on computers, and the military found that Kelley was "ordering weapons and tactical gear and magazines to a P.O. Box in San Antonio." Alvarez was quoted as saying, "This kid – he was hollow," and "I could never reach him."

Air Force Security Forces Squadron
Holloman Air Force Base

> Commanders, Officers, supervisors, employees
> Cmdr. Nathan McLeod-Hughes

Air Force 49th Logistics Readiness Squadron
> Commanders, Officers, supervisors, employees

Air Force Detachment 225 and/or Holloman Air Force Base Office of Special Investigations

> Commanders, Officers, Special Agents, supervisors, employees
> AFOSI Detachment 225 and/or Holloman Air Force Base Office of Special Investigation had responsibilities to gather fingerprints and report, and thus will have knowledge of their responsibilities, training, and failures. The December 6, 2018, the Inspector General of the DOD issued a 131-page Report titled, Investigation into the United States Air Force's Failure to Submit Devin Kelley's Criminal History Information to the Federal Bureau of Investigation concluding that training on the submission of fingerprints and final disposition reports was ineffective and lacking, both for AFOSI Detachment 225 and the 49th Security Forces Squadron, and "there was no valid reason for the USAF's failures". See p. 111-112; see also p. 96-98 (noting "training did not provide instructions on when or how to submit either the fingerprint card or the final disposition report to the FBI CJIS Division").

> Although AFOSI policy required supervisory reviews to include both I2MS and the investigative case file (record copy), the AFOSI Detachment 225 SAIC and Superintendent focused their reviews on the I2MS activities and not on investigative case files" *See* p. 89. "In sum, we concluded that AFOSI Detachment 225 monthly supervisory reviews of Kelley's investigative case file were incomplete and ineffective".

Air Force Article 32 Investigating Officers

Air Force Prosecutors
> Air Force prosecutors gathered evidence and handled the conviction of Airman Kelley, and thus have knowledge of his conduct and disposition.

Naval Consolidated Brig

Miramar, California
    Commanders, Officers, supervisors, employees

General David Goldfein
Air Force Chief of Staff

General Stephen Wilson
Air Force Vice Chief of Staff

Lt. General Gina Grosso
Air Force Deputy Chief of Staff, Manpower, Personnel & Services

Lt. General John Raymond
Air Force Deputy Chief of Staff, Operations

Lt. General John Cooper, Deputy Chief of Staff, Operations

Air Force Holloman Air Force Base Mental Health Clinic
    HAFB Mental Health Clinic had custody of Kelley in the Air Force

Defense Incidence-Based Reporting System
    Commanders, Officers, supervisors, employees

**e.   Regarding experts who may be called to testify at the trial in this case, please refer to Plaintiffs' Designation of Experts and any amendments or supplements thereto for additional information regarding the facts known to these witnesses and the bases of their opinions.  These expert designations will be made at the time required by the Court's Scheduling Order. Please also refer to the sworn testimony and written reports of these witnesses for further information regarding the facts known to and opinions held by these witnesses.**

**f.   Plaintiffs cross-identify as expert witnesses any person named or to be named by Defendant as a person having expert knowledge about any facts surrounding any issues relevant to the incident in question as expert witnesses who Plaintiffs reserve the right to call live at the trial of the cause.  Plaintiffs reserve the right to call such persons as expert witnesses, whether or not the designation is subsequently withdrawn.  Plaintiffs do not have any control over any such witness, nor do they have any superior right to ascertain the subject matter on which any such witness may testify and/or opinions held by any such witness, beyond the information disclosed in deposition testimony and/or by Defendant's discovery responses.  In that regard, Plaintiffs refer you to Defendant's discovery documents, deposition testimony, and documents produced by Defendant for the subject matter, facts known, and opinions and impressions of these witnesses.  Plaintiffs reserve the right to obtain opinion testimony from any such witness within their area of expertise as related to this case.**

(ii)    *A copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment;*

1.    Inspector General, US Department of Defense, Evaluation of the Defense Criminal Investigative Organizations' Defense Incident-Based Reporting System Reporting and Reporting Accuracy, October 29, 2014 (Bates #18-949-1 – 18-949-40). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

2.    Inspector General, US Department of Defense, Evaluation of the Defense Compliance with Criminal History Data Reporting Requirements, February 12, 2015 (Bates #18-949-41 – 18-949-76). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

3.    Inspector General, US Department of Defense, Evaluation Fingerprint Card and Final Disposition Report Submissions by Military Service Law Enforcement Organizations, December 4, 2017 (Bates #18-949-77 – 18-949-168). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

4.    Inspector General, US Department of Defense, Report of Investigation into the United States Air Force's Failure to Submit Devin Kelley's Criminal History Information to the Federal Bureau of Investigation, December 6, 2018 (Bates #18-949-169 – 18-949-306). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

5.    Department of Defense Directive Number 7730.47, October 15, 1996 (Bates #18-949-307 – 18-949-315). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

6.     Department of Defense Manual Number 7730.47-M Volume 1, December 7, 2010 (Bates #18-949-316 – 18-949-398). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

7.     U.S. Department of Defense Press Operations, DoD launches review of Devin P. Kelley criminal record notification, Release No. NR-382-17, November 6, 2017 (Bates #18-949-399). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

8.     National Instant Criminal Background Check System Indices (Bates #18-949-400 – 18-949-401). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

9.     U.S. Air Force article, AF Implements Changes to Improve Law Enforcement Database Reporting, November 28, 2017 (Bates #18-949-402). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

10.    U.S. Air Force tweet November 9, 2017 (Bates #18-949-403). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

11.    Report to the Committee on the Judiciary United States Senate from The Honorable Heather Wilson, Secretary of the Air Force, December 6, 2017 (Bates #18-949-404 – 18-949-405). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

12.    Questions for the Record for Secretary of the United States Air Force Heather Wilson, December 13, 2017 (Bates #18-949-406 – 18-949-410). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

13.     Misdemeanor Crimes of Domestic Violence (Bates #18-949-411). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

14.     Devin Kelley Trial Transcript (Bates #18-949-412 – 18-949-1022). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

15.     El Paso Incident Report, June 7, 2012 (Bates #18-949-1023 – 18-949-1028). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

16.     Devin Kelley Court Martial Order (Bates #18-949-1029 – 18-949-1034). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

17.     Statement of Danielle Kelley (Bates #18-949-1035). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

18.     Devin Kelley Autopsy Report (Bates #18-949-1036 – 18-949-1037). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

19.     Life Expectancy Tables (Bates #18-949-1038 – 18-949-1101). This document is in the possession of the Defendant and also has been identified and produced to Defendant by Co-Counsel for Plaintiffs, Jamal Alsaffar on June 27, 2019 in the claim brought by McNulty, et al, (cause no #18-00949). Plaintiff remains willing to produce an additional copy if requested.

20.     Photographs of Macias Clients (Bates #19-806-000001)

21.     2019.08.14 Declaration of Juan Macias (Bates #19-806-000002–000004)

22.     Advanced Home Health Services Billing Records [Juan Macias] (Bates #19-806-000005–000008)

23.   Advanced Home Health Services Medical Records [Juan Macias] (Bates #19-806-000009–000583)

24.   Audie L. Murphy VA Hospital Medical Records [Juan Macias] (Bates #19-806-000584–000690)

25.   Methodist Specialty and Transplant Hospital Billing Records [Juan Macias] (Bates #19-806-000691–000696)

26.   Methodist Specialty and Transplant Hospital Medical Records [Juan Macias] (Bates #19-806-000697–000732)

27.   Post Acute Medical Billing Records [Juan Macias] (Bates #19-806-000733–000782)

28.   Post Acute Medical Records [Juan Macias] (Bates #19-806-000783–001804)

29.   Seema Izfar, M.D. Billing Records [Juan Macias] (Bates #19-806-001805)

30.   Seema Izfar, M.D. Medical Records [Juan Macias] (Bates #19-806-001806–001812)

31.   Marine Corp. Retired ID [Juan Macias] (Bates #19-806-001813)

32.   Texas Driver's License [Juan Macias] (Bates #19-806-001814)

33.   Texas Driver's License [Jennifer Macias] (Bates #19-806-001815)

34.   Military ID [Jennifer Macias] (Bates #19-806-001816)

35.   Body Diagrams [Juan Macias] (Bates #19-806-001817–001818)

36.   Brooke Army Medical Center Medical Records [Juan Macias] (Bates #19-806-001819–013033)

In addition, Plaintiffs are in the possession of the materials maintained by the Texas Rangers related to the incident.  In obtaining these materials, Plaintiffs entered into an agreement with the Texas Attorney General regarding their release.  As such, Plaintiffs will discuss the terms of this agreement with Defendant prior to releasing these materials.

(iii)   *A computation of each category of damages claimed by the disclosing party— who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered;*

Discovery is still in its early stages, and it is premature for Plaintiffs to respond to this disclosure; however, please see Plaintiffs' Original Complaint(s) and any and all amendments thereto for the categories of damages sought by Plaintiffs.  Please refer also to Plaintiffs' administrative claims filed with the Government for the maximum amount of damages sought by Plaintiffs in this case.  Please refer to the sworn deposition testimony in this case.  Please also refer to Plaintiffs' Designation of Experts and any amendments or supplements thereto for additional information regarding the facts known to these witnesses and the bases of their opinions.  These expert designations will be made at the time required by the Court's Scheduling Order.  Please also refer to the sworn testimony and written reports of these witnesses for further information regarding the facts known to and opinions held by these witnesses.

Additionally, as set forth in their Complaint, Juan and Jennifer Macias suffered extensive damages, during and as a direct result of the shootings on November 5, 2017, which involved firearms that should have been denied to Devin Kelley.  As a result of the negligence of the United States employees, agents, or representatives, Juan and Jennifer Macias have suffered past and future damages, for which recovery is sought, including:

- Past and future physical pain & suffering;
- Past and future mental anguish;
- Past and future medical, healthcare, and attendant care expenses;
- Past and future physical impairment;
- Past and future physical disfigurement;
- Past and future lost income and earning capacity;
- Out of pocket expenses; and
- Other pecuniary damages.

In addition, Juan and Jennifer Macias seek recovery of all other damages to which they are entitled pursuant to the applicable state and federal law.


(iv)    *For inspection and copying as under Rule 34, any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment.*


Not applicable.

Respectfully Submitted,

**THE AMMONS LAW FIRM, L.L.P.**

 /s/ April A. Strahan
Robert E. Ammons
Texas State Bar # 01159820
Email: rob@ammonslaw.com
April A. Strahan
Texas State Bar # 24056387
Email: april@ammonslaw.com
3700 Montrose Boulevard
Houston, Texas 77006
Telephone:     713-523-1606
Facsimile:     713-523-4159
*Attorneys for Plaintiffs Juan and Jennifer Macias*

### Certificate of Service

I certify that the foregoing was served on September 20, 2019, via email service and United States Mail on the following counsel for the United States.

/s/ April A. Strahan
April A. Strahan

JOSEPH H. HUNT
Assistant Attorney General
United States Dept. of Justice
Civil Division

JOHN PANISZCZYN
Civil Chief
United States Attorney's Office
Western District of Texas

JOHN F. BASH
United States Attorney
Western District of Texas

JAMES G. TOUHEY, JR.
Director, Torts Branch
United States Dept. of Justice
Civil Division

KIRSTEN WILKERSON
Assistant Director, Torts Branch
United States Dept. of Justice
Civil Division

STEPHEN E. HANDLER
Senior Trial Counsel, Torts Branch
United States Dept. of Justice
Civil Division

PAUL DAVID STERN
Trial Attorney, Torts Branch
United States Dept. of Justice
Civil Division

CLAYTON R. DIEDRICHS
Assistant United States Attorney

JIM F. GILLIGAN
Assistant United States Attorney

STEPHEN TERRELL
Trial Attorney, Torts Branch
United States Dept. of Justice
Civil Division

JAMES E. DINGIVAN
Assistant United States Attorney