IN THE UNITED STATES DISTRICT FOR
THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JOE HOLCOMBE, et. al, | § | NO. 5:18-CV-00555-XR |
| | § | |
| Plaintiffs | § | Consolidated with: |
| | § | 5:18-cv-00712-XR (*Vidal*) |
| | § | 5:18-cv-00881-XR (*Uhl*) |
| vs. | § | 5:18-cv-00944-XR (*Ramsey*) |
| | § | 5:18-cv-00949-XR (*McNulty*) |
| UNITED STATES OF | § | 5:18-cv-00951-XR (*Wall*) |
| AMERICA, | § | 5:18-cv-01151-XR (*Amador*) |
| | § | 5:19-cv-00184-XR (*Brown*) |
| Defendant | § | 5:19-cv-00289-XR (*Ward*) |
| | § | 5:19-cv-00506-XR (*Workman*) |
| | § | 5:19-cv-00678-XR (*Colbath*) |
| | § | 5:19-cv-00691-XR (*Braden*) |
| | § | 5:19-cv-00706-XR (*Lookingbill*) |
| | § | 5:19-cv-00714-XR (*Solis*) |
| | § | 5:19-cv-00715-XR (*McKenzie*) |
| | § | 5:19-cv-00805-XR (*Curnow*) |
| | § | 5:19-cv-00705-XR (*Workman*) |
| | § | 5:19-cv-00806-XR (*Macias*) |

**UNITED STATES' RESPONSES AND OBJECTIONS TO PLAINTIFFS'
AMENDED FIRST REQUEST FOR ADMISSIONS & INTERROGATORIES TO
DEFENDANT, UNITED STATES OF AMERICA**

Defendant United States of America responds and objects to Plaintiffs' Amended

First Request for Admissions & Interrogatories to Defendant, United States of America

("RFA" and "Interrogatories," respectively) as set forth below.

The following responses are made solely for the above-captioned consolidated

actions. Each and every response is subject to any and all objections regarding relevance,

materiality, and admissibility, including any objections requiring exclusion of any

1

response if it were introduced as evidence in any court proceeding.  Any and all evidentiary objections are expressly reserved.  The United States' responses to the RFAs and Interrogatories are, to the extent applicable, subject to the Protective Order entered in this action.

Any and all words and terms utilized in the following responses shall be construed in accordance with their normal meaning and connotations.  Incidental or implied admissions are not intended by the following responses.  A response or objection to any particular RFA or Interrogatory shall not be deemed to be an admission that United States accepts or admits the existence of any facts set forth in or assumed by any particular RFA or Interrogatory.

Responses and objections are based upon information and/or documents presently available to and located by the United States upon reasonable inquiry.  The United States expressly reserves the right to produce further information and/or documents in response to these RFAs and Interrogatories, and to modify, revise, supplement, or amend its responses as it deems appropriate.

## OBJECTIONS APPLICABLE TO ALL REQUESTS FOR ADMISSIONS AND INTERROGATORIES

Each of the following general objections is incorporated into each of the United States' responses as though fully set forth therein, and is in addition to any specific objections stated within those responses.

1.  The United States has filed a motion for protective order seeking relief from Plaintiffs' requests for admissions and interrogatories because they are improper, unduly burdensome, oppressive, and disproportional to the needs of the case,

particularly because many of these requests seek information irrelevant to the remaining issues in this litigation, and the arguments contained in such motion are incorporated herein.  That motion is pending.  As noted in the motion for protective order, the United States and the Plaintiffs have conferred in good faith as to the permissible scope of discovery, but the parties have been unable to reach any agreement.  The United States therefore objects to the RFAs and Interrogatories, including the instructions, to the extent that they are overbroad, unduly burdensome, oppressive, irrelevant, and/or not calculated to lead to the discovery of admissible evidence.

2.   The United States objects to the RFAs and Interrogatories, including the instructions, to the extent that they may encompass information and documents that are protected from disclosure by the attorney-client privilege, the work-product doctrine, or any other applicable privilege, or immunity, as well as any information or documents that reveal the impressions, conclusions, opinions, legal research, or theories of the United States' attorneys or their agents.  Because no such information will be purposely provided, the United States will interpret each RFA and Interrogatory as excluding information subject to the attorney-client privilege, work-product doctrine, and any other applicable privilege or immunity.   If responsive information or documents are withheld on the basis of any such privilege, doctrine, or immunity, the United States will provide a privilege log; however, the privilege log will not include privileged documents created after the date on which the first-to-file action was filed or documents prepared by or for the attorneys representing the United States or the

agencies whose conduct or lack thereof is the basis for the claims asserted in this litigation.  The United States reserves the right to seek additional modifications regarding the scope of the privilege logs.

3. The United States objects to the RFAs and Interrogatories, and the instructions, to the extent that they seek information protected by the privacy protections of the United States or Texas Constitutions, or any other law, statute, or doctrine, including the Health Insurance Portability and Accountability Act ("HIPAA") and the psychotherapist-patient and doctor-patient privileges.

4. The United States objects to the RFAs and Interrogatories, and the instructions, to the extent that they purport to require the United States to search for and produce information or documents that are not within the possession, custody or control of the United States.

5. The United States objects to the RFAs and Interrogatories, and the instructions, to the extent that they seek information or documents that cannot be located by the United States after reasonably inquiry, are readily available from public sources, or are available to the plaintiffs from another source or by other means that are more convenient, more appropriate, less burdensome, or less expensive.

6. The United States objects to the RFAs and Interrogatories and the instructions, to the extent that they seek legal conclusions, and/or would require the United States to reach a legal conclusion in order to respond.

4

7.  The United States objects to the RFAs and Interrogatories, and the instructions, to the extent that they are argumentative, prejudicial, incorrect, vague, and/or ambiguous, and/or fail to identify the categories of requested documents with sufficient particularity.

8.  The United States objects to the RFAs and Interrogatories, and the instructions, to the extent they seek information or documents outside the applicable statute of limitations.

9.  Plaintiffs' requests for production were propounded on behalf of only four of the eighteen sets of Plaintiffs in this consolidated litigation.  Because this practice is inconsistent with the Court's consolidation of the eighteen cases "for all purposes" under Fed. R. Civ. P. 42, all Plaintiffs must jointly serve any discovery requests upon the United States.

10. Because Margaret McKenzie does not reside in this judicial district and because the "acts or omissions" for which she contends that the United States is liable did not occur in this judicial district, venue under 28 U.S.C. § 1402(b) is improper with respect to her, and any response to her requests for production is unnecessary.

**RESPONSES AND OBJECTIONS TO REQUESTS FOR ADMISSION**

**Request No. 1:**

Department of Defense Inspector General Report No. DODIG-2015-011, Evaluation of the Defense Criminal Investigative Organizations' Defense Incident-Based Reporting

System Reporting and Reporting Accuracy (Oct. 29, 2014)[1] is a genuine report authored by an agency of the United States of America on a matter within the scope of that agency's relationship and while the agency relationship existed.

**Objections:**

The United States objects to RFA No. 1 because it does not comport with the requirements of Fed.R.Civ.P. 36(a) for the following reasons:

(1) It seeks admissions on more than one matter which does not comport with Rule 36(a)(2), which requires that "[e]ach matter must be separately stated";

(2) It seeks an admission regarding the genuineness of a document, but it fails to comport with Rule 36(a)(2), which states that "[a] request to admit the genuineness of the document must be accompanied by a copy of the document unless it is, or has been, otherwise furnished or made available for inspection and copying"; and

(3) The phrase "authored by an agency of the United States of America on a matter within the scope of that agency's relationship and while the agency relationship existed" is vague and ambiguous.

**Response:**

Subject to and without waiving the above objections, the United States admits that Department of Defense Inspector General Report No. DODIG-2015-011, Evaluation of

---

[1] Available at https://media.defense.gov/2014/Oct/29/2001713419/-1/-1/1/DODIG-2015-011.pdf (last accessed July 24, 2019).

the Defense Criminal Investigative Organizations' Defense Incident-Based Reporting System Reporting and Reporting Accuracy (Oct. 29, 2014), is an official publication as defined by Federal Rule of Evidence 902(5).

**Request No. 2:**

Department of Defense Inspector General Report No. DODIG-2015-081, Evaluation of Department of Defense Compliance with Criminal History Reporting Requirements (February 12, 2015)[2] is a genuine report authored by an agency of the United States of America on a matter within the scope of that agency's relationship and while the agency relationship existed.

**Objections:**

In response to Request No. 2, the United States adopts and reasserts its objections to Request No. 1.

**Response:**

Subject to and without waiving the above objections, the United States admits that Department of Defense Inspector General Report No. DODIG-2015-081, Evaluation of Department of Defense Compliance with Criminal History Reporting Requirements

---

[2]  Available at https://media.defense.gov/2015/Feb/12/2001713470/-1/-1/1/DODIG-2015-081.pdf (last accessed July 24, 2019).

(February 12, 2015), is an official publication as defined by Federal Rule of Evidence 902(5).

**Request No. 3:**

Department of Defense Inspector General Report No. DODIG-2018-035, Evaluation of Fingerprint Card and Final Disposition Report Submissions by Military Service Law Enforcement Organizations (December 4, 2017)[3] is a genuine report authored by an agency of the United States of America on a matter within the scope of that agency's relationship and while the agency relationship existed.

**Objections:**

In response to Request No. 3, the United States adopts and reasserts its objections to Request No. 1.

**Response:**

Subject to and without waiving the above objections, the United States admits that Department of Defense Inspector General Report No. DODIG-2018-035, Evaluation of Fingerprint Card and Final Disposition Report Submissions by Military Service Law Enforcement Organizations (December 4, 2017), is an official publication as defined by Federal Rule of Evidence 902(5).

---

[3] Available at https://media.defense.gov/2017/Dec/05/2001852278/-1/-1/1/DODIG-2018-035.PDF (last accessed July 24, 2019).

**Request No. 4:**

Department of Defense Inspector General Report No. DODIG-2019-030, Report of the Investigation into the United States Air Force's Failure to Submit Devin Kelley's Criminal History Information to the Federal Bureau of Investigation (December 6, 2018)[4] is a genuine report authored by an agency of the United States of America on a matter within the scope of that agency's relationship and while the agency relationship existed.

**Objections:**

In response to Request No. 4, the United States adopts and reasserts its objections to Request No. 1.

**Response:**

Subject to and without waiving the above objections, the United States admits that Department of Defense Inspector General Report No. DODIG-2019-030, Report of the Investigation into the United States Air Force's Failure to Submit Devin Kelley's Criminal History Information to the Federal Bureau of Investigation (December 6, 2018), is an official publication as defined by Federal Rule of Evidence 902(5).

---

[4] Available at https://media.defense.gov/2018/Dec/07/2002070069/-1/-1/1/DODIG-2019-030_REDACTED.PDF (last accessed July 24, 2019).

**Request No. 5:**

Every statement contained in the Department of Defense Inspector General Report, dated December 6, 2018, and numbered DoDIG-2019-030, is factually true.

**Objection:**

The United States objects to RFA No. 5 because it does not comport with the requirement of Fed. R. Civ. P. 36(a)(2), which states that "[e]ach matter must be separately stated." Request No. 5 seeks an admission for "[e]very statement" contained in a 131-page report, which has nearly 2,000 statements addressing a wide range of topics.  Many of these statements are not relevant or material to the issues presented in this litigation. These irrelevant and immaterial topics include, but are not limited to, Kelley's personal history before he enlisted in the United States Air Force (USAF); criminal investigations into Kelley for matters not leading to his convictions for assault, which were the only reportable events under 18 U.S.C. §922(g)(1) through (9) and (n); Kelley's voluntary hospitalizations at Peak Behavioral Health Services; Kelley's sexual behavior with former girlfriends; and  DODIG reports that do not pertain to whether disqualifying information about Kelley was reported to the FBI's national instant criminal background check system.  Moreover, many statements in the DODIG-2019-030 report are compound and repetitive.

Furthermore, because RFA No. 5 seeks admissions for hundreds (and possibly thousands) of discrete matters, the Plaintiffs violated Local Rule 36 by serving more than 30 requests for admission without leave of court.

**Request No. 6:**

The United States Air Force's (USAF) was required by federal law and/or federal policy to collect and submit Devin Kelley's fingerprints and final disposition report to the FBI's Criminal Justice Information Services (CJIS) Division for inclusion in its databases after he was convicted of a crime of domestic violence by a USAF General Court-Martial.

**Objections:**

The United States objects to RFA No. 6.  It does not comport with the requirements of Fed.R.Civ.P. 36(a) for the following reasons:

(1) It seeks admissions on more than one matter which does not comport with Rule 36(a)(2), which requires that "[e]ach matter must be separately stated";

(2) It is vague and ambiguous because it fails to specifically identify the "federal law and/or federal policy" that applies to collecting and, separately, for submitting the fingerprints and the final disposition report to the FBI's CJIS for inclusion in its databases; it also fails to state when the fingerprints and final disposition report were required to be collected and submitted pursuant to the applicable law and/or policy.

**Response:**

Subject to and without waiving the above objections, the United States admits the following facts:

(1) USAF polices regarding the collection and submission of fingerprint cards and final disposition reports are promulgated through DoD 5505.11, Fingerprint Card and Final

Disposition Report Submission Requirements, and require that all DoD law enforcement agencies, including the 49th Security Forces Squadron that investigated Kelley, to report criminal history to the FBI CJIS after his court-martial conviction.

(2) Paragraph 5.3.4 of AFI31-205, dated 7 Apr. 2004, which was in effect June 2011 through December 2012, states, in pertinent part: "Complete two originals of the FD-249, Arrest and Institution Card and attach the inmate's photograph to the form on all post-trial inmates.  One is mailed to FBI, CJIS Division . . . and the second is maintained in the CTF [Correctional Treatment Files]."

(3) Paragraph 5.3.4.1 of AFI31-205, dated 7 Apr. 2004, which was in effect June 2011 through December 2012, states: "Upon receipt of Convening Authority (CA) action in which the adjudged sentence is set aside, remitted or overturned, accomplish FBI Form R-84, Final Disposition Report.  Mail one to the above address and maintain the second in the CTF."

(4) Following Kelley's court-martial conviction for assaulting Tessa Kelley and her son on November 7, 2012, the 49th Security Forces Squadron, pursuant to Paragraphs 5.3.4. and 5.3.4.1 of AFI31-205, was required to collect Kelley's fingerprints and submit them with the final disposition report to the FBI CJIS Division during the in-processing of Kelley into the confinement facility.

(5) Following Kelley's court-martial conviction for assaulting Tessa Kelley and her son on November 7, 2012, but prior to the shooting at the First Baptist Church of Sutherland Springs, Texas, November 5, 2017, there is no evidence that the 49th

Security Forces Squadron collected Kelley's fingerprints and submitted them with the final disposition report to the FBI CJIS Division during the in-processing of Kelley into the confinement facility.

(6) Following Kelley's court-martial conviction for assaulting Tessa Kelley and her son on November 7, 2012, but prior to the shooting at the First Baptist Church of Sutherland Springs, Texas, on November 5, 2017, there is no evidence that the FBI CJIS Division received Kelley's fingerprints or a final disposition report regarding his court-martial conviction for assaulting Tessa Kelley and her son on November 7, 2012.

**Request No. 7:**

The United States Air Force's failure to submit Devin Kelley's fingerprints and final disposition information to the FBI CJIS division allowed Kelley to pass the federally mandated background checks and to purchase four firearms from Federal Firearms Licensed dealers, which Kelley used three of those four firearms on November 5, 2017, to kill 26 people and wound 22 others at the First Baptist Church of Sutherland Springs, Sutherland Springs, Texas.

**Objections:**

The United States objects to RFA No. 7 because it does not comport with the requirements of Fed. R. Civ. P. 36(a)(2), which requires that "[e]ach matter be separately stated."

**Response:**

Subject to and without waiving the above objections, the United State admits the following facts:

(1) On December 22, 2014, Kelley purchased a Glock Model 19, a 9-millimeter, semi-automatic handgun, from Specialty Sports and Supply, in Colorado Springs, Colorado.  In completing the ATF Forms 4473, Kelley falsely represented that he was not prohibited by the Gun Control Act, 18 U.S.C. § 922(d), (g) & (n), from purchasing a firearm.  Upon contacting NICS, Specialty Sports and Supply was informed that it could proceed with the sale.

(2) On June 26, 2015, Kelley purchased a Ruger GP100, a .357 Magnum, revolver handgun, from Specialty Sports and Supply in Colorado Springs.  In completing the ATF Forms 4473, Kelley falsely represented that he was not prohibited by the Gun Control Act, 18 U.S.C. § 922(d), (g) & (n), from purchasing a firearm.  Upon contacting NICS, Specialty Sports and Supply was informed that it could proceed with the sale.

(3) On April 7, 2016, Kelley purchased a Ruger AR-556, a 5.56-millimeter, semi-automatic rifle, from Academy Sports and Outdoors (Store No. 41), in San Antonio, Texas.  In completing the ATF Forms 4473, Kelley falsely represented that he was not prohibited by the Gun Control Act, 18 U.S.C. § 922(d), (g) & (n), from purchasing a firearm.  Upon contacting NICS, Academy Sports and Outdoors was informed that it could proceed with the sale.

14

(4) On October 18, 2017, Kelley purchased a Ruger SR22, a .22 caliber, semiautomatic

handgun, from Academy Sports and Outdoors (Store No. 46), in Selma, Texas.  In

completing the ATF Forms 4473, Kelley falsely represented that he was not

prohibited by the Gun Control Act, 18 U.S.C. § 922(d), (g) & (n), from purchasing a

firearm.  Upon contacting NICS, Academy Sports and Outdoors was informed that it

could proceed with the sale.

(5) On November 5, 2017, Kelley entered the First Baptist Church of Sutherland Springs,

Sutherland Springs, Texas, and opened fire using at least one of the four weapons he

had purchased from Specialty Sports and Supply and Academy Sports and Outdoors.

He killed 25 people and wounded at least 20 others.

## RESPONSES AND OBJECTIONS TO INTERROGATORIES

**Interrogatory No. 1:**

Identify any statement within the Department of Defense Inspector General Report, dated

December 6, 2018, and numbered DoDIG-2019-030, that you contend is not factually

true and the basis for such a contention.

**Objections:**

The United States objects to Interrogatory No. 1 because it overbroad, unduly

burdensome, oppressive, irrelevant, and/or not reasonably calculated to lead to the

discovery of admissible evidence.  *See* the United States' Objection to Request No. 5.

**Interrogatory No. 2:**

Identify all persons who you believe have knowledge of relevant facts and identify the issues upon which you believe they have knowledge. *See* W.D. Tex. Local Rule CV-33(b)(1).

**Objection:**

The United States objects to this request on the ground that the parties continue to dispute the proper scope of discovery and the "relevant facts" of this case.  The United States has filed a motion for protective order seeking relief from Plaintiffs' requests for admissions and interrogatories because they are improper, unduly burdensome, oppressive, and disproportional to the needs of the case, particularly because the majority of these demands seek information irrelevant to the remaining issues in this litigation, and the arguments contained in such motion are incorporated herein.  That motion is pending. Subject to and without waiving those objections, the United States will provide a response to Interrogatory No. 2 following the Court's rulings on Defendant United States' Motion for a Protective Order, and the Confidentiality and Protective Order, Order Pursuant to Federal Rule of Evidence 502(d), and Discovery Order attached to United States' Motion for a Rule 16 Conference.

**Interrogatory No. 3:**

If you contend that some other person or legal entity is, in whole or in part, liable to the Plaintiffs in this matter, identify that person or legal entity and describe in detail the basis of said liability. *See* W.D. Tex. Local Rule CV-33(b)(5).

**Response:**

Defendant United States is still in the process of identifying other persons or legal entities that are, in whole or in part, liable to the Plaintiffs in this matter. Discovery is ongoing and Defendant reserves its right to supplement this interrogatory as additional information becomes available. Responsible Third Parties may include, but may not be limited to, Devin Patrick Kelley; any unknown person who may have conspired with Devin Patrick Kelley to commit the criminal act that was the cause of the injuries that are the subject of the lawsuit; any person or entity that negligently or unlawfully permitted Devin Patrick Kelley to obtain firearms, body armor, or ammunition utilized in the tragedy at issue, which may include, but are not limited to, Academy, Ltd., d/b/a Academy Sports & Outdoors and K & L Marketing Group, Inc., d/b/a Specialty Sports & Supply; and any person or entity with a legal duty to take action that may have prevented the tragedy at issue or to warn others concerning Devin Patrick Kelley's conduct.

Dated: September 3, 2019

**JOSEPH H. HUNT**
Assistant Attorney General
Civil Division
**JOHN F. BASH**
United States Attorney
Western District of Texas

17

**JOHN F. PANISZCZYN**
Assistant United States Attorney
State Bar. No. 15443855
**JAMES G. TOUHEY, JR.**
Director, Torts Branch
Civil Division
**STEPHEN E. HANDLER**
Senior Trial Counsel, Torts Branch
Civil Division

By:      */s/ Paul David Stern*
**PAUL DAVID STERN**
Trial Attorney, Torts Branch
Civil Division
*Counsel for the United States of America*

Dated: September 3, 2019      Signature for Responses:

/s/ Christin N. Sanders
**CHRISTIN N. SANDERS**
Attorney-Advisor
Air Force Legal Operations Agency
United States Air Force

18