UNITED STATES DISTRICT COURT FOR THE

WESTERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| JOE HOLCOMBE, ET AL. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 5:18-CV-555-XR |
| | ) | |
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Defendant. | ) | |

## ACADEMY, LTD., D/B/A ACADEMY SPORTS + OUTDOORS' MOTION FOR PROTECTION FROM SUBPOENA

TO THE HONORABLE JUDGE OF THE COURT:

Non-party Academy, Ltd., d/b/a Academy Sports + Outdoors ("Academy") asks this Court for protection from the third-party subpoena issued by the United States of America (the "United States" or "government"). The government seeks discovery arising from the same incident as the Texas state court litigation that most of the plaintiffs in this suit filed against Academy, which the Texas Supreme Court has stayed until further order of the Court in the pending mandamus proceedings. Specifically, the government seeks the same discovery Academy was ordered to produce in the state court litigation. But Academy objected to producing that discovery in the state court litigation on the grounds of the federal immunity statute (discussed below) and that discovery was only produced under an Agreed Protective Order and Confidentiality Agreement ("Agreed Protective Order"), a copy of which is attached hereto as Exhibit A, and all parties to this litigation should be required to conform to the same Agreed Protective Order. If not, the result will be that this Court will: (1) negate the parties' agreed and state court-ordered protections that governed this discovery in the first place; and (2) defeat the intent and purpose of the Texas Supreme Court's orders staying any further proceedings, including all discovery, against Academy.

## BRIEF FACTUAL BACKGROUND

In 2017 and 2018, a number of the victims and relatives of victims of the November 5, 2017 shooting in Sutherland Springs, Texas filed these lawsuits:

- *Ward v. Academy*, Cause No. 2017-CI-23341, in the 224th Judicial District Court of Bexar County, Texas;

- *Solis v. Academy*, Cause No. 2018-CI-14368, in the 438th Judicial District Court of Bexar County, Texas;

- *McMahan v. Academy*, Cause No.  2018-CI-23299, in the 285th Judicial District Court of Bexar County, Texas; and

- *Braden, R. v. Academy*, Cause No. 2018-CI-23302, in the 408th Judicial District Court of Bexar County, Texas

(collectively, the "Consolidated Cases").  Subsequently, in 2019, 56 additional plaintiffs filed *Braden, D. v. Academy*, Cause No. 2019-CI-03804, in the 225th Judicial District Court of Bexar County, Texas ("*Braden II*," collectively with the Consolidated Cases, the "Stayed Texas Litigation").  The Stayed Texas Litigation arose from the same incident at issue in this lawsuit, and involves some of the same plaintiffs and lawyers suing the United States here.

In the Stayed Texas Litigation, Academy urgently and persistently argued that under the Protection of Lawful Commerce in Arms Act – 15 U.S.C. §§ 7901 et seq. ("PLCAA"), it is immune from any "qualified civil liability action," as such term is defined under PLCAA, necessarily including the burdens of discovery resulting therefrom. Nonetheless, despite Academy's repeated objections to discovery on that basis, the Texas trial court ordered Academy to participate in some limited document and deposition discovery in the Consolidated Cases, before the court would hear Academy's motion for summary judgment asserting its PLCAA immunity defense.

The plaintiffs in the Consolidated Cases agreed that all of Academy's production, and all discovery, would be subject to the Agreed Protective Order, which was properly entered by the

Court to govern discovery.[1]  In reliance on this order, Academy provided the limited discovery—more than 6,000 pages of documents and information—and then pursued its summary judgment motion.

In the Consolidated Cases, the trial court improperly denied Academy's summary judgment motion to enforce PLCAA immunity, and Academy promptly sought appellate review. Ultimately, Academy petitioned the Texas Supreme Court for mandamus review, and urged that all discovery against it be stayed pending the outcome of that proceeding.  The Texas Supreme Court agreed and ordered that all state court litigation pending against Academy arising from the Sutherland Springs incident be stayed, including discovery.[2]  The Texas Supreme Court called for briefs on the merits, which have been submitted, and the case awaits decision by the Court.  In the meantime, the Consolidated Cases have remained stayed for all purposes.[3]

The *Braden II* case was filed in Bexar County district court after Academy's summary judgment motion was denied in the Consolidated Cases.  The *Braden II* Plaintiffs sought to continue discovery and circumvent the Agreed Protective Order, despite the stay in the Consolidated Cases.  Those efforts prompted the Texas Supreme Court to enter the second order expressly staying all discovery in *Braden II*, as well.[4]  The trial court in *Braden II* did not have the opportunity to consider a motion for summary judgment. The stay halted discovery based on Academy's position that PLCAA immunity bars lawsuits (including discovery) against it for the claims plaintiffs assert.[5]  Through its two stay orders, the Texas Supreme Court stayed the state

---

[1] Agreed Protective Order, attached as <u>Exhibit A</u>.
[2] Texas Supreme Court Stay Order 1, attached as <u>Exhibit B</u>.
[3] By agreement, plaintiffs in several new cases filed since the stays were issued voluntarily agreed to halt proceedings pending the Texas Supreme Court's resolution of the mandamus proceedings.
[4] Texas Supreme Court Stay Order 2, attached as <u>Exhibit C</u>.
[5] The federal PLCAA statute "immunizes a specific type of defendant from a specific type of suit." *City of New York v. Beretta U.S.A. Corp.*, 524 F.3d 384, 398 (2d Cir. 2008).

trial court proceedings against Academy, until it resolves Academy's mandamus proceedings seeking to enforce its immunity under PLCAA.

On March 5, 2020, the United States of America served Academy with a Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (the "Subpoena"). The Subpoena seeks the production of "all documents, records, communications, or other materials produced to any plaintiff" in the Consolidated Cases.

Accordingly, the subpoena raises three concerns that spurred Academy to file this Motion for Protection. First, the subpoena undercuts Academy's statutory immunity provided by PLCAA. Second, the subpoena seeks information that Academy provided to the Plaintiffs only pursuant to the Agreed Protective Order. Yet the subpoena says nothing about the Agreed Protective Order or protecting Academy's confidential, sensitive, and proprietary information. Third, the subpoena undermines the Texas Supreme Court's current stay of the Stayed Texas Litigation and discovery. The Texas Supreme Court entered that stay because Academy seeks to vindicate its right *not to even be sued in the first place*, and the Texas Supreme Court has determined that Academy should not be subject to any additional discovery unless and until that legal issue is decided.

## ARGUMENT AND AUTHORITIES

1.     **While Academy objects to any and all actions and/or judicial burdens imposed against it on the basis of PLCAA immunity and the Texas Supreme Court's stay of litigation and discovery, Academy will comply with a court order to make available all subpoenaed documents, which documents should be subject to the same protections set forth in the Agreed Protective Order governing the Stayed Texas Litigation.**

Academy expressly reserves, and does not waive, any and all rights under PLCAA and the stay of litigation and discovery put in place by the Texas Supreme Court in the Stayed Texas Litigation. Academy continues to insist that Congress enacted PLCAA to immunize Academy

and other law-abiding firearm retailers from litigation and all of its related expenses, including the time and money spent complying with discovery demands in qualified civil liability actions.

Academy recognizes that the government's subpoena extends only to those documents Academy already produced in the Consolidated Cases. The state trial court's order already deprived Academy of that limited portion of its PLCAA immunity, but it still only required Academy to produce materials subject to the Agreed Protective Order.  The harm to Academy will be lessened, though still substantial, if this Court orders that Academy produce the subpoenaed documents subject to the same Agreed Protective Order, which Academy attaches as Exhibit A to this motion for protective order.[6]

If this Court does not protect Academy's rights by making the production subject to the same restrictions in the Agreed Protective Order, this case will create new burdens—the very burdens that Congress enacted PLCAA to prohibit, in addition to the disclosure of confidential, sensitive, and proprietary information without the protection of a confidentiality order to prevent their public disclosure.

Fortunately, it appears this Court will not have to examine the PLCAA issues already pending before the Texas Supreme Court.  Academy has conferred with the United States Attorney's Office regarding the entry of Exhibit A as a prerequisite to Academy's submission of documents in this lawsuit.  The United States Attorney's Office is not opposed to the language in Exhibit A governing Academy's response to the subpoena issued by the United States Attorney's office.  Additionally, several of the plaintiffs' attorneys in this case have already confirmed and agreed to the Agreed Protective Order.

---

[6] Respectfully, Academy cannot produce the subpoenaed information unless compelled to do so in order to avoid any risk of violating the stay entered by the Texas Supreme Court.

2.    **Academy has a good cause basis for protecting the confidentiality of certain information: the safety of its employees and the confidentiality of its proprietary information.**

Like Texas state law, federal law explicitly empowers this Court to issue or enforce a protective order to protect Academy "from annoyance, embarrassment, oppression, or undue burden or expense." FED. R. CIV. P. 26(c)(1); *see also* TEX. R. CIV. P. 192.6(b).  Here, Academy acknowledges it may be ordered to produce documents to the government, and merely asks the Court to maintain the confidentiality of its commercially sensitive policies, procedures, and processes, as well as the identities of its employees, by prohibiting the *public disclosure* of those limited categories of information.  *Scott v. Monsanto Co.*, 868 F.2d 786, 792 (5th Cir. 1989) (upholding protective order entered by district court that protected confidential information relating to company processes and policies); *Butta-Brinkman v. FCA Int'l, Ltd.*, 164 F.R.D. 475, 476 (N.D. Ill. 1995) (supporting use of protective order to maintain confidentiality of identities of particular employees that would otherwise be disclosed in discovery process).

Academy urges that this Court grant it the protection specifically provided for under the Federal Rules, which has also previously been agreed to by plaintiffs in the Stayed Texas Litigation and enforced by the Bexar County Court, by ordering that the documents be produced subject to the terms of the Agreed Protective Order.

A.    **Academy has good cause and a legal basis for protecting the identities of its employees, which is a legitimate subject of protection under federal law.**

The unprotected disclosure of Academy's confidential information will do Academy's employees and Academy irreparable harm, but that harm can be prevented if the disclosure is made subject to the Agreed Protective Order.  Initially in the Stayed Texas Litigation, all Plaintiffs (and their counsel) unanimously agreed with Academy that the "identity of Academy employees in this

situation should absolutely remain confidential."[7]  The reason for that unanimity is clear: all parties recognize the visceral, emotional intensity of this case, and the possibility of individual threats to any Academy employees who are identified in connection with this case.[8]

For that reason, Academy has always insisted on protecting the names of Academy employees from public disclosure, and both the plaintiffs and the trial court in the Stayed Texas Litigation have agreed with those safeguards.  Academy did not withhold the identity of any employee requested by the plaintiffs; however, the plaintiffs and Academy concluded that employee identities should be maintained strictly confidential, and the Bexar County Court repeatedly agreed.  To that end, where employee identification was required in any non-confidential document in the Stayed Texas Litigation, it was either redacted or the employee was identified by title instead of name.  All parties and the court agreed this was an effective and appropriate solution to a difficult and sensitive issue. But for the protections of the Agreed Protective Order, Academy would not have had any way to protect the safety of its employees, despite the fact that all parties, and the Bexar County Court agreed that it was prudent and necessary to do so.

Federal courts addressing the same issue have agreed both that the identities of employees are a proper subject for protection and that the method Academy seeks to employ—strict prohibition on public disclosure and/or use of Academy employee names and identities for any purpose outside of the litigation—is appropriate.  *Butta-Brinkman*, 164 F.R.D. at 476.  The court in *Butta-Brinkman* confronted this precise issue—whether employee identities should be protected from public disclosure even if they are within the scope of discovery—under the Federal Rules.

---

[7] Transcript of March 8, 2019 Hearing in Consolidated Cases, 46:18-24 (Justin Demerath speaking), attached as Exhibit D.

[8] *See id.*

164 F.R.D. at 476. In that case, the court expressly held that, while a party is not entitled to withhold discovery of its employees' identities if they are within the scope of discovery, it may nonetheless seek a protective order to keep the employee names confidential and/or otherwise prohibit public disclosure. *Butta-Brinkman*, 164 F.R.D. at 476; FED. R. CIV. P. 26(c). That is precisely what Academy seeks to do here. *Id.* As the Court held in *Butta-Brinkman*, Academy's interest in protecting its employees is legitimate, and Academy's method for doing so is sound. *Id.* This Court should do the same, and continue to protect the safety and privacy of Academy's employees, just as plaintiffs in the Stayed Texas Litigation agreed to do, and just as the Bexar County Courts have vigilantly enforced to date.

**B.    Academy has good cause and a legal basis for protecting its confidential processes, policies, and procedures, which are a legitimate subject of protection under federal law.**

In addition to the identities of Academy's employees, Academy has also produced, as ordered by the Texas state trial courts, a large volume of highly confidential, sensitive, and commercially valuable business information in the Consolidated Cases, subject to the Agreed Protective Order. For that reason, the Agreed Protective Order defines "Confidential Information" to include:

> Information, documents, and things designated as "CONFIDENTIAL" and reasonably considered in good faith by a party to contain either: (a) non-public, proprietary, or confidential financial or business information; (b) non-public, proprietary, or confidential sales and customer information; (c) non-public, proprietary, or confidential corporate and strategic planning information; or (d) the identity of Academy personnel disclosed as persons with knowledge or designated as potential witnesses.[9]

As agreed to and entered in the Consolidated Cases, these four categories of "Confidential Information" are narrowly tailored to fit the specific needs of the parties and closely track both

---

[9] Agreed Protective Order, attached as Exhibit A.

statutory and case law in this area.  FED. R. CIV. P. 26(c)(1); *Scott v. Monsanto Co.*, 868 F.2d 786, 792 (5th Cir. 1989) (upholding protective order entered by district court that protected confidential information relating to company processes and policies); *see also Sanders v. Shell Oil Co.*, 678 F.2d 614, 618 (5th Cir. 1982).

Academy has already relied on the Agreed Protective Order in producing highly confidential, sensitive, and commercially valuable information in the Consolidated Cases that fits within each of the first three categories, as well as the identities of Academy employees covered by the fourth category, in the Stayed Texas Litigation.[10]  The government's subpoena seeks all of the same information.

Specifically, in the Consolidated Cases, Academy has produced the following documents, all of which include non-public, proprietary, and confidential financial, business, and strategic planning information:

- Academy firearm training policies and procedures;
- Academy firearms procedure manuals;
- Academy firearm license applications and renewals;
- Academy emails regarding policies and procedures and the strategies related thereto;
- Academy Bureau of Alcohol, Tobacco, and Firearm ("ATF") audits;
- Academy human resource materials for certain employees; and
- Academy public communications procedures.[11]

Academy has also produced the following documents, which contain non-public, proprietary, and confidential sales information in the Consolidated Cases:

- Information on the sales of all modern sporting rifles from all Bexar County stores to out of state purchasers;
- Summary of cost, revenue, and profit for sales to out of state purchasers; and
- Academy vendor and distributor agreements with terms specific to Academy.[12]

---

[10] Affidavit of Academy, attached as <u>Exhibit E</u> (this document has been redacted to protect the name of the employee executing the affidavit but, if requested, will be provided to the Court for in camera inspection prior to the hearing on this motion).
[11] *Id.*
[12] *Id.*

The threat posed to Academy by the unrestricted disclosure of this confidential financial, business, strategic, and sales information is that it will be used by Academy's competitors, and other market actors, to both compete with, and undercut, Academy.[13]   Academy's non-public policies and procedures, for example, have been implemented by Academy through years of development and the investment of substantial financial and human resources.  These documents are both proprietary to Academy and the product of extensive work and expense put forth by Academy.[14]  Revealing that information to competitors and the market at large robs Academy of its efforts and expense and rewards other market competitors with the fruits of Academy's proprietary labor.[15]  This is exactly the kind of commercial information protective orders are designed, and permitted, to protect.  *Scott*, 868 F.2d at 792.  The government's subpoena covers all of these same documents.  Academy has proven a valid basis for both the Agreed Protective Order and the confidentiality of its proprietary, non-public information.[16]

The Fifth Circuit approved a protective order to prevent the public disclosure of similar in formation in *Scott v. Monsanto Co.*, 868 F.2d 786 (5th Cir. 1989).  In that case, the court held that Monsanto satisfied its burden under Rule 26(c) by demonstrating that responding to plaintiffs' requests for discovery necessitated the disclosure of confidential matters, including Monsanto's internal policies and procedures.  *Id.* (citing *Sanders v. Shell Oil Co.*, 678 F.2d 614, 618 (5th Cir. 1982) and *Swanner v. United States*, 406 F.2d 716, 719 (5th Cir. 1969)).  In concluding that Monsanto's protective order was valid, enforceable, and appropriate under federal law, the Fifth Circuit held:

---

[13] *Id.*
[14] *Id.*
[15] *Id.*
[16] *Id.*

The protective order entered in this case was not unduly constricting. **The plaintiffs were free to use any discovery materials in the development of their case. The protective order merely restricted use of those materials to this litigation.** Although plaintiffs claim harm from the inability to share and compare information with other litigants in other cases, no prejudice has been shown sufficient to overcome the district court's broad discretion in this area. The entry of the protective order was not an abuse of discretion.

*Scott*, 868 F.2d at 792 (emphasis added). That is all Academy seeks in this case: merely to restrict the use of any documents it produces to this litigation, just as such documents have been restricted in the Consolidated Cases. *Scott*, 868 F.2d at 792. The entry of the Agreed Protective Order in this litigation is consistent with federal law and will ensure that is the case. *Id.*; Fed. R. Civ. P. 26(c).

      **C.    The Agreed Protective Order is consistent with the law and should be entered in this case.**

            **i.    The Court has authority to enter a protective order that prevents public disclosure of Academy and its employees' confidential information.**

The Agreed Protective Order is valid, enforceable, and consistent with the law. Fed. R. Civ. P. 26(c)(1); *Scott*, 868 F.2d at 792; *Sanders*, 678 F.2d at 618; *Swanner*, 406 F.2d at 719. Any party may seek a protective order limiting or otherwise restricting document disclosure in any situation where the disclosure threatens a particular, specific, and demonstrable injury. *Scott*, 868 F.2d at 792; *Butta-Brinkman*, 164 F.R.D. at 476; *EEOC v. BDO USA, L.L.P.*, 876 F.3d 690, 698 (5th Cir. 2017). The Court may issue a protective order for a variety of purposes, including "[t]o protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1); *Scott*, 868 F.2d at 792; *Butta-Brinkman*, 164 F.R.D. at 476; *Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995) (setting forth a number of factors relevant to good cause for protection under Fed. R. Civ. P. 26(c)).[17] In furtherance of any

---

[17] Fed. R. Civ. P. 26(c)(1) closely tracks the language of the Texas rule, Tex. R. Civ. P. 192.6(b).

appropriate purpose, the Court may order that the requested discovery not be sought, that the extent or subject matter of discovery be limited, or that the results of discovery be sealed or otherwise protected, as is the case here.  *Id.*  Here, Academy merely seeks to have this Court protect certain documents and information that Academy produces, as set forth in the Agreed Protective Order previously agreed to by plaintiffs and the State court in the Stayed Texas Litigation.[18]

### ii.     Protective orders may be used to protect against harassment and/or the invasion of commercial, personal, or property interests.

Protective orders are appropriate and should be issued to protect legitimate privacy or confidentiality interests and to defend against annoyance, embarrassment, undue burden, or expense.  FED. R. CIV. P. 26(c)(1); *Scott*, 868 F.2d at 792; *In re Ohio Execution Protocol Litig.*, 845 F.3d 231, 236 (6th Cir. 2016).  To be entitled to protection, Academy need only show good cause and that Academy's interests fit within the dictates of Rule 26.  *Id.*; *Sanders*, 678 F.2d at 618; *Glenmede Trust Co.*, 56 F.3d at 483.

Further, information need not be a trade secret for it to be subject to protection by the court. *Scott*, 868 F.2d at 792; *Butta-Brinkman*, 164 F.R.D. at 476; *McKinney/Pearl Rest. Partners, L.P. v. Metro. Life Ins. Co.*, 322 F.R.D. 235, 242 (N.D. Tex. 2016) (holding that the court has broad discretion in when and how to fashion protective orders).  To the contrary, in both *Scott* and *Butta-Brinkman*, discussed in detail, above, federal courts specifically approved protective orders for the purpose of protecting a company's policies and procedures, in *Scott*, and the identity of a company's employees, in *Butta-Brinkman*, by prohibiting public disclosure of such documents and information and expressly limiting their use to the subject litigation.  *Id.*  Again, that is all Academy asks the Court to do here.

---

[18] Agreed Protective Order, attached as <u>Exhibit A</u>.

3.    **Forcing Academy to produce documents in this case without the Agreed Protective Order would undermine the rights that PLCAA protects, would defeat Academy and Academy's employees' legitimate interests in privacy and confidentiality, and would defeat the protections in place in the Stayed Texas Litigation.**

All of Academy's production in the Consolidated Cases, which is the entire universe of documents requested by the United States in its subpoena, was made over Academy's objections and its assertion of immunity pursuant to PLCAA. The United States seeks discovery of the very same documents from the Consolidated Cases. But this Court must recognize that Academy produced that discovery subject to the express Agreed Protective Order, and then continued to fight to vindicate its PLCAA immunity from suit in the Texas Supreme Court. Those restrictions should guide this Court's judgment as well.

Recognizing Academy's legitimate interest in the safety of its employees and the confidentiality of its proprietary information, the Agreed Protective Order was carefully drafted, negotiated, and agreed to by Academy and the plaintiffs to adequately protect the parties' legitimate confidentiality interests. The Agreed Protective Order governed discovery that was completed against Academy, the production of documents by Academy, and the depositions of Academy employees. Any disclosure of the documents produced in the Consolidated Cases by Academy in this case should be subject to the same protections.

A.    **Academy has a legitimate, good cause basis for protecting the confidentiality of Academy's and Academy's employees' private information, and the parties in this case have no valid basis for seeking any discovery that is, in form or substance, in excess of what Academy has already been subjected to in the Stayed Texas Litigation.**

By definition, Academy has already produced all of the same documents the government asks it to disclose in this lawsuit. But Academy only did so pursuant to court order and subject to the Agreed Protective Order in the Consolidated Cases. Academy requests that the Court provide

13

Academy the same protection it was provided by the Agreed Protective Order in the Stayed Texas Litigation.

There is no valid basis for any disclosure of any documents in excess of Academy's prior production, subject to the same protections as Academy's prior production. The government has not requested any such documents, nor has the government objected to or opposed the Agreed Protective Order. Plaintiffs, on the other hand, should be prohibited from doing so, because they either expressly agreed to the Agreed Protective Order, in which case they should be bound by it, or they are subject to the Texas Supreme Court's stay of discovery against Academy, in which case they must not be allowed to use this lawsuit to defeat that order. *See Orthoflex, Inc. v. ThermoTek, Inc.*, Civ. Nos . 3:11-cv-0870-D, 3:10-cv-2618-D, 2013 WL 3095106, at *3 (N.D. Tex. June 20, 2013) (agreed protective orders should be enforced like contracts).

**B.      It would be error for this Court to refuse to enforce the Agreed Protective Order in this lawsuit.**

It would be error for a court to vacate or refuse to enforce a protective order that has been agreed to and relied on, even in another proceeding. *Keene Corp. v. Caldwell*, 840 S.W.2d 715, 720 (Tex. App.–Houston [14th Dist.] 1992, orig. proceeding); *see also Orthoflex, Inc.*, 2013 WL 3095106, at *3 (holding that an agreed protective order may be treated, substantively, as a contract, and enforceable as such). Because agreed protective orders are treated like contracts under both state and federal law, the analysis of agreed protective orders present a combination of both substantive and procedural issues. *Orthoflex, Inc.*, 2013 WL 3095106, at *3. While the Agreed Protective Order is certainly subject to federal standards, Plaintiffs' promise to be bound by the Agreed Protective Order is a substantive issue of law for which Texas law is instructive and relevant.

On that basis, a court cannot vacate or refuse to enforce a protective order—like the Agreed Protective Order—which has been agreed to and relied on to produce documents, even if that protective order was issued in another proceeding. *Id.* In *Keene*, the court determined just that, holding that "[r]eliance on a protective order is a factor which should be given great weight when a court determines whether a protective order should later be vacated or modified." *Id.* The court went on to explain that, because the parties had allowed certain evidence to be disclosed because they believed it would be secure under the protective order, "[i]t would be unfair to tell the parties . . . that their reliance was misplaced. It would frustrate the discovery process because parties would fear that any protective order issued could later be vacated by another court." *Id.* The court issued a writ of mandamus because the trial court abused its discretion in ordering a party to produce documents that were protected by the protective order, even though that order governed discovery in a separate proceeding. *Id.*; *see also Pittsburgh Corning Corp. v. Caldwell*, 861 S.W.2d 423, 426-27 (Tex. App.—Houston [14th Dist.] 1993, orig. proceeding) (also enforcing a protective order even though it was issued in another proceeding).

In *Pittsburgh Corning Corp.*, the court followed *Keene* and gave "due deference and respect" to a protective order issued by a federal district judge in a separate proceeding. 861 S.W.2d at 426. The court noted that "[t]o allow one court to intrude upon the orders of another is not in the interest of judicial economy and is inappropriate without concrete public policy concerns," which are not at play here. *Id.* On that basis, the court held that the trial court clearly abused its discretion in ordering a party to produce a document that was subject to a protective order. *Id.*

To the extent Plaintiffs in this lawsuit object to the Agreed Protective Order, even though the United States does not, the principle that a party cannot use a protective order to get another

party to produce documents and then, once the documents are produced, pull the protective order out from under them applies with even more force, because some of the same lawyers representing the Plaintiffs here are also counsel for plaintiffs in the Consolidated Cases, who are unquestionably governed by the Agreed Protective Order.[19]  Texas Courts have been clear that any such strategy by Plaintiffs is improper, because "[a] party is estopped from complaining of error in the trial court when the error occurred at the party's request."  *Shafer v. Bedard*, 761 S.W.2d 126, 131 (Tex. App.–Dallas 1988, no writ).  Consequently, when a party seeks a protective order and receives a protective order with substantially similar terms, that party may not subsequently challenge the terms of the protective order.  *Id.*  If Plaintiffs object to the Agreed Protective Order here, that is precisely what they will be doing, and precisely why any such attempt must be rejected by the Court.

## CONCLUSION

Academy is not a party to this lawsuit.  However, while Academy continues to assert its immunity from suit, liability, and discovery pursuant to PLCAA in the Stayed Texas Litigation, Academy is willing to provide, if ordered by this Court, any documents or information responsive to the government's subpoena, but requests that all such disclosure be subject to the protections set forth in the Agreed Protective Order.  Specifically, Academy asks that: (1) its confidential business information; and (2) the identities of its employees not be subject to public disclosure, be maintained on a confidential basis, and be restricted to use in this lawsuit and for no other purpose.

These limited protections are expressly provided for in the Federal Rules and have specifically been applied by federal courts in the manner that Academy requests to the same categories of documents and information Academy seeks to protect.  FED. R. CIV. P. 26(c)(1);

---

[19] Agreed Protective Order, attached as <u>Exhibit A</u>.

16

*Scott*, 868 F.2d at 792; *Butta-Brinkman*, 164 F.R.D. at 476.  Additionally, the Court's refusal to enter these limited protections will undermine the stay orders of the Texas Supreme Court. Importantly, ordering production of the subpoenaed documents without an adequate protective order will cause irreparable harm to Academy and individual Academy employees, including making public and raising significant safety concerns for the employees' well-being and public disclosure of Academy's confidential information and trade secrets.

Such an order of disclosure without confidentiality protections would imperil substantial public interests by endangering the safety of employees and rendering valueless trade secrets and confidential and sensitive information, thereby providing undue advantage to adversaries and competitors.  There is no adequate compensation or remedy for disclosed confidential and sensitive information and trade secrets, which makes such a disclosure order unreviewable on appeal.

For these reasons, Academy asks the Court to enter the attached Agreed Protective Order, so that Academy can disclose the information sought by the government's subpoena, as ordered, without delay or prejudice to its rights.

RESPECTFULLY SUBMITTED,

**LOCKE LORD LLP**

By:     */s/ Janet E. Militello*
         Janet E. Militello
         Tex. Bar No. 14051200
         2800 JPMorgan Chase Tower
         600 Travis Street
         Houston, Texas  77002-3095
         (713) 226-1208
         (713) 229-2544 (fax)

         **ATTORNEY-IN-CHARGE FOR
         ACADEMY, LTD. d/b/a
         ACADEMY SPORTS + OUTDOORS**

17

Of Counsel:

**LOCKE LORD LLP**
Brandon Renken
Tex. Bar No. 24056197
2800 JPMorgan Chase Tower
600 Travis Street
Houston, Texas  77002-3095
(713) 226-1131
(713) 229-2652 (fax)

**PRITCHARD YOUNG LLP**
David M. Pritchard
Tex. Bar No. 16317900
Kevin M. Young
Tex. Bar No. 22199700
10101 Reunion Place, Suite 600
San Antonio, Texas  78216
(210) 477-7400
(210) 477-7450 (fax)

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served on all counsel of record pursuant to the Federal Rules of Civil Procedure on March 20, 2020.

*/s/ Janet E. Militello*
Janet E. Militello