# **EXHIBIT D**

1               REPORTER'S RECORD

2             VOLUME 1 OF 1 VOLUME

3    _____
           *TRIAL COURT CAUSE NO. 2017-CI-23341*
     CHRIS WARD, ET AL,        )   IN THE DISTRICT COURT OF
4            *Plaintiffs,*      )
     V.                        )   BEXAR COUNTY, TEXAS
5    ACADEMY, LTD. D/B/A ACADEMY )
     SPORTS + OUTDOORS,        )
6            *Defendant.*       )   224TH JUDICIAL DISTRICT
     _____
           *TRIAL COURT CAUSE NO. 2018-CI-14368*
7    ROSANNE SOLIS, ET AL,     )   IN THE DISTRICT COURT OF
             *Plaintiffs,*      )
8    V.                        )   BEXAR COUNTY, TEXAS
                               )
9    ACADEMY, LTD. D/B/A ACADEMY )
     SPORTS + OUTDOORS,        )
10           *Defendant.*       )   438TH JUDICIAL DISTRICT
           *TRIAL COURT CAUSE NO. 2018-CI-23302*
11   ROBERT BRADEN,            )   IN THE DISTRICT COURT OF
             *Plaintiff,*       )
12   V.                        )   BEXAR COUNTY, TEXAS
                               )
13   ACADEMY, LTD. D/B/A ACADEMY )
     SPORTS + OUTDOORS,        )
14           *Defendant.*       )   408TH JUDICIAL DISTRICT
           *TRIAL COURT CAUSE NO. 2018-CI-23299*
15   CHANCIE MCMAHAN, ET AL,   )   IN THE DISTRICT COURT OF
             *Plaintiffs,*      )
16   V.                        )   BEXAR COUNTY, TEXAS
                               )
17   ACADEMY, LTD. D/B/A ACADEMY )
     SPORTS + OUTDOORS,        )
18           *Defendant.*       )   285TH JUDICIAL DISTRICT
     -------------------------------------------
19   **DEFENDANT'S MOTION TO QUASH DEPOSITIONS AND TO ENFORCE**
      **AGREED PROTECTIVE ORDER AND CONFIDENTIALITY AGREEMENT**
20                     **MARCH 8, 2019**
     -------------------------------------------
21           On the 8th day of March, 2019, the
     following proceedings came on to be heard in the
22   above-entitled and numbered cause before the HONORABLE
     NORMA GONZALES, Judge Presiding, held in the 131st
23   District Court, San Antonio, Bexar County, Texas:
             Proceedings reported by machine shorthand.
24   _____
     MARY ORALIA BERRY, CSR, RDR, CRR OFFICIAL COURT REPORTER
25   131ST DISTRICT COURT            BEXAR COUNTY COURTHOUSE
     SAN ANTONIO, TEXAS  78205       (210)335-2289

1            A P P E A R A N C E S:

2

3 MR. MARCO A. CRAWFORD
     SBOT NO.:  24068756
4 MR. DENNIS J. BENTLEY
     SBOT NO.:  24079654
5     Thomas J. Henry Injury Attorneys
    521 Starr Street
6     Corpus Christi, Texas  78401
    Phone:  (361)985-0600
7        ATTORNEYS FOR PLAINTIFFS, CHANCIE MCMAHAN,
       INDIVIDUALLY AND AS NEXT FRIED OF R.W., A
8        MINOR; ROY WHITE, INDIVIDUALLY AND AS
       REPRESENTATIVE OF THE ESTATE OF LULA WHITE; AND
9        SCOTT HOLCOMBE

10

11 MR. JUSTIN B. DEMERATH
     SBOT NO.:  24034415
12     O'Hanlon, Demerath & Castillo, P.C.
    808 West Avenue
13     Austin, Texas  78701
    Phone:  (512)494-9949
14        ATTORNEY FOR PLAINTIFF, ROBERT BRADEN

15

16 MR. DAVID M. PRICHARD
     SBOT NO.:  16317900
17     Prichard Young, LLP
    10101 Reunion Place, Suite 600
18     San Antonio, Texas  78216
    Phone:  (210)477-7400
19

    -AND-
20

21 MS. JANET E. MILITELLO
     SBOT NO.:  14051200
   MR. NICHOLAS J. DEMEROPOLIS
22     SBOT NO.:  24069602
    Locke Lord, LLP
23     2800 JPMorgan Chase Tower
    600 Travis Street
24     Houston, Texas  77002
    Phone:  (713)226-1200
25        ATTORNEYS FOR DEFENDANT, ACADEMY, LTD. D/B/A
       ACADEMY SPORTS + OUTDOORS

**CHRONOLOGICAL INDEX**

**VOLUME 1**

**MARCH 8, 2019**

|                                           | **PAGE** | **VOL** |
|-------------------------------------------|----------|---------|
| CAPTION .......................................  | 1        | 1       |
| APPEARANCES ...................................  | 2        | 1       |
| CHRONOLOGICAL INDEX ...........................  | 3        | 1       |
| PROCEEDINGS ...................................  | 4        | 1       |
| COURT'S RULING ................................  | 50       | 1       |
| ADJOURNMENT ...................................  | 67       | 1       |
| COURT REPORTER'S CERTIFICATE ..................  | 68       | 1       |

**P R O C E E D I N G S**

**MARCH 8, 2019**

**FRIDAY**

1
2
3
4      *(9:02 a.m.  Before the Court.)*

5              *THE COURT:*  The Court calls 2018-CI-14368,

6  Rosanne Solis, Et Al v. Academy, Ltd.  Announcements for

7  the record, please.

8              *MR. CRAWFORD:*  Yes, Your Honor, Marco

9  Crawford.  I represent Chancie McMahan, Roy White, and

10  Scott Holcombe.

11              *MR. DEMERATH:*  Justin Demerath, Your

12  Honor.  I represent plaintiff Robert Braden.

13              *MR. BENTLEY:*  And Dennis Bentley, Your

14  Honor.  I'm also with Marco for Chancie McMahan, Scott

15  Holcombe, and Roy White.

16              *THE COURT:*  How do you spell your last

17  name?

18              *MR. BENTLEY:*  B-E-N-T-L-E-Y.

19              *THE COURT:*  All right.  Mr. Prichard?

20              *MR. PRICHARD:*  Good morning, Your Honor.

21  David Prichard for Academy Sports + Outdoors.  I've got

22  my two colleagues, Janet Militello and Nick Demeropolis.

23              *THE COURT:*  Got it.

24              It started, and then it stopped.

25              *(Discussion off the record.)*

MARY ORALIA BERRY – OFFICIAL COURT REPORTER
131ST DISTRICT COURT - (210)335-2289

1              *THE COURT:*  All right.  What do we have?
2   Whose motion is it?

3              *MR. PRICHARD:*  It's our -- it's our motion
4   to quash two depositions.  As the Court may can tell
5   from the pleadings, this is a lawsuit that several
6   plaintiffs have filed against Academy Sports + Outdoors
7   as a result of the Sutherland Springs tragedy.

8              In this matter, the plaintiffs seek now to
9   re-depose two witnesses.  We call them -- because of a
10  protective order, we call them Deponent A and
11  Deponent B.  One of them is the manager of the Academy
12  store where the firearm in question was purchased.
13  Deponent B is the director of compliance for Academy
14  Sports + Outdoors.  And back in November of this year
15  with the agreement of counsel, these two individuals
16  were produced for depositions.

17             The director of compliance, his deposition
18  lasted almost five hours.  Everybody had an opportunity
19  to ask all of the questions that they were interested in
20  asking.  It was supposed to be limited to a certain --
21  certain areas, but Ms. Militello, being gracious,
22  allowed them to ask any of the questions that they
23  wanted to ask of this gentleman for five hours and
24  several hundred pages.  The store manager lasted over an
25  hour, over 103 pages, the same thing.  And questions

1  were asked, no scope limitation, no instructions not to

2  answer the questions.  Those were conducted in November,

3  and now they seek to re-depose them.

4           And so, you know, I think Ms. Militello

5  made it very clear on the record:  "We're going to do

6  this one time, one time."  And now they come back, and

7  they're asking to re-depose these people, these two

8  gentlemen.  We object.  We don't think that's fair.  We

9  don't think that's right.

10          We don't have any pleadings from them on

11 this motion.  They haven't -- they haven't really

12 expressed to us what the purpose is, and I think the

13 purpose has to be good cause, Your Honor.  They have to

14 show exactly why they need these depositions.

15          And I will just, as an advisory, let the

16 Court know that there has been yet another lawsuit

17 filed.  It's not with this case, so there are other

18 matters that are out there.  It may be at some point in

19 time we're back here having to discuss more depositions

20 of these same individuals.

21          *THE COURT:*  So other plaintiffs out of the

22 same incident?

23          *MR. PRICHARD:*  Correct, Your Honor.

24 Correct.  So for them to get a second bite at the apple,

25 that's just -- that's just wrong.  It's invasive.  They

1  had their opportunity.  They were told they had their

2  opportunity, and we respectfully ask that the Court

3  quash these depositions.  They've had their chance.

4          In fact, I will tell you that

5  Ms. Militello said, "Look, guys, I think this is a

6  little premature.  Why don't we get some of the written

7  discovery?"

8          They were insistent.  "No.  We want to go

9  forward."

10          "Okay.  We'll go forward, but I don't

11  think this is the right time."

12          "Oh, yeah, we want to go forward."

13          We understand that.  They have that right.

14  She made it happen.  They took the deposition, and now

15  here we are.  We want a second bite at the apple.

16          This case is going to be tough enough when

17  it's time to move on to other issues, and we

18  respectfully ask that the Court quash these depositions.

19          *THE COURT:*  All right.  Response?

20          *MR. CRAWFORD:*  Yes, Your Honor.  Just to

21  clarify a few things, there are multiple lawsuits that

22  have been filed against Academy.  That's no dispute

23  there.

24          I want to clarify that a prior Judge in

25  Bexar County has consolidated discovery for all of those

1    plaintiffs; different trial dates, but consolidated
2    discovery.  I also want to clarify and maybe inform the
3    Court --
4              *THE COURT:*  Consolidated discovery, does
5    that include depositions, or is that just written
6    discovery?
7              *MR. CRAWFORD:*  It's both.
8              *THE COURT:*  Okay.
9              *MR. CRAWFORD:*  And just to plug in some
10   gaps here, lawsuits were filed against Academy.  And
11   immediately a motion for summary judgment was filed by
12   Academy, and that motion for summary judgment was filed
13   on the basis that there's a federal statute that
14   prevents this type of lawsuit from taking place.
15             A hearing was heard to continue that
16   hearing -- that motion for summary judgment, and that
17   hearing was heard on October 22nd, 2018.  If you look at
18   Tab 4 of that really, really big binder, which is to
19   your left right there, that is the reporter's record for
20   the October 22nd, 2018 hearing in front of Judge
21   Arteaga.  And I don't want to go through the entire
22   thing, but what was discussed was whether or not we can
23   get a continuance of that motion for summary judgment
24   hearing because we had zero depos, very limited
25   discovery at that point.

1          And I would refer the Court to page 58 of
2    that transcript, and I've actually highlighted the
3    section that I think is actually the Court's ruling, and
4    the Court allowed four depositions that Academy fought
5    by the way.  They didn't graciously voluntarily provide
6    these depos.  They fought.  The Judge allowed them.
7          And if you would look at the last sentence
8    on line 25, it says -- the Court says:  "We're going to
9    limit" -- she asked us to "write it down" -- the
10   depositions to "the sales of Ruger AR-556 and its
11   magazines to out-of-state residents," because that was
12   the issue that the motion for summary judgment was based
13   on filed by the defendant.
14          So those four depositions were taken.
15   Counsel is correct, those four depositions were long,
16   but those four depositions were also limited to the
17   sales of Ruger AR-556, its magazines -- and its
18   magazines to out-of-state residents.
19          And I want to refer, in the -- in the very
20   front pocket, Your Honor, is my petition.  And without
21   getting into too much detail, we've sued Academy for
22   negligence.  We've sued them for gross negligence.  And
23   part of our negligence claims is hiring, negligent
24   training, negligent supervision, and other things.
25          So under Tab 5 is the deposition of

1    Deponent A, and he is the compliance manager.  I've
2    actually tabbed the index at the back, and I think
3    that's important because the word "training" came up in
4    that several-hundred-page deposition nine times.
5              And if you refer to the questions that
6    "training" is mentioned, there's no question asked by
7    the plaintiffs of what type of training he received?
8    Who conducted the training?  How long did the training
9    last?  What materials were used?  When, where, and how
10   often is training?  Those questions weren't asked.  They
11   weren't asked because we were following the Court's
12   instruction in October of 2018 to limit the deposition.
13             *THE COURT:*  Was that -- was that for the
14   purpose of the summary judgment?
15             *MR. CRAWFORD:*  Yes.  So those depositions
16   were for the purpose of the summary judgment.  That
17   hearing transcript makes that crystal clear.
18             Did we ask some questions to lay the
19   foundation that may have been outside the scope?  Maybe.
20   But we didn't get into training, negligent training.  We
21   didn't get into gross negligence.  We didn't get into
22   all of the other causes of action that we've pled,
23   including negligent supervision, failing to discipline
24   or reprimand employees, really detailed background check
25   questions.  We didn't get into that other than the

1    background check of that shooter.

2              So counsel is correct; depositions were

3    taken, but those depositions were limited.  I don't care

4    how long -- how many pages those depositions were.

5    Those questions were limited.  If you look up the word

6    "training" in Deponent B's deposition, five times.

7    That's how many times the word "training" came up.  And

8    that's one example, all of our other causes of action.

9              We have more discovery that's been sent

10   out, a ton of discovery.  We didn't get to ask any

11   questions about how these folks handled or have handled

12   other out-of-sale -- out-of-state sales regarding Rugers

13   and rifles.

14             *THE COURT:*  What's the status of the

15   written discovery?

16             *MR. CRAWFORD:*  Well, we're going to try

17   and confer with counsel.  It looks like almost

18   everything has been objected to.  They did provide maybe

19   2500 pages or so of certain policies dealing with this

20   stuff, but there's so much that we've requested that's

21   been objected to.  We'll have to confer and try and work

22   that out.

23             *THE COURT:*  And when do you have these

24   current depositions scheduled?

25             *MR. CRAWFORD:*  Well, I actually just -- I

1  sent an e-mail.  And three days later, I didn't get a
2  response asking for depos.  I set them for late March.
3  I'm open to resetting those.
4              THE COURT:  Okay.  I'm just trying to
5  figure out the scheduling --
6              MR. CRAWFORD:  Sure.
7              THE COURT:  -- between discovery, written
8  and --
9              MR. CRAWFORD:  Of course.
10             THE COURT:  Okay.
11             MR. CRAWFORD:  And, yeah.  Discovery has
12  been responded to.  The most recent set was objected to,
13  just about every question.  So, hopefully, we'll work
14  something out there.
15             But, Your Honor, we understand.  And I
16  understand Mr. Prichard, where he's coming from.  I get
17  it.  Depositions have been taken, but they were limited.
18  And they're there.  I don't know if you want to read
19  300 pages, but 98 percent of it deals with out-of-state
20  sales and the AR-556.
21             Thank you, Your Honor.
22             THE COURT:  All right.  Anybody else --
23  no? -- on this issue?
24             MR. DEMERATH:  No, Your Honor.  Thank you.
25             MR. PRICHARD:  I'm sorry.

1          *THE COURT:*  Okay.  Mr. Prichard, a brief
2    response?
3          *MR. PRICHARD:*  Just briefly.  I appreciate
4    the argument, but that's not exactly correct.  Let me
5    just give you a flavor.  Now, talking about the firearm
6    in question and training, they admitted that they asked
7    about training.
8          On page 13:  "Do you have the" --
9          "Question:  Do you have the qualifications
10   to sell a firearm at Academy?
11          "Yes.
12          "Question:  Do you have the training to
13   sell a firearm at Academy?
14          "Answer:  Yes.
15          "Would you have the qualifications to sell
16   to him?
17          "Yes.
18          "If he walked in and said, 'Here's my
19   Colorado driver's license.  I want to buy a Ruger
20   Model 17,' what would you do?"
21          All -- you know, it's replete throughout.
22          *THE COURT:*  What page is that?
23          *MR. PRICHARD:*  That page, that's on
24   page 13.  And that's Deponent A, Your Honor, and he was
25   the store director.

```
 1              THE COURT:  Is Deponent A under Sub 5?
 2              MR. CRAWFORD:  Deponent A is Number 6,
 3   Your Honor.
 4              THE COURT:  Number 6, okay.
 5              MR. CRAWFORD:  I believe counsel
 6   referenced page 13 of that deponent's deposition.
 7              MR. PRICHARD:  Page 13.
 8              THE COURT:  Okay.  I see it.
 9              MR. PRICHARD:  And it goes on for several
10   pages in that respect, the procedures.
11              THE COURT:  Do you agree with opposing
12   counsel that Judge Arteaga -- and it appears so from the
13   transcript -- but that it was limited to sales to
14   out-of-state residents regarding the Ruger AR-556?
15              MR. PRICHARD:  I'm sorry, Your Honor.  I
16   didn't get the first part.
17              THE COURT:  Do you agree that Judge
18   Arteaga limited the depositions to out-of-state sales --
19   or sales to out-of-state residents, and, in particular,
20   the Ruger AR-556?
21              MR. PRICHARD:  I think that's in the
22   order.  I don't think that's what effectively happened
23   at the depositions.  I think those depositions -- and,
24   again, I would just repeat that Ms. -- that Janet here
25   allowed free rein.  I mean, she could have stepped in.
```

1  "No.  I'm sorry.  That's way outside the scope," and she

2  didn't.  And the one deposition went on for over five

3  hours, so it's a lot more than just this firearm.

4              And even -- she even made the comment, you

5  know, "I'm not going to instruct them not to answer.  Go

6  ahead," for this very reason, Your Honor.  Trying to

7  minimize, minimize these people's involvement and taking

8  them away and having countless depositions because

9  there's a new lawsuit, new plaintiffs' lawyers coming,

10  and they're going to have to do it again.

11              THE COURT:  Well, and that's why I was

12  asking earlier.  I mean, if it's been consolidated, both

13  the written and the deposition discovery, are all the

14  other plaintiffs' lawyers prepared to proceed at these

15  depositions that you're --

16              MR. PRICHARD:  No.  Let me -- let me be

17  clear.

18              THE COURT:  Okay.

19              MR. PRICHARD:  This is only for these four

20  lawsuits.  There are more.  There's others that are not

21  consolidated yet.

22              THE COURT:  Oh.

23              MR. PRICHARD:  That was unclear.

24              MR. CRAWFORD:  It is.  And what happened

25  was we're the four or five law firms currently here, and

1   I'm speaking for all of them, and I have their

2   permission.  Fifty-two or so were filed maybe last week

3   or something, so I haven't -- they haven't been brought

4   into the consolidation.

5                MR. PRICHARD:  That's correct.

6                MR. CRAWFORD:  But prior to that, it had

7   been consolidated.  And I just would clarify I would

8   read a couple of pages before and a couple of pages

9   after page 13.  There's more detail.

10               THE COURT:  Well, here's my concern.  My

11   concern is not so much necessarily allowing you to take

12   these depositions.  But if there's going to be more and

13   they're going to be consolidated, why can't we work out

14   some structure so that they're all consolidated, and,

15   you know, so it's not happening over and over and over

16   again on the other lawsuits that are going to come up?

17               Who consolidated these?  Was it by

18   agreement or --

19               MR. PRICHARD:  Judge Canales.

20               THE COURT:  Okay.

21               MR. CRAWFORD:  Judge David Canales.

22               THE COURT:  And, I mean, it sounds -- it

23   makes sense certainly on discovery.  Whether or not they

24   get tried together will be, I guess, a decision for a

25   Judge somewhere down the road.

1    But, yes, ma'am?

2    *MS. MILITELLO:*  And if I -- if I can

3    address that.  It kind of touches on the second motion,

4    which is the motion to enforce the protective order.

5    But I have been told that one of the plaintiffs' counsel

6    in this latest lawsuit will not agree to a protective

7    order to protect Academy's confidential documents, which

8    suggests to me -- although we haven't even answered that

9    lawsuit yet, it suggests to me that there may be no

10   agreement to consolidate or to do what has been done in

11   these first four cases.

12   *THE COURT:*  It may be -- it may be

13   something that one of our Judges here in Bexar County

14   does, you know.

15   *MS. MILITELLO:*  Right.

16   *MR. CRAWFORD:*  Yeah.  No.  I -- Your Honor

17   that's -- I mean, that's been the consensus.

18   *THE COURT:*  I mean, you're stating

19   October.  That seems hopeful.

20   *MR. CRAWFORD:*  Well, two -- I think one or

21   two of them are set in October and then one or two of

22   them in January.

23   *THE COURT:*  Yeah.

24   *MR. CRAWFORD:*  So they're going to be set

25   trial-wise at different times.

1          *THE COURT:*  Like I said, it's already

2    March.  It just seems like a hopeful setting, you know.

3          *MR. PRICHARD:*  You are correct, Your

4    Honor.

5          *MR. CRAWFORD:*  But, you know, in all

6    fairness, we have expert deadlines coming up, and that's

7    why we need these depositions, and that's why we're

8    pushing for these depositions because we do have expert

9    deadlines in April, so I would like these depositions.

10         And, again, we're not going to rehash the

11   PLCCA stuff.  We've done that already.  We overcame the

12   summary judgment.  But we do have a right to prove our

13   causes of action, which go beyond training.  I used that

14   as an example.

15         *THE COURT:*  These newest filings that

16   y'all had -- and I'm not trying to go out of what your

17   motions are here, but I'm just trying to think ahead for

18   y'all and for all the litigants and for the courts.

19         This last round, I presume that may not be

20   the last of them?

21         *MR. PRICHARD:*  The last of?

22         *THE COURT:*  Of the lawsuits.

23         *MR. PRICHARD:*  The lawsuits?  Who knows?

24         *THE COURT:*  Yeah.

25         *MR. PRICHARD:*  We don't know.

```
1              THE COURT:  When is the statute of
2    limitations?
3              MR. CRAWFORD:  November -- well, November.
4              MR. PRICHARD:  '19.  The fall of '19.  I
5    think it was in November '17.
6              THE COURT:  Okay.  So the fall of this
7    year?
8              MR. PRICHARD:  Yes, Your Honor.  That's
9    another reason, Your Honor.
10             THE COURT:  Well, but if they're -- but if
11   they're facing a deadline of designating experts in the
12   next couple of months, you know, that's the problem with
13   so many different lawsuits about the same incident.
14             MR. PRICHARD:  Well, that's -- I think
15   that's exactly why we said it's premature, you know.
16             THE COURT:  But they've got deadlines
17   for --
18             MR. PRICHARD:  Well, I know.  But they had
19   the opportunity, and none of that was involved in the
20   summary judgment.  This was -- this was whether or not
21   federal law applied.
22             THE COURT:  Right.
23             MR. PRICHARD:  And this -- these
24   depositions were never even referenced at that summary
25   judgment hearing at all.
```

1              *MS. MILITELLO:*  And, Your Honor, the
2    topics were broad, far broader than the federal statute
3    that has been referenced here this morning.  It was far
4    broader than that, and there was an absolute discussion
5    on the record.  When I objected, "It's beyond the scope
6    and don't answer."

7              The other lawyer, one of the -- he's not
8    here today, but Mr. Webster asked the questions and
9    said, "Are you going to bring him back again to answer
10   these questions?"

11             And I said, "No.  We're doing this one
12   time only."  And I let the witness answer that question
13   and every other question.

14             And we had a roomful of lawyers for the
15   plaintiffs, and they all asked the questions that they
16   wanted to ask, and they went far beyond this PLCCA
17   statute, this immunity statute.  And they were asking
18   about ATF terminology and the federal firearms
19   regulations and references.  They asked about the
20   training and the policies.  They asked about Academy's
21   prohibitions on the sale of long guns and MSRs to
22   residents of Alaska.  I mean, we were all over the place
23   on these depositions.

24             And the reason that we had said it is
25   premature and when we filed the motion for summary

1 | judgment, we said, "This is a purely legal issue.  It's
2 | just a -- you know, it's a question of law.  We don't
3 | need the depositions yet."  They insisted.
4 | And when the Judge ordered it narrowly --
5 | you know, somewhat narrowly because the whole issue in
6 | that lawsuit is:  Is the sale of an AR Model 556 to an
7 | out-of-state resident, who presented a Colorado driver's
8 | license, is that permissible?  But she allowed the
9 | depositions -- the deposition questioning to go to any
10 | sale of that gun that is at issue in these lawsuits.
11 | But it went far beyond, and it was by
12 | agreement because I said, "We will not bring them back
13 | twice" because, you know, obviously, for all the reasons
14 | that the Court would understand.  But you don't depose
15 | people twice.  They insisted to go forward there.  They
16 | insisted they wanted to ask all of these questions, and
17 | a roomful of people did ask the questions.
18 | They're just coming back for a second bite
19 | at the apple.  They determined their trial strategy.
20 | They determined when they wanted to ask the questions
21 | and what questions they wanted to ask.  And, basically,
22 | they're just asking this Court's indulgence that "Now
23 | that we've thought some more about it, we have some
24 | additional questions."  Well, if that were the case,
25 | everybody in every lawsuit could say, "I would like

1  another -- I would like to ask a few more questions I

2  didn't think of the first time."

3              And when you stop to think about

4  Deponent B, almost all the time is used up.  I mean, it

5  was five hours or so.  And so, what, they want to come

6  back and now ask another round of questions?

7              THE COURT:  Well, that's why I was looking

8  for your motion.  You just have regular depo notices out

9  there or --

10             MR. CRAWFORD:  They were depo notices,

11  Your Honor.

12             THE COURT:  Okay.  No motion?  Because I

13  noticed that you said, I think it was -- I guess it was

14  the -- was it the director of compliance that took five

15  hours?

16             MS. MILITELLO:  Yes.

17             MR. CRAWFORD:  I don't know that he took

18  five hours.  I would have to look at the file.

19             MS. MILITELLO:  It was right about five

20  hours.

21             MR. CRAWFORD:  But, Your Honor, just to

22  clarify -- I just want to clarify because I really need

23  to clarify two things.

24             THE COURT:  Sure.

25             MR. CRAWFORD:  Mr. Prichard, with all due

1  respect to him, was not at the hearing, and we did

2  play -- play video testimony.  So it was very important,

3  and the depo testimony was important, and the Judge

4  agreed to really help us overcome or to try to overcome

5  that PLCCA statute.

6           The ATF regulations, the federal

7  regulation terminology are all part of PLCCA.  It's not

8  just here's a handful of questions on out-of-state

9  sales, okay?  And the termination -- the term and

10 definition of a firearm is all part of PLCCA.  It was

11 all relevant, and we discussed that in the deposition.

12          I'm talking about our negligence claims

13 and our gross negligence claim, and the supervision that

14 may or may not have been there, the training, etc.  I

15 need -- I need -- none of that was discussed.  Nine

16 references to training.

17          He, Mr. Prichard, picked out probably the

18 most in-depth questioning on training.  That's probably

19 it, if you look at those sections, and you can look at

20 them yourself without taking my word for it.  But they

21 may have been long depositions, but they were solely

22 geared and angled towards that PLCCA, and it's a very

23 detailed statute.

24          *THE COURT:*  I guess another concern that I

25 have right now is even if I were to allow the

```
 1   depositions, if you're close to five on Deponent B, are
 2   you going to go in there and finish up with the hour, an
 3   hour and ten minutes, and then come back and say, "Well,
 4   now we need more time," or is now the time to ask for
 5   it, I mean, for that to be part of the entire motion?
 6   Because then, otherwise, that forces you to being back
 7   in here.
 8               MR. CRAWFORD:  No, Your Honor.  I would
 9   agree.  I think if the Court is going to -- if you're
10   going to graciously allow the depositions, I think we do
11   need to have some sort of a discussion on time.  I don't
12   think we can go around that right now.  I don't know.
13               I'll ask my cocounsel what their thoughts
14   are.
15               THE COURT:  Well, and, I mean, is this --
16   how many cases are consolidated right now?  Four?
17               MR. PRICHARD:  Yes, Your Honor.
18               MR. CRAWFORD:  Four or five, Your Honor.
19               THE COURT:  Okay.
20               MR. CRAWFORD:  Four causes -- four cause
21   numbers, yes.
22               MR. PRICHARD:  And I think the Court asked
23   for -- about a motion.  There's been no motion.
24               THE COURT:  Right.  I mean, that's why I
25   asked.
```

```
1              MR. PRICHARD:  They sent a notice.  We
2    filed a motion to quash, and we have not gotten any kind
3    of response.
4              THE COURT:  What's the second motion y'all
5    have here today?
6              MS. MILITELLO:  It's a motion to enforce
7    the agreed protective order.  When the first lawsuit was
8    filed, and that's the one that is set to be tried in
9    October of this year, because of the public nature of
10   the cases, at the inception before any discovery was
11   conducted, the parties agreed to enter into a protective
12   order.
13             And it had categories of documents that
14   would be deemed to be confidential, and it's spelled out
15   in the protective order.  One category is for financial
16   or business information of Academy.  Another is sales
17   and customer information, the corporate and strategic
18   planning information, as well as the identity of the
19   witnesses.
20             The identity of the witnesses, there's no
21   dispute.  But what those other broad categories in
22   the -- in the documents that were produced, Academy
23   stamped them "confidential."  Now, as the Court knows,
24   they can be used for purposes of prosecuting these
25   various lawsuits.  They can be used --
```

1           *THE COURT:*  In an open -- in an open

2    courtroom.

3           *MS. MILITELLO:*  -- in an open courtroom.

4           But the -- there has been a dispute, and

5    we needed to get the Court's ruling today to tell them

6    that they must still abide by the protective order.

7    Because what has happened is Mr. Demerath spoke with my

8    colleague, Mr. Demeropolis, and told him --

9           *THE COURT:*  Do you like all the names

10   here, Mary?

11          *MS. MILITELLO:*  And then with Militello,

12   it all makes it so easy, and I apologize.

13          But he spoke to Mr. Demeropolis and said

14   that I had -- I was considering de-designating all of

15   Academy's confidential designations.  Nick, knowing me

16   very well, questioned that because, of course, I had not

17   made that assertion, and they had a conversation.  It is

18   documented in the motion.

19          You will see the e-mail that at the

20   conclusion -- at the conclusion of that conference call,

21   Mr. Demeropolis sent to Mr. Demerath an e-mail saying,

22   "Okay.  We've had this call.  This is my understanding

23   of what occurred in the call."  And with respect to the

24   issue about the confidential designations on the

25   documents, Mr. Demeropolis said, "It's my understanding

1  that you are not claiming that we have waived the

2  designation or that we are going to de-designate those

3  documents.  If that is incorrect, please let me know."

4              And then he said, "And if I'm incorrect

5  and you are complaining about the designation of some

6  document or documents stamped 'confidential,' then,

7  please, under the terms of the protective order, let me

8  know which documents you've got an issue with, and we

9  can discuss it and see if we can come to an agreement

10  about the designation or not."  There was complete

11  silence after that.  We got no response.

12              Fast-forward a few days or a week or so,

13  and we had filed a motion to seal certain records

14  related to the summary judgment that you've heard about,

15  for the first time, often because they have names.

16              *THE COURT:*  A motion to seal under 76a?

17              *MS. MILITELLO:*  Yes, a motion to seal

18  under 76a.  We have done that a number of times in this

19  case because of the names.  The names come up in -- you

20  know, in the deposition.  It's on every page.  I mean,

21  it's -- and in their questioning, they would use the

22  name freely, you know, all through the questioning.  So

23  we had a motion to seal, as we had done a number of

24  times.

25              *THE COURT:*  Have those been heard?

1          *MS. MILITELLO:*  Yes.

2          *MR. DEMEROPOLIS:*  Yes.

3          *MS. MILITELLO:*  And they have -- they

4   have -- the first few had been unobjected to, and they

5   were sealed.  The last one --

6          *THE COURT:*  Y'all did the public notice --

7          *MS. MILITELLO:*  Oh, yes.

8          *THE COURT:*  -- and everything under 76a?

9          *MS. MILITELLO:*  Yes, we did the whole --

10  the whole procedure.  This last time with the motion to

11  seal, we had done the posting.  We had gone through the

12  whole procedure.

13          And the day before the hearing,

14  defendant -- defendant, Mr. Demerath, filed an objection

15  to the motion to seal and claimed that we had waived the

16  confidential designation because of this communication

17  between Mr. Demerath and Mr. Demeropolis where he said

18  we did not -- we, being Academy, did not come to the

19  Court within ten days of their claiming that we have no

20  confidential designations.  Thus, we have waived this.

21          Well, that was the first time, the very

22  first time that we heard that they were claiming waiver;

23  the very first time that we understood that they thought

24  that we had de-designated or waived the confidential

25  designation.  They had never responded to the e-mail

1  where we said, "If, in fact, you have a question about

2  this, then let's discuss.  We understand that you are

3  not claiming that anymore, but let us know."

4            "And if, in fact, you have a problem, the

5  protective order has a process, like every protective

6  order does, of what to do."  And that process is that

7  they come, and they tell us we don't think this

8  document, this document, or this document, or whatever

9  one, we think the designation is inappropriate.  The

10 parties talk, and they try to then work it out and then

11 come to the Court.

12            Instead, they've taken this position that

13 nothing that Academy has produced, the sales

14 information, their policies and procedures, etc.,

15 nothing has a confidential designation.

16            *THE COURT:*  Have those been sealed?

17            *MS. MILITELLO:*  They have -- they have not

18 been sealed.  But now they're taking the position, and

19 we have -- I have been told -- I, myself, have been told

20 any number of times that there will be pressure to bear

21 on Academy -- when these documents are publicized, when

22 they are made known, then there's going to be pressure

23 to bear on Academy to settle this case.  That is what

24 this is about.

25            This isn't about using these documents in

1  a deposition or at a hearing or some place.  They want

2  to de-designate documents that have not been used in

3  court.  They are taking -- I think it's 76a(c), but

4  they're trying to now claim all of these non-filed

5  documents are public -- are court records.  But to be a

6  court record, it is the burden on the plaintiff, and the

7  rules say it.  It is the burden of the plaintiff to show

8  a nexus between some particular document and harm to the

9  public if that document is not available to the public.

10              They haven't even tried.  They have filed

11  nothing that says this is -- they haven't fulfilled

12  their burden in that regard.  They haven't tried to

13  fulfill their burden.  They haven't followed the

14  procedures under the protective order, and they've

15  ignored the communications we've asked them to.

16  Instead, they make the claim that somehow we have waived

17  the designations.

18              Nobody is trying to stop these plaintiffs

19  from using these documents to prosecute their case, Your

20  Honor.  That is not why we're here.  This case is no

21  different than any other case when it comes to documents

22  being marked "confidential."

23              And, yes, those used in court, those used

24  at a hearing or those used in -- at trial, they're going

25  to be made public.  But we have produced over

1  2400 pages, and they claim that what we should have done

2  was come to the Court and gone through 2400 pages of

3  documents with the Court to show the Court why these are

4  confidential.

5           *THE COURT:*  Right now it's your position

6  that all of those 2400 pages are confidential?

7           *MS. MILITELLO:*  They are because we -- and

8  I wouldn't say that there's no document out there that

9  was not marked "confidential."  But, substantially, all

10 of them were because the vast majority of these are all

11 the policies, procedures, training programs, etc., that

12 Academy has developed over the years.  And they just are

13 not interested in those being disseminated.  Used in

14 this case, you know, perhaps certain portions of them

15 were -- or will be, but not that they have a right to

16 take those documents that we have marked "confidential"

17 and that they agreed in the protective order would be

18 deemed to be confidential.

19           As I said, the protective order clearly

20 had categories of -- and corporate and strategic

21 planning information, sales and customer information,

22 financial or business information, those were

23 designations that they agreed we could mark as

24 "confidential."  And now they want this Court, after

25 getting documents that we would never have agreed to

1  without a protective order, now that they've gotten the
2  documents, they want to use them.
3        And in the conversations I've had now with
4  respect to these, they say, "Well, these -- you know,
5  there are -- there are potential plaintiffs or potential
6  plaintiffs' attorneys who would like to see certain of
7  the documents," and that's not how this works.
8        The way it works is a Court entered this
9  protective order.  We abide by the terms of the
10 protective order.  They have to follow the process and
11 procedures of the protective order, and then we can come
12 to this Court with a focused hearing.  If this Court
13 would like, I guess we could set up a full day, and I
14 could bring in the whole box, and we could walk through
15 exactly how --
16        *THE COURT:*  Are you saying that this
17 protective order includes not being able to share with
18 other litigants arising out of this incident?
19        *MS. MILITELLO:*  It is not until they are
20 part of -- not until they have signed the protective
21 order.  It was -- it was all four -- all four cases that
22 have been consolidated, all of those parties have gotten
23 the documents because they've agreed to the protective
24 order.
25        If some -- if some third party out there

1  does not agree to the protective order and does not

2  agree to the confidentiality of those documents, then,

3  no, they don't get them.  Then we have the hearing about

4  whether that would be appropriate or not.

5            THE COURT:  Because, as I recall, and

6  y'all are probably more familiar with these since you've

7  been dealing with confidentiality and 76 -- Texas Rule

8  of Civil Procedure 76a, you cannot enter into protective

9  orders that would violate 76a in regards to limiting

10  discovery amongst similar litigants.  Am I wrong in

11  that?

12            MS. MILITELLO:  We have -- I think under

13  76a, Your Honor, it contemplates that, yes, documents

14  can be marked as "confidential."  And then if -- if a

15  party thinks that designation is wrong -- or 76a really

16  deals with sealing, which is like a higher level than

17  that.

18            THE COURT:  Exactly, exactly.  But you

19  can't enter into a confidentiality agreement that

20  basically -- that basically overrides 76a by saying none

21  of this we're going to -- basically, all of it is

22  effectively sealed.

23            MS. MILITELLO:  We are not saying --

24  because, for example, at the last hearing, the Judge

25  said the names will be sealed, but not the policies and

1  procedures or any of the documents that they attached to

2  the motion for summary judgment hearing.  That's fine,

3  because that's the same way.

4              It's no different than any case.  You have

5  a motion.  You have exhibits attached, certain of the

6  documents, and then those become court records.  But as

7  this Court knows, in every case and in this case, it's

8  no different.  Thousands of pages have been produced.

9  They are sitting in lawyers' offices somewhere, but

10  those don't get to be just disseminated to the public.

11  And 76a specifically says that the only way that they

12  can, is when they are deemed to be court records,

13  something as if it were attached.

14              And then it is the document in question,

15  there has to be a nexus between the Court -- the law is

16  very clear.  There has to be a nexus between some

17  document and an actual adverse impact on public health

18  or safety.  That's what Rule 76a says.  And that burden

19  falls on the party who wants to make these documents a

20  court record.

21              And they have done -- they have not -- not

22  only not followed the procedures in the protective

23  order, but they clearly haven't said, "Here are

24  documents that we think we could show a nexus between

25  this particular document and an actual adverse impact on

1  public safety and health."  And there is no nexus, Your

2  Honor.

3            So what they're trying to do is an end run

4  and strip Academy of its confidential designation and

5  use these documents in a way not intended to further

6  their -- further their case in this court.  They can do

7  that already.  There's only one thing that they can't do

8  with that confidential designation, and that is, to

9  publish them and use them somewhere outside of this

10 courthouse and outside of the realm of these four cases

11 that have been consolidated.

12            *THE COURT:*  Plaintiffs?

13            *MR. DEMERATH:*  Your Honor, Justin Demerath

14 for Mr. Braden.  Thank you very much for the opportunity

15 to argue the other side of this motion.  I'm going to be

16 discussing the black binder.  It's the smaller one that

17 seems to be made of paper rather than plastic that has

18 some important documents in it.

19            And I respectfully must disagree with

20 Mrs. Militello's discussion of the facts, and I think

21 that the documents that I would like to show you, as we

22 go through this, will support the position that I'm

23 trying to take.

24            Just like Judge Pozza refused to seal the

25 courtroom during the motion for summary judgment and

1  just like Judge Jimenez refused to seal the summary

2  judgment documents under 76a, we do not believe that the

3  documents that have been marked as "confidential" in

4  this case are appropriately confidential under Texas

5  law.  And I would like to start with the chronology of

6  what led up to where we are today, so that you can

7  understand the framework that we must be dealing with

8  today.

9              So there were some initial lawsuits that

10  were filed in this case against Academy last year, a

11  little bit less than a year after the event, and

12  Mr. Braden intervened in one of those lawsuits.  And I,

13  as Mr. Braden's counsel, was not privy to any of the

14  discovery documents that had already been produced, and

15  there had already been a confidentiality order that was

16  signed.

17              And so prior to being able to get the

18  discovery documents from the defendants, they insisted

19  that I sign, on behalf of my client, the same

20  confidentiality agreement that had been signed in the

21  case, which I looked at and saw in paragraph No. 6.  And

22  I think it's really important to look at this paragraph

23  No. 6 in any of either our notebook or the defendant's

24  notebook.

25              *THE COURT:*  Entitled "Responsibility for

1  Unauthorized Use or Disclosure"?

2          MR. DEMERATH:  Let me make sure I've got

3  it in front of me too, Your Honor.  "Responsibility for

4  Unauthorized Use or Disclosure," correct.  In the third

5  paragraph of that confidentiality agreement, it outlines

6  the procedure that we are to follow if we think that

7  there is something that is not subject to

8  confidentiality, and I'll give you just a minute to read

9  it.

10          THE COURT:  Okay.

11          MR. DEMERATH:  Understanding that there

12  was a methodology if we disagreed that some document was

13  confidential, in good faith, I agreed to sign the

14  confidentiality agreement because I thought that this

15  document would be used as a scalpel rather than a

16  baseball bat.

17          And when I received the discovery from

18  defendants, including about -- it's up to about

19  2800 pages of documents, and I also received the

20  deposition testimony, every single page of every

21  document under the sun that has been produced was marked

22  as "confidential."  And I had a concern with that

23  because it was not an appropriate use of this -- of this

24  confidentiality order.

25          And so rather than address the issue then,

1   we waited until after the summary judgment.  And when

2   the summary judgment was denied, it was then time to

3   move forward with the litigation, and I knew there were

4   many reasons that this needed to be not confidential,

5   including communicating with other counsel.  And I

6   requested that I might be able to communicate with other

7   counsel about some of these documents and that request

8   was denied.

9          And so I sent an e-mail, which is an

10  exhibit to the document, to Mr. Demeropolis, and I

11  inadvertently forgot to put Ms. Militello on the e-mail,

12  and I have apologized for that profusely to her.  But I

13  sent the e-mail to Mr. Demeropolis quoting paragraph 6,

14  stating that "Under paragraph 6, you've designated

15  everything under the sun as 'confidential,' and that's

16  not appropriate.  This is not anything that has to do

17  with financial information of the company, but rather

18  information that has to do with things that regard

19  public safety."

20         The procedure of transferring a gun from a

21  federally firearms licensed -- a federal firearms dealer

22  to an individual implements public safety.  And so I

23  asked Mr. Demeropolis, I said, "This is -- none of this

24  is appropriately confidential.  Pursuant to paragraph 6,

25  I'm placing you on notice that every document that's

```
 1   been marked as 'confidential' should not be
 2   appropriately confidential," and the e-mail is attached
 3   in there.
 4              We then subsequently had another
 5   conversation, and Ms. Militello is correct.
 6   Mr. Demeropolis sent me back an e-mail, and I
 7   highlighted the second paragraph where he states, "We
 8   will proceed with the filing of the agreed protective
 9   order in both new cases, as the parties have agreed."
10   So --
11              THE COURT:  And that's in an e-mail?
12              MR. DEMERATH:  That's in an e-mail.  That
13   is -- I believe it's attached to the Exhibit E of the
14   defendant's motion.
15              THE COURT:  Okay.
16              MR. DEMERATH:  And it was my understanding
17   that at that point because they had said, "No, we refuse
18   to lift the confidentiality designation on any document
19   under the sun that we have produced," that they would be
20   moving forward and producing -- or filing a motion for
21   protective order.  And so the time frame came for that
22   protective order to be filed.  And instead of filing a
23   protective order, there was simply a motion to seal the
24   summary judgment documents under 76a that was filed.  No
25   protective order was filed.
```

1    So the ten days came, and the ten days
2  went.  After we identified which documents we believed
3  were not confidential and put them on notice that they
4  needed to either file a protective order or the
5  confidentiality designation should be lifted pursuant to
6  the terms of the confidentiality order that we signed,
7  we went to the hearing on the motion to seal the court
8  records, and we had a 76a analysis that took place.  And
9  Judge Jimenez ruled that the documents were not
10  appropriately to be sealed under 76a, and so those
11  documents moved forward.
12    So because we are in a position where
13  we're following this agreed order, it is our first
14  position, Your Honor, first of two, that the defendants
15  have not put any information before the Court in this
16  motion at this hearing or in any argument today that
17  justifies the treatment of the documents as confidential
18  under the appropriate Texas law, and that's what the
19  standard is, Your Honor.
20    If Academy would like to keep these
21  documents confidential pursuant to the confidentiality
22  order, we -- after putting them on notice, it is their
23  burden to show that under appropriate Texas law, that
24  these documents are confidential.  There hasn't been any
25  argument that those documents are confidential because

1    there can't be any argument that they are confidential.

2    There isn't any Texas law that says that this could

3    appropriately be confidential.

4              Now, usually you look at 76a regarding

5    trade secrets or other matters, and there hasn't been

6    any showing by Academy of that very important point.

7    So, Your Honor, we believe that the timing of the

8    arguments and the lack of evidence before the Court is

9    going to put the Court in a position where they have to

10   de-designate these documents as confidential.

11             Secondly, Your Honor, and I'll make this

12   second argument brief.  Doing an analysis under --

13             *THE COURT:*  When do you think -- was it

14   your e-mail, your e-mail exchange that that -- within

15   that e-mail you gave them notice; and so, therefore,

16   they should have, within ten days from that date, filed

17   a motion for protective order?

18             *MR. DEMERATH:*  Correct.  Yes, Your Honor.

19             *THE COURT:*  Okay.

20             *MR. DEMERATH:*  But taking the timing issue

21   aside, because I think it's more important to analyze

22   the law rather than a timing issue, which I think is the

23   most appropriate analysis here, when we look at the law

24   governing confidential documents, Texas courts are

25   presumed to be open, and documents in discovery are

1  presumed to be open as well.  And I need to be able to

2  appropriately litigate this case to take documents that

3  are not appropriately confidential and use them in ways

4  that I'm prevented from doing under this confidentiality

5  order.

6                    For example, there's a series of

7  documents, such as insurance policies and declaration

8  pages, that are marked as "confidential."  And I need to

9  communicate with third parties about that information in

10  order to effectively do my job for my clients in an

11  attempt to move this case towards resolution.  I've

12  specifically requested to be able to do that but have

13  been denied that.

14                    There are a series of other documents like

15  publicly available firearms license documents.  There's

16  a host of other documents that have been produced that

17  are in no way appropriately confidential.  But

18  regardless of those facts, the appropriate law here

19  has to -- you have to have evidence before you, if you

20  are to say that these documents are confidential and

21  should be treated confidential, and there's been no

22  showing of any kind of evidence by Academy that these

23  documents are appropriately confidential.

24                    And even if we say, "Well, the timing of

25  the protective order doesn't matter.  We're here today

```
 1  to talk about the protective order," we still have to
 2  have some law that is cited by Academy that shows that
 3  these documents deserve confidential treatment.
 4              Now, I want to, finally, Your Honor,
 5  address one issue about what is or is not court records
 6  for the purpose of 76a.  Unfiled discovery pursuant to
 7  the terms of 76a is a court record if it implicates
 8  public safety, and I believe that that is 76a,
 9  subparagraph (c), discovery not filed --
10              THE COURT:  Hold on, hold on.  Let me get
11  there.
12              MR. DEMERATH:  Sure.  Sure, Your Honor.
13              THE COURT:  Subparagraph (c)?
14              MR. DEMERATH:  Yes, Your Honor.
15              THE COURT:  Okay.
16              MR. DEMERATH:  "Discovery, not filed of
17  record, concerning matters that have a probable adverse
18  effect upon the general public health or safety,"
19  fast-forwarding, "except things that are trade secrets
20  are," for the purposes of 76a under paragraph 2, "a
21  court record."
22              THE COURT:  Okay.
23              MR. DEMERATH:  So, Your Honor, as we
24  discussed earlier today, the discovery in this case has
25  been limited very, very narrowly, and we deposed on very
```

1  narrow issues and complied with that order very narrowly

2  to understand how Academy transfers assault rifles to

3  individuals.

4          And as I hope Your Honor can appreciate,

5  and we've cited evidence in our papers, there are very

6  real things that are very adverse on the effect of

7  public health and safety that happen when firearms are

8  not transferred in a legal or appropriate manner.  And

9  that is the fundamental allegation in this case, is that

10  Academy violated the law when they transferred a firearm

11  to an individual that by virtue of the law was

12  prohibited from possessing the particular firearm that

13  they transferred to him due to his state of residency.

14          Every document that's been produced, every

15  page of deposition testimony, touches or concerns the

16  illegal transfer of an assault rifle to an individual

17  that legally, because of his state of residence, should

18  not have been able to possess the particular assault

19  rifle that he possessed.

20          And, Your Honor, I was walking in the

21  courthouse just this morning.  And as I passed the metal

22  detector on the left, there's a sign that says, "Active

23  shooter training to be conducted by the DA's office."

24  And we live in a point in our society where the transfer

25  of firearms absolutely implicates the public health and

1  safety.  And every document that has been produced to
2  date in this case, including all of the policies and
3  procedures, all of the ways that Academy transfers
4  firearms, is a matter of public safety.
5           And one more very important point, Your
6  Honor, and then unless you have any questions, I'll
7  conclude my remarks.  The policy that was in effect,
8  that allowed an individual who came from a state that
9  bans high-capacity firearms, is still being conducted by
10 Academy today.  If we were to walk into -- if you were
11 from one of the states that bans a high-capacity firearm
12 and if you walk into an Academy location today and
13 attempt to purchase a firearm, it is my understanding --
14 and I don't have full discovery on this yet, Your Honor,
15 but it is my understanding that that practice, that
16 illegal practice is still occurring to this day.  And
17 all of the documents that touch or concern this, touch
18 or concern that practice.
19          And so, Your Honor, it is my motion to the
20 Court that there is an order that is entered that any
21 documents that relate to the transfer of firearms are
22 deemed to be a court record because they implicate
23 public safety.  And, Your Honor, I would request that
24 because of the timing of the motion for protective order
25 and because of the fact that these documents implicate

1   public safety, and because the documents don't fall

2   within the scope of the definitions within the

3   confidentiality order, that the designation of these

4   documents as "confidential" be lifted.

5                   *THE COURT:*  In its entirety?

6                   *MR. DEMERATH:*  In its entirety for

7   documents that relate to the transfer of firearms, yes.

8                   But I -- to be technical, the notice that

9   I provided to defendants was that I reviewed all of the

10  records that have been marked as "confidential," and I

11  was unable to find anything that I thought was

12  appropriately confidential.

13                  *THE COURT:*  Not a single page?

14                  *MR. DEMERATH:*  I did not believe that a

15  single page fell within the limits of confidentiality

16  under the standards that we have discussed today, Your

17  Honor.  That being said, Your Honor, one last point.

18                  The identity of Academy employees is

19  something that we agree with opposing counsel and have

20  aggressively attempted to protect, and that is the first

21  thing that we have compromised on and that will never be

22  an issue.  The identity of Academy employees in this

23  situation should absolutely remain confidential, and we

24  want to make sure that's a part of any order.

25                  There may be -- I can't think of any

1    documents that have a confidentiality designation or a

2    scalpel use of that agreement.  I don't know that they

3    exist, Your Honor, but I am more than happy to discuss

4    it with opposing counsel.  But to date, we have had no

5    results in that -- those discussions.

6              *MS. MILITELLO:*  Just very few, Your Honor.

7    Looking at paragraph 6 of the protective order, in the

8    third paragraph that Mr. Demerath focused the Court on,

9    the last sentence on that on page 15, it says:  "In the

10   case of documents, the objecting party shall identify

11   the document by the document identification number of

12   each document, if the producing party so numbered the

13   documents."

14             We did number the documents.  That's why

15   we said, "Hey, give us the list."  It isn't just, "Oh,

16   we don't think anything is, so now we can throw the

17   burden to you to show it."

18             But more importantly, when -- in this

19   e-mail communication that you were focused to and in the

20   e-mail that Mr. Demeropolis sent back to Mr. Demerath,

21   he had the Court look at the second paragraph.  But the

22   first paragraph is where Nick said, "Hey, it's my

23   understanding -- thanks for the conversation.  And after

24   talking, it's my understanding that you're retracting

25   plaintiffs' objection to Academy's confidential --

1   confidentiality designations.  To the extent that I am
2   mistaken, we request that plaintiffs provide a list of
3   all documents that plaintiffs are contending are not
4   confidential under the terms of the agreed protective
5   order, as required by paragraph 6," the same paragraph I
6   just focused this Court to.
7                   So we said, "Hey, the understanding was
8   you're not making this argument."  Mr. Demeropolis put
9   that in writing and said, "That's my understanding."
10                  And they were silent.  They didn't come
11  back and say, "No.  You're wrong.  We are contending
12  that, every single page."
13                  And as this Court noted with surprise in
14  her voice, that -- I mean, every single page.  And the
15  example that was given, and we have had numerous
16  discussions about the insurance, there's a difference
17  between the confidentiality.  They've got the insurance
18  policies.  They can do what they want to in this case.
19  Every plaintiff in these four cases has been given
20  access to not only the declaration page, but the entire
21  policies when they want them.
22                  What Mr. Demerath has asked me is, he
23  wants to go and find other plaintiffs and other
24  plaintiffs' lawyers, and they would like to see the
25  amount of Academy's insurance, and they want to look at

1   the policies, and they want to figure out how to frame

2   claims related to those policies.  That's not the law.

3   The law doesn't say they can take my documents, and they

4   can go out and try this case in the public.

5                    Interestingly, he says, "This is an

6   illegal sale, and the public has to understand that this

7   is an illegal sale."  Well, Judge, we need to have this

8   case tried because interestingly, and not surprisingly,

9   when this incident happened, and it was a horrific

10  incident, the ATF came in.  The Texas Rangers came.  The

11  FBI came.  Local authorities came.  They all looked at

12  this, and not one of those entities have ever questioned

13  how Academy sells its firearms, and you know they would

14  have, had it been improper.

15                    And, also, following this incident,

16  Academy has opened up new stores, and they have been

17  granted licenses to new stores.  So their claim that

18  this is horrible and Academy is breaking the rules and

19  they need to go warn the public, that's what this case

20  is about.  They can use every one of these documents so

21  that we can take this and get a final resolution, a

22  trial of this matter, but not out in the public, not to

23  drum up other business.  That is an improper use.

24                    And these documents should remain

25  confidential until they come forward, give me a list,

1  and we can come back to this Court and talk about
2  specific documents.
3                      **COURT'S RULING**
4              *THE COURT:*  All right.  So as far as Issue
5  No. 2 on the confidentiality, unfortunately, both sides
6  have taken extreme positions.  The defense thinks
7  they're all confidential, and the plaintiffs think that
8  none of them are confidential.  So I'm going to put the
9  work back on y'all, as opposed to the Court doing an in
10 camera inspection on 2500 to 2800 documents, and y'all
11 will need to work and confer and whittle down which ones
12 you really think are confidential and which ones are not
13 confidential.
14             The confidentiality agreement will stay in
15 place until then, but I'm going to give you a drop-dead
16 deadline by when you have to come back so that this
17 doesn't go on for weeks and months going back and forth.
18             You guys are going to really have to put
19 some work horses on it and get together and really say,
20 "You know, okay.  That's fine.  That's not confidential.
21 We'll let it go.  And, oh, my gosh, this is really --
22 you know, is or is not confidential."
23             How much time do y'all need to go to
24 somebody's conference room and go through the pages?
25 And, you know, I'm -- you know, I mean, that's the only

1   way we can do it.

2              MS. MILITELLO:  Two weeks, Your Honor.

3              MR. DEMERATH:  Your Honor, the Court's --

4              MS. MILITELLO:  Mr. Demerath has got a

5   vacation letter next week, so I know --

6              THE COURT:  And I do too, so --

7              MR. DEMERATH:  Yeah.  Spring break is this

8   week and -- or this coming week, and then Austin's

9   spring break is the following week.  So I would say

10  maybe at the end of the third week, if that would be

11  appropriate, Your Honor.

12             MR. PRICHARD:  That's fine.

13             MS. MILITELLO:  That's fine with us.

14             THE COURT:  So by the 29th of March.  So,

15  you know, y'all are going to have to do work on your own

16  ends.

17             MS. MILITELLO:  Absolutely.

18             THE COURT:  And then meet together and

19  say, "How can we meet?"  And then whatever you still

20  have a dispute about, then you bring back -- you bring

21  back -- you bring those back to the courthouse.

22             MR. PRICHARD:  Can we bring them back to

23  you, since you're already this way into it?

24             THE COURT:  Yeah.  I guess that's a

25  follow-up on my ruling, so sure.

1          *MR. PRICHARD:*  Thank you.

2          *MR. DEMERATH:*  Your Honor, may I seek

3    guidance from you on one issue, and it may help the

4    parties confer on that point?  What is the standard that

5    we should judge the confidentiality by?

6          *MS. MILITELLO:*  I would think that's part

7    of our discussion.

8          *THE COURT:*  Yeah.  I mean, that's --

9    that's:  What is confidential?  I mean, that's going to

10   be the question to both of you and then to the Court.  I

11   mean, that's why I'm trying to get y'all to reach an

12   agreement on what you can.  I mean, I think there's a

13   lot of things that are not confidential, but there may

14   be some portions with Academy that they are going to

15   truly believe is confidential and a breach of their, you

16   know --

17         *MR. DEMERATH:*  That's the question:  The

18   breach of what?  I mean, the confidentiality order says,

19   "Under applicable Texas law."  If the standard that we

20   are to judge these documents by is applicable standard

21   Texas law --

22         *THE COURT:*  Of course.

23         *MR. DEMERATH:*  -- then that gives us a lot

24   of guidance as to what --

25         *THE COURT:*  Well, of course it is.  What

```
 1   else would it be?
 2              MR. DEMERATH:  Okay.
 3              THE COURT:  Yeah, absolutely, Texas law.
 4   Bring your case law with you when you come back to show
 5   why something is or is not confidential.
 6              MR. DEMERATH:  Thank you for that
 7   clarification, Your Honor.
 8              THE COURT:  And so do y'all need until
 9   that date and then come back the following week to have
10   the hearing?  In other words, come back the first week
11   of April to --
12              MR. CRAWFORD:  I would think so, assuming
13   we can't work it all out.
14              THE COURT:  Right.
15              MR. PRICHARD:  Can we call Cindie and get
16   a date?
17              THE COURT:  No.  I want to give you a date
18   now.
19              MR. PRICHARD:  Give us a -- okay.
20              THE COURT:  And that way, we save that
21   date and say, "This is the date that whatever y'all
22   don't -- in other words, do your work and get it done by
23   March 29th.  The following week on any -- on any
24   disputes you still have, you'll come back."  And we're
25   going to hold either a half a day or however long we
```

1    need to hold.

2                    MR. PRICHARD:  Friday is better.  Is

3    Friday okay for you?

4                    THE COURT:  It's fine with me.

5                    MR. PRICHARD:  In case you're in court in

6    trial, I know we had that issue.

7                    THE COURT:  Oh, that's right.  Let me

8    look.

9                    MR. DEMERATH:  Your Honor, I've got two

10   dates that I'm unavailable, and one of them is that

11   week, and the other one is on that Friday, the 5th.

12                   THE COURT:  All right.  Let me look.  The

13   week of April 8th is best for the Court.

14                   MR. PRICHARD:  Okay.

15                   THE COURT:  That gives y'all a little bit

16   more time.  So do y'all have a date on the week of

17   April 8th?

18                   MR. CRAWFORD:  I'll make it work, Judge.

19                   MR. DEMERATH:  It's up to the Court.

20                   MR. PRICHARD:  Can we confer about the

21   week of April 8th and let the Court know?

22                   THE COURT:  Sure.

23                   MR. PRICHARD:  Is that okay?

24                   THE COURT:  And the sooner the better

25   because that way she can block that date, okay?

```
 1                    MR. PRICHARD:  I'll try to do it quickly.
 2                    THE COURT:  The only day -- the only day
 3      that I'm not available is that Monday.  Other than that,
 4      I'm available all week long.
 5                    MR. PRICHARD:  That's the 8th?
 6                    THE COURT:  Yes.
 7                    MR. PRICHARD:  So --
 8                    THE COURT:  The 9th, 10th, 11th, and 12th.
 9                    MR. CRAWFORD:  And the plaintiffs will
10      make any of those dates work.
11                    MR. DEMERATH:  I promote the 10th.  If you
12      guys want to check on that, we can talk about the 10th
13      maybe.
14                    MR. PRICHARD:  I am not going to come over
15      here on April the 10th.  That's my birthday.
16                    THE COURT:  We would have a cake for you
17      and margaritas or something.
18                    MR. PRICHARD:  Yeah.  What kind of cake
19      would they give me, you know?  Rat cake?
20                    THE REPORTER:  Do you want me to go off,
21      Judge?  Judge, do you want me to go off the record?
22                    MR. PRICHARD:  I'm sorry.
23                    THE COURT:  Well, what if Deputy Dave
24      starts singing right now?
25                    We can go off the record.
```

1              *(Discussion off the record.)*

2              *THE COURT:*  We're back on.  Case reset to

3    4/12/19.  How long?  I know it's hard to tell because we

4    don't know if we're going to have 10 documents or

5    1500 documents.

6              *MS. MILITELLO:*  I don't know.

7              *MR. CRAWFORD:*  Two to three hours?

8              *THE COURT:*  I mean, do y'all want -- I can

9    give y'all all afternoon.  Do y'all think you need more

10   than all afternoon?

11             *MR. CRAWFORD:*  No.

12             *MS. MILITELLO:*  No, I wouldn't think so.

13             *THE COURT:*  Okay.  And then -- and then

14   the Court can also take it under advisement and see --

15   you know, apply the law and see, give you a ruling the

16   very next week.  I know it's important to get your

17   ruling.

18             So case reset to 4/12/19 at 1:30 p.m.

19   Like I said, the confidentiality agreement will stay in

20   place until the Court rules.

21             *MR. PRICHARD:*  Thank you for giving us

22   that time, Your Honor.

23             *THE COURT:*  Sure.

24             *MS. MILITELLO:*  Thank you.

25             *THE COURT:*  You know, on the depositions,

1  I'm inclined to give -- to allow the depositions because

2  I think as a trial attorney, if you're going in with the

3  ruling of Judge -- of any Judge saying it's going to be

4  narrowed in scope, that even though it might have gone

5  outside of those bounds to some extent, that that was

6  still the focus of the depositions.  But, you know, you

7  can't come back again because -- you know, in May and

8  say, "Well, now we need more time."

9          So I think the timing is important.  I

10 think other -- the consolidation of the cases is

11 important.  I mean, so --

12          MR. CRAWFORD:  Sure.

13          THE COURT:  -- it's difficult for me to

14 say go ahead and take something in March at this point.

15          I think we've got to get a better docket

16 control situation and see which cases are going to be,

17 you know, consolidated and whatnot.  I mean, just like a

18 judge -- a case that Judge Alvarado has on an apartment

19 complex elderly, you know, where they -- you know,

20 whether the parties liked it or not, it was consolidated

21 to some extent.

22          MR. CRAWFORD:  So, Judge, just to clarify,

23 we can essentially complete the time on the depos, if we

24 need to.  Obviously, we need to confer with other

25 counsel who are coming in.  I understand that that's

1  separate.

2          *THE COURT:*  I'm allowing -- and then,

3  again, right now before the Court, you don't have a

4  request to increase the time on the one gentleman or

5  person that's already been deposed for almost five

6  hours.  My guess is you're going to need more than that.

7          So maybe if I'm just telling you that I'm

8  going to allow more, I'm going to allow the depositions.

9  Obviously, you're not going to rehash -- and I know

10  you're not going to do that -- rehash what's already

11  been -- you know, no second shot.  This is going to be

12  your depositions for good.  I think it's a smart idea to

13  get together with both plaintiffs' counsel and then the

14  defense and say, "What's going to be a good time?" so

15  that we know we've got -- it sounds like there's a lot

16  of discovery disputes out there.

17          *MR. CRAWFORD:*  Yes.

18          *THE COURT:*  You know, don't go in and take

19  the deposition, and then two months later come and say,

20  "Well, we finally get a motion to compel on one, and now

21  we want to depose them on this" because you've already

22  shot out the cannon and deposed them.

23          *MR. PRICHARD:*  And that's -- and that's

24  what is going to happen.  So I'm trying to understand,

25  Your Honor, are you suggesting that we wait until these

```
 1    other parties are joined in their case and have a
 2    discussion about that for one more time only?  Because
 3    what we're talking about is giving them another bite,
 4    this group a bite.  And then if there are others, I
 5    mean, we could be doing this over and over and over
 6    again.
 7                 MR. CRAWFORD:  But that's --
 8                 MR. PRICHARD:  So we need some case
 9    management assistance here.
10                 THE COURT:  Except that all the cases are
11    not in the same management system.
12                 MR. PRICHARD:  They're not.
13                 THE COURT:  And they may not want to.
14                 MR. CRAWFORD:  Judge, my understanding is
15    you're allowing for the depositions, but you need us to
16    be considerate of time issues and the fact that other
17    plaintiffs are involved.  So we anticipate on going to
18    the other plaintiffs trying to coordinate that,
19    obviously trying to work out any discovery issues we
20    have before we set this -- these depos and move forward.
21                 THE COURT:  And then come back to the
22    Court for more guidance, I guess.
23                 MR. CRAWFORD:  Okay.
24                 MR. PRICHARD:  I'm still not quite sure I
25    understand.
```

1           *THE COURT:*  Well, my problem, though, I

2    understand where you're going, and I think -- I think we

3    think alike.  There should be a lot of case management.

4    The problem is that's not within my realm right now.

5           *MR. PRICHARD:*  Right now it's not.  I

6    agree.

7           *THE COURT:*  Unless y'all make some kind of

8    motion and go to, I guess, monitoring and say, "How are

9    we going to handle this, you know"?

10          *MR. CRAWFORD:*  Yeah.  I think my overly

11   concern is the expert designation is mid April.

12          *THE COURT:*  Well, see, and that's a

13   concern -- that's a concern of mine also.

14          *MR. CRAWFORD:*  Yeah.

15          *THE COURT:*  I mean, if y'all push them and

16   say, "No.  Your drop-dead deadline is whatever.  It is

17   April 15th," then I'm going to say, "Take your

18   deposition the first week of April then."

19          *MS. MILITELLO:*  Your Honor, they are the

20   ones who put together those dates.  You know, as

21   everybody knows, that is a very tight deadline.  The

22   Court recognized it.  But I don't think they can say,

23   "We want this tight deadline, and, therefore, we get to

24   keep taking depositions and exceed the six hours that

25   the -- that the rules allow."

```
 1                    There was nothing in the previous order
 2    that said --
 3                    THE COURT:  And like I said, if there's
 4    not a motion --
 5                    MS. MILITELLO:  -- that said, "You're
 6    going to get to take this, and then get to take another
 7    six-hour deposition."
 8                    THE COURT:  That's why I'm bringing it up
 9    now because I don't want them going and saying, "Okay.
10    Now we took up the last of the hour and ten minutes
11    that's left, and now we need more time."
12                    It's something you need to address the
13    issue first before you go in there and take the
14    deposition.
15                    MR. PRICHARD:  Sure.
16                    THE COURT:  Don't go in there and take a
17    deposition for an hour, and say, "Oh, now we need more
18    time.  We need to come back to the Court," any court.
19                    MR. CRAWFORD:  I understand.  You're
20    allowing the depositions, but you need us to be very,
21    very deliberate and considerate of time.
22                    THE COURT:  Talk to them about how much
23    time you really need.  Talk about timing because of
24    discovery.  Talk to them about the experts' depositions.
25    Talk about the trial date.
```

```
1                    I mean, in reality, I understand you want
2        to shoot out and let's get to trial in October.  But, I
3        mean, just hearing it first off, and this is the first
4        I've heard of this case, like I said early on, October
5        seems awful wishful, guys.
6                    MR. PRICHARD:  We couldn't agree more.
7                    THE COURT:  I mean, I know y'all want to
8        get to trial, but, you know, you're sort of binding
9        yourselves and binding the other side, so --
10                   MR. CRAWFORD:  We'll work logistically on
11       how this is going to work out.
12                   THE COURT:  So that's where I'm going.
13       Talk about it.  When we come back, we can talk about the
14       depositions.
15                   When is your -- when is your expert
16       deadline?
17                   MR. CRAWFORD:  I believe April 15th.
18                   THE COURT:  See, I mean --
19                   MR. CRAWFORD:  I know.
20                   MR. PRICHARD:  That's the whole issue.  I
21       mean, can we come back on the 12th and see where we are
22       about case management and how much time they think they
23       have?  You're not suggesting that we have to present
24       these two gentlemen again between now and the 12th, are
25       you?
```

```
 1                    THE COURT:  Well, here is my problem.  Not
 2   necessarily except they've got an expert's deadline on
 3   the 15th.  So right now, my only option is, well, I'm
 4   going to allow it.  So, yeah, go take it next week or in
 5   two weeks.  I don't think that makes sense.  I don't
 6   think that sounds efficient.  I don't think that's
 7   smart.  By the same token, you're trial lawyers, you
 8   know.  You guys got to do what you've got to do.
 9                    MR. CRAWFORD:  Okay.
10                    THE COURT:  So why don't y'all talk about
11   it.
12                    MR. CRAWFORD:  We'll talk about it, Your
13   Honor.
14                    THE COURT:  And let me know.
15                    MR. PRICHARD:  If they decide to go
16   forward between now and the 12th, with all due respect,
17   shouldn't they be limited to a total of six hours?
18                    THE COURT:  There's no motion that says
19   otherwise.
20                    MR. PRICHARD:  Thank you.  Okay.
21                    THE COURT:  Right now, guys, you don't
22   have a motion that says, "We want more time."
23                    MR. CRAWFORD:  Your Honor, I understand.
24                    THE COURT:  Because you've got to sort of
25   put it together and say, "Really, how much more time do
```

1    we need?  Three hours?  Two hours?  Six hours?"

2                  *MR. CRAWFORD:*  We may not even need it.  I

3    don't know.

4                  *THE COURT:*  You may not need more than an

5    hour.

6                  *MR. CRAWFORD:*  Or we may.  So we'll have

7    to talk about that, and then --

8                  *MR. DEMERATH:*  The one thing that comes to

9    mind too -- we've got a layer into this -- that we had a

10   series of written discovery.  The written discovery was

11   very narrow previously, and we sent new written

12   discovery, and that was produced, but we didn't get a

13   single page of documents.

14                  *THE COURT:*  And that's what I'm saying,

15   gentlemen, is --

16                  *MR. DEMERATH:*  Yeah.

17                  *THE COURT:*  -- there's going to be motions

18   to compel.

19                  And normally, especially if you're

20   preparing for trial, you want to get all of those

21   motions to compel addressed and ordered by a Court and

22   see what they have to produce before you have to take

23   these very expensive and important depositions.  You

24   need to have all of your ammunition -- all your --

25   everything ready to go, you know, at that time.

1               *MR. CRAWFORD:*  Okay.

2               *THE COURT:*  So let's go off the record

3    because now we're just talking amongst you trial

4    lawyers, you know.

5                    *(Discussion off the record.)*

6               *THE COURT:*  Back on the record.   The

7    ruling of the Court:   The two depositions or

8    re-depositions to be allowed, not to be taken before

9    April 12th.   Plaintiffs' deadlines for designation of

10   expert to be extended.   The parties to work on dates.

11   And then the case is reset to 4/12/19 at 1:30 here in

12   this court to address confidentiality documents.

13              *MR. DEMERATH:*  Under the applicable

14   standard of Texas law?

15              *THE COURT:*  Of course.   Do you want to go

16   under like some other law?   California?

17              *MR. PRICHARD:*  You know, the United

18   Nations.

19              *MR. DEMERATH:*  No, no.   But there's many

20   different standards we could work on.   It could be a

21   couple of different things.

22              *THE COURT:*  Yeah.

23              *MR. DEMERATH:*  So that's very important to

24   have the rules set.

25              *THE COURT:*  In accordance to Texas law.

 1              *MR. DEMERATH:*  Okay.

 2              *MR. PRICHARD:*  But back on the

 3   depositions, Your Honor, you said that they could be

 4   taken, but not -- but it would be after 4/12.  But under

 5   the current time frames, absent a motion to extend the

 6   deadlines --

 7              *THE COURT:*  They'll have to --

 8              *MR. PRICHARD:*  -- of the time.

 9              *THE COURT:*  Obviously if they want to

10   extend the time, y'all will need to file a motion.

11              *MR. CRAWFORD:*  We'll need to file a

12   motion, Your Honor.

13              *THE COURT:*  You know, and then I think you

14   just need to figure out how much time you think you will

15   need.  And who knows?  They might agree, you know.  It

16   sounds like y'all are trying to work together.

17              All right.  Anything further for today?

18              *MR. CRAWFORD:*  Nothing, Your Honor.

19              *THE COURT:*  I think I'll go ahead and keep

20   your binders because it looks like we'll need to be

21   addressing the confidentiality agreement and whatnot in

22   a few weeks, all right?

23              Thank y'all.

24              *MR. PRICHARD:*  Thank you, Your Honor.

25              *THE COURT:*  Y'all have a good weekend.

1        *MR. CRAWFORD:*  Thank you, Your Honor.

2        *MR. PRICHARD:*  Have a good vacation.

3        *THE COURT:*  Oh, I will.

4        *(10:17 a.m.  Court was adjourned.)*

5          *-*-*-*-*-*-*-*-*-*-*-*-*-*

6             (END OF PROCEEDINGS)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1  THE STATE OF TEXAS )

2  COUNTY OF BEXAR    )

3           I, MARY ORALIA BERRY, Official Court

4  Reporter in and for the 131st District Court of Bexar

5  County, State of Texas, do hereby certify that the above

6  and foregoing contains a true and correct transcription

7  of all portions of evidence and other proceedings

8  requested in writing by counsel for the parties to be

9  included in this volume of the Reporter's Record, in the

10 above-styled and numbered cause, all of which occurred

11 in open court or in chambers and were reported by me.

12           I further certify that this Reporter's

13 Record of the proceedings truly and correctly reflects

14 the exhibits, if any, offered and/or admitted by the

15 respective parties.

16           I further certify that the total *expedited*

17 original costs for preparation of this Reporter's Record

18 is $612.00 and was paid by Mr. David M. Prichard.

19           WITNESS MY OFFICIAL HAND this the 12th day

20 of March, 2019.

21           /s/ Mary Oralia Berry
           Mary Oralia Berry, Texas CSR #2963
22         Expiration Date:  12/31/19
           Official Court Reporter-Bexar County,TX
23         100 Dolorosa
           131st District Court, Room 2.17
24         Bexar County Courthouse
           San Antonio, Texas 78205
25         Phone:  (210)335-2289