IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JOE HOLCOMBE, et. al, | § | NO. 5:18-CV-00555-XR |
| | § | (Consolidated cases) |
| Plaintiffs | § | |
| | § | |
| | § | |
| vs. | § | |
| | § | |
| UNITED STATES OF | § | |
| AMERICA, | § | |
| | § | |
| Defendant | § | |
| | § | |

**DEFENDANT UNITED STATES' RESPONSE TO ACADEMY, LTD., D/B/A ACADEMY SPORTS + OUTDOORS' MOTION FOR PROTECTION FROM SUBPOENA**

On October 15, 2019, the United States filed a motion for leave to designate responsible third parties in the above-captioned consolidated actions stemming from the mass shooting at the First Baptist Church of Sutherland Springs on November 5, 2017.  ECF No. 150.  In addition to naming the shooter, Devin Patrick Kelley, and John Does No. 1-10, the United States sought to designate Academy, Ltd., d/b/a Academy & Outdoors (Academy), as a responsible third party pursuant to Tex. Civ. Prac. & Rem. Code 33.001, et. seq.  The Government alleged that Academy illegally sold a high-capacity Model 8500 Ruger AR-556 semi-automatic AR-15 style rifle to Kelley, which he subsequently used to commit the shooting.  *Id*. at 2.  Academy's conduct thus contributed to causing the harm for which recovery is sought in these actions.  The Court granted the United States' motion on November 5, 2019.  ECF No. 160.

1

On March 5, 2020, the United States of America served Academy with a Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action. ("Subpoena"). The United States issued its subpoena after several conferrals between counsel for Academy and the United States.[1] After multiple discussions with Academy's counsel, the United States agreed to narrowly tailor the subpoena to seek only those documents, records, communications, or other materials that were already produced to any plaintiff in the case of *Chris Ward, et al. v. Academy, Ltd.*, Case No. 2017-CI-23341, Bexar County District Court, 224th Judicial District, and in any cases consolidated with that case. Academy previously produced the requested material in the state consolidated cases pursuant to a protective order entered into by the parties ("Agreed Protective Order"). After that production, and following the denial of its summary judgment motion based on its claimed immunity under the Protection of Lawful Commerce in Arms Act – 15 U.S.C. §§ 7901 et seq. ("PLCAA"), Academy petitioned the Texas Supreme Court for mandamus review. That motion was granted, including a stay of all future discovery. According to Academy, additional plaintiffs (including several plaintiffs in these federal consolidated cases) subsequently "sought to continue discovery and circumvent the Agreed Protective Order, despite the stay in the Consolidated Cases." ECF No. 184 at 3. The Texas Supreme Court entered a second order expressly staying all discovery in those subsequent cases. ECF No. 184 at 3, Exhibit C.

In the response to the United States' subpoena, Academy filed a motion for a protective order. ECF No. 184. Notably, in its motion, Academy does not contest the relevance or the

---

[1] The parties first conferred in November 2019, at which time the United States notified Academy's counsel of its intent to issue a subpoena. Academy requested several meetings to discuss their equities in the state cases. The United States issued an initial subpoena on January 31, 2020, but after further discussions with Academy's counsel, agreed to withdraw the subpoena and replace it with the current version.

2

scope of the discovery sought by the government through its duly issued subpoena. Rather, Academy makes three arguments in support of its motion: (1) it is statutorily immune from discovery under PLCAA; (2) the subpoena does not address Academy's claimed need for a protective order for confidential, sensitive, and proprietary information; and (3) the subpoena undermines the Texas Supreme Court's current stay of the state cases, including discovery. *Id*.

The United States' only interest is obtaining the discovery necessary to support its assertion that Academy is a responsible third-party. The United States defers to the Court with respect to Academy's request for a protective order. During conversations with Academy's counsel, the United States made it clear that, while it was willing to limit its initial subpoena to the material already produced in the state cases, it reserves the right to issue supplemental subpoenas, if necessary.[2] At Academy's request, the United States reviewed the Agreed Protective Order and informed Academy that it does not oppose the language, but stressed that it is not in a position to evaluate Academy's need for a protective order. The United States emphasized that, in order to use the discovery during this litigation, the material must be made available to all plaintiffs' counsel, including those who have not signed onto the Agreed Protective Order in the state proceedings. Thus, Academy's arguments are not directed towards the government, but towards the plaintiffs who Academy perceives are attempting to circumvent the stay in the state actions. The United States respectful requests that the Court deny the motion

---

[2] In Plaintiffs' Response to Academy's Motion for Protection, ECF No. 193, Plaintiffs accuse the Government of going on a "fishing expedition." This is patently false. The United States seeks the same production many of the plaintiffs have already received in the state consolidated cases, which are based on the same theory of liability against Academy. It is ironic that Plaintiffs would argue that the United States' discovery request – a request that mirrors what many plaintiffs sought and received in their state action – is irrelevant and overly broad. Moreover, the United States tailored its subpoena at Academy's request to allow Plaintiffs and Academy to resolve their dispute concerning the proposed Protective Order.

in so far as Academy should be required to comply with the subpoena. The United States is ready and willing to enter into an appropriate protective order or other measure the Court deems appropriate to facilitate compliance with the subpoena.

## ARGUMENT

Academy's first argument, that the Protection of Lawful Commerce in Arms Act, 15 U.S.C. §§ 7901 et seq. ("PLCAA"), immunizes it from complying with a duly issued subpoena under Rule 45 of the Federal Rules of Civil Procedure, is without merit. Academy fails to provide any legal support for its claim that the statute immunizes a gun dealer from engaging in civil discovery, much less shielding it from a third-party subpoena. In its motion for emergency temporary relief to the Supreme Court of Texas, Academy argued that the PLCAA "protects licensed firearms sellers from bearing the cost of defending against such suits and is intended to protect firearms sellers from having to defend themselves in court entirely, absent application of a statutory exception." Pls.' Mot. at 8, No. 19-0497, Case No. 2017-CI-23341 (citing 15 U.S.C. § 7901(b)(1); *City of New York v. Beretta U.S.A. Corp.*, 524 F.3d 384, 397 (2d Cir. 2008)). Academy also cited congressional testimony from a PLCAA sponsor to argue that the Act "was necessary to protect the firearms industry against lawsuits because '[t]he sheer cost of litigation, the repetitive filing of laws [sic], the need to defend those lawsuits literally cost hundreds of millions of dollars." *Id*. (citing 151 CONG. REC. S9087, S9089 (statement of Sen. Craig)).

Academy's arguments are inapplicable here. Unlike in the state proceedings, Academy is not a party or direct defendant in this litigation. To the extent Academy can argue that 15 U.S.C. § 7901(b)(1) and (b)(4) immunize it from the burdens of defending itself in a civil action, the Act is silent with respect to firearms sellers having to complying with a subpoena as a non-party to the litigation. Additionally, *City of New York v. Beretta U.S.A. Corp.*, 524 F.3d 384, 397 (2d Cir.

4

2008), centers on the constitutionality of PLCAA and does not address the parameters of discovery. Tellingly, in 2005 (the same year PLCAA was enacted), Congress passed the Consolidated Appropriation Act of 2005. There, Congress immunized ATF Firearms Trace System data, which provided that "all such data shall be immune *from legal process and shall not be subject to subpoena or other discovery in any civil action* in a State or Federal court or in any administrative proceeding . . . ." Pub. L. No. 108-447, 118 Stat. 2809, 2859-60, codified as amended at 18 U.S.C. 923 note (2004); *see also* City of Chicago v. ATF, 423 F.3d 777 (7th Cir. 2005). Clearly, Congress is capable of enacting an immunity provisions that extends to subpoenas and other discovery in any civil action, and could have done so under PLCAA, but elected not to do so.

Moreover, the United States' subpoena is limited to material that was previously identified, gathered, and produced by Academy in the state action. Consequently, Academy cannot realistically argue that reproducing the same material in this litigation would be overly burdensome or costly. Academy essentially concedes these points, noting that "the government's subpoena extends only to those documents Academy already produced in the Consolidated Cases. The state trial court's order already deprived Academy of that limited portion of its PLCAA immunity, but it still only required Academy to produce materials subject to the Agreed Protective Order." *Id*. at 5. As a result, while Academy reserves its PLCAA immunity argument, it acknowledges that its true concern is producing the material without the proposed Protective Order, as it would permit the plaintiffs who have not signed the protective order in the state action to circumvent the current stay issued by the Texas Supreme Court.

In their second argument, Academy contends it "has a good cause basis for protecting the confidentiality of certain information: the safety of its employees and the confidentiality of its

5

proprietary information." *Id*. at 6. Academy contends that "all parties recognize the visceral, emotional intensity of this case, and the possibility of individual threats to any Academy employees who are identified in connection with this case." *Id*. Additionally, Academy seeks to protect "non-public, proprietary, and confidential financial, business, and strategic planning information." *Id*.

In its third argument, Academy acknowledged that the "government has not requested any such documents [in excess of prior productions], nor has the government objected to or opposed the Agreed Protective Order." *Id*. at 14. Academy continued, "Plaintiffs, on the other hand, should be prohibited from doing so, because they either expressly agreed to the Agreed Protective Order, in which case they should be bound by it, or they are subject to the Texas Supreme Court's stay of discovery against Academy, in which case they must not be allowed to use this lawsuit to defeat that order." *Id*. Academy then argues that, "To the extent Plaintiffs in this lawsuit object to the Agreed Protective Order, even though the United States does not, the principle that a party cannot use a protective order to get another party to produce documents and then, once the documents are produced, pull the protective order out from under them applied with even more force, because some of the lawyers representing the Plaintiffs here are also counsel for plaintiffs in the Consolidated Cases, who are unquestionably governed by the Agree Protective Order." *Id*. at 16.

The United States takes no position with respect to Academy's request for a protective order, or the proper scope of such a protective order. Academy correctly noted that the United States and Academy have conferred regarding entrance into a protective order. *Id*. at 5. The United States does not oppose the language in Exhibit A governing Academy's response to the subpoena. However, any protective order must ensure that the United States is authorized to use

6

the produced material during these proceedings, which includes citing relevant documents in motions and publishing them as exhibits during depositions and trial. This will necessitate producing the material to the opposing counsel, including those who have not signed onto the Agreed Protective Order in the state proceedings. And, of course, the United States would disclose to opposing counsel any material it obtained pursuant to Federal Rules of Civil Procedure 26 and 45.

In Plaintiffs' Response to Academy's Motion for Protection, Plaintiffs suggest that a narrowly fashioned protective order could be written "that applies only to Academy's production and allows the parties to use those documents for any purpose related to the instant litigation." ECF No. 193. Plaintiffs proposed an alternative protective order, attached to their response brief as Exhibit A. The United States defers to the Court regarding both proposals. Should the Court decline to issue a protective order, yet seek to promote comity with the state proceedings, a stay of discovery in these federal proceedings, at least with respect to the United States' responsible third-party claims, would be necessary until the Texas Supreme Court adjudicates the state action. In the event the Court stays the subpoena pending adjudication by the Texas Supreme Court, the United States urges that the discovery deadlines outlined in the Court's Scheduling Orders, ECF No. 98 & 175, be delayed commensurate with the stay to permit the United States adequate time to advance its responsible third-party claims. Such an extension would likely necessitate pushing back other deadlines, including summary judgment motions and the trial date, in order for the United States to have the adequate discovery needed to advance its defenses.

## CONCLUSION

For the reasons set forth above, the United States respectful requests that the Court deny Academy's motion and order it to comply with the United States' subpoena.

Dated: March 27, 2020

                                              Respectfully submitted,

                                              JOSEPH H. HUNT
                                              Assistant Attorney General
                                              Civil Division
                                              JOHN F. BASH
                                              United States Attorney
                                              JOHN F. PANISZCZYN
                                              Assistant United States Attorney
                                              State Bar No. 15443855
                                              JAMES G. TOUHEY, JR.
                                              Director, Torts Branch
                                              Civil Division

                                              */s/ Austin L. Furman*
                                              **AUSTIN L. FURMAN**
                                              **PAUL DAVID STERN**
                                              Trial Attorneys, Torts Branch
                                              Civil Division
                                              United States Department of Justice
                                              UNITED STATES OF AMERICA

## **CERTIFICATE OF SERVICE**

I certify that on March 27, 2020, I electronically filed the foregoing with the clerk of court by using the CM/ECF system, and that all counsel of record have received notice and been served through that system.

>  */s/ Austin L. Furman*
>  **AUSTIN L. FURMAN**