IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| HOLCOMBE, et. al, | NO. 5:18-CV-00555-XR |
| | (consolidated cases) |
| Plaintiffs | |
| vs. | |
| UNITED STATES OF AMERICA, | |
| Defendant | |

## JOINT STATUS UPDATE

The Court requested the parties file an advisory to inform the Court of (a) the depositions the parties still need, (b) protocol for remote depositions, and (c) any modifications to the scheduling order that the parties need.

## A.   DEPOSITIONS THE PARTIES STILL NEED.

### 1.   *Liability Depositions Still Needed*

#### 1.1.   **Plaintiffs' Deposition List**

Plaintiffs still need the following depositions:

- Matthew Veltri;

- Tracy Wolfe;

- Col. Hudson's Supervisor;

- Training 30(b)(6) Topic;

- Naval Corrections 30(b)(6) Topic;

- IG Recommendations 30(b)(6) Topic

### a)   Matthew Veltri

The United States identified Mr. Veltri in response to the Court's order and sanctions as a person with knowledge. Prior to the COVID-19 pandemic, Parties had scheduled Mr. Veltri's deposition, but had to postpone it. To date, Mr. Veltri is the Region 2 supervisor who had access and did access the Devin Kelley investigation file during the 2011-2012 time period.

The United States does not dispute this request.

### b)   Tracy Wolfe

Tracy Wolfe was Devin Kelley's First Sergeant—in charge of discipline— and has personal knowledge of Kelley's conduct in the Air Force. We expect Mr. Wolfe to testify concerning the Air Force's specific knowledge of Devin Kelley's risk of violence. Mr. Wolfe was not listed by Defendant in their persons with knowledge in response to the Court's Order, in Defendant's Rule 26 Disclosures, or in Defendant's responses to the mandatory interrogatory under W.D. Tex. Local Rule CV-33(b)(1).  Mr. Wolfe was discovered through document review and other witness testimony.

The United States disputes this request.  Extensive testimony already provided made clear that no personnel within Kelley's squadron was responsible for Kelley's investigation or conviction, including the taking and/or submitting of fingerprints or his final disposition to the FBI.  To the extent this deposition is sought to obtain evidence of "Kelley's risk of violence," it is redundant to the twelve fact witnesses who have provided similar testimony.

### c)      Col. Hudson's Immediate Supervisor—Air Force OSI Commander.

Col. Hudson was the Region II Commander, Air Force Office of Special Investigations (AFOSI), during the Devin Kelley investigation and through the Devin Kelley conviction. Holloman Air Force Base, Detachment 225, was under his command and supervision. During Col. Hudson's deposition he testified that Region II command was unaware that fingerprint reporting and conviction submission to the FBI was even a problem. Col. Hudson testified that he did not know it was an Air Force issue until after the Nov. 5, 2017, shooting in Sutherland Springs. Col. Hudson also testified that his Region II command was not informed about any of the prior Inspector General reports that uncovered the Air Force-wide problem of fingerprint and conviction reporting. Finally, Col. Hudson testified that his supervisory command was responsible for training and informing him about these issues and that his supervisory command was also responsible for informing Region II command about the prior IG reports, but they did not. Col. Hudson identified the fact witness supervisors who would have knowledge of relevant facts regarding these issues. Col. Hudson identified his immediate supervisor at the relevant time as the OSI Commander, Brigadier General Jacobsen.

The United States disputes this request.  As noted below, the United States does not dispute Plaintiffs' request for Rule 30(b)(6) deponents regarding training and the Air Force's adoption of IG recommendations.  As those deponents will speak on behalf of the Air Force, this deposition request is redundant.

**d)      Training Rule 30(b)(6) Topic**

This topic concerns Plaintiffs cause of action on the Government's failure to train its employees. On August 22, 2019, Plaintiffs sent the United States the following topic and the United States agreed to present a representative or representatives on the matter:

> Training or education USAF personnel received concerning fingerprint collection and final disposition submission procedures, including submission to the FBI CJIS, NIBRS, or DIBRS. This topic concerns training or education given to personnel involved in the investigation, court-martial, or confinement of Devin Kelley between July 1, 2011 and December 14, 2012, whether they received the training at the time or some earlier time. This topic includes, but is not limited to: (a) the training or education provided by the Air Force Security Forces Academy at Joint Base San Antonio-Lackland, Texas; (b) the 65-day course at the security Forces Academy covering basic military police functions; (c) formal or informal training; (d) "on-the-job" training or education; (e) recurring or annual training or education; and (f) training or education provided by the Naval Corrections Academy.

This topic was previously calendared but was taken down because of the COVID-19 Pandemic.

The United States does not dispute this request.

**e)      Confinement & Corrections Rule 30(b)(6) Topic**

This topic directly concerns Plaintiffs' cause of action on the operational failures at the confinement facilities. On August 22, 2019, Plaintiffs sent the United States the following topic and the United States agreed to present a representative on the matter:

> Policies, procedures, practices, checklists, and protocols concerning the USAF Corrections System policy for post-trial inmates during in-processing concerning the submission of fingerprints and final disposition reports to the FBI. This topic includes, but is not limited to, the collection of Devin Kelley's fingerprints and submission of his final disposition report by the confinement facility personnel.

To date, the United States has not presented an individual on this topic, even though Plaintiffs have requested the United States schedule this deposition multiple times since August 22, 2019.

The United States object to this request.  On October 4, 2019, the parties filed nine stipulations with the Court.  Stipulation No. 4 reads,

> On November 7, 2012, after Devin Kelley's General Court-Martial conviction, DoD and Air Force instructions and policies required the 49th Security Forces Squadron Confinement Facility to collect Devin Kelley's fingerprints and submit them to the FBI CJIS Division. The 49th Security Forces Squadron Confinement Facility employees did not collect and submit Devin Kelley's fingerprints to the FBI CJIS Division.

Given that the United States has already stipulated to the issues that would be addressed in this deposition, the United States objects to the request as unnecessary and redundant.

### f)    IG Recommendations Implementation Rule 30(b)(6) Topic

In discovery, Plaintiff's took the depositions of multiple Government employees at various levels who were entirely unaware of the multiple

Inspector General recommendations from 1997-2017 to correct the very mistakes at issue in this case. Plaintiffs seek this topic to explain why none of the recommendations to fix the collection and submission of fingerprints and final dispositions from 1997-2017 were implemented by the Air Force or Department of Defense.

On January 21, 2020, Plaintiffs sent the United States the following topic and the United States agreed to find a representative on the matter:

> Implementation of recommendations by Department of Defense (DoD) Inspector General, between 1997 and present, concerning the submission of criminal history data or fingerprints by Air Force units or command to DoD Defense Manpower Data Center or the FBI and Air Force agreements or undertakings to correct omissions or failures to submit such data or fingerprints. This topic includes corrective actions taken by the units or commands concerning such recommendations, agreements, or undertakings; instructions, regulations, guidelines, or other mandates provided to various Air Force units or command levels concerning such recommendations, agreements, or undertakings; and training or supervision provided to units or command concerning implementation of such recommendations, agreements, or undertakings.

To date, the United States has not presented an individual on this topic, even though Plaintiffs have requested the United States schedule this deposition multiple times since January 21, 2020.

Provided the deposition concludes discovery on the issue, and is not used by Plaintiffs as a means of identifying additional deponents, the United States does not dispute this request.

1.2.    **United States' Deposition List**

The United States has not yet taken any liability depositions.  The United States needs depositions of the following witnesses:

- Fed. R. Civ. P. 30(b)(6) designee(s) of the Texas Rangers.

- Fed. R. Civ. P. 30(b)(6) designee(s) of Academy, Ltd., d/b/a Academy Sports & Outdoors.

- Danielle Shields Kelley.

- Michelle Shields

- Michael Kelley.

- Rebecca Kelley.

- Emily Alane Willis.

- Candace Marlow.

a)      **Fed. R. Civ. P. 30(b)(6) designee(s) of the Texas Rangers.**

The Texas Rangers' investigated the Sutherland Springs Shooting and was served with a subpoena by the United States.  The designee(s) are expected to testify concerning the facts discovered in that investigation, including facts pertaining to Kelley's acquisition of firearms, and preparation and motivation for the shooting, and documents that have been produced by the Texas Rangers in response to the subpoena. Plaintiffs do not dispute this request.

b)      **Fed. R. Civ. P. 30(b)(6) designee(s) of Academy, Ltd., d/b/a Academy Sports & Outdoors.**   Academy has been named as a responsible third-party in this litigation, has been sued by various Plaintiffs in Texas state court, and was served with a subpoena by the United States.  The

designee(s) are expected to testify concerning the circumstances surrounding the sale of a high-capacity Model 8500 Ruger AR 556 semi-automatic AR-15 style rifle to Devin Patrick Kelley, and documents that have yet to be produced by Academy in response to the subpoena. Plaintiffs do not dispute this request.

    **c)**    **Danielle Shields Kelley**.  She is the widow of Devin Patrick Kelley.  She is expected to testify concerning Devin Patrick Kelley's propensity for violence prior to the Sutherland Springs Shooting; his acquisition and modification of firearms and preparation for the shooting; his relationship with various family members and (if any) the congregant of the First Baptist Church of Sutherland Springs at the time of the shooting; and his ability to acquire firearms through means other than a federally-licensed firearms dealer. Plaintiffs do not dispute this request.

    **d)**    **Michelle Shields.**  She is the mother-in-law of Devin Patrick Kelley.  She is expected to testify concerning Devin Patrick Kelley's propensity for violence prior to the Sutherland Springs Shooting and the conflict between her and Devin Patrick Kelley that is hypothesized to be the motivation for the Sutherland Springs Shooting. Plaintiffs dispute this request.

    **e)**    **Michael Kelley**.  The father of Devin Patrick Kelley, and has been sued by various Plaintiffs in Texas state court.  He is expected to testify concerning Devin Patrick Kelley's propensity for violence prior to the

Sutherland Springs Shooting; his acquisition and modification of firearms and preparation for the shooting; his relationship with various family members and (if any) members of the congregation; circumstances surrounding his voluntarily admission into Peak Behavioral Health Services; and his ability to acquire firearms through means other than a federally-licensed firearms dealer. Plaintiffs do not dispute this request.

**f)      Rebecca Kelley**.  The mother of Devin Patrick Kelley, and has been sued by various Plaintiffs in Texas state court.  She is expected to testify concerning Devin Patrick Kelley's propensity for violence prior to the Sutherland Springs Shooting; his acquisition and modification of firearms and preparation for the shooting; his relationship with various family members and (if any) members of the congregation; circumstances surrounding his voluntarily admission into Peak Behavioral Health Services; and his ability to acquire firearms through means other than a federally-licensed firearms dealer. Plaintiffs dispute this request.

**g)      Emily Alane Willis**.  She is the former roommate of Danielle Shields Kelley and Devin Patrick Kelley.  She is expected to testify concerning Devin Patrick Kelley's propensity for violence prior to the Sutherland Springs Shooting; his relationship with Danielle Shields Kelley and various family members; and his ability to acquire firearms through means other than a federally-licensed firearms dealer. Plaintiffs dispute this request.

h)   **Candace Marlow**.  New Braunfels Counseling Center.  She is a mental health professional who treated Devin Patrick Kelley twice a week starting in June 2016, and was served with a subpoena by the United States. She is expected to testify concerning Devin Patrick Kelley's propensity for violence prior to the Sutherland Springs Shooting, his relationship with Danielle Shields Kelley and various family members, and documents that have been produced by her in response to the subpoena. Plaintiffs dispute this request.

2.   *Categories of Expert Depositions*

a.   Depositions of Plaintiffs' **three** liability experts.

b.   Depositions of Plaintiffs' **twenty** damages experts.

c.   Depositions of the United States' liability experts.

d.   Depositions of the United States' damages experts.

e.   Depositions of persons retained by the United States to perform examinations under Fed. R. Civ. P. 35, to the extent that those experts are not retained to provide testimony.

3.   *Categories of Remaining Damages Fact Depositions*

a)   Depositions of 22 Plaintiffs.

b)   Depositions of up to 9 minor children. Plaintiffs oppose the deposition of minor children.

c)      Depositions of Plaintiffs' medical and mental health providers to be determined.  At minimum, this will require the deposition of twenty-nine (29) treating medical providers, by the Plaintiffs' own account.  However, as hundreds of additional medical providers remain on Plaintiffs' initial disclosures, the United States is in the process of assessing whether, and how many, addition depositions are necessary.

d)      Depositions of individuals identified on Plaintiffs' initial disclosures as supporting Plaintiffs' damages claims, to the extent not already identified.

## B.   PROTOCOL FOR REMOTE DEPOSITIONS

### 1.1.   Plaintiffs' Protocol

Plaintiffs respectfully request the Court enter the proposed order attached to this advisory.  This order lays out protocol for remote depositions, along with a sample notice of deposition (Exhibit A) and a declaration for witnesses to sign (Exhibit B). Together, Plaintiffs believe this addresses the Court's concerns on expediently conducting remote depositions, ensuring everyone's safety, while also protecting against witness tampering.

### 1.2.   Defendant's Protocol

Defendant does not contest the proposed protocol for remote depositions or witness declaration (Exhibits A & B).  The United States merely notes that, while it will continue to work diligently to move discovery forward, a one-size-fits-all method for remote depositions is not available, given the

practical and technological realities facing the parties.  The United States understands that remote depositions may be necessary with respect to some witnesses, and has offered to take the telephonic deposition of certain Plaintiffs in an effort to ensure that discovery is moving forward.  Several of the depositions that Plaintiffs have requested be conducted remotely, however, are of high-level officials or are document-intensive, and are thereby not suitable for remote procedures.  Counsel for the United States' ability to participate in depositions remotely is very limited.  Due in part to federal encryption requirements, the United States can only participate in telephonic depositions using a secure video conference bridge.  That technology is very limited and is only available in certain conference rooms.  Due to the mandate for maximum telework flexibility, there is decreased availability of individuals who are trained to facilitate use of a video conference bridge. Moreover, coordination with agency counsel and the deponent (who is likely either teleworking from home or is a high-level official involved with the Air Force's response to the pandemic) will be necessary to assess whether any given deposition can move forward.  The need to take certain depositions remotely, as opposed to waiting to determine whether they can be conducted in-person in the future, will largely depend on any modifications to the scheduling order.

## C.    MODIFICATIONS TO THE SCHEDULING ORDER

### 1.   *Plaintiffs' Recommended Scheduling Modifications*

Plaintiffs designated their liability and damages experts on April 1, 2020. Under the original Scheduling Order, Defendant's experts would have

been due 15 days after Plaintiffs' designations. But Defendant requested a 45-day gap, which Plaintiffs agreed to under the modified scheduling order (ECF No. 98), placing their designation of both liability and damages experts at May 15, 2020. Plaintiffs now recommend the Court allow the Defendant 30 extra days to designate their expert witnesses, which moves the Government's deadline to June 14, 2020 and is six months after the Court ordered deadline. ECF No. 29 (June 23, 2019).

Plaintiffs also recommend moving the dispositive motion deadline, including summary judgment motions, to July 24, 2020. Finally, Plaintiffs recommend moving the trial from its current setting of September 8, 2020, to November 2, 2020. Parties have conferred with Ms. Fernandez and she stated that this trial date is open on the Court's calendar. This delay should more than adequately cover any communication problems arising from the COVID-19 Pandemic.

Plaintiffs' extension recommendation is based on the needs of the case as they currently sit, and adding several months based on the COVID situation. Plaintiffs have worked diligently in the last month to provide efficient and expeditious options for both parties to complete depositions, dramatically narrowed Plaintiffs' liability witness list, and dramatically narrowed the damage witness list.

### 2.    *Defendant's Recommended Scheduling Modifications*

Despite the United States' diligence, the current scheduling deadlines cannot be met because of the voluminous discovery that remains, particularly with respect to damages -- a situation that has only been exacerbated by the COVID-19 pandemic.  Only counting witnesses who have been specifically

identified above, a total of 91 additional depositions still need to be taken. This number does not include the unknown number of depositions of Defendant experts, Plaintiff rebuttal experts, depositions stemming from IMEs, and depositions of medical providers not included in Plaintiffs' "List of Shooting-Related Medical Providers to Be Deposed." The work to take and prepare for what will likely be over 150 more depositions is extensive, not even including the work necessary for IMEs, additional expert reports, summary judgment motions, *Daubert* motions, as well as the additional discovery and pretrial matters that will certainly arise. Accordingly, a nine-month extension of the trial date is necessary.

The United States' proposed schedule allows for phased deadlines for liability and damages experts, providing the parties with the time necessary to take discovery in this litigation while avoiding undue delay. An earlier cut-off for liability expert discovery allows the Court several months prior to trial in order to decide summary-judgment motions, while discovery continues primarily on damages matters, where the greatest amount of discovery remains. This schedule also anticipates inevitable delays on damages discovery due to the increased burden on many medical and mental health providers due to COVID-19.

The volume of discovery remaining is not due to any lack of diligence on the part of the United States. On April 1, 2020, Plaintiffs filed a 109-page expert disclosure identifying numerous witnesses, including three retained experts on liability issues, and 20 retained experts on damages issues. (ECF No. 197). These retained experts have provided a total of 149 expert reports. A response to 23 experts and 149 reports will take some time, and the volume of damages discovery needed prior to the drafting of damages expert reports,

including Fed. R. Civ. P. 35 examinations, is tremendous.  For instance, the United States is working to identify additional medical providers for potential deposition from 67,059 pages of medical records produced thus far and disclosures containing over 900 medical or mental health providers, a tremendously burdensome task.  In addition, certain of these providers were only recently identified and certain documents were only recently produced.

The United States has been diligent in moving this consolidated litigation, which includes 58 Plaintiffs prosecuting 89 claims, toward trial. With respect to damages discovery, the United States has taken 30 depositions of Plaintiffs to date, and has served 75 subpoenas (or other request for records) upon Plaintiffs' medical providers, despite not beginning to receive medical releases from Plaintiffs until early February 2020.  With respect to liability discovery, the parties have entered into two sets of stipulations.  On October 11, 2018, the parties filed twelve proposed stipulated facts.  (ECF Nos. 21, 24).  And, following the Court's adjudication of the United States' Motion to Dismiss and hearing on September 25, 2019, the parties filed nine additional stipulations – all but one of which were drafted by the Plaintiffs and agreed upon by the United States in an effort to narrow the scope of discovery.  (ECF No. 149).

Despite those stipulations, liability discovery has been extensive.  The United States has produced almost 24,000 pages of documents from the Department of Defense, the Air Force, the FBI, and the ATF.  The United States has also facilitated the production of additional documents from third parties, has responded to interrogatories, requests for admission, and multiple sets of requests for production, and has served its own written discovery and issued five subpoenas, including the subpoena to Academy.

The United States has presented a total of sixteen deponents.  Twelve of the deponents were Air Force personnel across several states, including California, Colorado, Ohio, and Illinois, with several depositions scheduled and later cancelled by Plaintiffs.  Four deponents served as Fed. R. Civ. P. 30(b)(6) designees and provided extensive testimony of a vast array of subject matters, including but not limited to the reporting of criminal history information to the FBI by the Air Force Security Forces and the Air Force Office of Special Investigations; the FBI databases for receiving and subsequently using the information to prevent the purchase of firearms by prohibited individuals; and probable cause determinations by a Staff Judge Advocate, including when a determination should be made and training provided for making such determinations.

And, despite these cases being consolidated and discovery in full swing, the United States has still been required to answer twenty-six complaints (ECF Nos. 106, 106-1, 108-115, 118-120, 123, 138-140, 154, 175, 180, 188, 201-205), and move to dismiss another (*White*, ECF No. 182), and will soon respond to a recently-filed complaint to which a response is not yet due (*Holcombe*, 5:20-cv-368).  Although many of the complaints are largely the same, differences in allegations, additional theories of recovery, unexplained inconsistencies, arbitrary differences, misnumbering of paragraphs, and the individual nature of many defenses, have all required counsel to be meticulous in preparing answers.

Although the volume of discovery remaining on liability issues is much less than damages, the current restrictions on travel and safety concerns arising from the pandemic have prevented the United States from yet taking the depositions listed above, which are important for its retained experts.

Moreover, Plaintiffs continue to seek multiple Rule 30(b)(6) depositions on incredibly broad topics, including one topic that requires the Air Force to identify two individuals (from Air Force Security Forces and Air Force Office of Special Investigations) who can speak on behalf of their respective components regarding recommendations stemming as far back at 1997. Given the extensive discovery still sought by Plaintiffs, the discovery needed on liability by the United States, and the tremendous expert and damages discovery still remaining, the current discovery deadlines cannot be met.

Accordingly, the United States proposes the following schedule:

- USA liability expert disclosures: September 18, Friday

- Plaintiff liability rebuttal reports: October 16, Friday

- Summary judgment/ *Daubert* motions on liability experts: November 13, Friday

- Opp. to summ. J.: December 4, Friday

- Reply to summ. J.: December 18, Friday

- USA damages expert disclosures: January 8, Friday

- Plaintiff damages rebuttal reports: January 29, Friday

- Discovery cut off: March 19, Friday

- FRCP 26(a)(3) disclosures/ *Daubert* motions on damages experts: April 2, Friday

- Oppositions to FRCP 26(a)(3) disclosures: April 16, Friday

Ms. Fernandez has notified the parties that the Court's calendar is open for trial dates on June 21 and 28, 2021.

Respectfully Submitted,

/s/ Paul Stern
Trial Attorney, Torts Branch
Civil Division
United States Department of Justice
P.O. Box 888
Benjamin Franklin Station
Washington, D.C. 20004
Telephone: (202) 616-2197
Email: paul.david.stern@usdoj.gov

Attorney for the United States

/s/ Jamal K. Alsaffar
**Jamal K. Alsaffar**
JAlsaffar@nationaltriallaw.com
Texas Bar No. 24027193
**Tom Jacob**
TJacob@nationaltriallaw.com
Texas Bar No. 24069981
**Whitehurst, Harkness, Brees, Cheng, Alsaffar & Higginbotham & Jacob PLLC**
7500 Rialto Blvd, Bldg. Two, Ste 250
Austin, TX 78735
Office 512-476-4346
Fax 512-476-4400
Counsel for Vidal, McKenzie, Solis, McNulty, and Wall

/s/ Jason P. Steed
**Jason P. Steed**
JSteed@kilpatricktownsend.com
Texas Bar No. 24070671
**Kilpatrick Townsend & Stockton LLP**
2001 Ross Avenue, Suite 4400
Dallas, TX 75201
Office 214-922-7112
Fax 214-853-5731
Counsel for Vidal, McNulty, and Wall

/s/ April A. Strahan

**April A. Strahan**
april@ammonslaw.com
Texas Bar No. 24056387
**Robert E. Ammons**
rob@ammonslaw.com
Texas Bar No. 01159820
**The Ammons Law Firm**
3700 Montrose Blvd.
Houston, TX 77006
Office 866-523-1603
Fax 713-523-4159
Counsel for Holcombe, Ramsey, Curnow
& Macias

/s/ Daniel Barks

**Daniel D. Barks,** *pro hac vice*
ddb@speiserkrause.com
**Speiser Krause, P.C.**
5555 Glenridge Connector, Suite 550
Atlanta, GA 30342
Office 571-814-3344
Fax 866-936-6382
Counsel for Holcombe

/s/ Dennis Peery

**Dennis Charles Peery**
d.peery@tylerpeery.com
Texas Bar No. 15728750
**R. Craig Bettis**
cbettis@tylerpeery.com
Texas Bar No. 24040518
**Tyler & Peery**
5822 West IH 10
San Antonio, TX 78201
Office 210-774-6445
Counsel for Uhl

/s/ Daniel J.T. Sciano

**Daniel J.T. Sciano**
DSciano@tsslawyers.com
Texas Bar No. 17881200
**Tinsman & Sciano**
10107 McAllister Freeway
San Antonio, TX 78216
Office 210-225-3121
Fax 210-225-6235
Counsel for Amador

/s/ Mark Collmer

**Mark W. Collmer**
drcollmer@aol.com
Texas Bar No. 04626420
**Collmer Law Firm**
3700 Montrose
Houston, TX 77006
Office 713-337-4040
Counsel for Holcombe

/s/ Tim Maloney

**Tim Maloney**
Texas Bar No. 12887380
timmaloney@yahoo.com
**Paul E. Campolo**
pcampolo@maloneyandcampolo.com
Texas Bar No. 03730150
**Maloney & Campolo, L.L.P.**
926 S. Alamo
San Antonio, TX 78205
Office (210) 465-1523
Counsel for Ramsey

/s/ George LeGrand
**George LeGrand**
tegrande@aol.com
Texas Bar No. 12171450
**Stanley Bernstein**
Texas Bar No. 02225400
**LeGrand & Bernstein**
2511 N. Saint Mary's St.
San Antonio, Texas 78212
Office 210-733-9439
Fax 510-735-3542
Counsel for Wall & Solis

/s/ Justin Demerath
**Justin Demerath**
jdemerath@808west.com
Texas Bar No. 24034415
**O'Hanlon, McCollom & Demerath**
808 West Ave.
Austin, TX 78701
Office 512-494-9949
   Counsel for Corrigan, Braden,
   Warden, Stevens, Pachal, McCain, &
   Poston

/s/ Brett Reynolds
**Brett T. Reynolds**
btreynolds@btrlaw.com
Texas Bar No. 16795500
**Brett Reynolds & Associates, P.C.**
1250 N.E. Loop 420, Suite 420
San Antonio, TX 78219
(210)805-9799
   Counsel for Workman, Colblath, and
   Harris

/s/ Joe Schreiber
**Joseph M. Schreiber**
joe@lawdoneright.net
Texas Bar No. 240374497
**Erik A. Knockaert**
erik@lawdoneright.net
Texas Bar No. 24036921
**Schreiber | Knockaert, PLLC**
701 N. Post Oak Rd., Suite 325
Houston, TX 77024
Phone (281) 949-8904
Fax (281) 949-8914
Counsel for Brown

/s/ Jason Webster
**Jason Webster**
jwebster@thewebsterlawfirm.com
Texas Bar No. 24033318
**The Webster Law Firm**
6200 Savoy
Suite 640
Houston, TX 77036
   Counsel for Lookingbill

/s/ Marion M. Reilly
Marion M. Reilly
**Hilliard Munoz Gonzales, L.L.P.**
719 S. Shoreline - Ste 500
Corpus Christi, TX 78401
(361) 882-1612
361/882-3015 (fax)
marion@hmglawfirm.com
   Counsel for McMahan

/s/ Marco Crawford

**Marco Crawford**
**Law Office of Thomas J. Henry**
4715 Fredricksburg
San Antonio, TX 78229
(210) 585-2151
(361) 985-0601 (fax)
mcrawford@tjhlaw.com
    Counsel for McMahan

/s/ Craig Carlson

**Craig Carlson**
ccarlson@carlsonattorneys.com
**Philip Koelsch**
pkoelsch@carlsonattorneys.com
**Joe Craven**
jcraven@carlsonattorneys.com
**The Carlson Law Firm**
100 E Central Texas Expy
Killeen, TX 76541
254-526-5688
    Counsel for Rios

/s/ Kelley W. Kelley

**Kelley W. Kelley**
**Anderson & Associates Law Firm**
2600 SW Military Drive, Suite 118
San Antonio, TX 78224
(210) 928-9999
(210) 928-9118 (fax)
kk.aalaw@yahoo.com
    Counsel for Ward