# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | |
|---|---|
| DONNA WHITE, INDIVIDUALLY AND AS REPRESENTATIVE OF THE ESTATE OF ROY WHITE, | )<br>)<br>)<br>) |
| Plaintiff, | ) CIVIL ACTION NO. 5:19-cv-01291-XR |
| | ) (*consolidated with* 5:18-cv-555-XR) |
| v. | )<br>) |
| UNITED STATES OF AMERICA, | )<br>) |
| Defendant. | )<br>)<br>) |

## UNITED STATES' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

**STATEMENT**

Plaintiff's Second Amended Complaint, brought under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671–2680, seeks damages on behalf of decedent Roy White, whose mother, Lula White, was killed in the November 5, 2017, shooting in the First Baptist Church in Sutherland Springs, Texas. Roy White was not directly injured in the shooting, nor was he on the scene at the time of the shooting. The Second Amended Complaint alleges that he is entitled to emotional distress damages as a "bystander." Because Roy White only observed television reports of the shooting after the fact, Texas law does not permit him to recover for bystander damages. Therefore, at most, Roy White would have been able to seek wrongful death damages. However, as made clear in the United States' previous motion to dismiss, that claim must be dismissed because wrongful death claims do not survive the death of the beneficiary.[1]

**FACTUAL ALLEGATIONS**[2]

The underlying factual allegations are well known to the Court, and have been described in other filings. The facts that are relevant to this motion are as follows:

On November 5, 2017, Devin Kelley, a former member of the Air Force, entered the First Baptist Church of Sutherland Springs in Sutherland Springs, Texas, killed twenty six people and

---

[1] At oral argument for the Motion to Dismiss the Original Complaint, the Court told Plaintiff that her amended complaint should focus on Mr. White's bystander claim, as the wrongful death claim was not viable. Plaintiff has not, however, removed from the Second Amended Complaint the damages claims that are related only to wrongful death.

[2] All facts in the Second Amended Complaint are presumed to be true solely for the purposes of this motion.

1

wounded an additional twenty.[3] Lula White was one of the victims killed in the shooting.[4] Roy White, the son of Lula White, filed an administrative claim with the Air Force on January 22, 2018.[5] Roy White has since passed away.[6] The present action, commenced on October 30, 2019, was filed by Donna White, the surviving spouse of Roy White, and is brought under the Texas survivorship statute.[7] On April 14, 2020, following a motion to dismiss by the United States, the Court dismissed Plaintiff's First Amended Complaint, without prejudice, and gave Plaintiff 21 days to file a new complaint.

The Second Amended Complaint alleges that on November 5, 2017, Roy White received a call from his son, who told Roy to "turn on the news."[8] On the television, Roy White observed a live broadcast showing the First Baptist Church in Sutherland Springs "surrounded by police and rescue vehicles," with chryon graphics stating that "a mass shooting was occurring at the First Baptist Church."[9] While watching this broadcast, Roy contacted his sister, who "confirmed to Roy that his mother was dead as Roy watched the details of the church shooting unfold on the screen before him."[10] As a result of this incident, Plaintiff alleges that Roy White suffered

---

[3] 2d Am. Compl. ¶¶ 3.44, 8.1.

[4] 2d Am. Compl. ¶ 8.2.

[5] 2d Am. Compl. ¶ 11.1.

[6] 2d Am. Compl. ¶ 8.4.

[7] 2d Am. Compl. ¶¶ 1.2–1.3.

[8] 2d Am. Compl. ¶ 5.1.

[9] 2d Am. Compl. ¶ 5.2.

[10] 2d Am. Compl. ¶ 5.4.

emotional distress.[11] The Estate of Roy White, through his spouse, seeks to recover for various damages, including:

> a) Mental anguish;
> b) Loss of companionship and society;
> c) Loss of care, maintenance, support, services, advice, counsel, and reasonable contributions of pecuniary value;
> d) Loss of inheritance;
> e) Out of pocket expenses;
> f) Funeral and burial expenses; and
> g) Other pecuniary damages.[12]

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows for dismissal of an action "for failure to state a claim upon which relief can be granted." In evaluating a motion to dismiss under Rule 12(b)(6), the Court must construe the complaint liberally and accept all of the plaintiff's factual allegations in the complaint as true. *See In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2009). The court can consider the complaint, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice. *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011).

## ARGUMENT

### I.   UNDER TEXAS LAW, ROY WHITE DOES NOT HAVE A CAUSE OF ACTION FOR BYSTANDER DAMAGES

Plaintiff brought this action under the FTCA. Actions under the FTCA are governed by state law, 28 USC § 1346(b); here, Texas law governs. Plaintiff here is seeking damages suffered by Roy White as a bystander to the death of his mother, Lula White.

---

[11] 2d Am. Compl. ¶ 6.31.

[12] 2d Am. Compl. ¶ 8.7.

In Texas, "there is no general duty not to negligently inflict emotional distress." *Boyles v. Kerr*, 855 S.W.2d 593, 597 (Tex. 1993). Recovery for mental anguish is only permitted in certain contexts: where there is intent or malice by the defendant; serious bodily injury to the plaintiff; a special relationship between the parties; and "cases involving injuries of such a shocking and disturbing nature that mental anguish is a highly foreseeable result." *City of Tyler v. Like*s, 962 S.W.2d 489, 496 (Tex. 1997). The last category includes "actions by bystanders for a close family member's serious injury." *Id.* As Plaintiff does not allege damages based on the first three categories, the only issue before the Court is whether Plaintiff has stated a claim that Roy White was a bystander under Texas law.

Texas case law looks to three elements to determine whether a plaintiff may recover emotional distress damages as a bystander. These are:

> (1)   Whether plaintiff was located near the scene of the accident as contrasted with one who was a distance away from it;
>
> (2)   Whether the shock resulted from a direct emotional impact upon plaintiff from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence; and
>
> (3)   Whether plaintiff and the victim were closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship.

*Boyles*, 855 S.W.2d at 598 (quoting *Freeman v. City of Pasadena*, 744 S.W.2d 923 (Tex. 1988)); *see also Jones v. City of Houston*, 294 S.W.3d 917, 920 (Tex. App. 2009).

With regard to the first element, the Texas Supreme Court has noted that "[a]lthough we have not insisted that a bystander must be within a 'zone of danger' to recover, Texas law still requires the bystander's presence when the injury occurred . . . ." *United Servs. Auto. Ass'n v. Keith*, 970 S.W.2d 540, 542 (Tex. 1998); *see also Hitchcock v. Steak N Shake, Inc.*, 2017 WL

4

5077901, at *10 (W.D. Tex. Nov. 2, 2017) (permitting recovery where "the relative was in close proximity to the accident . . . .").

In *Andrade v. Chojnacki*, Judge Walter S. Smith of this Court refused to permit recovery of bystander damages based on the emotional impact of watching a traumatic event on television. There, members of the Branch Davidians were killed in a fire at their compound during a stand-off with federal agents. Several relatives of the deceased sued for bystander damages, claiming that "they witnessed the burning of the Compound on television." 65 F. Supp. 2d 431, 465 (W.D. Tex. 1999). The Court found that "Plaintiffs were not present at the time of the fire and . . . they did not discover until some time afterward which individuals had died and/or been injured in the fire." *Id.* The Court therefore held that "[e]xisting Texas law does not provide recovery in such a situation . . . . To accept Plaintiffs' argument that recovery may be based upon the emotional impact of seeing the final fire on television would require this Court to adopt an unwarranted extension of Texas law." *Id*.

Here, Plaintiff does not, and cannot, allege that Roy White was present at or near the scene of the shooting. Rather, Plaintiff has alleged that Roy White was in his living room at home, was told to turn on the television, and saw his mother's church on the screen. (2nd Am. Compl. ¶¶ 5.1–5.2). Similar to the plaintiffs in *Andrade*, Roy White was a spectator through his television. Plaintiff's Second Amended Complaint notes that the current COVID-19 crisis has "highlighted the way that the world has changed with respect to information received via modern technology." While that may be true, the fact remains that viewing something on television means that it is viewed remotely. This does not meet the presence requirement under Texas law.

Equally problematic for Plaintiffs is the second factor, which requires a contemporaneous and sensory observation of the event. While Texas courts do not require the "actual observance

5

of the accident," there still must be "an experiential perception of it, as distinguished from a learning of it from others after its occurrence." *Lehmann v. Wieghat*, 917 S.W.2d 379, 383 (Tex. App. 1996), writ denied (June 6, 1996) (quoting *Landreth v. Reed*, 570 S.W.2d 486, 490 (Tex. Civ. App. 1978)); *see also Jones v. City of Houston*, 294 S.W.3d 917 (Tex. App. 2009) (denying a right to bystander damages where "a family member was informed of an accident, went to the scene, and saw the effect of the accident").

Plaintiff claims that Roy White viewed "contemporaneous details surrounding his mother's shooting." (2nd Am. Compl. ¶ 5.2) That allegation fails to meet the requirement of "sensory and contemporaneous observance of the accident." As an initial matter, the scene Mr. White viewed on television certainly occurred after the shooting was complete, and therefore was not "contemporaneous." As Plaintiff notes, Devin Patrick Kelley fled the scene of the shooting after he was shot by a bystander. (2nd Am. Compl. ¶ 3.44). Mr. White saw the church "surrounded by police and rescue vehicles" (2nd Am. Compl. ¶ 5.2) and as he was watching, his sister informed him that his mother had been killed (2nd Am. Compl. ¶ 5.4). Given the timeline of events, the shooting was over before he turned on the television. Where a relative observed only the aftermath of an incident, courts have denied recovery for failure to have a "sensory and contemporaneous observance of the accident," even where the observation occurred in person and included seeing or hearing the victim. *Keith*, 970 S.W.2d at 542 (bystander damages denied where mother arriving at scene after car crash could hear daughter in the car crying out); *see also Rodriguez v. Riddell Sports, Inc.*, 242 F.3d 567, 578 (5th Cir. 2001) (bystander damages denied because mother did not observe accident, but observed son "suffering from the effects of his accident—frothing at the mouth and spitting saliva"). In that sense, Plaintiff's claim is even more remote than those in *Andrade*. While the family members of the Branch Davidians

watched the flames of the ongoing fire through their television, the shooting had already ceased when Roy White began watching news reports on the televisions. Such post-facto experience does not suffice under Texas law as "contemporaneous."

In addition, a "sensory observance" is required. The case law distinguishes "experiential perception" from "a learning of [an incident] from others. . . ." *Lehmann*, 917 S.W.2d at 383. Even in cases where plaintiffs heard the incident in which their relative was injured, the key is that they heard **the incident**, rather than others narrating the incident. *See, e.g.*, *id.* (father heard gunshot, later learned that his son had been struck); *Hitchcock*, 2017 WL 5077901 at *12 (when his wife fell, husband "was present at the restaurant and testified that he heard 'the commotion'").

*Bedgood v. Madalin*, which Plaintiff cites in her complaint, is instructive. In *Bedgood*, the father of a car crash victim sought damages for mental anguish as a bystander. 589 S.W.2d 797, 802 (Tex. Civ. App. 1979), aff'd in part, rev'd in part, 600 S.W.2d 773 (Tex. 1980). At trial, the father testified that he was in the backyard while his son played with friends in the front of the house. *Id.* In additional testimony:

> [The father] said he heard a vehicle approaching. Then, when asked whether he heard the car hit his son he replied that he heard a loud scream from Robert. He then stated that a few seconds later he heard a loud thud "like a watermelon being dropped from a great height."

*Id.* That is, the father heard his son scream, heard the car hitting his son, and heard the body fall to the ground. He had a sensory observance of the incident, albeit through hearing rather than sight.

In contrast, Roy White observed video of the outside of the church and a news chryon stating that "a mass shooting was occurring at the First Baptist Church in Sutherland Springs, Texas." (2nd Am. Compl. ¶ 5.2). He then was told by his sister that his mother had been killed. (2nd Am. Compl. ¶ 5.4). Mr. White's observations were through the television, and he saw only

7

the exterior of the church, with police and rescue vehicles. In other words, Roy White did not have a sensory perception of the shooting. Instead, he learned of the shooting and the death of his mother from others. While there is no reason to doubt that Roy White experienced great sorrow upon learning of the shooting and the death of his mother, Texas law does not permit recovery under the circumstances alleged.

## II. PLAINTIFF CANNOT RECOVER WRONGFUL DEATH DAMAGES BECAUSE THEY DO NOT SURVIVE THE DEATH OF A BENEFICIARY.

Plaintiff continues to seek wrongful death damages even though Texas law is perfectly clear that any such claim passes with the death of the decedent. "[T]he courts of [Texas] have consistently held that since the right of action conferred by the Wrongful Death statutes is personal and for the sole benefit of the named beneficiary that such cause of action ceases to exist upon the death of such beneficiary." *Carter v. Van Meter*, 495 S.W.2d 583, 586 (Tex. Civ. App. 1973); *see also Coffey v. Johnson*, 142 S.W.3d 414, 417 (Tex. App. 2004). As such, when a beneficiary dies before damages are awarded, that beneficiary's claims are extinguished. *Id.* Indeed, the briefings from the motion to dismiss Plaintiff's original Complaint in the present case demonstrate that this point is not in dispute. The Court's ruling on that motion further clarified that the Estate of Roy White cannot seek damages for the wrongful death of Lula White.

Nonetheless, the categories of damages sought by Plaintiff in her Second Amended Complaint continue to track those that are recoverable for a wrongful death suit. "Damages recoverable by the statutory beneficiaries under the Wrongful Death Act include pecuniary losses to the beneficiaries, such as loss of inheritance and non-economic damages to compensate for the losses caused by the destruction of the familial relationship." *Cunningham*, 382 S.W.3d at 508. The Texas Pattern Jury Charges for the wrongful death claim of a surviving child list the following types of damages: "pecuniary loss" meaning "the loss of the care, maintenance,

support, services, advice, counsel, and reasonable contributions of a pecuniary value," "loss of companionship and society," "mental anguish," and "loss of inheritance." Texas Pattern Jury Charges 29.4, Wrongful Death Damages – Claim of Surviving Child. Plaintiff's requested damages include, *inter alia*, loss of companionship and society; loss of care, maintenance and support; and loss of inheritance. 2nd Am. Compl. ¶ 8.7. These damages are wrongful death damages, and, as Mr. White's death ended his cause of action for wrongful death, these damages requests must be dismissed from the case.

## CONCLUSION

The United States understands that Roy White suffered a loss from his mother's death. However, Mr. White's cause of action ended with his own death. Plaintiff attempts to avoid this conclusion by asserting a cause of action, bystander damages, that the facts do not support. For the reasons discussed, this action should be dismissed with prejudice.

Dated: May 15, 2020               Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General
Civil Division

JOHN F. BASH
United States Attorney
Western District of Texas

JOHN PANISZCZYN
Civil Chief
United States Attorney's Office
Western District of Texas

STEPHEN E. HANDLER
Senior Trial Counsel, Torts Branch
Civil Division

AUSTIN FURMAN

|     | |
| --- | --- |
|     | Trial Attorney, Torts Branch<br>Civil Division<br><br>JOCELYN KRIEGER<br>Trial Attorney, Torts Branch<br>Civil Division |
| By: | */s/ Paul David Stern*<br>PAUL DAVID STERN<br>Trial Attorney, Torts Branch<br>United States Department of Justice<br>Civil Division<br><br>*Counsel for the United States of America* |

## **CERTIFICATE OF SERVICE**

I certify that on May 15, 2020, I electronically filed the foregoing with the clerk of court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record and any other electronic filer as of the time of the filing.

Thomas J. Henry
Bar No. 09484210

Marco A. Crawford
Bar No. 24068756

Dennis J. Bentley
Bar No. 24079654

The Law Offices of Thomas J. Henry
521 Starr Street
Corpus Christi, TX  78401
Telephone: 361-985-0600
Facsimile:  361-985-0601
Email: mcrawford-svc@tjhlaw.com

Robert C. Hilliard
Bar No. 09677700
bobh@hmglawfirm.com

Catherine D. Tobin
Bar No. 24013642
catherine@hmglawfirm.com

Marion Reilly
Bar No. 24079195
marion@hmglawfirm.com

Hilliard Martinez Gonzales LLP
719 S. Shoreline Blvd.
Corpus Christi, TX 78401
Telephone: 800-334-3298

*/s/ Paul David Stern*
PAUL DAVID STERN
Trial Attorney, Torts Branch
*Attorney for Defendant*