IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JOE HOLCOMBE, et. al, | § | NO. 5:18-CV-00555-XR |
| | § | |
| Plaintiffs | § | Consolidated with: |
| | § | 5:18-cv-00712-XR (*Vidal*) |
| | § | 5:18-cv-00881-XR (*Uhl*) |
| vs. | § | 5:18-cv-00944-XR (*Ramsey*) |
| | § | 5:18-cv-00949-XR (*McNulty*) |
| UNITED STATES OF | § | 5:18-cv-00951-XR (*Wall*) |
| AMERICA, | § | 5:18-cv-01151-XR (*Amador*) |
| | § | 5:19-cv-00184-XR (*Brown*) |
| Defendant | § | 5:19-cv-00289-XR (*Ward*) |
| | § | 5:19-cv-00506-XR (*Workman*) |
| | § | 5:19-cv-00678-XR (*Colbath*) |
| | § | 5:19-cv-00691-XR (*Braden*) |
| | § | 5:19-cv-00706-XR (*Lookingbill*) |
| | § | 5:19-cv-00714-XR (*Solis*) |
| | § | 5:19-cv-00715-XR (*McKenzie*) |
| | § | 5:19-cv-00805-XR (*Curnow*) |
| | § | 5:19-cv-00705-XR (*Workman*) |
| | § | 5:19-cv-00806-XR (*Macias*) |

**UNITED STATES' MOTION TO COMPEL**

**INTRODUCTION**

At the hearing of April 28, 2020, the Court authorized the United States to take the depositions of Michael and Rebecca Kelley, the parents of the Sutherland Springs shooter, Devin Kelley, and Danielle Smith, Devin's widow (collectively, "the Deponents"). The United States issued deposition subpoenas to those individuals through their attorneys. None of the Deponents filed a protective order or otherwise sought relief from the Court concerning their pending testimony.

Nonetheless, on June 23, Gerald E. Bourque, Esq. and J. Dean Jackson, Esq., counsel for Michael Kelley, obstructed the deposition of their client and demanded that counsel for the United States explain the steps they took to provide immunity for their clients from any possible criminal investigation related to the Sutherland Springs shooting. When Government counsel attempted to proceed, Michael Kelley, based on the advice of his counsel, asserted his Fifth Amendment right against self-incrimination in response to virtually every question, including those that could not possibly lead to self-incrimination such as details regarding their settlement of related claims. Mr. Bourque insulted counsel for the United States, addressing him multiple times as "big boy" and, in one instance, threatening him by saying, "And you're very fortunate you're not in this room with me in person right now. You got that?" (Ex. A. Dep. Tr. at 16:3-4; 30:3-4; 39:10-12; 30:12-16). Indeed, the conduct of Mr. Bourque, as well as J. Dean Jackson Esq., in making improper, argumentative, and meritless objections during the deposition, was unprofessional at best, and clearly designed to impede the judicial process and intimidate United States' counsel.

In purporting to justify his obstructionist conduct, Mr. Bourke alluded to a letter he sent to counsel for the United States on May 14, 2020. (Ex. B). However, as explained in the United States' brief in opposition to Michael Kelley's motion to quash the Government's subpoena for

1

documents, the assertion of the Fifth Amendment privilege against self-incrimination cannot be based on a vague and speculative concern of criminal jeopardy. The Kelleys' counsel failed to raise the issue again after the Government filed its opposition brief regarding the Fifth Amendment issue, despite a telephonic conferral and numerous correspondence. More importantly, any concerns of criminal jeopardy do not excuse Mr. Kelley's excessive invocation of the Fifth Amendment or his counsel's improper behavior. Given the obstructions, the United States had no choice but to suspend the deposition, delay Rebecca Kelley's deposition (which was scheduled for later that day), and file this motion to compel.

Within one hour of the United States suspending Michael Kelley's deposition, counsel for Danielle Smith, Daniel Horowitz, notified the United States that his client also needed a guarantee of immunity or otherwise would "plead the 5th." (Ex. C). Despite prior correspondence regarding Ms. Smith's deposition,[1] Mr. Horowitz demanded immunity for Ms. Smith immediately after Mr. Bourque insisted on the same during the deposition of his client, Mr. Kelley. The letter Mr. Horowitz sent to undersigned counsel is almost word-for-word the same letter Mr. Bourque had sent previously.

Consequently, the United States seeks to compel the depositions of Michael Kelley, Rebecca Kelley, and Danielle Smith. The United States respectfully requests that the Court rule on the appropriateness and scope of any future invocation of their Fifth Amendment right against

---

[1] Indeed, the Plaintiffs themselves previously noticed Danielle Smith's deposition, and Mr. Horowitz did not raise any immunity issues. It was not until the United States objected to the notice and issued its own notice that Mr. Horowitz raised any concerns about the deposition.

self-incrimination by the Deponents prior to their depositions.[2]  Additionally, the Government respectfully submits that Mr. Bourque and Mr. Jackson's conduct was sanctionable.

## BACKGROUND

In a Joint Status Update, the United States requested authorization to depose Michael Kelley, Rebecca Kelley, and Danielle Smith.  (ECF No. 212).  The Government explained that the depositions would concern Devin's propensity for violence prior to the Sutherland Springs shooting; his acquisitions and modification of firearms and preparation for the shooting; his relationship with various family members and (if any) members of the congregation; circumstances surrounding his voluntarily admission into Peak Behavioral Health Services; and his ability to acquire firearms through means other than a federally-licensed firearms dealer.[3]

Plaintiffs did not dispute the requests.  Indeed, several of the plaintiffs in these consolidated cases brought an action against the Kelleys, alleging negligence and gross

---

[2] Please note that the deposition of Michelle Shields, Devin's mother-in-law, was scheduled for July 6, 2020.  In arranging the logistics of the deposition, Ms. Shields informed counsel for the United States that she is not represented by counsel.  It is therefore unknown whether Ms. Shields has received any legal advice about being deposed in this case or whether she has any concerns about criminal jeopardy.  However, because the topics covered in the examinations of all of the people who knew Devin Kelley (including Ms. Shields) will be similar, it is conceivable that Ms. Shields may invoke her 5th Amendment right to remain silent in the same manner as Mr. Kelley did in his deposition.  Accordingly, out of an abundance of caution, the United States postponed the July 6 deposition.  The Government requests that any order regarding the appropriateness of invoking the 5th Amendment also apply to Ms. Shields.

[3] Evidence concerning Devin Kelley's motives for targeting the church and its members is pertinent to determining causation.  Data collected by local, state, and federal investigators from witnesses who knew Devin well (*i.e,*, Michael and Rebecca Kelley, Danielle Smith, and Michelle Shields, Danielle's mother) may provide evidence that Devin, after a series of deeply disturbing events (some of which occurred a few days before the shooting), specifically and methodically sought out revenge on Michelle Shields and members of her church who he thought had been tormenting his family for years.

3

negligence because they "turned a blind eye" to Devin's abusive behavior and use of firearms while he lived with them at the time of the mass shooting. *Lookingbill, et al., v. Michael Kelley and Rebecca Kelley*, Case No. C2020-393C, at *9 (Dist. Ct. Bexar Cty.). The United States has not impleaded the Kelleys or Danielle Smith, nor did it identify them as potential responsible third parties.

The Court granted the request for their depositions during a status conference on April 28, 2020. Following the Court's ruling, counsel for the United States contacted J. Dean Jackson, counsel for the Kelleys in the *Lookingbill* case. Government counsel sought to coordinate the depositions and inform Mr. Jackson that the Government would be issuing a subpoena for documents prior to the deposition. On May 6, Mr. Jackson sent an email to all parties in this litigation, introducing Gerald E. Bourque, a criminal defense lawyer who had been retained by the Kelleys.

That evening, the United States issued subpoenas to produce documents to Michael and Rebecca Kelley. The United States informed Mr. Jackson and Mr. Bourque that once the documents have been produced, the Government would be ready to move forward with the depositions.

On May 14, Mr. Bourque sent a letter to counsel for the United States. The letter first requested a copy of each and every statement given by the Kelleys to federal or state law-enforcement agencies in relation to the shooting. The letter then made the broad assertion that: "Any acquaintance of the perpetrator would be investigated as targets for indictment." The letter therefore requested that that the United States:

> provide a letter stating that neither Michael Kelley nor Rebecca Kelley are targets of a criminal investigation at this time and that answers they give in response to questions during the deposition will

4

>not lead to either of them becoming targets of a criminal investigation with the United States Department of Justice. In other words, provide a letter stating they are not now targets of a criminal investigation and that they will never be targets of a criminal investigation for anything related to the Sutherland Springs incident.

Less than a week later, and before the United States responded to the May 14 letter, the Kelleys filed a Motion to Quash Subpoena *Duces Tecum*, Motion for a Protective Order, and, Alternatively, Objections to Subpoena Duces Tecum. (ECF No. 224). The motion did not mention the May 14 letter or raise the issue of requesting immunity. In its opposition brief, the United States responded to the Kelleys' assertion of their Fifth Amendment right against self-incrimination by noting that they failed to demonstrate that criminal jeopardy is anything but a "remote and speculative possibility." (ECF No. 225).

On May 29, the Court ordered the parties to meet and confer regarding the motion. (ECF 226). Counsel for the United States spoke via conference call with Mr. Jackson on June 2. Counsel for the United States specifically asked whether Mr. Bourque would join the call. Mr. Jackson stated that Mr. Bourque was unavailable for the call and assured the Government that the meet and confer could proceed without him. During the call, the parties agreed that the Kelleys' motion was largely moot because, as previously stated in a letter to the United States, the Kelleys did not possess responsive documents.[4]

---

[4] In a letter dated May 21, Mr. Jackson wrote that the Kelley "have given everything they had" to various federal and state government. (Ex. D). In a subsequent email date May 26, Mr. Jackson reiterated that the Kelley did not have any responsive documents, with the notable exception of letters that they wrote to Devin Kelley while he was in basic military training. (Ex. E). Mr. Jackson proposed an in-camera inspections of the letter by the Court to determine their relevance. The United States told Mr. Jackson that an in-camera review would not be necessary – based on Mr. Jackson's characterization of the letters, the United States would stipulate that they were not responsive to the subpoena request.

5

The conversation then turned to the scheduling of the depositions. Without mentioning any concerns regarding immunity or his client's invocation of their Fifth Amendment rights, Mr. Jackson reiterated his desire to schedule the depositions at a time convenient for all parties. Shortly after the meet and confer, the Kelleys withdrew their motion. (ECF No. 229). And, after significant coordination between the parties concerning logistical matters, the United States, believing it was proceeding with the full cooperation of their counsel, issued subpoenas for the depositions of Michael and Rebecca Kelley.

The Kelleys did not raise any objections while the parties scheduled the depositions, nor did they file a motion for a protective order. Similarly, counsel for Danielle Smith never raised the issue of self-incrimination or a request for immunity during the scheduling of her deposition.

Shortly after Mr. Kelley's deposition started on June 23, Mr. Bourque interjected by insisting to know what efforts the United States took in response to his May 14 letter. Ex. A at 11:22-14:1, 20:10-21:19. Mr. Bourque questioned "the government's good-faith intentions in this deposition," *id.* at 13:20-22, and Mr. Jackson accused the Government attorneys of taking the deposition as a pretext to gather evidence for an indictment. *Id.* at 16:5-20. When Government counsel indicated that any instructions not to answer would have to be made question by question, Plaintiffs' counsel objected, and Mr. Jackson stated "I will shut this deposition down if we go question by question just to intimidate and harass my clients." *Id.* at 17:9-18:3.

Mr. Kelley asserted his Fifth Amendment right to remain silent to every subsequent question, including questions that could not possibility elicit self-

6

incriminating answers, such as "did you review any documents," *id.* at 26:18-21, and "Mr. Kelley, are you going to assert your Fifth Amendment right to every single question that I ask you?" *Id.* at 27:16-20. It quickly became evident that moving forward with the deposition would be futile.

In addition, at various points in the deposition, Mr. Bourque addressed Government counsel as "big boy," *id.* at 16:34, 30:3-4, 39:10-12, and in one instance threatened him, saying "And you're very fortunate you're not in this room with me in person right now. You got that?" *Id.* at 30:12-16. When counsel for the United States asked if Mr. Bourque was threatening him, Mr. Bourque answered by saying, "Oh, please. Go--," *id.* at 30:18-20, but he did not deny that he intended to intimidate and/or obstruct Government counsel's examination of the witness.

Moreover, Mr. Jackson objected to the relevance of a question about the *Lookingbill* settlement, stated that the topic was "just harassing" and that he would end the deposition if that line of questions continued. *Id.* at 24:4-25. Based on the action of Michael Kelley and counsel, Government counsel concluded that taking the deposition of Rebecca Kelley, scheduled for that afternoon, was likely to lead to the same results, and informed Mr. Jackson and Mr. Bourque that Mrs. Kelley's deposition would not go forward on that day.

Within one hour of the United States suspending Michael Kelley's deposition, Daniel Horowitz, counsel for Danielle Smith (Devin Kelley's widow), notified the United States via a letter sent electronically that his client insisted on immunity or otherwise would "plead the 5th." This letter is almost identical to the letter sent out by Mr. Bourque with regard to the Kelleys. The United States sought clarification in an email, asking Mr. Horowitz "when you state that you will

7

instruct Danielle to plead the 5th, would that instruction be for all questions posed to Danielle?" Mr. Horowitz's response was: "Depends on the questions asked." Due to the appearance of coordination between counsel, and in the interest of avoiding a waste of time and money, the United States chose to postpone Ms. Smith's deposition until after a ruling is obtained from this Court.

## ARGUMENT

### I. Deposition Testimony Should be Compelled Because Deponents Have Not Demonstrated a Valid Basis to Invoke their Fifth Amendment Privilege.

The privilege against self-incrimination encoded in the Fifth Amendment has been broadly construed "to assure that an individual is not compelled to produce evidence which later may be used against him as an accused in a criminal action." *Maness v. Meyers*, 419 U.S. 449, 461 (1975). Accordingly, the privilege applies in civil actions as well as criminal actions. *See Wehling v. Columbia Broadcasting Sys.*, 608 F.2d 1084, 1086 (5th Cir. 1979). However, the privilege is not unlimited. Rather, "this protection must be confined to instances where the witness has reasonable cause to apprehend danger from a direct answer." *Hoffman v. United States*, 341 U.S. 479 486. While a person may claim the privilege if he or she "reasonably apprehends a risk of self-incrimination[,]" *Wehling v. Columbia Broad. Sys.*, 608 F.2d 1084, 1087 n.5 (5th Cir. 1979), "[t]he witness is not exonerated from answering merely because he declares that in so doing he would incriminate himself—his say-so does not of itself establish the hazard of incrimination. It is for the court to say whether his silence is justified." *Id.* Accordingly, "unless the danger of self-incrimination is readily apparent, the burden of proving that the danger exists lies on the claimant." *Steinbrecher v. Comm'r*, 712 F.2d 195, 198 (5th Cir. 1983).

Here, none of the Deponents have shown that self-incrimination is anything but a remote and speculative possibility. Deponents have not identified any ongoing criminal matter in which they are involved, and have not pointed to any specific crimes, much less federal violations, for which they could face criminal jeopardy. In their letters to Government counsel, the Deponents make a broad, generalized claim that "[a]ny acquaintances of the perpetrators would be investigated as targets for indictment." (Ex. B). And, in the Kelleys' motion to quash the subpoena for documents, they claimed "more than a trifling unease that the government may be seeking for someone, besides itself, to hold accountable." (ECF No. 224 at 8). But the Deponents already have provided statements to the Texas Rangers and the Department of Defense Office of Inspector General several years earlier. Those statements have not led to any prosecutions of Devin Kelley's acquaintances. The Deponents have not pointed to any statutes of limitations that have yet to elapse or statutes that grant federal jurisdiction over any criminal investigation. The Deponents' pure speculation is an insufficient basis to assert their Fifth Amendment right against self-incrimination.

In any event, mere speculation does not shift the burden on the United States to demonstrate the steps it took to seek immunity for the Deponents. As counsel for the United States noted during the deposition, they can neither confirm nor deny the existence of a criminal investigation. (Ex. A at 14:12-14, 21:13-14.) Despite Mr. Bourque's claims to the contrary, that standard Government response does not suggest that the deposition was used as a pretext to start building a criminal investigation. Such deceptive tactics are clearly prohibited. *United States v. Posada Carriles*, 541 F.3d 344, 356 (5th Cir. 2008) (reiterating deceptive tactics by government agency may not be used in civil investigation to solicit testimony to be later used in criminal investigation).

9

The United States' counsel have been forthright with the Court regarding its intention with respect to these depositions. (*See also* Ex. A at 16:21-17:1, statement by Mr. Handler: "[W]e are here in this deposition to depose Mr. Kelley with regard to the facts and circumstances of the allegations made by the plaintiffs in this civil litigation.  That is my only intention in this case.") The United States has identified Devin Kelley, not the Deponents, as a potential responsible third party.  (ECF No. 150).  Additionally, several of the Plaintiffs in these cases brought a civil action against the Kelleys and settled their suit for a thus-far undisclosed amount.  Because the United States has the right to seek a credit against any other parties' settlement, Tex. Civ. Prac. & Rem. Code § 33.003(a)(3), questions of the Deponents regarding that settlement are certainly relevant.[5] As articulated during the April 28, 2020, hearing, the Government seeks these depositions as a means to discovering Devin Kelley's propensity for violence and whether his heinous act was foreseeable.  Such discovery is clearly relevant to the United States' defenses.

A court may compel testimony if "a deponent fails to answer a question asked under Rule 30 or 31[.]"  Fed. R. Civ. P. 37(a)(3)(B)(i).  As such, the Deponents should be compelled to answer questions unless and until they demonstrate a valid basis for asserting the Fifth Amendment privilege to a question.  Therefore, the United States respectfully requests that the Court determine the extent to which the Deponents may invoke their Fifth Amendment right against self-incrimination, if at all, and provide a limiting instruction prior to the Deponent's depositions.

---

[5] Moreover, the Court shall assign a percentage of responsibility to "each settling person" in a civil action in the event that there is evidence supporting such an assignment. Tex. Civ. Prac. & Rem. Code § 33.003(a)(3).

10

## II. Even If There Were Any Validity to Deponents' Fear of Self-Incrimination, Michael Kelley's Blanket Assertion of the Fifth Amendment, and the Scope of His Counsel's Objections, Were Inappropriate.

Even if Mr. Kelley could reasonably fear criminal prosecution based on his answers to some select questions, he abused the privilege to invoke the Fifth Amendment right against self-incrimination. When answering a deposition question, if "the incriminating nature of the response is not readily apparent . . . the claimant must 'specify how he would be injured by any specific question [or answer]' . . . ." *Steinbrecher*, 712 F.2d at 198. Even where the testimony "may expose [the Deponents] to a small but real danger of prosecution," the assertion must be tailored, and the deponent must "answer every question except those to which a truthful answer will realistically expose them to a danger of prosecution." *Hillmann v. City of Chicago*, 918 F. Supp. 2d 775, 780 (N.D. Ill. 2013); *see Estate of Fisher v. Comm'r*, 905 F.2d 645, 649 (2d Cir. 1990). Accordingly, "[a] blanket refusal to answer questions at depositions on the grounds that they are privileged is an improper invocation of the Fifth Amendment." *Gabarick v. Laurin Mar. (Am.), Inc.*, 274 F.R.D. 208, 211 (E.D. La. 2011) (quoting *First Financial Group of Texas* 659 F.2d at 668)); *see National Life Ins. Co. v. Hartford Accident & Indem. Co.*, 615 F.2d 595, 599 (3d Cir.1980) ("[A] blanket refusal to answer questions is not sufficient to raise constitutional issues.").

Here, Mr. Kelley invoked the privilege for questions that could have no possible relevance to any criminal prosecution, including "did you review any documents?" Ex. A at 26:18-21 and "Mr. Kelley, are you going to assert your Fifth Amendment right to every single question that I ask you?" *Id.* at 27:16-20. When asked about the settlement of the *Lookingbill* case, Mr. Kelley

11

asserted the Fifth as well.[6] As such, the assertion here must be considered a blanket assertion of the privilege, and therefore improper. Improper objections along the same lines were also made by Plaintiffs' counsel. Plaintiffs' counsel objected to the deposition proceeding on a question-by-question basis and thus compounded the issue. *See* Ex. A at 17:14-24.

Knowing their client would invoke his Fifth Amendment privilege to every question, Mr. Kelley's attorneys should have filed a motion for a protective order or, at the least, raised the issue with Government counsel while the depositions were being scheduled in order to avoid this outcome. The May 14 letter did not state that the Kelleys would refuse to answer any questions if their demands were not met. The Kelleys' motion to quash did not mention the May 14 letter or raise the issue of requesting immunity. The United States addressed the Kelleys' fear of self-incrimination in its opposition to their motion to quash the subpoena for documents. When the parties conferred to discuss the motion, the Government specifically asked if Mr. Bourque needed to participate in the discussion. Mr. Jackson assured the Government that his presence was not necessary. Following that conference, the motion was withdrawn and this issue of self-incrimination or immunity was never raised again. Despite numerous correspondence regarding this deposition, Mr. Jackson did not inform the United States that his clients intended to invoke the privilege of the Fifth Amendment for every substantive question asked. Instead, counsel chose to present Mr. Kelley for his deposition.

Moreover, Mr. Kelley's counsel violated Local Rules by making inappropriate objections. Under Local Civil Rule 30(b), "If a claim of privilege has been asserted as a basis for an instruction not to answer, the attorney seeking discovery shall have reasonable latitude during the

---

[6] In addition, Mr. Jackson implied that requiring an assertion of the Fifth Amendment privilege to individual questions would be harassment. Ex. A at 17:25-18:3.

deposition to question the deponent and establish relevant information concerning the appropriateness of the assertion of the privilege, including (i) the applicability of the privilege being asserted . . . ." The rules also provide that "[a]n attorney who instructs a deponent not to answer a question shall state, on the record, the legal basis for the instruction consistent with Federal Rule of Civil Procedure 30(d)(1)." *Id.*

When United States' counsel attempted to ask the questions identified in Local Rule 30(b) – *i.e.*, establishing a record that captures the basis for the privilege assertion – Michael Kelley's counsel repeatedly and inappropriately objected. Government counsel tried to get clarification from Mr. Jackson as to whether Mr. Kelley would invoke the Fifth Amendment to every question, but counsel refused to provide a meaningful response. Ex. A at 27:7-13; 28:19-29:7. These invocations are clearly improper and were used as a tactic to disrupt a judicial proceeding. The Local Rules were clearly violated here.

Additionally, Mr. Kelley's counsel made inappropriate objections to questions regarding the *Lookingbill* settlement. His counsel contended that the questions with regard to the *Lookingbill* settlement were not relevant. Ex. A at 23:16-25. But, as explained above, that settlement is clearly relevant, and thus such objections were frivolous. Certainly, such objections were not a valid basis to instruct the witness to not answer questions.

### III.     Federal Rule of Civil Procedure 30(d)(2) Permits the Court to Impose Sanctions.

Courts may "impose an appropriate sanction--including the reasonable expenses and attorney's fees incurred by any party--on a person who impedes, delays, or frustrates the fair examination of the deponent." Fed. R. Civ. P. 30(d)(2). The sanction of Rule 30(d)(2) "may be imposed on a non-party witness as well as a party or attorney." Fed. R. Civ. P. 30(d) Advisory Committee Notes, 1993 amendments; *see also* 28 U.S.C. § 1927 ("Any attorney . . . who so

multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."). "Many courts have construed Rule 30(d)(2) to apply to circumstances where a party's conduct at a deposition warranted remedial action." *S. Louisiana Ethanol, L.L.C. v. Fireman's Fund Ins. Co.*, No. CIV.A. 11-2715, 2013 WL 1196604, at *8 (E.D. La. Mar. 22, 2013) (citing cases involving "improperly instructing deponent not to answer" and "numerous objections to deposition questions").

As this Court's rules recognize, a "lawyer's role is to zealously advance the legitimate interests of the client, while maintaining appropriate standards of civility and decorum." Local Attorney Rule 4(d). Indeed, [a] lawyer should treat all other lawyers, all parties, and all witnesses courteously, not only in court, but also in other written and oral communication." *Id.*; *see Dondi Properties Corp. v. Commerce Sav. & Loan Ass'n*, 121 F.R.D. 284, 287 (N.D. Tex. 1988) (noting that "[a] lawyer owes, to opposing counsel, a duty of courtesy and cooperation, the observance of which is necessary for the efficient administration of our system of justice and the respect of the public it serves"). With respect to depositions specifically, "[o]bjections during depositions shall be stated concisely and in a nonargumentative and nonsuggestive manner." Local Civil Rule 30(b).

Mr. Kelley's counsel abused and disrespected the judicial proceeding by using an inappropriate term to refer to United States counsel and by warning government counsel that he was lucky they were not in the same room. The United States therefore respectfully submits that the conduct of Mr. Kelley's attorneys, Gerald E. Bourque, Esq. and J. Dean Jackson, Esq., was inappropriate and sanctionable.

## **CONCLUSION**

For the reasons stated and upon the authorities cited, the United States respectfully requests this Court to grant its Motion to Compel.

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General
Civil Division
JOHN F. BASH
United States Attorney
STEPHEN E. HANDLER
Senior Trial Counsel, Torts Branch
Civil Division
    /s/
PAUL DAVID STERN
Trial Attorney, Torts Branch
Civil Division
United States Department of Justice
Attorneys for Defendant
UNITED STATES OF AMERICA

**CERTIFICATE OF SERVICE**

I certify that on July 1, 2020, I electronically filed the foregoing with the clerk of court by using the CM/ECF system.  Additionally, I sent copies of the motion via email to the following attorneys:


Jamal K. Alsaffar
Tom Jacob
WHITEHURST, HARKNESS, BREES, CHENG, ALSAFFAR & HIGGINBOTHAM & JACOB PLLC
7500 Rialto Blvd, Bldg. Two, Ste 250 Austin, TX 78735Thomas J. Henry
Bar No. 09484210

J. Dean Jackson
CURNEY, FARMER, HOUSE, OSUNA & JACKSON, P.C.

Gerald E. Bourque
24 WATERWAY AVE., SUITE 660, THE WOODLANDS, TEXAS 77380

*/s/ Paul David Stern*
PAUL DAVID STERN
Trial Attorney, Torts Branch
*Attorney for Defendant*
