IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JOE HOLCOMBE, et. al, | § | NO. 5:18-CV-00555-XR |
| | § | |
| Plaintiffs | § | Consolidated with: |
| | § | 5:18-cv-00712-XR (*Vidal*) |
| | § | 5:18-cv-00881-XR (*Uhl*) |
| vs. | § | 5:18-cv-00944-XR (*Ramsey*) |
| | § | 5:18-cv-00949-XR (*McNulty*) |
| UNITED STATES OF | § | 5:18-cv-00951-XR (*Wall*) |
| AMERICA, | § | 5:18-cv-01151-XR (*Amador*) |
| | § | 5:19-cv-00184-XR (*Brown*) |
| Defendant | § | 5:19-cv-00289-XR (*Ward*) |
| | § | 5:19-cv-00506-XR (*Workman*) |
| | § | 5:19-cv-00678-XR (*Colbath*) |
| | § | 5:19-cv-00691-XR (*Braden*) |
| | § | 5:19-cv-00706-XR (*Lookingbill*) |
| | § | 5:19-cv-00714-XR (*Solis*) |
| | § | 5:19-cv-00715-XR (*McKenzie*) |
| | § | 5:19-cv-00805-XR (*Curnow*) |
| | § | 5:19-cv-00705-XR (*Workman*) |
| | § | 5:19-cv-00806-XR (*Macias*) |

### UNITED STATES' MOTION TO COMPEL

## INTRODUCTION

At the hearing of April 28, 2020, the Court authorized the United States to take the depositions of Michael and Rebecca Kelley, the parents of the Sutherland Springs shooter, Devin Kelley, and Danielle Smith, Devin's widow (collectively, "the Deponents").  The United States issued deposition subpoenas to those individuals through their attorneys.  None of the Deponents filed a protective order or otherwise sought relief from the Court concerning their pending testimony.

Nonetheless, on June 23, Gerald E. Bourque, Esq. and J. Dean Jackson, Esq., counsel for Michael Kelley, obstructed the deposition of their client and demanded that counsel for the United States explain the steps they took to provide immunity for their clients from any possible criminal investigation related to the Sutherland Springs shooting.  When Government counsel attempted to proceed, Michael Kelley, based on the advice of his counsel, asserted his Fifth Amendment right against self-incrimination in response to virtually every question, including those that could not possibly lead to self-incrimination such as details regarding their settlement of related claims.  Mr. Bourque insulted counsel for the United States, addressing him multiple times as "big boy" and, in one instance, threatening him by saying, "And you're very fortunate you're not in this room with me in person right now.  You got that?"  (Ex. A. Dep. Tr. at 16:3-4; 30:3-4; 39:10-12; 30:12-16).  Indeed, the conduct of Mr. Bourque, as well as J. Dean Jackson Esq., in making improper, argumentative, and meritless objections during the deposition, was unprofessional at best, and clearly designed to impede the judicial process and intimidate United States' counsel.

In purporting to justify his obstructionist conduct, Mr. Bourke alluded to a letter he sent to counsel for the United States on May 14, 2020.  (Ex. B).  However, as explained in the United States' brief in opposition to Michael Kelley's motion to quash the Government's subpoena for

1

documents, the assertion of the Fifth Amendment privilege against self-incrimination cannot be based on a vague and speculative concern of criminal jeopardy. The Kelleys' counsel failed to raise the issue again after the Government filed its opposition brief regarding the Fifth Amendment issue, despite a telephonic conferral and numerous correspondence. More importantly, any concerns of criminal jeopardy do not excuse Mr. Kelley's excessive invocation of the Fifth Amendment or his counsel's improper behavior. Given the obstructions, the United States had no choice but to suspend the deposition, delay Rebecca Kelley's deposition (which was scheduled for later that day), and file this motion to compel.

Within one hour of the United States suspending Michael Kelley's deposition, counsel for Danielle Smith, Daniel Horowitz, notified the United States that his client also needed a guarantee of immunity or otherwise would "plead the 5th." (Ex. C). Despite prior correspondence regarding Ms. Smith's deposition,[1] Mr. Horowitz demanded immunity for Ms. Smith immediately after Mr. Bourque insisted on the same during the deposition of his client, Mr. Kelley. The letter Mr. Horowitz sent to undersigned counsel is almost word-for-word the same letter Mr. Bourque had sent previously.

Consequently, the United States seeks to compel the depositions of Michael Kelley, Rebecca Kelley, and Danielle Smith. The United States respectfully requests that the Court rule on the appropriateness and scope of any future invocation of their Fifth Amendment right against

---

[1] Indeed, the Plaintiffs themselves previously noticed Danielle Smith's deposition, and Mr. Horowitz did not raise any immunity issues. It was not until the United States objected to the notice and issued its own notice that Mr. Horowitz raised any concerns about the deposition.

2

self-incrimination by the Deponents prior to their depositions.[2]  Additionally, the Government

respectfully submits that Mr. Bourque and Mr. Jackson's conduct was sanctionable.

## BACKGROUND

In a Joint Status Update, the United States requested authorization to depose

Michael Kelley, Rebecca Kelley, and Danielle Smith.  (ECF No. 212).  The Government

explained that the depositions would concern Devin's propensity for violence prior to the

Sutherland Springs shooting; his acquisitions and modification of firearms and

preparation for the shooting; his relationship with various family members and (if any)

members of the congregation; circumstances surrounding his voluntarily admission into

Peak Behavioral Health Services; and his ability to acquire firearms through means other

than a federally-licensed firearms dealer.[3]

Plaintiffs did not dispute the requests.  Indeed, several of the plaintiffs in these

consolidated cases brought an action against the Kelleys, alleging negligence and gross

---

[2] Please note that the deposition of Michelle Shields, Devin's mother-in-law, was scheduled for July 6, 2020.  In arranging the logistics of the deposition, Ms. Shields informed counsel for the United States that she is not represented by counsel.  It is therefore unknown whether Ms. Shields has received any legal advice about being deposed in this case or whether she has any concerns about criminal jeopardy.  However, because the topics covered in the examinations of all of the people who knew Devin Kelley (including Ms. Shields) will be similar, it is conceivable that Ms. Shields may invoke her 5th Amendment right to remain silent in the same manner as Mr. Kelley did in his deposition.  Accordingly, out of an abundance of caution, the United States postponed the July 6 deposition.  The Government requests that any order regarding the appropriateness of invoking the 5th Amendment also apply to Ms. Shields.

[3] Evidence concerning Devin Kelley's motives for targeting the church and its members is pertinent to determining causation.  Data collected by local, state, and federal investigators from witnesses who knew Devin well (*i.e,*, Michael and Rebecca Kelley, Danielle Smith, and Michelle Shields, Danielle's mother) may provide evidence that Devin, after a series of deeply disturbing events (some of which occurred a few days before the shooting), specifically and methodically sought out revenge on Michelle Shields and members of her church who he thought had been tormenting his family for years.

negligence because they "turned a blind eye" to Devin's abusive behavior and use of firearms while he lived with them at the time of the mass shooting.  *Lookingbill, et al., v. Michael Kelley and Rebecca Kelley*, Case No. C2020-393C, at *9 (Dist. Ct. Bexar Cty.). The United States has not impleaded the Kelleys or Danielle Smith, nor did it identify them as potential responsible third parties.

        The Court granted the request for their depositions during a status conference on April 28, 2020.  Following the Court's ruling, counsel for the United States contacted J. Dean Jackson, counsel for the Kelleys in the *Lookingbill* case.  Government counsel sought to coordinate the depositions and inform Mr. Jackson that the Government would be issuing a subpoena for documents prior to the deposition.  On May 6, Mr. Jackson sent an email to all parties in this litigation, introducing Gerald E. Bourque, a criminal defense lawyer who had been retained by the Kelleys.

        That evening, the United States issued subpoenas to produce documents to Michael and Rebecca Kelley.  The United States informed Mr. Jackson and Mr. Bourque that once the documents have been produced, the Government would be ready to move forward with the depositions.

        On May 14, Mr. Bourque sent a letter to counsel for the United States.  The letter first requested a copy of each and every statement given by the Kelleys to federal or state law-enforcement agencies in relation to the shooting.  The letter then made the broad assertion that: "Any acquaintance of the perpetrator would be investigated as targets for indictment."  The letter therefore requested that that the United States:

> provide a letter stating that neither Michael Kelley nor Rebecca Kelley are targets of a criminal investigation at this time and that answers they give in response to questions during the deposition will

> not lead to either of them becoming targets of a criminal investigation with the United States Department of Justice. In other words, provide a letter stating they are not now targets of a criminal investigation and that they will never be targets of a criminal investigation for anything related to the Sutherland Springs incident.

Less than a week later, and before the United States responded to the May 14 letter, the Kelleys filed a Motion to Quash Subpoena *Duces Tecum*, Motion for a Protective Order, and, Alternatively, Objections to Subpoena Duces Tecum. (ECF No. 224). The motion did not mention the May 14 letter or raise the issue of requesting immunity. In its opposition brief, the United States responded to the Kelleys' assertion of their Fifth Amendment right against self-incrimination by noting that they failed to demonstrate that criminal jeopardy is anything but a "remote and speculative possibility." (ECF No. 225).

On May 29, the Court ordered the parties to meet and confer regarding the motion. (ECF 226). Counsel for the United States spoke via conference call with Mr. Jackson on June 2. Counsel for the United States specifically asked whether Mr. Bourque would join the call. Mr. Jackson stated that Mr. Bourque was unavailable for the call and assured the Government that the meet and confer could proceed without him. During the call, the parties agreed that the Kelleys' motion was largely moot because, as previously stated in a letter to the United States, the Kelleys did not possess responsive documents.[4]

---

[4] In a letter dated May 21, Mr. Jackson wrote that the Kelley "have given everything they had" to various federal and state government. (Ex. D). In a subsequent email date May 26, Mr. Jackson reiterated that the Kelley did not have any responsive documents, with the notable exception of letters that they wrote to Devin Kelley while he was in basic military training. (Ex. E). Mr. Jackson proposed an in-camera inspections of the letter by the Court to determine their relevance. The United States told Mr. Jackson that an in-camera review would not be necessary – based on Mr. Jackson's characterization of the letters, the United States would stipulate that they were not responsive to the subpoena request.

5

The conversation then turned to the scheduling of the depositions.  Without mentioning any concerns regarding immunity or his client's invocation of their Fifth Amendment rights, Mr. Jackson reiterated his desire to schedule the depositions at a time convenient for all parties.  Shortly after the meet and confer, the Kelleys withdrew their motion.  (ECF No. 229).  And, after significant coordination between the parties concerning logistical matters, the United States, believing it was proceeding with the full cooperation of their counsel, issued subpoenas for the depositions of Michael and Rebecca Kelley.

The Kelleys did not raise any objections while the parties scheduled the depositions, nor did they file a motion for a protective order.  Similarly, counsel for Danielle Smith never raised the issue of self-incrimination or a request for immunity during the scheduling of her deposition.

Shortly after Mr. Kelley's deposition started on June 23, Mr. Bourque interjected by insisting to know what efforts the United States took in response to his May 14 letter. Ex. A at 11:22-14:1, 20:10-21:19.  Mr. Bourque questioned "the government's good-faith intentions in this deposition," *id.* at 13:20-22, and Mr. Jackson accused the Government attorneys of taking the deposition as a pretext to gather evidence for an indictment.  *Id.* at 16:5-20.  When Government counsel indicated that any instructions not to answer would have to be made question by question, Plaintiffs' counsel objected, and Mr. Jackson stated "I will shut this deposition down if we go question by question just to intimidate and harass my clients."  *Id.* at 17:9-18:3.

Mr. Kelley asserted his Fifth Amendment right to remain silent to every subsequent question, including questions that could not possibility elicit self-

6

incriminating answers, such as "did you review any documents," *id.* at 26:18-21, and "Mr. Kelley, are you going to assert your Fifth Amendment right to every single question that I ask you?" *Id.* at 27:16-20.  It quickly became evident that moving forward with the deposition would be futile.

In addition, at various points in the deposition, Mr. Bourque addressed Government counsel as "big boy," *id.* at 16:34, 30:3-4, 39:10-12, and in one instance threatened him, saying "And you're very fortunate you're not in this room with me in person right now.  You got that?" *Id.* at 30:12-16.  When counsel for the United States asked if Mr. Bourque was threatening him, Mr. Bourque answered by saying, "Oh, please. Go--," *id.* at 30:18-20, but he did not deny that he intended to intimidate and/or obstruct Government counsel's examination of the witness.

Moreover, Mr. Jackson objected to the relevance of a question about the *Lookingbill* settlement, stated that the topic was "just harassing" and that he would end the deposition if that line of questions continued.  *Id.* at 24:4-25.  Based on the action of Michael Kelley and counsel, Government counsel concluded that taking the deposition of Rebecca Kelley, scheduled for that afternoon, was likely to lead to the same results, and informed Mr. Jackson and Mr. Bourque that Mrs. Kelley's deposition would not go forward on that day.

Within one hour of the United States suspending Michael Kelley's deposition, Daniel Horowitz, counsel for Danielle Smith (Devin Kelley's widow), notified the United States via a letter sent electronically that his client insisted on immunity or otherwise would "plead the 5[th]." This letter is almost identical to the letter sent out by Mr. Bourque with regard to the Kelleys.  The United States sought clarification in an email, asking Mr. Horowitz "when you state that you will

instruct Danielle to plead the 5th, would that instruction be for all questions posed to Danielle?"

Mr. Horowitz's response was: "Depends on the questions asked." Due to the appearance of

coordination between counsel, and in the interest of avoiding a waste of time and money, the

United States chose to postpone Ms. Smith's deposition until after a ruling is obtained from this

Court.

## ARGUMENT

I.     **Deposition Testimony Should be Compelled Because Deponents Have Not Demonstrated a Valid Basis to Invoke their Fifth Amendment Privilege.**

The privilege against self-incrimination encoded in the Fifth Amendment has been broadly

construed "to assure that an individual is not compelled to produce evidence which later may be

used against him as an accused in a criminal action." *Maness v. Meyers*, 419 U.S. 449, 461

(1975). Accordingly, the privilege applies in civil actions as well as criminal actions. *See*

*Wehling v. Columbia Broadcasting Sys.*, 608 F.2d 1084, 1086 (5th Cir. 1979). However, the

privilege is not unlimited. Rather, "this protection must be confined to instances where the

witness has reasonable cause to apprehend danger from a direct answer." *Hoffman v. United*

*States*, 341 U.S. 479 486. While a person may claim the privilege if he or she "reasonably

apprehends a risk of self-incrimination[,]" *Wehling v. Columbia Broad. Sys.*, 608 F.2d 1084, 1087

n.5 (5th Cir. 1979), "[t]he witness is not exonerated from answering merely because he declares

that in so doing he would incriminate himself—his say-so does not of itself establish the hazard of

incrimination. It is for the court to say whether his silence is justified." *Id.* Accordingly, "unless

the danger of self-incrimination is readily apparent, the burden of proving that the danger exists

lies on the claimant." *Steinbrecher v. Comm'r*, 712 F.2d 195, 198 (5th Cir. 1983).

Here, none of the Deponents have shown that self-incrimination is anything but a remote and speculative possibility. Deponents have not identified any ongoing criminal matter in which they are involved, and have not pointed to any specific crimes, much less federal violations, for which they could face criminal jeopardy. In their letters to Government counsel, the Deponents make a broad, generalized claim that "[a]ny acquaintances of the perpetrators would be investigated as targets for indictment." (Ex. B). And, in the Kelleys' motion to quash the subpoena for documents, they claimed "more than a trifling unease that the government may be seeking for someone, besides itself, to hold accountable." (ECF No. 224 at 8). But the Deponents already have provided statements to the Texas Rangers and the Department of Defense Office of Inspector General several years earlier. Those statements have not led to any prosecutions of Devin Kelley's acquaintances. The Deponents have not pointed to any statutes of limitations that have yet to elapse or statutes that grant federal jurisdiction over any criminal investigation. The Deponents' pure speculation is an insufficient basis to assert their Fifth Amendment right against self-incrimination.

In any event, mere speculation does not shift the burden on the United States to demonstrate the steps it took to seek immunity for the Deponents. As counsel for the United States noted during the deposition, they can neither confirm nor deny the existence of a criminal investigation. (Ex. A at 14:12-14, 21:13-14.) Despite Mr. Bourque's claims to the contrary, that standard Government response does not suggest that the deposition was used as a pretext to start building a criminal investigation. Such deceptive tactics are clearly prohibited. *United States v. Posada Carriles*, 541 F.3d 344, 356 (5th Cir. 2008) (reiterating deceptive tactics by government agency may not be used in civil investigation to solicit testimony to be later used in criminal investigation).

9

The United States' counsel have been forthright with the Court regarding its intention with respect to these depositions.  (*See also* Ex. A at 16:21-17:1, statement by Mr. Handler: "[W]e are here in this deposition to depose Mr. Kelley with regard to the facts and circumstances of the allegations made by the plaintiffs in this civil litigation.  That is my only intention in this case.")  The United States has identified Devin Kelley, not the Deponents, as a potential responsible third party.  (ECF No. 150).  Additionally, several of the Plaintiffs in these cases brought a civil action against the Kelleys and settled their suit for a thus-far undisclosed amount.  Because the United States has the right to seek a credit against any other parties' settlement, Tex. Civ. Prac. & Rem. Code § 33.003(a)(3), questions of the Deponents regarding that settlement are certainly relevant.[5]  As articulated during the April 28, 2020, hearing, the Government seeks these depositions as a means to discovering Devin Kelley's propensity for violence and whether his heinous act was foreseeable.  Such discovery is clearly relevant to the United States' defenses.

A court may compel testimony if "a deponent fails to answer a question asked under Rule 30 or 31[.]"  Fed. R. Civ. P. 37(a)(3)(B)(i).  As such, the Deponents should be compelled to answer questions unless and until they demonstrate a valid basis for asserting the Fifth Amendment privilege to a question.  Therefore, the United States respectfully requests that the Court determine the extent to which the Deponents may invoke their Fifth Amendment right against self-incrimination, if at all, and provide a limiting instruction prior to the Deponent's depositions.

---

[5] Moreover, the Court shall assign a percentage of responsibility to "each settling person" in a civil action in the event that there is evidence supporting such an assignment.  Tex. Civ. Prac. & Rem. Code § 33.003(a)(3).

10

II.     **Even If There Were Any Validity to Deponents' Fear of Self-Incrimination, Michael Kelley's Blanket Assertion of the Fifth Amendment, and the Scope of His Counsel's Objections, Were Inappropriate.**

Even if Mr. Kelley could reasonably fear criminal prosecution based on his answers to some select questions, he abused the privilege to invoke the Fifth Amendment right against self-incrimination.  When answering a deposition question, if "the incriminating nature of the response is not readily apparent . . . the claimant must 'specify how he would be injured by any specific question [or answer]' . . . ."  *Steinbrecher*, 712 F.2d at 198.  Even where the testimony "may expose [the Deponents] to a small but real danger of prosecution," the assertion must be tailored, and the deponent must "answer every question except those to which a truthful answer will realistically expose them to a danger of prosecution."  *Hillmann v. City of Chicago*, 918 F. Supp. 2d 775, 780 (N.D. Ill. 2013); *see Estate of Fisher v. Comm'r*, 905 F.2d 645, 649 (2d Cir. 1990).  Accordingly, "[a] blanket refusal to answer questions at depositions on the grounds that they are privileged is an improper invocation of the Fifth Amendment."  *Gabarick v. Laurin Mar. (Am.), Inc.*, 274 F.R.D. 208, 211 (E.D. La. 2011) (quoting *First Financial Group of Texas* 659 F.2d at 668)); *see National Life Ins. Co. v. Hartford Accident & Indem. Co.*, 615 F.2d 595, 599 (3d Cir.1980) ("[A] blanket refusal to answer questions is not sufficient to raise constitutional issues.").

Here, Mr. Kelley invoked the privilege for questions that could have no possible relevance to any criminal prosecution, including "did you review any documents?" Ex. A at 26:18-21 and "Mr. Kelley, are you going to assert your Fifth Amendment right to every single question that I ask you?"  *Id.* at 27:16-20.  When asked about the settlement of the *Lookingbill* case, Mr. Kelley

11

asserted the Fifth as well.[6]  As such, the assertion here must be considered a blanket assertion of the privilege, and therefore improper.  Improper objections along the same lines were also made by Plaintiffs' counsel.  Plaintiffs' counsel objected to the deposition proceeding on a question-by-question basis and thus compounded the issue.  *See* Ex. A at 17:14-24.

Knowing their client would invoke his Fifth Amendment privilege to every question, Mr. Kelley's attorneys should have filed a motion for a protective order or, at the least, raised the issue with Government counsel while the depositions were being scheduled in order to avoid this outcome.  The May 14 letter did not state that the Kelleys would refuse to answer any questions if their demands were not met.  The Kelleys' motion to quash did not mention the May 14 letter or raise the issue of requesting immunity.  The United States addressed the Kelleys' fear of self-incrimination in its opposition to their motion to quash the subpoena for documents.  When the parties conferred to discuss the motion, the Government specifically asked if Mr. Bourque needed to participate in the discussion.  Mr. Jackson assured the Government that his presence was not necessary.  Following that conference, the motion was withdrawn and this issue of self-incrimination or immunity was never raised again.  Despite numerous correspondence regarding this deposition, Mr. Jackson did not inform the United States that his clients intended to invoke the privilege of the Fifth Amendment for every substantive question asked.  Instead, counsel chose to present Mr. Kelley for his deposition.

Moreover, Mr. Kelley's counsel violated Local Rules by making inappropriate objections. Under Local Civil Rule 30(b), "If a claim of privilege has been asserted as a basis for an instruction not to answer, the attorney seeking discovery shall have reasonable latitude during the

---

[6] In addition, Mr. Jackson implied that requiring an assertion of the Fifth Amendment privilege to individual questions would be harassment.  Ex. A at 17:25-18:3.

deposition to question the deponent and establish relevant information concerning the appropriateness of the assertion of the privilege, including (i) the applicability of the privilege being asserted . . . ."  The rules also provide that "[a]n attorney who instructs a deponent not to answer a question shall state, on the record, the legal basis for the instruction consistent with Federal Rule of Civil Procedure 30(d)(1)."  *Id.*

When United States' counsel attempted to ask the questions identified in Local Rule 30(b) – *i.e.*, establishing a record that captures the basis for the privilege assertion – Michael Kelley's counsel repeatedly and inappropriately objected.  Government counsel tried to get clarification from Mr. Jackson as to whether Mr. Kelley would invoke the Fifth Amendment to every question, but counsel refused to provide a meaningful response.  Ex. A at 27:7-13; 28:19-29:7.  These invocations are clearly improper and were used as a tactic to disrupt a judicial proceeding.  The Local Rules were clearly violated here.

Additionally, Mr. Kelley's counsel made inappropriate objections to questions regarding the *Lookingbill* settlement.  His counsel contended that the questions with regard to the *Lookingbill* settlement were not relevant.  Ex. A at 23:16-25.  But, as explained above, that settlement is clearly relevant, and thus such objections were frivolous.  Certainly, such objections were not a valid basis to instruct the witness to not answer questions.

## III.    Federal Rule of Civil Procedure 30(d)(2) Permits the Court to Impose Sanctions.

Courts may "impose an appropriate sanction--including the reasonable expenses and attorney's fees incurred by any party--on a person who impedes, delays, or frustrates the fair examination of the deponent." Fed. R. Civ. P. 30(d)(2).  The sanction of Rule 30(d)(2) "may be imposed on a non-party witness as well as a party or attorney."  Fed. R. Civ. P. 30(d) Advisory Committee Notes, 1993 amendments; *see also* 28 U.S.C. § 1927 ("Any attorney . . . who so

13

multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."). "Many courts have construed Rule 30(d)(2) to apply to circumstances where a party's conduct at a deposition warranted remedial action." *S. Louisiana Ethanol, L.L.C. v. Fireman's Fund Ins. Co.*, No. CIV.A. 11-2715, 2013 WL 1196604, at *8 (E.D. La. Mar. 22, 2013) (citing cases involving "improperly instructing deponent not to answer" and "numerous objections to deposition questions").

As this Court's rules recognize, a "lawyer's role is to zealously advance the legitimate interests of the client, while maintaining appropriate standards of civility and decorum." Local Attorney Rule 4(d). Indeed, [a] lawyer should treat all other lawyers, all parties, and all witnesses courteously, not only in court, but also in other written and oral communication." *Id.*; *see Dondi Properties Corp. v. Commerce Sav. & Loan Ass'n*, 121 F.R.D. 284, 287 (N.D. Tex. 1988) (noting that "[a] lawyer owes, to opposing counsel, a duty of courtesy and cooperation, the observance of which is necessary for the efficient administration of our system of justice and the respect of the public it serves"). With respect to depositions specifically, "[o]bjections during depositions shall be stated concisely and in a nonargumentative and nonsuggestive manner." Local Civil Rule 30(b).

Mr. Kelley's counsel abused and disrespected the judicial proceeding by using an inappropriate term to refer to United States counsel and by warning government counsel that he was lucky they were not in the same room. The United States therefore respectfully submits that the conduct of Mr. Kelley's attorneys, Gerald E. Bourque, Esq. and J. Dean Jackson, Esq., was inappropriate and sanctionable.

14

## <u>CONCLUSION</u>

For the reasons stated and upon the authorities cited, the United States respectfully requests

this Court to grant its Motion to Compel.

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General
Civil Division
JOHN F. BASH
United States Attorney
STEPHEN E. HANDLER
Senior Trial Counsel, Torts Branch
Civil Division
_____/s/_____
PAUL DAVID STERN
Trial Attorney, Torts Branch
Civil Division
United States Department of Justice
Attorneys for Defendant
UNITED STATES OF AMERICA

15

## CERTIFICATE OF SERVICE

I certify that on July 1, 2020, I electronically filed the foregoing with the clerk of court by using the CM/ECF system.  Additionally, I sent copies of the motion via email to the following attorneys:


Jamal K. Alsaffar
Tom Jacob
WHITEHURST, HARKNESS, BREES,
CHENG, ALSAFFAR & HIGGINBOTHAM
& JACOB PLLC
7500 Rialto Blvd, Bldg. Two, Ste 250 Austin,
TX 78735Thomas J. Henry
Bar No. 09484210

J. Dean Jackson
CURNEY, FARMER, HOUSE,
OSUNA & JACKSON, P.C.

Gerald E. Bourque
24 WATERWAY AVE., SUITE 660, THE
WOODLANDS, TEXAS 77380

*/s/ Paul David Stern*
PAUL DAVID STERN
Trial Attorney, Torts Branch
*Attorney for Defendant*

# Exhibit A

**In the Matter Of:**

HOLCOMBE vs UNITED STATES of AMERICA

5:18-CV-00555-XR

**MICHAEL SHAWN KELLEY**

*June 23, 2020*



800.211.DEPO (3376)
EsquireSolutions.com

```
 1                UNITED STATES DISTRICT COURT
               FOR THE WESTERN DISTRICT OF TEXAS
 2
     JOE HOLCOMBE, ET AL.,        §
 3                               §
         PLAINTIFF,              §   CIVIL ACTION NO.
 4                               §   5:18-CV-00555-XR
     V.                           §
 5                               §
     UNITED STATES OF AMERICA,   §
 6                               §
         DEFENDANT.              §
 7

 8

 9

10

11        REMOTE DEPOSITION OF MICHAEL SHAWN KELLEY
                     JUNE 23, 2020
12

13

14

15        REMOTE DEPOSITION OF MICHAEL SHAWN KELLEY,
     produced as a witness at the instance of the
16   Defendant and duly sworn, was taken in the above
     styled and numbered cause on Tuesday, June 23, 2020,
17   from 8:17 a.m.  to 9:23 a.m., before TAMARA CHAPMAN,
     CSR, RPR-CRR in and for the State of Texas, reported
18   remotely by computerized stenotype machine in
     Austin, Texas pursuant to the Federal Rules of Civil
19   Procedure and any provisions stated on the record
     herein.
20

21

22

23

24

25     Job No. J5731874
```



```
 1              A P P E A R A N C E S

 2

 3
     FOR THE PLAINTIFFS:
 4       Joseph M. Schreiber
         SCHREIBER KNOCKAERT, PLLC
 5       701 North Post Oak Road, Suite 325
         Houston, Texas 77024
 6       281-949-8904
         joe@lawdoneright.com
 7
         -and-
 8
         Jamal K. Alsaffar
 9       Tom Jacob
         WHITEHURST, HARKNESS, BREES, CHENG, ALSAFFAR,
10       HIGGINBOTHAM AND JACOB, PLLC
         7500 Rialto Boulevard
11       Building Two, Suite 250
         Austin, Texas 78735
12       855-419-2050

13       -and-

14       Jason Charles Webster
         THE WEBSTER LAW FIRM
15       6200 Savoy Drive, Suite 150
         Houston, Texas 77036
16       713-396-5197

17       -and-

18       Brett T. Reynolds
         BRETT REYNOLDS & ASSOCIATES, PC
19       1250 NE Loop 410, Suite 420
         San Antonio, Texas 78209
20       210-805-9799
         Btreynolds@btrlaw.com
21

22

23

24

25
```



```
 1   A P P E A R A N C E S (CONTINUED):

 2   FOR THE DEFENDANT:
         Stephen E. Handler
 3       Austin Furman
         U.S. DEPARTMENT OF JUSTICE
 4       Three Constitution Square
         175 N Street, NE, 11th Floor, Room 1809
 5       Washington, D.C. 20002
         202-616-4272
 6       austin.l.furman@usdoj.gov

 7       -and-

 8       Paul Stern
         U.S. ATTORNEY'S OFFICE
 9       601 W. Loop 410, Suite 600
         San Antonio, Texas 78216
10       210-384-7100

11

12   FOR MICHAEL AND REBECCA KELLEY:
         Dean Jackson
13       CURNEY, FARMER, HOUSE, OSUNA & JACKSON, P.C.
         411 Heimer Road
14       Washington, D.C. 20002
         210-377-1990
15       djackson@cfholaw.com

16       -and-

17       Gerald E. Bourque
         LAW OFFICE OF GERALD E. BOURQUE
18       24 Waterway Avenue, Suite 660
         The Woodlands, Texas 77380
19       713-862-7766
         gerald@geraldebourque.com
20

21   ALSO PRESENT:
         Daniel P. Chung
22       GIBSON DUNN
         1050 Connecticut Avenue, N.W.
23       Washington, DC 20036-5306
         Dchung@gibsondunn.com
24

25
```



```
 1                      I N D E X

 2
                                                     PAGE
 3

 4   APPEARANCES...................................    2

 5       MICHAEL SHAWN KELLEY

 6   EXAMINATION
         By Mr. Handler...........................    7
 7

 8   CORRECTION PAGE...............................   41
     SIGNATURE PAGE................................   42
 9   REPORTER'S CERTIFICATION......................   43

10
                    E X H I B I T S
11
                                          PAGE  LINE
12   Exhibit 1,                              7     3
     05/14/2020 letter from Gerald E.
13   Bourque to Paul David Stern, RE: Cause
     No. 5:18-cv-00555-XR
14   (No Bates - 1 page)
     Exhibit 2,                              7     3
15   Subpoena to produce documents,
     information, or objects or to permit
16   inspection of premises in a civil
     action
17   (No Bates - 3 pages)
     Exhibit 3,                              7     3
18   Attachment to subpoena duces tecum to
     Michael Kelley
19   (No Bates - 9 pages)
     Exhibit 4,                              7     3
20   Photograph of Devin Kelley
     (TXRANGERS00010965)
21   Exhibit 5,                              7     3
     Photograph of Devin Kelley
22   (TXRANGERS00010967)
     Exhibit 6,                              7     3
23   Photograph of Devin Kelley
     (TXRANGERS00010969)
24   Exhibit 7,                              7     3
     Photograph of Devin Kelley
25   (TXRANGERS00046864)
```



MICHAEL SHAWN KELLEY                                      June 23, 2020
HOLCOMBE vs UNITED STATES of AMERICA                               5

```
 1   E X H I B I T S (Continued)

 2   Exhibit 8,                                    7    3
     Photograph
 3   (TXRANGERS00047011)
     Exhibit 9,                                    7    3
 4   Texas Department of Public Safety,
     Texas Rangers, Supplemental report by
 5   Billy Mims
     (TXRANGERS00053617 -
 6   TXRANGERS00053621)
     Exhibit 10,                                   7    3
 7   Video clip
     (TXRANGERS00053246)
 8   Exhibit 11,                                   7    3
     Texas Department of Public Safety,
 9   Texas Rangers, Supplemental report by
     Brent Barina
10   (TXRANGERS00053663 -
     TXRANGERS00053666)
11   Exhibit 12,                                   7    3
     Audio clip
12   (TXRANGERS00016657)
     Exhibit 13,                                   7    3
13   Texas Department of Public Safety,
     Texas Rangers, Supplemental report by
14   Joseph Evans
     (TXRANGERS00049390 -
15   TXRANGERS00049391)

16

17

18

19

20

21

22

23

24

25
```



 1                    THE STENOGRAPHER:  Pursuant to the
 2     First Emergency Order Regarding the COVID-19
 3     State of Disaster, Paragraphs 2.b. and 2.c., this
 4     deposition of Michael Kelley is being conducted
 5     remotely via Zoom.  Today's date is June 23, 2020
 6     and the time is 8:17 a.m.
 7                    My name is Tamara Chapman, Texas
 8     CSR #7248.  I am administering the oath and
 9     reporting the deposition remotely by stenographic
10     means from my residence within the State of
11     Texas.
12                    MR. HANDLER:  Steve Handler
13     representing the United States.
14                    MR. SCHREIBER:  This is Joseph
15     Schreiber.  I represent the plaintiffs.
16                    MR. JACKSON:  Dean Jackson.  It's
17     my privilege and honor to represent Michael and
18     Rebecca Kelley.  I'm here along with Gerald
19     Bourque, who is their personal counsel as well.
20                    MR. ALSAFFAR:  Jamal Alsaffar,
21     representing the plaintiffs.
22                    MR. STERN:  Paul Stern on behalf
23     of defendant, United States.
24                    MR. FURMAN:  Austin Furman,
25     defending the United States.



```
 1              MR. WEBSTER:  Jason Webster,
 2   representing plaintiffs.
 3              MICHAEL SHAWN KELLEY,
 4   having been first duly sworn, testified as follows:
 5                    EXAMINATION
 6   BY MR. HANDLER:
 7        Q.  Good morning, Mr. Kelley.  My name is
 8   Steven Handler.  I represent the United States.
 9              For the record, could you please state
10   your full name and spell it for the record.
11        A.  Michael Shawn Kelley.  Michael,
12   M-I-C-H-A-E-L; Shawn, S-H-A-W-N; Kelley, K-E-L-L-E-Y.
13        Q.  Thank you.  Well, let the record reflect
14   that this is the deposition of Michael Kelley taken
15   pursuant to notice in accordance with the Federal
16   Rules of Civil Procedure and the local rules of the
17   Western District of Texas.
18              As I said, I'm representing the United
19   States.  Are you represented by counsel today?
20        A.  Yes.
21        Q.  And can you name your counsel, please?
22        A.  Dean Jackson and Gerald Bourque.
23        Q.  Okay.  Now, there are other attorneys
24   attending this deposition and they represent, of
25   course you heard, the plaintiffs and the United
```



 1   States.

 2            We're here today to discover facts

 3   regarding the allegations that the plaintiffs have

 4   made against the United States, as well as other

 5   related matters.  In particular, this lawsuit

 6   pertains to the wrongful death and personal injury

 7   actions brought against the United States.

 8            The claims arise out of a mass shooting

 9   perpetrated by former Airman Devin Patrick Kelley at

10   the First Baptist Church in Sutherland Springs,

11   Texas, on Sunday, November 5th, 2017.

12            Mr. Kelley, throughout this deposition,

13   instead of me repeating the full names of everyone,

14   I'll probably use shorthand references.  So the First

15   Baptist Church of Sutherland Springs, we'll just call

16   it "the church."  The shooting perpetrated by Airman

17   Devin Patrick Kelley will be called "the church

18   shooting" or just "the shooting."  Whenever I

19   reference Devin Patrick Kelley, I'll probably just

20   call him by his first name, Devin.  I'll also mention

21   Danielle Kelley.  I'll just call her Danielle.

22   That's Devin's second wife.  Tessa Kelley, Devin's

23   first wife, we'll just call her Tessa.  Michelle

24   Shields, the mother of Danielle, we'll just call her

25   Michelle.

 1             And to the extent possible I'll try to use

 2      the first names, just to move the deposition along.

 3             Are you presently taking any medications

 4      or are you on any medications that would impair your

 5      ability to understand my questions and give

 6      appropriate answers?

 7         A.   No.

 8         Q.   Have you ever had your deposition taken

 9      before in a setting like this?  Not necessarily on

10      Zoom, but maybe even in person?

11         A.   Yes, once.

12         Q.   And when was that?

13         A.   Back in the '80s.  I don't remember when.

14         Q.   Was it a civil case or criminal case?

15         A.   Civil.

16         Q.   Okay.  And were you the plaintiff or the

17      defendant?

18         A.   I was the defendant.

19         Q.   Okay.  And what did the -- what was the --

20      the gist of the case?

21         A.   We had some carpenter guys over building a

22      deck and they cut their fingers on their saw.

23         Q.   I'm sorry.  Could you repeat that?

24         A.   I said we had some guys over, carpenters,

25      building a deck and they cut their fingers with their



1    saw.

2              (Discussion off the written record.)

3         Q.   And, Mr. Kelley, other than that one

4    deposition back in the '80s, have you ever been

5    deposed, other than that one time?

6         A.   No.

7         Q.   Okay.  So a deposition is just like

8    testifying in court under oath before a judge.  The

9    court reporter will record all of your questions --

10   all the questions and all of the answers.  I'll be

11   asking you questions.  Other attorneys may be asking

12   you questions.  And some of the attorneys may object,

13   but you can still respond, unless your attorney

14   instructs you not to.

15             Because you're sworn under oath, you are

16   expected to respond to the questions to the best of

17   your knowledge, but your responses must be truthful.

18   Your response is subject to the penalty of perjury if

19   your response is not truthful regarding any material

20   facts.

21             If at any time I ask you a question and

22   you do not understand it, please stop me so I can

23   rephrase it or ask a different question.  If you

24   respond to a question, I will conclude that you

25   understood it and you were giving an appropriate



```
 1   response.
 2           All of your responses must be verbal in
 3   order for the court reporter to record them.  You
 4   can't nod your head or shake your head or gesture
 5   with your hands.
 6           At the end of deposition, when a
 7   transcript is prepared, you will be given the
 8   opportunity to read it and make corrections.  To the
 9   extent, however, you make any substantive
10   corrections, we may have to take your deposition
11   again.
12           Before we get started, do you understand
13   all my instructions?
14      A.   Yes.
15      Q.   Okay.  Do you have any questions?
16      A.   No.
17      Q.   Okay.  Now, you mentioned before that you
18   were a defendant in a certain -- in the 1980s.
19           Are you presently or had you been a
20   defendant with respect to the litigation involving
21   the shooting at the church?
22              MR. BOURQUE:  No.  Before we go
23   any further, let me -- there is something I want
24   to take up, and I want to take up Kelley 1 with
25   the government at this time.  If you'll pop that
```



1   up so the government can see.

2             On May the 14th of this year I

3   sent a letter to the Western District of Texas to

4   the attention of Paul David Stern.  I sent it by

5   regular mail and I emailed.  Copies went to

6   Mr. Alsaffar and Mr. Jackson.  I never got a

7   return envelope saying that the letter was not

8   received.

9             I also neither got a response to

10  that letter from the United States Government or

11  from Mr. Stern.  I also never got so much as a

12  phone call from Mr. Stern or anyone with the

13  government involved in this case.  I had no

14  acknowledgement at all that I even existed in

15  this case, from the government.

16            In my letter I set out what I

17  needed from the government before this deposition

18  was to take place.  I never received any

19  statement given by Mr. Kelley.  I never received

20  any statements that were given by Ms. Kelley to

21  any of the people listed in that letter.

22            I also set out why I'm concerned

23  about this deposition going forward.  This is a

24  mass homicide.  The perpetrator of this event

25  either committed suicide or was killed by others.



1 | The only remaining possible targets are
2 | Mr. Kelley and Ms. Kelley.
3 |                 I asked in my letter, please give
4 | me some reassurance.  This is what criminal
5 | defense lawyers who have tried 12 to 14 capital
6 | murder death penalty cases do.  They seek from
7 | the government some assurance that says, "you
8 | know, it's been two and a half years.  What's the
9 | status of a grand jury impanelling?  Are my
10 | clients targets now or are they ever going to be
11 | targets?"
12 |                 I got not one single solitary
13 | response, not even a phone call that says, "It's
14 | out of my hands.  I don't make that call."  So I
15 | can only assume that there is a sinister reason
16 | for you not contacting me or the government not
17 | making an effort to seek immunity so that these
18 | two people can give truthful answers to truthful
19 | questions.
20 |                 So I have a serious concern about
21 | the government's good-faith intentions in this
22 | deposition.  And I want somebody to tell me,
23 | whether it's Mr. Handler or it's Mr. Stern, what
24 | efforts you made to seek immunity or to answer my
25 | questions in response to my May 14th, 2020,

```
 1   letter.
 2                   MR. JACKSON:  Did you introduce it
 3   already?
 4                   MR. BOURQUE:  And if it hadn't
 5   been introduced for purposes of the deposition,
 6   I'm introducing it now for the purposes of the
 7   deposition.
 8                   MR. HANDLER:  Mr. Bourque, is that
 9   it?
10                   MR. BOURQUE:  I answer to pretty
11   much anything.  That will work.
12                   MR. HANDLER:  Okay.  I can neither
13   confirm nor deny the existence of any criminal
14   investigation.
15                   MR. BOURQUE:  You know what the
16   problem is -- whatever --
17                   MR. HANDLER:  Let me finish.  Let
18   me finish.  Excuse me.
19                   I said I can neither confirm nor
20   deny the existence of any criminal investigation.
21   This is a discovery deposition, the third-party
22   witness in a civil case.  We have issued a
23   subpoena.  He's appearing and we have the right
24   to take his deposition.  I have not --
25                   MR. BOURQUE:  He has rights also.
```



```
 1              MR. HANDLER:  Well, I understand
 2   that, but are you saying that if we don't give
 3   you the assurances you requested in your letter,
 4   that you're going to instruct your witness not to
 5   respond to any questions in this deposition?
 6              MR. BOURQUE:  Let me ask you this.
 7   What efforts did you make to comply with anything
 8   I sent on May the 14th, 2020?  That's my question
 9   and it deserves an answer.
10              MR. HANDLER:  Let me just say,
11   Mr. Bourque, I am not the witness in this case.
12   The witness in this case is Mr. Kelley, and he is
13   the one that I'm posing questions to, and he is
14   the one that I will ask -- you know, that is the
15   deponent.
16              I am not here to answer your
17   questions, and I'm asking you, are you going to
18   instruct your witness not to answer the questions
19   and participate as a deponent in this civil
20   lawsuit because your letter -- the questions in
21   your letter were not responded to?  A simple
22   question, "yes" or "no"?
23              MR. BOURQUE:  I don't give
24   yes-or-no answers until I get answers to my
25   questions.
```



1          MR. HANDLER:  Well, I'm not giving

2    you an answer to your question.

3          MR. BOURQUE:  Okay.  Well, then

4    I'm not giving you an answer to yours, big boy.

5          MR. JACKSON:  Mr. Handler, this is

6    Gerald's issue with this.  You didn't respond to

7    his letter.  He has some serious questions about

8    your motives behind this deposition.  We

9    understand it's a civil lawsuit.

10          However, by not responding to his

11   letter, he is assuming that you guys are going to

12   try to indict Mr. and Ms. Kelley, and you're

13   going to take this deposition, you're going to

14   run it over to the other side of the street and

15   say "here you go, we did your work for you."

16          I mean, it's pretty easy.  And

17   what you're making the Kelleys do right now is

18   not answer your questions and possibly invoke

19   their Fifth Amendment right to make it look

20   terrible on them.

21          MR. HANDLER:  I have already made

22   a statement that we are here in this deposition

23   to depose Mr. Kelley with regard to the facts and

24   circumstances of the allegations made by the

25   plaintiffs in this civil litigation.  That is my



 1   only intention in this case.  And I did -- I made

 2   that statement.

 3              MR. JACKSON:  That right there is

 4   saying something without saying anything.

 5              MR. HANDLER:  I'm sorry?

 6              MR. JACKSON:  That is saying

 7   nothing.  I mean, just using words out loud that

 8   mean nothing.

 9              MR. HANDLER:  Well, I'm going to

10   proceed with this deposition.  If you're going to

11   instruct your witness not to answer, you're going

12   to have to do it question by question.

13              Okay?  So let's proceed.

14              MR. SCHREIBER:  I'd like to make a

15   statement on behalf of the plaintiffs in the

16   civil side of the case.

17              We object to a question-by-question.

18   Fifth Amendment -- questions by the government

19   seeking to have the witness invoke the Fifth

20   Amendment, when for over a month you guys have

21   had a letter letting you know this was going to

22   happen.  So we object to any sort of spectacle

23   which might make the witness look bad and might

24   try and take a side-shot at the plaintiffs.

25              MR. JACKSON:  Right.  And I will



1  shut this deposition down if we go question by

2  question just to intimidate and harass my

3  clients.

4             MR. STERN:  Can I jump in for a

5  second.  This is Paul Stern.

6             Mr. Schreiber, I realize that

7  Mr. Handler is taking the deposition.

8  Nonetheless, the letter was intended and was

9  addressed to me, sir, and to the extent that this

10  issue has been raised and addressed to lead

11  counsel, I would like the opportunity to respond.

12             MR. SCHREIBER:  Okay.  Go ahead.

13             MR. STERN:  Thank you.

14             As you're well aware, we sought

15  the deposition of Michael and Rebecca Kelley

16  during a court hearing on May 14th, 2019.  Judge

17  Rodriguez authorized those depositions to be

18  taken.  Prior to seeking these depositions, we

19  sent a request for a subpoena to produce

20  documents.  That subpoena was responded to with a

21  motion for a protective order.  A motion for

22  protective order addressed various issues without

23  raising the -- including the issue of potential

24  assertions of Fifth Amendment.

25             We then had a conversation with



1   Dean Jackson to try to obviate the need to

2   litigate the matter any further.  After we

3   responded to that motion, at that time

4   Mr. Jackson agreed to withdraw the motion for

5   protective order and agreed to schedule this

6   deposition.

7               At the -- subsequent to that

8   conversation, we then had conversations about the

9   logistics of scheduling this deposition, and then

10  subpoenaed Michael and Rebecca Kelley to appear

11  for their deposition per the court order.  At no

12  time was the issue raised about that letter and

13  the reassertion of any Fifth Amendment concerns.

14              We fully recognize that this is a

15  civil litigation where we've identified Devin

16  Patrick Kelley as a potential responsible third

17  party.  The Court granted that authorization, as

18  well granted these depositions to be taken.  Note

19  we are -- this deposition is being taken without

20  any outstanding protective order in place; and to

21  the extent that you're now insisting that we

22  respond to the letter, we've had conversations

23  with Dean Jackson but in no way are obligated to

24  reveal how we determined whether or not and to

25  what extent we should respond to that letter.



```
1              These depositions are going

2     forward without a protective order in place.

3     Questions will be asked, and if the deponent

4     answers by asserting his Fifth Amendment right

5     against self-incrimination, so be it, but we have

6     a right to take this deposition and will continue

7     to do so.

8              MR. BOURQUE:  All right.  I

9     appreciate that, Mr. Stern.

10             One more response from Gerald

11    Bourque.  Since you volunteered to jump in to

12    this, I'd like to hear from you.  What effort did

13    you make to determine whether or not Mr. and

14    Ms. Kelley are now targets of the United States

15    Government or are not targets of the United

16    States Government?

17             MR. STERN:  I am not responding to

18    your questions.  I'm responding to your

19    accusations that we are taking this deposition in

20    an inappropriate manner.  That is not the case.

21    We scheduled it with counsel with no outstanding

22    protective order in place and this deposition

23    will go forward.

24             MR. BOURQUE:  Well, that's

25    wonderful, Mr. Stern.  I so much appreciate
```



```
 1   your -- your inclination here.  Can you just
 2   answer my question?  What efforts did you put in
 3   to this?  I take it by your silence, none.  You
 4   did nothing.  You didn't do anything.
 5   Mr. Handler didn't do anything.  No one from the
 6   United States Government so much as made an
 7   effort to walk across the hall and talk to
 8   United -
 9                (Simultaneous speaking.)
10                MR. STERN:  Mr. Bourque, we are --
11                MR. BOURQUE:  I'm assuming -- if
12   I'm wrong --
13                MR. STERN:  We neither confirming
14   or denying any investigation.  We are not going
15   to reveal attorney work product regarding this --
16   this case.  If you're going to remove your
17   witness, do so, but, otherwise, we are going to
18   continue with this deposition --
19                MR. BOURKE:  Get on with it.
20                (Simultaneous speaking.)
21                MR. STERN:  -- asking the
22   questions.
23                Mr. Handler, please proceed.
24                MR. BOURQUE:  Why don't you try to
25   get on with it.  Get on with it.  Okay?  Get on
```



 1  with it.  I got my answers.  You did nothing.

 2       Q.  Mr. Kelley, I apologize for the discourse

 3  here.  Attorneys do that in depositions, but we'll

 4  proceed.

 5           Now, with regard to this particular

 6  litigation, the -- involving the church shooting,

 7  were you a defendant in a case called Lookingbill?

 8       A.  On advice of my counsel, I assert my Fifth

 9  Amendment right to remain silent.

10           MR. WEBSTER:  And I'm going to object to

11  the continued line of -- this is Jason Webster.  I'm

12  going to object to the continued line of questioning

13  if he's going to invoke the Fifth Amendment because

14  it's not admissible in federal court.  So if he's

15  going to continue to answer every single question,

16  it's not admissible.  So we need to go get a ruling

17  by the judge and then come back.

18           MR. HANDLER:  Mr. Webster, I think

19  you're incorrect, but we will continue.

20       Q.  Mr. Kelley, you've asserted your Fifth

21  Amendment right to remain silent regarding whether or

22  not you are a defendant in Lookingbill case.  Is that

23  correct?

24           MR. JACKSON:  Objection; asked and

25  answered --



1          A.  By advice of counsel, I assert my Fifth
2    Amendment right to remain silent.
3          Q.  Okay.  Are you going to follow that
4    advice?
5          A.  On advice of my counsel, I'm going to
6    assert my Fifth Amendment right to remain silent.
7          Q.  Okay.  Was that -- was the Lookingbill
8    case settled on your behalf?
9          A.  On advice of my counsel, I'm going to
10   assert -- I assert my Fifth Amendment right to remain
11   silent.
12         Q.  And did you pay any money with regard to
13   that lawsuit?
14         A.  On advice of my counsel, I assert my Fifth
15   Amendment right to remain silent.
16              MR. HANDLER:  Counsel, what is the
17   basis for asserting the Fifth Amendment right
18   on -- on information that concerns a pending
19   lawsuit in a state court action?
20              MR. JACKSON:  And I'm also going
21   to object as completely irrelevant, so anything
22   that's happening in the federal lawsuit against
23   the United States Government.
24              Mr. Handler, that makes -- the
25   relevancy of that is -- I can't even comprehend



```
 1   in the great sea of imagination how that would
 2   have any relevance in the plaintiff's lawsuit
 3   against the United States Government.  So I'm
 4   going to object -- I mean, quite frankly, that's
 5   just harassing and it has no relevance whatsoever
 6   to the United States --
 7               (Simultaneous speaking.)
 8               MR. HANDLER:  It is not
 9   harassment.  It pertains to monies that are spent
10   by defendant in a state case that may be offset
11   in the federal case and has similar allegations.
12   That's not irrelevant and that's not a basis for
13   asserting the Fifth Amendment.  The Fifth
14   Amendment has a very particular assertion here.
15   Are you saying that your client is asserting the
16   Fifth Amendment based on relevancy?  State the
17   basis, Counsel.
18               MR. JACKSON:  I'm saying, as the
19   civil counsel for Mr. and Ms. Kelley, that that
20   is -- I mean, I can't even fathom how that would
21   be particularly relevant.  And if this line of
22   questioning keeps coming up, Mr. Handler, I think
23   we need to stop this deposition.  We'll just take
24   it up in front of Mr. -- in front of Judge
25   Rodriguez.  And we can do it in the courthouse.
```



```
 1              MR. HANDLER:  And I think you're

 2   being obstructionist here because this is valid,

 3   you know, questions regarding, you know,

 4   information that United States needs to defend

 5   its lawsuit.  And you are being obstructionist

 6   here.  And I -- I strongly suggest that you ask

 7   your client to answer these questions.

 8              MR. JACKSON:  Mr. Handler, how --

 9              MR. SCHREIBER:  Sidebar.

10              MR. JACKSON:  -- the world is that

11   even relevant to -- to the allegations that the

12   plaintiffs made against the United States

13   Government?  How?

14              MR. HANDLER:  Let me explain it to

15   you.  It has to do with offset.  If he paid money

16   for Lookingbill in the state case, then with

17   regard to the federal case, Lookingbill would be

18   getting an offset for that.  And that is relevant

19   and that's not -- you know, that is information

20   that we can -- that the United States can argue

21   with the plaintiffs at a later time, but right

22   now, I'm gathering facts regarding the amount of

23   money that Mr. Kelley paid with regard to

24   Lookingbill.  And if I have to bring this -- the

25   witness back, this cost is going to be on you,
```



1    Counsel.

2          Q.  So do you have the documents pertaining to

3    the settlement of the Lookingbill case, Mr. Kelley?

4          A.  On advice of counsel, I assert my Fifth

5    Amendment right to remain silent.

6          Q.  Okay.  Let's move on.

7               Are you assisting any of the plaintiffs in

8    this litigation?

9               MR. SCHREIBER:  Objection; vague.

10              MR. JACKSON:  Objection; vague.

11         A.  On advice of counsel, I assert my Fifth

12   Amendment right to remain silent.

13              MR. SCHREIBER:  Vague.  Objection.

14              This is Mr. Schreiber.  I made a

15   vague objection to -- to the question.

16              MR. JACKSON:  And Dean Jackson did

17   as well.

18         Q.  Mr. Kelley, preparation for this

19   deposition, did you review any documents?

20         A.  On advice of counsel, I assert my Fifth

21   Amendment right to remain silent.

22         Q.  In preparation for this deposition, did

23   you talk to anyone other than your attorneys in

24   preparation for this deposition?

25         A.  On advice of counsel, I assert my Fifth



 1   Amendment right to remain silent.

 2        Q.  Okay.

 3             MR. STERN:  Steven, this is Paul

 4   Stern again.  Could we perhaps maybe take a

 5   five-minute break?  Everyone, I think we just

 6   need to take a quick five minutes.

 7             MR. HANDLER:  Let me ask you a

 8   quick question.

 9             Mr. Jackson, is your client going

10   to assert the Fifth Amendment right to every

11   single question that I ask?

12             MR. JACKSON:  That should not be

13   addressed to me.

14             MR. HANDLER:  I'm asking you.

15   Okay.  We'll ask Mr. Kelley.

16        Q.  Mr. Kelley, are you going to assert your

17   Fifth Amendment right to every single question that I

18   ask you?

19        A.  On advice of counsel, I assert my Fifth

20   Amendment right to remain silent.

21        Q.  Mr. Kelley, I understand you're asserting

22   your Fifth Amendment right, but I have a lot of

23   questions here, and we can be here for the next seven

24   hours of me asking you questions.

25             Are you going to assert your Fifth



 1   Amendment right to every single question that I ask

 2   you?

 3          A.   On the advice of counsel, I assert my

 4   Fifth Amendment right to remain silent.

 5               MR. HANDLER:   Court reporter,

 6   let's take a five-minute break.

 7               (Break.)

 8          Q.   Mr. Kelley, are you ready?

 9          A.   Yes.

10          Q.   Okay.  Mr. Kelley, I just want to be very

11   clear here.  Are you planning to assert the Fifth

12   Amendment right against self-incrimination as to

13   every single question I ask in this deposition?

14               MR. BOURQUE:   Objection; asked and

15   answered.

16          Q.   Mr. Kelley, can you answer the question?

17          A.   On advice of counsel, I assert my Fifth

18   Amendment right to remain silent.

19               MR. HANDLER:   Mr. Jackson, I'm

20   posing this question to you.  Are you going to

21   instruct your witness to assert the Fifth to

22   every single question that I ask in this

23   deposition?

24               MR. JACKSON:   Listen, Mr. Handler,

25   I know exactly what you're doing.  You're not



1  going to get -- you're not going to bait me into

2  that.  You need to ask your questions.  And if

3  the question is appropriate, then we'll answer

4  it.  If not, then his private counsel is going to

5  instruct him as he -- as he deems appropriate.

6  You're not going to bait me into that.  I've been

7  doing this too long.

8            MR. HANDLER:  So are you saying

9  that you're going to allow this witness to answer

10  questions and not assert the Fifth --

11            MR. BOURQUE:  Mr. Jackson is --

12            MR. HANDLER:  -- depending on the

13  question?

14            MR. BOURQUE:  Mr. Jackson is not

15  the witness.  Ask your question.

16            MR. HANDLER:  Well, based on that,

17  it seems to me that we're going to go question by

18  question and Mr. Kelley is going to have to

19  either answer the question or plead the Fifth.

20            (Simultaneous speaking.)

21            MR. BOURQUE:  Ask your question.

22            MR. HANDLER:  Okay.  All right.

23  Let's proceed.

24            MR. BOURQUE:  Oh, thank you.  I

25  said that 20 minutes ago.



```
 1                    MR. HANDLER:  You know, you don't

 2    have to be rude.

 3                    MR. BOURQUE:  Oh, sure I do.  You

 4    didn't respond to my letter, big boy.  Okay?  You

 5    treated me like a nonentity, and you're going to

 6    tell me I'm not allowed to be rude?  Call

 7    somebody --

 8                    (Simultaneous speaking.)

 9                    MR. HANDLER:  Yes, I am telling

10    you:  Don't be rude.  I'm not rude.  Don't be

11    rude.

12                    MR. BOURQUE:  I have every right

13    to treat you the way you treated me.  You get

14    that?  And you're very fortunate you're not in

15    this room with me in person right now.  You got

16    that?  And you should have been --

17                    (Simultaneous speaking.)

18                    MR. HANDLER:  Are you threatening

19    me?  Are you threatening me?

20                    MR. BOURQUE:  Oh, please.  Go --

21                    (Simultaneous speaking.)

22                    MR. HANDLER:  Counsel, why don't

23    you be quiet and sit down and not obstruct this

24    witness from answering my questions.

25                    MR. BOURQUE:  Why don't you ask
```



1    your questions that we stopped 30 minutes ago.

2    Or come -- I'm inviting you personally to come to

3    our conference room and you can do it in person.

4              MR. JACKSON:  Mr. Handler, if you

5    want to ask some questions, go ahead.

6         Q.  Mr. Kelley, with regard to documents that

7    you reviewed, did you review anything such as papers

8    or locations?  Did you go to the church before your

9    deposition today?

10        A.  On advice of counsel, I assert my Fifth

11   Amendment right to remain silent.

12             MR. HANDLER:  I'm going to make a

13   statement for the record.  I'm going to stop the

14   deposition, but I'm going to keep it open.  I

15   believe that Mr. Kelley is inappropriately

16   asserting the Fifth Amendment privilege against

17   self-incrimination to appropriate questions for

18   this civil litigation.

19             We are going to leave it open,

20   though, and we're going to seek relief through

21   the Court.

22             And I want to ask counsel for

23   Mr. Kelley.  We have Rebecca's deposition

24   scheduled for 2 o'clock today.  Is Rebecca going

25   to assert the Fifth in the same manner that her

1   husband Michael is going to assert the Fifth?

2               MR. BOURQUE:  Ms. Kelley is here,

3   too.

4               MR. JACKSON:  Mr. Handler, if you

5   wanted a fruitful deposition, and an honest

6   deposition, you could have answered Mr. Bourque's

7   letter and you could have asked Mr. Kelley the

8   questions and we would not be going through this

9   right now.

10              However, because of y'all's

11  ineptitude and refusal to answer Mr. Bourque's

12  letter, you've put him in a position and given

13  him no other alternative but to answer your

14  questions the way that he is.

15              MR. SCHREIBER:  This is Joseph

16  Schreiber.  I'd like to make a statement on

17  behalf of the plaintiffs, and the statement is

18  this.  The plaintiffs state that the government,

19  by refusing to admit or deny that they're making

20  an investigation and charging Mr. and Ms. Kelley,

21  and/or at this point Danielle Kelley, after the

22  government's history of prosecuting the family

23  members of shooters like the Pulse nightclub has

24  put the Kelleys in the situation where they have

25  to assert the Fifth Amendment.



1                 The plaintiffs on this case would

2       like to ask the Kelleys questions.  We think that

3       there is information.  We understand they cannot

4       answer questions because the government is

5       weaponizing their ability to charge the Kelleys

6       criminally, and therefore the government, by

7       refusing to either confirm or deny, is

8       essentially obstructing our questioning as well.

9                 And we object to any inference

10      that may or may not be sought by the government

11      when they've created the situation by refusing to

12      either -- to deny officially that there is an

13      investigation into the Kelleys, or grant an

14      immunity to testify so they won't be charged.

15                MR. JACKSON:  Also, on the record

16      I want to say -- this is Dean Jackson -- I want

17      to state that I will also be seeking relief from

18      the court, as well as attorney's fees for the

19      abject refusal of the U.S. Government to reply to

20      Mr. Bourque's letter and creating the situation

21      that puts the Kelleys in a situation that they

22      are forced to assert their Fifth Amendment

23      privilege.

24                MR. HANDLER:  Again, Mr. Jackson,

25      my question still stands.  In order to resolve



1   this right now --

2               (Simultaneous speaking.)

3               MR. BOURQUE:  How does that work

4   for you?  The government's ploy is to neither

5   admit or deny.

6               MR. HANDLER:  Mr. Bourque, please

7   let me finish my statement.  I asked the

8   question, we have Rebecca's deposition at

9   2 o'clock.  Is she going to respond like Michael

10  and plead the Fifth to every question that we ask

11  her regarding this matter?  Is she going to do

12  that?  So we don't have to notice her -- take her

13  deposition and ask those --

14              MR. BOURQUE:  Asked and answered.

15              MR. HANDLER:  I didn't hear your

16  answer.  Can you please repeat it.

17              MR. BOURQUE:  You'll have to get

18  the court reporter.

19              MR. HANDLER:  Read back the

20  answer.

21              (The requested material was read.)

22              THE STENOGRAPHER:  "Ms. Kelley is

23  here."

24              MR. HANDLER:  I can't get an

25  answer.



```
 1                   MR. BOURQUE:  That is the only
 2     answer you're going to get.
 3                   MR. HANDLER:  I consider that we
 4     have met or satisfied our meet and confer with
 5     regard to seeking relief before the Court, and we
 6     will seek relief for the Court and we will ask
 7     the Court to provide us with an opportunity to
 8     re-depose Mr. Kelley and Ms. Kelley at an
 9     appropriate time.  Anybody else have any --
10                   MR. BOURQUE:  Please --
11                   MR. HANDLER:  Anyone else have a
12     statement for the record?
13                   MR. BOURQUE:  Yes, I do.  Gerald
14     Bourque.  To the government, either Mr. Handler
15     or Mr. Stern or whatever other government
16     employees involved in this case.  Please bring
17     your grant of immunity with you when you seek
18     your relief for Mr. Kelley and Ms. Kelley.  That
19     concludes my statement.
20                   MR. SCHREIBER:  I have nothing
21     further for the plaintiff.
22                   MR. HANDLER:  Anyone else?
23                   MR. JACKSON:  While we're on the
24     record, Mr. Handler, are you saying that you're
25     releasing Ms. Kelley from her subpoena?
```



```
 1              MR. HANDLER:  No.  All of the
 2   subpoenas, the depositions remain open and
 3   pending.  I'm not releasing anyone from anything
 4   until the Court rules.
 5              MR. JACKSON:  I'm talking about
 6   2 o'clock today.
 7              MR. HANDLER:  She does not need to
 8   appear for 2 o'clock, but she's still under the
 9   subpoena.
10              MR. BOURQUE:  The subpoena is --
11              MR. HANDLER:  Anyone else?
12              MR. JACKSON:  The subpoena for
13   2 o'clock.  That makes no sense.  You have to
14   reissue the subpoena.
15              MR. STERN:  I think the idea of
16   going forward with Rebecca Kelley is obviously
17   futile, and so let's just queue this up for the
18   court.  And to the extent we would need to
19   reissue a subpoena for Rebecca at a later date,
20   we would do so.
21              MR. BOURQUE:  So you're not doing
22   the deposition at 2 o'clock for Ms. Kelley?
23              MR. STERN:  Yes, to the extent
24   that we anticipate that she would provide similar
25   non-testimony the way Mr. Kelley is right now.
```



```
 1   That is correct.
 2                   MR. BOUCKE:  Well, then I'm
 3   assuming that the 2 o'clock depo for Ms. Kelley
 4   is off.
 5                   MR. HANDLER:  Understood.
 6                   MR. BOUCKE:  Very good.  Thank
 7   you.
 8                   MR. SCHREIBER:  This is Joseph
 9   Schreiber.  The plaintiffs would object to -- let
10   me back up.
11                   Prior to the deposition a number
12   of exhibits were uploaded to the Zoom chat for
13   Esquire, including the first one, Kelley 1,
14   uploaded by Mr. Jackson, who is Michael Kelley's
15   personal attorney, which was actually discussed
16   in the deposition.
17                   Mr. Handler for the government
18   uploaded -- I believe was it 13 documents that he
19   intended to use in the deposition but did not get
20   a chance to use because the deposition was
21   suspended.  And so the plaintiffs object to the
22   13 documents that Mr. Handler uploaded being
23   attached to the deposition because they weren't
24   used with the witness at all.
25                   To the extent that he needs to
```



1    show them to the judge is what he was going to

2    ask, we don't have any objection to those because

3    we have a record of what they were being attached

4    to it a different motion.  But I don't think they

5    belong on the transcript itself because they

6    weren't used to ask a witness a question.

7                    Again, I don't -- we have a record

8    of what they were, Steven, and I don't have any

9    problem with you attaching them to a motion for

10   the judge and saying these are the ones I was

11   going -- what I was going to use.  And I have a

12   record of which ones you have.  I downloaded them

13   all.  So I get it.

14                   MR. HANDLER:  I understand.

15                   MR. BOURQUE:  This is Gerald

16   Bourque.  Let me add one final thing, if that's

17   all right.

18                   Mr. Kelley was present for the

19   deposition, was seated, sworn, and as of about

20   9:15 Houston time, which would be 10:15 Eastern

21   time, the government stopped asking questions.

22   So our position is this deposition is concluded.

23   If you want another deposition, you'll have to

24   notice us and we'll go from there.

25                   MR. HANDLER:  The only reason the



```
 1   witness -- the government stopped the deposition
 2   is because your client, Mr. Kelley, refused to
 3   ask (sic) reasonable questions, but that did not
 4   implicate the Fifth Amendment.
 5                 And for that reason, the
 6   government was not able to continue the
 7   deposition.  It was not the fault of the
 8   government.  It was the fault of either the
 9   witness or his attorneys.
10                 MR. BOURQUE:  Look, let's let
11   somebody else decide faults here.  Okay?  You're
12   a big boy.  You know that you don't have the
13   right to put fault on me any more than I have a
14   right to put fault on you.  Okay?
15                 MR. HANDLER:  I'd appreciate if
16   you keep your name-calling to yourself.
17                 MR. BOURQUE:  It's specifically
18   directed to me.
19                 MR. HANDLER:  Okay.  If you want
20   to act like a child, that's fine.  This
21   deposition has been concluded.
22                 MR. BOURQUE:  Yes, it is.  The
23   deposition is concluded.
24                 MR. STERN:  It has been suspended.
25                 MR. BOURQUE:  It's concluded.
```



```
 1                    MR. HANDLER:  You know what I
 2     mean.  We'll let the Court decide.
 3                    MR. JACKSON:  Are we done?
 4                    THE STENOGRAPHER:  Mr. Jackson?
 5                    MR. JACKSON:  Yes, ma'am, please.
 6                    MR. SCHREIBER:  I need one for the
 7     plaintiff as well.  Send me one for the
 8     plaintiff.  Electronic.
 9                    THE STENOGRAPHER:  The transcript
10     has been ordered next day.
11                    MR. SCHREIBER:  No.
12                    MR. JACKSON:  No.
13                    (Deposition concluded at 9:23 a.m.)
14
15
16
17
18
19
20
21
22
23
24
25
```



1                        CORRECTION PAGE

2    WITNESS NAME:   MICHAEL SHAWN KELLEY DATE:
     06/23/2020
3
     PAGE   LINE  CHANGE              REASON
4    _____

5    _____

6    _____

7    _____

8    _____

9    _____

10   _____

11   _____

12   _____

13   _____

14   _____

15   _____

16   _____

17   _____

18   _____

19   _____

20   _____

21   _____

22   _____

23   _____

24   _____

25   _____



1                          SIGNATURE PAGE

2

           I, MICHAEL SHAWN KELLEY, have read the
3    foregoing deposition and hereby affix my signature
     that same is true and correct, except as noted on
4    the correction page.

5

6                         _____
                                MICHAEL SHAWN KELLEY
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25



```
 1              UNITED STATES DISTRICT COURT
            FOR THE WESTERN DISTRICT OF TEXAS
 2
   JOE HOLCOMBE, ET AL.,       §
 3                             §
        PLAINTIFF,             §   CIVIL ACTION NO.
 4                             §   5:18-CV-00555-XR
   V.                          §
 5                             §
   UNITED STATES OF AMERICA,   §
 6                             §
        DEFENDANT.             §
 7

 8              REPORTER'S CERTIFICATION
 9         DEPOSITION OF MICHAEL SHAWN KELLEY
                 TAKEN JUNE 23, 2020
10

11      I, TAMARA CHAPMAN, Certified Shorthand Reporter

12 in and for the State of Texas, hereby certify to the

13 following:

14      That the witness, MICHAEL SHAWN KELLEY, was

15 duly sworn by the officer and that the transcript of

16 the oral deposition is a true record of the

17 testimony given by the witness;

18      That the original deposition was delivered to

19 STEPHEN HANDLER;

20      That a copy of this certificate was served on

21 all parties and/or the witness shown herein on

22 _____.

23      I further certify that pursuant to FRCP

24 No. 30(f)(i) that the signature of the deponent:

25          was requested by the deponent or a party
```



```
 1   before the completion of the deposition and that the

 2   signature is to be returned within 30 days from date

 3   of receipt of the transcript.  If returned, the

 4   attached Changes and Signature Page contains any

 5   changes and the reasons therefor;

 6        X  was not requested by the deponent or a

 7   party before the completion of the deposition.

 8        I further certify that I am neither counsel

 9   for, related to, nor employed by any of the parties

10   in the action in which this proceeding was taken,

11   and further that I am not financially or otherwise

12   interested in the outcome of the action.

13        Certified to by me this 24th day of June, 2020.

14

15

16

17   _____
     Tamara Chapman, CSR, RPR-CRR
18   Texas CSR #7248 (Expir. 04/30/21)
     Firm Registration No. 77
19   ESQUIRE DEPOSITION SOLUTIONS, LLC
     9901 IH 10 West, No. 800
20   San Antonio, Texas  78230
     210.331.2280

21

22

23

24

25
```



**Exhibits**

5731874 Mic
hael.
Kelley.
Exhibit01
  4:12

5731874 Mic
hael.
Kelley.
Exhibit02
  4:14

5731874 Mic
hael.
Kelley.
Exhibit03
  4:17

5731874 Mic
hael.
Kelley.
Exhibit04
  4:19

5731874 Mic
hael.
Kelley.
Exhibit05
  4:21

5731874 Mic
hael.
Kelley.
Exhibit06
  4:22

5731874 Mic
hael.
Kelley.
Exhibit07
  4:24

5731874 Mic
hael.
Kelley.
Exhibit08
  5:2

5731874 Mic
hael.
Kelley.
Exhibit09
  5:3

5731874 Mic
hael.
Kelley.
Exhibit10
  5:6

5731874 Mic
hael.
Kelley.
Exhibit11
  5:8

5731874 Mic
hael.
Kelley.
Exhibit12
  5:11

5731874 Mic
hael.
Kelley.
Exhibit13
  5:12

—————————

**1**

1
  11:24
  37:13

10:15
  38:20

12
  13:5

13
  37:18,22

14
  13:5

14th
  12:2
  13:25

15:8
  18:16

**1980s**
  11:18

—————————

**2**

2
  31:24
  34:9
  36:6,8,
  13,22
  37:3

20
  29:25

2017
  8:11

2019
  18:16

2020
  13:25
  15:8

—————————

**3**

30
  31:1

—————————

**5**

5th
  8:11

—————————

**8**

80s
  9:13 10:4

—————————

**9**

9:15
  38:20

—————————

**A**

ability
  9:5 33:5

abject
  33:19

accordance
  7:15

accusations
  20:19

acknowledge
ment
  12:14

act
  39:20

action
  23:19

actions
  8:7

add
  38:16

addressed
  18:9,10,
  22 27:13

admissible
  22:14,16

admit
  32:19
  34:5

advice
  22:8
  23:1,4,5,
  9,14
  26:4,11,

20,25
  27:19
  28:3,17
  31:10

agreed
  19:4,5

ahead
  18:12
  31:5

Airman
  8:9,16

allegations
  8:3 16:24
  24:11
  25:11

allowed
  30:6

Alsaffar
  12:6

alternative
  32:13

Amendment
  16:19
  17:18,20
  18:24
  19:13
  20:4
  22:9,13,
  21 23:2,
  6,10,15,
  17 24:13,
  14,16
  26:5,12,
  21 27:1,
  10,17,20,
  22 28:1,
  4,12,18
  31:11,16
  32:25
  33:22
  39:4

amount
  25:22



and/or
   32:21

answering
   30:24

answers
   9:6 10:10
   13:18
   15:24
   20:4 22:1

anticipate
   36:24

apologize
   22:2

appearing
   14:23

argue
   25:20

arise
   8:8

assert
   22:8
   23:1,6,
   10,14
   26:4,11,
   20,25
   27:10,16,
   19,25
   28:3,11,
   17,21
   29:10
   31:10,25
   32:1,25
   33:22

asserted
   22:20

asserting
   20:4
   23:17
   24:13,15
   27:21
   31:16

assertion
   24:14

assertions
   18:24

assisting
   26:7

assume
   13:15

assuming
   16:11
   21:11
   37:3

assurance
   13:7

assurances
   15:3

attached
   37:23
   38:3

attaching
   38:9

attending
   7:24

attention
   12:4

attorney
   10:13
   21:15
   37:15

attorney's
   33:18

attorneys
   7:23
   10:11,12
   22:3
   26:23
   39:9

authorizati
on
   19:17

authorized
   18:17

aware
   18:14

_____

       B
_____

back
   9:13 10:4
   22:17
   25:25
   34:19
   37:10

bad
   17:23

bait
   29:1,6

Baptist
   8:10,15

based
   24:16
   29:16

basis
   23:17
   24:12,17

behalf
   17:15
   23:8
   32:17

belong
   38:5

big
   16:4 30:4
   39:12

BOUCKE
   37:2,6

BOURKE
   21:19

Bourque
   7:22

11:22
14:4,8,
   10,15,25
   15:6,11,
   23 16:3
   20:8,11,
   24 21:10,
   11,24
   28:14
   29:11,14,
   21,24
   30:3,12,
   20,25
   32:2
   34:3,6,
   14,17
   35:1,10,
   13,14
   36:10,21
   38:15,16
   39:10,17,
   22,25

Bourque's
   32:6,11
   33:20

boy
   16:4 30:4
   39:12

break
   27:5
   28:6,7

bring
   25:24
   35:16

brought
   8:7

building
   9:21,25

_____

       C
_____

call
   8:15,20,

21,23,24
   12:12
   13:13,14
   30:6

called
   8:17 22:7

capital
   13:5

carpenter
   9:21

carpenters
   9:24

case
   9:14,20
   12:13,15
   14:22
   15:11,12
   17:1,16
   20:20
   21:16
   22:7,22
   23:8
   24:10,11
   25:16,17
   26:3 33:1
   35:16

cases
   13:6

chance
   37:20

charge
   33:5

charged
   33:14

charging
   32:20

chat
   37:12

child
   39:20

church



8:10,15,
16,17
11:21
22:6 31:8

circumstances
16:24

civil
7:16
9:14,15
14:22
15:19
16:9,25
17:16
19:15
24:19
31:18

claims
8:8

clear
28:11

client
24:15
25:7 27:9
39:2

clients
13:10
18:3

committed
12:25

completely
23:21

comply
15:7

comprehend
23:25

concern
13:20

concerned
12:22

concerns

19:13
23:18

conclude
10:24

concluded
38:22
39:21,23,
25

concludes
35:19

confer
35:4

conference
31:3

confirm
14:13,19
33:7

confirming
21:13

contacting
13:16

continue
20:6
21:18
22:15,19
39:6

continued
22:11,12

conversation
18:25
19:8

conversations
19:8,22

Copies
12:5

correct
22:23
37:1

corrections
11:8,10

cost
25:25

counsel
7:19,21
18:11
20:21
22:8
23:1,5,9,
14,16
24:17,19
26:1,4,
11,20,25
27:19
28:3,17
29:4
30:22
31:10,22

court
10:8,9
11:3
18:16
19:11,17
22:14
23:19
28:5
31:21
33:18
34:18
35:5,6,7
36:4,18
40:2

courthouse
24:25

created
33:11

creating
33:20

criminal
9:14 13:4
14:13,20

criminally

33:6

cut
9:22,25

———

D

———

Danielle
8:21,24
32:21

date
36:19

David
12:4

day
40:10

Dean
7:22
19:1,23
26:16
33:16

death
8:6 13:6

decide
39:11
40:2

deck
9:22,25

deems
29:5

defend
25:4

defendant
9:17,18
11:18,20
22:7,22
24:10

defense
13:5

deny
14:13,20

32:19
33:7,12
34:5

denying
21:14

depending
29:12

depo
37:3

deponent
15:15,19
20:3

depose
16:23

deposed
10:5

deposition
7:14,24
8:12 9:2,
8 10:4,7
11:6,10
12:17,23
13:22
14:5,7,
21,24
15:5
16:8,13,
22 17:10
18:1,7,15
19:6,9,
11,19
20:6,19,
22 21:18
24:23
26:19,22,
24 28:13,
23 31:9,
14,23
32:5,6
34:8,13
36:22
37:11,16,
19,20,23
38:19,22,



23 39:1,
7,21,23

depositions
18:17,18
19:18
20:1 22:3
36:2

deserves
15:9

determine
20:13

determined
19:24

Devin
8:9,17,
19,20
19:15

Devin's
8:22

directed
39:18

discourse
22:2

discover
8:2

discovery
14:21

discussed
37:15

discussion
10:2

District
7:17 12:3

documents
18:20
26:2,19
31:6
37:18,22

downloaded
38:12

E

Eastern
38:20

easy
16:16

effort
13:17
20:12
21:7

efforts
13:24
15:7 21:2

Electronic
40:8

emailed
12:5

employees
35:16

end
11:6

envelope
12:7

Esquire
37:13

essentially
33:8

event
12:24

Excuse
14:18

exhibits
37:12

existed
12:14

existence
14:13,20

expected

10:16

explain
25:14

extent
9:1 11:9
18:9
19:21,25
36:18,23
37:25

F

facts
8:2 10:20
16:23
25:22

family
32:22

fathom
24:20

fault
39:7,8,
13,14

faults
39:11

federal
7:15
22:14
23:22
24:11
25:17

fees
33:18

final
38:16

fine
39:20

fingers
9:22,25

finish

14:17,18
34:7

five-minute
27:5 28:6

follow
23:3

forced
33:22

fortunate
30:14

forward
12:23
20:2,23
36:16

frankly
24:4

front
24:24

fruitful
32:5

full
7:10 8:13

fully
19:14

futile
36:17

G

gathering
25:22

Gerald
7:22
20:10
35:13
38:15

Gerald's
16:6

gesture
11:4

gist
9:20

give
9:5 13:3,
18 15:2,
23

giving
10:25
16:1,4

good
7:7 37:6

good-faith
13:21

government
11:25
12:1,10,
13,15,17
13:7,16
17:18
20:15,16
21:6
23:23
24:3
25:13
32:18
33:4,6,
10,19
35:14,15
37:17
38:21
39:1,6,8

government'
s
13:21
32:22
34:4

grand
13:9

grant
33:13
35:17

granted
19:17,18



MICHAEL SHAWN KELLEY
HOLCOMBE vs UNITED STATES of AMERICA

June 23, 2020
Index: great..Joseph

great
 24:1

guys
 9:21,24
 16:11
 17:20

———————

 H

half
 13:8

hall
 21:7

Handler
 7:8 13:23
 14:8,12,
 17 15:1,
 10 16:1,
 5,21
 17:5,9
 18:7
 21:5,23
 22:18
 23:16,24
 24:8,22
 25:1,8,14
 27:7,14
 28:5,19,
 24 29:8,
 12,16,22
 30:1,9,
 18,22
 31:4,12
 32:4
 33:24
 34:6,15,
 19,24
 35:3,11,
 14,22,24
 36:1,7,11
 37:5,17,
 22 38:14,
 25 39:15,
 19 40:1

hands
 11:5
 13:14

happen
 17:22

happening
 23:22

harass
 18:2

harassing
 24:5

harassment
 24:9

head
 11:4

hear
 20:12
 34:15

heard
 7:25

hearing
 18:16

history
 32:22

homicide
 12:24

honest
 32:5

hours
 27:24

Houston
 38:20

husband
 32:1

———————

 I

idea
 36:15

identified
 19:15

imagination
 24:1

immunity
 13:17,24
 33:14
 35:17

impair
 9:4

impanelling
 13:9

implicate
 39:4

inappropria
te
 20:20

inappropria
tely
 31:15

inclination
 21:1

including
 18:23
 37:13

incorrect
 22:19

indict
 16:12

ineptitude
 32:11

inference
 33:9

information
 23:18
 25:4,19
 33:3

injury
 8:6

insisting
 19:21

instruct
 15:4,18
 17:11
 28:21
 29:5

instruction
s
 11:13

instructs
 10:14

intended
 18:8
 37:19

intention
 17:1

intentions
 13:21

intimidate
 18:2

introduce
 14:2

introduced
 14:5

introducing
 14:6

investigati
on
 14:14,20
 21:14
 32:20
 33:13

inviting
 31:2

invoke
 16:18
 17:19
 22:13

involved

12:13
 35:16

involving
 11:20
 22:6

irrelevant
 23:21
 24:12

issue
 16:6
 18:10,23
 19:12

issued
 14:22

issues
 18:22

———————

 J

Jackson
 7:22 12:6
 14:2 16:5
 17:3,6,25
 19:1,4,23
 22:24
 23:20
 24:18
 25:8,10
 26:10,16
 27:9,12
 28:19,24
 29:11,14
 31:4 32:4
 33:15,16,
 24 35:23
 36:5,12
 37:14
 40:3,4,5,
 12

Jason
 22:11

Joseph
 32:15



37:8

**judge**
10:8
18:16
22:17
38:1,10

**jump**
18:4
20:11

**jury**
13:9

──────────

**K**
──────────

**K-E-L-L-E-Y**
7:12

**Kelley**
7:7,11,
12,14
8:9,12,
17,19,21,
22 10:3
11:24
12:19,20
13:2
15:12
16:12,23
18:15
19:10,16
20:14
22:2,20
24:19
25:23
26:3,18
27:15,16,
21 28:8,
10,16
29:18
31:6,15,
23 32:2,
7,20,21
34:22
35:8,18,

25 36:16,
22,25
37:3,13
38:18
39:2

**Kelley's**
37:14

**Kelleys**
16:17
32:24
33:2,5,
13,21

**killed**
12:25

**knowledge**
10:17

──────────

**L**
──────────

**lawsuit**
8:5 15:20
16:9
23:13,19,
22 24:2
25:5

**lawyers**
13:5

**lead**
18:10

**leave**
31:19

**letter**
12:3,7,
10,16,21
13:3 14:1
15:3,20,
21 16:7,
11 17:21
18:8
19:12,22,
25 30:4
32:7,12

33:20

**letting**
17:21

**listed**
12:21

**Listen**
28:24

**litigate**
19:2

**litigation**
11:20
16:25
19:15
22:6 26:8
31:18

**local**
7:16

**locations**
31:8

**logistics**
19:9

**long**
29:7

**Lookingbill**
22:7,22
23:7
25:16,17,
24 26:3

**lot**
27:22

**loud**
17:7

──────────

**M**
──────────

**M-I-C-H-A-E-L**
7:12

**made**
8:4 13:24

16:21,24
17:1 21:6
25:12
26:14

**mail**
12:5

**make**
11:8,9
13:14
15:7
16:19
17:14,23
20:13
31:12
32:16

**makes**
23:24
36:13

**making**
13:17
16:17
32:19

**manner**
20:20
31:25

**mass**
8:8 12:24

**material**
10:19
34:21

**matter**
19:2
34:11

**matters**
8:5

**medications**
9:3,4

**meet**
35:4

**members**
32:23

**mention**
8:20

**mentioned**
11:17

**met**
35:4

**Michael**
7:11,14
18:15
19:10
32:1 34:9
37:14

**Michelle**
8:23,25

**minutes**
27:6
29:25
31:1

**money**
23:12
25:15,23

**monies**
24:9

**month**
17:20

**morning**
7:7

**mother**
8:24

**motion**
18:21
19:3,4
38:4,9

**motives**
16:8

**move**
9:2 26:6

**murder**
13:6



MICHAEL SHAWN KELLEY                                          June 23, 2020
HOLCOMBE vs UNITED STATES of AMERICA              Index: name-calling..proceed

───────────
        **N**
───────────

name-
calling
   39:16

names
   8:13  9:2

necessarily
   9:9

needed
   12:17

nightclub
   32:23

nod
   11:4

non-
testimony
   36:25

nonentity
   30:5

Nonetheless
   18:8

Note
   19:18

notice
   7:15
   34:12
   38:24

November
   8:11

number
   37:11

───────────
        **O**
───────────

oath
   10:8,15

object
   10:12

17:17,22
22:10,12
23:21
24:4  33:9
37:9,21

objection
   22:24
   26:9,10,
   13,15
   28:14
   38:2

obligated
   19:23

obstruct
   30:23

obstructing
   33:8

obstruction
ist
   25:2,5

obviate
   19:1

officially
   33:12

offset
   24:10
   25:15,18

open
   31:14,19
   36:2

opportunity
   11:8
   18:11
   35:7

order
   11:3
   18:21,22
   19:5,11,
   20  20:2,
   22  33:25

ordered

40:10

outstanding
   19:20
   20:21

───────────
        **P**
───────────

paid
   25:15,23

papers
   31:7

participate
   15:19

party
   19:17

Patrick
   8:9,17,19
   19:16

Paul
   12:4  18:5
   27:3

pay
   23:12

penalty
   10:18
   13:6

pending
   23:18
   36:3

people
   12:21
   13:18

perjury
   10:18

perpetrated
   8:9,16

perpetrator
   12:24

person
   9:10

30:15
31:3

personal
   8:6  37:15

personally
   31:2

pertaining
   26:2

pertains
   8:6  24:9

phone
   12:12
   13:13

place
   12:18
   19:20
   20:2,22

plaintiff
   9:16
   35:21
   40:7,8

plaintiff's
   24:2

plaintiffs
   7:25  8:3
   16:25
   17:15,24
   25:12,21
   26:7
   32:17,18
   33:1
   37:9,21

planning
   28:11

plead
   29:19
   34:10

ploy
   34:4

point
   32:21

pop
   11:25

posing
   15:13
   28:20

position
   32:12
   38:22

possibly
   16:18

potential
   18:23
   19:16

preparation
   26:18,22,
   24

prepared
   11:7

present
   38:18

presently
   9:3  11:19

pretty
   14:10
   16:16

Prior
   18:18
   37:11

private
   29:4

privilege
   31:16
   33:23

problem
   14:16
   38:9

Procedure
   7:16

proceed
   17:10,13



21:23
22:4
29:23

**produce**
18:19

**product**
21:15

**prosecuting**
32:22

**protective**
18:21,22
19:5,20
20:2,22

**provide**
35:7
36:24

**Pulse**
32:23

**purposes**
14:5,6

**pursuant**
7:15

**put**
21:2
32:12,24
39:13,14

**puts**
33:21

---

**Q**

---

**question**
10:21,23,
24 15:8,
22 16:2
17:12
18:1,2
21:2
22:15
26:15
27:8,11,

17 28:1,
13,16,20,
22 29:3,
13,15,17,
18,19,21
33:25
34:8,10
38:6

**question-
by-question**
17:17

**questioning**
22:12
24:22
33:8

**questions**
9:5 10:9,
10,11,12,
16 11:15
13:19,25
15:5,13,
17,18,20,
25 16:7,
18 17:18
20:3,18
21:22
25:3,7
27:23,24
29:2,10
30:24
31:1,5,17
32:8,14
33:2,4
38:21
39:3

**queue**
36:17

**quick**
27:6,8

**quiet**
30:23

---

**R**

---

**raised**
18:10
19:12

**raising**
18:23

**re-depose**
35:8

**read**
11:8
34:19,21

**ready**
28:8

**realize**
18:6

**reason**
13:15
38:25
39:5

**reasonable**
39:3

**reassertion**
19:13

**reassurance**
13:4

**Rebecca**
18:15
19:10
31:24
36:16,19

**Rebecca's**
31:23
34:8

**received**
12:8,18,
19

**recognize**
19:14

**record**
7:9,10,13
10:2,9
11:3
31:13
33:15
35:12,24
38:3,7,12

**reference**
8:19

**references**
8:14

**reflect**
7:13

**refusal**
32:11
33:19

**refused**
39:2

**refusing**
32:19
33:7,11

**regard**
16:23
22:5
23:12
25:17,23
31:6 35:5

**regular**
12:5

**reissue**
36:14,19

**related**
8:5

**releasing**
35:25
36:3

**relevance**
24:2,5

**relevancy**
23:25

24:16

**relevant**
24:21
25:11,18

**relief**
31:20
33:17
35:5,6,18

**remain**
22:9,21
23:2,6,
10,15
26:5,12,
21 27:1,
20 28:4,
18 31:11
36:2

**remaining**
13:1

**remember**
9:13

**remove**
21:16

**repeat**
9:23
34:16

**repeating**
8:13

**rephrase**
10:23

**reply**
33:19

**reporter**
10:9 11:3
28:5
34:18

**represent**
7:8,24

**represented**
7:19



representin
g
    7:18

request
    18:19

requested
    15:3
    34:21

resolve
    33:25

respect
    11:20

respond
    10:13,16,
    24 15:5
    16:6
    18:11
    19:22,25
    30:4 34:9

responded
    15:21
    18:20
    19:3

responding
    16:10
    20:17,18

response
    10:18,19
    11:1 12:9
    13:13,25
    20:10

responses
    10:17
    11:2

responsible
    19:16

return
    12:7

reveal
    19:24
    21:15

review
    26:19
    31:7

reviewed
    31:7

rights
    14:25

Rodriguez
    18:17
    24:25

room
    30:15
    31:3

rude
    30:2,6,
    10,11

rules
    7:16 36:4

ruling
    22:16

run
    16:14

——————————

S

——————————

S-H-A-W-N
    7:12

satisfied
    35:4

schedule
    19:5

scheduled
    20:21
    31:24

scheduling
    19:9

Schreiber
    17:14
    18:6,12
    25:9

26:9,13,
14 32:15,
16 35:20
37:8,9
40:6,11

sea
    24:1

seated
    38:19

seek
    13:6,17,
    24 31:20
    35:6,17

seeking
    17:19
    18:18
    33:17
    35:5

self-
incriminati
on
    20:5
    28:12
    31:17

Send
    40:7

sense
    36:13

set
    12:16,22

setting
    9:9

settled
    23:8

settlement
    26:3

shake
    11:4

Shawn
    7:11,12

Shields
    8:24

shooters
    32:23

shooting
    8:8,16,18
    11:21
    22:6

shorthand
    8:14

show
    38:1

shut
    18:1

sic
    39:3

side
    16:14
    17:16

side-shot
    17:24

Sidebar
    25:9

silence
    21:3

silent
    22:9,21
    23:2,6,
    11,15
    26:5,12,
    21 27:1,
    20 28:4,
    18 31:11

similar
    24:11
    36:24

simple
    15:21

simultaneou
s

21:9,20
24:7
29:20
30:8,17,
21 34:2

single
    13:12
    22:15
    27:11,17
    28:1,13,
    22

sinister
    13:15

sir
    18:9

sit
    30:23

situation
    32:24
    33:11,20,
    21

solitary
    13:12

sort
    17:22

sought
    18:14
    33:10

speaking
    21:9,20
    24:7
    29:20
    30:8,17,
    21 34:2

specificall
y
    39:17

spectacle
    17:22

spell
    7:10



MICHAEL SHAWN KELLEY
HOLCOMBE vs UNITED STATES of AMERICA

June 23, 2020
Index: spent..Webster

spent
    24:9

Springs
    8:10,15

stands
    33:25

started
    11:12

state
    7:9 23:19
    24:10,16
    25:16
    32:18
    33:17

statement
    12:19
    16:22
    17:2,15
    31:13
    32:16,17
    34:7
    35:12,19

statements
    12:20

States
    7:8,19
    8:1,4,7
    12:10
    20:14,16
    21:6
    23:23
    24:3,6
    25:4,12,
    20

status
    13:9

STENOGRAPHE
R
    34:22
    40:4,9

Stern
    12:4,11,

12 13:23
18:4,5,13
20:9,17,
25 21:10,
13,21
27:3,4
35:15
36:15,23
39:24

Steven
    7:8 27:3
    38:8

stop
    10:22
    24:23
    31:13

stopped
    31:1
    38:21
    39:1

street
    16:14

strongly
    25:6

subject
    10:18

subpoena
    14:23
    18:19,20
    35:25
    36:9,10,
    12,14,19

subpoenaed
    19:10

subpoenas
    36:2

subsequent
    19:7

substantive
    11:9

suggest

25:6

suicide
    12:25

Sunday
    8:11

suspended
    37:21
    39:24

Sutherland
    8:10,15

sworn
    10:15
    38:19

─────────

T

─────────

taking
    9:3 18:7
    20:19

talk
    21:7
    26:23

talking
    36:5

targets
    13:1,10,
    11 20:14,
    15

telling
    30:9

terrible
    16:20

Tessa
    8:22,23

testify
    33:14

testifying
    10:8

Texas
    7:17 8:11

12:3

thing
    38:16

third-party
    14:21

threatening
    30:18,19

time
    10:5,21
    11:25
    19:3,12
    25:21
    35:9
    38:20,21

today
    7:19 8:2
    31:9,24
    36:6

transcript
    11:7 38:5
    40:9

treat
    30:13

treated
    30:5,13

truthful
    10:17,19
    13:18

─────────

U

─────────

U.S.
    33:19

understand
    9:5 10:22
    11:12
    15:1 16:9
    27:21
    33:3
    38:14

understood
    10:25
    37:5

United
    7:8,18,25
    8:4,7
    12:10
    20:14,15
    21:6,8
    23:23
    24:3,6
    25:4,12,
    20

uploaded
    37:12,14,
    18,22

─────────

V

─────────

vague
    26:9,10,
    13,15

valid
    25:2

verbal
    11:2

volunteered
    20:11

─────────

W

─────────

walk
    21:7

wanted
    32:5

weaponizing
    33:5

Webster
    22:10,11,
    18



**Western**          9:10
    7:17 12:3      37:12

**whatsoever**
    24:5

**wife**
    8:22,23

**withdraw**
    19:4

**wonderful**
    20:25

**words**
    17:7

**work**
    14:11
    16:15
    21:15
    34:3

**world**
    25:10

**written**
    10:2

**wrong**
    21:12

**wrongful**
    8:6

_____

        **Y**
_____

**y'all's**
    32:10

**year**
    12:2

**years**
    13:8

**yes-or-no**
    15:24

_____

        **Z**
_____

**Zoom**



# Exhibit B

# GERALD E. BOURQUE
### ATTORNEY AT LAW

24 WATERWAY AVE., SUITE 660, THE WOODLANDS, TEXAS 77380
Office (713) 862-7766
Facsimile (832) 813-0321
gerald@geraldebourque.com
www.geraldebourque.com

May 14, 2020

Paul David Stern
U.S. Attorney's Office (W.D. Tex)
601 W. Loop 410, Suite 600
San Antonio, Texas 78216

RE: Cause No. 5:18-cv-00555-XR; Holcombe, et al. v. United States of America;
In the United States District Court for the Western District of Texas – San
Antonio Division

Dear Mr. Stern:

This office is recently hired to personally represent Michael Kelley and Rebecca Kelley during the depositions to be scheduled in the above styled and numbered civil cause. Please forward for review a copy each and every statement given by Michael Kelley and Rebecca Kelley to the Federal Bureau of Investigation, A.T.F., Texas Rangers, United States Air Force, U. S. O.I.G., or any other law enforcement agency in relation to the subject matter which makes the basis of the above referenced litigation.

The incident which makes the basis of this civil litigation was a mass shooting. Had Devin Kelley survived, the United States would have indicted him for intentionally causing the death of several people and the D.O.J. would likely have authorized the pursuit of the death penalty. Any acquaintances of the perpetrator would be investigated as targets for indictment, as well. Therefore, please provide a letter stating that neither Michael Kelley nor Rebecca Kelley are targets of a criminal investigation at this time and that answers they give in response to questions during the deposition will not lead to either of them becoming targets of a criminal investigation with the United States Department of Justice. In other words, provide a letter stating they are not now targets of a criminal investigation and they will never be targets of a criminal investigation for anything related to the Sutherland Springs incident.

Sincerely,

Gerald E. Bourque

Cc: Jamal Alsaffar
Whitehurst, Harkness, Brees, Cheng,
Alsaffar, Higginbotham & Jacob PLLC
7500 Rialto Blvd., Bldg 2, Suite 250
Austin, Texas 78735

J. Dean Jackson
Curney, Farmer, House, Osuna &
Jackson, P.C.
411 Heimer Road
San Antonio, Texas 78232

# Exhibit C



**DANIEL D. HOROWITZ, III** *†
THE LAW OFFICE OF DANIEL D.
HOROWITZ, III, P.C.

*Board Certified in Personal Injury
Trial Law By the Texas Board of Legal
Specialization
† Also Licensed in New Mexico

2100 TRAVIS STREET
HOUSTON, TEXAS 77002
TOLL FREE (844) 824-3543
LOCAL (832) 460-5181
FAX (832) 266-1478
Daniel@DDHLawyers.com

June 23, 2020

Mr. Paul David Stern                                      *Via E-Mail*
U.S. Attorney's Office (W.D. Tex.)
601 W. Loop 410, Suite 600
San Antonio, Texas 78216

Re:    Cause No. 5:18-cv-00555-XR, *Holcombe, et.al. v. United State of
       America;* In the United States District Court for the Western District of
       Texas-San Antonio Division

Dear Mr. Stern:

As you are aware, I've been retained to represent Ms. Danielle Smith in the above referenced case. Her deposition is currently scheduled for Tuesday June 30th, 2020. Please forward a copy of each and every statement given by Danielle to the F.B.I., A.T.F., Texas Rangers, United States Air Force, U.S.O.I.G., the U.S. Attorney's Office, or any other law enforcement agency in relation to the subject matter which makes the basis of this litigation.

The incident which makes the basis of this civil litigation was a mass shooting. Had Devin Kelley survived, the United States would have indicted him for intentionally causing the death of several people. The D.O.J. would have likely authorized the pursuit of the death penalty. Any acquaintances of the perpetrator would likely be investigated as targets for indictment as well.

Therefore, please provide a letter stating Danielle Smith (f/k/a Danielle Kelley) is not a target of a criminal investigation at this time, and the answers she gives in response to the questions during the deposition will not lead to her becoming a target of criminal investigation with the United States Department of Justice or any state law enforcement agency. In other words, provide written confirmation Danielle is not a target of a criminal investigation and she will never be a target of a criminal investigation for anything related to the Sutherland Springs incident. Should you have any questions, please do not hesitate to contact my office.

Sincerely,

Daniel D. Horowitz