IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| DONNA WHITE, INDIVIDUALLY AND AS REPRESENTATIVE OF THE ESTATE OF ROY WHITE;<br>*Plaintiff*,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br>*Defendant*. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | SA-19-CV-01291-XR<br>*(Consolidated with* 5:18-CV-00555-XR) |

### ORDER

On this date, the Court considered the Government's motion to dismiss Plaintiff Donna White's second amended complaint (ECF No. 222), Plaintiff Donna White's response (ECF No. 228), and the Government's reply (ECF No. 230). After careful consideration, the Court **GRANTS** the motion.

### BACKGROUND

This case is one of many consolidated before this Court arising out of the mass shooting at the First Baptist Church in Sutherland Springs, Texas on November 5, 2017. The shooter, Devin Patrick Kelley ("Kelley"), entered the church and opened fire, killing 26 people and wounding 22 more. ECF No. 217, Pl.'s 2d Am. Compl. ¶ 3.44. After fleeing the scene, Kelley later died from a self-inflicted gunshot wound. *Id.* Kelly committed the shooting using three of the four firearms he purchased from retail establishments between December 2014 and October 2017. *Id.* ¶¶ 3.39–3.42. For all four purchases, the retailer required Kelley to complete the ATF Form 4473 and ran the required background check through the National Instant Criminal Background Check System ("NICS") administered by the FBI. *Id.* In all four instances, Kelley answered "no" to the ATF

1

Form 4473 inquiry asking whether he had ever been convicted of a crime with a potential sentence of more than one year of imprisonment. *Id.* ¶ 3.43. In all four instances, the response from the NICS check was that the retailer could proceed with the sale. *Id.* ¶¶ 3.39–3.42.

But Kelley had in fact been convicted of a crime that disqualified him from purchasing firearms. While serving in the U.S. Air Force ("USAF"), Kelley pleaded guilty to a crime of domestic violence for assaulting his wife and stepson during General Court Martial proceedings in November 2012. *Id.* ¶ 3.31. Despite U.S. Department of Defense ("DoD") and USAF instructions and policies that required USAF to collect and submit Kelley's fingerprints and final disposition report of conviction to the FBI, USAF failed to do so. ECF No. 149 (stipulation of the parties). Consequently, Kelley's fingerprints and conviction were not in the FBI's NICS at any time before the shooting on November 5, 2017. *Id.*

These cases are brought by survivors of the shooting and relatives of those killed seeking recovery against the United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671–2680. In this specific case, Plaintiff Donna White ("Plaintiff") seeks damages as representative of the estate of her late husband, Roy White.[1] 2d Am. Compl. ¶¶ 1.2–1.3. Roy White's mother, Lula White, was one of the victims in First Baptist Church who was killed by Kelley. *Id.* ¶ 5.4. Roy and Donna White were at home when the shooting occurred. *Id.* ¶ 5.1. Roy White received a call from his son, who told him to "turn on the news." *Id.* When he did, Roy White saw the breaking news that there had been a shooting at his mother's church. *Id.* ¶ 5.2. While watching the reports, Roy White attempted unsuccessfully to call his mother. *Id.* ¶ 5.4. He then called his sister, Michelle Shields, who had been in the church that morning; his sister confirmed that Lula White was dead. *Id.* Roy White continued to watch the live news coverage

---

[1] Although Plaintiff filed this case "individually and as representative of the estate of Roy White," her live pleading and briefing makes clear she only seeks damages to which Roy White was entitled during his lifetime.

of the scene, and he was later informed that his mother's body was found in the church shielding the body of the pastor's daughter, who had also died. *Id.* ¶ 5.5. Roy White continued watching the news coverage for another half hour to an hour, "in stunned disbelief until he turned off his TV." *Id.* ¶ 5.6. He "then broke down in anguish on his living room floor." *Id.*

As the surviving child of Lula White, Roy White brought an administrative claim against USAF for all available damages to which he was entitled in law and in equity. *Id.* ¶ 8.3. Roy White later passed away before the filing of this suit. *Id.* ¶ 8.4. Plaintiff, as Roy White's surviving spouse, individually and as representative of his estate, seeks all available damages for the claims possessed by Roy White's estate. *Id.* ¶ 8.6. Specifically, Plaintiff seeks to recover damages including but not limited to: (a) mental anguish; (b) loss of companionship and society; (c) loss of care, maintenance, support, services, advice, counsel, and reasonable contributions of pecuniary value; (d) loss of inheritance; (e) out of pocket expenses; (f) funeral and burial expenses; and (g) other pecuniary damages. *Id.* ¶ 8.7. Plaintiff brings claims against the United States ("Government") for: negligence, negligent failure to train and supervise; negligent undertaking; negligence *per se*; and bystander claims.

The Government previously moved to dismiss Plaintiff's original complaint on the grounds that she is not entitled to bring suit for the claims alleged. ECF No. 182. After conducting a hearing on the motion on April 14, 2020, the Court granted the Government's motion and gave Plaintiff leave to file a second amended complaint within 21 days. *See* Text Order dated April 14, 2020. Plaintiff filed her Second Amended Complaint on May 5, 2020. ECF No. 217. The Government now moves to dismiss Plaintiff's Second Amended Complaint.

## DISCUSSION

### I.    Motion to Dismiss Standard

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for the dismissal of a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To survive a motion to dismiss, a plaintiff's complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the complaint does not need to contain detailed factual allegations, it must contain enough factual allegations to "raise a right to relief above a speculative level." *Twombly*, 550 U.S. at 555. The plaintiff has an obligation to present more than labels, conclusions, and formulaic recitations of the elements to avoid dismissal. *Id.* In considering a Rule 12(b)(6) motion, a court must accept the factual allegations in the complaint and take them in the light most favorable to the non-moving party. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, the court does not accept conclusory allegations or unwarranted deductions of fact as true. *Tuchman v. DSC Commc'ns. Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994).

### II.   Application

The Government moves to dismiss Plaintiff's claims on two grounds: (1) under Texas law, Roy White has no valid bystander claim, and (2) Plaintiff White cannot recover wrongful death damages on behalf of Roy White because such damages do not survive the death of the beneficiary. Plaintiff responds that Roy White's bystander claim is viable under Texas law, and additionally that she has plead a plausible claim for relief for the Government's knowing statutory violations

which the Government did not move to dismiss. The Court finds it useful to address these issues in reverse order.

      a. <u>Wrongful Death Damages</u>

The Government argues that "Plaintiff continues to seek wrongful death damages even though Texas law is perfectly clear that any such claim passes with the death of the decedent." ECF No. 222, Gov.'s Mot. to Dismiss at 8. During the hearing conducted on April 14, 2020, on the Government's first motion to dismiss Plaintiff White's claims, both the Court and Plaintiff acknowledged that any claim Roy White might have had for damages stemming from the wrongful death of Lula White do not survive Roy White's death under Texas law. *See Carter v. Van Meter*, 495 S.W.2d 583, 586 (Tex.Civ.App.—Dallas 1973, writ dism'd) ("[T]he courts of this state have consistently held that since the right of action conferred by the Wrongful Death statutes is personal and for the sole benefit of the named beneficiary that such cause of action ceases to exist upon the death of such beneficiary."). Plaintiff explicitly disclaimed bringing any wrongful death claim during that hearing, and now concedes in briefing that she cannot pursue such a claim on behalf of Roy White. ECF No. 228, Pl.'s Resp. at 5.

Plaintiff's second amended complaint seeks recovery for: mental anguish; loss of companionship and society; loss of care, maintenance, support, services, advice, counsel, and reasonable contributions of pecuniary value; loss of inheritance; out of pocket expenses; funeral and burial expenses; and other pecuniary damages. 2d Am. Compl. ¶ 8.7. The Court finds that Plaintiff has abandoned any claims for damages other than mental anguish suffered by Roy White. All other claims by Plaintiff, including for wrongful death damages, are therefore dismissed.

The Court notes that the application of this well-established rule, which mandates dismissal of what may have otherwise been compensable damages suffered by Roy White for the wrongful

death of his mother, highlights the urgency of this litigation. This Court has, on many occasions, admonished all parties that this case is one in which a just and speedy determination is imperative. Time is of the essence for the family members of those killed, many of whom may be elderly or ill, to resolve their claims based on the wrongful deaths of their loved ones—claims that, should this litigation outlast the survivors, will be extinguished. For this reason, the Court will continue to exhibit intolerance for unwarranted delay by any party to this case.

    b. Mental Anguish Damages

As discussed above, Plaintiff acknowledges that her only viable claim is for mental anguish suffered by Roy White for the year and nine months that he was alive following the death of his mother. "Texas does not recognize a general legal duty to avoid negligently inflicting mental anguish." *City of Tyler v. Likes*, 962 S.W.2d 489, 494 (Tex. 1997). There are, though, recognized categories of cases that allow recovery for mental anguish. *Id.* at 495. Plaintiff contends two of those categories apply to Roy White's mental anguish damages: (1) actions by bystanders for a close family member's serious injury or death in cases involving injuries of such a shocking and disturbing nature that mental anguish is a highly foreseeable result; and (2) actions for knowing violations of certain statutes. *Id.*

    i. Bystander Claim

The Government argues that Plaintiff cannot satisfy the elements of a bystander claim on behalf of Roy White. In Texas, there are three elements to determine whether a plaintiff may recover emotional distress damages as a bystander:

    (1) Whether the plaintiff was located near the scene of the accident as contrasted with one who was a distance away from it;
    (2) Whether the shock resulted from a direct emotional impact upon plaintiff from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence; and

> (3) Whether the plaintiff and the victim were closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship.

*Boyles v. Kerr*, 855 S.W.2d 593, 597 (Tex. 1993); *Freeman v. City of Pasadena*, 744 S.W.2d 923 (Tex. 1988).  The Government argues that Plaintiff cannot satisfy either of the first two elements because Roy White was not present at or near the scene of the shooting, but rather was in his living room at his own home, and because Roy White's observation of the television news covering the outside of the church does not constitute "sensory and contemporaneous observance" of the shooting.  Gov.'s Mot. at 5–8.

Plaintiff responds that Roy White qualifies as a bystander under Texas law, emphasizing the "flexible" nature of the bystander elements.  Pl.'s Resp. at 6.  Plaintiff is correct that Texas courts have recognized in bystander cases the "elements are flexible and should be applied on a case-by-case basis," and that bystander claims have evolved over time.  *See Thornton v. Home Depot U.S.A., Inc.*, No. A-04-CA-1039 AWA, 2006 WL 2022920, at *2 (W.D. Tex. July 17, 2006). For instance, whereas Texas courts used to require physical manifestation of mental anguish suffered by a bystander, courts later abandoned that requirement.  *See Moore v. Lillebo*, 722 S.W.2d 683 (Tex. 1986).  So, too, Plaintiffs argue, the "sensory and contemporaneous observance" and proximity requirements have evolved.  Pl.'s Resp. at 6 (citing *Lehmann v. Wieghat*, 917 S.W.2d 379, 383 (Tex.App.—Houston [14th Dist.] 1996, writ denied)).  Plaintiffs point to several cases as examples of this evolution.

In *Lehmann*, a father brought a bystander claim for emotional distress suffered as a result of his son being negligently shot by a friend in a hunting accident.  *Lehmann*, 917 S.W.2d at 381. The plaintiff had gone out to hunt with his son, who at one point drove off in a pick-up truck with another boy while the plaintiff stayed behind at the camp.  *Id.*  The two boys split up, and the friend negligently shot the son thinking he was a deer.  *Id.*  The friend found the son on the ground,

7

bleeding but conscious, put him in the bed of his truck, and drove quickly back towards the camp, honking his horn the entire way. *Id.* The accident occurred about a mile to a mile and a half away from the camp, and it took five to ten minutes for the friend to drive back to the fence of the camp. *Id.* There, he met the father, who had heard a gunshot and the honking and had driven down to the gate on the main road where he saw the friend's truck approaching with only one person in it. *Id.* The friend pulled up next to the father, said "I shot Darrin," and both men walked to the bed of the truck where the father saw his son, who appeared to be dead. *Id.* The father performed mouth-to-mouth resuscitation as the friend drove to the hospital. *Id.* The son spent ten days in the hospital and recovered completely. *Id.* The trial court entered a take-nothing judgment against the father after the jury verdict found the father was not "near the scene of the accident" and did not have "a sensory and contemporaneous perception of the occurrence in question." *Id.* The appeals court discussed the "modern view" that "actual observance of the accident is not required if there is otherwise an experiential perception of it, as distinguished from a *learning of it from others after its occurrence*." *Id.* at 383 (emphasis in original). But in the end, the appeals court affirmed the take-nothing judgment, finding that the facts were disputed about both the father's being "near" to the accident scene and whether he had a "sensory and contemporaneous perception" of the accident. *Id.* at 383. Thus, the court reasoned, there was no error in submitting those questions to the jury, and the evidence was legally and factually sufficient to support the jury's verdict against the father's recovery. *Id.* at 384.

In *Thornton*, a nine-year-old plaintiff was allowed to recover as a bystander, where she arrived home from school to see her home burning down with her twin sisters inside. *Thornton v. Home Depot U.S.A., Inc.*, No. A-04-CA-1039 AWA, 2006 WL 2022920, at *5 (W.D. Tex. July 17, 2006). Even though the plaintiff did not witness the cause of the fire—i.e., a lamp tipping

bleeding but conscious, put him in the bed of his truck, and drove quickly back towards the camp, honking his horn the entire way. *Id.* The accident occurred about a mile to a mile and a half away from the camp, and it took five to ten minutes for the friend to drive back to the fence of the camp. *Id.* There, he met the father, who had heard a gunshot and the honking and had driven down to the gate on the main road where he saw the friend's truck approaching with only one person in it. *Id.* The friend pulled up next to the father, said "I shot Darrin," and both men walked to the bed of the truck where the father saw his son, who appeared to be dead. *Id.* The father performed mouth-to-mouth resuscitation as the friend drove to the hospital. *Id.* The son spent ten days in the hospital and recovered completely. *Id.* The trial court entered a take-nothing judgment against the father after the jury verdict found the father was not "near the scene of the accident" and did not have "a sensory and contemporaneous perception of the occurrence in question." *Id.* The appeals court discussed the "modern view" that "actual observance of the accident is not required if there is otherwise an experiential perception of it, as distinguished from a *learning of it from others after its occurrence*." *Id.* at 383 (emphasis in original). But in the end, the appeals court affirmed the take-nothing judgment, finding that the facts were disputed about both the father's being "near" to the accident scene and whether he had a "sensory and contemporaneous perception" of the accident. *Id.* at 383. Thus, the court reasoned, there was no error in submitting those questions to the jury, and the evidence was legally and factually sufficient to support the jury's verdict against the father's recovery. *Id.* at 384.

In *Thornton*, a nine-year-old plaintiff was allowed to recover as a bystander, where she arrived home from school to see her home burning down with her twin sisters inside. *Thornton v. Home Depot U.S.A., Inc.*, No. A-04-CA-1039 AWA, 2006 WL 2022920, at *5 (W.D. Tex. July 17, 2006). Even though the plaintiff did not witness the cause of the fire—i.e., a lamp tipping

over—she "was at the scene of the injury-producing event…since she witnessed the fire consuming her home and she was aware that her sisters were inside the house." *Id.* Therefore, the court found she "had a sensory and contemporaneous observance of the accident" and was entitled to pursue her bystander claim. *Id.*

In *Hitchcock*, this Court allowed a husband's bystander claim based on his wife's slip-and-fall injury to survive summary judgment. *Hitchcock v. Steak N Shake, Inc.*, No. CV SA-16-CA-922-XR, 2017 WL 5077901, at *12 (W.D. Tex. Nov. 2, 2017). Even though the husband did not see the fall occur, he "was present at the restaurant and testified that he heard 'the commotion,' and that he immediately ran to [his wife] and witnessed her in pain." *Id.* This Court reasoned that "contemporaneous sensory perception is not limited to eyewitness perception of the injury" and that the evidence was sufficient to deny summary judgment. *Id.*

In *Cole v. Hunter*, the district court denied the defendant's motion to dismiss based on the allegation that the plaintiffs had a contemporaneous perception of the shooting of their son by virtue of having heard it occur from their front yard. *Cole v. Hunter*, No. 3:13-CV-02719-O, 2014 WL 266501, at *20 (N.D. Tex. Jan. 24, 2014). The parents alleged that two city police officers used excessive force and shot their son. *Id.* The parents both heard gunshots from their front yard and sometime thereafter saw their wounded son. *Id.* The court concluded that the fact that the parents "did not witness the shooting of their son" did not, on its own, defeat their bystander claim under Texas law. *Id.*

According to Plaintiff, "[u]nder the current interpretation of the bystander elements now accepted in Texas, Roy White experienced a contemporaneous, sensory perception of the event" of his mother's death at Sutherland Springs. ECF No. 228 at 7. The Court disagrees. There is no doubt that what constitutes "contemporaneous and sensory observance" of an accident will be

9

affected by the development of technology. The Court can imagine a scenario in which a bystander can satisfy this element on such facts: a family member who is on a live video chat call with a loved one during a mass shooting, for instance, could plead contemporaneous and sensory observance of an accident that led to their loved one's injury or death. That is not the case here for two reasons.

First, Plaintiff does not plead such facts that support contemporaneous and sensory observance by Roy White, even through the use of technology. Plaintiff does not plead that Roy White witnessed the shooting through the television news, but only that he witnessed the aftermath. *See* 2d Am. Compl. ¶¶ 5.2,[2] 5.4,[3] 5.5.[4] Texas courts have consistently held a plaintiff who witnesses a scene immediately after an accident is not entitled to recover as a bystander. Such a plaintiff does not suffer emotional impact from a "sensory and contemporaneous observance of the accident," but rather "is in the same position as any other close relative who sees and experiences the immediate aftermath of a serious injury to a loved one—recovery is not available." *Rodriguez v. Riddell Sports, Inc.*, 242 F.3d 567, 578 (5th Cir. 2001) (citing *United Servs. Auto. Ass'n v. Keith*, 970 S.W.2d 540, 542 (Tex. 1998)). And, Plaintiff specifically admits that he learned of his mother's death from his sister, not from his own perception of the accident. Texas law is clear that a plaintiff who learns of the accident from others fails to satisfy the contemporaneous and sensory observance element of bystander recovery. *See Gen. Motors Corp.*

---

[2] "Roy White turned on a live broadcast of Fox News with aerial and ground coverage of his mother's church surrounded by police vehicles and rescue vehicles along with active chyron graphics stating 'Breaking News' and that a mass shooting was occurring at the First Baptist Church in Sutherland Springs, Texas. Roy perceived, in active time, contemporaneous details surrounding his mother's shooting."

[3] "While watching the breaking news reports, Roy White…was able to reach his sister, who was at the scene, and confirmed to Roy that his mother was dead as Roy watched the details of the church shooting unfold on the screen before him."

[4] "Later, after his contemporaneous perceptions of the incident through live news coverage and conversations with those at the scene, Roy was informed that Lula White's body was found in the church shielding the body of the daughter of the First Baptist Church's pastor."

*v. Grizzle*, 642 S.W.2d 837, 844 (Tex.App.—Waco 1982, writ dism'd w.o.j.) ("Courts have denied recovery if the plaintiff is told of the accident at a later time instead of witnessing the event.").

Second, even if Plaintiff had pled sufficient facts to support Roy White's contemporaneous and sensory observance of the accident, she cannot satisfy the proximity element. Roy White was admittedly nowhere "near" the scene of Lula White's death in Sutherland Springs. He was at home in his living room. "Texas law still requires the bystander's presence when the injury occurred." *Andrade v. Chojnacki*, 65 F. Supp. 2d 431, 465 (W.D. Tex. 1999) (citing *Keith*, 970 S.W.2d at 542). In all of the cases cited above by Plaintiff, bystander recovery was allowed for plaintiffs who were at or near the scene of an accident, even if they did not actually witness the cause of injury or death. *See Thornton*, 2006 WL 2022920, at *5 (allowing bystander recovery by nine-year-old girl who arrived on the scene of her house on fire with her sisters inside); *Hitchcock*, 2017 WL 5077901, at *12 (allowing bystander recovery by husband who was in restaurant with his wife when she slipped and fell); *Cole*, 2014 WL 266501, at *20 (allowing bystander claim by parents who heard their son being shot from their front yard). The same cannot be said for Roy White, who was sitting in his living room at home and nowhere near the accident.

In *Andrade*, family members of the Branch Davidian compound were held not "present" for purposes of the proximity element because they only witnessed the events of the compound raid on television. *Id.* Plaintiff argues that case is distinguishable from Roy White's claim because the family members in *Andrade* "did not discover until some time afterward which individuals had died and/or been injured" in the raid. Pl.'s Resp. at 8–9; *Andrade*, 65 F. Supp. 2d at 465. But Plaintiff confuses the two elements of a bystander claim discussed in *Andrade*: the family members' delay in learning of the injuries or deaths goes to the "contemporaneous perception"

element; the fact that they "were not present at the time of the fire" goes to the presence element. *See Andrade*, 65 F. Supp. 2d at 465.

Plaintiff points to no case law supporting her novel theory, that Roy White was "much closer to being present than the plaintiffs in *Andrade* were" due to the proliferation of both technology and mass shootings. The Court cannot simply abrogate the well-established requirement that a bystander must be "located at or near the scene of the accident as contrasted with one who was a distance away from it" in order to recover. *Boyles v. Kerr*, 855 S.W.2d 593, 597 (Tex. 1993). Plaintiff has failed to plead enough facts to state a bystander claim "that is plausible on its face." *Twombly*, 550 U.S. at 570. Therefore, her claim for mental anguish suffered by Roy White as a bystander is dismissed.

## ii. Knowing Statutory Violations

Plaintiff also argues in her response that, in addition to Roy White's bystander claim, she has adequately pled a cause of action against the Government for mental anguish damages arising from knowing violations of statute. Pl.'s Resp. at 3–4 (citing *Likes*, 962 S.W.2d at 495). The Government replies that this "novel theory of liability likewise fails as a matter of law" for two reasons: the FTCA does not permit recovery for violation of federal statute, and Texas law only allows recovery for violations of some statutes as a separate cause of action but not as part of a negligence claim. ECF No. 230, Gov.'s Reply at 2.

Plaintiff confuses damages recoverable for a cause of action. Texas law recognizes that mental anguish damages are recoverable for "knowing violations of certain statutes such as the Deceptive Trade Practices Act." *Likes*, 962 S.W.2d at 495 (citing *Luna v. North Star Dodge Sales, Inc.*, 667 S.W.2d 115, 117 (Tex. 1984)). However, this is not an independent cause of action in and of itself—rather, "[m]ental anguish damages are recoverable when certain other legal duties

are breached." *SCI Texas Funeral Servs., Inc. v. Nelson*, 540 S.W.3d 539, 543 (Tex. 2018). Here, the Court agrees with the Government that Plaintiff has failed to state a claim for a "knowing violation of statute." The cases Plaintiff relies upon to support her "knowing statutory violation" claim involve cases brought under Texas statute, not the common law. *See Luna*, 667 S.W.2d at 118 (allowing mental anguish recovery for violations of DTPA); *Latham v. Castillo*, 972 S.W.2d 65, 69 (Tex. 1998) (same). But Plaintiff does not purport to bring a cause of action under any Texas statute that creates such a private right of action; she brings only claims sounding in common-law negligence. 2d Am. Compl. ¶¶ 6.1–6.31. Similarly, Plaintiff does not bring a claim for violation of any federal statute, and the Court agrees with the Government that no jurisdiction exists under the Federal Tort Claims Act for such a claim. *See Johnson v. Sawyer*, 47 F.3d 716, 727 (5th Cir. 1995) (holding claims under the FTCA require a breach of state law duty). Because Plaintiff has failed to state a plausible claim for mental anguish damages arising from "knowing violation of a statute," this claim is also dismissed.

## CONCLUSION

For the reasons stated herein, the Court **GRANTS** the Government's motion (ECF No. 222). Plaintiff Donna White's second amended complaint is **DISMISSED** with prejudice.

It is so **ORDERED**.

**SIGNED** this 7th day of July, 2020.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE