# EXHIBIT "A"

**STATE OF TEXAS**     §
                       §
**COUNTY OF MONTGOMERY**     §
                       §

## <u>AFFIDAVIT</u>

After being duly sworn, counsel deposed and said:

"My name is Gerald E. Bourque and am licensed to practice law in Texas under bar number 02716500. In 1989, I became Board Certified in Criminal Law by the Texas Board of Legal Specialization. That certification is still current. I am also a death penalty qualified criminal defense lawyer in the 2nd and 11th Judicial Administrative Districts. I have been to trial in 15 death penalty cases: 13 state cases and 2 federal cases. I have lost count of the number of Capital Murders I have been assigned.

On May 14, 2020, I sent a letter to the Assistant United States Attorney, Paul David Stern, asking for copies of statements given by Michael and Rebecca Kelley. I also asked Mr. Stern to inform me whether the Kelleys were targets now or whether they would ever become targets of a criminal investigation.

Neither Mr. Stern, Mr. Handler, nor anyone else from the United States Department of Justice ever communicated with me or responded to my letter anytime over the next 6 weeks.

On June 23, 2020, the deposition of Mr. Kelley began. I introduced my letter into evidence and asked about the criminal exposure. Mr. Handler and Mr. Stern stated they could not deny that Mr. and Mrs. Kelley could be targets of a criminal investigation. I twice asked what efforts they made to get answers to my questions. Neither would answer whereupon I stated based on their silence I assumed they did not do anything to get answers to the concerns stated in the letter and that I could only conclude the deposition was a sinister effort to gain information toward a criminal indictment. They did not argue against that conclusion.

The government asked about 4 or 5 questions and then began to demand things from my client and me. I told them repeatedly to ask their next question. The deponent did not assert a blanket 5th Amendment. Any answers including the 5th Amendment were in response to specific questions. Eventually the government took a 30-minute break and then started back along the same path. Suddenly the government simply quit the deposition. They cancelled Rebecca Kelley's scheduled deposition. Mrs. Rebecca Kelley was present on June 23, 2020 in compliance

to the notice and subpoena. The government never asked her one single question. In essence, I believe the government intentionally ignored my letter and did not properly prepare for this deposition. The government received my letter on May 14, 2020 via email and shortly thereafter by regular mail. Failing to address my letter for six weeks just exemplifies how disinterested the government was in actually going forward with the deposition. The power to grant immunity has been reserved for the executive branch. The Department of Justice understands what it needs to do, but rather than do that they seek to intimidate and frighten two parents."

WITNESS MY HAND this ___7___ day of ___July_____, 2020.

Gerald E. Bourque

**STATE OF TEXAS**                                §
                                                  §
**COUNTY OF MONTGOMERY**                           §

### ACKNOWLEDGMENT

BEFORE ME, the undersigned authority, on this day personally appeared Gerald E. Bourque, known to me to be the person whose name is subscribed to the above and foregoing instrument, and acknowledged to me that he executed the same for the purposes and considerations therein expressed.

GIVEN UNDER MY HAND AND SEAL OF OFFICE this ___7___ day of ___July_____, 2020.

KAITLYN ALYS BEAR
Notary Public, State of Texas
Comm. Expires 09-26-2020
Notary ID 130836586

Notary Public, In and for
The State of TEXAS

# EXHIBIT "B"

# GERALD E. BOURQUE
## ATTORNEY AT LAW

24 WATERWAY AVE., SUITE 660, THE WOODLANDS, TEXAS 77380
Office (713) 862-7766
Facsimile (832) 813-0321
gerald@geraldebourque.com
www.geraldebourque.com

May 14, 2020

Paul David Stern
U.S. Attorney's Office (W.D. Tex)
601 W. Loop 410, Suite 600
San Antonio, Texas 78216

RE: Cause No. 5:18-cv-00555-XR; Holcombe, et al. v. United States of America; In the United States District Court for the Western District of Texas – San Antonio Division

Dear Mr. Stern:

This office is recently hired to personally represent Michael Kelley and Rebecca Kelley during the depositions to be scheduled in the above styled and numbered civil cause. Please forward for review a copy each and every statement given by Michael Kelley and Rebecca Kelley to the Federal Bureau of Investigation, A.T.F., Texas Rangers, United States Air Force, U. S. O.I.G., or any other law enforcement agency in relation to the subject matter which makes the basis of the above referenced litigation.

The incident which makes the basis of this civil litigation was a mass shooting. Had Devin Kelley survived, the United States would have indicted him for intentionally causing the death of several people and the D.O.J. would likely have authorized the pursuit of the death penalty. Any acquaintances of the perpetrator would be investigated as targets for indictment, as well. Therefore, please provide a letter stating that neither Michael Kelley nor Rebecca Kelley are targets of a criminal investigation at this time and that answers they give in response to questions during the deposition will not lead to either of them becoming targets of a criminal investigation with the United States Department of Justice. In other words, provide a letter stating they are not now targets of a criminal investigation and they will never be targets of a criminal investigation for anything related to the Sutherland Springs incident.

Sincerely,

Gerald E. Bourque

Cc: Jamal Alsaffar
Whitehurst, Harkness, Brees, Cheng,
Alsaffar, Higginbotham & Jacob PLLC
7500 Rialto Blvd., Bldg 2, Suite 250
Austin, Texas 78735

J. Dean Jackson
Curney, Farmer, House, Osuna &
Jackson, P.C.
411 Heimer Road
San Antonio, Texas 78232

# EXHIBIT "C"

1                    UNITED STATES DISTRICT COURT
                  FOR THE WESTERN DISTRICT OF TEXAS
2
JOE HOLCOMBE, ET AL.,        §
3                            §
       PLAINTIFF,            §   CIVIL ACTION NO.
4                            §   5:18-CV-00555-XR
V.                           §
5                            §
UNITED STATES OF AMERICA,    §
6                            §
       DEFENDANT.            §
7


8


9


10


11         REMOTE DEPOSITION OF MICHAEL SHAWN KELLEY
                       JUNE 23, 2020
12


13


14


15        REMOTE DEPOSITION OF MICHAEL SHAWN KELLEY,
   produced as a witness at the instance of the
16 Defendant and duly sworn, was taken in the above
   styled and numbered cause on Tuesday, June 23, 2020,
17 from 8:17 a.m.  to 9:23 a.m., before TAMARA CHAPMAN,
   CSR, RPR-CRR in and for the State of Texas, reported
18 remotely by computerized stenotype machine in
   Austin, Texas pursuant to the Federal Rules of Civil
19 Procedure and any provisions stated on the record
   herein.
20


21


22


23


24


25   Job No. J5731874



```
 1                A P P E A R A N C E S

 2

 3
    FOR THE PLAINTIFFS:
 4       Joseph M. Schreiber
         SCHREIBER KNOCKAERT, PLLC
 5       701 North Post Oak Road, Suite 325
         Houston, Texas 77024
 6       281-949-8904
         joe@lawdoneright.com
 7
         -and-
 8
         Jamal K. Alsaffar
 9       Tom Jacob
         WHITEHURST, HARKNESS, BREES, CHENG, ALSAFFAR,
10       HIGGINBOTHAM AND JACOB, PLLC
         7500 Rialto Boulevard
11       Building Two, Suite 250
         Austin, Texas 78735
12       855-419-2050

13       -and-

14       Jason Charles Webster
         THE WEBSTER LAW FIRM
15       6200 Savoy Drive, Suite 150
         Houston, Texas 77036
16       713-396-5197

17       -and-

18       Brett T. Reynolds
         BRETT REYNOLDS & ASSOCIATES, PC
19       1250 NE Loop 410, Suite 420
         San Antonio, Texas 78209
20       210-805-9799
         Btreynolds@btrlaw.com
21

22

23

24

25
```



```
 1    A P P E A R A N C E S  (CONTINUED):

 2    FOR THE DEFENDANT:
          Stephen E. Handler
 3        Austin Furman
          U.S. DEPARTMENT OF JUSTICE
 4        Three Constitution Square
          175 N Street, NE, 11th Floor, Room 1809
 5        Washington, D.C. 20002
          202-616-4272
 6        austin.l.furman@usdoj.gov

 7        -and-

 8        Paul Stern
          U.S. ATTORNEY'S OFFICE
 9        601 W. Loop 410, Suite 600
          San Antonio, Texas 78216
10        210-384-7100

11

12    FOR MICHAEL AND REBECCA KELLEY:
          Dean Jackson
13        CURNEY, FARMER, HOUSE, OSUNA & JACKSON, P.C.
          411 Heimer Road
14        Washington, D.C. 20002
          210-377-1990
15        djackson@cfholaw.com

16        -and-

17        Gerald E. Bourque
          LAW OFFICE OF GERALD E. BOURQUE
18        24 Waterway Avenue, Suite 660
          The Woodlands, Texas 77380
19        713-862-7766
          gerald@geraldebourque.com

20

21    ALSO PRESENT:
           Daniel P. Chung
22         GIBSON DUNN
           1050 Connecticut Avenue, N.W.
23         Washington, DC 20036-5306
           Dchung@gibsondunn.com

24

25
```



MICHAEL SHAWN KELLEY                                    June 23, 2020
HOLCOMBE vs UNITED STATES of AMERICA                          4

```
 1                    I N D E X

 2
                                                PAGE
 3

 4    APPEARANCES..................................    2

 5        MICHAEL  SHAWN  KELLEY

 6    EXAMINATION
          By Mr. Handler...........................   7
 7

 8    CORRECTION PAGE..............................   41
      SIGNATURE PAGE...............................   42
 9    REPORTER'S CERTIFICATION.....................   43

10
                      E X H I B I T S
11
                                          PAGE  LINE
12    Exhibit 1,                           7     3
      05/14/2020 letter from Gerald E.
13    Bourque to Paul David Stern, RE: Cause
      No. 5:18-cv-00555-XR
14    (No Bates - 1 page)
      Exhibit 2,                           7     3
15    Subpoena to produce documents,
      information, or objects or to permit
16    inspection of premises in a civil
      action
17    (No Bates - 3 pages)
      Exhibit 3,                           7     3
18    Attachment to subpoena duces tecum to
      Michael Kelley
19    (No Bates - 9 pages)
      Exhibit 4,                           7     3
20    Photograph of Devin Kelley
      (TXRANGERS00010965)
21    Exhibit 5,                           7     3
      Photograph of Devin Kelley
22    (TXRANGERS00010967)
      Exhibit 6,                           7     3
23    Photograph of Devin Kelley
      (TXRANGERS00010969)
24    Exhibit 7,                           7     3
      Photograph of Devin Kelley
25    (TXRANGERS00046864)
```



MICHAEL SHAWN KELLEY                                    June 23, 2020
HOLCOMBE vs UNITED STATES of AMERICA                            5

```
 1  E X H I B I T S (Continued)

 2  Exhibit 8,                                    7    3
    Photograph
 3  (TXRANGERS00047011)
    Exhibit 9,                                    7    3
 4  Texas Department of Public Safety,
    Texas Rangers, Supplemental report by
 5  Billy Mims
    (TXRANGERS00053617 -
 6  TXRANGERS00053621)
    Exhibit 10,                                   7    3
 7  Video clip
    (TXRANGERS00053246)
 8  Exhibit 11,                                   7    3
    Texas Department of Public Safety,
 9  Texas Rangers, Supplemental report by
    Brent Barina
10  (TXRANGERS00053663 -
    TXRANGERS00053666)
11  Exhibit 12,                                   7    3
    Audio clip
12  (TXRANGERS00016657)
    Exhibit 13,                                   7    3
13  Texas Department of Public Safety,
    Texas Rangers, Supplemental report by
14  Joseph Evans
    (TXRANGERS00049390 -
15  TXRANGERS00049391)

16

17

18

19

20

21

22

23

24

25
```



1                    THE STENOGRAPHER:  Pursuant to the

2     First Emergency Order Regarding the COVID-19

3     State of Disaster, Paragraphs 2.b. and 2.c., this

4     deposition of Michael Kelley is being conducted

5     remotely via Zoom.  Today's date is June 23, 2020

6     and the time is 8:17 a.m.

7                    My name is Tamara Chapman, Texas

8     CSR #7248.  I am administering the oath and

9     reporting the deposition remotely by stenographic

10    means from my residence within the State of

11    Texas.

12                    MR. HANDLER:  Steve Handler

13    representing the United States.

14                    MR. SCHREIBER:  This is Joseph

15    Schreiber.  I represent the plaintiffs.

16                    MR. JACKSON:  Dean Jackson.  It's

17    my privilege and honor to represent Michael and

18    Rebecca Kelley.  I'm here along with Gerald

19    Bourque, who is their personal counsel as well.

20                    MR. ALSAFFAR:  Jamal Alsaffar,

21    representing the plaintiffs.

22                    MR. STERN:  Paul Stern on behalf

23    of defendant, United States.

24                    MR. FURMAN:  Austin Furman,

25    defending the United States.



1                    MR. WEBSTER:  Jason Webster,

2     representing plaintiffs.

3                    MICHAEL SHAWN KELLEY,

4     having been first duly sworn, testified as follows:

5                         EXAMINATION

6     BY MR. HANDLER:

7          Q.  Good morning, Mr. Kelley.  My name is

8     Steven Handler.  I represent the United States.

9               For the record, could you please state

10    your full name and spell it for the record.

11         A.  Michael Shawn Kelley.  Michael,

12    M-I-C-H-A-E-L; Shawn, S-H-A-W-N; Kelley, K-E-L-L-E-Y.

13         Q.  Thank you.  Well, let the record reflect

14    that this is the deposition of Michael Kelley taken

15    pursuant to notice in accordance with the Federal

16    Rules of Civil Procedure and the local rules of the

17    Western District of Texas.

18               As I said, I'm representing the United

19    States.  Are you represented by counsel today?

20         A.  Yes.

21         Q.  And can you name your counsel, please?

22         A.  Dean Jackson and Gerald Bourque.

23         Q.  Okay.  Now, there are other attorneys

24    attending this deposition and they represent, of

25    course you heard, the plaintiffs and the United



 1 | States.

 2 |          We're here today to discover facts

 3 | regarding the allegations that the plaintiffs have

 4 | made against the United States, as well as other

 5 | related matters.  In particular, this lawsuit

 6 | pertains to the wrongful death and personal injury

 7 | actions brought against the United States.

 8 |          The claims arise out of a mass shooting

 9 | perpetrated by former Airman Devin Patrick Kelley at

10 | the First Baptist Church in Sutherland Springs,

11 | Texas, on Sunday, November 5th, 2017.

12 |          Mr. Kelley, throughout this deposition,

13 | instead of me repeating the full names of everyone,

14 | I'll probably use shorthand references.  So the First

15 | Baptist Church of Sutherland Springs, we'll just call

16 | it "the church."  The shooting perpetrated by Airman

17 | Devin Patrick Kelley will be called "the church

18 | shooting" or just "the shooting."  Whenever I

19 | reference Devin Patrick Kelley, I'll probably just

20 | call him by his first name, Devin.  I'll also mention

21 | Danielle Kelley.  I'll just call her Danielle.

22 | That's Devin's second wife.  Tessa Kelley, Devin's

23 | first wife, we'll just call her Tessa.  Michelle

24 | Shields, the mother of Danielle, we'll just call her

25 | Michelle.



1            And to the extent possible I'll try to use
2    the first names, just to move the deposition along.
3            Are you presently taking any medications
4    or are you on any medications that would impair your
5    ability to understand my questions and give
6    appropriate answers?
7        A.  No.
8        Q.  Have you ever had your deposition taken
9    before in a setting like this?  Not necessarily on
10   Zoom, but maybe even in person?
11       A.  Yes, once.
12       Q.  And when was that?
13       A.  Back in the '80s.  I don't remember when.
14       Q.  Was it a civil case or criminal case?
15       A.  Civil.
16       Q.  Okay.  And were you the plaintiff or the
17   defendant?
18       A.  I was the defendant.
19       Q.  Okay.  And what did the -- what was the --
20   the gist of the case?
21       A.  We had some carpenter guys over building a
22   deck and they cut their fingers on their saw.
23       Q.  I'm sorry.  Could you repeat that?
24       A.  I said we had some guys over, carpenters,
25   building a deck and they cut their fingers with their



1  saw.

2              (Discussion off the written record.)

3       Q.  And, Mr. Kelley, other than that one

4  deposition back in the '80s, have you ever been

5  deposed, other than that one time?

6       A.  No.

7       Q.  Okay.  So a deposition is just like

8  testifying in court under oath before a judge.  The

9  court reporter will record all of your questions --

10 all the questions and all of the answers.  I'll be

11 asking you questions.  Other attorneys may be asking

12 you questions.  And some of the attorneys may object,

13 but you can still respond, unless your attorney

14 instructs you not to.

15             Because you're sworn under oath, you are

16 expected to respond to the questions to the best of

17 your knowledge, but your responses must be truthful.

18 Your response is subject to the penalty of perjury if

19 your response is not truthful regarding any material

20 facts.

21             If at any time I ask you a question and

22 you do not understand it, please stop me so I can

23 rephrase it or ask a different question.  If you

24 respond to a question, I will conclude that you

25 understood it and you were giving an appropriate



```
 1   response.

 2           All of your responses must be verbal in

 3   order for the court reporter to record them.  You

 4   can't nod your head or shake your head or gesture

 5   with your hands.

 6           At the end of deposition, when a

 7   transcript is prepared, you will be given the

 8   opportunity to read it and make corrections.  To the

 9   extent, however, you make any substantive

10   corrections, we may have to take your deposition

11   again.

12           Before we get started, do you understand

13   all my instructions?

14       A.  Yes.

15       Q.  Okay.  Do you have any questions?

16       A.  No.

17       Q.  Okay.  Now, you mentioned before that you

18   were a defendant in a certain -- in the 1980s.

19           Are you presently or had you been a

20   defendant with respect to the litigation involving

21   the shooting at the church?

22               MR. BOURQUE:  No.  Before we go

23   any further, let me -- there is something I want

24   to take up, and I want to take up Kelley 1 with

25   the government at this time.  If you'll pop that
```



1   up so the government can see.

2              On May the 14th of this year I

3   sent a letter to the Western District of Texas to

4   the attention of Paul David Stern.  I sent it by

5   regular mail and I emailed.  Copies went to

6   Mr. Alsaffar and Mr. Jackson.  I never got a

7   return envelope saying that the letter was not

8   received.

9              I also neither got a response to

10  that letter from the United States Government or

11  from Mr. Stern.  I also never got so much as a

12  phone call from Mr. Stern or anyone with the

13  government involved in this case.  I had no

14  acknowledgement at all that I even existed in

15  this case, from the government.

16             In my letter I set out what I

17  needed from the government before this deposition

18  was to take place.  I never received any

19  statement given by Mr. Kelley.  I never received

20  any statements that were given by Ms. Kelley to

21  any of the people listed in that letter.

22             I also set out why I'm concerned

23  about this deposition going forward.  This is a

24  mass homicide.  The perpetrator of this event

25  either committed suicide or was killed by others.



1   The only remaining possible targets are

2   Mr. Kelley and Ms. Kelley.

3                  I asked in my letter, please give

4   me some reassurance.  This is what criminal

5   defense lawyers who have tried 12 to 14 capital

6   murder death penalty cases do.  They seek from

7   the government some assurance that says, "you

8   know, it's been two and a half years.  What's the

9   status of a grand jury impanelling?  Are my

10  clients targets now or are they ever going to be

11  targets?"

12                 I got not one single solitary

13  response, not even a phone call that says, "It's

14  out of my hands.  I don't make that call."  So I

15  can only assume that there is a sinister reason

16  for you not contacting me or the government not

17  making an effort to seek immunity so that these

18  two people can give truthful answers to truthful

19  questions.

20                 So I have a serious concern about

21  the government's good-faith intentions in this

22  deposition.  And I want somebody to tell me,

23  whether it's Mr. Handler or it's Mr. Stern, what

24  efforts you made to seek immunity or to answer my

25  questions in response to my May 14th, 2020,



 1   letter.

 2                    MR. JACKSON:  Did you introduce it

 3   already?

 4                    MR. BOURQUE:  And if it hadn't

 5   been introduced for purposes of the deposition,

 6   I'm introducing it now for the purposes of the

 7   deposition.

 8                    MR. HANDLER:  Mr. Bourque, is that

 9   it?

10                    MR. BOURQUE:  I answer to pretty

11   much anything.  That will work.

12                    MR. HANDLER:  Okay.  I can neither

13   confirm nor deny the existence of any criminal

14   investigation.

15                    MR. BOURQUE:  You know what the

16   problem is -- whatever --

17                    MR. HANDLER:  Let me finish.  Let

18   me finish.  Excuse me.

19                    I said I can neither confirm nor

20   deny the existence of any criminal investigation.

21   This is a discovery deposition, the third-party

22   witness in a civil case.  We have issued a

23   subpoena.  He's appearing and we have the right

24   to take his deposition.  I have not --

25                    MR. BOURQUE:  He has rights also.



1          MR. HANDLER:  Well, I understand

2    that, but are you saying that if we don't give

3    you the assurances you requested in your letter,

4    that you're going to instruct your witness not to

5    respond to any questions in this deposition?

6          MR. BOURQUE:  Let me ask you this.

7    What efforts did you make to comply with anything

8    I sent on May the 14th, 2020?  That's my question

9    and it deserves an answer.

10         MR. HANDLER:  Let me just say,

11   Mr. Bourque, I am not the witness in this case.

12   The witness in this case is Mr. Kelley, and he is

13   the one that I'm posing questions to, and he is

14   the one that I will ask -- you know, that is the

15   deponent.

16         I am not here to answer your

17   questions, and I'm asking you, are you going to

18   instruct your witness not to answer the questions

19   and participate as a deponent in this civil

20   lawsuit because your letter -- the questions in

21   your letter were not responded to?  A simple

22   question, "yes" or "no"?

23         MR. BOURQUE:  I don't give

24   yes-or-no answers until I get answers to my

25   questions.



 1            MR. HANDLER:  Well, I'm not giving

 2    you an answer to your question.

 3            MR. BOURQUE:  Okay.  Well, then

 4    I'm not giving you an answer to yours, big boy.

 5            MR. JACKSON:  Mr. Handler, this is

 6    Gerald's issue with this.  You didn't respond to

 7    his letter.  He has some serious questions about

 8    your motives behind this deposition.  We

 9    understand it's a civil lawsuit.

10            However, by not responding to his

11    letter, he is assuming that you guys are going to

12    try to indict Mr. and Ms. Kelley, and you're

13    going to take this deposition, you're going to

14    run it over to the other side of the street and

15    say "here you go, we did your work for you."

16            I mean, it's pretty easy.  And

17    what you're making the Kelleys do right now is

18    not answer your questions and possibly invoke

19    their Fifth Amendment right to make it look

20    terrible on them.

21            MR. HANDLER:  I have already made

22    a statement that we are here in this deposition

23    to depose Mr. Kelley with regard to the facts and

24    circumstances of the allegations made by the

25    plaintiffs in this civil litigation.  That is my



```
 1   only intention in this case.  And I did -- I made
 2   that statement.
 3               MR. JACKSON:  That right there is
 4   saying something without saying anything.
 5               MR. HANDLER:  I'm sorry?
 6               MR. JACKSON:  That is saying
 7   nothing.  I mean, just using words out loud that
 8   mean nothing.
 9               MR. HANDLER:  Well, I'm going to
10   proceed with this deposition.  If you're going to
11   instruct your witness not to answer, you're going
12   to have to do it question by question.
13               Okay?  So let's proceed.
14               MR. SCHREIBER:  I'd like to make a
15   statement on behalf of the plaintiffs in the
16   civil side of the case.
17               We object to a question-by-question.
18   Fifth Amendment -- questions by the government
19   seeking to have the witness invoke the Fifth
20   Amendment, when for over a month you guys have
21   had a letter letting you know this was going to
22   happen.  So we object to any sort of spectacle
23   which might make the witness look bad and might
24   try and take a side-shot at the plaintiffs.
25               MR. JACKSON:  Right.  And I will
```



1    shut this deposition down if we go question by

2    question just to intimidate and harass my

3    clients.

4                    MR. STERN:  Can I jump in for a

5    second.  This is Paul Stern.

6                    Mr. Schreiber, I realize that

7    Mr. Handler is taking the deposition.

8    Nonetheless, the letter was intended and was

9    addressed to me, sir, and to the extent that this

10   issue has been raised and addressed to lead

11   counsel, I would like the opportunity to respond.

12                   MR. SCHREIBER:  Okay.  Go ahead.

13                   MR. STERN:  Thank you.

14                   As you're well aware, we sought

15   the deposition of Michael and Rebecca Kelley

16   during a court hearing on May 14th, 2019.  Judge

17   Rodriguez authorized those depositions to be

18   taken.  Prior to seeking these depositions, we

19   sent a request for a subpoena to produce

20   documents.  That subpoena was responded to with a

21   motion for a protective order.  A motion for

22   protective order addressed various issues without

23   raising the -- including the issue of potential

24   assertions of Fifth Amendment.

25                   We then had a conversation with



1  Dean Jackson to try to obviate the need to

2  litigate the matter any further.  After we

3  responded to that motion, at that time

4  Mr. Jackson agreed to withdraw the motion for

5  protective order and agreed to schedule this

6  deposition.

7              At the -- subsequent to that

8  conversation, we then had conversations about the

9  logistics of scheduling this deposition, and then

10  subpoenaed Michael and Rebecca Kelley to appear

11  for their deposition per the court order.  At no

12  time was the issue raised about that letter and

13  the reassertion of any Fifth Amendment concerns.

14              We fully recognize that this is a

15  civil litigation where we've identified Devin

16  Patrick Kelley as a potential responsible third

17  party.  The Court granted that authorization, as

18  well granted these depositions to be taken.  Note

19  we are -- this deposition is being taken without

20  any outstanding protective order in place; and to

21  the extent that you're now insisting that we

22  respond to the letter, we've had conversations

23  with Dean Jackson but in no way are obligated to

24  reveal how we determined whether or not and to

25  what extent we should respond to that letter.

1         These depositions are going

2   forward without a protective order in place.

3   Questions will be asked, and if the deponent

4   answers by asserting his Fifth Amendment right

5   against self-incrimination, so be it, but we have

6   a right to take this deposition and will continue

7   to do so.

8              MR. BOURQUE:  All right.  I

9   appreciate that, Mr. Stern.

10             One more response from Gerald

11  Bourque.  Since you volunteered to jump in to

12  this, I'd like to hear from you.  What effort did

13  you make to determine whether or not Mr. and

14  Ms. Kelley are now targets of the United States

15  Government or are not targets of the United

16  States Government?

17             MR. STERN:  I am not responding to

18  your questions.  I'm responding to your

19  accusations that we are taking this deposition in

20  an inappropriate manner.  That is not the case.

21  We scheduled it with counsel with no outstanding

22  protective order in place and this deposition

23  will go forward.

24             MR. BOURQUE:  Well, that's

25  wonderful, Mr. Stern.  I so much appreciate



 1   your -- your inclination here.  Can you just

 2   answer my question?  What efforts did you put in

 3   to this?  I take it by your silence, none.  You

 4   did nothing.  You didn't do anything.

 5   Mr. Handler didn't do anything.  No one from the

 6   United States Government so much as made an

 7   effort to walk across the hall and talk to

 8   United -

 9                  (Simultaneous speaking.)

10                  MR. STERN:  Mr. Bourque, we are --

11                  MR. BOURQUE:  I'm assuming -- if

12   I'm wrong --

13                  MR. STERN:  We neither confirming

14   or denying any investigation.  We are not going

15   to reveal attorney work product regarding this --

16   this case.  If you're going to remove your

17   witness, do so, but, otherwise, we are going to

18   continue with this deposition --

19                  MR. BOURKE:  Get on with it.

20                  (Simultaneous speaking.)

21                  MR. STERN:  -- asking the

22   questions.

23                  Mr. Handler, please proceed.

24                  MR. BOURQUE:  Why don't you try to

25   get on with it.  Get on with it.  Okay?  Get on



 1  with it.  I got my answers.  You did nothing.

 2        Q.  Mr. Kelley, I apologize for the discourse

 3  here.  Attorneys do that in depositions, but we'll

 4  proceed.

 5              Now, with regard to this particular

 6  litigation, the -- involving the church shooting,

 7  were you a defendant in a case called Lookingbill?

 8        A.  On advice of my counsel, I assert my Fifth

 9  Amendment right to remain silent.

10              MR. WEBSTER:  And I'm going to object to

11  the continued line of -- this is Jason Webster.  I'm

12  going to object to the continued line of questioning

13  if he's going to invoke the Fifth Amendment because

14  it's not admissible in federal court.  So if he's

15  going to continue to answer every single question,

16  it's not admissible.  So we need to go get a ruling

17  by the judge and then come back.

18              MR. HANDLER:  Mr. Webster, I think

19  you're incorrect, but we will continue.

20        Q.  Mr. Kelley, you've asserted your Fifth

21  Amendment right to remain silent regarding whether or

22  not you are a defendant in Lookingbill case.  Is that

23  correct?

24              MR. JACKSON:  Objection; asked and

25  answered --



1          A.  By advice of counsel, I assert my Fifth
2    Amendment right to remain silent.
3          Q.  Okay.  Are you going to follow that
4    advice?
5          A.  On advice of my counsel, I'm going to
6    assert my Fifth Amendment right to remain silent.
7          Q.  Okay.  Was that -- was the Lookingbill
8    case settled on your behalf?
9          A.  On advice of my counsel, I'm going to
10   assert -- I assert my Fifth Amendment right to remain
11   silent.
12         Q.  And did you pay any money with regard to
13   that lawsuit?
14         A.  On advice of my counsel, I assert my Fifth
15   Amendment right to remain silent.
16              MR. HANDLER:  Counsel, what is the
17   basis for asserting the Fifth Amendment right
18   on -- on information that concerns a pending
19   lawsuit in a state court action?
20              MR. JACKSON:  And I'm also going
21   to object as completely irrelevant, so anything
22   that's happening in the federal lawsuit against
23   the United States Government.
24              Mr. Handler, that makes -- the
25   relevancy of that is -- I can't even comprehend



 1  in the great sea of imagination how that would

 2  have any relevance in the plaintiff's lawsuit

 3  against the United States Government.  So I'm

 4  going to object -- I mean, quite frankly, that's

 5  just harassing and it has no relevance whatsoever

 6  to the United States --

 7                  (Simultaneous speaking.)

 8                  MR. HANDLER:  It is not

 9  harassment.  It pertains to monies that are spent

10  by defendant in a state case that may be offset

11  in the federal case and has similar allegations.

12  That's not irrelevant and that's not a basis for

13  asserting the Fifth Amendment.  The Fifth

14  Amendment has a very particular assertion here.

15  Are you saying that your client is asserting the

16  Fifth Amendment based on relevancy?  State the

17  basis, Counsel.

18                  MR. JACKSON:  I'm saying, as the

19  civil counsel for Mr. and Ms. Kelley, that that

20  is -- I mean, I can't even fathom how that would

21  be particularly relevant.  And if this line of

22  questioning keeps coming up, Mr. Handler, I think

23  we need to stop this deposition.  We'll just take

24  it up in front of Mr. -- in front of Judge

25  Rodriguez.  And we can do it in the courthouse.



```
 1              MR. HANDLER:  And I think you're
 2   being obstructionist here because this is valid,
 3   you know, questions regarding, you know,
 4   information that United States needs to defend
 5   its lawsuit.  And you are being obstructionist
 6   here.  And I -- I strongly suggest that you ask
 7   your client to answer these questions.
 8              MR. JACKSON:  Mr. Handler, how --
 9              MR. SCHREIBER:  Sidebar.
10              MR. JACKSON:  -- the world is that
11   even relevant to -- to the allegations that the
12   plaintiffs made against the United States
13   Government?  How?
14              MR. HANDLER:  Let me explain it to
15   you.  It has to do with offset.  If he paid money
16   for Lookingbill in the state case, then with
17   regard to the federal case, Lookingbill would be
18   getting an offset for that.  And that is relevant
19   and that's not -- you know, that is information
20   that we can -- that the United States can argue
21   with the plaintiffs at a later time, but right
22   now, I'm gathering facts regarding the amount of
23   money that Mr. Kelley paid with regard to
24   Lookingbill.  And if I have to bring this -- the
25   witness back, this cost is going to be on you,
```



1  Counsel.

2       Q.  So do you have the documents pertaining to

3  the settlement of the Lookingbill case, Mr. Kelley?

4       A.  On advice of counsel, I assert my Fifth

5  Amendment right to remain silent.

6       Q.  Okay.  Let's move on.

7            Are you assisting any of the plaintiffs in

8  this litigation?

9                 MR. SCHREIBER:  Objection; vague.

10                MR. JACKSON:  Objection; vague.

11      A.  On advice of counsel, I assert my Fifth

12  Amendment right to remain silent.

13                MR. SCHREIBER:  Vague.  Objection.

14                This is Mr. Schreiber.  I made a

15  vague objection to -- to the question.

16                MR. JACKSON:  And Dean Jackson did

17  as well.

18      Q.  Mr. Kelley, preparation for this

19  deposition, did you review any documents?

20      A.  On advice of counsel, I assert my Fifth

21  Amendment right to remain silent.

22      Q.  In preparation for this deposition, did

23  you talk to anyone other than your attorneys in

24  preparation for this deposition?

25      A.  On advice of counsel, I assert my Fifth



1    Amendment right to remain silent.

2         Q.  Okay.

3              MR. STERN:  Steven, this is Paul

4    Stern again.  Could we perhaps maybe take a

5    five-minute break?  Everyone, I think we just

6    need to take a quick five minutes.

7              MR. HANDLER:  Let me ask you a

8    quick question.

9              Mr. Jackson, is your client going

10   to assert the Fifth Amendment right to every

11   single question that I ask?

12             MR. JACKSON:  That should not be

13   addressed to me.

14             MR. HANDLER:  I'm asking you.

15   Okay.  We'll ask Mr. Kelley.

16        Q.  Mr. Kelley, are you going to assert your

17   Fifth Amendment right to every single question that I

18   ask you?

19        A.  On advice of counsel, I assert my Fifth

20   Amendment right to remain silent.

21        Q.  Mr. Kelley, I understand you're asserting

22   your Fifth Amendment right, but I have a lot of

23   questions here, and we can be here for the next seven

24   hours of me asking you questions.

25             Are you going to assert your Fifth



1    Amendment right to every single question that I ask

2    you?

3            A.   On the advice of counsel, I assert my

4    Fifth Amendment right to remain silent.

5                    MR. HANDLER:  Court reporter,

6    let's take a five-minute break.

7                    (Break.)

8            Q.   Mr. Kelley, are you ready?

9            A.   Yes.

10           Q.   Okay.  Mr. Kelley, I just want to be very

11   clear here.  Are you planning to assert the Fifth

12   Amendment right against self-incrimination as to

13   every single question I ask in this deposition?

14                    MR. BOURQUE:  Objection; asked and

15   answered.

16           Q.   Mr. Kelley, can you answer the question?

17           A.   On advice of counsel, I assert my Fifth

18   Amendment right to remain silent.

19                    MR. HANDLER:  Mr. Jackson, I'm

20   posing this question to you.  Are you going to

21   instruct your witness to assert the Fifth to

22   every single question that I ask in this

23   deposition?

24                    MR. JACKSON:  Listen, Mr. Handler,

25   I know exactly what you're doing.  You're not



1  going to get -- you're not going to bait me into

2  that.  You need to ask your questions.  And if

3  the question is appropriate, then we'll answer

4  it.  If not, then his private counsel is going to

5  instruct him as he -- as he deems appropriate.

6  You're not going to bait me into that.  I've been

7  doing this too long.

8             MR. HANDLER:  So are you saying

9  that you're going to allow this witness to answer

10  questions and not assert the Fifth --

11             MR. BOURQUE:  Mr. Jackson is --

12             MR. HANDLER:  -- depending on the

13  question?

14             MR. BOURQUE:  Mr. Jackson is not

15  the witness.  Ask your question.

16             MR. HANDLER:  Well, based on that,

17  it seems to me that we're going to go question by

18  question and Mr. Kelley is going to have to

19  either answer the question or plead the Fifth.

20             (Simultaneous speaking.)

21             MR. BOURQUE:  Ask your question.

22             MR. HANDLER:  Okay.  All right.

23  Let's proceed.

24             MR. BOURQUE:  Oh, thank you.  I

25  said that 20 minutes ago.



1              MR. HANDLER:  You know, you don't

2     have to be rude.

3              MR. BOURQUE:  Oh, sure I do.  You

4     didn't respond to my letter, big boy.  Okay?  You

5     treated me like a nonentity, and you're going to

6     tell me I'm not allowed to be rude?  Call

7     somebody --

8              (Simultaneous speaking.)

9              MR. HANDLER:  Yes, I am telling

10    you:  Don't be rude.  I'm not rude.  Don't be

11    rude.

12              MR. BOURQUE:  I have every right

13    to treat you the way you treated me.  You get

14    that?  And you're very fortunate you're not in

15    this room with me in person right now.  You got

16    that?  And you should have been --

17              (Simultaneous speaking.)

18              MR. HANDLER:  Are you threatening

19    me?  Are you threatening me?

20              MR. BOURQUE:  Oh, please.  Go --

21              (Simultaneous speaking.)

22              MR. HANDLER:  Counsel, why don't

23    you be quiet and sit down and not obstruct this

24    witness from answering my questions.

25              MR. BOURQUE:  Why don't you ask



1  your questions that we stopped 30 minutes ago.

2  Or come -- I'm inviting you personally to come to

3  our conference room and you can do it in person.

4           MR. JACKSON:  Mr. Handler, if you

5  want to ask some questions, go ahead.

6      Q.  Mr. Kelley, with regard to documents that

7  you reviewed, did you review anything such as papers

8  or locations?  Did you go to the church before your

9  deposition today?

10      A.  On advice of counsel, I assert my Fifth

11  Amendment right to remain silent.

12           MR. HANDLER:  I'm going to make a

13  statement for the record.  I'm going to stop the

14  deposition, but I'm going to keep it open.  I

15  believe that Mr. Kelley is inappropriately

16  asserting the Fifth Amendment privilege against

17  self-incrimination to appropriate questions for

18  this civil litigation.

19           We are going to leave it open,

20  though, and we're going to seek relief through

21  the Court.

22           And I want to ask counsel for

23  Mr. Kelley.  We have Rebecca's deposition

24  scheduled for 2 o'clock today.  Is Rebecca going

25  to assert the Fifth in the same manner that her



1  husband Michael is going to assert the Fifth?

2              MR. BOURQUE:  Ms. Kelley is here,

3  too.

4              MR. JACKSON:  Mr. Handler, if you

5  wanted a fruitful deposition, and an honest

6  deposition, you could have answered Mr. Bourque's

7  letter and you could have asked Mr. Kelley the

8  questions and we would not be going through this

9  right now.

10             However, because of y'all's

11  ineptitude and refusal to answer Mr. Bourque's

12  letter, you've put him in a position and given

13  him no other alternative but to answer your

14  questions the way that he is.

15             MR. SCHREIBER:  This is Joseph

16  Schreiber.  I'd like to make a statement on

17  behalf of the plaintiffs, and the statement is

18  this.  The plaintiffs state that the government,

19  by refusing to admit or deny that they're making

20  an investigation and charging Mr. and Ms. Kelley,

21  and/or at this point Danielle Kelley, after the

22  government's history of prosecuting the family

23  members of shooters like the Pulse nightclub has

24  put the Kelleys in the situation where they have

25  to assert the Fifth Amendment.



1           The plaintiffs on this case would

2     like to ask the Kelleys questions.  We think that

3     there is information.  We understand they cannot

4     answer questions because the government is

5     weaponizing their ability to charge the Kelleys

6     criminally, and therefore the government, by

7     refusing to either confirm or deny, is

8     essentially obstructing our questioning as well.

9           And we object to any inference

10    that may or may not be sought by the government

11    when they've created the situation by refusing to

12    either -- to deny officially that there is an

13    investigation into the Kelleys, or grant an

14    immunity to testify so they won't be charged.

15          MR. JACKSON:  Also, on the record

16    I want to say -- this is Dean Jackson -- I want

17    to state that I will also be seeking relief from

18    the court, as well as attorney's fees for the

19    abject refusal of the U.S. Government to reply to

20    Mr. Bourque's letter and creating the situation

21    that puts the Kelleys in a situation that they

22    are forced to assert their Fifth Amendment

23    privilege.

24          MR. HANDLER:  Again, Mr. Jackson,

25    my question still stands.  In order to resolve



1    this right now --
2                    (Simultaneous speaking.)
3                    MR. BOURQUE:  How does that work
4    for you?  The government's ploy is to neither
5    admit or deny.
6                    MR. HANDLER:  Mr. Bourque, please
7    let me finish my statement.  I asked the
8    question, we have Rebecca's deposition at
9    2 o'clock.  Is she going to respond like Michael
10   and plead the Fifth to every question that we ask
11   her regarding this matter?  Is she going to do
12   that?  So we don't have to notice her -- take her
13   deposition and ask those --
14                   MR. BOURQUE:  Asked and answered.
15                   MR. HANDLER:  I didn't hear your
16   answer.  Can you please repeat it.
17                   MR. BOURQUE:  You'll have to get
18   the court reporter.
19                   MR. HANDLER:  Read back the
20   answer.
21                   (The requested material was read.)
22                   THE STENOGRAPHER:  "Ms. Kelley is
23   here."
24                   MR. HANDLER:  I can't get an
25   answer.



 1              MR. BOURQUE:  That is the only
 2     answer you're going to get.
 3              MR. HANDLER:  I consider that we
 4     have met or satisfied our meet and confer with
 5     regard to seeking relief before the Court, and we
 6     will seek relief for the Court and we will ask
 7     the Court to provide us with an opportunity to
 8     re-depose Mr. Kelley and Ms. Kelley at an
 9     appropriate time.  Anybody else have any --
10              MR. BOURQUE:  Please --
11              MR. HANDLER:  Anyone else have a
12     statement for the record?
13              MR. BOURQUE:  Yes, I do.  Gerald
14     Bourque.  To the government, either Mr. Handler
15     or Mr. Stern or whatever other government
16     employees involved in this case.  Please bring
17     your grant of immunity with you when you seek
18     your relief for Mr. Kelley and Ms. Kelley.  That
19     concludes my statement.
20              MR. SCHREIBER:  I have nothing
21     further for the plaintiff.
22              MR. HANDLER:  Anyone else?
23              MR. JACKSON:  While we're on the
24     record, Mr. Handler, are you saying that you're
25     releasing Ms. Kelley from her subpoena?



1          MR. HANDLER:  No.  All of the

2    subpoenas, the depositions remain open and

3    pending.  I'm not releasing anyone from anything

4    until the Court rules.

5          MR. JACKSON:  I'm talking about

6    2 o'clock today.

7          MR. HANDLER:  She does not need to

8    appear for 2 o'clock, but she's still under the

9    subpoena.

10          MR. BOURQUE:  The subpoena is --

11          MR. HANDLER:  Anyone else?

12          MR. JACKSON:  The subpoena for

13    2 o'clock.  That makes no sense.  You have to

14    reissue the subpoena.

15          MR. STERN:  I think the idea of

16    going forward with Rebecca Kelley is obviously

17    futile, and so let's just queue this up for the

18    court.  And to the extent we would need to

19    reissue a subpoena for Rebecca at a later date,

20    we would do so.

21          MR. BOURQUE:  So you're not doing

22    the deposition at 2 o'clock for Ms. Kelley?

23          MR. STERN:  Yes, to the extent

24    that we anticipate that she would provide similar

25    non-testimony the way Mr. Kelley is right now.



 1   That is correct.

 2                  MR. BOUCKE:  Well, then I'm

 3   assuming that the 2 o'clock depo for Ms. Kelley

 4   is off.

 5                  MR. HANDLER:  Understood.

 6                  MR. BOUCKE:  Very good.  Thank

 7   you.

 8                  MR. SCHREIBER:  This is Joseph

 9   Schreiber.  The plaintiffs would object to -- let

10   me back up.

11                  Prior to the deposition a number

12   of exhibits were uploaded to the Zoom chat for

13   Esquire, including the first one, Kelley 1,

14   uploaded by Mr. Jackson, who is Michael Kelley's

15   personal attorney, which was actually discussed

16   in the deposition.

17                  Mr. Handler for the government

18   uploaded -- I believe was it 13 documents that he

19   intended to use in the deposition but did not get

20   a chance to use because the deposition was

21   suspended.  And so the plaintiffs object to the

22   13 documents that Mr. Handler uploaded being

23   attached to the deposition because they weren't

24   used with the witness at all.

25                  To the extent that he needs to



1   show them to the judge is what he was going to

2   ask, we don't have any objection to those because

3   we have a record of what they were being attached

4   to it a different motion.  But I don't think they

5   belong on the transcript itself because they

6   weren't used to ask a witness a question.

7               Again, I don't -- we have a record

8   of what they were, Steven, and I don't have any

9   problem with you attaching them to a motion for

10  the judge and saying these are the ones I was

11  going -- what I was going to use.  And I have a

12  record of which ones you have.  I downloaded them

13  all.  So I get it.

14               MR. HANDLER:  I understand.

15               MR. BOURQUE:  This is Gerald

16  Bourque.  Let me add one final thing, if that's

17  all right.

18               Mr. Kelley was present for the

19  deposition, was seated, sworn, and as of about

20  9:15 Houston time, which would be 10:15 Eastern

21  time, the government stopped asking questions.

22  So our position is this deposition is concluded.

23  If you want another deposition, you'll have to

24  notice us and we'll go from there.

25               MR. HANDLER:  The only reason the



1   witness -- the government stopped the deposition

2   is because your client, Mr. Kelley, refused to

3   ask (sic) reasonable questions, but that did not

4   implicate the Fifth Amendment.

5                  And for that reason, the

6   government was not able to continue the

7   deposition.  It was not the fault of the

8   government.  It was the fault of either the

9   witness or his attorneys.

10                 MR. BOURQUE:  Look, let's let

11  somebody else decide faults here.  Okay?  You're

12  a big boy.  You know that you don't have the

13  right to put fault on me any more than I have a

14  right to put fault on you.  Okay?

15                 MR. HANDLER:  I'd appreciate if

16  you keep your name-calling to yourself.

17                 MR. BOURQUE:  It's specifically

18  directed to me.

19                 MR. HANDLER:  Okay.  If you want

20  to act like a child, that's fine.  This

21  deposition has been concluded.

22                 MR. BOURQUE:  Yes, it is.  The

23  deposition is concluded.

24                 MR. STERN:  It has been suspended.

25                 MR. BOURQUE:  It's concluded.



1            MR. HANDLER:  You know what I

2    mean.  We'll let the Court decide.

3            MR. JACKSON:  Are we done?

4            THE STENOGRAPHER:  Mr. Jackson?

5            MR. JACKSON:  Yes, ma'am, please.

6            MR. SCHREIBER:  I need one for the

7    plaintiff as well.  Send me one for the

8    plaintiff.  Electronic.

9            THE STENOGRAPHER:  The transcript

10   has been ordered next day.

11           MR. SCHREIBER:  No.

12           MR. JACKSON:  No.

13           (Deposition concluded at 9:23 a.m.)

14

15

16

17

18

19

20

21

22

23

24

25



1                          CORRECTION PAGE

2    WITNESS NAME:   MICHAEL SHAWN KELLEY DATE:
     06/23/2020
3
     PAGE   LINE   CHANGE                REASON
4    _____

5    _____

6    _____

7    _____

8    _____

9    _____

10   _____

11   _____

12   _____

13   _____

14   _____

15   _____

16   _____

17   _____

18   _____

19   _____

20   _____

21   _____

22   _____

23   _____

24   _____

25   _____



1                          SIGNATURE PAGE

2

3       I, MICHAEL SHAWN KELLEY, have read the
   foregoing deposition and hereby affix my signature
   that same is true and correct, except as noted on
4   the correction page.

5

6                        _____
                         MICHAEL SHAWN KELLEY
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25



```
 1              UNITED STATES DISTRICT COURT
              FOR THE WESTERN DISTRICT OF TEXAS
 2
     JOE HOLCOMBE, ET AL.,        §
 3                                §
          PLAINTIFF,              §   CIVIL ACTION NO.
 4                                §   5:18-CV-00555-XR
     V.                           §
 5                                §
     UNITED STATES OF AMERICA,    §
 6                                §
          DEFENDANT.              §
 7

 8
                    REPORTER'S CERTIFICATION
 9            DEPOSITION OF MICHAEL SHAWN KELLEY
                    TAKEN JUNE 23, 2020
10

11        I, TAMARA CHAPMAN, Certified Shorthand Reporter

12   in and for the State of Texas, hereby certify to the

13   following:

14        That the witness, MICHAEL SHAWN KELLEY, was

15   duly sworn by the officer and that the transcript of

16   the oral deposition is a true record of the

17   testimony given by the witness;

18        That the original deposition was delivered to

19   STEPHEN HANDLER;

20        That a copy of this certificate was served on

21   all parties and/or the witness shown herein on

22   _____.

23        I further certify that pursuant to FRCP

24   No. 30(f)(i) that the signature of the deponent:

25            was requested by the deponent or a party
```



1  before the completion of the deposition and that the

2  signature is to be returned within 30 days from date

3  of receipt of the transcript.  If returned, the

4  attached Changes and Signature Page contains any

5  changes and the reasons therefor;

6      X  was not requested by the deponent or a

7  party before the completion of the deposition.

8      I further certify that I am neither counsel

9  for, related to, nor employed by any of the parties

10  in the action in which this proceeding was taken,

11  and further that I am not financially or otherwise

12  interested in the outcome of the action.

13      Certified to by me this 24th day of June, 2020.

14

15

16

17  Tamara Chapman, CSR, RPR-CRR
    Texas CSR #7248 (Expir. 04/30/21)
18  Firm Registration No. 77
    ESQUIRE DEPOSITION SOLUTIONS, LLC
19  9901 IH 10 West, No. 800
    San Antonio, Texas  78230
20  210.331.2280

21

22

23

24

25

