IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| JOE HOLCOMBE, et. al, § | |
| § | |
| Plaintiffs § | |
| § | |
| vs. § | NO. 5:18-CV-00555-XR |
| § | (CONSOLIDATED CASES) |
| UNITED STATES OF § | |
| AMERICA, § | |
| § | |
| Defendant § | |

**UNITED STATES' REPLY IN SUPPORT OF ITS MOTION TO COMPEL**

The United States replies to Michael Kelley and Rebecca Kelley's (collectively "Respondents'") Response to the United States' Motion to Compel as follows.

## ARGUMENT

**I.   Respondents Failed to Adequately Raise Any Reasonable Fear of Criminal Prosecution Prior to their Depositions and, Therefore, Were Required to Tailor Assertions of the Fifth Amendment Privilege to Specific Questions During Their Depositions.**

Respondents assert that the United States failed "to ensure the deposition of Michael and Rebecca Kelley could go forward and provide fruitful response." ECF No. 234 at 8. By so asserting, they improperly attempt to shift their burden to the United States. Respondents had the burden of raising and attempting to resolve any issue that would impede testimony prior to the depositions.

It appears that Mr. Kelley's attorneys attended the deposition never intending to permit their client to answer reasonable questions. With respect to immunity, Respondents raised that issue in a May 14 letter. Six days later, they filed a motion to quash in which they did not raise the issue of immunity. As the parties continued to address concerns Respondents had with the noticed depositions, including a meet and confer as well as numerous email exchanges, their counsel did not raise the issue of immunity again. The Government therefore had no reason to assume it was still an issue.

As for Mr. Kelley's assertion of the Fifth Amendment privilege, the United States did not "intentionally force[ ]" Mr. Kelley to assert that privilege during his deposition. Respondents never adequately articulated a reasonable fear of criminal prosecution prior to their depositions. Nor did they press the issue despite the correspondence and motions practice leading up to their depositions. In his May 14 letter to counsel for the United States, Mr. Bourque made the general

1

assertion that "[a]ny acquaintance of the perpetrator would be investigated as targets for indictment." ECF No. 231, Ex. B. In their motion to quash the United States' subpoena *duces tecum*, Respondents made a similar claim that they had "more than a trifling unease that the government may be seeking for someone, besides itself, to hold accountable." ECF No. 224 at 8. The motion made no mention of the May 14 letter. In the United States' response brief, it noted that the Respondents "have not shown that self-incrimination is anything more but a 'remote and speculative possibility.'" ECF No. 225 at 10 (quoting *Steinbrecher v. Comm'r*, 712 F.3d 195, 197 (5th Cir. 1983)).

After the United States addressed the Fifth Amendment privilege argument in its response brief, counsel for the United States and the Kelleys participated in a telephonic meet and confer on June 2, 2020. Counsel for the Kelleys did not raise the issue of immunity or concerns about criminal jeopardy. Following that conference, the Kelleys withdrew their motion to quash. *See* ECF No. 229. In so doing, the Kelleys' attorney noted, "Additionally, counsel for Respondents and the United States will continue to confer on deposition dates for Michael and Rebecca Kelley and do not anticipate requiring the Court's time and assistance on this matter." *Id.* at 2. Counsel for the Kelleys never again raised the issue of immunity, despite numerous emails to schedule the depositions.

Respondents therefore did not fairly apprise the United States that they were claiming fear of criminal jeopardy. The Government had no reason to assume Respondents would continue to advance the issue following the parties' conferral. In fact, absent anything besides Respondents' statements about "any acquaintance" being a suspect and having "more than a trifling unease," the United States did not know the extent to which Respondents would assert their Fifth Amendment

privilege, if at all.  Consequently, the United States moved forward with the depositions.

Respondents further claim that "the Kelleys['] assert[ion of] their Fifth Amendment right should not have been surprising to the government under the circumstances."  ECF No. 234. at 3.  That argument is wide of the mark.  Regardless of whether the Government should have anticipated that the Kelleys might assert their Fifth Amendment privilege, it had no reason to anticipate that they would improperly do so in a blanket fashion.  Instead, it was entitled to ask specific questions to elicit the assertion in order to assess the nature and scope of the claimed privilege.  In so doing, the Government was under no obligation to anticipate a suddenly renewed request for immunity or to make assurances regarding any pending investigation.

Respondents' musings regarding the Government's reasons for taking the deposition does not absolve them of their obligation to sit for the deposition and answer the questions that could not elicit self-incriminating testimony.  And, to the extent they assert their Fifth Amendment privilege, they must do so on a question-by-question basis in order for the court to assess whether (1) the answer sought is incriminating on its face or in context; and (2) the witness's asserted fear of criminal prosecution is reasonable under the circumstances.  *See United States v. Redhead*, 194 Fed. Appx. 234 236 (5th Cir. 2006); *see also Steinbrecher*, 712 F.2d at 198.

Counsel for the Kelleys prevented that from happening.  They obstructed Government counsel from asking their questions and threatened to "shut this deposition down if we go question by question just to intimidate and harass my clients."  *See* ECF No. 231, Ex. A at 17:9-18:3.  Counsel for Plaintiffs also "object[ed] to a question-by-question Fifth Amendment – questions by the government seeking to have the witness invoke the Fifth Amendment."  *Id*. at 17:17-20.  Knowing ahead of time that they would "shut this deposition down," counsel for Respondents should have sought a protective order and avoided the incivility that ensued.

Again, the government did not know that immunity was still an issue until it was raised during Mr. Kelley's deposition. Government trial counsel then made the Criminal Section of the United States Attorney's Office for the Western District of Texas aware of the issue. On July 15, 2020, the Criminal Section informed the Civil Section of that office that the Kelleys are not currently the target of any federal investigation in that District. If the Kelleys continue to have concerns regarding immunity or any other related issues, they should contact the acting Chief of the Criminal Division. Nonetheless, the depositions of the Kelleys and Ms. Smith should proceed. The United States respectfully requests that the Court issue a limiting instruction prohibiting Mr. and Mrs. Kelley from invoking the Fifth Amendment right against self-incrimination absent specific bases for doing so during their depositions. They should not be permitted to frustrate the depositions by asserting the privilege in a blanket fashion.

## II. Mr. Kelley did make a "blanket" assertion of his Fifth Amendment rights, and the remaining Respondents threatened to do the same.

Respondents claim that the Government's assertion that Mr. Kelley made a blanket assertion of his Fifth Amendment right "is a blatant lie." ECF No. 234 at 5. The transcript of the deposition, however, speaks for itself. After an exchange between counsel regarding Mr. Bourque's letter, Mr. Kelley asserted his Fifth Amendment right in response to the very next question: "were you a defendant in a case called *Lookingbill*?" *Id.* at 22:7. That question, in and of itself, could not elicit self-incrimination testimony. Nevertheless, Mr. Kelley asserted his Fifth Amendment right to that question and to every subsequent question.

Respondents argue that Mr. Kelley appropriately asserted his privilege to the question "did you review any documents?" ECF No. 234 at 6. They note that concerns over the production of documents were the basis for their previous motion for a protective order. But the Respondents

withdrew that motion based on their representation that they did not have any responsive documents. Any document that Mr. Kelley reviewed that could be construed as self-incriminating should have already been identified and produced to the United States pursuant to its previous subpoena to produce documents. If no such documents exists, as Mr. Kelley's counsel represented, Mr. Kelley could not credibly fear criminal jeopardy by answering.

Additionally, Respondents claim that "the government failed to preserve its questions and should not be permitted to now tell this Court what its questions would have been had they not chosen to stop Michael Kelley's deposition and cancel the deposition of Rebecca Kelley." *Id*. Generally speaking, counsel taking the deposition should make a record for the Court by asking the question that elicits the Fifth Amendment privilege and probing the basis for the assertion. However, counsel for the Government is not obligated to endure abuse and wade through countless roadblocks in order to do so. Given that Mr. Kelley asserted his Fifth Amendment privilege to every question following the exchange between counsel, and Mr. Bourque employed obstructionist tactics to thwart the deposition, a sufficient record was made to warrant the motion.

### III. Mr. Kelley's Counsel's Conduct was Unacceptable; the Government Acted Appropriately.

If Respondents' counsel "merely advis[ed] their clients on their constitutional rights," as they claim in their brief, *see id*. at 7, the United States would agree that their conduct was not improper. However, Mr. Kelley's counsel abused and disrespected the judicial proceeding by referring to Government counsel by a derogatory term and threatening him, saying he was lucky they were not in the same room (*See* ECF 231 Ex. A. Dept. Tr. at 16:3-4; 30:3-4; 39:10-12; 30:12-16). Such conduct was clearly unacceptable.

Conversely, the United States properly issued subpoenas for the depositions and was

5

prepared to take Mr. Kelley's testimony with no reason to assume immunity was still an issue. Counsel for the United States acted professionally throughout Mr. Kelley's deposition, despite opposing counsel's antics, and made good-faith arguments in its motion to compel. There is no basis for the allegation that Government counsel lied about Respondents' position.[1]

## CONCLUSION

For the reasons stated and upon the authorities cited, the United States respectfully requests this Court to grant its Motion to Compel and issue a limiting instruction regarding assertion of the Fifth Amendment Privilege.

Respectfully submitted,

ETHAN P. DAVIS
Acting Assistant Attorney General
Civil Division
JOHN F. BASH
United States Attorney
STEPHEN E. HANDLER
Senior Trial Counsel, Torts Branch
Civil Division

*Paul David Stern*
PAUL DAVID STERN
Trial Attorney, Torts Branch
Civil Division
United States Department of Justice
Attorneys for Defendant
UNITED STATES OF AMERICA

---

[1] Indeed, should the Court entertain such notions, the United States respectfully requests that the Court order that the audio recording of the deposition be produced by the court reporter so that the Court can have a full appreciation for the exchange between counsel during the deposition.

## CERTIFICATE OF SERVICE

      I certify that on July 15, 2020, I electronically filed the foregoing with the clerk of court by using the CM/ECF system, and that all counsel of record have received notice and been served through that system.

                                                      *Paul David Stern*
                                                      PAUL DAVID STERN
                                                      Trial Attorney, Torts Branch
                                                      Civil Division
                                                      United States Department of Justice
                                                      Attorneys for Defendant
                                                      UNITED STATES OF AMERICA