UNITED STATES DISTRICT COURT FOR THE

WESTERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| JOE HOLCOMBE, ET AL. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 5:18-CV-555-XR |
| | ) | |
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Defendant. | ) | |

## ACADEMY, LTD., D/B/A ACADEMY SPORTS + OUTDOORS' MOTION TO QUASH AND FOR PROTECTION FROM SUBPOENA SEEKING ORAL TESTIMONY

TO UNITED STATES DISTRICT COURT JUDGE XAVIER RODRIGUEZ:

Non-party Academy, Ltd. d/b/a Academy Sports + Outdoors ("Academy") asks this Court to quash, and for protection from, the United States of America's (the "United States" or "government") third-party deposition subpoena issued to Academy in this case ("Deposition Subpoena").

Academy has **already** produced more than 6,000 pages of documents covering all relevant issues for the relevant time period of Devin Kelley's purchase. Academy has also **already** provided the sworn testimony of four separate Academy employees—including each Academy employee who had any involvement in, or oversight of, the Devin Kelley transaction and Academy's head of compliance/corporate representative—covering all relevant topics outlined in the government's Deposition Subpoena. Nonetheless, and despite Academy's robust production, including transcripts of sworn testimony, the government has come fishing for more. Academy seeks the Court's protection, because the government's abusive, harassing, and overly broad demand for testimony, the relevant portion of which the government has **already received** through

83382386v.1

transcripts of prior deposition testimony, is both beyond the scope of legitimate discovery in this lawsuit and in violation of Academy's statutory rights.

## FACTUAL BACKGROUND AND STATUS AND SCOPE OF ACADEMY'S PRIOR PRODUCTION AND TESTIMONY

While Academy is not a party to this lawsuit, many of the Plaintiffs in this case have asserted claims against Academy in a number of lawsuits in Texas state court, all of which have been stayed by the Texas Supreme Court, pending the determination of Academy's immunity from suit under the Protection of Lawful Commerce in Arms Act – 15 U.S.C. §§ 7901 et seq. ("PLCAA"). From 2017 to 2019, a number of the victims and relatives of victims of the November 5, 2017 shooting by Devin Kelley in Sutherland Springs, Texas filed the following lawsuits against Academy:

- *Ward v. Academy*, Cause No. 2017-CI-23341, in the 224th Judicial District Court of Bexar County, Texas;

- *Solis v. Academy*, Cause No. 2018-CI-14368, in the 438th Judicial District Court of Bexar County, Texas;

- *McMahan v. Academy*, Cause No.  2018-CI-23299, in the 285th Judicial District Court of Bexar County, Texas;

- *Braden, R. v. Academy*, Cause No. 2018-CI-23302, in the 408th Judicial District Court of Bexar County, Texas; and

- *Braden, D. v. Academy*, Cause No. 2019-CI-03804, in the 225th Judicial District Court of Bexar County, Texas (collectively, the "Stayed Texas Litigation").

Nonetheless, prior to the stay imposed by the Texas Supreme Court, Academy was ordered by the Texas trial court to participate in discovery limited to the scope of the claims against it by the plaintiffs. The claims asserted by the plaintiffs in the Stayed Texas Litigation are based on the exact same legal theory that the government has used to designate Academy as a responsible third party here. The government used an argument identical to plaintiffs in the Stayed Texas Litigation

2

as the sole basis for Academy being named a responsible third party here, even copying plainitffs'

language to argue that "Academy sold Kelley a firearm, specifically a high-capacity Model 8500

Ruger AR-556 semi-automatic AR-15 style rifle, which included a large-capacity 30-round

magazine," that Academy was prohibited from selling to Kelley, "because sale of that rifle would

have been illegal in Colorado."  (Motion for Leave to Designate Responsible Third Parties, Doc.

#150).  In this way, with respect to Academy's alleged responsibility for the government's failure

to prevent the sale to Devin Kelley, the Texas plaintiffs and the government are wholly aligned.

Academy complied with the discovery ordered by the Texas courts, which included both

document production and deposition testimony.  All documents and information produced in the

Stayed Texas Litigation have also been produced to the government here, including the transcripts

of nearly thirteen hours of sworn testimony of four separate Academy employees, who were each

aggressively interrogated by at least four separate plaintiffs' attorneys, each trying to prove the

same thing the government wants to prove here, *i.e.*, that Academy, and not the government, is

responsible for the government's admitted failure with respect to Devin Kelley.

1. **Academy produced all relevant documents and provided all relevant testimony pursuant to court orders in the Stayed Texas Litigation.**

In the Stayed Texas Litigation, Academy urgently and persistently argued that under

PLCAA, it is immune from any "qualified civil liability action," as such term is defined by

PLCAA, necessarily including the burdens of discovery resulting therefrom.  Nonetheless, despite

Academy's repeated objections to discovery on that basis, the Texas trial court ordered Academy

to participate in some document and deposition discovery in the Stayed Texas Litigation, before

the court would hear Academy's motion for summary judgment asserting its PLCAA immunity

defense.

3

As a result of that order, and over Academy's objections, Academy produced more than 6,000 pages of documents and four separate Academy employees for depositions, and then pursued its summary judgment motion.

After the trial court improperly denied Academy's summary judgment motion to enforce its PLCAA immunity, Academy promptly sought appellate review through a petition for a writ of mandamus. At the same time, Academy urged that all discovery against it be stayed pending the outcome of the appellate proceeding. Although the Texas Court of Appeals denied Academy's petition, the Texas Supreme Court ordered that all state court litigation pending against Academy arising from the Sutherland Springs incident be stayed, including discovery.[1] The Texas Supreme Court also called for briefs on the merits, which have been submitted, and set the case for oral argument on October 6, 2020. In the meantime, the Stayed Texas Litigation has remained stayed by the Texas Supreme Court for all purposes.

2.     **Academy produced in this lawsuit all documents, information, and sworn testimony previously produced in the Stayed Texas Litigation, which are subject to the same protections applicable in the Stayed Texas Litigation.**

On March 5, 2020, the United States of America served Academy with a Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (the "First Subpoena"). The Subpoena sought the production of "all documents, records, communications, or other materials produced to any plaintiff" in the Stayed Texas Litigation. After a hearing in which this Court agreed that the protective order ensuring the confidentiality of Academy's discovery would be enforced against the parties to this lawsuit, as it is in the Stayed Texas Litigation, Academy responded to the Subpoena, producing all the same documents that had

---

[1] Texas Supreme Court Stay Order 1, attached as <u>Exhibit A</u>; Texas Supreme Court Stay Order 2, attached as <u>Exhibit B</u>.

been produced by Academy in the Stayed Texas Litigation, as well as transcripts of all sworn deposition testimony by Academy as a defendant in the Stayed Texas Litigation.

The documents already produced by Academy in response to the government's original subpoena are extensive, and include all documents related to Devin Kelley and any transaction between Devin Kelley and Academy, and a myriad of additional documents related to Academy's firearms licenses, training manuals, policies and procedures, out of state sales of modern sporting rifles, Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") audits, and costs, revenues, and profits for out of state sales, including, but not limited to:

- firearm training policies and procedures;
- firearms procedure manuals (including procedures for sales to out of state residents);
- firearm license applications and renewals;
- emails regarding policies and procedures and the strategies related thereto;
- ATF audits;
- human resource materials for certain employees;
- public communications procedures;
- information on the sales of all modern sporting rifles from all Academy stores in Bexar County to out of state purchasers;
- summary of cost, revenue, and profit for sales to out of state purchasers; and
- vendor and distributor agreements with terms specific to Academy.[2]

At the same time, Academy also produced the sworn depositions of four separate Academy employees, comprising almost thirteen hours of testimony and covering everything relevant to Devin Kelley and the scope of the Deposition Subpoena.  Specifically, Academy's employees have already provided extensive sworn testimony regarding each of the following topics:

- Every sales transaction between Academy and Devin Kelley;[3]
- Academy's implementation of, and compliance with, ATF guidance;[4]

---

[2] Affidavit of Academy's Senior Director of Compliance, attached as Exhibit C (this document has been redacted to protect the name of the employee executing the affidavit but, if requested, will be provided to the Court for in camera inspection prior to the hearing on this motion).

[3] See Summary of Academy Testimony Responsive to Government Subpoena, attached as Exhibit D (the names of Academy employees are not included to protect their privacy).

[4] See Summary of Academy Testimony Responsive to Government Subpoena, attached as Exhibit D.

- Academy's training and supervision of its employees with respect to compliance with federal and state firearms laws;[5]
- Academy's compliance practices and procedures with respect to all aspects of firearms regulation and compliance;[6]
- Academy's acquisition and sale of the Sturm, Ruger & Co. AR-556, including sales to out of state purchasers, the lack of sales quotas for firearms, and policies related to permissibility of altering the contents of boxes received from federally licensed firearms distributors.[7]

In addition to being substantively thorough, this testimony was also provided by the only four individuals who would have relevant factual knowledge of the issues: the only two Academy employees who were actually involved with the Devin Kelley transaction (the sales associate and a department manager), the director of the store where the transaction took place, and Academy's Senior Director of Compliance for all Academy stores.  Critically—because the government seeks the deposition of an Academy corporate representative—Academy's Senior Director of Compliance was already deposed in that capacity, **as a corporate representative**.  As a result, he was charged with having knowledge of all relevant topics, including those set forth in the government's subpoena for testimony.

The government has had all of this information in its possession, custody, or control since at least April.  Whether the government has actually read it, given its new requests, is doubtful, but Academy has now identified where each topic is discussed by each witness,[8] so despite its inaction or inattention, the government has no excuse.

**3.    Despite Academy's production and prior sworn deposition testimony, the government demands more of the same.**

Despite the fact that Academy has already produced all documents relevant to the facts asserted by both Plaintiffs and the government in this lawsuit, on June 24, 2020, the government

---

[5] *See* Summary of Academy Testimony Responsive to Government Subpoena, attached as <u>Exhibit D</u>.
[6] *See* Summary of Academy Testimony Responsive to Government Subpoena, attached as <u>Exhibit D</u>.
[7] *See* Summary of Academy Testimony Responsive to Government Subpoena, attached as <u>Exhibit D</u>.
[8] *See* Summary of Academy Testimony Responsive to Government Subpoena, attached as <u>Exhibit D</u>.

issued yet another subpoena for documents, seeking documents and information from years before the subject sale and unrelated to the subject sale, all of which are wholly unrelated to Devin Kelley, and which covered various categories of information that had, in relevant portion, already been produced by Academy.[9]

The government's demands are abusive and harassing and seek information that is out of proportion and outside the scope of discovery in this lawsuit. The government is either dissatisfied, or unfamiliar, with the universe of discovery reasonably relevant to the Devin Kelley transaction that has already been produced by Academy, so the government sought to expand it indefinitely. On July 13, 2020, Academy timely and thoroughly responded to the government's new subpoena, lodging numerous objections to the scope of the government's requests, but also specifically indexing the documents Academy had ***already*** produced in response to the government's original subpoena that were responsive to the government's new requests, as well.[10]

Then, after previously mentioning it in correspondence, but never providing corporate representative topics or giving any indication of what the topics might be—and despite having the document  production and sworn deposition transcripts of four Academy employees—on July 23, 2020, the government for the first time issued its corporate representative deposition subpoena, along with the proposed topics therefor.[11]  The government's corporate representative subpoena again suggested that the government has not done its due diligence; if the government had merely taken the time to read the sworn testimony already in its possession, custody, or control, it would have realized that, to the extent they are relevant to Devin Kelley and/or the claims and defenses in this lawsuit, each of the government's proposed deposition topics has already been covered, in

---

[9] *See* Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action, issued June 24, 2020, attached as <u>Exhibit E</u>.
[10] July 13, 2020 Subpoena Response, attached as <u>Exhibit F</u>.
[11] Subpoena to Testify at a Deposition in a Civil Action, attached as <u>Exhibit G</u>.

detail, by Academy employees, including Academy's Senior Director of Compliance.  In fact,

when, in an effort to understand how an additional deposition could possibly be legitimate given

Academy's prior sworn testimony, counsel for Academy asked counsel for the government if

anyone at the government had actually read the nearly thirteen hours of testimony Academy had

already produced, the government refused to respond.

## ARGUMENT AND AUTHORITIES

1.      **Academy has already produced all documents, information, and sworn testimony covering all topics and subject matter relevant to this dispute, and should not be required to do so again.**

As set forth in detail, above, Academy has already produced all documents, information,

and testimony covering all topics and subject matter relevant to this dispute.  The government's

fishing expedition for irrelevant documents and information that have no legitimate connection to

any claim or defense in this lawsuit and that are not reasonably calculated to lead to the discovery

of admissible evidence would be impermissible if applied to an actual party to this lawsuit.  As

applied to Academy, a third party with statutory immunity from suit (and the corresponding

discovery), it is downright abusive and harassing.  The government is clearly desperate to avoid

accountability for its admitted errors with respect to Devin Kelley, but that does not give it the

right to engage in an abusive fishing expedition in violation of Academy's statutory and common

law rights.

a.      **Academy is protected by PLCAA, which renders it immune from suit and limits the permissible scope of discovery against it.**

Pursuant to the PLCAA, Academy is immune from any "qualified civil liability action," as

such term is defined under PLCAA.  This immunity from suit, as set forth in PLCAA, necessarily

extends to the burdens of discovery arising from suit.  To wit, one of the stated purposes of PLCAA

was "[t]o prevent the use of . . . lawsuits to impose unreasonable burdens" on retailers who sell

firearms.  15 U.S.C. § 7901(b)(4); *see also City of New York v. Beretta*, 524 F.3d 384, 394-95 (2d Cir. 2008) ("Congress explicitly found that the third-party suits that the Act bars are a direct threat to the firearms industry," and "rationally perceived substantial effect on the industry of the litigation that the Act seeks to curtail").  The "unreasonable burdens" PLCAA was instituted to prevent include discovery.  *Id.*  Nonetheless, and despite Academy's statutory immunity from suit and the corresponding discovery, Academy has been commanded to produce certain limited documents and testimony, first by a Texas State Court and then by this Court, as well.  As detailed, above, Academy has timely and thoroughly done so, over its objections.

Despite having done so, however, Academy is still protected by PLCAA, is still immune from suit, and should still be immune from discovery.  The precise scope of that immunity, among other things, is currently before the Texas Supreme Court, and will be heard at oral argument on October 6, 2020.  While that matter is pending, however, the Texas Supreme Court has ordered that all discovery against Academy be stayed.[12]

Here, the government takes the position that, while Academy may not be subject to further discovery as a defendant in lawsuits where it is a party, it should nonetheless be subjected to such burden as a non-party in Plaintiffs' suit against the United States.  The government's position would effectively defeat PLCAA's statutory protections, and constitute a death knell for the entire statutory scheme, by allowing Plaintiffs (and others) to wholly sidestep the statute through non-party discovery.   But, in addition to defeating the entire stated purpose of PLCAA, the government's demand for additional discovery from Academy also seeks to subvert the Texas Supreme Court's stay of any further discovery against Academy, by allowing Plaintiffs to obtain

---

[12] Texas Supreme Court Stay Order 1, attached as <u>Exhibit A</u>; Texas Supreme Court Stay Order 2, attached as <u>Exhibit B</u>.

83382386v.1

additional discovery, which has been wholly barred by the Texas Supreme Court.[13]  Especially given the scope and content of the production already made by Academy in this case, and the critical issues to be heard by the Texas Supreme Court later this year, the government must not be permitted to both undercut an entire immunity statute and usurp the authority of the Texas Supreme Court in a last ditch attempt to avoid its own accountability for its admitted wrongdoing.

> **b.    Academy is a nonparty, which is not subject to the same scope or burden of discovery as the parties.**

In addition to the foregoing, Academy is a nonparty to this lawsuit, and cannot be subjected to the same burdens as the actual parties herein.  The law requires that "[w]hen discovery is sought from nonparties [the scope of discovery] must be limited even more.  Nonparties are 'strangers' to the litigation, and since they have no dog in the fight, they have a different set of expectations from the parties themselves."  *Virginia Dep't of Corrections v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019) (internal quotations omitted); *MetroPCS v. Thomas*, 327 F.R.D. 600, 610 (N.D. Tex. 2018). For that reason, "[a] more demanding variant of the proportionality analysis" applies to nonparty subpoenas.  *Jordan*, 921 F.3d at 189.  "As under Rule 26, the ultimate question is whether the benefits of discovery to the requesting party outweigh the burdens on the recipient.  But courts must give the recipient's nonparty status special weight, ***leading to an even more demanding and sensitive inquiry than the one governing discovery generally***."  *Jordan*, 921 F.3d at 189 (internal quotations and citations omitted) (emphasis added).

Here, the government demands the opposite of what the law requires.  Despite having already received all documents and sworn testimony Academy was required to produce ***as an actual defendant*** in the Stayed Texas Litigation, the government demands that Academy produce

---

[13] Texas Supreme Court Stay Order 1, attached as <u>Exhibit A</u>; Texas Supreme Court Stay Order 2, attached as <u>Exhibit B</u>.

more documents and more sworn testimony and be subjected to a greater burden as a nonparty in this case.  In addition to being nonsensical on its face, the result of the government's improper fishing expedition would be to effectively nullify Academy's statutory rights, merely because Academy is a nonparty defending against improper discovery, rather than a party doing so.

The government's logical fallacy is also a legal one: this Court's proportionality analysis requires that the government be prohibited from continuing to expand the scope of discovery against a third party at its whim, and that Academy be protected from the government's overreach. *See Whole Woman's Health v. Smith*, 896 F.3d 362 (5th Cir. 2018); *Jordan*, 921 F.3d at 189; *MetroPCS*, 327 F.R.D. at 610.  "Proportionality is determined by 'considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *JP Morgan Chase Bank, N.A. v. DataTreasury Corp.*, 936 F.3d 251, 259 (5th Cir. 2019) (citations omitted). That analysis is easy when, as here, the government has already received the documents and sworn testimony concerning the relevant subject matter, and is made even easier by the fact that Academy is a nonparty.  *Smith*, 896 F.3d at 374 (holding that the court must give special consideration to burdens imposed on nonparties).

> c.    **Academy's corporate representative deposition will not provide any new information not already covered by Academy's extensive document production and testimony.**

As part of the "more demanding" proportionality analysis the Court must do with respect to the government's corporate representative subpoena, the Court must determine whether the nonparty corporate representative deposition demanded by the government will provide additional useful information beyond that which Academy has **already produced**.  *See Jordan*, 921 F.3d at

193-94.  To that end, to have the right to pursue another deposition, despite Academy's extensive document production and sworn testimony, the government must prove that the deposition is likely to yield additional useful information within the scope of the more restrictive universe of discovery applicable to Academy, as a nonparty.  *Id.*

The government's burden in this regard is especially heavy with respect to corporate representative testimony, because corporate representatives "testify on behalf of entities, not themselves, and often do so based on careful advance preparations, not personal knowledge."  *Id.* As a result, where a "[non-party's] document production has already provided the substantive information" within the scope of discovery, a nonparty deposition is overly burdensome and improper.  *Id.*  That is the case here—the government's demand for another deposition of Academy's corporate representative is improper, because Academy has already produced both documents and testimony from its corporate representative and fact witnesses covering the entire universe of possibly relevant information, and another deposition—after nearly thirteen hours of prior testimony on these topics—will not yield any additional useful information.  *Id.*

2.    **With respect to Academy, the government's interests in this lawsuit, and Plaintiffs' interests in state court, are aligned, thus, relevant discovery for both is the same.**

Academy has already provided nearly thirteen hours of testimony covering every topic within the scope of discovery in this lawsuit.[14]  As a result, the government's only complaint must be that a government lawyer was not asking the questions.  While the government is obviously correct that it did not participate in the depositions of Academy's employees, between eight and ten Plaintiffs' counsel attended the depositions, with four actively asking questions.  Plaintiffs' counsel aggressively crossed Academy's employees for nearly thirteen hours, including more than

---

[14] *See* Summary of Academy Testimony Responsive to Government Subpoena, attached as <u>Exhibit D</u>.

five hours with Academy's corporate representative, the Senior Director of Compliance, alone. The goal of Plaintiffs' counsel for all thirteen of those hours, and in all things related to the Stayed Texas Litigation, was the same as the government's goal here: to prove that Academy was at fault for the sale to Devin Kelley.  In fact, the government's designation of Academy as a responsible third party was copied almost verbatim from the pleadings of the Plaintiffs in the Stayed Texas Litigation.  While the government is correct that it did not actually participate in the creation of Academy's prior sworn testimony, the government's interest in blaming Academy for its own wrongdoing was thoroughly represented by Plaintiffs' counsel, whose clients' interests in that lawsuit are aligned with those of the government in this lawsuit.

## CONCLUSION

The record is clear: over its objections and despite its immunity from suit, and the related burden of discovery, under PLCAA, Academy has already produced all relevant documents and information and Academy has already given all relevant sworn testimony related to this lawsuit. Whether because it never read the testimony, or because it seeks to conduct a further fishing expedition with respect to Academy, a nonparty in this lawsuit, the government has nonetheless demanded that Academy be forced to testify, again, on topics that have already been covered—by Plaintiffs seeking to prove Academy's responsibility in the Stayed Texas Litigation, just like the government seeks to do in this case—for nearly thirteen hours.[15]  The government's subpoena is abusive and harassing and must be quashed, and Academy must be protected from the government's improper fishing expedition.  Accordingly, Academy respectfully requests that this Court grant its motion to quash, quash the Deposition Subpoena, and grant such other relief as it deems just and proper.

---

[15] *See* Summary of Academy Testimony Responsive to Government Subpoena, attached as <u>Exhibit D</u>.

RESPECTFULLY SUBMITTED,

**LOCKE LORD LLP**

By:    */s/ Janet E. Militello*
       Janet E. Militello
       Tex. Bar No. 14051200
       2800 JPMorgan Chase Tower
       600 Travis Street
       Houston, Texas  77002-3095
       (713) 226-1208
       (713) 229-2544 (fax)

       **ATTORNEY-IN-CHARGE FOR
       ACADEMY, LTD. d/b/a
       ACADEMY SPORTS + OUTDOORS**

Of Counsel:

**GREENBERG TRAURIG, LLP**
Dale Wainwright
Tex. Bar No. 00000049
300 West 6th Street, Suite 2050
Austin, Texas 78701
(512) 320-7200
(512) 320-7210 (fax)

**LOCKE LORD LLP**
Brandon Renken
Tex. Bar No. 24056197
2800 JPMorgan Chase Tower
600 Travis Street
Houston, Texas  77002-3095
(713) 226-1131
(713) 229-2652 (fax)

**PRICHARD YOUNG LLP**
David M. Prichard
Tex. Bar No. 16317900
Kevin M. Young
Tex. Bar No. 22199700
10101 Reunion Place, Suite 600
San Antonio, Texas  78216
(210) 477-7400
(210) 477-7450 (fax)

83382386v.1

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a true and correct copy of the foregoing has been served on all counsel of record pursuant to the Federal Rules of Civil Procedure on August 3, 2020.


/s/ *Janet E. Militello*
Janet E. Militello

83382386v.1