```
 1            IN THE UNITED STATES DISTRICT COURT

 2             FOR THE WESTERN DISTRICT OF TEXAS

 3                   SAN ANTONIO DIVISION

 4

 5

 6   JOE HOLCOMBE, et al.      )    NO. 5:18-CV-00555-XR

 7   Plaintiffs               )      (Consolidated cases)

 8   -vs-                     )

 9   UNITED STATES OF          )

10   AMERICA                   )

11   Defendant                 )

12

13

14      Videotaped Deposition of Kimberly J. Del Greco

15                   Washington, DC

16            Thursday, November 21, 2019

17                    11:55 a.m.

18

19   Job No: J4693104

20   Pages:  1-201

21   Reported by:  Kenneth Norris

22
```



1      A.   Yes.

2      Q.   So we don't have a judge or a jury here but

3   it's just as if you were trying -- testifying before a

4   Court?

5      A.   Yes.

6      Q.   You understand that you represent the FBI in

7   what's called a Federal Rule of Civil Procedure 30

8   (b)(6) deposition?

9      A.   Yes, I do.

10     Q.   Do you have the authority to speak on behalf

11   of the FBI today?

12     A.   Yes, I do.

13     Q.   Do you understand you have an obligation to

14   testify about the information known to the FBI or

15   readily available to the FBI on the matters that

16   you're here to testify about today?

17     A.   Yes, I do.

18     Q.   Can you -- and before we get any further,

19   can you briefly describe or tell me your understanding

20   of your role today?

21     A.   I'm here to represent the FBI.  The

22   information that we receive from our Federal, State,



1   Local and Tribal partners, how we use that

2   information.

3       Q.   And what background, if any, prepared you

4   for that type of knowledge?

5            MR. STERN:  Objection.

6            THE WITNESS:  Clarify?

7   BY MR. JACOB:

8       Q.   Sure.  And that's a perfect example.  I

9   asked a bad question and you don't understand it, to

10  just let me know and I'll be able -- I'll be happy to

11  rephrase.  Okay?

12      A.   Okay.

13      Q.   Can you briefly tell me your history with

14  the FBI?

15      A.   Yes.  For sure.

16           I'm on my 29th year of government service.

17  I started in -- at the FBI in -- as an analyst and was

18  promoted through the ranks.  I have led the National

19  Instant Criminal Background Check Section.

20           I led the Biometric Services Section.  I

21  went back to the National Instant Criminal Background

22  Check Section, and then I was promoted to the deputy



 1  assistant director and I oversee the NICS section, the

 2  Biometric section and our IT component at the CJIS

 3  Division and that's the Criminal Justice Information

 4  Service Division in Clarksburg, West Virginia for the

 5  FBI.

 6       Q.   You gave me a lot there.  I might have to

 7  break it down a little bit, if you don't mind.

 8            First I appreciate your public service to

 9  the country.

10       A.   Thank you.

11       Q.   You said that you started with the FBI.

12  Have you been with the FBI your entire career?

13       A.   Except for the first five years, I was with

14  the Department of Education.

15       Q.   Okay.  And you also said that you led the

16  National Instant Criminal Background Search System.

17  And it seems like you led it for a certain amount of

18  time and then you moved on to do something else, and

19  then you came back multiple times in your career.  Is

20  that fair?

21       A.   That is correct.

22       Q.   So how many years in total would you say you



1          Or a delay, and that indicates that -- that

2    puts a three-day hold and we provide then the Brady

3    date in which the FFL could transfer the firearm.

4          Q.    Okay.  I'll go ahead and mark as an exhibit.

5          (Del Greco Exhibit No. 1 was marked for

6    identification.)

7    BY MR. JACOB:

8          Q.    Ms. Del Greco, I've handed you Exhibit 1.

9    Do you have the Exhibit 1 in front of you?

10         A.    Yes, I do.

11         Q.    Have you ever seen Exhibit 1 before?

12         A.    Yes, I have.

13         Q.    If you wouldn't mind flipping to Page 9 of

14   Exhibit 1.

15         A.    (Witness complies.)

16         Q.    Do you see Paragraph 7 on Page 9 of

17   Exhibit 1?

18         A.    Yes, I do.

19         Q.    Have you read that paragraph before today?

20         A.    Yes, I have.

21         Q.    Are you prepared to discuss the subjects

22   contained within Paragraph 7 of Exhibit 1 today?



1       A.    I'm prepared to discuss how the FBI receives

2   the information into our systems and what we do with

3   that information to protect the citizens of the United

4   States.

5       Q.    Well, let me direct you back to my question.

6            Are you prepared to discuss the subjects

7   within Paragraph 7 of Exhibit 1?

8            MR. STERN:   Objection.

9            THE WITNESS:   I'm here to represent the FBI

10  and the process in which NICS processes -- receives

11  information and processes firearm background checks.

12  BY MR. JACOB:

13      Q.    Okay.   Are there any subjects within

14  Exhibit 7 that you're unprepared to discuss today?

15      A.    In relation to NICS, NIBRS and UCR do not

16  have any correlation at all to an NICS processing for

17  firearm background check.

18      Q.    So, is it your testimony you're unprepared

19  to discuss topics related to NIBRS as identified in

20  Paragraph 7 of Page 9 of Exhibit 1?

21            MR. STERN:   Objection.

22            THE WITNESS:   NIBRS and UCR do not correlate



1  a timely manner aided the NICS section to ensure

2  public safety by the denying 120 -- 120,497 firearm

3  background checks in 2016."

4       Q.   Okay.  First, is it a true statement that in

5  2016, 120,497 firearm background checks were denied?

6       A.   That is correct.

7       Q.   Okay.  And is it a true statement that being

8  able to view valuable information in a timely manner

9  aided the NICS section in ensuring public safety?

10      A.   It did.

11      Q.   Fair to say that NICS is a program designed

12  to ensure public safety?

13           MR. STERN:  Objection.

14           THE WITNESS:  It is.

15  BY MR. JACOB:

16      Q.   Would it be fair to say that the NICS system

17  decreases the risks of shooting deaths by keeping guns

18  out of the hands of felons?

19      A.   No.

20      Q.   Why is that?

21      A.   I think guns are obtained in many different

22  ways.  Our job is to process the firearm background



1   check solely.  That's it.

2        Q.   Okay.  Do you think NICS decreases the risk?

3            I'm not saying eliminates the risk.  I'm

4   saying, does NICS help decrease the risk of shooting

5   deaths by keeping guns out of the hands of felons?

6        A.   We've never done a study to determine that.

7        Q.   Okay.  Well, do you agree that in order for

8   NICS -- the NICS system to work, the FBI needs

9   accurate collection of data and reporting of felons?

10       A.   Yes.

11       Q.   Do you agree that the more information that

12  you have, the more dangerous criminals that you can

13  prevent from acquiring firearms?

14       A.   I think the more information we have, the

15  better decisions we can make.  Yes.

16       Q.   Sure.  Do you agree that the more

17  information you have about deniable offenses of

18  individuals, the better decisions that you can make in

19  preventing individuals who shouldn't have firearms

20  under federal law from acquiring those firearms?

21       A.   Yes.

22       Q.   Would you expect government agencies to



1  accurately collect and report deniable offenses to the

2  FBI?

3            MR. STERN:  Objection.

4            THE WITNESS:  Yes.

5  BY MR. JACOB:

6      Q.   Would you expect government agencies to

7  accurately collect and report fingerprints of

8  individuals with deniable offenses and report them to

9  the FBI?

10           MR. STERN:  Objection.

11           THE WITNESS:  Fingerprints are submitted to

12  the FBI with a criminal arrest.

13  BY MR. JACOB:

14     Q.   And would you expect government agencies to

15  submit fingerprints to the FBI upon a criminal arrest?

16     A.   Yes.

17     Q.   Would you expect government agencies to

18  collect fingerprints and submit them to the FBI upon a

19  criminal arrest?

20     A.   Yes.

21     Q.   Would you expect government agencies to

22  correct missing or incorrect information about



1    individuals with deniable offenses?

2         A.    Please clarify.

3         Q.    Sure.   If a government agency sends

4    information about an individual with a deniable

5    offense that is incomplete, for example, would you

6    expect them to correct it in a timely fashion?

7         A.    We expect updates to the record as they're

8    adjudicated through the process.

9         Q.    Sure.   Would you agree with me that

10   government agencies should collect and submit deniable

11   offenses in a timely fashion?

12             MR. STERN:   Objection.

13             THE WITNESS:   Yes.

14   BY MR. JACOB:

15        Q.    Would you agree with me that when government

16   agencies fail to share data on dangerous individuals

17   with deniable offenses, they unnecessarily expose the

18   public to an increased risk of gun violence?

19        A.    I can't surmise that.

20        Q.    Why is that?

21        A.    That's an opinion that I would have.

22        Q.    Well, let me ask you this:   Is that an



1    system searches these three databases in Exhibit 2,

2    Page 7, right?

3              MR. STERN:  Objection.

4              THE WITNESS:  The NICS system searches the

5    three databases.

6    BY MR. JACOB:

7        Q.   Yes.

8              So what is the Interstate Identified Index?

9        A.   It's a database that houses all of the

10   criminal history records associated with an arrest

11   charge with a ten print, fingerprint card.

12       Q.   What is the National Crime Information

13   Center?

14       A.   It's a database that houses wanted persons

15   protection orders and other property files.

16       Q.   Does the National Information Center contain

17   a database of NICS denies -- take that question back.

18   Let me ask that again.

19            Does the National Crime Information Center

20   contain a database of individuals who the NICS has

21   previously denied a firearm to?

22       A.   It has a denied persons file within it.



1    Q.   And what is the NICS indices?

2    A.   The NICS indices is a database that houses

3  prohibitors that could not reside in the triple I or

4  the NCIC, and they are an automatic denial when hit

5  upon.

6    Q.   Okay.  And this is going to help me sort of

7  understand where everything lays in the bigger scheme

8  of things.

9         So if we could kind of build an

10  organizational chart for a second.

11         So you have the NICS Background Search

12  System that searches these three databases; the III,

13  the NCIC and the NICS indices, correct?

14    A.   It automatically searches all three

15  databases, correct.

16    Q.   Sure.  And what about this Department of

17  Homeland Security?  There's a non-solid line to that

18  one?

19    A.   If there's a non-U.S. citizen, then we would

20  access that database to look at their holdings.

21    Q.   Okay.  So for U.S. citizens, we're not

22  worried about the Department of Homeland Security,



1   conviction and verify that that's an accurate

2   relationship.

3        Q.   Okay.  Well, but their job is a lot easier

4   if you find a conviction for a felon within the NICS

5   database, correct?

6             MR. STERN:  Objection.

7             THE WITNESS:  It depends on the prohibitor.

8   BY MR. JACOB:

9        Q.   Well, I'm talking about a felony conviction,

10  a crime punishable by more than a year in prison?

11       A.   Yes.

12       Q.   That's instant denial, right?

13       A.   If the record's provided.

14       Q.   Sure.

15       A.   If it's available.

16       Q.   And obviously in order for that system to

17  work, you have to have the record of the felony

18  conviction, right?

19             MR. STERN:  Objection.

20             THE WITNESS:  I mean, in most instances that

21  would make it work.  But we have to do a lot of

22  research on our records.



1       Q.   Now, I wanted to talk a little bit -- I have

2    another exhibit for you.

3            We'll mark this as Exhibit 9.

4            (Del Greco Exhibit No. 9 was marked for

5    identification.)

6    BY MR. STERN:

7       Q.   Do you have Exhibit 9 in front of you?

8       A.   Yes.

9       Q.   What is Exhibit 9?

10      A.   It's a memorandum of understanding between

11   the Department of Defense and the FBI.

12      Q.   And is it a true and correct copy of the

13   memorandum of understanding between the Department of

14   Defense and the FBI?

15      A.   Yes.

16      Q.   Have you seen this document before today?

17      A.   Yes, I have.

18      Q.   Can you tell me what the purpose of this

19   memorandum of understanding between DOD and FBI is?

20      A.   It is so the Agency, it's the FBI's

21   agreement that the Agency provide prohibiting

22   information to the NICS.



1       Q.    Okay.   So is it fair to say that under this

2    agreement, the Department of Defense undertook the

3    obligation to provide the FBI deniable offenses for

4    use in the NICS Background Search System?

5       A.    Yes.

6       Q.    I want to take a look at a couple of things

7    that this document notes.

8             Do you see Page 3 of Exhibit 9 which is

9    Bates stamped 4117?

10      A.    Yes.

11      Q.    And do you see the section titled Terms of

12   Disclosure?

13      A.    Yes.

14      Q.    Under A, do you see that paragraph titled A?

15      A.    Yes.

16      Q.    Records of elements.   "The DOD will provide

17   data from the Defense Incident Base Reporting System,

18   a system of records subject to Privacy Act

19   requirements.   Should the DOD determine it possesses

20   relevant records from sources other than the DIBRS,

21   the DOD also requires to provide those records

22   expeditiously."



1          Can you tell me what the DOD is agreeing to

2     here?

3          A.   They are agreeing to provide prohibiting

4     information to the NICS system.

5          Q.   And not only just prohibiting information

6     from the NICS -- to the NICS system, but the DOD is

7     agreeing to provide prohibiting information that's

8     contained within their DIBRS, D-I-B-R-S, database.  Is

9     that fair?

10              MR. STERN:  Objection.

11              THE WITNESS:  It says DIBRS and other

12     sources, other than DIBRS, correct.

13     BY MR. JACOB:

14          Q.   Sure.  So the DOD is agreeing in this

15     contract with the FBI that they will take any

16     information that has prohibiting offenses within their

17     DIBRS database and provide it to the NICS background

18     search system.  Is that fair?

19              MR. STERN:  Objection.

20              THE WITNESS:  Yes, that's correct.

21     BY MR. JACOB:

22          Q.   But not only just the DIBRS database, if



KIMBERLY J. DEL GRECO                                      November 21, 2019
JOE HOLCOMBE vs UNITED STATES                                           130

1  they have information in other databases, they'll

2  provide it to the NICS system, true?

3        A.   Correct.

4        Q.   And would you look at Page 5 of Exhibit 9?

5  Do you have that in front of you?

6        A.   Yes.

7        Q.   Do you see Paragraph 8?

8        A.   Yes.

9        Q.   And Paragraph 8 it says, "The DOD will be

10  responsible for ensuring the accuracy and validity of

11  the data it provides to the FBI and agrees to correct

12  any record determined to be invalid or incorrect."

13  True statement?

14        A.   Yes.

15        Q.   So here, the DOD is saying, look, if there's

16  data that we provide the FBI that's just wrong,

17  incomplete, we're going to fix it.  Layman terms?

18             MR. STERN:   Objection.

19             THE WITNESS:   Correct.

20  BY MR. JACOB:

21        Q.   With regard to Devin Kelly and the data that

22  the FBI had, I think we've discussed at length that



1   the FBI didn't have the information it needed for the

2   NICS Background Search System for Devin Kelly,

3   correct?

4           MR. STERN:  Objection, mischaracterizes

5   previous testimony.

6           THE WITNESS:  Correct.

7   BY MR. JACOB:

8       Q.   Is it fair to say that at no point did

9   either DOD or the Air Force correct that missing

10  information?

11      A.   Correct.

12      Q.   We talked a little bit about the

13  conversations you had before this deposition and I

14  want to make sure the record is clear.

15          You said that you -- and I don't want to

16  hear anything about what you talked to with these

17  individuals over here -- but you said that you did

18  talk to Mr. Stern and Ms. Bumgardner?

19          MS. BUMGARDNER:  Bumgardner.

20  BY MR. JACOB:

21      Q.   Other than these two individuals, did you

22  talk to anyone else about this deposition or this



1                REPORTER'S CERTIFICATE:

2                District of Columbia

3                City of Washington, to wit:

4                     I, KENNETH NORRIS, a Notary Public of

5      the District of Columbia, City of Washington, do

6      hereby certify that the within named witness

7      personally appeared before me at the time and place

8      herein set out, and after having been duly sworn by

9      me, according to law, was examined.

10                     I further certify that the examination

11     was recorded stenographically by me and this

12     transcript is a true record of the proceedings.

13                     I further certify that I am not of

14     counsel to any of the parties, nor in any way

15     interested in the outcome of this action.

16                     As witness my hand and notarial seal

17     this 21st day of November, 2019.

18                     _____

19                          KENNETH NORRIS

20                          Notary Public

21     My Commission Expires:  1-4-24

22



IN THE UNITED STATES DISTRICT FOR
THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JOE HOLCOMBE, et. al, | § | NO. 5:18-CV-00555-XR |
| | § | |
| Plaintiffs | § | Consolidated with: |
| | § | 5:18-cv-00712-XR (*Vidal*) |
| | § | 5:18-cv-00881-XR (*Uhl*) |
| vs. | § | 5:18-cv-00944-XR (*Ramsey*) |
| | § | 5:18-cv-00949-XR (*McNulty*) |
| UNITED STATES OF | § | 5:18-cv-00951-XR (*Wall*) |
| AMERICA, | § | 5:18-cv-01151-XR (*Amador*) |
| | § | 5:19-cv-00184-XR (*Brown*) |
| Defendant | § | 5:19-cv-00289-XR (*Ward*) |
| | § | 5:19-cv-00506-XR (*Workman*) |
| | § | 5:19-cv-00678-XR (*Colbath*) |
| | § | 5:19-cv-00691-XR (*Braden*) |
| | § | 5:19-cv-00706-XR (*Lookingbill*) |
| | § | 5:19-cv-00714-XR (*Solis*) |
| | § | 5:19-cv-00715-XR (*McKenzie*) |
| | § | 5:19-cv-00805-XR (*Curnow*) |
| | § | 5:19-cv-00806-XR (*Macias*) |

## NOTICE OF DEPOSITION

To: Defendant, United States of America, by and through
its attorney, Paul Stern, United States Department of
Justice, Three Constitution Square, 175 N Street,
N.E., Washington, DC 20002.

From: Plaintiffs, Vidal, et. al, 5:18-cv-712-XR, McNulty, et.
al, 5:18-cv-00949-XR; Wall, et. al, 5:18-cv-00951-XR;
Solis, et. al, 5:19-cv-00714-XR, and McKenzie, 5:19-cv-
00715-XR.

Page 1 of 12



CJIS, NICS, NGI, DMDC, NIBRS, DIBRS, IAFIS, or
NCIC.

6.   Handouts, manuals, course materials, or other documents
concerning the training or education of any Air Force
employee on fingerprint collection and final disposition
submission procedures.

Please take notice that under Fed. R. Civ. P. 30(b)(6), the above Plaintiffs will take the deposition of the Defendant, United States of America, by oral examination using video, audio, and stenographic means, at the following location and date:

| | |
|---|---|
| Date: | September 12, 2019 |
| Location: | United States Attorney's Office<br>601 NW Loop 410, Ste. 600<br>San Antonio, Texas 78216 |
| Time: | 9:00 AM CST |
| Court Reporter: | Res Ipsa or designee |
| Videographer: | Res Ipsa or designee |

The deposition will continue from day to day until completed, with such breaks, as necessary. Pursuant to Rule 30(b)(6), the United States of America shall designate one or more officers, directors, managing agents, or other persons who consent and are knowledgeable to testify on the United States' behalf with respect to the subject matters set forth in attached Exhibit A. A request to produce documents permitted under Rule 30(b)(2) is attached as Exhibit B.

## DEFINITIONS

Please see applicable definitions in W.D. Tex. Local Rule CV-26(b)(1)–(7). The singular form of any word shall include within its meaning the plural form of the word and vice versa. For your convenience, Plaintiffs have duplicated those definitions here:

**Communication**. The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

**Document**. The term "document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a). A draft of a nonidentical copy is a separate document within the meaning of this term.

**Identify (With Respect to Persons)**. When referring to a person, to "identify" means to give, to the extent known, the person's full name, present or last known address, e-mail address, and telephone number, and when referring to a natural person, additionally, the present or last known place of employment. Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

**Identify (With Respect to Documents)**. When referring to documents, "to identify" means to give, to the extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s), and recipient(s).

**Parties**. The terms "plaintiff" and "defendant" as well as a party's full or abbreviated name or pronoun referring to a party mean the party and, where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries or affiliates. This definition is not intended to impose a discovery obligation on any person who is not a party to the litigation.

**Person**. The term "person" is defined as any natural person or business, legal or governmental entity or association.

**Concerning.** The term "concerning" means relating to, referring to, describing, evidencing or constituting.

# ACRONYMS

The following acronyms apply to this notice:

| ACRONYM | MEANING |
| --- | --- |
| AFOSI | Air Force Office of Special Investigations |
| CJIS | Criminal Justice Information Services |
| DIBRS | Defense Incident-Based Reporting System |
| DMDC | Defense Manpower Data Center |
| DoD | Department of Defense |
| DODIG | Department of Defense Inspector General |
| I2MS | Investigative Information Management System |
| IAFIS | Integrated Automated Fingerprint Identification System |
| NCIC | National Crime Information Center |
| NGI | Next Generation Identification |
| NIBRS | National Incident-Based Reporting System |
| NICS | National Instant Criminal Background Check System |
| USAF | United States Department of Air Force |

Respectfully Submitted,


/s/ Jason P. Steed

**Jason P. Steed**
JSteed@kilpatricktownsend.com
Texas Bar No. 24070671
**Kilpatrick Townsend & Stockton LLP**
2001 Ross Avenue, Suite 4400
Dallas, TX 75201
Office 214-922-7112
Fax 214-853-5731
Counsel for Vidal, McNulty, and Wall

/s/ Jamal K. Alsaffar

**Jamal K. Alsaffar**
JAlsaffar@nationaltriallaw.com
Texas Bar No. 24027193
**Tom Jacob**
TJacob@nationaltriallaw.com
Texas Bar No. 24069981
**Whitehurst, Harkness, Brees, Cheng, Alsaffar & Higginbotham & Jacob PLLC**
7500 Rialto Blvd, Bldg. Two, Ste 250
Austin, TX 78735
Office 512-476-4346
Fax 512-476-4400
Counsel for Vidal, McNulty, McKenzie, Solis, Ramirez and Wall

## CERTIFICATE OF SERVICE

By our signatures above, we certify that a copy of this pleading, Notice of Deposition, has been sent to the following on August 22, 2019 via email and certified mail, return receipt requested.

JOSEPH H. HUNT
Assistant Attorney General
United States Dept. of Justice
Civil Division

JOHN F. BASH
United States Attorney
Western District of Texas

KIRSTEN WILKERSON
Assistant Director, Torts Branch
United States Dept. of Justice
Civil Division

PAUL DAVID STERN
Trial Attorney, Torts Branch
United States Dept. of Justice
Civil Division
CLAYTON R. DIEDRICHS
Assistant United States Attorney

JIM F. GILLIGAN
Assistant United States Attorney

JOHN PANISZCZYN
Civil Chief
United States Attorney's Office
Western District of Texas

JAMES G. TOUHEY, JR.
Director, Torts Branch
United States Dept. of Justice
Civil Division

STEPHEN E. HANDLER
Senior Trial Counsel, Torts Branch
United States Dept. of Justice
Civil Division

STEPHEN TERRELL
Trial Attorney, Torts Branch
United States Dept. of Justice
Civil Division
JAMES E. DINGIVAN
Assistant United States Attorney

# EXHIBIT A

Examination is requested on the following subject matter areas:

1.   The identity of persons, and identity and location of documents referenced in the DODIG-2015-011 Report.

2.   The identity of persons, and identity and location of documents referenced in the DODIG 2015-081 Report.

3.   The identify of persons, and identity of location of documents referenced in the DODIG 2018-035 Report.

4.   The identity of persons, and identity and location of documents referenced in the DODIG-2019-030 report.

5.   Training or education USAF personnel received concerning fingerprint collection and final disposition submission procedures, including submission to the FBI CJIS, NIBRS, or DIBRS. This topic concerns training or education given to personnel involved in the investigation, court-martial, or confinement of Devin Kelley between July 1, 2011 and December 14, 2012, whether they received the training at the time or some earlier time. This topic includes, but is not limited to: (a) the training or education provided by the Air Force Security Forces Academy at Joint Base San Antonio-Lackland, Texas; (b) the 65-day course at the security Forces Academy covering basic military police functions; (c) formal or informal training; (d) "on-the-job" training or education; (e) recurring or annual training or education; and (f)

training or education provided by the Naval Corrections
Academy.

6.  Policies, procedures, practices, checklists, and protocols
    concerning Air Force Security Force's and AFOSI's
    execution of DoD Instruction 7730.47-M Volume 1. This
    topic includes, but is not limited to, the monthly
    submission of information to the DMDC and the DIBRS
    database for centralization of the collection of
    information reportable by the DoD Components pursuant
    to The Brady Handgun Violence Prevention Act of 1993.
    This topic includes but is not limited to, information
    concerning I2MS, as noted on pages 8–9 of DODIG-2015-
    011.

7.  Policies, procedures, practices, checklists, and protocols
    concerning the FBI CJIS NICS database and how other
    databases such as Next Gen (NGI) (formerly Integrated
    Automated Fingerprint Identification System (IAFIS)),
    NCIC, NIBRS, and Uniform Crime Report (UCR) are used
    to populate it. This topic includes, but is not limited to,
    the process by which the FBI receives and subsequently
    uses the information from DIBRS to prevent the purchase
    of firearms by any person prohibited by one of the eight
    listed categories.

8.  Policies, procedures, practices, checklists, and protocols
    concerning the Air Force Security Force's and AFOSI's
    execution of DoD Instruction 5505.11. This topic includes,
    but is not limited to, the submission of fingerprints and
    final disposition reports to FBI CJIS by both the Air Force
    Security Force and AFOSI. This topic includes, but is not
    limited to, the process by which Devin Kelley's

fingerprints and final disposition report should have been reported to FBI CJIS.

9. Policies, procedures, practices, checklists, and protocols concerning probable cause determinations by a Staff Judge Advocate, especially to include, when a determination should be made, and any training given to guide Judge Advocates on probable cause determinations.

10. Policies, procedures, practices, checklists, and protocols concerning the USAF Corrections System policy for post-trial inmates during in-processing concerning the submission of fingerprints and final disposition reports to the FBI. This topic includes, but is not limited to, the collection of Devin Kelley's fingerprints and submission of his final disposition report by the confinement facility personnel.

11. Policies, procedures, practices, checklists, and protocols put in to place following DODIG-2015-081 pertaining to the AFOSI's NCIC program director to ensure that fingerprints and final disposition reports are submitted to IAFIS (NGI) according to DoD Instruction 5505.11.

## EXHIBIT B

Under Fed. R. Civ. P. 34(b)(2), you are commanded to attend and testify at the above specified time and place; you are commanded to produce the below designated documents, electronically stored information, or tangible things in your possession, custody, or control. The following requests do not seek any communication to or from your legal counsel. Please produce a true and correct copy of the following within thirty (30) days of this notice or at the deposition, whichever is sooner. If produced before the deposition date, please produce these documents electronically. If produced at the deposition, please produce a physical copy of the document for examination and marking as a deposition exhibit, as well as an electronic version of the document in its native format.

1. Your current curriculum vitae or resume.

2. Documents you reviewed in preparation for this deposition.

3. Policies, procedures, practices, checklists, or protocols concerning the topics covered in Exhibit A.

4. Reports, notes, logs, letters, communication, or other documents you have authored or have been sent to you concerning this case or the topics covered in Exhibit A.

5. Charts, diagrams, PowerPoints, illustrations, or other demonstrative aids that illustrate the relationships or communication between any of the following: the FBI