```
1          IN THE UNITED STATES DISTRICT FOR
             THE WESTERN DISTRICT OF TEXAS
2                 SAN ANTONIO DIVISION

3

   JOE HOLCOMBE, et al.,   :
4                          :
          Plaintiffs,      :
5                          :
   v.                      :No:
6                          :5:18-CV-00555-XR
   UNITED STATES OF        :
7  AMERICA,                :
                           :
8          Defendant.      :

9

10

11          VIDEOTAPED DEPOSITION OF
                COLONEL JOHN OWEN
12

13

14       Wednesday, December 18, 2019
                  10:54 a.m.
15

16

          United States Attorney's Office
17      United States Department of Justice
            175 N Street, Northeast
18        Three Constitution Square
               Washington, D.C.
19

20       Noojan Ettehad, Videographer
       Terry L. Bradley, Court Reporter
21

22
```



```
 1                    COLONEL JOHN OWEN,

 2      having been first duly sworn, testified as

 3      follows:

 4

 5                        EXAMINATION

 6      BY MR. JACOB:

 7           Q.     Could you state your name for us,

 8      please?

 9           A.     John Owen.

10           Q.     And what is your occupation?

11           A.     I'm an attorney, a JAG, with the

12      United States Air Force.

13           Q.     And could you give us your title.

14           A.     I'm the chief of the Military

15      Justice Division.

16           Q.     Um, and how long have you been the

17      Chief of the Military Justice Division?

18           A.     Since August of 2019.

19           Q.     Okay.   And have you ever given a

20      deposition before?

21           A.     I have not.

22           Q.     Okay.   So this is first time.   Have
```



```
 1        A.    Yes.

 2        Q.    And do you understand that you --

 3              -- that you are obligated to testify

 4   on all information known or reasonably

 5   available to the United States concerning the

 6   topics you've been designated for?

 7        A.    Yes.

 8        Q.    Do you have the full authority to

 9   speak on behalf of the Government concerning

10   those topics?

11        A.    I do.

12        Q.    How did the United States prepare

13   you to testify on behalf of the United States

14   on those topics?

15        A.    We --

16              MS. KRIEGER:  Objection.

17   Attorney-client privilege.

18              MR. JACOB:  Are you instructing him

19   not to answer?

20              MS. KRIEGER:  Can you restate the

21   question.

22   BY MR. JACOB:
```



1   thing.  I have seen this provision.  I did not

2   realize that this was in this document.  But I

3   have seen this paragraph previously.

4        Q.    Okay.  So --

5              And by paragraph, are you referring

6   to Paragraph 9 of Page 10 of Exhibit 1?

7        A.    That's correct.

8        Q.    Okay.  And I'll represent to you

9   that the United States has designated you as a

10  witness who can testify under Federal Rules

11  Civil Procedure 30(b)(6) on Topic 9 of Page 10

12  of Exhibit 1.  Would you agree that's true?

13       A.    Yes.

14       Q.    Do you have full authority to talk

15  on behalf of the United States concerning Topic

16  9 of Exhibit 1?

17       A.    I do.

18             (Exhibit 5 marked for

19  identification.)

20       Q.    Mark as Exhibit 5, and hand you a

21  document that's been marked as Exhibit 5, and

22  let me know when you've had a chance to look at



1   Out of scope.

2           THE WITNESS:  Security Forces.

3   That's correct.

4   BY MR. JACOB:

5       Q.    Okay.  Um, and what this policy is

6   saying is that the Security Forces at no point

7   later --

8           -- earlier than a subject interview

9   should coordinate with the servicing SJA or

10  legal advisor on --

11          -- on submitting these fingerprint

12  cards after probable cause has been determined,

13  correct?

14          MS. KRIEGER:  Objection.  Form.

15          THE WITNESS:  That is correct.

16  BY MR. JACOB:

17      Q.    Okay.  So and I think we'll see this

18  theme as we look through these policies, but

19  the Air Force Instruction is putting the

20  obligation on the Field Agents to come to the

21  Judge Advocates to coordinate on probable

22  cause, fair?



1      A.     That is fair.

2      Q.     Um, and of course the Judge

3  Advocates have the obligation to be available

4  to the Field Agents to make such coordinations,

5  true?

6      A.     True.

7      Q.     And we also see that if you look on

8  Page USA 10300, under Paragraph 9.2.4.1.

9      A.     9.2.4.1.  I see it.

10      Q.     And the second sentence of that

11  paragraph reads:  SF -- Security Forces -- must

12  consult with the SJA prior to making a probable

13  cause determination, correct?

14      A.     That is correct.

15      Q.     Now are you familiar with Air Force

16  regulations that impose obligations on Field

17  Agents to consult with Judge Advocates in

18  making probable cause determinations?

19      A.     I know that they exist, but that's

20  not really my practice area, so I wouldn't be

21  an expert in those particular AFIs.

22      Q.     Sure.  Let me show you another AFI.



1    with "It is imperative"?

2        A.    I think so.  Does it follow

3    Attachment 8?

4        Q.    Yes, it does.

5        A.    Yes.

6        Q.    Okay.  So that sentence reads:  It

7    is imperative that Units coordinate with the

8    SJA, and as appropriate civilian prosecutorial

9    authority, as soon as possible to determine

10   probable cause for the submission of

11   fingerprints to the FBI.

12            Did I read that correctly?

13       A.    You did.

14       Q.    So what this Instruction Manual

15   71-121 is doing is imposing an obligation on

16   the Field Agents, the Units, to coordinate with

17   the Staff Judge Advocate to determine probable

18   cause as soon as possible before the submission

19   of fingerprints to the FBI, correct?

20       A.    That is correct.

21       Q.    And again, what we see is the

22   obligation to coordinate, to make the first



1    step, to reach out, is on the individual AFOSI

2    Agents, right?

3         A.    Yes.

4         Q.    And that's the same thing that we

5    saw with regard to the Security Forces Agents.

6    They have the obligation to reach out to the

7    Judge Advocates, right?

8         A.    Yes.

9         Q.    Um, are you aware of any checklist

10   or other policies that ensure that such

11   coordination occurs?

12        A.    I am not aware of any checklists in

13   the Judge Advocate realm.  No.

14        Q.    Um, can you tell me why Air Force

15   policy would require AFOSI Agents or Security

16   Forces Agents to coordinate with the Judge

17   Advocates before making probable cause

18   determinations and submitting fingerprints to

19   the FBI?

20             MS. KRIEGER:  Objection.  Out of

21   scope.

22             THE WITNESS:  I would imagine that



```
 1    higher and require more obligations on the

 2    Units to coordinate with the Judge Advocates,

 3    fair?

 4         A.    That is fair.

 5         Q.    Um, would it be fair to say that one

 6    reason that you might want Units to coordinate

 7    on probable cause determinations with the Judge

 8    Advocates is because the Judge Advocates are

 9    lawyers?

10         A.    That would be fair.

11         Q.    They have extensive knowledge

12    concerning probable cause through their

13    training in law school presumably, right?

14         A.    Also fair.

15         Q.    Um, and more likely than not Agents

16    are not going to be lawyers, right?

17         A.    Most likely not.

18         Q.    Um, so would it be --

19              It's not inconceivable that in that

20    coordination that the Judge Advocate might pick

21    up on probable cause issues that the Agents

22    might miss, fair?
```



COLONEL JOHN OWEN                                    December 18, 2019
JOE HOLCOMBE vs UNITED STATES OF AMERICA                           57

```
 1        A.    It is possible.

 2        Q.    It's likewise, Judge Advocates --

 3              An Agent might come to a Judge

 4   Advocate and say:  You know, I think there's

 5   probable cause here for submission.

 6              And the Judge Advocate, with their

 7   knowledge of the law, might tell the Agent:

 8   You know, I don't think there's probable cause

 9   here, and here's why.

10              True?

11        A.    True.

12        Q.    Um, so it could go either way,

13   right?

14        A.    It could.

15        Q.    And Judge Advocates are also aware

16   of other laws, such as the Brady Bill and the

17   Lautenberg Amendment, true?

18        A.    True.

19        Q.    So when Agents are consulting with

20   Judge Advocates on their cases, Judge Advocates

21   would be able to identify when requirements of

22   those laws are not being met by Agents, fair?
```



```
 1              MS. KRIEGER:  Objection.  Out of
 2    scope.
 3              THE WITNESS:  The attorney would be
 4    able to add that perspective.  Yes.
 5    BY MR. JACOB:
 6        Q.    Would it be fair --
 7              And let me ask you this:  How
 8    familiar are you with the Brady Bill and the
 9    Lautenberg Amendment?
10              MS. KRIEGER:  Objection.  Out of
11    scope.
12              THE WITNESS:  I'm fairly familiar.
13    BY MR. JACOB:
14        Q.    And how are you fairly familiar?
15        A.    In the scope of my duties over the
16    last several years there have been occasions
17    when the Air Force has called greater attention
18    to certain laws; one of them was the Lautenberg
19    Amendment.  And in becoming familiar with the
20    Lautenberg Amendment, you necessarily become
21    familiar with the Brady Bill.  Brady Act.
22        Q.    You understand that those laws
```



```
 1   require the submission of certain criminal

 2   history data to the FBI for inclusion into the

 3   NICS background search system, true?

 4               MS. KRIEGER:  Objection.  Out of

 5   scope.

 6               THE WITNESS:  I am familiar with

 7   those requirements.

 8   BY MR. JACOB:

 9       Q.    Um, would it be --

10             Would you agree with me that in

11   order for the NICS to keep guns out of the

12   hands of felons, DOD, its components, including

13   the Air Force, must submit, collect and submit

14   criminal history data?

15               MS. KRIEGER:  Objection.  Out of

16   scope.

17               THE WITNESS:  Could you repeat the

18   question.

19   BY MR. JACOB:

20       Q.    Sure.  In order for the FBI's NICS

21   system to keep guns out of the hands of

22   dangerous felons, child abusers, DOD, its
```



 1   components, such as the Air Force, should

 2   collect and submit criminal history data to the

 3   FBI?

 4              MS. KRIEGER:  Same objection.

 5              THE WITNESS:  The Air Force should.

 6   Yes.

 7   BY MR. JACOB:

 8      Q.    Um, would you agree that the more

 9   information that the FBI has on dangerous

10   felons and child abusers, the better decisions

11   they can make in preventing those types of

12   individuals from getting firearms that they

13   shouldn't have access to?

14              MS. KRIEGER:  Objection.  Out of

15   scope.

16              THE WITNESS:  I would assume that

17   that would be true.  Yes.

18   BY MR. JACOB:

19      Q.    Would you agree that when Government

20   Agencies fail to share data on dangerous felons

21   and child abusers, that they unnecessarily

22   expose the public to a risk of gun violence?



1              THE WITNESS:  I suppose they could,

2    but I can't think of a situation when they

3    would unless they were asked specifically by an

4    OSI Agent JAG:  Do you think there's probable

5    cause here to submit fingerprints?

6    BY MR. JACOB:

7         Q.    And OSI Agents are supposed to be

8    asking Judge Advocates about the probable cause

9    determination, correct?

10        A.    They are.

11        Q.    And so when they ask about the

12   probable cause determination, should the Judge

13   Advocate recognize this as an issue they can --

14             -- they can respond:  Yes.  Have you

15   submitted the fingerprints?

16             MS. KRIEGER:  Objection.  Form.

17             THE WITNESS:  They could.  But

18   again, because that's not a function that we

19   track or are responsible for, I can't conceive

20   when they would actually ask that.  The Judge

21   Advocate's going to be intent on perfecting the

22   case, not making sure that these administrative



```
 1              MR. JACOB:  So --

 2              THE WITNESS:  If I might, I'd just

 3    like --

 4              MR. JACOB:  Yeah.

 5              THE WITNESS:  -- to correct my prior

 6    answer.  I am familiar with that information.

 7              MR. JACOB:  Uh-huh.

 8              THE WITNESS:  But when you asked me

 9    if I was familiar with that particular

10    paragraph, what was in that paragraph, my

11    answer is "no".  But I am familiar with that

12    information.

13    BY MR. JACOB:

14        Q.   Sure.  So you understand then that

15    the DOD created DIBRS, designed DIBRS to meet,

16    at least partially meet, the reporting

17    requirements of the Brady Handgun Violence

18    Prevention Act of 1994?

19              MS. KRIEGER:  Objection.  Out of

20    scope.  Asked and answered.

21              THE WITNESS:  That is my

22    understanding.
```



1   BY MR. JACOB:

2       Q.    Next sentence says:  The JA -- Judge

3   Advocate -- is responsible for the results of

4   trial segment.

5              Did I read that correctly?

6              MS. KRIEGER:  Objection.  Out of

7   scope.

8              THE WITNESS:  You did.

9   BY MR. JACOB:

10      Q.    And what that instruction, the

11  mandatory instruction, is saying, is that the

12  Judge Advocate who's responsible for the case

13  is responsible for submitting the results of

14  trial segment to DIBRS, correct?

15             MS. KRIEGER:  Objection.  Out of

16  scope.

17             THE WITNESS:  We are responsible for

18  reporting a result of trial segment that would

19  be relevant to DIBRS.  Yes.

20  BY MR. JACOB:

21      Q.    And I understand that Staff Judge

22  Advocates and Judge Advocates are literally not



1   the probable cause determination before

2   submitting fingerprints.

3          So starting over.  Are you aware of

4   any training that Judge Advocates are given by

5   the Air Force in their supervisory role or in

6   their individual role concerning the probable

7   cause determination that is made in conjunction

8   with an Agent before submitting fingerprints to

9   the FBI?

10      A.    Not in specific regard to submission

11  of fingerprints, no.

12      Q.    Okay.  Would you agree --

13          And we've covered multiple mandatory

14  instructions today.  Correct?

15      A.    Correct.

16      Q.    Would you agree that when the Air

17  Force issues mandatory instructions, such as

18  the ones that we've covered, they have an

19  obligation to train the individuals those

20  instructions apply to on the substance of those

21  instructions?

22      A.    Yes.



1  for you.

2  BY MS. KRIEGER:

3       Q.    Let me repeat.  So we are on

4  Exhibit 8, Bates stamp Page 11967.

5       A.    Yes.

6       Q.    And this is the Document 6 June.

7  AFI 51-201 from 6 June 2013.  Is that right?

8       A.    Yes.

9       Q.    So let's look at the paragraph

10  numbered 12.7.4.1, the second to last sentence.

11  That says:  The data for this segment was

12  gathered through the use of AMJAMS and most of

13  it is already entered by a paralegal.

14            Is that right?

15       A.    That's correct.

16       Q.    Does anyone from the JA office

17  submit --

18            Do paralegals from the JA office

19  submit information directly to DIBRS?

20       A.    No.

21       Q.    Does anyone from the JA office

22  submit information directly to DIBRS?



1       A.    No.

2       Q.    Let's turn to just very briefly to

3  Exhibit 6, which is the Bates stamp USA 10257.

4       A.    All right.

5       Q.    What's the date on this document?

6       A.    Air Force Instruction.  This is a 5

7  March 2014 document incorporating Change 1,

8  dated 2 December 2015.

9       Q.    So would this document have been in

10  effect between 2011 and 2013?

11       A.    No, it would not.

12       Q.    And then just to go back way

13  earlier, Mr. Jacob was asking you about final

14  disposition reports.  Do you understand the

15  final disposition report to mean the R-84

16  document that is submitted to the FBI?

17       A.    No.

18       Q.    What do you understand the final

19  disposition report to mean?

20       A.    The result of report of trial

21  memorandum or the court Martial order.

22       Q.    And are either of those documents



1                  CERTIFICATE OF NOTARY PUBLIC

2              I, Terry L. Bradley, the officer before

3     whom the foregoing deposition was taken, do

4     hereby certify that the witness whose testimony

5     appears in the foregoing deposition was duly

6     sworn by me; that the testimony of said witness

7     was taken by me in shorthand and thereafter

8     reduced to computerized transcription under my

9     direction; that said deposition is a true

10    record of the testimony given by said witness;

11    that I am neither counsel for, related to, nor

12    employed by any of the parties to the action in

13    which this deposition was taken; and further,

14    that I am not a relative or employee of any

15    attorney or counsel employed by the parties

16    hereto, nor financially or otherwise interested

17    in the outcome of the action.

18                _____

19                Notary Public in and for
                  the District of Columbia

20    My Commission expires:  April 30, 2022

21

22



IN THE UNITED STATES DISTRICT FOR
THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JOE HOLCOMBE, et. al, | § | NO. 5:18-CV-00555-XR |
| | § | |
| Plaintiffs | § | Consolidated with: |
| | § | 5:18-cv-00712-XR (*Vidal*) |
| | § | 5:18-cv-00881-XR (*Uhl*) |
| vs. | § | 5:18-cv-00944-XR (*Ramsey*) |
| | § | 5:18-cv-00949-XR (*McNulty*) |
| UNITED STATES OF | § | 5:18-cv-00951-XR (*Wall*) |
| AMERICA, | § | 5:18-cv-01151-XR (*Amador*) |
| | § | 5:19-cv-00184-XR (*Brown*) |
| Defendant | § | 5:19-cv-00289-XR (*Ward*) |
| | § | 5:19-cv-00506-XR (*Workman*) |
| | § | 5:19-cv-00678-XR (*Colbath*) |
| | § | 5:19-cv-00691-XR (*Braden*) |
| | § | 5:19-cv-00706-XR (*Lookingbill*) |
| | § | 5:19-cv-00714-XR (*Solis*) |
| | § | 5:19-cv-00715-XR (*McKenzie*) |
| | § | 5:19-cv-00805-XR (*Curnow*) |
| | § | 5:19-cv-00806-XR (*Macias*) |

## NOTICE OF DEPOSITION

To: Defendant, United States of America, by and through
its attorney, Paul Stern, United States Department of
Justice, Three Constitution Square, 175 N Street,
N.E., Washington, DC 20002.

From: Plaintiffs, Vidal, et. al, 5:18-cv-712-XR, McNulty, et.
al, 5:18-cv-00949-XR; Wall, et. al, 5:18-cv-00951-XR;
Solis, et. al, 5:19-cv-00714-XR, and McKenzie, 5:19-cv-
00715-XR.

Page 1 of 12



Please take notice that under Fed. R. Civ. P. 30(b)(6), the above Plaintiffs will take the deposition of the Defendant, United States of America, by oral examination using video, audio, and stenographic means, at the following location and date:

| | |
|---|---|
| Date: | September 12, 2019 |
| Location: | United States Attorney's Office<br>601 NW Loop 410, Ste. 600<br>San Antonio, Texas 78216 |
| Time: | 9:00 AM CST |
| Court Reporter: | Res Ipsa or designee |
| Videographer: | Res Ipsa or designee |

The deposition will continue from day to day until completed, with such breaks, as necessary. Pursuant to Rule 30(b)(6), the United States of America shall designate one or more officers, directors, managing agents, or other persons who consent and are knowledgeable to testify on the United States' behalf with respect to the subject matters set forth in attached Exhibit A. A request to produce documents permitted under Rule 30(b)(2) is attached as Exhibit B.

## DEFINITIONS

Please see applicable definitions in W.D. Tex. Local Rule CV-26(b)(1)–(7). The singular form of any word shall include within its meaning the plural form of the word and vice versa. For your convenience, Plaintiffs have duplicated those definitions here:

**Communication**. The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

**Document**. The term "document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a). A draft of a nonidentical copy is a separate document within the meaning of this term.

**Identify (With Respect to Persons)**. When referring to a person, to "identify" means to give, to the extent known, the person's full name, present or last known address, e-mail address, and telephone number, and when referring to a natural person, additionally, the present or last known place of employment. Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

**Identify (With Respect to Documents)**. When referring to documents, "to identify" means to give, to the extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s), and recipient(s).

**Parties**. The terms "plaintiff" and "defendant" as well as a party's full or abbreviated name or pronoun referring to a party mean the party and, where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries or affiliates. This definition is not intended to impose a discovery obligation on any person who is not a party to the litigation.

**Person**. The term "person" is defined as any natural person or business, legal or governmental entity or association.

**Concerning**. The term "concerning" means relating to, referring to, describing, evidencing or constituting.

## ACRONYMS

The following acronyms apply to this notice:

| ACRONYM | MEANING |
| --- | --- |
| AFOSI | Air Force Office of Special Investigations |
| CJIS | Criminal Justice Information Services |
| DIBRS | Defense Incident-Based Reporting System |
| DMDC | Defense Manpower Data Center |
| DoD | Department of Defense |
| DODIG | Department of Defense Inspector General |
| I2MS | Investigative Information Management System |
| IAFIS | Integrated Automated Fingerprint Identification System |
| NCIC | National Crime Information Center |
| NGI | Next Generation Identification |
| NIBRS | National Incident-Based Reporting System |
| NICS | National Instant Criminal Background Check System |
| USAF | United States Department of Air Force |

Respectfully Submitted,

/s/ Jason P. Steed
**Jason P. Steed**
JSteed@kilpatricktownsend.com
Texas Bar No. 24070671
**Kilpatrick Townsend & Stockton LLP**
2001 Ross Avenue, Suite 4400
Dallas, TX75201
Office 214-922-7112
Fax 214-853-5731
Counsel for Vidal, McNulty, and Wall

/s/ Jamal K. Alsaffar
**Jamal K. Alsaffar**
JAlsaffar@nationaltriallaw.com
Texas Bar No. 24027193
**Tom Jacob**
TJacob@nationaltriallaw.com
Texas Bar No. 24069981
**Whitehurst, Harkness, Brees, Cheng, Alsaffar & Higginbotham & Jacob PLLC**
7500 Rialto Blvd, Bldg. Two, Ste 250
Austin, TX 78735
Office 512-476-4346
Fax 512-476-4400
Counsel for Vidal, McNulty, McKenzie, Solis, Ramirez and Wall

## CERTIFICATE OF SERVICE

By our signatures above, we certify that a copy of this pleading, Notice of Deposition, has been sent to the following on August 22, 2019 via email and certified mail, return receipt requested.

JOSEPH H. HUNT
Assistant Attorney General
United States Dept. of Justice
Civil Division

JOHN F. BASH
United States Attorney
Western District of Texas

KIRSTEN WILKERSON
Assistant Director, Torts Branch
United States Dept. of Justice
Civil Division

PAUL DAVID STERN
Trial Attorney, Torts Branch
United States Dept. of Justice
Civil Division
CLAYTON R. DIEDRICHS
Assistant United States Attorney

JIM F. GILLIGAN
Assistant United States Attorney

JOHN PANISZCZYN
Civil Chief
United States Attorney's Office
Western District of Texas

JAMES G. TOUHEY, JR.
Director, Torts Branch
United States Dept. of Justice
Civil Division

STEPHEN E. HANDLER
Senior Trial Counsel, Torts Branch
United States Dept. of Justice
Civil Division

STEPHEN TERRELL
Trial Attorney, Torts Branch
United States Dept. of Justice
Civil Division
JAMES E. DINGIVAN
Assistant United States Attorney

## EXHIBIT A

Examination is requested on the following subject matter areas:

1.  The identity of persons, and identity and location of documents referenced in the DODIG-2015-011 Report.

2.  The identity of persons, and identity and location of documents referenced in the DODIG 2015-081 Report.

3.  The identify of persons, and identity of location of documents referenced in the DODIG 2018-035 Report.

4.  The identity of persons, and identity and location of documents referenced in the DODIG-2019-030 report.

5.  Training or education USAF personnel received concerning fingerprint collection and final disposition submission procedures, including submission to the FBI CJIS, NIBRS, or DIBRS. This topic concerns training or education given to personnel involved in the investigation, court-martial, or confinement of Devin Kelley between July 1, 2011 and December 14, 2012, whether they received the training at the time or some earlier time. This topic includes, but is not limited to: (a) the training or education provided by the Air Force Security Forces Academy at Joint Base San Antonio-Lackland, Texas; (b) the 65-day course at the security Forces Academy covering basic military police functions; (c) formal or informal training; (d) "on-the-job" training or education; (e) recurring or annual training or education; and (f)

training or education provided by the Naval Corrections Academy.

6.      Policies, procedures, practices, checklists, and protocols concerning Air Force Security Force's and AFOSI's execution of DoD Instruction 7730.47-M Volume 1. This topic includes, but is not limited to, the monthly submission of information to the DMDC and the DIBRS database for centralization of the collection of information reportable by the DoD Components pursuant to The Brady Handgun Violence Prevention Act of 1993. This topic includes but is not limited to, information concerning I2MS, as noted on pages 8–9 of DODIG-2015-011.

7.      Policies, procedures, practices, checklists, and protocols concerning the FBI CJIS NICS database and how other databases such as Next Gen (NGI) (formerly Integrated Automated Fingerprint Identification System (IAFIS)), NCIC, NIBRS, and Uniform Crime Report (UCR) are used to populate it. This topic includes, but is not limited to, the process by which the FBI receives and subsequently uses the information from DIBRS to prevent the purchase of firearms by any person prohibited by one of the eight listed categories.

8.      Policies, procedures, practices, checklists, and protocols concerning the Air Force Security Force's and AFOSI's execution of DoD Instruction 5505.11. This topic includes, but is not limited to, the submission of fingerprints and final disposition reports to FBI CJIS by both the Air Force Security Force and AFOSI. This topic includes, but is not limited to, the process by which Devin Kelley's

fingerprints and final disposition report should have been reported to FBI CJIS.

9.    Policies, procedures, practices, checklists, and protocols concerning probable cause determinations by a Staff Judge Advocate, especially to include, when a determination should be made, and any training given to guide Judge Advocates on probable cause determinations.

10.   Policies, procedures, practices, checklists, and protocols concerning the USAF Corrections System policy for post-trial inmates during in-processing concerning the submission of fingerprints and final disposition reports to the FBI. This topic includes, but is not limited to, the collection of Devin Kelley's fingerprints and submission of his final disposition report by the confinement facility personnel.

11.   Policies, procedures, practices, checklists, and protocols put in to place following DODIG-2015-081 pertaining to the AFOSI's NCIC program director to ensure that fingerprints and final disposition reports are submitted to IAFIS (NGI) according to DoD Instruction 5505.11.

## EXHIBIT B

Under Fed. R. Civ. P. 34(b)(2), you are commanded to attend and testify at the above specified time and place; you are commanded to produce the below designated documents, electronically stored information, or tangible things in your possession, custody, or control. The following requests do not seek any communication to or from your legal counsel. Please produce a true and correct copy of the following within thirty (30) days of this notice or at the deposition, whichever is sooner. If produced before the deposition date, please produce these documents electronically. If produced at the deposition, please produce a physical copy of the document for examination and marking as a deposition exhibit, as well as an electronic version of the document in its native format.

1.   Your current curriculum vitae or resume.

2.   Documents you reviewed in preparation for this deposition.

3.   Policies, procedures, practices, checklists, or protocols concerning the topics covered in Exhibit A.

4.   Reports, notes, logs, letters, communication, or other documents you have authored or have been sent to you concerning this case or the topics covered in Exhibit A.

5.   Charts, diagrams, PowerPoints, illustrations, or other demonstrative aids that illustrate the relationships or communication between any of the following: the FBI

CJIS, NICS, NGI, DMDC, NIBRS, DIBRS, IAFIS, or NCIC.

6.  Handouts, manuals, course materials, or other documents concerning the training or education of any Air Force employee on fingerprint collection and final disposition submission procedures.

IN THE UNITED STATES DISTRICT FOR
THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JOE HOLCOMBE, et. al, | § | NO. 5:18-CV-00555-XR |
| | § | |
| Plaintiffs | § | Consolidated with: |
| | § | 5:18-cv-00712-XR (*Vidal*) |
| | § | 5:18-cv-00881-XR (*Uhl*) |
| vs. | § | 5:18-cv-00944-XR (*Ramsey*) |
| | § | 5:18-cv-00949-XR (*McNulty*) |
| UNITED STATES OF | § | 5:18-cv-00951-XR (*Wall*) |
| AMERICA, | § | 5:18-cv-01151-XR (*Amador*) |
| | § | 5:19-cv-00184-XR (*Brown*) |
| Defendant | § | 5:19-cv-00289-XR (*Ward*) |
| | § | 5:19-cv-00506-XR (*Workman*) |
| | § | 5:19-cv-00678-XR (*Colbath*) |
| | § | 5:19-cv-00691-XR (*Braden*) |
| | § | 5:19-cv-00706-XR (*Lookingbill*) |
| | § | 5:19-cv-00714-XR (*Solis*) |
| | § | 5:19-cv-00715-XR (*McKenzie*) |
| | § | 5:19-cv-00805-XR (*Curnow*) |
| | § | 5:19-cv-00806-XR (*Macias*) |

## NOTICE OF DEPOSITION

To: Defendant, United States of America, by and through
its attorney, Paul Stern, United States Department of
Justice, Three Constitution Square, 175 N Street,
N.E., Washington, DC 20002.

From: Plaintiffs, Vidal, et. al, 5:18-cv-712-XR, McNulty, et.
al, 5:18-cv-00949-XR; Wall, et. al, 5:18-cv-00951-XR;
Solis, et. al, 5:19-cv-00714-XR, and McKenzie, 5:19-cv-
00715-XR.

Page 1 of 12



Please take notice that under Fed. R. Civ. P. 30(b)(6), the above Plaintiffs will take the deposition of the Defendant, United States of America, by oral examination using video, audio, and stenographic means, at the following location and date:

| | |
|---|---|
| Date: | September 12, 2019 |
| Location: | United States Attorney's Office<br>601 NW Loop 410, Ste. 600<br>San Antonio, Texas 78216 |
| Time: | 9:00 AM CST |
| Court Reporter: | Res Ipsa or designee |
| Videographer: | Res Ipsa or designee |

The deposition will continue from day to day until completed, with such breaks, as necessary. Pursuant to Rule 30(b)(6), the United States of America shall designate one or more officers, directors, managing agents, or other persons who consent and are knowledgeable to testify on the United States' behalf with respect to the subject matters set forth in attached Exhibit A. A request to produce documents permitted under Rule 30(b)(2) is attached as Exhibit B.

## DEFINITIONS

Please see applicable definitions in W.D. Tex. Local Rule CV-26(b)(1)–(7). The singular form of any word shall include within its meaning the plural form of the word and vice versa. For your convenience, Plaintiffs have duplicated those definitions here:

**Communication**. The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

**Document**. The term "document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a). A draft of a nonidentical copy is a separate document within the meaning of this term.

**Identify (With Respect to Persons)**. When referring to a person, to "identify" means to give, to the extent known, the person's full name, present or last known address, e-mail address, and telephone number, and when referring to a natural person, additionally, the present or last known place of employment. Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

**Identify (With Respect to Documents)**. When referring to documents, "to identify" means to give, to the extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s), and recipient(s).

**Parties**. The terms "plaintiff" and "defendant" as well as a party's full or abbreviated name or pronoun referring to a party mean the party and, where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries or affiliates. This definition is not intended to impose a discovery obligation on any person who is not a party to the litigation.

**Person**. The term "person" is defined as any natural person or business, legal or governmental entity or association.

**Concerning**. The term "concerning" means relating to, referring to, describing, evidencing or constituting.

# ACRONYMS

The following acronyms apply to this notice:

| ACRONYM | MEANING |
|---|---|
| AFOSI | Air Force Office of Special Investigations |
| CJIS | Criminal Justice Information Services |
| DIBRS | Defense Incident-Based Reporting System |
| DMDC | Defense Manpower Data Center |
| DoD | Department of Defense |
| DODIG | Department of Defense Inspector General |
| I2MS | Investigative Information Management System |
| IAFIS | Integrated Automated Fingerprint Identification System |
| NCIC | National Crime Information Center |
| NGI | Next Generation Identification |
| NIBRS | National Incident-Based Reporting System |
| NICS | National Instant Criminal Background Check System |
| USAF | United States Department of Air Force |

Respectfully Submitted,

/s/ Jason P. Steed
**Jason P. Steed**
JSteed@kilpatricktownsend.com
Texas Bar No. 24070671
**Kilpatrick Townsend & Stockton LLP**
2001 Ross Avenue, Suite 4400
Dallas, TX75201
Office 214-922-7112
Fax 214-853-5731
Counsel for Vidal, McNulty, and Wall

/s/ Jamal K. Alsaffar
**Jamal K. Alsaffar**
JAlsaffar@nationaltriallaw.com
Texas Bar No. 24027193
**Tom Jacob**
TJacob@nationaltriallaw.com
Texas Bar No. 24069981
**Whitehurst, Harkness, Brees, Cheng, Alsaffar & Higginbotham & Jacob PLLC**
7500 Rialto Blvd, Bldg. Two, Ste 250
Austin, TX 78735
Office 512-476-4346
Fax 512-476-4400
Counsel for Vidal, McNulty, McKenzie, Solis, Ramirez and Wall

## CERTIFICATE OF SERVICE

By our signatures above, we certify that a copy of this pleading, Notice of Deposition, has been sent to the following on August 22, 2019 via email and certified mail, return receipt requested.

JOSEPH H. HUNT
Assistant Attorney General
United States Dept. of Justice
Civil Division

JOHN F. BASH
United States Attorney
Western District of Texas

KIRSTEN WILKERSON
Assistant Director, Torts Branch
United States Dept. of Justice
Civil Division

PAUL DAVID STERN
Trial Attorney, Torts Branch
United States Dept. of Justice
Civil Division
CLAYTON R. DIEDRICHS
Assistant United States Attorney

JIM F. GILLIGAN
Assistant United States Attorney

JOHN PANISZCZYN
Civil Chief
United States Attorney's Office
Western District of Texas

JAMES G. TOUHEY, JR.
Director, Torts Branch
United States Dept. of Justice
Civil Division

STEPHEN E. HANDLER
Senior Trial Counsel, Torts Branch
United States Dept. of Justice
Civil Division

STEPHEN TERRELL
Trial Attorney, Torts Branch
United States Dept. of Justice
Civil Division
JAMES E. DINGIVAN
Assistant United States Attorney

## EXHIBIT A

Examination is requested on the following subject matter areas:

1.  The identity of persons, and identity and location of
    documents referenced in the DODIG-2015-011 Report.

2.  The identity of persons, and identity and location of
    documents referenced in the DODIG 2015-081 Report.

3.  The identify of persons, and identity of location of
    documents referenced in the DODIG 2018-035 Report.

4.  The identity of persons, and identity and location of
    documents referenced in the DODIG-2019-030 report.

5.  Training or education USAF personnel received
    concerning fingerprint collection and final disposition
    submission procedures, including submission to the FBI
    CJIS, NIBRS, or DIBRS. This topic concerns training or
    education given to personnel involved in the investigation,
    court-martial, or confinement of Devin Kelley between
    July 1, 2011 and December 14, 2012, whether they
    received the training at the time or some earlier time.
    This topic includes, but is not limited to: (a) the training
    or education provided by the Air Force Security Forces
    Academy at Joint Base San Antonio-Lackland, Texas; (b)
    the 65-day course at the security Forces Academy
    covering basic military police functions; (c) formal or
    informal training; (d) "on-the-job" training or education;
    (e) recurring or annual training or education; and (f)

training or education provided by the Naval Corrections
Academy.

6. Policies, procedures, practices, checklists, and protocols
concerning Air Force Security Force's and AFOSI's
execution of DoD Instruction 7730.47-M Volume 1. This
topic includes, but is not limited to, the monthly
submission of information to the DMDC and the DIBRS
database for centralization of the collection of
information reportable by the DoD Components pursuant
to The Brady Handgun Violence Prevention Act of 1993.
This topic includes but is not limited to, information
concerning I2MS, as noted on pages 8–9 of DODIG-2015-
011.

7. Policies, procedures, practices, checklists, and protocols
concerning the FBI CJIS NICS database and how other
databases such as Next Gen (NGI) (formerly Integrated
Automated Fingerprint Identification System (IAFIS)),
NCIC, NIBRS, and Uniform Crime Report (UCR) are used
to populate it. This topic includes, but is not limited to,
the process by which the FBI receives and subsequently
uses the information from DIBRS to prevent the purchase
of firearms by any person prohibited by one of the eight
listed categories.

8. Policies, procedures, practices, checklists, and protocols
concerning the Air Force Security Force's and AFOSI's
execution of DoD Instruction 5505.11. This topic includes,
but is not limited to, the submission of fingerprints and
final disposition reports to FBI CJIS by both the Air Force
Security Force and AFOSI. This topic includes, but is not
limited to, the process by which Devin Kelley's

fingerprints and final disposition report should have been reported to FBI CJIS.

9.  Policies, procedures, practices, checklists, and protocols concerning probable cause determinations by a Staff Judge Advocate, especially to include, when a determination should be made, and any training given to guide Judge Advocates on probable cause determinations.

10. Policies, procedures, practices, checklists, and protocols concerning the USAF Corrections System policy for post-trial inmates during in-processing concerning the submission of fingerprints and final disposition reports to the FBI. This topic includes, but is not limited to, the collection of Devin Kelley's fingerprints and submission of his final disposition report by the confinement facility personnel.

11. Policies, procedures, practices, checklists, and protocols put in to place following DODIG-2015-081 pertaining to the AFOSI's NCIC program director to ensure that fingerprints and final disposition reports are submitted to IAFIS (NGI) according to DoD Instruction 5505.11.

## EXHIBIT B

Under Fed. R. Civ. P. 34(b)(2), you are commanded to attend and testify at the above specified time and place; you are commanded to produce the below designated documents, electronically stored information, or tangible things in your possession, custody, or control. The following requests do not seek any communication to or from your legal counsel. Please produce a true and correct copy of the following within thirty (30) days of this notice or at the deposition, whichever is sooner. If produced before the deposition date, please produce these documents electronically. If produced at the deposition, please produce a physical copy of the document for examination and marking as a deposition exhibit, as well as an electronic version of the document in its native format.

1.      Your current curriculum vitae or resume.

2.      Documents you reviewed in preparation for this deposition.

3.      Policies, procedures, practices, checklists, or protocols concerning the topics covered in Exhibit A.

4.      Reports, notes, logs, letters, communication, or other documents you have authored or have been sent to you concerning this case or the topics covered in Exhibit A.

5.      Charts, diagrams, PowerPoints, illustrations, or other demonstrative aids that illustrate the relationships or communication between any of the following: the FBI

CJIS, NICS, NGI, DMDC, NIBRS, DIBRS, IAFIS, or
NCIC.

6.    Handouts, manuals, course materials, or other documents
      concerning the training or education of any Air Force
      employee on fingerprint collection and final disposition
      submission procedures.