```
 1        IN THE UNITED STATES DISTRICT FOR
            THE WESTERN DISTRICT OF TEXAS
 2               SAN ANTONIO DIVISION

 3

   JOE HOLCOMBE, et al.,    :
 4                          :
        Plaintiffs,          :
 5                          :
   v.                       :No:
 6                          :5:18-CV-00555-XR
   UNITED STATES OF         :
 7   AMERICA,                 :
                            :
 8      Defendant.          :

 9

10

11            VIDEOTAPED DEPOSITION OF
                    YONATAN HOLZ
12

13

14         Friday, December 13, 2019
                  10:27 a.m.
15

16

         United States Attorney's Office
17      United States Department of Justice
              175 N Street, Northeast
18           Three Constitution Square
                Washington, D.C.
19

20      Noojan Ettehad, Videographer
      Terry L. Bradley, Court Reporter
21

22
```



```
 1   stationed at Holloman Air Force Base in New

 2   Mexico.

 3       Q.    Okay.  How long were you at Holloman

 4   Air Force Base?  Beginning to end.

 5       A.    From approximately July 2010 'til

 6   about September 2012.

 7       Q.    And I know during that timeframe you

 8   were also deployed to Afghanistan between 2010

 9   and 2012.  Is that right?

10       A.    Correct.

11       Q.    Can you tell me what timeframe you

12   were in Afghanistan?

13       A.    From --

14             Without having the dates in front of

15   me, approximately July 2011 to February 2012.

16       Q.    Okay.  What was you --

17             What were you doing in your

18   deployment in Afghanistan?

19       A.    I was a Counterthreat Operations

20   Agent.

21       Q.    Counterthreat?

22       A.    Yes.  We were running
```



```
 1   counterterrorist operations in the Kandahar
 2   region.
 3        Q.   So you were working counterterror --
 4             -- terrorism in Kandahar region?
 5        A.   Correct.
 6        Q.   Were you doing that the whole time
 7   you were in Afghanistan?
 8        A.   Yes.
 9        Q.   Okay.  Thank you for your service by
10   the way.  I don't think I mentioned that.
11        A.   Yep.
12        Q.   I always like to --
13             I appreciate your service --
14        A.   Yep.
15        Q.   -- in the military?
16        A.   You're welcome.  My pleasure.
17        Q.   Prior to July 2010 --
18        A.   Uh-huh.
19        Q.   -- what were you doing for the --
20             Were you still in the military?
21        A.   I was in the military.  I was going
22   to --
```



1        I was at the --
2        Immediately prior to New Mexico I
3   was going through Noncommissioned Officers
4   Management --
5        -- Management Training Course at my
6   prior base, Seymour Johnson Air Force Base,
7   North Carolina.  And prior to that I was at the
8   Federal Law Enforcement Training Center in
9   Brunswick, Georgia from approximately
10  December 2009 to May 2010.
11  Q.   The Federal Law --
12       That's F-L-E-T-C.  That's the --
13  A.   F-L-E-T-C.
14  Q.   -- acronym.
15  A.   Yes.  F-L-E-T-C.
16  Q.   And you all refer to it as FLETC?
17  A.   Correct.
18  Q.   Okay.  Your management training in
19  North Carolina at the Air Force Base, where
20  was --
21       -- what timeframe was that
22  approximately?



```
 1              -- that I can recollect seeing a

 2   PowerPoint presentation or receiving formalized

 3   training on it.

 4   BY MR. ALSAFFAR:

 5       Q.     When you say on it, you mean that

 6   was the first time you can recall in 2017

 7   receiving training from the Air Force on how

 8   and when to submit fingerprints to the FBI CJIS

 9   Division?

10       A.     Again, that's my earliest recoll --

11              -- my latest recollection of it.

12       Q.     Okay.  And when you were --

13              Let me just first get you on --

14              I don't think I asked this

15   specifically:  When you were at Holloman Air

16   Force Base you were specifically involved as a

17   Special Agent Investigator in the Devin Kelley

18   case, correct?

19       A.     Yes.

20       Q.     And that was 2011/2012 timeframe,

21   correct?

22       A.     Correct.
```



```
 1   testing in 2017 to actually test whether you
 2   retained that knowledge and could correctly
 3   yourself formally say:  This is how to submit
 4   fingerprints to the FBI.
 5        A.   I can't recall, but others --
 6             Others might.  I was --
 7             I was --
 8             I was very busy during that time
 9   pertaining to this case, so I was in and out of
10   my office a lot.
11        Q.   2017 is what you're talking about?
12        A.   Correct.
13        Q.   Okay.  So just to close that loop,
14   prior to your time at Holloman, during your
15   time, entire time at Holloman Air Force Base in
16   2011 and 2012, you did not receive any type of
17   training similar to the 2017 training you
18   received regarding how and when to submit
19   fingerprints to the FBI CJIS Division.  Is that
20   correct?
21        A.   Correct.
22        Q.   Okay.  Let me jump around a little
```



```
 1   prevent those people from getting dangerous
 2   weapons.  That did you know that at the time?
 3      A.   Yes.
 4      Q.   Okay.  And one of the reasons why we
 5   want to prevent dangerous people from getting
 6   dangerous weapons is to protect and keep the
 7   public safe.  Is that fair?
 8           MR. STERN:  Objection.
 9           THE WITNESS:  Correct.
10   BY MR. ALSAFFAR:
11      Q.   Okay.  And if we don't properly
12   track and submit fingerprints to the FBI of
13   dangerous people to prevent them from gaining
14   dangerous weapons, we're actually increasing
15   the harm, the risk of harm to the public,
16   aren't we?
17           MR. STERN:  Objection.
18   BY MR. ALSAFFAR:
19      Q.   You agree with that?
20      A.   In my opinion that's correct, sir.
21      Q.   I want to go back to --
22           Let me hand you Exhibit No. 1.  This
```



1  available, probably the better for the future

2  investigations perhaps.

3  BY MR. ALSAFFAR:

4      Q.   Yeah.  And that's what I'm talking

5  about, that the more information that the FBI

6  has on specifically on dangerous felons

7  specifically --

8      A.   Uh-huh.

9      Q.   -- the better decisions that the FBI

10 can make in preventing individuals who

11 shouldn't by law get firearms, from preventing

12 those people from getting those firearms,

13 correct?

14          MR. STERN:  Objection.

15          THE WITNESS:  It's my opinion that,

16 yes, that's correct.

17 BY MR. ALSAFFAR:

18     Q.   Okay.  And when the Government fails

19 to share that kind of data on dangerous felons

20 to the FBI, they unnecessarily expose the

21 public to an un --

22          -- sort of an increased risk of gun



```
 1   violence, don't they?
 2              MR. STERN:  Objection.  Form.
 3              THE WITNESS:  Yes.
 4   BY MR. ALSAFFAR:
 5       Q.    Okay.  Now, the --
 6              By that same token -- I know this
 7   might just seem obvious -- but by that same
 8   token don't we decrease the risk of harm to the
 9   public, the American public, by making it
10   harder for criminals to get guns?
11              MR. STERN:  Objection.
12   BY MR. ALSAFFAR:
13       Q.    Do you agree with that?
14       A.    Let me see if I get this right.
15       Q.    Sure.
16       A.    You're saying we decrease the risk
17   to the public by making it harder for
18   federal --
19              -- like felony level convicted
20   people to have access?  Yes.
21       Q.    You agree with that?
22       A.    Yes, I agree.
```



```
 1              CERTIFICATE OF NOTARY PUBLIC
 2          I, Terry L. Bradley, the officer before
 3   whom the foregoing deposition was taken, do
 4   hereby certify that the witness whose testimony
 5   appears in the foregoing deposition was duly
 6   sworn by me; that the testimony of said witness
 7   was taken by me in shorthand and thereafter
 8   reduced to computerized transcription under my
 9   direction; that said deposition is a true
10   record of the testimony given by said witness;
11   that I am neither counsel for, related to, nor
12   employed by any of the parties to the action in
13   which this deposition was taken; and further,
14   that I am not a relative or employee of any
15   attorney or counsel employed by the parties
16   hereto, nor financially or otherwise interested
17   in the outcome of the action.
18                          
                     _____
19                   Notary Public in and for
                     the District of Columbia
20
     My Commission expires:  April 30, 2022
21
22
```