```
 1  J5919512 eb

 2

 3          IN THE UNITED STATES DISTRICT COURT
              FOR THE WESTERN DISTRICT OF TEXAS
 4

 5  JOE HOLCOMBE, ET AL            *
                                   *
 6  VS.                            * CIVIL ACTION
                                   * NO.: 5:18-CV-00555-XR
 7                                 *
    UNITED STATES OF AMERICA       *
 8

 9

10

11
         VIDEOCONFERENCE ORAL & VIDEOTAPED DEPOSITION OF
12                      DANIELLE LEE SMITH
            (FORMERLY KNOWN AS DANIELLE LEE KELLEY)
13

14      (Reported Remotely pursuant to the Emergency
        Order Regarding the COVID-19 State of Disaster)
15

16

17

18

19  Date                        Edith A. Boggs, CSR

20

21  8-14-2020                   HOUSTON, TEXAS

22

23

24

25
```



```
 1   transaction where he purchased the AR-556, correct?
 2        A.   Yes.
 3        Q.   And you have provided a statement regarding
 4   that transaction, correct?
 5        A.   Yes.
 6        Q.   Ms. Smith, I'm showing you an exhibit we'll
 7   mark as Exhibit 7, I believe.  Is this the statement
 8   that you provided to Mr. Webster and plaintiffs' counsel
 9   regarding Devin's transactions at Academy?
10        A.   Yes.
11        Q.   Is this a true and correct statement --
12        A.   Yes.
13        Q.   -- as to your understanding?
14        A.   Yes.
15        Q.   And you signed this statement on April 5th,
16   2019?
17        A.   Yes.
18        Q.   I can show you that.
19        A.   Yes.
20        Q.   And you signed this during your meeting with
21   four plaintiffs' counsel, correct?
22        A.   Yes.
23        Q.   Did you know what the statement was going to be
24   used for?
25        A.   For the Academy lawsuit.
```



```
 1       Q.  What -- what particularly about the Academy
 2   lawsuit?
 3       A.  That he bought a gun there and that he bought
 4   the magazine there with -- had a Colorado ID, and he
 5   broke two states' laws.
 6       Q.  Did you provide this statement because you
 7   wanted to help the plaintiffs?
 8       A.  Yes.
 9       Q.  Were you represented by counsel at that time?
10       A.  No.
11       Q.  I want to take a look at paragraph 3.  You
12   state, "In or around November or December, 2015, I was
13   shopping with Devin at the Dick's Sporting Goods located
14   at 303 Creekside Way, New Braunfels, Texas;" is that
15   correct?
16       A.  Yes.
17       Q.  It continues by stating on paragraph 4, "That
18   day, Devin went to the gun counter to purchase a Ruger
19   assault rifle that he had wanted for some time.  I was
20   present at the gun counter with Devin for part of the
21   time of the transaction and personally witnessed him
22   looking at multiple guns, including a Ruger assault
23   rifle."  Did I read that correctly?
24       A.  Yes.
25       Q.  Is that the same assault rifle that Devin
```



1  purchased at Academy in April of 2016?
2       A.  I mean, I can't say if it's the same because I
3  don't know -- I don't remember the make and model, you
4  know, like who made it or whatever but it -- it was an
5  AR.
6       Q.  Do you remember it being --
7       A.  It was --
8       Q.  -- a similar make and model to the one he
9  purchased at Academy --
10      A.  Yes.
11      Q.  -- in April of 2016?
12      A.  Yes.
13      Q.  Do you remember any other types of firearms
14 that he was looking at at Dick's Sporting Goods?
15      A.  I just remember him looking at that.
16      Q.  Do you recall Dick's Sporting Goods selling
17 assault weapons at that time?
18      A.  At that time, yes, I -- yes.
19      Q.  So, your testimony, you believe that Dick's
20 Sporting Goods sold Ruger assault rifles in November or
21 December, 2015?
22      A.  At the time, from what I recall, they --
23 they -- they sold a gun around -- yes, that looked like
24 the rifle.  Yeah.
25      Q.  That Devin used to commit the shootings?



1    A.   Yes.

2    Q.   The paragraph continues with saying, "He" --
3 meaning Devin -- "completed purchase paperwork there,
4 and the manager at Dick's Sporting Goods came over and
5 declined to sell him the gun because of an ID issue."
6 Did I read that correctly?

7    A.   Yes.

8    Q.   "Devin had a Colorado driver's license at that
9 time and did not have a Texas ID.  Devin was prevented
10 from purchasing the gun at Dick's Sporting Goods that
11 day.  We did not visit Dick's again after that."
12           Can you explain the interaction between
13 Devin and the Dick's Sporting Goods manager?

14   A.   I don't really remember.  I just know he got
15 denied, that was that, and we left.  Like it was -- I
16 don't know.  He didn't say anything about it.

17   Q.   Well, you -- you reference an ID issue.  What
18 I -- what was the issue with Devin's ID?

19   A.   He had a Colorado ID.

20   Q.   And the Dick's Sporting Goods manager wouldn't
21 sell it to him as a result of Devin having a Colorado
22 ID?

23   A.   Yes.

24   Q.   To the best of your recollection, did Devin
25 complete his paperwork?



```
 1       A.  What do you mean?
 2       Q.  Well, you -- you write that Devin completed
 3   purchase paperwork there, and I'm asking you do you --
 4   did you watch him fill out the whole purchase paperwork?
 5       A.  Oh, okay.  I'm sorry.  I didn't understand when
 6   you said did you -- or did he finish paperwork.  Yes,
 7   he -- he was doing paperwork, and when it came down to
 8   having the ID aspect of it, they saw that he had
 9   Colorado ID, and they said, "Sorry.  You have a
10   Colorado -- Colorado ID.  We can't sell you a gun," and
11   that was it.
12       Q.  So, I just want to make sure that we're clear.
13   Devin completed his paperwork, handed it, along with his
14   ID, to the manager; is that correct?
15       A.  Yes.
16       Q.  And then based on receiving the ID and the
17   paperwork, the manager denied Devin the sale; is that
18   correct?
19       A.  Yes.
20       Q.  Did the manager immediately deny him upon
21   seeing the ID?
22       A.  Yes.
23       Q.  Did the manager at Dick's ask Devin specific
24   questions regarding the ID?
25       A.  Not that I remember.
```



1    Q.  He just denied him immediately upon seeing the
2  Colorado ID?
3    A.  Yes.
4    Q.  Do you recall if Devin also tried to purchase
5  anything else during that transaction?
6    A.  No.
7    Q.  Do you recall if he was trying to purchase any
8  magazines?
9           MR. HOROWITZ:  Objection, asked and
10  answered.
11    Q.  (BY MR. STERN)  You can answer, Ms. Smith.
12    A.  Oh, sorry.  No.
13    Q.  Okay.
14    A.  I wasn't -- I wasn't there, again, the whole
15  time.  I was, again, with my son.  So, I was only there
16  when there was an ID issue.  After that, it was done and
17  over with, and we left.
18    Q.  So, as a result of Devin being denied at the
19  gun store, he went somewhere else to purchase the
20  AR-556; is that correct?
21    A.  Yes.
22    Q.  In paragraph 5 you say, "In or around April of
23  2016, Devin and I went to Academy in Selma, Texas.
24  There he purchased a Ruger AR-556.  That day he also
25  purchased a magazine and ammunition."  Did I read that



```
         IN THE UNITED STATES DISTRICT COURT
           FOR THE WESTERN DISTRICT OF TEXAS


JOE HOLCOMBE, ET AL          *
                             *
VS.                          * CIVIL ACTION
                             * NO.: 5:18-CV-00555-XR
                             *
UNITED STATES OF AMERICA     *

         REPORTER'S CERTIFICATION OF THE ORAL
           DEPOSITION OF DANIELLE LEE SMITH
                     8-14-2020
```

I, Edith A. Boggs, a Certified Shorthand Reporter in and for the State of Texas, hereby certify to the following:

That the witness, DANIELLE LEE SMITH, was duly sworn by the officer and that the transcript of the oral deposition is a true record of the testimony given by the witness;

That the original deposition was delivered to Paul Stern, Esquire;

That a copy of this certificate was served on all parties and/or the witness shown herein on _____.

I further certify that pursuant to FRCP Rule 30(e)(2) that the signature of the deponent:
\_\_X\_\_ was requested by the deponent or a party before the completion of the deposition and that the signature is to be before any notary public and returned within 30 days from date of receipt of the transcript. If returned, the attached Changes and Signature Page contains any changes and the reasons therefore:
\_\_\_\_\_ was not requested by the deponent or a party before the completion of the deposition.

I further certify that I am neither counsel for, related to, nor employed by any of the parties or attorneys in the action in which this proceeding was taken, and further that I am not financially or otherwise interested in the outcome of the action.



```
 1            Certified to by me on this, the 17th day of
      August, 2020.
 2

 3    _____
      Edith A. Boggs
 4    Edith A. Boggs, CSR No. 3022
      Firm Registration No. 03
 5    Expiration Date:  7-31-2022
      1235 North Loop West, Suite 510
 6    Houston, Texas   77008
      Ph. No.:  (713) 524-4600
 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

