*BY ORDER OF THE COMMANDER*
*AIR FORCE OFFICE OF*
*SPECIAL INVESTIGATIONS*

*AFOSI MANUAL 71-121*

*13 JANUARY 2009*

*Special Investigations*

*PROCESSING AND REPORTING*
*INVESTIGATIVE MATTERS*

*Incorporating All Changes Through Change 4*
*(IC-4, 13 October 2010)*



## COMPLIANCE WITH THIS PUBLICATION IS MANDATORY

---

**ACCESSIBILITY:** This publication is available digitally on the AFOSI intranet via OSILink (http://hqsbuosilink/OSILink/llisapi.dll/open/1561878).

**RELEASABILITY:** Access to this publication is restricted. This publication is For Official Use Only, therefore, requests for access to this publication must be approved by the OPR.

---

OPR: HQ AFOSI/XRJ

Certified by: HQ AFOSI/XRJ
(SA Lee B. Porter)

Supersedes AFOSIMAN 71-121, 20 June 2005

Pages: 302

---

This manual implements Department of Defense Instruction (DoDI) 5505.14, *Deoxyribonucleic Acid (DNA) Collection Requirements for Criminal Investigations*, and provides guidance for the collection of DNA from SUBJECTs of investigations. This manual applies to all AFOSI personnel. It provides guidance in receiving, documenting, reviewing, and reporting investigative matters utilizing AFOSI's Investigative Information Management Systems (I2MS). This manual also prescribes guidance for closing, screening, archiving, mailing, and storing AFOSI files and provides information, guidance, and procedures for processing, documenting, and reporting investigative matters and reporting criminal history data to the Federal Bureau of Investigation (FBI). This manual is not intended to be all inclusive. Always consult with the appropriate prosecutorial authorities when addressing jurisdictional and other legal matters. AFOSI personnel should familiarize themselves with Air Force Instruction (AFI) 71-101, Volume 1, *Criminal Investigations*; AFI 71-101, Volume 2, *Protective Service Matters*; AFI 71-101, Volume 3, *Air Force Technical Surveillance Countermeasure Program*; AFI 71-101, Volume 4, *Counterintelligence;* AF Policy Directive (AFPD) 71-1, *Criminal Investigations and Counterintelligence;* and AF Mission Directive (AFMD) 39, *Air Force Office of Special Investigations (AFOSI).* The term "unit leadership" is used throughout this publication and includes commander, special agent in charge (SAC), and director, unless otherwise noted. Units must adhere to the investigative process metrics as outlined in this manual and the command metrics in accordance with (IAW) AFOSI Manual (AFOSIMAN) 90-101, *Operational Performance Management*. Refer to attachment 1 for a listing of references, abbreviations, acronyms, and terms that are used in this publication.

Ensure that all records created as a result of processes prescribed in this publication are maintained in accordance with Air Force Manual (AFMAN) 33-363, *Management of Records*, and disposed of in accordance with Air Force Records Information Management System

USA00000418

## Chapter 1

### GENERAL REPONSIBILITIES

**1.1. Agents.** Agents will receive initial investigative information, make required notifications and coordinations and enter the information into the command Investigative Information Management System (I2MS) or the Defense Counterintelligence Information System Portico (DCIIS Portico) as appropriate.

1.1.1. Agents will validate that initial investigative information received meets AFOSI's investigative responsibility.

1.1.2. Normally, initial investigative information will be received by the duty agent. For duty agent responsibilities see chapter 2.

**1.2. Case Agents.** Case agents will properly enter all investigative information into I2MS. Case agents will maintain, store, and close I2MS and record copy investigative files (six-part folder) IAW guidance in this manual.

**1.3. Unit Leadership.** Unit leadership will:

1.3.1. Ensure proper notifications and coordination are accomplished.

1.3.2. Ensure case agents properly enter all investigative information into I2MS.

1.3.3. Review I2MS, reports and record copy investigative files for sufficiency.

1.3.4. Ensure all I2MS and record copy investigative files have been properly disposed IAW guidance in this manual.

**1.4. Investigative Jurisdiction.** Agents and unit leadership should consult AFOSIMAN 71-122, Volume 1, *Criminal Investigations*, and AFOSIMAN 71-122, Volume 2, *Procurement Fraud Investigations*, for guidance on investigative jurisdiction. Questions regarding investigative jurisdiction should be addressed with your servicing Staff Judge Advocate (SJA) office.

**1.5. AFOSI and JA Collaboration.** AFOSI and the US Air Force Judge Advocate (USAF/JA) must develop a collaborative relationship focused on integrating investigative efforts and the legal process. The goal is thorough, case-ready reports of investigation (ROI), robust litigation preparation, and timely resolution of military justice.

1.5.1. In matters involving violations of the Uniform Code of Military Justice (UCMJ) or where the Military Extraterritorial Jurisdiction Act of 2000 (MEJA) may apply, the AFOSI case agent will notify the USAF/JA when substantive criminal investigations are initiated.

1.5.2. HQ USAF/JA has directed the local SJA to detail a support team to work with the AFOSI case agent. The support team will meet as soon as possible with the AFOSI case agent to identify potential criminal offenses for investigation, make recommendations to the investigative plan, and compare the evidence in the case with the elements of proof for a given offense.

1.5.3. AFOSI case agents and local SJA personnel will continue their collaborative efforts as the investigation proceeds. As appropriate, designated local SJA support team members or Chief of Military Justice will attend AFOSI case review meetings. Likewise, AFOSI personnel are encouraged to attend relevant local SJA military justice meetings. AFOSI will

USA00000426

share investigative data (written statements, evidence, etc.) as well as information on anticipated leads in the investigation. AFOSI will also coordinate with the assigned trial team on all subject interviews when possible.

1.5.4. The trial team will review and update the initial proof analysis as appropriate, but at least on a monthly basis, for local SJA use. SJA will discuss the results of the analysis with AFOSI. A final proof analysis will be completed by local SJA personnel contemporaneously with the publication of the ROI. This will also assist in pre-trial preparation efforts.

1.5.5. AFOSI field units will annotate in the respective case file internal data page (IDP) and notify their region of any problems encountered in complying with the expectations outlined in paragraphs 1.5 through 1.5.3.

**1.6.   Disclosure of Sensitive Case Information.** Occasionally, there will be cases where providing investigative information may not be prudent. In most instances, this will involve specific operational security concerns or cases with no anticipated military justice venue. Examples of such matters include premature compromise of a confidential source (CS), investigations involving local SJA personnel, joint investigations where the other agency requests protection of sensitive investigative information, grand jury information, and cases not destined for the military justice system (i.e., central system fraud cases being handled by the Department of Justice [DoJ]). Contact your region for guidance in handling such cases. Regions should in turn contact respective HQ AFOSI program managers if additional guidance is needed.

**1.7.   Up-channeling Sensitive Case Information.** Both the local SJA and AFOSI are required to provide case information and status to higher commands through their respective reporting channels. To avoid compromise of sensitive investigative information, including techniques, leads, statements and evidence, USAF/JA agrees that the local SJA will not include sensitive investigative information without the AFOSI detachment commander's concurrence. AFOSI commanders will identify to local the SJA those details of an investigation that should not be up-channeled in JA reports.

**1.8.   Lessons Learned.** Within 30 days of the conclusion of the trial, the local SJA and available members of the trial team will conduct a "hot wash" with AFOSI to review case lessons learned. Other legal office personnel may attend at the SJA's and AFOSI detachment commander's discretion.

1.8.1. Results of the hot wash will be documented in writing.

1.8.2. Issues that should be addressed in the written document include:

1.8.2.1. Successes/failures in complying with the expectations described in paragraphs 1.5 through 1.7 (offenses identified, development of an investigative plan, periodic proof analysis, etc.).

1.8.2.2. Extent to which AFOSI and local SJA collaboration contributed to, or detracted from, a timely and quality investigation/prosecution.

1.8.2.3. Whether the local SJA met their metric for final proof analysis (i.e., 30 days) following the publication of the ROI.

1.8.2.4. Noteworthy problems or successes pertaining to interviews, evidence collection, document reviews, searches, agent testimony, etc., that proved to be particularly helpful or harmful pursuing military justice actions.

**FOR OFFICIAL USE ONLY**

USA00000427

share investigative data (written statements, evidence, etc.) as well as information on anticipated leads in the investigation. AFOSI will also coordinate with the assigned trial team on all subject interviews when possible.

1.5.4. The trial team will review and update the initial proof analysis as appropriate, but at least on a monthly basis, for local SJA use. SJA will discuss the results of the analysis with AFOSI. A final proof analysis will be completed by local SJA personnel contemporaneously with the publication of the ROI. This will also assist in pre-trial preparation efforts.

1.5.5. AFOSI field units will annotate in the respective case file internal data page (IDP) and notify their region of any problems encountered in complying with the expectations outlined in paragraphs 1.5 through 1.5.3.

**1.6. Disclosure of Sensitive Case Information.** Occasionally, there will be cases where providing investigative information may not be prudent. In most instances, this will involve specific operational security concerns or cases with no anticipated military justice venue. Examples of such matters include premature compromise of a confidential source (CS), investigations involving local SJA personnel, joint investigations where the other agency requests protection of sensitive investigative information, grand jury information, and cases not destined for the military justice system (i.e., central system fraud cases being handled by the Department of Justice [DoJ]). Contact your region for guidance in handling such cases. Regions should in turn contact respective HQ AFOSI program managers if additional guidance is needed.

**1.7. Up-channeling Sensitive Case Information.** Both the local SJA and AFOSI are required to provide case information and status to higher commands through their respective reporting channels. To avoid compromise of sensitive investigative information, including techniques, leads, statements and evidence, USAF/JA agrees that the local SJA will not include sensitive investigative information without the AFOSI detachment commander's concurrence. AFOSI commanders will identify to local the SJA those details of an investigation that should not be up-channeled in JA reports.

**1.8. Lessons Learned.** Within 30 days of the conclusion of the trial, the local SJA and available members of the trial team will conduct a "hot wash" with AFOSI to review case lessons learned. Other legal office personnel may attend at the SJA's and AFOSI detachment commander's discretion.

1.8.1. Results of the hot wash will be documented in writing.

1.8.2. Issues that should be addressed in the written document include:

1.8.2.1. Successes/failures in complying with the expectations described in paragraphs 1.5 through 1.7 (offenses identified, development of an investigative plan, periodic proof analysis, etc.).

1.8.2.2. Extent to which AFOSI and local SJA collaboration contributed to, or detracted from, a timely and quality investigation/prosecution.

1.8.2.3. Whether the local SJA met their metric for final proof analysis (i.e., 30 days) following the publication of the ROI.

1.8.2.4. Noteworthy problems or successes pertaining to interviews, evidence collection, document reviews, searches, agent testimony, etc., that proved to be particularly helpful or harmful pursuing military justice actions.

FOR OFFICIAL USE ONLY

USA00000427



1.8.2.5.  Noteworthy problems or successes pertaining to how the local SJA handled the post-investigative phase of the military justice process.

1.8.2.6.  Recommended improvements or modifications that should be made to AFOSI and local SJA processes pertaining to AFOSI and local SJA collaboration.

1.8.3.  Send a copy of the written hot wash findings to HQ AFOSI, Criminal Investigations Branch (HQ AFOSI/XRGC), HQ AFOSI, Performance Management Branch (HQ AFOSI/XRJA), and HQ AFOSI, Director of Organizational Development (HQ AFOSI/OD) within 1 week following completion of the hot wash. HQ AFOSI/XRJA will periodically assess and disseminate consolidated lessons learned to AFOSI leaders, including the USAF Special Investigations Academy (USAFSIA) for appropriate inclusion in training curriculum.

FOR OFFICIAL USE ONLY

USA00000428

3.2.3. **Case File:**

3.2.3.1. **When to Use the Case File.**  The Case file is used:

3.2.3.1.1.  By HQ AFOSI, to collect, compile, and report National Incident-Based Reporting System (NIBRS) through the Defense Incident-Based Reporting System (DIBRS)[1], index SUBJECTs into the Defense Central Index of Investigations (DCII), and provide data to the National Crime Information Center (NCIC).  AFOSI's compliance with DIBRS enables NIBRS-consistent statistics, tracks certain offenders by personal identifier, maintains a central record of legal review cycle, maintains a central record of prison population, and standardizes and institutionalizes data submissions for criminal and "high-interest" information.  This information is derived from the Case File investigation and will be reported to the DoJ through the Defense Manpower Data Center (DMDC), Monterey, CA.

3.2.3.1.2.  To collect and report information for operational performance management, external customer impact, and queries from the DoD or Congress.

3.2.3.1.3.  To document all investigations pursuant to a credible allegation/complaint that a felony crime has been committed.  Case file investigations may include joint, concurrent, or exclusive investigative arrangements.  These investigative arrangements are generally based upon who has jurisdiction over the individual and the location where the crime occurred.

3.2.3.1.4.  To DCII index SF investigations (see paragraph 3.16).

3.2.3.2.  **Joint.**  AFOSI and one or more other Federal, State, local, or foreign investigative organizations participate as partners in joint investigations.  Generally, each partner contributes resources and has a statutory or regulatory interest in the matters under investigation.

3.2.3.2.1.  **Subject is Active Duty.**  When the SUBJECT is active duty, units should seek to conduct a joint Case file investigation when appropriate.

3.2.3.2.2.  **Identifying the Other Agency.**  When conducting a joint Case file investigation, use the Other Agencies tab to identify the other agency and their file number (and cover/code name if applicable), and response (accepted, declined).

3.2.3.2.3.  **ROIs.**  When AFOSI conducts a joint Case file investigation with another US executive branch agency (FBI, Naval Criminal Investigative Service [NCIS], etc.), only one ROI is published.  Responsibility for ROI publication is established as part of the ground rules for the joint Case file investigation.

3.2.3.2.4.  **AFOSI Not Lead.**  When conducting a joint Case file investigation and AFOSI is not the lead, the Case file will be closed when all logical investigative steps and AFOSI support are complete.  Units must ensure that the File level Other Agencies tab is documented correctly showing AFOSI Not Lead.  This will allow the

---

[1] See DoD Directive 7730.47, *Defense Incident-Based Reporting System (DIBRS)*, and DoD 7730.47-M, *Manual for Defense Incident-Based Reporting System*.

**FOR OFFICIAL USE ONLY**

USA00000436

**4.23.  Investigative Plans.**  Prepare an investigative plan within 5 days after initiation of the Case File investigation.  Investigative plans are required for **all** criminal and CI investigations.  See AFOSIMAN 71-122, Volumes 1 and 2, for additional information on death and fraud investigative plans.  Provide a copy of the investigative plan to the supporting SJA for review and recommendation for possible investigative steps.   Attach investigative plans and modifications to the Case File investigation for CI, fraud, and death investigations and for other investigations as requested by the HQ AFOSI PMs or region.

4.23.1.  Investigative plans will show a logical progression of actions a case agent will take from  initiation, including sending required leads, until investigative closure.  The case agent, using the elements of proof, should document, in a logical order, what investigative steps need to be accomplished.  Coordinate with the prosecuting authority regarding the elements of proof.  The case agent may create activities in advance of accomplishing them as they correspond to the necessary investigative plan steps that must be taken.

4.23.2.  Development of investigative plans may require units to consult the staffs of regions and squadrons, and HQ AFOSI PMs.  Regions should provide oral or written feedback to the units when deemed appropriate.

4.23.3.  When necessary, modify the investigative plan to show leads/steps completed, the reason why certain phases of the investigative plan were not executed, additions and revisions of the investigative plan caused by the development of new information, etc.

4.23.4.  Include the investigative plan and any modifications as an attachment.  Maintain a copy of the original plan and modifications in the record copy investigative file (six-part folder) before the AFOSI Form 2, if required, is sent to HQ AFOSI/XILI.  Upon closure of the case, place the investigative plan and modifications in the AF Form 3986.

**4.24.  File Reviews.**  Periodic reviews for sufficiency of investigative effort and compliance with established policy is a fundamental aspect of the investigative process.  File reviews will include: the record copy investigative file (six-part folder), the ROI (if applicable), and pertinent associated activities, notes and file level tabs and sub-tabs.  When the review of a completed associated activity is accomplished the leadership reviewer may then close the activity.  If need be, unit leadership can reopen the activity to edit.

4.24.1.  **Investigative Files:**

4.24.1.1.  **Informational File.**  Informational files will only be reviewed during the screening and archiving procedures as part of the file disposition process, see Chapter 9.  There is NO other requirement to review the Informational file on a periodic basis.

4.24.1.2.  **Developmental File.**  Developmental files will be reviewed quarterly along with any A&P and TMFs, if associated.

4.24.1.3.  **Case File.**  Case File investigations will be reviewed monthly.  This review will occur from the date the allegation or complaint was received until closed and the AFOSI Form 2 is forwarded to HQ AFOSI/XILI for retention.  This is because judicial and administrative actions, as well as any subsequent investigative actions, following investigative closure must be accurately documented in an activity or maintained in the AF Form 3986.  For example, the FBI's R-84, *Final Disposition Report,* for updated charges, disposition and date; final military judicial or NJP disposition documents; AFOSI Form 158; for evidence disposition; and AF Forms 52, if required.   Unit

USA00000467

leadership is responsible for establishing a program to ensure every Case File investigation is reviewed monthly. The case agent and a supervisory or senior agent will ensure every Case File investigation is reviewed monthly to ensure investigative sufficiency, progress, and data integrity between the ROI and activity Narrative and Note fields. See AFOSIMAN 90-101 for the Quality ROI metric and measures.

4.24.1.4. **Major Case File Investigations.** Unit leadership must personally review major Case file investigations, which are defined as violent crimes (rape, sexual assault, homicide), or which fit existing rules for SPOT reportable matters or result in the preparation of an IG Report, see Attachment 2.

4.24.1.4.1. When the unit leadership is on leave, TDY, or otherwise unavailable the responsibility for major Case file investigation reviews may be delegated.

4.24.2. **Service Files:**

4.24.2.1. **OSI Application.** OSI Application investigations will be reviewed monthly, like any other Case file investigation, as detailed in paragraph 4.24.1.3.

4.24.3. **Other File Types and Categories.** Other file type (Service, Support, and Management) categories will be reviewed quarterly, or as required by HQ AFOSI PM guidance or AFOSI governing directives.

4.24.4. Use the AFOSI Investigative Sufficiency Checklist (Attachment 7) or a more comprehensive checklist, such as a Region Case Review Checklist as a guide for reviews. Do not fill out the checklist or maintain it in the AF Form 3986. Merely use it as a guide for discussion during the review. A copy may be maintained in the record copy investigative file (six-part folder) to meet this purpose, see paragraph 4.17.1.

4.24.4.1. Document reviews of files as a Reviewer Note entering only, "SA [Name] reviewed file, on [Date]". Do not include comments or recommendations that will be subject to legal discovery and might be used to discredit the agents conducting the investigation. Address any comments or issues directly with the case agent.

4.24.4.2. The reviewer may conduct reviews at geographically separated units electronically if distance or time constraints make it impossible for the reviewer to conduct the review in person.

**4.25.** **Region Investigation Reviews.** Region reviewers will concentrate their efforts on the significant investigations being conducted in their respective regions. Significant investigations are those investigations that, if conducted poorly, affect the AF's ability to preserve good order and discipline, deter and neutralize internal and external threats, and bring unfavorable attention to the command. Regions may supplement the mandatory file review process as they deem necessary and prudent and may review other file types or categories at intervals they deem appropriate and during staff assistance visits to their subordinate units. Region commanders will determine adherence to this policy during all staff visits and inspections of subordinate units. See AFOSIMAN 90-101 for additional guidance and requirements.

4.25.1. **Region Death Case Reviews**. All death cases will be reviewed by the owning Region, the servicing FSC, and Region 7 ICON. See AFOSIMAN 71-122, Volume 1, paragraph 4.1.8.

FOR OFFICIAL USE ONLY

USA00000468

4.25.2. **HQ AFOSI, Performance Management Branch (HQ AFOSI/XRJA).** The goal of HQ AFOSI/XRJA is to identify investigative deficiencies and to confirm data integrity through the systematic review of archived Case File investigations. Using regulatory guidance and investigative and administrative sufficiency requirements established in the Closed Case Review Checklist, HQ AFOSI/XRJA will identify deficiencies that are systemic across the command preventing the command from achieving quality in its Case File investigation products (output). Identified deficiencies may be remedied through a variety of avenues to include working with USAFSIA to target specific training deficiencies, changes, or clarification in instructions or manuals and modifications and changes in procedural processes.

4.25.3. During inspections, HQ AFOSI, Inspections Branch (HQ AFOSI/IGI), inspectors will examine investigative files (Informational, Developmental, and Case) for compliance with policy, investigative sufficiency, and data integrity.

**4.26. Disposition of Military Judicial or Nonjudicial Punishment Proceedings.** The Manual for Courts-martial (MCM) is the executive order implementing the UCMJ, which is the primary document for matters relating to military justice. Each commander has the discretion to dispose of offenses by members under his or her command. A commander may choose to dispose of an offense by one of the following actions:

4.26.1. **Administrative Action.** Those actions or corrective measures including counseling, admonition, reprimand, disapproval, criticism, censure, reproach, rebuke, extra military instruction, or withholding of privileges, or any combination of the above.

4.26.2. **Military Nonjudicial Punishment (NJP).** Punishment imposed by a commander for minor offenses. This punishment may include reduction in grade, forfeiture of pay, restriction, extra duties, and correctional custody. Disposition of military NJP will be levied using the AF Form 3070A-C.

4.26.3. **Military Judicial Proceeding.** An adversarial process conducted in the form of courts-martial directly comparable to a civilian trial.

4.26.3.1. **Courts-Martial Action.** A trial by courts-martial (summary, special, or general) to determine guilt and punishment, if warranted. The determination to prosecute an offense and prefer charges is made by a commander having courts-martial convening authority. These actions are documented on the DD Form 458, *Charge Sheet.* Disposition of courts-martial action will be indicated on the AF Form 1359.

4.26.4. **No Action.** A decision to take no action constitutes a disposition decision. Obtain a disposition report from command documenting no action was taken.

**FOR OFFICIAL USE ONLY**

USA00000469

persons, and stolen property. Law enforcement agencies submit appropriate information for use and reference by other authorized law enforcement agencies. See AFOSIMAN 71-122, Volume 1, and the NCIC User's Manual for additional information.

5.13.1. **Responsibilities of HQ AFOSI, Information Standards and Validation (HQ AFOSI/XII).** HQ AFOSI/XII has the authority to enter and delete NCIC information for AFOSI IAW the NCIC User's Manual. If changes to NCIC are needed, contact HQ AFOSI/XII (NCIC PM) for further guidance.

5.13.1.1. During HQ AFOSI non-duty hours, if an agent determines that immediate entry of a weapon or other property in NCIC is necessary, the agent should contact Region 7 ICON for assistance.

**5.14. Reporting CHD:**

5.14.1. **Responsibilities of Units and Regions.** Unit leadership will ensure their units use the appropriate Fingerprint activity to obtain and validate SUBJECT's fingerprints; check SUBJECT's CHD; submit SUBJECT's fingerprints; and ensure administrative identification data are completed, accurate charges or citations are listed, and dispositions to the FBI are completed (see paragraphs 5.10.16 and 5.10.17). Units must use and submit fingerprint cards electronically if their units possess the capability. When using the Criminal Fingerprint activity, units will check SUBJECT's CHD as part of the fingerprinting process by using the "Email IAFIS Package Button—Criminal Inquiry" option. When using the Criminal Fingerprint activity, units will actually submit the FD-249, *Criminal Card* (AKA Arrest and Institution Fingerprint Card, used for criminal submissions), by using the "Email IAFIS Package Button—Criminal Booking Submission" option when appropriate prosecutorial authority actions have occurred IAW paragraph 5.14.2 and attachment 8. It is imperative that units coordinate with the SJA and, as appropriate, civilian prosecutorial authority as soon as possible to determine probable cause for the submission of fingerprints to the FBI. Guidance pertaining to generating the electronic FD-249 may be found in the I2MS Fingerprinting Guide posted on the I2MS Homepage. When flat electronic fingerprint scanners are available, units must additionally submit flat fingerprint scans to the FBI. Flat fingerprint scans will not be submitted in lieu of rolled scans.

5.14.1.1. For units using the Criminal Fingerprint activity, a copy of the electronic FD-249, hardcopy R-84, and photographs of military SUBJECTs will be maintained in the AF Form 3986. Units using the Criminal Fingerprint activity must complete two hard-copy R-84s.

5.14.1.2. When completing hard-copy FD-249s and R-84s, two complete sets of fingerprints on the FD-249 and R-84 (depending on version used), and photographs of military SUBJECTs for offenses listed in Attachment 8 must be obtained and will be maintained in the AF Form 3986. It is important that administrative data required on both forms is the same. Fingerprint cards (both FD-249 and R-84), with qualifying charges, will be submitted to the FBI even if a military member is permitted to resign, separate, or retire in lieu of court-martial since court-martial charges must be referred before one of these actions can occur. Do not use force to fingerprint an uncooperative SUBJECT. Consult your SJA and have the SUBJECT's commander consider issuing a direct order for the SUBJECT's compliance. *NOTE 1:* Discretion is sometimes necessary to determine the best time to fingerprint a SUBJECT. The actual decision as to

USA00000491

when to fingerprint a SUBJECT is the case agent's decision in consultation with unit leadership. Although it is impossible to cover every situation, it is normally most efficient to obtain the necessary fingerprints in conjunction with the SUBJECT interview. Photographs will be full face, left profile, and right profile. The hard or electronic copies of the photo will be maintained in AF Form 3986 *and* uploaded into the SUBJECT's participant Photo/Image sub-tab. Photographs of any outstanding identifying marks such as scars, tattoos, etc. will also be taken.

5.14.1.2.  **Unit Leadership Review.** Unit leadership must review all FD-249 (both hard copy and electronic when accomplished) and R-84 for accuracy and completeness before sending them to the FBI. Ensure forms are completed IAW Attachments 9 and 10. Incorrect data and/or print quality will result in the FBI rejecting the fingerprint submission. Unit leadership will make an IDP note acknowledging the review was completed. Review copies of the AF Form 3070A-C, in nonjudicial proceedings and copies of DD Form 458 and AF Form 1359 in military judicial proceedings to ensure FD-249s and R-84s are submitted to the FBI when required IAW Attachment 8. Extracting charges and dispositions from these documents for the FD-249 and R-84 will reduce the likelihood of reporting erroneous data.

5.14.2.  **Military SUBJECT Fingerprint Submission:**

5.14.2.1.  For military members, submit the FD-249 through the Criminal Fingerprint activity to the FBI upon determination, following coordination with the servicing SJA and, as appropriate, civilian prosecutorial authority, that probable cause exists to believe the SUBJECT has committed an offense listed in attachment 8. The legal coordination will be documented in I2MS.

5.14.2.1.1.  Within 15 calendar days after final disposition of military judicial or non-judicial proceedings, or the approval of a request for discharge, retirement, or resignation in lieu of court-martial, or a finding of lack of mental competence to stand trial, disposition information shall be reported on the R-84, or an electronic data transfer equivalent, if it has not already been reported on an FD-249. Do not hold the FD-249 or R-84 pending appellate actions. Appellate action affecting the character of an initial disposition must be reported if it occurs. Dispositions that are exculpatory in nature (e.g., dismissal of charges, acquittal) shall also be documented on the R-84.

5.14.2.1.2.  Agents should obtain the DD Form 458 from the SJA to ensure the referred charges meet submission criteria (IAW Attachment 8). For manual fingerprints, input qualifying charges (from Attachment 8) into the Manual Criminal Fingerprint activity directly from the DD Form 458. In instances where the commander decides to take NJP action, criminal history information for the Criminal Fingerprint activity must be taken from the AF Form 3070A-C. Use the dates from the forms for the Criminal Fingerprint activity.

5.14.2.1.3.  Charges and citations listed on the FD-249 are derived from the DD Form 458, Block II Charges and Specifications. In order to ensure the FD-249 charges and citations are correct, agents must enter the following items correctly: (1) all charges listed on the DD Form 458 match the data contained in the Details Tab, Offenses sub-tab; (2) at least one incident is identified on the Details tab, Incident sub-tab; (3) applicable specification(s) are added to the Details tab, Specification sub-tab

FOR OFFICIAL USE ONLY

Offense/Incident sub-tab; and (4) that a disposition is indicated for each specification entered on the Specification tab (e.g., "Charged - _____ Courts-Martial"). To facilitate the review process, an electronic FD-249 containing all information to be submitted to FBI is available for review and printing on the Criminal Fingerprint activity Details tab.

5.14.2.1.4. If SUBJECT has an existing electronic Criminal Fingerprint activity for another Case file investigation, do not submit prints from the previous activity for the new Case file investigation. A new Criminal Fingerprint activity must be created, and a new set of fingerprints must be taken from SUBJECT, for each Case file investigation.

5.14.2.2. **R-84 Submission.** Submit a completed hard-copy R-84 on military members to the FBI within 15 days after the SJA notifies you of final military judicial or NJP disposition. Annotate the disposition as listed on the AF Form 1359 or AF Form 3070. Maintain the duplicate R-84 in the AF Form 3986. Record the date the R-84 was sent to the FBI as an IDP note. *NOTE:* Do not send CHD to the FBI for offenses disposed of by NJP imposed by an O-3 or below or if such punishment does not meet criteria outlined in attachment 8.

5.14.2.3. Maintain all hard-copy FD 249s and R-84s in the AF Form 3986 when fingerprints are taken and the investigation does not result in the referral of courts-martial charges or NJP imposed. You must request the FBI remove any CHD within NCIC that was submitted prematurely or erroneously. Route requests to change NCIC data, in the form of an official memorandum, through the parent region for forwarding to the NCIC PM in HQ AFOSI/XII for action.

5.14.2.4. The servicing SJA office is required to send the originating unit (created by unit) copies of court-martial orders and all supplementary orders resulting from appellate action IAW AFI 51-201. AFOSI units should coordinate with the prosecutorial authority periodically to track matters that are on appeal. Do not delay sending CHD to the FBI because a matter is under appeal. Many courts-martial are appealed automatically and can take years to process.

5.14.2.5. If at any time after an FD-249 (either electronic or hard-copy) or R-84 is sent to the FBI, you determine an error has been made, or if appellate action changes the disposition, you must immediately notify your region, who will in turn notify the NCIC PM in HQ AFOSI/XII. Units must send a memorandum to the NCIC PM, with an info copy to the region, to have the information corrected or withdrawn, as appropriate, within 15 days of notification of the appellate action. Include the FBI number, the region Originating Agency Identifier (ORI) number (see Table A9.1, *Contributor Addresses and ORI Numbers*), AFOSI Case File investigation number, and name and SSN of the SUBJECT with the correction or changed disposition. Send the letter and all appellate action changes and correspondence to HQ AFOSI/XII, Attn: NCIC Program Manager; 1535 Command Drive, Suite AA323; Andrews AFB, MD 20762. Maintain copies of all appellate action changes and correspondence in the AF Form 3986, if still at the unit. *NOTE:* Units may have sent the AFOSI Form 2 and Case File investigation to HQ AFOSI/XILI by the time appellate action has been completed; however, they remain

## Chapter 4

### INVESTIGATIVE PROCESS AND INVESTIGATION INITIATION

**4.1. AFOSI Investigative Process.** The AFOSI investigative process and its relationship with policy and I2MS is demonstrated and explained in AFOSI Handbook 71-105, *An Agent's Guide to Conducting and Documenting Investigations*. Case agents must understand that their input throughout the investigative process impacts the command output and outcome, not only through the information documented within the SCR and ROI, but also from information entered, selected, or chosen within I2MS for many purposes (see Figure 4.1, *Investigative Process Management*). The command output—whether visible to the case agent or not—drives an information integrity requirement (timely and accurate I2MS entries) because the output and outcome is used not only for reports, but also for purposes beyond the actual circumstances of the allegation or complaint being investigated. The information entered affects output and outcome beyond AFOSI because of the link to other databases, i.e., NIBRS, DIBRS, the NCIC and DCII, and will play a role in new information sharing initiatives between agencies. Therefore, units must adhere to the investigative process metrics as outlined in this manual and the command metrics IAW AFOSIMAN 90-101.

**Figure 4.1. Investigative Process Measurements.**

| **Input** | **Output** | **Outcome** |
|---|---|---|
| Information | Information | Command Mission |
| Investigative Steps | Reports | Command Vision |

4.1.1. Information entered into I2MS is organized around three key objects: Participant, Activity, and File.

4.1.1.1. **Participant.** Allows the user the ability to enter collected information on Individuals, Companies, Programs, and Organizations; participants are then available to be related/associated to activities or files. Because this information is the foundation for I2MS it is important that all data available be entered or validated when creating a participant. To the degree it is possible all relevant records checks should be conducted prior to creating a participant. Updated information should be entered upon receipt.

4.1.1.2. **Activity.** While the participants provide the foundation, activities are the building blocks for all files and AFOSI reports. I2MS was designed to mirror the investigative process and workflow of case agents so investigative steps are documented when you create activities. See chapter 4 for a description of activities.

4.1.1.3. **Files.** Files are used to manage a collection of associated activities. Therefore, files are based on activities that involve participants. See chapter 3 for a description of the primary file categories used for documenting reactive and proactive criminal investigative information. Investigative files have several states that correspond to the case agent's progress and investigative process (see Table 4.1, *Investigative File States and Processes*).

FOR OFFICIAL USE ONLY

USA00000451