

Department of Defense
# INSTRUCTION

NUMBER 5505.11
December 1, 1998

IG, DoD

SUBJECT: Fingerprint Card and Final Disposition Report Submission Requirements

References: (a) Inspector General of the Department of Defense, Criminal
Investigations Policy Memorandum Number 10, "Criminal History
Data Reporting Requirements," March 25, 1987 (hereby canceled)
(b) Appendix 3 of title 5, United States Code
(c) DoD Directive 5106.1, "Inspector General of the Department of
Defense," March 14, 1983
(d) Title 28, Code of Federal Regulations, Part 20, "Criminal Justice
Information System" (July 1, 1997)
(e) through (k) see enclosure 1

## 1. PURPOSE

This Instruction:

1.1. Supersedes reference (a) under the authority of references (b) and (c).

1.2. Implements policy, assigns responsibilities, and prescribes procedures under
references (d) and (e) for reporting offender criminal history data to the Criminal
Justice Information Services (CJIS) Division of the FBI, by the DoD law enforcement
organizations, for inclusion in the National Crime Information Center criminal history
databases. This Instruction is not intended to eliminate requirements to provide
criminal history data otherwise imposed, including the Defense Incident Based
Reporting System.

## 2. APPLICABILITY AND SCOPE

This instruction applies to:

1

USA00000001

*DODI 5505.11, December 1, 1998*

2.1.  The Office of the Secretary of Defense, the Military Departments, the Chairman of the Joint Chiefs of Staff, the Combatant Commands, the Inspector General of the Department of Defense, and the Defense Agencies (hereafter referred to collectively as "the DoD Components").

2.2.  The Defense Criminal Investigative Organizations (DCIOs) and all other DoD criminal investigative or police organizations that investigate crimes for which criminal history data reporting is required by this Instruction.

## 3.  DEFINITIONS

Terms used in this Instruction are defined in enclosure 2.

## 4.  POLICY

It is DoD policy, under Appendix 3 of title 5 United States Code and DoD Directive 5106.1 (references (b) and (c)), that the DCIOs and all other DoD criminal investigative and police organizations shall submit to the FBI as prescribed herein, offender criminal history data for all Armed Forces members they investigate for commission of an offense listed in enclosure 3.

## 5.  RESPONSIBILITIES

5.1.  The Inspector General of the Department of Defense shall monitor and evaluate compliance with this Instruction.

5.2.  The Secretaries of the Military Departments and the Heads of the other DoD Components shall:

5.2.1.  Issue regulations, as may be necessary, to implement and comply with this Instruction.

5.2.2.  Ensure that Commanders establish and follow procedures to promptly notify the appropriate DCIO or other DoD criminal investigative or police organization:

5.2.2.1.  When a military judicial proceeding is initiated or command action is taken in nonjudicial proceedings (as defined in enclosure 2) against a military subject investigated by a law enforcement organization for an offense listed in

2

*DODI 5505.11, December 1, 1998*

enclosure 3.

    5.2.2.2.  Of the final disposition of such military judicial or nonjudicial proceeding.

6.  <u>PROCEDURES</u>

 6.1.  <mark>Fingerprints and all additional information required by the FD-249, "Suspect Fingerprint Card," shall be obtained from military suspects under investigation by the DCIOs or any other DoD criminal investigative or police organization for offenses listed in enclosure 3.</mark>   Where required, a Privacy Act Statement shall be provided to each suspect whose personal data is collected under DoD 5400.11-R (reference (h)).

 6.2.  Offender criminal history data records required under this Instruction are to be initiated by preparing and submitting an FD-249 (enclosure 4), to the CJIS, FBI.

  6.2.1.  The FD-249 shall be submitted when a command initiates military judicial proceedings, or when command action is taken in nonjudicial proceedings (as defined in enclosure 2) against a military subject investigated for the commission of an offense listed in enclosure 3.

  6.2.2.  Submission of the FD-249 shall occur within 15 days of command initiation of military judicial proceedings or when command action is taken in nonjudicial proceedings against a military subject (as defined in enclosure 2).

  6.2.3.  If final disposition of the proceeding is anticipated within 60 days of command initiation of military judicial proceedings or of command action in nonjudicial proceedings (as defined in enclosure 2), the FD-249 may be held and final disposition recorded on the FD-249.   If the final disposition is not recorded on the FD-249, then an FBI/DoJ Form R-84, "Final Disposition Report," enclosure 5, is required.

  6.2.4.  If final disposition is not anticipated within 60 days, submission of the FD-249 shall not be delayed by the local investigative office pending completion of military judicial or nonjudicial proceedings.

  6.2.5.  If applicable, approval of a request for discharge, retirement, or resignation in lieu of court-martial, and/or a finding of lack of mental competence to stand trial shall be recorded as "final disposition" either on the FD-249 or R-84, as appropriate.

USA00000003

*DODI 5505.11, December 1, 1998*

6.3.  Within 15 days after final disposition of judicial or nonjudicial proceedings, or the approval of a request for discharge, retirement, or resignation in lieu of court-martial, disposition information shall be reported by the DCIOs or other DoD criminal investigative or police organizations on the R-84, or an electronic data transfer equivalent, if it has not already been reported on an FD-249.   Do not hold the FD-249 pending appellate actions; however, appellate action affecting the character of an initial disposition must be reported if it occurs.   Dispositions that are exculpatory in nature (e.g., dismissal of charges, acquittal) shall also be filed.

## 7.  INFORMATION REQUIREMENTS

7.1.  The FBI shall provide, at no cost, FD-249 fingerprint cards, FBI/DoJ Forms R-84, pre-addressed envelopes, and further guidelines for submission of criminal history data.   Address requests for supplies and the "Guidelines for Preparation of Criminal Justice Information Services Division, Fingerprint Cards," March 1996, to the Personnel Division, Federal Bureau of Investigation, Washington, DC 20535.

7.2.  Where necessary, DCIOs and other DoD criminal investigative or police organization personnel shall be provided training (offered by the FBI at no cost) on fingerprinting and completion of the forms required under this Instruction.

7.3.  When submitting the FD-249 and FBI/DoJ Form R-84, charges must be described in commonly understood descriptive terms as specified in enclosure 3 (e.g., murder, rape, robbery, assault, possession of a controlled substance, etc.) or, if not specified in enclosure 3, by commonly understood title.   Offenses shall not be described solely by references to a Uniform Code of Military Justice (UCMJ) (reference (g)) punitive article, or to the United States Code or other statutory provision.   Investigators must ensure that the charges annotated on the FD-249 reflect the actual charges being pursued through court-martial or nonjudicial punishment.

7.4.  The disposition reflected on the FD-249 or the FBI/DoJ Form R-84 must also be described in common language; e.g., conviction (include offense(s)), dishonorable discharge, reduction in rank, forfeiture of pay, charges dismissed, etc.   The disposition of "conviction" shall only be reported for crimes prosecuted at trials by general, special, or summary court-martial yielding a plea or finding of guilty.   Adverse findings stemming from nonjudicial proceedings should be recorded as "nonjudicial disciplinary action."

7.5.  The DoD internal reporting of criminal history data is exempt from licensing

USA00000004

in accordance with paragraphs 5.4.2. and 5.4.7. of DoD 8910.1-M (reference (i)).   The interagency reporting required by this Instruction is exempt from licensing in accordance with paragraph (b)(2)(iii) of 41 CFR 101-11.204 (reference (j)).

8.  <u>EFFECTIVE DATE</u>

This Instruction is effective immediately.

Eleanor Hill
Inspector General

Enclosures - 5
    E1.  References, continued
    E2.  Definitions
    E3.  Listed Offenses
    E4.  Figure 4-1. FD-249, "Suspect Fingerprint Card"
    E5.  Figure 5-1. FBI/DoJ Form R-84, "Final Disposition Report"

USA00000005

## E1.  ENCLOSURE 1

### REFERENCES, continued

(e)  Section 534 of title 28, United States Code

(f)  Manual for Courts-Martial, United States, 1984 (Executive Order 12473, as amended by Executive Order 12484)

(g)  Chapter 47 of title 10, United States Code (Uniform Code of Military Justice, 10 U.S.C. 801-946)

(h)  DoD 5400.11-R, "Department of Defense Privacy Program," August 1983, authorized by DoD Directive 5400.11, June 9, 1982

(i)  DoD 8910.1-M, "DoD Procedures for Management of Information Requirements," November 1986, authorized by DoD Directive 8910.1, June 11, 1993

(j)  Federal Property Management Regulation Title 41 CFR Part 101-11.204, "Interagency Reports Management Program"

(k)  Section 13 of title 18, United States Code, "Laws of States adopted for areas within Federal jurisdiction"

USA00000006

*DODI 5505.11, December 1, 1998*

## E2.  ENCLOSURE 2

## DEFINITIONS

E2.1.1.  <u>Defense Criminal Investigative Organizations</u>.    The Defense Criminal Investigative Service, the U.S. Army Criminal Investigation Command, the Naval Criminal Investigative Service, and the Air Force Office of Special Investigations.

E2.1.2.  <u>Military Judicial Proceeding</u>.    A summary, special, or general court-martial, under the Uniform Code of Military Justice (10 U.S.C. 801-946 (reference (g))).

E2.1.2.1.  <u>Initiation</u>.    The referral of court-martial charges to a specified court by the convening authority under the Manual for Courts-Martial (MCM) (reference (f)), Rules for Courts-Martial (RCM) 601, or receipt by the command of an accused Service member's request for resignation, retirement, or discharge in lieu of court-martial.

E2.1.2.2.  <u>Final disposition of military judicial proceedings</u>.    Action by the trial counsel to report the results of the findings and sentence under the MCM (reference (f)), RCM 1101(a), or final approval of a resignation, retirement, or discharge in lieu of court-martial.

E2.1.3.  <u>Military Nonjudicial Proceeding</u>.    Proceedings under Article 15, Uniform Code of Military Justice (UCMJ).

E2.1.3.1.  <u>Command Action</u>.    Point in time when a commanding officer in the grade of major or lieutenant commander or above completes action to impose nonjudicial punishment, as specified in paragraph 4, Part V, MCM (reference (f)).

E2.1.3.2.  <u>Final Disposition</u>.    Action on an appeal by the next superior authority or expiration of the time limit to file an appeal or the date the Service member indicates that an appeal shall not be submitted, as specified in paragraph 7, Part V, MCM (reference (f)).

E2.1.4.  <u>Offender Criminal History Data</u>.    The information, including fingerprints, that is recorded on the front and back of a standard Suspect Fingerprint Card (FBI Form FD-249) and Final Disposition Report (FBI/DoJ R-84), or their electronic data transfer equivalent.

ENCLOSURE 2

USA00000007

*DODI 5505.11, December 1, 1998*

## E3.  ENCLOSURE 3

## OFFENSES UNDER SECTIONS 801-946 OF 10 U.S.C., (REFERENCE (G)) [1] THAT REQUIRE SUBMISSION OF OFFENDER CRIMINAL HISTORY DATA TO THE CRIMINAL JUSTICE INFORMATION SERVICES DIVISION, FBI, BY THE DCIOs AND ALL OTHER DoD LAW ENFORCEMENT ORGANIZATIONS

E3.1.1.  Article 78.   Accessory after the fact (for crimes listed in this enclosure).

E3.1.2.  Article 80.   Attempts (for crimes listed in this enclosure).

E3.1.3.  Article 81.   Conspiracy (for crimes listed in this enclosure).

E3.1.4.  Article 82.   Solicitation.

E3.1.5.  Article 85.   Desertion.

E3.1.6.  Article 90.   Assaulting a superior officer.

E3.1.7.  Article 91.   Striking or assaulting warrant, noncommissioned, or petty officer.

E3.1.8.  Article 94.   Mutiny or sedition.

E3.1.9.  Article 95.   Resistance, breach of arrest, and escape.

E3.1.10.  Article 106.   Spies.

E3.1.11.  Article 106a.   Espionage.

E3.1.12.  Article 107.   False Official Statements.

E3.1.13.  Article 108.   Military property of the United States; sale, loss, damage, destruction, or wrongful disposition.

E3.1.14.  Article 109.   Willfully destroying or damaging private property.

E3.1.15.  Article 111.   Drunk driving.

---

1  Sections 1 through 33 in this enclosure, below, are under reference (g).

USA00000008

*DODI 5505.11, December 1, 1998*

E3.1.16.  <u>Article 112a</u>.    Wrongful use, possession, etc., of controlled substances.

E3.1.17.  <u>Article 116</u>.    Riot

E3.1.18.  <u>Article 118</u>.    Murder.

E3.1.19.  <u>Article 119</u>.    Manslaughter.

E3.1.20.  <u>Article 120</u>.    Rape and carnal knowledge.

E3.1.21.  <u>Article 121</u>.    Larceny and wrongful appropriation.

E3.1.22.  <u>Article 122</u>.    Robbery.

E3.1.23.  <u>Article 123</u>.    Forgery.

E3.1.24.  <u>Article 123a</u>.    Bad Checks (in an amount over 100 dollars)

E3.1.25.  <u>Article 124</u>.    Maiming.

E3.1.26.  <u>Article 125</u>.    Sodomy.

E3.1.27.  <u>Article 126</u>.    Arson.

E3.1.28.  <u>Article 127</u>.    Extortion.

E3.1.29.  <u>Article 128</u>.    Assault.

E3.1.30.  <u>Article 129</u>.    Burglary.

E3.1.31.  <u>Article 130</u>.    Housebreaking.

E3.1.32.  <u>Article 131</u>.    Perjury.

E3.1.33.  <u>Article 132</u>.    Frauds against the United States.

E3.1.34.  The following offenses under Article 134, listed in the Manual for Courts-Martial (reference f):

E3.1.34.1.  <u>Assault</u>.    Indecent.

E3.1.34.2.  <u>Assault</u>.    With intent to commit murder, voluntary manslaughter,

USA00000009

*DODI 5505.11, December 1, 1998*

rape, robbery, sodomy, arson, burglary, or housebreaking.

E3.1.34.3.  Assaulting a Federal officer in the performance of duties.

E3.1.34.4.  Bribery and graft.

E3.1.34.5.  Burning with intent to defraud.

E3.1.34.6.  False pretenses, obtaining services under (value of more than 100 dollars).

E3.1.34.7.  False swearing.

E3.1.34.8.  <u>Firearm, discharge</u>.    Willfully, under such circumstances as to endanger human life.

E3.1.34.9.  Fleeing the scene of an accident.

E3.1.34.10.  Homicide, negligent.

E3.1.34.11.  False personation with intent to defraud.

E3.1.34.12.  Indecent acts or liberties with a child.

E3.1.34.13.  Indecent exposure.

E3.1.34.14.  Indecent language (communicating to any child under the age of 16 years).

E3.1.34.15.  Indecent acts with another.

E3.1.34.16.  Kidnapping.

E3.1.34.17.  <u>Mails</u>.    Taking, opening, secreting, destroying, or stealing.

E3.1.34.18.  <u>Mails</u>.    Depositing or causing to be deposited obscene matters in [mail].

E3.1.34.19.  Misprision of serious offense.

E3.1.34.20.  Obstructing justice.

ENCLOSURE 3

USA00000010

*DODI 5505.11, December 1, 1998*

E3.1.34.21.  Pandering and prostitution.

E3.1.34.22.  <u>Perjury</u>.    Subornation of.

E3.1.34.23.  <u>Public record</u>.    Altering, concealing, removing, mutilating, obliterating, or destroying.

E3.1.34.24.  <u>Seizure</u>.    Destruction, removal, or disposal of property to prevent.

E3.1.34.25.  Soliciting another to commit an offense (for crimes listed).

E3.1.34.26.  <u>Stolen property</u>.    Knowingly receiving, buying, or concealing (value more than 100 dollars).

E3.1.34.27.  <u>Testify</u>.    Wrongful refusal.

E3.1.34.28.  <u>Threat or Hoax</u>.    Bomb.

E3.1.34.29.  Threat, communicating.

E3.1.34.30.  <u>Weapon</u>.    Concealed or carrying.

E3.1.35.  Any offenses under 18 U.S.C. (reference (h)), charged as a violation of Article 134, which has a maximum punishment of more than one year.

ENCLOSURE 3

USA00000011

# E4. ENCLOSURE 4

## SUSPECT FINGERPRINT CARD

E4.F1. FD-249, "Suspect Fingerprint Card"

**FEDERAL BUREAU OF INVESTIGATION, UNITED STATES DEPARTMENT OF JUSTICE**
**WASHINGTON, D.C. 20537**

PRIVACY ACT OF 1974 (P.L. 93-579) REQUIRES THAT FEDERAL, STATE, OR LOCAL AGENCIES INFORM INDIVIDUALS WHOSE SOCIAL SECURITY NUMBER IS REQUESTED WHETHER SUCH DISCLOSURE IS MANDATORY OR VOLUNTARY, BASIS OF AUTHORITY FOR SUCH SOLICITATION, AND USES WHICH WILL BE MADE OF IT.

| | | | | |
|---|---|---|---|---|
| JUVENILE FINGERPRINT SUBMISSION YES ☐<br>TREAT AS ADULT YES ☐ | DATE OF ARREST MM DD YY | ORI<br>CONTRIBUTOR ADDRESS<br>REPLY DESIRED? YES ☐ | | |
| SEND COPY TO: (ENTER ORI) | DATE OF OFFENSE MM DD YY | PLACE OF BIRTH (STATE OR COUNTRY) | COUNTRY OF CITIZENSHIP | |
| MISCELLANEOUS NUMBERS | SCARS, MARKS, TATTOOS, AND AMPUTATIONS | | | |
| | RESIDENCE/COMPLETE ADDRESS | | CITY | STATE |
| OFFICIAL TAKING FINGERPRINTS (NAME OR NUMBER) | LOCAL IDENTIFICATION/REFERENCE | | PHOTO AVAILABLE? YES ☐<br>PALM PRINTS TAKEN? YES ☐ | |

| | |
|---|---|
| EMPLOYER: IF U.S. GOVERNMENT, INDICATE SPECIFIC AGENCY. IF MILITARY, LIST BRANCH OF SERVICE AND SERIAL NO. | OCCUPATION |
| CHARGE/CITATION<br>1. | DISPOSITION<br>1. |
| 2. | 2. |
| 3 | 3 |
| ADDITIONAL | ADDITIONAL |
| ADDITIONAL INFORMATION/BASIS FOR CAUTION | STATE BUREAU STAMP |

FD-249 (Rev. 12-1-94) ☆U.S. GPO: 1995—405-015/20012

*DODI 5505.11, December 1, 1998*

E4.F2.  FD-249, "Suspect Fingerprint Card" (reverse) continued

| LEAVE BLANK | CRIMINAL | | | (STAPLE HERE) | | | LEAVE BLANK | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | STATE USAGE | | | | | | | | |
| | | NFF SECOND | ☐ | | ☐ | | ☐ | | | |
| | | SUBMISSION | APPROXIMATE CLASS | | AMPUTATION | | SCAR | 953050000110 | | |
| STATE USAGE | | | | LAST NAME, FIRST NAME, MIDDLE NAME, SUFFIX | | | | | | |
| SIGNATURE OF PERSON FINGERPRINTED | | SOCIAL SECURITY NO. | | | LEAVE BLANK | | | | | |
| ALIASES/MAIDEN | | | | | | | | | | |
| LAST NAME, FIRST NAME, MIDDLE NAME, SUFFIX | | | | | | | | | | |
| FBI NO. | STATE IDENTIFICATION NO. | DATE OF BIRTH   MM   DD   YY | | | SEX | RACE | HEIGHT | WEIGHT | EYES | HAIR |
| 1. R. THUMB | 2. R. INDEX | 3. R. MIDDLE | | 4. R. RING | | 5. R. LITTLE | | | | |
| 6. L. THUMB | 7. L. INDEX | 8. L. MIDDLE | | 9. L. RING | | 10. L. LITTLE | | | | |
| LEFT FOUR FINGERS TAKEN SIMULTANEOUSLY | | | L. THUMB | R. THUMB | RIGHT FOUR FINGERS TAKEN SIMULTANEOUSLY | | | | | |

ENCLOSURE 4

USA00000013

*DODI 5505.11, December 1, 1998*

# E5.  ENCLOSURE 5

## FINAL DISPOSITION REPORT

### E5.F1.  FBI/DOJ Form R-84, "Final Disposition Report,"

R-84 (Rev. 5-14-80)                    FINAL DISPOSITION REPORT

Note: This vital report must be prepared on each individual whose arrest fingerprints have been forwarded to the FBI Identification Division without final disposition noted thereon. If no final disposition is available to arresting agency, also obtain subject's right four finger impressions on this form, complete left side and forward the form when case referred to prosecutor and/or courts.  Agency on notice as to final disposition should complete this form and submit to: Director, FBI, Washington, D.C. 20537 Attention: Identification Division.

(See instructions on reverse side)

| | |
|---|---|
| FBI No. **IF KNOWN** | Final Disposition & Date (If convicted or subject pleaded guilty to lesser charge, include this modification with disposition.) |
| Name on Fingerprint Card Submitted to FBI **MUST CORRESPOND WITH NAME ON ARREST FINGERPRINT CARD.** | 1. INCLUDE FINAL DISPOSITION & DATE FOR EACH OFFENSE CHARGED AT ARREST. |
| Date of Birth **MONTH-DAY-YEAR** | 2. INDICATE TYPE OF SENTENCE IMPOSED: E.G., CONSECUTIVE, CONCURRENT, PROBAT ETC., IF APPLICABLE. |
| Henry Fingerprint Classification **IF KNOWN - AS QUOTED BY FBI** From FBI 1-8 Response | |
| State Bureau No. (SID) **IF APPLICABLE** | Social Security No. (SOC) | This Form Submitted By: (Name, Title, Agency, ORI No., City & State) **OFFICER OF AGENCY SUBMITTING FINAL REPORT. LIST IN ORDER SHOWN ABOV** |
| Contributor of Fingerprints (Include complete name and location of agency, together with ORI No., if known.) | |

SPECIMEN FINAL DISPOSITION REPORT

| | |
|---|---|
| **AGENCY SUBMITTING ARREST FINGERPRINT CARD (GIVE ORI #, COMPLETE ADDRESS INCLUDING ZIP CODE)** | Signature                    Date |
| | Time |
| Arrest No. (OCA) **AS APPEARS ON ARREST FINGERPRINT CARD** | Date Arrested or Received **MONTH-DAY-YEAR** | ☐ COURT ORDERED EXPUNGEMENT: Return Arrest Fingerprint Card to Contributing Agency. Certified or Authenticated Copy of Court Order Attached. |
| Offenses Charged at Arrest **OFFENSES MUST BE SAME AS THOSE APPEARING ON ARREST FINGERPRINT CARD.** | Right Four Fingers Taken Simultaneously IF BLOCK ☐ CHECKED, MAKE CERTAIN THAT CERTIFIED OR AUTHENTICATED COPY OF COURT ORDER IS SECURELY ATTACHED TO THIS FORM. |

ARRESTING AGENCY MUST OBTAIN RIGHT FOUR FINGER IMPRESSIONS OF SUBJECT ON THIS FORM. ALL INFORMATION REQUESTED IS ESSENTIAL.

THIS FORM NOT TO BE USED IN LIEU OF ARREST FINGERPRINT CARD.

If additional space is needed, check ☐ and continue on reverse side of the form.

ENCLOSURE 5

USA00000014

E5.F2.  FBI/DOJ Form R-84, "Final Dispostion Report," (reverse) continued

**INSTRUCTIONS**

1. The purpose of this report is to record the initial date of an individual's arrest and thereafter secure the final disposition of the arrest at the earliest possible time from either the arresting agency, the prosecutor or the court having jurisdiction. (INTERIM DISPOSITION INFORMATION, e.g., RELEASED ON BOND, SHOULD NOT BE SUBMITTED.) The SUBJECT'S NAME, CONTRIBUTOR AND ARREST NUMBER should be exactly the same as they appear on the fingerprint card IN THE FILES OF THE FBI. The FBI number should be indicated, if known. Agency ultimately making disposition will complete and mail form to: FBI Identification Division, Washington, D.C. 20537.

2. The arresting agency should fill in all arrest data on left side of form and obtain the finger impressions of the right four fingers simultaneously. This should be done at the same time as the full set of fingerprints are taken on the arrest fingerprint card. If the arrest is disposed of by the arresting agency, as where the arrestee is released without charge, then the arresting agency should fill in this final disposition and mail form to FBI Identification Division. Of course, if final disposition is known when arrest fingerprint card is submitted it should be noted thereon and this form is unnecessary. In the event the case goes to the prosecutor, this form should be forwarded to the prosecutor with arrestee's case file.

3. The prosecutor should complete the form to show final disposition at the prosecution level if the matter is not being referred for court action and thereafter submit form directly to FBI Identification Division. If court action required, the prosecutor should forward form with case file to court having jurisdiction.

4. The court should complete this form as to final court disposition such as when arrested person is acquitted, case is dismissed, on conviction and when sentence imposed or sentence suspended and person placed on probation.

5. When arrested person convicted or enters guilty plea to lesser or different offense than that charged when originally arrested, this information should be clearly indicated.

6. If subsequent action taken to seal or expunge record, attach certified or authenticated copy of court order to this form so that FBI can return arrest fingerprints to original contributor.

7. It is vitally important for completion of subject's record in the FBI Identification Division files that Final Disposition Report be submitted in every instance where fingerprints previously forwarded without final disposition noted thereon.

**FOR ADDITIONAL INFORMATION**

GPO : 1992 O - 366-078

15

USA00000015



# Department of Defense
# **INSTRUCTION**

**NUMBER** 5505.11
July 9, 2010
*Incorporating Change 1, May 3, 2011*

IG DoD

SUBJECT:  Fingerprint Card and Final Disposition Report Submission Requirements

References:  See Enclosure 1

1. <u>PURPOSE</u>.  This Instruction:

   a.  Reissues DoD Instruction 5505.11 (Reference (a)) in accordance with the authority of DoD Directive 5106.01 (Reference (b)).

   b.  Establishes policy, assigns responsibilities, and prescribes procedures in accordance with part 20 of title 28 of the Code of Federal Regulations and section 534 of title 28, United States Code (U.S.C.) (References (c) and (d)) for Defense Criminal Investigative Organizations (DCIOs) and other DoD law enforcement organizations to report offender criminal history data to the Criminal Justice Information Services (CJIS) Division of the Federal Bureau of Investigation (FBI) for inclusion in the National Crime Information Center criminal history database.

   c.  Updates procedures to extend the requirement to submit, or ensure the submission of, fingerprints and criminal history data pertaining to foreign national subjects of investigations.

   d.  Updates procedures in cases involving violations of chapter 47 of title 10, U.S.C. (also known and hereinafter referred to as "The Uniform Code of Military Justice" (UCMJ)) (Reference (e)).  These procedures advance the requirement to submit offender criminal history data to the CJIS Division from the point when charges are referred to an earlier point when an agent or other law enforcement investigator determines, following coordination with the servicing Staff Judge Advocate (SJA) or legal advisor if necessary, that probable cause exists to believe that the subject has committed an offense listed in Enclosure 2 of this Instruction, but in no case earlier than apprehension (military), arrest (civilian), or the subject interview.

   e.  Rescinds the option of holding Federal Document (FD-249), "Suspect Fingerprint Card," in anticipation that final disposition will be available within 60 days.  FD-249 shall be submitted in accordance with this Instruction, and final disposition will be recorded and submitted using an FBI/Department of Justice Form R-84, "Final Disposition Report."

USA00001806

2. APPLICABILITY. This Instruction:

a. Applies to OSD, the Military Departments, the Office of the Chairman of the Joint Chiefs of Staff and the Joint Staff, the Combatant Commands, the Office of the Inspector General of the Department of Defense (IG DoD), the Defense Agencies, the DoD Field Activities, and all other organizational entities within the Department of Defense (hereinafter referred to collectively as the "DoD Components").

b. Is not intended to eliminate other requirements to provide criminal history data, including those concerning the Defense Incident Based Reporting System.

3. DEFINITIONS. See Glossary.

4. POLICY. It is DoD policy that the DCIOs and other DoD law enforcement organizations shall submit to the CJIS Division of the FBI, as prescribed herein and based on a probable cause standard determined in conjunction with the servicing SJA or legal advisor if necessary, offender criminal history data for all:

a. Members of the Military Services investigated for offenses listed in Enclosure 2 by DCIOs or other DoD law enforcement organizations.

b. Civilians investigated for offenses equivalent to those listed in Enclosure 2. This includes foreign nationals, persons serving with or accompanying an armed force in the field in time of declared war or contingency operations, and persons subject to Public Law 106-523 (Reference (f)) in accordance with Deputy Secretary of Defense Memorandum (Reference (g)).

c. Military Service members, their dependents, and DoD employees and contractors investigated by foreign law enforcement organizations for offenses equivalent to those listed in Enclosure 2 and made available to the DCIOs or other DoD law enforcement organizations.

5. RESPONSIBILITIES. See Enclosure 3.

6. PROCEDURES. See Enclosure 4.

7. RELEASABILITY. UNLIMITED. This Instruction is approved for public release and is available on the Internet from the DoD Issuances Website at http://www.dtic.mil/whs/directives.

USA00001807

8. <u>EFFECTIVE DATE</u>.  This Instruction is effective immediately.

Gordon S. Heddell
Inspector General

Enclosures
    1.  References
    2.  Listed Offenses
    3.  Responsibilities
    4.  Procedures
    Glossary

USA00001808

ENCLOSURE 1

REFERENCES

(a)  DoD Instruction 5505.11, "Fingerprint Card and Final Disposition Report Submission Requirements," June 20, 2006 (hereby cancelled)
(b)  DoD Directive 5106.01, "Inspector General of the Department of Defense," April 13, 2006
(c)  Part 20 of title 28, Code of Federal Regulations
(d)  Section 534 of title 28, United States Code
(e)  Chapter 47 and sections 1585a, 4027, 7480, and 9027 of title 10, United States Code (also known as "The Uniform Code of Military Justice")
(f)  Public Law 106-523, "Military Extraterritorial Jurisdiction Act of 2000," November 22, 2000
(g)  Deputy Secretary of Defense Memorandum, "Responsibility for Response to Reports of Alleged Criminal Activity Involving Contractors and Civilians Serving with or Accompanying the Armed Forces Overseas," September 10, 2008
(h)  Section 13 of title 18, United States Code
(i)  DoD 5400.11-R, "Department of Defense Privacy Program," May 14, 2007
(j)  U.S. Supreme Court Case 425 U.S. 25, "Middendorf v. Henry"
(k)  DoD 8910.1-M, "Department of Defense Procedures for Management of Information Requirements," June 30, 1998
(l)  Manual for Courts-Martial, United States, 2008
(m)  DoD Instruction 5200.08, "Security of DoD Installations and Resources and the DoD Physical Security Review Board (PSRB)," December 10, 2005

ENCLOSURE 1

USA00001809

## ENCLOSURE 2

## LISTED OFFENSES

The following offenses are pursuant to the punitive articles of the UCMJ and require submission of offender criminal history data to the CJIS Division, FBI, by the DCIOs and all other DoD law enforcement organizations.

1. Article 78 - Accessory after the fact (for crimes listed in this enclosure)

2. Article 80 - Attempts (for crimes listed in this enclosure)

3. Article 81 - Conspiracy (for crimes listed in this enclosure)

4. Article 82 - Solicitation

5. Article 85 - Desertion

6. Article 90 - Striking or assaulting a superior commissioned officer

7. Article 91 - Striking or assaulting a warrant, noncommissioned, or petty officer

8. Article 94 - Mutiny and sedition

9. Article 95 - Resistance, flight, breach of arrest, and escape

10. Article 97 - Unlawful detention

11. Article 106 - Spies

12. Article 106a - Espionage

13. Article 107 - False official statements

14. Article 108 - Military property of the United States - sale, loss, damage, destruction, or wrongful disposition

15. Article 109 - Property other than military property of the United States - waste, spoilage, or destruction

16. Article 111 - Drunken or reckless operation of vehicle, aircraft, or vessel

17. Article 112a - Wrongful use, possession, etc., of controlled substances

18. Article 116 - Riot or breach of peace

USA00001810

19. Article 118 - Murder

20. Article 119 - Manslaughter

21. Article 119a - Death or injury of an unborn child

22. Article 120 - Rape and carnal knowledge (for offenses committed prior to October 1, 2007)

23. Article 120 - Rape, sexual assault, and other sexual misconduct (for offenses committed on or after October 1, 2007)

24. Article 120a - Stalking (for offenses committed on or after October 1, 2007)

25. Article 121 - Larceny and wrongful appropriation

26. Article 122 - Robbery

27. Article 123 - Forgery

28. Article 123a - Making, drawing, or uttering check, draft, or order without sufficient funds

29. Article 124 - Maiming

30. Article 125 - Sodomy

31. Article 126 - Arson

32. Article 127 - Extortion

33. Article 128 - Assault

34. Article 129 - Burglary

35. Article 130 - Housebreaking

36. Article 131 - Perjury

37. Article 132 - Frauds against the United States

38. The following offenses pursuant to Article 134:

    a. Assault - Indecent (for offenses committed prior to October 1, 2007)

    b. Assault - with intent to commit murder, voluntary manslaughter, rape, robbery, sodomy, arson, burglary, or housebreaking

USA00001811

c.  Bribery and graft

d.  Burning with intent to defraud

e.  Child endangerment (for offenses committed on or after October 1, 2007)

*f.  Child pornography offenses, to include possession, distribution, production, receipt, viewing, and accessing*

f*g.*  Correctional custody - offense against

g*h.*  False or unauthorized pass offenses

h*i.*  False pretenses, obtaining services under

i*j.*  False swearing

j*k.*  Firearm, discharge - willfully, under such circumstances as to endanger human life

k*l.*  Fleeing the scene of an accident

l*m.*  Homicide, negligent

m*n.*  Impersonating a commissioned, warrant, noncommissioned, or petty officer, or an agent or official

n*o.*  Indecent acts or liberties with a child (for offenses committed prior to October 1, 2007)

o*p.*  Indecent exposure (for offenses committed prior to October 1, 2007)

p*q.*  Indecent language

q*r.*  Indecent acts with another (for offenses committed prior to October 1, 2007)

r*s.*  Kidnapping

s*t.*  Mail:  taking, opening, secreting, destroying, or stealing

t*u.*  Mail:  depositing or causing to be deposited obscene matters in

u*v.*  Misprision of serious offense

v*w.*  Obstructing justice

w*x.*  Wrongful interference with an adverse administrative proceeding

USA00001812

~~x~~*y.* Pandering and prostitution (having someone commit an act of prostitution is still an offense pursuant to Article 134, but if the pandering is "compelled," it becomes an Article 120 offense, on or after October 1, 2007)

~~y~~*z.* Perjury: subornation of

~~z~~*aa.* Public record: altering, concealing, removing, mutilating, obliterating, or destroying

~~aa~~*ab.* Reckless endangerment

~~ab~~*ac.* Seizure: destruction, removal, or disposal of property to prevent

~~ac~~*ad.* Self-injury without intent to avoid service

~~ad~~*ae.* Soliciting another to commit an offense (for crimes listed in this enclosure)

~~ae~~*af.* Stolen property: knowingly receiving, buying, concealing

~~af~~*ag.* Testify: wrongful refusal

~~ag~~*ah.* Threat or hoax designed or intended to cause panic or public fear

~~ah~~*ai.* Threat, communicating

~~ai~~*aj.* Weapon: concealed, carrying

39. Any offenses pursuant to section 13 of title 18, U.S.C. (Reference (h)), charged as a violation of Article 134.

USA00001813

## ENCLOSURE 3

## RESPONSIBILITIES

1. <u>IG DoD</u>. The IG DoD shall:

a. Develop and establish overall policy and provide guidance for DoD organizations to report offender criminal history data to the FBI for inclusion in the National Crime Information Center criminal history database.

b. Oversee and evaluate DCIO and other DoD law enforcement organizations' compliance with this Instruction.

2. <u>HEADS OF THE DoD COMPONENTS</u>. The Heads of the DoD Components shall:

a. Issue procedures, as may be necessary, to implement and comply with this Instruction.

b. Ensure that commanders and directors of DoD organizations establish and follow procedures to promptly notify the appropriate DCIO or other DoD law enforcement organization:

(1) When a military judicial proceeding is initiated or command action is taken in military nonjudicial proceedings pursuant to Article 15, UCMJ, against a military subject investigated by a DCIO or other DoD law enforcement organization for an offense listed in Enclosure 2. Offender criminal history data shall not be reported in accordance with this Instruction unless the subject has been investigated by a DCIO or other DoD law enforcement agency for an offense listed in Enclosure 2. For example, if a military unit investigates an alleged offense noted in Enclosure 2 and initiates a judicial and/or nonjudicial proceeding without a DCIO or another DoD law enforcement organization having investigated the subject, then the reporting requirements of this Instruction do not apply.

(2) When they become aware that a non-DoD and/or foreign law enforcement organization has initiated an investigation against a U.S. military member, military dependent, or DoD civilian employee or contractor, for the equivalent of an offense listed in Enclosure 2 or punishable pursuant to the U.S.C.

(3) Of the final disposition of cases under the circumstances discussed in subparagraphs 2.b.(1) and 2.b.(2) of this enclosure.

ENCLOSURE 3

USA00001814

ENCLOSURE 4

PROCEDURES

1. GENERAL PROVISIONS

a. Fingerprints and all information required on FD-249 shall be obtained from military subjects under investigation by a DCIO or other DoD law enforcement organization for offenses listed in Enclosure 2. Fingerprints and additional required information pertaining to civilian subjects shall be obtained for offenses punishable pursuant to the U.S.C. equivalent to those listed in Enclosure 2. Where required, a Privacy Act statement shall be provided to each suspect whose personal data is collected in accordance with DoD 5400.11-R (Reference (i)).

b. Offender criminal history data records required in accordance with this Instruction shall be initiated by preparing and submitting a FD-249 and, when required, an R-84, or their electronic equivalents, to the CJIS Division.

(1) For military subjects (investigated by a DCIO or other DoD law enforcement organization), the FD-249 shall be submitted when an agent or law enforcement official determines, following coordination with the servicing SJA or legal advisor if necessary (in no case earlier than apprehension (military), arrest (civilian), or the subject interview), that probable cause exists to believe that the person has committed an offense listed in Enclosure 2. If applicable, such coordination shall be documented in the investigative file.

(2) If applicable, approval of a request for discharge, retirement, or resignation in lieu of court-martial, and/or a finding of lack of mental competence to stand trial, shall be recorded as "final disposition" either on the FD-249 or R-84.

(3) Within 15 calendar days after final disposition of military judicial or nonjudicial proceedings, or the approval of a request for discharge, retirement, or resignation in lieu of court-martial, disposition information shall be reported by the DCIO or other DoD law enforcement organizations on the R-84, or an electronic data transfer equivalent, if it has not already been reported on an FD-249. Do not hold the FD-249 or R-84 pending appellate actions. Appellate action affecting the character of an initial disposition must be reported if it occurs. Dispositions that are exculpatory in nature (e.g., dismissal of charges, acquittal) shall also be documented on the R-84.

(4) For civilian subjects (investigated by a DCIO or other DoD law enforcement organization):

(a) Submit FD-249 within 15 calendar days of the subject interview, arrest, indictment, or information, as applicable, for offenses punishable pursuant to the U.S.C. that are equivalent to those listed in Enclosure 2.

(b) Submit Form R-84 within 15 calendar days after sentencing.

ENCLOSURE 4

USA00001815

(c)  In cases investigated jointly with another law enforcement organization when that organization agrees to obtain and forward fingerprints and criminal history data to the FBI, prepare a memorandum for the case file.  The memorandum shall identify each subject and the law enforcement organization collecting and forwarding the data.  A current memorandum of understanding or agreement at the organizational level, addressing the requirement to obtain fingerprints and associated data and to forward said information to the FBI, will suffice in lieu of case-specific memorandums.  However, copies of the submitted data must be obtained for the case file.

2.  INFORMATION REQUIREMENTS

a.  The FBI provides blank FD-249 and/or R-84, pre-addressed envelopes, and further guidelines for submission of criminal history data.  Address requests for supplies and the guidelines for preparation of CJIS Division fingerprint cards to:

Federal Bureau of Investigation
Criminal Justice Information Services Division
Attention:  Logistical Support Unit (LSU)
1000 Custer Hollow Road
Clarksburg, WV  26306

b.  Questions regarding supplies may be directed to the LSU at (304) 625-3983; orders may be faxed to (304) 625-3984 or submitted electronically at www.fbi.gov.  Additionally, the FBI offers training on fingerprinting and completing of the forms required in accordance with this Instruction.  Organizations requiring training should contact the FBI customer service group at (304) 625-5590 between 8:00 AM and 5:30 PM eastern standard time.  In order to request fingerprint cards and training aids, DCIOs and DoD law enforcement organizations MUST have an originating agency identification (ORI) number.  The DCIOs and DoD law enforcement organizations requesting an ORI number should contact the Office of the IG DoD, Office of Investigative Policy and Oversight, (703) 604-8700, for further information.  All fingerprint-related questions should be directed to the organization's fingerprint representative prior to contacting the FBI.

c.  When submitting the FD-249 and R-84, charges must be described in commonly understood descriptive terms (e.g., murder, rape, robbery, assault, possession of a controlled substance) or by a commonly understood title.  Offenses shall not be described solely by references to a UCMJ punitive article or to the U.S.C. or other statutory provision.  Investigators must ensure that the charges annotated on the FD-249 reflect the actual charges being pursued through court-martial or nonjudicial punishment.

d.  The disposition reflected on the FD-249 or the R-84 must also be described in common language (e.g., conviction (include offense(s)), dishonorable discharge, reduction in rank, forfeiture of pay, charges dismissed).  The disposition of "conviction" shall only be reported for crimes prosecuted by general or special court-martial yielding a plea or a finding of guilty.

ENCLOSURE 4

USA00001816

(1)  Adverse findings resulting from a summary court-martial should be recorded as follows:  "Subject found guilty by summary court-martial."  Although action by summary courts-martial is disciplinary in nature for a violation of military law, the Supreme Court has ruled that a summary court-martial is not a criminal proceeding (see U.S. Supreme Court Case 425 U.S. 25, "Middendorf v. Henry" (Reference (j)).

(2)  Adverse findings resulting from nonjudicial proceedings pursuant to Article 15, UCMJ, shall be recorded as "nonjudicial disciplinary action."  An adverse finding or punishment pursuant to Article 15, UCMJ, is a disciplinary action, but does not constitute a criminal proceeding or conviction.

e.  The DoD internal reporting of criminal history data is exempt from review and approval in accordance with paragraph C4.4.7. of DoD 8910.1-M (Reference (k)).

ENCLOSURE 4

USA00001817

## GLOSSARY

## DEFINITIONS

These terms and their definitions are for the purpose of this Instruction.

command action.  The point in time when a company grade or field grade commander completes action to impose nonjudicial punishment, as specified in paragraph 4, Part V of Manual for Courts-Martial 2008 (Reference (l)).

defense criminal investigative organizations.  The Defense Criminal Investigative Service, the U.S. Army Criminal Investigation Command, the Naval Criminal Investigative Service, and the Air Force Office of Special Investigations.

DoD law enforcement organization.  Those entities designated for the security or protection of DoD property, personnel, or places that are subject to the jurisdiction, administration, or in the custody of the Department of Defense in accordance with DoD Instruction 5200.08 (Reference (m)).  These entities as designated may take reasonably necessary and lawful measures to maintain law and order and to protect installation personnel and property.

final disposition of military judicial proceedings.  Action by the trial counsel to report the results of the findings and sentence in accordance with paragraph 1101(a) of Reference (l) or final approval of a resignation, retirement, or discharge in lieu of court-martial.

final disposition of military nonjudicial proceedings.  Action on an appeal by the next superior authority, expiration of the time limit to file an appeal, or the date the Service member indicates that an appeal shall not be submitted, as specified in paragraph 7, Part V of Reference (l).

initiation.  The referral of court-martial charges to a specified court by the convening authority in accordance with paragraph 601 of Reference (l) or receipt by the command of an accused service member's request for resignation, retirement, or discharge in lieu of court-martial.

military judicial proceeding.  A summary, special, or general court-martial, pursuant to the UCMJ.

military nonjudicial proceeding.  Proceedings pursuant to Article 15 of the UCMJ.

offender criminal history data.  The information, including fingerprints, that is recorded on the front and back of a standard FD-249 and R-84, or their electronic data transfer equivalent.

probable cause.  Facts and circumstances, more than mere suspicion but less than proof beyond a reasonable doubt, that would lead a reasonable and prudent person to believe a crime has been, is being, or is about to be committed.

USA00001818



# Department of Defense
# DIRECTIVE

NUMBER 7730.47

October 15, 1996

Certified Current as of December 1, 2003

USD(P&R)

SUBJECT:  Defense Incident-Based Reporting System (DIBRS)

References:  (a)  DoD Instruction 7730.47, "Statistical Report of Criminal Activity and Disciplinary Infractions in the Armed Forces," May 16, 1973 (hereby canceled)
(b)  Section 534 note of title 28, United States Code, "Uniform Federal Crime Reporting Act"
(c)  Sections 10601 et seq. of title 42, United States Code, "Victims Rights and Restitution Act of 1990"
(d)  Section 922 note of title 18, United States Code, "The Brady Handgun Violence Prevention Act"
(e)  through (k), see enclosure 1

## 1. REISSUANCE AND PURPOSE

This Directive:

1.1. Reissues reference (a).

1.2. Establishes policy and assigns responsibilities for incident reporting.

1.3. Implements references (b) through (d) by providing guidance for reporting the occurrence and disposition of applicable incidents.

1.4. Establishes the "Defense Incident-Based Reporting Council."

1.5. Authorizes the publication of DoD 7730.47-M (reference (e)), in accordance with DoD 5025.1-M (reference (f)).

USA00004082

*DODD 7730.47, October 15, 1996*

## 2. APPLICABILITY

This Directive applies to the Office of the Secretary of Defense, the Military Departments (including the Coast Guard when it is not operating as a Military Service in the Navy by agreement with the Department of Transportation), the Chairman of the Joint Chiefs of Staff, the Inspector General of the Department of Defense, the Defense Agencies, and the DoD Field Activities (hereafter referred to collectively as "the DoD Components").

## 3. DEFINITIONS

Terms used in this Directive are defined in enclosure 2.

## 4. POLICY

It is DoD policy that:

   4.1. The DoD Components comply with the crime reporting requirements of the Uniform Federal Crime Reporting Act of 1988 (28 U.S.C. 534 note) (reference (b)), reporting requirements for victim and witness assistance notifications of the Victim's Rights and Restitution Act of 1990 (42 U.S.C. 10601 et seq.) (reference (c)), and reporting requirements of the Brady Handgun Violence Prevention Act (18 U.S.C. 922 note) (reference (d)).

   4.2. Cooperation between DoD functions responsible for the enforcement of laws be enhanced through an integrated reporting system.

   4.3. Commanders' administration of the military justice system be enhanced through analysis of data available through this reporting system.

   4.4. A central repository of incident-based statistical data be maintained at the Defense Manpower Data Center (DMDC) to enhance DoD and Service capability to analyze trends and to respond to Executive, Legislative, and oversight requests for statistical data relating to criminal and other high-interest incidents.

   4.5. The DoD Components with law enforcement, criminal investigative, military justice, and corrections functions regularly report prescribed data to the DoD central repository to achieve the purposes in paragraphs 4.1. through 4.4., above.

USA00004083

*DODD 7730.47, October 15, 1996*

5.  RESPONSIBILITIES

   5.1.  The Under Secretary of Defense for Personnel and Readiness shall:

      5.1.1.  Develop overall policy for the DIBRS and monitor compliance with this Directive.

      5.1.2.  Approve procedures developed by the Secretaries of the Military Departments that implement this Directive.

      5.1.3.  Ensure that the DMDC formulates a data collection mechanism to track and report DIBRS information from initial contact through investigation, prosecution, confinement, and release, and to report National Incident-Based Reporting System (NIBRS) data to the Federal Bureau of Investigation (FBI).

      5.1.4.  Establish a cross-functional Defense Incident-Based Reporting Council to provide a forum for the exchange of information and the continuing operation of the DIBRS.  The membership shall be selected from all functional areas (law enforcement, criminal investigations, judicial functions, and corrections) from each DoD Component.  The chair will be assigned from the Office of the Under Secretary of Defense for Personnel and Readiness (OUSD (P&R)).  The council shall meet quarterly or at the call of the chair.

      5.1.5.  As the Principal Staff Assistant for purposes of the DIBRS implementation, provide functional guidance to the Secretaries of the Military Departments and the Heads of the other DoD Components in the discharge of their responsibilities under this Directive.

      5.1.6.  Oversee the functions of the DMDC, which shall:

         5.1.6.1.  Operate and maintain the DIBRS central repository, to include computer support, software development, quality control, inquiry capability, and administrative support.

         5.1.6.2.  Provide technical assistance to the Military Departments and other DoD Components in the development of software necessary for implementation of the requirements of this Directive and DoD 7730.47-M (reference (e)).

USA00004084

*DODD 7730.47, October 15, 1996*

5.1.6.3.  Provide programming and analytical support to the Under Secretary of Defense for Personnel and Readiness (USD(P&R)) for special studies requiring use of the database.

5.1.6.4.  Provide access and protect contents of the database in accordance with DoD 5400.11-R (reference (g)).  Access by the DoD Components and personnel to information containing personal identifiers shall be limited solely to the DMDC's use for official statistical analysis and record verification.  External access to information containing personal identifiers shall be limited solely to that necessary to comply with 18 U.S.C. 922 note (reference (d)).

5.1.7.  Change, reissue, or amend reference (e), as required.

5.2.  The Secretaries of the Military Departments and the Heads of the Other DoD Components shall:

5.2.1.  Ensure compliance with this Directive and establish policies and procedures to implement the DIBRS within their Components.

5.2.2.  Designate the Component-Responsible Official for the DIBRS, who will report monthly to the DMDC under the procedures in reference (e), and a Functional-Responsible Official for each functional area (law enforcement, criminal investigation, judicial functions, and corrections) who will coordinate all reporting for the Component in the designated functional area.

5.2.3.  Designate specific reporting responsibilities within their respective Components.  Secretaries of the Military Departments shall assign reporting responsibilities for members of their Service who are assigned to the Combatant Commands.

5.2.4.  In conjunction with the DMDC, develop software necessary for implementation of the requirements of this Directive and reference (e).

5.2.5.  Provide for the assignment of personnel in sufficient numbers to enable DIBRS programs to be carried out effectively.

5.2.6.  Train personnel to comply with this Directive.

5.2.7.  Provide representation from each functional area in which the Component has a reporting requirement to the Defense Incident-Based Reporting Council.

4

*DODD 7730.47, October 15, 1996*

5.2.8.  Report as required under reference (e) on each person under their jurisdiction who is the subject of a reportable incident under this Directive.  Service reporting requirements include those cases handled by a combatant command for members of their Component.  This includes the active duty sponsor of Sudden Infant Death Syndrome (SIDS) victims when residing with the member.

5.2.9.  Provide access and protect contents of any databases created pursuant to this Directive and reference (e) in accordance with DoD 5400.11-R (reference (g)).

5.3.  The <u>Inspector General of the Department of Defense</u> shall:

5.3.1.  Develop investigative policy and perform appropriate oversight reviews of the reporting of disciplinary incident data by the DoD criminal investigative organizations.  This is not intended to substitute for the routine managerial oversight of the program provided by the DoD criminal investigative organizations, the OUSD(P&R), the Heads of the DoD Components, or the Component-Responsible Officials.  This oversight shall not conflict with the authority and responsibility of the Assistant Secretary of Defense for Command, Control, Communications, and Intelligence, as defined in DoD Instruction 5240.4 (reference (h)).

5.3.2.  Continue the current improvements to processes and systems begun under the Corporate Information Management initiative.

## 6.  <u>INFORMATION REQUIREMENTS</u>

6.1.  The information requirement identified at subparagraphs 5.2.2. and 5.2.7. has been assigned Report Control Symbol DD-P&R(M)1973 in accordance with DoD 8910.1-M (reference (i)).  Reporting instructions are contained in DoD 7730.47-M(reference (e)).  Initial reports will be time-phased and incremental by Service according to the following schedule:

6.1.1.  The Air Force shall begin implementation 90 days after reference (e) is signed.

6.1.2.  The Navy and Marines shall begin implementation 270 days after reference (e) is signed.

6.1.3.  The Army shall begin implementation 360 days after reference (e) is signed.

USA00004086

*DODD 7730.47, October 15, 1996*

6.1.4.  The Coast Guard shall begin implementation 450 days after reference (e) is signed.

6.2.  The USD(P&R) shall adjust individual dates or specific reporting requirements, as appropriate, contingent on availability of the software necessary for full implementation of the requirements of this Directive and reference (e).   Reporting requirements or implementation dates shall be adjusted upon presentation of compelling reasons for such an adjustment by the DMDC or the DoD Component concerned.

6.3.  The Defense Logistics Agency and the Defense Protective Service shall notify the DMDC and phase in with one of the Services when ready.   The DMDC will report as required to the FBI, the Department of Justice Bureau of Justice Statistics, and the Department of Justice Office for Victims of Crime.


7.  <u>EFFECTIVE DATE AND IMPLEMENTATION</u>

This Directive is effective immediately.   Forward one copy of implementing documents to the Under Secretary of Defense for Personnel and Readiness within 120 days.


John P. White
Deputy Secretary of Defense


Enclosures - 2
    E1.  References, continued
    E2.  Definitions

USA00004087

## E1.  ENCLOSURE 1

### REFERENCES, continued

(e)  DoD 7730.47-M, "Manual for the Defense Incident-Based Reporting System," authorized by this Directive

(f)  DoD 5025.1-M, "DoD Directive System Procedures," August 1994

(g)  DoD 5400.11-R, "Department of Defense Privacy Program," August 1983

(h)  DoD Instruction 5240.4, "Reporting of Counterintelligence and Criminal Violations," September 22, 1992

(i)  DoD 8910.1-M, "DoD Procedures for Management of Information Requirements," November 1986

(j)  Department of Justice, Federal Bureau of Investigation, Uniform Crime Reporting Handbook, NIBRS Edition, 1994 [1]

(k)  Chapter 47 of title 10, United States Code, "Uniform Code of Military Justice"

----------
[1] Available from the Uniform Crime Reporting Section, Federal Bureau of Investigation, Washington, DC 20535.

USA00004088

## E2.  ENCLOSURE 2

## DEFINITIONS

E2.1.1.  <u>Case</u>.  All criminal charges brought against a particular accused for disposition at a single forum.  A case may include any number of offenses resulting from any number of incidents.

E2.1.2.  <u>Central Repository</u>.  The DoD facility designated to receive Service inputs from Functional Consolidating Activities and report data to other Federal Agencies.  The DMDC is the DoD Central Repository.

E2.1.3.  <u>Component-Responsible Official</u>.  The person designated by the Head of each DoD Component primarily responsible in the Component for coordinating, implementing, and managing the reporting system established by this Directive.

E2.1.4.  <u>Functional Consolidating Activity</u>.  An activity designated by a DoD Component to receive reports from one or more functional reporting areas, consolidate them, and report to a Component Central Repository or to the DMDC.

E2.1.5.  <u>Functional-Responsible Official</u>.  The person designated by the Head of each DoD Component (or designee) who has primary responsibility for coordinating the implementation of the reporting system within the designated functional area (law enforcement, criminal investigation, judicial functions, and corrections) in the Component.

E2.1.6.  <u>Reportable Incident</u>.  An incident requiring the submission of specified data elements as set out in DoD 7730.47-M (reference (e)).  Reportable incidents include:

E2.1.6.1.  <u>Disciplinary Incidents</u>

E2.1.6.1.1.  Incidents reportable by the DoD Components under the Uniform Crime Reporting Handbook (reference (j)).

E2.1.6.1.2.  Criminal incidents not reportable under reference (j), but punishable under the Uniform Code of Military Justice (reference (k)).  This includes such high-interest incidents as fraternization, homosexual misconduct, sexual harassment, sexual assault, and rape.

USA00004089

E2.1.6.1.3.  Civilian criminal incidents committed by military personnel on active duty resulting in a felony conviction, as defined in the civilian jurisdiction where the offense is tried.

E2.1.6.2.  <u>Other Reportable Incidents</u>

E2.1.6.2.1.  SIDS when the victim is a dependent residing with an active duty member.

E2.1.6.2.2.  Incidents involving the actual or attempted suicide of military personnel on active duty.

E2.1.6.2.3.  Other incidents requiring action under 18 U.S.C. 922 note (reference (d)).

E2.1.6.3.  (Incidents that are the subject of counterintelligence investigations will not trigger DIBRS reporting requirements until a NIBRS reportable arrest occurs or charges under the UCMJ are preferred.)

USA00004090

## MEMORANDUM OF UNDERSTANDING
### BETWEEN THE DEPARTMENT OF DEFENSE
### AND THE FEDERAL BUREAU OF INVESTIGATION ON THE PROVISION OF DATA
### TO THE NATIONAL INSTANT CRIMINAL BACKGROUND CHECK SYSTEM

### I.    Introduction

This Memorandum of Understanding (MOU) constitutes an agreement between the Department of Defense (DOD) and the Federal Bureau of Investigation (FBI) whereby the DOD will provide data to the FBI for use in the National Instant Criminal Background Check System (NICS) mandated by the Brady Handgun Violence Prevention Act (Brady Act). This MOU describes the intended use of the data; identifies the data elements covered by the agreement; establishes the terms governing the use, disclosure, and protection of these data; and sets forth the responsibilities of both agencies for the execution and management of this agreement.

### II.    Purpose of Data Disclosure

Public Law 103-159, known as the "Brady Handgun Violence Prevention Act," or "Brady Act," was passed by Congress and signed into law on November 30, 1993. The Brady Act requires that a "National Instant Criminal Background Check System" be established by November 30, 1998, which any Federal Firearms Licensee (FFL), i.e., licensed gun dealer, may contact for information to be supplied immediately as to whether a prospective firearms transfer would violate federal or state laws.

The NICS will include the NICS Index, a database managed by the FBI, which will contain information provided by federal agencies on persons prohibited under federal law from purchasing firearms. Data disclosed by the DOD to the FBI under the terms of this agreement will be entered into the NICS along with data provided by other authorized agencies for the purpose of conducting Brady Act background checks.

### III.    Legal Authority

This agreement is made in accordance with section 103(e)(1) of the Brady Act which provides that "Notwithstanding any other law, the Attorney General may secure directly from any department or agency of the United States such information on persons for whom receipt of a firearm would violate subsection (g) or (n) of section 922 of title 18, United States Code or State law, as is necessary to enable the system to operate in accordance with this section. On request of the Attorney General, the head of such department or agency shall furnish such information to the system."

The Attorney General has assigned primary responsibility for the development of the NICS to the FBI. In a Department of Justice Notice in the Federal Register,

66F-HQ-A1238705-12
66F-HQ-C1226523-52
UPLOADED ON
DATE 3/6/1998
BY_____ (P-1)

39k+10a148n10-1T16

USA00004091

June 1, 1994, the Attorney General stated "The FBI will supervise the development and use of information in the [NICS] for background checks with the full cooperation and support of other federal agencies having data files with potentially disqualifying information."

## IV.   Categories of Data Disclosure

Section 922 of title 18, United States Code, prohibits the sale of a firearm to any person who:

(1)   Is under indictment for or has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year;

(2)   Is a fugitive from justice;

(3)   Is an unlawful user of or addicted to any controlled substance (as defined in Section 102 of the Controlled Substances Act);

(4)   Has been adjudicated as a mental defective or has been committed to a mental institution;

(5)   Is an alien who is illegally or unlawfully in the United States;

(6)   Has been discharged from the Armed Forces under dishonorable conditions;

(7)   Has renounced his/her United States citizenship;

(8)   Is subject to a court order that was issued after a hearing of which he/she received actual notice, and that restrains him/her from committing domestic violence; or

(9)   Has been convicted in any court of a misdemeanor crime of domestic violence.

(Note: There is a tenth category of persons -- juveniles -- who are prohibited by the Gun Control Act from receiving firearms. However, the NICS will not be used to consider a prospective purchaser's age when conducting a background check. FFLs will continue to be responsible for verifying the age of the purchaser.)

Data disclosed by the DOD to the NICS will fall under categories (4) or (6), above. Attachment 1 provides the definitions for these categories of persons. These definitions are established by 27 Code of Federal Regulations, Part 178.

- 2 -

USA00004092

V.   **Terms of Data Disclosure**

This section identifies the relevant system of records and data elements subject to this agreement, the general functions and responsibilities of the DOD and the FBI required to implement the agreement, and restrictions that will apply to the access and use of data provided under the terms of the agreement.

A.  System of Records and Data Elements

The DOD will extract data for use in the NICS Index from the Defense Incident Based Reporting System (DIBRS), a system of records under the Privacy Act of 1974 (section 552a of Ttitle 5, United States Code), or other databases maintained by the DOD or military services, as appropriate. The DOD agrees to provide records which are reasonably available of persons in categories (4) or (6), above, from an earliest date of 1973.

For each person, the extracted data will comprise the following data elements:

(1)   Originating Agency Identifier (ORI);

(2)   Agency Record Identifier (ARI);

(3)   Category of persons prohibited from receiving a firearm (see section IV, above);

(4)   Name of the person;

(5)   Date of birth (DOB) of the person. All records furnished to the NICS will include a <u>complete</u> DOB, that is, month, day, and year. If less than a complete date of birth is available, then <u>at least one unique numeric identifier</u> of the person will be provided (e.g., Social Security Number);

(6)   Sex of the person; and,

(7)   Additional personal identification elements (to the extent they are available in the source data).

(Attachment 2 provides the details for all data elements.)

B.  General Functions and Responsibilities

- 3 -

USA00004093

(1)     The DOD will be responsible for (1) reading and applying the definitions for prohibited categories (4) or (6) in Section IV, above, (2) determining which records within the DOD fall within these definitions, (3) formatting these records so that they can be entered into the NICS Index, (4) providing these records to the FBI in accordance with DOD implementing regulations, and (5) updating these records as appropriate.

(2)     The Privacy Act does not apply to disclosures of records by agencies to the Attorney General for the purpose of inputting information into the NICS Index.  However, any other release by the DOD or the FBI is subject to the requirements of the Privacy Act.

(3)     The FBI and the DOD agree to determine jointly the format of the transferred data; the transfer storage medium; the transfer protocols; and the procedures for the addition, modification, and cancellation of transferred data.  This information will be provided in the Interface Control Document (ICD).  The ICD will remain separate from this agreement and may be updated as required to reflect changing technological or operational factors.  No requirement may be included in the ICD that would, in effect, represent a material change in the terms of this MOU (e.g., deleting, changing, or adding required data elements) unless the MOU is first modified by both agencies.

(4)     The DOD agrees to format the data it furnishes to the NICS in accordance with the ICD for delivery to the FBI.  Delivery of this data to the FBI will adhere to the following schedule:

    (a)     May 1, 1998:  The DOD will furnish a practice load of operational data to be used by the NICS system developers for development and testing of the system;

    (b)     August 3, 1998:  The DOD will furnish a full load of operational data to be incorporated into the NICS database by the NICS system developers for background checks beginning on November 30, 1998; and

    (c)     Ongoing:  The DOD will furnish periodic updates of operational data to be incorporated into the NICS.

(5)     The DOD will be responsible for ensuring the accuracy and validity of the data it provides to the NICS and agrees to correct any record determined to be invalid or incorrect.

- 4 -

USA00004094

(6)    The FBI and the DOD agree jointly to provide the documentation, technical assistance, and liaison required to carry out their respective responsibilities and to assist each other as needed to ensure efficient data transfer and data maintenance operations.

(7)    Pursuant to the Brady Act, a person found ineligible to receive a firearm may appeal the decision. If NICS data from the DOD provided the basis for the ineligibility decision, the DOD may be called upon to (1) provide additional information to establish whether the person is the same individual who is identified in the disqualifying record; (2) assist in determining whether the person's record in the NICS Index is accurate and valid; and (3) correct any erroneous information in the record.

C. Restrictions on Data Access and Use

(1)    The data and the storage media transferred to the FBI will remain the property of the DOD.

(2)    The FBI agrees to safeguard the transferred data and storage media and to dispose of the data and storage media in accordance with the Interface Control Document.

(3)    The DOD will be responsible for ensuring that its personnel who process and handle data for the NICS comply with the DOD's policies and procedures for protecting information in accordance with applicable federal laws, such as the Privacy Act of 1974 and the Computer Security Act of 1987.

(4)    The NICS will be a "system of records" under the Privacy Act of 1974 (section 552a of Title 5, United States Code). The FBI will protect the privacy of individuals whose names are included in the transferred data by strict adherence to the provisions of the Privacy Act. In addition, the FBI will:

(a)    restrict access to the transferred data to authorized employees and officials who need the data to perform official duties;

(b)    store the transferred data in an area physically safe at all times from access by unauthorized persons; and

(c)    process the transferred data in a way which prevents unauthorized persons from retrieving, modifying, or deleting the data.

- 5 -

USA00004095

(5)     The DOD will maintain records that support its submissions of data to the NICS.  Upon request from authorized FBI auditors, the DOD will make these records available.

## VI.   Execution and Management of the Agreement

This agreement will become effective on the latter date of signature and will remain in effect until modified or terminated in writing by both parties or until determined by the U.S. Attorney General that the data covered by this agreement are no longer required for use in the NICS.  Modifications to this agreement may be made at any time upon written approval of the DOD and the FBI and shall become effective upon the date of written approval by both parties.

If this agreement between the DOD and the FBI is terminated and the FBI is signatory to other agreements with the DOD, those agreements will remain unaffected by the termination of this agreement.

The DOD contact concerning NICS matters is Lieutenant Colonel Bernard Ingold, Deputy Director, Legal Policy, OUSD (Personnel & Readiness), Department of Defense, Room 4C763, 4000 Defense Pentagon, Washington, D.C. 20301-4000, (703) 697-3387. The DOD will notify the FBI if there is any change to this point of contact.

The FBI contact concerning NICS matters is Mr. Emmet A. Rathbun, Unit Chief, FBI Programs Development Section, Criminal Justice Information Services Division, FBI West Virginia Complex, Module C-3, 1000 Custer Hollow Road, Clarksburg, WV 26306, (304) 625-2720.  The FBI will notify the DOD if there is any change to this point of contact.

USA00004096

The authorized officials, whose signatures appear below, have committed their respective organizations to the terms of this agreement.

Charles W. Archer
Federal Bureau of Investigation
Assistant Director
Criminal Justice Information Services

3/3/98
Date

Jeanne B. Fites
Department of Defense
Deputy Under Secretary of Defense
(Program Integration)
Office of the Under Secretary of Defense
(Personnel & Readiness)

Feb. 27, 1998
Date

USA00004097

MEMORANDUM OF UNDERSTANDING

BETWEEN

THE DEPARTMENT OF DEFENSE

AND

THE FEDERAL BUREAU OF INVESTIGATION

REGARDING

### THE PROVISION AND USE OF
### "PROHIBITED PERSONS" DATA

I.     **Introduction**

This Memorandum of Understanding (MOU) constitutes an agreement between the Department of Defense (DoD) and the Federal Bureau of Investigation (FBI) whereby the DoD will provide data to the FBI for, inter alia, inclusion in the Department of Justice (DOJ)/FBI National Instant Criminal Background Check System (NICS) and use when making determinations required by the Brady Handgun Violence Prevention Act (Brady Act; Public Law [Pub.L.] 103-159), the Public Health Security and Bioterrorism Preparedness and Response Act of 2002 (Bioterrorism Act; Pub.L. 107-188), the Safe Explosives Act (Pub.L. 107-296), and the Energy Policy Act of 2005 (Pub.L. 109-58). This MOU identifies the data elements; describes intended uses of the data; establishes the terms governing the maintenance, use, disclosure, and protection of DoD provided data; and sets forth the responsibilities of both agencies for the execution and management of this agreement.

II.    **Purpose of Data Disclosure**

A.  The Brady Act authorized the establishment of the NICS, which any Federal Firearms Licensee, e.g., licensed gun dealer, may contact for information as to whether a prospective firearm transfer would violate state or federal law.  The NICS includes a NICS Index containing information provided by authorized entities on persons prohibited under federal law from receiving or possessing firearms.  Data disclosed by the DoD to the FBI under the terms of this agreement may be entered into the NICS Index along with data provided by other authorized entities for the primary purpose of conducting firearms and explosives-related background checks.

B.  The Bioterrorism Act requires that the U.S. Attorney General perform background checks on individuals seeking access to certain biological agents and toxins.  Data disclosed by the DoD will be used when performing such checks.

C.  The Safe Explosives Act, enacted as part of the Homeland Security Act, requires that any person who transports, ships, causes to be transported, or receives explosive materials in

USA00004115

either interstate or intrastate commerce must obtain a federal permit or license issued by the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) after undergoing a background check. Data disclosed by the DoD will be utilized when performing such checks.

D.  The Energy Policy Act of 2005, provides that (1) security personnel of the United States Nuclear Regulatory Commission regulated entities are authorized to transfer, receive, possess, transport, import, and use one or more handguns, rifles, shotguns, short-barreled shotguns, machine guns, semi-automatic assault weapons, ammunition for such guns or weapons, and large capacity ammunition feeding devices (covered weapons) for official purposes; and (2) that a NICS background check is conducted to ensure the security personnel are not prohibited from firearms possession. Data disclosed by the DoD will be utilized when performing such checks.

## III.    Legal Authority

The authority to enter into this agreement includes: Pub.L. 103-159; Pub.L. 107-296; Pub.L. 109-58; Pub.L. 107-188; 5 United States Code (U.S.C.), § 552a (commonly referred to as the Privacy Act of 1974); and  28 U.S.C. § 534.

## IV.    Category of Data Disclosure

A.  18 U.S.C. § 922 prohibits the sale of a firearm to any person who:

(1)     Is convicted in any court of a crime punishable by imprisonment for a term exceeding one year;

(2)     Is a fugitive from justice;

(3)     Is an unlawful user of or addicted to any controlled substance (as defined in Section 102 of the Controlled Substances Act);

(4)     Has been adjudicated as a mental defective or has been committed to a mental institution;

(5)     Is an alien who is illegally or unlawfully in the United States;

(6)     Has been discharged from the Armed Forces under dishonorable conditions;

(7)     Has renounced his/her United States citizenship;

(8)     Is subject to a court order that was issued after a hearing of which he/she received actual notice, and that restrains him/her from committing domestic violence;

2

(9)   Has been convicted in any court of a misdemeanor crime of domestic violence; or

(10)   Is under indictment or information in any court for a crime punishable by imprisonment for a term exceeding one year.

B.  DoD disclosed data will consist of information relevant to restrictions listed in Section IV.A. above.  Attachment 1 provides the definitions for categories of persons established by 18 U.S.C. § 921(a) and further defined in 27 Code of Federal Regulations Part 478.11.  This agreement encompasses any changes that might be made to these definitions by rule, regulation, or policy.

**V.     Terms of Disclosure** - This section identifies the relevant system records and data elements subject to this agreement, the general functions and responsibilities of the DoD and the FBI required to implement the agreement, and restrictions that will apply to the access and use of data provided under the terms of the agreement.

A.  Records and Data Elements - The DoD will provide data from the Defense Incident Based Reporting System (DIBRS), a system of records subject to Privacy Act requirements. Should the DoD determine it possesses relevant records from sources other than DIBRS, the DoD also agrees to provide those records expeditiously.  The extracted data will include the following data elements:

(1)     Originating Agency Identifier (ORI);

(2)     Agency Record Identifier (ARI);

(3)     Category of prohibited or restricted person (see Section IV above); and

(4)     Personal descriptive data, to include:

(a)  Name,

(b)  Date of birth (DOB) - (Each record furnished to the FBI is to include a complete DOB:  that is – month, day, and year.  If the complete DOB is not available, then at least one unique numeric identifier must be provided [e.g., social security number]),

(c)  Sex, and

(d)  Other identifying information.

3

B.  General Functions and Responsibilities

    (1)  The DoD will be responsible for:

        (a)  reading and applying the definition for the prohibited categories,

        (b)  determining which records within the DoD fall within the definitions,

        (c)  formatting these records as agreed upon by the FBI,

        (d)  providing these records to the FBI, and

        (e)  updating these records as appropriate.

    (2)  Data submitted by the DoD may be included in one or more of the six NICS Index files:

        (a)  Dishonorable Discharge File,

        (b)  Mental Defectives/Commitments File,

        (c)  Illegal/Unlawful Alien File,

        (d)  Citizen Renunciant File,

        (e)  Controlled Substance Abuser File, and

        (f)  Denied Persons File.

    (3)  Data submitted by the DoD may also be included in other FBI databases for use in determining whether an individual is a restricted person pursuant to 18 U.S.C. § 175b(d) or for other authorized purposes.

    (4)  Data submitted by the DoD may also be included in other DOJ databases, as deemed appropriate by the DOJ or cognizant DOJ component, for the performance of such other background checks as the DOJ component may be authorized or required to conduct, including those checks authorized for law enforcement purposes.

    (5)  The FBI and the DoD agree to determine jointly the format of the transferred data; the transfer storage medium; the transfer protocols; and the procedures for the addition, modification, and cancellation of transferred data.  The FBI/NICS Interface Control Document (ICD) will provide this information.  Additional ICDs may be developed as necessary.  The ICD will remain separate from this

USA00004118

agreement and may be updated as required to reflect changing technological or operational factors. No requirement may be included in the ICD that would, in effect, represent a material change in terms of this MOU (e.g., deleting, changing, or adding required data elements) unless the MOU is first modified, in writing, by both agencies.

(6) The DoD agrees to format the data it furnishes to the FBI in accordance with the FBI/NICS ICD for delivery to the FBI.

(7) The DoD will provide information to the FBI from the DIBRS and other relevant sources. The DoD agrees to act without delay in converting existing DoD records so that as much relevant information as possible may be promptly provided to the FBI.

(8) The DoD will be responsible for ensuring the accuracy and validity of the data it provides to the FBI and agrees to correct any record determined to be invalid or incorrect.

(9) The FBI and the DoD agree jointly to provide documentation, technical assistance, and liaison required to carry out their prospective responsibilities and to assist each other as needed to ensure efficient data transfer and data maintenance operations.

(10) Individuals on whom background checks are conducted may appeal any adverse decision made by the FBI or other DOJ component agency. If data from the DoD provided the basis for the ineligibility decision, the DoD may be called upon to:

> (a) provide additional information to establish whether the person is the same individual who is identified in the disqualifying record,

> (b) assist in determining whether the person's record in the databases is accurate and valid, and

> (c) correct any erroneous information in the record.

C. Restrictions on Data Access and Use

(1) The parties agree that the data transferred to the FBI are copies of information from DoD's own records. The DoD will not provide classified data pursuant to this MOU; instead, the data is considered to be personal and sensitive.

(2) The FBI agrees to safeguard the transferred data and storage media in accordance with the ICD. The FBI will dispose of the data and storage media in

USA00004119

accordance with approved FBI records retention policies and schedules. To the extent that transferred data may be relevant and appropriate for preservation as official records of the FBI and/or other DOJ component(s), it will be the responsibility of the DOJ agency to incorporate such information into its records system in accordance with its records management processes.

(3) The FBI will comply with Privacy Act requirements, to include:

> (a) Restricting access to the transferred data to authorized employees, officials, and contractors who need the data to perform official duties, and

> (b) Storing the transferred data in a physically secure area.

(4) The DoD will maintain records that support its submissions to the FBI. Upon request from authorized FBI auditors, the DoD will make these records available.

## VI. Audits

A. To ascertain the validity and accuracy of records obtained from the DoD and maintained by the FBI, as well as to determine the effectiveness and efficiency of existing methods by which records are added, canceled, and/or modified, audits will be conducted by the FBI. One purpose of this audit is to determine whether the records provided by the DoD support either a federal firearm prohibition under 18 U.S.C. § 922 (g) or (n) or a determination regarding a restricted person under 18 U.S.C. § 175b(d). The FBI may also review all data within the record to detect invalid data elements as part of the validation process.

B. A random sample of records from the contributing agency will be selected for review by the FBI to verify that the information is valid and correct.

C. Discrepancies will be provided to the contributing agency. The contributing agency will be responsible for any corrections and/or modifications to the records.

## VII.   Execution and Management of the Agreement

A. This agreement, consisting of seven sections, will be effective on the date it is signed by each agency and will remain in effect until modified or terminated with the consent of both parties or until determined by the U.S. Attorney General that the data covered by this agreement are no longer required. Modifications to this agreement may be made at any time upon written approval by both parties. This agreement supercedes the "Memorandum of Understanding Between the Department of Defense and the Federal Bureau of Investigation on the Provision of Data to the National Instant Criminal Background Check System" which was executed by the parties on February 27, 1998.

6

parties will not be effected.

C.  This agreement is not intended, and should not be construed, to create any right or benefit, substantive or procedural, enforceable at law or otherwise by any third party against the parties, their parent agencies, the United States, or the officers, employees, agents or other associated personnel thereof.

D.  Unless otherwise agreed to in writing, each party shall bear its own costs in relation to this agreement.  Expenditures will be subject to federal budgetary processes and availability of funds pursuant to applicable laws and regulations.  The parties expressly acknowledge that this in no way implies that Congress will appropriate funds for such expenditures.

E.  The DoD Point of Contact (POC) concerning this Agreement is:

Director (currently Mr. John F. Awtrey)
Law Enforcement Policy and Support, OUSD (Personnel and Readiness)
Department of Defense
4040 N. Fairfax Drive, Suite 200
Arlington, VA  22203
(703) 696-0846

The DoD will notify the FBI if the POC is changed.

F.  The FBI POC concerning this Agreement is:

NICS Section Chief (currently Mr. Bobby P. Hamil, Jr.) FBI
FBI Criminal Justice Information Services Division
Module A-3
1000 Custer Hollow Road
Clarksburg, WV  26306
(304) 625-3500

The FBI will notify the DoD if the POC is changed.

G.  Disagreements between the parties arising under or relating to this MOU will be resolved only by consultation between the parties.

7

The foregoing represents the understandings reached by the FBI and the DoD.

FOR THE FEDERAL BUREAU OF INVESTIGATION

_____     _____
                                            Date

Mr. Thomas E. Bush III
Assistant Director
Criminal Justice Information Services Division
Federal Bureau of Investigation

FOR THE DEPARTMENT OF DEFENSE

_____     _____
                                            Date

Jeanne B. Fites
Department of Defense
Deputy Under Secretary of Defense
(Program Integration)
Office of the Under Secretary of Defense
(Personnel and Readiness)

8

USA00004122



Department of Defense
# MANUAL

**NUMBER** 7730.47-M, Volume 1
December 7, 2010
Incorporating Change 2, June 29, 2018

USD(I)

SUBJECT:   Defense Incident-Based Reporting System (DIBRS):  Data Segments and Elements

References:   See Enclosure 1

## 1. PURPOSE

a.  <u>Manual</u>. This Manual is composed of several volumes, each containing its own purpose, and reissues DoD 7730.47-M (Reference (a)). The purpose of the overall Manual, in accordance with the authority in DoD Directive (DoDD) 5124.02 (Reference (b)), is to implement the policy in DoD Instruction (DoDI) 7730.47 (Reference (c)) and to assign responsibilities and prescribe procedures for managing the DIBRS.

b.  <u>Volume</u>. This Volume:

(1)  Prescribes the reporting data elements needed to comply with Federal criminal incident reporting pursuant to the note to section 534 of title 28, United States Code (U.S.C.) (also known and hereafter referred to as "The Uniform Federal Crime Reporting Act of 1988, as amended" (Reference (d))) and the note to section 922 of title 18, U.S.C. (also known and hereafter referred to as "The Brady Handgun Violence Prevention Act of 1993, as amended" Reference (e))).

(2)  Incorporates and cancels Under Secretary of Defense for Personnel and Readiness (USD(P&R)) Memorandums (References (f) and (g)) and Deputy Under Secretary of Defense for Program Integration Memorandum (Reference (h)).

(3)  Continues to require maintenance of:

(a)  A central database on incidents of domestic violence involving members of the Military Services pursuant to section 1562 of title 10, U.S.C. (Reference (i)) and DoDI 6400.01 (Reference (j)).

(b)  A central repository of criminal incident data to enhance DoD effectiveness in responding to executive, legislative, and ad hoc requests for statistical information relating to criminal and other high-interest incidents.

ENCLOSURE 3

GENERAL PROCEDURES

1. INTRODUCTION

   a. DIBRS Overview

   (1) The DIBRS is designed to meet the data repository needs involved in reporting on overall law enforcement activities and statistics within the Department of Defense, as mandated by Congress, including:

   (a) NIBRS requirements mandated by The Uniform Federal Crime Reporting Act of 1988, as amended.

   (b) Victim and witness notifications mandated by section 10601 of title 42, U.S.C. (also known and hereafter referred to as "The Victim's Rights and Restitution Act of 1990, as amended" (Reference (n))).

   (c) Case dispositions mandated by The Brady Handgun Violence Prevention Act of 1993, as amended.

   (d) Establishment of a central database on domestic violence incidents mandated by Reference (i).

   (e) Recurring requests for overall DoD law enforcement data.

   (2) The areas with reporting responsibility are:

   (a) Law Enforcement. General police operations, such as those conducted by the Service military police and civilian police and similar operations, as well as by Defense Agency civilian police.

   (b) Criminal Investigations. Investigations conducted by the Air Force Office of Special Investigations, the Naval Criminal Investigative Service, the Army Criminal Investigation Command, the Defense Criminal Investigative Service, or other criminal investigative organizations within the Department of Defense.

   (c) Command Actions. Case dispositions resulting from command authority or referral for judicial action.

   (d) Judicial Functions. Proceedings conducted through military legal offices and courts responsible for prosecuting DoD offenders.

USA00004367

(e) <u>Corrections</u>. Actions conducted at military correctional facilities and by persons responsible for DoD employees convicted of a crime and sentenced to imprisonment.

b. <u>NIBRS Overview</u>. Since the inception of the Uniform Crime Reporting (UCR) Program in 1930, the FBI has been collecting crime data dealing with offenses and arrests from approximately 16,000 county, State, and Federal law enforcement agencies. The FBI uses the data to develop a reliable set of criminal statistics for law enforcement agencies throughout the country to use in their administration, operation, and management.

(1) During the late 1970s, the law enforcement community called for expanded use of the UCR Program and developed new guidelines for reporting crime statistics. These guidelines formed the basis of NIBRS, as mandated by The Uniform Federal Crime Reporting Act of 1988, as amended. NIBRS requires law enforcement agencies, including those within the Department of Defense, to report NIBRS data to the Department of Justice for inclusion in the FBI-maintained system pursuant to FBI handbook (Reference (o)).

(2) The FBI assembles, publishes, and distributes the data to contributing agencies, including the Department of Defense, State UCR programs, Government bodies, and others interested in the Nation's crime problem. Law enforcement agencies consider NIBRS data to be an indispensable tool in the war against crime because it provides them with detailed, accurate, and meaningful statistical data about when and where crime takes place, what form it takes, and the characteristics of its victims and perpetrators. Law enforcement personnel and Government agencies armed with this information can request and allocate resources, and inform interested parties on the effort to combat crime.

c. <u>Victim-Witness Act</u>. Pursuant to The Victims Rights and Restitution Act of 1990, as amended, victims and selected witnesses must be notified of their rights at certain phases of the case, from the time of initial contact by law enforcement through the investigation phase, prosecution phase, and, if the case results in confinement, the change in confinement status. The confinement authority must advise the victim or witness of an inmate's status, to include length of sentence, anticipated earliest release date, place of confinement, the possibility of transfer, the possibility of parole or clemency, release from confinement, escape, and death. DoDI 1030.2 (Reference (p)) requires the use of DD Form 2705, "Victim/Witness Notification of Inmate Status," for this purpose. (DD Form 2705 is available on the Internet at http://www.dtic.mil/whs/directives/infomgt/forms/ddforms2500-2999.htm.)  The DIBRS requires that the number of victim-witness notifications be reported to DMDC in accordance with The Victim's Rights and Restitution Act of 1990, as amended.

d. <u>Brady Act</u>. The DIBRS shall be used to centralize the collection of information that is reportable by the DoD Components pursuant to The Brady Handgun Violence Prevention Act of 1993, which requires the Department of Defense to report these eight categories to the FBI for purposes of prohibiting firearm purchases:

(1) Persons who have been convicted in any court of a crime punishable by imprisonment for a term exceeding 1 year.

USA00004368

(2)  Persons who are fugitives from justice.

(3)  Persons who are unlawful users of, or addicted to, any controlled substance.

(4)  Persons who have been adjudicated as mental defectives or who have been committed to a mental institution.

(5)  Persons who have been discharged from the U.S. Armed Forces under dishonorable conditions.

(6)  Persons who, having been citizens of the United States, have renounced their U.S. citizenship.

(7)  Persons convicted in any court of a misdemeanor crime of domestic violence.

(8)  Persons who are under indictment or information for a crime punishable by imprisonment for a term exceeding 1 year.

e.  <u>Database on Domestic Violence</u>. Reference (i) requires the Department of Defense to establish a central database of information on incidents of domestic violence involving members of the Military Services. The Military Departments must maintain and report annually any information received on:

(1)  Each domestic violence incident reported to a commander, a law enforcement authority of the Military Services, or a family advocacy program of the Department of Defense.

(2)  The number of those incidents that involve evidence determined sufficient for supporting disciplinary action and, for each such incident, a description of the allegations and the action taken by command authorities in the incident.

(3)  The number of those incidents that involve evidence determined insufficient for supporting disciplinary action and, for each such case, a description of the allegation.

f.  <u>General Crime Reporting</u>

(1)  In addition to meeting the mandatory statutory requirements, the Department of Defense must ensure a common interface between the functional areas that make up overall DoD law enforcement. Specifically, the Military Services and OSD have been faced with increasing requests from Congress, the Department of Justice, and other agencies for statistical data on criminal offenses and other high-interest issues including suicide, fraternization, drug abuse, homosexual misconduct, sexual assault, and sexual harassment. These requests necessitate improvements in the ability of the Department of Defense to track a crime or incident through the law enforcement, criminal investigation, command action, judicial, and corrections phases.

USA00004369

(e)  When DoD Military Treatment Facilities disclose protected health information (PHI) in support of the DIBRS, such disclosures shall comply with the requirements of DoD 6025.18-R (Reference (q)). When PHI is received by non-DoD Military Treatment Facilities it is then considered to be PII and thereafter subject to the requirements of References (l) and (m).

(4)  Judicial Functions. The two areas involved in the DIBRS that fall in the judge advocate area of responsibility are the reporting requirements of Reference (m) and the results of the trial reporting required by Manual of Courts-Martial (Reference (r)), Rule of Court-Martial 1101.  Judicial function officials shall report the results of the trial and the identifying information for offenders qualifying pursuant to The Brady Handgun Violence Prevention Act of 1993, as amended.  Legal organizations with DIBRS reporting responsibilities shall forward data to the functional consolidating activity on a monthly basis. The functional consolidating activity shall forward data to DMDC on a monthly basis.

(5)  Corrections. Confinement facility officials are responsible for entering DIBRS data on prisoners confined in the facility, regardless of the member's branch of Service.  The Army, as the Executive Agent for Level III Corrections pursuant to DoDD 1325.04 (Reference (s)), shall be responsible for updating DIBRS entries for those military prisoners transferred from Army facilities to the Federal Bureau of Prisons. DIBRS reporting shall document significant changes in the confinement status and release from confinement.  Correctional facilities shall also report data concerning victim and witness notifications and entries documenting that sex offender registration processing has been completed if required by the appropriate officials involved in the case. Confinement facilities shall submit DIBRS data reports to a DoD Component central confinement repository on a monthly basis. Data gathered from the monthly submission of these reports shall be consolidated to complete confinement and victim and witness assistance reports currently prepared for the Department of Defense, the Congress, and the Department of Justice.

USA00004373

*DoDM 7730.47-M-V1, December 7, 2010*

b.  Offense categories and corresponding PII shelf life are displayed in Table 9.

Table 9.  PII Shelf Life

| OFFENSE CATEGORY | PII SHELF LIFE |
|---|---|
| Offenses reportable pursuant to Brady* or involving sex offender registration | 99 years from entry into database |
| Class A offenses (other than those disposed of by UCMJ Article 15 administrative sanction) not reportable by the Department of Defense pursuant to Brady* or involving sex offender registration | 5 years from entry into database or term of confinement, whichever is longer |
| Military offenses (for which there is no NIBRS equivalent) not reportable by the Department of Defense pursuant to Brady* and for which confinement of more than 1 year or death is adjudged by a court-martial | 5 years from entry into database or term of confinement, whichever is longer |
| Class B offenses (other than those disposed of by UCMJ Article 15 administrative sanction) not reportable by the Department of Defense pursuant to Brady* or involving sex offender registration | 3 years from entry into database or term of confinement, whichever is longer |
| Military offenses (other than those disposed of by UCMJ Article 15 administrative sanction and for which there is no NIBRS equivalent) not reportable by the Department of Defense pursuant to Brady* | 3 years from entry into database |
| Offenses disposed of by UCMJ Article 15 or by administrative sanctions and not reportable by the Department of Defense pursuant to Brady* or involving sex offender registration | 6 months from entry into database |
| Acquittals, set-aside actions, and unfounded allegations | Immediate removal |
| *The Brady Handgun Violence Prevention Act of 1993, as amended | |

USA00004435



# Department of Defense
# **MANUAL**

**NUMBER** 7730.47-M, Volume 1
December 7, 2010

USD(P&R)

SUBJECT:   Defense Incident-Based Reporting System (DIBRS): Data Segments and Elements

References:   See Enclosure 1

## 1. PURPOSE

a. <u>Manual</u>. This Manual is composed of several volumes, each containing its own purpose, and reissues DoD 7730.47-M (Reference (a)). The purpose of the overall Manual, in accordance with the authority in DoD Directive (DoDD) 5124.02 (Reference (b)), is to implement the policy in DoDD 7730.47 (Reference (c)) and to assign responsibilities and prescribe procedures for managing the DIBRS.

b. <u>Volume</u>. This Volume:

(1) Prescribes the reporting data elements needed to comply with Federal criminal incident reporting pursuant to the note to section 534 of title 28, United States Code (U.S.C.) (also known and hereafter referred to as "The Uniform Federal Crime Reporting Act of 1988, as amended" (Reference (d))) and the note to section 922 of title 18, U.S.C. (also known and hereafter referred to as "The Brady Handgun Violence Prevention Act of 1993, as amended" Reference (e))).

(2) Incorporates and cancels Under Secretary of Defense for Personnel and Readiness (USD(P&R)) Memorandums (References (f) and (g)) and Deputy Under Secretary of Defense for Program Integration Memorandum (Reference (h)).

(3) Continues to require maintenance of:

(a) A central database on incidents of domestic violence involving members of the Military Services pursuant to section 1562 of title 10, U.S.C. (Reference (i)) and DoDD 6400.1 (Reference (j)).

(b) A central repository of criminal incident data to enhance DoD effectiveness in responding to executive, legislative, and ad hoc requests for statistical information relating to criminal and other high-interest incidents.

USA00004931

*DoDM 7730.47-M-V1, December 7, 2010*

ENCLOSURE 3

GENERAL PROCEDURES

1. <u>INTRODUCTION</u>

   a. <u>DIBRS Overview</u>

   (1) The DIBRS is designed to meet the data repository needs involved in reporting on overall law enforcement activities and statistics within the Department of Defense, as mandated by Congress, including:

   (a) NIBRS requirements mandated by The Uniform Federal Crime Reporting Act of 1988, as amended.

   (b) Victim and witness notifications mandated by section 10601 of title 42, U.S.C. (also known and hereafter referred to as "The Victim's Rights and Restitution Act of 1990, as amended" (Reference (n))).

   (c) Case dispositions mandated by The Brady Handgun Violence Prevention Act of 1993, as amended.

   (d) Establishment of a central database on domestic violence incidents mandated by Reference (i).

   (e) Recurring requests for overall DoD law enforcement data.

   (2) The areas with reporting responsibility are:

   (a) <u>Law Enforcement</u>.  General police operations, such as those conducted by the Service military police and civilian police and similar operations, as well as by Defense Agency civilian police.

   (b) <u>Criminal Investigations</u>.  Investigations conducted by the Air Force Office of Special Investigations, the Naval Criminal Investigative Service, the Army Criminal Investigation Command, the Defense Criminal Investigative Service, or other criminal investigative organizations within the Department of Defense.

   (c) <u>Command Actions</u>.  Case dispositions resulting from command authority or referral for judicial action.

   (d) <u>Judicial Functions</u>.  Proceedings conducted through military legal offices and courts responsible for prosecuting DoD offenders.

USA00004939

*DoDM 7730.47-M-V1, December 7, 2010*

(e) <u>Corrections</u>.  Actions conducted at military correctional facilities and by persons responsible for DoD employees convicted of a crime and sentenced to imprisonment.

b.  <u>NIBRS Overview</u>.  Since the inception of the Uniform Crime Reporting (UCR) Program in 1930, the FBI has been collecting crime data dealing with offenses and arrests from approximately 16,000 county, State, and Federal law enforcement agencies.  The FBI uses the data to develop a reliable set of criminal statistics for law enforcement agencies throughout the country to use in their administration, operation, and management.

(1)  During the late 1970s, the law enforcement community called for expanded use of the UCR Program and developed new guidelines for reporting crime statistics.  These guidelines formed the basis of NIBRS, as mandated by The Uniform Federal Crime Reporting Act of 1988, as amended.  NIBRS requires law enforcement agencies, including those within the Department of Defense, to report NIBRS data to the Department of Justice for inclusion in the FBI-maintained system pursuant to FBI handbook (Reference (o)).

(2)  The FBI assembles, publishes, and distributes the data to contributing agencies, including the Department of Defense, State UCR programs, Government bodies, and others interested in the Nation's crime problem.  Law enforcement agencies consider NIBRS data to be an indispensable tool in the war against crime because it provides them with detailed, accurate, and meaningful statistical data about when and where crime takes place, what form it takes, and the characteristics of its victims and perpetrators.  Law enforcement personnel and Government agencies armed with this information can request and allocate resources, and inform interested parties on the effort to combat crime.

c.  <u>Victim-Witness Act</u>.  Pursuant to The Victims Rights and Restitution Act of 1990, as amended, victims and selected witnesses must be notified of their rights at certain phases of the case, from the time of initial contact by law enforcement through the investigation phase, prosecution phase, and, if the case results in confinement, the change in confinement status.  The confinement authority must advise the victim or witness of an inmate's status, to include length of sentence, anticipated earliest release date, place of confinement, the possibility of transfer, the possibility of parole or clemency, release from confinement, escape, and death.  DoD Instruction (DoDI) 1030.2 (Reference (p)) requires the use of DD Form 2705, "Victim/Witness Notification of Inmate Status," for this purpose.  (DD Form 2705 is available on the Internet at http://www.dtic.mil/whs/directives/infomgt/forms/ddforms2500-2999.htm.)  The DIBRS requires that the number of victim-witness notifications be reported to DMDC in accordance with The Victim's Rights and Restitution Act of 1990, as amended.

d.  <u>Brady Act</u>.  The DIBRS shall be used to centralize the collection of information that is reportable by the DoD Components pursuant to The Brady Handgun Violence Prevention Act of 1993, which requires the Department of Defense to report these eight categories to the FBI for purposes of prohibiting firearm purchases:

(1)  Persons who have been convicted in any court of a crime punishable by imprisonment for a term exceeding 1 year.

ENCLOSURE 3

USA00004940