**U.S. Department of Justice**

# GUIDANCE TO AGENCIES REGARDING SUBMISSION OF RELEVANT FEDERAL RECORDS TO THE NICS



March 2013

USA00016664

On January 16, 2013, the President issued a Memorandum aimed at strengthening the accuracy and efficiency of the federal background check system for firearms purchases. That Memorandum directed the Department of Justice ("Department") to provide guidance to agencies regarding the identification and sharing of relevant federal records for this purpose. This document fulfills the President's directive.

The Brady Handgun Violence Prevention Act of 1993 required the Attorney General to establish a system so that federal firearms dealers, prior to transferring a firearm, could determine whether a potential buyer is prohibited from receiving the firearm under the federal Gun Control Act of 1968 or state law. That system—the National Instant Criminal Background Check System ("NICS")—became operational on November 30, 1998. Since that time, the NICS has been instrumental in denying the transfer of firearms to criminals and other persons for whom possession is against the law.

The ability of the NICS to determine quickly and effectively whether an individual is prohibited from possessing or receiving a firearm depends on the completeness and accuracy of the information made available to it by federal, state and tribal authorities. The NICS Improvement Amendments Act of 2007 ("NIAA"), 18 U.S.C. § 922 note, was a bipartisan effort to strengthen the NICS by increasing the quantity and quality of relevant records accessible to the system. Among its requirements, the NIAA mandates that federal departments and agencies ("agencies") provide relevant information to the Attorney General for the NICS on no less than a quarterly basis. Importantly, the statute specifies that federal agencies must provide this information "notwithstanding any other law," and, as a result, information can be shared by your agency despite the otherwise applicable limitations of the Privacy Act, Health Insurance Portability and Accountability Act and other laws. For any information so provided, the NIAA also requires federal agencies to update, correct, modify or remove records once they become aware that the information is no longer prohibiting under the Gun Control Act.

While a great deal of progress has been made, the goals envisioned by the NIAA have yet to be fully realized. Recognizing that we can all do more to prevent gun violence, the President issued a Memorandum directing the heads of all executive departments and agencies to prioritize the submission on a regular and ongoing basis of relevant federal records to the NICS. In that same Memorandum, the President directed the Department to issue this Guidance and further directed agencies to submit a report and implementation plan concerning relevant records in their possession and to submit annual reports on their progress thereafter.

Section I of this Guidance addresses which records are "relevant" for purposes of this Presidential Memorandum, including a discussion of each of the ten categories of persons who are prohibited from possessing or receiving a firearm by federal law. Section II clarifies when an agency "possesses" records that, consistent with this Presidential Memorandum, must be submitted to the NICS. Section III explains where and how, as a technical matter, an agency should submit relevant information or records in its possession and explains the requirement to update, correct, modify and/or remove records from the NICS. Section IV discusses the contents of the (1) Report and Implementation Plan that agencies must submit, and (2) the annual report that agencies possessing relevant records must submit. Please note that nothing in this Guidance is intended to reduce the number or type of records that your agency currently submits to the

USA00016665

**B.    Special Circumstances that May Justify Exceptions to Agencies' General Obligation to Submit All Relevant Records that they Create**

The accuracy and efficacy of the background check system depends upon the greatest possible agency effort to submit all relevant records. The Department's consultation with affected agencies, however, made clear that there may be some limited circumstances in which narrow exceptions to the usual submission requirements might be warranted, particularly with respect to certain historical records. The following list is illustrative of the kinds of factors that may, in unusual cases, justify such an exception.

- *Where submission of the record would substantially undermine another program or policy interest.* For example, an agency may believe that submission of certain records, such as medical records created in a clinical setting, would present a serious deterrent to people seeking treatment, benefits or other services that the agency provides. In such cases, the agency must be able to show that the policy interests the agency seeks to protect substantially outweigh the countervailing interest in submission of all relevant records to the NICS.

- *Where submission would be inconsistent with confidentiality or limited use assurances made when the record was obtained.* For example, if an agency made a promise of confidentiality to secure a research subject's participation in a study, an exception to the general rule of submission might be justified. (In such cases, the agency should consider whether it makes sense to modify such confidentiality assurances on a prospective basis.)

- *Where previous record-keeping practices prevent the agency today from determining which records are relevant.* For example, if an agency makes relevant alternate or representative payee designations, but prior record-keeping practices make it impossible to determine whether those decisions were made on the basis of mental as opposed to physical disability, an exception may be justified. (In such cases, the agency should modify those record-keeping practices on a prospective basis in order to permit such a determination.)

- *Where the logistical hurdles associated with producing the records would be prohibitive.* For example, if an agency maintains paper records that, though potentially relevant, are many decades old, are unscannable and thus would need to be reviewed by hand, and are stored in boxes across multiple locations, the logistical burdens associated with submission of those records might be deemed insurmountable and justify an exception.

Please note that considerations like these will not always or even frequently justify an exception; the burden remains on the agency to establish that unusual circumstances justify a departure from the baseline obligation to submit all relevant records. Nor is the list exclusive; your agency may have a particular basis to argue for an exception that is not noted here.

13

7. Additional steps that will be taken within 1 year of the report to improve the processes by which records are identified, made accessible, and corrected, modified or removed.

<u>Directions for Submitting Annual Report</u>.  To submit your agency's Annual Report, e-mail the document to nicsccc@leo.gov.

18

USA00016682