| TRANSITION | CREATE_BY | CREATE_ON | MODIFY_BY |
|---|---|---|---|
| Submit for Approval | HOY, JAMES F | 06/15/2011 15:09:03 | HOY, JAMES F |
| Submit for Approval | HOY, JAMES F | 06/15/2011 15:09:03 | HOY, JAMES F |
| Submit For Closure | TAYLOR, RANDALL D | 12/14/2012 17:39:13 | TAYLOR, RANDALL D |
| Submit For Closure | TAYLOR, RANDALL D | 12/14/2012 17:39:13 | TAYLOR, RANDALL D |
| Submit For Closure | TAYLOR, RANDALL D | 12/14/2012 17:39:13 | TAYLOR, RANDALL D |
| Submit For Closure | TAYLOR, RANDALL D | 12/14/2012 17:39:13 | TAYLOR, RANDALL D |
| Submit For Closure | TAYLOR, RANDALL D | 12/14/2012 17:39:13 | TAYLOR, RANDALL D |
| Submit For Closure | TAYLOR, RANDALL D | 12/14/2012 17:39:13 | TAYLOR, RANDALL D |
| Submit For Closure | TAYLOR, RANDALL D | 12/14/2012 17:39:13 | TAYLOR, RANDALL D |
| Submit For Closure | TAYLOR, RANDALL D | 12/14/2012 17:39:13 | TAYLOR, RANDALL D |
| Approve Closure | TAYLOR, RANDALL D | 12/14/2012 17:40:52 | TAYLOR, RANDALL D |
| Approve Closure | TAYLOR, RANDALL D | 12/14/2012 17:40:52 | TAYLOR, RANDALL D |
| Approve Closure | TAYLOR, RANDALL D | 12/14/2012 17:40:52 | TAYLOR, RANDALL D |
| Approve Closure | TAYLOR, RANDALL D | 12/14/2012 17:40:52 | TAYLOR, RANDALL D |
| Approve Closure | TAYLOR, RANDALL D | 12/14/2012 17:40:52 | TAYLOR, RANDALL D |
| Approve Closure | TAYLOR, RANDALL D | 12/14/2012 17:40:52 | TAYLOR, RANDALL D |
| Approve Closure | TAYLOR, RANDALL D | 12/14/2012 17:40:52 | TAYLOR, RANDALL D |
| Send To Archive | BANKHEAD, LYLE I | 04/10/2013 12:17:08 | BANKHEAD, LYLE I |

| MODIFY_ON | DESCRIPTION |
|---|---|
| 06/15/2011 15:09:03 | No Title block information is in the Investigation Background field. |
| 06/15/2011 15:09:03 | All subjects/victims on the file must have form 686 data. |
| 12/14/2012 17:39:13 | Must have Court/Action Reports Attached |
| 12/14/2012 17:39:13 | Has the Fingerprint Card FD-249 been sent to the FBI? |
| 12/14/2012 17:39:13 | The Case must have a Disposition. |
| 12/14/2012 17:39:13 | Has the Disposition R-84 been sent to the FBI? |
| 12/14/2012 17:39:13 | (Warning) Check Offender Age over 98. |
| 12/14/2012 17:39:13 | (Warning) Check Property value over $1 Million. |
| 12/14/2012 17:39:13 | (Warning) Must have Victim relationship to Offender for Individual Victim. |
| 12/14/2012 17:39:13 | Some Evidence is not yet disposed, can it all be disposed? |
| 12/14/2012 17:40:52 | Some Evidence is not yet disposed, can it all be disposed? |
| 12/14/2012 17:40:52 | Must have Court/Action Reports Attached |
| 12/14/2012 17:40:52 | Has the Fingerprint Card FD-249 been sent to the FBI? |
| 12/14/2012 17:40:52 | Have Curtailed Content Report Note |
| 12/14/2012 17:40:52 | The Case must have a Disposition. |
| 12/14/2012 17:40:52 | Has the Disposition R-84 been sent to the FBI? |
| 12/14/2012 17:40:52 | (Warning) Must have Victim relationship to Offender for Individual Victim. |
| 04/10/2013 12:17:08 | You must have sent the Harcopy Case File to the File Room |

# REPORT OF RESULT OF TRIAL

*(This form may also be used for reporting the result of trial by summary court-martial)*

Date (YYYYMMDD): 20121107

TO: *(Address to immediate commander of accused)*
49 LRS/CC, 280 Delaware Avenue Building 310, Holloman AFB, NM 88330

***NOTIFICATION UNDER R.C.M. 1101(a) IS HEREBY GIVEN IN THE CASE OF:***

| NAME (Last, First, Middle Initial) | RANK | SSN |
|---|---|---|
| Kelley, Devin P. | A1C | [redacted] |

ORGANIZATION:
49th Logistics Readiness Squadron (ACC)
Holloman AFB, NM

TYPE OF COURT: ☒ GENERAL ☐ JUDGE ALONE ☐ SPECIAL ☐ JUDGE ALONE ☐ SUMMARY

***SUMMARY OF CHARGES, SPECIFICATIONS, PLEAS AND FINDINGS***

| UCMJ ARTICLE | NATURE OF OFFENSE | PLEAS | FINDINGS |
|---|---|---|---|
| CHARGE: | Violation of UCMJ, 128 | GUILTY | GUILTY |
| Specification 1: | Did, within the continental United States, on divers occasions between on or about 24 June 2011 and on or about 27 April 2012, unlawfully strike Tessa K. Kelley on her body with his hands, unlawfully choke the said Tessa K. Kelley on the neck with his hands, unlawfully pull the hair of the said Tessa K. Kelley with his hands, and unlawfully kick the said Tessa K. Kelley on her body with his foot. | GUILTY | GUILTY |
| Specification 2: | Did, within the continental United States, on divers occasions between on or about 27 April 2011 and on or about 16 June 2011, commit an assault upon J.M.L., a child under the age of 16 years, by striking him on the head and body with a force likely to produce death or grievous bodily harm, to wit: his hands. | GUILTY | GUILTY |
| CHARGED AS A LESSER INCLUDED OFFENSE TO SPECIFICATION 2: | | | |
| Specification 3: | Did, within the continental United States, on divers occasions between on or about 27 April 2011 and on or about 16 June 2011, unlawfully strike J.M.L., a child under the age of 16 years, on the body with his hands. | NOT GUILTY | WITHDRAWN AND DISMISSED WITH PREJUDICE AFTER ARRAIGNMENT |

SENTENCE — DNA PROCESSING IS REQUIRED — CRIME OF DOMESTIC VIOLENCE

Reduction to the grade of E-1, confinement for twelve (12) months, and a bad conduct discharge. PTA: The approved sentence to confinement will not exceed three (3) years.

PRETRIAL CONFINEMENT CREDIT *(Including military and civilian confinement) (in days)*
152 days (military)

DATE SENTENCE ADJUDGED *(Or acquittal announced)*
20121107

DISTRIBUTION *(Prescribed by convening authority)*
ACC/CC/JA
12 AF/CC/JA
49 WG/CC/JA
49 MDG/CC
49 FSS/DPM
49 CPTS/FMFP
49 SFS/CC/SFOI
AFLOA/ADC
AFOSI DET 225
CDO

(CHECK ONE) ☒ TRIAL COUNSEL ☐ SUMMARY COURT OFFICER

DETAILED BY
OWEN W. TULLOS, Lt Col, USAF

TYPED NAME AND GRADE
BRETT A. JOHNSON, Capt, USAF

SIGNATURE
[signature]

AF 1359, 20001101 (EF-V1) (12 AF/JA Overprint, 30 May 06)

**REPORT OF RESULT OF TRIAL**
*(Continuation)*

| | | |
|---|---|---|
| Date (YYYYMMDD): 20121107 | | |
| NAME (Last, First, Middle Initial): Kelley, Devin P. | RANK: A1C | SSN: [redacted] |
| ORGANIZATION: 49 LRS/CC | DATE SENTENCE ADJUDGED (Or acquittal announced): 20121107 | |

***SUMMARY OF CHARGES, SPECIFICATIONS, PLEAS AND FINDINGS CONTINUED***

| UCMJ ARTICLE | NATURE OF OFFENSE | PLEAS | FINDINGS |
|---|---|---|---|
| Specification 4: | Did, within the continental United States, on or about 23 April 2012, assault Tessa K. Kelley by pointing at her with a dangerous weapon, to wit: a loaded firearm. | NOT GUILTY | WITHDRAWN AND DISMISSED WITH PREJUDICE AFTER ARRAIGNMENT |
| CHARGED AS A LESSER INCLUDED OFFENSE TO SPECIFICATION 4: | | | |
| Specification 5: | Did, within the continental United States, on or about 23 April 2012, assault Tessa K. Kelley by pointing at her with an unloaded firearm. | NOT GUILTY | WITHDRAWN AND DISMISSED WITH PREJUDICE AFTER ARRAIGNMENT |
| ADDITIONAL CHARGE: | Violation of UCMJ, Article 128 | NOT GUILTY | WITHDRAWN AND DISMISSED WITH PREJUDICE AFTER ARRAIGNMENT |
| Specification 1: | Did, within the continental United States, between on or about 1 January 2012 to on or about 30 April 2012, assault Tessa K. Kelley by pointing at her with a dangerous weapon, to wit: a loaded firearm. | NOT GUILTY | WITHDRAWN AND DISMISSED WITH PREJUDICE AFTER ARRAIGNMENT |
| CHARGED AS A LESSER INCLUDED OFFENSE TO SPECIFICATION 1: | | | |
| Specification 2: | Did, within the continental United States, between on or about 1 January 2012 to on or about 30 April 2012, assault Tessa K. Kelley by pointing at her with an unloaded firearm. | NOT GUILTY | WITHDRAWN AND DISMISSED WITH PREJUDICE AFTER ARRAIGNMENT |

Continuation of Sentence:

FEDERAL BUREAU OF INVESTIGATION, UNITED STATES DEPARTMENT OF JUSTICE
CRIMINAL JUSTICE INFORMATION SERVICES DIVISION, CLARKSBURG, WV 26306

PRIVACY ACT OF 1974 (P.L. 93-579) REQUIRES THAT FEDERAL, STATE, OR LOCAL AGENCIES INFORM INDIVIDUALS WHOSE SOCIAL SECURITY NUMBER IS REQUESTED WHETHER SUCH DISCLOSURE IS MANDATORY OR VOLUNTARY, BASIS OF AUTHORITY FOR SUCH SOLICITATION, AND USES WHICH WILL BE MADE OF IT.

| JUVENILE FINGERPRINT | DATE OF ARREST | ORI | |
|---|---|---|---|
| SUBMISSION YES ☐<br>TREAT AS ADULT YES ☐ | MM DD YY<br>06 09 11 | CONTRIBUTOR<br>ADDRESS<br>REPLY DESIRED? YES ☐ | VAOSI0300<br>USAF OSI<br>LANGLEY AFB, VA |
| SEND COPY TO: (ENTER ORI) | DATE OF OFFENSE<br>MM DD YY<br>06 08 11 | PLACE OF BIRTH (STATE OR COUNTRY)<br>TX | COUNTRY OF CITIZENSHIP<br>U.S.A |
| MISCELLANEOUS NUMBERS | SCARS, MARKS, TATTOOS, AND AMPUTATIONS<br>Right Calf- "C+H" with AΩ<br>Right Shoulder back- Dove coming out of clouds | | |
| | RESIDENCE/COMPLETE ADDRESS<br>2629B McKinnley Loop | CITY<br>Holloman AFB | STATE<br>88330 NM |
| OFFICIAL TAKING FINGERPRINTS (NAME OR NUMBER)<br>Yonatan Holz | LOCAL IDENTIFICATION/REFERENCE | PHOTO AVAILABLE? YES ☒<br>PALM PRINTS TAKEN? YES ☐ | |

| EMPLOYER: IF U.S. GOVERNMENT, INDICATE SPECIFIC AGENCY. IF MILITARY, LIST BRANCH OF SERVICE AND SERIAL NO. | OCCUPATION |
|---|---|
| CHARGE/CITATION<br>1. Violation of Art 128G, UCMJ Assault of a child Under the Age of 16 | DISPOSITION<br>1. |
| 2. | 2. |
| 3. | 3. |
| ADDITIONAL | ADDITIONAL |
| ADDITIONAL INFORMATION/BASIS FOR CAUTION | STATE BUREAU STAMP |

FD-249(REV. 5-11-99) ☆ U.S. GOVERNMENT PRINTING OFFICE: 2004-304-373/80038

LEAVE BLANK CRIMINAL (STAPLE HERE) LEAVE BLANK

STATE USAGE NFF SECOND SUBMISSION | APPROXIMATE CLASS | AMPUTATION | SCAR

STATE USAGE

LAST NAME, FIRST NAME, MIDDLE NAME, SUFFIX: Kelley, Devin Patrick

SIGNATURE OF PERSON FINGERPRINTED: Devin Kelley

SOCIAL SECURITY NO.: 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

LEAVE BLANK

ALIASES/MAIDEN LAST NAME, FIRST NAME, MIDDLE NAME, SUFFIX

| FBI NO. | STATE IDENTIFICATION NO. | DATE OF BIRTH MM DD YY | SEX | RACE | HEIGHT | WEIGHT | EYES | HAIR |
|---|---|---|---|---|---|---|---|---|
| | | 02 12 91 | M | W | 68" | 171 | BLU | BRO |

1. R. THUMB | 2. R. INDEX | 3. R. MIDDLE | 4. R. RING | 5. R. LITTLE

6. L. THUMB | 7. L. INDEX | 8. L. MIDDLE | 9. L. RING | 10. L. LITTLE

LEFT FOUR FINGERS TAKEN SIMULTANEOUSLY | L. THUMB | R. THUMB | RIGHT FOUR FINGERS TAKEN SIMULTANEOUSLY

FEDERAL BUREAU OF INVESTIGATION, UNITED STATES DEPARTMENT OF JUSTICE
CRIMINAL JUSTICE INFORMATION SERVICES DIVISION, CLARKSBURG, WV 26306

PRIVACY ACT OF 1974 (P.L. 93-579) REQUIRES THAT FEDERAL, STATE, OR LOCAL AGENCIES INFORM INDIVIDUALS WHOSE SOCIAL SECURITY NUMBER IS REQUESTED WHETHER SUCH DISCLOSURE IS MANDATORY OR VOLUNTARY, BASIS OF AUTHORITY FOR SUCH SOLICITATION, AND USES WHICH WILL BE MADE OF IT.

JUVENILE FINGERPRINT SUBMISSION YES ☐
TREAT AS ADULT YES ☐

DATE OF ARREST MM DD YY: 06 09 11

ORI CONTRIBUTOR ADDRESS: VAOSI0300 USAF OSI LANGLEY AFB, VA
REPLY DESIRED? YES ☐

SEND COPY TO: (ENTER ORI)

DATE OF OFFENSE MM DD YY: 06 08 11

PLACE OF BIRTH (STATE OR COUNTRY): TX

COUNTRY OF CITIZENSHIP: U.S.A

MISCELLANEOUS NUMBERS

SCARS, MARKS, TATTOOS, AND AMPUTATIONS: Right Calf - "[illegible] + H" with A Ω
Right shoulder back - Dove coming out of clouds

RESIDENCE/COMPLETE ADDRESS: 2629B McKinnley Loop

CITY: Holloman AFB

STATE: NM 88330

OFFICIAL TAKING FINGERPRINTS (NAME OR NUMBER): Yonatan Holz

LOCAL IDENTIFICATION/REFERENCE

PHOTO AVAILABLE? YES ☒
PALM PRINTS TAKEN? YES ☐

EMPLOYER: IF U.S. GOVERNMENT, INDICATE SPECIFIC AGENCY. IF MILITARY, LIST BRANCH OF SERVICE AND SERIAL NO.

OCCUPATION

CHARGE/CITATION
1. Violation of Art 128G, UCMJ, Assault of a child Under the Age of 16
2.
3.

DISPOSITION
1.
2.
3.

ADDITIONAL

ADDITIONAL

ADDITIONAL INFORMATION/BASIS FOR CAUTION

STATE BUREAU STAMP

LEAVE BLANK CRIMINAL (STAPLE HERE) LEAVE BLANK

STATE USAGE NFF SECOND SUBMISSION APPROXIMATE CLASS AMPUTATION SCAR

STATE USAGE

LAST NAME, FIRST NAME, MIDDLE NAME, SUFFIX: Kelley, Devin Patrick

SIGNATURE OF PERSON FINGERPRINTED: [signature]

SOCIAL SECURITY NO.: 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

LEAVE BLANK

ALIASES/MAIDEN LAST NAME, FIRST NAME, MIDDLE NAME, SUFFIX

| FBI NO. | STATE IDENTIFICATION NO. | DATE OF BIRTH MM DD YY | SEX | RACE | HEIGHT | WEIGHT | EYES | HAIR |
|---|---|---|---|---|---|---|---|---|
| | | 02 12 91 | M | W | 68" | 171 | BLU | BRO |

1. R. THUMB 2. R. INDEX 3. R. MIDDLE 4. R. RING 5. R. LITTLE

6. L. THUMB 7. L. INDEX 8. L. MIDDLE 9. L. RING 10. L. LITTLE

LEFT FOUR FINGERS TAKEN SIMULTANEOUSLY L. THUMB R. THUMB RIGHT FOUR FINGERS TAKEN SIMULTANEOUSLY

R-84 (Rev. 08-31-1999)

# FINAL DISPOSITION REPORT

Leave Blank

**Note:** This vital report must be prepared on each individual whose arrest fingerprints have been forwarded to the FBI Criminal Justice Information Services Division without final disposition noted thereon. If no final disposition is available to arresting agency, complete left side and forward the form when case referred to prosecutor and/or courts. Agency on notice as to final disposition should complete this form and submit to: **FBI, CJIS Division, Clarksburg, WV 26306**.

(See instructions on **reverse side**)

FBI No.

Name on fingerprint Card Submitted to FBI
Last First Middle

Date of Birth ______ Sex ______

Henry Fingerprint Classification From FBI 1-B Response ______

State Bureau No. (SID)

Social Security No. (SOC)

Contributor of Fingerprints (Include **complete** name and location of agency together with ORI number.)

Arrest No. (OCA)

Date Arrested or Received

Offenses Charged at Arrest

Final Disposition & Date
(If convicted or subject pleaded guilty to lesser charge, include this modification with disposition.)

This Form Submitted By:
(Name, Title, Agency, ORI No., City & State)

Signature

Date

Title

☐ COURT ORDERED EXPUNGEMENT:

Certified or Authenticated Copy of Court Order Attached.

**INSTRUCTIONS**

1.  The purpose of this report is to record the initial data of an individual's arrest and thereafter secure the final disposition of the arrest at the earliest possible time from either the arresting agency, the prosecutor or the court having jurisdiction. (INTERIM DISPOSITION INFORMATION, e.g. RELEASED ON BOND, SHOULD NOT BE SUBMITTED.) The SUBJECT'S NAME, CONTRIBUTOR AND ARREST NUMBER should be exactly the same as they appear on the fingerprint card IN THE FILES OF THE FBI. The FBI number should be indicated, if known. Agency ultimately making final disposition will complete and mail form to: FBI Criminal Justice Information Services Division, Clarksburg, WV 26306.

2.  The arresting agency should fill in all arrest data on left side of form. If the arrest is disposed of by the arresting agency, as where the arrestee is released without charge, the arresting agency should fill in this final disposition and mail form to FBI Criminal Justice Information Services Division. Of course, if the final disposition is known when the arrest fingerprint card is submitted it should be noted thereon and this form is then unnecessary. In the event the case goes to the prosecutor, this form should be forwarded to the prosecutor with arrestee's case file.

3.  The prosecutor should complete the form to show final disposition at the prosecution level if the matter is not being referred for court action and thereafter submit form directly to FBI Criminal Justice Information Services Division. If court action required, the prosecutor should forward form with case file to court having jurisdiction.

4.  The court should complete this form as to final court disposition such as when arrested person is acquitted, case is dismissed, on conviction and when sentence imposed or sentence suspended and person placed on probation.

5.  When arrested person convicted or enters guilty to lesser or different offense that charged when originally arrested, this information should be clearly indicated.

6.  If subsequent action taken to seal or expunge record, attach certified or authenticated copy of court order to this form.

7.  It is vitally important for completion of subject's record in the FBI Criminal Justice Information Services Division files that Final Disposition Report be submitted in every instance where fingerprints previously forwarded without final disposition noted there on.

*U.S. Government Printing Office: 2004—304-384/82402

UNCLASSIFIED//FOR OFFICIAL USE ONLY

FILE SUBJECT TO THE PRIVACY ACT OF 1974

*225-C-128-G--32329111651413*

# UNITED STATES AIR FORCE OFFICE OF SPECIAL INVESTIGATIONS

| I2MS Case FILE | | | |
|---|---|---|---|
| 225-C-128-G--32329111651413 | | | |
| LOCATION: | DET 225 Holloman AFB, NM | | |
| DATE OPENED: | 20110615 | DATE CLOSED: | 20121214 |

SEE ALSO NOS. 04031110691835

| AUTHENTICATION OF FILE BY: | DATE: |
|---|---|
| | |

UNCLASSIFIED//FOR OFFICIAL USE ONLY

*225-C-128-G--3232911165141

DoDOIG 000409

VOLUME 1 OF 2

Attachment 4

AFOSI CLOSED INVESTIGATION FILE CHECKLIST

| *File/Activity/Participant/Notes:* | YES | NO | N/A |
|---|---|---|---|
| 1. Is final, signed, published ROI and SCR attached to the file? | X | | |
| 2. Are all draft ROIs deleted from the file level? | | | |
| 3. Do file level dispositions match civilian, military judicial, NJP, no action disposition reports? | | | |
| 4. Is a Coordination activity associated documenting permission was obtained from a foreign, state, or local agency when it was necessary to incorporate an investigative report into an AFOSI file? (paragraph 8.2.2.1.1.) | | | |
| 5. Are Reviewer Note(s) present documenting proper file review? (paragraph 4.24.4.1.). | | | |
| 6. Is a Coordination activity associated or IDP note present documenting AUSA declination and explanation? | | | |
| 7. Is an IDP note present documenting evidence retention? (Appellate Review etc). | | | |
| ***Closed Short (Administrative Closure):*** | | | |
| 8. **Informational, Developmental, A&P, TM Files Only.** Are all record copy investigative file and AF Form 3986 documents scanned and readable? If the investigation was Close Short (Administrative Closure), | | | |
| 9. **Case File Investigation Only.** Is a Coordination activity associated or IDP note present documenting Region or Program Manager concurrence? | | | |
| ***AFOSI Form 2:*** | **YES** | **NO** | **N/A** |
| 10. Is final, signed, published ROI present with complete IDP including any note added after the ROI was distributed? | X | | |
| 11. Is signed SCR Present? | X | | |
| 12. Do all undercover operations AFOSI Form 2s contain copies of the following?<br>a. Post-Operations Tradecraft Assessment Reports (POTAR).<br>b. Operation plans.<br>c. Documents that request assistance from internal and external Air Force organizations. | | | X |
| 13. Are AF Form 3986s present and properly marked? | X | | |

| *Does the AF Form 3986 Contain?:* | YES | NO | N/A |
|---|---|---|---|
| 14. Are all documents listed on the AF Form 3986 filed therein? | X | | |
| 15. Are all documents inside the AF Form 3986 correctly annotated and AF Form 3987, **Investigation File Inner Envelope,** used when appropriate? | X | | |
| 16. If electronic media is included in the AF Form 3986/3987 is it properly marked? | X | | |
| 17. FD-249 (Hardcopy or I2MS generated) | | | |
| 18. R-84 | | | |
| 19. Investigative Plan? | X | | |
| 20. Civilian Prosecutive Authority Declination Letter? | | | |
| 21. No Action Disposition Report (Action Authority)? | | | |
| 22. AF Form 3070 (A, B, C,) **Record of Nonjudicial Punishment Proceedings**? | | | |
| 23. AF Form 3212, **Record of Supplementary Action Under Article 15, UCMJ?** | | | |
| 24. Plea Agreement? | | | |
| 25. Sentencing or Acquittal Report? | | | |
| 26. Article 32 Investigating Officer Appointing Letter? | | | |
| 27. DD Form 458, **Charge Sheet**? | | | |
| 28. AF Form 1359, **Report of Results of Trial?** | | | |
| 29. Copy of the appellate action and letter to FBI requesting a change or correction if appellate actions changed the final disposition? | | | |
| 30. AFOSI Form 158 (Evidence Disposition Request)? | | | |
| 31. AF Form 52, **Evidence Tag(s)**? | | | |
| 32. AFOSI CLOSED INVESTIGATION FILE CHECKLIST? | X | | |

**SUMMARY OF INVESTIGATION**

1 This investigation was initiated on 9 Jun 11, based upon information from Child Youth and Family Department (CYFD) Otero County, NM, of possible child abuse involving an 11 month old dependent child (VICTIM) of a U.S. Air Force active duty member assigned to Holloman AFB, NM. On 9 Jun 11, PAMELA WONG, Social Worker, CYFD, Otero County, NM, notified SA JAMES HOY, AFOSI Det 225, HAFB, NM, that VICTIM was admitted to Gerald Champion Regional Medical Center (GCRMC), Alamogordo, NM, for vomiting possibly associated to a head injury. WONG advised VICTIM had injuries on his face that medical personnel suspected were the result of child abuse. VICTIM was admitted to GCRMC at the request of Dr. JEREMY S. HARWOOD, MD, 49 MDG, HAFB, NM, for the same symptoms. Dr. HARWOOD observed injuries on VICTIM's face that were not present when he examined VICTIM on 6 Jun 11 and suspected the injuries were caused by VICTIM being slapped on the left side of the face. On 9 Jun 11, a Computerized Tomography (CT) scan of VICTIM's head revealed VICTIM had a left frontal extra-axial hematoma (bleeding within the skull). According to WONG the hematoma was most likely caused by trauma to VICTIM's head from a strike or a significant fall. VICTIM was placed in foster care based on the unexplained injuries and the suspicions of child abuse by Dr. HARWOOD and CYFD. On 9 Jun 11, a non-custodial interview was conducted with SUBJECT T. KELLEY: SUBJECT T. KELLEY advised she had VICTIM with another man prior to her marriage with SUBJECT D. KELLEY. VICTIM was SUBJECT D. KELLEY's stepchild. She denied striking VICTIM or having knowledge of SUBJECT D. KELLEY striking VICTIM. SUBJECT T. KELLEY offered the same explanations for VICTIM's injuries as she provided CYFD and could not offer an explanation for VICTIM's hematoma. On 12 Jun 11, CRYSTAL TORRES, Registered Nurse, Providence Hospital, El Paso, TX, provided the following information: A bone survey conducted on 10 June 11, revealed VICTIM had a right clavicle fracture with mild displacement. A bone survey conducted on 2 Jun 11, revealed a right clavicle fracture but was filed under the name "J[redacted] M[redacted]" (Note: VICTIM's full name is J[redacted] M[redacted] L[redacted]) and thus was not made available to all concerned parties. On 29 Apr 12, SUBJECT T. KELLEY provided a video containing the confession of SUBJECT D. KELLEY to injuries on VICTIM to MSgt TRACY WOLFE, 49 LRS/CCF, HAFB, NM who in turn provided it to AFOSI Det 225. On 3 May 12, an interview of SUBJECT T. KELLEY revealed she previously suspected SUBJECT D. KELLEY of injuring VICTIM, but did not know for sure because she had never witnessed the abuse. SUBJECT T. KELLEY suspected SUBJECT D. KELLEY caused the injuries when he abused her physically, verbally and mentally. SUBJECT D. KELLEY verbalized threats against law enforcement stating, "If the cops show up at my door, I will shoot them." SUBJECT D. KELLEY also told SUBJECT T. KELLEY, "My work is so lucky I do not have a shotgun because I would go in there and shoot everyone." Further interviews of SUBJECT D. KELLEY's prior girlfriends revealed a history of emotional, verbal, and sexual abuse. On 17 Sep 12, a report by Maj SHELLEY MARTIN, MD, Child Abuse Pediatrician, Brooke Army Medical Center, Ft. Sam Houston, TX, revealed the injuries on VICTIM's body were consistent with the videotaped confession of SUBJECT D. KELLEY, in which he admitted to abusive behavior regarding VICTIM. There were no reasonable alternative accidental or medical explanations provided to explain VICTIM's injuries.

**AIR FORCE OFFICE OF SPECIAL INVESTIGATIONS**
**REPORT OF INVESTIGATIVE ACTIVITY**

| 1. DATE OF INVESTIGATIVE ACTIVITY | 2. PLACE | 3. FILE NUMBER |
|---|---|---|
| 09-Jun-2011 | 49th Medical Group 1st Street Holloman AFB, NM 88330 | 31555111641137 |

4. REMARKS

Interview of: Capt JEREMY S. HARWOOD, Pediatrician

Date/Place: 09-JUN-11/49th Medical Group 1st Street Holloman AFB, NM 88330

Dr. HARWOOD related the following: He first saw VICTIM on 06 Jun 11, in the Pediatrics Clinic, 49th Medical Operations Squadron, HAFB, NM, for vomiting. SUBJECT T. KELLEY and SUBJECT D. KELLEY related to Dr. HARWOOD that on 02 Jun 11, VICTIM was seen at the emergency room at William Beaumont Army Medical Center, El Paso, TX, for vomiting and diarrhea. VICTIM was transported to Providence Hospital, El Paso, TX, where VICTIM was admitted for dehydration. VICTIM was released by Providence Hospital on 04 Jun 11. SUBJECT T. KELLEY informed Dr. HARWOOD a Computerized Tomography (CT) scan was ordered, but the scan was negative. Dr. HARWOOD related when he saw VICTIM on 06 Jun 11, VICTIM did not have any marks on his face. On 08 Jun 11 around 1900 hours, Dr. HARWOOD was contacted by the emergency room physician at Gerald Champion Regional Medical Center (GCRMC), Alamogordo, NM, and responded to examine VICTIM. Dr. HARWOOD noticed bruising on the left side of VICTIM's face. According to Dr. HARWOOD, both SUBJECT T. KELLEY and SUBJECT D. KELLEY stated the marks just "popped up." Dr. HARWOOD opined the mark appeared to be a hand print. Dr. HARWOOD noticed VICTIM was clingy to SUBJECT T. KELLEY. Dr. HARWOOD ordered a full skeletal review of VICTIM and a CT scan of the head, which at the time of this interview were awaiting to be read by a radiologist. On 09 Jun 11 at 0730 hours, Dr. HARWOOD saw VICTIM at GCRMC and the marks on VICTIM's face appeared to be fresh and a little purple. Dr. HARWOOD related VICTIM had no significant medical history reported and VICTIM did not have medical records on file. On 9 Jun 10 at 1445 hours, Dr. HARWOOD reviewed a copy of VICTIM's cat scan and identified fluid collection consistent with a small left frontal subdural hemorrhage on VICTIM's head. On 12 Jun 12, an abdominal ultrasound and skeletal survey identified a right clavicle fracture in the medial 1/3 area.

| 5. CONDUCTED BY | 6. SIGNATURE |
|---|---|
| MADISON, LENORA | |

**THIS DOCUMENT CONTAINS NEITHER RECOMMENDATIONS NOR CONCLUSIONS OF AFOSI. IT IS THE PROPERTY OF THE AFOSI AND IS LOANED TO YOUR AGENCY; THIS DOCUMENT IS NOT TO BE RELEASED OUTSIDE YOUR AGENCY**

**AIR FORCE OFFICE OF SPECIAL INVESTIGATIONS**
**REPORT OF INVESTIGATIVE ACTIVITY**

| 1. DATE OF INVESTIGATIVE ACTIVITY | 2. PLACE | 3. FILE NUMBER |
|---|---|---|
| 09-Jun-2011 | AFOSI Det 225 640 Delaware Ave (Bldg 293) Holloman AFB, NM 88330 | 33039111611433 |

4. REMARKS

Interview of: KELLEY, DEVIN PATRICK

Date/Place: 09-JUN-11/AFOSI Det 225 640 Delaware Ave (Bldg 293) Holloman AFB, NM 88330

Attachments [redacted]
- 20110612-J[redacted]033
- 20110612-J[redacted]034
- 20110612-J[redacted]035
- 20110612-J[redacted]036
- 20110612-J[redacted]037
- 20110612-J[redacted]038
- 20110612-J[redacted]039
- 20110612-J[redacted]040
- 20110612-J[redacted]041
- 20110612-J[redacted]042
- 20110612-J[redacted]043
- 20110612-J[redacted]044
- 20110612-J[redacted]045
- 20110612-J[redacted]046
- 20110612-J[redacted]047
- 20110612-J[redacted]048

On 9 Jun 11, SA VINCE BUSTILLO and SA JAMES HOY interviewed SUBJECT. Subsequent to Article 31 rights advisement, SUBJECT D. KELLEY waived his rights and provided the following information: SUBJECT D. KELLEY denied striking VICTIM or having knowledge of SUBJECT T. KELLEY striking VICTIM. SUBJECT D. KELLEY stated I know she (SUBJECT T. KELLEY) didn't hit him she loves him too much." SUBJECT D. KELLEY had never observed SUBJECT T. KELLEY hit VICTIM and SUBJECT T. KELLEY never said anything or gave any indications that she could have hit VICTIM. SUBJECT D. KELLEY did not spend very much time with VICTIM. Only SUBJECT D. KELLEY and SUBJECT T. KELLEY had direct access to VICTIM. SUBJECT D. KELLEY's mother, REBECCA ANNE KELLEY, [redacted] was with VICTIM at GCRMC. SUBJECT D. KELLEY denied his mother caused the injury to VICTIM and stated: "My Mom has never even been on base." SUBJECT D. KELLEY claimed he did not know how VICTIM sustained the injury to his head. SUBJECT T. KELLEY first observed the injuries to VICTIM's face on 8 Jun 11, while driving with SUBJECT D. KELLEY to GCRMC. SUBJECT D. KELLEY suggested VICTIM received the injury from falling on the floor while crawling or playing in his crib. SUBJECT D. KELLEY claimed VICTIM was shy of anyone accept SUBJECT T. KELLEY, but was ok with SUBJECT D. KELLEY as long as SUBJECT T. KELLEY was nearby.

| 5. CONDUCTED BY | 6. SIGNATURE |
|---|---|
| BUSTILLO, VINCE | |

**THIS DOCUMENT CONTAINS NEITHER RECOMMENDATIONS NOR CONCLUSIONS OF AFOSI. IT IS THE PROPERTY OF THE AFOSI AND IS LOANED TO YOUR AGENCY; THIS DOCUMENT IS NOT TO BE RELEASED OUTSIDE YOUR AGENCY**













DoDOIG   000435








DoDOIG   000436









DoDOIG 000437

USA00013421

**AIR FORCE OFFICE OF SPECIAL INVESTIGATIONS**
**REPORT OF INVESTIGATIVE ACTIVITY**

| 1. DATE OF INVESTIGATIVE ACTIVITY | 2. PLACE | 3. FILE NUMBER |
|---|---|---|
| 29-Apr-2012 | | 32905121202053 |

4. REMARKS

Interview of: Wolfe, Tracy A.

Date/Place: 29-APR-12/AFOSI Det 225 640 Delaware Ave (Bldg 293) Holloman AFB, NM 88330

On 29 Apr 12, MSgt TRACY WOLFE, 49 LRS, Holloman AFB, NM provided AFOSI Det 225 with a black external hard drive allegedly containing a confession by SUBJECT D. KELLEY to all of VICTIM's injuries. WOLFE received the hard drive from SUBJECT T. KELLEY on the same day.

| 5. CONDUCTED BY | 6. SIGNATURE |
|---|---|
| MILLS, CLINTON | |

**THIS DOCUMENT CONTAINS NEITHER RECOMMENDATIONS NOR CONCLUSIONS OF AFOSI. IT IS THE PROPERTY OF THE AFOSI AND IS LOANED TO YOUR AGENCY; THIS DOCUMENT IS NOT TO BE RELEASED OUTSIDE YOUR AGENCY**

# AIR FORCE OFFICE OF SPECIAL INVESTIGATIONS
## REPORT OF INVESTIGATIVE ACTIVITY

| 1. DATE OF INVESTIGATIVE ACTIVITY | 2. PLACE | 3. FILE NUMBER |
|---|---|---|
| 03-May-2012 | [redacted] | 33039121301251 |

4. REMARKS

Interview of: KELLEY, TESSA KAYLYNN

Date/Place: 03-MAY-12/[redacted]

Attachments
- Security Forces Report # I20120200128
- T KELLEYs Statement 1168 3 May 12

On 3 May 12, SA YONATAN HOLZ and SA LYLE BANKHEAD interviewed SUBJECT T. KELLEY at her residence, [redacted] SUBJECT T. KELLEY provided the following information verbally and in a signed, sworn, written statement (attached): SUBJECT T. KELLEY and SUBJECT D. KELLEY were told by SUBJECT D. KELLEY's lawyer LIAM GRIFFIN, PO Box 643, Ruidoso, NM, that VICTIM's injuries were caused at birth. SUBJECT T. KELLEY began to believe the story and did not think SUBJECT D. KELLEY was culpable of VICTIM's injuries. SUBJECT T. KELLEY previously suspected SUBJECT D. KELLEY of injuring VICTIM, but did not know for sure because she had never witnessed the abuse. SUBJECT T. KELLEY began suspecting SUBJECT D. KELLEY when SUBJECT D. KELLEY began physically, verbally and mentally abusing her. SUBJECT D. KELLEY struck, kicked, and choked SUBJECT T. KELLEY (Agent Note: For more information please reference Security Forces Report #I20120200128 (attached)). SUBJECT D. KELLEY also pulled SUBJECT T. KELLEY's hair out on multiple occasions. SUBJECT D. KELLEY told SUBJECT T. KELLEY he would kill her if she went to the police or if she told anyone about the abuse performed by SUBJECT D. KELLEY on SUBJECT T. KELLEY. SUBJECT D. KELLEY verbalized threats against law enforcement stating, "If the cops show up at my door, I will shoot them." SUBJECT D. KELLEY also told SUBJECT T. KELLEY, "My work is so lucky I do not have a shotgun because I would go in there and shoot everyone." SUBJECT D. KELLEY would often tell SUBJECT T. KELLEY her family did not love her. SUBJECT T. KELLEY thought if she came forward with her suspicions about SUBJECT D. KELLEY abusing VICTIM and about her abuse by SUBJECT D. KELLEY; SUBJECT D. KELLEY would hurt her and she would not be able to get VICTIM back from Children Youth and Families Department (CYFD) custody. SUBJECT T. KELLEY first had her suspicions confirmed approximately Feb 12, when SUBJECT D. KELLEY's friends RALPH MARTINEZ, [redacted] and PRISCILLA TORRES, [redacted] flew from New Braunfels, TX to visit them. SUBJECT T. KELLEY, SUBJECT D. KELLEY, MARTINEZ, and TORRES spent the night at a hotel in an El Paso, TX. SUBJECT D. KELLEY locked himself in their hotel room's bathroom and cried. SUBJECT T. KELLEY heard SUBJECT repeating the words, "I'm so sorry J[redacted] I'm sorry I did this to you," approximately ten times. SUBJECT T. KELLEY confronted SUBJECT D. KELLEY about his statement, but SUBJECT D. KELLEY did not reply. SUBJECT T. KELLEY stated on one occasion while driving, SUBJECT D. KELLEY struck her in the stomach in front of MARTINEZ and TORRES and threatened to beat her if she continued speaking. SUBJECT D. KELLEY fully confessed to SUBJECT T. KELLEY approximately three weeks ago around 23 Apr 12, when SUBJECT T. KELLEY and SUBJECT D. KELLEY drove to El Paso, TX, to pick up SUBJECT T. KELLEY's mother REBECCA KELLEY, [redacted], SUBJECT T. KELLEY asked SUBJECT D. KELLEY to stop speeding on the way to El Paso, TX, but SUBJECT D. KELLEY told her, "Shut the (profanity) up!" SUBJECT was pulled over and received a ticket for speeding (record attached). SUBJECT D. KELLEY blamed the ticket on SUBJECT T. KELLEY, he pulled his gun out and placed the muzzle against SUBJECT T. KELLEY's temple at which point he stated, "Do you want to die?" SUBJECT T. KELLEY pushed the gun away and cried. SUBJECT D. KELLEY proceeded to put the gun in his mouth. SUBJECT D. KELLEY asked SUBJECT T. KELLEY, "why she wanted to be with him?" SUBJECT T. KELLEY replied she wanted to believe there was good in SUBJECT D. KELLEY. SUBJECT D. KELLEY told SUBJECT T. KELLEY she was stupid for being with him and she should know the reason. SUBJECT D. KELLEY informed SUBJECT T. KELLEY he had slapped VICTIM on 8 Jun 11, the day VICTIM had been taken to the hospital. SUBJECT T. KELLEY urged SUBJECT D. KELLEY to make a full confession. SUBJECT D. KELLEY told SUBJECT T. KELLEY he had struck VICTIM multiple times. SUBJECT D. KELLEY first struck VICTIM in March 2011, in New Braunfels, TX. SUBJECT D. KELLEY slapped VICTIM and struck him on his inner right shoulder. SUBJECT T. KELLEY believed that was how VICTIM received the fractures on his clavicle. SUBJECT T. KELLEY talked SUBJECT D. KELLEY into making a full confession video, which he did and provided it to SUBJECT T. KELLEY. On 29 Apr 12, SUBJECT T. KELLEY provided the video to MSgt TRACY WOLFE, 49 LRS/ First Sergeant, HAFB, NM.

| 5. CONDUCTED BY | 6. SIGNATURE |
|---|---|
| HOLZ, YONATAN | |

THIS DOCUMENT CONTAINS NEITHER RECOMMENDATIONS NOR CONCLUSIONS OF AFOSI. IT IS THE PROPERTY OF THE AFOSI AND IS LOANED TO YOUR AGENCY; THIS DOCUMENT IS NOT TO BE RELEASED OUTSIDE YOUR AGENCY

| INTERVIEW RECORD | DATE | FILE NUMBER |
|---|---|---|

**PRIVACY ACT NOTICE:** WHEN FILLED IN, THIS FORM MAY CONTAIN INFORMATION THAT MUST BE PROTECTED BY THE PRIVACY ACT OF 1974 AND THEREFORE MUST BE PROTECTED IN ACCORDANCE WITH DOD DIRECTIVE 5400.11.

**I. ADMINISTRATIVE DATA**

| NAME OF INTERVIEWEE *(Last, First, Middle Initial)* | PRINCIPAL INTERVIEWER | PLACE OF INTERVIEW |
|---|---|---|
| Kelley, Devin | Gregory Harper | Det 225/Bldg #293 |

OTHER PEOPLE PRESENT

| NAME | STATUS | TIME PRESENT |
|---|---|---|
| Clinton Mills | Special Agent | Entire Time |
| | | |
| | | |

**II. CHRONOLOGICAL DATA**

*(Initial appropriate blocks) 1. Use these items only when required by law. 2. Strike out words or items not applicable*

| | |
|---|---|
| CM | 1. Time interview began. 1839 |
| CM | [1] 2. At 1844 hours, Gregory Harper read the suspect his or her rights according to (Article 31, UCMJ) (Fifth amendment to the Constitution)[2] and advised the suspect that the alleged (offense) (matter) being investigated was:[2] ~~112a. Wrongful use, possession, etc., of controlled substances~~ 128, Assult 86 AWOL |
| CM | [1] 3. At 1845 hours interviewee stated he or she understood his or her rights. |
| CM | [1] 4. At 1845 hours, interviewee stated he or she ~~(did)~~ (did not)[2] desire to consult with a lawyer. *(If lawyer was requested state in "Remarks" the specific action taken.)* |
| CM | [1] 5. At 1845 hours interviewee stated he or she wished (to waive the rights explained to him or her) (to remain silent).[2] |
| CM | 6. At 1902 hours interviewee stated he or she ~~(was willing)~~ (was not willing)[2] to make a written statement. |
| N/A | 7. Preparation of the written statement began at hours and ended at hours. |
| N/A | 8. (Interviewee stated that he or she read the statement and)[2] interviewee signed the statement at hours. |
| CM | 9. At 1902 hours interview ended. |
| CM | 10. At 1925 hours interviewee was photographed (front and profile)(copy to be maintained in AF Form 3986). ~~(Add remark if not photographed)~~ |
| CM | 11. At 1930 hours interviewee was fingerprinted (copy to be maintained in AF Form 3986). (Add remark if not fingerprinted) |
| CM | 12. At 1955 hours interviewee departed ~~(unescorted)~~ (escorted by).[2] TSgt Dukes |

**III. PERTINENT DETAILS AND SPECIFIC REQUESTS**

*(List below other pertinent details of the interview, including significant requests made by interviewee to see counsel, chaplain, commander, doctor, etc., personal relief, refreshment breaks, visitors, etc.)*

| EVENTS | TIME | ACTION TAKEN |
|---|---|---|
| Smoked and Received Food & Drink | 1839 | Accepted |
| | | |
| | | |
| | | |
| | | |
| | | |

AF Form 3985, 20080709

**III. PERTINENT DETAILS AND SPECIFIC REQUESTS** ***(Continued)***

*(List below other pertinent details of the interview, including significant requests made by interviewee to see counsel, chaplain, commander, doctor, etc., personal relief, refreshment breaks, visitors, etc.)*

| EVENTS | TIME | ACTION TAKEN |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

**IV. SECURITY CONSIDERATIONS**

N/A — 1. If the interviewee has access to sensitive information or areas, has admitted committing a substantive offense, or there is substantial evidence that he or she committed a substantive offense, he or she was asked the following questions:

(a) Has anyone asked you to obtain or furnish defense information or aid any activity whose interests are contrary to the US under threat of exposure, blackmail, or any form of pressure?

(b) Has anyone enticed or attempted to entice you into participating in some activity which may have been for the purpose of threatening to expose you, blackmail you, or subject you to pressure to furnish defense information contrary to the interests of the US?

N/A — 2. If classified information was involved in the case, the interviewee was cautioned that he or she may not disclose classified information to a lawyer who does not have proper security clearance.

REMARKS

**I CERTIFY THE ENTRIES IN THIS RECORD ARE A TRUE AND ACCURATE ACCOUNT OF THE EVENTS AS THEY OCCURRED.**

| INTERVIEW RECORD COMPLETED AT | | TIME |
|---|---|---|
| AFOSI, Det 225, Bldg 293, Holloman AFB | | 1955 |
| **DATE** | **TYPE OR PRINTED NAME** | **SIGNATURE** |
| 8 Jun 12 | ~~INV Dwayne L. Harris~~ SA Gregory Harper | [signature] |

AF Form 3985, 20080709

**AIR FORCE OFFICE OF SPECIAL INVESTIGATIONS**
**REPORT OF INVESTIGATIVE ACTIVITY**

| 1. DATE OF INVESTIGATIVE ACTIVITY | 2. PLACE | 3. FILE NUMBER |
|---|---|---|
| 18-Jun-2012 | TELEPHONIC | 33039121711113 |

4. REMARKS

Interview of: [REDACTED]

Date/Place: 18-JUN-12/TELEPHONIC

On 18 Jun 12, SA YONATAN HOLZ spoke with [REDACTED] telephonically. [REDACTED] related the following information verbally: [REDACTED] met SUBJECT D. KELLEY in 2005 while she was in the seventh grade in New Braunfels, TX. [REDACTED] dated SUBJECT D. KELLEY for approximately eight months but terminated the relationship due to constant verbal and sexual abuse by SUBJECT D. KELLEY. [REDACTED] tried to end the relationship numerous times, but SUBJECT D. KELLEY would state he would kill himself if she did. SUBJECT D. KELLEY told [REDACTED] he would kill himself approximately five to eight times throughout their relationship. SUBJECT D. KELLEY made her do things no seventh grader should. SUBJECT D. KELLEY would force [REDACTED] to give him oral sex by pushing her head down to his groin. SUBJECT D. KELLEY would also force [REDACTED] to masturbate him. SUBJECT D. KELLEY would also touch [REDACTED] genitals. [REDACTED] stated all sexual contact by SUBJECT D. KELLEY was not consensual but she would do it because SUBJECT D. KELLEY would threaten to kill himself if she did not comply. SUBJECT D. KELLEY would verbally abuse [REDACTED] at least once a week by calling her ugly and by stating her parents hated her. SUBJECT D. KELLEY never physically abused [REDACTED] SUBJECT D. KELLEY last attempted to make contact with [REDACTED] approximately one year ago via Facebook. [REDACTED] thought SUBJECT D. KELLEY contacted her to rekindle their past relationship. [REDACTED] deleted all messages from SUBJECT D. KELLEY because she did not want to be associated with him and did not like having the messages in her inbox as a constant reminder of him. [REDACTED] described SUBJECT D. KELLEY as a manipulator and control freak. [REDACTED] knew of the allegations against SUBJECT D. KELLEY because SUBJECT T. KELLEY contacted her to let her know Air Force investigators would be contacting her to get her side of the story. [REDACTED] was not surprised SUBJECT D. KELLEY was in his current situation. [REDACTED] stated SUBJECT D. KELLEY dated a girl named [REDACTED] for approximately two years and believed she might have further information pertaining to SUBJECT D. KELLEY's abusive ways.

| 5. CONDUCTED BY | 6. SIGNATURE |
|---|---|
| HOLZ, YONATAN | |

**THIS DOCUMENT CONTAINS NEITHER RECOMMENDATIONS NOR CONCLUSIONS OF AFOSI. IT IS THE PROPERTY OF THE AFOSI AND IS LOANED TO YOUR AGENCY; THIS DOCUMENT IS NOT TO BE RELEASED OUTSIDE YOUR AGENCY**

**AIR FORCE OFFICE OF SPECIAL INVESTIGATIONS**
**REPORT OF INVESTIGATIVE ACTIVITY**

| 1. DATE OF INVESTIGATIVE ACTIVITY | 2. PLACE | 3. FILE NUMBER |
|---|---|---|
| 11-Jul-2012 | [redacted] | 33039121771716 |

4. REMARKS

Lead Interview of: [redacted]

Date/Place: 11-JUL-12/[redacted]

[redacted] provided essentially the following information: [redacted] first met SUBJECT D. KELLEY in 2009 while in the ninth grade. [redacted] dated SUBJECT D. KELLEY while she was in eighth grade for approximately 14 months. [redacted] stated nothing out of the ordinary went wrong while she was in a relationship with SUBJECT D. KELLEY. It was not until after they broke up when SUBJECT D. KELLEY began to do things [redacted] did not want to do. [redacted] recalled several situations where SUBJECT D. KELLEY did things she did not want to do, but could not recall actual dates or times. One instance, SUBJECT D. KELLEY was groping [redacted] When [redacted] tried to leave the room, SUBJECT D. KELLEY restrained [redacted] [redacted] punch SUBJECT D. KELLEY in the face approximately three times. SUBJECT D. KELLEY let go and [redacted] left the room. A second instance, SUBJECT D. KELLEY drove [redacted] to a secluded area and attempted to have [redacted] show him her breast. SUBJECT D. KELLEY tried to lift [redacted] shirt up and [redacted] stopped him and said, "No." After SUBJECT D. KELLEY would not stop asking, [redacted] agreed to show him. SUBJECT D. KELLEY subsequently held [redacted] shirt up and took approximately three or four photos of [redacted] breast using his cell phone. Approximately in June 2012, SUBJECT T. KELLEY told [redacted] he still possessed the photos. SUBJECT T. KELLEY did not state where SUBJECT D. KELLEY had them. Another instance, SUBJECT D. KELLEY picked [redacted] up from [redacted] residence, SUBJECT D. KELLEY asked [redacted] to masturbate him. [redacted] said, "No" and SUBJECT D. KELLEY was persistent on [redacted] masturbating him. When [redacted] would not give in, SUBJECT D. KELLEY pulled out his penis and ejaculated. SUBJECT then wipe his sperm on [redacted] stomach. Another instance, SUBJECT D. KELLEY and [redacted] were in the back seat of his vehicle, SUBJECT D. KELLEY pulled [redacted] to him and would not let her go. [redacted] bit SUBJECT D. KELLEY in order to get SUBJECT D. KELLEY off of her. Additionally, SUBJECT D. KELLEY told [redacted] that he touched his sister's breast, L[redacted] K[redacted], [redacted] and watched L. K[redacted] take a shower. Additionally, SUBJECT D. KELLEY stated he masturbated in L. KELLEY's shampoo bottle. SUBJECT D. KELLEY also stated he placed a camera in his parents shower and recorded them having sex. [redacted] could not recall the exact date but estimated it was three to four years ago.

| 5. CONDUCTED BY | 6. SIGNATURE |
|---|---|
| PETERSON, SEAN | |

THIS DOCUMENT CONTAINS NEITHER RECOMMENDATIONS NOR CONCLUSIONS OF AFOSI. IT IS THE PROPERTY OF THE AFOSI AND IS LOANED TO YOUR AGENCY; THIS DOCUMENT IS NOT TO BE RELEASED OUTSIDE YOUR AGENCY

**AFFIDAVIT FOR SEARCH AND SEIZURE** **9 JUN 2011**

HOLLOMAN AFB, NEW MEXICO

I, Vince H. Bustillo, Special Agent, United States Air Force Office of Special Investigations, being duly sworn, depose and state:

1. I am a Special Agent of the Air Force Office of Special Investigations (AFOSI). I am currently assigned to the AFOSI Detachment 225, Holloman AFB (HAFB), New Mexico. I have been a Special Agent since March 1995. I received training to be a Special Agent at United States Air Force Special Investigations Academy, Andrews Air Force Base, MD. I submit this affidavit based upon information known to me personally from this investigation, as well as information obtained from others who have investigated this matter and/or have personal knowledge of the facts herein.

2. I am conducting an investigation involving an Assault on a Child Under 16, a violation of Article 128, UCMJ. A1C DEVIN P. KELLEY (SUBJECT 1), 49th Logistics Readiness Squadron, NM, and his dependent spouse, TESSA K. KELLY (SUBJECT 2) are subjects of this investigation.

3. The following sets forth the facts and circumstances upon which this request for a search authority is based.

Background of Investigation

4. On 9 Jun 11, the Child, Youth and Family Department (CYFD), Alamogordo, NM, telephonically contacted SA James F. Hoy, AFOSI Det 225, HAFB, NM, and advised of a suspicious injury sustained by an eleven month old child, subsequently identified as J███ M█████L█████(VICTIM), SUBJECT 2's son from a previous relationship. SA Vince H. Bustillo and SA James F. Hoy, AFOSI Det 225, HAFB, NM, responded to the Emergency Room of Gerald Champion Medical Center (GCMC), Alamogordo, NM, and made contact with CYFD. According to CYFD, VICTIM was presented at the Emergency Room of GCMC on 8 Jun 11, and was admitted with a history of complaints of on-going vomiting and dehydration. VICTIM was seen on two previous occasions (2 Jun 11 and 6 Jun 11) for the same complaints at William Beaumont Medical Center, Ft Bliss, TX, and Providence Medical Center in El Paso, TX. No injuries to VICTIM's face were detected during either of the examinations; however, during the most recent medical exam on 8 Jun 11, the attending physician, Dr. Jeremy Harwood, 49th Medical Group, HAFB, NM, noted suspicious injuries to VICTIMS's face which included bruising on VICTIM's left cheek and ear. Dr. Harwood advised the bruising was not present on 6 Jun 11, when he examined VICTIM. Dr. Harwood opined the injury was consistent with a slap. CYFD advised neither SUBJECT 1 nor SUBJECT 2 had any explanation for the injury and allegedly noticed it for the first time when they placed the child in his car seat before transporting him to GCMC. Dr. Harwood ordered a CT scan of the child on 9 Jun 11. The results of the CT scan showed the child sustained a subdural hematoma to the left frontal skull. Dr. Harwood opined the injury could have been caused by a fall, or a

severe blow to the child's head. According to CYFD, SUBJECT 1 did not speak during her assessment questioning following the CT scan and SUBJECT 2 offered explanations stating the injury may have been caused by the child laying on SUBJECT 2's necklace or SUBJECT 2's collar bone while SUBJECT 2 was holding the child. SUBJECT 1's mother, Rebecca Anne Kelley (R. KELLEY), was also present at GCMC, visiting the child. R. KELLEY offered an explanation stating VICTIM liked to chew on the bed rail of his crib and may have fallen within his crib. Having no further plausible explanation for VICTIM's injuries, we believe it would be prudent to our investigation to examine and document the crib and immediate surrounding areas within the VICTIM's bedroom and attempt to determine if anything present would cause VICTIM's injuries.

5. In view of the related facts, I believe probable cause exists to conduct a search VICTIM's crib and immediate surrounding within VICTIM's bedroom at [REDACTED] [REDACTED] for evidence of Assault (Child Abuse).

VINCE H. BUSTILLO, SA, USAF — 15 Jun 11
AFOSI Detachment 225

Sworn to and subscribed to me on 9 Jun 11. (This affidavit was provided to memorialize verbal search authorization granted on 9 Jun 11, by Col ROBERT H. COLE, Military Magistrate, 49th Mission Support Group.)

ROBERT H. COLE, Col, USAF
Military Magistrate, 49th Mission Support Group — 15 Jun 11

909 South Florida Ave.
Alamogordo, NM 88310
Office: (575) 434-3622
FAX: (575) 434-3530
Crisis Hotline: 1-575-437-COPE (2673)
copedv.org

cope
center of protective environment inc.
Dealing with the Problems of Domestic Violence

1204 Mechem Drive, Suite #12
Ruidoso, NM 88345
Office: (575) 258-4946
Fax: (575) 258-4949
Toll Free Crisis Hotline:
1-866-350 COPE (2673)

**TO: Angie Baker**
**Children Youth and Families Department**
**2220 Indian Wells Road**
**Alamogordo, NM 88310**

**Date:** April 26.2011

**Re: CASE:** Devin Kelly
**Docket #**

__X_ 1. Participated in pre-sentencing screening at COPE, Inc. on: April 2. 2012
_____2. Failed to attend his/her pre-sentencing screening on

**Our Recommendations are:**

____1. Participate in the 52 week, Domestic Violence Offender Group Program.
____2. Participate in brief domestic violence intervention program.
____3. Be referred to anger management program.
__X_4. Be referred to mental health facility for evaluation.
____5. Be referred to substance abuse facility for evaluation.
____6. Other: To participate in a total of ten domestic violence sessions.

**Explanation below:**

The recommendations for this client are based on the client's self report during his intake session and screening sessions. The client currently does not meet the criteria for brief domestic violence counseling. The client is recommended to seek a mental health evaluation. He presents to be well mannered and cooperative during these sessions.

Donna Lawrence, MSW
Domestic Violence Specialist

Stan Finnell, M.S., LPCC
Director of Counseling Services

COPE IS A UNITED WAY AGENCY AND A COMBINED FEDERAL CAMPAIGN AGENCY



NAME: Devin Kelly

* * SUMMARY PARAGRAPHS EXPLAINING CLIENT'S ATTAINED SCALE SCORES * *

TRUTHFULNESS SCALE: LOW RISK RANGE RISK PERCENTILE:0

This person's response pattern on the Truthfulness Scale is in the Low Risk (zero to 39th percentile) range. This is an accurate DVI-Short Form profile and other Short Form scale scores are accurate. The Truthfulness Scale identifies self-protective, recalcitrant and guarded people who minimize or even attempt to conceal problems and self-report information. This person has adequate reading skills and was truthful. Denial and distortion are minimal. This individual responded to the Short Form test in a non-defensive, cooperative and truthful manner.

ALCOHOL SCALE: LOW RISK RANGE RISK PERCENTILE:0

This person's response pattern on the Alcohol Scale is in the Low Risk (zero to 39th percentile) range. Few, if any, indicators of alcohol (beer, wine or liquor) abuse are indicated. Alcohol use, if present, may be historical. Alcohol abuse risk is low. RECOMMENDATIONS: With regard to alcohol abuse, the least restrictive disposition consistent with public safety is recommended and a low-intensity probationary response would be appropriate. A non-drinker may score higher than zero, but still be in the Low Risk range due to experimentation, prior alcohol-related history, etc.

CONTROL SCALE: MAXIMUM RISK RANGE RISK PERCENTILE:98

This person's scale score is in the Severe Problem (90 to 100th percentile) risk range. Focal issues involve control of self and others. Severe problem risk scorers are often described as domineering, bullying, dictatorial and abusive. Family members may live in terror of this person's temper, anger and violence. This person's significant other may be held in bondage through intimidation and raw violence. This person's court records should be reviewed for a history or pattern of domestic violence. Counseling, anger management or psychotherapy appear warranted.

DRUGS SCALE: LOW RISK RANGE RISK PERCENTILE:0

This person's response pattern on the Drugs Scale is in the Low Risk (zero to 39th percentile) range. Low Risk scorers reveal few, if any, significant indicators of illicit drug use or abuse. Drug use may, if present, be historical, experimental or minimal involvement. A person that does not use drugs may score higher than zero, but will still be in the Low Risk range. RECOMMENDATIONS: This person's court-related records should be reviewed and if drug-related convictions are revealed, recommendations should be upgraded accordingly. A low intensity probationary response is indicated.

VIOLENCE SCALE: MAXIMUM RISK RANGE RISK PERCENTILE:93

This person's response pattern on the Violence Scale is in the High Risk (90 to 100th percentile) range. High risk scorers can be hostile, violent and dangerous. If this is an accurate DVI-Short Form profile, this individual should be considered dangerous. If this is an inaccurate test, then either retest or interview this person carefully. RECOMMENDATIONS: Review this person's court-related records for assaultive, violent or domestic violence convictions. Interview closely about substance (alcohol and other drugs) abuse and prior counsel-

A1C Devin Kelley
Personal Information File

| TITLE OF DOCUMENT | DATE | PAGES |
|---|---|---|
| UIF Cover Page | No Date | 1 page |
| Establishment of Security Information File | 23-May-12 | 2 pages |
| Central Registry Board Incident | 17-May-12 | 1 page |
| Authority to Proceed with Administrative Discharge | 17-Apr-12 | 1 page |
| Request for Authority to Proceed with Administrative Discharge | 29-Mar-12 | 3 pages |
| MFR for Alamogordo Municipal Court | 2-May-12 | 1 page |
| Letter of Reprimand | 17-Apr-12 | 2 pages |
| Response to LOR from A1C Kelley | 19-Apr-12 | 1 page |
| Tessa Kelley character letter for A1C Kelley | 17-Apr-12 | 1 page |
| Unfavorable Information File Action | 27-Apr-12 | 2 pages |
| Rater Initial/Follow-Up Performance Feedback Notification | 5-Apr-12 | 1 page |
| Memorandum for Record from 49 LRS/LGRDDC (NCOIC) | 19-Mar-12 | 1 page |
| Letter of Reprimand from Capt Nugent | 19-Mar-12 | 3 pages |
| Response to LOR dated 19 Mar 12 | 21-Mar-12 | 1 page |
| Letter of Reprimand from MSgt Bizzack | 19-Mar-12 | 2 pages |
| Response to LOR dated 19 Mar 12 | 21-Mar-12 | 2 pages |
| Letter of Reprimand from Lt Col Marconi | 20-Mar-12 | 2 pages |
| Response to LOR dated 20 Mar 12 | 27-Mar-12 | 1 page |
| Unfavorable Information File Action | 27-Mar-12 | 2 pages |
| Individual Incident Reference Record/ Drivers Record/Incident Complaint Report w/ ROI attachment | 6-Mar-12 | 6 pages |
| Receipt for Inmate or Detained Person | 17-Feb-12 | 1 page |
| AF Form 1168 Tessa Kelley | 17-Feb-12 | 3 pages |
| Email photo from SSgt Sablan / Left arm photo | 17-Feb-12 | 1 page |
| Email photo from SSgt Sablan / eyelid photo | 17-Feb-12 | 1 page |
| Photo of Tessa Kelley with baby | No Date | 1 page |
| Photo of Tessa Kelley with baby frontal picture | No Date | 1 page |
| Facebook page of Devin Kelley | No Date | 1 page |
| Notice of Representation to LRS from A1C Kelley | 21-Feb-12 | 1 page |
| No Contact Order | 17-Feb-12 | 2 pages |



DEPARTMENT OF THE AIR FORCE
HEADQUARTERS 49TH WING (ACC)
HOLLOMAN AIR FORCE BASE, NEW MEXICO

10 Jun 2012

MEMORANDUM FOR 49 WG/JA
49 WG/CC
IN TURN

FROM: 49 OG/CD (PCRO)
700 Delaware Ave.
Holloman AFB NM 88330

SUBJECT: Probable Cause Determination – A1C Devin P. Kelley, 49 LRS

1. In accordance with RCM 305(i)(1), I, being a neutral and detached officer acting within 48 hours of imposition of confinement under military control, find adequate probable cause that the following offenses triable by court-martial were committed and that A1C Devin P. Kelley committed them:

| Article | Date of Offense | Description of Offense |
|---|---|---|
| a. 86 | 8 Jun 12 | Absence without leave |
| b. 128 | 9 Jun 11 | Assault on a child |
| c. 128 | 23 ~~Jun~~ Apr 12 | Aggravated assault, dangerous weapon |
| d. 134 | 23 Apr 12 | Threat, communicating |

2. Second, I have reasonable grounds to believe continued pretrial confinement is necessary because it is foreseeable that the confinee will not appear at trial and/or will engage in serious criminal misconduct. Finally, I have reasonable grounds to believe less severe forms of restraint are inadequate. My decision is based on the following reasons:

a. The evidence shows a serious escalation of behavior involving firearms and threats after the physical abuse of a child. Particularly alarming is his decision to try to obtain another firearm while undergoing inpatient mental health care, conducting research on body armor, and then escaping from the facility late at night without authorization. Additionally, his leaving for San Antonio, TX after turning in his confession and his later escape from the controlled environment demonstrate that the member is a flight risk. Taken together, these facts establish it is likely confinee will continue to engage in serious criminal misconduct and/or will not show up for trial.

b. Lesser forms of restraint are inadequate to mitigate the flight risk he poses nor would they prevent him from carrying out the threats that he has made against others, especially given the forethought and planning that he showed by attempting to purchase another firearm and his escape from the mental health facility.

*Global Power for America*

4

RYAN C. SHERWOOD, Lt Col, USAF
Pretrial Confinement Review Officer

Attachment:
49 LRS/CC Memo, dtd 8 Jun 12 w/atchs