**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

JOE HOLCOMBE, et al,
        Plaintiff,

v.                                                    Civil Action No.  5:18-cv-0055-XR

UNITED STATES OF AMERICA,
        Defendant.

**PLAINTIFFS  KRIS WORKMAN, COLBEY WORKMAN, KYLE WORKMAN, MORGAN HARRIS, DAVID COLBATH, DAVID COLBATH AS NEXT FRIEND OF EEVEE WORKMAN, KRIS WORKMAN AND COLBEY WORKMAN AS NEXT FRIENDS OF EEVEE WORKMAN, JESSICA MOULTON AND WILLIAM LANE'S MOTION TO STRIKE DESIGNATION OF ACADEMY STORES LIMITED AS A RESPONSIBLE THIRD PARTY**

**FACTUAL BACKGROUND**

These Movants stand in a different position than all other Plaintiffs, who all sued Academy, which compels this separate filing at this juncture and potentially future separate filings for reasons apparent below. The underlying facts are mostly known to the Court and described in multiple filings, but the undisclosed secret will remain hidden no longer because the Movants and other victims deserve that the whole truth determine the outcome:

For one hundred seventy days prior to the shooting, the shooter possessed a ubiquitous document available to all citizens allowing him to acquire firearms at will from any FFL he chose to visit in person. Specifically, he caused the DPS to re-issue his Texas Drivers' License on May 2, 2017[1]. Between then and the shooting, he could visit FFLs in person and buy as many AR platforms  and other semi-automatic firearms with large capacity magazines as he had funds to purchase—with impunity-- because they are legal in Texas and he had passed background checks

---

[1] Exh. A SSS 002807-002809 DPS Certified Abstract (7/10/2020)

at every FFL he visited since discharge from the Air Force.[2]  Had the shooter needed a TDL earlier to buy a firearm from an FFL, he need only have visited a DPS office whenever he wished because he was always eligible to possess a TDL since 2007 and his eligibility never expired before his death.[3]    No legal or factual barrier existed preventing the shooter from purchasing firearms in person at an FFL in Texas, due to the negligence of the Air Force. The legality of his Colorado license was and is irrelevant to causation because he could replace it with a TDL whenever he wished.  Conversely, the Air Force's failure to timely transmit the disqualifying information to the FBI for inclusion into the NICS database is dispositive of causation--except for apportionment with the shooter—because availability of a TDL to the shooter whenever he wished was foreseeable at all times to the United States and controlled the destiny of the victims along with the depravity of the shooter.

On April 7, 2016 the shooter entered an Academy store in Selma, Texas and purchased a Ruger AR-556 with a thirty-round magazine.[4] He could have bought as many additional thirty round magazines as he wished that day but instead purchased them over succeeding months.[5]  He completed an ATF form 4473 and falsely denied disqualifying information, as criminals do. An Academy employee input his identifying information and electronically forwarded the information to query the shooter in the NICS system to ascertain whether he was legally eligible to purchase a firearm. The shooter had every reason to believe he would pass the check because he passed all prior background checks at FFLs since his bad-conduct discharge from the Air Force.[6]

---

[2]    Kelley purchased firearms from licensed FFLs on at least three occasions on and after December 22, 2014 including a Glock Model 19 on Dec. 22, 2014 in Colorado,  Ruger 357 handgun in Colorado on June 26, 2015, AR-556 on April 7, 2016  from Academy and a Ruger SR-22 Pistol  on October 18, 2017.  See Doc. 250-20, re-attached her for reference as Exh. B.

[3]    Exh. C. (TXRANGERS00054109)

[4]    Exh. B. and Doc 250-20 p. 9-14.

[5]    Exh. D.  Smith Depo.at. p. 143-144

[6]    Exh. B. Doc. 250-20.

Conversely, the retail clerk had no knowledge of the falsity of information the shooter wrote on the Form 4473,  and the employee relied as required by law on the NICS system to accurately determine his legal eligibility to purchase the firearm. The clerk at this FFL received a "proceed" response from the NICS query. The shooter presented a Colorado driver's license and the employee sold him a Ruger AR-556 with a thirty-round magazine.[7]

The Air Force never provided the disqualifying information regarding the shooter to the FBI for input into the NICS system prior to the sale on April 7, 2016. The Air Force failed to retroactively make the changes it agreed to make following the 2014 Department of Defense audit by the Inspector General.[8]  FBI representative Kimberly Del Greco testified that receipt by the FBI of information about the shooter's qualifying convictions would result in an instant denial. [9] Further, denial would have resulted in the shooter's placement in the NCIC previously denied file, ensuring that future attempted gun purchases by the shooter would all be instantly denied.[10]

At all relevant times to the facts of this tragedy, the shooter was eligible to possess a Texas driver's license, including on April 7, 2016, when he purchased the Ruger AR-556 and at all times thereafter. TXRANGERS00054109 and  EXH.C.     The shooter resided in Texas frequently between at least April of 2016 and the shooting in November of 2017, having moved back to Texas in April of 2015. [11] The shooter need only have walked into a Texas DPS office and requested to

---

[7]   See exemplar Plaintiffs' Original petitions filed in state court (Exh E.) Movants intentionally did not sue Academy, and have no access to discovery product from lawsuits against Academy; nor would Academy's counsel agree to add Movants and their counsel to the protective order entered in this court (Doc. 209) to allow access by Movants to any of the discovery product subject to that order.

[8]   The Honorable Heather Wilson, Secretary of the Air Force, Statement before Committee on the Judiciary, United States Senate, December 6, 2017(SSS-000404-405) and Questions for the Record for Secretary of the United States Air Force Heather Wilson, submitted by Senator Mazie Hirono, December 13, 2017 (SSS-000406 through 407)

[9]   Exh.F Del Greco Dep. at 81-82

[10]   Exh. F Del Greco Dep. at 56-57.

[11]   Exh. D Smith Dep. at 111-115.

obtain a Texas license if he did not already possess one in April of 2016 had he been declined at Academy due to any perceived legal issue created by presentation of a Colorado license.[12]  He was eligible to purchase a firearm in Texas using a Texas license because the Air Force failed to input the information into the NICS system. Texas citizens are eligible under the Second Amendment to purchase semi-automatic firearms of the type used in the shooting with thirty round magazines. They are eligible to buy thirty-round magazines for AR platforms and other firearms on-site at FFLs like Academy without presenting a driver's license because neither state nor federal law requires them to do so.

**Legal Standard**

A defendant may seek to designate a person as a responsible third party by filing a motion for leave to designate that person as a responsible third party.[13]  After adequate time for discovery, a party may move to strike the designation of a responsible third party on the ground that there is no evidence that the designated person is responsible for any portion of the claimant's injury or damage.[14] The court shall grant the motion to strike unless a defendant produces sufficient evidence to raise a genuine issue of fact regarding the designated person's responsibility for the claimant's injury or damage. *Id.*

**ARGUMENT**

**1.   NO EVIDENCE EXISTS NOR CAN BE ADDUCED SATISIFYING CAUSE IN FACT OR FORSEEABILITY WITH RESPECT TO ACADEMY STORES LIMITED.**

The facts establish that **"**but for" the alleged "negligent" sale of the firearm by the FFL's employee of the on April 7, 2016, the shooter still would have committed the mass shooting nineteen months later.  The Texas Department of Public Safety investigation established within twenty-four hours after the shooting the following facts:

---

[12]    Movants take no position on the legality of the sale under the Colorado statute at issue in state court. Causation is an entirely separate element from legality of the transaction, that the United States cannot meet through any available proof.

[13]   Texas Civ. Prac. & Rem. Code Sec. 33.004 (a).

[14]   Texas Civil Practice & Remedies Code Sec. 33.004 (l).

a.   The Texas DPS issued a Texas Driver License to the shooter in March of 2007. [15]

b.   That license was not issued for a limited term.  *Id.*

c.   The license did not expire prior to the shooting on November 2017.  *Id.*

d.   The shooter was eligible to possess a Texas license in April of 2016 and remained eligible to possess a Texas drivers' license up to and including November 5 of 2017.  *Id.*

The shooter re-acquired a TDL from the DPS on May 2, 2017.[16]  For one hundred seventy days prior to the shooting, the shooter therefore possessed the only document necessary for him to buy as many AR platforms with large capacity magazines as he wished at any and all FFLs in Texas because he knew he could falsify a 4473 and pass a background check at will.

   No evidence exists that this FFL had any knowledge of the shooter's psychological   or criminal history; nor can the United States show that this FFL had any access to the shooter's history of crimes and threats of crimes, including those involving gun violence, while in the Air Force because the Government failed to provide it in the NICS system.  Nor can the Government show that the FFL had any knowledge that the shooter intended to attack or consider attacking anyone with the AR-556, let alone the Sutherland Springs First Baptist Church and injure or kill the Movants at the time he purchased the AR-556 on August 6, 2016.  As such, the United States cannot raise a "genuine issue of fact regarding the designated person's responsibility for the claimant's injury or damage" regarding this designated RTP, Academy, required under Sec. 33.004(l).   No evidence exists that this FFL was a "substantial factor" or a "but/for" cause of this massacre.  Instead, the evidence conclusively shows that any FFL that sold a firearm to the shooter in April of 2016 with the deficient NICS background history in the system did no more than create the condition by which the injurious event later could have occurred.  As such, no evidence of foreseeability necessary to prove proximate cause exists or can ever be shown against Academy Stores Ltd.  To hold otherwise would impose unconscionably the status of an insurer on all FFLs of all victims of firearms injured or killed by guns sold to a shooter by a given FFL.  Such liability

---

[15]   Exh. C. TXRANGERS00054109

[16]   Exh. A.

would in turn eviscerate the Second Amendment's protection of the right to keep and bear arms. Indeed, the sale of firearms in such circumstances conjures images of a dystopian legal deathtrap for businesses selling them instead of a vibrant Democratic Republic with a healthy and respected Bill of Rights.[17]

Causation is a necessary element of the United States' claim that Academy is a responsible third party.  Proximate cause consists of both cause in fact and foreseeability.  *Travis v. City of Mesquite,* 830 S.W. 2d 94, 98 (Tex. 1992); *Missouri Pac. R.R. Co. v. American Statesman,* 552 S.W. 2d 99, 103 (Tex. 1977); *Nixon v. Mr. Property Management Co.* 690 S.W. 2d 546, 548 (Tex. 1985).  Cause in fact requires that the Defendant's act or omission must have been a substantial factor in bringing about the injury which would not otherwise have occurred.  *Lear Seigler, Inc. v. Perez,* 819 S.W. 2d 470, 472 (Tex. 1991).  "Substantial factor" in turn requires that the party with the burden of proof establish that the harm would not have occurred "but for" the Defendant's negligent acts or omissions, and the "substantial factor/ but-for" causation requirement transcends causation analysis in all Texas tort law. *Transcontinental Ins. Co.* v. *Crump,* 330 S.W. 3d 211, 223-224 (Tex. 2011).

" "In order to be a legal cause of another's harm, it is not enough that the harm would not have occurred had the actor not been negligent….the negligence must also be a substantial factor in

---

[17]   The aggression by the USA against this FFL begs the question whether the United States knows or cares what would happen to the cost, insurability and, therefore, availability of firearms to its citizens vested with Second Amendment rights if the USA's  attempt to evade liability succeeds in apportioning fault to this FFL on non-existent facts relating to causation.  Because of the ability to exercise that right and purchase AR platforms legally, an AR-15 fired repeatedly by Steve Willeford saved five of the Movants' lives on Nov. 5, 2017.   Movants therefore submit Mr. Madison's caution remains as true as ever:

"Besides the advantage of being armed, which the Americans possess over the people of almost every other nation, the existence of subordinate governments, to which the people are attached, and by which the militia officers are appointed, forms a barrier against the enterprises of ambition, more insurmountable than any which a simple government of any form can admit of.  Notwithstanding the military establishments in the several kingdoms of Europe, which are carried as far as the public resources will bear, the governments are afraid to trust the people with arms."
Madison, Federalist 46, January 29, 1788.

bringing about the Plaintiff's harm.  The word "substantial"  is used to denote the fact that the defendant's conduct has such an effect in producing the harm as to lead reasonable men to regard it as a cause, using that word in the popular sense, in which there always lurks the idea of responsibility, rather than in the so-called "philosophic sense"  which includes every one of the great number of events without which any happening would not have occurred." *Id at 472.*

The connection between the defendant and the plaintiff's injuries may simply be too attenuated to constitute legal cause.  *Union Pump Company v. Albritton,* 898 S.W. 2d 773, 776 (Tex. 1995). Justice Cornyn's concurrence criticized the majority for a "policy-based causation analysis" rather than a cause in fact inquiry and failing to mention "cause in fact".  *Id at* 781.  He went on to analyze *Lear Seigler Inc. v. Perez,* 819 S.W. 2d 470 (Tex. 1991) and concluded that the court there did not reject the Plaintiff's cause-in-fact contention but noted that legal cause required more: "the defendant's conduct, even though a cause-in-fact, cannot be too remote from the injury complained of." *Id.  at 782.*  Justice Cornyn concluded his analysis of *Lear Seigler* with: "it seems clear that the Court was acknowledging the relationship between these two prongs [cause in fact and foreseeability] of the causal analysis and concluded that satisfying one prong alone was insufficient." *Id.*

The United States unabashedly yet incredibly asserts that an FFL who sold to a buyer who passed the government's background check nineteen months before a mass shooting,  when that FFL had no knowledge of the buyer's disqualifying history because the United States negligently trained and supervised its agents and effectively hid that information,  is nonetheless a cause in fact of  this horrific mass shooting. And the United States further alleges that FFL should have reasonably foreseen that someone with a valid Colorado license who passed a background check in Texas would commit mass murder nineteen months later in Texas. The inherently evil nature of Coloradans is unprovable.  The United States maintains this audacious and outrageous position notwithstanding receipt through production of the shooter's Certified Driver Abstract,  publicly available at all times to the United States from the DPS in Texas,  proving that the shooter possessed the required documentation (a TDL) allowing him to appear legal to purchase the

firearm to any FFL for over a hundred seventy days prior to the shooting.[18] The denial of the sale by the FFL nineteen months before the shooting would have presented no impediment whatsoever to his acquisition of the same firearm from another FFL at any time he wished prior to November 5, 2017.

Not only is the United States unabashedly pursuing the FFL on facts that defeat causation on their face, the United States' outstanding subpoena to the FFL requires, unless quashed, that the FFL produce all evidence of its profits from the sale of "all firearms" , among other types of firearms from 2015-2017 and all documentation of the FFL's "annual training and supervision expenses" for the same three year period for all firearms.[19] Despite the testimony of the Secretary of the Air Force to the Senate Judiciary Committee,   a DOD IG report finding there was "no excuse" for the failure to transmit the required information to the FBI on at least four occasions, and over thirty depositions discussed separately in the Plaintiffs' response to the United States Motion for Summary Judgment, no one is safe from the Government's blame-game. If Danielle Smith's children could be deposed about their knowledge of the shooter's gun habits, the Government would attempt it.

## II.  THE AVAILABILITY OF TDL PROVES FORSEEABILITY BY THE UNITED STATES AND THE ABSENCE OF FORSEEABILITY BY THE FFL

This chilling assault on an FFL who sold to a citizen with a TDL who passed the government's background check with no knowledge of his disqualifying information is perpetrated by the same Government that claims the relationship between this act of gun violence by the shooter and the United States, with its comprehensive knowledge of the shooter's crimes and threats to commit additional crimes in the Air Force including gun violence, was so "attenuated" that the case against the United States must be dismissed for absence of cause in fact or foreseeability. Yet the last official act of the United States while in control of the shooter was to bar him from Holloman AFB because the Air Force knew he was too dangerous to allow on the base after he completed his

---

[18]   Exh. A, *supra.*
[19]   Doc. 246 Exh.G #17 and #18.

sentence in the brig.  So, the Air Force forced his release on an unsuspecting civilian population with no knowledge of the danger and no means or method to ascertain that knowledge and protect civilians because he could pass background checks at will.  If the United States is not held accountable for the damages resulting from behavior of its agents on these facts,  the message is ominous and simple for all citizens exposed to discharged former members of the military:  arm yourselves at all times because you have no idea which former military employee is capable of gun violence because the Government will not disclose their criminal history to you until it is too late.  The Government steadfastly intends that it remain above the law, governed only by DOJ "guidance", and can never be held accountable for failing to provide information into the NICS system that will save citizens' lives.  You are therefore on your own.

The DPS abstract of the shooter proves both the absence of foreseeability by the FFL forced to query an ignorant NICS system; and at the same times proves foreseeability by the Government. The United States knows and foresees that nothing would stop the shooter or any citizen who presents a TDL to an FFL and falsifies a 4473 from purchasing any firearm legal in Texas unless the Government complies with its statutory and regulatory obligations to transmit disqualifying information to the FBI for input into the NICS system before the purchase.  Nor can the Government contend that the residence of citizens discharged from the military is foreseeable to the United States only in states with more restrictive gun laws than others. The United States unquestionably foresees that citizens discharged from the military may and will reside in all fifty states, all of which are constrained by the Second Amendment from removing guns at will from citizens unless the Government performs the duties it undertook and trains and supervises its agents perform them. That foreseeability further necessitates compliance by the Government with its duties so that FFLs across the country have access to accurate information at the point of sale.

In addition, the TDL the shooter obtained in May 2017 and thereafter used in September 2017 to purchase one of the firearms used in the shooting is necessarily "ubiquitous" unlike the alleged "ubiquitous" firearms the Government claims rendered the failure to input his disqualifying information into NICS irrelevant. All drivers in Texas are required to possess a license, regardless of their criminal record.[20] Availability of drivers' licenses in a shooter's state of residence allowing him to legally patronize any FFL he chooses and obtain firearms illegally and with impunity, as criminals are known to do, is the ubiquitous and inescapable flaw in each argument the government attempts regarding causation. Nothing will stop discharged military members whose disqualifying information is not input into NICS because they all foreseeably maintain drivers licenses and can visit any FFL and buy whatever is legal that they wish if the Government is not accountable for negligently training and supervising its agents. Neither the NICS-fix bill or any subsequent NICS-fix bill will do anything to prevent shooters discharged from the military from buying firearms if the Government fails to train and supervise agents to transmit the information. This was especially true in the case of this shooter because the United States failed repeatedly to comply with duties to train and supervise employees to transmit the copious disqualifying information and protect unsuspecting citizens from monsters like this shooter.

Yet, the United States' prey--this "responsible third party"--had no knowledge at the time it sold the firearm that Devin Kelley a) beat his wife and stepson while in the Air Force; b) bought handguns from the base facility which were removed from his possession due to the danger he posed; c) researched how to obtain body armor while in a mental facility in the Air Force; d) escaped the facility and threatened to "go for the guns" of those charged with returning

---

[20] Texas Transportation Code Sec. 521.021 and 525.025

him to the base;  e) threatened to shoot his supervisor and those in the vicinity if he had a shotgun; f) was confined pre-trial by Commander Nathan McLeod-Hughes pending trial because he found Kelley posed an unacceptable risk of violence including gun violence to safety unless confined; and g) was sentenced to and serve a year for the crimes of assaulting his wife and child while in the Air Force;  and was barred from the base pending his bad conduct discharge due to the safety risk he posed.

Assuming *arguendo* the truth of the assertion in the USA's request to designate Academy Stores Ltd as a responsible third party that the sale to a person presenting a Colorado license of an AR platform along with a thirty-round magazine was illegal under whatever state law applies,   no evidence exists to answer the "but-for" analysis  "NO."    Instead, the indisputable facts show that the shooter at all relevant times was eligible to possess a Texas drivers' license, could obtain one when needed, which he eventually chose to reacquire, and  purchase from FFLs in person at will. No speculation about alternate sources of firearms is relevant because the shooter bought all the guns used at FFLs as he had done in the past with one exception and had no reason to change his habit. No reason exists to think he would have gone elsewhere because the Government—not Academy—negligently failed to provide the required information to good-faith sellers attempting to comply with the Brady Act.  The Government should voluntarily dismiss this attempt to spread blame to an FFL that truly did no more than create the condition-- like any other FFL would have done-- whereby someone apparently exercising his Second Amendment right to buy a legal firearm in Texas could acquire the means to kill people if the purchaser chose to do so.  Nothing the USA can elicit from any witness in any deposition or document can change these facts, that exculpate Academy and directly inculpate the United States for its multiple acts and omissions of negligence that resulted in the Movants horrific injuries.[21]

---

[21]   These Movants express no opinion on the decision of other claimants to sue this FFL in state court, but the United States is responsible for protecting and preserving the Second Amendment rights of all Citizens under the United States Constitution;  and "they did it first" falls miserably flat given the awesome responsibility of the Executive

MOVANTS KRIS WORKMAN, COLBEY WORKMAN, KYLE WORKMAN, MORGAN HARRIS DAVID COLBATH  AND DAVID COLBATH AS NEXT FRIEND OF EEVEE WORKMAN AND KRIS WORKMAN AND COLBEY WORKMAN AS NEXT FRIENDS OF EEVEE WORKMAN, JESSICA MOULTON AND WILLIAM LANE therefore move that the court   strike the designation of Academy Stores Ltd as a Responsible Third Party for the duration of this litigation for all purposes in accord with Texas Civil Practice & Remedies Code Sec. 33.004 (2)(l) .

Respectfully submitted,


___/s/ Brett T. Reynolds__
BRETT T. REYNOLDS
Federal Bar No. 19994
State Bar No. 16795500
btreynolds@btrlaw.com
BRETT REYNOLDS & ASSOCIATES, P.C.
1250 NE Loop 410, Suite 310
San Antonio, Texas 78209
(210) 805-9799 – Telephone
(210) 455-2434 – Facsimile
**ATTORNEY FOR ALL MOVANTS**

## CERTIFICATE OF SERVICE

By our signatures above, we certify that a copy of this pleading has been sent to the following on September 4, 2020 via the Court's CM/ECF notice system:

JOHN PANISZCZYN
Civil Chief
United States Attorney's Office
Western District of Texas

STEPHEN E. HANDLER
Senior Trial Counsel, Torts Branch
United States Dept. of Justice
Civil Division

JOHN F. BASH
United States Attorney
Western District of Texas

PAUL DAVID STERN
Trial Attorney, Torts Branch
United States Dept. of Justice
Civil Division

JAMES G. TOUHEY, JR.
Director, Torts Branch
United States Dept. of Justice
Civil Division

STEPHEN TERRELL
Trial Attorney, Torts Branch
United States Dept. of Justice
Civil Division

KIRSTEN WILKERSON
Assistant Director, Torts Branch
United States Dept. of Justice
Civil Division

CLAYTON R. DIEDRICHS
Assistant United States Attorney

JAMES E. DINGIVAN
Assistant United States Attorney
JIM F. GILLIGAN
Assistant United States Attorney

　　　/s/ Brett T. Reynolds
BRETT T. REYNOLDS
Federal Bar No. 19994
State Bar No. 16795500
btreynolds@btrlaw.com
BRETT REYNOLDS & ASSOCIATES, P.C.
1250 NE Loop 410, Suite 310
San Antonio, Texas 78209
(210) 805-9799 – Telephone
(210) 455-2434 – Facsimile
**ATTORNEY FOR ALL MOVANTS**