UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| JOE HOLCOMBE, ET. AL,<br>    Plaintiffs,<br><br>    v.<br><br>UNITED STATES OF AMERICA,<br>    Defendant. | No. 5-18-cv-00555-XR<br>(consolidated cases) |

**UNITED STATES' REPLY IN SUPPORT OF
PARTIAL MOTION FOR SUMMARY JUDGMENT**

The United States files this reply in support of its partial motion for summary judgment to dispose of improper bystander claims for mental anguish damages multiple Plaintiffs raised in this consolidated action.  ECF No. 254.

I.  **THERE IS NO GENUINE ISSUE OF MATERIAL FACT REGARDING PLAINTIFFS' BYSTANDER CLAIMS FOR MENTAL ANGUISH DAMAGES.**

Plaintiffs argue that 26 of the plaintiffs identified in the United States' Partial Motion for Summary Judgment "do not seek mental anguish damages pursuant to a bystander cause of action." Resp. at 2.  They clarify, "[t]hese Plaintiffs, however, do not waive their respective rights to seek mental anguish or any other damages that are recoverable under the causes of action that are actually asserted in the Complaints—such as all damages available based on wrongful death, personal injury, and loss of consortium."  Resp. at 2.  This clarification is welcome.  But it is not clear on the face of these plaintiffs' complaints whether their claims for mental anguish damages are limited to "damages available based on wrongful death, personal injury, and loss of consortium"—rather than a bystander claim for mental anguish.  Thus, it remains necessary to dispose of any such claims through summary judgment.

Plaintiffs' claims for damages include in many cases "recovery of **all damages** to [which] they are entitled to recover pursuant to state and federal law including … [p]ast and future mental

anguish…." *See*, *e.g.*, Braden Compl. ¶ 7.14(b) (emphasis added) (covering Plaintiffs Kara Boyd, Elizabeth Braden, Benjamin Corrigan, Preston Corrigan, Martina Pachal, Jennifer Racey, and Patsy McCain). Nowhere in the Braden Complaint is the Texas Wrongful Death statute mentioned, and the damages are never limited to those recoverable under a wrongful death, personal injury, or a loss of consortium claim, as opposed to a bystander claim for mental anguish. In fact, their damages claims mirror those pleaded by Donna White, on behalf of her husband Roy White, whose Complaint did not mention any specific claim for "bystander" mental anguish, but who nevertheless argued that he was entitled to such damages in motions practice before this Court. *See* White Compl. ¶ 7.7, Cause No. 5:19-cv-01291, ECF No. 1. Other complaints are similarly drafted. *See* Wall Compl. ¶¶ 7.6–7.7 (covering Plaintiffs Kati Wall, Michael Johnson, Christopher Johnson, Deanna Staton, and James Graham). Even where certain plaintiffs reference the Texas Wrongful Death statute, the plaintiffs include broad claims under "all other applicable laws including the common law of the State of Texas." *See*, *e.g.*, Amador Compl. ¶ 7.3, Cause No. 5:18-cv-00555, ECF No. 74.

The ambiguities in Plaintiffs' pleadings should be resolved through summary judgment, the purpose of which is to "dispose of factually and legally unsupported claims and defenses while protecting parties' respective rights to trial on disputed issues." *Wilson v. Vickery*, 267 F. Supp. 2d 587 (E.D. Tex. 2002). The Court's disposition of Plaintiff Donna White's claim for mental anguish damages highlights the importance of properly delineating and disposing of the plaintiffs' claims. If any plaintiff subject to the United States' Partial Motion for Summary Judgment should predecease the trial of this matter, the Court will have addressed their bystander claims for mental anguish damages, thereby meaningfully streamlining the issues for trial. While Kip Workman's

mental anguish claims are addressed separately in this reply, the remaining plaintiffs have presented no evidence to support bystander claims for mental anguish. Because there is no genuine dispute of material fact for summary judgment regarding the remaining plaintiffs' bystander claims, the United States is entitled to summary judgment against them. In the alternative, the United States requests that the Court treat Plaintiffs' Response as a judicial admission that these plaintiffs have not raised bystander claims.[1]

## II.   THE CURNOWS DO NOT RAISE MATERIAL FACTS THAT SUBSTANTIATE THEIR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS CLAIMS.

Separately, Plaintiffs argue that the Curnows "are not making bystander claims; they are making direct personal injury claims because they experienced the terror and shooting contemporaneously as bullets were flying towards them and striking their home[.]" Resp. at 4. The response cites and attaches no evidence related to these allegations, but it is undisputed in the record that Fred and Kathleen Curnow did not receive any physical injuries as a result of the shooting. Because the Curnows were not physically injured in the shooting, they are only entitled to mental anguish damages if they if they can meet the test for a bystander under Texas law. And because they have produced no evidence that they were closely related to any of the victims, any bystander

---

[1] These plaintiffs include Kara Boyd; Elizabeth Braden; Benjamin Corrigan; Preston Corrigan; Martina Pachal; Jennifer Racey; Patsy McCain; Rebecca Metcalf; Christopher Johnson; Dennis Neil Johnson Jr.; Michael Johnson; James Graham; Deanna Staton; Kati Wall; Regina Amador; Colbey Workman; Guadalupe Rodriguez; Jose Rodriguez; Gary Wayne Ramsey; Ronald Craig Ramsey Jr.; Dalia Trevino Lookingbill; Charlene Uhl; and John Porter Holcombe, II, as next friend of minor P.J.H.; Fred Curnow; and Kathleen Curnow.

claims for mental anguish damages fail. Instead, their allegations amount to improper claims for negligent infliction of emotional distress.

Texas does not recognize a duty to avoid negligently inflicting emotional distress or mental anguish. *City of Tyler v. Likes*, 962 S.W.2d 489, 494–95 (Tex. 1997). "There are [very] few situations in which a claimant who is not **physically injured** by the defendant's breach of a duty may recover mental anguish damages." *Motor Express v. Rodriguez*, 925 S.W.2d 638, 639 (Tex. 1996) (per curiam) (emphasis added). This includes claims for bystander recovery, the intentional tort of child abduction, and defamation, among others. *Id.* The only one of these claims arguably implicated by the Curnows' complaint is one for bystander damages.[2] Thus, because the Curnows were not physically injured in the shooting, to recover mental anguish damages, they must show that they have viable bystander claims. *Id.* at 639.

Plaintiffs argue, it "matters not" that the Curnows were not physically harmed in the shooting. Resp. at 4. But in fact, it matters a great deal. Because they were not physically injured, the Curnows' "personal injury" claim amounts to a claim for negligent infliction of emotional distress.[3] Their summary judgment response clarifies that their claim is based on the "terror"—*i.e.*,

---

[2] Notably, mental anguish damages are also not available as result of damage to property, such as damages to the Curnows' home or vehicles. *See Likes*, 962 S.W.2d at 493–95.

[3] Plaintiffs' Response underscores these ambiguities in the plaintiffs' pleadings. Plaintiffs' assert that 26 of the plaintiffs are not making bystander claims for mental anguish damages—despite the fact that many of their complaints mirror that of Donna White, who was making a bystander claim. Plaintiffs further argue that the Curnows are making direct personal injury claims, although their damages are the same as plaintiffs who were not present at the church on the day of the shooting. The ambiguous nature of Plaintiffs' pleadings show the necessity of dispositive motions practice to clarify the issues for trial.

emotional distress—they experienced during the shooting, although they were not physically harmed. Texas law does not recognize such a claim. *See Likes*, 962 S.W.2d at 494–95.

Unlike other plaintiffs who were present in the church "but escaped bullet wounds," the Curnows did not have a "close relationship" with any of the victims—as stated in Fred Curnow's deposition, they did not have any friends or family in the church on the day of the shooting. *See* Fred Curnow Dep. 30:15–22, attached as Exhibit Z to Def.'s Partial Motion for Summary Judgment, ECF No. 254-1. Therefore, the Curnows cannot meet the test for a valid bystander claim. Moreover, they are not statutory wrongful death beneficiaries, and there are no allegations that they were physically injured in the shooting. Because their allegations, as clarified, amount to claims for negligent infliction of emotion distress, the United States is entitled to summary judgment against Fred and Kathleen Curnow on their "personal injury" claims. *See* Resp. at 4 (stating the Curnows are "making direct personal injury claims because they experienced the terror and shooting contemporaneously").

### III. KIP WORKMAN'S BYSTANDER CLAIMS FAIL BECAUSE THERE IS NO GENUINE DISPUTE THAT HE DID NOT CONTEMPORANEOUSLY EXPERIENCE THE SHOOTING AND WAS NOT AT OR NEAR THE SCENE.

Lastly, Plaintiffs argue that Kip Workman's bystander claim for mental anguish damages survives summary judgment because he "perceived the [shooting] through a call with his wife" "before either knew the shooting was over." Resp. at 6. Plaintiffs further argue that Kip Workman experienced the shooting when he arrived at the "still active" scene. Resp. at 8.

The evidence Plaintiffs attach in support of their response shows that Kip Workman was at home "five or six miles" away from the church when his wife called and told him that "somebody had shot up the church." Workman Dep. 91:9–14, attached to the Response as Exhibit 1. He

did not know whether or not Devin Kelley was still there, but he got in his truck and drove to the church. *Id.* 92:2–9, 93:10–94:4. When he arrived, police were also arriving on the scene. *Id.* 98:2–4, 99:6–17. Although he did not know it, Devin Kelley had already fled. *Id.* 101:11–15. The shooting had ended prior to his arrival. *See id.*

Based on these facts, it is undisputed that Kip Workman was not "at or near" the scene of the shooting when his wife called him to inform him of the shooting. He was "five or six" miles away. There is no evidence that he heard gunshots during the phone call or that the shooting was ongoing—indeed, the evidence shows that he did not know whether Devin Kelley was still present at the church during the phone call or when he arrived at the scene several minutes later. And while Kip Workman may not have known that Devin Kelley was no longer present at the church at the time he arrived, it is now undisputed that Devin Kelley had already departed by the time Kip Workman arrived.[4]

---

[4] At his deposition, Kip workman testified as follows:

> Q: Understood. And when you arrived at church, the shooter was gone?
>
> A: Well, I have no — we didn't see him. We didn't know where he was. We didn't really know exactly what was — at the time we didn't know what was going on.
>
> Q: When you entered the church, the shooter was gone?
>
> A: Supsequently I found out later, yes, that he was gone, but at the time we entered the church, we didn't know where he was or who he was.

Workman Dep. 101:5–15.

Although the elements of a bystander claim are "flexible and should be applied on a case-by-case basis, when the material facts are undisputed, as in this case, whether the plaintiff is entitled to recover as a bystander is a question of law." *Thornton v. Home Depot USA, Inc.*, No. A-04-CA-1039-AWA, 2006 WL 2022920, at *6–7 (W.D. Tex. July 17, 2006) (citing *United Services Auto. Ass'n v. Keith*, 970 S.W.2d 540, 542 (Tex. 1998)). Because the undisputed facts in the record show that Kip Workman did not have a sensory and contemporaneous experience of the shooting, and he was not at the scene while the shooting was taking place, he cannot satisfy the elements of a bystander claim, and the United States is entitled to summary judgment against him on this claim.

Plaintiffs cite *Thornton v. Home Depot* in attempt to overcome these defects in Kip Workman's bystander claim. In *Thornton*, a girl was riding the bus home from school when she observed a fire "in the vicinity of her home." 2006 WL 2022920, at *3. She was dropped off at the end of her street and "immediately ran toward her house." *Id.* "As she approached her house—which was still in flames—a police officer escorted her over to her father," who told her that "he was unable to rescue her twin sisters from the house." *Id.* The Court held that these facts gave rise to a viable bystander claim for mental anguish damages. *Id.* at *4–5. In reaching its decision, the Court observed that Texas law requires that a bystander observe "the actual injury-producing event." *Id.* at *5. In the context of a house fire, that means that a bystander must actually see the fire. *Id.* at *4–6.

Comparable facts do not exist in this case. Kip Workman did not "witness the [shooting] consuming [the church]," the way the girl in *Thornton* saw the fire consuming her home, with her sisters inside. *Id.* at *4. Rather, he witnessed the gruesome aftermath of the shooting, after Devin Kelley had fled the scene, and the shooting had ended.

7

These facts are more similar to that of the *Keith* case. In *Keith*, the Texas Supreme Court held that a mother could not recover as a bystander even though she "had arrived at the accident scene immediately after [a car] accident and observed the car still smoking, the tail light blinking and rescue operations underway, as well as hearing her daughter inside the wreckage making 'scary noises and crying out[.]'" *See Thornton*, 2006 WL 2022920, at *3 (citing *Keith*, 970 S.W.2d at 541). The mother's bystander claim failed because she "did not 'see or hear' the crash" and "the emotional impact she suffered did not result from a sensory and contemporaneous observance of the accident." *Id.* Rather, "the plaintiff merely experienced the aftermath of the accident." *Id.*

Like the plaintiff in *Keith*, Kip Workman did not "see or hear" the shooting. Instead, he experienced the "aftermath" of the shooting. The fact that he did not know whether the shooting was ongoing when he arrived at the scene shows that "the emotional impact [he] suffered did not result from a sensory and contemporaneous observance of the [shooting]." *See Thornton*, 2006 WL 2022920, at *3 (citing *Keith*, 970 S.W.2d at 542). Because his emotional impact resulted from his observance of the aftermath of the shooting, rather the shooting itself, his bystander claim fails. *See Keith*, 970 S.W.2d at 541.

Contrary to Plaintiffs' argument, this case is also distinguishable from the hypothetical situation the Court raised, in which a bystander witnesses a tragic event live during a video call. Here, Kip Workman received a phone call from his wife, who told him that "somebody had shot up the church." Workman Dep. 91:9–20. Plaintiffs have produced no evidence that Kip Workman saw the shooting taking place during a "live video chat call." *See* Order, ECF No. 233. And even if a regular phone call could satisfy the sensory and contemporaneous experience element of a

8

bystander claim, there is no evidence that the shooting was ongoing at the time of the phone call, or that Kip Workman experienced the shooting, such as by hearing shooting in the background.

Because Plaintiffs' evidence does not create a genuine dispute of material fact on the proximity and sensory/contemporaneous experience elements of Kip Workman's bystander claim, the United States is entitled to summary judgment against him.

## IV. CONCLUSION

The United States asks the Court to grant it summary judgment against each of the plaintiffs named in its Partial Motion for Summary Judgment on their bystander claims for mental anguish damages. Because there is no genuine dispute of material fact regarding these claims, summary judgment will assist the parties with narrowing and streamlining the issues for trial. The United States further seeks summary judgment on the Curnows' improper claims for negligent infliction of emotional distress.

Dated: September 18, 2020

Respectfully submitted,

JEFFREY BOSSERT CLARK
Acting Assistant Attorney General
Civil Division

JOHN F. BASH
United States Attorney

STEPHEN E. HANDLER
Senior Trial Counsel, Torts Branch
Civil Division

*/s/ Paul David Stern*
PAUL DAVID STERN
AUSTIN L. FURMAN
JOCELYN KRIEGER
DANIEL P. CHUNG
Trial Attorneys, Torts Branch
Civil Division, U.S. Department of Justice

**CERTIFICATE OF SERVICE**

I certify that on September 18, 2020, I electronically filed the foregoing with the clerk of court by using the CM/ECF system, and that all counsel of record have received notice and been served through that system.

>*/s/ Paul David Stern*
>PAUL DAVID STERN
>Trial Attorney, Torts Branch
>Civil Division
>United States Department of Justice
>Attorneys for Defendant
>UNITED STATES OF AMERICA