IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JOE HOLCOMBE, et. al, | § | NO. 5:18-CV-00555-XR |
| | § | (Consolidated cases) |
| Plaintiffs | § | |
| | § | |
| | § | |
| vs. | § | |
| | § | |
| UNITED STATES OF | § | |
| AMERICA, | § | |
| | § | |
| Defendant | § | |

**<u>DEFENDANT UNITED STATES' MOTION TO CONTINUE TRIAL</u>**

Defendant United States of America respectfully moves to continue the trial, which is currently scheduled to begin April 5, 2021, due to the COVID-19 pandemic. Given the current safety concerns associated with travel and public gatherings, it is simply too great of a risk to conduct an in-person trial in the immediate future. Safety protocols such as face coverings, handwashing, and maintaining social distancing are insufficient to mitigate the risks associated with a trial of this size and duration. Nor would conducting the trial remotely through videoconference serve as a feasible alternative. Attorneys and paralegals would still be required to gather in offices and conference rooms for several weeks to prepare exhibits and witness documents, practice witness examinations, and conduct other tasks necessary for trial preparation. Many of these tasks cannot be undertaken in a completely virtual environment. Moreover, technological and logistical issues, which have already pervaded this litigation, threaten to derail a remote trial. Addressing these difficult challenges well in advance of trial prevents a wait-and-see approach. Consequently, the United States respectfully requests that the Court continue the trial for six months, after which time the Court will have a greater sense of when this trial can be conducted in person in a safe and equitable manner.

## I.     BACKGROUND

This matter arises out of a mass shooting at the First Baptist Church of Sutherland Springs on November 5, 2017, when Devin Patrick Kelley killed 26 people and wounded 22 others. ECF No. 217 (Pls.' Am. Compl. ⁋ 3.44). The Court consolidated numerous cases filed by survivors and relatives of those killed under the above-styled matter. ECF Nos. 9, 17, 94, 95, 96, 97, 103, 162, 163, 173, 192. Within the consolidated case, there are currently 86 Plaintiffs, represented by 37 attorneys.

During the pendency of this litigation, the outbreak of the novel coronavirus began. On March 13, 2020, Orlando L. Garcia, Chief United States District Judge of the United States District Court for the Western District of Texas entered an Order Regarding Court Operations Under the Exigent Circumstances Created by the COVID-19 Pandemic to "protect the health and safety of the public." *See* Order Regarding Court Operations Under the Exigent Circumstances Created by the COVID-19 Pandemic (W.D. Tex. March 13, 2020). The Order and subsequent supplemental orders ("Orders") noted the "continued severity of the risk" to Court personnel, litigants, counsel, interpreters, law enforcement officials, and jurors and recognized the need to reduce the size of public gatherings and the need for travel. Chief Judge Garcia's Orders have continued civil and criminal bench trials, subject to certain divisions' ability to proceed with jury trials without compromising necessary health and safety concerns. The Orders specifically address the "reduced availability of attorneys and Court staff to be present in courtrooms because of public health considerations." The Orders further encouraged hearings and conferences to be held by telephone or video.

On May 14, 2020, the Court entered an Amended Scheduling Order in this matter, setting forth various discovery and motions deadlines, as well as setting a trial date of April 5, 2021. ECF No. 221. At that time, Chief Judge Garcia's Supplemental Order reflecting the same continuances and guidance remained effective. *See* Supplemental Order Regarding Court Operations Under the Exigent Circumstances Created by the COVID-19 Pandemic (W.D. Tex. April 15, 2020).

On January 7, 2021, Chief Judge Garcia entered a Twelfth Supplemental Order, which is currently in effect. The Order continues to reflect the same continuances and guidance that were

implemented many months prior for public health and safety.[1] For the reasons recognized within

Chief Judge Garcia's Orders, Defendant now respectfully requests a continuance of trial.

## II.    ARGUMENT

### A.    The Continued Severity of Risk for All Involved in the Upcoming Trial Requires a Continuation of the Original Setting.

"A motion for a continuance is addressed to the discretion of the trial court." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1193 (5th Cir. 1986); *see also United States v. Rounds*, 749 F.3d 326, 337 (5th Cir. 2014). "[I]n handling its calendar and determining when matters should be considered, the district court must consider not only the facts of the particular case but also all of the demands on counsel's time and the court's." *Streber v. Hunter*, 221 F.3d 701, 736 (5th Cir. 2000) (quoting *HC Gun & Knife Shows, Inc. v. City of Houston*, 201 F.3d 544, 549–50 (5th Cir. 2000)).

Defendant brings this instant motion in light of the continued severity of risk to court personnel, litigants, counsel, witnesses, and spectators, as well as the logistical infeasibility of conducting a remote or semi-remote trial of the magnitude required for this case. In the past ten months, beginning in March 2020, the pandemic has had a profound, nation-wide effect, changing the day-to-day operations of every aspect of our community. Relevant here is the ever-increasing risks associated with COVID-19 and gatherings of large groups, whether it be in the courtroom or

---

[1] The Texas Supreme Court has also issued a series of Orders during the pandemic "to avoid risk to the court, staff, parties, attorneys, jurors, and the public." *See* First Emergency Order Regarding the COVID-19 State of Disaster, Misc. Docket No. 20-007 (Tex. March 13, 2020). On January 14, 2021, the Court entered its Thirty-Third Emergency Order requiring courts to use reasonable efforts to conduct proceedings remotely and prohibits in-person proceedings contrary to previously issued guidance. *See* Thirty-Third Emergency Order Regarding the COVID-19 State of Disaster, Misc. Docket No. 21-9004 (Tex. Jan. 14, 2020). The Texas Supreme Court's most recent order does not expire until April 1, 2021.

in the parties' respective offices as they prepare for trial.

When this Court entered the Amended Scheduling Order on May 14, 2020, the local infection rate for the San Antonio, Texas area was relatively low and manageable by the local hospital systems. Specifically, a local news outlet reported there was a total of 2,041 COVID-19 cases, 59 related deaths, 65 people were hospitalized, 38 of which were in intensive care and 26 were on ventilators.[2] Now, the local pandemic climate is significantly more dire. As of January 11, 2021, the San Antonio area had a total of 152,231 COVID-19 cases, 1,822 total deaths, 1,507 patients in the hospital, 435 patients in intensive care, and 257 patients on ventilators.[3] The recent caseload has shown the highest single day report "the City has seen yet."[4] This upward trajectory of infection rates presents an unacceptable health risk for the large number of individuals involved in the upcoming trial, many of whom are elderly and have pre-existing health issues.[5] Also, as the Court is aware, there is a contingent of attorneys from Main Justice who have worked on the liability component of the case and would need to be present for an in-person trial. Traveling at this time presents many challenges, not the least of which is safely staying in hotels and finding safe places

---

[2] Coronavirus update San Antonio, May 14: Health Officials Discuss Numbers from New Walk-up Testing Sites, https://www.ksat.com/news/local/2020/05/15/coronavirus-update-san-antonio-may-14-health-officials-discuss-numbers-from-new-walk-up-testing-sites/ (last accessed Jan. 7, 2021).

[3] City of San Antonio Health Department Daily COVID-19 Summary https://covid19.sanantonio.gov/About-COVID-19/Dashboards-Data/ (last accessed Jan. 19, 2021).

[4] Texas Public Radio, https://www.tpr.org/san-antonio/covid-19-tracker. (last accessed Jan 11, 2021).

[5] The City of San Antonio Health Department rates the Hospital Trends, Average Case Rate, and Positivity Rate as "critical" and "worsening". *Id*.

to eat. Additionally, members of the trial team who reside in Washington, D.C. are required to self-quarantine upon returning home.[6]

In addition to the rising infection rates, the upcoming trial will present specific logistical challenges and risk due to the size, duration, and complexity of the case. With regard to size, Defendant notes that the number of individuals expected to be present in the courtroom for trial could easily exceed 150 people each day, without the inclusion of testifying experts or witnesses. At this time, there are 86 Plaintiffs, represented by 37 attorneys. When added to Defendant's counsel and staff, court staff, and members of the public, the total number of individuals present will easily exceed the courtroom capacity necessary for parties to practice safe social distancing.

The Center for Disease Control and Prevention (CDC) advises that the greatest risk of infection is between people who are physically near (within 6 feet) a person with COVID.[7] The disease can spread by airborne transmission and, less commonly, through contact with contaminated surfaces.[8] Generally, all individuals are advised to avoid crowded indoor spaces and ensure indoor spaces are properly ventilated by bringing in as much outdoor air as possible.[9] Simply stated, physical separation of at least six feet will not be practical within the courtroom due to the number of individuals whose presence will be required.

Even if the Court implemented measures to reduce the number of individuals in the courtrooms, such as capping the size of each Plaintiff's legal team and other support staff, or offering

---

[6]     https://coronavirus.dc.gov/sites/default/files/dc/sites/coronavirus/page_content/attachments/COVID-19_DC_Health_Guidance_for_Travel_2020.ll.07_FINAL.pdf

[7]   CDC, Prevent Getting Sick, http://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/how-covid-spreads.html (last accessed Jan. 7, 2021).

[8]   *Id.*

[9]   *Id.*

satellite courtrooms for overflow purposes, such efforts would not sufficiently limit the number of individuals who need to be physically present before the Court to fully mitigate the risk of community spread within the active trial courtroom. Defendant also notes that counsel, parties, and witnesses are geographically diverse. Out-of-state attorneys, parties, and witnesses will be utilizing many forms of travel, increasing their potential exposure and the chance of internal spread within the courtroom.

With regard to length of trial, the large number of parties and witnesses will likely stretch the trial out for many weeks and possibly months. Although the Court has narrowed some issues within its most recent summary judgment rulings, the liability portion of the trial will still likely take at least two weeks. And, it is expected that the damages aspect of the trial, related to 86 Plaintiffs, could far exceed the length of time needed to litigate liability issues. Defendant anticipates the damages portion to include testimony from every Plaintiff, numerous medical providers, and various experts for each Plaintiff. While the length of the trial is certainly a factor, having a number of counsel in the courtroom for even several hours presenting argument is a risk.

**B.      The Health Risks Associated With Preparing For Trial Augment In Favor Of Postponing The Trial.**

At this time, the Department of Justice is in a maximum telework posture. Many of the paralegals and attorneys from the Washington, D.C. office have not been to the office in months as a safety precaution. To be ready to proceed to trial in April, both the United States Attorney's Office in this district and the staff at Main Justice would be required to be in the office, working in close quarters to prepare for trial. While personnel would do their best to remain distant while doing so, trial preparation will require calling people back to the office and will necessitate working in close quarters. Many people in the Washington, D.C. metro area do not own cars and rely on taking public transportation to get to the office. This, of course, presents a risk and is one

of the reasons that many staff members have not been to the office in months. In addition, people

would have to be in shared conference room space while preparing exhibits, binders, and other

materials for trial. Defense counsel from the United States Attorneys' Office in this district share

similar concerns where support staff and AUSAs are returning from telework specifically for this

case, using shared spaces and preparing trial materials in person. Returning from a telework pos-

ture is particularly challenging in San Antonio where some schools are utilizing virtual class-

rooms, while others with potential in-person exposure have caused members of the defense team

and their families to quarantine during the past few weeks and months.

   **C.    CDC Guidelines Encourage Postponing Travel.**

   Given the large number of individuals involved with this trial, many will be required to

travel from other Texas counties and from out of state to attend. In light of the increasing COVID-

19 cases, hospitalizations, and deaths across the United States, the CDC advises that "travel can

increase your chance of spreading and getting COVID-19" and recommends "[p]ostponing travel

and staying home."[10]

   While the government is unaware of travel plans for Plaintiffs and their counsel, Defense

counsel will be exposed to risks associated with commercial air travel. With regard to air travel,

the CDC advises that "[a]ir travel requires spending time in security lines and airport terminals,

which can bring you in close contact with other people and frequently touched surfaces" and that

"social distancing is difficult on crowded flights, and sitting within 6 feet of others, sometimes for

hours, may increase your risk of getting COVID-19."[11] If the trial lasts several weeks, counsel

---

[10]   CDC, Travel During the COVID-19 Pandemic, http://www.cdc.gov/coronavirus/2019-ncov/travelers/travel-during-covidl9.html (last accessed January 7, 2021)

[11]   *Id.*

may need to travel multiple times between their home locality and the trial location.

As part of the Department of Justice's maximum teleworking protocol, attorneys and staff are discouraged from traveling. Government operations for travel arrangements and approvals for housing, transportation, and meals take significant time and resources. The approval processes are not conducive to quick changes. The logistics required for government planning to permit travel is problematic with the number of uncertainties related to trial in this matter, especially for the many unknown variables which could greatly impact the pace and timing of trial. Thus, requiring that travel arrangements be made at this point, given the very real possibility that they may have to be changed or cancelled at the last minute due to a change in the COVID-19 landscape, is problematic.

Moreover, several key witnesses and experts have already expressed serious concerns about the prospect of traveling during the pandemic. Counsel for the United States have begun contacting potential witnesses, including their experts who live in various parts of the country. Several individuals have noted their hesitation to travel to Texas without being vaccinated or a significant downturn in the infection rates. One expert has noted travel restrictions placed on him by his employer. Even preparing witnesses in-person has become an untenable endeavor.

**D.      Safety Protocols During Trial Will Not be Enough.**

Safety protocols such as face coverings, handwashing, and maintaining social distancing of at least six feet are insufficient to mitigate the risks associated with a trial of this size and duration. As discussed, the CDC advises that the greatest risk of infection is between people who are physically near (within 6 feet) a person with COVID.[12] With the presence of parties, counsel,

---

[12]  CDC,  Prevent  Getting  Sick,  http://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/how-covid-spreads.html

witnesses, and court staff, preventing the spread is virtually impossible, especially among asymptomatic carriers. Thus, despite strict compliance with safety protocols, there is a high likelihood of individuals involved in the trial and present in the courtroom becoming infected and impacting the ability of the trial to proceed. Should individuals involved with the trial become infected, the case may have to stop and be postponed, especially if counsel is unable to enter the courtroom and advocate for their client. This concern is not merely theoretical: Defense counsel has experienced these challenges during the pandemic. Recently, a member of the defense team was prohibited from entering the courthouse for a hearing because he had a temperature beyond 100.4. This situation is likely to be repeated based on the number of individuals involved in the trial. Luckily while that attorney did not have COVID-19, other members of the defensive trial team have been or are currently quarantined after testing positive for the virus. Periods of quarantine and illness will impact the Court's ability to proceed with trial. Defense counsel has already experienced delayed trial preparation for those infected and/or quarantined.[13]

In addition, given the potential exposure to all other individuals involved, those who were exposed to infected individuals would also be required to self-quarantine, foreclosing the opportunity to proceed with trial. Such exposure may occur within the courtroom or within the home environment from family members. Pausing the trial for appropriate quarantine periods would be taxing on the court's calendar and costly to the parties.

With ever-increasing COVID-19 cases, the risks associated with large gatherings are far too great to commence trial on April 5, 2021. Indeed, a trial of this magnitude, with geographically

---

[13] Defense counsel has experienced quarantine periods arising not only from personally testing positive for the virus, but also from family members' COVID exposure at work and school. Notably, Defense counsel's children have been repeatedly placed in mandatory quarantine following exposure to COVID positive individuals within the classroom.

diverse Plaintiffs, attorneys, and witnesses, only exacerbates the concerns underscoring Chief Judge Garcia's Orders. The severe risk of infection to any trial participant or court personnel is too great within the current pandemic climate.

### E. This Case Is Not Appropriate To Be Tried Remotely.

While some civil trials may be able to be conducting remotely through videoconference, a case of this magnitude is not one of them.  As an initial matter, even a remote trial could lead to COVID exposure. Attorneys and support staff from both Main Justice and the United States Attorneys' Office will be required to congregate in conference rooms both for trial preparation and the trial itself. Given the number of attorneys who have worked on this case, the number of exhibits and potential witnesses to prepare, it is simply unreasonable to anticipate that each member of the Defense team will work individually from home throughout trial preparation and the trial. And, as noted above, many witnesses may be unable to connect to the Court at home and therefore will need to go to their attorneys' offices or Government buildings to testify. The significant risk is not sufficiently mitigated by a remote trial.

While the safety risks alone are a sufficient reason not to conduct the trial remotely, two additional reasons weigh against a remote trial. First, conducting the entire trial, or even significant portions, via videoconference would substantially impair the Government's ability to present its defense. "At trial, the witnesses' testimony must be taken in open court unless a federal statute, the Federal Rules of Evidence, these rules, or other rules adopted by the Supreme Court provide otherwise." Fed. R. Civ. P. 43(a); *see also* Rule 77(b) (requiring trial on the merits to be held in open court). The Court may only permit trial testimony "by contemporaneous transmission from a different location" upon "good cause in compelling circumstances with appropriate safeguards . . . ." *Id.*

While Plaintiffs will undoubtedly argue that the pandemic constitutes "compelling circum-stances," the advisory notes to Rule 43 underscore the strong preference for live testimony, particularly in cases where credibility determinations are central: "The importance of presenting live testimony in court cannot be forgotten. The very ceremony of trial and the presence of the fact-finder may exert a powerful force for truthtelling. The opportunity to judge the demeanor of a witness face-to-face is accorded great value in our tradition. Transmission cannot be justified merely by showing that it is inconvenient for the witness to attend the trial." Rule 43 Advisory Notes 1996 Amendment; *see also id*. ("The court . . . can insist on live testimony. Rejection of the parties' agreement will be influenced, among other factors, by the apparent importance of the testimony in the full context of the trial.").

Here, live testimony is imperative for the Court to adjudicate the merits of the case. In ruling on the parties' summary judgment motions, the Court noted that "Kelley's ability to obtain firearms from sources outside of FFLs is at the heart of this factual dispute and, in many ways, at the heart of this litigation." ECF No. 318 at 26. Resolving that issue "will require the factfinder to weigh the evidence and make credibility determinations." *Id*. Indeed, the Court has recognized that, with respect to proximate causation, "[c]ounterfactuals abound." *Id*. at 32.

Assessing the credibility of those who were closest to Devin Kelley, particularly as they discuss personal and intimate matters, necessitates in-person testimony. These issues may include physical and sexual abuse and violence. As this case may turn on the perceived credibility of such testimony, the United States respectfully requests the opportunity to cross examine these witnesses face-to-face. The government was deprived of the ability to depose these witnesses in-person; it should at least be allowed the opportunity to examine them in-person at trial.

Assessing credibility through a video screen is challenging under any circumstances. Compounding that issue, some deponents, such as the shooters' parents, were physically at their attorneys' offices during their depositions and wore masks throughout their remote depositions. Many witnesses may be required to go to their attorneys' offices or government buildings to ensure that they have sufficient technological capacity to testify. This increases the risk of exposure to COVID, and if witnesses attempt to limit their risks by wearing masks, it will make the credibility determination much more difficult.

Second, the logistical and technological complications surrounding a case of this size make it impractical. Government firewalls and security result in poor internet connections and have proven unwieldy with audio and video delays during virtual testimony at recent trials and depositions. Since the pandemic began, proceedings that have been conducted through Zoom or WebEx have experienced significant disruptions and difficulties, including attorneys struggling to share exhibits effectively, unstable connections being dropped, distorted audio and video, and an overall inability to effectively stop testimony when an objection is made. These problems arise from audio and video delays, much of which results from government computers utilizing Court WIFI and slower hotspot connections. Government virtual private networks (VPNs) drastically hinder the already slow connection speed causing audio and video lag. In consulting with IT personnel, it is evident that there is no way to turn off or bypass the VPN security measures to combat these enumerated challenges.

The Court has already seen examples of technical difficulties during hearings in this case. In several instances, counsel for the United States have been unable to make a video connection with the Court and have had to make arguments by telephone only. It has not been uncommon for audio transmission to be interrupted, or screens frozen. For example, at a hearing on April 14,

2020, Plaintiffs' counsel's argument was lost for several moments. Transcript 4/14/20 at 22:24–23:3 ("And obviously (inaudible) arguments with those documents in some fashion or  In the most recent hearing, form at the trial.  THE COURT: Mr. Alsaffar, we lost you on the last two or three lines."). At a more recent hearing on October 21, there were multiple connectivity issues, involving both United States' counsel and the Court. Transcript 10/21/20 at 31:6–8 ("we did not view any filings as a waiver of attorney work product, and so (audio transmission gap) we hope there is no issue with respect to the -- (screen frozen)."), 31:22–23 ("Hopefully this is just a temporary bump in the road that we will overcome here hopefully -- (screen frozen.)").

Nor have virtual depositions always been smooth. In one deposition, counsel for the United States had such serious difficulties that another attorney was required to take over the deposition. In another, a video exhibit was unable to be played for the witness. For security reasons, the Government is required to connect to virtual platforms via special connections that often result in connectivity issues. This problem will be exacerbated if this case were to be tried virtually, as the technology protocol used by Main Justice and the United States Attorney's Office different.

With numerous connections to the virtual platform, even more connectivity challenges arise. Timely objections and rulings will likely prove even more difficult than they have been in past proceedings. These issues will also prevent the creation of a clean record, both for the Court's use in making its decision, and for appeal.

A case of this magnitude and importance should be tried in an efficient and effective manner, without interference resulting from technological limitations.

**F.      A Hybrid of In-Person and Remote Trial Is Not Feasible.**

For all of the points previously made, proceeding in April with some combination of in-person and virtual trial proceedings is not feasible. Doing so in no way reduces the risk presented

to all involved in preparing for trial while the areas in which counsel and staff involved live experience increases in the number of COVID-19 cases being reported. In addition, requiring personnel from Main Justice to travel to Texas for any portion of the trial presents risks. Also, if the Court were to hold in-person proceedings for key aspects of the case, such as opening statements and closing arguments, lead counsel from Main Justice would still need to self-quarantine upon returning to Washington, D.C. This would result in a delay in trial proceedings until they could return to the office to proceed with a virtual aspect of the trial. The same would be true if examination of key liability witnesses was conducted in person. It is not practicable for lead counsel from Main Justice to remain in Texas for the pendency of the trial in order to appear in person periodically during the trial. In addition to the problems and health risks such a long-term stay in a hotel presents, counsel would unfairly be separated from team members who remain in Washington, D.C. That would make continuing to prepare for trial and make adjustments to trial strategy difficult.

### G.    Defendant Submits This Motion for Good Cause.

Defendant recognizes that a trial continuance is within the discretion of the Court and that the Court must consider its calendar and the demands on the Court and counsels' time. *See Streber*, 221 F.3d at 736  (quoting *HC Gun & Knife Shows, Inc.*, 201 F.3d at 549–50). Defendant respectfully requests this continuance based on the risks presented by the COVID-19 pandemic.

This motion is not brought for purposes of delay or to prejudice Plaintiffs. Throughout the past months, the parties have diligently scheduled and conducted depositions, issued subpoenas for outstanding medical records, and exchanged expert reports.[14] In addition, Defendant has issued

---

[14] Defendant reminds the Court that new Plaintiffs served Defendant with additional claims brought by entirely new Plaintiffs in October 2020 and Defendant only answered on December

hundreds of subpoenas and even now continues with scheduling and taking the remaining witness depositions. A continuance of trial will not halt the parties' trial preparations. Unlike criminal trials or civil matters concerning injunctive and emergency relief, there is no urgent need for an expedited trial. The Court has previously noted that many of the Plaintiffs are elderly, causing it concern with the scheduling of this case; however, the Court must consider that age also renders them especially vulnerable to severe illness associated with COVID-19, whether they appear in the courtroom or go to their attorneys' offices. A continuance will serve the best interests of all individuals involved through mitigating the risk of large group gatherings in a limited space, while acknowledging the limitations of a remote trial.

### H.    Extension of Scheduling Order

To the extent the Court finds Rule 16(b)(4) applicable to this instant Motion for Continuance, modifying the Amended Scheduling Order should be permitted for the reasons discussed. Under Federal Rule of Civil Procedure 16(b)(4), "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(d)(4). "[C]ourts consider four factors in determining whether to allow a scheduling modification for good cause under Rule 16(d)(4): (1) explanation for the failure [to meet the deadline]; (2) importance of the amendment, (3) the potential prejudice in allowing the amendment, and (4) the availability of a continue to cure such prejudice." *Leza v. City of Laredo*, 496 F. App'x 375, 376 (5th Cir. 2012) (citing *Reliance Ins. Co. v. Louisana Land & Exploration Co.*, 110 F.3d 253, 257 (5th Cir. 1997)). "The good cause standard

---

21, 2020. ECF No. 313; ECF Nos. 1, 4 in Case No. 5:20-cv-00991. The new claims require additional discovery and substantial effort under the current timeline to ensure the case may be timely prepared for trial. Moreover, the parties have agreed to suspend certain invasive discovery related to Plaintiffs whose claims may be entirely dismissed by Defendant's pending Motion for Partial Summary Judgment as to Bystander Claims. ECF No. 254.

requires the 'party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension." *S&W Enterprises, L.L.C. v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 535 (5th Cir. 2003) (quoting 6A Charles Alan Wright *et al*., Federal Practice and Procedure § 1522.1 (2d ed. 1990)).

Here, Defendant seeks a scheduling order modification based upon the risks associated with the number of people who would be present for trial and the demonstrated difficulty of using a virtual platform when two different government offices are involved. The trial date cannot be reasonably met, regardless of the parties' diligence, where social distancing cannot be assured, and virtual appearances are not logistically feasible.

## III.    CONCLUSION

For the foregoing reasons, Defendant requests that the Court grant the motion and enter an order continuing the trial for a period of not less than six months to allow time for the Country's infection rate to subside with lower transmission rates and increased vaccinations.

Respectfully submitted,

BRIAN BOYNTON
Acting Assistant Attorney General
Civil Division

GREGG N. SOFER
United States Attorney

*/s/ Paul David Stern*
PAUL DAVID STERN
Trial Attorney, Torts Branch
Civil Division
United States Department of Justice
UNITED STATES OF AMERICA

*Defendant's Opposed Motion to Continue Trial*                                                    *17*

## CERTIFICATE OF CONFERENCE

I do hereby certify that I spoke with Plaintiffs' counsel to confer regarding this motion on January 19, 2021. Plaintiffs stated their opposition to the same.

*/s/ Paul David Stern*
PAUL DAVID STERN
Trial Attorney, Torts Branch
Civil Division
United States Department of Justice
Attorneys for Defendant
UNITED STATES OF AMERICA

## CERTIFICATE OF SERVICE

I do hereby certify that on January 21, 2021, I electronically filed the foregoing with the clerk of court by using the CM/ECF system, and that all counsel of record have received notice and been served though that system.

*/s/ Paul David Stern*
PAUL DAVID STERN
Trial Attorney, Torts Branch
Civil Division
United States Department of Justice
Attorneys for Defendant
UNITED STATES OF AMERICA