IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JOE HOLCOMBE *et al.*, | § § § § § | |
| *Plaintiffs,* | § § | |
| v. | § § | Civil Action No.  SA-18-CV-555-XR |
| UNITED STATES OF AMERICA, | § § | *Consolidated Cases* |
| *Defendant*. | § § § | |

## ORDER

On this date, the Court considered the Government's motion for partial summary judgment (docket no. 254), Plaintiffs' response (docket no. 263), and the Government's reply (docket no. 272). After careful consideration, the Court issues the following order.

## BACKGROUND

These consolidated cases stem from the mass shooting at the First Baptist Church in Sutherland Springs, Texas on November 5, 2017. The shooter, Devin Patrick Kelley ("Kelley"), entered the church and opened fire, killing 26 people and wounding 22 more. After fleeing the scene, Kelley later died from a self-inflicted gunshot wound.

Kelley committed the shooting using firearms he purchased from federal firearms licensees after clearing the required background check through the National Instant Criminal Background Check System ("NICS") administered by the FBI. Kelley should not have passed the NICS background check, however, because he had been convicted of a crime that disqualified him from purchasing firearms.

While serving in the U.S. Air Force ("USAF"), Kelley pleaded guilty to a crime of domestic violence for assaulting his then-wife, Tessa Kelley, and stepson during General Court-Martial

proceedings in November 2012. Despite U.S. Department of Defense ("DoD") and USAF instructions and policies that required the USAF to collect and submit Kelley's fingerprints and final disposition report of conviction to the FBI, the USAF failed to do so. ECF No. 149. Consequently, Kelley's fingerprints and conviction were not in the FBI's NICS at any time before the shooting on November 5, 2017. *Id.*

Plaintiffs are survivors of the shooting and relatives of those injured or killed. They seek recovery against Defendant United States ("the Government") under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671–2680, for its negligent failure to collect, handle, and report required information about Kelley that would have prevented him from purchasing the firearms used in the shooting. Plaintiffs bring claims for negligent undertaking and negligent supervision.[1]

In its motion for partial summary judgment, the Government seeks to dispose of "improper bystander claims for mental anguish damages" by 27 Plaintiffs[2] who were not "at or near the scene of the shooting, did not have a contemporaneous and sensory observation of the shooting, and/or [were] not closely related to a victim." Docket no. 254 at 1. Plaintiffs assert that, with respect to 26 of these claims, "[t]he Government confused recoverable mental anguish damages from wrongful death and personal injuries with bystander claims." Docket no. 263 at 1.

Indeed, it is undisputed that only one of the Plaintiffs identified in the Government's motion, Mr. Kip Workman, specifically asserted a cause of action for bystander injuries in his complaint. Docket no. 1 at 4, *Workman v. United States*, No. 5:19-cv-953. Still, the Government

---

[1] The Court previously dismissed Plaintiffs' claims of negligence *per se* and negligent training. *See* ECF No. 59 at 29–33; ECF No. 318 at 50–53.

[2] Kara Boyd, Elizabeth Braden, Benjamin Corrigan, Preston Corrigan, Fred Curnow, Kathleen Curnow, Martina Pachal, Jennifer Racey, Patsy McCain, Rebecca Metcalf, Christopher Johnson, Dennis Neil Johnson Jr., Michael Johnson, James Graham, Deanna Staton, Kati Wall, Regina Amador, Colbey Workman, Kip Workman, Guadalupe Rodriguez, Jose Rodriguez, Gary Wayne Ramsey, Ronald Craig Ramsey Jr., Dalia Trevino Lookingbill, Chancie McMahan, Charlene Uhl, and John Porter Holcombe, II, as next friend of minor P.J.H. Docket no. 254 at 2–3 n.1.

contends that, given the all-encompassing nature of the claims for damages in the other 26 complaints, which generally seek "'recovery of **all damages** to [which] they are entitled to recover pursuant to state and federal law including … [p]ast and future mental anguish,'" that it remains necessary to dispose of bystander claims for mental anguish through summary judgment." Docket no. 272 at 1–2 (quoting Braden Compl. ¶ 7.14(b) and noting that neither the Braden Complaint, nor any of the "similarly drafted" complaints of other Plaintiffs, limits damages "to those recoverable under a wrongful death, personal injury, or a loss of consortium claim, as opposed to a bystander claim for mental anguish" *Id.*).

The Government also specifically challenges the claims for mental anguish damages asserted by Plaintiffs Fred Curnow, Kathleen Curnow, and Kip Workman. The Government contends that Plaintiffs Fred and Kathleen Curnow have failed to state a claim—bystander or otherwise—under which any mental anguish damages are recoverable. Finally, the Government argues that Kip Workman cannot recover mental anguish damages as a bystander because he was not at or near the scene at the time of the shooting and did not have a sensory and contemporaneous experience of the shooting as required under Texas law.

## DISCUSSION

### I.   Legal Standards

The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56. To establish that there is no genuine issue as to any material fact, the movant must either submit evidence that negates the existence of some material element of the non-moving party's claim or defense, or, if the crucial issue is one for which the non-moving party will bear the burden of proof at trial, merely point out that the evidence in the record is insufficient to support

an essential element of the non-movant's claim or defense. *Little v. Liquid Air Corp.*, 952 F.2d 841, 847 (5th Cir. 1992), *on reh'g en banc*, 37 F.3d 1069 (5th Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

Once the movant carries its initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate. *See Fields v. City of S. Hous.*, 922 F.2d 1183, 1187 (5th Cir. 1991). Any "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment," *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003), and neither will "only a scintilla of evidence" meet the nonmovant's burden. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*). Rather, the nonmovant must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). The Court will not assume "in the absence of any proof . . . that the nonmoving party could or would prove the necessary facts" and will grant summary judgment "in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little*, 37 F.3d at 1075.

For a court to conclude that there are no genuine issues of material fact, the court must be satisfied that no reasonable trier of fact could have found for the nonmovant, or, in other words, that the evidence favoring the nonmovant is insufficient to enable a reasonable jury to return a verdict for the nonmovant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In making this determination, the court should review all the evidence in the record, giving credence to the evidence favoring the nonmovant as well as the "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000). The Court "may

not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment, *id.* at 150, and must review all facts in the light most favorable to the nonmoving party. *First Colony Life Ins. Co. v. Sanford*, 555 F.3d 177, 181 (5th Cir. 2009).

**II.    Analysis**

"Texas does not recognize a general legal duty to avoid negligently inflicting mental anguish." *City of Tyler v. Likes*, 962 S.W.2d 489, 494 (Tex. 1997). There are, though, recognized categories of cases that allow recovery for mental anguish. *Id.* at 495. "Without intent or malice on the defendant's part, serious bodily injury to the plaintiff, or a special relationship between" the plaintiff and the defendant, Texas courts permit recovery for mental anguish in "cases involving injuries of such a shocking and disturbing nature that mental anguish is a highly foreseeable result." *Id.* These cases include suits for wrongful death and actions by bystanders for a close family member's serious injury. *Id.*

In Texas, courts consider three factors in determining whether a plaintiff may recover emotional distress damages as a bystander:

> (1) Whether the plaintiff was located *near the scene of the accident* as contrasted with one who was a distance away from it;
>
> (2) Whether the shock resulted from a direct emotional impact upon plaintiff from *the sensory and contemporaneous observance of the accident*, as contrasted with learning of the accident from others after its occurrence; and
>
> (3) Whether *the plaintiff and the victim were closely related*, as contrasted with an absence of any relationship or the presence of only a distant relationship.

*Boyles v. Kerr*, 855 S.W.2d 593, 597 (Tex. 1993) (emphasis added); *Freeman v. City of Pasadena*, 744 S.W.2d 923 (Tex. 1988). The Government argues that the 27 Plaintiffs named in its motion for partial summary judgment cannot satisfy the elements of a bystander claim and thus are not entitled to recover mental anguish damages as bystanders.

5

### A. Wrongful Death and Loss of Consortium Claims

The Court agrees with Plaintiffs that "[i]t stands to reason that summary judgment can only be granted on a claim that was actually made." Docket no. 263 at 1. Because Plaintiffs acknowledge that "26 of the 27 alleged bystander claims . . . do not exist," summary judgment is not the proper mechanism for addressing the Government's confusion about the scope of Plaintiffs' claims for mental anguish damages. *Id.*

Though summary judgment is inappropriate here, the Court will treat the clarifications in Plaintiffs' response as judicial admission that these 26 Plaintiffs[3] have not raised bystander claims for mental anguish damages. A judicial admission is a "formal concession in the pleadings or stipulations by a party or counsel that is binding on a party making them." *Martinez v. Balley's La., Inc.*, 244 F.3d 474, 476 (5th Cir. 2001). Pragmatically, a judicial admission "has the effect of withdrawing a fact from contention." *Martinez*, 244 F.3d at 476. Thus, the purported admission "must be made intentionally as a waiver, releasing the opponent from proof of fact." *United States v. Chavez-Hernandez*, 671 F.3d 494, 501 (5th Cir. 2012). The decision to treat a prior statement as a judicial admission "is within the court's discretion." *GlobeRanger Corp. v. Software AG*, 27 F. Supp. 3d 723, 744 (N.D. Tex. 2014).

The Court finds that the statements in Plaintiffs' response operate as a judicial admission that these 26 Plaintiffs do not seek to recover mental anguish damages as bystanders. However, Plaintiffs specifically reserve their right to seek any and all mental anguish damages that are recoverable under the causes of action that Plaintiffs have actually alleged in their complaints,

---

[3] Kara Boyd, Elizabeth Braden, Benjamin Corrigan, Preston Corrigan, Fred Curnow, Kathleen Curnow, Martina Pachal, Jennifer Racey, Patsy McCain, Rebecca Metcalf, Christopher Johnson, Dennis Neil Johnson Jr., Michael Johnson, James Graham, Deanna Staton, Kati Wall, Regina Amador, Colbey Workman, Guadalupe Rodriguez, Jose Rodriguez, Gary Wayne Ramsey, Ronald Craig Ramsey Jr., Dalia Trevino Lookingbill, Chancie McMahan, Charlene Uhl, and John Porter Holcombe, II, as next friend of minor P.J.H. Docket no. 263 at 2.

including wrongful death, personal injury, and loss of consortium. Docket no. 263 at 2. Accordingly, the Government's motion for summary judgment as to any claims for mental anguish damages by these 26 Plaintiffs in their capacity as bystanders is denied as moot.

### B. Personal Injury Claims of Fred and Kathleen Curnow

In light of Plaintiffs' admission that Fred and Kathleen Curnow are not seeking to recover mental anguish damages as bystanders, the Government asks the Court to dispose of their claims for mental anguish damages because they have failed to allege a cause of action under which mental anguish damages are recoverable.

The Curnows live directly across the street from the First Baptist Church and were at home on the morning of the shooting.[4] Docket no. 1 ¶ 7.2. *Curnow v. United States*, No. 5:19-cv-805. It is undisputed that they did not suffer any physical injuries, but their home and vehicle were "riddled with bullet holes." *Id.* Though several victims were brought from the church and left on their porch, the Curnows did not personally know anyone in attendance at the church on the day of the shooting. *Id.*; Docket no. 254, Ex. Z, Fred Curnow Dep. at 30:20–22. It follows that they were not closely related to any of the victims and thus cannot recover mental anguish damages as bystanders. Plaintiffs admit as much in their response to the Government's motion, but assert that the Curnows are "are making direct personal injury claims because they experienced the terror and shooting contemporaneously as bullets were flying towards them and striking their home and vehicles just as those inside the church were being shot at by Devin Kelley." Docket no. 263 at 4. "That they escaped actual bullet wounds," they argue, "matters not." *Id.* The Court disagrees.

---

[4] The Curnows' complaint fails to allege that Fred Curnow was home during the shooting and nothing in the limited evidence provided in support of the summary judgment briefing suggests that he witnessed the shooting. However, Plaintiffs assert in their response that both Fred and Kathleen Curnow "experienced the terror and shooting contemporaneously as bullets were flying towards them and striking their home[.]" Docket no. 263 at 4. Given the Government's failure to raise this argument and the Court's duty to construe

The Curnows are not entitled to mental anguish damages based on the damage to their property. *Likes*, 962 S.W.2d at 494. In *Likes*, the Supreme Court of Texas considered whether a homeowner could recover mental anguish damages resulting from flood damage to her home and personal property allegedly caused by the city's negligent construction and maintenance of a drainage channel. *Id.* at 492. Although the court did not "attempt the perhaps impossible task of distilling a unified theory of mental anguish from the existing precedents," it did "erect a framework of existing case law to assist in examining the claim before [it]":

> Without intent or malice on the defendant's part, serious bodily injury to the plaintiff, or a special relationship between the two parties, we permit recovery for mental anguish in only a few types of cases involving injuries of such a shocking and disturbing nature that mental anguish is a highly foreseeable result. These include suits for wrongful death, and actions by bystanders for a close family member's serious injury.

*Id.* at 496–97 (citations omitted). The court ultimately concluded that "mental anguish based solely on negligent property damage is not compensable as a matter of law," reasoning that, rather than provide an independent basis for damages, a property owner's feelings could help determine the subjective value of the lost property. *Id.*

Though *Likes* was primarily concerned with damage to property with sentimental value, the court in *Fitzpatrick v. Copeland* applied the *Likes* framework to a case involving mental anguish resulting from a car accident. 80 S.W.3d 297 (Tex. App.—Ft. Worth 2002, pet. denied). In *Copeland*, the plaintiff was involved in a car accident in which her best friend, the driver, was killed but she, the passenger, suffered no physical injury. *Id.* at 299. After the accident, she began to experience flashbacks of the event, uncontrollable crying, debilitating mood swings, sleep

---

the evidence in the light most favorable to the non-moving party, the Court will assume for the purpose of this order that Fred Curnow, like his wife, witnessed the shooting from his home.

8

deprivation, difficulty concentrating, intense grief, guilt, depression, and anxiety. *Id.* Her symptoms of post-traumatic stress disorder ("PTSD") "relate[d] to her having come so close to serious injury or fatality when the [defendant's] truck tire came through the windshield." *Id.* The court found that the plaintiff's case "clearly falls outside the types of cases in which mental anguish has been held compensable under Texas law" and "decline[d] to adopt a special rule allowing recovery of negligent infliction of mental anguish damages where a plaintiff is involved in a motor vehicle accident but suffered no physical injury." *Id.* at 305–06.

Despite the "case-by-case development of the law in this area," other courts have applied the *Likes* framework to preclude recovery of mental anguish damages based on PTSD symptoms alone. *See, e.g.*, *Verinakis v. Med. Profiles, Inc.*, 987 S.W.2d 90, 95 (Tex. App.—Houston [14th Dist.] 1998, pet. denied) (plaintiff who "had sweating spells connected with anxiety, was depressed and withdrawn, suffered from insomnia, and contemplated suicide" after falsely testing positive for HIV could not recover mental anguish damages from the laboratory that performed the negligent blood test because his complaints failed to "rise to the level of serious bodily injury necessary to support the recovery of mental anguish damages as contemplated in *Likes*"); *see also Dekelaita v. BP Amoco Chem. Co.*, No. G-07-0131, 2008 WL 2964376, at *1 (S.D. Tex. July 30, 2008) (oil company employee who witnessed explosion at refinery could not recover teeth grinding and sleeplessness in negligence action against employer because his symptoms failed to rise to the level of "serious" bodily injury required for mental anguish damages); *Aguilar v. United States*, No. 1:16-cv-048, 2017 WL 6034652, at *3 (S.D. Tex. June 7, 2017) (plaintiff confined in an unlit, unfurnished, unheated holding cell with approximately 50 other women for one week could not recover mental anguish damages related to her PTSD symptoms because the pain she suffered due to "prolonged exposure to extremely cold temperatures, sleep deprivation, hunger, [and] stomach

9

aches," were "at best, *de minimus* injuries" and "PTSD falls within a definition of mental anguish, not physical injury"). The court's approach to mental anguish damages in *Copeland* was not novel or unique. Indeed, "[i]t has been established for over a century that '[a] person who is placed in peril by the negligence of another, but who escapes without injury, may not recover damages simply because he has been placed in a perilous position. Nor is mere fright the subject of damages.'" *Likes*, 962 S.W.2d at 500 (quoting *Gulf, C. & S.F. Ry. Co. v. Trott*, 25 S.W. 419, 420 (Tex. 1894) and citing Restatement (Second) of Torts § 436A (1965)).

Plaintiffs assert that the Curnows are entitled to recover mental anguish damages because "Texas has authorized recovery of mental anguish damages in virtually all personal injury actions." Docket no. 263 at 4 (citing *Krishnan v. Sepulveda*, 916 S.W.2d 478, 481 (Tex. 1995) (collecting cases)). But this argument simply begs the question. Indeed, each of the cases on which the *Krishnan* court relied for this proposition involved claims for personal injury and wrongful death,[5] the very kinds of cases in which "mental anguish has traditionally been compensable under Texas or prevailing American law." *Likes*, 962 S.W.2d at 496. The Curnows do not allege that they stand in some special relationship with the Government, nor do they assert wrongful death or bystander claims. Because the Curnows have likewise failed to allege that they have suffered any serious bodily injuries as a result of the shooting, to allow them to recover mental anguish damages based on their experience of the "terror" during the shooting would be tantamount to recognizing an independent claim for mental anguish.

---

[5] *See Coates v. Whittington*, 758 S.W.2d 749 (Tex. 1988) (bodily injury); *Harris Cnty. Hosp. Dist. v. Estrada*, 872 S.W.2d 759 (Tex. App.—Houston [1st Dist.] 1993, writ denied) (wrongful death); *Baylor Med. Plaza Servs. Corp. v. Kidd*, 834 S.W.2d 69 (Tex. App.—Texarkana 1992, writ denied) (bodily injury); *Hammond v. Estate of Rimmer*, 643 S.W.2d 222 (Tex. App.—Eastland 1982, writ ref'd n.r.e.) (bodily injury); *Dupree v. Blackmon*, 481 S.W.2d 216 (Tex. Civ. App.—Beaumont 1972, writ ref'd n.r.e.) (bodily injury); *Hicks v. Ricardo*, 834 S.W.2d 587 (Tex. App.—Houston [1st Dist.] 1992, no writ) (physical disfigurement); *McAllen Coca Cola Bottling Co., Inc. v. Alvarez*, 581 S.W.2d 201 (Tex. Civ. App.—Corpus Christi 1979, no writ) (physical illness).

The Court does not doubt that Mr. and Mrs. Curnow have suffered mental anguish as a result of the shooting, or that their mental anguish is a real and serious harm. *See Likes*, 962 S.W.2d at 494. But "[f]or many breaches of legal duties, even tortious ones, the law affords no right to recover for resulting mental anguish." *Id.* Though the Curnows may recover for damage to their property caused by the shooting, the Court concludes that Plaintiffs have failed to establish a genuine issue of material of fact as to whether the Curnows can recover mental anguish damages. Accordingly, their claims for mental anguish damages fail as a matter of law.

### C. Bystander Injury Claim of Kip Workman

The only Plaintiff identified in the Government's motion who actually asserted a bystander injury in his complaint is Mr. Kip Workman. Docket no. 1 at 4, *Workman v. United States*, No. 5:19-cv-953. The Government argues that Mr. Workman cannot satisfy either of the first two elements of a bystander claim because he was not at or near the scene of the shooting when it occurred and because he did not have a sensory and contemporaneous experience of the shooting. Docket no. 272 at 7. Plaintiffs argue that Mr. Workman's bystander claim should survive summary judgment because he "perceived the [shooting] through a call with his wife" "before either knew the shooting was over." Docket no. 263 at 6.

It is undisputed that Mr. Workman was in his home, which is five or six miles away from First Baptist Church, when he learned about the shooting. Docket no. 263, Ex. 1, Kip Workman Dep. 91:12–15. He received a call from his wife, Julie, who told him that "somebody had shot up the church," that one of his sons, Kris, had been shot, and that he "needed to get down there." *Id.* 91:16–20, 92:15–16. Mr. Workman testified that the phone call with his wife lasted between 30 and 45 seconds—"just long enough for her to tell me what happened." *Id.* 91:22–92:14. Mr. Workman immediately got into his truck and drove to the church. *Id*. 92:13–14. He arrived at the

11

church at the same time as the police officers called to the scene, and they walked into the building together. *Id.* 92:13–15, 99:6–20. Mr. Workman testified that, as he and the officers entered the church, they were "under the impression . . . that it was still going on." *Id.* 104:2–3. However, "once [they] got in, . . . everyone kind of assessed that the danger was over," and he turned his focus to finding his family. *Id.* 104:24–105:2. After Mr. Workman had checked on Kris and confirmed that he appeared to be in stable condition, his wife asked him to find their other son, Kyle, who Julie believed had been shot before running out of the building. *Id.* 102:2–9.

Testimony from Kyle Workman indicates that his father did not arrive at the church until Kelley had already fled the scene. Kyle Workman managed to escape through the back door of the church just as his brother, Kris, was shot. Docket no. 263, Ex. 2, Kyle Workman Dep. 50:12–15. He ran into the door on his way out of the building and "bounced off of [Kelley's] car," which was parked right outside. *Id.* 50:20–51:3. From there, he ran around the church and through a field to Highway 87, and then ran across the street to a Valero gas station, where he told the employees to lock the doors and call 911. *Id.* 51:3–8. Shortly thereafter, Kyle saw Kelley exit the church and drive past the gas station. *Id.* 58:4–12. Kyle "laid back down for a few minutes, hoping it was all over," until the manager of the Valero saw Mr. Workman in the field between the church and gas station and called out to him to let him know that Kyle was inside. *Id.* 58:12–17.

Though Texas courts have recognized in bystander cases that the "elements are flexible and should be applied on a case-by-case basis," the Court cannot endorse a view of bystander claims that is sufficiently expansive to extend to these facts. *Thornton v. Home Depot U.S.A., Inc.*, No. A-04-CA-1039 AWA, 2006 WL 2022920, at *2 (W.D. Tex. July 17, 2006). The Court agrees with the Government that the undisputed facts preclude Mr. Workman's bystander claims for two reasons.

First, the Court concludes that Plaintiffs have failed to create a genuine issue of material fact as to whether Mr. Workman had a sensory and contemporaneous observance of the shooting. Plaintiffs correctly observe that "contemporaneous sensory perception" ought not be limited to eyewitness perception of an event. Docket no. 263 at 6. But the cases offered in support of this proposition still involve an independent sensory perception of the event itself. *See Hitchcock v. Steak N Shake, Inc.*, No. CV SA-16-CA-922-XR, 2017 WL 5077901, at *12 (W.D. Tex. Nov. 2, 2017) (even though the husband was not physically present to see his wife's fall occur, he "heard the commotion" and "witnessed [his wife] in pain."); *see also Cole v. Hunter*, No. 3:13-CV-02719-O, 2014 WL 266501, at *20 (N.D. Tex. Jan. 24, 2014) (where parents both heard gunshots from their front yard and sometime thereafter saw their wounded son, the fact that they "did not witness the shooting of their son" did not, on its own, defeat their bystander claim under Texas law).

Texas courts have consistently held a plaintiff who witnesses a scene immediately after an accident is not entitled to recover as a bystander. Such a plaintiff does not suffer emotional impact from a "sensory and contemporaneous observance of the accident," but rather "is in the same position as any other close relative who sees and experiences the immediate aftermath of a serious injury to a loved one—recovery is not available." *Rodriguez v. Riddell Sports, Inc.*, 242 F.3d 567, 578 (5th Cir. 2001) (citing *United Servs. Auto. Ass'n v. Keith*, 970 S.W.2d 540, 542 (Tex. 1998)). In assessing whether a plaintiff has suffered mental anguish because of a "contemporaneous and sensory perception" of an accident, courts often consider the manner in which a plaintiff learns about the event. *See Gen. Motors Corp. v. Grizzle*, 642 S.W.2d 837, 844 (Tex. App.—Waco 1982, writ dism'd w.o.j.) ("Courts have denied recovery if the plaintiff is told of the accident at a later time instead of witnessing the event."); *Keith*, 970 S.W.2d at 542 (mother who learned of daughter's car accident from a family friend and later arrived on the scene while rescue operations

13

were underway could not recover as a bystander); *cf. City of Austin v. Davis*, 693 S.W.2d 31 (Tex. App.—Austin 1985 writ ref'd n.r.e.) (father who discovered his son's body at the bottom of an airshaft was not precluded from recovering as a bystander because he did not learn of the incident from others).

Here, Mr. Workman specifically admits that he learned of his sons' injuries from his wife, not from his own perception of the shooting. *See* docket no. 263, Ex. 1, Kip Workman Dep. 92:12–14; 102:2–9; see also id. 93:2–5 (acknowledging that the phone call from his wife was the "first moment when [he] knew something unusual had happened"). There is no evidence that Mr. Workman heard any gunshots or had any other independent sensory perception of the shooting during the phone call with his wife.[6] Indeed, the evidence suggests that Kelley had already fled the scene by the time Mr. Workman received the call. Julie Workman testified that, a few seconds after the gunman ran out of the church, she heard screeching tires. *See* docket no. 254, Ex. Q, Julie Workman Dep. 90:10–11. She then called 911 and, after confirming that help was on the way, she hung up to call her husband. *Id.* 90:19–91:7. Mr. Workman concedes that he did not see Kelley or hear gunshots at any point after he arrived at the church. *See* docket no. 263, Ex. 1, Kip Workman Dep. 106:15–20. Though Plaintiffs note that he was "still able to hear the sound of 'people's blood pumping out of them and screaming and hollering,'" by the time he arrived at the scene, these facts are consistent with observing the aftermath of the shooting, rather than the shooting itself. Docket no. 263 at 7 (citing *id.*, Ex. 1, Kip Workman Dep. 104:5–7). The emotional impact Mr. Workman

---

[6] Plaintiffs' argument that Mr. Workman's phone call with his wife should satisfy the perception element relies on a hypothetical scenario that the Court proposed in an earlier order, suggesting that a family member who was on a live video chat call with a loved one during a mass shooting, for instance, could plead contemporaneous and sensory observance of the incident that led to their loved one's injury or death. *See* ECF No. 233 at 10. This hypothetical does not obviate the necessity of an independent perception of the event in question, however. That is, to satisfy the contemporaneous and sensory perception element under such facts, the plaintiff would need to see or hear evidence of the shooting through the video chat independent of the family member's description of the event on the call.

14

undoubtedly suffered did not result from a contemporaneous and sensory perception of the shooting.

Second, even if the phone call with his wife could establish Mr. Workman's contemporaneous and sensory perception of the shooting, the Court agrees with the Government that Mr. Workman cannot satisfy the proximity requirement. "Texas law still requires the bystander's presence when the injury occurred." *Keith*, 970 S.W.2d at 542. In the cases cited above permitting bystander recovery by plaintiffs who did not actually witness the cause of injury or death, there is no question that the plaintiffs in question were at or near the scene of the accident. *See Hitchcock*, 2017 WL 5077901, at *12 (allowing bystander recovery by husband who was in restaurant with his wife when she slipped and fell); *Cole*, 2014 WL 266501, at *20 (allowing bystander claim by parents who heard their son being shot from their front yard); *Davis*, 693 S.W.2d 31 (allowing bystander claim by father who found his son's body at the bottom of an airshaft while searching for him in the building).

Despite Plaintiffs' assertion that Mr. Workman arrived at "a still-active scene," docket no. 263 at 7, there is no genuine dispute that Mr. Workman arrived at the church *after* his family members had already been injured. *See Keith*, 970 S.W.2d at 542 ("The fact that [the plaintiff] arrived on the scene while rescue operations were underway and witnessed her daughter's pain and suffering at the site of the accident rather than at the hospital or some other location does not affect the analysis."). The question of whether Mr. Workman was aware that the shooting was over at the time he entered the building is not relevant to his claims as a bystander to his sons' injuries. Because he cannot establish a genuine issue of material fact as to his perception of and proximity to the shooting, Mr. Workman's claim for mental anguish damages as a bystander to his family members' injuries fails as a matter of law.

## CONCLUSION

Accordingly, the Court hereby **ORDERS** that the Government's motion for partial summary judgment (docket no. 254) is **GRANTED IN PART** as to Plaintiffs Kip Workman, Fred Curnow, and Kathleen Curnow, and **DENIED AS MOOT** as to all other Plaintiffs identified in the Government's motion.

It is so **ORDERED**.

SIGNED this 3rd day of February, 2021.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE