IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| JOE HOLCOMBE, et. al., § | |
| § | |
| Plaintiffs, § | |
| § | |
| § | No. 5: 18-CV-00555-XR |
| vs. § | (Consolidated cases) |
| § | |
| § | |
| UNITED STATES OF § | |
| AMERICA, § | |
| § | |
| Defendant. § | |

DEFENDANT UNITED STATES' MOTION TO EXCLUDE
TESTIMONY OF PLAINTIFFS' EXPERT COL. LARRY D. YOUNGNER

The United States moves the Court to exclude the inadmissible opinion testimony of Col. Larry D. Youngner, a retained expert identified by the Plaintiffs. Col. Youngner has no expertise that will assist the trier of fact on issues still remaining for trial. To the extent Col. Youngner could serve as an expert on Air Force protocol, his opinions go beyond the scope of his expertise, even going so far as to evaluate Devin Kelley's state of mind and propensities. Under the guise of being an expert on the law, Col. Youngner assesses the credibility of evidence and offers legal conclusions—all of which are the sole purview of the Court. Because these opinions are not admissible under the standard for ascertaining the admissibility of expert testimony under Rule 702 of the Federal Rules of Evidence, they should be excluded.

BACKGROUND

On April 1, 2020, the Plaintiffs filed *Plaintiffs' Combined Designation of Testifying Experts* (Doc. 197), designating 23 retained testifying-experts (3 liability and 20 damages

experts), 930 non-retained medical providers identified in Plaintiffs' initial disclosures and supplements, 105 other witnesses, which include many high-level officials, as well as the Plaintiffs' treating medical providers. These disclosures included the report of Col. Larry Youngner (Ret.) as a liability expert. *See* Ex. A, Report of Col. Larry Youngner. In accordance with the Parties' Joint Motion dated July 30, 2020, (ECF 245) and the Court's Order Granting said motion (ECF 247), the final fact witness depositions were taken on January 13, 2021. The United States produced supplemental expert reports on February 2, 2021; Plaintiffs produced a Supplement/Rebuttal report by Col. Youngner on February 12, 2021. Ex. B, Supplemental/Rebuttal Report of Col. Larry Youngner. The United States took Col. Youngner's deposition on February 17, 2021. Ex. C, Excerpts from Transcript of Deposition, Feb. 17, 2021.

## LEGAL STANDARD

Federal Rule of Evidence 702 imposes a special obligation on a trial judge to ensure that all expert testimony, whether scientific or otherwise, is reliable and relevant. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137,147 (1999). Rule 702 states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion, or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702

The trial courts are the "gatekeepers" for the admissibility of expert testimony, making a "preliminary assessment of whether the reasoning or methodology properly can be applied to the facts in issue." *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 592–93 (1993); *see also Kumho*, 526 U.S. at 147 (1999); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243–44 (5th Cir.

2002). It is beyond the proper scope of an expert opinion to go beyond his or her expertise or to proffer conclusions regarding a state of mind. *Goodman v. Harris Cty.*, 571 F.3d 388, 399 (5th Cir. 2009) (expert may not go beyond the scope of expertise); *Marlin v. Moody Nat'l Bank, N.A.*, 248 F. App'x 534, 541 (5th Cir. 2007) (expert may not evaluate a party's state of mind). Likewise, an expert may not impinge on the function of the court by proffering legal opinions or conclusions, or to assess credibility and weigh evidence. *Askanase v. Fatjo*, 130 F.3d 657, 673 (5th Cir 1997) (expert may not proffer legal opinions or conclusions); *Amin-Akbari v. City of Austin, Tex.*, 52 F. Supp. 3d 830, 846 (W.D. Tex. 2014) (unhelpful to the trier of fact to evaluate credibility and weigh evidence).

## ARGUMENT

I. COL. YOUNGNER'S STATEMENTS THAT ARE OUTSIDE HIS AREA OF EXPERTISE AND WHICH CONSTITUTE LAY OPINIONS SHOULD BE EXCLUDED.

Col. Youngner is an attorney, admitted to the bar in Georgia, who spent 24 years as a judge advocate general ("JAG") in the Air Force. Ex. A. at 1, ¶ 5. When asked during his deposition about the subject matter of his expertise, Col. Youngner testified that his role

> is to be an Air Force officer and judge advocate who is experienced with DoD and Air Force investigations, to include inspector general investigations at DoD IG, and the SA[F] IG[1] level, down to installation level IGs. Next is [to be] familiar and an expert in the duties of the Air Force to comply with direction from higher headquarters, direction within the Air Force for compliance with congressional mandates, frankly statute. And then how DoD and the Air Force implement those higher headquarters' responsibilities. So what is the duty, is established. What is the promulgating instruction at DoD and subordinate to DoD by US Air Force and within US Air Force, in this case OSI [Office of Special Investigations] and SF [Security Forces] communities, as well as the judge advocates, and to provide expert opinion, if any opinion exists, on the DoD IG report and what consequence, if any, that had for ahead quarters Air Force, down to the Det[atchment] level for OSI, headquarters Air Force down to the squadron level for Security Forces. And I think wrapped up -- I assess wrapped in that experience as a military attorney to

---

[1] The SAF IG is the Secretary of the Air Force Inspector General.

> look at the reasonableness of actions based on – based on the facts of the case and the legal standards involved in a case, if you will. Foreseeability would be one of those issues, and which is a legal issue. And then the facts, I think, speak for themselves as they relate back to these duties and whether or not there is increased risk of harm, whether or not the conduct is foreseeable or not.

(Ex. C at 99:19-100:23).

During his time in the Air Force, Col. Youngner never had any responsibility to submit criminal history data to the FBI, nor did he supervise the submission of criminal history data to the FBI. *Id.* at 42:3-16; 44:5-13; 123:3:6. While Col. Youngner was aware of the Department of Defense and Air Force instructions at issue in this case while on active duty, he was not particularly familiar with them. *Id.* at 133:12–135:24, 139:19–25.

Similarly, before being hired for this case, Col. Youngner's knowledge of the National Instant Background Check System ("NICS") was based solely on his experience with purchasing firearms for personal use. *Id.* at 144:9–-25. While he was generally aware of the Brady Act and the Lautenberg Amendment before being hired as an expert in this case, much of his knowledge of those laws arose from his review of material provided to him for this case. *Id.* at 140:9–144:7. Neither does he have any particular expertise in the gun control laws of Texas nor any experience working with the Bureau of Alcohol, Tobacco, and Firearms ("ATF"). *Id.* at 147:8–21, 186:16–20. In his work as an attorney, he has never worked on a case involving a person prohibited from obtaining firearms, who nonetheless was able to purchase firearms. *Id.* at 138:8–14. Col. Youngner is not a behavioral psychologist, a forensic psychiatrist, or a criminologist. Ex. C at 95:19–20, 206:3–14, 216:15–218:22. When asked if he had any particular expertise in the laws related to firearms sales, or the effects of those laws, he stated "I would say I do now. So I would say that I have learned quite a bit in preparing for this case. . . ."

4

*Id.* at 213:9–16.  He clarified that any expertise was developed solely as part of his work on this case.  *Id.* at 213:17–25.

Nonetheless, Col. Youngner has offered opinions that go well beyond the areas of his expertise.[2]  Most significantly, Col. Youngner opined on the effect the lack of a NICS denial or delay for attempted purchases at federal licensed firearm stores ("FFLs") had on Devin Patrick Kelley.  Ex. A at 41 ¶ 52, Ex. B at 25 ¶ 78, 27 ¶ 82, 30 ¶ 90(c)(1).  Col. Youngner repeatedly states that Kelley was "conditioned" by the lack of delays or denials, Ex. A at 41 ¶ 52, Ex. B at 25 ¶ 78, 30 ¶ 90(c)(1), and further states that Kelley's ability to acquire firearms led to a "sense of confidence in his ability to acquire any gun he desired . . . ."  Ex. B at 30 ¶ 90(c)(1).  But Col. Youngner is not a behavioral psychiatrist, nor does he have any particular expertise in conditioning.  Ex. C at 95:15–23.  When asked at deposition about the basis for his opinion on conditioning, he testified that the basis is his "common sense and knowledge of the ways of the world that overlap from my area of expertise into others . . . ."  *Id.*, *see also id.* at 178:20–179:8, 208:10–209:2.

Likewise, in his report, Col. Youngner states that his opinions on what would have happened had Kelley's information been in NICS are "common-sense outcomes."  Ex. B at 27 ¶ 81, Ex. C at 179:9–181:3.  When questioned further as to the bases for these opinions, he explained that his conclusions are based on his review of the depositions, documents, and expert reports that were produced in this case.  Ex. C at 186:21–190:16.  To the extent that Col. Youngner's views are those that "men of common understanding" would draw from the

---

[2] The United States acknowledges that Col. Youngner could have served as an expert on certain Air Force protocols and Staff Judge Advocate responsibilities.  However, those issues are no longer at issue pursuant the Court's order on the parties' cross-motions for summary judgment.  See ECF No. 318.

"primary facts . . . accurately and intelligibly described" by fact witnesses, his "expert testimony is not only unnecessary, but indeed may properly be excluded in the discretion of the trial judge." *Salem v. U.S. Lines Co.*, 370 U.S. 31, 35 (1962).

Finally, Col. Youngner attempts to offer rebuttals to the United States' expert opinions, though he acknowledges that he does not have expertise in firearms sales, the laws related to those sales, forensic psychiatry, or criminology. Ex. B at 28-33; Ex. C at 200:18-21, 206:3-14, 213:9-25, 216:15-218:22. Indeed, for a portion of his rebuttal of the opinion of Dr. Fox, a criminologist with an expertise in mass shootings, Col. Youngner stated that his opinion was based, not on his own expertise, but on the views of Dr. Webster, another of Plaintiffs' experts, and statements made by Kimberly Del Greco, the Director of the FBI, CJIS Division. Ex. C at 221:5–224:15. He also offers opinions on how civilian law enforcement, both at the state and federal levels, would have responded if Kelley's information had been in NICS, despite having no particular experience in those areas. Ex. B. at 25–27. These views go beyond Col. Youngner's expertise, and so are not helpful to the trier of fact under Rule 702.

II. COL. YOUNGNER'S LEGAL OPINIONS AND CREDIBILITY ASESSMENTS SHOULD BE EXCLUDED

While an expert is permitted to opine on the "ultimate issue to be decided by the trier of fact," Fed. R. Evid. 704(a), he is not permitted to offer conclusions of law. *C.P. Interests, Inc. v. California Pools, Inc.*, 238 F.3d 690, 697 (5th Cir. 2001), citing *Owen v. Kerr McGee Corp.*, 698 F.2d 236, 240 (5th Cir.1983). Specifically, "allow[ing] the witness to tell the jury what result to reach [is] not permitted," *Owen*, 698 F.2d at 240. Similarly, an opinion which "attribute[s] legal significance to certain facts . . . is not helpful to the trier of fact and must be excluded." *Orthoflex, Inc. v. ThermoTek, Inc.*, 986 F. Supp. 2d 776, 811 (N.D. Tex. 2013); *see also Taylor Pipeline Const., Inc. v. Directional Rd. Boring, Inc.*, 438 F. Supp. 2d 696, 706 (E.D. Tex. 2006).

6

Col. Youngner's reports are replete with legal conclusions. In paragraph 43 of his initial report, Ex. A at 29–35, Col. Youngner opines that "the DoD and USAF undertook six specific duties regarding criminal history data (CHD) as participants in a national background check information system to limit gun violence as desired by Congress." Paragraphs 44–48 contain Col. Youngner's view that the Air Force did not comply with the duties undertaken, and his assessment of the documents and testimony supporting his conclusions. *Id.* at 36–38. Col. Youngner restates his opinions on the duties of the Air Force in his paragraphs 69–70 of his supplemental report. Ex. B at 23–24. While an opinion explaining the effects of Air Force regulations and instructions might be permissible, Col. Youngner is opining on the duties owed to a party as a matter of law and stating whether the duty was breached. These opinions are legal conclusions, and are not helpful to the trier of fact. *Taylor Pipeline*, 438 F. Supp. 2d at 706 (excluding expert opinions "as to the duties . . . owed . . . and their fulfillment of those duties" because they constituted legal conclusions). In addition, the Court has already made its determination of the duties owed and the breach of those duties, without the aid of an expert's opinion. *See* Opinion on Summary Judgment, ECF 318. These opinions are thus no longer relevant, and their admission would be needlessly cumulative. Fed. R. Evid. 402, 404.

Likewise, Col. Youngner repeatedly opines that the Air Force's actions led to "a heightened public risk consequence," Ex. A at 38 ¶ 50, and that Kelley's actions were foreseeable, Ex. A at 39, Ex. B at 25, 27–28. At his deposition, Col. Youngner stated that his determination of the consequences was based on his application of "a Texas tort law analysis." Ex. C at 101:10–104:18. Likewise, Col. Youngner also repeatedly states his disagreement with the United States' experts on the issue of foreseeability, without discussing any specialized knowledge that informed his opinion. Ex. B. at 29 ¶ 91, 31, 32. Col. Youngner explained that

he arrived at his opinions by assessing "the legal terms of foreseeability" and that they are based "on my knowledge, experience and understanding of Texas tort law and the Federal Tort Claims Act, but particularly in this case you have to apply Texas law to the case at bar." Ex. C at 206:15–207:1; *see also* 219:8–12 (stating that United States' expert Dr. Fox "uses the wrong legal standard" for foreseeability). As Col. Youngner's opinions of foreseeability are based on his application of the law to the facts of this case, they are thinly veiled attempts to usurp the role of the factfinder and should be excluded.

In addition, paragraph 42 of the report states: "In my professional opinion, based on the data provided, the DoD IG Report of December 6, 2018 provided accurate findings and recommendations. I fully agree with the 2018 Report's findings, conclusions and recommendations and adopt the report's findings." Ex. A at 29. This opinion is nothing more than an attempt to bolster the conclusions of the Report. Such weighing of evidence falls within the province of the trier of fact, and is not helpful. *See Amin-Akbari*, 52 F. Supp. 3d at 846 ("it is the province of the jury to evaluate the credibility of witnesses and weigh the (occasionally conflicting) evidence before it"); *cf. Poole-Ward v. Affiliates for Women's Health, P.A.*, 329 F.R.D. 156, 168 (S.D. Tex. 2018) ("As a general rule, an expert may not opine on another witness's credibility because this testimony does not help the trier of fact, who can make its own credibility determinations."). Accordingly, this paragraph should also be excluded.

Col. Youngner's opinions on the issues of duty, increased risk of harm, and foreseeability, are legal conclusions disguised as expertise, taking on the Court's role as the legal arbiter and trier of fact. These opinions should therefore be excluded.

CONCLUSION

For the reasons set forth above, the United States respectfully requests that the Court exclude the inadmissible opinion testimony of Col. Youngner.

Respectfully submitted,

>BRIAN BOYNTON
>Acting Assistant Attorney General Civil Division
>ASHLEY C. HOFF
>United States Attorney

>/s/ Paul David Stern
>PAUL DAVID STERN
>JOCELYN KRIEGER
>Trial Attorneys, Torts Branch
>Civil Division
>United States Department of Justice
>UNITED STATES OF AMERICA

CERTIFICATE OF SERVICE

I certify that on March 2, 2021, I electronically filed the foregoing with the clerk of court by using the CM/ECF system, and that all counsel of record have received notice and been served through that system.

>/s/ Paul David Stern