Ex. A

**WARRIOR COUNSEL, LLC**
**Military Law Consultants & Attorneys**
17160 Primavera Circle
Cape Coral, FL 33909
Phone: 703.531.9280
Email: Youngner@WarriorCounsel.com
Email: Kijek@WarriorCounsel.com

**Rule 26 Report**

Regarding:
*Joe Holcombe, et al., Plaintiffs, v. United States of America, Defendant,*
Civil Action No. 5:18-CV-555-XR
(consolidated with No. 5:18-CV-712-XR, No. 5:18-CV-881-XR, 5: 18-CV-944-XR, 5:18-CV-949-XR, 5:18-CV-951-XR, 5:18-CV-1151-XR, 5: 19-CV-184-XR, 5: 19-CV-289-XR, 5:19-CV-506-XR; 5:19-CV-678-XR; 5:19-CV-691-XR; 5:19-CV-705-XR; 5:19-CV-706-XR; 5:19-CV-714-XR; 5:19-CV-715-XR; 5:19-CV-805-XR; 5:19-CV-806-XR; 5:19-CV-953-XR; 5:19-CV-972-XR; 5:19-CV-1291-XR; 5:19-CV-1300-XR; 5:19-CV-1301-XR; 5:19-CV-1318-XR; 5:20-CV-109-XR; 5:20-CV-368-XR)

Prepared by:
Warrior Counsel, LLC
17160 Primavera Circle
Cape Coral, FL 33909

Date of Report:
March 31, 2020

_____

Colonel (Ret.) Larry D. Youngner, BA, JD, LLM, MS
Georgia State Bar No. 783477

SSS-002421

# Table of Contents

I. Introduction …………………………………………………………………….  1

II. Scope of Report ………………………………………………………………  1

III. Credentials ………………………………………………………………...  1

IV. Compensation ………………………………………………………………...  3

V. Summary of Facts ……………………………………………………………  3

VI. Documents Reviewed and Considered …………………………………… 18

VII. Basis for Opinions …………………………………………….……………... 29

VIII. Professional Opinions ……………………………………………………… 29

IX.    Conclusion …………………………………………………………….. 41

**Attachments**

  **Appendix A – Curriculum Vitae**

  **Appendix B – DD Form 214s, Certificate of Release or Discharge from Active Duty**

  **Appendix C – Military Decorations from 2003 – 2014**

  **Appendix D – Cases Participated in Over the Past Four Years**

  **Appendix E – USAF and DoD Standards on Compliance and Command, Supervision and Management Oversight of Criminal History Data Submission Requirements to the FBI**

  **Appendix F – Devin P. Kelley Conduct and USAF Response Chronology**

  **Appendix G – USAF and DoD Kelley Criminal History Data Compliance Opportunity Events**

  **Appendix H – USAF Law Enforcement Organizations Structure**

  **Appendix I – Kelley Firearms Purchased after 2011**

  **Appendix J – Abbreviations and Acronyms List**

SSS-002422

## I. INTRODUCTION

1. This document is my Rule 26 expert report[1] in the matter of *Holcombe v. U.S.*[2] I was retained in this matter on behalf of all the plaintiffs on the consolidated matter referenced above. Plaintiffs in this consolidated case are survivors, relatives, heirs and personal representatives of the November 5, 2017 mass shooting at The First Baptist Church of Sutherland Springs, Texas.[3]

## II. SCOPE OF REPORT

2. I was asked to read, analyze and report my assessment of selected Department of Defense (DoD) documents, notably DoD Inspector General (IG) reports, of depositions and of exhibits presented to the deposed witnesses in the above-styled matter, and documents produced in the underlying case. In particular, I was asked to assess what compliance requirements existed, if any, and what consequences resulted, if any, from any acts or omissions of the United States Air Force (USAF) and DoD personnel involved in this matter. All of the opinions I reached in this report are to a reasonable degree of certainty, using the preponderance-of-the-evidence standard.

## III. CREDENTIALS

3. I was commissioned a second lieutenant in the U.S. Army Reserve upon graduation from the U.S. Army Reserve Officer Training Corps program at the University of Georgia, Athens, Georgia, where I simultaneously earned a Bachelor of Arts Degree in history (Magna Cum Laude). I earned a Juris Doctor Degree in law from the University of Georgia while on educational delay from active duty. I have a Master of Laws Degree in Military Law from The Judge Advocate General's Legal Center and School, Charlottesville, VA; and, I have a Master of Science Degree in National Resource Strategy from National Defense University, Washington, DC.

4. Bar admissions. I have been a member in continuous good standing of the State Bar of Georgia since 1986. I am admitted to practice before the Superior Court of Glynn County, Georgia, the Supreme Court of the State of Georgia, the US Court of Appeals for the Armed Forces, the US Court of Appeals for the Federal Circuit and the Supreme Court of the United States of America.

5. From June, 1983 until July, 2014, I served as a commissioned officer in the U.S. military. The majority of my military career, the last 24 years and 7 months of active duty, were in service to our nation as a judge advocate general (JAG) corps officer in the USAF.[4]

---

[1] Fed. R. Civ. P. 26(a)(2)(B) (accessed at https://www.law.cornell.edu/rules/frcp).

[2] *Joe Holcombe, et al., Plaintiffs, v. United States of America, Defendant,* Civil Action No. 5:18-CV-555-XR (consolidated with No. 5:18-CV-712-XR, No. 5:18-CV-881-XR, 5: 18-CV-944-XR, 5:18-CV-949-XR, 5:18-CV-951-XR, 5:18-CV-1151-XR, 5: 19-CV-184-XR, 5: 19-CV-289-XR, 5:19-CV-506-XR; 5:19-CV-678-XR; 5:19-CV-691-XR; 5:19-CV-705-XR; 5:19-CV-706-XR; 5:19-CV-714-XR; 5:19-CV-715-XR; 5:19-CV-805-XR; 5:19-CV-806-XR; 5:19-CV-953-XR; 5:19-CV-972-XR; 5:19-CV-1291-XR; 5:19-CV-1300-XR; 5:19-CV-1301-XR; 5:19-CV-1318-XR; 5:20-CV-109-XR; 5:20-CV-368-XR).

[3] *Holcombe v. U.S.,* 388 F.Supp.3d 777, 785 (W.D. Tex. 2019).

[4] *See* Appendix B, DD Forms 214. As reflected on my DD-214s, my total military service is 30 years, 11 months, 29 days: 24 years, 7 months of active duty in the USAF (JAG Corps); 3 years, 8 months, 20 days of active duty in the US Army (Medical Service Corps); and initially, 2 years, 8 months, 9 days in the US Army Reserve (Infantry).

SSS-002423

a. While on active duty, I litigated 40 courts-martial. Of those trials, I served as trial counsel on 10 general courts-martial and as defense counsel on 14 general courts-martial. The other 16 trials I participated in were special courts-martial. I also litigated four pretrial confinement hearings and six administrative discharge boards. I reviewed SFOI or AFOSI case files and reports of investigation (ROIs) on every court-martial I litigated. I interviewed special agents or SFOI agents then conducted direct examination or cross-examination, as required, on the fully litigated courts-martial I tried.

b. On active duty, I supervised trial counsel on 394 courts-martial as a command Staff Judge Advocate (SJA) at Wing (WG), Numbered Air Force (NAF), Component Air Force and Major Command (MAJCOM) levels. The SJA roles regarding criminal trials were comparable to a civilian district attorney or U.S. Attorney position. As a supervisory attorney, I assured trial counsel compliance with then current versions of the Manual for Courts-Martial[5] and AFI 51-201, *Administration of Military Justice*,[6] in effect at that time. I also participated in both Headquarters (HQ) USAF-level inspections under the functional supervision of The Judge Advocate General (TJAG), known as Article 6, UCMJ Inspections and in Unit Effectiveness Inspections (UEI), Oversight Inspections and Readiness Exercises under the auspices of AFI 90-201, *The Air Force Inspection System*.[7]

c. During my USAF career, I served as adjunct faculty for the AFOSI Academy and the AF JAG School. I taught course on trial tactics, techniques and procedures (TTPs) at the AFOSI Academy. At the AF JAG School, I taught deployed operational military justice at the SJA Course and the Gateway mid-career course. I also instructed on compliance with the law of armed conflict at the AF JAG School and to General Officers at the Combined Air Operations Course, the LeMay Center, Air University. I have instructed on War Crimes at ABA Annual Convention and been an invited speaker on operational criminal law at the Navy war College, Air War College, and the International Criminal Defense Attorneys Association.

d. As a JAG, I have advised Security Forces Office of Investigations (SFOI) personnel and AFOSI personnel on criminal investigations at WG level during assignments at: Bolling AFB, DC; at Rhein-Main AG, Germany; at Tallil (Ali) AB, Iraq; and at Seymour Johnson AFB, North Carolina. I have advised senior leaders at the Air Staff on international criminal law matters, on the investigation of alleged cheating scandal regarding nuclear surety examinations, and on policy goals and compliance with regard to sexual assault response, victim witness assistance and reform of "Don't ask, Don't tell" policies.

e. While on active duty I advised the Investigation Officer (IO) for Inspector General Investigations at WG, NAF and MAJCOM level.  The focus for these matters focused on either

---

[5] *Manual for Courts-Martial, United States* [MCM]; the current MCM is available online at: https://jsc.defense.gov/Portals/99/Documents/2019%20MCM%20(Final)%20(20190108).pdf?ver=2019-01-11-115724-610.  The MCM contents include the Rules for Court-Martial, the Military Rules of Evidence and the Uniform Code of Military Justice (UCMJ).

[6] The current version is AFI 51-201, *Administration of Military Justice* (January 18, 2019, Incorporating AFGM 2019-02, dated October 30, 2019)(accessed at: https://static.e-publishing.af.mil/production/1/af_ja/publication/afi51-201/afi51-201.pdf).

[7] The current version is AFI 90-201, *The Air Force Inspection System* (November 20, 2018)(accessed at: https://static.e-publishing.af.mil/production/1/saf_ig/publication/afi90-201/afi90-201.pdf.

SSS-002424

compliance with the then current versions of AFI 90-301, *Inspector General Complaints Resolution*[8] and when necessary, the MCM. I also advised IOs on commander-directed investigations (CDIs) on alleged misconduct, accident investigations or command special interest areas. For these matters, I used the Secretary of the Air Force Office of the Inspector General Complaints Resolution Directorate (SAF/IGQ) publication, *JAG Guide to IG Investigations*.[9]

6. After I retired from active duty service on June 30, 2014, I entered private law practice. I represented military and national security law clients at the Tully Rinckey, PLLC law firm from July, 2014 until January, 2020. I began employment as a Partner leading the Military Law and National Security Law Practice Group. In January, 2015, I also became the Managing Partner of the firm's DC office of 19 attorneys and 6 support staff. From May 2016 until January, 2020, I worked as Of Counsel with the firm. During my employment, I represented: three clients before general courts-martial; one client in a US District Court criminal case; three clients on FBI and NCIS joint investigations; three clients at SAF/IGS investigations; three clients on AFOSI investigations and two clients on Army CID investigations. I also represented 15 security clearance adjudication clients, to include 3 at adjudication hearings before the Defense Office of Hearings and Appeals and the National Geospatial Intelligence Agency. I was an invited speaker for media and the Air Force Annual Survey of the Law on military criminal law and administrative law matters.

7. I am currently the Founding Partner and Chief Executive Officer of Warrior Counsel, LLC. Warrior Counsel is a military law consulting firm and law firm based in Cape Coral, Florida since January 10, 2020. Attached as Appendix A to this report is my curriculum vitae. Attached as Appendix B are cases I have worked involving military investigations in the past four years; however, I have not served as an expert consultant in federal court prior to this matter, and therefore have not testified in trial or by deposition in the past four years.

## IV. COMPENSATION

8. My fee schedule is $400.00 per hour plus expenses. To review all materials to date and prepare this report, I have been compensated approximately $5,000.00. I have accumulated additional billable hour fees of $17,880.00 in advance of payment.

## V. SUMMARY OF FACTS

9. Concerned with threats to public safety posed by certain persons with access to firearms, Congress passed legislation to identify and prohibit those persons from obtaining guns. Notable legislation included the Gun Control Act of 1968,[10] the Brady Handgun Violence Prevention Act,[11] and the Domestic Violence Amendment to the Gun Control Act of 1968 (the Lautenberg Amendment).[12] Within these statutes, Congress imposed on federal agencies, to include the DoD

---

[8] The current version of AFI 90-301 is available at: https://static.e-publishing.af.mil/production/1/saf_ig/publication/afi90-301/afi90-301.pdf.
[9] Accessed at: https://www.af.mil/Portals/1/documents/ig/jag-guide-ig-investigations.pdf.
[10] 18 U.S. Code § 921 – 938, as amended by Brady law (18. U.S. Code Chapter 44)
[11] Pub.L. 103-159, Title I; 107 Stat. 1536.
[12] 18 U.S. Code § 922(g)(9) (accessed at: https://www.law.cornell.edu/uscode/text/18/922).

3

SSS-002425

and the USAF, reporting requirements to the Federal Bureau of Investigation (FBI) concerning collection of fingerprint data (FPD), Form FD-249, and Final Disposition Reports (FDRs), Form R-84, in criminal cases involving covered persons, to include individuals convicted of misdemeanor domestic violence or convicted of a crime punishable by more than one year imprisonment, within the USAF and DoD's criminal justice system.[13]

10. Pursuant to these federal gun control statutes and other federal laws, the DoD and the USAF, as U.S. government agencies, took on the responsibility of a national background check system to keep firearms out of the possession and use of certain persons: those with disqualifying characteristics outlined in federal legislation, notably conviction of crimes punishable by more than one year imprisonment[14] and domestic violence convictions.[15] The U.S. Government established the FBI CJIS NICS (National Instant Criminal Background Check System) database, which is a "system that is used by over 600 [FBI] employees to process firearm background checks for individuals attempting to purchase a firearm." [16] The mission of NICS "is to provide the timely and accurate determination of a person's eligibility to possess firearms and/or explosives in accordance with Federal law."[17]

11. <u>Initial DoD Guidance</u>. DoD Criminal Investigations Policy Memorandum Number 10 (CPM No. 10), Criminal History Data Reporting Requirements, March 25, 1987.[18] However, CPM No. 10 only applied to AFOSI as a military criminal investigative organization (MCIO) within the USAF. CPM No. 10 did not apply to USAF Security Forces (SF).

### DoD & USAF Compliance Concerns

12. AFOSI recognized compliance problems with FPD and FDR submission to the FBI as early as March 1993. "AFOSI's evaluation of required documents in investigative files disclosed **the FBI Form FD-249, *Suspect Fingerprint Card*, was missing in 64 percent of the files** reviewed and that FBI/DOJ **Form R-84, *Final Disposition Report*, was missing in 96 percent of the files** reviewed."[19]

13. To correct the compliance gap, AFOSI leadership implemented several actions.

   a. First, AFOSI developed a case file checklist of all required documents as a management tool that was "sent to AFOSI field units on 11 January 1995. Among the required documents on the checklist were the FD Form 249 and the Form R-84. **Field unit commanders or designees were required to ensure these documents, when required, were contained in the record file copies**."[20]

---

[13] 34 U.S.C. § 40901(e)(1) requires CHD reporting on prohibited persons" not less than quarterly" to the FBI.
[14] 18 U.S. Code § 922(g)(1).
[15] 18 U.S. Code § 922(g)(9).
[16] FBI Assistant Deputy Director Del Greco Deposition, p.29.
[17] *Id*, at 30.
[18] Bates USA0005388-5396.
[19] DoD IG Report, Project No. 60F-9040, "Evaluation of Compliance With DoD Criminal Investigations Policy Memorandum Number 10, Criminal History Data Reporting Requirements" February 10, 1997 (hereafter "1997 Report"), p. 47 (Bates USA00011166-11220).
[20] *Id*. (emphasis added).

4

b. AFOSI also "issued clarifying guidance on 13 Nov 95 requiring AFOSI special agents to coordinate with installation staff judge advocates (SJA) to determine the best time to fingerprint subjects of a (sic) criminal investigations."[21]

c. Next, AFOSI required "**that the FD-249 (fingerprint card) be sent to the FBI as soon as the SJA confirms that court-martial charges have been preferred or non-judicial punishment formally offered**. Disposition may be annotated on the FD Form 249 if known immediately. **The FD Form 249 is not to be held more than 7 days while waiting for disposition**. **If the disposition is not reported on the FD Form 249, the Form R-84 (disposition report) must be submitted to the FBI as soon as disposition is known**.[22]

14. In 1996, to assess MCIOs and other military law enforcement organizations' (MLEOs') compliance with requirements on submission of fingerprints and Final Disposition Reports to the FBI, Congress directed DoD IG[23] to investigate and report findings and recommendations to Congress, the Secretary of Defense (SecDef) and the SecAF among others, concerning OSI and other Defense Criminal Investigative Organizations (DCIOs) compliance with "reporting criminal history data to the FBI"[24] to include fingerprint cards and final disposition reports of military offenders.[25]

15. <u>DoD IG Report of February 10, 1997 ("1997 Report")</u>.[26] DoD IG's 1997 Report identified substantial compliance problems within the USAF and DoD on reporting criminal history data (CHD) to the FBI. The 1997 Report found AFOSI's clarifying guidance issued in 1995 left a compliance gap on reports to the FBI and that SF units had a larger gap. The 1997 Report found:

a. "The MCIOs are not consistently submitting criminal history data to the FBI criminal history files."[27]

b. AFOSI submitted FPD, Form FD-249, to the FBI on 38.3 percent of qualifying cases.[28]

c. AFOSI failed "to submit the R-84, Final Disposition Report, in … 50 percent" of qualifying cases.[29]

---

[21] *Id*. (emphasis added).

[22] *Id*. (emphasis added).

[23] Congress created Inspectors General (IG) within federal agencies, to include the DoD and the USAF, to "inquire into and report upon the discipline, efficiency, and economy" of their respective federal agencies. 10 U.S. Code § 9020(b)(1) (accessed at: https://www.law.cornell.edu/uscode/text/10/9020). *See*, Inspector General Act of 1978, Pub. L. 95-452, 5 U.S.C. App. (accessed at: https://www.law.cornell.edu/uscode/text/5a/compiledact-95-452).

[24] DoD IG, Eleanor Hill, Memorandum, "Evaluation of Department of Defense Compliance With Criminal History Data Reporting Requirements," 10 Feb 1997 (Bates USA 00011167)

[25] National Defense Authorization Act (NDAA) for Fiscal Year 1996.

[26] *Supra*, n. 19.

[27] *Id*. at p. 4 (Bates USA00011175).

[28] *Id*. at p. 7 (Bates USA00011178).

[29] *Id*.

SSS-002427

d. In addition to the MCIOs whom investigated offenses described in CPM No. 10, other Service law enforcement organizations, such as USAF SF, conducted investigations described in CPM No. 10 and did not consistently report that data. As a result, the lack of reporting to the FBI criminal history files prevented civilian law enforcement agencies from having significant information on military offenders.

16. The USAF agreed with the findings in the 1997 Report and volunteered to take corrective action consistent with the report's findings and recommendations as detailed in the AF's written responses thereto. AFOSI "emphasized that reporting requirements are a mandatory inspection item for all AFOSI self-inspections and AFOSI Inspector General inspections.[30] As to SF noncompliance with CHD submission to the FBI, the USAF noted:

> We concur that law enforcement agencies should report offenses meeting CPM 10 criteria. Air Force security police investigators often conduct investigations of such offenses and thus should complete fingerprint cards for those matters The Chief of Security Police, AF/SP, has initiated action to develop procedures to begin fingerprinting in applicable cases. An assessment is currently underway to determine the approximate number of applicable cases, and is expected to be completed by 31 Jan 97. The results of this assessment will then be used to determine manpower and equipment resource requirements, and will also be used to develop appropriate procedures. Following this action, AF/SP will amend Air Force Instruction 31-206, *Security Police Investigations*, to require fingerprinting with the appropriate training and procedural requirements. AF/SP will work with the Air Force Security Police Agency and the security police offices at the Air Force's Major Commands to ensure compliance.[31]

17. A significant outcome of the 1997 Report was DoD's creation of the Defense Incident-Based Reporting System (DIBRS), "a central repository of incident-based statistical data maintained and operated"[32] by the Defense Manpower Data Center (DMDC). "The DIBRS database maintained by the DMDC is the tool the DoD uses to collect and transmit NIBRS reportable criminal incident data for use in the FBI's Uniform Crime Report Program."[33]

### Devin Patrick Kelley: 2010-2014

18. Devin Patrick Kelley (hereafter, "Kelley") enlisted in the US Air Force in delayed entry status on June 12, 2009. He began active duty on January 5, 2010. Between June 9, 2011 and June 8, 2012, Airman Kelley became known to his unit and law enforcement officials at Holloman Air Force Base (AFB), New Mexico, as an Airman with poor performance and misconduct issues.[34] Of particular concern was Kelley's record of probable cause to have engaged in domestic violence.

---

[30] *Id*. at p. 12 (Bates USA00011183).
[31] 1997 Report, p. 49 (Bates USA00011219).
[32] 2014 Report, p. 2.
[33] *Id*.
[34] Kelley Personal Information File (PIF) at 42 Logistic Readiness Squadron (LRS) (Bates USA00014693 - 94).

SSS-002428

These concerns were brought to MLEOs at Holloman AFB and triggered CHD reporting requirements.

a. On June 9, 2011, Kelley was an AFOSI interview subject at Detachment (Det) 225, Holloman, AFB for suspected UCMJ offenses, including assault and battery upon a child, his stepson. "***At the end of the interview, two sets of Kelley's fingerprints were collected on fingerprints cards (FD-249). Kelley's fingerprints were not submitted to the FBI CJIS Division***."[35] Furthermore, AFOSI Det. 225 case agents did not consult with the SJA on probable cause to submit fingerprints as required by DODI 5505.11, *Fingerprint Card and Final Disposition Report Submission Requirements*, para. 1.d.[36]

b. AFOSI Det 225 opened an active investigation case file on Kelley in June 2011.

From June 29, 2011 through October 5, 2012, DoD and Air Force instructions and policies required AFOSI Detachment 225 leadership to perform monthly reviews of the Kelley investigation. ***During the 15 monthly reviews, the AFOSI Detachment 225 leadership did not note that Kelley's fingerprint cards had not been submitted to the FBI CJIS Division. AFOSI Detachment 225 leadership took no corrective action to ensure Kelley's fingerprints were collected and submitted to the FBI CJIS Division***.[37]

c. On February 17, 2012, Kelley was the subject of a 49th SFS interview for domestic assault and battery of his spouse, Tessa Kelley. "**The 49th Security Forces Squadron did not collect Devin Kelley's fingerprints and did not submit them to the FBI CJIS Division.**[38] The SFOI did not consult with the SJA on probable cause to submit fingerprints as required by DODI 5505.11.

d. On June 8, 2012, Kelley was interviewed by AFOSI agents regarding previously alleged domestic violence allegations. "DoD and Air Force instructions and policies required the AFOSI Detachment 225 to collect and submit Devin Kelley's fingerprints to the FBI CJIS Division. ***The AFOSI Detachment 225 did not collect Devin Kelley's fingerprints and did not submit them to the FBI CJIS Division***."[39] The AFOSI again did not consult with the SJA on probable cause to submit fingerprints as required by DODI 5505.11.

19. <u>General Court-Martial</u>. Airman Kelley's military service ended with his conviction by general court-martial and sentence on November 7, 2012 for several UCMJ violations, notably domestic assault and battery of his stepson and wife, both offenses punishable by more than one-year imprisonment under the UCMJ.[40]

---

[35] Stipulation of Fact, Case 5:18-cv-00555-XR Document 149 Filed 10/04/19, p. 1, ¶1 (emphasis added).
[36] Bates USA00001806 - USA00001818.
[37] *Supra* n. 35., p. 2, ¶7 (emphasis added).
[38] *Id*., ¶ 2 (emphasis added).
[39] *Id*., ¶ 3 (emphasis added).
[40] Both offenses were charged as violations of UCMJ, Article 128. The maximum possible confinement for aggravated assault likely to cause death or grievous bodily harm was five (5) years. The maximum possible

SSS-002429

20. <u>Sentence</u>. Kelley was sentenced to reduction to the grade of E-1, confinement for twelve (12) months, and a bad conduct discharge as reflected first on the AF Form 1359, Report of Result of Trial.[41] This report was provided to AFOSI Det 225, 49th SFS squadron commander and 49th SFS/SFOI for their respective actions to comply with CHD submission to the FBI. The conviction was also reported on General Court-Martial Order (GCMO) Number 10, dated January 14, 2013.[42] GCMO No. 10 was also provided to AFOSI Det 225 and 49th SFS.[43] Two independent USAF reporting requirements to the FBI were triggered by Kelley's conviction.

   a. <u>Fingerprints from 49th SFS</u>. After Kelley's general court-martial conviction, "DoD and Air Force instructions and policies required the 49th Security Forces Squadron Confinement Facility to collect Devin Kelley's fingerprints and submit them to the FBI CJIS Division. ***The 49th Security Forces Squadron Confinement Facility employees did not collect and submit Devin Kelley's fingerprints to the FBI CJIS Division***."[44]

   b. <u>Fingerprints and FDR from AFOSI Det 225</u>. Upon receipt of the AF Form 1359, dated November 7, 2012 or the GCMO 10, dated January 14, 2013, either of which provide formal notice to AFOSI Det 225 of Kelley's conviction, AFOSI Det 225 was required "to submit Devin Kelley's fingerprints and the final disposition report of his felony assault conviction for a crime of domestic violence to the FBI CJIS Division."[45] AFOSI Det 225 received the results of trial on December 14, 2012.[46] "***The AFOSI Detachment 225 did not submit Kelley's fingerprints or final disposition report to the FBI CJIS Division's criminal history repository***."[47]

21. Following release from confinement and exhaustion of all appellate matters, Kelley's bad conduct discharge was executed. He separated from the USAF on April 10, 2014, as authorized by General Court-Martial Order (GCMCO) No. 53.[48] Both AFOSI Det. 225 and the Air Force Security Forces Center (AFSFC) received a copy of this GCMCO for compliance with CHD reporting requirements.[49] With Devin Kelley's General Court-Martial conviction on November 7, 2012, DoD and Air Force instructions and policies required the Department of Defense to submit Devin Kelley's final disposition report of his felony assault conviction for a crime of domestic violence to the FBI CJIS Division. "***The Department of Defense did not submit Kelley's final disposition report of his conviction to the FBI CJIS Division***."[50]

---

confinement for aggravated assault likely to cause death or grievous bodily harm upon a child under the age of 16 years was five (8) years. *Manual for Courts-Martial, United States (2012 ed.)* [MCM, 2012], pt. IV, ¶ 54.e(8)(accessed at: https://www.loc.gov/rr/frd/Military_Law/pdf/MCM-2012.pdf).

[41] AF Form 1359, Report of Result of Trial, 7 Nov 2012 (Bates USA00012947-48).

[42] GCMO No. 10, HQ 12th AF, dated January 14, 2013 (Bates USA00012879-82).

[43] *Id*.

[44] Stipulation, *supra* n. 35, p. 2., ¶ 4 (emphasis added).

[45] *Id.*, p. 2., ¶ 6 (emphasis added).

[46] *Id.*

[47] *Id.* (emphasis added).

[48] GCMO No. 53, dated April 10, 2014 (Bates USA00012877-78).

[49] *Id*.

[50] Stipulation, *supra* n. 35, p. 2., ¶ 5 (emphasis added).

8

## Continued Compliance Concerns

22. <u>DoD IG Report of October 29, 2014 ("2014 Report")</u>.[51] Concern with CHD reporting from DoD and the USAF to the FBI persisted at  DoD "We found DoD does not report criminal incident data to the Federal Bureau of Investigation (FBI) as required by the Uniform Federal Crime Reporting Act of 1988 and DoD Directive 7730.47."[52]

> DoD is not reporting criminal incident data to the Federal Bureau of Investigation (FBI) for inclusion in the annual Uniform Crime Reports to the President, the Congress, State governments, and officials of localities and institutions participating in the Uniform Crime Report Program, as required by Federal law. The FBI uses the data to develop a reliable set of criminal statistics for U.S. law enforcement agencies.[53]

> "As a result, 10 years of DoD criminal incident data have not been provided to the FBI for inclusion in the annual uniform crime reports to the President, the Congress, State governments, and officials of localities and institutions participating in the UCR Program, as implemented in DoD Directive 7730.47 and DoD Manual 7730.47-M, Volume 1."[54]

23. In the 2014 Report, the DoD IG recommended AFOSI "ensure the DIBRS data submitters provide accurate and complete data submissions within 15 workdays after the end of each month as required by DoDM 7730.47-M, Volume 1." The USAF agreed and replied that AFOSI's "Investigative Information Management System (12MS) program managers now track the monthly data submissions to ensure OSI DIBRS data will be accurate and complete."[55]

24. <u>Kelley Post-Conviction Firearm Purchase</u>. On December 22, 2014, a few months after his release from confinement and discharge and 55 days after the DoD IG's 2014 Report, Kelley walked into a gun dealer, K&L Marketing Group, Specialty Sports & Supply, in Colorado Springs, Colorado. Kelley filled out ATF Form 4473, Firearms Transaction Record and lied at Block 11c about his conviction "for which the judge could have imprisoned you for more than one year."[56] Kelley's falsification on this form was a felony which subjected Kelley to felony prosecution and conviction. However, his information had not been properly submitted by the Air Force.[57] The seller conducted a NICS check on Kelley and no disqualifying record or CHD came back. The vendor was cleared to proceed with the sale.[58] Kelley walked out with a Glock 9mm handgun. This purchase was made 1,293 days after Kelley's fingerprints were taken on June 9, 2011 and 776 days

---

[51] Report No. DODIG-2015-011, "Evaluation of the Defense Criminal Investigative Organizations' Defense Incident-Based Reporting System Reporting and Reporting Accuracy," October 29, 2014 (hereafter, "2014 Report") (Bates 017735 – 017774).

[52] 2014 Report, p. iv (Randolph R. Stone, DoD Deputy IG, Policy and Oversight, 29 Oct 2014).

[53] 2014 Report, p. i.

[54] 2014 Report, p. 4.

[55] 2014 Report, p. 13.

[56] ATF Form 4473, Firearms Transaction Record Part I - Over-the-Counter, dated December 22, 2014 (Bates USA00012893 - USA00012895).

[57] *Supra* n. 35.

[58] *Supra* n. 56, p. 2. (Bates USA00012894).

9

after his sentencing on November 7, 2012; and 739 days after Kelley's final disposition was reported to AFOSI Det 225 on 14 Dec 2012.

25. <u>DoD IG report of February 12, 2015 ("2015 Report")</u>.[59] Here, the DoD IG found that out of "358 reported convictions, 110 qualifying members were not in IAFIS. The Air Force had a 69-percent compliance rate" on submission of fingerprints to the FBI.[60] Similarly, as to FDRs, out of "358 reported convictions, disposition data for 113 qualifying members were not in IAFIS. The Air Force had a 68-percent compliance rate."[61] Again, DoD IG recommended prompt action to close the CHD submission gap. Again, the USAF agreed with the findings and recommendations.[62] This time, the largest gap on CHD submission was within SF. "Security Forces identified 97 names where fingerprints were not collected. The AFSFC (through all major commands) has exhausted all efforts to collect, through voluntary consent, the missing fingerprints and Final Disposition Report Submission (R-84)."[63]

26. Despite being a prohibited person after his conviction, Kelley purchased firearms from licensed dealers on three more occasions after December 22, 2014. In each instance, he completed an ATF Form 4473 and lied about his criminal history. Each time he falsified this form, Kelley could have been subjected to felony prosecution and conviction. However, the Air Force did not properly submit his information to the FBI. Instead, each time resulted in a NICS approval to proceed with the firearm sale. He obtained three additional weapons.

   a.  Kelly bought a Ruger AR 556 rifle at Academy Sports No. 41 in Texas on April 7, 2016.[64] This semi-automatic rifle was purchased 1,765 days after Kelley's fingerprints were taken but not submitted by AFOSI on June 9, 2011; 1,248 days after his sentencing on November 7, 2012; 1,211 days after final disposition was reported to AFOSI Det 225 on 14 Dec 2012; 527 days after the DoD IG's October 29, 2014 Report; and 421 days after the DoD IG's February 12, 2015 Report.

   b.  Kelly bought a Ruger 357 handgun at K&L Marketing Group Specialty Sports & Supply in Colorado Springs, Colorado on June 26, 2016.[65] This purchase was made 1,845 days after Kelley's fingerprints were taken but not submitted by AFOSI on June 9, 2011; 1,693 days after his sentencing on November 7, 2012; 1,291 days after final disposition was reported to AFOSI Det 225 on 14 Dec 2012; 607 days after the DoD IG's October 29, 2014 Report; and 501 days after the DoD IG's February 12, 2015 Report.

---

[59] Report No. DODIG-2015-081 (Project No. 2013C006), "Evaluation of Department of Defense Compliance with Criminal History Data Reporting Requirements," February 12, 2015 (hereafter, "2015 Report") (Bates USA00011697-11732).
[60] 2015 Report, p. 5.
[61] 2015 Report, p. 8.
[62] 2015 Report, p. 22.
[63] 2015 Report, p. 24.
[64] ATF Form 4473, Firearms Transaction Record Part I - Over-the-Counter, dated April 7, 206 (Bates USA00012899 - USA00012907).
[65] ATF Form 4473, Firearms Transaction Record Part I - Over-the-Counter, dated June 26, 2016 (Bates USA00015371 - USA00015373).

SSS-002432

c. Kelly bought a Ruger SR22 from Academy Sports in Selma, Texas on October 18, 2017.[66] This purchase was made 2,324 days after Kelley's fingerprints were taken but not submitted by AFOSI on June 9, 2011; 1,807 days after his sentencing on November 7, 2012; 1,770 days after final disposition was reported to AFOSI Det 225 on 14 Dec 2012; 1,086 days after the DoD IG's October 29, 2014 Report; and 980 days after the DoD IG's February 12, 2015 Report.

27. <u>DoD IG report of December 4, 2017 ("2017 Report")</u>.[67] This DoD IG report reached two findings regarding the USAF: one for OSI and one for SF. "AFOSI submitted most but not all the required fingerprint cards and final disposition reports. We determined that it failed to submit 12 of 588 (2 percent) required fingerprint cards and 13 of 588 (2 percent) required final disposition reports."[68] Meanwhile, regarding SF compliance: "Air Force Security Forces did not consistently submit the required fingerprint cards and final disposition reports. We determined that it failed to submit 93 of 155 (60 percent) fingerprint cards and 93 of 155 (60 percent) required final disposition reports."[69] The USAF volunteered to take corrective action consistent with the report's recommendations.

a. AFOSI agreed to two compliance actions:

> Ensure that AFOSI command, supervisory, and management oversight controls verify compliance with fingerprint card and final disposition report submission requirements and ensure that such compliance is included as a special interest item in AFOSI IG inspections, and is actually conducted.

> … Conduct a comprehensive review of AFOSI criminal history reporting programs to ensure all applicable agency policy, training, fingerprinting, and final disposition report submission processes are consistent with DODI 5505.11, and are being implemented.[70]

b. Similarly, USAF SF leaders agreed to:

> a. Submit to the Federal Bureau of Investigation Criminal Justice Information Service the 93 Air force Security Forces fingerprint cards and 93 Air Force Security Forces final disposition reports that are not on file in the Federal Bureau of Investigation Next Generation Identification database.

> b. Immediately perform a comprehensive review of all Air Force Security Forces criminal investigative databases and files to ensure all fingerprint cards and final disposition reports for anyone investigated for, or convicted of, qualifying offenses at least to 1998 have been reported to the FBI CJIS in

---

[66]ATF Form 4473, Firearms Transaction Record Part I - Over-the-Counter, dated October 18, 2017 (Bates USA00012896 - USA00012898).
[67]Report No. DODIG-2018-035 (Project No. 2017-C002), "Evaluation of Fingerprint Card and Final Disposition Report Submissions by Military Service Law Enforcement Organizations," December 4, 2017 (hereafter, "2017 Report") (Bates SSS-000077 – 000168).
[68] *Id*. at p. 25.
[69] *Id*. at p. 29.
[70] *Id*. at p. 27.

11

compliance with DoD and FBI requirements.

c. Ensure Air Force Security Forces command, supervisory, and management oversight controls verify compliance with fingerprint card and final disposition report submission requirements and ensure such compliance is included as a special interest item in future IG inspections, and is actually conducted.

d. Conduct a comprehensive review of Air Force Security Forces criminal history reporting programs to ensure all fingerprinting and final disposition report submission policy, training, and processes are consistent with DODI 5505.11, and have been implemented.[71]

### November 5, 2017

28. On November 5, 2017, Kelley used an illegally purchased AR 556 rifle to commit a mass shooting at the First Baptist Church of Sutherland Springs, Texas. He killed 26 people and wounded another 20 in the congregation.

Any missing fingerprint card and final disposition report can have serious, even tragic, consequences, as may have occurred in the recent church shooting in Texas. The failure to populate FBI databases with all the required fingerprint records can result in someone purchasing a weapon who should not. It can also hinder criminal investigations and potentially impact law enforcement and national security interests.

It is therefore troubling that many fingerprint cards remained missing.[72]

29. Following Kelley's court-martial conviction on November 7, 2012, but prior to the November 5, 2017 shooting at the First Baptist Church of Sutherland Springs, Texas, neither the AFOSI Detachment 225 nor the 49th Security Forces Squadron submitted Kelley's fingerprints or final disposition report of conviction to the FBI CJIS Division, as required by DoD and Air Force instructions and policies.[73] Consequently, Devin Kelley's fingerprints and conviction were not in the FBI's National Instant Criminal Background Check System at any time before November 5, 2017.

### Congressional Response to Noncompliance

30. Congressional response to the DoD and USAF failures to submit Kelley's fingerprints and final disposition reports was swift. Senate Judiciary Committee hearings began with testimony submitted on December 6, 2017. At those hearings, the DoD IG, Mr. Glenn A. Fine's testimony confirmed the systemic noncompliance of the DoD and the USAF regarding submission of CHD to the FBI. testified:

---

[71] *Id*. at p. 31
[72] *Id*. at p. 6.
[73] *Supra*, n. 35 and n. 67.

SSS-002434

At the request of the Secretary of Defense, the OIG agreed to investigate what happened with regard to Mr. Kelley's records, and also to review more broadly the policies, practices, and procedures regarding when appropriate information is submitted by the DoD law enforcement agencies for entry into FBI databases. The OIG has begun that investigation and review.

However, the DoD OIG has previously performed several reviews that found deficiencies in the DoD's submission of required criminal history information to the FBI. Our first review was in 1997, where we found significant deficiencies in the Military Services' compliance with the requirement to submit criminal history data to the FBI. We also conducted reviews of specific types of criminal investigations by the Military Service law enforcement organizations, which also found problems with inconsistent submission of criminal history data.

In 2015, the DoD OIG issued another evaluation, again focusing specifically on the Military Services' submission of fingerprint cards and final disposition reports to the FBI. This review found non-compliance across the Military Services.

In February 2017, we began another evaluation to follow up on the 2015 review and to determine the Services' compliance with these requirements. Yesterday, we released the findings of that evaluation, in a report entitled, "Evaluation of Fingerprint Card and Final Disposition Report Submissions by Military Service Law Enforcement Organizations." That review found continued, significant deficiencies in submitting fingerprints and final disposition reports for convicted offenders across the Military Services.[74]
…

In another example, in Report No. DODIG-2015-011, "Evaluation of the Defense Criminal Investigative Organizations' Defense Incident-Based Reporting System (DIBRS) and Reporting Accuracy," October 29, 2014, the DoD OIG determined that the DoD was not reporting criminal incident data, such as the nature and types of specific offenses committed during the identified incident, characteristics of the victims, and information regarding the offenders and any other suspects arrested in connection with the incident, to the FBI for inclusion in the statistics for the FBI's annual Uniform Crime Reports, as required by Federal law.[75]

---

[74] DoD IG Glenn A. Fine Testimony before the Committee on the Judiciary, United States Senate, December 6, 2017 (Bates SSS-001114).
[75] *Id*., at p. 4 (Bates SSS-001117).

13

31. Mr. Fine later testified during a hearing that, "military services still do not consistently report . . . final disposition reports as required."[76] The services "didn't take [the IG's] recommendations as seriously as they should have."[77]

32. Secretary of the Air Force Heather Wilson provided her assessment of the USAF's past noncompliance.

> **(W)e have confirmed that Air Force Office of Special Investigations (AFOSI) and Security Forces investigators failed to report Devin Kelley's criminal history to the Federal Bureau of Investigation (FBI) for inclusion in their criminal history database**.
>
> Our inquiry indicates **the breakdown in submitting offender criminal history data was not limited to this case, or to Holloman Air Force Base. The problem was widespread** across both the Office of Special Investigations and the Air Force Security Forces. **Although some corrective measures were implemented after the 2015 Defense Department audit, particularly by Air Force OSI, the corrections made were not retroactive and current data from this year shows that we still are not reporting all offender criminal history data as required**.
>
> Since the tragedy, the Air Force has implemented additional measures to ensure current and future offender criminal history data is submitted to federal law enforcement agencies in a timely manner. In particular, we have added steps to our case management process so that there are checks in the system as cases are closed and archived not only at the local office, but at higher levels of command.[78]

33. Secretary Wilson described prior USAF responses to known compliance concerns "were insufficient," as "(o)ne of the things that was not done was a complete retroactive review . . . to ensure that previous cases that were not reported were properly reported."[79]

> (Question) I understand that when a military service such as the Air Force fails to comply with the Inspector General's recommendations with respect to policy, that there are no consequences for these failures unless Congress does oversight. But otherwise, there are no remedies to sufficiently make sure that the Air Force will comply with an Inspector General's recommendations.

---

[76] Video of Testimony before the Senate Judiciary Committee, December 6, 2017; Mr. Fine Testimony, at 1:08:17 (Bates SSS-001112).

[77] *Id*., at 1:20:33

[78] Secretary Wilson Testimony to the Committee on the Judiciary, United States Senate, December 6, 2017 (emphasis added) (Bates SSS-000404).

[79] Video of Testimony before the Senate Judiciary Committee, December 6, 2017; Secretary Wilson Testimony (Bates SSS-001112).

14

(Question) Do you think this is a problem – the lack of enforceability of an Inspector General's recommendations? Please explain.

(Answer) **All previous IG recommendations should have been implemented, but weren't. I am committed to ensuring all SAF-IG and DOD-IG recommendations are implemented**.[80]

34. Secretary Wilson concluded, "(w)e failed to submit criminal history data to the FBI when probable cause existed in the Air Force Office of Special Investigations and Air Force Security Forces investigations on Kelley, after Kelley's court-martial conviction, and also upon his post-trial confinement at Holloman AFB."[81]

**DoD IG Report of December 12, 2018 on USAF Failure to Submit
Kelley's Criminal History Information to the FBI**

35. The USAF fully participated in the DoD IG report of December 6, 2018.[82] The USAF agreed with the findings and recommendations, then volunteered again to take corrective actions consistent with the 2018 Report's recommendations.

36. Findings of the 2018 Report. Notable findings by the DoD IG were made.

   a. The USAF had four opportunities to submit Kelley's fingerprints to the FBI, as required by federal law and DoD and USAF regulations,[83] notably: DODI 5505.11; AFOSI Handbook 71-105; AFOSI Manual (AFOSIMAN) 71-118, volume 4; AFOSIMAN 71-121; AFI 31-205; and AFI 31-206.[84]

      (1) June 9, 2011 – when AFOSI Det 225 interviewed Kelley for alleged assault and battery of his stepson.[85]

      (2) February 17, 2012 – when 49th SFS interviewed Kelly for alleged domestic violence as assault under UCMJ.[86]

      (3) June 8, 2012 – when AFOSI interviewed Kelley for alleged assault and absence without leave under the UCMJ.[87]

---

[80] Secretary Wilson response to Senator Feinstein, December 13, 2017 (emphasis added) (Bates SSS-000409).
[81] Secretary Wilson response to Senator Hirono, December 13, 2017 (Bates SSS-000406).
[82] Report No. DODIG-2019-030, "Report of Investigation into the United States Air Force's Failure to Submit Devin Kelley's Criminal History Information to the Federal Bureau of Investigation," December 6, 2018 (hereafter, "2018 Report") (Bates 005112 – 005387 and Bates SSS000169-306).
[83] *Id.*, at pp. 61 – 80. (Bates SSS000233-252).
[84] See generally, Appendix E, Section II of this report for a list of authorities concerning fingerprint reporting and final disposition report submission requirements applicable to the USAF. *See also*, 2018 Report at pp. 61-80
[85] Bates USA00012953 and USA00013398.
[86] Bates USA00013340-13344.
[87] Bates USA00013972-13978.

SSS-002437

(4) November 7, 2012 – when Kelley was sentenced by a general court-martial for offenses punishable by confinement for more than one year.[88]

b. The USAF had two opportunities to submit Kelley's final disposition report to the FBI, as required by federal law and DoD and USAF regulations.[89]

(1) November 7, 2012 – when Kelley was sentenced by a general court-martial.[90]

(2) December 14, 2012 – when AFOSI Det 225 received the results of the Kelley general court-martial.[91]

c. "However, the USAF did not submit Kelley's fingerprints and final disposition report to the FBI at any time. If Kelley's fingerprints were submitted to the FBI, he would have been prohibited from purchasing a firearm from a licensed firearms dealer."[92]

d. "**Because his fingerprints were not submitted to the FBI CJIS Division, Kelley was able to purchase firearms, which he used to kill 26 people at the First Baptist Church of Sutherland Springs on November 5, 2017.**"[93]

e. "In sum, we concluded that AFOSI Detachment 225 **monthly supervisory reviews of Kelley's investigative case file were incomplete and ineffective** in identifying that Kelley's fingerprint cards remained in the investigative case file and had not been submitted to the FBI CJIS Division."[94]

37. <u>Recommendations of the 2018 Report</u>. The 2018 Report made eight specific recommendations, while incorporating by reference the DoD IG's 2017 Report recommendations.[95] Significant among all eight important recommendations were the following.

a. Recommendation Five of the 2018 Report. "We recommend that the Air Force review the Air Force Office of Special  Investigations formal training programs on the procedures and requirements for the collection and submission of fingerprints and final disposition reports to the Federal Bureau of Investigation Criminal Justice Information Services Division and ensure that the training adequately addresses the requirements of DoD Instruction 5505.11."[96]

b. Recommendation Six of the 2018 Report. "We recommend that the Air Force implement Air Force Security Forces formal training programs on the procedures and requirements for the

---

[88] Bates USA00012947.
[89] *Supra* n. 82, at pp. 80 - 87.
[90] *Id.* at p. 86.
[91] *Supra* n. 35, (Stipulation of Fact, p. 2., ¶ 6).
[92] *Id.*, at p. 2.
[93] *Supra* n. 82 at p. 61(emphasis added).
[94] *Id.*, at p. 90 (emphasis added).
[95] *Id.*, at p. 113 (emphasis added).
[96] *Id.*, at p. 115.

16

collection and submission of fingerprints to the Federal Bureau of Investigation Criminal Justice Information Services Division that are aligned with DoD Instruction 5505.11."[97]

c. Recommendation Eight of the 2018 Report. "We recommend that the Air Force review this report, the facts described in it, and any other relevant factors to assess the overall performance of the individuals described in this report and implement any administrative, performance, or disciplinary actions, as appropriate."[98]

38. The USAF Response to the 2018 Report was summarized by the DoD IG.

> The USAF concurred with this report and its recommendations. However, it did not provide specific actions that had addressed, or would address, each of the recommendations in this report.

> For example, the USAF described many actions it has taken after the November 5, 2017, shooting, such as reviewing archived cases files to ensure compliance with reporting requirements; establishing a centralized criminal justice indexing cell at Headquarters AFOSI; updating governing instructions and policies; providing digital fingerprint equipment to USAF processing locations; and providing mandatory refresher training for all AFOSI special agents on criminal history reporting. **The USAF's actions after the shooting, while significant, did not fully or directly address each of the specific recommendations we made in this report**.

> Moreover, we have not verified that the USAF's reported actions are complete or sufficient to fully address the recommendations in this report. In addition, as noted earlier in this report, we are currently conducting a separate evaluation of all the Military Services' actions in implementing corrective actions after the November 5, 2017, shooting. That separate evaluation will include an assessment of the USAF's corrective actions after the shooting.

> Therefore, because the USAF concurred with the recommendations in this report, the recommendations are resolved but remain open. We will close these recommendations once we verify that the USAF has implemented sufficient corrective actions to fully address each of the specific recommendations in this report.[99]

39. On February 6, 2019, HQ AFOSI released a statement "OSI owns indexing response, way ahead."[100] This release recalled that the DoD IG 2018 Report "concluded the Air Force could have prevented Kelley from legally buying a weapon and committing the mass shooting, had its

---

[97] *Id*.
[98] *Id*., at p. 116.
[99] *Id*., at p. 117 (emphasis added).
[100] Bates SSS-001330 - 001332.

17

investigators followed proper protocol and established a criminal history record."[101] As a result of the shooting, AFOSI stood up a NCIC Task Force that had reviewed files from 2002 – 2017 and "identified 6,978 files with no OSI criminal history record"[102] for qualifying offenses.

## VI. Documents Reviewed and Considered

40. I read, reviewed and considered materials provided to me from Attorney Demerath's office and from the office of Mr. Jamal K. Alsaffar, Esquire of Whitehurst, Harkness, Brees, Cheng, Alsaffar, Higginbotham, & Jacob PLLC. I read, reviewed and considered the court's opinion in *Holcombe v. United States*, 388 F.Supp.3d 777 (USDC, W.D. Tex. 2019). I also conducted independent research of matters referenced in materials provided to me. All materials considered in forming my opinions, from any source, follow below.

    a. All documents listed in Appendix E.

    b. <u>DoD IG Reports</u>.

       (1) DoD IG Report, Project No. 60F-9040, "Evaluation of Compliance With DoD Criminal Investigations Policy Memorandum Number 10, Criminal History Data Reporting Requirements" February 10, 1997 ("1997 Report") (Bates 011166 – 011220).

       (2) Report No. DODIG-2015-011, "Evaluation of the Defense Criminal Investigative Organizations' Defense Incident-Based Reporting System Reporting and Reporting Accuracy," October 29, 2014 ("2014 Report") (Bates 017735 – 017774).

       (3) Report No. DODIG-2015-081 (Project No. 2013C006), "Evaluation of Department of Defense Compliance with Criminal History Data Reporting Requirements," February 12, 2015 ("2015 Report") (Bates 011697 – 011732).

       (4) Report No. DODIG-2018-035 (Project No. 2017-C002), "Evaluation of Fingerprint Card and Final Disposition Report Submissions by Military Service Law Enforcement Organizations," December 4, 2017 ("2017 Report") (Bates SSS-000077 – 000168).

       (5) Report No. DODIG-2019-030, "Report of Investigation into the United States Air Force's Failure to Submit Devin Kelley's Criminal History Information to the Federal Bureau of Investigation," December 6, 2018 ("2018 Report") (Bates 005112 – 005387).

    c. <u>USAF Records, Investigation Records, and General Court-Martial Records of Kelley</u>.

       (1) AFOSI Det 225 Case Notes in Excel (Bates USA00019707).

---

[101] *Id.*
[102] *Id.*

SSS-002440

(2) AFOSI Det 225, 12MS Case FILE No. 225-C-128-G—32329111651413, Subject: Devin Patrick Kelley; Opened June 15, 2011; Closed December 14, 2012; 789 pp., (Bates USA00013393).

(3) Personal Information File (PIF).[103]

(4) Report of Result of Trial.[104]

(5) GCMO No. 10.[105]

(6) GCMO No. 53.[106]

   d. <u>Firearm Transfer Records of Kelley</u>.

(1) December 22, 2014; Glock 9mm; Colorado Springs, CO.[107]

(2) April 7, 2016; AR 5.56; Texas[108]

(3) June 26, 2016; Ruger .357; Colorado Springs, CO.[109]

(4) October 18, 2017. Ruger .22; Selma, Texas.[110]

   e. <u>Congressional Testimony</u>.

(1) Statement of Glenn A. Fine, Department of Defense Principal Deputy Inspector General, Performing the Duties of the Inspector General for a hearing on "Firearm Accessory Regulation and Enforcing Federal and State Reporting to the National Instant Criminal Background Check System (NICS)", Before the Senate Judiciary Committee, December 6, 2017 (SSS-001113 thru 1121).

(2) Statement of Douglas E. Lindquist, Assistant Director, Criminal Justice Information Services (CJIS) Division, Federal Bureau of Investigation, U.S. Department of Justice, Before the Committee on the Judiciary, United States Senate, For a Hearing Entitled "Firearm Accessory Regulation and Enforcing Federal and State Reporting to the National Instant Criminal

---

[103] Bates USA00014693-94.
[104] *Supra* n. 41.
[105] *Supra* n. 42.
[106] *Supra* n. 48.
[107] *Supra* n. 56.
[108] *Supra* n. 64.
[109] *Supra* n. 65.
[110] *Supra* n. 66.

19

Background Check System (NICS)", December 6, 2017 (Bates 010238 - 010243) (SSS-001125 – 001129).[111]

(3) The Honorable Heather Wilson, Secretary of the Air Force, Statement before Committee on the Judiciary, United States Senate, December 6, 2017 (SSS-000404 thru 405).

(4) Questions for the Record for Secretary of the United States Air Force Heather Wilson, Submitted by Senator Mazie K. Hirono, December 13, 2017 (SSS-000406 thru 407).

(5) Questions for the Record for Secretary of the United States Air Force Heather Wilson, Submitted by Senator Richard Blumenthal, December 13, 2017 (SSS-000408).

(6) Questions for the Record for Secretary of the United States Air Force Heather Wilson, Submitted by Senator Dianne Feinstein, December 13, 2017 (SSS-000409 thru 410).

f. <u>Depositions</u>. Depositions and Exhibits Referenced During the Deposition.

(1) <u>Deposition Transcript of Special Agent Robert Spencer</u>. September 18, 2019.

(i) Exhibit 1, Notice of Deposition, 12 pp.

(ii) Exhibit 2, DoD IG Report of December 6, 2018, 138 pp.

(iii) Exhibit 3, DoD IG Report of October 29, 2014, 40 pp.

(iv) Exhibit 4, Probable Cause Determination – A1C Devin P. Kelley, 49 LRS, 10 Jun 2012, 2 pp.

(v) Exhibit 5, DoD 7730.47-M, Vol. 1, December 7, 2010, 83 pp.

(vi) Exhibit 6, AFI 31-206, *Security Forces Investigations Program*, 16 Sep 2009, 69 pp. (Bates USA00003962)

(vii) Exhibit 7, AFI 31-205, *The Air Force Corrections System*, 7 Apr 2004,  156 pp. (Bates USA00001650)

(viii) Exhibit 8, AFOSI Manual 71-121, *Processing and Reporting Investigative Matters*, 13 Jan 2009, 302 pp. (Bates USA00000418)

(ix) Exhibit 9, DODI 5505.11, July 9, 2010 (Incorporating Change 1, May 3, 2011), 13 pp. (Bates USA00001806)

---

[111] I noted this same document was provided in a different format by Defendant (Bates US 010238 – 010243) and again by Plaintiff (SSS 001148 - 001152).

20

(x) Exhibit 10, FD-249 Fingerprint Form (blank), 2 pp.

(xi) Exhibit 11, R-84, Final Disposition Report (blank), 2 pp.

(xii) Exhibit 12, Resume of Robert L. Spencer, Jr., 1 p.

(xiii) Exhibit 13, DoD IG Report of February 12, 2015, 36 pp.

(xiv) Exhibit 14, DoD IG Report of December 4, 2017. 92 pp.

(2) <u>Deposition Transcript of Kimberly J. Del Greco</u>. November 21, 2019.

(i) Exhibit 1, Notice of Deposition 12 pp.

(ii) Exhibit 2, NICS Overview, 41 pp. (Bates 00016319).

(iii) Exhibit 3, NICS Operations: 2016, 35 pp.

(iv) Exhibit 4, FD-249 of A1C Devin P. Kelley, 49 LRS, June 9, 2011 and FDR, Form R-84 (blank), 6 pp. (Bates USA00012953).

(v) Exhibit 5, 18 U.S.C § 922(g) Offenses Under UCMJ Comparison Chart, 1 p. (Bates USA00016833).

(vi) Exhibit 6, Sandra Mercuri, DoD IG Email Correspondence with FBI CJIS from November 6, 2017 through Jan 23, 2018, 4 pp. (Bates USA00016837).

(vii) Exhibit 7, ATF Form 4473 (Academy), April 7, 2016, 8 pp. (Bates USA00012899).

(viii) Exhibit 8, Devin Patrick Kelley Criminal History Record, dated November 6, 2017, 4 pp. (Bates USA00012840).

(ix) Exhibit 9, MOU Between DoD and FBI Regarding the Provision and Use of "Prohibited Persons" Data, 14 pp. (Bates USA00004115).

(x) Exhibit 10, Multiple Kelley Investigative Documents: DoD IG Report of December 6, 2018, Kelley OMPF Records, Kelley Firearms Transfer Records, and MCM Extract, 402 pp.

(xi) Exhibit 11, Guidance to Agencies Regarding Submission of Relevant Federal Records to NICS, 18 pp. (Bates USA00016664).

(xii) Exhibit 12, DoD Correspondence to DoJ in response to "Guidance to Agencies Regarding Submission of Relevant Federal Records to the National Instant Background Check System (NICS), 4 pp. (Bates USA00012814).

21

(xiii) Exhibit 13, MOU Between DoD and FBI on the Provision of Data to the National Instant Criminal Background Check System, 24 pp. (Bates USA00004091).

(3) <u>Deposition Transcript of Colonel Owen W. Tullos</u>. December 4, 2019.

(i) Exhibit 1, Notice of Deposition, 5 pp.

(ii) Exhibit 2, DODI 5505.11, July 9, 2010, 13 pp.

(iii) Exhibit 3, AFOSI Man 71-121, Jan 13, 2009 (IC-5, October 12, 2012), 29 pp.

(iv) Exhibit 4, AFI 51-201 (Extract), June 6, 2013, 6 pp.

(v) Exhibit 5, **DoD Man 7730 47-M Volume 1 (Extract), December 7, 2010, 2 pp.**

(vi) Exhibit 6, AFI 51-201 (Extract), June 6, 2013, 3 pp.

(vii) Exhibit 7, AF Form 1359, Report of Result of Trial, November 7, 2012, 2 pp.

(viii) Exhibit 8, AFOSI PowerPoint Brief: Case Closure & Criminal Indexing (undated), 30 pp.

(ix) Exhibit 9, Tullos Interview, December 5, 2017, 2 pp.

(x) Exhibit 10, Countryman Interview, December 21, 2017, 3 pp.

(xi) Exhibit 11, ATF Legal Memorandum (undated)

(xii) Exhibit 12, Conditional Barment Memo, March 22, 2013, 1 p.

(4) <u>Deposition Transcript of Jacqueline Albright</u>. December 5, 2019.

(i) Exhibit 1, Notice of Deposition, 5 pp.

(ii) Exhibit 2, AFOSI File No: 17HQC DI-D62 (Extract), 2 pp.

(5) <u>Deposition Transcript of Yonatan Holz</u>. December 13, 2019.

(i) Exhibits 1, Notice of Deposition, 5 pp.

(ii) Exhibit 2, Subpoena, December 12, 2019, 2 pp.

(iii) Exhibit 3, DODI 5505.11, July 9, 2010 (Incorporating Change 1, May 3, 2011), 13 pp.

(iv) Exhibit 4, AFOSI Man 71-121, Jan 13, 2009 (IC-5, October 12, 2012), 25 pp.

22

SSS-002444

(v) Exhibit 5, AFOSI Handbook 71-105, March 9, 2009 (Certified current April 11, 2012), 53 pp.

(vi) Exhibit 7, Audio Transcription Interview of SA Holz, June 18, 2018, 53 pp.

(vii) Exhibit 8, AFOSI Kelley ROI I2MS Case File (Extract), December 14, 2012, 35 pp.

(viii) Exhibit 10, Kelley PIF (undated), 2 pp.

(ix) Exhibit 12, AFOSI Decision Guide for Taking Fingerprints, 1 p.

(x) Exhibit 13, AF Form 1359, Report of Result of Trial, November 7, 2012, 1 p.

(xi) Exhibit 14, FD-249 (Fingerprint Card) dated June 9, 2011; and R-84 (FDR) undated, 6 pp.

(xii) Exhibit 15, R-84, Final Disposition Report (blank), 2 pp.

(xiii) Exhibit 16, AFOSI I2MS Lesson Plan, January 7, 2010, 13 pp.

(xiv) Exhibit 17, Article 32 IO Exhibits, undated, 13 pp.

(xv) Exhibit 18, LOR, April 17, 2012, 2 pp.

(xvi) Exhibit 19, Pretrial Confinement Memo, June 8, 2012, 4 pp.

(xvii) Exhibit 20, Conditional Barment Memo, March 22, 2013, 1 p.

(xviii) Exhibit 21, ATF Legal Memo, undated, 7 pp.

(xix) Exhibit 22, Yonatan Holz resume, undated, 3 pp.

(xx) Exhibit 23, SA Holz Letter of Censure, March 15, 2019, 1 p.

(6) <u>Deposition Transcript of Shelley Ann Verdego</u>. December 17, 2019.

(i) Exhibit 1, Notice of Deposition, 12 pp.

(ii) Exhibit 2, Defendant Supplemental Disclosures, undated, 2 pp.

(iii) Exhibit 3, DoD IG Report of October 29, 2014, 40 pp.

(iv) Exhibit 4, Guidance to Agencies Regarding Submission of Relevant Federal Records to NICS, March 2013, 19 pp.

(v) Exhibit 5, Cover Letter to DoD Response to AG Holder, May 24, 2013, 4 pp.

23

(vi) Exhibit 6, MOA between DMDC and FBI re DPRIS, September 2016, 9 pp.

(vii) Exhibit 7, MOU between DoD and FBI re "Prohibited Persons" Data, 14 pp.

(viii) Exhibit 8, DODI 7730.47 (DIBRS), January 23, 2014, 8 pp.

(ix) Exhibit 9, DoDD 7730.47 (DIBRS), October 15, 1996, Certified Current as of December1, 2000, 9 pp.

(x) Exhibit 10, DoD Manual 7730.47-M (DBIRS), Volume 1, December 7, 2010, 83 pp.

(xi) Exhibit 11, DIBRS Kelley Administrative Segment, October 21, 2013, 1 p.

(xii) Exhibit 12, DIBRS Entry for Kelley, October 21, 2013, 1 p.

(xiii) Exhibit 13, DODI 5505.11, July 9, 2010 (Incorporating Change 1, May 3, 2011), 13 pp.

(7) Deposition Transcript of Colonel John Owen. December 18, 2019.

(i) Exhibit 1, Notice of Deposition, 12 pp.

(ii) Exhibit 2, AFI51-201_AFGM1 (Extract), April 4, 2011, 28 pp.

(iii) Exhibit 3, SPCM Checklist, MCM 2012 Edition, 41 pp.

(iv) Exhibit 4, Report of Result of Trial Checklist, December 2, 2013, 2 pp.

(v) Exhibit 5, Defendant Supplemental Disclosures, undated, 2 pp.

(vi) Exhibit 6, AFI 31-118, March 5, 2014 (IC-1, December 2, 2015), 12 pp.

(vii) Exhibit 7, AFOSI Manual 71-121, January 13, 2009 ((IC-4, October 13, 2010), pp.

(viii) Exhibit 8, AFI 51-201 (Extract), June 6, 2013, 8 pp.

(8) Deposition Transcript of James Hoy. January 7, 2020.

(i) Exhibit 1, Text String, undated, 5pp.

(ii) Exhibit 2, Kelley ROI, I2MS Case File, December 14, 2012, 789 pp.

(iii) Exhibit 3, DoD IG Report of December 6, 2018, 138 pp.

(iv) Exhibit 4, ATF Form 4473, Firearms Transaction Record, April 7, 2016, 2 pp.

24

SSS-002446

(v) Exhibit 5, DODI 6490.4, August 28, 1997, 34 pp.

(vi) Exhibit 6, Photograph, undated, 1 p.

(vii) Exhibit 7, SAF/IGX Memo to DoD/IG (Investigative Policy and Oversight), July 5, 2018, 116 pp.

(viii) Exhibit 8, AFOSI Closed Investigation File Checklist, January 13, 2009, 2 pp.

(ix) Exhibit 9, Text string, undated, 7 pp.

(x) Exhibit 10, Email Hoy and Bustillo from November 2017, last sent January 3, 2020, 2 pp.

(xi) Exhibit 11, AFI 40-301 (Extract), November 16, 2015 (IC-1, October 12, 2017), 2 pp.

(xii) Exhibit 12, ATF Legal Memo, undated, 7 pp.

(xiii) Exhibit 13, DODI 5505.11, July 9, 2010 (IC-1, May 3, 2011), 13 pp.

(xiv) Exhibit 14, Pretrial Confinement Memo, June 8, 2012, 4 pp.

(xv) Exhibit 15, Conditional Barment Memo, March 22, 2013, 1 p.

(9) <u>Deposition Transcript of Nathan McLeod-Hughes</u>. January 9, 2020.

(i) Exhibit 1, Notice of Deposition, 5 pp.

(ii) Exhibit 2, DODI 5505.11, July 9, 2010 (IC-1, May 3, 2011), 13 pp.

(iii) Exhibit 3, AFI 31-206, September 16, 2009, 69 pp.

(iv) Exhibit 4, CRB Incident Determination, October 21, 2011, 1 p.

(v) Exhibit 5, LOR, April 17, 2012, 2 pp.

(vi) Exhibit 6, Kelley Barment File, Served April 1, 2013, 78 pp.

(vii) Exhibit 7, CRB Incident Determination, May 17, 2012, 1 p.

(viii) Exhibit 8, Xavier Alvarez Memorandum re June 7, 2012, 1 p.

(ix) Exhibit 9, AF Form 1359, Report of Result of Trial, November 7, 2012, 2 pp.

(10) <u>Deposition Transcript of Clinton Mills</u>. January 10, 2020.

25

(i) Exhibit 1, Notice of Deposition, 5 pp.

(ii) Exhibit 2, AF Form 3985, Interview Record, June 8, 2012, 2 pp.

(iii) Exhibit 3, Interview Summary of SA Mills, July 1., 2018, 3 pp.

(iv) Exhibit 4, AFOSI Interview Summary of SA Mills, November 7, 2017, 1 p.

(v) Exhibit 5, AF IMT 1168, Statement of MSgt Wolfe, April 29, 2012, 2 pp.

(11) <u>Deposition Transcript of Ryan Sablan</u>. January 14, 2020.

(i) Exhibit 1, AFI 31-206, September 16, 2009, 69 pp.

(ii) Exhibit 2, FD-249, Fingerprint Card (blank), undated, 2 pp.

(iii) Exhibit 3, R-84, FDR (blank), undated, 2 pp.

(iv) Exhibit 4, Weapons Storage documents, April 26, 2012, 2 pp.

(v) Exhibit 5, ATF Form 4473 (Holloman Exchange), February 12, 2012, 3 pp. (Bates USA00012908).

(vi) Exhibit 6, DODI 5505.11, July 9, 2010 (IC-1, May 3, 2011), 13 pp.

(vii) Exhibit 7, 49 SFS Investigation, Incident date February 28, 2012, 14 pp.

(viii) Exhibit 8, DoD IG Report of December 6, 2018, 138 pp.

(ix) Exhibit 9, Audio Transcription of Interview of Ryan Sablan, December 28, 2017, 25 pp.

(x) Exhibit 10, AFMT 1168, Statement of Tessa Kelley, February 17, 2012, 3 pp.

(xi) Exhibit 11, No Contact Order, Acknowledged February 17, 2012, 2 pp.

(xii) Exhibit 12, Sandra Durling (Kelley mother-in-law) Email, April 27, 2012, 2 pp.

(xiii) Exhibit 13, Pretrial Confinement Memo, June 8, 2012, 3 pp.

(xiv) Exhibit 14, AF Form 1359, Report of Result of Trial, November 7, 2012, 2 pp.

(xv) Exhibit 15, Capt Johnson (JA) Email to 49 LRS/CC, November 7, 2012, 2 pp.

(xvi) Exhibit 16, Conditional Barment Memo, March 22, 2013, 1 p.

26

(12) <u>Deposition Transcript of James Hudson</u>. January 16, 2020.

    (i) Exhibit 1, Notice of Deposition, 5 pp.

    (ii) Exhibit 2, Col Hudson, AF biography, July, 2016, 3 pp.

    (iii) Exhibit 3, Col Hudson Interview Summary, February 7, 2018, 7 pp.

    (iv) Exhibit 4, Art. 92, UCMJ, 2 pp.

    (v) Exhibit 5, Email from Col Hudson to SA Taylor, November 1, 2012, 2 pp.

    (vi) Exhibit 6, AF Form 932, Performance Feedback to SA Taylor, October 25, 2012, 2 pp.

    (vii) Exhibit 7, Email from Col Hudson to FIR 2-Det CCs, September 18, 2012, 2 pp.

(13) <u>Deposition Transcript of Lt Col Robert C. Bearden</u>. January 16, 2020.

    (i) Exhibit 1, Notice of Deposition, 5 pp.

    (ii) Exhibit 2, Lt Col Bearden, AF biography, January, 2017, 2 pp.

    (iii) Exhibit 3, Work Paper on Interview of Lt Col Bearden, January 11, 2018, 3 pp.

    (iv) Exhibit 4, Duty Status Change form, Effective March 31, 2013, 2 pp.

    (v) Exhibit 5, Col Bearden, AF biography, October, 2019, 2 pp.

    (vi) Exhibit 6, Undated Exhibit Cover Sheet, 1 p.

    (vii) Exhibit 7, Notification of AFOSI Investigation, June 15, 2011, 1 p.

    (viii) Exhibit 8, CRB Incident Determination, October 21, 2011, 2 pp.

    (ix) Exhibit 9, LOR, February 16, 2012, 2 pp.

    (x) Exhibit 10, LOR, April 17, 2012, 2 pp.

    (xi) Exhibit 11, ATF Form 4473 (Holloman Exchange) and Receipt, February 12, 2012, 3 pp. (Bates USA00012908-12910).

    (xii) Exhibit 12, ATF Form 4473 (Holloman Exchange) and Receipt, April 12, 2012, 3 pp. (Bates USA00012136-12140).

    (xiii) Exhibit 13, Firearm storage Memo, April 26, 2012, 1 p.

27

(xiv) Exhibit 14, 49 SFS Incident Report, February 28, 2012, 6 pp.

(xv) Exhibit 15, AFI 40-301 (Extract), November 16, 2015 (IC-1, October 12, 2017), 6 pp.

(xvi) Exhibit 16, ATF Legal Memo, undated, 7 pp.

(xvii) Exhibit 17, Xavier Alvarez Memorandum re June 7, 2012, 1 p.

(xviii) Exhibit 18, Pretrial Confinement Memo, June 8, 2012, 4 pp.

(xix) Exhibit 19, CRB Incident Determination, May 17, 2012, 1 p.

(xx) Exhibit 20, DD Form 458, Charge Sheet, preferred July 26, 2012, 4 pp.

(xxi) Exhibit 21, DD Form 458, Charge Sheet – Additional Charge, preferred August 15, 2012, 4 pp

(xxii) Exhibit 22, AF Form 1359, Report of Result of Trial, November 7, 2012, 2 pp.

(xxiii) Exhibit 23, Conditional Barment Request, March 22, 2013, 1 p.

(xxiv) Exhibit 24, Kelley Barment Legal Review, March 27, 2013, 2 pp.

(xxv) Exhibit 25, Kelley Barment Order, March 29, 2013, 4 pp.

(xxvi) Exhibit 26, DMDC Review of Kelley Records, signed February 2, 2018, 3 pp.

(14) <u>Deposition Transcript of Lyle Bankhead</u>. February 27, 2020. 176 pp.

(15) <u>Deposition Transcript of Randall Taylor</u>. February 25, 2020. 215 pp.

g. <u>Other Documents</u>.

(1) AFOSI ROI 17HQCDI-062, Investigation of Air Force Member Active Shooting and Criminal History Reporting (DoD OIG Project No. 2018C004) (Data Call 1), July 5, 2018, 116 pp., (Bates USA00015525).

(2) Sandra Mercuri, DoD IG Email Correspondence with FBI CJIS from November 6, 2017 through Jan 23, 2018 (Bates USA00016837-40).

(3) Press Release: "OSI owns indexing response, way ahead", by Wayne Amann, AFOSI Public Affairs, February 06, 2019 (SSS-001330 – 001332).

(4) Mr. Barry Orlow, Associate Chief Counsel, ATF Law and Policy Division, Memorandum re Devin Patrick Kelley, undated, 7 pp. (Bates USA00005399).

28

## VII. Basis for Professional Opinions

41. This report is based on a combination of:

a. My education and experience as a military officer in the USAF Judge Advocate General Corps.[112]

b. My knowledge of USAF and DoD policies and procedures during and subsequent to my active duty military service;[113]

c. My training and experience as a command SJA, deputy SJA and assistant SJA, in advice to military commanders, military magistrates and military defense clients on military justice matters ranging from pretrial confinement hearings, probable cause determinations for search and seizure, nonjudicial punishment and courts-martial disposition recommendations.

d. My knowledge and experience on special courts-martial and general courts-martial cases as both trial counsel and defense counsel concerning alleged UCMJ offenses arising within the USAF and other DoD service components;

e. My experience advising USAF Security Forces (SF) investigators, Air Force Office of Special Investigations (AFOSI) special agents, IG investigating officers (IOs) and The Judge Advocate General of the USAF on investigations, of both alleged military offenses under the Uniform Code of Military Justice (UCMJ)[114] and on collateral matters of command IG investigations and commander-directed investigations on mishaps or serious incidents of alleged fraud, waste and abuse of authority; and,

f. My review of all materials submitted to me by your office, which are listed in this report, of particular importance was the December 6, 2018 Report by the DoD IG.[115]

## VIII. Professional Opinions

42. In my professional opinion, based on the data provided,[116] the DoD IG Report of December 6, 2018 provided accurate findings and recommendations. I fully agree with the 2018 Report's findings, conclusions and recommendations and adopt the report's findings.

43. In my professional opinion, based on the data provided, the DoD and USAF undertook six specific duties regarding criminal history data (CHD) as participants in a national background-check information system to limit gun violence as desired by Congress. The DoD and USAF endeavored to take the following actions to collect reportable CHD to the FBI:

---

[112] *See*, Appendix A – C.
[113] *See*, Appendix A.
[114] 10 U.S. Code §§ 801–946.
[115] *Supra* n. 82.
[116] As detailed in Section VI, above.

SSS-002451

a. <u>Duty One – Fingerprint Collection and Submission</u>. Timely collection and submission to the FBI of fingerprints on Form FD-249 by OSI personnel, particularly special agents serving as case agents or lead investigators, and by SF Squadron personnel, particularly among Security Forces Office of Investigations (SFOI), SF confinement facility personnel. Obtain and submit fingerprints on any servicemember deemed a prohibited person under federal gun control laws in accordance with pertinent DoD and USAF regulations and policies.

(1) For example, Department of Defense Instruction (DODI) 5505.11 required OSI and SF personnel at Det. 225 to both collect and submit Devin Kelley's fingerprints to the FBI. DODI 5505.11 is a mandatory, non-discretionary, instruction that all law enforcement divisions within the DoD, including the Air Force must follow. The instructions also mandate that law enforcement organizations within DoD, like Det. 225 OSI agents and the 49th SF investigators to coordinate with their on-base Staff Judge Advocates (SJA) on probable cause determinations for qualifying offenses on every suspect that meets that criteria. Devin Kelley was such a suspect because he was being investigated for qualifying offenses (art. 128 assault is a DODI 5505.11 qualifying offense). And upon probable cause determinations, the OSI and SF agents are required to submit the collected fingerprints to the FBI.

(2) AFOSI Manual 71-121 is one of the mandatory instructions that implements the DODI 5505.11 mandatory duties. Air Force Security Forces Instruction 31-205 and 31-206 are the mandatory non-discretionary Security Forces instructions that implement the 5505.11 submission requirements on the SF side. All of these mandatory instructions were violated by the Det. 225 special agents and the 49th SF investigators in the Devin Kelley case. The Air Force's designated representative, Special Agent Robert Spencer confirmed that the DODI instruction 5505.11, AFOSIMAN 71-121, AFI 31-205, and AFI 31-206 were mandatory non-discretionary instructions that Det. 255 and 49th SF personnel had to follow.[117]

(3) AFOSI Det. 225 special agents were either unaware of their collection and submission mandatory duties or uncertain about the timing of fingerprint submission. They often expressed confusion about their mandatory obligations, even contradicting one another. For example, Special Agent Holz, a Det. 225 agent assigned to the Kelley investigation, testified that not only did he not know how to submit fingerprint data to the FBI upon a probable cause determination, he also thought the I2MS system *automatically* sent the fingerprint information to the FBI.[118]

(4) Likewise, the 49th SFS investigator TSgt Sablan testified that his unit didn't submit fingerprints until there was a conviction because that was what the 49th SFS at Holloman AFB taught him to do.[119] This confusion extended to other law enforcement agents at Holloman AFB as well. Special Agent Hoy was involved in the Devin Kelley investigation at Det. 225 and also assumed that the I2MS system automatically sent the fingerprints to the FBI, even though he knew the electronic fingerprint machine at the base rarely worked.[120]

---

[117] Deposition of Robert Spencer, pp. 34-36, 53, 97-98.
[118] Holz Deposition, pp. 186-188, 194.
[119] Sablan Deposition, pp. 105-106.
[120] Hoy Deposition, pp. 49-50.

SSS-002452

(5) Even the Det. 225 supervisory agent, Special Agents in Charge (SAIC) Lyle Bankhead admitted that the confusion extended to the Air Force's own manuals. DODI 5505.11 required the Devin Kelley investigators to submit his fingerprints to the FBI upon a probable cause finding, fingerprints  agents admit they had as early as June 2011.[121] And both the Det. 225 and 49th SFS had the necessary probable cause to submit Devin Kelley's fingerprints to the FBI no later than April 29, 2012 because Kelley provided them a video-taped confession by then.[122] But the Air Force created an agent's guide (not a mandatory one) that contradicted the mandatory instructions found of DODI 5505.11 and AFOSIMAN 71-121. For example, Lyle Bankhead, one of the Det. 225 SAICs during the Kelley investigation admitted that AFOSI Handbook 71-105 and AFOSIMAN 71-121 contradicted each other on the timing of fingerprint and conviction submission. Bankhead testified that while AFOSIMAN 71-121 correctly required submission upon a probable cause finding, and immediately upon notice of a conviction, AFOSI Handbook 71-105 instructed agents to hold onto both until *after appellate review* was completed.[123]

(6) Additionally, the record demonstrates a failure to appropriately maintain the criminal investigation file. For example, SAIC Taylor testified that when he arrived at Det. 225, the Kelley file had been closed administratively without a conviction or other resolution. He had to reopen the file.[124] This was a part of Det. 225's larger systemic problems (e.g., files strewn across the place, agents not wearing appropriate attire, a broken fingerprint machine, being understaffed, etc.)[125] In another example, Special Agent Mills filled out AF Form 3985 attesting that he had fingerprinted Devin Kelley on 8 Jun 2012.[126] Yet, the United States stipulated that no fingerprints were taken on that date.[127] So, either Agent Mills signed a document attesting to collecting fingerprints without actually doing so, or Agent Mills collected fingerprints and AFOSI Det. 225 record-keeping failed to properly maintain the file.

(7) Also, the Det. 225 special agents and 49th SFS investigators did not comply with the probable cause coordination with the SJA s required by DODI 5051.11 and AFOSIMAN 71-121. Neither Det. 225 nor 49th SF were even aware that they were supposed to coordinate with SJA on probable cause determinations for all suspects under investigation for qualifying offenses for the purpose of submitting the criminal history data to the FBI. Det. 225 and 49th SF agents investigating Devin Kelley (including supervisory agents) testified that they did not know they were required to coordinate with the SJA to make probable cause determinations for the purposes of submission to the FBI.[128] What's more, the Det. 225 special agents held *weekly* meetings with the SJA yet never discussed investigatory sufficiency relating to criminal history data submission on any of the case files reviewed, including Devin Kelley's.[129] During the course of Devin Kelley's

---

[121] Holz Deposition, pp.95-96
[122] See Generally, Holz Deposition pp.237-243; Hoy Deposition; Sablan Deposition, p.111. p.115; Bankhead Deposition, pp. 155-156.
[123] Bankhead Deposition, pp. 92-93, Taylor Deposition pp27-28.
[124] Taylor Deposition, p. 79.
[125] Taylor Deposition, pp. 24-25.
[126] Devin Kelley AFOSI File, pp. 60-61 (USA00013452-53).
[127] Joe Holcombe, et al., Plaintiffs, v. United States of America, Defendant, Civil Action No. 5:18-CV-555-XR ECF No. 149, ¶ 3 (Oct. 4, 2019).
[128] Holz Deposition, pp. 97-98; Taylor Deposition, pp. 200-201; Bankhead Deposition, pp. 136-137, 168;
[129] Holz Deposition, pp.93-95.

SSS-002453

investigation alone, these were 39-52 opportunities missed to properly submit Kelley's CHD to the FBI.

(8) As discussed more fully below, the Air Force failed in its duty to reconcile these contradictions and gaps in understanding that undermined the mandatory non-discretionary instructions. DODI specifically orders DoD law enforcement personnel "within 15 days after final disposition of military judicial or nonjudicial proceedings…disposition information *shall be reported* by the DCIO or other DoD law enforcement organizations on the R-84….*Do not hold* the FD-249 or R-84 pending appellate actions."[130] Similarly, AFOSIMAN instructs that "within 15 calendar days after final disposition of military judicial or non-judicial proceedings…disposition information shall be reported on the R-84….*Do not hold* the FD-249 or R-84 pending appellate actions. Both Det. 225 and 49th SF received notice of Devin Kelley's Trial Result (and qualifying conviction) on Nov. 7, 2012. Therefore, the mandatory provisions required submission of Devin Kelley's fingerprints and conviction report no later than Nov. 22, 2012, or soon thereafter. But they did not.

   b. <u>Duty Two – Final Disposition Report Preparation and Submission</u>. Send to the FBI any required Final Disposition Report, Form R-84, as required of OSI personnel, particularly special agents serving as case agents or lead investigators, and by SF Squadron personnel, particularly among Security Forces Office of Investigations (SFOI) and SF confinement facility personnel. Complete and submit Final Disposition Reports on Form R-84 forms to the FBI of any servicemember deemed a prohibited person under federal gun control laws in accordance with pertinent DoD and USAF regulations and policies.

   (1) As discussed in paragraph 43(a) above, the Det. 225 and 49th SF agents and investigators simply did not follow the mandatory instructions found in DODI 5505.11 and AFOSIMAN 71-121 which both required submission of Kelley's R-84 within 15 days of receipt of the final result of trial, which occurred on Nov. 7. 2012. As discussed above, the agents were simply ignorant of the mandatory requirements, and some thought the conviction and fingerprint data had to be withheld until final appellate review. But even then, Kelley's conviction and fingerprint data were not submitted to the FBI. They never were. Unfortunately, had the Det. 225 and 49th SFS personnel submitted Kelley's criminal history data even under the erroneous appellate timeframe, Kelley would not have been able to purchase the weapons he used in the Sutherland Springs shooting.

   (2) Remarkably, even with a closed filed checklist provided within AFOSIMAN 71-121, the supervisory agents in charge at Det. 225 (SAIC Bankhead and SAIC Taylor) closed the Kelley file without submitting his CHD to the FBI. Instead, they marked the checklist item for Kelley's CHD submission *as completed* even though it was not and even though neither looked at the physical file to confirm whether this critical information was submitted to the FBI.[131]

   c. <u>Duty Three – Fingerprint Submission Training</u>. Appropriate training of OSI personnel and SF personnel on timely and proper collection and submission to the FBI of any required fingerprint cards, Form FD-249. The Air Force's lack of training on Fingerprint submission to the FBI is a

---

[130] DODI 5505.11, Enclosure 4, 1.b.(3).
[131] Bankhead Deposition and Taylor Deposition.

32

failure that extends back 20 years. And it is a failure that starts at the very top of the Air Force chain of command all the way down to the detachment on-the-ground investigatory level. As discussed below, *infra*, in paragraph 43(f), the Region II Command that oversees numerous detachments associated with Air Combat Command around the country, including Det. 225 at HAFB, were not *even aware* that the Air Force had a systemic nation-wide problem with the proper and timely submission to the FBI of qualifying fingerprint and conviction data.

(1) The Field Investigation Region (FIR) 2 Commander at the time of Kelley's investigation did not even know about the Air Force's long 20-year history of failure until *after* the tragic Sutherland Springs shooting. This represents a complete organization-wide training failure for the Air Force. As FIR 2 Commander, Col Hudson testified, the Chain of Command responsible for informing Region Command of the multiple DoD IG reports relating to the Air Force's shortcomings in this area were—from the top—the Secretary of the Air Force, the three-star general Air Force Inspector General, to the one-star general Air Force OSI Commander, to the Air Force OSI Region Commanders (where Col Hudson resided at the relevant time). Surprisingly, the comprehensive DoD IG reports, which detailed the Air Force-wide CHD submission failures, never made it down to the Region 2 level, much less the Det. and SFS level on the ground at Holloman AFB.[132]

(2) Not surprisingly, the lack of training from the top filtered down to the lack of training at the Det. and SFS command level. SAIC Randall Taylor testified that when he came to Det. 225, the AF did not provide him any training as to his job duties. Between when he started work in December, 2011 to his retirement in 2014, he recalled no specific training by the USAF as to when to submit fingerprints of those convicted of a felony. In fact, he testified that he received more training on the relevant regulations from his lawyers preparing him for his deposition than he ever received from the Air Force. As a result of not being trained himself, he did not provide any type of training for his agents on submitting fingerprints to the FBI.[133] Importantly, he testified that had he been trained on the relevant regulations, he would have made it his priority to ensure that his agents followed the regulations, collected, and submitted the fingerprints.[134]

(3) The Det. 225 and 49th SFS agents were virtually unanimous in their conclusions that they were not properly trained by the Air Force on fingerprint data submission to the FBI. Special Agent Holz testified that he could not recall receiving any training from the Air Force on how and when to submit fingerprint information to the FBI.[135] In fact, SA Holz admitted that his *first* recollection of receiving such training on fingerprint submission was 2017 when the Air Force changed its training following the Sutherland Springs shooting.[136] Special Agents Bankhead, Hoy and Taylor at Det. 225, and Sgt. Sablan at the 49th SFS, were all involved in the Kelley investigation and all

---

[132] Col Hudson Deposition, p.34, pp. 251-252
[133] Taylor Deposition, pp. 25-29, 39.
[134] Taylor Deposition, pp. 30-31, 49.
[135] Holz Deposition, pp. 19-20.
[136] Holz Deposition, pp.21-22, pp.29-30.

SSS-002455

testified that at the time of the Kelley investigation they had no specific training or inadequate training from the Air Force on how and when to properly submit fingerprint data to the FBI.[137]

d. <u>Duty Four – Final Disposition Report Submission Training</u>. Appropriate training of OSI personnel and SF personnel on timely and proper collection and submission to the FBI of any required Final Disposition Report, Form R-84.

(1) Both DODI 5505.11 and AFOSIMAN 71-121 required the Det. 225 and 49th SFS personnel to submit Devin Kelley's assault conviction within 15 days of receipt. Both Det. 225 and the 49th SFS received notice of Devin Kelley's qualifying conviction and both did not submit the conviction to the FBI. Like the training failures with fingerprint submission, the Air Force failed to properly train its personnel on Final Disposition Report (conviction) submission to the FBI. As discussed, *supra*, several of the agents involved in the Devin Kelley investigation believed the FDR information should not be submitted when the conviction notice was received, but rather after the appellate process resolved.

(2) Indeed, the Air Force created a guide for the investigators—AFOSI Handbook 71-105— that *contradicted* the mandatory reporting guidelines within DODI 5505.11 and AFOSIMAN 71-121. By doing so, the Air Force not only failed to adequately train its personnel on the non-discretionary mandatory provisions, but they negligently trained their personnel to violate them.[138] For example, Special Agent Bankhead, who was a SAIC overseeing the Kelley investigation testified that no one within the Air Force went over the specific sections within AFOSIMAN 71-121 relating to FDR submission to the FBI.[139] And the Air Force not only did not train his Det. properly on this instruction, but the Air Force did not provide him with the mission support necessary to be successful implementing these requirements.[140] Perhaps no better example of the Air Force's failure to train came through Special Agent Taylor's deposition when he conceded that he received more training on the mandatory DoD regulations from the Government lawyers preparing him for his deposition than from the Air Force itself.[141]

e. <u>Duty Five – Supervision</u>. Proper supervision, to include command, supervision and management oversight controls within the OSI chain of command and the SF chain of command on timely and proper collection and submission to the FBI of both any required fingerprint Form FD-249 and any required Final Disposition Report, Form R-84 arising within the USAF.

(1) The Air Force's failure to supervise its agents and investigators was not due to lack of opportunity. According to the deposition testimony, Det. 225 had weekly meetings with supervisory agents and the SJA office reviewing investigatory case files, including Devin Kelley's. In addition, the SAIC and/or Superintendent at Det. 225 conducted monthly reviews of Devin Kelley's case file. All together, these presented supervisory agents with approximately 54-64

---

[137] Bankhead Deposition, pp.35-36, p.48; Hoy Deposition, pp. 26-27; Taylor Deposition, pp. 26-27; Sablan Deposition, pp.114-115, pp.126-127.
[138] Cf., DODI 5505.11, encl. 4 1.b.(3), AFOSIMAN 71-121, ¶ 5.14.2.1.1, with AFOSI Handbook 71-105, step 30.
[139] Bankhead Deposition, pp. 92-93.
[140] *Id.*, at 113.
[141] Taylor Deposition, p. 29

SSS-002456

opportunities to correct the operational, processing, and submission failures relating to Devin Kelley's file. (Some witnesses testified that there were 70 or more opportunities.[142]) That does not include the fail-safe "hot wash" review of the file conducted by the Detachment supervisors and SJA staff *after* Kelley's general court-martial conviction.[143] Each one of these moments presented the Air Force with supervisory opportunities to not only correct the fingerprint and FDR submission errors, but also oversight and training opportunities of the agents who committed the errors so that they would not repeat them.

(2) Another example of this failure to supervise exists in the Taylor deposition. SAIC Taylor testified that when closing out the I2MS file, he would not independently verify that fingerprints and final disposition reports were submitted. On this point, he testified that if he had not checked that the final disposition report and fingerprints were submitted, I2MS would not allow him to close the file.[144] He also testified that when he arrived at Det. 225, he found the Kelley file had been previously administratively closed without a conviction or other resolution.[145] Additionally, there were multiple staff assistance visits (SAVs) and case reviews performed by the 2nd Field Investigations Region (FIR), the Det. 225 higher headquarters (HQ). Further, there should have been periodic HQ review of the Kelley file. Per regulation, these reviews should focus on the sufficiency of the investigation and compliance with established regulations.[146] I found no evidence that HQ performed semi-annual reviews of OSI's Kelley case file. I found scant evidence of periodic SAVs. I did find evidence that periodic case reviews of the Kelley file were conducted at Det. 225. In any event, in all three cases, there was no evidence that these reviews identified the failure to follow policy on the collection, maintenance, and submission of fingerprints or final depositions in the Kelley case. Unfortunately, despite the ample supervisory chances to intervene and correct, no one within the HAFB supervisory chain of command acted.

f. <u>Duty Six – IG Report and Inspection Compliance</u>. Correct findings and implement recommendations identified in criminal history data reporting inspections, to include DoD/IGS reports. Comply with corrective actions identified and agreed to, from DoD IG reports concerning collection and submission of criminal history data by the USAF and other DoD entities.

(1) This failure by the higher levels of Air Force command was illustrated by the testimony of the Region II Commander, Col Hudson. Detachment 225 was under Col Hudson's command during the Devin Kelley investigation. He testified that Region II command provided no training to its Detachments, including Det. 225, about correcting the long-term systemic Air Force errors relating to fingerprint collection, submission, and qualifying conviction reporting.[147] Col Hudson confirmed that no fingerprint or conviction submission training was ever provided to his detachment because the Region Commanders themselves **were not even aware** that the Air Force experienced systemic failures with fingerprint collection, submission, and conviction reporting for almost 20 years.[148] In fact, Col Hudson admitted that it was not until after the Sutherland Springs

---

[142] Mills Deposition, pp. 75-76.

[143] AFOSIMAN 71-121, 13 JANUARY 2009 ¶ 1.8.

[144] Taylor Deposition, pp. 115-116.

[145] Taylor Deposition, p. 79.

[146] AFOSIMAN 90-101, 31 October 2007, Ch. 2; AFOSIMAN 71-121, 13 January 2009 ¶ 5.14.1 ("Responsibilities of Units and Regions"); ¶ 4.24, 4.24.1.3, 4.25, 4.25.2, 4.25.3.

[147] Col Hudson Deposition, p.241

[148] *Id.,* at 241-242.

SSS-002457

shooting (2017) that he was even made aware of the multiple IG reports confirming the Air Forces' 20-year systemic failures.[149]

(2) Despite undertaking the responsibility of fixing the systemic failures, the Air Force chain of command above Region II provided no directives or mission priorities to the Region II command relating to the three IG reports.[150] Therefore no mission priority or any kind of priority was placed on fixing the systemic errors that continued to plague the detachments around the Air Force, including Det. 225. According to Col Hudson, had the Air Force command above him issued such directives the errors would have been fixed.[151]

44. In my professional opinion, based on the data provided, the USAF did not comply with its CHD submission undertakings as required by law and DoD and USAF regulations,[152] nor did the USAF adequately implement training, supervision or corrective actions concerning known problems[153] with completing submission of FPC and FDRs to the FBI on USAF criminal investigations. The data reviewed indicates no less than 41 opportunities – before November 5, 2017 – for the USAF to realize the need to comply with CHD submission requirements to the FBI in the case of Devin P. Kelley.[154]

45. Legal Standards for CHD submission were known by the USAF on November 7, 2012.[155] Prohibited persons, such as Kelley, were required to be identified by DoD components in DIBRS and then reported to the FBI. United States Air Force (USAF) assumed responsibility for submitting fingerprint cards, and to the Federal Bureau of Investigation (FBI) using DIBRS. "According to DoD Manual 7730.47-M, Volume 1, the DIBRS shall be used to centralize the collection of information that is reportable by the DoD Components pursuant to The Brady Handgun Violence Prevention Act, which requires the Department of Defense to report these categories listed in the previous paragraph, to the FBI for purposes of prohibiting firearm purchases by certain select individuals."[156] USAF law enforcement were trained on these CHD submission requirements, had compliance re-emphasized by case closure checklists, a succession of DoD IG reports, and revised DoD, USAF and AFOSI regulations and policies between 1997 and 2017.

46. Not only were AFOSI and Security Forces required to submit to DIBRS, so was the staff judge advocate (SJA) office. Per Government Representative Col John Owen's testimony and the corresponding regulations discussed in his deposition, the SJA's office is responsible for submitting results of trial (e.g., the felony conviction and crime of domestic violence conviction) to DIBRS.[157] On this front, JAs have supervisory responsibilities of their staff to ensure their paralegals complete this task..[158] The regulations require these agencies and units to submit to

---

[149] *Id.*, at 242-243.
[150] *Id.* at 248-249.
[151] *Id.* at 251.
[152] *Supra* n. 84.
[153] *See,* Findings in the four DoD IG Reports previously cited: 1997 Report, 2014 Report, 2015 Report and 2017 Report.
[154] *See*, Appendix G.
[155] *See*, Appendix E; and, analysis in 2018 Report, pp. 46 – 54.
[156] 2014 Report, p. 22.
[157] Owen Deposition, pp. 86-94.
[158] *See*, AFI 51-201, *Administration of Military Justice*, June 6, 2013, ¶ 12.7.4 Bates USA00011967).

36

DIBRS because "DIBRS shall be used to centralize the collection of information." In essence, DIBRS could have acted as a safety net because it was designed to collect Brady information and placed the obligation on DoD DMDC to submit relevant Brady information to the FBI.

47. Government representative Shelley Verdego identified in deposition testimony and with accompanying regulations and documents at least two ways the DoD undertook this responsibility. First, DoD and the FBI signed a Memorandum of Understanding in which DoD undertook the responsibility of submitting Brady disqualifiers from DIBRS to FBI's NICS system.[159] Second, under the mandatory instruction, DODI 7730.47, DoD required that DIBRS collect Brady disqualifiers from DoD components for reporting to the FBI.[160] In neither case, were the agencies submitting relevant Brady information to DIBRS, nor was DoD timely and accurately submitting Brady disqualifying information to FBI NICS.[161] While the motive for DoD's failure in this aspect is not relevant as the applicable regulations and agreements are non-discretionary in nature, I have been unable to find any reason why DoD as an organization wholly failed execute this vital safety net.

48. In my professional opinion, DoD and the USAF particularly failed to meet its supervisory undertaking.[162] One of the requirements of proper supervision at the AFOSI Det level is to evaluate the adequacy of investigative reports, to include I2MS and physical case files or reports of investigation (ROI).  Specifically, the Special Agent In Charge (SAIC) must assure compliance by the case agent and use a supervisory checklist before closing an investigation case file.  To do this properly, a case supervisory agent must review the ROI against a case checklist to determine all necessary investigative steps, to include mandatory legal and regulatory requirements are met. For 15 months, every Det 225 SAIC failed to follow a checklist and put eyes on the work product of subordinate agents on the Kelley ROI. Further, as evidenced by failing to submit any record of fingerprint to the FBI or FDR, the required supervisory feedback and evaluation step was lacking at AFOSI Det 225.

   a. The expectations for all USAF commanders, at each organizational level, HQ USAF, Major Command (MAJCOM), down to Wing and base level units are clearly set out in AFI 1-2, *Commander's Responsibilities*.[163]   This instruction emphasizes the commander's responsibility for discipline and training.

> 3.2.2.  Discipline.  Commanders must cultivate a culture of compliance and accountability while promoting unit and mission pride.  ….
>
> 3.2.3.  Training.  Commanders must ensure their units are adequately trained. Unit training should take a building-block approach.  Individuals must be proficient in career field specific skills before incorporating those skills into team and unit training.  Unit training spanning the entire scope of the unit

---

[159] Verdego Deposition, pp. 77-91.
[160] Verdego Deposition, pp. 94-116.
[161] Verdego Deposition, pp. 88-91.
[162] *See*, 2018 Report, pp. 87 – 90.
[163] AFI 1-2, *Air Force Standards*, August 7, 2012 (Incorporating Change 1, November 12, 2014)(accessed at: https://static.e-publishing.af.mil/production/1/af_cc/publication/afi1-2/afi1-2.pdf).

37

mission should include total force, joint, or partner-nation opportunities whenever possible.  Training should replicate the distributed, chaotic and uncertain nature of expected operating environments.[164]

Additionally, 10 U.S.C. § 9233 directs: "All commanding officers and others in authority in the Air Force are required… to be vigilant in inspecting the conduct of all persons who are placed under their command."[165] In regard to AFOSI and SF personnel submission of fingerprints and Final Disposition Reports, for 20 years leadership had ample opportunity to inspect, train and discipline troops responsible for compliance. Leadership failed in this regard.

  b. As seen by their responses to every DoD IG Report from 1997 to 2018, senior leaders with responsibility for law enforcement investigations within DoD, particularly in the USAF, were aware of a systemic and continued gap in compliance with CHD reporting to the FBI. The need for training was clear and agreed to in response. These same senior leaders had a responsibility under law and regulations to command, supervise and manage the compliance with CHD reporting to the FBI.[166] The SAF/IG supervises the AFOSI while also responding to DoD IG reports. On each of the DoD IG reports, there was a senior level AF response and agreement with the recommendations. Yet, CHD records remained incomplete or unsubmitted. Kelley had one set of prints in AFOSI Det 225's local case file for over five years, and three DoD IG reports, when he mass-murdered 26 people.

  c. Of serious concern is the higher headquarters management levels' repeated failure to inspect and manage expectations for compliance in the field at the AFOSI Dets and at SF Squadrons. This particularly applied to DoD IG report findings and recommendations that the USAF agreed to in 1997, 2014, 2015 and 2017. The disciplinary consequences for such dereliction of duty remains to be seen.

49. <u>Consequences</u>. As FBI Assistant Director of NICS, Douglas E. Lindquist testified "(t)he majority of records needed by the NICS are available within the III or NCIC databases. By placing records in the III or NCIC, law enforcement agencies make the information available for criminal justice purposes, not just firearm background checks."[167] In my professional opinion, as a consequence of the DoD and USAF's CHD compliance failures, the FBI, local law enforcement officials and licensed firearms dealers could not identify convicted former Airman Kelley in the FBI's National Instant Criminal Background Check System (NICS), as a person prohibited from firearms purchase.

50. In my professional opinion, the documents reviewed, particularly the depositions and supporting exhibits therewith, demonstrated a heightened public risk consequence as a result of the USAF and DoD's noncompliance with CHD reporting on Kelley. The USAF had 40

---

[164] *Id*., at p.3.
[165] Accessed at: https://uscode.house.gov/view.xhtml?req=granuleid:USC-prelim-title10-section9233&num=0&edition=prelim.

[167] Testimony of Douglas E. Lindquist, Assistant Director CJIS Division, FBI, before the Committee on the Judiciary, US Senate, December 6, 2018 (Bates SSS-001148).

SSS-002460

instances of specific troubling behaviors demonstrated by Kelley.[168] Including specific and troubling knowledge of Devin Kelley's foreseeable threat to kill in a shooting-type event. For example, by May 2012, the Air Force knew that Devin Kelley was a high risk for violent threat to the community. HAFB command convened a "High Risk For Violence Response Team" to monitor Devin Kelley in May 2012 and his Squadron leadership concluded that Kelley "is a major threat to commit an act of violence" and that his confinement was necessary because it was *foreseeable* that [Kelley] would flee again and engage in *serious* criminal misconduct."[169] More examples of Air Force foreseeability were discovered in my document review:

a. Kelley's Holloman AFB Commander of the 49th LRS reported in June 2012 that the Air Force knew Kelley not only assaulted his wife and child, but that it was "*foreseeable* that [Kelley]…will engage in serious criminal misconduct," that he held a gun to his wife's head, that he'd shoot Security Forces agents, that he left a mental health hospital without authorization, that he researched weapons and body armor while in the mental health institution just prior to his escape, and arranged to purchase more weapons immediately after it.[170]

b. Major McLeod-Hughes concluded that he was convinced Kelley "is dangerous and *likely* to harm someone if released."

c. By March 2013, then Lt Col Bearden, Commander 49th Logistics Readiness Squadron, reported that Kelley "has repeatedly threatened to kill his leadership," that Kelley was caught searching the internet for "body armor and guerilla tactics," and was "training his cardiovascular system by extending his workout runs from 20 to 60 minutes" while at Peak Mental Health Facility.[171]

d. Less than a week later, Capt McQuillan, Chief, Civil Law from the 49th WG/JA reported that Kelley had an "extensive record of violence and directing death threats towards his leadership and spouse." Capt McQuillan warned that Kelley exhibited "evidence of…high risk unpredictable and criminal behavior" and had a "preoccupation with weapons, his verbal declaration that he has contemplated *offensive attack strategies* on both Air Force personnel and organizations (including his leadership and SFS)."[172]

e. Air Force supervisor, Ms. Valorie L. Rowe, received death threats from Kelley prior to the Sutherland Springs shooting and after his release from prison and bad conduct discharge.[173] Rowe was so uneasy with Kelley, she told her supervisor, MSgt Troy Bizzack, "We need to watch this guy cause he's the kind of person who will come in and shoot everybody."[174]

---

[168] *See,* Appendix F.
[169] Department of Justice Memo, USA0005399
[170] Major McLeod-Hughes June 8, 2012, Pretrial Confinement Letter, USA00013375.
[171] Lt Col Bearden letter, March 22, 2013, USA00013324
[172] Capt McQuillan Memo, March 27, 2013, USA00013318.
[173] Rowe Statement, USA00015367.
[174] Rowe Statement, USA00015367.

SSS-002461

f. The former SAIC who investigated Kelley also testified that it was foreseeable that Kelley could commit a mass shooting.[175] Special Agent Bankhead testified that during the investigation, the Air Force learned Kelley made a mass shooting threat.[176]

g. Finally, Kelley's supervisor, SSgt Jessika Edwards, noted in an interview that during her time at Holloman, she learned that Kelley had disciplinary issues, extreme animal abuse, and a perverse fascination with mass shootings. She told FBI investigators that Kelley told her that "after the S.C. church shooting, he wanted to do something like that."[177]

51. In my professional opinion, the Air Force's failure to train and supervise its personnel lead to repeated operational failures in the Kelley investigation. Devin Kelley was a dangerous man, who the Air Force convicted for committing physical violence on his wife and her child. When the Air Force does not properly track and submit fingerprints and convictions to the FBI of dangerous people like Kelley, and prevent them from obtaining dangerous weapons, the Air Force increases the public's risk of harm.

a. Because the 49th LRS, 49th SFS and AFOSI Det. 225 personnel were specifically aware of Kelley's threatening behaviors and violent tendencies, the Holloman AFB, NM leadership and base law enforcement could take protective measures for the base population. Such measures included pretrial confinement, court-martial and then barment to keep Kelley from making good on his threats.[178] As a result, the population of Holloman AFB, NM remained protected as Holloman law enforcement entities were informed of Kelley's risk.

b. Meanwhile, the civilian populace outside the wire of Holloman AFB, remained ignorant of Kelley's risk to their safety. Civilian law enforcement, whether in New Mexico or Colorado did not have the ability to find Kelley in the FBI's CJIS. Similarly, FFL dealers could only receive a "proceed" signal in NICS on Kelley's firearms purchases. Whereas the USAF, armed with the knowledge of Kelley's violent tendencies, could seize a handgun from Kelley before he could pose a threat on base.[179]

c. Thus, when the Air Force failed to share its data with the FBI on dangerous felons like Devin Kelley, they unnecessarily exposed the public to an increased risk of gun violence. The Air Force's failure to properly collect, process, and submit Devin Kelley's fingerprint and final disposition report (conviction) data to the FBI and failure to train, supervise and reasonably perform the duty they undertook exposed the public to an increased risk of harm. And their specific knowledge of the violent threat Kelley posed to the public and failure to correct the known errors in his fingerprint and conviction reporting data only exposed the public to an even greater risk of harm. By failing to submit Kelley's CHD, the Air Force increased the risk of harm to the public by allowing a dangerous felon (Kelley) to purchase a stockpile of weapons when he otherwise would have been stopped from doing so, and subject to arrest. Simply put, the more information the FBI

---

[175] Taylor Deposition, p.63
[176] Bankhead Deposition, p.81.
[177] FBI Interview Notes, USA00022632, USA00022911-12.
[178] Bates USA00013318-13342 (*see generally*, Bates USA 00013315-13392).
[179] Bates USA00013372-13373.

SSS-002462

has on dangerous criminals like Kelley, the better decisions the FBI can make in preventing individuals who shouldn't have firearms from getting them.

52. In my professional opinion, the two illegal gun purchases conducted by Kelley at the Holloman AFB Base Exchange in April, 2012[180] and December, 2012[181] had the unfortunate effect of conditioning Kelley to know and understand that he was able to utilize Federally Licensed Firearms Dealers to illegally acquire firearms. Kelley was therefore able to repeatedly successfully lie about his court-martial conviction offenses on multiple subsequent ATF Form 4473 applications. He repeatedly cleared NICS examination into his criminal records at off base Federally Licensed Firearms Dealers beginning December 22, 2014. He engaged in this behavior three more times until October 18, 2017, having amassed multiple firearms. As a result of one or more of the above Government failures, the FBI did not have Kelley's deniable offenses in the NICS system. FBI Representative Kimberly Del Greco testified that if the FBI had received information about Kelley's qualifying convictions (for offenses carrying more than one year imprisonment) or crime of domestic violence that would be an instant denial.[182] Once denied, Kelley would be placed in the NCIC previously-denied file, ensuring any future attempts at purchasing guns would also be instantly denied once in the NCIC.[183]

53. In sum, despite his disqualifying general court-martial conviction and sentence on November 7, 2012 and despite USAF knowledge of prior threatening behaviors, Kelley was able to purchase weapons in violation of federal law without being enrolled in NICS.[184] As a result of being able to purchase these weapons, Kelley was armed and able to use the illegally purchased AR 556 rifle to kill 26 persons and wound 20 others on November 5, 2017 while they worshiped in Sutherland Springs, Texas.

## IX. Conclusion

54. The regulatory approach by Congress, DoD and the USAF recognized that fingerprints sent to the FBI and Final Disposition Reports sent to the FBI were essential to make the Gun Control Act (as amended by the Brady Act and the Lautenberg Amendment) effective. Otherwise, military personnel convicted of domestic violence offenses or convicted of certain crimes punishable by imprisonment for a year or more, could clear a NICS inquiry and purchase a firearm in complete frustration of federal law. Therefore, public safety required timely transfer of information to the FBI's CJIS for NICS use in order to prevent a prohibited person from illegally obtaining a firearm.

55. For 20 years, the USAF and DoD operated in a loop of noncompliance. DoD IG would commence an investigation, report findings and recommendations to correct CHD submission failures. In turn, the USAF would agree to voluntary corrective action; however, the USAF

---

[180] Bates USA00012136-12140.
[181] Bates USA00012133-12135.
[182] Del Greco Deposition, pp. 81-82.
[183] Del Greco Deposition, p. 56-57. Air Force regulations require submission of Felony convictions and crimes of domestic violence in a "plain English" form. Tullos Deposition, pp. 191-192, 196-199, and 202; AFOSIMAN 71-121, 13 January 2009, Attachment 9 (Instructions for Completing FD249, ¶ A9.31); Attachment 10 (Instructions for Completing R84, ¶ A10.13, A10.13.1–3).
[184] See, Appendix I – Kelley Firearms Purchased after 2011.

41

compliance was systemic irregular and inconsistent. This pattern repeated several times before November 5, 2017 shocked the families of the First Baptist Church of Sutherland Springs, Texas and the USAF and DoD.

56. The DoD and USAF took on great responsibilities with CHD submission to the FBI. The USAF was resourced to comply, investigate, correct gaps and thereby protect its mission and the public at large. However, noncompliance on six main areas, left the FBI's NICS program uninformed of Devin Kelley and hundreds of others. In turn, for years after his conviction and confinement, firearms dealers, the FBI and the congregation in Sutherland Springs, Texas were unable to keep Kelley from purchasing firearms and tragically harming public safety. I reserve the right to amend this report if other evidence becomes available.

Respectfully submitted,

Larry D. Youngner, Colonel, USAF (Ret.)
Warrior Counsel, LLC

Attached and made a part of this report are:

Appendix A – Curriculum Vitae
Appendix B – DD Form 214s, Certificate of Release or Discharge from Active Duty
Appendix C – Military Decorations from 2003 – 2014
Appendix D – Cases Participated in Over Past Four Years
Appendix E – USAF and DoD Standards on Command and Supervisory Responsibility, Oversight and Compliance Concerning Criminal History Data Submission to the FBI
Appendix F – Devin P. Kelley Conduct and USAF Response Chronology
Appendix G – USAF and DoD Kelley Criminal History Data Compliance Opportunity Events
Appendix H – USAF Law Enforcement Organizations Structure
Appendix I – Kelley Firearms Purchased after 2011
Appendix J – Acronyms List

42

SSS-002464

**Larry D. Youngner, Colonel, USAF (Ret.)**
17160 Primavera Circle, Cape Coral, FL
Youngner@Warrior Counsel.com
703.531.9280

**ADMISSIONS**

- Supreme Court of the United States – 1994
- US Court of Appeals for the Federal Circuit – 1991
- US Court of Appeals for the Armed Forces – 1990
- Supreme Court of the State of Georgia – 1989
- Superior Court of Glynn County, Georgia – 1986
- State Bar of Georgia, Member No. 783477 – 1986

**PROFESSIONAL EXPERIENCE**

**Partner and CEO, Warrior Counsel, LLC**                                  **January 2020 – Present**
Provide independent military attorney consultation service and legal representation to select clients
before federal agencies of the US government, to include representation for courts-martial, clearance
adjudication hearings, Boards for Correction of Military Records, officer grade determinations, Inspector
General (IG) investigations and criminal investigations under the UCMJ by special agents of the Air Force
Office of Special Investigations (AFOSI), Army Criminal Investigation Command (CID), Naval Criminal
Investigation Service (NCIS) and Federal Bureau of Investigation (FBI).

> *Significant cases*
>
> *In re Brig Gen Goodwin*, Art. 138 Complaint against Lt Gen Silveria, USAFA Superintendent re abuse
> of authority and improper removal of Client from Commandant position at USAFA; awaiting SecAF
> decision. Submitted 2 Mar 2020
>
> *In re B.*, AFBCMR application to secure military medical retirement benefits for victim of military
> sexual trauma (MST). Follow-on representation after securing Honorable upgrade in AF DRB Docket
> No. FD-2018-00529, decided 22 Nov 2019.
>
> *Joe Holcombe, et al., Plaintiffs, v. United States of America, Defendant,* Civil Action No. 5:18-CV-555-
> XR, Expert Consultant for Plaintiffs on Military Investigations and Military Courts-Martial.

**Of Counsel, Tully Rinckey, PLLC**                                      **May 2016 – January 2020**
Provide independent attorney consultation to potential new clients and legal representation to clients
before federal agencies of the US government, to include courts-martial, clearance adjudication hearings,
Boards for Correction of Military Records, officer grade determinations, service academy disenrollment
proceedings, and in response to Inspector General (IG) investigations or criminal investigations by special
agents of the Federal Bureau of Investigation (FBI), Air Force Office of Special Investigations (AFOSI),
Army Criminal Investigation Command (CID) and Naval Criminal Investigation Service (NCIS).

> *Significant cases*
>
> *In re Brig Gen Goodwin*, Client investigated by SAF/IGS for alleged fraud, waste and abuse;
> defended Client on investigation and disciplinary response. Client allowed to remain on active duty as
> O-7; serving at NORTHCOM as Director of Transformation.

1

*As of March 17, 2020*
SSS-002465

*U.S. v. A1C Welch*, Uniform Code of Military Justice (UCMJ) Art. 112a (drug abuse, possession and distribution). After mixed pleas, Client was partially acquitted of drug-related offenses and sentenced to 4 months confinement, reduction and a reprimand. Client separated with an honorable discharge.

*U.S. v. LCDR Lin*, UCMJ Art. 92 (dereliction of duty), UCMJ Art. 106 (espionage), and UCMJ Art. 134 (Assimilative Crimes Act allegations in violation of 18 U.S. Code § 793), Norfolk Naval Base, VA. Client investigated by FBI and NCIS then charged with espionage and other offenses with maximum punishment of confinement for life plus 80 years; Pursuant to defense motion, several charges were dropped. After litigation, government agreed to a plea bargain that included withdrawal of all espionage charges. Client sentenced to 6 years confinement, a reprimand and dismissal.

*U.S. v. SrA Williams*, UCMJ Art. 120 (rape), Keesler AFB, MS. Client fully acquitted of the alleged charge and specification; Client honorably separated with full benefits under the VA and backpay.

*Brig Gen B.*, Langley AFB, VA. Advised client on SAF/IGS investigation Case No. S8309P and resulting Officer Grade Determination board at HQ, USAF. Client allowed to honorably retire in grade as an O-7, brigadier general, with all benefits and pension.

*CAPT (ret.) W.*, Norfolk Naval Base, VA. FBI and NCIS investigation for procurement fraud and misconduct in the U.S. Navy associated with Glenn Defense Marine Asia ("Fat Leonard") bribery cases. Advised Client in response to investigation. Secured US Fleet Forces Commander as disposition authority dismissal of all criminal concerns against Client.

### *Media relations*

*Military.com*, "Fired Air Force Academy Commandant Plans to File Complaint", December 4, 2019, Oriana Pawlyk (*see*: https://www.military.com/daily-news/2019/12/04/fired-air-force-academy-commandant-plans-file-complaint.html)

*Federal News Network*, "Air Force official challenges academy superintendent for command removal", December 4, 2019, Tom Temin (*see*: https://federalnewsnetwork.com/federal-drive/2019/12/air-force-official-challenges-academy-superintendent-for-command-removal/)

*Air Force*

*Air Force Times*, "Fired 1-star blasted for 'unhealthy command climate,' excessive travel", Stephen Losey, January 16, 2018 (*see*: https://www.airforcetimes.com/news/your-air-force/2018/01/16/fired-1-star-blasted-for-unhealthy-command-climate-excessive-travel/)

*The Virginian-Pilot*, "Naval flight officer to serve 6 years for illegally sharing classified information", Courtney Mabeus, June 2, 2017 (*see*: https://www.pilotonline.com/military/article_7f56586f-9fc7-5232-9559-d4a7a4205675.html)

*WAVY TV 10*, "Lt. Cmdr. Edward Lin's lawyer on plea deal" by WAVY TV staff, May 5, 2017 (*see*: https://www.youtube.com/watch?v=n1p6PoRzHDY)

*Navy Times*, "With a plea deal in hand, disgraced Navy flight officer Edward Lin expresses remorse in court", David B. Larter, May 4, 2017 (*see*: https://www.navytimes.com/news/your-navy/2017/05/04/with-a-plea-deal-in-hand-disgraced-navy-flight-officer-edward-lin-expresses-remorse-in-court/)

2

SSS-002466

*The Virginian-Pilot*, "Espionage trial for accused Navy officer postponed until May", Courtney Mabeus, February 17, 2017 (*see*: https://www.pilotonline.com/military/article_2a7be6e4-18f3-5a0e-a7b7-55c3af5c9ad1.html)

*USA Today*, "Air Force general lashes back at sex charges, brands accuser a liar", February 15, 2017 (*see*: https://www.usatoday.com/story/news/politics/2017/02/14/air-force-general-arthur-lichte-lashes-back-sex-charges-brands-accuser-liar/97909626/)

*Military.com*, "General Demoted in Retirement Resigns from Airbus Board", Oriana Pawlyk, February 3, 2017 (*see*: https://www.military.com/daily-news/2017/02/03/general-demoted-retirement-resigns-airbus-board.html)

*Christian Science Monitor*, "In rare move, Air Force demotes four-star general for sexual misconduct", Charlie Wood, February 2, 2017 (*see*: https://www.csmonitor.com/USA/2017/0202/In-rare-move-Air-Force-demotes-four-star-general-for-sexual-misconduct)

*USA Today*, "Air Force busts retired four-star general down two ranks for coerced sex", Tom Vanden Brook, February 1, 2017 (*see*: https://www.usatoday.com/story/news/politics/2017/02/01/air-force-busts-retired-four-star-general-down-two-ranks-coerced-sex/97356020/)

*Washington Post*, "'Inappropriate sexual acts' prompt Air Force to retroactively demote retired general two ranks", Dan Lamothe, February 1, 2017 (*see*: https://www.washingtonpost.com/news/checkpoint/wp/2017/02/01/inappropriate-sexual-acts-prompts-air-force-to-retroactively-demote-retired-general-two-ranks/?noredirect=on)

*Navy Times*, "The strange case of Lt. Cmdr. Edward Lin", David B. Larter, January 22, 2017 (*see*: https://www.navytimes.com/news/your-navy/2017/01/22/the-strange-case-of-lt-cmdr-edward-lin/)

*WVEC 13 News Now (ABC)*, "Navy officer's contacts with Taiwan probed in spy case, hearing today" by WVEC staff, August 8, 2016 (*see*: https://www.13newsnow.com/article/news/military/navy-officers-contacts-with-taiwan-probed-in-spy-case-hearing-today/291-290572944)

*Navy Times*, "'Rogue Archer': Navy officer's contacts with Taiwan probed in spy case", David B. Larter, August 7, 2016 (*see*: https://www.navytimes.com/news/your-navy/2016/08/07/rogue-archer-navy-officer-s-contacts-with-taiwan-probed-in-spy-case/)

**Managing Partner, Washington DC, Tully Rinckey, PLLC                    2015 – May 2016**
Supervised a 15-attorney office that represented clients on federal employment matters, whistleblower complaints, courts-martial, national security clearance adjudications and Veterans Administration matters, to include representation before federal agencies, to include the MSPB, EEOC, US District Court, US Court of Federal Claims and the Defense Office of Hearings & Appeals. Personally represented clients before federal agencies of the US government, to include at military courts-martial, clearance adjudication hearings, Boards for Correction of Military Records, officer grade determinations, service academy disenrollment proceedings and in response to Inspector General (IG) investigations and criminal investigations by FBI, AFOSI, CID and NCIS. Provided independent attorney consultation to potential new clients on matters within the scope of the Firm's practice.

### Significant cases

*U.S. v. SrA Williams*, 75 M.J. 244 (CAAF 2016). Represented Client on appeal to AFCCA then CAAF. CAAF reversed conviction without prejudice (overruled AFCCA on final appeal).

SSS-002467

*Col B*., AFBCMR Docket No. BC-2016-02848. Advised Client on response to SAF/IGS investigation (Case No. S740P) which led to adverse officer grade determination of former brigadier general/O-7.

*SO1 L*., BCNR Docket No. NR 8983-16. Represented Client at BCNR. Won military medical retirement for Navy SEAL Client previously investigated and unjustly discharged for misconduct related to combat injuries.

*CPT S*., Congressional complaint and Army BCMR Docket No. AR 20150018420. BCMR granted military medical retirement and backpay for Army National Guard officer improperly separated despite medical malpractice (misdiagnosis of cancer) of service-connected disabilities.

### *Media relations*

*Stars and Stripes*, "Navy recommends general court-martial for accused spy Lin", Tara Copp, May 13, 2016 (*see*: https://www.stripes.com/navy-recommends-general-court-martial-for-accused-spy-lin-1.409457)

*The Virginian-Pilot*, "Commander refers espionage case to court-martial", Brock Vergakis, May 13, 2016 (*see*: https://www.pilotonline.com/military/article_d5fb2b2e-1716-5e1d-86c6-560cf0ba5456.html)

*Daily Beast*, "Exclusive: Navy Drops Some Charges Against Accused 'Spy'", Nancy Youssef, May 13, 2016 (*see*: https://www.thedailybeast.com/exclusive-navy-drops-some-charges-against-accused-spy)

*The Guardian*, "US navy officer faces trial for allegedly leaking secrets to Taiwan and China", May 13, 2016 (*see*: https://www.theguardian.com/us-news/2016/may/13/navy-officer-edward-lin-espionage-taiwan-china)

*Reuters*, "Navy officer to face court-martial for spying", Phil Stewart, May 13, 2016 (*see*: https://www.reuters.com/article/us-usa-navy-spying-idUSKCN0Y42F3)

*Stars and Stripes*, "Defense attorney: Evidence against accused Navy spy unlawfully obtained", Tara Copp, May 5, 2016 (*see*: https://www.stripes.com/defense-attorney-evidence-against-accused-navy-spy-unlawfully-obtained-1.408056)

*Washington Post*, "Lawyer for Navy officer accused in espionage case alleges entrapment by the FBI", Dan Lamothe, May 5, 2016 (*see*: https://www.washingtonpost.com/news/checkpoint/wp/2016/05/05/lawyer-for-navy-officer-accused-in-espionage-case-alleges-entrapment-by-the-fbi/)

*Navy Times*, "Accused Navy officer innocent of espionage: Attorney", David B. Larter, April 29, 2016 (*see*: https://www.navytimes.com/news/your-navy/2016/04/29/accused-navy-officer-innocent-of-espionage-attorney/)

*Associated Press*, "Congress to review proposal for military justice reform", Meredith Somers, December 29, 2015 (*see*: https://federalnewsnetwork.com/defense/2015/12/congress-review-proposal-military-justice-reform/)

*Washington Blade*, "Sexual assault charges against gay lieutenant on hold", Lou Chibbaro Jr., December 9, 2015 (*see*: https://www.washingtonblade.com/2015/12/09/sexual-assault-charges-gay-lieutenant-hold/)

4

*USA Today*, "Disgraced Navy whistleblower works to clear her name, win back retirement", Meghann Myers, September 28, 2015 (*see*: https://www.usatoday.com/story/news/nation/2015/09/28/navy-whistleblower-penland/72999288/)

*Associated Press*, "Hearing set to debate Sgt. Bowe Bergdahl desertion charges" by Juan A. Lozano, September 16, 2015 (*see*: https://www.tribdem.com/news/hearing-set-to-debate-sgt-bowe-bergdahl-desertion-charges/article_36b314ee-5cb6-11e5-a3d5-2b4a80918858.html)

*Federal News Network, Federal Drive with Tom Temin*, "Larry Youngner: Keeping your federal email secure", September 10, 2015 (*see*: https://federalnewsnetwork.com/federal-drive/2015/09/larry-younger-keeping-your-federal-email-secure/)

*Government Executive*, "Clinton Email Fracas Raises Question: What Is a 'Special Government Employee?", Charles S. Clark, September 4, 2015 (*see*: https://www.govexec.com/oversight/2015/09/clinton-email-fracas-raises-question-what-special-government-employee/120362/)

*Fox News*, "Fort Hood shooting victims receive long-delayed Purple Hearts, may still have to fight for benefits", April 10, 2015 (*see*: https://www.foxnews.com/politics/fort-hood-shooting-victims-receive-long-delayed-purple-hearts-may-still-have-to-fight-for-benefits)

*CNN News, Jake Tapper, The Lead*, "What punishment could Bergdahl face?" March 25, 2015 (*see*: https://www.cnn.com/videos/tv/2015/03/25/lead-intv-youngner-bergdahl-possible-punishment.cnn)

*Federal News Network, Federal Drive with Tom Temin*, re Justice Department settlement under Service Members Civil Relief Act, February 12, 2015 (*see*: https://federalnewsnetwork.com/federal-drive/2015/02/larry-youngner-managing-partner-tully-rinckey-pllc/)

*Stars and Stripes*, "General's A-10 treason comment sparks concerns over protected speech", Travis J. Tritten, January 23, 2015 (*see*: https://www.stripes.com/general-s-a-10-treason-comment-sparks-concerns-over-protected-speech-1.325471)

**Military & National Security Law Chair, Tully Rinckey, PLLC                    Jul – Dec 2014**
Supervised 10 attorneys across seven geographically separated offices to provide worldwide legal services in support of military law and national security law matters. Represented clients at courts-martial, clearance adjudication hearings, Boards for Correction of Military Records, officer grade determinations, service academy disenrollment proceedings and in response to Inspector General (IG) and law enforcement investigations by FBI, AFOSI, CID and NCIS special agents. Provided independent attorney consultation to potential new clients on matters before federal agencies of the US government.

### *Significant cases*

*U.S. v. Ziccardi*, Criminal Action No. 3:14cr107, United States District Court, E.D. Virginia, Richmond Division (18 U.S. Code § 1001). Negotiated plea agreement for Client faced $250,000.00 fine and 10 years confinement. Client sentenced to $10,000.00 fine and 2 years of probation without confinement.

*Lt. P.*, USMC, BCNR No. 10912-14 (decided 2015). Client won military medical retirement for service-connected disability during field training exercises at MCB Quantico, VA.

5

*SSgt L.*, BCMR Application Docket No. AR201400119067 (decided 25 Jun 2015). Represented Client on appeal to the Army BCMR to establish Vietnam veteran's combat injuries in the line of duty warranted Purple Heart (*see*: https://www.wvpublic.org/post/after-47-years-morgan-county-man-awarded-purple-heart#stream/0).

*USAFA Cadet V.* Client investigated by AFOSI for alleged false official statements and fraud, then received notice of disenrollment proceedings. Advised Client on response to investigation and won retention at the US Air Force Academy. Client commissioned in 2015.

### Media relations

*Federal News Network, Federal Drive with Tom Temin*, "Larry Youngner… (re the Office of Special Counsel finds Army discrimination against transgender employee)", Federal News Network Staff, October 30, 2014 (*see*: https://federalnewsnetwork.com/federal-drive/2014/10/larry-youngner-partner-tully-rinckey-pllc/)

*Huffington Post*, Huff Post Live, "Larry Youngner joins the Huff Post for a discussion on the latest at Guantanamo Bay", October 27, 2014 (*see*: https://www.youtube.com/watch?v=wu2JgBJyD_k)

*Navy Times*, "Experts: Breath tests can lead to punishment", David B. Larter, October 4, 2014 (*see*: https://www.navytimes.com/education-transition/jobs/2014/10/04/experts-breath-tests-can-lead-to-punishment/)

*Washington Examiner*, "Exclusive: Agent misled Secret Service", Susan Crabtree, October 3, 2014 (*see*: https://www.washingtonexaminer.com/exclusive-agent-misled-secret-service)

*NBC Today Show*, "Bowe Bergdahl Telling 'His Own Story' to Investigators", Gabe Guttierez, August 7, 2014 (*see*: https://www.youtube.com/watch?v=BEWpPNVVJvk)


### Air Force Judge Advocate General (JAG) Corps Chief of Staff, The Pentagon, DC        2013 – 2014

As Chief of Staff, provided public administration of JAG Corps organizational structure and worldwide legal services in support of inspections, investigations, criminal law, international law, contracts, ethics, labor, environmental law, and administrative law matters for over 300,000 Airmen.  As Strategic Policy and Requirements Director, planned, organized and led teams that envisioned then implemented efficiency-generating changes in the Air Force's 4,500-person law firm of 2,000 attorneys and 2,500 paralegal and legal support personnel.

### Significant accomplishments

- Advised Senior Air Force leaders on criminal due process, to include search and seizure regarding 2014 Nuclear Surety Exam Cheating Scandal (*see*: https://www.cnn.com/2014/01/15/politics/air-force-nuclear-scandal/index.html and https://www.npr.org/sections/thetwo-way/2014/01/30/268880352/air-force-cheating-scandal-widens-to-92-nuclear-officers).

- Prepared the Secretary of the Air Force, The Judge Advocate General (TJAG) (a 3-star general/O-9) and key senior leaders for Congressional testimony on sexual assault response in the Air Force while implementing TJAG guidance on support of training and implementation of TJAG policy regarding sexual assault prevention and response throughout the Air Force.

6

SSS-002470

- Led HQ legal staff restructure to eliminate $500,000 in expenses through an overhaul of personnel requirements. Captured significant cost savings without compromising the effectiveness or quality of client service and support to Air Staff and fielded forces.

**Staff Judge Advocate (SJA), AF Special Operations Command (AFSOC)**          **2010 – 2013**

Provided personal legal counsel on all aspects of international and operations law, including law of armed conflict, status of forces, rules of engagement, international agreements, force deployment, and oversight of sensitive compartmented programs for AF special operations forces at 10 installations, including 5 overseas installations.

*Significant accomplishments*

- Directed legal services on procurement, fiscal law, ethics standards, aircraft accident investigations, foreign assistance and other civil matters for a force of 17,000 Air Commandos and a $4B fleet of special operations force (SOF) aircraft and munitions.

- Provided direct and supervisory legal counsel to major command AFOSI Field Investigative Regions and Detachments concerning all major criminal investigations within the command.

- Supervised military justice decisions and advice at all subordinate wings, to include assuring compliance with AFI 51-201, *Administration of Military Justice*, requirements, to include post-trial reporting after the successful prosecution of 110 criminal trials at court-martial.

- Advised the AFSOC Inspector General on all IG investigations of fraud, waste and/or abuse as authorized at AFI 91-301, *Inspector General Complaints Resolution*.

- Investigated remotely piloted aircraft (RPA) pilot for dereliction of duty re combat operations.

- Advised 3-star commander on Accident Investigation Board (AIB) and disciplinary responses to a fatal CV-22 aircraft mishap in Afghanistan, a fatal U-28 aircraft mishap in Djibouti, and a total aircraft loss in a CV-22 mishap in Florida.

**SJA, 9th AF & AF Central Command (USAFCENT), Shaw AFB, SC & Doha, Qatar**          **2007 – 2010**

Supervisory attorney for all legal services across 11 US military installations, to include 7 foreign bases in Southwest Asia (SWA), while providing real-time counsel on combat operations and rules of engagement concerning Taliban forces and Iraqi counterinsurgents.

*Significant accomplishments*

- Exercised supervisory authority over a high performing team of 284 attorneys and support staff, providing legal counsel and services to 54,000 military members and 120,000 family members across US and SWA locations.

- Advised General Court-Martial Convening Authority (Lt Gen/O-9) and subordinate senior leaders on all legal aspects of criminal investigations, major accident investigations and privileged safety investigations, to include alleged war crimes, ROE violations and friendly fire investigations.

- Provided direct and supervisory legal counsel to AFOSI Field Investigative Region on all major criminal investigations within the command.

7

SSS-002471

- Supervised military justice decisions and advice at all subordinate wings, to include assuring compliance with record of trial preparation, post-trial reporting and with AFI 51-201, *Administration of Military Justice*, in the successful prosecution of 228 criminal courts-martial.

- Advised the 9th Air Force Inspector General and the USAFCENT Inspector General on all IG investigations of fraud, waste and/or abuse as authorized at AFI 91-301, *Inspector General Complaints Resolution*.

- Determined legal basis, advised commander, brokered consensus in the Office of the Secretary of Defense (OSD) to arm an allied foreign force's fleet of MQ-9 Reapers for combat use in Afghanistan and Iraq.

- Served an integral role facilitating the evacuation of American citizens from Kyrgyzstan under threat of host nation government revolution. Guided the U.S. Kyrgyz Chief of Mission and U.S. Department of State (DoS) to draft and gain approval for a declaration of a disaster situation which secured foreign civic assistance authorities for DoS and DoD (*see*: https://www.csmonitor.com/World/Asia-South-Central/2010/0407/Kyrgyzstan-opposition-takes-over-in-Bishkek.-What-happens-to-Manas; https://foreignpolicy.com/2010/05/14/the-land-of-perpetual-revolution/; and https://fas.org/sgp/crs/row/R41178.pdf).

- Resolved basing concerns in Qatar over expanded presence, customs procedures, host nation vehicle licensing and legal response to B-1 brake fire and explosion at deployed location on April 4, 2008 (*see* https://www.wired.com/2008/04/b-1-bomber-cras/; and http://www.cnn.com/2008/WORLD/meast/04/04/bomber.crash/).

- Recognized with the Bronze Star for outstanding performance under pressure in combat operations to personally provide legal guidance on over 1,500 kinetic enemy engagements, of which 1,441 involved troops-in-contact,19 were time-sensitive targets and 55 were deliberate targets for coalition air forces and to supervise 12,843 targeting actions.

**Director, International & Operations Law, HQ, USAF, The Pentagon                    2006 – 2007**
Provided expert international legal and policy advice to Chief of Staff and Secretary of the Air Force on international agreements, aviation law, and space law, to include basing agreements, acquisition and cross-servicing agreements and host-nation compliance.  Authored weapon reviews for compliance with international law.

*Significant accomplishments*

- Directed the efforts of a team of 8 international lawyers leading institutional USAF training and compliance seminars focusing on the law of armed conflict, foreign criminal jurisdiction, foreign tax relief, and foreign civil litigation.

- Collaborated with key interagency stakeholders to contribute to AFOSI and DoD investigations of two high-profile Foreign Criminal Jurisdiction cases: Manas AB Shooting Incident (*see*: https://worldview.stratfor.com/article/kyrgyzstan-usefulness-manas-shooting-incident) and alleged rendition at Aviano AB, Italy (*see*: https://www.reuters.com/article/us-italy-renditions-verdict-factbox/factbox-italy-convicts-23-americans-in-cia-rendition-case-idUSTRE5A352H20091104?pageNumber=1&virtualBrandChannel=0).

8

- Coordinated USAF response and cooperation with the International Civil Aviation Organization on aircraft accident investigations overseas, most notably at Bishkek, Kyrgyzstan.

**SJA, Fourth Fighter Wing (ACC), Seymour Johnson AFB, NC**                                **2003 – 2005**

Advised Brigadier General Commander as Chief Legal Counsel on all criminal law investigations and prosecutions, contract, environmental and federal employment law matters for an installation of 5,548 Airmen and 980 civilian employees at America's premiere F-15E fighter wing. Led a highly motivated legal staff of 34 personnel: 14 attorneys, a court reporter, 18 paralegals and a legal secretary.

*Significant accomplishments*

- Provided direct and supervisory legal counsel to AFOSI Detachment and SFOI investigators on all criminal investigations.

- Supervised trial counsel in successful prosecution of 56 courts-martial, to include compliance with post-trial reporting and processing requirements of AFI 51-201, *Administration of Military Justice*.

- Advised 4th FW Inspector General on all investigations for fraud, waste and abuse under AFI 90-301, *Inspector General Complaints Resolution*.

- Led the accident response then supported the safety investigation board (SIB), subsequent AIB and claims compensation under FTCA after a catastrophic bird-strike and loss of a F-15E "Strike Eagle" fighter over rural Virginia on May 7, 2004 (*see*: http://usaf.aib.law.af.mil/ExecSum2004/F-15E_Virginia_6May04.pdf).

- Led office to recognition as the 9th Air Force Legal Office of the Year in 2004.

**Staff Judge Advocate, Tallil (Ali) AB, An Nasiriyah, Iraq**                                **Mar – May 2003**

Led all deployed legal support and counsel functions for a command of 1,200 United States Air Force personnel tasked with transforming a destroyed airfield to a functional expeditionary air base with the capacity to support 100 coalition aircraft.

*Significant achievements*

- Provided legal guidance on all facets of criminal, environmental, international, operational and contract law.

- Contributed additional service and expertise leading a contingency contracting and construction working group that unified multinational efforts on a base construction plan by securing necessary materials through common purchase contracts.

- Negotiated the release of a key coalition partner mistakenly apprehended by deployed coalition forces; secured trust of local populace.

- Assured temporary refuge and initiated political asylum process for family of Mohammed Odeh al-Rehaief, the Iraqi attorney responsible for PFC Jessica Lynch's rescue from an Iraqi hospital.

**Air Staff Tour, The Pentagon, DC**                                **2001 – 2003**

9

Served in a variety of assignments at the direction of The Judge Advocate General to include Director of Staff, Force Development Division, Air Force Senior Leader Management Office; TJAG Ethics Advisor and Chief of Legal Assistance/Preventive Law; and, Legal Advisor, Developing Aerospace Leaders Program Office.

### Significant achievements

- Stood up Judge Advocate cell in the HQ, USAF Crisis Action Team (CAT) at The Pentagon on September 12, 2001 after 9/11 terrorist attacks to provide senior AF leaders with timely legal counsel on crisis response, mobilization plans and matters of international and operations law.

- Authored key legal opinion regarding lawful use of napalm and other incendiary weapons against appropriate targets to assure compliance with the laws of armed conflict/international humanitarian law.

- Advocated and secured re-designation of Air Force military attorneys as "Line of the Air Force – JAG" in promotion competitive category at HQ Air Force to allow broader assignment opportunities for uniformed Air Force attorneys.

**Chief, International Law Branch, Int'l & Operations Law Division, Pentagon, DC        1998 – 2000**
Responsible for the drafting of critical legal reviews of operational and contingency plans governing military operations in Iraq, Kosovo, and Central America; authored a number of unprecedented and groundbreaking legal reviews and opinions.

### Significant achievements

- Deployed as Chief of Operations Law to NATO Stabilisation Force (SFOR), Sarajevo, Bosnia-Herzegovina from May – October 1999. Authored lesson plan then presented rules of engagement training to over 600 SFOR coalition troops, including special operations forces, to assure common proficiency in legal aspects of operations while engaged in the stabilization of Sarajevo. Provided legal advice on all international and operations law matters to the SFOR Legal Advisor, SFOR CJ3, and the Joint Special Operations Task Force Commander.

  - Supported International Criminal Tribunal for the Former Yugoslavia (ICTY) war crimes tribunal on the successful special mission arrest and delivery of three indicted war criminals to The Hague, Netherlands.

  - Ensured the security of NATO officials and heads of state in attendance at the Stability Pact Summit in Sarajevo, drafting a security operations plan and Rules of Engagement (*see*: https://www.theguardian.com/world/1999/jul/30/balkans).

  - Supported the United Nations Office of the High Representative's Anti-Fraud Unit, creating and presenting the OHR's anti-corruption plan at a donor summit in Sarajevo (*see*: https://www.gao.gov/archive/2000/ns00156.pdf).

  - Served on international claims tribunal to provide reparations for tort claims incident to SFOR operations by coalition forces.

- Wrote a landmark opinion that allowed media presence on combat aircraft in operations over Serbia.

10

SSS-002474

- Created a legal review of the first laser weapon used by the Department of Defense.

- Pioneered the first subject matter expert exchange between military forces in Trinidad and Tobago, in support of restricted national airspace and drug interdiction operations.

**Deputy SJA then SJA, Rhein Main AB, Germany                                                    1994 – 1997**

As Deputy SJA for 6 months, served as lead trial counsel on prosecution of criminal cases in the command. Also served as defense counsel for prior client charged in the 1994 Black Hawk shootdown incident over Northern Iraq. As SJA for 30 months, led an overseas legal office of 12 personnel to provide all legal support, criminal investigation advice and counsel functions for a command of 3,600 USAF and sister service US personnel, to include 31 tenant organizations at an air base co-located with the Frankfurt International Airport.

### *Significant cases*

U.*S. v. Maj Martin*, UCMJ Art. 119 (involuntary manslaughter). Served as defense counsel for airborne command element officer onboard the AWACS involved in the tragic April 14, 1994 shootdown of two US Black Hawk (UH-60) aircraft. Defended client during the AIB, Article 32 investigation, during Client's witness testimony at a related trial, and during subsequent Congressional testimony. Charges dropped against after the Article 32 investigation.

*U.S. v. Natkie*, UCMJ Art. 120 (rape), Rhein-Main AB, GE. Served as trial counsel to secure general court-martial conviction at fully litigated criminal trial of Airman that took advantage of passed out female Airman.

*U.S. v. Filuta*, UCMJ Art. 120 (aggravated sexual assault), Rhein-Main AB, GE. Served as trial counsel to secure general court-martial conviction in fully litigated criminal trial of Airman that videotaped and sexually assaulted another Airman.

*U.S. v. MSgt Howard*, UCMJ Art. 112a (marijuana), Rhein-Main AB, GE. Served as trial counsel to win general court-martial conviction of former first sergeant at fully litigated criminal trial.

### *Significant accomplishments*

- Represented the Air Base on negotiations to obtain surge ramp space capacity for operational necessity while transferring ownership of air base property to the Frankfurt Airport Authority and the German state of Hesse.

- Completed successful manpower study and justification to increase legal office manning by 60 per cent based on workload and supported tenant community.

### *Significant media coverage and media relations*

*Air Force Times*, "Fate of accused is in commander's hands", Vago Muradian, p. 16, November 7, 1994

*Air Force Times*, "Crewmember in shoot down makes statement", Steven Watkins, p. 6, October 10, 1994

**Circuit Defense Counsel, AF Legal Services Agency, Bolling AFB, DC                          1992 –1994**

11

SSS-002475

Provided trial defense services to USAF members alleged to have committed serious criminal offenses. Services ranged from representation in probable cause hearings, pre-trial confinement hearings and at trial before general courts-martial as authorized by 10 U.S. Code § 822 (UCMJ Art. 22).

*Significant cases*

*U.S. v. Maj Shelke,* UCMJ Art. 112a (marijuana use) Hanscom AFB, MA

*U.S. v. SSgt Summerville*, UCMJ Art. 112a (cocaine use), Andrews AFB, MD. Client acquitted.

*U.S. v. MSgt Debona,* UCMJ Art. 132 (travel voucher fraud), Hanscom AFB, MA

*U.S. v. TSgt Detar*, UCMJ Art. 112a (cocaine), Andrews AFB, MD

*U.S. v. SSgt Pope*, UCMJ Art. 107 (false official statement), Bolling AFB, DC

*U.S. v. SSgt Butterfield*, UCMJ Art. 120 (sexual assault), Plattsburg AFB, NY

*U.S. v. TSgt Richardson*, UCMJ Art. 120 (sexual assault), Plattsburg AFB, NY

*U.S. v. TSgt Davila*, UCMJ Art. 120 (sexual assault), Andrews AFB, MD

*U.S. v. Capt Williford*, UCMJ Art. 118 (attempted murder), Bolling AFB, DC

**National Capital Region Area Defense Counsel, Andrews AFB, MD                1991 – 1992**

Sole defense counsel (public defender) for all USAF personnel assigned to Andrews AFB, MD; Bolling AFB, DC; Fort Meade, MD; and The Pentagon, DC. Provided full spectrum of criminal defense services ranging from adverse administrative actions such as reprimands, Art. 15 nonjudicial punishment and representation before separation boards to criminal defense representation while under investigation by Security Forces Office of Investigations, Air Force Office of Special Investigations or commander-directed investigations, as well as representation at trial by court-martial.

*Significant cases*

*U.S. v. Col Hanson*, UCMJ Art 92, 93, 133 & 134 (dereliction of duty, maltreatment of subordinates, conduct unbecoming an officer and conduct of a nature to bring discredit on the Armed Forces), Bolling AFB, DC. Secured acquittal on the majority of charges and specifications against Client. Client sentenced to a reprimand, $10,000.00 fine and allowed to retire after trial.

*U.S. v. TSgt Davis*, UCMJ Art. 120 (rape), Andrews AFB, MD. Client faced life imprisonment. Client sentenced to 5 years confinement and dishonorable discharge.

*U.S. v. SrA Wilson*, UCMJ Art. 128 (aggravated assault – shaken baby), Andrews AFB, MD. Client convicted and faced maximum punishment of 8 years confinement; however, Client sentenced to 4 months confinement and bad conduct discharge based on extensive matters in mitigation.

*U.S. v. SrA Leal*, UCMJ Art. 120 (statutory rape), Andrews AFB, MD. Secured partial acquittal.

*U.S. v. SrA Wardell*, UCMJ Art. 121 and UCMJ Art. 123 (larceny and forgery), Andrews AFB, MD. Client faced maximum punishment of 75 years confinement; sentenced to 4 years confinement and bad conduct discharge.

12

*U.S. v. A1C Arnold*, UCMJ Art. 92 (dereliction of duty), Ft Meade, MD. Client acquittal on all charges.

*U.S. v. Lt Col Rolader*, UCMJ Art. 92 (failure to obey procurement integrity regulations), Bolling AFB, DC. Won dismissal of court-martial charges after Art. 32 pre-trial investigation, then withdrawal of nonjudicial punishment under Art. 15, UCMJ. Client received letter of reprimand and promotion delay, then removal. Laid foundation for civilian counsel to secure victory at U.S. Court of Federal Claims for promotion propriety action (*see:* http://www.cofc.uscourts.gov/sites/default/files/opinions/Rolader.pdf).

*U.S. v. MSgt Wallace*, Administrative Discharge Board (sexual assault), Bolling AFB, DC. Represented Client during AFOSI investigation, then at discharge board. Client retained.

*U.S. v. SSgt Basile*, Administrative Discharge Board (dereliction of duty), Bolling AFB, DC. Represented Client during commander-directed inquiry, then at discharge board. Client retained.

**Trial Counsel (Prosecutor), AFDW, Bolling AFB, DC                                   1989 – 1991**

Responsible for presentation of evidence, preparation of witnesses for direct and cross-examination, then presentation of the government's prosecution case on the merits and at sentencing, as appropriate.

*Significant cases*

*U.S. v. SSgt Brown*, UCMJ Art. 132 (claims fraud), Bolling AFB, DC. Secured conviction.

*U.S. v. SrA Daniels*, UCMJ Art. 128 (assault and battery), Bolling AFB, DC.

*U.S. v. Maj Williams*, UCMJ Art. 92, Art. 120 (unprotected sex HIV positive), Bolling AFB, DC. Secured conviction and dismissal.

*U.S. v. A1C Lorimer*, UCMJ Art. 121 (larceny - stolen ATM card), Bolling AFB, DC. Secured conviction and bad conduct discharge.

*U.S. v. Lt Col C.*, UCMJ Art. 92 (mishandling classified), Bolling AFB, DC. Advised AFOSI on criminal investigation; advised command on options; Accused officer received Art. 15 nonjudicial punishment and retired in lieu of court-martial.

*U.S. v. Capt D.*, UCMJ Art. 106 (espionage), Bolling AFB, DC. Accused resigned in lieu of court-martial.

**US Army Officer                                                                                       1983 – 1989**

Served in a variety of assignments with increasing responsibility as an Infantry officer and Counter-Intelligence officer in the US Army Reserve, then on active duty at the 101st Airborne Division (Air Assault) as an ambulance platoon leader and battalion personnel officer before a final tour as Aide-de-Camp to the Commanding General (MG/O-8), US Army Medical Research and Development Command.

**PROFESSIONAL AWARDS & HONORS**

2018 - AVVO 10 Rating (*see:* https://www.avvo.com/attorneys/20006-dc-larry-youngner-4630653.html)

2015 - Manager of The Year, Tully Rinckey PLLC

13

SSS-002477

2014 - *Virginia Lawyer's Weekly*, Virginia Leaders in the Law Class of 2014, (*see*: https://valawyersweekly.com/leaders-in-the-law/past-honorees/ and https://www.leclairryan.com/news/xprNewsDetail.aspx?xpST=NewsDetail&news=1173)

2014 - Legion of Merit (1OLC), Headquarters USAF, The Pentagon, DC

2013 - Legion of Merit, HQ, Air Force Special Operations Command (SOCOM), Hurlburt Field, FL

2010 - Bronze Star Medal, US Air Forces Central Command (CENTCOM), Al Udeid AB, Qatar

2007 - Meritorious Service Medal, International & Operations Law Division, HQ USAF, The Pentagon, DC

2006 - Association of the ICAF Award for Research Thesis: "US Stability Operations: A Capability in Search of a Home", National Defense University, Ft McNair, Washington, DC

2005 - Meritorious Service Medal, 4th FW (ACC), Seymour Johnson AFB, NC

2003 - Air Force Commendation Medal, 332 AEW, Balad AB, Iraq

1999 - HQ AF Outstanding Judge Advocate of the Year & USAF Kuhfeld Award Finalist

1999 - NATO Medal (SFOR-FRY)

1999 - Defense Meritorious Service Medal, SFOR, Bosnia-Herzegovina

1997 - Meritorious Service Medal, 469th ABG, Rhein-Main AB, Germany

1994 - 17th Air Force Outstanding Judge Advocate of the Year, HQ, 17th AF, Sembach AB, Germany

1994 - Meritorious Service Medal, Eastern Circuit USAF Trial Judiciary, Bolling AFB, Washington, DC

1990 - Meritorious Service Medal, Air Force District of Washington, Bolling AFB, Washington, DC

1988 - Meritorious Service Medal, 101st Airborne Division (AASLT), Ft Campbell KY

1987- Expert Field Medical Badge, 101st Airborne Division, Ft Campbell, KY

1986 - Air Assault Badge, 101st Airborne Division, Ft Campbell, KY

1986 - Army Commendation Medal, 372nd MI Detachment, 81st US Army Reserve Command

**EDUCATION**

Industrial College of the Armed Forces (*Distinguished Graduate*), National Defense University, Master of Science, National Resource Strategy, Ft McNair, DC, May 2006

Air War College (correspondence), Air University, Maxwell AFB, AL, June 2003

Air Command and Staff College (correspondence), Air University, Maxwell AFB, AL, October 1998

14

Master of Laws, Military Law, International Law and Operational Law Specialty, The Judge Advocate General's Legal Center and School, Charlottesville, VA, May 1998

Squadron Officer School (*Distinguished Graduate*), Maxwell AFB, AL, July 1993

Juris Doctor, University of Georgia Law School, Athens, GA, May 1986

Bachelor of Arts (*magna cum laude*), History, University of Georgia, Athens, GA, June 1983

**TRAINING**

Sexual Assault Prevention and Response Course, Gunter Annex, Maxwell AFB, AL, December 16 – 18, 2013

US DoD Standards of Conduct Office (SOCO) Ethics Course, Washington Navy Yard, October 10 – 12, 2012

3rd Annual Terrorism and Global Security Conference, Washington, DC, May 30 – 31, 2012

General Court-Martial Convening Authority SJA Course and Sexual Assault Response Training, AF Judge Advocate General School, Maxwell AFB, AL, April 17 – 20, 2012

21st Annual Review of the Field of National Security Law, ABA Standing Committee on Law and National Security, Washington, DC, December 1 – 2, 2011

Keystone, AF JAG Corps Leadership and Continuing Legal Education Conference, New Orleans, LA, October 2011

Office of Government Ethics (OGE) Joint Ethics Regulation Training Conference, Orlando, FL, September 12 – 16, 2011

Chairman Joint Chiefs of Staff (CJCS) Level IV Anti-Terrorism Executive Seminar, McLean, VA, January 25 – 27, 2011

Keystone, AF JAG Corps Leadership and Continuing Legal Education Conference, Buena Vista, FL, October 2010

Joint Special Operations Legal Advisors Course, Joint Special Operations University, MacDill AFB, FL, October 18 – 22, 2010

Introduction to Special Operations Course, AF Special Operations School, Hurlburt Field, FL, April 20 – 22, 2010

Keystone, AF JAG Corps Leadership and Continuing Legal Education Conference, Dallas, TX, October 2009

Keystone, AF JAG Corps Leadership and Continuing Legal Education Conference, Atlanta, GA, October 2008

15

SSS-002479

Keystone, AF JAG Corps Leadership and Continuing Legal Education Conference, National Harbor, MD, October 2007

Joint Air and Space Operations Senior Staff Course, Hurlburt Field, FL, May 14 – 18, 2007

Middle East Orientation Course, Joint Special Operations University, Joint Special Operations University (JSOU), Hurlburt Field, FL, March 12 – 16, 2007

Accident Investigation Board Legal Advisor's Course, AF Judge Advocate General School, Maxwell AFB, AL, November 18 – 20, 2003

Operations Law Course, AF Judge Advocate General School, Maxwell AFB, AL, May 1999

US Army Fiscal Law Course, The Judge Advocate General's Legal Center and School, Charlottesville, VA, April 29 – May 3, 1996

US Army Operational Law Seminar, The Judge Advocate General's Legal Center and School, Charlottesville, VA, January 23 – 27, 1995

USAF International Law Course, AF Judge Advocate General School, Maxwell AFB, AL, June 1995

Staff Judge Advocate Course, AF Judge Advocate General School, Maxwell AFB, AL, June 1995

Contract Attorney's Course, The Judge Advocate General's Legal Center and School, Charlottesville, VA, March 6 – 17, 1995

US Army Europe NATO SOFA Foreign Trial Observers Course, Heidelberg, GE, August 1994

Law of War Workshop, The Judge Advocate General's Legal Center and School, Charlottesville, VA, November 14 – 18, 1994

Forensic Toxicology Course, Armed Forces Institute of Pathology, Washington DC, April 6 – 8, 1994

Advanced Trial Advocacy Course, AF Judge Advocate General School, Maxwell AFB, AL, September 1993

Criminal Law New Developments Course, The Judge Advocate General's Legal Center and School, Charlottesville, VA, August 9 – 13, 1993

Defense Counsel Orientation Course, AF Legal Services Agency, Bolling AFB, DC, July 1991

Environmental Law Course, AF Judge Advocate General School, Maxwell AFB, AL, May 13 – 17, 1991

Trial Defense Advocacy Course, AF Judge Advocate General School, Maxwell AFB, AL, May 1991

Federal Claims and Tort Litigation Course, AF Judge Advocate General School, Maxwell AFB, AL, February 11 – 15, 1991

Judge Advocate Staff Office Course, AF Judge Advocate General School, Maxwell AFB, AL, February - April 13, 1990

16

Personnel Management Officer Course, Ft Benjamin Harrison, IN, January - February 1987

Supply Officer Audit and Accountability Course, 101st Airborne Division (AASLT), Ft Campbell, KY, November 16 – 20, 1987

Air Assault School, 101st Airborne Division (AASLT), Ft Campbell, KY, Nov 1986

Medical Service Corps Office Basic Course, Ft Sam Houston, TX, June 22 – September 12, 1986

Intelligence and Combat Operations Officer Course, Ft Bragg, NC, June 23 – July 5, 1985

Counterintelligence Officer and Signal Security Course, Ft McCoy, WI, June – August 3, 1984

## SPEAKING & TEACHING

Invited Speaker & Participant, *Business of Law*, 2016 Managing Partner Summit, Tully Rinckey, PLLC, Washington, DC, April 2016

Invited Speaker, *Boards for Correction of Military Records*, 2015 Annual Survey of the Law, USAFRES & ANG, Chicago, IL, October 2015

Invited Speaker & Participant, *Attorney On-Boarding and Off-Boarding*, 2015 Managing Partner Summit, Tully Rinckey, PLLC, Albany, NY, April 2015

Invited Speaker, *Law and Air Warfare: CFACC & Senior Staff Considerations*, Combined Joint Forces Air Component Commander Course, The LeMay Center, Air University, Maxwell AFB, AL, June 19, 2014

Invited Speaker, *Law and Air Warfare: CFACC & Senior Staff Considerations*, Combined Joint Forces Air Component Commander Course, The LeMay Center, Air University, Maxwell AFB, AL, December 16, 2013

Invited Speaker*, Command Responsibility, Respondeat Superior, and the Law of Armed Conflict: Criminal Liability for Senior Leaders*, Combined Joint Forces Air Component Commander Course, The LeMay Center, Air University, Maxwell AFB, AL, June 24, 2013

Invited Speaker (Adjunct Faculty), *Operations Law and Recent Developments*, Judge Advocate Staff Officer Course, Air Force Judge Advocate General School, Maxwell AFB, AL, April 8, 2013

Invited Speaker, *Status of Discipline and Command Accountability*, AFSOC Squadron Commanders' Course, Hurlburt Field, FL, April 2013

Invited Speaker, *Command Responsibility, Respondeat Superior, and the Law of Armed Conflict: Criminal Liability for Senior Leaders*, Combined Joint Forces Air Component Commander Course, The LeMay Center, Air University, Maxwell AFB, AL, December 6, 2012

Invited Speaker, *Air Force Special Operations Forces: Capabilities and Aerial Rules of Engagement*, Joint Special Operations Legal Advisors Course, Joint Special Operations University, MacDill AFB, FL, October 2012

17

Invited Presenter, *Special Access Program Contracting, Investigations and Audits*, Secretary of the Air Force, General Counsel's Office, The Pentagon, DC, August 13, 2012

Invited Speaker (Adjunct Faculty), *Operations Law and Recent Developments*, Judge Advocate Staff Officer Course, Air Force Judge Advocate General School, Maxwell AFB, AL, July 25, 2012

Invited Speaker, *Command Responsibility, Respondeat Superior, and the Law of Armed Conflict: Criminal Liability for Senior Leaders*, Combined Joint Forces Air Component Commander Course, The LeMay Center, Air University, Maxwell AFB, AL, June 22, 2012

Invited Speaker, *Counterinsurgency and Counter-Transnational Organized Crime: Legal Responses and Opportunities*, Fuerza Commando Special Operations Conference, Bogota, Colombia, June 11 – 14, 2012

Invited Speaker*, International and Operations Law: Fundamentals for Deployment*, Air Force Operations Law Course, Air Force Judge Advocate General School, Maxwell AFB, AL, May 18, 2012

Invited Speaker, *Status of Discipline and Command Accountability*, AFSOC Squadron Commanders' Course, Hurlburt Field, FL, April 2012

Invited Speaker (Adjunct Faculty), *Operations Law and Recent Developments*, Judge Advocate Staff Officer Course, Air Force Judge Advocate General School, Maxwell AFB, AL, April 9, 2012

Invited Speaker, *The Law of Armed Conflict for Remotely Piloted Aircraft in Conflict*, Department of Defense General Counsel Special Mission Training, 27th Special Operations Wing, Cannon AFB, NM, February 16, 2012

Invited Speaker (Adjunct Faculty), *Operations Law and Recent Developments*, Judge Advocate Staff Officer Course, Air Force Judge Advocate General School, Maxwell AFB, AL, December 8, 2011

Invited Speaker, *Command Responsibility, Respondeat Superior, and the Law of Armed Conflict: Criminal Liability for Senior Leaders*, Combined Joint Forces Air Component Commander Course, The LeMay Center, Air University, Maxwell AFB, AL, December 7, 2011

Invited Panelist, *Operational Law Experts Roundtable on the Gotovina Judgment: Military Operations, Battlefield Reality and the Judgment's Impact on Effective Implementation and Enforcement of International Humanitarian Law*, International Humanitarian Law Institute, Emory University, Atlanta, GA, November 4, 2011 (*see*: Emory Law Research Paper No. 12-186, Laurie Blank, January 28, 2012; https://inavukic.files.wordpress.com/2012/01/gotovina_meeting_report.pdf)

Lecturer, *The Law of Foreign Disaster Response, Humanitarian and Civic Assistance*, CLE Elective, Keystone JAG Corps Leadership Conference, New Orleans, LA, October 2011

Invited Speaker, *Air Force Special Operations Forces: Capabilities and Aerial Rules of Engagement*, Joint Special Operations Legal Advisors Course, Joint Special Operations University, MacDill AFB, FL, October 2011

Invited Speaker (Adjunct Faculty), *Operations Law and Recent Developments*, Judge Advocate Staff Officer Course, Air Force Judge Advocate General School, Maxwell AFB, AL, August 22, 2011

Keynote Speaker, *The Roles of Judge Advocates in Florida*, The 2011 Military Law Symposium during Florida Bar Association 2011 Annual Meeting, Orlando FL, June 25, 2011 (*see*: Military Affairs

18

Committee Report at: https://www.floridabar.org/the-florida-bar-journal/annual-reports-of-committees-of-the-florida-bar-2/)

Invited Speaker, *International and Operations Law: Fundamentals for Deployment*, Air Force Operations Law Course, Air Force Judge Advocate General School, Maxwell AFB, AL, May 19, 2011

Invited Presenter, *Non-Standard Aviation Platforms: Markings and Compliance with the Law of Armed Conflict*, Department of Defense General Counsel, The Pentagon, DC, April 28, 2011

Invited Speaker (Adjunct Faculty), *Operations Law and Recent Developments*, Judge Advocate Staff Officer Course, Air Force Judge Advocate General School, Maxwell AFB, AL, April 1, 2011

Invited Speaker, *Status of Discipline and Command Accountability*, AFSOC Squadron Commanders' Course, Hurlburt Field, FL, April 2011

Lecturer, *Don't Ask, Don't Tell Repeal – Compliance Training*, 27th Special Operations Wing, Cannon AFB, NM, March 14 – 16, 2011

Lecturer, *Don't Ask, Don't Tell Repeal – Compliance Training*, Headquarters, Air Force Special Operations Command and 1st Special Operations Wing, Hurlburt Field, FL, March 7 – 9, 2011

Invited Speaker (Adjunct Faculty), *Operations Law Leadership Issues*, Gateway Judge Advocate Staff Officer Career Course, Air Force Judge Advocate General School, Maxwell AFB, AL, March 2011

Invited Speaker (Adjunct Faculty), *Operations Law and Recent Developments*, Judge Advocate Staff Officer Course, Air Force Judge Advocate General School, Maxwell AFB, AL, December 6, 2010

Invited Speaker, *Afghanistan Rules of Engagement for Operation ENDURING FREEDOM: What Every Joint Terminal Attack Controller (JTAC) Must Know*, 24th Special Tactics Group, Ft Lewis, WA, November 2010

Invited Speaker, *Air Force Special Operations Forces: Capabilities and Aerial Rules of Engagement*, Joint Special Operations Legal Advisors Course, Joint Special Operations University, MacDill AFB, FL, October 18-22, 2010

Invited Speaker (Adjunct Faculty), *Practical Aspects of Contractors in the AOR: Criminal and Civil Law Concerns*, Total Air Force (Reserve Components) Operations Law Course, Air Force Judge Advocate General School, Maxwell AFB, AL, April 2010

Invited Speaker (Adjunct Faculty), *Operations Law Leadership Issues*, Gateway Judge Advocate Staff Officer Career Course, Air Force Judge Advocate General School, Maxwell AFB, AL, February 2010

Invited Speaker (Adjunct Faculty), *Operations Law and Recent Developments*, Judge Advocate Staff Officer Course, Air Force Judge Advocate General School, Maxwell AFB, AL, January 14, 2010

Invited Speaker (Adjunct Faculty), *Operations Law and Recent Developments*, Judge Advocate Staff Officer Course, Air Force Judge Advocate General School, Maxwell AFB, AL, November 23, 2009

Invited Lecturer, *Military Justice and Civilians in the Battlespace*, Keystone Leadership and CLE Conference, Dallas, TX, October 2009

19

SSS-002483

Observer/Controller, JAG Flag Exercise, Air Force Operations Law Course, Air Force Judge Advocate General School, Maxwell AFB, AL, May 2009

Invited Speaker (Adjunct Faculty), *Operations Law and Recent Developments*, Judge Advocate Staff Officer Course, Air Force Judge Advocate General School, Maxwell AFB, AL, March 27, 2009

Invited Lecturer, *AFCENT Ops and the Law of Armed Conflict* and *Current Ops Issues in the CENTCOM AOR*, Keystone Leadership and CLE Conference, Atlanta, GA, October 2008

Invited Speaker (Adjunct Faculty), *Operations Law and Recent Developments*, Judge Advocate Staff Officer Course, Air Force Judge Advocate General School, Maxwell AFB, AL, September 2008

Observer/Controller, JAG Flag Exercise, Air Force Operations Law Course, Air Force Judge Advocate General School, Maxwell AFB, AL, May 2008

Invited Speaker, *The Law of Armed Conflict and Air Operations*, Air War College, Air University, Maxwell AFB, AL, April 2008

Invited Lecturer, *Deployed Staff Judge Advocate: Criminal Law and Operational Issues*, Air Force Operations Law Course, Air Force Judge Advocate General School, Maxwell AFB, AL, January 2008

Invited Lecturer, *Anatomy of an Airstrike: The Combined Air Operations Center (CAOC) and the Rule of Law*, Keystone Leadership and CLE Conference, National Harbor, MD, November 2007

Invited Speaker, *Operational Law: Judge Advocates, Rules of Engagement, the Combined Air Operations Center (CAOC) and War Crimes*, US Naval War College ROE Elective, Newport, RI, October 2007

Invited Speaker (Adjunct Faculty), *Joint Issues: Criminal and Operations Law*, Judge Advocate Staff Officer Course, Air Force Judge Advocate General School, Maxwell AFB, AL, September 26, 2007

Invited Lecturer, *Operations Law Update*, Staff Judge Advocates Course, Air Force Judge Advocate General School, Maxwell AFB, AL, July 2007

Invited Speaker, *Personal and Professional Readiness for the AIB*, Aircraft Accident Investigation Course, Air Force Legal Operations Agency, Rosslyn, VA, September 2007

Invited Lecturer, *Deployed Staff Judge Advocate: Criminal Law and Operational Issues*, Air Force Operations Law Course, AF Judge Advocate General School, Maxwell AFB, AL, May 2007

Keynote Speaker, *Military Lawyers, Operations, and the Rule of Law*, Criminal Defence in International Criminal Law – Training Session for Practitioners, Int'l Criminal Defense Attorneys Association, Montreal, Canada, December 11, 2006 (*see*: http://www.ieim.uqam.ca/IMG/pdf/Montreal_training_workshop_2006_draft_06_bio.pdf)

Invited Speaker, *Stability Operations: A Capability in Search of a Home*, United Nations Peace Operations Conference, New York, NY, July 2006

Invited Speaker, *The USAF Family Maltreatment Case Management Team*, Domestic Violence Workshop, U.S. Attorney's Office, Raleigh, NC, 2005

20

*As of March 17, 2020*

SSS-002484

Lecturer, *Operational Deployments and Military Justice*, Staff Judge Advocate Course Elective, AF Judge Advocate General School, Maxwell AFB, AL, June 2004

Invited Speaker, *Friendly Fire Investigations*, Accident Investigation Board Legal Advisor Course, AF Judge Advocate General School, Maxwell AFB, AL, November 2003

Lecturer, *Operational Deployments and Military Justice*, Staff Judge Advocate Course Elective, AF Judge Advocate General School, Maxwell AFB, AL, June 2003

Invited Speaker/Participant, *Non-Lethal Weapons Law and Policy*, US/UK Non-Lethal weapons and Urban Operations War Game III, US Naval War College, Newport, RI, September 10 – 12, 2000

Invited Speaker, *War Crimes*, Criminal Justice Section, American Bar Association Annual Meeting, New York, NY, July 7, 2000

Invited Speaker, *Current Developments in International and Operations Law*, U.S. Pacific Command Air Forces (PACAF) Operations Law Conference, Osan Air Base, Republic of Korea, November 1999

Lecturer, *Fundamentals of the Law of Armed Conflict: Advising Operational Commanders*, AF JAG Corps Annual Nat'l Capital Region Continuing Legal Education Course, Arlington, VA, May 15, 1999

Invited Speaker, *Legal Status of Isolated Personnel*, Department of Defense Personnel Recovery Conference, Ft Belvoir, VA, October 6, 1998

Invited Speaker, *Winning Trial Notebooks*, Eastern Circuit Defense Counsel Conference, Andrews AFB, MD, October 1993

Invited Speaker, *Defending the Senior Client*, Eastern Circuit Defense Counsel Conference, Andrews AFB, MD, October 1993

Lecturer, *Preparing Investigative Agents for Cross-Examination*, AFOSI Academy, Bolling AFB, DC, December 1992

Invited Speaker, *Trial Preparation*, Area Defense Counsel Orientation Course, Air Force Legal Services Agency, Bolling AFB, DC, July 1992

Lecturer, *Preparing Investigative Agents for Cross-Examination*, AFOSI Academy, Bolling AFB, DC, May 1992

Lecturer, *Preparing Investigative Agents for Cross-Examination*, AFOSI Academy, Bolling AFB, DC, December 1991

**PUBLICATIONS**

Colonel Larry D. Youngner, "AFSOC Air Force Special Operations Command", *The Reporter*, Vol 39 no. 3, 2012, at pp. 130 – 131 (*see*: https://www.afjag.af.mil/Portals/77/documents/AFD-140103-033.pdf)

21

APPENDIX A                                              *As of March 17, 2020*

SSS-002485

Colonel Larry D. Youngner, "AFSOC Air Force Special Operations Command", *The Reporter*, vol. 38 no. 4, 2011, at pp. 138 – 140 (*see*: https://www.afjag.af.mil/Portals/77/documents/AFD-130624-043.pdf)

Colonel Larry D. Youngner, "AFSOC Air Force Special Operations Command", *The Reporter*, vol. 37 no. 4, 2011, at pp. 134 – 135 (*see*: https://www.afjag.af.mil/Portals/77/documents/AFD-111018-032.pdf)

*Air Force Operations & The Law: A Guide for Air, Space, & Cyber Forces - Second Edition* (2009), The Air Force Judge Advocate General's School, Maxwell AFB, AL (contributing author)

Colonel Larry D. Youngner, "9 AF/JA (ACC) Shaw AFB, SC", *The Reporter*, Vol 36, no. 4, 2009, at pp. 112-113 (*see*: https://www.afjag.af.mil/Portals/77/documents/AFD-100510-067.pdf)

Colonel Larry D. Youngner, "9 AF/JA (ACC) Shaw AFB, SC", *The Reporter*, Vol 35, no. 4, 2008, at p. 98 (*see*: https://www.afjag.af.mil/Portals/77/documents/AFD-090317-021.pdf)

Colonel Larry D. Youngner, USAF; Squadron Leader Patrick Keane, RAAF; and Squadron Leader Andrew McKendrick, RAF, "The Influence of International Law on the Military Commissions Act 2006: The Glass Half Full or Half Empty?", *The Army Lawyer*, July 2007 (*see*: https://www.loc.gov/rr/frd/Military_Law/pdf/07-2007.pdf)

Colonel Larry D. Youngner, "9 AF-USCENTAF/JA (ACC) SHAW AFB, SC", *The Reporter*, Vol 35, No. 1, 2007, at pp. 132-133 (*see*: https://www.afjag.af.mil/Portals/77/documents/AFD-090114-047.pdf)

*I Lead! Developing JAG Corps Leaders* (2005), The Air Force Judge Advocate General's School, Maxwell AFB, AL (contributing author)(*see*: https://www.afjag.af.mil/Portals/77/documents/AFD-090116-050.pdf)

AF Pam 36-2241*, 2001 USAF Promotion Fitness Examination Study Guide*, "Chapter 15: The Law of Armed Conflict and Rules of Engagement" (2001) (chapter author)

*Air Force Operations & The Law: A Guide for Air, Space, & Cyber Forces - First Edition* (2001) The Air Force Judge Advocate General's School, Maxwell AFB, AL (contributing author)

U.S. Army, JA 422, *OPERATIONAL LAW HANDBOOK* (1999), Int'l & Operational Law Dep't, The Judge Advocate Gen.'s Legal Ctr. & Sch., (contributing author)

Major Larry D. Youngner, "Operational Law Note: Protection of Cultural Property During Expeditionary Operations Other Than War", *The Army Lawyer*, March 1999, at p. 25 (*see*: https://www.loc.gov/rr/frd/Military_Law/pdf/03-1999.pdf)

Major Larry D. Youngner, *No-Fly Zones: Law, Policy, and the 1994 Black Hawk Fratricide*, The Judge Advocate Gen.'s Legal Ctr. & Sch., U.S. Army, 1999 (*see*: https://www.amazon.com/No-Fly-Zones-Policy-Black-Fratricide/dp/B00IT6NAFO; and https://apps.dtic.mil/dtic/tr/fulltext/u2/a366365.pdf)

**PROFESSIONAL ORGANIZATIONS**

Air Commando Association – Life Member (2010)

22

SSS-002486

Air Force Association – Life Member (2003)

American Bar Association – Member No. 01943094
- ABA Military Veterans Legal Services Network Summit, June 23-24, 2016, Washington, D.C.
- ABA World Justice Project – Multidisciplinary Outreach Mtg, February 28, 2007, Washington, DC
- Air Force Representative, ABA Standing Committee on Legal Assistance for Military Personnel (LAMP), 2001

Burton Awards for Legal Achievement (*see*: https://www.burtonawards.com/about/)
- Public Service in the Military, Government & Public Interest Awards Committee Member (*see*: https://www.burtonawards.com/board-committees/), 2015 – 2020

Judge Advocates Association (*see*: http://jaa.org/about)
- Director, Board of Directors, 2014 – 2019 (*see*: http://jaa.org/leadership)
- Life Member (2014)

Military Officers Association of America – Life Member (2013)

23

CAUTION: NOT TO BE USED FOR IDENTIFICATION PURPOSES

THIS IS AN IMPORTANT RECORD
SAFEGUARD IT

ANY ALTERATIONS IN SHADED AREAS RENDER FORM VOID

| DD FORM 214 1 JUL 79 | PREVIOUS EDITIONS OF THIS FORM ARE OBSOLETE | CERTIFICATE OF RELEASE OR DISCHARGE FROM ACTIVE DUTY |
|---|---|---|

| 1. NAME (Last, First, Middle) | 2. DEPARTMENT, COMPONENT AND BRANCH | 3. SOCIAL SECURITY NO. |
|---|---|---|
| YOUNGNER, LARRY DOUGLAS | ARMY-RA | 341 40 7965 |

| 4a. GRADE, RATE OR RANK | 4b. PAY GRADE | 5. DATE OF BIRTH | 6. PLACE OF ENTRY INTO ACTIVE DUTY |
|---|---|---|---|
| CPT | 03 | 610423 | ATHENS, GEORGIA |

| 7. LAST DUTY ASSIGNMENT AND MAJOR COMMAND | 8. STATION WHERE SEPARATED FORT DETRICK |
|---|---|
| USAMRDC (WO3JAA) | FREDERICK, MARYLAND 21701-5000 |

| 9. COMMAND TO WHICH TRANSFERRED | 10. SGLI COVERAGE | |
|---|---|---|
| NA | AMOUNT $ 50 ___000 | NONE |

| 11. PRIMARY SPECIALTY NUMBER, TITLE AND YEARS AND MONTHS IN SPECIALTY (Additional specialty numbers and titles) | 12. RECORD OF SERVICE | YEAR (s) | MON (s) | DAY (s) |
|---|---|---|---|---|
| 67B00 — FIELD MEDICAL ASSISTANT | a. Date Entered AD This Period | 86 | 05 | 16 |
| 3 YEARS 6 MONTHS | b. Separation Date This Period | 89 | 11 | 30 |
| | c. Net Active Service This Period | 03 | 06 | 15 |
| | d. Total Prior Active Service | 00 | 02 | 26 |
| 67F00 — HEALTH SERVICES PERSONNEL MANAGER | e. Total Prior Inactive Service | 02 | 08 | 09 |
| 3 YEARS 1 MONTH//NOTHING FOLLOWS | f. Foreign Service | 00 | 00 | 00 |
| | g. Sea Service | 00 | 00 | 00 |
| | h. Effective Date of Pay Grade | 88 | 06 | 01 |
| | i. Reserve Oblig. Term Date | 00 | 00 | 00 |

13. DECORATIONS, MEDALS, BADGES, CITATIONS AND CAMPAIGN RIBBONS AWARDED OR AUTHORIZED (All periods of service)
MERITORIOUS SERVICE MEDAL, ARMY COMMENDATION MEDAL, ARMY ACHIEVEMENT MEDAL (1ST OLC), ARMY SERVICE RIBBON, ARMY RESERVE COMPONENTS ACHIEVEMENT MEDAL, EXPERT FIELD MEDICAL BADGE, AIR ASSAULT BADGE//NOTHING FOLLOWS'

14. MILITARY EDUCATION (Course Title, number weeks, and month and year completed)
SUPPLY & SERVICE MANAGEMENT OFFICER, 9 WEEKS, '87, BATTALION S-1 (PERSONNEL MANAGEMENT STAFF OFFICER), 6 WEEKS, '87, AIR ASSAULT, 2 WEEKS, '86, AMEDD OFFICER BASIC (MSG), 5 WEEKS, '86, COMBAT OPERATIONS, 2 WEEKS, '85, COUNTERINTELLIGENCE OFFICER, 16 WEEKS, '84//NOTHING FOLLOWS'

| 15. MEMBER CONTRIBUTED TO POST VIETNAM ERA VETERANS' EDUCATIONAL ASSISTANCE PROGRAM | YES | X No | 15a. HIGH SCHOOL GRADUATE OR EQUIVALENT | X YES | NO | 17. DAYS ACCRUED LEAVE PAID 39.5 |
|---|---|---|---|---|---|---|

18. REMARKS    DENTAL CARE HAS NOT BEEN PROVIDED WITHIN THE LAST 90 DAYS

| 19. MAILING ADDRESS AFTER SEPARATION | 20. MEMBER REQUESTS COPY 6 BE SENT TO MD DDP OF VET AFFAIRS |
|---|---|
| 621 NORTH HOWARD STREET, APT 103 | X YES ☐ NO |
| ALEXANDRIA, VIRGINIA 22304 | |

| 21. SIGNATURE OF MEMBER BEING SEPARATED | 22. TYPED NAME, GRADE, TITLE AND SIGNATURE OF OFFICIAL AUTHORIZED TO SIGN |
|---|---|
| | EDDIE M. COLEMAN, ASST DIR OF MILITARY PERSONNEL |

MEMBER-1

SPECIAL ADDITIONAL INFORMATION (For use by authorized agencies only)

| 23. TYPE OF SEPARATION | 24. CHARACTER OF SERVICE (Includes upgrades) | |
|---|---|---|
| RELIEF FROM ACTIVE DUTY | HONORABLE | |
| 25. SEPARATION AUTHORITY | 26. SEPARATION CODE | 27. REENLISTMENT CODE |
| AR 614-120 | MCP | NP |
| 28. NARRATIVE REASON FOR SEPARATION | | |
| INTERAGENCY TRANSFER OR DIRECTED | | 30. MEMBER REQUESTS COPY 4 |
| 29. DATES OF TIME LOST DURING THIS PERIOD | | ___ INITIALS |
| NONE | | MEMBER-4 |

SSS-002488

**CAUTION: NOT TO BE USED FOR IDENTIFICATION PURPOSES**  
**THIS IS AN IMPORTANT RECORD. SAFEGUARD IT.**  
**ANY ALTERATIONS IN SHADED AREAS RENDER FORM VOID**

## CERTIFICATE OF RELEASE OR DISCHARGE FROM ACTIVE DUTY
This Report Contains Information Subject to the Privacy Act of 1974, As Amended.

| 1. NAME (Last, First, Middle) YOUNGNER  LARRY  DOUGLAS  JR | 2. DEPARTMENT, COMPONENT AND BRANCH AIR FORCE--REGAF | 3. SOCIAL SECURITY NUMBER 341  40  7965 |
|---|---|---|

| 4a. GRADE, RATE OR RANK COL | b. PAY GRADE O6 | 5. DATE OF BIRTH (YYYYMMDD) 19610423 | 6. RESERVE OBLIGATION TERMINATION DATE (YYYYMMDD) N/A |
|---|---|---|---|

| 7a. PLACE OF ENTRY INTO ACTIVE DUTY ALEXANDRIA VA | b. HOME OF RECORD AT TIME OF ENTRY (City and state, or complete address if known) CLARKESVILLE TN |
|---|---|

| 8a. LAST DUTY ASSIGNMENT AND MAJOR COMMAND OL JA00 U S AIR FORCE HQ (AHQ) | b. STATION WHERE SEPARATED JBSA RANDOLPH TX |
|---|---|

9. COMMAND TO WHICH TRANSFERRED
N/A

| 10. SGLI COVERAGE | NONE |
|---|---|
| AMOUNT: $400,000 | |

| 11. PRIMARY SPECIALTY (List number, title and years and months in specialty. List additional specialty numbers and titles involving periods of one or more years.) 51J4, JUDGE ADVOCATE, 24 YEARS AND 7 MONTHS | 12. RECORD OF SERVICE | YEAR(S) | MONTHS(S) | DAY(S) |
|---|---|---|---|---|
| | a. DATE ENTERED AD THIS PERIOD | 1989 | DEC | 01 |
| | b. SEPARATION DATE THIS PERIOD | 2014 | JUN | 30 |
| | c. NET ACTIVE SERVICE THIS PERIOD | 24 | 07 | 00 |
| | d. TOTAL PRIOR ACTIVE SERVICE | 03 | 08 | 20 |
| | e. TOTAL PRIOR INACTIVE SERVICE | 02 | 08 | 09 |
| | f. FOREIGN SERVICE | 02 | 11 | 22 |
| | g. SEA SERVICE | 00 | 00 | 00 |
| | h. INITIAL ENTRY TRAINING | 1984 | JUN | 10 |
| | i. EFFECTIVE DATE OF PAY GRADE | 2005 | DEC | 01 |

| 13. DECORATIONS, MEDALS, BADGES, CITATIONS AND CAMPAIGN RIBBONS AWARDED OR AUTHORIZED (All periods of service) Legion of Merit, Bronze Star, Defense Meritorious Service Medal, Meritorious Service Medal with 6 oak leaf clusters, Air Force Commendation Medal with 1 oak leaf cluster, Army Commendation Medal with 1 oak leaf cluster, Army Achievement Medal with 1 oak leaf cluster, Meritorious Unit Award, AF Outstanding Unit Award with Valor //See Remarks// | 14. MILITARY EDUCATION (Course title, number of weeks, and month and year completed) (WXD) JUDGE ADVOCATE STAFF OFFICER COURSE, APR 1990; (0G0) AIR FORCE CLAIMS AND TORT LITIGATION COURSE, FEB 1991; (4B1) ENVIRONMENTAL LAW, MAY 1991; PDE - SQUADRON OFFICER SCHOOL (BEFORE 2005) (RESIDENCE), JAN 1993; (4SJ) CRIMINAL LAW NEW DEVELOPMENTS COURSE (5F-F35), AUG 1993; (6AT) ADVANCED TRIAL ADVOCACY COURSE, SEP 1993;//SEE REMARKS// |
|---|---|

| 15a. COMMISSIONED THROUGH SERVICE ACADEMY | | YES | X | NO |
|---|---|---|---|---|
| b. COMMISSIONED THROUGH ROTC SCHOLARSHIP(10 USC Sec. 2107b) | | X | YES | | NO |
| c. ENLISTED UNDER LOAN REPAYMENT PROGRAM (10 USC Chap. 109) (If yes, years of commitment: _____ ) | | YES | X | NO |

| 16. DAYS ACCRUED LEAVE PAID     0 | 17. MEMBER WAS PROVIDED COMPLETE DENTAL EXAMINATION AND ALL APPROPRIATE DENTAL SERVICES AND TREATMENT WITHIN 90 DAYS PRIOR TO SEPARATION | YES | NO |
|---|---|---|---|
| | | | X |

18. REMARKS
ITEM 13: Device with 3 oak leaf clusters, AF Organizational Excellence Award with 2 oak leaf clusters, National Security Medal, National Defense Service Medal with 1 service star, Armed Forces Expeditionary Medal , Southwest Asia Service Medal, Iraq Campaign Medal with 1 service star, Global War On Terrorism Expeditionary Medal, Global War on Terrorism Service Medal, Humanitarian Service Medal, Air & Space Campaign Medal, AF Overseas Ribbon Long, Air Force Expeditionary Service Ribbon with Gold Border, AF Longevity Service with 6 oak leaf clusters, Small Arms Expert Marksmanship Ribbon (Pistol), AF Training Ribbon, Army Service Ribbon, NATO Medal (Wear first NATO medal awarded.). ITEM 14: (4MF) LAW OF WAR WORKSHOP (5F-F42), NOV 1994; (4AV) OPERATIONAL LAW COURSE (5F-F47), JAN 1995; //See Continuation Page//

The information contained herein is subject to computer matching within the Department of Defense or with any other affected Federal or non-Federal agency for verification purposes and to determine eligibility for, and/or continued compliance with, the requirements of a Federal benefit program.

| 19a. MAILING ADDRESS AFTER SEPARATION (Include ZIP Code) 915 HARRISON CIRCLE ALEXANDRIA VA 22304 | b. NEAREST RELATIVE (Name and address - include ZIP Code) KRISTINE M. KIJEK 915 HARRISON CIRCLE ALEXANDRIA VA 22304 |
|---|---|

| 20. MEMBER REQUESTS COPY 6 BE SENT TO (Specify state/locality)  VA  OFFICE OF VETERANS AFFAIRS | X | YES | | NO |
|---|---|---|---|---|
| a. MEMBER REQUESTS COPY 3 BE SENT TO THE CENTRAL OFFICE OF THE DEPARTMENT OF VETERANS AFFAIRS (WASHINGTON, DC) | X | YES | | NO |

| 21.a. MEMBER SIGNATURE MEMBER NOT AVAILABLE TO SIGN | b. DATE (YYYYMMDD) N/A | 22.a. OFFICIAL AUTHORIZED TO SIGN (Typed name, grade, title, signature) CAC/PKI SIGNED BY  COX.CHRISTOPHER.HOWARD.1402778730 SRA, USAF, DD Form 214 Technician  Jul 18 2014 3:52:13:000PM CAC Serial Number: 067795    IssuerCN: DOD CA-29 | b. DATE (YYYYMMDD) 20140718 |
|---|---|---|---|

### SPECIAL ADDITIONAL INFORMATION (For use by authorized agencies only)

| 23. TYPE OF SEPARATION RETIREMENT | 24. CHARACTER OF SERVICE (Include upgrades) HONORABLE |
|---|---|

| 25. SEPARATION AUTHORITY AFI 36-3203 | 26. SEPARATION CODE RBD | 27. REENTRY CODE NOT APPLICABLE |
|---|---|---|

28. NARRATIVE REASON FOR SEPARATION
VOL RETIREMENT: SUFFICIENT SERVICE FOR RETIREMENT

| 29. DATES OF TIME LOST DURING THIS PERIOD (YYYYMMDD) NONE | 30. MEMBER REQUESTS COPY 4 (Initials)  N/A |
|---|---|

**DD FORM 214, AUG 2009**   PREVIOUS EDITION IS OBSOLETE   **SERVICE-2**

**CAUTION: NOT TO BE USED FOR
IDENTIFICATION PURPOSES**

**THIS IS AN IMPORTANT RECORD.
SAFEGUARD IT.**

**ANY ALTERATIONS IN SHADED AREAS
RENDER FORM VOID**

### CERTIFICATE OF RELEASE OR DISCHARGE FROM ACTIVE DUTY *(Continuation Sheet)*
This Report Contains Information Subject to the Privacy Act of 1974, As Amended.

| 1.  NAME *(Last, First, Middle)* | 2.  DEPARTMENT, COMPONENT AND BRANCH | 3.  SOCIAL SECURITY NUMBER | | |
|---|---|---|---|---|
| YOUNGNER  LARRY  DOUGLAS  JR | AIR FORCE--REGAF | 341 | 40 | 7965 |

Items continued: ITEM 18: (NJE) CONTRACT ATTORNEYS COURSE (5F-F10), MAR 1995; (QWA) STAFF JUDGE ADVOCATE COURSE, JUN 1995; (WZ5) HOMELAND DEFENSE/HOMELAND SECURITY COURSE, JUN 1995; (9CW) FISCAL LAW, MAY 1996; (WDR) ENVIRONMENTAL LAW UPDATE COURSE, FEB 1997; AIR COMMAND - STAFF COLLEGE - JOINT (BEFORE 2005) (NON-RESIDENCE), JAN 1998; (WZ6) FEDERAL INCOME TAX LAW COURSE, DEC 2001; (QWA) STAFF JUDGE ADVOCATE COURSE, JUN 2003; AIR WAR COLLEGE (BEFORE 2005) (NON-RESIDENCE), AUG 2003; (QKO) ACCIDENT INVESTIGATION BOARD LEGAL ADVISOR COURSE, NOV 2003; SDE-INDUSTRIAL COLLEGE OF THE ARMED FORCES (ICAF) (RESIDENCE), JUN 2006; (TN3) MIDDLE EAST ORIENTATION COURSE (MEOC), MAR 2007; (QWA) STAFF JUDGE ADVOCATE COURSE, JUN 2007; (LZL) INTRODUCTION TO SPECIAL OPERATIONS COURSE (ISOC), APR 2010. Subject to recall to active duty by the Secretary of the Air Force. Copy 3 to DVA Data Processing Center, Austin TX 78772 and copy 5 to Lockheed Martin Information Technology, U.S. Department of Labor, Federal Claims Control Center, P.O. Box 785070, Orlando, FL 32878-5070.
--------------------------------------------------------------NOTHING FOLLOWS--------------------------------------------------------------

| 21.a.  MEMBER SIGNATURE | b.  DATE *(YYYYMMDD)* | 22.a.  OFFICIAL AUTHORIZED TO SIGN *(Typed name, grade, title, signature)* | b.  DATE *(YYYYMMDD)* |
|---|---|---|---|
| MEMBER NOT AVAILABLE TO SIGN | N/A | CAC/PKI SIGNED BY  COX.CHRISTOPHER.HOWARD.1402778730 SRA, USAF, DD Form 214 Technician  Jul 18 2014 3:52:13:000PM CAC Serial Number: 067795    IssuerCN: DOD CA-29 | 20140718 |

**DD FORM 214C, AUG 2009**       PREVIOUS EDITION IS OBSOLETE       **SERVICE-2**

SSS-002490

**Appendix C**



# DEPARTMENT OF THE AIR FORCE

THIS IS TO CERTIFY THAT

## THE AIR FORCE COMMENDATION MEDAL

### (FIRST OAK LEAF CLUSTER)

HAS BEEN AWARDED TO

**LIEUTENANT COLONEL LARRY D. YOUNGNER**

FOR

**OUTSTANDING ACHIEVEMENT
21 MARCH 2003 TO 12 MAY 2003**

ACCOMPLISHMENTS

Lieutenant Colonel Larry D. Youngner, distinguished himself by outstanding achievement as Staff Judge Advocate, 407th Air Expeditionary Group, 332d Air Expeditionary Wing, Tallil Air Base, Iraq. During this period, Colonel Youngner was Tallil Air Base's sole Staff Judge Advocate, his superior leadership and professionalism provided vital military, international, and operational law expertise to resident United States Air Force and Army senior leadership during Operation IRAQI FREEDOM. He was pivotal in facilitating the rapid transition from an austere bare base to a functional expeditionary air base supporting over 100 aircraft and an Air Force population of over 1,200 personnel as well as providing assistance to the Army's 377th Theater Support Command responsible for over 10,000 coalition members. He formalized command relationships and memorandum of agreements, advised on enemy prisoner of war and local nationals medical patient care, handled civilian property claims and protection of cultural property, and authored operational rules of engagement and local operating instructions. He also provided invaluable legal representation during numerous joint meetings and working groups and personally spearheaded a Contingency Contracting and Construction Working Group, unifying multi-service efforts on construction and common purchase contracts. He also spearheaded an off-base Visitor's Center and a Business Center to process local transients and execute business contracts. He was also resolute in recovering mis-requisitioned commercial vehicles for the owners. The distinctive accomplishments of Colonel Youngner reflect credit upon himself and the United States Air Force.

GIVEN UNDER MY HAND

**6 NOVEMBER 2003**

**WALTER E. BUCHANAN III**
Lieutenant General, USAF
Commander, USCENTAF
AF FORM 2224, JUL 99

SSS-002491



Appendix C

# THE UNITED STATES OF AMERICA

TO ALL WHO SHALL SEE THESE PRESENTS, GREETING:

THIS IS TO CERTIFY THAT THE PRESIDENT OF THE UNITED STATES OF AMERICA AUTHORIZED BY EXECUTIVE ORDER, 16 JANUARY 1969 HAS

AWARDED

## THE MERITORIOUS SERVICE MEDAL

(SIXTH OAK LEAF CLUSTER)

TO

LIEUTENANT COLONEL LARRY D. YOUNGNER

FOR

MERITORIOUS SERVICE
28 JULY 2003 TO 29 JULY 2005

### ACCOMPLISHMENTS

Lieutenant Colonel Larry D. Youngner distinguished himself in the performance of outstanding service to the United States as Staff Judge Advocate, 4th Fighter Wing, Seymour Johnson Air Force Base, North Carolina. During this period, Colonel Youngner's superior leadership abilities and professional skill dramatically improved the installation military justice program to assure just results during a 300 percent increase in caseload. A tenacious mentor, Colonel Youngner trained trial counsel to successfully prosecute 52 courts-martial securing convictions in every trial. Responding to his high standards, the adverse actions section completed over 91 percent of 222 Article 15 actions and 124 administrative discharges within the United States Air Force time standards, fairly and rapidly reinforcing command discipline. After he secured computer resources and facilities for a robust base tax program, Colonel Youngner's team saved clients 640,566 dollars in filing fees. His claims staff recovered 546,296 dollars in carrier recovery funds on 577 claims. A standout member of the Wing Battlestaff, Colonel Youngner provided critical, time-sensitive legal advice on a catastrophic bird-strike to an F-15E Strike Eagle and two hurricane evacuations of 96 F-15E and 43 A/OA-10 Thunderbolt II fighters. The singularly distinctive accomplishments of Colonel Youngner reflect great credit upon himself and the United States Air Force.

GIVEN UNDER MY HAND

15 AUGUST 2006

JAMES M. HOLMES, Colonel, USAF
Commander, 4th Fighter Wing



AF FORM 2228, AUG 98

SSS-002492



# THE UNITED STATES OF AMERICA

TO ALL WHO SHALL SEE THESE PRESENTS, GREETING:

THIS IS TO CERTIFY THAT
THE PRESIDENT OF THE UNITED STATES OF AMERICA
AUTHORIZED BY EXECUTIVE ORDER, AUGUST 24, 1962
HAS AWARDED

## THE BRONZE STAR MEDAL

TO

**COLONEL LARRY D. YOUNGNER**

FOR

**MERITORIOUS ACHIEVEMENT
10 JUNE 2007 TO 25 MAY 2010**

GIVEN UNDER MY HAND
**9 JULY 2010**

**GILMARY M. HOSTAGE III**
Lieutenant General, USAF
Commander, USAFCENT

AF FORM 2236, 20000101          Special Order: G-28737          Condition: 4    PAS: YYYYYYYY    RDP: 26 MAY 2010



Appendix C

SSS-002493

# CITATION TO ACCOMPANY THE AWARD OF

## THE BRONZE STAR MEDAL

### TO

## LARRY D. YOUNGNER

Colonel Larry D. Youngner distinguished himself by meritorious achievement as Staff Judge Advocate, United States Air Forces Central, and Combined Forces Air Component Commander Legal Advisor, Combined Air and Space Operations Center, while supporting ground and air operations against the enemy at Al Udeid Air Base, Qatar from 10 June 2007 to 25 May 2010. During this period, Colonel Youngner supervised legal advice on 12, 843 targeting actions and personally provided expert legal advice on over 1,500 kinetic enemy engagements, to include 1,441 urgent air missions in support of troops-in-contact with enemy forces, 55 deliberate targets and 19 time-sensitive targets in the United States Central Command's area of responsibility. His dynamic leadership pulled together 39 judge advocates into 12 cohesive teams, improved the quality of training and orientation of incoming officers, and initiated coordination with United States Central Command, Multi-National Force-Iraq, Combined Joint Task Forces 82 and 101, and North Atlantic Treaty Organization's International Security Assistance Force in Afghanistan to synchronize and integrate Rules of Engagement interpretation and improve Joint procedures. His unparalleled expertise proved essential to obtaining Secretary of Defense approval of counter-narcotic Rules of Engagement in Afghanistan, to securing State Department disaster declaration for humanitarian relief in Kyrgyzstan, in authoring operational agreements on mutual area air defense with host nation partners and creating mission-specific, annotated special instructions for Operations ENDURING FREEDOM, IRAQI FREEDOM, and Operation VALIANT PURSUIT, the largest air campaign undertaken since 2001. The exemplary leadership, personal endeavor, and devotion to duty displayed by Colonel Youngner in this responsible position reflect great credit upon himself and the United States Air Force.



Appendix C

SSS-002494



# THE UNITED STATES OF AMERICA

TO ALL WHO SHALL SEE THESE PRESENTS, GREETINGS:

THIS IS TO CERTIFY THAT
THE PRESIDENT OF THE UNITED STATES OF AMERICA
AUTHORIZED BY ACT OF CONGRESS JULY 20, 1942
HAS AWARDED

# THE LEGION OF MERIT

TO

**COLONEL LARRY D. YOUNGNER, JR.**

FOR

EXCEPTIONALLY MERITORIOUS CONDUCT
IN THE PERFORMANCE OF OUTSTANDING SERVICES
**27 MAY 2010 TO 1 JULY 2013**
GIVEN UNDER MY HAND
**5 JUNE 2013**

_E. E. Fiel_

**ERIC E. FIEL, Lieutenant General, USAF**
**Commander, Air Force Special Operations Command**



Special Order: GA1-017

AF FORM 2240, 20000101

Condition: 6     PAS: EE0VFJHC     RDP: 5 JUNE 13

Appendix C

SSS-002495

CITATION TO ACCOMPANY THE AWARD OF

THE LEGION OF MERIT

TO

COLONEL LARRY D. YOUNGNER, JR.

Colonel Larry D. Youngner, Jr., distinguished himself by exceptionally meritorious conduct in the performance of outstanding services to the United States as Staff Judge Advocate, Headquarters Air Force Special Operations Command, Hurlburt Field, Florida from 27 May 2010 to 1 July 2013. Colonel Youngner's superior initiative, outstanding leadership and personal endeavor resulted in significant contributions to the command's success in executing missions in Afghanistan, Iraq, Libya, Yemen, and other global hot spots. He championed just-in-time legal approval of three weapon systems, including the GAU-21 gun for CV-22 use in Afghanistan, resulting in three enemy killed in action on its first operational mission. He persuaded The Judge Advocate General to assign Air Commando trained judge advocates to the 24th Special Operations Wing, the 720th Special Tactics Group, and a special missions unit. This initiative delivered sophisticated legal counsel on all operational matters to include current rules of engagement, eliminated an in-theater arrival requirement, and reduced transit time to the battlefield. His sage advice during accident investigations of CV-22 and U-28 fatal mishaps preserved integrity of legal and safety processes while producing dignified briefings to next-of-kin. During this period, Colonel Youngner mentored 14 staff judge advocates in leadership of 98 professional staff resulting in expert labor, contract, and environmental law and legal assistance for over 17,000 Air Commandos and families. He exercised prosecutorial supervision over 101 courts-martial and 716 non-judicial punishment actions, providing timely, appropriate discipline that reinforced commanders' standards and maintained accountability across the command. Notably, Colonel Youngner led a cross-functional team to organize and execute the stand-up of the Air Force Special Operations Air Warfare Center, the command's newest organization designed to organize, train, educate, and equip forces to conduct special operations missions, including irregular warfare, combat aviation advising, intelligence, surveillance and reconnaissance, direct action, and special operations test and evaluation. To this end, he blazed a trail for the integration of 12 squadrons and one direct reporting unit shifting functions previously under the headquarters to create a synergistic Center of 1,777 personnel commanded by a general officer, all in just 2 months. The superior initiative, outstanding leadership, and personal endeavor displayed by Colonel Youngner reflect great credit upon himself and the United States Air Force.



SSS-002496

Appendix C



# THE UNITED STATES OF AMERICA

TO ALL WHO SHALL SEE THESE PRESENTS, GREETINGS:

THIS IS TO CERTIFY THAT
THE PRESIDENT OF THE UNITED STATES OF AMERICA
AUTHORIZED BY ACT OF CONGRESS JULY 20, 1942
HAS AWARDED

## THE LEGION OF MERIT
**(FIRST OAK LEAF CLUSTER)**

TO

**COLONEL LARRY D. YOUNGNER**

FOR

EXCEPTIONALLY MERITORIOUS CONDUCT
IN THE PERFORMANCE OF OUTSTANDING SERVICES

GIVEN UNDER MY HAND

**14 APRIL 2015**



**CHRISTOPHER F. BURNE**
**Lieutenant General, USAF**
**The Judge Advocate General**

AF FORM 2210 20000001

Special Order: GA-008     Condition: 1     PAS: HHi3FW53     RDP: 20150414

Appendix C

SSS-002497

CITATION TO ACCOMPANY THE AWARD OF

THE LEGION OF MERIT

(FIRST OAK LEAF CLUSTER)

TO

COLONEL LARRY D. YOUNGNER, JR.

Colonel Larry D. Youngner, Jr. distinguished himself by exceptionally meritorious conduct in the performance of outstanding services to the United States as Director, Strategic Policy and Requirements Directorate and Chief of Staff, The Judge Advocate General's Corps, from 2 July 2013 to 1 July 2014. In this important assignment, the inclusive leadership, foresight, and ceaseless efforts consistently demonstrated by Colonel Youngner resulted in significant contributions to the effectiveness of The Judge Advocate General's Corps and the Air Force. As the first-ever Director of Strategic Policy and Requirements, he orchestrated a streamlining of Headquarters Air Force legal support staff, consolidating compatible functions then harvesting manpower positions to meet reduction goals of 20 percent, to include trimming his directorate by 56 percent. As Chief of Staff, he adroitly managed the first Sexual Assault Prevention and Response Summit of the Judge Advocate General's Corps, attended by the General Counsel and 240 senior Judge Advocate General's Corps personnel. He ardently guided The Judge Advocate General on advising the Secretary of the Air Force in response to both a nuclear surety cheating scandal and Senate proposals to modify the Uniform Code of Military Justice. Finally, his superior leadership invigorated relationships with key leaders from U.S. Special Operations Command, U.S. Central Command, the Defense Intelligence Agency, the DoD General Counsel and the Air Force General Counsel. The singularly distinctive accomplishments of Colonel Youngner culminate a distinguished career in the service of his country and reflect great credit upon himself and the United States Air Force.

Appendix C

SSS-002498

# Appendix D – Cases Participated in from 2016 to 2020

## I. Expert Consultant:

I have not participated in any capacity as an expert consultant nor as an expert witness in a civil or criminal law matter before a federal or state court or administrative agency. I have not testified in trial or by deposition in the past four years.

## II. Civilian Defense Counsel at General Courts-Martial:

*U.S. v. A1C Welch*, Uniform Code of Military Justice (UCMJ) Art. 112a (drug abuse, possession and distribution). After mixed pleas, Client was partially acquitted of drug-related offenses and sentenced to 4 months confinement, reduction and a reprimand. Client separated with an honorable discharge. 2019

*U.S. v. SrA Williams*, UCMJ Art. 120 (rape), Keesler AFB, MS. Client fully acquitted of the alleged charge and specification; Acquittal. Client honorably separated with full benefits under the VA and backpay. 2018

*U.S. v. LCDR Lin*, UCMJ Art. 92 (dereliction of duty), UCMJ Art. 106 (espionage), and UCMJ Art. 134 (Assimilative Crimes Act allegations in violation of 18 U.S. Code § 793), Norfolk Naval Base, VA. Client investigated by FBI and NCIS then charged with espionage and other offenses with maximum punishment of confinement for life plus 80 years; Pursuant to defense motion, several charges were dropped. After litigation, government agreed to a plea bargain that included withdrawal of all espionage charges. Client sentenced to 6 years confinement, a reprimand and dismissal. 2017

## III. Civilian Defense Counsel for AFOSI, CID or NCIS Investigations:

Gen Lichte, USAF – AFOSI Investigation; SECAF Action; AFBCMR

Capt W., USN – Glenn Defense Marine Asia (GDMA "Fat Leonard" investigation by FBI & NCIS)

LCDR N., USN – Glenn Defense Marine Asia (GDMA "Fat Leonard" investigation by FBI & NCIS)

Maj W., USAF – AFOSI investigation of alleged travel voucher fraud

Maj Rocky White, US Army – CID investigation of alleged sexual assault

Maj Aristide, USAF – AFOSI investigation of alleged travel voucher fraud

1

## Appendix D – Cases Participated in from 2016 to 2020

### **IV. Civilian Defense Counsel for IG Investigations:**

Brig Gen B., USAF – SAF/IGS investigation

Brig Gen Goodwin, USAF – SAF/IGS investigation

Col W., USAF – SAF/IGS investigation

Lt Col N., USAF – DoD IG investigation and EEOC allegations

2

SSS-002500

# Appendix E – USAF and DoD Standards on Compliance and Command, Supervision and Management Oversight of Criminal History Data Submission Requirements to the FBI

## I. Compliance and Oversight – Generally

### 1. Constitution of the United States:

a. Article I, Section 8, Clause 14, Constitution of the United States - 1787: "The Congress shall have Power...To make Rules for the Government and Regulation of the land and naval Forces." U.S. Const. art. I, § 8, cl. 14.

b. Article II, Section 2, Clause 1, Constitution of the United States - 1787: The President shall be Commander in Chief of the Army and Navy of the United States, and of the Militia of the several States, when called into the actual Service of the United States." U.S. Const. art. II, § 2, cl. 1.

### 2. Statutes:

a. The National Security Act of 1947, Pub. L. 80-253, 61 Stat. 495.[1]

b. The Inspector General Act of 1978. Pub. L. 95-452, Oct. 12, 1978, 92 Stat. 1101 (5 U.S.C. App.)[2]

c. 5a U.S.C. § 3 – Appointment of Inspector General; supervision; removal; political activities; appointment of Assistant Inspector General for Auditing and Assistant Inspector General for Investigations.[3]

d. 5a U.S.C. § 8 – Additional provisions with respect to the Inspector General of the Department of Defense.[4]

e. 10 U.S.C. § 113 – Secretary of Defense.[5]

f. 10 U.S.C. § 131 – Office of the Secretary of Defense.[6]

g. 10 U.S.C. § 141 – Inspector General.[7]

---

[1] Accessed on 22 Mar 2020 at: https://govtrackus.s3.amazonaws.com/legislink/pdf/stat/61/STATUTE-61-Pg495.pdf.
[2] https://www.law.cornell.edu/uscode/text/5a/compiledact-95-452.
[3] https://www.law.cornell.edu/uscode/text/5a/compiledact-95-452/section-3
[4] https://www.law.cornell.edu/uscode/text/5a/compiledact-95-452/section-8.
[5] https://www.law.cornell.edu/uscode/text/10/113.
[6] https://www.law.cornell.edu/uscode/text/10/131.
[7] https://www.law.cornell.edu/uscode/text/10/141.

1

**Appendix E – USAF and DoD Standards on Compliance and Command, Supervision and Management Oversight of Criminal History Data Submission Requirements to the FBI**

h. 10 U.S.C. Ch. 47 – The Uniform Code of Military Justice, (10 U.S.C. §§ 801-946).[8]

i. 10 U.S.C. § 9011 – Organization (of the Dep't of the Air Force).

j. 10 U.S.C. § 9013 – Secretary of the Air Force.[9]

k. 10 U.S.C. § 9014 – Office of the Secretary of the Air Force.[10]

l. 10 U.S.C. § 9020 – Inspector General.[11]

m. 10 U.S.C. § 9233 – Requirement of exemplary conduct.[12]

n. 10 U.S.C. § 9031 – The Air Staff: function; composition.[13]

o. 10 U.S.C. § 9032 – The Air Staff: general duties.[14]

p. 10 U.S.C. § 9033 – Chief of Staff.[15]

q. 10 U.S.C. § 9037 – Judge Advocate General … appointment; duties.[16]

r. 18 U.S.C. § 13 – Laws of States adopted for areas within Federal jurisdiction, as amended (also known as The Assimilative Crimes Act of 1948).[17]

s. 50 U.S.C. § 3002 – Congressional declaration of purpose (National Security Act of 1947).[18]

**3. Executive Orders:**

E.O. 10214, 8 February 1951: Prescribing the Manual for Courts-Martial, United States, 1951.[19]

---

[8] https://www.law.cornell.edu/uscode/text/10/subtitle-A/part-II/chapter-47; (*see*, Appendix 2, MCM, Updated as of December 20, 2019 at: https://jsc.defense.gov/Portals/99/Documents/UCMJ-20December2019.pdf?ver=2020-01-28-083235-930)

[9] https://www.law.cornell.edu/uscode/text/10/9013.

[10] https://www.law.cornell.edu/uscode/text/10/9014.

[11] https://www.law.cornell.edu/uscode/text/10/9020.

[12] https://www.law.cornell.edu/uscode/text/10/9233.

[13] https://www.law.cornell.edu/uscode/text/10/9031.

[14] https://www.law.cornell.edu/uscode/text/10/9032.

[15] https://www.law.cornell.edu/uscode/text/10/9033.

[16] https://www.law.cornell.edu/uscode/text/10/9037.

[17] https://www.law.cornell.edu/uscode/text/18/13

[18] https://www.law.cornell.edu/uscode/text/50/3002.

[19] https://jsc.defense.gov/Portals/99/Documents/EO10214page.pdf

2

# Appendix E – USAF and DoD Standards on Compliance and Command, Supervision and Management Oversight of Criminal History Data Submission Requirements to the FBI

## 4. Department of Defense Directives (DoDDs):

a. DoD Directive 5106.1, *Inspector General of the Department of Defense*, April 20, 2012 (Incorporating Change 1, Effective August 19, 2014).[20]

b. DoD Directive 5124.02, *Under Secretary of Defense for Personnel and Readiness (USD(P&R))*, June 23, 2008.[21]

## 5. Air Force Instructions (AFIs):

a. AFI 1-1, *Air Force Standards*, August 7, 2012 (Incorporating Change 1, November 12, 2014)[22]

b. AFI 1-2, *Commander's Responsibilities*, May 8, 2014.[23]

c. AFI 51-109, *The Article 6 Inspection System*, January 9, 2019.[24]

d. AFI 90-201*, The Air Force Inspection System*, 21 April 2015.[25]

## II. Criminal History Data Collection and Submission

## 1. Statutes:

a. The Gun Control Act of 1968, Pub. L. 90-618, 82 Stat 1213.[26]

b. The Brady Handgun Violence Prevention Act, Pub. L. 103-159, 107 Stat. 1536.[27]

---

[20] Accessed on 22 Mar 2020 at:
https://www.esd.whs.mil/Portals/54/Documents/DD/issuances/dodd/510601p.pdf?ver=2019-07-08-101735-507.
[21] Accessed on 22 Mar 2020 at:
https://www.esd.whs.mil/Portals/54/Documents/DD/issuances/dodd/512402p.pdf.
[22] https://static.e-publishing.af.mil/production/1/af_cc/publication/afi1-1/afi1-1.pdf.
[23] https://static.e-publishing.af.mil/production/1/af_cc/publication/afi1-2/afi1-2.pdf.
[24] Accessed on 22 Mar 2020 at: https://static.e-publishing.af.mil/production/1/af_ja/publication/afi51-109/afi51-109.pdf.
[25] Accessed on 22 Mar 2020 at: https://static.e-publishing.af.mil/production/1/af_ja/publication/afi51-109/afi51-109.pdf.
[26] Accessed on 22 Mar 2020 at: https://www.govinfo.gov/content/pkg/STATUTE-82/pdf/STATUTE-82-Pg1213-2.pdf#page=1.
[27] Accessed on 22 Mar 2020 at: https://www.govinfo.gov/content/pkg/STATUTE-107/pdf/STATUTE-107-Pg1536.pdf#page=9.

SSS-002503

## Appendix E – USAF and DoD Standards on Compliance and Command, Supervision and Management Oversight of Criminal History Data Submission Requirements to the FBI

c. The Domestic Violence Offender Gun Ban ("Lautenberg Amendment") Pub. L. 104-208, 110 Stat. 3009.[28]

d. Victim Witness Protection Act of 1982, Pub. L. 97-291, 96 Stat. 1248.[29]

e. The Victims' Rights and Restitution Act of 1990, Pub. L. 101-647, Section 501, 104 Stat. 4820.[30]

f. 18 U.S.C. § 921 – Definitions (under The Gun Control Act of 1968, as amended).[31]

g. 18 U.S.C. § 922 – Unlawful acts (under The Gun Control Act of 1968, as amended).[32]

h. 18 U.S.C. § 3771 – Crime victims' rights.[33]

i. 28 U.S.C. § 534 – Acquisition, preservation, and exchange of identification records and information; appointment of officials (The Uniform Federal Crime Reporting Act of 1988).[34]

j. 34 U.S.C. § 20101 – Crime Victims Fund.[35]

k. 34 U.S.C. § 40901(e)(1) – Establishment (of National Instant Criminal Background Check System).[36]


**2. Code of Federal Regulations:**

a. 28 CFR Part 901 – Fingerprint Submission Requirements.[37]

b. 28 CFR Part 905 – National Fingerprint File (NFF) Program Qualification Requirements.[38]

c. 28 CFR Part 907 – Compact Counsel Procedures for Compliant Conduct and Responsible Use of the Interstate Identification Index (III) System for Noncriminal Justice Purposes.[39]

---

[28] Accessed on 22 Mar 2020 at: https://www.govinfo.gov/content/pkg/PLAW-104publ208/html/PLAW-104publ208.htm.
[29] Accessed on 22 Mar 2020 at: https://www.govinfo.gov/content/pkg/STATUTE-96/pdf/STATUTE-96-Pg1248.pdf.
[30] Accessed on 22 Mar 2020 at: https://www.govinfo.gov/content/pkg/STATUTE-104/pdf/STATUTE-104-Pg4789.pdf.
[31] https://www.law.cornell.edu/uscode/text/18/921.
[32] https://www.law.cornell.edu/uscode/text/18/922.
[33] https://www.law.cornell.edu/uscode/text/18/3771.
[34] https://www.law.cornell.edu/uscode/text/28/534.
[35] https://www.law.cornell.edu/uscode/text/34/20101. Note, editorially reclassified as 34 U.S.C. § 20101 from 42 U.S.C. § 10601.
[36] https://www.law.cornell.edu/uscode/text/34/40901.
[37] Accessed on 22 Mar 2020 at: https://www.law.cornell.edu/cfr/text/28/part-901.
[38] Accessed on 22 Mar 2020 at: https://www.law.cornell.edu/cfr/text/28/part-905.
[39] Accessed on 22 Mar 2020 at: https://www.law.cornell.edu/cfr/text/28/part-907.

SSS-002504

# Appendix E – USAF and DoD Standards on Compliance and Command, Supervision and Management Oversight of Criminal History Data Submission Requirements to the FBI

## 3. Department of Defense Directives (DoDDs):

DoD Directive 7730.47, *Defense Incident-Based Reporting System (DIBRS)*, Oct 1996 (Certified Current as of December 1, 2003).[40]

## 4. Department of Defense Instructions (DoDIs):

a. DoD Instruction 5505.11, *Fingerprint Card and Final Disposition Report Submission Requirements*, December 1, 1998.[41]

b. DoD Instruction 5505.11, *Fingerprint Card and Final Disposition Report Submission Requirements*, June 20, 2006.[42]

c. DoD Instruction 5505.11, *Fingerprint Card and Final Disposition Report Submission Requirements*, July 9, 2010.[43]

d. DoD Instruction 5505.11, *Fingerprint Card and Final Disposition Report Submission Requirements*, July 21, 2014 (Incorporating Change 2, March 30, 2017).[44]

e. DoD Instruction 5505.11, *Fingerprint Reporting Requirements*, October 31, 2019.[45]

f. DoD Instruction 5505.17, *Collection, Maintenance, Use and Dissemination of Personally Identifiable Information and Law Enforcement Information by Department of Defense (DOD) Law Enforcement Activities*, December 19, 2012 (Incorporating Change 1, Effective November 29, 2016).[46]

g. DoD Instruction 7730.47, *Defense Incident-Based Reporting System (DIBRS)*, January 23, 2014.[47]

---

[40] Accessed on 22 Mar 2020 at: https://biotech.law.lsu.edu/blaw/dodd/corres/pdf/d773047_101596/d773047p.pdf.

[41] Accessed on 22 Mar 2020 at: https://biotech.law.lsu.edu/blaw/dodd/corres/pdf/i550511_120198/i550511p.pdf (DoDI 5505.11 established policy, assigned responsibilities, and prescribed procedures for DoD law enforcement organizations to report offender criminal history data to the FBI's CJIS Division for inclusion in its criminal history database).

[42] Accessed on 22 Mar 2020 at: www.usa-federal-forms.com/dod/3-pdf-forms_pubs/www.dtic.mil/whs/directives/corres/pdf/550511_062006/550511p.pdf (superseded on July 9, 2010).

[43] Accessed on 22 Mar 2020 at: https://cryptome.org/dodi/dodi-5505-11.pdf (superseded on July 21, 2014) .

[44] Accessed on 22 Mar 2020 at: https://www.hsdl.org/?view&did=799999 (superseded on October 31, 2019).

[45] Superseded DoD Instruction 5505.11, dated July 21, 2014, as amended (accessed on 22 Mar 2020 at: https://www.esd.whs.mil/Portals/54/Documents/DD/issuances/dodi/550511p.pdf?ver=2019-10-31-083337-843.

[46] Accessed on 22 Mar 2020 at: https://www.esd.whs.mil/Portals/54/Documents/DD/issuances/dodi/550517p.pdf?ver=2019-08-20-114528-983.

[47] Accessed on 22 Mar 2020 at: https://www.hsdl.org/?view&did=749147 (superseded DoD Dir. 7730.47, *Defense Incident-Based Reporting System (DIBRS)*, December 1, 2003).

5

SSS-002505

# Appendix E – USAF and DoD Standards on Compliance and Command, Supervision and Management Oversight of Criminal History Data Submission Requirements to the FBI

h. DoD Instruction 7730.47, *Defense Incident-Based Reporting System (DIBRS)*, January 23, 2014 (Incorporating Change 1, Effective June 29, 2018).[48]

## 5. Department of Defense Manuals (DoDMs):

a. DoD Manual 7730.47-M, Volume 1, *Defense Incident-Based Reporting System (DIBRS): Data Segments and Elements*, December 7, 2010 (Incorporating Change 2, June 29, 2018).[49]

b. DoD Manual 7730.47 M, Volume 2, *Defense Incident-Based Reporting System (DIBRS): Supporting Codes*, December 7, 2010 Incorporating Change 2, April 6, 2017.[50]

## 6. Department of Defense (DoD) Inspector General (IG) Memorandums:

Inspector General of the Department of Defense, *Criminal Investigations Policy Memorandum Number 10, Criminal History Data Reporting Requirements*, March 25, 1987.[51]

## 7. Air Force Instructions (AFIs):

a. AFI 31-115, *Security Forces Investigations Program*, November 10, 2014.[52]

b. AFI 31-118, *Security Forces Standards and Procedures*, March 5, 2020.[53]

c. AFI 31-120, *Security Forces Systems and Administration*, April 1, 2015.[54]

d. AFI 31-203, *Security Forces Management Information System (SFMIS)*, 15 Aug 2001[55]

---

[48] Bates USA00004359-4441 (accessed on 22 Mar 2020 at: https://www.hsdl.org/?view&did=749147. https://www.esd.whs.mil/Portals/54/Documents/DD/issuances/dodi/773047p.pdf?ver=2018-07-25-142042-013).
[49] Bates USA00004442-4542 (accessed on 22 Mar 2020 at: https://www.esd.whs.mil/Portals/54/Documents/DD/issuances/dodm/773047m_vol1.pdf?ver=2019-03-22-095446-820).
[50] Accessed on 22 Mar 2020 at: https://www.esd.whs.mil/Portals/54/Documents/DD/issuances/dodm/773047m_vol1.pdf?ver=2019-03-22-095446-820 (Volume 2 provides instructions for creating DIBRS offense information including the State, offense, property description, and prison facility codes and the data element dictionary).
[51] Bates USA00005388-5396 (replaced by DoDI 5505.11, 1 Dec 1998 (Bates USA00000001-15).
[52] Bates USA00001153-1208 (accessed 17 Mar 2020 at: https://static.e-publishing.af.mil/production/1/af_a4/publication/afi31-115/afi31-115.pdf).
[53] Bates USA000001209-1329 (superseded by AFI 31-118, 5 March 2014 and AFI 31-122, 31 July 2015 (accessed on 22 Mar 2020 at: https://static.e-publishing.af.mil/production/1/af_a4/publication/afi31-118/afi31-118.pdf).
[54] Bates USA00004129-4193 (accessed on 28 Mar 2020 at: https://static.e-publishing.af.mil/production/1/af_a4/publication/afi31-120/afi31-120.pdf).
[55] Bates USA00004295-4336.

SSS-002506

# Appendix E – USAF and DoD Standards on Compliance and Command, Supervision and Management Oversight of Criminal History Data Submission Requirements to the FBI

e. AFI 31-205, *The Air Force Corrections System*, April 7, 2004.[56]

f. AFI 31-206, *Security Forces Investigations Program*, 16 Sep 2009[57]

g. AFI 36-2646, *Security Forces Training and Standardization Evaluation Programs*, December 19, 2019.[58]

h. AFI 51-201, *Administration of Military Justice*, April 4, 2011.[59]

i. AFI 51-201, *Administration of Military Justice*, June 6, 2013[60]

j. AFI 51-201, *Administration of Military Justice*, January 18, 2019 (Incorporating Air Force Guidance Memorandum 2019-02, October 30, 2019)[61]

k. AFI 71-101, Vol. 1, *Criminal Investigations Program*, July 1, 2019.[62]

## 8. Air Force Manuals:

Air Force Manual 31-201, Vol 7, *Security Forces Administration and Reports (SFAR/S5R)*, August 28, 2009.[63]

## 9. Air Force Office of Special Investigations (AFOSI) Regulations and Publications:

a. AFOSI Handbook 71-105, An Agent's Guide to Conducting and Documenting. Investigations," March 9, 2009, certified current April 11, 2012.[64]

b. AFOSI Manual 71-118, Vol 4, *General Investigative Methods*, January 4, 2008 (Correction January 13, 2015).[65]

---

[56] Bates USA00001650.

[57] Bates USA00003962.

[58] Accessed on 22 Mar 2020 at: https://static.e-publishing.af.mil/production/1/af_a4/publication/afi36-2646/afi36-2646.pdf.

[59] Bates USA00018263-18528

[60] Bates USA00011733-12132

[61] Accessed on 22 Mar 2020 at: https://static.e-publishing.af.mil/production/1/af_ja/publication/afi51-201/afi51-201.pdf.

[62] Accessed on 22 Mar 2020 at: https://static.e-publishing.af.mil/production/1/saf_ig/publication/afi71-101v1/afi71-101v1.pdf (superseded AFI 71-101 V1, October 8, 2015; note that AFI 71-101, Vol. 1, *Criminal Investigations Program*, 8 Apr 2011 was in effect at time of Kelley's general court-martial).

[63] Bates 00004337-4358 (accessed on 28 Mar 2020 at: https://www.pdffiller.com/jsfiller-desk11/?projectId=426349397#f74067a023e8b7390a2f5ef273f5a076).

[64] Bates USA00001343-1395.

[65] Bates USA00001396-1587

SSS-002507

**Appendix E – USAF and DoD Standards on Compliance and Command, Supervision and Management Oversight of Criminal History Data Submission Requirements to the FBI**

c. AFOSI Manual 71-121, *Processing and Reporting Investigative Matters*, January 13, 2009 (IC-5, Certified Current October 12, 2015; Effective date: October 15, 2012).[66]

d. AFOSI Manual 71-121, *Processing and Reporting Investigative Matters*, April 13, 2015.[67]

---

[66] Bates USA00000034-417.
[67] Bates USA00000418-719.

8

SSS-002508

## Appendix F – Devin P. Kelley Conduct and USAF Response Chronology

| Entry | Date | Event | Bates |
|---|---|---|---|
| 1 | June 9, 2011 | Devin P. Kelley's (hereafter "Kelley") stepson taken to the emergency room.  Stepson diagnosed with broken clavicle and subdural hematoma.<br><br>SA Bustillo (Det 225) drafted probable cause affidavit to search Kelley residence<br><br>SA Lenora Madison (Det 225) interviews Capt Harwood treating pediatrician for stepson<br><br>SA Bustillo and SA Hoy (Det. 225) interviewed Kelley regarding abuse | USA00013374 - 13376<br><br>USA00013397 - 13401<br><br>USA00013675 - 13676<br><br>USA00013411<br><br>USA00013418<br><br><br>USA00012953 & USA00013398 |
| 2 | June 13, 2011 | I2MS Activity note, SA Madison (Det. 225) notes that child's bone scan reveals fx clavicle | USA00013509 - 13510 |
| 3 | June 17, 2011 | SA Hoy's probable cause affidavit to seize wedding rings | USA00013789 |
| 4 | June 24, 2011 | Tessa Kelley reports assault to friend. Friend reports to 49th Security Forces Squadron.<br><br>49th SFS responded to domestic violence report at Kelley's residence<br><br>SA Holz and Inv Harris interview Tessa about the assault | USA00013423<br><br><br>USA00013311 - 13314 |
| 5 | July 22, 2011 | LOC from MSgt Rowe | USA00014693 - 14694 |
| 6 | July 26, 2011 | LOC from 1Lt Krusenoski | USA00014693 - 14694 |
| 7 | September 6, 2011 | LOC from MSgt Bizzack | USA00014693 - 14694 |
| 8 | September 12, 2011 | LOR from MSgt Bizzack | USA00014693 - 14694 |
| 9 | September 29, 2011 | LOC from MSgt Rowe | USA00014693 - 14694 |
| 10 | October 21, 2011 | HAFB Central Registry Board (CRB) at 49th wing determines DK meets criteria for child mistreatment and entry into Central Registry Database | USA00014752 |
| **11** | **February 12, 2012** | **DK Purchases 38 Handgun at HAFB Exchange (an FFL)** | **USA00012133**<br>**USA00012908** |
| 12 | February 16, 2012 | LOR from 2Lt De Lauria | USA00014693 - 14694 |

1

## Appendix F – Devin P. Kelley Conduct and USAF Response Chronology

| 13 | February 17, 2012 | Tessa Kelley interview<br>Describes violent abuse, including Kelley putting the gun to her head<br><br>Kelley told his wife "my work is lucky I'd take a shot gun and blow everyone's head off."<br><br>No Contact Order issued | USA00013340 - 13342<br><br>USA00013344 - 13346<br><br>USA00014960 - 14961<br><br>USA00013404 |
| --- | --- | --- | --- |
| 14 | March 19, 2012 | LOR from Lt Col Marconi | USA00014693 - 94 |
| 15 | March 26, 2012 | SA Holz (Det. 225) I2MS note that he reviewed the medical records that showed child suffered fractured clavicle, vomiting, and brain bleed (which = probable cause) | USA00013514 - 13515 |
| **16** | **April 12, 2012** | **DK Purchases 9mm Semi-automatic handgun at HAFB Exchange (an FFL)** | **USA00012136** |
| 17 | April 17, 2012 | Letter of Reprimand<br>Physically assaulted Tessa Kelley on or about February 17, 2012 | USA00013387 - 13388<br>USA00014693<br>USA00014704 |
| 18 | April 23, 2012 | While driving to El Paso, TX Kelley took his gun from the holster and held it against his wife's temple stating "do you want to die." Kelley then placed the gun in his mouth and says he would kill himself if Tessa told anyone. | USA00013374 - 13376 |
| 19 | April 26, 2012 | Kelley's Firearm is stored at the Base Armory by MSgt Wolfe, 49 LRS/CCF. | USA00013372 - 13373 |
| 20 | April 26, 2012 | SA Holz (Det. 225) receives "high risk" therapy records from "COPE" and puts into file | USA00013982 - 13989 |
| 21 | April 27, 2012 | Tessa's mother contacted the 49th LRS concerned for the physical and emotional safety of her daughter.<br><br>Later that day Kelley posts on FB "This hurts and is going to be so hard and scary. But it must be done. I'm tired of hurting, myself and others. Maybe this is my last chance to redeem myself for what I've done. I'm sorry."<br><br>Later the same day he recorded a self-made video confession. | USA00013374 - 13376<br><br>USA00013310<br><br>USA00013352<br><br>USA00013431<br><br>USA00013309 - 13310 |

SSS-002510

## Appendix F – Devin P. Kelley Conduct and USAF Response Chronology

| 22 | April 29, 2012 | Kelley admitted as an in-patient to The Peak after his father brought Kelley back to Alamogordo, NM from San Antonio, TX. | USA00013374 - 13376 |
| 23 | April 29, 2012 | 49th SFS MSg Tracey Wolfe interviewed by Det. 225 SA Mills and transferred Kelley's video confession to Det. 225 | USA00013430 - 13431 |
| 24 | April 30, 2012 | SA Holz (Det. 225) puts activity note into I2MS confirming he viewed DK confession video | USA00013542 - 13543 |
| 25 | May 14, 2012 | High Risk Violence Response Team met at HAFB and JAG requests and orders DK to stay in confinement due to risk of violence | USA00005399 - 5405 |
| 26 | May 17, 2012 | Central Registry Board Incident Determination that the incident met the criteria for adult physical maltreatment, emotional maltreatment and entry into the DoD Central Domestic Abuse Registry Database – Kelley abuse of Tessa | USA00013386 USA00014698 |
| 27 | June 6, 2012 | While admitted to The Peak Kelley made threatening statements that if he were picked up by Security Forces he would go for their guns.  These statements and other concerning behaviors resulted in his remaining in the mental health facility even though he expressed a desire to be released. | USA00013374 - 13376 USA00021241 |
| 28 | June 7, 2012 | Kelley contacted the Holloman AFB Base Exchange and entered into an agreement to purchase a 9mm handgun.<br><br>Later that same night, Kelley climbed a fence and left the mental health facility without authorization (code three elopement).<br><br>He was apprehended in El Paso, TX. An examination of the computer he had been using at the facility revealed that Kelley had searched for a map to the bus station, as well as research on | USA00013374 - 13376 USA00013378 USA00013993 - 13995 USA00021235 USA00021823 - 21824 |

3

## Appendix F – Devin P. Kelley Conduct and USAF Response Chronology

| | | the purchase of weapons and body armor.<br><br>First Sergeant Tracey Wolfe contacted Bizzack, Kelley's section chief, at 2:00am to inform him of Kelley's escape from Peak. Bizzack, loaded his weapon, and waited in his living room in the event Kelley came to his home. | |
|---|---|---|---|
| 29 | June 8, 2012 | Commander Nathan McLeod-Hughes Memo re: Pretrial Confinement<br><br>"..pretrial confinement is necessary because it is foreseeable that the confinee will not appear at trial, and/or will engage in serious criminal misconduct if confinement not continued" | USA00013374 - 13376 |
| 30 | June 12, 2012 | SA Holz (Det. 225) receives evidence from JAG Countryman—receipts that on April 12, 2012 DK purchased a gun at HAFB | USA00013408 |
| 31 | June 18, 2012 | Holz interviews Kelley former girlfriend who describes sexual abuse | USA00013455 |
| 32 | June 20, 2012 | Holz interviews Kelley former girlfriend who describes sexual abuse | USA00013457 |
| 33 | June 26, 2012 | SA Holz interviewed Kelley's former girlfriend who described rape | USA00013459 |
| 34 | August 27, 2012 | GCM charges referred by 12th AF/CC via Special Order A-60 | USA00015086 - 15093 |
| 35 | September 17, 2012 | Brooke Army Medical Center, Dr. Martin, sent AFOSI memo confirming that child's injuries were consistent with DK confession video | USA00013537 - 13541 |
| 36 | September 26, 2012 | SA Holz noted I2MS activity that he received report from Army Dr. Martin at Brooke Army Hospital that Dr. believed child's injuries were consistent with DK Confession video of child assault by him and that no other explanation fit | USA00013535 - 13536 |

4

## Appendix F – Devin P. Kelley Conduct and USAF Response Chronology

| 37 | November 7, 2012 | AF Form 1359, Report of Result of Trial; 49 WG/JA notified Lt Col Bearden and other USAF entities. | USA00012947 - 12948 USA00013356 - 13359 |
|---|---|---|---|
| 38 | March 22, 2013 | Lt Col Robert C. Bearden Commander, 49th Logistics Readiness Squadron Conditional Barment Request<br><br>Kelley repeatedly threatened to kill his leadership.  He openly carried a firearm on base.  Placed the weapon to his wife's head.  Escaped Peak.  Alarming searches while at Peak regarding body armor and guerilla tactics.<br><br>"I view this Airman as a threat to not only myself, but my staff and other Airmen in this Squadron." | USA00013324 |
| 39 | March 27, 2013 | AF HQ 49th at HAFB, memo from Capt. McQuillan, USAF Chief Civil Law, stating that "due to DK extreme record of violence and directing death threats towards his leadership" he should be barred from entry onto HAFB | USA00013318 - 13319 |
| 40 | March 29, 2013 | Col Andrew Croft, 49th Commander HAFB, memo to DK stating "(y)ou had repeatedly threatened the lives of United States Air Force leadership. In April 2012 while on Holloman AFB you openly carried a firearm. In a reported incident the firearm was pointed at your wife in a threatening manner and then you turned the firearm on to yourself. In June 2012, you escaped from a military ward while confined for hospitalization at the Peak in Santa Teresa New Mexico. During your hospitalization at the Peak you had searched the internet on a computer for body armor and purchasing of weapons." | USA00013320 - 13323 |

5

**Appendix G – USAF and DoD Kelley Criminal History Data Compliance Opportunity Events**

| Opp | Date | Event | Event Description | Bates |
|-----|------|-------|-------------------|-------|
| 1 | 9 Jun 2011 | Kelley Custodial Interview and Fingerprints Taken by AFOSI Det 225 | KELLEY fingerprinted by SA Yonatan Holz | **USA00012953 & USA00013398** |
| 2 | 29 Jun 2011 | Reviewer Note HOY, JAMES F | "On 29 Jun 11, SA James Hoy reviewed this case file." | **USA00019707** |
| 3 | 8 Jul 2011 | IDP Note HARPER, GREGORY B. | "On 7 Jul 2011, SA HARPER sent Yahoo! Inc. an evidence preservation letter, pending legal action on this case.  A letter was not sent to AT&T wireless, AT&T has no record of text messaging and keeps phone records for one year.)" | **USA00019707** |
| 4 | 31 Jul 2011 | Reviewer Note MEUSBURGER, ALEX D | "This case was reviewed 31 Jul 11. Evidence must be sent to the lab ASAP." | **USA00019707** |
| 5 | 1 Aug 2011 | IDP Note MEUSBURGER, ALEX D | "On 1 Aug 11, SA MEUSBURGER sent SUBJECTs' [sic] wedding rings to USACIL (Registered Mail RA 596 776 826 US) for comparison against photographs of VICTIM's injuries." | **USA00019707** |
| 6 | 8 Aug 2011 | Reviewer Note HILL, JENNIFER L. | "On 8 Aug 11, SA JENNIFER HILL, Action Officer, AFOSI FIR 2, Langley AFB, VA, reviewed this case file and provided feedback to detachment leadership." | **USA00019707** |
| 7 | 12 Aug 2011 | IDP Note MEUSBURGER, ALEX D | "On 12 Aug 11, USACIL notified SA MEUSBURGER the evidence submitted on 1 Aug 11 was received and was currently being processed by the digital evidence branch as "ROUTINE." No estimated date of completion was provided." | **USA00019707** |
| 8 | 31 Aug 2011 | Reviewer Note MEUSBURGER, ALEX D | "This case was reviewed on 31 Aug 11. Corrective actions were previously identified during earlier case review on 8 Aug 11." | **USA00019707** |
| 9 | 10 Sep 2011 | Reviewer Note HOY, JAMES F | On 10 Sep 11, SA James Hoy reviewed this case file. | **USA00019707** |
| 10 | 23 Oct 2011 | Reviewer Note MEUSBURGER, ALEX D | "This case was reviewed 23 Oct 11." | **USA00019707** |

1

**Appendix G – USAF and DoD Kelley Criminal History Data Compliance Opportunity Events**

| 11 | 15 Dec 2011 | Reviewer Note TAYLOR, RANDALL D | "On 15 Dec 11, SA RANDALL D. TAYLOR, AFOSI Det 225 SAIC reviewed this file." | **USA00019707** |
|---|---|---|---|---|
| 12 | 10 Jan 2012 | Reviewer Note TAYLOR, RANDALL D | "On 10 Jan 12, SA TAYLOR reviewed this file." | **USA00019707** |
| 13 | 15 Feb 2012 | Reviewer Note TAYLOR, RANDALL D | "On 15 Feb 12, SA TAYLOR reviewed this file." | **USA00019707** |
| 14 | 17 Feb 2012 | 49 SFOI Custodial Interview of Kelley<br><br>Statement of Tessa Kelley to 49 SFOI | "Kelley was the subject of a 49[th] SFS interview for domestic assault and battery of his spouse, Tessa Kelley." | **USA00013340-42**<br><br>**USA00013344** |
| 15 | 5 Mar 2012 | Reviewer Note TAYLOR, RANDALL D | "On 5 Mar 12, SA TAYLOR reviewed this file. SA TAYLOR identified Nov 11 as not having an [sic] review conducted.  During this time, an interim SAIC was assigned, but he failed to conduct the appropriate review." | **USA00019707** |
| 16 | 27 Mar 2012 | IDP Note by HOLZ, YONATAN | "On 27 Mar 12, Capt PHIL COUNTRYMAN, 49th WG/JA, provided SA YONATAN HOLZ with a copy of SUBJECT D. KELLEY's most recent PIF containing new Letters of Reprimand...." | **USA00019707** |
| 17 | 26 Apr 2012 | Reviewer Note by HOY, JAMES F | "On 26 Apr 12, SA James Hoy reviewed this file." | **USA00019707** |
| 18 | 2 May 2012 | IDP Note by HOLZ, YONATAN | "On 1 May 12, SA YONATAN HOLZ coordinated with Capt STEVEN L. SPENCER, 49th WG/JA, HAFB, NM, regarding re-contacting SUBJECT T. KELLEY for a follow up interview. HOLZ wanted to re-interview T. KELLEY after a review of D. KELLEY's recorded confession on 30 Apr 12. SPENCER agreed that HOLZ should re-approach T. KELLEY and conduct a witness interview as soon as possible." | **USA00019707** |
| 19 | 9-May-12 | Reviewer Note by VELTRI, MATTHEW | "On 9 May 12, SA Veltri, 2 FIR, Langley AFB, VA, reviewed this file. Comments were sent to the detachment leadership." | **USA00019707** |

2

**Appendix G – USAF and DoD Kelley Criminal History Data Compliance Opportunity Events**

| 20 | 15-May-12 | Reviewer Note by TAYLOR, RANDALL D | "On 15 May 12, SA TAYLOR reviewed this file." | **USA00019707** |
|----|-----------|-----------------------------------|-----------------------------------------------|-----------------|
| 21 | 1 Jun 2012 | IDP Note by HOLZ, YONATAN | "On 1 Jun 12, SA HOLZ provided a copy of the SUBJECT confession to Shelly Martin M.D. Maj, USAF, MC, Child Abuse Pediatrician, San Antonio Military Medical Center." | **USA00019707** |
| 22 | 7 Jun 2012 | Pretrial Confinement of Kelley at 49 SFS, Holloman AFB, NM | Trigger for 49 SFOI to submit fingerprints IAW AFI 31-205, DODI 1325.7 and DODI 5505.11 | **USA00013374-76** |
| 23 | 18 Jun 2012 | IDP Note by HOLZ, YONATAN | "On 18 Jun 12, SA YONATAN HOLZ called and left voicemails for the following persons: Priscilla Torres (210-322-6130) and Katy Landry (210-857-8316). TORRES is SUBJECT D. KELLEY's friend and may have been witness to physical abuse performed by D. KELLEY on T. KELLEY in Mar/Apr 12 time frame. LANDRY is D. KELLEY's ex-girlfriend and 49th WG/JAG requested DET 225 to interview her regarding possible past physical or emotional abusive behavior by D. KELLEY. HOLZ also attempted to contact Amanda Lazenby (D. KELLEY's ex-girlfriend) at 830-822-7247, but the number was disconnected." | **USA00019707** |
| 24 | 18 Jun 2012 | IDP Note by HOLZ, YONATAN | "On 18 Jun 12, SA YONATAN HOLZ provided Shelly Martin M.D. Maj, USAF, MC, Child Abuse Pediatrician, San Antonio Military Medical Center, with VICTIM's Medical Records she requested for off-base civilian hospitals (Gerald Champion, Alamogordo NM and Providence Childrens [sic] Hospital, EL Paso TX)." | **USA00019707** |

SSS-002516

**Appendix G – USAF and DoD Kelley Criminal History Data Compliance Opportunity Events**

| 25 | 19 Jun 2012 | IDP Note by HOLZ, YONATAN | "On 19 Jun 12, SA YONATAN HOLZ contacted the following persons to attempt to get identifying information for further questioning: Amber Dollahn [sic] (Tel 706-832-4689), Ralph Martinez' father (830-515-9564), Priscilla Torres (210-322-6130) and Katy Landry (210-857-8316). HOLZ left voicemail messages on all except LANDRY. HOLZ was able to speak with LANDRY via text. LANDRY stated she wanted to talk to OSI but had not been able to due to schedule conflicts. LANDRY had seen missed calls in her phone from Det 225 and apologized for not calling back. LANDRY stated she would contact HOLZ as soon as she was available." | USA00019707 |
|----|-------------|---------------------------|---|-------------|
| 26 | 22 Jun 2012 | Reviewer Note by HOY, JAMES F | "On 22 Jun 12, SA James Hoy reviewed this file and provided feedback to the case agent." | USA00019707 |
| 27 | 9 Jul 2012 | Reviewer Note by TAYLOR, RANDALL D | "On 9 Jul 12, SA TAYLOR reviewed this file." | USA00019707 |
| 28 | 1 Aug 2012 | Reviewer Note by TAYLOR, RANDALL D | "On 1 Aug 12, SA TAYLOR reviewed this file." | USA00019707 |
| 29 | 26 Sep 2012 | Reviewer Note by BANKHEAD, LYLE I | "On 26 Sep 12, SA BANKHEAD reviewed this file." | USA00019707 |
| 30 | 1 Oct 2012 | Reviewer Note by TAYLOR, RANDALL D | "On 1 Oct 12, SA TAYLOR reviewed this file for sufficiency.  The file is sufficient and awaiting draft ROI prior to signing." | USA00019707 |
| 31 | 3 Oct 2012 | IDP Note by HOLZ, YONATAN | "A case review disclosed numerous investigative gaps in this investigation. The following are dates and possible reasonable explanations for the gaps identified: Investigative gaps found between 17 Jun 12-23 Jun 12, 24 Jun 12-7 Jul 12 and 7 Jul 12-1 Aug 12 occurred due to the assigned agent working on the following investigations: 33039110541904, 33197111511236, 04031111641242, 33039102801937 | USA00019707 |

4

**Appendix G – USAF and DoD Kelley Criminal History Data Compliance Opportunity Events**

| | | | and 3231952093081410. Investigative gaps found between 1 Aug 11-12 Aug 11, 12 Aug 11-9 Sep 11 and 10 Sep 11-20 Sep 11 occurred due to waiting for evidence at USACIL labs. Investigative gaps found between 20 Sep 11 to 28 Feb 12 occurred during a low manning period in AFOSI Det 225 and the case agent being deployed, but otherwise inexplicable to the current case agent. Investigative gaps found between 29 Feb 12-25 Mar 12, 28 Mar 12-28 Apr 12, 4 May 12-1 Jun 12 occurred due to the assigned agent working on the following investigations: 30422120720740, 30422120870658, 33197113081946, 32329121151458, 33197113221151, 32588120321308, 33039121011851 and 31952093081410.  Investigative gaps found between 1 Jun 12-7 Jun 12, 12 Jun 12-18 Jun 12, 19 Jun 12-25 Jun 12, 29 Jun 12-9 Jul 12, 11 Jul 12-15 Jul 12, 17 Jul 12-2 Aug 12, 2 Aug 12-7 Aug 12, 9 Aug 12-15 Aug 12, 17 Aug 12-17 Sep 12 were caused due to the waiting period for Dr. MARTIN's final medical opinion report for VICTIM. Investigative gaps found between 17 Sep 12-26 Sep 12 occurred due to the assigned agent working on the following investigations: 30422121601858, 33039122301512, 33197113081946, 3042212072040, 33082122291246, 30422120870658, 33039121011851, 33400122142346 and 33400122142123." | |

5

**Appendix G – USAF and DoD Kelley Criminal History Data Compliance Opportunity Events**

| 32 | 5 Oct 2012 | IDP Note by HOLZ, YONATAN | "The initial allegation was received on 9 Jun 11. However, the investigation was not approved until 15 Jun 11. The Special Agent in Charge (SAIC) at the time, SA VINCE BUSTILLO (Ret.), Holloman AFB, NM, was preparing for his retirement and while the investigation was not approved within the first two days, investigative steps were taken immediately upon receipt of the allegation. It is not known why this was not accomplished." | **USA00019707** |
|---|---|---|---|---|
| 33 | 31 Oct 2012 | Reviewer Note by TAYLOR, RANDALL D | "On 31 Oct 12, SA TAYLOR reviewed this file." | **USA00019707** |
| 34 | 7 Nov 2012 | Kelley sentenced by GCM panel; AF Form 1359, Report of Result of Trial published | Copy to AFOSI Det 225 and to 49 SFS/CC | **USA00012947** |
| 35 | 14 Dec 2012 | AF Form 1359, Report of Result of Trial | AFOSI Det 225 received AF Form 1359 | **Stipulation Oct 4, 2019** |
| 36 | 14 Dec 2013 | GCM Order No. 10 published by 12th AF/CC | Copy to AFOSI Det 225 and to 49 SFS/CC/SFOI | **USA00012879-82** |
| 37 | 10 Apr 2013 | Archive Submittal noted by BANKHEAD, LYLE I | "D. KELLEY (S); T. KELLEY (S); LEVINE (V); Violation of Art 128G, UCMJ, Assault of Child Under the Age of 16, this file was sent to Archive via registered mail number RA 596 777 937 US on 8 Apr 13" | **USA00019707** |
| 38 | 10 Apr 2014 | GCM Order No. 53 published by AFDW/CC | Copy to AFOSI Det 225 and to 49 SFS/CC | **USA00012877-78** |
| 39 | 29 Oct 2014 | DoD IG Report No. DODIG-2015-011 | Evaluation of the Defense Criminal Investigative Organizations' Defense Incident - Based Reporting System Reporting and Reporting Accuracy | **USA017735 – 774** |
| 40 | 12 Feb 2015 | DoD IG Report No. DODIG-2015-081 (Project No. 2013C006) | Evaluation of the Defense Compliance with Criminal History Data Reporting Requirements | **USA011697 – 732** |
| 41 | 1 Jan 2015 to 31 Dec 2016 | Data Call for DoD IG Report No. DODIG-2018-035 (Project No. 2017-C002) of 4 Dec 2017 | Evaluation of Fingerprint Card and Final Disposition Report Submissions by Military Law Enforcement Organizations | **SSS-000077 - 168** |

6

# Appendix H - USAF HQ Level Law Enforcement (LE) Organizational Structure



CSAF – Chief of Staff
DCOS – Deputy Chief of Staff
A4/A7 – DCOS for Installations, Logistics & Force Protection
A4 – Logistics
A7 – Installations and Mission Support
A7S – Security Forces & Force Protection
MAJCOM – Major Command
CC - Commander
OSI – Office of Special Investigations
FIR – Field Investigations Region

1

SSS-002520

# Appendix H - USAF MAJCOM Level LE Organization



SSS-002521

## *Appendix H - Base Level LE Organization*



SSS-002522

Appendix I

Devin P. Kelley Firearms Purchased after June 9, 2011

| Purchase Date | Weapon | FFL Dealer | Location | Bates No. |
|---|---|---|---|---|
| 02 Apr 2012 | Sig Sauer 9mm | AAFES Base Exchange | Holloman AFB, NM | USA00012136 – 12140 |
| 22 Dec 2012 | .38 SPI | AAFES Base Exchange | Holloman AFB, NM | USA00012133 – 12135 |
| 22 Dec 2014 | Glock 9mm | K&L Marketing | Colorado Springs, CO | USA00012893 – 12895 |
| 07 Apr 2016 | AR 5.56 | Academy #41 | San Antonio, TX | USA00012899 – 12907 |
| 26 Jun 2016 | Ruger .357 | K&L Marketing | Colorado Springs, CO | USA00015371 – 15373 |
| 18 Oct 2017 | Ruger SR .22 LR | Academy #46 | Selma, TX | USA00012896 – 12898 |

## Appendix J – Abbreviations and Acronyms List

| | |
|---|---|
| AFOSI | Air Force Office of Special Investigations |
| AFOSIMAN | Air Force Office of Special Investigations Manual |
| AMJAMS | Automated Military Justice Analysis and Management System |
| Capt | Captain (O-3) |
| CC | Commander |
| CHD | Criminal History Data |
| CJIS | Criminal Justice Information Services (System) |
| Col | Colonel (O-6) |
| CRB | Central Registry Board |
| CRIMS | Case Reporting Information Management System (of DCIS) |
| DCIO | Defense Criminal Investigative Organization |
| DCIS | Defense Criminal Investigative Service |
| DoD | Department of Defense |
| DODD | Department of Defense Directive |
| DODI | Department of Defense Instruction |
| DIBRS | Defense Incident-Based Reporting System |
| DHRA | Defense Human Resources Activity |
| DMDC | Defense Manpower Data Center |
| DPRIS | Defense Personnel Records Information Retrieval System |
| FBI | Federal Bureau of Investigation |
| FIR | Field Investigations Region |
| FFL | Federal Firearms Licensed |
| GCM | General Court-martial |
| IAFIS | Integrated Automated Fingerprint Identification System (now called Next Generation Identification) |
| IG | Inspector General |
| III | Integrated Identification Index |
| I2MS | Investigative Information Management System (AFOSI) |
| LOC | Letter of Counseling |

SSS-002524

## Appendix J – Abbreviations and Acronyms List

| | |
|---|---|
| LOR | Letter of Reprimand |
| LRS | Logistic Readiness Squadron |
| Lt Col | Lieutenant Colonel (O-5) |
| Maj | Major (O-4) |
| MAJCOM | Major Command |
| MCIO | Military Criminal Investigative Organizations |
| MLEO | Military Law Enforcement Organizations |
| MSG | Mission Support Group |
| NCIC | National Crime Information Center |
| NGI | Next Generation Identification |
| NIBRS | National Incident-Based Reporting System |
| NICS | National Instant Criminal Background Check System |
| OIG | Office of the Inspector General |
| OUSD (P&R) | Office of the Undersecretary of Defense for Personnel and Readiness |
| PIF | Personal Information File |
| SA | Special Agent |
| SAIC | Special Agent In Charge |
| SF | Security Forces |
| SFS | Security Forces Squadron |
| SP | Security Police (predecessor of SF) |
| SMSgt | Senior Master Sergeant (E-8) |
| SSgt | Staff Sergeant (E-5) |
| TSgt | Technical Sergeant (E-6) |
| UCMJ | Uniform Code of Military Justice |
| UCR | Uniform Crime Report |
| USAF | United States Air Force |

SSS-002525