IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JOE HOLCOMBE *et al.*, | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | Civil Action No.  SA-18-CV-555-XR |
| | § | |
| UNITED STATES OF AMERICA, | § | *Consolidated Cases* |
| | § | |
| *Defendant*. | § | |

### ORDER

On this date, the Court considered the Government's motion to exclude the testimony of Plaintiffs' retained expert, Col. Larry D. Youngner (ECF No. 352). After careful consideration, the Court will deny the motion without prejudice to the Government reasserting the arguments raised therein at trial.

### BACKGROUND

These consolidated cases stem from the mass shooting at the First Baptist Church in Sutherland Springs, Texas on November 5, 2017. The shooter, Devin Patrick Kelley ("Kelley"), entered the church and opened fire, killing 26 people and wounding 22 more. After fleeing the scene, Kelley later died from a self-inflicted gunshot wound.

Kelley committed the shooting using firearms he purchased from federal firearms licensees ("FFLs") after clearing the required background check through the National Instant Criminal Background Check System ("NICS") administered by the FBI. Kelley should not have passed the NICS background check, however, because he had been convicted of a crime that disqualified him from purchasing firearms.

While serving in the U.S. Air Force ("USAF"), Kelley pleaded guilty to a crime of domestic violence for assaulting his then-wife, Tessa Kelley, and stepson during General Court-Martial proceedings in November 2012. Despite U.S. Department of Defense ("DoD") and USAF instructions and policies that required the USAF to collect and submit Kelley's fingerprints and final disposition report of conviction to the FBI, the USAF failed to do so. ECF No. 149. Consequently, Kelley's fingerprints and conviction were not in the FBI's NICS at any time before the shooting on November 5, 2017. *Id.*

Plaintiffs are survivors of the shooting and relatives of those injured or killed. They seek recovery against Defendant United States ("the Government") under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671–2680, for its negligent failure to collect, handle, and report required information about Kelley that would have prevented him from purchasing the firearms used in the shooting. Trial in this case will be to the bench, as there is no right to a jury trial in FTCA cases. *See* 28 U.S.C. § 2402; *Carlson v. Green*, 446 U.S. 14, 22 (1980).

Plaintiffs have designated Col. Larry D. Youngner, an attorney who spent 24 years as a judge advocate general ("JAG") in the USAF, as an expert witness on liability. *See* ECF No. 197 at 1–6; *accord* ECF No. 206 at 1–6, ECF No. 339 at 1–6. Specifically, Plaintiffs assert that Col. Youngner will testify as to "the criminal investigation aspects of the events and government conduct and history leading up to the Sutherland Springs shooting, including an assessment of what compliance requirements existed, and what consequences resulted" from the Government's negligence. *Id.*

The Government now moves to exclude Col. Youngner from testifying as an expert in this case, arguing that he fails to satisfy the standards set forth in *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 589 (1993) and Rule 702 of the Federal Rules of Evidence

because: (1) his opinions as to the Government's duty in this case and whether it was breached are irrelevant in light of the Court's previous rulings on those issues; (2) his opinions concerning the consequences of the Government's failure to report Kelley's information are beyond the scope of his expertise and are thus unreliable; and (3) to the extent that his opinions constitute conclusions of law, they must be excluded because they are unhelpful to the trier of fact. ECF No. 352.

## DISCUSSION

**I.       Legal Standard**

Rule 702 of the Federal Rules of Evidence allows a witness "who is qualified as an expert" to testify if:

> a)   the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> b)   the testimony is based on sufficient facts or data;
>
> c)   the testimony is the product of reliable principles and methods; and
>
> d)   the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702. The Supreme Court's decision in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), provides the analytical framework for determining the admissibility of expert testimony. *Daubert* requires the district courts to act as "gatekeepers" to ensure expert testimony meets Rule 702's standards. *Id*. at 589. As a preliminary matter, a district court "must be assured that the proffered witness is qualified to testify by virtue of his 'knowledge, skill, experience, training, or education.'" *United States v. Cooks*, 589 F.3d 173, 179 (5th Cir. 2009) (quoting FED. R. EVID. 702). If the expert is qualified, a court must follow *Daubert*'s analytical framework to ensure "that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. at 597.

The reliability inquiry entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and can be properly applied to the facts in issue. *Id.* at 592–93. The test for determining reliability is flexible and can adapt to the particular circumstances underlying the testimony at issue. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999). The point of this inquiry "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.*

The relevance inquiry requires the Court to determine if expert testimony will "assist the trier of fact to understand the evidence or to determine a fact in issue." *Daubert*, 509 U.S. at 591. "Evidence is relevant if . . . it has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action." FED. R. EVID. 401.

Notwithstanding the testing of an expert's qualification, reliability, and admissibility, "the rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702, Adv. Comm. Notes (2000). A trial court's role as gatekeeper under *Daubert* "is not intended to serve as a replacement for the adversary system." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 250 (5th Cir. 2002) (citing Rule 702 advisory committee's note). Thus, in determining the admissibility of expert testimony, the court should approach its task "with proper deference to the [factfinder]'s role as the arbiter of disputes between conflicting opinions." *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

4

Moreover, the need for a gatekeeper is substantially less in a bench trial, where the judge serves as both the trier of fact and the arbiter of relevance and reliability. *See Williams v. Illinois*, 567 U.S. 50, 69 (2012) ("When the judge sits as the trier of fact, it is presumed that the judge will understand the limited reason for the disclosure of the underlying inadmissible information and will not rely on that information for any improper purpose."); *Gibbs v. Gibbs*, 210 F.3d 491, 500 (5th Cir. 2000) (finding the standards announced in *Daubert* "are not as essential in a case . . . where a district judge sits as the trier of fact in place of a jury"). Though the court "cannot simply abandon its duty to scrutinize expert testimony under *Daubert*, . . . bench trials allow far greater flexibility to hear the testimony at trial and then give the evidence whatever weight it deserves." *Perez v. Texas*, No. 11–CA–360–OLG–JES–XR, 2014 WL 12480146, at *1 (W.D. Tex. July 9, 2014). "District courts routinely take this approach, which allows the evidence to be presented in the context of trial, 'where a full foundation, vigorous cross-examination, and the presentation of contrary evidence can more fully enlighten the Court with regard to the value of an expert's opinion.'" *Id.* (quoting *In re Sunpoint Securities, Inc.*, 2006 WL 6650385 *1 (Bankr. E.D. Tex. Sept. 26, 2006)).

Still, "[e]ven in bench trials, testimony will be excluded prior to trial if the expert is merely providing legal opinions which invade the province of the court." *Id.*, at *2 (citing *Rader v. Uruister*, 2013 WL 6805403 *16 (S.D. Miss. Dec. 20, 2013) (expert allowed to testify, but not about whether the defendants met their fiduciary duties, which was a legal conclusion for the court); *Lyondell Chemical Co. v. Albemarle Corp.*, 2007 WL 5527509 *3 (E.D. Tex. March 9, 2007) (allowed expert testimony, except to extent he offered legal opinion on ultimate allocation of remediation costs). While an expert opinion "is not objectionable just because it embraces an ultimate issue" to be decided by the trier of fact, FED. R. EVID. 704(a), experts may not offer legal

opinions or advise the Court on how the law should be interpreted or applied to the facts in the case. *See Estate of Sowell v. United States*, 198 F.3d 169, 171 (5th Cir. 1999); *see also Askanse v. Fatjo*, 130 F.3d 657, 672–73 (5th Cir. 1997). Expert testimony in the form of legal opinion invades the province of the Court and does not assist the trier of fact.

## II.     Analysis

The Government concedes that "Col. Youngner could have served as an expert on certain Air Force protocols and Staff Judge Advocate responsibilities," but argues that the Court's ruling on the parties' cross-motions for summary judgment renders any testimony on those issues irrelevant, and thus inadmissible. ECF No. 352 at 5 n.2. The Court disagrees with this analysis, in large part because of the Government's own insistence that it be permitted to offer expert testimony concerning the USAF's missed opportunities to submit Kelley's fingerprints and criminal history information to the NICS. *See* ECF No. 337, Motion *in limine* at 13 ("[T]he United States respectfully requests an opportunity to present evidence at trial on that issue.").

In denying the Government's motion *in limine* (ECF No. 337) in open court after a hearing on February 26, 2020, the Court specifically granted the Government permission to present witnesses who would be able to contest Plaintiffs' allegations that the USAF was required to submit Kelley's information on each of these occasions. The Court can hardly agree that Col. Youngner's recognized expertise in Air Force protocols and Staff Judge Advocate responsibilities will not "assist the trier of fact" in understanding the Government's failure to collect and submit Kelley's information to the NICS. *Daubert*, 509 U.S. at 591. Thus, the Court rejects the Government's argument that Col. Youngner's testimony should be excluded in its entirety as irrelevant. To the extent that Col. Youngner's testimony extends to matters already decided in the

Court's order on the parties' cross-motions for summary judgment (ECF No. 318), the Government may object to the relevance of such testimony at trial.

The Court likewise rejects the Government's invitation to exclude certain opinions that the Government alleges "go well beyond [Col. Youngner]'s area of expertise," including his "common sense" opinions as to the consequences of USAF's failure to submit Kelley's information to the NICS and his rebuttals to certain Government experts. ECF No. 352 at 3–6. Were this a jury trial, the Court would have greater concern regarding the reliability of such opinions. However, this case will not be tried to a jury, where the risk of prejudice flowing from unreliable testimony is greatest. In the context of a bench trial, as here, the Court's inquiry into reliability is less stringent than in the context of a jury trial, as many of the "[s]afeguards such as those provided for in Rules 701 and 702 and discussed in *Daubert* are largely irrelevant in the context of a bench trial." *Air Evac EMS, Inc. v. Sullivan*, 331 F. Supp. 3d 650, 657 (W.D. Tex. 2018) (citing *Williams*, 567 U.S. at 69). The Government will have a chance to challenge any opinions Col. Youngner offers on matters outside of his areas of expertise through "[v]igorous cross-examination" and the "presentation of contrary evidence" at trial. *Daubert*, 509 U.S. at 596. Such attacks on the "bases" of an expert opinion "affect the weight to be assigned to that opinion rather than its admissibility" and should also "be left for the [factfinder]'s consideration." *Viterbo*, 826 F.2d at 422.

Finally, the Government argues that Col. Youngner's opinions on the issues of duty, increased risk of harm, and foreseeability should be excluded as "legal conclusions disguised as expertise, taking on the Court's role as the legal arbiter and trier of fact." ECF No. 352 at 8. The Government is correct that, to the extent that Col. Youngner's opinions constitute legal conclusions, they invade the province of the Court and do not assist the trier of fact. Col Youngner may not offer legal opinions or advise the Court on how the law should be interpreted or applied

7

to the facts in the case. *Estate of Sowell*, 198 F.3d at 171. However, "[i]t is impossible to know, at this time, the point at which [the witness]'s testimony crosses from permissible expert opinions into the realm of inadmissible legal opinions, and the Court must hear and assess the evidence before drawing that line." *Rader v. Bruister*, No. 4:10cv95–DPJ–FKB, 2013 WL 6805403, at *16 (S.D. Miss. Dec. 20, 2013). The Court will address the issue further at trial.

Col. Youngner should be permitted to testify, but the Government has identified aspects of his testimony that are questionable in terms of admissibility. Given that this is a bench trial, the Government's motion to exclude is denied, but the denial is without prejudice to the Government objecting during trial and arguing that all or a portion of Col. Youngner's testimony should be disregarded entirely as unreliable rather than merely given minimal weight. This approach makes the most sense because of the context-specific nature of the Government's objections and the fact that this is a bench trial.

## CONCLUSION

Accordingly, the Court hereby **ORDERS** that the Government's motion to exclude the testimony of Plaintiffs' expert, Col. Larry D. Youngner (ECF No. 352) is **DENIED WITHOUT PREJUDICE** to re-urging in the form of appropriate objections at trial.

It is so **ORDERED**.

SIGNED this 5th day of March, 2021.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE