IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| HOLCOMBE, et. al, | NO. 5:18-CV-00555-XR |
| | (consolidated cases) |
| Plaintiffs | |
| | |
| vs. | |
| | |
| UNITED STATES OF AMERICA, | |
| | |
| Defendant | |

**PLAINTIFFS' DESIGNATION OF VINCE BUSTILLO[1]**

Plaintiffs file the following deposition designation of Vince Bustillo and hereby designate the following pages and lines of the referenced deposition to be used at trial. Plaintiffs do not include in their designations any objections or attorney commentary that may fall within the page and line references.

*For the Court's convenience in locating the documents discussed within the designated testimony, Plaintiffs note the Trial Exhibit Number that corresponds to the document in the Page & Line Column. Documents referenced herein (or relevant excerpt thereof) are attached and numbered as their corresponding Trial Exhibit.*

---

[1] The official transcript pages of the proffered testimony, including the cover page and certification page, are attached hereto as Plaintiffs' Trial Exhibit (PEX) 88, which is incorporated herein by reference.  The portions of the testimony that are not being offered have been redacted.

Deposition Testimony of Vince Bustillo

| PAGE & LINE | TESTIMONY | OBJECTION | ADMITTED |
|---|---|---|---|
| 6:11-23 | 11    THE COURT REPORTER:  Raise your hand, please.<br>12    Do you swear or affirm the testimony you're<br>13  about to give is the truth, the whole truth and<br>14  nothing but the truth?<br>15    THE WITNESS:  Yes, ma'am.<br>16 Thereupon,<br>17    VINCE BUSTILLO,<br>18 having been first duly sworn or affirmed, was examined<br>19 and testified as follows:<br>20    DIRECT EXAMINATION<br>21 BY MR. ALSAFFAR:<br>22   Q.  Sir, could you introduce yourself?<br>23   A.  My name is Vince Bustillo. | | |
| 7:1-11 | 1   Q.  Mr. Bustillo, we have never met before,<br>2 correct?<br>3   A.  No.<br>4   Q.  My name is Jamal Alsaffar.  And do you<br>5 understand that I represent the plaintiffs in this case?<br>6   A.  Yes.<br>7   Q.  And you understand that I represent the<br>8 families who were victims in the Sutherland Springs mass<br>9 shooting that occurred in November 2017.  Do you<br>10 understand that?<br>11   A.  Yes. | | |
| 10:1-7 | 1    You understand that we're -- the plaintiffs in<br>2 this case, the families who were shot, killed and<br>3 injured in the mass shooting have sued the federal | | |

Deposition Testimony of Vince Bustillo

| PAGE & LINE | TESTIMONY | OBJECTION | ADMITTED |
|---|---|---|---|
| | 4   government for their role in -- in not submitting Devin<br>5   Kelley's fingerprints and criminal conviction to the FBI<br>6   background check system.  Do you understand that?<br>7       A.  I understand that. | | |
| 101:14-20 | 14       Q.  Okay.  And you understand that the oath that<br>15   you took here is also the same one that you would take<br>16   if you were in a courtroom, correct?<br>17       A.  Yes.<br>18       Q.  All the same penalties of perjury apply here<br>19   as they would in a courtroom; you understand that?<br>20       A.  Yes. | | |
| 49:5-13 | 5       Q.  Okay.  So when did you start at Holloman Air<br>6   Force Base?<br>7       A.  October of 2009.<br>8       Q.  Okay.  And we'll talk about -- so you said<br>9   about the third week of July, 2011, is when you were<br>10   officially not -- no longer working at Holloman Air<br>11   Force Base?<br>12       A.  I was already out-processed by that time, yes,<br>13   sir. | | |
| 109:9-15 | 9       Q.  Okay.  So when you started in -- around<br>10   October 2009 at Holloman, you were a SAIC?<br>11       A.  Yes.<br>12       Q.  All right.  And so you were a supervisory<br>13   special agent to the other special agents at -- at<br>14   Holloman Air Force Base?<br>15       A.  Yes. | | |

Deposition Testimony of Vince Bustillo

| PAGE & LINE | TESTIMONY | OBJECTION | ADMITTED |
|---|---|---|---|
| 112:14-23 | 14    Q.  Okay.  Now, you -- you went on to say that<br>15  they didn't have a SAIC when you arrived in 2009.<br>16    So they didn't have a supervisory agent in<br>17  charge?<br>18    A.  No, sir.<br>19    Q.  Okay.  And you also said they didn't have a<br>20  D-E-T-C-O when you got there.<br>21    Now, does that mean they did not have a<br>22  detachment commander?<br>23    A.  Yes. | | |
| 113:25-114:7 | 25    Q.  All right.  So when you came to Holloman in<br>114<br>1  2009 they didn't have a SAIC, a detachment commander,<br>2  and that the -- and the superintendent was on their way<br>3  out?<br>4    A.  Yes, sir.<br>5    Q.  Okay.  When you came to Holloman in 2009, were<br>6  you being placed into that SAIC role?<br>7    A.  Yes, I was assigned as the SAIC. | | |
| 114:17-22 | 17    Q.  And -- and what you were saying is, compared<br>18  to other detachments that you were familiar with, based<br>19  on region two command, that Holloman was really not that<br>20  busy compared to some other detachments that you were<br>21  familiar with?<br>22    A.  That's right. | | |
| 115:3-9 | 3    Q.  And so when you arrived at Holloman in 2009, | | |

Deposition Testimony of Vince Bustillo

| Page & Line | Testimony | Objection | Admitted |
|---|---|---|---|
| | 4  and I'm talking about the Detachment 225, was that also<br>5  a quiet place in terms of how many cases were there, you<br>6  know, what kinds of investigations were going on?<br>7      A.  As I remember, yes.  I mean, it was -- it<br>8  appeared to be a quiet location.  Not a whole lot of<br>9  action. | | |
| 132:22-133:10 | 22      Q.  Okay.  So in terms of, you know, the caseload,<br>23  is that -- when you arrived at Holloman Air Force Base,<br>24  did you feel like the caseload was overwhelming or not<br>25  for these agents?<br><div align="center">133</div>1      A.  Not.  That's just based on my experience.<br>2      Q.  All right.  On the next page, page 1560- --<br>3  669, you say: "So especially at Holloman, I mean, you<br>4  know, it wasn't busy."<br>5          So my -- is my understanding, when you're<br>6  saying it wasn't busy at Holloman when you got there in<br>7  2009, you're saying that the -- are you saying that the<br>8  cases -- there weren't so many cases that it -- you felt<br>9  it was too busy for the agents to handle?<br>10      A.  That's -- that's right. | | |
| 135:12-16 | 12      Q.  And -- and -- and so that kind of caseload<br>13  that you saw when you arrived at Holloman would not be<br>14  an excuse for the condition of those files being in what<br>15  you stated as a horrible condition?<br>16      A.  That's correct. | | |
| 12:13-13:2 | 13      Q.  Okay.  And you said that you looked at the | | |

Deposition Testimony of Vince Bustillo

| PAGE & LINE | TESTIMONY | OBJECTION | ADMITTED |
|---|---|---|---|
| | 14   narrative then generated by the DOD IG related to your | | |
| | 15   interview -- | | |
| | 16      A.   Yes. | | |
| | 17      Q.   -- with -- okay. | | |
| | 18          So you looked at the interview that you gave | | |
| | 19   to the DOD IG? | | |
| | 20      A.   That's correct. | | |
| | 21      Q.   Okay.  Did you have any -- when did you look | | |
| | 22   at that? | | |
| | 23      A.   Yesterday. | | |
| | 24      Q.   Okay.  Any changes to it? | | |
| | 25      A.   No, sir. | | |
| | 13 | | |
| | 1      Q.   Okay.  Was it accurate? | | |
| | 2      A.   It is. | | |
| 13:12-25 | 12      Q.   I'm referring to the interview you gave to the | | |
| | 13   IG. | | |
| | 14          You were being honest when you were providing | | |
| | 15   them information in that interview? | | |
| | 16      A.   Yes. | | |
| | 17      Q.   Okay.  And you -- you said you looked at it. | | |
| | 18          You have no changes and no inaccuracies, as | | |
| | 19   far as you can tell, with the interview that you gave | | |
| | 20   and reviewed yesterday? | | |
| | 21      A.   You're talking about to the DOD IG? | | |
| | 22      Q.   Yes, sir. | | |
| | 23      A.   Yes. | | |
| | 24      Q.   Okay.  It's accurate, in other words? | | |

Deposition Testimony of Vince Bustillo

| PAGE & LINE | TESTIMONY | OBJECTION | ADMITTED |
|---|---|---|---|
| | 25   A.  Yes. | | |
| 27:19-28:1 <br><br>**JEX 29** | 19   Q.  Okay.  So, yet -- earlier when I asked you <br> 20   about the statement that you reviewed, the summary of <br> 21   this interview in Exhibit 2, and I asked you, did you <br> 22   think that summary was accurate and did you make that <br> 23   interview under oath and were you being truthful, you're <br> 24   referring to this interview that you gave to the <br> 25   Inspector General? <br><div align="center">28</div> 1   A.  Correct. | | |
| 15:1-3 | 1   Q.  Okay.  So you looked at the 71-121, 71-105, <br> 2   and then the Department of Defense instruction 5505.11? <br> 3   A.  Yes. | | |
| 31:1-14 <br><br>**JEX 8** <br><br><br><br><br><br>**JEX 8** | 1   Q.  Let me hand you Exhibit Number 4, Mr. <br> 2   Bustillo.  Now, this is a Department of Defense <br> 3   instruction related to -- among other things, but <br> 4   relating to fingerprint collection and submission that <br> 5   was in effect, I believe, when you were a special agent <br> 6   handling part of the Devin Kelley case; is that correct? <br> 7   A.  What's your question? <br> 8   Q.  Exhibit Number 4 -- <br> 9   A.  Yes. <br> 10   Q.  -- DODI instruction 5505.11 was the DOD <br> 11   instruction related to fingerprint collection and <br> 12   submission that was in effect when you were the special <br> 13   agent handling part of the Devin Kelley case, correct? <br> 14   A.  Yes.  According to that date, yes, it was. | | |

Deposition Testimony of Vince Bustillo

| PAGE & LINE | TESTIMONY | OBJECTION | ADMITTED |
|---|---|---|---|
| 31:19-22 | 19   Q.  All right.  If you could look at -- well,<br>20  first of all, just -- this is a mandatory instruction,<br>21  correct?<br>22   A.  Yes. | | |
| 32:4-10 | 4   Q.  You did not have any discretion in following<br>5  this instruction?  Meaning agents -- when you were an<br>6  agent at Holloman, you had to follow this instruction.<br>7    You could not deviate from it, correct?<br>8  ~~MR. STERN:  Objection.~~<br>9   A.  Cannot deviate from it.  Why would we deviate<br>10  from it? | | |
| 53:13-18 | 13   Q.  And did -- was that your understanding when<br>14  you were SAIC at Holloman Air Force Base, that 71-121<br>15  was a mandatory instruction?<br>16   A.  Yes.<br>17   Q.  So you understood that you had to follow it?<br>18   A.  I understand it was mandatory, yes. | | |
| 195:2-22 | 2   Q.  It's under file reviews.  The 71-121 states:<br>3  "Periodic reviews for sufficiency of investigative<br>4  effort and compliance with established policy is a<br>5  fundamental aspect of the investigative process."<br>6   Do you see that?<br>7   A.  Yes.<br>8   Q.  And if you look down at 4.241.3 [sic], under<br>9  case file, it says:  "Case file investigations will be<br>10  reviewed monthly."<br>11   Do you see that? | | |

Deposition Testimony of Vince Bustillo

| PAGE & LINE | TESTIMONY | OBJECTION | ADMITTED |
|---|---|---|---|
| | 12    A.  Yes. | | |
| | 13    Q.  So my understanding, reading your statement | | |
| | 14  and also what I've been learning from all these | | |
| | 15  depositions, is that SAIC would do monthly case reviews | | |
| | 16  of all the case files at Holloman. | | |
| | 17     Is that -- is that what you did?  Is that | | |
| | 18  something you did? | | |
| | 19    A.  Well, myself and my superintendent, he would | | |
| | 20  assist me with those. | | |
| | 21    Q.  Mr. Hoy? | | |
| | 22    A.  Yes. | | |
| 196:13-197:14 | 13    Q.  Now, one of the examples that is -- that is | | |
| | 14  given in this mandatory instruction under Section | | |
| | 15  4.251.3 [sic], a couple of lines down, it says:  "For | | |
| | 16  example, the FBI's R-84 final disposition report for | | |
| | 17  updated charges, disposition and date." | | |
| | 18     Do you see that? | | |
| | 19    A.  Yes. | | |
| | 20    Q.  So that's the green card that we just talked | | |
| | 21  about where when your outfit at Holloman receives a | | |
| | 22  conviction, that's -- the R-84 is a form that you | | |
| | 23  actually send to -- submit to the FBI, correct? | | |
| | 24    A.  Yes. | | |
| | 25    Q.  Okay.  So did you -- when you were doing your | | |
| |            197 | | |
| | 1  monthly reviews from 2009 to 2011, did you review it to | | |
| | 2  ensure that if there were any convictions, that they | | |
| | 3  were properly reported on the R-84 -- properly | | |

Deposition Testimony of Vince Bustillo

| PAGE & LINE | TESTIMONY | OBJECTION | ADMITTED |
|---|---|---|---|
| | 4   submitted, I mean, on the R-84 to the FBI? | | |
| | 5      A.   They should have been gone. | | |
| | 6      Q.   And if they weren't and you noticed it, was it | | |
| | 7   your job to make sure that they were gone to the FBI? | | |
| | 8      A.   Yes. | | |
| | 9      Q.   Okay.  Now, do you recall when you were a | | |
| | 10   supervisor at Holloman Air Force Base, there being a | | |
| | 11   case when a conviction was reported to you but the case | | |
| | 12   agent had failed to send the R-84 to the FBI, that you | | |
| | 13   needed to fix? | | |
| | 14      A.   I don't recall. | | |
| 197:19-198:16 | 19      Q.   All right.  And -- so in terms of ensuring | | |
| | 20   that the investigative file was accurate on any | | |
| | 21   particular suspect, you want to make sure that both -- | | |
| | 22   that if a suspect met the probable cause standard and | | |
| | 23   the fingerprints were in the file, you need to make | | |
| | 24   sure, first, that not only they're collected, but that | | |
| | 25   they're sent to the FBI, submitted to the FBI, right – | | |
| | 198 | | |
| | 1      A.   Yes. | | |
| | 2      Q.   -- fingerprints? | | |
| | 3         And then also there's a conviction.  You want | | |
| | 4   to make sure that the R-84 report of conviction and -- | | |
| | 5   along with the fingerprints are also submitted to the | | |
| | 6   FBI? | | |
| | 7      A.   Yes. | | |
| | 8      Q.   All right.  And that was part of your job as a | | |
| | 9   supervisor doing these monthly reviews, correct? | | |

Deposition Testimony of Vince Bustillo

| PAGE & LINE | TESTIMONY | OBJECTION | ADMITTED |
|---|---|---|---|
| | 10    A.  Correct. | | |
| | 11    Q.  So from 2009 to 2011 -- so we've talked about | | |
| | 12  the weekly case briefings.  But from 2009 to 2011, you | | |
| | 13  also had the monthly case reviews that you, as a | | |
| | 14  supervisor, would do along with your superintendent, | | |
| | 15  Mr. Hoy, or whoever else was in that spot, right? | | |
| | 16    A.  Right. | | |
| 211:9-212:15 | 9    Q.  Okay.  Mr. Bustillo, we were looking at | | |
| | 10  Exhibit Number 5, which is the 71-121 instruction. | | |
| **JEX 5** | 11       If could you look at page 491, section 5.14 | | |
| | 12  that's entitled reporting CHD. | | |
| | 13    A.  Where?  The other direction.  Sorry. | | |
| | 14    Q.  It's going to say 491 on the bottom on right | | |
| | 15  there. | | |
| | 16    A.  Oh, okay. | | |
| | 17    Q.  And it's section 5.14.  Just let me know when | | |
| | 18  you get there. | | |
| | 19    A.  I'm there. | | |
| | 20    Q.  Oh, okay. | | |
| | 21       Under -- now, CHD stands for criminal history | | |
| | 22  data, just so -- is that your understanding?  You've | | |
| | 23  heard that phrase, criminal history data, before? | | |
| | 24    A.  Yes. | | |
| | 25    Q.  Okay.  This section, 5.14.1, states: "Unit | | |
| | 212 | | |
| | 1  leadership will ensure their units use the appropriate | | |
| | 2  fingerprint activity to obtain and validate subject's | | |
| | 3  fingerprints, check subject's CHD, submit subject's | | |

Deposition Testimony of Vince Bustillo

| PAGE & LINE | TESTIMONY | OBJECTION | ADMITTED |
|---|---|---|---|
|  | 4    fingerprints and ensure administrative identification<br>5    data are completed, accurate charges or citations are<br>6    listed, and dispositions to the FBI are completed."<br>7         Did I read that correctly?<br>8    A.   Yes.<br>9    Q.   So you -- you would be a part of unit<br>10   leadership.  That's what your job was -- part of your<br>11   job, correct?<br>12   A.   Yes.<br>13   Q.   And unit would include Detachment 225; is that<br>14   right?<br>15   A.   Right. |  |  |
| 213:4-22 | 4    Q.   So what is -- this is saying is that units --<br>5    Detachment 225 are -- need to coordinate with this --<br>6    the judge advocates at those bases as soon as possible<br>7    to determine probable cause assessment for actually<br>8    submitting these fingerprints to the FBI --<br>9         ~~MR. STERN:  Objection.~~<br>10   BY MR. STERN:<br>11   Q.   -- right?<br>12   A.   That's what this says.<br>13   Q.   Okay.  So then first you have the collection<br>14   process and then the instruction also says it's<br>15   imperative that the units coordinate with SJA as soon as<br>16   possible to determine probable cause for then submitting<br>17   those to the FBI, correct?<br>18        ~~MR. STERN:  Objection.~~<br>19   BY MR. ALSAFFAR: | Misstates evidence |  |

Deposition Testimony of Vince Bustillo

| PAGE & LINE | TESTIMONY | OBJECTION | ADMITTED |
|---|---|---|---|
| | 20    Q.  Is that right, according to this mandatory<br>21  instruction?<br>22    A.  The -- the instruction says that. | | |
| 218:20-25<br><br>**JEX 5** | 20    Q.  Okay.  Now, let's go to back to the<br>21  instruction, 71-121.  If you look at page 492 of<br>22  Exhibit 5, which is instruction 71-121, and if you look<br>23  at section 5.14.2, titled "military subject fingerprint<br>24  submission," are you there?<br>25    A.  Yes. | FRE 402 Relevance<br>(SJA<br>supervision/responsi-<br>bilities) | |
| 222:3-223:16 | 3    Q.  Okay.  Now, if you go back to 5.14.2, which is<br>4  page 492, and if you look at 5.14.2.11, it states:<br>5  "Within 15 calendar days after final disposition of<br>6  military judicial or nonjudicial proceedings or the<br>7  approval of a request for discharge, retirement or<br>8  resignation in lieu of court martial or a finding of<br>9  lack of mental competence to stand trial, disposition<br>10  information shall be reported on the R-84, or an<br>11  electronic data transfer equivalent, if it has not<br>12  already been reported on an FD-249.  Do not hold the<br>13  FD-249 or R-84 pending appellate actions."<br>14    Did I read that correctly?<br>15    A.  Yes.<br>16    Q.  So what this is stating is that within 15 days<br>17  of your detachment, or as a person in the Holloman Air<br>18  Force detachment when Devin Kelley was being<br>19  investigated, within 15 calendar days after you receive<br>20  notice of a final deposition, in this case conviction of | | |

Deposition Testimony of Vince Bustillo

| PAGE & LINE | TESTIMONY | OBJECTION | ADMITTED |
|---|---|---|---|
| | 21  a qualifying event, that information has to be reported | | |
| | 22  on the R-84 within 15 days, correct? | | |
| | 23      A.  As I understand it, yes. | | |
| | 24      Q.  All right.  And, in fact, it's this -- this | | |
| | 25  instruction and this -- and that's a "shall" there. | | |
| | 223 | | |
| | 1  There's no discretion. | | |
| | 2          You have to do it, right? | | |
| | 3      A.  Yes. | | |
| | 4      Q.  Okay.  And this instruction is also saying, | | |
| | 5  don't hold on to this fingerprint information, or R-84, | | |
| | 6  waiting appellate review, right? | | |
| | 7      A.  That's what it says, yes. | | |
| | 8      Q.  Okay.  So once you get the conviction, it | | |
| | 9  would be wrong if an agent says, you know what, I need | | |
| | 10  to hold on to. | | |
| | 11          This.  It would be a violation of this manual, | | |
| | 12  this mandatory instruction, if a agent said, you know | | |
| | 13  what, no, I have to hold on to this until I find out | | |
| | 14  what happens with the appealate process. | | |
| | 15          That would be a violation of this, right? | | |
| | 16      A.  That's correct. | | |
| 214:22-217:2 | 22      Q.  Okay.  And -- if we look at your statement | | |
| | 23  now, and your statement's right underneath there, the | | |
| **JEX 29** | 24  one that you gave to the IG, Exhibit Number 2 -- | | |
| | 25      A.  Uh-huh. | | |
| | 215 | | |
| | 1      Q.  -- you talk about a -- it seems like this is | | |

Deposition Testimony of Vince Bustillo

| PAGE & LINE | TESTIMONY | OBJECTION | ADMITTED |
| --- | --- | --- | --- |

2  kind of something that you talk a little bit about.
3  It's about this process of submission to the FBI.  If
4  you look at page 15682 --
5         MR. STERN:  Sorry.  What page?
6         MR. ALSAFFAR:  15682.
7  BY MR. ALSAFFAR:
8    Q.  And you -- you were being asked: "Do you
9  believe that there was any reason that Kelley's assault
10  investigation and conviction would not meet any
11  requirements to have fingerprints submitted?"
12         And your answer was: "No, because everyone --
13  I mean, there's a standard for printing somebody.  Are
14  you in a subject interview with him?  Yes.  Well, guess,
15  what?  You're going to print them."
16         Right?  So you're -- that is talking about
17  collecting the fingerprints, right?
18    A.  Yes.
19    Q.  Okay.  And if you look at the next page, 16 --
20  15683, the IG investigator asks you: "Now, thinking
21  about Kelley again, what was the decision process for
22  not submitting those fingerprints after the interview"?
23         And your answer was: "I don't think there
24  was."
25         And then you go on to say: "I don't think
                          216
1  there was.  I mean, there's -- there never is.  There
2  never is a decision process on whether or not to submit
3  fingerprints.  Like I said -- I mean, it's kind of an

Deposition Testimony of Vince Bustillo

| PAGE & LINE | TESTIMONY | OBJECTION | ADMITTED |
|---|---|---|---|
| | 4   automatic thing.  If you take prints, one set go to the<br>5   bureau.”<br>6         Did I read that correctly?<br>7    A.  Yes.<br>8    Q.  And -- and you were accurately telling them<br>9   the process at Holloman that you could remember while<br>10  you were doing the Devin Kelley investigation, correct?<br>11    A.  Yeah.  At that time, yes.<br>12    Q.  Okay.  And what you’re -- it sounds like what<br>13  you’re talking about -- let’s be clear for the record<br>14  here.<br>15         When you say, “if you take prints, one set go<br>16  to the bureau,” you’re talking about the FBI?<br>17    A.  Yes.<br>18    Q.  Okay.  And we had talked about this earlier,<br>19  in Devin Kelley’s case, we actually showed you -- SA<br>20  Holz actually took two cards.  One stays with and --<br>21  what you’re saying is, when you take the fingerprints,<br>22  one stays with and one goes to the bureau --<br>23    A.  Right.<br>24    Q.  -- right?<br>25         And you’re saying, there’s no decision<br>217<br>1   process.  If you take them, you send them.<br>2    A.  Pretty much. | | |
| 217:22-218:19 | 22         So that seems to be consistent when you were<br>23  talking to the IG, is what you just told me.  Is it --<br>24  you now, you collect fingerprints and then you’re | FRE 402 Relevance<br>(SJA | |

Deposition Testimony of Vince Bustillo

| PAGE & LINE | TESTIMONY | OBJECTION | ADMITTED |
|---|---|---|---|
| | 25   supposed to submit one to the FBI.  You don't ever | supervision/responsi-bilities) | |
| | 218 | | |
| | 1   coordinate with legal on that. | | |
| | 2      A.   Right. | | |
| | 3      Q.   Okay.  And that's how it was working at | | |
| | 4   Holloman when you were there? | | |
| | 5      ~~MR. STERN:   Objection.~~ | | |
| | 6      A.   (No verbal response.) | | |
| | 7   BY MR. ALSAFFAR: | | |
| | 8      Q.   Was that a yes? | | |
| | 9      A.   That's how I understood the process to be. | | |
| | 10  Whether or not agents conducted -- you know, submitted | | |
| | 11  those fingerprints, you know, based on that, you'd have | | |
| | 12  to ask the individual agents. | | |
| | 13     Q.   Right.  And I'm only asking you:  So you, as | | |
| | 14  the superintendent in charge of Holloman Air Force Base | | |
| | 15  from 2009 to 2011 -- what we just read from your | | |
| | 16  interview with the IG -- | | |
| | 17     A.   Right. | | |
| | 18     Q.   -- was how you understood it at that time? | | |
| | 19     A.   Right. | | |
| 219:19-220:18 | 19        5.14.2.1:  "For military members, submit the | | |
| | 20  FD-249 through the criminal fingerprint activity to the | | |
| | 21  FBI upon determination following coordination with the | | |
| | 22  servicing SJA and, as appropriate, civilian | | |
| | 23  prosecutorial authority, that probable cause exists to | | |
| | 24  believe the subject has committed an offense listed in | | |
| | 25  attachment 8.  The legal coordination will be documented | | |

Deposition Testimony of Vince Bustillo

| PAGE & LINE | TESTIMONY | OBJECTION | ADMITTED |
|---|---|---|---|
| | 220 | | |
| | 1   in I2MS." | | |
| | 2         Did I read that correctly? | | |
| | 3     A.  Yes. | | |
| | 4     Q.  Okay.  So my question is -- again, we're | | |
| | 5   seeing similar instruction in the manual that we read | | |
| | 6   earlier, about this legal coordination with SJA on | | |
| | 7   probable cause. | | |
| | 8         But your -- your memory of Holloman is that's | | |
| | 9   not how it was being done at Holloman when you were | | |
| | 10  there, correct? | | |
| | 11     A.  Correction. | | |
| | 12        ~~MR. STERN:  Objection.~~ | | |
| | 13     A.  Well -- | | |
| | 14  BY MR. ALSAFFAR: | | |
| | 15     Q.  Go ahead. | | |
| | 16     A.  Generally there's no coordination upon | | |
| | 17  entering or submitting fingerprints to the bureau. | | |
| | 18  They're just submitted. | | |
| 43:25-44:9 | 25         So what I was asking you was -- we're using | | |
| | 44 | | |
| | 1   Devin Kelley as an example.  So we can use any person | | |
| | 2   you're investigating as an example.  It really doesn't | | |
| | 3   matter. | | |
| | 4         Once the agent believes probable cause exists | | |
| | 5   for a qualifying offense in enclosure two after | | |
| | 6   consulting with the SJA, according to this instruction, | | |
| | 7   there is no discretion for the agent to then submit the | | |

Deposition Testimony of Vince Bustillo

| PAGE & LINE | TESTIMONY | OBJECTION | ADMITTED |
|---|---|---|---|
| | 8  fingerprints to the FBI; is that correct?<br>9      A.  That's correct.  And -- right. | | |
| 44:14-23 | 14      Q.  Okay.  So if you look a little down, just<br>15  paragraph E, it says -- second sentence, it says:<br>16  "FD-249 shall be submitted in accordance with this<br>17  instruction and final disposition will be recorded and<br>18  submitted using an FBI Department of Justice form, R-84<br>19  final disposition report."<br>20          Do you see that?<br>21      A.  Yes.<br>22      Q.  Okay.  Now, that's mandatory, correct?<br>23      A.  Yes. | | |
| 45:8-18 | 8      Q.  You were -- you were the agent -- supervisory<br>9  agent at the time when he was being investigated at your<br>10  outfit on Holloman, correct, the first time?<br>11      A.  I was the SAIC, yes, but I did not collect the<br>12  prints.<br>13      Q.  Okay.  And when you say "I was the SAIC," you<br>14  meant S- -- S-A-I-C -- S- --<br>15      A.  Special agent in charge, yes.<br>16      Q.  S-A-I-C, which means you were the supervising<br>17  agent in charge, correct?<br>18      A.  That's right. | | |
| 45:23-46:15 | 23      Q.  Okay.  And what this mandatory instruction is<br>24  talking about under "E" is, "once final disposition<br>25  occurs"... | | |

Deposition Testimony of Vince Bustillo

| PAGE & LINE | TESTIMONY | OBJECTION | ADMITTED |
|---|---|---|---|

<div align="center">46</div>

1  Now that means when the person is convicted or
2 pleads guilty, correct?
3    A.  Correct.
4    Q.  (continuing) -- then your outfit, your
5 Detachment 225 at Holloman, would receive a -- a final
6 disposition report of the plea or the conviction, at
7 that time, from the SJA's office, correct?
8    A.  That's correct.
9    Q.  And then the moment you receive that at your
10 detachment, you are then -- your detachment would be
11 required, under this instruction, to immediately send
12 the fingerprint card, FD-249, along with the final
13 disposition report of the conviction or plea, R-84,
14 directly to the FBI, correct?
15    A.  Correct --
16    ~~MR. STERN:  Objection.~~

---

**87:3-11**

3    Q.  Okay.  So what was the process at Holloman?
4 So we're talking -- again, I'm narrowing it to 2009,
5 2011.
6    What was your understanding of the process of
7 submitting just the fingerprints of folks you were
8 investigating once a probable cause determination was
9 made, that -- for a qualifying offense?
10    A.  As long as we had probable cause, then the
11 fingerprints would be submitted.

---

**51:1-9**

1    Q.  Okay.  If one of those folks that you

---

Deposition Testimony of Vince Bustillo

| Page & Line | Testimony | Objection | Admitted |
|---|---|---|---|
| | 2 investigated was then -- either pled guilty or was<br>3 convicted of a qualifying offense under this instruction<br>4 and then you receive notice of that conviction, you were<br>5 required, under this instruction, you -- the person you<br>6 were investigating, to submit the fingerprints card and<br>7 the final disposition report to the FBI, right?<br>8    A.  It was -- it was -- yes, it had to be<br>9 submitted. | | |
| 120:14-121:4 | 14    Q.  Okay.  What kind of -- did you -- when you<br>15 arrived at Holloman Air Force Base as the supervisor in<br>16 charge -- or special agent in charge, sorry, when you<br>17 arrived there, what, if anything, did you do in terms of<br>18 going over the various Air Force instructions and<br>19 manuals that apply to the criminal investigations that<br>20 you did at Holloman?<br>21    A.  That, I don't recall.  I don't recall going<br>22 over instructions specifically with my agents.  I mean,<br>23 they know how to read.  They were -- they -- they -- I<br>24 expect -- I had high expectations of them.  They're<br>25 adults.  I -- I shouldn't have to lead them.  When it<br>               121<br>1 comes to min- -- minute details --<br>2    Q.  Uh-huh.<br>3    A.  -- they should know these things.  So that was<br>4 my expectation. | FRE 402 Relevance<br>(training) | |
| 122:13-123:4 | 13    Q.  All right.  Did -- so did you or did you not<br>14 sit down with them and -- and -- and -- and... | FRE 402 Relevance<br>(training) | |

Deposition Testimony of Vince Bustillo

| PAGE & LINE | TESTIMONY | OBJECTION | ADMITTED |
|---|---|---|---|
| | 15      Like, for example, 71-121, which applies to<br>16  criminal investigations for AFOSI, did you say, listen,<br>17  does everyone understand what your duties are under this<br>18  instruction?  Do you know what you're supposed to do<br>19  when you're collecting fingerprints?  Do you know what<br>20  you're supposed to do when you're supposed to submit<br>21  fingerprints?  Do you know what you're supposed to do<br>22  when a conviction comes?<br>23      Did you ever have to sit down and explain that<br>24  to them?<br>25    A.  I may have.  I don't recall specifically doing<br>123<br>1  training on -- on that.<br>2    Q.  Uh-huh.<br>3    A.  It may have been a topic of conversation.  I<br>4  don't remember it. | | |
| 137:1-20 | 1    Q.  Okay.  Now, after you -- after you became the<br>2  special agent in charge at Holloman, did you do some --<br>3  were you responsible for doing the monthly reviews of<br>4  the particular special agent investigations?<br>5    A.  Myself and my superintendent, yes.<br>6    Q.  Okay.  And who was your superintendent?<br>7    A.  James Hoy.<br>8    Q.  Hoy.<br>9      And was he your superintendent the whole time<br>10  you were there at Holloman?<br>11    A.  No.<br>12    Q.  Okay.  Who else was your superintendent? | | |

Deposition Testimony of Vince Bustillo

| PAGE & LINE | TESTIMONY | OBJECTION | ADMITTED |
|---|---|---|---|
| | 13  A.  Greg Harper. | | |
| | 14  Q.  And Harper didn't last long, correct? | | |
| | 15  A.  No, sir. | | |
| | 16  Q.  Okay.  He wasn't a very good agent, was he? | | |
| | 17  A.  He wasn't a very good superintendent. | | |
| | 18  Q.  Okay.  So Mr. Harper was not a good | | |
| | 19  superintendent at Holloman? | | |
| | 20  A.  Correct. | | |
| 139:14-22 | 14      What if, in your review of a case file, you | | |
| | 15  noticed that an agent did not submit fingerprints or | | |
| | 16  convictions as -- you know, in accordance with the | | |
| | 17  mandatory instructions that we talked about, whose | | |
| | 18  responsibility would it be then to correct those | | |
| | 19  mistakes? | | |
| | 20  A.  If it was found? | | |
| | 21  Q.  Yes, sir. | | |
| | 22  A.  The -- the case agent. | | |
| 140:5-141:7 | 5  Q.  Okay.  The determination of probable cause is | | |
| | 6  made either by the agent or in conjunction with the SJA, | | |
| | 7  and the agent doesn't submit the fingerprints to the | | |
| | 8  FBI.  So that's happened. | | |
| | 9      You're now reviewing that file, let's say, at | | |
| | 10  the end of the month, because you do monthly reviews. | | |
| | 11  You're reviewing that file and you notice, oh, the | | |
| | 12  fingerprints should be submitted but they weren't. | | |
| | 13      What happens then? | | |
| | 14  A.  Case -- | | |

Deposition Testimony of Vince Bustillo

| PAGE & LINE | TESTIMONY | OBJECTION | ADMITTED |
|---|---|---|---|
| | 15   Q.  How do we correct that?<br>16   A.  The case agent -- the case file is brought to<br>17  the -- to the agent for correction.<br>18   Q.  Okay.  So you're supervising it monthly.  You<br>19  see an error in terms of the fingerprints not being<br>20  submitted when they should.<br>21     You go -- you then tell the case -- you go to<br>22  the case agent and say, you need to make sure this is<br>23  submitted?<br>24   ~~MR. STERN:  Objection.~~<br>25  BY MR. ALSAFFAR:<br>               141<br>1   Q.  Go ahead.  You can answer.<br>2   A.  If there's a -- if there's any mistake in the<br>3  report of investigation, it would be brought to the<br>4  attention of the case agent.<br>5   Q.  Okay.  So you would personally tell the case<br>6  agent, hey, this is a mistake here, you need to fix it?<br>7   A.  Yes. | | |
| 141:21-142:5 | 21    Q.  So that's kind of what we're trying to figure<br>22  out here.  And one of the things we're trying to learn<br>23  is -- I mean, are you aware -- are you -- I mean -- and<br>24  I don't know if you are.  I just don't know.<br>25     But are you aware that not only – that<br>               142<br>1  Holloman Air Force Base had a -- had a problem with not<br>2  submitting fingerprints and convictions of folks they<br>3  are investigating when they were required to? | | |

Deposition Testimony of Vince Bustillo

| PAGE & LINE | TESTIMONY | OBJECTION | ADMITTED |
|---|---|---|---|
| | 4    A.  I did not know that there was a problem at<br>5  Holloman Air Force Base. | | |
| 143:17-144:3 | 17    Q.  So is it fair for me to understand that -- you<br>18  know, sort of when you were the supervisor, the special<br>19  agent in charge at Holloman, you really didn't see that<br>20  there was any issue or any problems with fingerprint<br>21  submission and conviction submission to the FBI when you<br>22  were at Holloman for your agents?<br>23    A.  Again, I don't recall there being an issue --<br>24    Q.  Uh-huh.<br>25    A.   -- that was brought up regarding our<br>144<br>1  detachment.<br>2    Q.  Okay.<br>3    A.  I don't recall that. | | |
| 191:3-14 | 3    Q.  So you have -- when you say "we had weekly<br>4  case briefs," just so that our terminology, again, is on<br>5  the same playing field, case briefs are referring to<br>6  cases you're investigating?<br>7    A.  Yes.<br>8    Q.  Okay.  So that would include cases like Devin<br>9  Kelley's?<br>10    A.  Yes.<br>11    Q.  So you would have weekly case briefs going<br>12  over investigations with the -- the JAG at Holloman<br>13  while you were there, right?<br>14    A.  Yes. | FRE 402 Relevance<br>(SJA supervision) | |

Deposition Testimony of Vince Bustillo

| PAGE & LINE | TESTIMONY | OBJECTION | ADMITTED |
|---|---|---|---|
| 191:22-192:1 | 22    Q. Okay. I mean -- and that's all I'm asking.<br>23  Is this something that you-all did as much as you could?<br>24  You tried to do every single week and there's 52 weeks<br>25  in a year? So I'm saying approximately 50 times a year?<br>            192<br>1   A. That's the intent. | FRE 402 Relevance (SJA supervision/responsi-bilities) | |
| 193:7-17 | 7    Q. Okay. When you have -- had these weekly<br>8  meetings with the SJA, would you select which files<br>9  would be reviewed and which files would not be reviewed<br>10  in those meetings?<br>11    A. Generally the staff -- how the meetings went<br>12  were all the agents that were available for that day --<br>13    Q. Uh-huh.<br>14    A. -- had their cases with them. And they --<br>15  they each briefed the cases that they were working on.<br>16    Q. Okay.<br>17    A. And SJA was present, yeah. | FRE 402 Relevance (SJA supervision/responsi-bilities) | |
| 194:1-13 | 1    When you would have these weekly case<br>2  meetings, are these meetings that you would hold with<br>3  your special agents going on every active case -- going<br>4  through every active case to see where it was<br>5  progress-wise?<br>6    A. Yes.<br>7    Q. And you could provide oversight and give<br>8  your advice. Hey, here's what you need to do and that<br>9  kind of thing?<br>10    A. Yes. | FRE 402 Relevance (SJA supervision/responsi-bilities) | |

Deposition Testimony of Vince Bustillo

| PAGE & LINE | TESTIMONY | OBJECTION | ADMITTED |
|---|---|---|---|
| | 11    Q.  And the SJA would also be present at those<br>12  meetings?<br>13    A.  Yes. | | |
| 201:4-18 | 4    Q.  But if you're talking about you're supposed to<br>5  be doing case meetings every week with the SJA, so for<br>6  one year I'll say 49 to 50 times a year.  And then<br>7  during that 10-month year, obviously, you're only there<br>8  10 months.  That's about -- how many weeks in 10 months,<br>9  40 give or take?<br>10    A.  Sure, approximately.<br>11    Q.  So 35 or so case reviews during that year --<br>12    A.  Sure.<br>13    Q.  -- right?<br>14      So 85 during the time you're at Holloman for<br>15  weekly case reviews with the judge advocate.  And then<br>16  on top of that around 20 to 22 monthly supervisory<br>17  reviews of the cases as well, correct?<br>18    A.  Correct. | FRE 402 Relevance<br>(SJA<br>supervision/responsi-<br>bilities) | |
| 206:22-207:9 | 22    Q.  Okay.  And then if we look at the closed<br>23  investigation file checklist, who at the Holloman Air<br>24  Force Base would have been responsible for making sure<br>25  the closed investigation file checklist was done<br>              207<br>1  correctly?<br>2    A.  That'll be myself and Agent Hoy.<br>3    Q.  Okay.  So while you were -- it would be the<br>4  SAIC, or superintendent, that would be responsible for | | |

Deposition Testimony of Vince Bustillo

| PAGE & LINE | TESTIMONY | OBJECTION | ADMITTED |
|---|---|---|---|
| | 5   the closed investigation checklist, right? | | |
| | 6      A.   That's right. | | |
| | 7      Q.   Not an another agent.  It has to the | | |
| | 8   supervisory person, right? | | |
| | 9      A.   Yes. | | |
| 207:13-208:2 | 13      Q.   And then if you look at the closed | | |
| | 14   investigative case file, if you go to item 17, that also | | |
| | 15   has an item for the fingerprints that were collected, | | |
| | 16   correct, either high -- hard copy or I2MS-generated, | | |
| | 17   right? | | |
| | 18      A.   Yes. | | |
| | 19      Q.   So that's -- what that's saying is look and | | |
| | 20   make sure that that is also looked at and, if necessary, | | |
| | 21   send to the FBI? | | |
| | 22      A.   Yes. | | |
| | 23      Q.   And then 18 specifically is for R-84, the | | |
| | 24   reporting of the conviction, if there is one, to the | | |
| | 25   FBI.  Make sure that if there is one, that that has been | | |
| | 208 | | |
| | 1   actually done -- | | |
| | 2      A.   Yes. | | |
| 208:16-24 | 16      Q.   Well, whether or not it would lock it out, | | |
| | 17   like physically lock it out, what this checklist is for, | | |
| | 18   under this mandatory instruction, is to tell agents who | | |
| | 19   are supervisors, you need to go through and check off | | |
| | 20   these checklists that are applicable. | | |
| | 21         And you can't close this file until those | | |

Deposition Testimony of Vince Bustillo

| PAGE & LINE | TESTIMONY | OBJECTION | ADMITTED |
|---|---|---|---|
| | 22  things are done, right? | | |
| | 23      A.  Until this -- yes, until this case file is -- | | |
| | 24  I mean, until this checklist is completed. | | |
| 233:20-235:4 | 20      Q.  Uh-huh.  So if you -- let's say you arrest | FRE 702 Improper Opinion | |
| | 21  somebody for whatever.  Let's say they were speeding or | | |
| | 22  they were drunk driving and they have a gun in the car | | |
| | 23  and you do a background check and -- and -- and you find | | |
| | 24  out that that person is a convicted felon and shouldn't | | |
| | 25  be allowed to have a weapon.  That would be something | | |
| | 234 | | |
| | 1  that would be important for you to know, wouldn't it? | | |
| | 2      A.  Yes. | | |
| | 3      Q.  Okay.  And -- and, in fact, you would then | | |
| | 4  know, well, listen, if this -- this purchase may have | | |
| | 5  been illegal and that, in and of itself, could | | |
| | 6  enhance -- that could be a crime in and of itself, if a | | |
| | 7  person has a gun and they are in the FBI background | | |
| | 8  check system. | | |
| | 9        That could be a crime in and of itself, right? | | |
| | 10      ~~MR. STERN:  Objection.~~ | | |
| | 11      A.  The -- your question is, whether or not a | | |
| | 12  weapon found on an individual who's a convicted felon -- | | |
| | 13  BY MR. ALSAFFAR: | | |
| | 14      Q.  Yep. | | |
| | 15      A.  -- could be an additional charge? | | |
| | 16      Q.  Yes. | | |
| | 17      A.  That's an additional charge. | | |
| | 18      Q.  Right. | | |

Deposition Testimony of Vince Bustillo

| PAGE & LINE | TESTIMONY | OBJECTION | ADMITTED |
|---|---|---|---|
| | 19    And so that would be helpful safety -- helpful<br>20  in terms of the safety to the public, because then --<br>21  because of the -- information was correctly reported to<br>22  the FBI, you were able to look it up and you found a<br>23  guy -- a person with a gun who's not supposed to have<br>24  one.<br>25    You are now able to actually add an additional<br><div align="center">235</div>1  charge and maybe put that person in jail for a longer<br>2  time period because they were in illegal possession of a<br>3  gun, right?<br>4    A.  That's typically how it works, yeah. | | |
| 244:7-21 | 7    Q.  Nobody at the Air Force region command, no one<br>8  has ever come back and said:  Let me tell you what<br>9  happened with someone you were investigating.  This guy<br>10  was not only interviewed and detained by your Air Force<br>11  detachment, he was eventually convicted of a serious<br>12  felony, of abusing his wife and abusing a child.  He<br>13  served time.  He was released.  He should have been<br>14  reported to the FBI.  He wasn't.  And then he went on<br>15  multiple occasions just to a federally farmed [sic]<br>16  dealer, bought guns no problem, and then killed a bunch<br>17  of people.<br>18    Nobody at the Air Force ever sat you down and<br>19  explained what happened?<br>20    ~~MR. STERN:  Objection.~~<br>21    A.  No. | FRE 402 Relevance | |

Deposition Testimony of Vince Bustillo

| PAGE & LINE | TESTIMONY | OBJECTION | ADMITTED |
|---|---|---|---|

### PLAINTIFFS' COUNTER-DESIGNATIONS

| PAGE & LINE | TESTIMONY | OBJECTION | ADMITTED |
|---|---|---|---|
| 57:9-19 | 9 specifically know what date was my last duty day.<br>10 If I had to guess, it probably would be a week<br>11 prior, because it doesn't take that long to out-process,<br>12 turning in your -- your -- your weapon, your badge and<br>13 credentials, and then taking care of business on base to<br>14 out-process. It doesn't take that long.<br>15 Q. Okay. So sometime around July 26, 2011, you<br>16 think, was the last time you would have been sort of<br>17 operationally involved on the day-to-day activities<br>18 of --<br>19 A. I would say a week before that. | | |
| 103:5-12 | 5 Q. So when you were at -- you were in the Air<br>6 Force, region two is where -- Holloman Air Force Base<br>7 was -- was under region two, correct?<br>8 A. Yes.<br>9 Q. Okay. And so when you were working at region<br>10 two was -- New Mexico and Holloman Air Force Base one of<br>11 the commands under region two?<br>12 A. Yes. | | |
| 106:21-108:3 | 21 Q. I want to make sure we're -- we're using the | | |

Deposition Testimony of Vince Bustillo

| PAGE & LINE | TESTIMONY | OBJECTION | ADMITTED |
| --- | --- | --- | --- |

22 same, because when I've been using report -- I've been

23 kind of using submission/report synonymously. And it

24 looks like you're making a distinction.

25 Is that fair to say?

<div align="center">107</div>

1 A. It's a distinction, yes, sir.

2 Q. Okay. So let's use the definition that you're

3 most -- you're comfortable with based on your

4 understanding and training by the Air Force.

5 Submission means what to you, when we're

6 talking about fingerprints?

7 A. Submission means sending them to the FBI.

8 Q. And reporting means what to you?

9 A. In general terms, reporting means, calling

10 them and notifying them that something occurred.

11 Q. Okay. Okay. Got it.

12 So for you -- it sounds like there's actually

13 a process difference in your mind when you -- and I'm

14 talking in your mind as a special agent when you were at

15 Holloman Air Force Base.

16 There is a process distinction between

17 submitting a fingerprint and reporting a fingerprint; is

18 that fair to say? Those are two different things --

19 A. That's fair to say, because one doesn't exist.

Deposition Testimony of Vince Bustillo

| PAGE & LINE | TESTIMONY | OBJECTION | ADMITTED |
|---|---|---|---|
| | 20 And -- and the way I understand it, there is no<br>21 notifying the FBI.<br>22 Q. Okay. So the process in place that your<br>23 understanding of -- for fingerprints and getting that<br>24 information to the FBI, the process in place was a<br>25 submission process of putting it in the mail to send to<br><div align="center">108</div>1 the FBI? When you were at Holloman Air Force that was<br>2 your understanding, correct?<br>3 A. Yes, sir. | | |
| 108:9-18 | 9 Q. -- when you were at Holloman? Okay.<br>10 So the only -- the only process in place that<br>11 you were operating under as a supervisory and as an SA<br>12 at Holloman was the actual submission via mail to the<br>13 FBI of those fingerprints?<br>14 A. Yes.<br>15 Q. And that's also true for the con- --<br>16 conviction, correct, you didn't report to the FBI, you<br>17 submitted to the FBI via mail?<br>18 A. Yes, sir. | | |
| 127:22-128:1 | 22      Q.  I think you accidentally said region six, but<br>23   you meant region two?<br>24      A.  I mean, region -- yeah, I'm sorry. | | |

Deposition Testimony of Vince Bustillo

| PAGE & LINE | TESTIMONY | OBJECTION | ADMITTED |
|---|---|---|---|
| | 25 | | |
| | 1 A. Yeah, region two. | | |
| 180:13-25 | 13    Q.  No, no, no, no.  What I'm saying is that you<br>14  had this information about the child when you were<br>15  bringing Devin Kelley in for the interview on June<br>16  9th --<br>17    A.  Yes.<br>18    Q.  -- right?<br>19      Okay.  And so when he shows up and -- and he<br>20  vomits right when he gets into the interview room and<br>21  then he says he needs to do it -- vomit again, you<br>22  already knew that this child I'm asking you about has<br>23  been to the hospital three times in the last week and<br>24  now has bruising on his face?<br>25    A.  Yes.  I had this information. | | |
| 181:19-182:18 | 19    Q.  So at this point, when you're making this<br>20  affidavit to the judge, this -- and this is a probable<br>21  cause search and seizure affidavit; is that right?<br>22    A.  Yes.<br>23    Q.  Okay.  At this moment that you're making this<br>24  affidavit to the judge, you have -- you have interviewed<br>25  Devin Kelley, correct?<br>                  182 | | |

Deposition Testimony of Vince Bustillo

| PAGE & LINE | TESTIMONY | OBJECTION | ADMITTED |
|---|---|---|---|
| | 1    A.  (No verbal response.) | | |
| | 2    Q.  Right? | | |
| | 3    A.  Yes. | | |
| | 4    Q.  Sorry.  You nodded your head. | | |
| | 5    A.  I'm sorry. | | |
| | 6    Q.  I want to get a verbal -- | | |
| | 7    A.  Sorry, yes. | | |
| | 8    Q.  Devin Kelley had vomited in -- in either you | | |
| | 9  or the special agent's presence and -- among [sic] | | |
| | 10  entering into a interrogation room, right? | | |
| | 11    A.  Yes. | | |
| | 12    Q.  Almost maybe even vomited twice.  Said he was | | |
| | 13  sick a second time, correct? | | |
| | 14    A.  Yes. | | |
| | 15    Q.  All right.  And you had -- you knew at this | | |
| | 16  point that the child had been to the ER three times in | | |
| | 17  the last week, correct? | | |
| | 18    A.  Yes. | | |
| 184:5-11 | 5    Q.  So at this point, you knew that the child had | | |
| | 6  suffered a brain bleed.  The child had been sent to the | | |
| | 7  hospital three times in the last week.  That the child | | |
| | 8  had -- had markings on its face, right, that were | | |
| | 9  consistent with either a fall or a severe blow to the | | |

Deposition Testimony of Vince Bustillo

| PAGE & LINE | TESTIMONY | OBJECTION | ADMITTED |
|---|---|---|---|
| | 10  head -- | | |
| | 11    A.  Right. | | |
| 237:12-22 | 12    Q.  Okay.  So it sounds to me like at the time you | | |
| | 13  were investigating Devin Kelley and looking at his file | | |
| | 14  to see if cards needed to be submitted to the FBI or | | |
| | 15  not, you weren't aware that one of the consequences of | | |
| | 16  submitting these cards and convictions to the FBI was | | |
| | 17  that person you're submitting on would not be able to | | |
| | 18  purchase a firearm at a federally-licensed dealership -- | | |
| | 19  dealer? | | |
| | 20    A.  You're asking me from my personal knowledge? | | |
| | 21    Q.  Whether you were aware of that. | | |
| | 22    A.  I was not aware of that. | | |
| 242:10-243:9 | 10    Q.  And do you know, is it -- has anyone from the | | |
| | 11  government told you that the way Devin Kelley tried to | | |
| | 12  get weapons, the way that he demonstrated on five, six | | |
| | 13  different occasions after he was con- -- after he was | | |
| | 14  arrested for a felony and even after he was convicted | | |
| | 15  was to simply go to a gun store, a federally-licensed | | |
| | 16  gun store, and buy one there?  That that's what this | | |
| | 17  particular felon chose to get guns? | | |
| | 18      Has anyone ever told you that? | | |
| | 19    A.  No.  No one's ever -- | | |

Deposition Testimony of Vince Bustillo

| PAGE & LINE | TESTIMONY | OBJECTION | ADMITTED |
|---|---|---|---|
| | 20      Q.  He didn't go to a black market.  He didn't go | | |
| | 21   to a family relative.  He didn't go to somebody he knew. | | |
| | 22   He didn't go to some gun dealer, you know, off the | | |
| | 23   street.  He went time and time and time again to a | | |
| | 24   federally-licensed gun dealer. | | |
| | 25         Did you know that? | | |
| | 243 | | |
| | ~~1         MR. STERN:  Objection.~~ | | |
| | 2      A.  I did not know that. | | |
| | 3   BY MR. ALSAFFAR: | | |
| | 4      Q.   Did you know that the gun he used to murder my | | |
| | 5   clients and murder all these people in this church was | | |
| | 6   purchased at a federally-firearm -- federally-licensed | | |
| | 7   firearms dealer? | | |
| | ~~8         MR. STERN:  Objection.~~ | | |
| | 9      A.  No, I don't know that. | | |
| 253:15-19 | 15      Q.  So if a case agent thought he or she didn't | | |
| | 16   need advice from SJA, it was perfectly within their | | |
| | 17   authority to make a probable cause determination on | | |
| | 18   their own, correct? | | |
| | 19      A.  Yes, sir. | | |
| 268:24-269:3 | 24      Q.  And how long were those meetings typically? | | |
| | 25      A.  About an hour. | | |

Deposition Testimony of Vince Bustillo

| PAGE & LINE | TESTIMONY | OBJECTION | ADMITTED |
|---|---|---|---|
| | 269 | | |
| 1 | Q.  And those happened how often? | | |
| 2 | A.  Every week. | | |
| 3 | Q.  Every week. | | |

Respectfully Submitted,

/s/ Jamal K. Alsaffar
**Jamal K. Alsaffar**
JAlsaffar@nationaltriallaw.com
Texas Bar No. 24027193
**Tom Jacob**
TJacob@nationaltriallaw.com
Texas Bar No. 24069981
**Whitehurst, Harkness, Brees, Cheng, Alsaffar & Higginbotham & Jacob PLLC**
7500 Rialto Blvd, Bldg. Two, Ste 250
Austin, TX 78735
Office 512-476-4346
Fax 512-476-4400
Counsel for Vidal, McKenzie, Solis, McNulty, and Wall

/s/ Jason P. Steed
**Jason P. Steed**
JSteed@kilpatricktownsend.com
Texas Bar No. 24070671
**Kilpatrick Townsend & Stockton LLP**
2001 Ross Avenue, Suite 4400
Dallas, TX 75201
Office 214-922-7112
Fax 214-853-5731
Counsel for Vidal, McNulty, and Wall

/s/ April A. Strahan
**April A. Strahan**
april@ammonslaw.com
Texas Bar No. 24056387
**Robert E. Ammons**
rob@ammonslaw.com
Texas Bar No. 01159820
**The Ammons Law Firm**
3700 Montrose Blvd.
Houston, TX 77006
Office 866-523-1603
Fax 713-523-4159
Counsel for Holcombe, Ramsey, Curnow & Macias

/s/ Daniel J.T. Sciano
**Daniel J.T. Sciano**
DSciano@tsslawyers.com
Texas Bar No. 17881200
**Tinsman & Sciano**
10107 McAllister Freeway
San Antonio, TX 78216
Office 210-225-3121
Fax 210-225-6235
Counsel for Amador

/s/ Daniel Barks
**Daniel D. Barks,** *pro hac vice*
ddb@speiserkrause.com
**Speiser Krause, P.C.**
5555 Glenridge Connector, Suite 550
Atlanta, GA 30342
Office 571-814-3344
Fax 866-936-6382
Counsel for Holcombe

/s/ Mark Collmer
**Mark W. Collmer**
mark@collmerlaw.com
Texas Bar No. 04626420
**Collmer Law Firm**
3700 Montrose
Houston, TX 77006
Office 713-337-4040
Counsel for Holcombe

/s/ Dennis Peery
**Dennis Charles Peery**
d.peery@tylerpeery.com
Texas Bar No. 15728750
**R. Craig Bettis**
cbettis@tylerpeery.com
Texas Bar No. 24040518
**Tyler & Peery**
5822 West IH 10
San Antonio, TX 78201
Office 210-774-6445
Counsel for Uhl

/s/ George LeGrand
**George LeGrand**
tegrande@aol.com
Texas Bar No. 12171450
**Stanley Bernstein**
Texas Bar No. 02225400
**LeGrand & Bernstein**
2511 N. Saint Mary's St.
San Antonio, Texas 78212
Office 210-733-9439
Fax 510-735-3542
Counsel for Wall & Solis

/s/ Justin Demerath
**Justin Demerath**
jdemerath@808west.com
Texas Bar No. 24034415
**O'Hanlon, Demerath & Castillo**
808 West Ave.
Austin, TX 78701
Office 512-494-9949
   Counsel for Corrigan, Braden,
   Warden, Stevens, Pachal, McCain, &
   Poston

/s/ Tim Maloney
**Tim Maloney**
Texas Bar No. 12887380
timmaloney@yahoo.com
**Paul E. Campolo**
pcampolo@maloneyandcampolo.com
Texas Bar No. 03730150
**Maloney & Campolo, L.L.P.**
926 S. Alamo
San Antonio, TX 78205
Office (210) 465-1523
Counsel for Ramsey

/s/ Joseph M. Schreiber
**Joseph M. Schreiber**
joe@lawdoneright.net
Texas Bar No. 24037449
**Erik A. Knockaert**
erik@lawdoneright.net
Texas Bar No. 24036921
**Schreiber | Knockaert, PLLC**
701 N. Post Oak Rd., Suite 325
Houston, TX 77024
Phone (281) 949-8904
Fax (281) 949-8914
Counsel for Brown

/s/ Jason Webster
**Jason Webster**
jwebster@thewebsterlawfirm.com
Texas Bar No. 24033318
**The Webster Law Firm**
6200 Savoy
Suite 640
Houston, TX 77036
   Counsel for Lookingbill

<u>/s/ Brett Reynolds</u>
**Brett T. Reynolds**
btreynolds@btrlaw.com
Texas Bar No. 16795500
**Brett Reynolds & Associates, P.C.**
1250 N.E. Loop 420, Suite 420
San Antonio, TX 78219
(210)805-9799
   Counsel for Workman, Colbath, and
   Harris

<u>/s/ Hugh J. Plummer</u>
**Hugh J. Plummer**
hplummer@thomasjhenrylaw.com
**Law Office of Thomas J. Henry**
4715 Fredricksburg
San Antonio, TX 78229
(210) 585-2151
(361) 985-0601 (fax)
   Counsel for McMahan

<u>/s/ Craig Carlson</u>
**Craig Carlson**
ccarlson@carlsonattorneys.com
**Philip Koelsch**
pkoelsch@carlsonattorneys.com
**Joe Craven**
jcraven@carlsonattorneys.com
**The Carlson Law Firm**
100 E Central Texas Expy
Killeen, TX 76541
254-526-5688
   Counsel for Rios

<u>/s/ Marion M. Reilly</u>
Marion M. Reilly
**Hilliard Munoz Gonzales, L.L.P.**
719 S. Shoreline - Ste 500
Corpus Christi, TX 78401
(361) 882-1612
361/882-3015 (fax)
marion@hmglawfirm.com
   Counsel for McMahan

<u>/s/ Kelly W. Kelly</u>
**Kelly W. Kelly**
**Anderson & Associates Law Firm**
2600 SW Military Drive, Suite 118
San Antonio, TX 78224
(210) 928-9999
(210) 928-9118 (fax)
kk.aalaw@yahoo.com
   Counsel for Ward

## CERTIFICATE OF SERVICE

I certify that the foregoing was filed through the Court's CM/ECF system on March 12, 2021, and the following counsel for the United States have received notice and been served through that system.

/s/ Jamal K. Alsaffar

**Jamal K. Alsaffar**

BRIAN BOYNTON
Acting Assistant Attorney General
Civil Division

ASHLEY C. HOFF
United States Attorney
Western District of Texas

KIRSTEN WILKERSON
Assistant Director, Torts Branch
United States Dept. of Justice
Civil Division

PAUL DAVID STERN
Trial Attorney, Torts Branch
United States Dept. of Justice
Civil Division

CLAYTON R. DIEDRICHS
Assistant United States Attorney

JIM F. GILLIGAN
Assistant United States Attorney

KRISTIN K. BLOODWORTH
Assistant United States Attorney

JOHN PANISZCZYN, Civil Chief
United States Attorney's Office
Western District of Texas

JAMES G. TOUHEY, JR.
Director, Torts Branch
United States Dept. of Justice
Civil Division

STEPHEN E. HANDLER
Senior Trial Counsel, Torts Branch
United States Dept. of Justice
Civil Division

STEPHEN TERRELL
Trial Attorney, Torts Branch
United States Dept. of Justice
Civil Division

JAMES E. DINGIVAN
Assistant United States Attorney

JACQUELYN M. CHRISTILLES
Assistant United States Attorney