1          IN THE UNITED STATES DISTRICT FOR
             THE WESTERN DISTRICT OF TEXAS
2               SAN ANTONIO DIVISION

3

   JOE HOLCOMBE, et al.,   :
4                          :
         Plaintiffs,       :
5                          :
   v.                      :No:
6                          :5:18-CV-00555-XR
   UNITED STATES OF        :
7   AMERICA,               :
                           :
8        Defendant.        :

9

10

11          VIDEOTAPED DEPOSITION OF
              COLONEL OWEN W. TULLOS
12

13

14        Wednesday, December 4, 2019
                  1:33 p.m.
15

16

17        United States Attorney's Office
        United States Department of Justice
18          175 N Street, Northeast
         Three Constitution Square
19            Washington, D.C.

20        Noojan Ettehad, Videographer
         Terry L. Bradley, Court Reporter
21

22

PEX 0106-0001



PEX
106

800.211.DEPO (3376)
EsquireSolutions.com

```
 1                    COLONEL OWEN TULLOS,

 2    having been first duly sworn, testified as

 3    follows:

 4

 5                    EXAMINATION

 6    BY MR. ALSAFFAR:

 7        Q.    Can you please state your name for

 8    the record.

 9        A.    Owen Tullos.

10        Q.    Could you spell your name.

11        A.    O-W-E-N, T-U-L-L-O-S.

12        Q.    And can you please tell me your

13    rank.

14        A.    Colonel in the United States Air

15    Force.

16        Q.    Colonel Tullos, thank you for being

17    here, and thank you for your service as well.
```

**PEX 0106-0002**



                    .

14              Can you please tell us right now

15    what your current station is.

16        A.    I'm stationed at Quantico Marine

17    Corps Base with the OSI.

18        Q.    With the OSI?

19        A.    Yes.

20        Q.    And if you had to describe, what is

21    your job?

22        A.    I'm the Staff Judge Advocate for the

**PEX 0106-0003**



1    Headquarters, Air Force OSI.

2        Q.    So you're the Staff Judge Advocate

3    for the Air Force OSI stationed at Quantico,

4    the Headquarters, correct?

5        A.    Yes.

**PEX 0106-0004**



6        Q.    Okay.  And where were you before

7    that?  Before Langley.

8        A.    Before Langley I was at Holloman Air

9    Force Base, New Mexico, as the Staff Judge

10   Advocate for the 49th Wing.

11       Q.    Okay.

12       A.    And I was there from 2012, July of

13   2012 to July of 2014.

**PEX 0106-0005**



```
 1        Q.    All right.  And just like with the
 2    prior questions, let me ask them for this time
 3    period.  While you were the Staff Judge
 4    Advocate at Holloman Air Force Base, were you
 5    responsible for military -- in part -- military
 6    criminal investigations, overseeing those, and
 7    also overseeing and prosecuting those crimes
 8    for military members?
 9        A.    Yes.
10        Q.    And in pursuing and following your
11    job duties at Holloman Air Force Base, were you
12    responsible for knowing and understanding the
13    various Department of Defense instructions and
14    Air Force instructions and manuals that apply
15    to criminal investigations of military members
16    while you were there?
17        A.    Generally, yes.
```

**PEX 0106-0006**



3      Q.    Okay.  Now, so fair for me to

4   understand that as a Staff Judge Advocate at

5   Holloman Air Force Base during the time that

6   Devin Kelley was being investigated, you were

7   not yourself an employee responsible for

8   reporting to the FBI NICS database?

9      A.    That's correct.

19     Q.    Okay.  If you were consulted on

20  those questions, were you required -- while you

21  were at Holloman Air Force Base -- to be

22  familiar with the various instructions and

**PEX 0106-0007**



1   manuals that applied to reporting to the FBI?

2        A.    Yes.

3        Q.    Okay.  And did you do that when you

4   were there?  Familiarize yourself with those

5   instructions and manuals.

6        A.    Generally.

**PEX 0106-0008**



```
20      Q.      You understand you're under oath?

21      A.      Yes.

22      Q.      You understand the penalties of
```

**PEX 0106-0009**



1    perjury apply?

2         A.    Yes.

3         Q.    You understand it's the same oath as

4    if you were in a courtroom sitting on the

5    witness stand next to the Judge?

6         A.    Yes.

**PEX 0106-0010**



```
12        Q.    Okay.  Um, one of the questions I

13   don't think I asked you as it related to your

14   service as a Staff Judge Advocate, did you

15   have -- this is at Holloman Air Force Base

16   during Devin Kelley's investigation and

17   conviction -- did you have a supervisory role

18   as Staff Judge Advocate?

19        A.    Did I supervise other attorneys?

20        Q.    Yes.

21        A.    Yes.
```

**PEX 0106-0011**



4      Q.    Okay.   And that's what actually my

5   question was.   You did not have any formal

6   training that you can remember, that you can

7   recall from the Air Force on how to train or --

8   either Judge Advocates or yourself -- on the

9   determination of probable cause for submission

10   of fingerprint data to the FBI?

11      A.    For that limited purpose that's

12   correct.

17      Q.    So you do remember having general

18   probable cause training in terms of the law

19   generally, correct?   But you don't recall

20   having any training from the Air Force or

21   providing any training to your subordinates

22   relating to determination of probable cause for

**PEX 0106-0012**



```
1   the collection and submission of fingerprint

2   data on military members?

3       A.    I think that's fair.

4       Q.    That's fair?

5       A.    Yes.

6       Q.    So it's a correct statement?

7       A.    Yes.
```

**PEX 0106-0013**



7       Q.    Okay.  So your office Assistant

8   Judge Advocates or Assistant Staff Judge

9   Advocates would hold weekly meetings with OSI

10  separately and also 49th Security Forces

11  separately, correct?

12      A.    Yes.  And I don't recall whether it

13  was weekly with Security Forces.  Sometimes

14  they didn't have as many cases.

15      Q.    Okay.  And would those meetings

16  involve in part reviewing active case files

17  that the agents at OSI and Security --

18            -- 49th Security Forces were

19  actively investigating?

20      A.    Yes.

21      Q.    Okay.  And that would include Devin

22  Kelley's case, correct?

**PEX 0106-0014**



1        A.      Yes.

**PEX 0106-0015**



```
 6        Q.    Okay.  And so just for the record,

 7   you've come across DODI 5505.11 many times in

 8   your career?

 9        A.    Well, no.  A number of times.

10        Q.    A number.  I'm sorry.

11        A.    And I would say that --

12              A number of times.
```

**PEX 0106-0016**



11              Okay.  So let's look at page --

12              -- the first page, which is USA1806.

13      Now first of all -- and please look at it --

14      but DOD 5505.11 is a mandatory instruction.  Is

15      that correct?

16         A.    Yes.

17         Q.    Okay.  And that means that to the

18      extent that these apply to various folks within

19      the Air Force specifically, and investigating

20      military members, the instructions in here mean

21      you have to follow them.  You don't have any

22      discretion to not follow these rules, correct?

**PEX 0106-0017**

```
1        A.    That's correct.

2        Q.    Okay.

3              I'm sorry.  What was the answer?

4        A.    That's correct.
```

**PEX 0106-0018**



800.211.DEPO (3376)
EsquireSolutions.com

```
 7            And you can look if you want, if you

 8    flip to Page 1811 of the instruction, and go to

 9    No. 33.  Article 128 - Assault, is one of the

10    listed reportable offences in Enclosure 2 of

11    this mandatory instruction.  Is that right?

12        A.    Yes.

13        Q.    Okay.  And that's the charge that

14    Devin Kelley was charged with and also

15    convicted on, correct?

16        A.    Yes.
```

**PEX 0106-0019**



6      Q.    Okay.  So there will be some

7    instances where the -- it's my understanding,

8    but I want you to tell me your understanding --

9    in some instances a law enforcement

10   investigator like an OSI or 49th Security

11   Forces investigator can make their own

12   determination of probable cause to submit

13   fingerprints to the FBI.

14      A.    Yes, that's correct.

17           I believe you said they were weekly

18   meetings with the Judge Advocates and the

19   agents and the law enforcement organization of

20   OSI and 49th Security Wing.  Do you remember

21   that?

22      A.    Yes.

**PEX 0106-0020**



```
12        Q.    So your definition or understanding

13   of the definition of probable cause is a

14   reasonable grounds exists that a crime could

15   have occurred or that evidence to investigate a

16   crime is available?

17        A.    That a crime did occur.

18        Q.    Okay.

19        A.    And that evidence exists and is in a

20   location as it pertains to a warrant.
```

**PEX 0106-0021**



21      Q.    Let's look at (e)on Document 1806.

22   And it states that FD-249, which is the

**PEX 0106-0022**



```
 1    conviction --


 3           So first, FD-249 is actually the

 4    fingerprint card, correct?

 5        A.    Okay.










14           Next sentence:  FD-249 shall be

15    submitted in accordance with this instruction,

16    and final disposition will be recorded and

17    submitted using an FBI/Department of Justice

18    Form R-84, Final Disposition Report.

19           You see that?

20        A.    Yes.

21        Q.    And what is your understanding of

22    who is required under --
```

**PEX 0106-0023**



1          First of all, that's a mandatory

2    requirement under this instruction, correct?

3          (Witness nodded.)

4          That "shall".

5      A.    Yes.

PEX 0106-0024



COLONEL OWEN W. TULLOS                    December 04, 2019
JOE HOLCOMBE vs UNITED STATES                         107

```
1        Q.    Okay.  So going back to what we were

2    talking about in terms of confirmation, I

3    assume that weekly meetings still occurred

4    between the Staff Judge Advocate's office and

5    the agents even after Devin Kelley was

6    convicted, correct?

7        A.    Yes.

8        Q.    All right.  Is one of the

9    operational issues that you are or were

10   concerned about as an SJA, was that the right

11   agents in the 49 h and the AFOSI were receiving

12   these conviction notices?

13             MR. FURMAN:  Objection to form.

14             You can answer.

15             THE WITNESS:  I'm trying to make

16   sure I understood your question.

17             MR. ALSAFFAR:  Sure.

18             THE WITNESS:  Was part of my concern

19   that they received those?

20             MR. ALSAFFAR:  Yes.

21             THE WITNESS:  Yes.
```

**PEX 0106-0025**



14      Q.    Is one of those reasons that

15   convicted criminals who meet qualifying

16   offences don't get their hands on dangerous

17   weapons?

18      A.    Yes, it is.

21      Q.    Okay.  And is the reason that we

22   don't want criminals who have been convicted of

**PEX 0106-0026**



1  qualifying offences to get guns, is one of the

2  reasons they've demonstrated their willingness

3  to break the law first, correct?  Is that fair?

4       A.    As a society, yes, that's fair.

16       Q.    Okay.  Right.  It's one of the

17  things we can do to prevent dangerous people

18  from having guns that could increase the risk

19  of harm to the public generally, fair?

20       A.    That's a fair society interest, and

21  we're interested in that as well.

**PEX 0106-0027**



10          Would you agree that the conviction

11   of Devin Kelley was a dangerous crime?

12        A.    Yes.

13        Q.    You agree that the crime he

14   committed was a qualifying offence to be

15   reported, and if he goes to a federal firearms

16   licensee he should be denied access to weapons,

17   correct?

18        A.    Yes, that's correct.

**PEX 0106-0028**



```
 1              Would you agree that when these

 2   dangerous criminals are convicted and reported

 3   and denied access to firearms, that we are

 4   increasing the safety to the general public?

 5              MR. FURMAN:  Objection to form.

 6              THE WITNESS:  Yes.


 8     Q.    Would you also agree that if a

 9   dangerous criminal like Devin Kelley, who's

10   been convicted of a qualifying offence that

11   would deny him access to firearms, that if that

12   is not reported, those convictions are not

13   reported, and people like Devin Kelley do get

14   access to firearms, that increases the risk of

15   harm to the general public?

16              MR. FURMAN:  Objection to form.

17   BY MR. ALSAFFAR:

18     Q.    Do you agree with that?

19     A.    Yes, it could.  And I --

20              It could, yes.
```

**PEX 0106-0029**



1        Q.    But the reason why we have those

2   rules in place, one of the reasons to report

3   dangerous criminals like Devin Kelley to the

4   FBI, is that if we don't do that we could be

5   increasing the risk of harm to the public

6   generally, correct?

7             MR. FURMAN:  Objection to form.

8             MR. ALSAFFAR:  Is that fair?

9             THE WITNESS:  That's a fair

10  statement.  Yes.

**PEX 0106-0030**



14          Let me move your attention, we'll

15   skip ahead on this Document.  1815 of --

16          It's Enclosure 4, Procedures of DODI

17   instruction 5505.11.  I draw your attention to

18   No. 1:  For military subjects (investigated by

19   a DCIO or other DOD law enforcement

20   organization) the FD-249 --

21      A.    Sorry.  I'm missing --

22      Q.    Oh.  I apologize.

**PEX 0106-0031**



6              For military subjects (investigated

7      by a DCIO or other DOD law enforcement

8      organization), the FD-249 shall be submitted

9      when an agent or law enforcement official

10     determines, following coordination with the

11     servicing SJA or legal advisor if necessary,

12     that probable cause exists to believe that the

13     person has committed an offence listed in

14     Enclosure 2.  If applicable, such coordination

15     shall be documented in the investigative file.

16              Did I read that correctly?

17        A.    Yes.

18        Q.    Okay.  And that again is a mandatory

19     instruction as well, "shall", correct?

20        A.    Yes.

**PEX 0106-0032**





```
13        Q.    Right.   And that's going back to

14   what you said earlier that it was fine, it's

15   okay and for the individual agents and Security

16   Forces personnel at 49th to --

17              -- if they made a probable cause

18   determination, if they made it in their own

19   minds, at that point it's mandatory for them to

20   report, and they don't need to consult with

21   your office, correct?

22        A.    Correct.
```

**PEX 0106-0033**



8      Q.    Okay.  But they have no discretion

9   when they receive a report of conviction to not

10   send that to the FBI, correct?  If it's a

11   qualifying offence like Devin Kelley's.

12      A.    Qualifying offence.

13      Q.    Correct.  And Devin Kelley's was,

14   right?  Yeah?

15      A.    That's the way I would read that.

16   Yes.

17      Q.    No. 3 says, under (b) says:  Within

18   15 calendar days after final disposition of

19   military judicial or nonjudicial proceedings,

20   or the approval of a request for discharge,

21   retirement, or resignation in lieu of court

22   martial, disposition information shall be

**PEX 0106-0034**



1   reported by the DCIO or other DOD law

2   enforcement organizations on the R-84, or an

3   electronic data transfer equivalent, if it has

4   not already been reported on an FD-249.  Do not

5   hold the FD-249 or R-84 pending appellate

6   actions.

7          Do you see that?

8      A.   I do.

9      Q.   So in this situation there's no

10  requirement that the agents go through some

11  independent or individual probable cause

12  determination.  Is that fair to say in this

13  fact scenario?

14     A.   That's correct.

**PEX 0106-0035**



8            Exhibit 3 is the AFOSI Manual 71-21,

9     and Bates stamped USA34.  And you see at the

10    top of the page it states:  "Compliance with

11    this publication is mandatory."

12            Correct?

13       A.    Yes.

21       Q.    Okay.  And this manual, Air Force

22    Manual, applies to the Air Force Office of

**PEX 0106-0036**



1    Special Investigations, correct?

2         A.    Yes.

3         Q.    And that would be AFOSI Detachment

4    225.  That was an AFOSI office that this

5    mandatory manual applied to, correct?

6         A.    That's correct.

**PEX 0106-0037**



21            If one of the reasons why it's

22    important to not conduct a poor investigation,

**PEX 0106-0038**



1   to do it right as you said --

2        A.    Uh-huh.

3        Q.    -- is that if it's done poorly the

4   Air Force is unable to deter and neutralize

5   individuals like Devin Kelley.

6              MR. FURMAN:  Objection to form.

7              THE WITNESS:  That's a possi --

8              Yes, that's a possibility.

**PEX 0106-0039**



13      Q.    Okay.  And let's look at --

14            Do you have exhibit, the 71-121 in

15   front of you?

16      A.    Yes.

17      Q.    Look at Section 1.8 under Lessons

18   Learned.

19      A.    Yes.

20      Q.    It states:  Within 30 days of the

21   conclusion of the trial, the local SJA and

22   available members of the trial team will

**PEX 0106-0040**



```
1    conduct a "hot wash" with AFOSI to review case

2    lessons learned.

3              Did I read that correctly?

4       A.    Yes.
```

PEX 0106-0041



16          Here, and according to this

17   instruction or in the manual 71-121, does hot

18   wash include going back and looking at the

19   actual investigations themselves and seeing how

20   those were conducted and the evidence gathering

21   and recording and sort of operational elements

22   of a criminal investigation?  Would you look at

**PEX 0106-0042**



1   that with the AFOSI case agents?

2       A.    We could.

3       Q.    Okay.  So it could be part of it.

4       A.    It could be part of it.



PEX 0106-0043

12          You were still the SJA at Holloman

13   Air Force Base 30 days after Devin Kelley's

14   conviction.  Is that right?

15       A.    Yes.

16       Q.    Do you recall specifically doing a

17   hot wash for Devin Kelley's case?

18       A.    I specifically do not recall.

19       Q.    Okay.  When you or your agents under

20   your supervision were doing the hot wash for

21   this case, do you have any evidence that you

22   either recall or have seen that shows that your

**PEX 0106-0044**



```
 1   office either supervised or oversaw and ensured

 2   that the AFOSI case agents reported the

 3   conviction you obtained on him to the FBI?

 4        A.    I don't recall seeing anything.

 5        Q.    And to this day you don't have any

 6   evidence you can show me that establishes that

 7   your supervision command at the SJA

 8   specifically reviewed whether or not the AFOSI

 9   case agents reported your conviction that you

10   obtained to the FBI?

11        A.    We have the evidence that it was on

12   a distribution list.  I don't have evidence

13   what happened after that.



     .
```

**PEX 0106-0045**



1      Q.    Okay.  Well let me go back to when

2   you were at Langley.

3           I'm sorry.  When you were at

4   Vandenberg is what I meant.

5      A.    When I was at Vandenberg.  Okay.

6      Q.    Yeah.  Air Force.

7           You were the SJA from 2016 to 2019,

8   correct?

9      A.    Yes.

10     Q.    So you were reviewing Air Force

11  investigation files like you were at Holloman

12  Air Force Base, correct?

13     A.    Generally.

14     Q.    So from 2016 to 2019 do you recall

15  whether or not you had a checklist or any other

16  kind of supervisory checklist that you would

17  push down to the folks working underneath you

18  to ensure that the Air Force case agents were

19  reporting to the FBI qualifying convictions at

20  that base?

21     A.    We did have checklists.  And I don't

22  recall any specific guidance on OSI's reporting

**PEX 0106-0046**



```
1   Kelley's fingerprints or conviction to the FBI

2   as required by the mandatory instructions?

3        A.    That's correct.

20        Q.    When you were at Holloman Air Force

21   base and involved in Devin Kelley's

22   investigation, you were a federal employee
```

**PEX 0106-0047**



1 │ acting within the course and scope of your

2 │ employment with the Federal Government,

3 │ correct?

4 │          MR. FURMAN:  Same objection.

5 │          THE WITNESS:  Yes.

**PEX 0106-0048**



```
 7          Let me go back.  Let me go back to

 8    the manual.  There's a question I wanted to ask

 9    you.  If you'll look at the manual which is

10    Bates stamped 34.  What Exhibit number is that?

11       A.    3.

12       Q.    3.  If you would flip real quick to

13    Page 84, which is the end of Section 4.24.4.

14    The sentence states at the very beginning --

15          I'm sorry.  Are you there?

16       A.    24.4.

17       Q.    Um, it's on Page 84.

18       A.    I see it.

19       Q.    4. --

20          Yes.  4.24.4.

21       A.    Yes.

22       Q.    Use the AFOSI Investigative
```

**PEX 0106-0049**



 1   Sufficiency Checklist (Attachment 7) or a more

 2   comprehensive checklist.

 3           Do you see that statement?  And if

 4   you will --

 5           I'm sorry.  Do you see that?

 6       A.   I do.

 7       Q.   If you flip to Page 200, Attachment

 8   7, it's entitled AFOSI Investigative

 9   Sufficiency Checklist.  Do you see that?

10       A.   200?

11       Q.   I'm sorry.  It's 200.  Yes, sir.

12       A.   Okay.

**PEX 0106-0050**



COLONEL OWEN W. TULLOS                          December 04, 2019
JOE HOLCOMBE vs UNITED STATES                              169

18        Q.    The very first item on the AFOSI

19   Investigative Sufficiency Checklist is:  1.

20   Have notifications and coordinations been

21   conducted with:  AFOSI specialists?

22              And (b).  Legal authority?

**PEX 0106-0051**



```
 1              Do you see that?
 2      A.    Yes.
 3      Q.    And the only legal authority on the
 4   Holloman Air Force base when Devin Kelley was
 5   there and you were doing the trial and
 6   investigation, was that's the Staff Judge
 7   Advocate's Office, correct?
 8      A.    That's typically.



12              When you were at Holloman Air Force
13   Base did you train and/or supervise your Staff
14   Judge Advocates to go over this checklist with
15   the agents when they had either the weekly
16   meetings or hot wash meetings after a
17   conviction?
18      A.    I don't recall specific training.  I
19   do recall discussion of the sufficiency
20   checklist.  I don't recall specific training.
```

**PEX 0106-0052**



```
 3       Q.    Okay.  And look at No. 22, which is

 4   Page 202, and 23.  It states, No. 22:  Did unit

 5   leadership must review all FD-249s (both hard

 6   copy and electronic when accomplished) and

 7   R-84s for accuracy and completeness?  (a) were

 8   those reviews appropriately documented?

 9            Do you see that?

10       A.    Yes.
```

**PEX 0106-0053**



3      Q.    And 23 states:   Were fingerprint

4   cards submitted accurately based upon military

5   judicial and NJP proceeding considerations?

6           Do you see that?

7      A.    Yes.

8      Q.    Okay.  And that is referring to

9   whenever there --

10          -- in part, is referring to whenever

11   there's a conviction, were those fingerprint

12   cards accurately submitted.  Is that fair?

13          MR. FURMAN:  Objection to form.

14          THE WITNESS:  Yes.

**PEX 0106-0054**



2     Q.     Okay.  So Specification 2 is a crime

3  punishable by more than 1 year, correct?

4     A.     Yes.

5     Q.     And Specification 1 and 2 that Devin

6  Kelley was convicted of combined are up to, you

7  think, 5 years or 5 1/2, 6 --

8            -- 5 years and 6 months.  Is that

9  your understanding?

10    A.     Yes.

**PEX 0106-0055**



8      Q.    Okay.  So what this means is that

9    there was a mandatory direction for this report

10   result of trial of Devin Kelley's conviction to

11   be sent to this distribution list as we see

12   here?

13      A.    That's correct.

PEX 0106-0056



```
16      Q.    Yes.   If could you identify for me

17   what each one of those are in the distribution

18   list on Exhibit Bates stamp 12947.

19      A.    Yes.   Air Combat Command Commander

20   and Judge Advocate, 12th Air Force Commander

21   and Judge Advocate, 49th Wing Commander and

22   Judge Advocate, 49th Medical Group Commander,
```

**PEX 0106-0057**



 1   49th Force Support Squadron, DPM is the

 2   personnel section.

 3       Q.    What was the one before?  What was

 4   FSS?  49 FSS.

 5       A.    Force Support Squadron.

 6       Q.    Okay.

 7       A.    And within that Force Support

 8   Squadron there's a personnel shop that records

 9   all the personnel actions.  So a bad conduct

10   discharge would be an example of where they

11   would be taking personnel action.

12            The 49th Comptroller Squadron, and

13   they have a financial FMFP Division.  49th

14   Security Forces Squadron Commander and SFOI,

15   which is their investigation section, Air Force

16   Legal Operations Agency, Area Defense Counsel,

17   Air Force Office of Special Investigations

18   Detachment 225, and Central Docketing Office.

**PEX 0106-0058**



20            Okay.  So fair to say that the

21   report of Devin Kelley's conviction was sent to

22   ten different Department of Defense units,

**PEX 0106-0059**



1    correct?

2         A.    Yes.

**PEX 0106-0060**



12      Q.    Okay.  When you met with those

13   agencies you just identified after Devin

14   Kelley's conviction, did you confirm whether or

15   not they reported the conviction to the FBI?

16      A.    No, not that I know of.  Somebody

17   else may have.

18      Q.    By the way, is Specification 1 a

19   crime of domestic violence?

20      A.    Yes.

21      Q.    And under the Lautenberg Gun Control

22   Act Amendment, that's in and of itself required

**PEX 0106-0061**

1   | to be reported to the FBI, correct?

2   |       A.     That's correct.

**PEX 0106-0062**



```
 3              Exhibit 4 is Air Force Instruction

 4   51-201 Administrative --

 5              -- Administration of Military

 6   Justice.  And Air Force Instruction 51-201 is a

 7   mandatory instruction, correct?

 8      A.    That's correct.  This is the first

 9   one that's specifically with regard to JA

10   function.
:




19      Q.    So you're saying this is specific to

20   the law side?

21      A.    Uh-huh.

22      Q.    The JA side.
```

**PEX 0106-0063**



1              Okay.  If you can go to 13.22 on

2    Page 11987.  And at the bottom this mandatory

3    instruction defines a crime of domestic

4    violence is an offence that has its factual

5    basis in one of the following:  The use or

6    attempted use of physical force, or the

7    threatened use of a deadly weapon.

8              Do you see that?

9        A.    I'm sorry.  I'm trying to --

10       Q.    That's okay.  That's okay.

11       A.    Is it 1322?

12       Q.    Let me start over.

13             It's 1322.  Yes, sir.  And the

14   bottom sentence is what I'm referring to.

15       A.    Okay.  Yes, I'm following.

16       Q.    Okay.  Do you agree with that

17   definition of crime of domestic violence?

18       A.    Yes.

19       Q.    And that's what Devin Kelley's

20   Conviction No. 1 met that definition?

21       A.    The use or attempted use of physical

22   force.

**PEX 0106-0064**



 1      Q.    Yes.

 2      A.    Or threatened use of a deadly

 3  weapon.

 4      Q.    So that's a "yes"?

 5      A.    Yes.

 6      Q.    Okay.  And qualifying convictions

 7  include a crime of domestic violence tried by a

 8  general or special court martial, correct?

 9      A.    Yes.

10      Q.    This was a general court martial,

11  correct?

12      A.    Yes.

13      Q.    And when I say "this", I mean Devin

14  Kelley's court martial was a general court

15  martial.  Is that right?

16      A.    Yes.

17      Q.    And on the front page of -- and I'm

18  showing it to you right now.  It's on the

19  screen -- of the report of result of trial,

20  under Type of Court you have clearly marked

21  this as a general court martial, correct?

22      A.    That's correct.

**PEX 0106-0065**



1        Q.    It's hard to miss, anybody reviewing

2   this to know that this is a general court

3   martial, correct?

4              MR. FURMAN:  Object to form.

5              THE WITNESS:  That is correct.

**PEX 0106-0066**



COLONEL OWEN W. TULLOS                          December 04, 2019
JOE HOLCOMBE vs UNITED STATES                              202

```
13        Q.     Right.   So bottom line is the

14   Lautenberg requirements for reporting this to

15   the FBI, as you've described in your report of

16   result of trial, were met in how you described

17   it in this document, correct?

18        A.     Yes.
```

**PEX 0106-0067**



```
 8      Q.    Let me do this to clarify --

 9            Thank you.  Because I want to get it

10   straight on the record.  So the Air Force

11   Security Force sort of chain of command of

12   people who in the Air Force had authority to

13   discipline investigators in the military for

14   failure to collect, failure to store, failure

15   to report fingerprint data and convictions to

16   the FBI, would have been the Security Forces

17   Unit Commander, the intermediate supervisors,

18   the Mission Support Group, Wing Commander, and

19   that could go all the way up to the Secretary

20   of Air Force.

21      A.    Yes.
```

**PEX 0106-0068**



```
15        Q.    Okay.  So the people who had --

16              -- in the Air Force who had the

17    authority to discipline military investigators

18    involved in Devin Kelley's case for failure to

19    collect, failure to store, and failure to

20    report his fingerprint data and his convictions

21    to the FBI, included -- and this is for the

22    AFOSI side -- included the intermediate
```

**PEX 0106-0069**



1   supervisors, Detachment Commanders, Region

2   Commanders, Headquarters AFOSI Commander, and

3   the Secretary of Air Force.  Is that right?

4        A.    Yes.

**PEX 0106-0070**



17      Q.    Okay.  So as part of your duties as

18   an SJA at Holloman Air Force Base and a

19   supervisor of Judge Advocates at the base, you

20   were aware that a High Risk For Violence

21   Response Team was put together to specifically

22   assess Devin Kelley's risk factors, correct?

**PEX 0106-0071**



1        A.      Yes.

2        Q.      And specifically, the High Risk For

3   Violence Response Team was put together for

4   Devin Kelley in May 2012 by the Air Force,

5   correct?

6        A.      Yes.

7        Q.      And the reason why that the High

8   Risk For Violence Response Team was put

9   together by the Air Force in May 2012 was

10  because Devin Kelley was a major threat to

11  commit an act of violence.

12              MR. FURMAN:  Objection to form.

13              MR. ALSAFFAR:  Correct?

14              THE WITNESS:  Yes.

:

**PEX 0106-0072**



2      Q.    Fair.  Fair.  So the High Risk

3   Violence Response Team at Holloman Air Force

4   Base in May 2012 was convened to decide whether

5   Devin Kelley was a major threat for violence,

6   correct?

7      A.    That's correct.

8      Q.    And they ended up determining that

9   in fact Devin Kelley was a high risk major

10  threat to commit an act of violence, correct?

11     A.    Yes.

12     Q.    And you didn't disagree with that

13  when you were part of the review of that

14  decision, were you?

15     A.    No, I don't disagree with it.

**PEX 0106-0073**



10      Q.    So two questions there.  Do you

11   agree that confinement for Devin Kelley in

12   June 2012 was necessary because he was a

13   foreseeable risk to engage in serious criminal

14   misconduct?

15           MR. FURMAN:  Objection to form.

16           THE WITNESS:  Yes.

17           MR. ALSAFFAR:  I'm sorry.  Your

18   answer was?

19           THE WITNESS:  Yes.

**PEX 0106-0074**



13      Q.      When a High Risk For Violence Team

14   concludes that a military member is a major

15   threat to commit an act of violence, and it is

16   foreseeable that that person -- Devin Kelley --

17   would engage in serious criminal misconduct and

18   is placed --

19             -- and has attempted to purchase a

20   firearm, and is placed in confinement before

21   his trial, that that rises to your definition

22   of probable cause to report his fingerprints,

**PEX 0106-0075**



1   collect them and submit them to the FBI.  Is

2   that fair?

3             MR. FURMAN:  Object to form.

4             THE WITNESS:  I think that would be

5   fair.  Yes.

PEX 0106-0076



3      Q.    So what that means first of all,

4   there were 6978 reportable people to the FBI

5   that were not entered in the FBI background

6   check system, correct?

7              MR. FURMAN:  Objection.  Form.

8              THE WITNESS:  Yes.

10     Q.    And that they've only been able to

11  discover and put into the record, FBI record,

12  5607, correct?

13     A.    Yes.

**PEX 0106-0077**



6      Q.    With respect to the plea agreement

7   that was reached with Kelley, do you recall how

8   long the maximum sentence was under that

9   agreement?

10     A.    The maximum confinement that would

11   have been approved would have been 3 years.

**PEX 0106-0078**



COLONEL OWEN W. TULLOS
JOE HOLCOMBE vs UNITED STATES

December 04, 2019
280

12      Q.     Just because there are a lot of

13   laws, that's not an excuse to not follow

14   regulations, especially when they're mandatory,

15   right?  Agreed?

16      A.     That's correct.

**PEX 0106-0079**



```
 1              CERTIFICATE OF NOTARY PUBLIC

 2              I, Terry L. Bradley, the officer before

 3    whom the foregoing deposition was taken, do

 4    hereby certify that the witness whose testimony

 5    appears in the foregoing deposition was duly

 6    sworn by me; that the testimony of said witness

 7    was taken by me in shorthand and thereafter

 8    reduced to computerized transcription under my

 9    direction; that said deposition is a true

10    record of the testimony given by said witness;

11    that I am neither counsel for, related to, nor

12    employed by any of the parties to the action in

13    which this deposition was taken; and further,

14    that I am not a relative or employee of any

15    attorney or counsel employed by the parties

16    hereto, nor financially or otherwise interested

17    in the outcome of the action.

18                    _____

19                    Notary Public in and for
                      the District of Columbia
20
      My Commission expires:  April 30, 2022
21

22
```

**PEX 0106-0080**

