IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| JOE HOLCOMBE, et al,<br>         Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br>         Defendant. | Civil Action No.  5:18-cv-00555-XR |

### (CORRECTED) PLAINTIFFS  KRIS WORKMAN, COLBEY WORKMAN, KYLE WORKMAN, MORGAN HARRIS, DAVID COLBATH, DAVID COLBATH AS NEXT FRIEND OF OLIVIA COLBATH, KRIS WORKMAN AND COLBEY WORKMAN, INDIVIDUALLY AND AS NEXT FRIENDS OF EEVEE WORKMAN, JESSICA MOULTON AND WILLIAM LANE'S SECOND MOTION TO STRIKE DESIGNATION OF ACADEMY STORES LIMITED AS A RESPONSIBLE THIRD PARTY

#### FACTUAL BACKGROUND

On October 21, 2020 the Court heard these Movants' Motion to Strike Academy as a Responsible Third Party (Doc. 266).  The court denied the Motion without Prejudice to the Movants to re-file the Motion (Tr., Motion to Strike Proceedings Oct. 21, 2020, at 22).[1]   The Government argued discovery was ongoing as to Academy and that "ongoing" discovery from Academy "could continue after the liability cutoff."  (Tr. at 26.)  Further, the Government argued that it must complete "key" discovery that would allow it to respond and that any further Motion to Strike should be "stayed" until after the Government completed discovery with respect to Academy. (Tr.at 27).

Movants therefore compliantly waited to re-file this Motion. The only discovery subsequently obtained by the Government from Academy were responses to a Deposition on Written Questions received on or about March 3, 2021 from a 30(b)(6) representative.  These Movants issued cross-questions to Academy immediately thereafter on March 5.  Academy served

---

[1] Movants therefore have not styled this motion a Motion to Reconsider since the court denied Movants' original motion without prejudice.

1

Responses to the Cross-Questions on March 19, 2021, only about two weeks before the scheduled April 5 trial date. Insufficient time remained for these Movants to file and seek adjudication of another Motion to Strike prior to trial.

However, circumstances of the trial compel Movants to re-file the Motion now during trial for three reasons: First, the Government attorney and ATF/DOJ attorney-witness testifying for the Government failed to reveal, apply or attempt to distinguish during examination of William Ryan on April 13 the likely controlling law—the applicable exception in the Colorado statute governing out-of-state magazine purchases. Movants contend that exception applies by its plain meaning to the facts of the Academy/Kelley transaction in April 2016 and legalized the transaction-- assuming magazines are even part of a "firearm" and that the transaction is subject to 18 U.S.C. 922(b) (3) and/or not immune under the provisions of the Protection of Legal Commerce in Arms Act. The exception in the Colorado statute not yet admitted in the trial record or revealed in testimony bears directly on the designation of Academy as a Responsible Third Party, because the Government has not proved and cannot prove violation of a law by Academy in selling the magazine or the firearm, much less prove causation of the Plaintiffs' damages given the effect of the abstract of Kelley's driving record now admitted in the trial record. (JEX 380).

Second, the Government obtained a pre-trial ruling from the court (specifically referencing undersigned counsel for these Movants) preventing examination of any trial witness by more than one attorney for the eighty-plus Plaintiffs. That ruling effectively prevented these Movants from exposing Ryan's erroneous speculation about what Movants contend is the only reasonable conclusion regarding the plain meaning of statutory law-- the Colorado statute and its' exceptions--- to the facts, by cross-examination of Ryan in open court.[2]

---

[2]   Counsel for Plaintiffs did not cross-examine Ryan about the Colorado statute, but counsel for the Government failed to disclose the statute in the colloquy or attempt to distinguish the exception through ATF counsel/witness Ryan. These Movants respectfully submit that the Government and the ATF effectively substituted their legal opinion for the court that an unidentified Colorado law rendered the transaction illegal, without letting the court do its job, consider the statutory language and interpret the exception and its applicability to resolution of whether Academy complied with the plain meaning of the Colorado statute. And all Plaintiffs other than these Movants broadly contend in active state court litigation that the transaction was illegal. As such, a conflict exists between these

Third, the discovery performed by the Government since the court denied the prior Motion without prejudice necessitates this Motion because the Government failed to obtain any evidence through Academy's responses to written questions demonstrating either that Academy's sale was a substantial factor in the shooting or that Kelley's use of the firearm to commit mass murder over seventeen months after the sale was in any way foreseeable to Academy.

These Movants continue to stand in a different position than all other Plaintiffs insofar as the other Plaintiffs continue to seek recovery from Academy in state court in Texas. Movants oppose their legal and factual positions on the legality of the sale by Academy but agree with and join in the position taken by Non-Movants in cross-examination of Ryan that the Abstract of Kelley's driving record rebuts any causation by Academy. Movants deny that Academy bears or should bear any percentage of fault for their damages and incorporate all facts and allegations made in their original Motion to Strike (Doc. 266) pursuant to Rule 10(c). Movants assert the additional arguments below supporting striking the Government's improper and unsupported designation of Academy as a responsible third party.

**The Sale Transaction by Academy on April 16, 2020 Complied with Colorado Law**

The plain meaning of the applicable exception in the Colorado statute militates in favor of the opposite conclusion urged (and assumed in the colloquy) by the DOJ attorney for the Government and the attorney/witness Ryan about legality of the AR purchase at Academy in April

---

Movants and all other Plaintiffs due to opposing positions about the legality under Colorado law of the purchase transaction. This conflict compels Movants simply to act independently once again on this issue relating to the Government's claim against Academy and present arguments proving the legality of the transaction in April 2016. The situation is what it is. Movants should not suffer prejudice to their position that Academy legally sold a firearm and did not contribute to cause their injuries because of a conflict in the legal position taken in a separate lawsuit by the non-Movant Plaintiffs. They will, unless Movants file this Motion and are allowed to advocate for a fair interpretation of the law, free of conflict. Nor should Movants suffer prejudice by the Government's failure to place the exception in the Colorado law before the court to decide whether it applies, which is the prerogative of the Court. These Movants deliberately filed no suit against Academy and must advocate their position notwithstanding inability to cross-examine Ryan while on the stand. The facts in the record and the exception in the Colorado law support Movants position, so they must file this Motion.

of 2016. Neither of them revealed the application and effect of the most relevant portion of the Colorado statute to the facts of the purchase transaction of the Ruger AR-15 during examination of William Ryan.[3] That section of the statute, governing out-of-state transfers of firearms, tends to prove the legality of the sale transaction of the Ruger AR by Academy under the facts in the record.[4] The court therefore must know for the record the existence of and the effect of the Colorado law on the facts applicable to the transaction.

Assuming 18 U.S.C. 922(b)(3) requires compliance with Colorado law for the sale of magazines sold in the same box with a firearm in Texas and that magazines are part of a "firearm" to which 922 (b)(3) even applies (which Movants do not concede), Movants contend here as Academy contends in the state court litigation against it that the sale by Academy of the Ruger AR with a thirty round LCM in April 2016 complied with Colorado law. Indeed, the Colorado statute controlling this issue *permits* sale or possession of a large-capacity magazine "[e]xcept as otherwise provided in this section." COLO. REV. STAT. Sec. 18-12-302(1)(a). Subsection (3) states that "[t]he offense described in subsection (1) of this section shall not apply to:

> (a) ….. any licensed gun dealer, as defined in section 12-26.1-106(6), C.R.S., or any employee thereof engaged in his or her official employment duties, that sells large-capacity magazines exclusively to:
>
> …………..
>
> **(V) An out-of-state transferee who may legally possess a large-capacity magazine …..**"

---

[3]  Movants incorporate arguments made by Academy in the state court litigation pending before the Texas Supreme Court in Relator's Brief on the Merits, including but not limited to P. 34-35; Tx. S. Ct. No. 19-0497.  The Government cannot credibly contend ignorance of arguments made in this brief filed in the Texas Supreme Court in August of 2019, having designated Academy as a Responsible Third Party long ago. And ignorance by anyone does not change the application or effect of the applicable section of the statute.

[4]  COLO. REV. STAT. Sec. 18-12-302(1)(a) and 18-302(3)(a)(V). This statute was marked and offered pre-trial as GEX48. Movants are unaware at this filing if the court has ruled on admission of that Exhibit.

COLO. REV. STAT. Sec. 18-12-302(3)(a)(V) (emphasis added).

Further, the definition of "transferee" under the same Colorado Revised Statute Sec. 18-12-112(12)(b) defines "transferee" as:

"a person who desires to receive or acquire a firearm from a transferor."

**No exclusion or limitation exists in the definition of "transferee" based on the state of residence of the "transferee" under the Colorado statute.** No basis therefore exists to ignore the plain meaning of the statutory exception and the plain meaning of the definition of "transferee." Neither are ambiguous, as a matter of law.

While in Texas, Kelley was an "out-of-state transferee" who could "legally possess" the 30-round magazine. This clear legislative intent that the prohibition in the statute on possession or transfer *shall not apply* outside of Colorado is confirmed by other provisions as well. Two examples are: 1) the exception for sales to a "firearms retailer for the purpose of firearms sales conducted outside the state;" and 2) the exception for a "person who possesses the magazine for the sole purpose of transporting the magazine to an out-of-state entity on behalf of a manufacturer of large-capacity magazines within Colorado." COLO. REV. STAT. Secs. 18-12-302(3)(a)(III) and (c).

Even assuming, *arguendo,* that Section 922(b)(3) required Academy to comply with Colorado law for the sale of the magazine with the firearm in the same box to Kelley, the sale of the Ruger AR did comply because the sale took place outside of Colorado, and Colorado law specifically allows such sales. Because the Colorado statute, by its terms, does not apply to sales of magazines that take place outside of Colorado, Academy's sale of the 30-round magazine with the firearm to Kelley in Texas fully complied with Colorado law, and thus complied with the

federal law set forth in 18 U.S.C. 922(b)(3). Therefore, the sale was legal under all applicable authority.

In fact, the Government well knows of the existence of these exceptions, having pre-marked and previously offered at the outset of trial COL. REV. STAT. Secs. 18-12-301, 302. *See* GEX 48. Yet not a word about this Exhibit or the express exception to the prohibition on LCMs for out-of-state transferees in the statute came up during the examination by the Government of Ryan. The Government presented testimony assuming illegality without presenting to the court the portion of the statute that controls the issue and directly contravenes its position. The ATF lawyer, Ryan, testified on the alleged application of Colorado law to the facts, but never identified applicable Colorado law on the record, nor discussed why the transaction violated this Colorado statute, nor explained why the exception in the statute for out of state transfers of magazines fails to control or apply.

Academy is presumed to know the law for the purposes of 922(b)(3), and the Bureau of Alcohol, Tobacco & Firearms (ATF) likewise is presumed to know the same law that Academy is presumed to know. The Government cannot elicit testimony from Ryan as someone with purported knowledge about interpretation and application of Colorado law to the facts without acknowledging the existence of the exception explicitly set forth in the statute for out-of-state transfers. Nor can the Government simply assume away the existence of the express exception for out-of-state transfers because it wishes the law were different, having designated Academy as an RTP. Ryan either knows the law or does not know it. He did not *testify* with knowledge of Colorado law and the Movants urge the court to disregard Ryan's testimony and "opinion" that the transaction violated Colorado law in favor of analyzing the statute on its own. Movants have now provided the statute and analysis to the court of its application. Ryan gave no basis in his

testimony why the transaction violated the Colorado statute, and his conclusion is contrary to the plain meaning of an unambiguous Colorado statute for the reasons set forth above.

**18 U.S.C 922(b)(3) Does Not Conflict with Colorado Law or Its Exception For Out-Of-State Transfers Of Magazines**

Section 922(b) provides in pertinent part:

**(b)** It shall be unlawful for any licensed importer, licensed manufacturer, licensed dealer, or licensed collector to sell or deliver—

……………………………………………………………………………………………

**(3)**
any firearm to any person who the licensee knows or has reasonable cause to believe does not reside in (or if the person is a corporation or other business entity, does not maintain a place of business in) the State in which the licensee's place of business is located, except that this paragraph (A) shall not apply to the sale or delivery of any rifle or shotgun to a resident of a State other than a State in which the licensee's place of business is located if the transferee meets in person with the transferor to accomplish the transfer, and the sale, delivery, and receipt fully comply with the legal conditions of sale in both such States (and any licensed manufacturer, importer or dealer shall be presumed, for purposes of this subparagraph, in the absence of evidence to the contrary, to have had actual knowledge of the State laws and published ordinances of both States), and (B) shall not apply to the loan or rental of a firearm to any person for temporary use for lawful sporting purposes;

Nothing in 922(b)(3) mandates that a state prohibit its citizens from transferring firearms by transaction in another state where the transaction is legal in that state. Nor does 922(b)(3) mandate that FFLs ignore Colorado law defining "transferee" and assume or presuppose that citizens whose residence address on an I.D is a Colorado address are engaged in an illegal subterfuge to travel out of state, acquire LCMs and return with them to Colorado, or mandate that any firearm purchased outside of **any** state issuing the I.D. will be transported to that state in violation of that state's law. And the Brady Act obligations apply to "firearms", which does not include "magazines" within that definition. *See* Exh. 1, Relator's Brief on the Merits, Tx. S. Ct.

No. 19-0497 at P. 24-34, and arguments and authority cited, supporting that the Brady Act definition of "firearms" does not include "magazines". Movants deny that "firearm" as defined for any purpose under 18 U.S.C. 922 *et. sequitur* includes "magazines" and adopts the arguments and positions taken by Academy on that issue—to the extent, if any, that the court finds necessary consideration of any of those other issues affecting the legality of the transaction in April of 2016. *See* Exh. 1.

**The Trial Record Contains No Evidence that the Transfer by Academy to Kelley Violated Applicable Colorado Law**

Both GEX 21 P.3 and PEX 92-0003, previously tendered to the court for admission, offer the same excerpt from P. 32 of the deposition of the relevant Academy store clerk (submitted under seal and not revealed here). That excerpt establishes that the sale occurred legally because the retailer sold to a Colorado resident who was in Texas at the time of the sale. As such, Kelley was an out-of-state transferee under the plain meaning of the exception in COLO. REV. STAT. Sec. 18-12-302(3)(a)(V) who could legally possess a large capacity magazine in Texas because possession of such magazines at all relevant times has been (and remains) legal. No evidence exists in the record or the offer indicating that Kelley told any Academy employee at the time of sale in April of 2016 that he intended to take the firearm or the only alleged illegal "object"—the magazine received with the firearm--to Colorado in violation of Colorado law.

Conversely, the evidence in the trial record shows that neither Kelley nor Danielle Smith resided in Colorado at any time following the April 2016 purchase of the firearm with the two

magazines at Academy. Danielle Smith "guesses" they moved back permanently somewhere around the end of 2015 or early 2016. (Trial Record at 68-17). They had lived in Pueblo for a month then permanently moved back (to Texas] in "2015-ish, 2016." (Rec. at 68-24 to 69-2). In late 2015 she testified she accompanied Kelley to Dick's in New Braunfels and that he attempted to purchase a gun there. (Rec. at 73-5) When they moved back, she became pregnant and got a job at HEB. (Rec. at 69- 5). She accompanied him to Dick's in New Braunfels in late 2015 to look at a gun. (Rec. at 73-12)   In early 2016 when she and/or Kelley were not at work, she was "quartered off" from the world and resided at the home with Kelley (clearly referencing the barn apartment in Comal County). (Rec. at 75-11-18).  Danielle identified no out-of- state trips occurring in her trial testimony between the visit to Dicks in late 2015 and the trip to Academy in April 2016. (Rec. at 75-76).

Movants are aware of no evidence in the trial record from any source that Kelley returned to Colorado after the AR purchase at Academy in April 2016, nor--more importantly-- any evidence that he told any employee of Academy on the date of the purchase that he planned to return to Colorado with the LCM after that purchase. The statement of Danielle Kelley obtained in April 2019 (JEX 380) states only that the Kelleys moved to Colorado Springs in 2014. That statement was incomplete because it indicates only that they remained "together" until his death. That statement read in isolation might suggest that the Kelleys remained in Colorado until the time of the shooting, but the trial record is clear without conflict that they moved back to Texas in late 2015 or early 2016 with no indication they ever returned to Colorado. And the question is whether either of them said anything to the employee at the FFL that they intended to violate Colorado law at the time of the legal out-of-state transfer.   Because no evidence exists that Kelley bought the magazine in April of 2016 with the announced intent to the FFL of violating

9

Colorado law by taking it to Colorado, Kelley definitively occupied the status of "**V) An out-of-state transferee who may legally possess a large-capacity magazine**" within the meaning of COLO. REV. STAT. 18-302(3)(a)(V).  This statute plainly sets out the applicable exception to the prohibition against LCM possession under the Colorado law.  The only state in which Kelley ever acquired and possessed the LCM was Texas, where the LCM was at all relevant times legal to possess.

. Whether any employee of this FFL expressly identified the statutory exception and the definition of transferee under the Colorado law at the time of transfer is not relevant. The facts are that the transfer of the Ruger AR Model 8500 as sold to Kelley was legal under the applicable statutes.  Consequently, the sale did not violate federal law under 18 U.S.C. 922(b)(3) because the sale occurred in accordance with both Texas and Colorado law.

Therefore, in addition to the arguments presented in Movants' First Motion to Strike that no evidence exists meeting the burden of proof to demonstrate cause in fact or foreseeability by Academy in connection with Movants damages, Movants additionally assert that the evidence does not even establish that the purchase transaction at Academy in April of 2016 violated Colorado law. Any reasonable FFL reading or learning of the applicable exception in the Colorado statute would reasonably conclude that the circumstances fell within the plain meaning of the out-of-state transfer exception and act accordingly.  Indeed, no language existed in the Colorado statute that would compel any reasonable, prudent FFL to reach the opposite conclusion. And without regard to the conclusion of a reasonable FFL (in the absence of expressed intent to violate the statute), the sale violated neither Texas law, Colorado law nor federal law and was legal. The plain meaning of the statutory language is controlling and dispositive.

**No Duty Exists Beyond Compliance by Academy with both Colorado Law and Texas**

The existence of compliance resources at Academy or any other FFL do not form any basis for a legal duty to these Movants or other Plaintiffs, separate and apart from the relevant firearm and magazine transfer laws in Colorado and Texas. The record is abundantly clear without citing details of sealed testimony that the existence and purpose of the compliance resources used by Academy was to attempt to assure compliance with the law. No independent duty to comply with guidance documents, such as checklists or other internal guidance documents and resources, exists for employees of any FFL if the FFL completed the transaction in compliance with Texas and Colorado law. In that event, compliance or non-compliance with checklists or other guidance resources is not relevant because the FFL satisfied the duty to comply with applicable law of both states required by 922 (b)(3) of the Brady Act.

**No Evidence Exists in Answer to the Deposition on Written Questions Supporting Cause in Fact or Foreseeability**

The court has already characterized Kelley's identification issue as a short-lived and artificial impediment to Kelley's access to firearms from FFLs and noted that the abstract "bears on the designation of Academy as a responsible third party" in view of the abstract of Kelley's driving record, in evidence as JEX 380. [5] The Government's discovery foray against the FFL to delay the Court from striking it as a responsible third party produced no credible evidence supporting the Government's position that Academy's sale transaction meets the substantial

---

[5] Doc. 318, P.31 at fn. 12

factor test for but-for causation (summarized and briefed in Movants' First Motion to Strike).[6] The Responses by Academy set forth in GEX 24 provide no basis to Deny Movants' Motion to Strike. First, none of the questions sought to prove causation or foreseeability in the face of the abstract and the court's extant interpretation of its effect in the prior order. Second, all the questions dealing with the policies and procedures of Academy and the "guidance" provided to employees of this FFL are not relevant and/or are mooted by the fact that the sales transaction was legal under Texas law, Colorado law and federal law for the reasons set forth above. No independent duty exists by Academy separate and apart from following the Brady Act, Texas law and Colorado law. To the extent the Government asks the Court to impose a non-existent legal duty outside of or beyond the duty to comply with the law of Colorado and Texas as required by the Brady Act, any such argument by the Government would violate impermissibly the free exercise of the Second Amendment to the Constitution of the United States.

**Legal Standard**

A defendant may seek to designate a person as a responsible third party by filing a motion for leave to designate that person as a responsible third party. (fn. to CPRC 33.004) After adequate time for discovery, a party may move to strike the designation of a responsible third party on the ground that there is no evidence that the designated person is responsible for any portion of the claimant's injury or damage. Texas Civil Practice & Remedies Code Sec. 33.004 (2)(l). Under Texas' interpretation of that Code Section, assuming it is substantive, the court shall grant the motion to strike unless a defendant produces sufficient evidence to raise a genuine issue of fact regarding the designated person's responsibility for the claimant' injury or damage. *Id.*

Movants urge the Court to grant the Motion to Strike Academy because the Government has now had more than an adequate opportunity to conduct discovery from Academy. That discovery

---

[6] See Academy's Responses to United States' Deposition by Written Questions, offer pending by the Government as GEX 24.

has resulted in no evidence proving or tending to prove cause in fact or foreseeability by Academy of the event that caused the Movants' injuries.  In addition, the transaction in which Academy conveyed the firearm and the large capacity magazine to Kelley was legal under the law of Colorado and Texas under the plain meaning of the Colorado statute governing out-of-state transfers. Finally, no basis exists to impose or attempt to impose a duty on Academy beyond the requirement to comply with the law of both states in a two-state transaction as required by federal law. Since Academy complied with the law of both states in the transaction, it complied with federal law.  No duty exists on Academy independent of the laws governing the transfer of firearms.  Academy's compliance or non-compliance with internal "guidance" or policies or procedures are of no moment whatsoever in analyzing the liability of Academy.

The abstract of the shooter's driving record proves that Kelley could obtain a TDL whenever he wished based on his eligibility since 2007, that he obtained it in May of 2017 and used it to buy firearms at Academy in October of 2017.  Had the shooter not already obtained the AR at Academy in April of 2016, no factual basis exists to infer that Kelley would not have used his TDL to obtain one whenever he wished had the legal sale in April of 2016 been denied by Academy.  The causation of the Movants' damages rests primarily with the United States and the remainder with the shooter.

MOVANTS KRIS WORKMAN, COLBEY WORKMAN, KYLE WORKMAN, MORGAN HARRIS DAVID COLBATH AND DAVID COLBATH AS NEXT FRIEND OF OLIVIA COLBATH AND KRIS WORKMAN AND COLBEY WORKMAN, INDIVIDUALLY AND AS NEXT FRIENDS OF EEVEE WORKMAN, JESSICA MOULTON AND WILLIAM LANE therefore move that the court strike the designation of Academy Stores Ltd as a Responsible Third Party for the duration of this litigation for all purposes in accord with Texas Civil Practice & Remedies Code Sec. 33.004 (2)(l).

                                                Respectfully submitted,

                          __*/s/Brett T. Reynolds*___
                             BRETT T. REYNOLDS
                             Federal Bar No. 19994
                             State Bar No. 16795500
                             btreynolds@btrlaw.com
BRETT REYNOLDS & ASSOCIATES, P.C.
                             1250 NE Loop 410, Suite 310
                             San Antonio, Texas 78209
                             (210) 805-9799 – Telephone
                             (210) 455-2434 – Facsimile
                             **ATTORNEY FOR ALL MOVANTS**

**CERTIFICATE OF SERVICE**

      I hereby certify that a true and correct copy of the foregoing instrument was served on all counsel identified as counsel of record for the United States listed on the docket page in the Pacer filing system in Cause # 5:18—cv—00555, by e-mail notwithstanding that the United States has not been served and has made no appearance in this cause, on the 18th day of April 2021:

Clayton R. Diedrichs
U.S. Attorneys' office
601 NW Loop 410 Ste. 600
San Antonio, Tx. 78216

James Edward Dingivan
U.S. Attorneys' office
601 NW Loop 410 Ste. 600
San Antonio, Tx. 78216

Paul D. Stern
United States Department of Justice
Three Constitution Square
175 N. St. N.E.
Washington, D.C. 20002

                                               /s/ *Brett T. Reynolds*
                                               BRETT T. REYNOLDS
                                               Federal Bar No. 19994
                                               State Bar No. 16795500
                                               btreynolds@btrlaw.com
                           BRETT REYNOLDS & ASSOCIATES, P.C.
                                   1250 NE Loop 410, Suite 310
                                       San Antonio, Texas 78209
                                      (210) 805-9799 – Telephone
                                      (210) 455-2434 – Facsimile
                                **ATTORNEY FOR ALL MOVANTS**