United States District Court
Western District of Texas
San Antonio Division

Joe Holcombe, et. al,
      Plaintiffs,

    v.

United States of America,
      Defendant.

No. 5-18-cv-00555-XR
(consolidated cases)

## Defendant United States' Court-Ordered Verdict Form

On November 12, 2021, this Court ordered both parties to submit a "proposed verdict form" with "numbers from both sides." Trial Tr. 3706:17-18 and 3712:1-3. The Court ordered both parties to submit the filing by the close of business on November 24, 2021. Trial Tr. 3710:6-10. The United States opposed the filing of this proposed verdict form on the same date as Plaintiffs. Dkt 575. The Court granted the United States' Motion and ordered the United States to file its proposed verdict forms 48 hours after the forms were filed by Plaintiffs. Dkt 576.

The United States submits the attached verdict forms pursuant to the Court's order. The proposed damage amounts provided herein are not to be construed as admissions of liability by the United States. The United States reserves its right to appeal the Court's rulings on liability and damages, incorporating all prior objections herein, and makes the following proposals subject to all its prior objections in the case. Further, the United States provides the attached Memorandum of Law and Compensation Framework in support of the footnotes and arguments made in the verdict forms.

Respectfully submitted,

BRIAN BOYNTON
Acting Assistant Attorney General
Civil Division

Ashley C. Hoff
United States Attorney

*/s/ James E. Dingivan*

James E. Dingivan
Assistant United States Attorney
Texas Bar No. 24094139
james.dingivan@usdoj.gov
Clayton R. Diedrichs
Assistant United States Attorney
Colorado Bar No. 16833
clayton.diedrichs@usdoj.gov
James F. Gilligan
Assistant United States Attorney
Texas Bar No. 07941200
jim.gilligan@usdoj.gov
Jacquelyn M. Christilles
Assistant United States Attorney
Texas Bar No. 24075431
jacquelyn.christilles@usdoj.gov
601 N.W. Loop 410, Suite 600
San Antonio, Texas  78216
Jocelyn Krieger
Trial Attorney
New Jersey Bar No. 065962013
jocelyn.krieger@usdoj.gov
175 N St. NE
Washington DC 20002
(210) 384-7372 (phone)
(210) 384-7312 (fax)

Attorneys for Defendant

United States District Court
Western District of Texas
San Antonio Division

Joe Holcombe, et. al,
    Plaintiffs,

    v.

United States of America,
    Defendant.

No. 5-18-cv-00555-XR
(consolidated cases)

**Defendant United States' Memorandum of Law and Compensation Framework**

    Fundamentally, the Federal Tort Claims Act (FTCA) is a compensatory rather than punitive statute. *Molzof v. United States*, 502 U.S. 301, 306 (1992). The elements of damages recoverable under the FTCA are the same as what may be recoverable under a Texas tort case except that no punitive damages[1] are recoverable against the United States, nor is interest prior to judgment recoverable. *See* 28 U.S.C. § 2674. Any award to the Plaintiffs in this case may not be punitive for the alleged wrongs of the Air Force employees who failed to submit the requisite paperwork regarding Devin Kelley nor may the award be designed to deter such failures. Any judgment awarded is paid by the indefinite appropriation provided to the Judgment Fund, and not by the Air Force or other agency. *See* 31 U.S.C. § 1304. Given this legal framework, the United States herein states the applicable elements of Texas state law and provides proposed judgments and analysis supporting the compensation framework referenced in the attached verdict forms.

---

[1] The "exemplary damages" that are recoverable under Tex. Civ. Prac. & Rem. Code § 71.009, are considered punitive damages under the common law.  *See Molzof*, 502 U.S. at 306-07 (stating "[t]he common-law definition of 'punitive damages' focuses on the nature of the defendant's conduct," and noting that the types of such damages includes "exemplary, punitive, or vindictive damages").

I.      **Applicable Law**

Under Texas law the damages for personal injuries "fall within two broad categories: economic and non-economic damages." *Golden Eagle Archery Inc. v. Jackson*, 116 S.W.3d 757, 763 (Tex. 2003). "Traditionally, economic damages are those that compensate an injured party for lost wages, lost earning capacity, and medical expenses. Non-economic damages include compensation for pain, suffering, mental anguish, and disfigurement." *Id*.

A.      **Economic Damages**

At the start of the damages trial, the United States presented this court with stipulations supported by the United States' experts concerning the economic losses suffered by Plaintiffs. Dkt 530. That stipulation has been subsequently amended to accurately reflect the economic losses supported by the evidence. Dkt 576. The stipulation reflects areas of agreement on the scope of economic losses. The areas of disagreement between Plaintiffs and the United States are largely factual and further detailed in the compensation framework proposed below and in the attached verdict forms.

The one area where the legal standard on economic losses is important in this case is regarding pecuniary loss in wrongful death cases. Texas courts permit recovery for "the care, maintenance, support, services, advice, counsel, and reasonable contributions of a *pecuniary value* that the [plaintiffs] would in reasonable probability have received from [the deceased] had [the deceased] lived." *Goodyear Tire & Rubber Co. v. Rogers*, 538 S.W.3d 637, 654 (Tex. App.—Dallas 2017, pet. denied) (emphasis in original) (citing *Moore v. Lillebo*, 722 S.W.2d 683, 687–88 (Tex. 1986)). These "pecuniary losses must be supported by evidence of actual monetary losses like lost wages, replacement costs, or other financial contributions … before those findings can be used as economic damages." *Id*. at 655–56. "This means that these items cannot be merely emotional damages, they must reflect an identifiable monetary value." *Id*. at 654.

4

"The definition [of pecuniary loss] will vary according to the class of beneficiary and decedent, e.g. spouse, parent, adult child or minor child." *Id.* Thus, "what may pass for evidence of lost monetary contributions a deceased able-bodied parent likely would have made to a young, minor child may not pass for evidence of lost monetary value that an elderly, disabled parent likely would have made to middle-aged, independent children or a spouse." *Id.*

## B.   Non-Economic Damages

Texas recognizes the following categories of non-economic damages: pain, suffering, mental anguish, disfigurement, and physical impairment. *Golden Eagle Archery Inc.*, 116 S.W.3d at 769. These categories of non-economic damages may overlap. *Sanchez v. Balderrama*, 546 S.W.3d 230, 237 (Tex. App.—El Paso 2017, no pet.) (citing *Golden Eagle Archery Inc.*, 116 S.W.3d at 769.

In addition to personal injury actions, some Plaintiffs have brought actions under the Texas Survival Statute, Tex. Civ. Prac. & Rem. Code Ann. § 71.021, on behalf of the estates of their relatives who died in the shooting. Crucially important in this case, in a survival action "[t]he damages recoverable are those which [the decedent] himself sustained while he was alive and not any damages claimed independently by the survival action plaintiffs . . . ." *Russell v. Ingersoll-Rand Co.*, 841 S.W.2d 343, 345 (Tex. 1992). Other Plaintiffs have brought wrongful death actions, as beneficiaries under Tex. Civ. Prac. & Rem. Code Ann. § 71.004. "[D]amages for a wrongful death action are for the exclusive benefit of the beneficiaries and are meant to compensate them for their own personal loss." *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 646 (Tex. 2009).

### 1.  Pain and Suffering

"Texas law provides that damages for pain and suffering are recoverable only if the person was aware or conscious after the accident." *Wellborn v. Sears, Roebuck & Co.*, 970 F.2d 1420,

1428 (5th Cir. 1992). Courts award a wide range of damages for fatal injuries. "The presence or absence of pain, either physical or mental, is an inherently subjective question." *SunBridge Healthcare Corp. v. Penny*, 160 S.W.3d 230, 248 (Tex. App.—Texarkana 2005, no pet.) (citing *Dollison v. Hayes*, 79 S.W.3d 246, 249 (Tex. App.—Texarkana 2002, no pet.)). "The duration of the pain and mental anguish is an important consideration." *Id*. at 250.

### 2.   Loss of Consortium/Loss of Companionship and Society

"Texas law recognizes causes of action for the loss of spousal and parental consortium." *Reeder v. Allport*, 218 S.W.3d 817, 819 (Tex. App.—Beaumont 2007, no pet.). In contrast, parents do not have a claim for lost consortium for a non-fatal injury to a child. *Roberts v. Williamson*, 111 S.W.3d 113, 119 (Tex. 2003). While these damages are necessarily imprecise, "juries cannot simply pull a number out of a hat. All damages must be tied to some evidence." *Puga v. RCX Sols., Inc.*, 922 F.3d 285, 297 (5th Cir. 2019). Damages are "measured by an amount that a reasonable person could possibly estimate as fair compensation." *Id*. at 296.

"A spouse may recover for the loss of the injured spouse's affection, solace, comfort, companionship, society, assistance, and sexual relations necessary to a successful marriage." *Reeder*, 218 S.W. 3d at 819. When evaluating damages for loss of spousal consortium one can look to (1) the nature of the marital relationship prior to the spouse's injury, (2) the deterioration of the marital relationship following the injury, and (3) the extent and duration of the spouse's injuries. *Puga*, 922 F.3d at 297.

For a child recovering for loss of parental consortium, factors considered include: "the severity of the injury to the parent and its actual effect upon the parent-child relationship, the child's age, the nature of the child's relationship with the parent, the child's emotional and physical

characteristics, and whether other consortium giving relationships are available to the child."
*Reeder*, 218 S.W. 3d at 819..

In a wrongful death case, the beneficiaries may recover for loss of companionship and
society. Loss of companionship and society is a component of lost consortium. *Strickland v.
Medlen*, 397 S.W.3d 184, 191 (Tex. 2013). It is "defined as the positive benefits flowing from the
love, comfort, companionship, and society the named plaintiff would, in reasonable probability,
experience if the decedent lived." *Moore v. Lillebo*, 722 S.W.2d 683, 688 (Tex. 1986).

### 3.  Loss of Services

According to the Texas Civil Pattern Jury Charges, a parent can recover damages for loss
of services, but the Plaintiff "must present some evidence of the performance and value of lost
services and must also establish that the injury precludes performance of such services." Texas
Civil Pattern Jury Charges PJC 28.6 (citing *Pojar v. Cifre*, 199 S.W.3d 317, 347 (Tex. App.—
Corpus Christi 2006, pet. denied)).

### 4.  Mental Anguish

Recovery for mental anguish is only permitted in certain contexts: where there is intent or
malice by the defendant; serious bodily injury to the plaintiff; a special relationship between the
parties; and "cases involving injuries of such a shocking and disturbing nature that mental anguish
is a highly foreseeable result." *City of Tyler v. Like*s, 962 S.W.2d 489, 496 (Tex. 1997). The last
category includes wrongful death, as well as "actions by bystanders for a close family member's
serious injury." *Id.*

"Mental anguish damages must be supported by direct evidence of the nature, duration, or
severity of the plaintiffs' anguish, thus establishing a substantial disruption in the plaintiffs' daily
routine, or other evidence of a high degree of mental pain and distress that is more than mere worry,

anxiety, vexation, embarrassment, or anger." *SunBridge Healthcare Corp.*, 160 S.W.3d at 251 (citing *Saenz v. Fid. & Guar. Ins. Underwriters*, 925 S.W.2d 607, 614(Tex. 1996)). In addition to evidence of compensable mental anguish, evidence must also be presented to justify the amount awarded. *Id*.

In a wrongful death case, some factors that may be considered in awarding damages include (1) the relationship between the decedent and the beneficiary, (2) the living arrangements of the parties, (3) any absence of the deceased from the beneficiary for extended periods, (4) the harmony of family relations, and (5) the parties' common interests and activities." *Lane v. Martinez*, 494 S.W.3d 339, 345-46 (Tex. App.—Eastland 2015, no pet.).

### 5.  Physical Disfigurement

Disfigurement has been defined as that which impairs the appearance of a person, or that which renders unsightly, misshapen or imperfect, or deforms in some manner. *Goldman v. Torres*, 341 S.W.2d 154, 160 (Tex. 1960); *Sunbridge*, 160 S.W.3d at 252.

### 6.  Physical Impairment

"To recover damages for physical impairment, a plaintiff must prove 'that the effect of his physical impairment extends beyond any impediment to his earning capacity and beyond any pain and suffering to the extent that it produces a separate and distinct loss that is substantial and for which he should be compensated.'" *Golden Eagle Archery, Inc.*, 116 S.W.3d at 765. The injury must be permanent and affect physical activities. *Id*.

## II.   Compensation Framework

The compensation of Plaintiffs for their injuries requires a detailed analysis of each individual Plaintiff's claims. The United States provides the attached verdict forms with footnoted

references to support specific awards but refers to the framework detailed here to address certain overarching issues of compensation.

### A. Economic Damages

Despite stipulations as to many aspects of the Plaintiffs' economic damages, areas of disagreement remain.

#### 1. Psychological Care

As expert testimony revealed, Plaintiffs will likely not require lifelong psychiatric treatment. Rather, Plaintiffs who avail themselves of treatment can realize a substantial decrease in clinically significant impairment with 5-16 sessions of evidenced based trauma-focused psychotherapies. *See* Trial Tr. 3484:7-3485:17. This recommended therapy will provide Plaintiffs with skills to make grieving less intense so that he or she is no longer overwhelmed by the grief that they experienced. *Id*. 3527:1-15.

According to Dr. Marx, studies have demonstrated that as much as 50 percent of those who receive the treatments no longer meet criteria for Post-Traumatic Stress Disorderafter the treatment. *Id*. at 3496:15-17. Two-thirds to 70 percent of individuals receiving the treatment have a marked clinically significant improvement. *Id*. at 7-9. As such, it is more likely than not that these Plaintiffs can recover given appropriate treatment. Similarly, depression, anxiety and other mental health disorders can be treated effectively with cognitive therapy, and studies have shown that is it as good as, if not better than treating with medications. *Id.* at 3499:15-3500:18

#### 2. Medications

The appropriate pricing for medications should be generic pricing. Dr. Jennifer Canter testified that over 90 percent of people taking drugs are on generic drugs. *Id*. at 3325:16-17. Similarly, Dr. MacKenzie utilized generic drug pricing in determining the appropriate pricing for

medications. *See* GEX 459 at 51. In analyzing whether or not a medication should be included in a life care plan, the Court should look to several factors including 1) if Plaintiff is currently taking the medication; 2) if the medication was tried previously by Plaintiff and failed to work; and 3) if the Plaintiff's treating physician has never tried prescribing the patient a particular medication. *See* Trial Tr. at 3568:21-3570:14. If a Plaintiff is currently taking a medication, that medication was generally included as reasonable in the United States' review of Plaintiff's life care plan. Conversely, if a Plaintiff had tried a medication and found that it did not work, or the side-effects were too great, such medications were generally not included. Medications that had never been previously prescribed by a treating physician were included in some circumstances if appropriate, as described by Dr. Scott. *See id.* at 3570:1-14.

### 3.  Home Health and Attendant Care

Home health and attendant care should only be included in a life care plan if the Plaintiff meets certain criteria. Inevitably, many people require some amount of home health care as they age. *See id*. at 2176:21-23. An individual may require home health and attendant care when they cannot safely and independently perform activities of daily living or instrumental activities of daily living. *See id*. 3664:5-8. Activities of daily living are those activities concerning personal care such as grooming, bathing, eating, or mobilizing. *Id*. at 3664:11-14. Instrumental activities of daily living are those more complex support items, such as shopping, driving, preparing meals, not just eating them but actually preparing them. *Id*. at 3644:15-19. The goal of providing certain care in a life care plan, such as surgeries and acute care, is to achieve maximum independence and return to the community and be independent at home. *See id*. at 3561:16-19. As such, unless Plaintiffs demonstrated that they would be unable to perform activities of daily living or instrumental activities as a result of the shooting, the United States disagreed with recommendations for extensive home health and attendant care.

### B.  Non-Economic Damages[2]

As detailed above, non-economic damage awards are permitted under the FTCA and Texas law. However, under the FTCA and Texas law, these awards remain compensatory and not punitive in nature. There are few FTCA judgements that involve shooting deaths and few cases involving shootings that apply Texas law in calculating non-economic damages.

### 1.  Wrongful Death Actions

To determine the appropriate compensation framework, this Court should review judgments involving shooting deaths and injuries, particularly in the FTCA context. Accordingly, the United States suggests the following cases, which either arise under Texas law or were brought pursuant to the FTCA and have factual similarities to the present case.

<u>Texas Jury Verdicts</u>

*Badall v. Durgapersad*, 454 S.W.3d 626 (Tex. App.—Houston [1st Dist.] 2014, pet. denied): The decedent was shot in the hand and abdomen; he died of his injuries the following morning. The decedent's estate was awarded $100,000 for his pain and suffering. His spouse was awarded a total of $145,250 for mental anguish and loss of companionship and society. His adult children were awarded $41,250 for mental anguish and loss of companionship and society.

---

[2] Plaintiffs assert that their damages awards are in line with the Fifth Circuit's maximum recovery rule.  However, Plaintiffs incorrectly assert that this rule looks to 150 percent of the highest verdict; in bench trials, the Fifth Circuit uses a 133 percent multiplier.  *Longoria v. Hunter Express, Ltd.*, 932 F.3d 360, 365 n.3 (5th Cir. 2019).  Moreover, the Fifth Circuit does not "apply a multiplier where such a calculation was a part of the award. Such a calculation could lead to explosive growth in damage awards resulting merely from the happenstance of there being several factually similar cases with similar damages decided in close temporal proximity." *Salinas v. O'Neill*, 286 F.3d 827, 831 (5th Cir. 2002). Of course, while the maximum recovery rule is used to determine whether a damages award is excessive, there is no requirement that a court reach the maximum award permitted under the rule.

*Plasencia v. Burton*, 440 S.W.3d 139 (Tex. App.—Houston [14th Dist.] 2013, no pet.): The decedent was a two-year-old child, who was killed accidentally by a shotgun kept unsecured in the defendant's office. The decedent's father, who discovered the child dead on the floor, was awarded $100,000 for mental anguish and loss of companionship and society.

Federal Tort Claims Act Verdicts[3]

*Champommier v. United States*, No. CV11-10538- MWF PJWX, 2013 WL 4502069 (C.D. Cal. Aug. 21, 2013): A Drug Enforcement Administration (DEA) officer shot and killed an 18-year-old who lived with his mother. The decedent's mother was awarded $2,000,000 and his father was awarded $1,000,000 in non-economic damage to compensate for the loss of "love, companionship, comfort, care, assistance, protection, affection, society, and moral support."[4]

*DeJesus v. U.S. Dep't of Veterans Affs.*, No. 02-0253, 2005 WL 2175174, at *2 (E.D. Pa. Sept. 6, 2005): A VA patient, who had been expelled from a VA residence, shot and killed his children and two of their friends; his children's mother witnessed their deaths. The children's estates were awarded between $150,000 and $200,000 for each child's pain and suffering; the mother was awarded $500,000 for her emotional distress from witnessing the deaths.

---

[3] The cases listed above are the most factually similar to the present matter.  Nonetheless, Plaintiffs cite a number of high damages awards in FTCA cases. Such awards are not, however, universal. *See, e.g.*, *Toppin v. United States,* No. 1:20CV1, 2021 WL 4896045, at *9 (M.D.N.C. Oct. 20, 2021) (wrongful death with damages for loss of society in amount of $684,375.00); *Honda v. United States*, 15-cv-317, 2017 WL 436450 (C.D.Cal. Jan. 20, 2017) (wrongful death judgment in the amount of $250,000); *Crantz v. United States*, No. CV 14-56-GF-BMM-JTJ, 2017 WL 128500, at *9 (D. Mont. Jan. 13, 2017) (wrongful death with total non-economic damages award of $150,000); *Beehler v. United States*, Case No. 99-cv-1977 (D. Minn May 22, 2002) ($868,000 total in non-economic damages to wife and four minor children).

[4] This award did not include an award for the decedent's pain and suffering prior to his death. The total non-economic damages were those damages awarded to his parents for their respective claims.

*Aguilar v. Drug Enf't Agency*, 14 F. App'x 994 (9th Cir. 2001): A DEA officer shot and killed the decedent. His spouse was awarded $481,806, his children were awarded either $200,000 or $125,000, and his parents were awarded $25,000.

*Marin v. United States*, 814 F. Supp. 1468 (E.D. Wash. 1992): The decedent was murdered by a felon who was released from custody at the insistence of an Immigration and Naturalization Service agent so the felon could work undercover for INS. The decedent survived for 15 minutes after being shot. Her estate was awarded $15,000 for her pain and suffering; her minor sons were each awarded $200,000 for loss of parental consortium.

Each of these cases reflects a shooting death and the applicable award for the non-economic damages provided. Given the facts and circumstances of this case, this Court should also consider the appropriate amount of compensation provided to victims of mass casualties.

Following the attacks of September 11, 2001, Congress created the "September 11th Victim Compensation Fund of 2001." Pub. L No. 107-42, 115 Stat. 230 (codified at 49 U.S.C. § 40101). The September 11th Victims Compensation Fund represents a congressional attempt to fairly compensate victims of a mass casualty event, and was designed to track traditional tort concepts. Final Report of the Special Master for the September 11th Victim Compensation Fund of 2001, Volume I [available at https://securitypolicylaw.syr.edu/wp-content/uploads/2012/09/ Special-Masters-Final-Report.pdf] ("Report") at 80. In the Final Report the Special Master noted that

> [E]ach person who was killed or injured in the September 11th attacks suffered horrific and grievous harm, and experienced the unspeakable events of that day in a unique way. Some victims experienced terror for many minutes, as they were held hostage by terrorists on an airplane or trapped in a burning building. Some victims had no warning and died within seconds of a plane hitting the building in which they worked . . . . Faced with the unfathomable task of placing a dollar amount upon the pain, emotional suffering, loss of enjoyment of life, and mental anguish suffered by the thousands of victims of the September 11th attacks, the Special Master and the Department determined that the fairest and most rational approach was to

establish a uniform figure for the pain and suffering of deceased victims and their
7dependents.

*Id.* at 40. It is therefore a valuation of fair compensation for the Court to consider.

According to the Special Master's Report,

[t]he Department and Special Master could not justifiably conclude one deceased
victim or one victim's family suffered more than another. Non-economic loss for
the decedents was intended to address such intangible factors as pain and suffering
and loss of enjoyment of life.) This system was administratively simple: each claim
received a uniform non-economic award of $250,000 for the death of the victim
and an additional non-economic award of $100,000 for the spouse and each
**dependent**[5] of the victim. (*emphasis added*)

The Regulations allow the Special Master to depart from the "presumed"
non economic loss in extraordinary circumstances. The Fund did, in fact, award
extraordinary non-economic loss in some instances: for example, the Fund
increased the presumed $250,000 non-economic loss award in situations where a
victim ultimately died after surviving for days, weeks or even months after the
tragedy."

Report at 9. The $250,000 presumed non-economic losses amount is also found 28 C.F.R.

104.44.

The $250,000 figure was reached by surveying

the amount of compensation available under existing federal programs for public
safety officers who are killed while on duty, or members of the United State military
who are killed in the line of duty while serving our nation. The presumed non-
economic loss award of $250,000 for victims who died as a result of the aircraft on
September 11 is roughly equivalent to the amounts received by survivors under
these other federal programs. The Regulations allow claimants to attempt to
demonstrate in a hearing any extraordinary circumstances that justify departure
from the presumed non-economic loss award."[6]

---

[5] To be eligible as a dependent, the person had to be living with the victim for the entire year or a
member of the household related to the victim in one of the ways specified by the IRS
guidelines. The victim must also have provided more than half of the purported dependent's total
support for the entire year. Report at 41-42.

[6] Extraordinary circumstances included "cases where multiple family members were killed on
September 11, where other members of the nuclear family unit died shortly before or after
September 11, where children were left with no parents, where victims survived the attacks but
subsequently died as a result of injuries sustained (for example, burn victims who later died from

Report at 40. The United States recognizes that some of the Plaintiffs in this matter would meet the type of criteria provided for in the Fund for a higher award due to the extraordinary circumstances of their loss.

This case also involves a mass casualty event, one in which it is difficult to quantify the pain and suffering experienced by the decedents who suffered through it or to award varying amounts for the decedents.

Based on the nature of this shooting and the considerations above, the United States proposes a baseline figure of $250,000.00 for the pain and suffering recoverable by the decedents who were aware or conscious after the shooting.[7]

Consistent with case-law and the award given by the September 11th fund, the United States proposes a non-economic award to each spouse and dependent of a decedent in the amount of $100,000.00 to compensate Plaintiffs' for their own personal loss of the deceased.[8] Texas recognizes that the categories of non-economic damages may overlap, *Golden Eagle Archery Inc.* at 780, which should be considered by this Court.

There are few cases where an adult child was awarded non-economic damages for loss of a parent. In the cases that the United States could locate, adult children appear to receive far less in non-economic damages than minor children of a decedent. *See Badall*, 454 S.W.3d at 632

---

complications), where victims were pregnant at the time of death, and where spouses of deceased victims lost an unborn child due to the trauma of September 11." Report at 43.

[7] In one instance, the United States proposes a higher award for E.G. who was transported to a trauma center and lived for several hours following the shooting.

[8] "The Fund adjusted the $100,000 presumed non economic award for dependents for other circumstances, such as loss of multiple family members. The Fund increased presumed non-economic loss in a total of 75 claims for deceased victims." Report at 43.

(Decedent shot in hand and abdomen, died the next morning – adult child received $30,000 for loss of companionship and $11,250 for mental anguish). As such, the United States proposes a range of $25,000.00 to $50,000.00 in non-economic damages for the adult children of a decedent, based on evidence presented at trial concerning the relationship with decedent and other factors.

Similarly, there are few shooting cases that present a situation in which a parent received an award for a deceased child. While the case law varies, multiple cases suggest that parents of minor children should recover in amounts similar to those of dependents, while parents of adult children recover less in non-economic damages. *Compare Plasencia*, 440 S.W.3d 139 (parent awarded $100,000 for death of two-year-old child); *with Aguilar*, 14 F. App'x 994 (parents of adult victim awarded $25,000) and *Champommier,* 2013 WL 4502069 (mother received $2,000,000 and father $1,000,000 in non-economic damage with no other award for other non-economic categories of damages). The United States thus proposes $500,000.00 in non-economic damages for parents of minor decedents, and $50,000.00 in non-economic damages for parents of adult decedents.

### 2.   Personal Injury Verdicts

As with wrongful death awards, to determine the appropriate compensation framework for personal injury awards in this case, this Court should review judgments involving shooting deaths and injuries, particularly in the FTCA context.

<u>Texas Jury Verdict</u>

*Reeder v. Allport*, 218 S.W.3d 817, 819 (Tex. App.—Beaumont 2007, no pet.): The plaintiff was accidentally shot in the neck, resulting in permanent paralysis.  The plaintiff was awarded a total of $1.4 million in non-economic damages; his wife was awarded $1.076 million for loss of consortium; and his teenage children were awarded between $125,000 and $175,000 each.

<u>FTCA Verdict</u>

*Romo v. United States*, No. 4:12-cv-041, 2015 WL 12940759 (D. Ariz. Feb. 6, 2015): a Border Patrol Agents shot a Mexican citizen in his left flank. The plaintiff continued to suffer from pain, and required additional surgery, in addition to suffering from PTSD. He was awarded a total of $162,834.66 for pain and suffering.

<u>Other Bench Verdict</u>

*Frances v. Lewis (In re Lewis)*, No. 05-91520-H5-7, 2009 Bankr. LEXIS 3427, at *7 (Bankr. S.D. Tex. Oct. 26, 2009): In this case tried in bankruptcy court, the plaintiff was shot at close range in the stomach, back, knee, thigh, and arm; he suffered from back pain, limited movement in his dominant hand, knee pain, and various gastro-intestinal problems. The plaintiff was awarded $2,000,000 for all non-economic damages.

Shooting cases involve a wide range of injuries. An individualized amount for personal injury damages is provided in the attached verdict forms. As noted, the United States has already stipulated to reasonable economic damages for injured Plaintiffs. With regard to non-economic damages, the United States proposes a range of $10,000.00 - $1,500,000.00 in non-economic damages for those individuals physically injured in the shooting. Because the United States has already stipulated to, in some cases, millions of dollars in economic damages for these Plaintiffs, the total award should be considered when compared to other compensatory amounts.[9]

---

[9] There was not a formula for non-economic injuries in the 9/11 Compensation Fund. The Special Master relied upon the non-economic loss methodology for deceased victims and adjusted the losses based upon the extent of the victim's physical harm. In general, the non-economic awards for physical injury victims were lower than the presumed non-economic award for deceased victims, reflecting the fact that most injuries were relatively moderate and did not result in long-term physical pain and suffering. Approximately 53% of the non-economic awards for physical injury claims were under $100,000. Only 4% of the non-economic awards for physical injury victims exceeded the $250,000 awarded for deceased victims. The Fund did not provide non-economic awards for the dependents of physical injury victims. Report at 43. According to data provided on the Compensation Fund website, compensation ranged for damages related to physical injuries ranged from $10,000 – over $1 million.

Recognizing that the dependents of the survivors of this shooting have claims under Texas law for non-economic damages, the United States proposes a range of $0 - $250,000.00 for the dependents of those individuals physically injured in the shooting. For adult children of survivors, as with the adult children survivors of the deceased, the United States recommends a figure lower than that awarded to the dependents. As such, the United States proposes $0 - $25,000.00 for the adult children of the survivors that have filed a claim in this matter.

### 3.   Use of Settlement Comparison

Plaintiffs point to the settlement of the claims against the United States by the victims of the shooting at the Mother Emanuel Church in Charleston, South Carolina. Dkt. 578 at 5-7. The United States objects to the use of settlements as a basis for comparison as a violation of Federal Rule of Evidence 408. While the rule is framed in terms of "the disputed claim," the 1972 Advisory Committee Notes point out that "it is apparent that a similar attitude must be taken with respect to completed compromises when offered against a party thereto." The Notes further explain the reasoning behind the rule:

> (1) The evidence is irrelevant, since the offer may be motivated by a desire for peace rather than from any concession of weakness of position. The validity of this position will vary as the amount of the offer varies in relation to the size of the claim and may also be influenced by other circumstances. (2) A more consistently impressive ground is promotion of the public policy favoring the compromise and settlement of disputes.

On the latter point, using a party's previous settlement as a basis for a judgment would discourage a party such as the United States, which is subject to a multitude of lawsuits, from settlement. On that ground alone, the Charleston settlement should not be considered here.

---

https://www.vcf.gov/program-reporting/compensation-decisions.  These numbers included non-economic and economic damages numbers.

Plaintiffs' brief demonstrates the validity of the Committee's first reason. Plaintiffs have no knowledge of any kind regarding what injuries, damages, or categories which the Charleston settlement was intended to address under South Carolina law. They do not compare any of the individual Charleston plaintiffs with any individual plaintiff here. Unlike the September 11th Fund, there was no explanation of the methodology used to reach this settlement. Nor is there any memorandum, opinion, or record regarding the injuries, experiences during the shooting, post-shooting recoveries, or impact on families, for the Charleston Plaintiffs that this Court could refer to for comparison. There is thus no basis on which the Court can properly assess and compare the settlement value in the Charleston matter to this case.

Plaintiffs attempt to justify their use of this settlement by asserting, without any legal support, that "equal treatment of the law is a constitutional principle vitally important to this Judgment." Plaintiffs cite to nothing to support this contention. There is no constitutional right regarding the amount of damages to be awarded in tort suits.[10]  Moreover, the history of FTCA belies the assertion that the United States is required to provide equal treatment to all claimants via settlements. The original FTCA authorized the Attorney General to settle claims "with a view to doing substantial justice," and required court approval of all settlements. Pub. L. 79-601 § 413, 60 Stat. 845 (1946) (currently codified as amended in 28 U.S.C. § 2677).  Both the requirement of court approval, and the language regarding "substantial justice" subsequently were eliminated. Pub. L. 89-503 § 3, 80 Stat. 307 (1966) (eliminating requirement for court approval); Pub. L. 80-773, § 1, 62 Stat. 984 (1948) (eliminating language regarding "substantial justice").  Further, the wide range of cases cited by both parties demonstrate that even judgments in FTCA cases "vary

---

[10] There is no constitutional right to bring tort claims against a sovereign at all; the United States enjoys sovereign immunity absent a waiver. *F.D.I.C. v. Meyer*, 510 U.S. 471, 475, 114 S. Ct. 996, 1000, 127 L. Ed. 2d 308 (1994)

wildly." *Cf. Vogler v. Blackmore*, 352 F.3d 150, 158 (5th Cir. 2003) (regarding awards for the death of a child).

Finally, Plaintiffs allege that the actions of the United States employees were "more egregious" here than in the Charleston case. In addition to lacking any substantiation for that claim, Plaintiffs are suggesting that they are entitled to a higher award based on "the enormity of [the] offence rather than the measure of compensation to the Plaintiffs." *Molzof v. United States*, 502 U.S. 301, 306 (1992). Such damages would be punitive, rather than compensatory, and are therefore barred by the FTCA. *Id.*, 28 U.S.C. § 2674.

The United States thus objects to the use of the Charleston settlements to determine the appropriate amounts of damages here.

Respectfully submitted,

BRIAN BOYNTON
Acting Assistant Attorney General
Civil Division


ASHLEY C. HOFF
United States Attorney

*/s/ James E. Dingivan*
James E. Dingivan
Assistant United States Attorney
Texas Bar No. 24094139
james.dingivan@usdoj.gov
Clayton R. Diedrichs
Assistant United States Attorney
Colorado Bar No. 16833
clayton.diedrichs@usdoj.gov
James F. Gilligan
Assistant United States Attorney
Texas Bar No. 07941200
jim.gilligan@usdoj.gov
Jacquelyn M. Christilles
Assistant United States Attorney
Texas Bar No. 24075431
jacquelyn.christilles@usdoj.gov
601 N.W. Loop 410, Suite 600

San Antonio, Texas  78216
Jocelyn Krieger
Trial Attorney
New Jersey Bar No. 065962013
jocelyn.krieger@usdoj.gov
175 N St. NE
Washington DC 20002
(210) 384-7372 (phone)
(210) 384-7312 (fax)

Attorneys for Defendant