IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| HOLCOMBE, et. al,<br><br>Plaintiffs<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant | NO. 5:18-CV-00555-XR<br>(consolidated cases) |

### PLAINTIFFS' SUPPLEMENTAL TRIAL BRIEF

This Court asked the Parties to file any supplemental briefs concerning the damages portion of the trial. The Plaintiffs would address the Government's misleading use of the 9/11 insurance fund and the specific questions the Court had concerning certain Plaintiffs.

**1.** *The Government's reliance on the 9/11 fund was not based in case law or Fifth Circuit precedent.*

The Government asks this Court to re-write Texas tort law to allow impermissible collateral source deductions and impose a prohibited damages cap by using its 9/11 fund method. In contrast, federal courts have actually addressed damage calculations stemming from the 9/11 tragedy which the Court will find closely tracks the Plaintiffs' damage model. *E.g.*, *In re Terrorist Attacks on Sept. 11, 2001*, No. 03 MDL 1570, 2012 WL 4711407, at *2 nn.1–2 (S.D.N.Y. Oct. 3, 2012). There, the Southern District of New York

found the following were appropriate loss of consortium and mental anguish damages for a single death:

**COMBINED LOSS OF CONSORTIUM & MENTAL ANGUISH AWARD**

| | |
|---|---|
| Spouse: | $12,500,000.00 |
| Parent: | $8,500,000.00 |
| Child: | $8,500,000.00 |
| Sibling: | $4,250,000.00 |
| **Total:** | **$33,750,000.00** |

Notably, these figures do not account for inflation or the 150% maximum-recovery rule. *See id.* at *2 nn.1–2.

Due to the limited nature of the fund, it could not place the injured victims "nearly as possible in the position that he would have occupied but for the injury in question," as required by Texas law. *Reaugh v. McCullum Exploration Co.*, 163 S.W.2d 620, 487 (Tex. 1942). Instead, the fund reduced the claimants' recoveries by impermissible insurance collateral source.[1] However, Texas law prohibits such deductions. *Mid-Century Ins. Co. v. Kidd*, 997 S.W.2d 265, 274 (Tex. 1999). And while the Government glossed over it, the Special Master confirmed that the use of collateral source deductions are not offset in wrongful death cases.[2]

---

[1] Final Report of the Special Master, at 9, 44, *available at* https://securitypolicy-law.syr.edu/wp-content/uploads/2012/09/Special-Masters-Final-Report.pdf.

[2] *Id.*, at 44.

Not only did the 9/11 fund account for insurance payments, but the compensation scheme itself was derived from insurance payouts—another collateral source. *Infra*, n.1, at 40 n.126. Moreover, the fund did not consider—or even *know*—the specific injuries of most victims. *Id.* at 40. As a result, the Special Master noted that it would not be "wise" to use the structure of the 9/11 fund for future injury compensation. *Id.* at 83.

### 2.  *Mental anguish & physical impairment damages of Lisa McNulty.*

The Court questioned the size of the mental anguish and physical impairment damages to Ms. Lisa McNulty. Dmg. Trial Tr. 3749. Here, Ms. McNulty seeks mental anguish damages individually for $250,000. ECF No. 578, at 22 & n.219 (Nov. 24, 2021). She also seeks mental anguish damages on behalf of her daughter's minor son, J.M., in the amount of $6,540,750.00. *Id.* at 9 & n. 45. However, Ms. McNulty does not seek physical impairment damages in her individual capacity; she only seeks impairment damages on behalf of J.M., who was shot multiple times in the church. *Id.* at 9 & n.47.

The damages sought by Ms. McNulty, individually and on behalf of J.M., are conservative and appropriate. Her individual award is based on Ms. McNulty being one of the first individuals at the scene. PEX-900, at 35. Like many of the shooting survivors, she experienced the sounds and smells of the shooting. Dmg. Trial Tr. 295. She observed firsthand the injuries and death of her only daughter, Tara. *Id.* at 301–302. She lives with that grief and with the consequences of her daughter's death, including suicidal thoughts. *Id.* at 323–24. And Dr. Feltoon's psychological report describes the consequences of her daughter's death resulting in multiple mental health diagnoses and a full range of mental health problems. PEX-12012, at 1–5. $250,000.00 for past

*and* future mental anguish arising from the violent loss of Ms. McNulty's only daughter is modest and supported by the evidence.

Ms. McNulty's requested damages on behalf of J.M. are similarly justified. J.M. was 12 years old when he was shot multiple times. His mental anguish award stems from being shot in the church; watching and hearing his mother get shot and killed; watching and hearing his sister and aunt get shot; and the lifelong consequences of experiencing the shooting. *See* ECF No. 278, at 9 n.45. Also, the Court may rely on Lisa McNulty and Hailey McNulty's testimony as to the mental anguish and impairment that J.M. has suffered as a result of losing his mother and being shot in the church. Dmg. Trial Tr. 268, 273-276 (H. McNulty); Dmg. Trial Tr. 306, 314, 319-322 (L. McNulty).

The Court may also rely on J.M.'s medical records and the psychological report of Dr. Feltoon detailing the permanent consequences of the shooting on 12-year-old J.M. PEX-12030 (BAMC medical records, see generally); PEX-12038 (Dr. Feltoon psychological report). Similarly, J.M.'s impairment damages are appropriate, as described in his medical records and on the trial record. ECF No. 278, at 9 n. 47; PEX-12030 (BAMC medical records, see generally).

For example, J.M. was recently fitted for orthotics arising out of his injuries. PEX-12029, at 57. Post-shooting, he underwent multiple soft-tissue debridement procedures as well as an open reduction internal fixation. *Id.* at 58. He has "chronic pain issues with higher level activity." *Id.* at 60. And he has

a surgically implanted plate that is at risk for early failure and may require an additional bone graft and stabilization procedure. *Id.* at 71.[3]

### 3. *Margarette Vidal's mental anguish & physical pain damages.*

Next, the Court asked about the evidence supporting Ms. Margarette Vidal's mental anguish and physical pain damages. Dmg. Trial Tr. 3748. Ms. Vidal's pain and mental anguish damages arise from being shot multiple times in the Church and watching her friends get shot and murdered. ECF No. 578, at 10 n.75; PEX-16019 (drawing of immediate injuries). As a result of her injuries, she was hospitalized for approximately eight (8) months. PEX-16018, at 44. She underwent a total of 9 surgical procedures and suffered multiple complications in the hospital. *Id.* All of which caused mental anguish, physical pain, and suffering. Dmg. Trial Tr. 1637. After hospitalizations and physical therapy rehabilitation, she did not return home for approximately a year after the shooting. *Id.* Currently, she experiences daily pain and discomfort in her back where she was also shot. *Id.* at 1639. Her sleep is disrupted by the pain she feels from her scars. *Id.* at 1642. Ms. Vidal's extensive medical records document the physical pain and mental anguish she suffered because of the shooting. PEX-16000–PEX-16010.

Both Plaintiffs' and Defendant's experts diagnosed Ms. Vidal with PTSD because of the shooting. PEX-16016 (Dr. Feltoon's psychological report); GEX-619 (Government expert Dr. Marx' psychological report); The Government's

---

[3] One other outstanding issue concerning the McNulty family: the Government stipulated to $128,859 in economic damages incurred by Tara McNulty's death. ECF No. 576, at 11 ¶ 29. This amount was not included in the Government's charge filing on record. However, the Government has corrected this oversight in the spreadsheets provided to the Court (under the "Personal Injury" tab, columns H & I, rows 19 & 20).

expert, Dr. Marx, added a diagnosis of Major Depressive Disorder because of the shooting. GEX-619.  In summary, since the shooting, her "physical and emotional problems negatively impact her ability to function in normal, everyday activities. … She sees her future as being bleak. Her hopes, plans, and dreams of the future are no longer realistic for her because of her disability and constant pain." PEX-16016, at 5–6. Ms. Vidal's mental anguish, physical pain, suffering, and impairment were also confirmed by her daughter's—Monica Shabbir—trial testimony. Dmg. Trial Tr. 1674-1699 (M. Shabbir).

### 4. *Solis-Ramirez family's non-economic damages.*

The Court also asked for the basis of Ms. Solis and Mr. Ramirez pain and mental anguish awards as well as evidence of their common law marriage. Dmg. Trial Tr. 3747–48. Their mental anguish awards are based on being shot at the Church, experiencing the horror of the shooting, seeing their partner also get shot, and living with the lifelong sequela of the shooting. ECF No. 578, at 10 & n. 65, 70. Ms. Solis' trial testimony and Mr. Ramirez' stipulated-deposition testimony describes the horror and consequences of the shooting. *E.g.*, Dmg. Trial Tr. 1232–38 (Solis' trial testimony); PEX-918 (Ramirez deposition). Both Plaintiffs' and Defendant's experts diagnosed Ms. Solis with PTSD and Major Depressive Disorder because of the shooting. PEX-14047 (Dr. Feltoon's psychological report); GEX-592 (Government expert Dr. Marx' psychological report); PEX-14053 (Medical illustration of injury); PEX-20028 (recording of defense psychologist medical examination).

The Government's experts agreed that all of Ms. Solis' current mental anguish conditions are caused solely by the shooting, and not any pre-existing conditions. *See,* GEX-592, at 10-11 (Government expert Dr. Marx's psychological report). What's more, the Government's expert concluded that Ms.

Solis' "PTSD symptoms that are related to the shooting are clearly associated with a *stark decline* in functioning and quality of life," and that her shooting related injuries cause her "*chronic pain* and *decreased mobility* stemming from the shooting-related injuries. The physical symptoms prevent her from engaging fully in life as she would like, exacerbating her symptoms of PTSD and depression." GEX-592, at 10-11 (emphasis added).

And both sides' experts have diagnosed Mr. Ramirez with PTSD. PEX-14047 (Dr. Feltoon's psychological report); GEX-592 (Government expert Dr. Marx' psychological report). The Government's expert, Dr. Marx, added a diagnosis of Major Depressive Disorder because of the shooting. GEX-592. See also, PEX-14053 (Medical illustration of injury); PEX-20028 (recording of defense psychologist medical examination).

Finally, their common law marriage status is based solely on Texas law on informal marriage, which does not require a marriage license. Under Texas law, an informal marriage may be proved by evidence that (1) the man and women agreed to be married; (2) after the agreement they lived together in this state as husband as wife; and (3) they represented to others they were married. Tex. Fam. Code § 2.401(a)(2). Contemporaneous records show that they held each other out as husband and wife, they live together, and have agreed to be married. *E.g.*, PEX-14026, at 13 (Solis medical record Nov. 11, 2017); PEX-14020, at 1, 2 (Mr. Ramirez describing having been married to Ms. Solis for 10 years and as his "second wife."); *see also* ECF No. 578, at 117 n. 107–108 (identifying other documents similarly holding themselves out as husband and wife).

**5.  *Z.Z.'s loss of service injuries.***

Then, the Court asked Plaintiffs' counsel to provide some clarification regarding the evidence related to the loss of services damages of the minor child Z.Z. Dmg. Trial Tr. 3847. Under Texas law, a plaintiff may recover pecuniary losses arising out of the loss of household services even in the absence of specific evidence of the amount of contributions. *Ellis v. United States*, 673 F.3d 367, 379 (5th Cir. 2012). For example, parents may recover the loss of services such as running errands, doing yard work, washing dishes, sweeping floors, mopping, dusting, washing windows, making minor repairs, cutting hay, feeding animals, washing laundry, performing farm work, ironing clothes, and generally helping around the house. *See e.g.*, *Green v. Hale*, 590 S.W.3d 231, 235–36 (Tex. Civ. App.—Tyler 1979, no writ); *Gonzalez v. Hansen*, 505 S.W.2d 613, 615 (Tex. Civ. App.—San Antonio 1974, no writ). Importantly, "[t]he monetary value of a child's lost services is not akin to and cannot be measured with the mathematical precision of lost wages." *Pojar v. Cifre*, 199 S.W.3d 316, 347 (Tex. App.—Corpus Christi 2006, pet. denied). Factfinders maintain significant discretion in determining loss of household services. *Ellis*, 673 F.3d at 379.

Uncontested evidence at trial regarding Z.Z. showed that she suffered significant injuries in the shooting and has severe physical impairments resulting from those injuries, and further will continue to suffer from these impairments for the remainder of her childhood and the remainder of her life. These injuries cause Minor Plaintiff Z.Z. to have the following specific impairments: Decreased ability to perform housework, cooking & clean-up, shopping, etc.; Decreased ability to walk; Decreased external mobility, *e.g.*, travel, community ambulation, etc. PEX-3231, at 52. Plaintiffs' mother also testified

that the nature of her injuries causes her to fatigue easily and fall, and this prevents her from performing tasks such as scrubbing the floors or vacuuming. Dmg. Trial Tr. 1552:8-14.

### 6. *Categorization of Certain Damages for Braden, Corrigan, and Marshall*

At trial, the Court inquired as to the appropriate characterization of damages of certain wrongful death claimants as Pecuniary Losses or Loss of Inheritance. Dmg. Trial Tr. 3848:24-3849:1.

The Fifth Circuit has previously held that in a wrongful death action under Texas law, award of damages to decedents' families for their pecuniary loss, based on decedents' tax returns as basis for estimates of decedents' future earnings, and denial of damages for loss of inheritance, was not clearly erroneous, where families were awarded present value of full amount of decedents' future salaries, net of taxes and decedents' personal expenses. *Moorhead v. Mitsubishi Aircraft Int'l, Inc.*, 828 F.2d 278 (5th Cir. 1987).

Loss of Inheritance Damages have been held to be the present value that the deceased, in reasonable probability, would have added to the estate and left at natural death to the statutory wrongful-death beneficiaries but for the wrongful act causing premature death. *See Tex. Yowell v. Piper Aircraft Corp.*, 703 S.W.2d 630 (Tex. 1986).

The parties have conferred on the topic and stipulated these damages are appropriately recoverable, supported by evidence and should be categorized as either Loss of Inheritance or Pecuniary Loss, however the Court sees fit. While the parties dispute the appropriate amount of damages, the parties

have agreed not to contest the categorization of these damages in the future. *See* ECF No. 581.

### 7. *Estate of Jennifer Macias' damages.*

Finally, the Court requested that Plaintiffs' counsel provide some clarification regarding the damages of the Estate of Jennifer Macias. Dmg. Trial Tr. 3858:5–18. Plaintiffs clarify here that there are only two categories of damages to which the Estate of Jennifer Macias is entitled: *past* loss of spousal consortium and *past* lost household services. Because of her death, there is no future component to her damages.

Accordingly, Plaintiff Juan Macias, as Representative of the Estate of Jennifer Macias, requests that the Court award a total of $480,000.00. That amount is broken down as follows: First, $432,000.00 for past loss of spousal consortium ($9,000 per month for the losses associated with the damages to the Macias' mutual right of the husband and wife to that affection, solace, comfort, companionship, society, assistance, sexual relations, emotional support, love, and felicity necessary to a successful marriage during the 48 months that Mrs. Macias survived her husband's injury); and second, $48,000.00 for past lost household services ($1,000 per month for the loss of the performance of household and domestic duties by a spouse to the marriage during the 48 months that Mrs. Macias survived her husband's injury).

Respectfully Submitted,

/s/ Jamal K. Alsaffar
**Jamal K. Alsaffar**
JAlsaffar@nationaltriallaw.com
Texas Bar No. 24027193
**Tom Jacob**
TJacob@nationaltriallaw.com
Texas Bar No. 24069981
**Whitehurst, Harkness, Brees, Cheng, Alsaffar & Higginbotham & Jacob PLLC**
7500 Rialto Blvd, Bldg. Two, Ste 250
Austin, TX 78735
Office 512-476-4346
Fax 512-476-4400
   Counsel for Vidal, McKenzie, Solis, McNulty, and Wall

/s/ Jason P. Steed
**Jason P. Steed**
JSteed@kilpatricktownsend.com
Texas Bar No. 24070671
**Kilpatrick Townsend & Stockton LLP**
2001 Ross Avenue, Suite 4400
Dallas, TX 75201
Office 214-922-7112
Fax 214-853-5731
   Counsel for Vidal, McNulty, and Wall

/s/ April A. Strahan
**April A. Strahan**
april@ammonslaw.com
Texas Bar No. 24056387
**Robert E. Ammons**
rob@ammonslaw.com
Texas Bar No. 01159820
**The Ammons Law Firm**
3700 Montrose Blvd.
Houston, TX 77006
Office 866-523-1603
Fax 713-523-4159
   Counsel for Holcombe, Ramsey, Curnow & Macias

/s/ Daniel J.T. Sciano
**Daniel J.T. Sciano**
DSciano@tsslawyers.com
Texas Bar No. 17881200
**Tinsman & Sciano**
10107 McAllister Freeway
San Antonio, TX 78216
Office 210-225-3121
Fax 210-225-6235
   Counsel for Amador

/s/ Daniel Barks
**Daniel D. Barks,** *pro hac vice*
ddb@speiserkrause.com
**Speiser Krause, P.C.**
5555 Glenridge Connector, Suite 550
Atlanta, GA 30342
Office 571-814-3344
Fax 866-936-6382
   Counsel for Holcombe

/s/ Mark Collmer
**Mark W. Collmer**
mark@collmerlaw.com
Texas Bar No. 04626420
**Collmer Law Firm**
3700 Montrose
Houston, TX 77006
Office 713-337-4040
   Counsel for Holcombe

/s/ Dennis Peery
**Dennis Charles Peery**
d.peery@tylerpeery.com
Texas Bar No. 15728750
**R. Craig Bettis**
cbettis@tylerpeery.com
Texas Bar No. 24040518
**Tyler & Peery**
5822 West IH 10
San Antonio, TX 78201
Office 210-774-6445
   Counsel for Uhl

/s/ Tim Maloney
**Tim Maloney**
Texas Bar No. 12887380
timmaloney@yahoo.com
**Paul E. Campolo**
pcampolo@maloneyandcampolo.com
Texas Bar No. 03730150
**Maloney & Campolo, L.L.P.**
926 S. Alamo
San Antonio, TX 78205
Office (210) 465-1523
   Counsel for Ramsey

/s/ George LeGrand
**George LeGrand**
tegrande@aol.com
Texas Bar No. 12171450
**Stanley Bernstein**
Texas Bar No. 02225400
**LeGrand & Bernstein**
2511 N. Saint Mary's St.
San Antonio, Texas 78212
Office 210-733-9439
Fax 510-735-3542
   Counsel for Wall & Solis

/s/ Joseph M. Schreiber
**Joseph M. Schreiber**
joe@lawdoneright.net
Texas Bar No. 24037449
**Erik A. Knockaert**
erik@lawdoneright.net
Texas Bar No. 24036921
**Schreiber | Knockaert, PLLC**
701 N. Post Oak Rd., Suite 325
Houston, TX 77024
Phone (281) 949-8904
Fax (281) 949-8914
   Counsel for Brown

| | |
|---|---|
| /s/ Justin Demerath<br>**Justin Demerath**<br>jdemerath@808west.com<br>Texas Bar No. 24034415<br>**O'Hanlon, Demerath & Castillo**<br>808 West Ave.<br>Austin, TX 78701<br>Office 512-494-9949<br>    Counsel for Corrigan, Braden, Warden, Stevens, Pachal, McCain, & Poston | /s/ Jason Webster<br>**Jason Webster**<br>jwebster@thewebsterlawfirm.com<br>Texas Bar No. 24033318<br>**The Webster Law Firm**<br>6200 Savoy<br>Suite 640<br>Houston, TX 77036<br>    Counsel for Lookingbill |
| /s/ Brett Reynolds<br>**Brett T. Reynolds**<br>btreynolds@btrlaw.com<br>Texas Bar No. 16795500<br>**Brett Reynolds & Associates, P.C.**<br>1250 N.E. Loop 420, Suite 420<br>San Antonio, TX 78219<br>(210)805-9799<br>    Counsel for Workman, Colbath, and Harris | /s/ Marion M. Reilly<br>Marion M. Reilly<br>**Hilliard Munoz Gonzales, L.L.P.**<br>719 S. Shoreline - Ste 500<br>Corpus Christi, TX 78401<br>(361) 882-1612<br>361/882-3015 (fax)<br>marion@hmglawfirm.com<br>    Counsel for McMahan |
| /s/ Hugh J. Plummer<br>**Hugh J. Plummer**<br>hplummer@thomasjhenrylaw.com<br>**Law Office of Thomas J. Henry**<br>4715 Fredricksburg<br>San Antonio, TX 78229<br>(210) 585-2151<br>(361) 985-0601 (fax)<br>    Counsel for McMahan | /s/ Diego Lopez<br>**Diego Lopez**<br>**Anderson & Associates Law Firm**<br>2600 SW Military Drive, Suite 118<br>San Antonio, TX 78224<br>(210) 928-9999<br>(210) 928-9118 (fax)<br>diego@diegolaw.com<br>    Counsel for Ward |

## CERTIFICATE OF SERVICE

By our signatures above, we certify that a copy of Plaintiffs' Supplemental Trial Brief has been sent to the following on December 9, 2021 via the Court's CM/ECF notice system.

/s/ Jamal K. Alsaffar
**Jamal K. Alsaffar**

BRIAN BOYNTON
Acting Assistant Attorney General
Civil Division

JOHN PANISZCZYN, Civil Chief
United States Attorney's Office
Western District of Texas

ASHLEY C. HOFF
United States Attorney
Western District of Texas

JAMES G. TOUHEY, JR.
Director, Torts Branch
United States Dept. of Justice
Civil Division

KIRSTEN WILKERSON
Assistant Director, Torts Branch
United States Dept. of Justice
Civil Division

STEPHEN E. HANDLER
Senior Trial Counsel, Torts Branch
United States Dept. of Justice
Civil Division

PAUL DAVID STERN
Trial Attorney, Torts Branch
United States Dept. of Justice
Civil Division

STEPHEN TERRELL
Trial Attorney, Torts Branch
United States Dept. of Justice
Civil Division

CLAYTON R. DIEDRICHS
Assistant United States Attorney

JAMES E. DINGIVAN
Assistant United States Attorney

JIM F. GILLIGAN
Assistant United States Attorney

JACQUELYN M. CHRISTILLES
Assistant United States Attorney