```
 1              IN THE UNITED STATES DISTRICT COURT
              FOR THE WESTERN DISTRICT OF TEXAS
 2                    SAN ANTONIO DIVISION

 3
   JOE HOLCOMBE, ET AL,            .
 4                                 .
                PLAINTIFFS,        .
 5        vs.                      . DOCKET NO. 5:18-CV-555-XR
                                   .
 6 UNITED STATES OF AMERICA,       .
                                   .
 7             DEFENDANT.          .
                                   .
 8

 9
               TRANSCRIPT OF PRETRIAL PROCEEDINGS
10          BEFORE THE HONORABLE XAVIER RODRIGUEZ
                UNITED STATES DISTRICT JUDGE
11                    MARCH 25, 2021

12

13

14

15 APPEARANCES:
   FOR THE PLAINTIFFS:     JAMAL K. ALSAFFAR, ESQUIRE
16                         WHITEHURST HARKNESS BREES CHENG
                            ALSAFFAR HIGGINBOTHAM AND JACOB
17                         7500 RIALTO BOULEVARD, BUILDING TWO
                           SUITE 250
18                         AUSTIN TX 78735

19

20 FOR THE DEFENDANT:      PAUL D. STERN, ESQUIRE
                           UNITED STATES DEPARTMENT OF JUSTICE
21                         THREE CONSTITUTION SQUARE
                           175 N STREET, NE
22                         WASHINGTON DC 20002

23
   REPORTED BY:            GIGI SIMCOX, RMR, CRR
24                         OFFICIAL COURT REPORTER
                           UNITED STATES DISTRICT COURT
25                         SAN ANTONIO, TEXAS
```

1          *(San Antonio, Texas; March 25, 2021, via Zoom*
2   *videoconference.)*
3          THE COURT:  Good afternoon, everyone.  Let's call 18
4   civil 555, Joe Holcombe and others versus the United States.
5          Who do we have for the plaintiffs' group?
6          MR. ALSAFFAR:  Jamal Alsaffar for the plaintiffs.
7   Good afternoon, Judge.
8          THE COURT:  Afternoon.  Thank you.
9          And who do we have for the government?
10          MR. STERN:  Good afternoon, Your Honor.  On behalf of
11   the United States, Paul Stern.
12          THE COURT:  Thank you.
13          So we're here for a final pretrial conference.  I
14   guess the first thing I want to take up is exhibits.  So
15   tomorrow is the deadline for the parties to present to us all
16   the exhibits that are not objected to.  Are we on target to do
17   that?
18          Let's start with the plaintiffs.
19          MR. ALSAFFAR:  Yes, Your Honor, we are.  We're very
20   close actually, but we're definitely on target and we'll
21   definitely have it filed tomorrow.
22          THE COURT:  Agreement from the government on that, or
23   do we have an issue?
24          MR. STERN:  There is agreement, Your Honor.
25          I think we are largely in agreement so we will be

1  able to provide a list tomorrow of both joint exhibits and I

2  believe each party's exhibits that will be objected to by the

3  other side.

4          So I don't know how the Court intends to address

5  those objected to exhibits, whether it will be the first day

6  of trial or have another pretrial conference.  Obviously I'll

7  defer to the Court on that issue.

8          THE COURT:  Yeah.  So the way I was going to handle

9  that is the very first day of trial I was going to admit

10  everything that was not objected to.  And then as to exhibits

11  that have an objection, I'll make a ruling at the time the

12  party tenders the exhibit for admission.  I'll hear the

13  objection and I'll make a ruling.

14          Anybody, questions on that?

15          MR. ALSAFFAR:  Not from plaintiffs, Your Honor.

16          THE COURT:  Great.

17          Does that help, Mr. Stern?

18          MR. STERN:  It does.  Thank you, sir.

19          THE COURT:  With regard — well, let's talk about the

20  trial date now.  I think everyone is aware now we'll start on

21  April 7th.  I think I have the date right.

22          MR. ALSAFFAR:  Yes.

23          THE COURT:  And so what I'm hoping for is that at

24  least — so April 7th is a Wednesday.  I'm hoping that at

25  least by the 5th the plaintiffs tender to the government the

1  trial order of the witnesses in the event that the list has

2  been altered in some way from how it's been presented in the

3  pretrial order, so that the government will be prepared to

4  know which witnesses will be testifying first, second, third.

5         And then, conversely, when it's time for the

6  government's case in chief, I'll expect that the government

7  tender to the plaintiffs their recent order so everything

8  moves along slowly.

9         With regard to witnesses, anybody expecting anything

10  unusual?  And the reason I bring it up is so one of my

11  colleagues has got a bench trial right now, a Federal Tort

12  Claims Act case, and one of the plaintiff's witnesses, who by

13  the way is a medical doctor, refuses to wear a mask.  And so

14  he was, of course, then denied entry into the building, and so

15  we have drama.

16         So of course, we don't want any drama in this case.

17  Do I expect any drama?  Anything we need to be given a

18  heads-up on, from the plaintiffs, Mr. Alsaffar?

19         MR. ALSAFFAR:  I sure hope not.  I haven't

20  encountered any in terms of the witnesses that are supposed to

21  be live, and there doesn't seem to be any issue related to

22  that.

23         You know, of course, if we get some clarity, a little

24  more clarity on what the Court's expectations are in terms of

25  the mask wearing, we'll relay that, but we've already sort of

1   proactively done that and there doesn't seem to be an issue.

2          And in terms of the order of witnesses, well, we've

3   actually already talked to the government and given them what

4   our order is going to be, and if anything changes we'll follow

5   up with them as well prior to April 5th to confirm that.

6          But we're trying to make this as orderly as possible

7   and think ahead on those issues.  So far I don't think there

8   should be any.

9          THE COURT:  You asked about expectations, so here's

10  the expectations.  The expectations are that, one, we were

11  complying with the mandate from President Biden that this is a

12  federal facility and so anyone entering a federal facility is

13  required to wear a mask.  So we expect compliance with that.

14         We expect people to be considerate of everyone.  So

15  if someone is running a fever or otherwise ill, we expect that

16  they do not enter the building and ask to be excused.  We

17  don't want anybody coming into the building who is obviously

18  ill and knowingly ill.

19         The third thing is we expect people to be wearing

20  their mask, when they enter the building, come into the

21  courtroom.  They can take off their mask while they are

22  testifying, but, otherwise, they are to wear a mask.

23         So those are the expectations that I will enforce.

24         So each judge, you know, has to run things on their

25  own.  I was giving my advice to my colleague on how to handle

1 his situation.

2          I basically told him, hey, it's the plaintiff's

3 witness, if the plaintiff's witness doesn't want to abide by

4 the rules, that's the plaintiff's problem and I would just

5 call for the next witness.

6          So that applies both to your group and the

7 government's group as how I would handle it, so there we are.

8          MR. ALSAFFAR:  I have a quick question on, just since

9 we're on masks, and you mentioned that when the in-person

10 witness is there and testifying they can remove the mask, as

11 far as the attorneys, what are your expectations when we're

12 doing the examination?  Do we keep our masks on?  Is it okay

13 if we take them off when we're examining?

14          THE COURT:  Yeah.  So you'll be at counsel table.

15 Usually you would come to the lectern.  To avoid having a

16 shared lectern space, we're just going to have you-all

17 speaking and presenting from your own counsel tables.

18          If you want to take off your mask at that point,

19 there is enough distance to allow for all of that.  And so

20 while speaking, you can take the mask off, but otherwise you

21 ought to try to keep it on as much as possible.

22          Do we have anything else to talk about in terms of

23 either witnesses or exhibits?

24          MR. ALSAFFAR:  No, Your Honor.  I have a few more

25 questions just about the mechanics, housekeeping-type matters,

1  but I can address those whenever you're ready.

2         THE COURT:  Yeah.  So let's stick to exhibits and

3  witnesses.

4         Mr. Stern, anything else?

5         MR. STERN:  Thank you, Your Honor.

6         In keeping with not wanting to surprise the Court, I

7  do think we should discuss the breadth of the exhibits that we

8  sort of anticipate producing for the Court, and I want to make

9  sure that we're all on the same page in the mechanics of how

10 we are providing to Your Honor.

11         So in phase one of the trial, sort of to speak, the

12 deposition designations that we provided the Court with the

13 exhibits that it would need in order to read those deposition

14 designations, there were about 133 exhibits.

15         All tolled right now between plaintiffs and United

16 States, sort of thinking joint exhibit list, we're looking at

17 close to over a thousand exhibits; theory being that Air Force

18 has a tremendous amount of information, case files and

19 investigative files, the Texas Ranger file is very large.

20         And so to the extent that it's really not practical

21 to provide the Court with hard copies of all exhibits, the

22 United States would intend to provide on the first day a hard

23 drive of all exhibits, and then physical copies of those

24 exhibits that we intend to use with the witnesses during the

25 phase two portion of trial.

1      Is that sufficient, Your Honor?

2      THE COURT:  So you talk about phase two portion of

3 trial.  I mean, that would be sufficient for me for both

4 phases, this liability phase and the damage phase, frankly.

5      MR. STERN:  I'm sorry, Your Honor.  Forgive me.

6      I'm not being clear.  I guess I was thinking of phase

7 one as the deposition designations where we have provided Your

8 Honor with testimony through transcripts, written or video.

9      THE COURT:  Right.

10      MR. STERN:  And we also provided a whole slew of,

11 let's say, 133 exhibits already.

12      Now in this sort of second phase of the live phase of

13 the trial, there is going to be a thousand more exhibits, and

14 that's a tremendous amount of paper.  We didn't want to flood

15 Your Honor with all the hard copies.

16      It's the way we envisioned, again, for just the next

17 portion of the liability phase.  Maybe that's the better way

18 of saying it.  We were going to provide a hard drive of the

19 grand universe of those exhibits, and then hard copies of

20 those we intend to use with witnesses.

21      THE COURT:  I've got you now.  I follow you now.

22 Yes.  No, that's perfectly fine.

23      MR. STERN:  Okay.  And then just to continue that

24 theme, forgive me, I haven't tried a case in this jurisdiction

25 yet, so maybe I have some more fundamental questions, but is

1  it permissible to have a binder for witnesses where we provide

2  the hard copies of exhibits that we intend to use for those

3  witnesses?

4          THE COURT:  Yes, that's fine.

5          MR. STERN:  And then would Your Honor like a copy of

6  that binder as well, or is the sort of the binder that we're

7  going to provide on the first day that provides all of the

8  exhibits that we're going to use for all the witnesses, will

9  that suffice?

10          THE COURT:  So you know, maybe I can answer it this

11  way.  Do not provide me binders of all exhibits because I

12  certainly don't want to see physical hard copy of a thousand

13  exhibits.

14          So if you want to provide me what you're going to be

15  providing the witnesses, that would be helpful, and then maybe

16  some other select exhibits that you think would be helpful for

17  me to have hard copy of, but so I'm not — I think I'm

18  answering your question by answering it differently.

19          MR. STERN:  But you are, and of course we'll publish

20  them on the screen during the trial as well.  I just want to

21  make sure if you wanted hard copies what we were — that we

22  were being responsive to that request.

23          THE COURT:  Yeah.  No.  And that helps me when I have

24  to take it back and when I'm thinking about this, so that

25  would be helpful.

1      MR. STERN:  Thank you, sir.

2      THE COURT:  So have we now covered exhibits and

3 witnesses?

4      MR. STERN:  I believe so.

5      THE COURT:  It looks like we have.

6      So Mr. Alsaffar, you had some other matters?

7      MR. ALSAFFAR:  Yes.  Just a couple questions that we

8 had regarding sort of the courtroom set-up, and our staff has

9 been working with your staff who has been very helpful in just

10 trying to make it as smooth as possible.  So I just had a

11 couple of questions and you answered one of them in terms of

12 the witnesses and the masks.

13      In terms of the microphones and the audio, so we had

14 a few questions about that.  My understanding is that when the

15 witnesses are going to be brought in via Zoom that we're going

16 to be using the Court — there is going to be some, I guess,

17 portable mikes that are going to ensure that both the witness

18 on Zoom, and the folks who are watching it over Zoom can hear

19 adequately.

20      We just wanted to make sure that the mikes were

21 placed in the right areas, and if we needed a couple of extras

22 that the courtroom was going to be prepared to place those

23 portable mikes in the right areas so that the audio is working

24 fine.

25      THE COURT:  What I would suggest to you,

1  Mr. Alsaffar, is you bring in your technical crew to a date
2  that the courtroom is going to be available for you to test.
3          I would bring in the extra mikes that you think might
4  be necessary, whatever laptop you would hook up to the podium,
5  and just do a — I would have somebody back in your office to
6  do the Zoom test.  I would do a trial run, if I was you.
7          MR. ALSAFFAR:  We are.  We are going to do that and
8  we've already communicated and working on that set-up and we
9  know that Judge Pulliam is trying a case in his courtroom
10 right now, so we've sort of scoped that out as well and are
11 working with your staff.  And I know we have to wait until
12 they are done with their trial so we can set that up, so we're
13 definitely going to do that.
14         THE COURT:  If he has more plaintiff witnesses who
15 don't wear masks, maybe it will be expedited.
16         MR. ALSAFFAR:  Yes.  Well, I'm glad we got so much
17 into the depositions, but we'll do our best to make sure
18 that's not an issue and I don't think it will be.
19         In terms of those witnesses that are coming in to
20 testify, you know, these fact witnesses that are coming in to
21 testify live in person, obviously these are not all our
22 witnesses in the sense that they are not employees of ours,
23 they are fact witnesses, but we are bringing them in our case
24 in chief and coordinating with them.
25         Is there a place that you're going want them to wait,

1  or is it just the normal, wear a mask, be spacing, stand

2  outside the courtroom and just wait until —

3       THE COURT:  Yeah.  So yeah, it will be just like, in

4  that respect, the same as any other court proceeding.  They

5  are wearing a mask.  They are outside the rotunda area.  The

6  third floor has got a little bay where they can sit, social

7  distance, and just wait to be called.

8       MR. ALSAFFAR:  Okay.  Thank you, Your Honor.

9       And the tech person that's going to be running the

10 tech for the courtroom, would it be permissible for our tech

11 folks to have that person's direct number, so that if any

12 issues arise or any questions we have either before or during

13 the trial, we can have a direct line to them as well?

14      THE COURT:  Yeah.  So his first name is Daniel.

15      Sylvia, help me out with Daniel's last name.  Is it

16 Olson?

17      THE DEPUTY CLERK:  Yes, Judge.  It's Olson.

18      THE COURT:  Yeah.  And so you can contact

19 Miss Fernandez and you can get his work phone number to

20 contact.

21      And this goes for both the government and the

22 plaintiffs' group.  Contact with the technical person is fine

23 with me.

24      MR. STERN:  Thank you, Your Honor.

25      In fact, the government was going to ask one step

1    further.  One of our issues in preparation is the United
2    States can't initiate Zoom conference calls, so it's hard to
3    sort of prepare our witnesses accordingly.
4           I'm wondering if it's possible to sort of do a dry
5    run with Mr. Olson where he can initiate it from Your Honor's
6    courtroom, and then obviously we won't physically be there but
7    our witnesses who will appear via Zoom will have that sense of
8    how this is going to play out.
9           THE COURT:  Yeah.  So again, our courtroom deputy,
10   Miss Fernandez, is actually — so Daniel will not be at the
11   trial.  Daniel is — we've got a limited IT staff, so Daniel
12   is spread around the whole district.  So he's our point person
13   but I can't guarantee that Daniel is going to be physically in
14   San Antonio.
15          So Miss Fernandez is going to be running the show
16   while in trial, but both sides have equal access to
17   Miss Fernandez or Mr. Olson, as long as you aren't talking
18   about the substance of this case and just technical issues.
19          MR. STERN:  Of course.  Thank you, sir.
20          MR. ALSAFFAR:  On the question of — this has to do
21   with the feed that is going to be provided to the public or to
22   other attorneys or the families to watch the trial, does Your
23   Honor have any guidance on what that's going to — I have a
24   couple questions related to that, and of course one of them is
25   how is that going to be done or operated?

```
 1              THE COURT:  Yeah.  So Miss Fernandez, you jump in if
 2    I need to be corrected, but we're going to be running off the
 3    zoom.gov platform, and we have a limited account here at the
 4    court for just a couple of licenses and we will use one of
 5    those licenses that provides the capability of using the Zoom
 6    platform for more than the customary 100 or so participants.
 7              So in the event, in the probably likely event that
 8    we're going to have 100 or more people between the plaintiffs
 9    and others and the lawyers, so this license will provide us, I
10    believe, up to 500 folks to watch the proceedings.
11              So this is all being run through the Zoom platform.
12    And so if you want your plaintiffs to be able to watch, your
13    fellow attorney groups, all we need to do is have the
14    individual's name and email address contacts be given to
15    Miss Fernandez and Miss Fernandez will give you the usual
16    invites, just like we do for these hearings.
17              MR. ALSAFFAR:  That was going to be my follow-up.  So
18    we can give Miss Fernandez the contact information of who
19    needs to get the link and she'll take care of it from there?
20              THE COURT:  Yeah.  She'll take it from there.
21              And likewise for the government.
22              MR. ALSAFFAR:  Okay.  Sorry, Paul — did you have —
23    I didn't mean to interrupt you.
24              MR. STERN:  No.  No.  No.  I have questions, but
25    continue.
```

1          MR. ALSAFFAR:  Oh, okay.  My next question was --
2    also it may be one that we should talk to Daniel or
3    Miss Fernandez about in terms of the technical.
4          I'm thinking of the live witness, the in-person live
5    witness testifying and how the folks who are not in the court
6    are going to be able to see them.  Will they have a camera or
7    can we bring an extra webcam and set it up for the Court, so
8    that the witness who is either on the stand or in the jury
9    box, so the person who is actually live in-person can also be
10   seen?
11         THE COURT:  Seen on Zoom, right?
12         MR. ALSAFFAR:  Yes.
13         THE COURT:  So I'm pretty sure I know the answer to
14   this, that we are going to have a cam set up on them, but you
15   raise an interesting point.  You know, so this is the
16   government, and so the quality of the equipment is always an
17   issue.
18         I mean, if you think you have a better camera that
19   you would rather have used, you may want to contemplate
20   talking to Daniel and seeing what camera we're using and what
21   the quality of your camera is.  I'm not opposed to either side
22   bringing in additional equipment, if it helps improve the
23   quality.
24         MR. ALSAFFAR:  That was my question, Your Honor.  We
25   want to make sure it was okay just to do that, and we're more

1  than happy to work with Daniel and Miss Fernandez on

2  coordinating that, to bring our own equipment to make sure

3  that even if it's just as a back-up, I mean, and we'll — I

4  just want to make sure we had your permission to do that.

5          THE COURT:  Yeah.  No, that's fine.

6          MR. ALSAFFAR:  Okay.  And this may seem — normally I

7  don't ask questions about Elmos, but because the — we're

8  trying to make sure that everyone can see everything, if one

9  of our attorneys wants to use an Elmo to display, is that

10 going to be something that we can be able to do, or is that

11 something we need to think ahead of and work around?

12         THE COURT:  So this one, I'm less sure of my answer.

13         Of course, in the courtroom we have an Elmo.  You'll

14 be able to present on the screen.  The question I have is

15 what's appearing on the screen, how will that be shown on

16 Zoom, and do we have a camera aimed at the screen and the

17 quality of that.  All of that, I am unsure of.

18         MR. ALSAFFAR:  Okay.  Again, I'm more than happy —

19 these are the types of questions I have about evidence

20 presentation in this format.  As long as it's okay with me to

21 discuss those options and have camera options and we can

22 coordinate with your staff and the tech in the courthouse to

23 make that.  I just didn't want to bring equipment or cameras

24 and not have that been approved, preapproved and all of that.

25         THE COURT:  No, you're welcome to it.

1          MR. ALSAFFAR:  Okay.  Thank you.

2          I think that's all I have on that end.

3          THE COURT:  Mr. Stern.

4          MR. STERN:  Yes.  As long as we're on the topic of

5  Zoom witnesses, I think I have two questions.

6          The first, when it comes to publishing exhibits

7  through Zoom, would it make sense for the witness who is

8  appearing via Zoom to also have a hard copy?  Obviously, they

9  won't be able to look at it until it's published to them, but

10  for our experts, sort of speak, will they have a set of

11  exhibits that they can look at simultaneously so that way

12  through Zoom we can look at their faces rather than the actual

13  documents?

14          THE COURT:  So let me see if I can break this up.

15          If you're going to question a witness who is

16  appearing by Zoom, how will they be able to see an exhibit

17  that you are referring to?  I think you're going to need to

18  provide them in advance whatever exhibits you think you might

19  be presenting to them.

20          And so it's going to be incumbent upon you, both

21  sides, for your respective witnesses if you think you're going

22  to show them exhibits, provide them in advance to them by

23  email or otherwise.  And so that's one.

24          Two, if we're doing this for purposes of

25  authenticating exhibits, you know, if these are already agreed

1  to, we don't have to worry about authentication.  If this is

2  going to be an objected to exhibit that you're going to need

3  to prove up by a witness to overcome any objections that may

4  be currently being asserted, yeah, you're definitely going to

5  need to have that exhibit before that witness.

6          MR. STERN:  Certainly.  And I think we're going to

7  hopefully be able to avoid a lot of authentication objection

8  arguments on these documents.  I think Mr. Alsaffar and I are

9  largely in agreement about the list.

10          Mr. Alsaffar can correct me if I'm wrong.

11          MR. ALSAFFAR:  That's correct.

12          MR. STERN:  So really it was more about a

13  belt-and-suspenders approach that I was suggesting, just as if

14  we're going to have binders for the live in-person witness, we

15  would anticipatorily provide a binder to the individual who

16  will be appearing via Zoom, so that way they can sort of look

17  at the exhibit simultaneously, look at a physical copy

18  simultaneously, even if we publish it in the courthouse.

19          THE COURT:  Yeah.  So you know, that works well for

20  your own witnesses.  What becomes a little more problematic is

21  for witnesses on the other side, any exhibits you might want

22  to show them.

23          You know, at this point, there shouldn't be any

24  surprises at least to the lawyers.  I don't know from an

25  attorney standpoint whether you want to already give a

1  heads-up to the witnesses or not.  I leave that to you.

2          But it may be beneficial and something you ought to

3  consider, both sides, telling the other side, hey, your

4  witness perhaps should have in front of them Exhibit 13,

5  Exhibit 27, so forth.

6          You may want to consider that.

7          MR. STERN:  I'll certainly meet with Mr. Alsaffar

8  after this and I think we can get together on that issue.

9          MR. ALSAFFAR:  Yes.

10         MR. STERN:  And then the only other thing when it

11  comes to Zoom witnesses, I think I'm stating the obvious, but

12  there has to be some mechanism to ensure that witnesses can't

13  watch one another testify obviously.  We would invoke the

14  rule.

15         THE COURT:  So we have the ability, both me and

16  Miss Fernandez have the ability to control who is able to come

17  in.  And now that raises a pretty good point.  How do we

18  monitor who is coming in?

19          First of all, while you-all do your last minute prep

20  with the witnesses, I think you will really need to consider

21  talking to them about the rule, the rule being invoked, how

22  they can't watch these proceedings until they are called to

23  testify.

24          And then for witnesses who will be appearing by Zoom,

25  I think in many ways it's going to be incumbent upon you-all

1  because I can't be staring at a screen with a hundred names,

2  but telling them that you're going to email them or text them

3  in advance when they should ask to come in and then we will

4  admit them.

5        That's sort of one way I can sort of tell whether

6  they've already been in the proceedings, because if I'm not

7  seeing them requesting to be admitted, then I'm wondering,

8  hey, how long have they been in this place.  So that will be

9  one measure of control I can have.

10        That's not — the only way I can guarantee you,

11  though.  This is not like a physical courtroom where I can

12  tell somebody walked in.

13        MR. STERN:  And I raise this just as a note of

14  caution, not that I'm overly concerned about it.

15        In fact, I think the way that we've broken this down

16  between in-person live, and live via Zoom, it's sort of the

17  experts that are going to be appearing via Zoom, so I think

18  there is less of a concern on that front.  I just wanted to

19  put that out there to ensure that however the best way we can

20  approach this, we do so, because we would invoke the rule

21  obviously.

22        THE COURT:  Understood.

23        MR. STERN:  Thank you.

24        MR. ALSAFFAR:  I was only going to add that I think

25  all of the remote witnesses are retained expert witnesses and

1  so I don't think —— luckily, and at least in this phase of the

2  trial, I don't think that's really much of an issue.  And in

3  terms of in-person witnesses, we will instruct personally the

4  live in-person witnesses who may be going on day two or three

5  not to come in.

6          And what I was thinking, Your Honor, if it's helpful

7  to you, I mean, that's a very small universe.  That's only a

8  few people.  We could notify your staff or Miss Fernandez,

9  whoever is running that, these are the people so you will know

10 when they ask that that's not somebody who is allowed to come

11 in.

12         THE COURT:  Yeah.  I'm reminded too that, you know,

13 to the extent you want to show your witnesses an exhibit,

14 we'll provide each of you-all —— well, Mr. Alsaffar and

15 Mr. Stern, the ability to share screen.  So you'll be able to

16 show exhibits that way, and that exhibit will be shown

17 throughout the whole Zoom proceedings and so everyone will be

18 able to capture it that way.

19         MR. ALSAFFAR:  I had one other question, Your Honor,

20 just to put a —— close that loop, because I think you've

21 already answered it and I think we've addressed it in a prior

22 hearing, but it had to do with whether or not there would be

23 broadcasting to other courtrooms during —— in other words,

24 would there be other courtrooms set aside during this trial

25 for folks to go into and watch?

1    And I think your answer to that was no before and we
2  weren't necessarily requesting that either, but I just wanted
3  to make sure that's still the case, or if there is a change in
4  that.
5    THE COURT:  So my preference would still be just to
6  limit the number of people that would be coming into the
7  courtroom -- courthouse for that matter.
8    We're providing everybody the opportunity to watch
9  this by Zoom, so any spectators, to the extent you have
10 anybody else who wants to pop in, this will be just like an
11 open courtroom.  They can request a link by Zoom.  We've got
12 the capacity to give them access, and that's how I would
13 prefer to handle it, rather than have a whole bunch more
14 people.
15    The COVID numbers in San Antonio are looking very
16 encouraging right now.  But you know, who is to say that we
17 don't start seeing an uptick again, and so I prefer to
18 limit --
19    MR. ALSAFFAR:  Understood.
20    THE COURT:  Anything else we need to take up today?
21    MR. STERN:  Couple more questions, Your Honor.
22    First, what is the start time each day?
23    THE COURT:  9:00.
24    MR. STERN:  In your last pretrial order you suggested
25 that you were going to let the parties know the amount of time

1  they would have for closing argument.

2          THE COURT:  Yeah.  So we're a couple weeks away, so

3  let's talk about that later down the road.

4          MR. STERN:  Sure.  Could I ask your forbearance, I

5  just sort of touched down in San Antonio.  I'm still trying to

6  get my bearings.  Can I put you on hold for a moment and ask

7  the people around me if they have any technological problems

8  or concerns that I might not have touched on yet?

9          THE COURT:  That's fine.

10          MR. STERN:  Thank you, sir.  I appreciate it.

11     (Pause in proceedings)

12          MR. STERN:  There was one last concern and that was

13  the prospect of someone other than the Court recording through

14  Zoom.  We were wondering how Your Honor is going to handle

15  that issue.

16          THE COURT:  So that's always an issue.  I'm going to

17  need to talk to our IT staff about that.  That always poses a

18  concern in any Zoom proceeding.  I'm going to have to work on

19  that.

20          MR. STERN:  Fair enough.  Thank you, your Honor.

21  That's all we have.

22          THE COURT:  Anything else, Mr. Alsaffar?

23          MR. ALSAFFAR:  And I apologize.  I had one question

24  about the end time of the day, since Mr. Stern asked the right

25  question about the start time.  And do you have an anticipated

1    end time that you would like for us to hit?

2           THE COURT:  Yeah.  So generally what I do is, and we

3    don't have a jury here, and so you guys are going to have to

4    remind me every once in a while if you-all need a break.

5           If this was a jury trial, we would start at 9.  I

6    would probably have a little quick break at 10:30 for

7    everybody to go to the bathroom, come back, break somewhere

8    about 12-ish depending on where the witness testimony is.

9           There is unfortunately really only one place to eat

10   around here.  It's very good, Commonwealth.  It's very slow,

11   and so you might want to take that into account for food

12   purposes.

13          I generally try to give us like 45 minutes or an hour

14   to grab something, and then we would reconvene somewhere about

15   1-ish.  Again, if someone needs a bathroom break, quick break

16   3:15 to 3:30ish, and push to about 5 or 5:30.

17          But again, like always, if it looks like we can

18   finish up a witness, I would prefer to finish up a witness

19   before calling it a day.  So if it means pushing until 6 or so

20   knowing that we can finish the witness, I do that.

21          That's my general routine.

22          MR. ALSAFFAR:  Thank you, Your Honor.  That's very

23   helpful.

24          THE COURT:  Anything else, Mr. Alsaffar?

25          MR. ALSAFFAR:  Sorry.  I didn't mean to interrupt

1  you.  No, Your Honor.

2          THE COURT:  Mr. Stern?

3          MR. STERN:  No, Your Honor.

4          THE COURT:  Okay.  Good enough.  We will see you.  I

5  look forward to seeing the exhibits tomorrow and then we will

6  see you-all on the 7th.

7          MR. ALSAFFAR:  Thank you, Your Honor.

8          MR. STERN:  Thank you, sir.

9      *(Concludes proceedings)*

10                        -o0o-

11      I certify that the foregoing is a correct transcript from

12  the record of proceedings in the above-entitled matter.  I

13  further certify that the transcript fees and format comply

14  with those prescribed by the Court and the Judicial Conference

15  of the United States.

16

17  Date:  07/18/22          /s/  *Gigi Simcox*
                              United States Court Reporter
18                            262 West Nueve Street
                              San Antonio TX 78207
19                            Telephone:  (210)244-5037

20

21

22

23

24

25