```
                 IN THE UNITED STATES DISTRICT COURT
                  FOR THE WESTERN DISTRICT OF TEXAS
                         SAN ANTONIO DIVISION


 JOE HOLCOMBE, ET AL,               .
                                    .
             PLAINTIFFS,             .
       vs.                          . DOCKET NO. 5:18-CV-555-XR
                                    .
 UNITED STATES OF AMERICA,          .
                                    .
             DEFENDANT.             .
                                    .


                 TRANSCRIPT OF PRETRIAL PROCEEDINGS
               BEFORE THE HONORABLE XAVIER RODRIGUEZ
                    UNITED STATES DISTRICT JUDGE
                           APRIL 4, 2022




 APPEARANCES:
 FOR THE PLAINTIFFS:     JAMAL K. ALSAFFAR, ESQUIRE
                         WHITEHURST HARKNESS BREES CHENG
                          ALSAFFAR HIGGINBOTHAM AND JACOB
                         7500 RIALTO BOULEVARD, BUILDING TWO
                         SUITE 250
                         AUSTIN TX 78735


                         DANIEL J. T. SCIANO, ESQUIRE
                         TINSMAN & SCIANO
                         10107 McALLISTER FREEWAY
                         SAN ANTONIO TX 78216
```

```
 1
 2  FOR THE DEFENDANT:      CLAYTON R. DIEDRICHS, ESQUIRE
                            UNITED STATES ATTORNEY'S OFFICE
 3                          601 NW LOOP 410, SUITE 600
                            SAN ANTONIO TX 78216
 4
 5  REPORTED BY:            GIGI SIMCOX, RMR, CRR
                            OFFICIAL COURT REPORTER
 6                          UNITED STATES DISTRICT COURT
                            SAN ANTONIO, TEXAS
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

1      *(San Antonio, Texas; April 4, 2022, via Zoom*
2   *videoconference.)*
3            THE COURT:  Let's call 18 civil 555, Holcombe versus
4   United States.
5            Who do we have for the plaintiffs?
6            MR. ALSAFFAR:  Good morning, Judge.  Jamal Alsaffar
7   for the plaintiffs.
8            THE COURT:  Thank you.
9            And for the government?
10           MR. DEIDRICHS:  Morning, Your Honor, Clayton
11  Deidrichs for the United States.
12           THE COURT:  Thank you.
13           So we have a dispute over what, if any, inflation
14  rate should be applied here.  As I understand it, the
15  government is opposing all this because an inflation rate
16  wasn't discussed or presented in the findings of fact and
17  conclusions of law during the trial of the case.
18           But there was testimony during the trial of the case
19  and experts from the plaintiffs talked about the inflation
20  rates, so why does that constitute a waiver, by the
21  government?
22           MR. DEIDRICHS:  Well, it's the number of the
23  inflation rate, Your Honor.  At trial Dr. Fairchild testified
24  to a 2.2 percent interest rate.  Post-trial, they are trying
25  to use a 2.45 percent interest rate.

1  　　　　　There's no testimony on that, although those rates
2  were available and Dr. Fairchild could have used those rates,
3  but for whatever reason they chose not to and now they are
4  trying to insert that into the calculations at this point.
5  　　　　　THE COURT:  So then I thought I understood the
6  government trying to object completely to an inflation rate,
7  but what I'm hearing now is the government saying that the
8  only testimony on this issue really was 2.2, and that's the
9  only testimony before the Court that we can consider.
10 　　　　　MR. DEIDRICHS:  That's it exactly, Your Honor.
11 　　　　　THE COURT:  Mr. Alsaffar.
12 　　　　　MR. ALSAFFAR:  That's incorrect.
13 　　　　　And I think the government -- this is part of the
14 confusion, I think in the government's briefing, is it wasn't
15 fully -- the government doesn't fully understand how the
16 process works.
17 　　　　　So 2.21 was a general inflation rate.  And if you
18 look at the transcript, Your Honor, in Dr. Fairchild's
19 testimony, page 2835, 2836, all in his direct examination, he
20 said, "That's the base general inflation rate."
21 　　　　　And then from there he went into the specific medical
22 categories for those inflation rates for those categories and
23 said some of those are above 2.21, you have to apply those.
24 Then you apply the discount rate that Your Honor has
25 afterwards.

1                So what the government is misunderstanding here, Your
2     Honor, is what the actual trial testimony was.  And
3     Dr. Fairchild said it would start at 2.21, so you have general
4     inflation rate of the economy, and then you look at the
5     specific medical categories, which he did, and then applied
6     those.
7                Post-trial, Your Honor, we didn't know what the
8     discount rate was.  That's a new discount rate that Your Honor
9     found in the findings of fact.  So the 2.45 is just the
10    general interest rate as of the time of your verdict,
11    February 7th, 2022, because obviously it's just updated.
12               So that's the only change.  The same numbers for the
13    medical categories inflation rates, from the medical
14    categories are then applied after that.  Some of those are
15    above 2.45.  Some of those are below.
16               That's all that's happened.  That's all.
17               THE COURT:  So with regard to Dr. Fairchild's
18    testimony, what am I to make of this?  It seems like he was
19    talking about two different categories.  Well, let me
20    backtrack.
21               When we are talking about the inflation rate, are we
22    really just focusing on how this is going to apply to
23    medicals, or are we talking medicals and nonmedicals?
24               MR. ALSAFFAR:  So there's two.  There's the inflation
25    rate for the individual medical categories, which he testified

1  about at trial, as well as lost earnings, which he also
2  testified to at trial.  So that's what's happening here.
3          THE COURT:  What are you contending -- let's break it
4  down so we are all clear.  What are you contending is the
5  inflation rate for medical, and what is the inflation rate for
6  nonmedicals?
7          MR. ALSAFFAR:  So it's is a two-step process.  Simple
8  two-step process.
9          So the general inflation rate, they updated as 2.45.
10 And then if you look at the medical categories that he
11 testified at trial -- and I'll give you the examples he used
12 at trial.
13         Inpatient hospital costs, testified that those, over
14 30 years, have been 3.3 to 3.4 percent based on the
15 government's own tables.
16         Physician services, 2.91 percent, based on the
17 government's table.
18         Nursing and attendant care, 2.26.
19         And then acute care services, 5.51 percent.
20         Those are the examples at trial we pulled out.
21 Obviously we didn't go through all of them, Your Honor,
22 because many of them actually were at or around the current
23 discount rate anyway, so you don't even have to worry about
24 those.
25         So that's what he testified to at trial.  The

1  government sort of glossed over that in their filings.  Sounds
2  like, to me, they are conceding that you are supposed to do
3  that individualization and apply it to those categories.  That
4  would kind of eliminate Exhibit 1 from their motion.  And then
5  just focus on those categories.
6          And then for the earnings, it's 2.45 percent, based
7  on the updated numbers.  That are -- that's the number at the
8  time of your findings, Your Honor.
9          THE COURT:  And so since we can't seem to wrap this
10 case up, when do we apply the discount rate?  Do we apply a
11 discount rate as of today now?
12         MR. ALSAFFAR:  Well, Your Honor, I think we just
13 apply what you have in your findings.
14         THE COURT:  Because if I apply the discount rate
15 that's applicable today, we are fighting over nothing.  The
16 discount rate as of today is 2.44 percent.
17         MR. ALSAFFAR:  That's right.
18         THE COURT:  And your argument is for 2.45, so this is
19 a flush.
20         MR. ALSAFFAR:  Well, and that's -- that is what is
21 also called the offset method, Your Honor.  So as an
22 alternative, frankly, Your Honor, that's what we were trying
23 to discuss and looked like we were going to get there but it
24 just didn't happen.  Again, that was the reason for the
25 initial request for extension.  But following your analysis,

1  Your Honor, that's exactly right.
2        And by the way, that's an alternative as well.  And
3  as you know in *Culver II*, and *Foradori* case, the *Knight* case,
4  all Fifth Circuit cases, the Fifth Circuit has absolutely
5  explicitly blessed that kind of method, as long as the
6  analysis is done.
7        And if the analysis is, well, it looks like the
8  discount rate actually lines up to what the general inflation
9  categories for those particular items are for both earnings
10 and medicals, then that offset method is fine.  And that
11 actually would make it very quick and easy.  That would be the
12 numbers in your actual earnings.
13       THE COURT:  Does the government want to respond to
14 that?  I mean, that's what seems to me is here.
15       We've got some testimony from Dr. Fairchild that the
16 inflation rate is 2.45 percent.  If I apply today's discount
17 rate, 2.44, why isn't all of this a flush?  What are we
18 fighting about?
19       MR. DEIDRICHS:  At trial he testified, with respect
20 to the income, it was 2.2.  Dr. Lundstrom testified it was
21 1.8.
22       On the medicals, he testified if the general rate of
23 inflation was 2.2 and then he, depending on what kind of
24 medical commodity or service we were talking about, there's
25 different rates of inflation.  That was the testimony at

1  trial.
2         Now plaintiffs just want to gloss over all that
3  testimony and all that evidence and skip right to today's
4  numbers without allowing the experts to consider that.
5         In that regard, we think that's new evidence.  It
6  hasn't been tested by trial.  There's no cross, no expert
7  reports on that.  It's just the plaintiffs plucking out
8  numbers.
9         And by the way, Judge, the 2.44 could have been used
10 at trial because the *Livingston Survey*, June of '21 was 2.44.
11 They chose not to use that at trial.  They could have updated
12 their reports.  They did not.
13        And that's because, I don't know if you recall the
14 chart I brought at trial, where they chose the interest rates
15 when they were at interest and depreciation or discount rates
16 when they were at historic lows.  They didn't update it for a
17 year and several months, and then use those numbers at trial.
18        Now they are trying to come in back -- or through the
19 back door and say, no, no, let's use the current interest rate
20 because now the Court has given us a discount rate so we don't
21 have to adjust our numbers by a discount rate that would be
22 following the current interest rates or inflation rates.
23        MR. ALSAFFAR:  Your Honor, quick response.
24        THE COURT:  Go ahead.
25        MR. ALSAFFAR:  I think it might make things a littler

1  clearer.
2          Again, the government is trying to have it both ways.
3          You've got to go one way or the other.  If we just
4  went with the trial testimony and the Court's current discount
5  rate of 2.23, and with the general inflation rate at the time
6  of 2.21, and then we did the individual analysis that he
7  testified to about some of these categories being above that,
8  some being below, we have a wash still.  Right?  That's the
9  same offset method.
10         If we update it, and use the Thirty-year Treasury per
11 deal that you used, the 2.44 -- for today, 2.44, and use
12 Fairchild's updated number, 2.45, we'd be at the same place,
13 at a wash either way.
14         So if we just went back, as the government is
15 suggesting to the actual trial testimony of 2.21 plus the
16 individualized categories, and 2.23, it would still be the
17 same thing.  It would be an offset type of analysis which is
18 the easiest way.
19         So either way, Your Honor, if we used -- you decided
20 to use your updated discount rate and the updated inflation to
21 match, in fairness, to match today, you have to do both, then
22 it would be an offset.
23         If you went back and said, no, let's just stick with
24 2.21 and 2.23, that's also a wash as well.
25         THE COURT:  So the Fifth Circuit has made clear that

1   I'm supposed to have a proper rate of inflation applying to a
2   present value analysis.  That's *Culver*, Fifth Circuit, 1983,
3   as well as *Foradori*, 2008.
4           The testimony at trial was mixed.  Dr. Fairchild
5   talks about a 2.2 number.  He talks about a medicals 3.3, plus
6   depending on what type of services was rendered, so the
7   numbers were varied from Dr. Fairchild.
8           One thing I do disagree about Dr. Fairchild is he
9   does this Thirty-year analysis to look at those rates of
10  inflation.  I'm not sure that was appropriate.  That fails to
11  take into account what, if any, impact ObamaCare had on
12  inflationary rates with regard to medicals, so I don't fully
13  agree with Dr. Fairchild's analysis there.
14          I find that the inflation rate that should be applied
15  to this matter is 2.45.  I further find that the judgments
16  need to reflect a discount rate of 2.44.
17          So now, in light of that, does the plaintiffs need to
18  amend their proposed judgments?
19          MR. ALSAFFAR:  Your Honor, that is as close as you
20  can get to a total offset number.  And if that being the case,
21  Your Honor, we would need to amend the judgments just to
22  reflect that the exact number in the actual findings of fact
23  and we can do that this week.
24          THE COURT:  Yeah.  Let's get your folks to work those
25  numbers, get new judgments, and let's sign these things this

1  week.
2          MR. ALSAFFAR:  Yes, Your Honor.
3          THE COURT:  And this thing needs to be put to bed and
4  then the ball is in the government's court to determine what,
5  if anything, they want to do from here on out.
6          Is there anything else we need to clean up before I'm
7  able to sign judgments from the government?
8          MR. DEIDRICHS:  I don't think so, Your Honor.
9          MR. ALSAFFAR:  Your Honor, may I suggest something?
10         So that we could put a stamp on the final judgment
11 and do it efficiently, would it be okay -- my suggestion is
12 that I get with U.S. attorneys, because this should be
13 straightforward now because it's an offset method.  Is that
14 fair?
15         THE COURT:  This is an offset method.
16         MR. ALSAFFAR:  Okay.  So I'll get with opposing
17 counsel right away on those judgment forms and we could file
18 those by Friday so that we don't have to give a response.
19         THE COURT:  Oh, no.  There's nothing to respond to
20 anymore.  This is final.  We've heard all the arguments.
21 We've heard all the objections.  This is the final rulings.
22         MR. ALSAFFAR:  Okay.  Then Your Honor, we can get
23 that done this week.
24         MR. SCIANO:  Your Honor, the wrongful death claims
25 that don't have medical and don't have future, they don't have

1  to be modified at all.  So there are a number of wrongful
2  death claims that don't have the need to do the discount and
3  the offset.
4         The reason I'm raising that is, again, you know, my
5  clients, I lost two of the three.  Technically, given that we
6  don't have a judgment, something adverse happens to any of
7  those wrongful death claims -- so the sooner the better.
8         So I don't know if there's an easy way to do that.
9         THE COURT:  So let me approach this subject.  Thank
10 you for that.
11        So there's the wrongful death and there's the one
12 take-nothing judgment.  I mean, so I could enter those today.
13        The reason I ask you to submit individual judgments
14 in individual cases is, again, I don't know what's going to
15 take place after this point.
16        I don't know if the government intends to appeal or
17 not.  If they were going to appeal, by having individual
18 judgments in the case I was going to let you-all break apart
19 and each individual set of lawyers decide for their clients
20 whether it's in their interest to settle or not settle.
21        And so were I'm heading with this is, is there any
22 benefit for me just signing everything on one day so everybody
23 knows when their appellate clock starts ticking, or do you
24 want me to go ahead and sign wrongful death and take-nothing
25 judgments today?

1       Mr. Alsaffar.
2       MR. ALSAFFAR:  I think the best thing to do is to
3  have them all under one clock.  And we're talking about a
4  matter of a few days here and there, so I think that's the
5  easiest way to make sure everyone is on the same calendar.
6       THE COURT:  Any thoughts on the government?
7       MR. DEIDRICHS:  That sounds right.
8       MR. SCIANO:  Yeah, as long as it's quick, Your Honor.
9       I just don't want to be stuck in another morass for
10 another two weeks while we fight about those issues with the
11 risk of other wrongful death beneficiaries being subject to
12 same and justice delayed is eliminated.
13      THE COURT:  No, I understand that point.
14      So I'm expecting amended proposed judgments to be
15 submitted to me no later than Friday noon and I intend to sign
16 and have entered in the clerk's office no later than close of
17 business Friday judgments in all the cases.
18      MR. ALSAFFAR:  Thank you, Your Honor.
19      MR. DEIDRICHS:  Thank you, Your Honor.
20      THE COURT:  Okay.  Thank you, gentlemen.
21   *(Concludes proceedings)*
22
23
24
25

```
 1                            -oOo-
 2        I certify that the foregoing is a correct transcript from
 3   the record of proceedings in the above-entitled matter.  I
 4   further certify that the transcript fees and format comply
 5   with those prescribed by the Court and the Judicial Conference
 6   of the United States.
 7
 8   Date:  07/18/22            /s/  Gigi Simcox
                                United States Court Reporter
 9                              262 West Nueve Street
                                San Antonio TX 78207
10                              Telephone:  (210)244-5037
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```